Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
Erik K. Moller (SBN 147674)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Defendants
AEROFLEX INCORPORATED,
AMI SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD.,
MATROX GRAPHICS INC., MATROX
INTERNATIONAL CORP. and
MATROX TECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD<br><br>    Plaintiff,<br><br>  vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC.,<br><br>    Defendant. | CV 03-04669 MMC<br><br>**NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE** |

At the time that the present litigation was transferred from the District of Delaware, Defendants' counsel were subject to an outstanding order from Judge Sleet requiring production of certain internal communications of counsel for the Court's *in camera* review. Judge Sleet's order, made on August 28, the day before he transferred the case to the Northern District, arose from a dispute over whether Defendants had done anything improper in attempting to retain Dr. Don Thomas as a consultant in connection with this litigation.

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS
OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

Dr. Thomas has highly relevant personal experience in the logic synthesis field and is one of the developers of a prior art system that is believed to be directly anticipatory of the claims of the patents asserted by Ricoh in this case. Before Ricoh filed the present suit, Dr. Thomas briefly served as a consultant for Ricoh's counsel regarding logic synthesis technology, but he determined not to assist Ricoh with its lawsuit, apparently because he did not believe that the suit was meritorious.[1]

When Defendants' counsel sought to retain Dr. Thomas, Ricoh countered with arguments whose purpose was to suppress Dr. Thomas's testimony about the prior art. Ricoh's initial argument was that, during discussions with Defendants' counsel about the possibility of serving as a consultant, Dr. Thomas had somehow transmitted Ricoh confidential information to Defendants' counsel.

In response to this contention, Judge Sleet ordered discovery of the communications of Defendants' counsel with Dr. Thomas. This discovery included Dr. Thomas's deposition testimony and copies of all correspondence sent between Defendants' counsel and Dr. Thomas. *See* Campbell Decl. Exs. A & B, respectively. The correspondence between Dr. Thomas and Defendants' counsel, and Dr. Thomas's oral testimony, demonstrated the impossibility of Ricoh's notion that Dr. Thomas had conveyed Ricoh confidences to Defendants. The evidence demonstrated, in fact, that Defendants were extremely careful to prevent any disclosure of Dr. Thomas's conversations with Ricoh.

After they were given access to the correspondence, Ricoh's counsel then shifted their position to argue that further investigation of the internal communications of Defendants' counsel was required because, they alleged, Defendants' counsel had lied to the Court about what Dr. Thomas had told them about his communications with Ricoh. The e-mail correspondence and Dr. Thomas's testimony demonstrated, however, that Defendants' counsel did not mislead the Court, but were accurate when they told Judge Sleet that they had inquired into whether Dr. Thomas received confidential information

---

[1] Prior to the initiation of the Delaware lawsuit, Dr. Thomas had briefly served as a consultant for Ricoh, advising them on the substance of various prior art papers. *See* Campbell Decl. Ex. B at 7, 30. In March of 2003, Dr. Thomas told Ricoh's attorneys that he would not testify for Ricoh at trial. *See* Campbell Decl. Ex. B at 26, 30; Ex. A at 44:16–46:4. Dr. Thomas explained at his deposition that he had formed opinions about the patents and that those opinions were the basis for "the comment that I made in March to counsel." *See* Campbell Decl. Ex. A at 61:6 – 62:7. Since the only conversation with Ricoh in March that Dr. Thomas has described was his announcement that he would not appear as a witness for Ricoh, it appears that Dr. Thomas concluded that the Ricoh case was not meritorious. *See* Campbell Decl. Ex. A at 44:16-45:15, Ex. B at 26. Ricoh's counsel, who would know, also suggested to Judge Sleet that Dr. Thomas holds unfavorable opinions of their case that have been expressed in confidential communications with Ricoh. *See* Campbell Decl. Ex. C at 26:9-20.

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-2-

from Ricoh that might create a conflict of interest and that Dr. Thomas had told Defendants' counsel that he had received only published or publicly available documents.

Judge Sleet did not have access to any of this discovery at the time of his August 28 Order.[2] Since Ricoh's accusations are unsupported by the evidence, Defendants believe that there is no reason for *in camera* examination of the internal communications of Defendants' counsel regarding retention of Dr. Thomas. The internal communications of Defendants' counsel are protected by the work product doctrine. Although Ricoh has argued that Defendants' counsel may have committed fraud on the Court, it has made no factual showing under the crime-fraud exception that the conditions required for breaching these privileges have been met. See, Ekeh v. Hartford Fire Ins. Co., 39 F. Supp. 2d 1216, 1219 (N.D. Cal. 1999) (before reviewing documents in camera, party challenging privilege must establish " 'a factual basis adequate to support a good faith belief by [sic] reasonable person that in camera review [sic] the materials may reveal evidence' that the crime fraud exception applies.") citing United States v. Zolin 491 U.S. 554, 109 S. Ct 2619 (1989). Nonetheless, the documents that are the subject of Judge Sleet's order accompany this notice in a sealed envelope. The Defendants respectfully request that the Court only open this sealed envelope if deemed necessary after reading this notice.

## BACKGROUND OF THE DISPUTE

Dr. Thomas was one of the principal developers of the Design Automation Assistant logic synthesis system, which Defendants believe is prior art to the patent that Ricoh is asserting in this case. On March 31, Defendants first contacted Dr. Thomas by email and asked whether he was available to serve as a consultant to the defense. *See* Ex. B at 1. Dr. Thomas responded by email and told

---

[2] We have, therefore, attached all of the relevant materials as Exhibits to the Declaration of Louis Campbell that accompanies this notice. Exhibit A attaches the August 15, 2003, deposition testimony of Dr. Donald Thomas. Exhibit B includes the Defendants' production of communications between Defendants' counsel and Dr. Thomas. Exhibit C contains a transcript of the August 28, 2003 hearing before Judge Sleet. Exhibit D contains a transcript of the July 30, 2003 hearing before Judge Sleet. Exhibit E is a letter dated August 5, 2003 from Mr. Kelley to Mr. Hoffman. Exhibit F is an July 22, 2003, facsimile from Mr. Campbell to Mr. Meilman. Exhibit G is a letter from Mr. Whetzel to Mr. DiGiovanni enclosing a declaration of Mr. Monsey regarding Ricoh's communications with Dr. Thomas. Hereinafter, all references to Exhibits should be understood to be references to the Exhibits to the Campbell declaration.

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-3-

Defendants counsel that he had done related work for Ricoh, and Defendants counsel did not pursue the matter further at that point. *See* Ex. B at 7, 13.

In June, Defendants subpoenaed Dr. Thomas for documents and testimony relating to the Design Automation Assistant prior art system. Dr. Thomas then contacted Defendants' counsel by e-mail to work out technical issues relating to compliance with the subpoena. See Ex. B at 24. In subsequent email communications with Defendants' counsel, Dr. Thomas explained that he believed his relationship with Ricoh was at an end, and that he could "be of great help to the defense." *See* Ex. B at 30, 36; *see also,* Ex. A at 44:16-46:4; 46:21-47:17.

Wishing, if possible, to obtain Dr. Thomas's assistance, Defendants arranged to retain Dr. Thomas as a consultant. Immediately after Dr. Thomas had signed a retention letter, Defendants informed Ricoh of the agreement and notified Ricoh's counsel that defendants were withdrawing Dr. Thomas's subpoena.[3] Up until this point there had been no oral communications of any kind between Defendants' counsel and Dr. Thomas. By a letter dated July 22, 2003, Ricoh's counsel objected to Defendants' retention of Dr. Thomas as a consultant and asserted that Dr. Thomas was in possession of Ricoh's confidential and privileged information. Thereafter, in a short five minute conversation, Mr. Louis Campbell, counsel for Defendants, asked Dr. Thomas questions intended to verify that Dr. Thomas had not received from Ricoh any work product information that might prevent him from consulting for Defendants. This was the only oral communication between Dr. Thomas and Defendants' counsel. *See* Ex. B at 45-48, 51-52 and July 23 conversation described in cover letter that accompanies Ex. B documents; Ex. E. Defendants' counsel was careful not to elicit and cautioned Dr. Thomas not to disclose the substance of any communications with Ricoh or even an identification of any documents received by Dr. Thomas but only the types of documents and whether they were public or not. See Ex. B at 51. Dr. Thomas responded by email that he had received only public, non-confidential documents. *See* Ex. B at 52.

---

[3] Unfortunately, a mistake was made and Ricoh's counsel had not been immediately supplied with a copy of this deposition notice and subpoena. Ricoh has suggested that there was a nefarious motive for this accident, but this is contrary to the evidence. Ricoh first learned about the subpoena when Defendants' counsel referred to it in this subsequent communication with Ricoh's counsel withdrawing Dr. Thomas's deposition. Had Defendants' counsel intended to conceal the subpoena it would not make any sense for them to reveal the existence of the subpoena in a subsequent letter. See Ex. F.

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-4-

Ricoh strenuously objected to Defendants' retention of Dr. Thomas and asked the Court for a hearing on the matter, which was held on July 30. During the hearing, Ricoh represented that it had disclosed, to Dr. Thomas, counsel's opinions and litigation strategy and Ricoh's counsel stated that they had a declaration to that effect. Ricoh's counsel stated that they believed that Dr. Thomas had a conflict of interest and they were concerned that their confidential information had been communicated to Defendants' counsel. At the end of the hearing, Judge Sleet ordered Defendants' counsel to produce copies of their correspondence with Dr. Thomas and ordered Dr. Thomas to appear for a deposition limited to the subject matter of his dealings with Defendants' counsel. The correspondence was produced and Dr. Thomas's testimony was taken, and both demonstrated that there had been no communication of any Ricoh confidences from Dr. Thomas to Defendants' counsel. On August 20, six days after Dr. Thomas's deposition, Ricoh's counsel provided to defendants' counsel, for the first time, the Declaration of Christopher A. Monsey regarding Ricoh's counsel's relationship and communications with Dr. Thomas.

Thereafter, hoping to put the matter to rest, Defendants' counsel decided they would not use Dr. Thomas as a consultant and would instead take his deposition as a fact witness. Ricoh, however, raised the issue with the Court again during a telephone conference held on August 28, in which a variety of different discovery issues were addressed. On this occasion, Ricoh asked the Court to conduct an *in camera* inspection of Defendants' internal communications regarding Dr. Thomas's retention. Ricoh told Judge Sleet that there was a contradiction between what Defendants' counsel had told the court in the July 30 hearing about counsel's conversations with Dr. Thomas and what Dr. Thomas had testified about those conversations. The record demonstrates, however, that what Defendants' counsel said on July 30 was perfectly consistent with Dr. Thomas's later testimony regarding those communications. *Compare* Ex. D at 14:14-15:21 with Ex. A at 70:18-71:15, 73:23-76:15 and Ex. B at 51-52. Unfortunately, Judge Sleet did not have access to any of the documentary or testimonial evidence. Acting on Ricoh's characterization of the evidence, he granted Ricoh's request and ordered Defendants' counsel to produce its internal communications for *in camera* review. The very next day, before Defendants had an opportunity to present the requested documents, the Delaware court transferred the case to this District.

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-5-

## DR. THOMAS'S TESTIMONY IS ENTIRELY CONSISTENT WITH THE DOCUMENTARY EVIDENCE AND WITH DEFENDANTS' COUNSEL'S STATEMENTS

The documentary materials produced and the deposition testimony of Dr. Thomas are consistent with Defendants' assertion that Defendants did not receive any confidential information from Dr. Thomas. In addition, Dr. Thomas's testimony, rather than contradicting what Defendants' counsel told Judge Sleet, is entirely consistent with it.

**A.   Defendants did not receive any confidential information from Dr. Thomas.**

The communications between Defendants' counsel and Dr. Thomas demonstrate that there was nothing improper or untoward in Defendants' counsel's communications with Dr. Thomas.

As described above, Defendants' counsel did not have any substantive communications with Dr. Thomas. In July of 2003, before Defendants' counsel attempted to use Dr. Thomas in a consulting capacity, they inquired into what types of materials he had received from Ricoh to determine whether Dr. Thomas had received attorney work product or other confidential information about Ricoh's case strategy. Dr. Thomas told counsel that he had received only non-confidential material from Ricoh's attorneys. *See* Ex. B at 52; *see also,* Summary of July 23 conversation contained in August 5 letter from Mr. Kelley to Mr. Hoffman in Ex. E. When Ricoh's counsel questioned Dr. Thomas about this during the deposition, Dr. Thomas explained that there was nothing confidential in what he had communicated to Ricoh:

> I feel that my work for Ricoh was in patent analysis. I taught them certain things as if they had come to a classroom and I taught them something. They would ask a question, I would explain something. If somebody else asked me those same questions, as people have done over the years and people will over other years, I would feel free to answer those questions.

Ex. A at 35:2-8. *See also,* Ex. A at 70:18-71:15.

Dr. Thomas testified that Defendants' counsel took pains to avoid eliciting any information about the substance of Dr. Thomas's communications with Ricoh, and Dr. Thomas was careful not to provide any such information. *See* Ex. A at 72:11–76:15.

**B.   Defendants' representations to Judge Sleet were consistent with Dr. Thomas's testimony.**

Ricoh's justification for asking the Court to do an *in camera* review of Defendants' internal communication was its allegation that Defendants' counsel must have misled the Delaware court when

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-6-

counsel told the court that Dr. Thomas had told them that he had not received any confidential information from Ricoh. *See* Ex. C at 28:15–29:16. This allegation, however, is unfounded.

Defendants' counsel told Judge Sleet that they had inquired into whether Dr. Thomas had received anything confidential from Ricoh or talked to Ricoh about case strategy. *See* Ex. D at 14:14 – 16:3. Defendants have described that these questions were asked in the July 23 telephone conference. *See* Summary of July 23 conversation contained in August 5 letter from Mr. Kelley in Ex. E. Dr. Thomas's testimony was perfectly consistent with this account. He testified that Defendants' counsel had specifically asked whether he had received confidential information and he had responded that the information he had received was a collection of public, non-confidential documents. *See* Ex. A at 70:18–71:15, 72:11–73:7, 75:8–75:25; Ex. B at 51-52. Defense counsel assumed that, if Dr. Thomas believed that he had received information about case strategy, he would have so stated in response to Defendants' counsel's question of whether he had received any confidential information from Ricoh. There was no opportunity for Defendants' counsel to confirm this fact or make any follow-up inquiry since Judge Sleet ordered at the July 30 hearing that Defendants' counsel should have no further contact with Dr. Thomas until the matter was resolved. Dr. Thomas did testify that he had never told Defendants' counsel that he believed that he received "confidential information" in any of his conversations with Ricoh. *See* Ex. A at 76:9-12. Far from being inconsistent, Dr. Thomas's testimony corroborates what Defendants' counsel told the Delaware court.[4]

Despite Ricoh's assertions, Defendants' counsel did not suggest to Judge Sleet that Dr. Thomas had never discussed the merits of Ricoh's patent with Ricoh – what Defendants' counsel argued was that the possibility that Dr. Thomas had expressed opinions about prior art to Ricoh's counsel did not, in itself, create a conflict of interest that would disqualify Dr. Thomas from serving as a consultant to Defendants. *See* Ex. D at 19:16 – 20:2.

---

[4] Dr. Thomas did testify that he had "confidential" communications with Ricoh, but explained that he regarded the identification of any materials received from Ricoh as confidential, regardless of whether the materials received were public or not. Dr. Thomas did not disclose to Defendants' counsel the identification of the materials he received from Ricoh. *See* Ex. A at 75:8-25.

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-7-

## CONCLUSION

Defendants do not believe that there is any reason for further inquiry into this matter. Defendants' counsel are supplying to the Court, with this notice a copy of the documents requested by Judge Sleet. A copy of this notice, and the accompanying declaration of Louis Campbell, has been served on counsel for Ricoh, but the documents provided for *in camera* review contain attorney work product and have not been given to Ricoh's counsel.

Dated: October 30, 2003

Respectfully submitted,

HOWREY SIMON ARNOLD & WHITE, LLP

By: /s/ Christopher L. Kelley
Teresa M. Corbin
Christopher Kelley
Thomas Mavrakakis
Erik K. Moller

Attorneys for Defendants
AEROFLEX INCORPORATED,
AMI SEMICONDUCTOR, INC.,
MATROX ELECTRONIC SYSTEMS, LTD.,
MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and
MATROX TECH, INC.

HOWREY SIMON ARNOLD & WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-8-