1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, California 94025
   Telephone:  (650) 463-8100
5  Facsimile:  (650) 463-8400

6  Attorneys for Defendants AEROFLEX INC., et al.

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12                                    )  Case No. CV 03-04669 MJJ
                                      )
13  RICOH COMPANY LTD.,               )  **DECLARATION OF ERIK K. MOLLER IN**
                                      )  **SUPPORT OF DEFENDANTS' MOTION TO**
14          Plaintiff,                )  **STAY RICOH'S CUSTOMER SUIT**
                                      )
15      v.                            )  Date:     December 16, 2003
                                      )  Time:     9:30 a.m.
16  AEROFLEX INC., ET AL.,            )  Place:    Courtroom 11, 19th Floor
                                      )
17          Defendants.               )
    _____ )

18

19

20      I, Erik K. Moller, hereby declare as follows:

21      1.      I am an attorney at law licensed to practice in the State of California and an associate of

22  the law firm of Howrey Simon Arnold & White, LLP, attorneys for defendants Aeroflex Incorporated

23  ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox

24  Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech,

25  Inc. ("Matrox Tech") (collectively "Delaware defendants").  The matters set forth in this declaration

26  are based upon my personal knowledge, except where otherwise indicated, and if called as a witness, I

27  could and would testify competently thereto.

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
MOLLER DECL. ISO MOTION TO STAY

2.      Attached hereto as Exhibit A is a true and correct copy of the Memorandum and Order dated August 29, 2003 and filed in *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil Action No. 03-103-GMS.

3.      Attached hereto as Exhibit B are true and correct copies of pages 1-8 and 35-60 from the July 15, 2003 deposition of Hisashi Ishijima taken in *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil Action No. 03-103-GMS.

4.      Attached hereto as Exhibit C is a true and correct copy of Plaintiff's Answers to Defendant Aeroflex Incorporated's First Set of Interrogatories (1-11) dated July 15, 2003 July 21, 2003 in *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil Action No. 03-103-GMS.

5.      Attached hereto as Exhibit D is a true and correct copy of the Declaration of Alan MacPherson in Support of Defendants' Motion to Stay or, in the Alternative, Transfer dated June 10, 2003 and filed in *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil Action No. 03-103-GMS.

6.      Attached hereto as Exhibit E are true and correct copies of letters from Gary M. Hoffman to Steve McMinn of Chip Express Corporation and Kuang Chiu from Winbond America dated March 7, 2003.

7.      Attached hereto as Exhibit F is a true and correct copy of the Order Denying Defendant's Motion to Dismiss or, in the Alternative, Stay or Transfer dated September 22, 2003 and filed in *Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. C 03-2289 MJJ.

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                                    -2-
MOLLER DECL. ISO MOTION TO STAY

8.    The Delaware defendants agree to be bound by the outcome of Synopsys's declaratory judgment action against Ricoh on issues relating to Synopsys's Design Compiler® software, including whether the ordinary use of Design Compiler® infringes the '432 patent and invalidity.

9.    Ricoh has propounded two sets of interrogatories totaling 11 interrogatories, two sets of document requests totaling 42 document requests, one set of requests for admissions totaling 20 requests for admission, and six deposition notices on the Delaware defendants to date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed in Menlo Park, California on November 7, 2003.


                                                    ___/s/_____
                                                    Erik K. Moller

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                    -3-
MOLLER DECL. ISO MOTION TO STAY



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICOH COMPANY, LTD,       )
                                 )
         Plaintiff,      )
                                 )
      v.                      )     Civil Action No. 03-103 GMS
                                 )
AEROFLEX INCORPORATED, AMI    )
SEMICONDUCTOR, INC., MATROX    )
ELECTRONIC SYSTEMS, LTD.,      )
MATROX GRAPHICS, INC., MATROX  )
INTERNATIONAL CORP., and MATROX )
TECH, INC.,                  )
                                 )
         Defendants.     )

FILED

AUG 29 2003

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## MEMORANDUM AND ORDER

### I.    INTRODUCTION

On January 21, 2003, the plaintiff, Ricoh Company, Ltd. ("Ricoh") filed the above-captioned

patent infringement action against the above-named defendants. In its complaint, Ricoh alleges that

each of the defendants infringes its U.S. Patent No. 4,992,432 ("the '432" patent") by "using,

offering to sell, and/or by selling and/or importing into the United States application specific

integrated circuits designed by or using information generated by, the process" described in the '432

patent.

Presently before the court is the defendants' motion to stay this action, or, in the alternative,

to transfer this action to the United States District Court for the Northen District of California

pursuant to 28 U.S.C. § 1404. For the following reasons, the court will grant the defendants' motion

to transfer.

### II.    BACKGROUND

This case is a patent infringement action involving technology related to the design of

application-specific integrated circuits ("ASICS").   ASICS are microelectronic devices that electronics manufacturers design for a specific function, for example, for use in graphics and telecommunications devices.

The defendant Aeroflex Incorporated ("Aeroflex") is a high technology company that designs, develops, manufactures, and markets a diverse range of microelectronics. Its principle place of business is in Plain View, New York.  AMI Semiconductor, Inc. ("AMI") is a high technology company that designs, develops, and manufactures a broad range of integrated circuit products for a number of end-uses.  Its principle place of business is in Idaho.  The Matrox defendants are high technology companies that design software and hardware solutions in the fields of graphics, video editing, image processing, and new business media.  The Matrox defendants' principle places of business are in Canada, New York, and Florida.

Ricoh is a high technology corporation that manufactures digital office equipment.  Its principle place of business is in Japan.  While the record does not reflect that Ricoh has any facilities in Delaware, it has six subsidiaries in California, including three within the Northern District of California.

Third-party Synopsys, Inc. ("Synopsys") is a designer and manufacturer of high-level design automation solutions for the design of integrated circuits and electronic systems.  Synopsys sells its products, including the Design Compiler at issue in the present case, to semiconductor, computer, communications, consumer electronics, and aerospace companies, including each of the defendants. Its principle place of business is in California.

On July 9, 2002, Synopsys filed a declaratory judgment action against Ricoh in the Northern District of California.  Through that action, Synopsys seeks a declaration of non-infringement and

2

invalidity of the '432 patent.

## III.    DISCUSSION

Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). It is the movants' burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.*. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum.[1] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

---

[1] The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998).

In the present case, Ricoh disputes that this action could have been brought in the Northern District of California due to a lack of personal jurisdiction over the defendants. While it is not this court's province to determine another court's jurisdiction, and it therefore expresses no opinion on this subject, the court will, however, note the following. The defendants assert that they have each registered to do business with the California Secretary of State or have solicited and made allegedly infringing sales in California. Additionally, as the defendants themselves have stated that litigating this action in California would be more convenient and preferable to them, it does not appear that a California court's exercise of personal jurisdiction over them would offend the minimum requirements inherent in the concept of fair play and substantial justice.

Ricoh next contends that it would be improper to transfer this action to California because the Delaware action is first-filed. While the court does not dispute that this action is first-filed, it concludes that an exception to this rule controls the present inquiry. Under Federal Circuit precedence, a manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This rule, known as the "customer suit exception," recognizes that it is more efficient for the dispute to be settled directly between the parties in interest. *See Whelan Tech., Inc. v. Mill Specialities, Inc.*, 741 F. Supp. 715, 716 (N.D. Ill. 1990) (noting that the manufacturer is presumed to have a greater interest in defending its actions against charges of patent infringement.) It also acknowledges that a patentee's election to sue customers, rather than the manufacturer itself, is often based on a desire to intimidate smaller businesses. *See Kahn v. General Motors, Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).

4

In the present case, the court concludes that Ricoh's infringement claims against the defendants are fundamentally claims against the ordinary use of Synopsys' Design Compiler. Thus, the California court's determination regarding infringement and validity of the '432 patent will efficiently dispose of the infringement issues regarding Synopsys' customers in this case. It is clear that, based on the outcome of the California case, either Synopsys will prevail and use of the Design Compiler will be determined to be non-infringing, or Ricoh will prevail, and Synopsis will be forced to pay damages or license the patent. In the latter situation, Synopsys' customers would then be immunized from liability. *See Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). For these reasons, the court finds that the first-filed rule does not control the present inquiry.

Upon consideration of the remaining Section 1404 transfer factors, the court concludes that the balance of convenience tips heavily in favor of transfer. In reaching this conclusion, the court relied on the following considerations, among others: (1) no party maintains any facilities, personnel, or documents in Delaware; (2) no acts of alleged infringement have taken place in Delaware; (3) no relevant third-party witnesses, including Synopsys, reside in Delaware;[2] (4) both the present case and the case in the Northern District of California are in the relatively early stages of litigation; (5) the relevant industry, the electronic design automation industry, is located in the Northern District of California; and (6) any disparity in court congestion, to the extent there is any, is not so great as to weigh against transfer due to the action currently pending in the Northern District. Thus, the court finds that the public and private interests are sufficient to tip the balance

---

[2]Although Ricoh predicts that Synopsys will cooperate with whatever discovery of it is required in the present action, even though it is not a party, the court finds such an assertion suspect at best.

of convenience strongly in favor of transfer.[3]

## IV.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    The Defendants' Motion to Transfer (D.I. 67) is GRANTED.

2.    Ricoh's Request for Leave to File a Sur-Reply (D.I. 122) is DENIED.

3.    The above-captioned case is hereby TRANSFERRED to the United States District

Court for the Northern District of California.

Dated: August _29_, 2003

UNITED STATES DISTRICT JUDGE

---

[3]As a result of the court's decision to transfer this case, it will not decide the Section 271(g) discovery dispute presently pending before it.

6

1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Erik K. Moller (SBN 147674)
   HOWREY SIMON ARNOLD & WHITE, LLP
3  301 Ravenswood Avenue
   Menlo Park, California  94025
4  Telephone:  (650) 463-8100
   Facsimile:  (650) 463-8400
5

6  Attorneys for Defendant Aeroflex, Inc., et al.

7

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10

11
   RICOH COMPANY LTD.,                  )  Case No. CV 03-04669 MJJ
12                                       )
            Plaintiff,                   )
13                                       )  **EXHIBITS TO DECLARATION OF ERIK**
        vs.                              )  **K. MOLLER IN SUPPORT OF**
14                                       )  **DEFENDANTS' MOTION TO STAY**
   AEROFLEX INC., ET AL.                 )  **RICOH'S CUSTOMER SUIT**
15                                       )
            Defendant.                   )
16                                       )
                                         )
17                                       )
                                         )
18  _____  )
                                         )
19

20              **NOTICE OF PAPER FILING**

21

22     **PURSUANT TO PROTECTIVE ORDER FILED JUNE 9, 2003**
       **IN *RICOH COMPANY, LTD. V. AEROFLEX, INC., ET AL.*,**
23                   **CASE NO. 03-103-GMS**

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
Notice of Paper Filing

1    The following documents filed by Plaintiff Synopsys, Inc. ("Synopsys") on this date are in

2    paper form only and are being maintained in the case file in the Clerk's office:

3        1.    Exhibit B to, a true and correct copy of pages 1-8 and 35-60 from the July 15, 2003

4    deposition of Hisashi Ishijima taken in *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil

5    Action No. 03-4669MMC pending in the United Stated District Court for the Northern District of

6    California to Declaration of Erik Moller in Support of Defendants' Motion to Stay Ricoh's Customer

7    Suit;

8        2.    Exhibit C, a true and correct copy of Plaintiff's Answers to Defendant AMI

9    Semiconductor, Inc.'s First Set of Interrogatories (1-2) dated July 15, 2003 July 21, 2003 in *Ricoh*

10   *Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil Action No. 03-4669MMC pending in the United

11   Stated District Court for the Northern District of California to Declaration of Erik Moller in Support of

12   Defendants' Motion to Stay Ricoh's Customer Suit.

13       3.    Exhibit D, a true and correct copy of the Declaration of Alan MacPherson in Support of

14   Defendants' Motion to Stay or, in the Alternative, Transfer dated June 10, 2003 and filed in *Ricoh*

15   *Company, Ltd. v. Aeroflex Incorporated, et al.,* Civil Action No. 03-103-GMS.

16       These documents contain confidential information of Ricoh Company, Ltd.

17   Dated: November 7, 2003            HOWREY SIMON ARNOLD & WHITE, LLP

18

19

20                                     By:    ___/s/_____
                                              Erik K. Moller
21                                            Attorneys for Plaintiff
                                              Synopsys, Inc.
22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                    -2-
Notice of Paper Filing



1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Erik K. Moller (SBN 147674)
   HOWREY SIMON ARNOLD & WHITE, LLP
3  301 Ravenswood Avenue
   Menlo Park, California  94025
4  Telephone:  (650) 463-8100
   Facsimile:  (650) 463-8400
5
6  Attorneys for Defendant Aeroflex, Inc., et al.

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  RICOH COMPANY LTD.,                 )  Case No. CV 03-04669 MJJ
                                        )
13          Plaintiff,                  )
                                        )  **EXHIBITS TO DECLARATION OF ERIK
14      vs.                             )  K. MOLLER IN SUPPORT OF
                                        )  DEFENDANTS' MOTION TO STAY
15  AEROFLEX INC., ET AL.               )  RICOH'S CUSTOMER SUIT
                                        )
16          Defendant.                  )
                                        )
17                                      )
                                        )
18  _____    )
                                        )
19

20              **NOTICE OF PAPER FILING**

21

22  **PURSUANT TO PROTECTIVE ORDER FILED JUNE 9, 2003
    IN *RICOH COMPANY, LTD. V. AEROFLEX, INC., ET AL.*,**
23              **CASE NO. 03-103-GMS**

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
Notice of Paper Filing

1    The following documents filed by Plaintiff Synopsys, Inc. ("Synopsys") on this date are in

2 paper form only and are being maintained in the case file in the Clerk's office:

3    1.    Exhibit B to, a true and correct copy of pages 1-8 and 35-60 from the July 15, 2003

4 deposition of Hisashi Ishijima taken in *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil

5 Action No. 03-4669MMC pending in the United Stated District Court for the Northern District of

6 California to Declaration of Erik Moller in Support of Defendants' Motion to Stay Ricoh's Customer

7 Suit;

8    2.    Exhibit C, a true and correct copy of Plaintiff's Answers to Defendant AMI

9 Semiconductor, Inc.'s First Set of Interrogatories (1-2) dated July 15, 2003 July 21, 2003 in *Ricoh*

10 *Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil Action No. 03-4669MMC pending in the United

11 Stated District Court for the Northern District of California to Declaration of Erik Moller in Support of

12 Defendants' Motion to Stay Ricoh's Customer Suit.

13    3.    Exhibit D, a true and correct copy of the Declaration of Alan MacPherson in Support of

14 Defendants' Motion to Stay or, in the Alternative, Transfer dated June 10, 2003 and filed in *Ricoh*

15 *Company, Ltd. v. Aeroflex Incorporated, et al.,* Civil Action No. 03-103-GMS.

16    These documents contain confidential information of Ricoh Company, Ltd.

17
   Dated:  November 7, 2003                HOWREY SIMON ARNOLD & WHITE, LLP
18

19

20                                    By:    /s/
                                          Erik K. Moller
21                                        Attorneys for Plaintiff
                                          Synopsys, Inc.
22

23

24

25

26

27

28



1   Teresa M. Corbin (SBN 132360)
    Christopher Kelley (SBN 166608)
2   Erik K. Moller (SBN 147674)
    HOWREY SIMON ARNOLD & WHITE, LLP
3   301 Ravenswood Avenue
    Menlo Park, California  94025
4   Telephone:  (650) 463-8100
    Facsimile:  (650) 463-8400
5
6   Attorneys for Defendant Aeroflex, Inc., et al.

7

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10

11
    RICOH COMPANY LTD.,                )  Case No. CV 03-04669 MJJ
12                                      )
            Plaintiff,                  )
13                                      )  **EXHIBITS TO DECLARATION OF ERIK**
        vs.                             )  **K. MOLLER IN SUPPORT OF**
14                                      )  **DEFENDANTS' MOTION TO STAY**
    AEROFLEX INC., ET AL.               )  **RICOH'S CUSTOMER SUIT**
15                                      )
            Defendant.                  )
16                                      )
                                        )
17                                      )
                                        )
18  ─────────────────────────────────  )
                                        )
19

20              **NOTICE OF PAPER FILING**

21

22      **PURSUANT TO PROTECTIVE ORDER FILED JUNE 9, 2003**
        **IN *RICOH COMPANY, LTD. V. AEROFLEX, INC., ET AL.,***
23              **CASE NO. 03-103-GMS**

24

25

26

27

28

HOWREY        Case No. CV 03-04669 MJJ
SIMON         Notice of Paper Filing
ARNOLD &
WHITE

1    The following documents filed by Plaintiff Synopsys, Inc. ("Synopsys") on this date are in

2 paper form only and are being maintained in the case file in the Clerk's office:

3    1.    Exhibit B to, a true and correct copy of pages 1-8 and 35-60 from the July 15, 2003

4 deposition of Hisashi Ishijima taken in *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil

5 Action No. 03-4669MMC pending in the United Stated District Court for the Northern District of

6 California to Declaration of Erik Moller in Support of Defendants' Motion to Stay Ricoh's Customer

7 Suit;

8    2.    Exhibit C, a true and correct copy of Plaintiff's Answers to Defendant AMI

9 Semiconductor, Inc.'s First Set of Interrogatories (1-2) dated July 15, 2003 July 21, 2003 in *Ricoh*

10 *Company, Ltd., v. Aeroflex Incorporated, et al.*, Civil Action No. 03-4669MMC pending in the United

11 Stated District Court for the Northern District of California to Declaration of Erik Moller in Support of

12 Defendants' Motion to Stay Ricoh's Customer Suit.

13    3.    Exhibit D, a true and correct copy of the Declaration of Alan MacPherson in Support of

14 Defendants' Motion to Stay or, in the Alternative, Transfer dated June 10, 2003 and filed in *Ricoh*

15 *Company, Ltd. v. Aeroflex Incorporated, et al.,* Civil Action No. 03-103-GMS.

16    These documents contain confidential information of Ricoh Company, Ltd.

17
Dated:  November 7, 2003                    HOWREY SIMON ARNOLD & WHITE, LLP
18

19

20                                          By:    /s/
21                                                 Erik K. Moller
                                                   Attorneys for Plaintiff
22                                                 Synopsys, Inc.

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
Notice of Paper Filing                        -2-

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 828-2228
E-Mail Address: HoffmanG@dsmo.com

March 7, 2003

**BY CERTIFIED MAIL-**
**RETURN RECEIPT REQUESTED**

Mr. Steve McMinn
President & CEO                                    **CONFIDENTIAL TREATMENT**
Chip Express Corporation                                        **REQUESTED**
2323 Owen Street
Santa Clara CA 95054

Dear Mr. McMinn:

We are writing to you on behalf of Ricoh Company Ltd. because we are aware
that your company is involved with the design of custom ICs that include application
specific designed circuitry. We understand that in designing these circuits, you use a
computer-aided design system obtained from Synopsys, including Design Compiler.

As you may know, Ricoh owns two of the basic patents directed to computer-
aided design processes. These are U.S. Patent Nos. 4,922,432 and 5,197,016. They cover
significant advances in computer-aided design processes for designing custom designed ICs
for specific applications directly from architecture independent functional specifications for
the integrated circuit. We are enclosing copies of these patents for your information.

While Ricoh is currently enforcing these patents in a lawsuit it recently filed in
the U.S. District Court for the District of Delaware, Ricoh remains willing to license the
patents. In fact, Ricoh has already granted non-exclusive licenses under these patents.
Ricoh also would be willing to provide your company with a non-exclusive license. For
your information, there are counterpart patents and applications in a number of countries
outside the United States.

Because Ricoh is at an early stage in its licensing activities, at the current time,
Ricoh is prepared to grant a non-exclusive license on favorable terms. However, we trust
you will recognize that such favorable terms will cease to exist as time progresses.

If you are of the opinion that you do not need or want a license from Ricoh, it
would be helpful if you would give us some insight into your reasons. We request your
response within 60 days from the date of this letter.

Very truly yours,

Gary M. Hoffman

1177 Avenue of the Americas • New York, New York 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
www.legalinnovators.com

1574342 v1: XQRQ01!.DOC

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 828-2228*
*E-Mail Address: HoffmanG@dsmo.com*

March 7, 2003

**BY CERTIFIED MAIL-**
**RETURN RECEIPT REQUESTED**

Mr. Kuang Chiu
President                                    **CONFIDENTIAL TREATMENT**
Winbond America                                          **REQUESTED**
2727 North First Street
San Jose CA 95134

Dear Mr. Chiu:

We are writing to you on behalf of Ricoh Company Ltd. because we are aware that your company is involved with the design of custom ICs that include application specific designed circuitry. We understand that in designing these circuits, you use a computer-aided design system obtained from Synopsys, including Design Compiler.

As you may know, Ricoh owns two of the basic patents directed to computer-aided design processes. These are U.S. Patent Nos. 4,922,432 and 5,197,016. They cover significant advances in computer-aided design processes for designing custom designed ICs for specific applications directly from architecture independent functional specifications for the integrated circuit. We are enclosing copies of these patents for your information.

While Ricoh is currently enforcing these patents in a lawsuit it recently filed in the U.S. District Court for the District of Delaware, Ricoh remains willing to license the patents. In fact, Ricoh has already granted non-exclusive licenses under these patents. Ricoh also would be willing to provide your company with a non-exclusive license. For your information, there are counterpart patents and applications in a number of countries outside the United States.

Because Ricoh is at an early stage in its licensing activities, at the current time, Ricoh is prepared to grant a non-exclusive license on favorable terms. However, we trust you will recognize that such favorable terms will cease to exist as time progresses.

If you are of the opinion that you do not need or want a license from Ricoh, it would be helpful if you would give us some insight into your reasons. We request your response within 60 days from the date of this letter.

Very truly yours,

Gary M. Hoffman

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.legalinnovators.com*

1580782 v1; XVQM01!.DOC

E-filing

**FILED**

SEP 2 2 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | No.  C 03-2289 MJJ |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY OR TRANSFER** |
| RICOH COMPANY, LTD., | |
| Defendant. | |

## INTRODUCTION

Before the Court is Ricoh Company, Ltd.'s ("Defendant") motion to dismiss or, in the alternative, stay or transfer the above-entitled action.  In order to resolve this motion, the Court must determine whether: (1) Defendant is subject to personal jurisdiction in this forum; (2) this action presents an actual case or controversy; and (3) the District of Delaware is a more ideal forum for this action.  Having considered the briefing in this matter and listened to argument from the parties, the Court **DENIES** Defendant's motion in its entirety.

## FACTUAL BACKGROUND

Plaintiff is incorporated in Delaware and maintains its headquarters in this district. Opposition to Motion to Dismiss or, in the Alterative, Stay or Transfer ("Opposition") at 23:9-11.  It is the industry-leading provider of "logic synthesis software," which is used in the process of designing application specific integrated circuits ("ASICs").  ASICs are typically designed by the companies that intend to use them in consumer products or electrical devices, but are manufactured under contract by semiconductor foundries.  These foundries require that the ASIC designs that they

United States District Court
For the Northern District of California

1  fabricate be designed using "foundry library cells" contained in a library provided by the particular

2  foundry. These library cells are typically quite primitive in function and are not equipt to design

3  circuits of any complexity. *Id.* 2:22-2:1.

4      Thus, instead of constructing their designs from foundry library cells, circuit designers

5  describe their target circuits using a type of computer language called hardware descriptive language

6  ("HDL"). A circuit designer uses HDL to describe how the desired electrical circuit can be

7  composed from a collection of components, or cells, from the "design library." The cells in the

8  design library have significantly greater functionality than foundry library cells, and correspond to

9  larger, more significant circuit elements. *Id.* at 3:2-9.

10      When a circuit designer has completed an HDL description of the target ASIC, this HDL

11  description can be provided as an input to logic synthesis software to derive an equivalent circuit

12  construction from the particular set of "foundry library cells" provided by the foundry that the

13  designer intends to use. The output of the logic synthesis software can then be supplied to the

14  foundry for generation of the desired ASIC. *Id.* at 3:10-14.

15      Plaintiff's most widely used logic synthesis software product is called Design Compiler.

16  Circuit designers using Design Compiler first construct an HDL description of the intended circuit

17  utilizing cells drawn from Plaintiff's design library called DesignWare. Design Compiler then takes

18  HDL that utilizes circuit cells found in DesignWare and produces circuits based upon cells from the

19  foundry library used by the contract foundry. *Id.* at 3:15-19.

20      Defendant is a Japanese corporation headquartered in Tokyo. It manufactures digital office

21  equipment, including copiers, printers, facsimile machines, personal computers, and digital cameras.

22  Declaration of Erik Moller ("Moller Decl."), Exh. F (Ricoh 2003 Annual Report). Defendant's

23  "global network" includes 395 wholly-owned subsidiaries (133 domestic; 262 foreign), several of

24  which are located throughout the United States, including California. *Id.*, Exh. E (Ricoh Fact Book)

25  at 18. For example, Ricoh Corporation, Defendant's "the North and South American sales and

26  marketing unit" is headquartered in New Jersey. *Id.*, Exh. I. Ricoh Corporation is also registered to

27  do business in California and maintains its Western Regional Sales Office in Tustin, California. *See*

28  *id.*, Exhs. J, L. In addition to Ricoh Corporation, Defendant maintains at least three other "principle

2

United States District Court
For the Northern District of California

1  overseas operations" in California.[1]

2       On January 21, 2003, Defendant sued six of Plaintiff's customers–designers and

3  manufacturers of computer chips ("Delaware defendants")[2]–in the District of Delaware ("Delaware

4  action"), alleging infringement of process claims described in its United States Patent No. 4,922,432

5  ("'432 patent").[3]  Plaintiff immediately assumed control of the defense of its customers in the

6  Delaware action pursuant to indemnification agreements.  On June 5, 2003, Plaintiff filed an action

7  in this court for a declaratory judgment of non-infringement with regard to the '432 patent and U.S.

8  Patent No. 5,197,016 (the "'016 patent").[4]  Then, on August 29, the Delaware action was transferred

9  to this district.

10       The Court now considers Defendant's motion to dismiss or, in the alternative stay or transfer.

11  **ANALYSIS**

12  **I.**    **Motion to Dismiss**

13      **A.**    **Personal Jurisdiction**

14       "Federal Circuit law governs the issue of personal jurisdiction in patent-related cases."

15  *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1348

16  (Fed. Cir. 2002).  However, in determining whether personal jurisdiction exists over an out-of-state

17  defendant, the Federal Circuit applies the same two-prong analysis as all federal circuits: (1) whether

18  the forum state's long-arm statute permits service of process; and (2) whether the exercise of

19  jurisdiction comports with the requirement of due process.  However, because California's long-arm

20  ─────────────────

21     [1] Ricoh Silicon Valley, Inc., Cupertino (development and marketing); Ricoh Electronics, Inc., Tustin (office equipment and sales); Ricoh Innovations, Inc., Menlo Park (basic and applied research and development ("R&D") and venture capital financing).  *See* Moller Decl., Exh. E at 20-21.

22

23     [2] Aeroflex Incorporated ("Aeroflex"); AMI Semiconductor, Inc. ("AMI"); and Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech Inc. (collectively, "Matrox").

24

25     [3] The '432 describes "a computer-aided design system and method for designing an [ASIC] which enables the user to define functional architecture independent specifications for the integrated circuits and which translates the functional architecture independent specifications into the detailed

26  information need for directly producing the integrated circuit."  *Id.* at Abstract.

27     [4] In the '016 patent describes "[a] computer-aided system and method...for designing an [ASIC] whose intended function is implementation both by a hardware subsystem including hardware elements

28  on the integrated circuit and by a software subsystem including a general purpose microprocessor also on the integrated circuit."  *Id.* at Abstract.  The '016 patent is not at issue in the Delaware action.

3

1  statute is coextensive with the limits of due process, the court need only consider the requirements of

2  due process. *See Dianippon Screen Manufacturing Company, Ltd. v. CFMT, Inc.*, 142 F.3d 1266,

3  1269-70 (Fed. Cir. 1998). In exercising jurisdiction over an out-of-state defendant, due process

4  requires that said defendant "have certain minimum contacts with [the forum] such that the

5  maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

6  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

7      **1.    Minimum Contacts**

8          Under the minimum contacts test, jurisdiction may either be specific or general. Specific

9  jurisdiction exists where the defendant "has purposefully directed his activities at residents of the

10  forum and the litigation results from alleged injuries that arise out of or relate to those activities."

11  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). "General jurisdiction arises when a

12  defendant maintains 'continuous and systematic' contacts with the forum state even when the cause

13  of action has no relation to those contacts." *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d

14  1369, 1375 (Fed. Cir. 2000). Because Plaintiff does not alleged an injury arising out of or related to

15  Defendants activities in this forum, the Court's analysis is limited to one of general jurisdiction.

16          There is no dispute that Defendant, a Japanese Company headquartered in Tokyo, does not

17  have any direct contact with California. However, this fact is not dispositive. In *LSI Industries*, an

18  out-of-state defendant "employ[ed] multiple distributors in...and net[ted] several millions of dollars

19  per year from sales in [the forum]," but never sold any of its allegedly infringing products the state.

20  *Id.* at 1370. Based on these facts, the court held that defendant "maintain[ed] 'continuous and

21  systematic' contacts with [the forum]" and was "subject to general jurisdiction...under the Due

22  Process Clause." *Id.* at 1375.

23          In this case, Defendant has a "global network" of 262 wholly-owned subsidiaries outside of

24  Japan, which consist of sales, manufacturing, and R&D operations. *See* Moller Decl., Exh. E at 18-

25  23. For example, one of Defendant's "principle oversees operations," Ricoh Corporation (*see id.* at

26  20), is described its "North and South American sales and marketing unit...." *See id.*, Exh. I.

27  Although headquartered in New Jersey (*id.*), Ricoh Corporation is registered to do business in

28  California (*see id.*, Exh. L) and maintains a regional sales office in Tustin. *See id.*, Exh. J. In

        **United States District Court**
        For the Northern District of California

1  addition to Ricoh Corporation, Defendant has three other "principle" subsidiaries which are based in

2  California. *Id.*, Exh. E at 18-23. Although the amount of sales in California is unknown, Defendant

3  states that its sales in North and South America equal $2.9 billion. *Id.* Exh. F at 18. Thus, like *LSI*,

4  the Defendant here maintains a significant business presence in the forum (sales, manufacturing, and

5  R&D). Moreover, given the size of California's economy, it is reasonable to assume that Defendant

6  generates substantial sales in this forum as well. Thus, under Federal Circuit precedent, the exercise

7  of personal jurisdiction is proper under these circumstances.

8      *LSI* is also consistent with Ninth Circuit precedent with respect to the doctrine of "general

9  agency." In *Chan v. Society Expeditions, Inc.* 39 F.3d 1398, 1405 (9th Cir. 1994), the court held that

10  "[a] foreign corporation is doing business in [the forum]...when its...representative [in the forum]

11  provides services beyond 'mere solicitation' and these services are sufficiently important to the

12  foreign corporation that if it did not have a representative to perform them, the corporation's own

13  officials would undertake to perform substantially similar services." *Id.* (citation and quotation

14  omitted). In other words, under Ninth Circuit precedent, the question is whether the subsidiary's

15  presence truly substitutes for that of the parent. *See Doe v. Unocal*, 248 F.3d 915, 928-29 (9th Cir.

16  2001). However, day-to-day control is not required. *See Modesto City Schools v. Riso Kagaku*

17  *Corporation*, 157 F.Supp.2d 1128, 1133 (E.D. Cal. 2001) ("day-to-day control is not an element of

18  the general agency test in the Ninth Circuit"). In this case, it is evident that Defendant's multifaceted

19  operations are necessary to its viability in the forum and represent tasks Defendant would have to

20  perform itself but for the existence of its subsidiaries based in this forum or registered to do business

21  here.

22      2.    **Reasonableness**

23      In addition to minimum contacts, the exercise of personal jurisdiction must be reasonable.

24  "The test of unreasonableness is a multi-factored balancing test that weighs any burdens on the

25  defendant against various countervailing considerations, including the plaintiff's interest in a

26  convenient forum and the forum state's interest in resolving controversies flowing from in-state

27  events." *Viam Corporation v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996)

28  (citation omitted). Specifically, courts are to consider (1) the burden on the defendant; (2) the

United States District Court

For the Northern District of California

5

1   interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial

2   system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the

3   states in furthering their social policies. *Id.* However, a finding of unreasonableness is generally

4   limited to "the rare situation in which the plaintiff's interest and the state's interest in adjudicating

5   the dispute in the forum are so attenuated that they are clearly outweighed by the burden of

6   subjecting the defendant to litigation within the forum." *Beverly Hills Fan Company. v. Royal*

7   *Sovereign Corporation*, 21 F.3d 1558, 1568 (Fed Cir. 1994). Upon consideration of these factors,

8   the Court finds that the excise of jurisdiction is reasonable under these circumstances.

9       Therefore, the Court **DENIES** Defendant's motion to dismiss for lack of personal

10  jurisdiction.

11      **B.    Case or Controversy**

12      In order for a federal court to exercise jurisdiction, there must be an actual case or

13  controversy. For a court to proceed in the absence of such would run afoul of the constitutional

14  prohibition against advisory opinions. *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239-

15  40 (1937). In determining whether an actual case or controversy exist in the context of a patent

16  declaratory judgment action, the Federal Circuit employs an objective test, which looks at the

17  conduct of both plaintiff and defendant:

18          First, the defendant's conduct must have created on the part of the plaintiff a *reasonable
            apprehension* that the defendant will initiate suit if the plaintiff continues the allegedly
19          infringing activity. Second, the plaintiff must actually have either produced the device or
            have prepared to produce that device.

20  *Arrowhead Industrial Water, Inc. v. Ecolohem*, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988) (quoting

21  *Goodyear Tire & Rubber Company v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987))

22  (emphasis added).

23      However, the Federal Circuit has stated that this test must "read, applied, and perhaps

24  modified in light of the facts of [the particular case]" *Id.* Thus, in *Arrowhead*, the court distilled the

25  test down to two "core elements": "(1) acts of defendant indicating an intent to enforce its patent;

26  and (2) acts of plaintiff that might subject it or its customers to suit for patent infringement." *Id.* at

27  737.

28

*United States District Court*
For the Northern District of California

6

United States District Court

For the Northern District of California

1          **1.    Defendant's Conduct (Reasonable Apprehension)**

2          In this case, Defendant has unconditionally agreed not to sue Plaintiff for infringement as to

3    any claims in the '432 and '016 patents based upon the products currently produced by Plaintiff. *See*

4    Takiguchi Decl. ¶ 10. Defendant argues that this fact alone is sufficient to negate any reasonable

5    apprehension of suit. *See Super Sack Manufacturing Corporation v. Chase Packaging Corporation*,

6    57 F.3d 1054, 1059 (Fed. Cir. 1995) (Plaintiff's promise not to sue for patent infringement based on

7    products made, sold, or used prior to the date of its motion to dismiss "removes from the field any

8    controversy sufficiently actual to confer jurisdiction"); *Intellectual Property Development, Inc. v.*

9    *TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001) ("the statement of non-

10   liability divest[s] the district court of Article III jurisdiction..."). However, neither *Super Sack* nor

11   *Intellectual Property* is directly on point. Each involves a situation in which the plaintiff, the patent

12   holder, brought suit for infringement, which was followed by a counter-claim for non-infringement

13   by defendant. At some point during the litigation, plaintiff dropped its claim for infringement and

14   covenanted not to sue defendant based on the allegedly infringing products. Neither case involved

15   customer suits.

16         Moreover, the *Arrowhead*, court endorsed an earlier Seventh Circuit decision which

17   "employed a test requiring an apprehension that plaintiff or its '*customers* face an infringement suit

18   or *threat* of one'" *Id.* at 736 (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.

19   1979)). In this case, Defendant has initiated a suit against several of Plaintiff's customers in the

20   District of Delaware. Thus, there can be no doubt regarding Defendant's intent to enforce its patents

21   against such customers. Thus, based on *Arrowhead*, the Court finds that the "reasonable

22   apprehension" requirement has been satisfied.

23         **2.    Plaintiff's Conduct**

24         The Court now turns to the second prong of the case or controversy test prescribed by the

25   Federal Circuit: "acts by Plaintiff that might subject it or its customers to suit for patent

26   infringement." *Arrowhead*, 846 F.2d at 737. Put another way, "[p]laintiff must be engaged in an

27   actual making, selling, or using activity subject to an infringement charge or must have made

28   meaningful preparation for such activity." *Id.* at 736. Thus, the question whether Defendant's action

7

United States District Court
For the Northern District of California

1   against the Delaware defendants sufficiently implicates Plaintiff's manufacture of the Design

2   Compiler such that there is a justiciable controversy.

3          Several Court's have addressed this issue.  In the seminal case of *Aralac v. Hat Corporation*

4   *of America*, 166 F.2d 286 (1948), plaintiff manufactured and sold "casein fiber" to hat manufacturers

5   and others.  Defendant threatened to and, in one case, actually did file suit for infringement against

6   several of plaintiff's customers stating that the use of casein fibers in their manufacturing process

7   infringed its patent.  However, the Court found that there was no controversy because "[t]he

8   invention covered by the patents [was] not per se for casein fiber but cover[ed] the process of

9   combining such fibers with fur fibers to form hats or hat materials." *Id.* at 293.  The Court reasoned:

10         Plaintiff has the right to have that which it lawfully produces freely bought and sold without
           restraint or interference. It is a right which attaches to its product, to a particular thing - as an
11         article of commerce - and it continues only so long as the commodity to which the right
           applies retains its separate identity. If in the course of trade that commodity is combined with
12         other things in the process of the manufacture of a new commodity, the trade right in original
           part as an article of commerce is necessarily gone.... The situation as to plaintiff is no
13         different than if plaintiff sold milk, from which casein is made, to its customers and they in
           turn made their own casein fibers which they might thereafter use in a way to infringe
14         defendant's patents, or in a way which would not.

15  *Id.* at 293-94, 297.

16         Several lower courts have distinguished *Aralac* based on the fact that the product at issue,

17  unlike casein fiber, was essentially limited to the allegedly infringing use. *See, e.g., EIC*

18  *Labratories, Inc. v. Deuteruim Corporation.*, 1982 U.S. Dist. LEXIS 17604, *5 (S.D.N.Y. 1982)

19  (finding a controversy where it was likely that the product had a "limited number of uses, perhaps

20  only that of which defendant complains"); *Wallace & Tiernan Inc. v. General Electric Company*, 291

21  F.Supp. 217, 223 (1968) (finding a controversy where the product "was developed chiefly, if not

22  exclusively, for the use plaintiff seeks to defend and vindicate").  Thus, the question is whether

23  Plaintiff's Design Compiler is (1) simply a commodity that is combined with other things to a form a

24  new commodity; or (2) essentially limited to the allegedly infringing use by Plaintiff's customers.

25         Of course, Defendant contends that the former is true.  Specifically, Defendant argues that the

26  Delaware action its not premised on an allegation that "[Plaintiff's] software (without any actual chip

27  manufacturing operation) infringes the '432 Patent." Motion at 9:8-11.  Rather, Defendant theory is

28  that "[b]y loading the [Plaintiff's] software onto [their] computers and designing ASIC chips using a

United States District Court

For the Northern District of California

1  process that combines software, hardware and certain manufacturing processes in a manner that

2  infringes the '432 Patent..., the Delaware defendants are actually infringing the process claimed in

3  the '432 Patent." Reply 4:15-20. Plaintiff does not dispute this point. In fact, it admits that the

4  ASICs are "typically designed by the companies that intend to use them [and] are manufactured

5  under contract by semiconductor foundry businesses." Opposition at 2:23-25.

6       However, these facts fail to address the issue raised by *Aralac* and its progeny. Based on

7  Plaintiff's description of the function of the Design Compiler, it is clear its primary use is to facilitate

8  the very process that forms the basis of the suit against the Delaware defendants. In more technical

9  terms, when a circuit designer has completed an HDL description of the target ASIC, this HDL

10 description can be provided as an input to *logic synthesis software* to derive an equivalent circuit

11 construction from the particular set of "foundry library cells" provided by the foundry that the

12 designer intends to use. The output of the *logic synthesis software* can then be supplied to the

13 foundry for generation of the desired ASIC. *Id.* at 3:10-14.

14      For these reasons, the Court finds that Defendant's claims against Plaintiff's customers are

15 necessarily allegations against the primary use of the Design Compiler itself. Therefore, Plaintiff's

16 actions in manufacturing and selling the product is sufficient to satisfy the case or controversy

17 requirement.[5]

18      Therefore, the Court **DENIES** Defendant's motion to dismiss for lack of an actual case or

19 controversy.

20 **II.    Motion Stay or Transfer**

21      Defendant's motion to stay the action or transfer it to the District of Delaware was based

22 primarily on the fact that there was an earlier-filed action pending in that jurisdiction. Now that the

23 Delaware action has been transferred to this forum, there is no basis to stay or transfer the action.[6]

24 _____

25      [5] Plaintiff's duty to indemnify its customer is also sufficient to establish a case or controversy.
   *See Minebea Co., Ltd. v. Papst*, 13 F.Supp.2d 35, 39 (D.D.C. 1998) (citing multiple cases for the
26 proposition that a duty to indemnify is sufficient to create a justiciable controversy).

27      [6] For the same reason, it would also be inappropriate for the Court to apply the first-to-file rule.
   *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) ("this 'first to file' rule
28 is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the
   dictates of sound judicial administration" ) *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

### CONCLUSION

Therefore, the Court **DENIES** Plaintiff's motion to dismiss or, in the alternative, stay or transfer.

**IT IS SO ORDERED.**

Dated: September 22, 2003

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

10