Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICOH COMPANY, LTD., ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> AEROFLEX INCORPORATED, et al., ) <br><br> Defendants. ) | **Case No.  CV 03-04669 MJJ** <br><br> **DECLARATION OF JONATHAN WEISSGLASS IN SUPPORT OF PLAINTIFF RICOH'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES** |

I, Jonathan Weissglass, hereby declare as follows:

      1.    I am a member in good standing of the State Bar of California and a partner at Altshuler,

Berzon, Nussbaum, Rubin & Demain ("Altshuler, Berzon"), local counsel for Plaintiff Ricoh Company,

Ltd. ("Ricoh").

2.      Attached hereto as Exhibit 1 is a true and correct copy of Ricoh's First Set of Interrogatories to All Defendants.

3.      Attached hereto as Exhibit 2 is a true and correct copy of Defendant Aeroflex Inc.'s Responses to Ricoh's First Set of Interrogatories to All Defendants.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Defendant AMI Semiconductor, Inc.'s Responses to Ricoh's First Set of Interrogatories to All Defendants.

5.      Attached hereto as Exhibit 4 is a true and correct copy of Defendant Matrox Electronic Systems Ltd.'s Responses to Ricoh's First Set of Interrogatories to All Defendants.

6.      Attached hereto as Exhibit 5 is a true and correct copy of Defendant Matrox Graphics Inc.'s Responses to Ricoh's First Set of Interrogatories to All Defendants.

7.      Attached hereto as Exhibit 6 is a true and correct copy of Defendant Matrox International Corp.'s Responses to Ricoh's First Set of Interrogatories to All Defendants.

8.      Attached hereto as Exhibit 7 is a true and correct copy of Defendant Matrox Tech, Inc.'s Responses to Ricoh's First Set of Interrogatories to All Defendants.

9.      Attached hereto as Exhibit 8 is a true and correct copy of correspondence dated 8/11/03 from E. Meilman to C. Kelley.

10.     Attached hereto as Exhibit 9 is a true and correct copy of correspondence dated 8/26/03 from E. Meilman to E. Moller.

11.     Attached hereto as Exhibit 10 is a true and correct copy of the Transcript of the 8/28/03 Hearing.

12.     Attached hereto as Exhibit 11 is a true and correct copy of correspondence dated 9/4/03 from E. Meilman to C. Kelley.

13.     Attached hereto as Exhibit 12 is a true and correct copy of Defendants' Notice to the Court Re Delivery of Documents Outstanding at Time of Transfer of Case from Delaware (filed October 30, 2003).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of November, 2003, at San Francisco, California.

_____

Jonathan Weissglass

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICOH COMPANY, LTD.,                          )
                                               )
            Plaintiff,                         )
                                               )        C.A. No. 03-103-GMS
      v.                                       )
                                               )
AEROFLEX INCORPORATED, AMI                     )
SEMICONDUCTOR, INC., MATROX                    )
ELECTRONIC SYSTEMS LTD.,                       )
MATROX GRAPHICS INC., MATROX                   )
INTERNATIONAL CORP. and                        )
MATROX TECH, INC.                              )
                                               )
            Defendants.                        )

## PLAINTIFF'S FIRST SET OF
## INTERROGATORIES TO ALL DEFENDANTS

**PLEASE TAKE NOTICE** that plaintiff demands, pursuant to Rule 33 of the Federal

Rules of Civil Procedure, that the defendants provide answers to the following interrogatories on

the 30th day after service of these interrogatories.

## DEFINITIONS AND INSTRUCTIONS

(1) **Communication.** The term "communication" means the transmittal of

information (in the form of facts, ideas, inquiries or otherwise).

(2) **Document.** The term "document" is defined to be synonymous in meaning and

equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including,

without limitation, electronic or computerized data or data compilations. A draft or non-identical

copy is a separate document within the meaning of this term.

(3) **Identify (with respect to persons).** When referring to a person, "identify"

means to give, to the extent known, the person's full name, present or last known address, and

1

when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In any response where more than one individual is identified, identify which three individuals have the most knowledge or information concerning the subject and among those three individuals, identify the individual having the most knowledge and the individual having the least knowledge concerning the subject.

(4) **Identify (with respect to documents).** When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5) **Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, partners, corporate parent, subsidiaries or affiliates. Where a discovery request does not request a response limited to a specific named defendant, the request shall be construed as seeking knowledge and information in the possession, custody, control and/or known to each and every one of the defendants named in the caption of this discovery request.

(6) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) **All/Each.** The terms "all" and "each" shall be construed as all and each.

2

(9) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

(10) **Number.** The use of the singular form of any word includes the plural and vice versa.

(11) **Privilege.** Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

(a) Identify the nature of the privilege (including but not limited to work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(b) Provide the following information:

(1) For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and (v) identify any other person to whom the document was displayed or to whom any of its contents were revealed;

(2) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was

3

made and the relationship of the persons present to the person making the

communication; (ii) the date and place of communication; (iii) the general subject

matter of the communication; and (iv) identify any other person to whom any

aspect of the communication was revealed.

(12) **Destroyed Documents.** Where a document has been destroyed or alleged to

have been destroyed, state the date thereof and the reason for its destruction, identify each person

having knowledge of its destruction, identify each person responsible for its destruction, provide

the information set forth in paragraph (11)(b)(1) above and describe the content of the document

to the extent possible.

(13) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to

United States Letters Patent Number 4,922,432.

(14) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed

for a specific application, including but not limited to integrated circuits that are referred to or

otherwise denoted in defendant's communications as an "application specific integrated circuit"

or "ASIC," and other integrated circuits designed to perform a desired function in a specific

application, but not including standard, general purpose integrated circuits such as

microprocessors and memory chips.

(15) **ASIC PRODUCT.** The term "ASIC Product" refers to any integrated circuit

product or item that is designed for a specific application, and/or a product or item that includes

such an integrated circuit product that is manufactured, sold, offered for sale, imported, or

distributed by, on behalf of, or otherwise at the direction of defendant.

4

(16) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes which have been used by, on behalf of, or otherwise at the direction of defendant on or after May 1, 1990 (unless another date is specifically identified) in the computer-aided design of any ASIC Product (as defined above) designed, developed, manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(17) **Limitations.** Each discovery request shall be construed independently and no discovery request shall limit the scope of any other discovery request.

(18) **Supplementation.** Each defendant is reminded of the continuing duty to supplement discovery responses set forth in rule 26(e) of the Federal Rules of Civil Procedure.

(19) **Design.** The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC Product (as defined above).

## INTERROGATORIES

Interrogatory No. 1: Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Interrogatory No. 2:   Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for

5

each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

Interrogatory No. 3:  Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Interrogatory No. 4:  Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Interrogatory No. 5:  Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

6

Interrogatory No. 6:  State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Interrogatory No. 7:   Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Interrogatory No. 8:  Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Interrogatory No. 9:   Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Interrogatory No. 10:  In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY  LLP
1177 Avenue of the America
New York, New York  10036
(212) 896-5471

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that true and correct copies of Plaintiff's First Set of

Interrogatories to all Defendants were served on May 30, 2003 on counsel of record in the manner

indicated:

**VIA HAND DELIVERY**
Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1220 Market Street
P. O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
1177 Avenue of the America
New York, New York  10036
(212) 896-5471

Dated:  May 30, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May 2003, true and correct copies of the foregoing were caused to be served on counsel of record at the following addresses as indicated:

**BY HAND DELIVERY:**
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz, LLP
1220 Market Street
P.O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Steven J. Fineman (#4025)

**EXHIBIT 2**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>       Plaintiff,<br><br>       v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS, LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>       Defendants. | Civil Action No. 03-103-GMS |

## DEFENDANT AEROFLEX INCORPORATED'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Aeroflex Incorporated ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable

privilege as to that information or document or any other document identified or produced by Defendant.

## **GENERAL OBJECTIONS**

1.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party.  Without third party permission, Defendant will not provide such information unless required by the Court.

5.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432  (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

11.    Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

12.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

13.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information

that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

14.     Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions.  Defendants reserve the right to supplement these Responses as discovery progresses.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.     Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2.     Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.     Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4.     Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

5.     Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

- 4 -

**DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES**

Interrogatory No. 1:

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

Response to Interrogatory No. 2:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require the identification of every product manufactured by Defendant that includes an integrated circuit.

Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the

interrogatory as drafted, therefore, might require a narrative describing every design step performed by every employee who had any involvement in design work on any product that includes an integrated circuit.

Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Response to Interrogatory No. 4:

Defendant incorporates by reference its General Objections.  Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in product design.  Plaintiff has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  To answer the interrogatory as drafted, therefore, might require a narrative describing the functions performed by each employee who had any involved in design work on any product that includes an integrated circuit.

Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an

ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

<u>Response to Interrogatory No. 5:</u>

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. The interrogatory as drafted, therefore, calls for an open-ended narrative describing the functions performed by any employee having any role in the computer-aided design of any product that includes an integrated circuit.

<u>Interrogatory No. 6:</u>

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

<u>Response to Interrogatory No. 6:</u>

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.

Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id.* *See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

- 9 -

James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.

Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant incorporates by reference its response to Interrogatory No. 2.

Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Response to Interrogatory No. 9:

Defendant incorporates by reference its General Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1, 1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses included laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent.

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.

Dated: June 30 2003

By: _____

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Christopher L. Kelley
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendant
AEROFLEX INCORPORATED

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT AEROFLEX INCORPORATED'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS was served this 30TH day of June, 2003 on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899


Gayle L. Jacob

**EXHIBIT 3**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>              Plaintiff,<br><br>      v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS, LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil Action No. 03-103-GMS**

## AMI SEMICONDUCTOR, INC.'S RESPONSES TO RICOH COMPANY, LTD.'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant AMI Semiconductor, Inc. ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable

privilege as to that information or document or any other document identified or produced by Defendant.

## <u>GENERAL OBJECTIONS</u>

1.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party.  Without third party permission, Defendant will not provide such information unless required by the Court.

5.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.     Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

11.     Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

12.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

13.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information

that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

     14.     Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions. Defendants reserve the right to supplement these Responses as discovery progresses.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

     1.     Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

     2.     Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

     3.     Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

     4.     Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

     5.     Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES

Interrogatory No. 1:

- 4 -

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

Response to Interrogatory No. 2:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh

- 5 -

against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require the identification of every product manufactured by Defendant that includes an integrated circuit.

Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing every design step performed by every employee who had any involvement in design work on any product that includes an integrated circuit.

<u>Interrogatory No. 4:</u>

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

<u>Response to Interrogatory No. 4:</u>

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing the functions performed by each employee who had any involved in design work on any product that includes an integrated circuit.

<u>Interrogatory No. 5:</u>

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

<u>Response to Interrogatory No. 5:</u>

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design

processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. The interrogatory as drafted, therefore, calls for an open-ended narrative describing the functions performed by any employee having any role in the computer-aided design of any product that includes an integrated circuit.

Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.

Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or

information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id.* *See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.

Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General Objections.  Defendant incorporates by reference its General and Specific Objections.  Defendant incorporates by reference its response to Interrogatory No. 2.


Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Response to Interrogatory No. 9:

Defendant incorporates by reference its General Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.


Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1, 1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses included laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent.

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.


Dated: June 30 2003                      By: _____

                                         Francis DiGiovanni
                                         CONNOLLY BOVE LODGE & HUTZ LLP
                                         1220 Market Street, 10th Floor
                                         Wilmington, DE  19899-2207
                                         (302) 658-9141

                                         Christopher L. Kelley
                                         HOWREY SIMON ARNOLD & WHITE,
                                         LLP
                                         301 Ravenswood Avenue
                                         Menlo Park, CA  94025
                                         (650) 463-8100 (Telephone)
                                         (650) 463-8400 (Facsimile)

                                         Attorneys for Defendants
                                         AMI SEMICONDUCTOR, INC.

## VERIFICATION

I, Jon Stoner, declare:

I am the Chief Technology Officer of defendant AMI Semiconductor, Inc. ("AMI") and I am authorized to make this verification for and on behalf of said defendant. I have reviewed AMI's Responses to Ricoh Company, Ltd.'s First Set of Interrogatories to All Defendants and am informed and believe that the matters stated herein with respect to AMI are true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Verification was executed on June 27, 2003, in Pocatello, Idaho.

Jon Stoner

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing AMI SEMICONDUCTOR, INC.'S RESPONSES TO RICOH COMPANY, LTD.'S FIRST SET OF INTERROGATORIES was served this 30thth day of June, 2003 on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899


Gayle I. Jacob

**EXHIBIT 4**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC.,<br><br>Defendants. | Civil Action No. 03-103-GMS |

## <u>DEFENDANT MATROX ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS</u>

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Matrox Electronics Systems Ltd. ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable

privilege as to that information or document or any other document identified or produced by
Defendant.

## GENERAL OBJECTIONS

1.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they
seek information protected by the attorney-client privilege, including the impressions,
conclusions, opinions, legal research or theories of attorneys, whether or not communicated to
their client, and/or any other applicable privilege.

2.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they
seek information protected by the work product doctrine, including the impressions, conclusions,
opinions, legal research or theories of attorneys.

3.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they
seek information protected by any other privilege or protection afforded by state or federal law.

4.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they
seek information that is subject to any protective order, privacy interest, contractual obligation,
non-disclosure agreement, confidentiality agreement or other such confidentiality obligation
owed to any third party.  Without third party permission, Defendant will not provide such
information unless required by the Court.

5.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they
seek information that is not relevant to a claim or defense of any party or to the subject matter of
this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's First Set of Interrogatories as overly broad and
unduly burdensome to the extent that they seek information beyond what is available from a
reasonable search of Defendant's files likely to contain relevant or responsive documents and a
reasonable inquiry of Defendant's employees.

7.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.     Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.     Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information about activities in Canada that cannot be infringing acts within the scope of 35 U.S.C. §271.

12.     Defendant objects to Ricoh's First Set of Interrogatories insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

- 3 -

14.    Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law. Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.    Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions. Defendants reserve the right to supplement these Responses as discovery progresses.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.    Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2.    Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.       Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4.       Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

5.       Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES

Interrogatory No. 1:

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to this litigation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

Response to Interrogatory No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does not design, make, use, offer to sell, sell, or import any products within the United States.

Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel in product design. Ricoh has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing every design step performed by every employee who had any involvement in design work on any product that includes an integrated circuit.

Defendant further objects that the design work for its products, including the design work on Defendant's ASICs, performed at Defendant's facilities in Canada is not relevant to Ricoh's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work in the United States.

Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

- 7 -

Response to Interrogatory No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel in product design. Ricoh has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing the functions performed by each employee who had any involved in design work on any product that includes an integrated circuit.

Defendant further objects that the design work for its products, including the design work on Defendant's ASICs, performed at Defendant's facilities in Canada is not relevant to Ricoh's allegations of infringement. Design of ASICs or other electronic systems and components done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work in the United States.


Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

Response to Interrogatory No. 5:

Defendant incorporates by reference its General and Specific Objections.  Defendant

further objects to this interrogatory as unduly burdensome and seeking discovery of information

regarding design processes that have no relationship to ASIC design and are not reasonably

calculated to lead to the discovery of admissible evidence.  Defendant designs and manufactures

a large number of products and employs a large number of personnel in product design.  Ricoh

has not identified any theory of infringement or which design step(s) or activities are relevant to

its allegations of infringement or what activities Ricoh considered during the reasonable pre-

filing investigation, if any, that it conducted prior to filing the present lawsuit.  The interrogatory

as drafted, therefore, calls for an open-ended narrative describing the functions performed by any

employee having any role in the computer-aided design of any product that includes an integrated

circuit.

Defendant further objects that the design work for its products, including the design work

on Defendant's ASICs, performed at Defendant's facilities in Canada is not relevant to Ricoh's

allegations of infringement.  Design of ASICs or other electronic systems and components done

in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United

States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant

responds as follows:

Defendant does no engineering design work in the United States.


Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of

the patent-in-suit, and identify all documents and communications relating thereto, including but

not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of privileged information.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.

Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id. See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Erik Boisvert has knowledge regarding the location of Defendant's design facilities. James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.

Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Francois Bertrand

Erik Boisvert

- 11 -

Mr. Bertrand and Mr. Boisvert are employees of Defendant and should not be contacted except through counsel for Defendant.

Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Response to Interrogatory No. 9:

Defendant incorporates by reference its General and Specific Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available

additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1, 1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: Defendant does not engage in any engineering design activities in the United States; Defendant does not sell any products in the United States; the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses including laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent. Regarding requests relating to personal jurisdiction; Defendant has no personnel in Delaware, conducts no business operations in Delaware and makes no direct sales in Delaware.

- 13 -

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.


Dated:  June 10 2003                     By: _____
                                             Francis DiGiovanni
                                             CONNOLLY BOVE LODGE & HUTZ LLP
                                             1220 Market Street, 10th Floor
                                             Wilmington, DE  19899-2207
                                             (302) 658-9141

                                             Christopher L. Kelley
                                             HOWREY SIMON ARNOLD & WHITE, LLP
                                             301 Ravenswood Avenue
                                             Menlo Park, CA  94025
                                             (650) 463-8100 (Telephone)
                                             (650) 463-8400 (Facsimile)

                                             Attorneys for Defendants
                                             MATROX ELECTRONIC SYSTEMS LTD.

# VERIFICATION

I, Nathalie Rizcalla, declare:

I am the Legal Counsel of defendant Matrox Electronics Systems, Ltd. ("Matrox") and I am authorized to make this verification for and on behalf of said defendant. I have reviewed Matrox' Responses to Ricoh Company, Ltd.'s First Set of Interrogatories to All Defendants and am informed and believe that the matters stated herein with respect to Matrox are true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Verification was executed on June 27, 2003, in Dorval, Quebec, Canada.

_____
Nathalie Rizcalla

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS was served this 30th day of June, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899


Gayle L. Jacob

**EXHIBIT 5**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS, LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 03-103-GMS** |

## DEFENDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

       Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Matrox Graphics Inc. ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

       These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

       Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable

privilege as to that information or document or any other document identified or produced by Defendant.

## GENERAL OBJECTIONS

1.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party.  Without third party permission, Defendant will not provide such information unless required by the Court.

5.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432  (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.     Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.     Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information about activities in Canada that cannot be infringing acts within the scope of 35 U.S.C. §271.

12.     Defendant objects to Ricoh's First Set of Interrogatories insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

14.    Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.    Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions.  Defendants reserve the right to supplement these Responses as discovery progresses.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.    Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2.    Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.      Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

5.      Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.


**DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES**

Interrogatory No. 1:

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to this litigation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.


Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

Response to Interrogatory No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs, and has employed, a large number of engineers involved in product design. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing every design step performed by every employee who had any involvement in design work on any product that includes an integrated circuit.

Defendant further objects that the design work for its products, including the design work on Defendant's ASICs, performed at Defendant's facilities in Canada is not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work in the United States.

- 6 -

Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs, and has employed, a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing every design step performed by every employee who had any involvement in design work on any product that includes an integrated circuit.

Defendant further objects that the design work for its products, including the design work on Defendant's ASICs, performed at Defendant's facilities in Canada is not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work in the United States.

- 7 -

Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Response to Interrogatory No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs, and has employed, a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing the functions performed by each employee who had any involved in design work on any product that includes an integrated circuit.

Defendant further objects that the design work for its products, including the design work on Defendant's ASICs, performed at Defendant's facilities in Canada is not relevant to plaintiff's allegations of infringement. Design of ASICs or other electronic systems and components done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work in the United States.

Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

Response to Interrogatory No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs, and has employed, a large number of personnel involved in product design. Plaintiff has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. The interrogatory as drafted, therefore, calls for an open-ended narrative describing the functions performed by any employee having any role in the computer-aided design of any product that includes an integrated circuit.

Defendant further objects that the design work for its products, including the design work on Defendant's ASICs, performed at Defendant's facilities in Canada is not relevant to plaintiff's allegations of infringement. Design of ASICs or other electronic systems and components done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work in the United States.

Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.


Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id. See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Ed Dwyer has knowledge regarding the location of Defendant's design facilities. Mr. Wood is an employee of one of the defendants and should not be contacted except through counsel for Defendant. James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.


Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Dan Wood

Edward Dwyer

Mr. Wood and Mr. Dwyer are employees of one of the defendants and should not be contacted except through counsel for Defendant.


Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Response to Interrogatory No. 9:

Defendant incorporates by reference its General and Specific Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General and Specific Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1, 1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: Defendant does not engage in any engineering design activities in the United States; Defendant does not sell any products in the United States; the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses including laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent. Regarding requests relating to personal

jurisdiction; Defendant has no personnel in Delaware, conducts no business operations in Delaware and makes no direct sales in Delaware.

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.


Dated:  June 30 2003                    By: _____
                                            Francis DiGiovanni
                                            CONNOLLY BOVE LODGE & HUTZ LLP
                                            1220 Market Street, 10th Floor
                                            Wilmington, DE  19899-2207
                                            (302) 658-9141

                                            Christopher L. Kelley
                                            HOWREY SIMON ARNOLD & WHITE,
                                            LLP
                                            301 Ravenswood Avenue
                                            Menlo Park, CA  94025
                                            (650) 463-8100 (Telephone)
                                            (650) 463-8400 (Facsimile)

                                            Attorneys for Defendants
                                            MATROX GRAPHICS INC.

# VERIFICATION

I, Nathalie Rizcalla, declare:

I am the Legal Counsel of defendant Matrox Graphics Inc. ("Matrox") and I am authorized to make this verification for and on behalf of said defendant. I have reviewed Matrox' Responses to Ricoh Company, Ltd.'s First Set of Interrogatories to All Defendants and am informed and believe that the matters stated herein with respect to Matrox are true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Verification was executed on June 27, 2003, in Dorval, Quebec, Canada.

Nathalie Rizcalla

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS was served this 30th day of June, 2003 on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899


Gayle L. Jacob

**EXHIBIT 6**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., ) | **Civil Action No. 03-103-GMS** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| AEROFLEX INCORPORATED, AMI ) | |
| SEMICONDUCTOR, INC., MATROX ) | |
| ELECTRONIC SYSTEMS, LTD., MATROX ) | |
| GRAPHICS INC., MATROX ) | |
| INTERNATIONAL CORP. and MATROX ) | |
| TECH, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT MATROX INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Matrox International Corp. ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable

privilege as to that information or document or any other document identified or produced by Defendant.

## GENERAL OBJECTIONS

1.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party.  Without third party permission, Defendant will not provide such information unless required by the Court.

5.      Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.    Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information about activities in Canada that cannot be infringing acts within the scope of 35 U.S.C. §271.

12.    Defendant objects to Ricoh's First Set of Interrogatories insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

- 3 -

14.     Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.     Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.     Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions.  Defendants reserve the right to supplement these Responses as discovery progresses.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.     Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2.     Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.      Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

5.      Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.


**<u>DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES</u>**

<u>Interrogatory No. 1:</u>

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

<u>Response to Interrogatory No. 1:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to this litigation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

Response to Interrogatory No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory as overly broad and unduly burdensome on the grounds that Defendant sells a large number of products. Ricoh has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, would require examination and identification of a large number of products.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not respond to this interrogatory.


Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used

- 6 -

to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory as overly broad and unduly burdensome on the grounds that Defendant sells a large number of products. Ricoh has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, would require examination and identification of a large number of products.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work.


Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Response to Interrogatory No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory as overly broad and unduly burdensome on the grounds that Defendant sells a large number of products. Ricoh has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, would require examination and identification of a large number of products.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not respond to this interrogatory.

Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

Response to Interrogatory No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory as overly broad and unduly burdensome

- 8 -

on the grounds that Defendant sells a large number of products. Ricoh has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. The interrogatory as drafted, therefore, calls for an open-ended narrative describing the functions performed by any employee having any role in the computer-aided design of a large number of products.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant does no engineering design work.


Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of privileged information.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.


Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or

information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id. See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Edward Dwyer has knowledge regarding the location of Defendant's design facilities. Mr. Dwyer is an employee of one of the defendants in this action and should not be contacted except through counsel for Defendant. James Davis has information regarding Defendant's

equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.


Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Francois Bertrand

Edward Dwyer

Mr. Wood and Mr. Dwyer are employees of one of the defendants and should not be contacted except through counsel for Defendant.


Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Response to Interrogatory No. 9:

Defendant incorporates by reference its General and Specific Objections.

- 11 -

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General and Specific Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false. Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery. Regarding requests relating to equitable defenses: the '432 patent issued on May 1, 1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned. Regarding

requests relating to construction of specific elements of claim language and practice of those claim elements: Defendant does not engage in any engineering design activities; the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses including laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent. Regarding requests relating to personal jurisdiction; Defendant has no personnel in Delaware, conducts no business operations in Delaware and makes no direct sales in Delaware.

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.

Dated:  June 3° 2003                    By: _____

                                        Francis DiGiovanni
                                        CONNOLLY BOVE LODGE & HUTZ LLP
                                        1220 Market Street, 10th Floor
                                        Wilmington, DE  19899-2207
                                        (302) 658-9141

                                        Christopher L. Kelley
                                        HOWREY SIMON ARNOLD & WHITE,
                                        LLP
                                        301 Ravenswood Avenue
                                        Menlo Park, CA  94025
                                        (650) 463-8100 (Telephone)
                                        (650) 463-8400 (Facsimile)

                                        Attorneys for Defendants
                                        MATROX INTERNATIONAL CORP.

- 13 -

## VERIFICATION

I, Nathalie Rizcalla, declare:

I am the Legal Counsel of defendant Matrox International Corporation ("Matrox") and I am authorized to make this verification for and on behalf of said defendant. I have reviewed Matrox' Responses to Ricoh Company, Ltd.'s First Set of Interrogatories to All Defendants and am informed and believe that the matters stated herein with respect to Matrox are true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Verification was executed on June 27, 2003, in Dorval, Quebec, Canada.

_____
Nathalie Rizcalla

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX
INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS was served this 30th day of June, 2003
on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526


Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899




Gayle L. Jacob

**EXHIBIT 7**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>   Plaintiff,<br><br>  v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS, LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 03-103-GMS** |

## DEFENDANT MATROX TECH, INC.'S RESPONSES TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Matrox Tech, Inc. ("Defendant") hereby responds to Ricoh Company, Ltd's ("Ricoh") First Set of Interrogatories.

These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available. Defendant also reserves the right to object on any ground at any time to such other or supplemental Interrogatories Ricoh may propound involving or relating to the subject matter of these Interrogatories.

Nothing herein shall be construed as an admission regarding privilege, materiality, admissibility or relevance of any response to the Interrogatories and any document or thing identified in any response. The inadvertent disclosure of such information or the inadvertent identification or production of any document shall not constitute a waiver of any applicable

privilege as to that information or document or any other document identified or produced by Defendant.

## GENERAL OBJECTIONS

1.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.

2.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.

3.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information protected by any other privilege or protection afforded by state or federal law.

4.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party.  Without third party permission, Defendant will not provide such information unless required by the Court.

5.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's First Set of Interrogatories as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant's employees.

7.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendants, or refer to persons, entities, or events not known to Defendants, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432  (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.    Defendant objects generally to Ricoh's First Set of Interrogatories to the extent that they seek information about activities in Canada that cannot be infringing acts within the scope of 35 U.S.C. §271.

12.    Defendant objects to Ricoh's First Set of Interrogatories insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they seek a legal conclusion.

- 3 -

14.    Defendant objects to Ricoh's First Set of Interrogatories, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Interrogatories in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.    Defendant objects to Ricoh's First Set of Interrogatories to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.    Defendant objects to Ricoh's First Set of Interrogatories to the extent they seek information from Defendants concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Ricoh has not yet made a proper identification of its own claims and contentions.  Defendants reserve the right to supplement these Responses as discovery progresses.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.    Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

2.    Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.    Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4.    Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

5.    Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.


**DEFENDANT'S ANSWERS TO RICOH'S FIRST SET OF INTERROGATORIES**

Interrogatory No. 1:

Describe the organizational structure of defendant, including, but not limited to those groups, divisions, teams and other organizations having any involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization.

Response to Interrogatory No. 1:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this interrogatory as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to this litigation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for organizational structure that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 2:

Identify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

Response to Interrogatory No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the basis that it is unduly burdensome, seeks discovery regarding semiconductor products having no relationship to any infringement allegations made by Ricoh against Defendant, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations.


Interrogatory No. 3:

Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity.

Response to Interrogatory No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information

regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Ricoh has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore, might require a narrative describing every design step performed by every employee who had any involvement in design work on any product that includes an integrated circuit.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations.


Interrogatory No. 4:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement.

Response to Interrogatory No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Ricoh has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. To answer the interrogatory as drafted, therefore,

might require a narrative describing the functions performed by each former employee who had any involved in design work on any product that includes an integrated circuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations.

Interrogatory No. 5:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) who participated in any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product.

Response to Interrogatory No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as unduly burdensome and seeking discovery of information regarding design processes that have no relationship to ASIC design and are not reasonably calculated to lead to the discovery of admissible evidence. Ricoh has not identified any theory of infringement or which design step(s) or activities are relevant to its allegations of infringement or what activities Ricoh considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. The interrogatory as drafted, therefore, calls for an open-ended narrative describing the functions performed by any, now former, employee having any role in the computer-aided design of any product that includes an integrated circuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations.

Interrogatory No. 6:

State when, from whom and under what circumstances defendant first became aware of the patent-in-suit, and identify all documents and communications relating thereto, including but not limited to any opinion(s) concerning the patent-in-suit.

Response to Interrogatory No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory to the extent that it calls for the disclosure of privileged information.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant first became aware of the patent-in-suit upon receipt of the complaint in this lawsuit.


Interrogatory No. 7:

Separately for each of the paragraphs of the response to the Complaint in this action by the defendant responding to this inquiry, identify all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based.

Response to Interrogatory No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b). By propounding an interrogatory that requires Defendant to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has in fact served 100 separate interrogatories and far exceeded the 50-interrogatory limit. *See id. See Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996); *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).

Defendant further objects to this interrogatory on the ground that it is premature. Defendant has just begun to conduct its investigation of the relevant facts. The factual bases and documents supporting each of Defendant's contentions addressed in this interrogatory will become known through fact and expert discovery.

Defendant further objects to this interrogatory to the extent that it seeks the disclosure of information or the identification of documents that are protected from discovery by the attorney-client privilege and/or the attorney work product doctrine.

Defendant further objects to this interrogatory on the basis that it seeks identification of "all persons" having knowledge of the facts set out in Defendant's response to the Complaint in this action. To identify each person employed by or associated with Defendant and having such knowledge would be unreasonably burdensome.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations. Edward Dwyer has knowledge regarding the location of Defendant's closed design facilities. Mr. Dwyer is an employee of one of the defendants in the present action and should not be contacted except through counsel for Defendant. James Davis has information regarding Defendant's equitable defenses. Hideaki Kobayashi and Masahiro Shindo have information regarding the invalidity of the asserted patents.

Interrogatory No. 8:

Separately for each product identified in answer to Interrogatory No. 2, identify each individual who can testify about defendant's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product.

Response to Interrogatory No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Edward Dwyer

Mr. Dwyer is an employee of one of the defendants in the present action and should not be contacted except through counsel for Defendant.


Interrogatory No. 9:

Describe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof.

Response to Interrogatory No. 9:

Defendant incorporates by reference its General and Specific Objections.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Pursuant to FRCP Rule 33(d), Defendant will produce non-privileged business records for policies regarding the retention or destruction of documents that are responsive to this interrogatory and contain the requested information to the extent such records currently exist within Defendant's possession, custody or control.

Interrogatory No. 10:

In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based.

Response to Interrogatory No. 10:

Defendant incorporates by reference its General and Specific Objections.

Defendant further objects to this interrogatory on the ground that it contains impermissible subparts. *See* D. Del. LR 26.1(b).

Defendant further objects to this interrogatory on the ground that it is premature. Discovery in this case has just recently begun. Defendant will make available additional information regarding the factual bases for its contentions at a later point during discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Where Defendant denied Ricoh's Requests for Admission, it did so because these Requests for Admission were false.   Regarding requests for admission involving the validity and enforceability of the patents: Defendant is aware of a number of invalidating prior art references which will be produced; detailed contentions regarding specific references will be supplied at an appropriate time during discovery.  Regarding requests relating to equitable defenses: the '432 patent issued on May 1, 1990; Ricoh filed this complaint in January 2003; agents of the inventors and assignees made previous attempts to license this patent that were abandoned.  Regarding requests relating to construction of specific elements of claim language and practice of those claim elements: Defendant does not engage in any engineering design activities in the United States; Defendant does not sell any products in the United States; the claims of the '432 patent refer to a particular design process not employed by Defendant; Defendant, is the beneficiary of equitable defenses including laches, equitable estoppel and an implied license and, as a licensed user of Synopsys design synthesis software, is the beneficiary of the equitable defenses that Synopsys has against assertion of the '432 patent.

- 12 -

Defendant reserves the right to identify additional grounds for its contentions and additional evidence as discovery develops.

Dated:  June 20 2003                    By: _____

                                        Francis DiGiovanni
                                        CONNOLLY BOVE LODGE & HUTZ LLP
                                        1220 Market Street, 10th Floor
                                        Wilmington, DE  19899-2207
                                        (302) 658-9141

                                        Christopher L. Kelley
                                        HOWREY SIMON ARNOLD & WHITE,
                                        LLP
                                        301 Ravenswood Avenue
                                        Menlo Park, CA  94025
                                        (650) 463-8100 (Telephone)
                                        (650) 463-8400 (Facsimile)

                                        Attorneys for Defendant
                                        MATROX TECH, INC.

## VERIFICATION

I, Nathalie Rizcalla, declare:

I am the Legal Counsel of defendant Matrox Tech Inc. ("Matrox") and I am authorized to make this verification for and on behalf of said defendant. I have reviewed Matrox' Responses to Ricoh Company, Ltd.'s First Set of Interrogatories to All Defendants and am informed and believe that the matters stated herein with respect to Matrox are true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Verification was executed on June 27, 2003, in Dorval, Quebec, Canada.

Nathalie Rizcalla

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX
TECH, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES
TO ALL DEFENDANTS was served this 30TH day of June, 2003 on the following via
Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526


Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899


Gayle L. Jacob

EXHIBIT 8

D I C K S T E I N   S H A P I R O   M O R I N   & O S H I N S K Y   L L P

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

August 11, 2003

**BY FACSIMILE: (650) 463-8400**
**CONFIRMATION BY MAIL**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025

Re:    Defendants' Responses to Plaintiffs' First Interrogatories
       Civil Action No. 03-103-GMS
       Our Ref.:  R2180.0100

Dear Mr. Kelley:

       The purpose of this letter is to attempt to resolve the Defendants' objections
to the various first interrogatory by Plaintiff before taking this matter to the Court.  You
should consider this letter as well as any subsequent discussions that may be had as
being pursuant to D.R. 7.1.1.

       Dealing first with the General Objections 1-3, the response fails to confirm
you will be providing privilege log.  Please confirm this is an oversight, and advise us
when the logs (for both interrogatories and document requests) will be forwarded.

       General Objection No. 4 asserts that information is confidential to a third
party, which is not a valid reason to object.  The burden is on the defendants to seek
protection from the Court.   Nevertheless and as a compromise, we will for the time
being accept an identification of any third party (other than Synopsys) involved as well
as a sufficient identification of any involved documents to identify the documents in a
document subpoena in lieu of actual production of the document, provided you advise
us of your agreement to do so within 5 business days and we are given such material
before August 20, 2003.  As to Synopsys, it is by its own admissions already involved in
this case and the defendants cannot hide behind any alleged requirement for its
consent.

       General Objection 5 is not valid in that only information and documents
relevant to the issues in this case have been sought.

       General Objection 6 makes no sense in that a reasonable search is all that is
required.  The term "reasonable", however, will not excuse a sloppy or cursory search.

Christopher L. Kelley, Esq.
August 11, 2003
Page 2

General Objection 7 is not valid. The fact that documents may be obtainable from some other source does not excuse production of those documents. See, e.g., *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024-25 (Fed. Cir. 1986)

General Objection 8 makes no sense in that plaintiff only seeks information or documents in the possession, custody or control of defendants.

As to General Objection 9, we are willing, for the present, to limit the time frame as being from 1996 to the present unless the document relates to prior art. For prior art documents, this objection is not valid.

Aeroflex and AMI General Objections 10 and 11 (and the corresponding Matrox General Objections 13 and 14) make no logical sense. No request seeks a legal conclusion or go beyond the Federal Rules or the Local Rules.

Aeroflex and AMI General Objection 12 (and the corresponding Matrox General Objection 15) is invalid since the interrogatories advanced fully comply with Rule 33(a) of the Federal Rules.

With regard to Aeroflex and AMI General Objection 13 (and the corresponding Matrox General Objection 16) as to duplicative requests, we agree that any given document need only be produced once and you can incorporate other interrogatory answers by reference.

Aeroflex and AMI General Objection 14 (and the corresponding Matrox General Objections 12 and 17) are nonsense. Discovery of defendants' positions is one of the very purposes of discovery. That Ricoh has not advanced a claim construction or contentions may be a proper objection under California rules but we are operating under Delaware rules and that is not a proper objection under the applicable rules.

As to the Matrox General Objections 10 and 11 based on foreign activity, the provisions of 35 U.S.C. § 271(g) makes those objections invalid.

Turning to the Specific Objection 1 to Definition/Instruction No. 5, this is on the grounds that the term "defendant" includes people other then present employees and agents. However, if such people are under the control of defendant, there is no reason to exclude them. The objection is not valid.

Specific Objection 2 asserts that the information to be included on a privilege log imposes obligations beyond those imposed by the Federal or local rules. It does not and is only designed to provide sufficient information to determine if the claim of privilege is valid or subject to challenge.

Turning to the Specific Objections 3-5 to Definition/Instructions 14-16, the definitions are proper. ASIC is defined in the same way as in column 1 of the patent, and the definition of ASIC Product and ASIC Method are tied to computer aided design of ASICs. The definitions are appropriate and not they are not overly broad in light of

Christopher L. Kelley, Esq.
August 11, 2003
Page 3

the patent-in-suit. At a minimum, the definitions cover the defendants' use of Design Compiler and Behavior Compiler.

Moreover, such generalized objections are not proper. See, Walker v. Lakewood Condominium Owners Assoc., 186 F.R.D. 584, 587 (C.D. Cal. 1999) (objection to discovery request as being "overly broad, burdensome, oppressive and irrelevant" was a "[b]oilerplate, generalized objection that . . . [was] inadequate and tantamount to not making any objection at all"); (citing Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)). See also Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d 827, 856 (3d Cir. 1995)(" In Josephs, we stated 'the mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory.' Josephs, 677 F.2d at 992 (internal quotations omitted). Instead, 'the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.' Id. (citations, internal ellipses and internal quotations omitted)."

Defendant Matrox Tech has avoided providing answers to many of the Interrogatories on the grounds that it "has ceased operations". That is not a valid ground to refuse to provide information. Also, it is not conceivable that only one or two individuals have information in the limited number of the categories requesting names where the question was not ignored. Full and complete answers should be provided immediately. Those responses should also indicate that date when it ceased operations and the current custodian of any records.

Production of documents under F.R.Civ.P. 33(d) as a response to Interrogatory 1 is not proper unless the documents are organizational charts, and as a response to Interrogatory 9, is not proper unless such documents exist. The Rule is predicated on the burden being equal and unless you are referring to charts as to Interrogatory 1 or existent documents as to Interrogatory 9, the burden on defendants is clearly less. Please confirm that charts and documents exist and have been produced. In addition, if more documents will be produced, please indicate the date by which we can expect to receive those documents.

Interrogatories 2 through 5 and 8 are proper and the objections made are not valid. The plaintiff is entitled to know what the defendants have done and make its own assessment about whether or not there is infringement. The plaintiff does not have to provide a "theory of infringement" at this time. The capabilities, features, functions, etc., of those design systems are very relevant to the issue of patent infringement. While Ricoh has not asserted that any particular equipment constitutes patent infringement, what the defendants do with such equipment is clearly relevant to a determination of whether or not there is patent infringement. Any cost savings are clearly relevant to issues of damages (Request 8) and potentially issues of non-obviousness.

The additional objection by the Matrox defendants based on work in Canada is invalid because 35 U.S.C. § 271(g) explicitly contemplates activity outside the U.S. constituting patent infringement.

Christopher L. Kelley, Esq.
August 11, 2003
Page 4

The response to Interrogatory No. 6 ignores the request for identification of all documents and communications. Such identification is not privileged information even if the content of those documents and communications may be privileged.

Interrogatory No. 7 is a single inquiry and since it asks for the individuals having knowledge or information of representations actually made by the Defendants in their response to the Complaint, the Interrogatory is certainly not premature or burdensome. Neither the identification of the individuals nor the identity of the documents is privileged. The Defendants has not identified even a single individual employed by or associated with Defendants, and to implicitly assert the Answer to the Complaint was prepare without any investigation involving personnel of the Defendants suggests a violation of Rule 11.

The response to Interrogatory No. 10 to the extent it constitutes a bald statement that the Request for Admissions were made because the Request was false are improper. Plaintiff is entitled to know the basis for the Defendants' response to the Interrogatory and the bald assertion that their Request is false does not set forth in detail each and every reason for the denial. Stating that a Defendant is aware of a number of invalidating prior art references without identifying them is improper. Stating that agents of the inventors and assignees made previous attempts to license the patents that were abandoned is improper because it does not identify who the agents were, when the attempts were made, and/or the individuals to whom these attempts were made.

Would you please advise us by August 14, 2003 whether or not the objections to are going to be withdrawn in light of the foregoing so that we will know whether or not to seek the Court's assistance. We also propose that we discuss these matters in a telephone conference on August 15, 2003.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:    Teresa Corbin, Esq. (via fax)
       Francis DiGiovanni, Esq., (via fax)
       Gary Hoffman, Esq.
       Kenneth Brothers, Esq.

**EXHIBIT 9**

DICKSTEIN   SHAPIRO   MORIN   &   OSHINSKY   LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689

August 26, 2003

**Via Fax**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434

Re:    *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
       Civil Action No. 03-103-GMS
       Our Ref.: R2180.0100

Dear Mr. Moller:

We have reviewed your letters of April 21, 2003 relating to the first set of interrogatories and document requests.  This is a final attempt to resolve some parts of the dispute before discussing this matter with the Court.

You assert that the defendants do not perform any logic synthesis operations in connection with many of their ASIC products and use large numbers of personnel. In light of that assertion, if we can resolve this matter, we are prepared to limit the definition of ASIC Product to those products made by a method which included computer-aided design that includes some form of logic synthesis, and to accept the identification of the five (5) individuals that the defendants believe have the greatest knowledge in each category.  That should resolve your problem with the scope of the inquiries relating to ASIC Products.  Please let us know if you disagree.

You advance in an interesting and creative theory concerning the applicability of 35 U.S.C. 271(g), but one with which we disagree.   Further, since you refused to provide any information about what the Matrox defendants do, you are preventing us from making our evaluation of the assertion that there is no infringement under your theory.   The information and documents should be provided.

While we disagree with your assertion that interrogatory 7 exceeds the 50 interrogatory limit, we are prepared to limit the interrogatory to those paragraphs of defendants' answer and counterclaims which constitute a denial per se (i.e., other than a denial based on a lack of knowledge and information), the affirmative defense paragraphs and paragraphs 69 and 72 of the counterclaims.  Please advise us whether as so limited, the list of individuals noted in your letter completes defendants' response to Interrogatory 7 as to the individuals. The documents on which the responses is based will still need to be produced.

Erik K. Moller, Esq.
August 26, 2003
Page 2


Since the Court is scheduled to take up these and other matters on Thursday morning, please let me have your response no later than 3:00 p.m., Delaware time (noon, California time) on Wednesday.

Very truly yours,

Edward A. Meilman

EAM/hc

cc: Gary Hoffman, Esq.
    Kenneth Brothers, Esq.

**EXHIBIT 10**

Page 1

```
1          IN THE UNITED STATES DISTRICT COURT
2          IN AND FOR THE DISTRICT OF DELAWARE
3                      - - -
4  RICOH COMPANY, LTD.,        :   Civil Action
5        Plaintiff,            :
6     v.                       :
7  AEROFLEX INCORPORATED, AMI  :
   SEMICONDUCTOR, INC.,        :
8  MATROX ELECTRONIC SYSTEMS   :
   LTD., MATROX INC., GRAPHICS :
9  MATROX INTERNATIONAL CORP., :
   and MATROX TECH, INC.,      :
10                             :
       Defendants.             :   No. 03-103-GMS
11                      - - -
12              Wilmington, Delaware
13           Thursday, August 28, 2003
                 11:00 a.m.
14            Telephone Conference
15                      - - -
16  BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
17  APPEARANCES:
18       ROBERT W. WHETZEL, ESQ., and
         STEVEN J. FINEMAN, ESQ.
19       Richards, Layton & Finger
              -and-
20       GARY M. HOFFMAN, ESQ.,
         EDWARD A. MEILMAN, ESQ., and
21       KENNETH W. BROTHERS, ESQ.
         Dickstein Shapiro Morin & Oshinsky LLP
22       (Washington, D.C.)
23                 Counsel for Plaintiff
24
25
```

Page 2

```
1  APPEARANCES CONTINUED:
2       FRANCIS DiGIOVANNI, ESQ.
        Connolly Bove Lodge & Hutz LLP
3            -and-
        TERESA M. CORBIN, ESQ.,
4       CHRISTOPHER KELLEY, ESQ., and
        ERIC OLIVER, ESQ.
5       Howrey Simon Arnold & White, LLP
        (Menlo Park, California)
6
             Counsel for Defendants
7                   - - -
8
9
10          THE COURT:  Good morning, counsel.
11          MR. WHETZEL:  Good morning, Your Honor.  Bob
12  Whetzel from Richards Layton for plaintiff Ricoh.  With me is
13  my colleague here at Richards Layton Steven Fineman.  Also on
14  the call for Ricoh are Messrs. Gary Hoffman, Ed Meilman and
15  Ken Brothers, my co-counsel.  I suspect Mr. Hoffman will be
16  our principal spokesperson this morning.
17          THE COURT:  Good morning, all.
18          For defendants.
19          MR. DiGIOVANNI:  Frank DiGiovanni from Connolly
20  Bove.  Also on the line from Howrey Simon in California are
21  Teresa Corbin and Chris Kelley and Eric Oliver.
22          THE COURT:  Who is going to handle the argument
23  today?
24          MR. DiGIOVANNI:  I will be arguing the first of
25  the agenda items, and I believe Mr. Kelley will be arguing
```

Page 3

```
1  the remainder.
2          MR. HOFFMAN:  Your Honor, on behalf of Ricoh, I
3  Brothers will be arguing the first item.  I will be handling
4  Items 2, 3, 6 and 8.  And Mr. Meilman will be handling items
5  5 and 7.
6          THE COURT:  Okay.  I will try to keep that roster
7  in mind.
8          Let's start with Item 1.
9          MR. BROTHERS:  Your Honor, on Item 1, there is a
10  difference of opinion between the parties with respect to the
11  obligations of the order that the Court entered on July
12  31st --
13          MR. DiGIOVANNI:  Your Honor, I don't mean to
14  interrupt.  I don't do that.  But we are the ones, the
15  defendants are the ones --
16          THE COURT:  Are you the movant on that one?
17          MR. DiGIOVANNI:  Yes, we are.
18          THE COURT:  Let's start with the movant.
19          MR. BROTHERS:  I am sorry.  Both parties are
20  seeking relief, just to be clear.
21          THE COURT:  So both of you, you each view
22  yourselves as movants?
23          MR. BROTHERS:  Yes, Your Honor.
24          MR. DiGIOVANNI:  Yes, Your Honor.
25          On behalf of defendants, we did place the call
```

Page 4

1  and initiated the conference.  We consider ourselves primary
2  movants on this issue.
3          MR. BROTHERS:  Your Honor, we can both have our
4  say.
5          THE COURT:  Mr. Brothers, continue.
6          MR. BROTHERS:  Thank you.
7          The order of July 31st, the second paragraph
8  requires the defendants and their counsel to disclose all
9  communications with or relating to Dr. Thomas and to produce
10  all documents sent to, prepared by, or received from Dr.
11  Thomas.  And then it continues, Any documents withheld on the
12  basis of attorney-client privilege or work product doctrine
13  should be submitted to the Court for an in camera inspection
14  and defendants shall provide plaintiffs with a detailed
15  privilege log.
16          We received part of those documents.  We received
17  the e-mails and letters between the Howrey firm and Dr.
18  Thomas.  But defendants and their counsel have refused to
19  produce anything else, namely, any internal communications on
20  an in camera basis to the Court and to give a privilege log
21  to the other side.  We believe that is clearly required by
22  the order.
23          The history of this gives some basis for our
24  concern.
25          Dr. Thomas was deposed on August 14th.  The

Page 5

1  witness contradicted the representations of Mr. Kelley during
2  the hearing on the 30th on multiple points, which gives us
3  concern as to what the complete story is.
4        For example, you will recall that the Howrey firm
5  served Dr. Thomas with a subpoena in late June but never
6  provided that to counsel for plaintiffs or filed any notices
7  with the Court. And although Mr. Kelley said during the
8  hearing that Dr. Thomas had called them and said he wasn't
9  working for Ricoh, in fact, what these documents that were
10 produced and Dr. Thomas' testimony show is that Dr. Thomas
11 specifically told the Howrey firm that he was under contract,
12 a consulting contract, with counsel for Ricoh, that Dr.
13 Thomas specifically asked Howrey if they had given the
14 subpoena to counsel for Ricoh, and Howrey led him to believe
15 that the subpoena had been given and that the names of
16 experts had been disclosed in the litigation, and that
17 counsel for Ricoh had not named Dr. Thomas as an expert, so
18 Dr. Thomas assumed that we didn't want him as an expert,
19 which wasn't the case. And then the Howrey firm said,
20 according to Dr. Thomas' testimony, if you sever your
21 contract with Ricoh, then we can hire you and we can pay
22 you. And that's what Dr. Thomas did.
23       A second inconsistency was that Mr. Kelley said
24 very explicitly during the hearing that before Dr. Thomas was
25 hired, they asked him if he had received any confidential

Page 6

1  information or discussed case strategy or other types of
2  information with Ricoh, and that Dr. Thomas had said, no, he
3  hadn't.
4        That is simply not the case.
5        Dr. Thomas was retained. The retention letter
6  was sent on July 17. He signed it on July 21st. The first
7  time any such communications of that nature came up was after
8  we found out about it and objected, and then suddenly there
9  was a flurry of telephone calls and e-mails between the
10 Howrey firm and Dr. Thomas saying, what confidential
11 information did you have? Tell us about it. And there was a
12 phone conference on the 23rd of July and followup e-mails.
13       Dr. Thomas testified at his deposition that there
14 was no question that he had received confidential information
15 from counsel for Ricoh. And he identified a couple of
16 categories of that.
17       During this flurry of information, after counsel
18 for Ricoh had objected, Dr. Thomas had described the
19 categories of this confidential information.
20       Now, Howrey refuses to produce those internal
21 e-mails. We had requested them even prior to the hearing,
22 and the Howrey firm understood we were looking for them.
23 There is a reference by Mr. Kelley in the transcript that, I
24 think it's on Page 14 or so, that he understood we were
25 looking for that information.

Page 7

1        After all of this, the defendants say, well,
2  maybe we are not going to use Dr. Thomas as an expert after
3  all, but we still want to go forward and take his deposition
4  on the very subjects which were the subject matter on his
5  consulting with Ricoh.
6        They obviously believe that Dr. Thomas is going
7  to give them favorable opinions. Dr. Thomas testified that
8  as a result of his consulting with Ricoh he had formed
9  opinions. What is the basis for their expectation?
10       We need to go forward and try and resolve this.
11 We think the sole basis is that Dr. Thomas has given Howrey
12 some basis to believe that the testimony he is going to give,
13 the opinion testimony that they are seeking, is going to be
14 favorable, and that was developed solely as a result of his
15 confidential consulting with counsel for Ricoh.
16       The issue before the Court not only is the
17 interpretation of Paragraph 2 of the July 31st order. The
18 Court is also aware that we are to file followup letters that
19 will relate to the disqualification of Thomas and any other
20 remedies that might be available. We think it advisable that
21 the Court is provided with this information so it has the
22 full picture of what the appropriate remedy should be.
23       THE COURT: Okay. Mr. DiGiovanni.
24       MR. DiGIOVANNI: First of all, there is no
25 contradiction between what Mr. Kelley represented on the July

Page 8

1  30th teleconference and Dr. Thomas' deposition. Dr. Thomas
2  was very clear that he was asked by the Howrey Simon
3  attorney, the one single attorney that he talked to for the
4  five-minute period he actually talked to him, do you have any
5  confidential information? And if so, what type of
6  information is it? And Dr. Thomas responded two days later
7  in an e-mail, just listing three short types of information
8  he had: patents, publications, and financial information.
9  None of it was confidential.
10       And all of those e-mails, that e-mail, and there
11 were about six or seven other e-mails, have been produced.
12 And those are the entire universe of documents that went back
13 and forth between Howrey Simon and Dr. Thomas.
14       If you go back to the teleconference on July
15 30th, the request that was made by Mr. Hoffman was that, you
16 ordered that the defendants be required to disclose all the
17 communications that they have had with Dr. Thomas, and
18 produce all the documents to us that have gone back and
19 forth. The Court subsequently ordered Ricoh's counsel to
20 prepare an order outlining the requests that you have made
21 and I will sign it.
22       But what happened later that day or maybe it was
23 the next day, July 31st, counsel submitted an order that
24 included an additional phrase, some additional language. Your
25 Honor, which actually went beyond what they were supposed to

Page 9

1  submit. So that became this July 31st order.
2       The language of the order --
3       THE COURT: Is that the sentence that says any
4  documents withheld on the basis of attorney-client --
5       MR. DiGIOVANNI: No, Your Honor.
6       THE COURT: Which language is it?
7       MR. DiGIOVANNI: In the same paragraph, Paragraph
8  2, the first sentence, it says, No later than August 6, 2003
9  defendants and their counsel are ordered to, right where it
10  says disclose, it says disclose all communications with or
11  relating to Dr. Thomas. That clause was brand-new. That was
12  not part of what Your Honor ordered on that teleconference,
13  this disclose all communications with or relating to Dr.
14  Thomas. The second clause of that, ordered to produce all
15  documents sent to, prepared by or received from Dr. Thomas,
16  that's what we talked about on the teleconference. That's
17  what we have done. We have produced every single piece of
18  paper, all e-mails that were sent back and forth between
19  counsel and Dr. Thomas. It didn't amount to much. It was
20  only about six or seven e-mails.
21       We also gave them a cover letter to those
22  e-mails. It described the communications, and it also
23  described the type of internal communications that we had
24  amongst attorneys, between attorney and clients. We noted of
25  course those were privileged, that those weren't required

Page 10

1  under the production portion of Paragraph 2, because
2  Paragraph 2 says, when it talks about producing documents, it
3  says, produce all documents sent to, prepared by or received
4  from. Then it goes on to talk about documents, any documents
5  withheld, et cetera, et cetera. So we didn't withhold any
6  documents on the basis of privilege. So there was nothing to
7  put on a privilege log. There was nothing to produce in
8  camera.
9       The issue is what does this mean, disclose all
10  communications with or relating to Dr. Thomas? And what
11  counsel for Ricoh is saying is that means that all documents
12  relating to Dr. Thomas had to be produced. That is
13  completely inconsistent with the second phrase, where it
14  talks about the exact scope of production of documents. Our
15  reading of it was, we disclosed in our cover letter precisely
16  what we were supposed to produce, precisely what kind of
17  communications went on.
18       Of course, we didn't produce them. The order
19  doesn't require it. It would never make sense to produce
20  privileged documents, even in camera. An in camera review is
21  often done to determine if there is a privilege, not to
22  actually review some privileged documents to find a basis for
23  a claim. But in any event, the order doesn't call for it,
24  before you even getting into the law regarding in camera
25  review.

Page 11

1       It is also important, Your Honor, that once we
2  received the declaration of Christopher Monti (phonetic),
3  this is the declaration that Mr. Hoffman talked about on the
4  July 30th conference, once we received that, which, by the
5  way, was one week ago, we had to wait until one week age to
6  get it, once we took the deposition of Dr. Thomas to find out
7  if, indeed, he received confidential information, once we had
8  those two pieces of information, two days later we said,
9  okay, we are not going to retain Dr. Thomas as an expert.
10  And we are not a hundred-percent convinced that he did
11  receive confidential information.
12       But we told them, all right, we are not going to
13  use him as an expert, fully expecting that would end
14  everything. But they said, no, they want to try to
15  disqualify counsel even though there isn't a shred of
16  information, shred of evidence anywhere stating that Dr
17  Thomas provided to counsel for defendants any sort of
18  confidential information. In fact, Dr. Thomas,
19  unequivocally, testified that he had one conversation with
20  attorneys for defendants for five minutes. And here is his
21  quote. He says, I didn't share any information with him --
22  this is talking about the one attorney -- about confidential
23  material.
24       That is it.
25       THE COURT: Okay. Mr. Brothers, Mr. DiGiovanni

Page 12

1  asserts that that clause that he has identified in Paragraph
2  2, all communications with or relating to, goes beyond the
3  letter and spirit of the discussion and subsequent order
4  entered by the Court orally on July 30th.
5       I don't have the transcript in front of me. I
6  don't have total recall. I don't really wish to engage in an
7  extended debate as to what was intended. But Mr.
8  DiGiovanni's reflections do seem to comport with my
9  recollection of that conversation. Go ahead.
10       MR. BROTHERS: Yes. I do have the copy of the
11  transcript in front of me. On Page 9 it references, Line 17
12  through 22, this aspect of the request. And I will read that
13  quote. And this relates to the second paragraph. Quote.
14  That the defendants are required to disclose all
15  communications that they have had with Dr. Thomas and produce
16  all the documents to us that have gone back and forth. If
17  they feel that any documents are privileged or work product,
18  then they can be submitted in camera. But we should get a
19  log so we can sort that out.
20       Prior to that, Mr. Hoffman had noted, on Page 8.
21  we didn't know the details of what had been discussed, and
22  then later on, Mr. Kelley acknowledged that we were seeking
23  the nature of their communications with Dr. Thomas.
24       The issue is twofold. First, it is not only
25  the communications back and forth between Dr. Thomas and

## Page 13

1  counsel for the defendants. But second, the issue is what
2  did the Howrey firm know and when did it know it with respect
3  to the confidential information that Dr. Thomas had obtained
4  from counsel for Ricoh.
5          There are inconsistencies between Dr. Thomas'
6  testimony and what Mr. Kelley was representing.
7          Now, we ought to be very cautious here. We have
8  not sought to disqualify the Howrey firm. What we are trying
9  to do is get information so that an appropriate determination
10 can be made. What Mr. DiGiovanni has said is, well, we
11 thought by dropping Dr. Thomas that would be the end of it.
12 But they still want to go ahead and take his deposition on
13 the very topics that Mr. Thomas had provided his confidential
14 consulting to counsel for Ricoh. And they just want to sweep
15 under the carpet these inconsistencies and hope that the
16 whole issue will go away.
17         At this point, we don't think that that is
18 appropriate. We think it is appropriate, an appropriate
19 inquiry can be made, but before that can happen, all of the
20 factual information needs to be collected.
21         Prior to our even having the conference with Your
22 Honor on the 30th, we had sent a letter to the Howrey firm,
23 saying, this is what we want. So they knew that we were
24 looking for not only the communications with Dr. Thomas, but
25 the internal communications on an in camera basis if the

## Page 14

1  privilege was not going to be waived, so that the Court could
2  make this determination, because ultimately, that may be the
3  critical issue, the determination of what is in the order and
4  our interpretation.
5          THE COURT: Counsel, let me just ask. The
6  determination being whether the documents at issue are
7  privileged or not.
8          MR. BROTHERS: I am sorry. The determination
9  would be twofold. First, whether the documents would be
10 privileged. But second, if the documents reflect that in
11 fact Howrey had received confidential information from Dr.
12 Thomas, as we believe is likely, based on their continued
13 pursuit of his deposition, so that they can get his opinions,
14 then an appropriate determination should be made.
15         It is important to note that Howrey recognized at
16 the outset that Dr. Thomas was consulting for counsel for
17 Ricoh --
18         THE COURT: Let me interrupt again. So that
19 appropriate determination being whether the Howrey firm
20 should be disqualified or not. Is that what you mean?
21         MR. BROTHERS: That is a decision that we may
22 well ask the Court to make. We are not asking it at this
23 time. We don't know what those documents may show. And we
24 may not ever see those actual documents. But we think that
25 it may be appropriate for the Court to see what is in there

## Page 15

1  so it can make an appropriate determination.
2          We want to be very careful. We are not at this
3  point saying the Howrey firm must be disqualified, because we
4  don't have all the facts from the Howrey side. We have it
5  from Dr. Thomas' side. But we don't have all of the
6  information.
7          THE COURT: Now, let me ask this: Do I
8  understand correctly that Dr. Thomas is more or less out of
9  this litigation at this point?
10         MR. BROTHERS: Counsel for defendants have
11 verbally informed us that they do not intend to retain him as
12 an expert. However, they have said that they intend to go
13 forward and take his deposition, which will include, they
14 say, the opinions that he developed as a result of his
15 consulting for Ricoh.
16         MR. DiGIOVANNI: Your Honor, that is not
17 accurate, with all due deference to Mr. Brothers. We never
18 said we were going to inquire as to any opinion in a
19 third-party deposition of Dr. Thomas, of any opinions he
20 formed while working with Ricoh, which he did for 12 or 14
21 hours. We never said that.
22         We will take his deposition, as we would any
23 other third party. His assignment was very important at that
24 time this invention was being developed. There is no way
25 that Ricoh can lock him up, in other words, put a cage around

## Page 16

1  him so we can't even get to him in this litigation. He is
2  still a fact witness. Ricoh may have talked to 15 or 20
3  witnesses and hired them for 12 hours. That doesn't mean
4  they can lock them up and prevent them from being part of
5  this litigation. We are entitled to take his deposition as a
6  third party. We will not inquire into conversations between
7  Dr. Thomas and Ricoh. We will not do that. We know we
8  can't, and we wouldn't, anyway.
9          THE COURT: Mr. Brothers, what do you say to
10 that?
11         MR. BROTHERS: Well, there are three things in
12 response, Your Honor. First, on the 28th of July, the Howrey
13 firm sent Dr. Thomas an e-mail, saying if the Court rules
14 that we can't use you as a consulting expert, we are going to
15 take your deposition on the things that we have been talking
16 about. And Dr. Thomas testified, when I asked him about
17 that, he said, that looks just like the things that I was
18 consulting with Ricoh about. And it does. And in the
19 communications that we have had with counsel for the
20 defendant, they have said we are precluded from asking Dr.
21 Thomas about those issues.
22         It seems to be a bit of a moving target, based on
23 what Mr. DiGiovanni is telling me today. But the facts
24 that Dr. Thomas had in-depth consultations with counsel for
25 Ricoh, and he testified he formed opinions as a result of

## Page 17

1 that. That opinion evidence, because they are going to ask
2 him to compare the patent to the prior art, that's
3 information that is all flowing directly from his consulting
4 work. As a result of the conduct of counsel for defendants,
5 Dr. Thomas has become a tainted witness. And it will be very
6 difficult to sort out what is tainted and what is not
7 tainted.
8         MS. CORBIN: Your Honor, I am the lead counsel in
9 this case for defendants.
10        If I could clarify the situation. The concern we
11 have about what we see as the problem with the order, the
12 language that Mr. DiGiovanni culled out, which was disclosure
13 of all communications with, and it's particularly the "or
14 relating to Dr. Thomas" part which gets to Howrey's internal
15 work product and communications with its client, because the
16 fact remains that Dr. Thomas developed one of the major and
17 key pieces of what we believe is invalidating prior art to
18 this patent, that was the genesis in the first place of
19 serving him with a third-party subpoena, to get the testimony
20 necessary to identify all the aspects of that particular
21 prior art and the timing of its development and so on.
22        Going back to the order, this is our concern.
23 The "or relating to" aspect would require us to provide in
24 camera for the Court, which if the Court really wants to see
25 it, we would do that, but it would require us to gather up

## Page 18

1 all the information and internal documentation we have about
2 that particular prior art and the fact that, as we learned,
3 Dr. Thomas was probably the most relevant witness who
4 developed that prior art, and would be the most relevant
5 person from whom to get the information as to the timing and
6 the particular aspects of that technology.
7         I do believe that those underlying facts cannot
8 be -- we are still entitled to discover those. The fact that
9 they hired him for 12 hours of consulting work can't shield
10 what is a major piece of prior art and take that prior art
11 essentially out of the case.
12        THE COURT: I agree with that.
13        MR. HOFFMAN: Your Honor, I am lead counsel for
14 Ricoh. If I could respond, since Ms. Corbin has?
15        THE COURT: Go ahead.
16        MR. HOFFMAN: I would appreciate the Court's
17 indulgence.
18        First of all, on the issue of what the scope is
19 and the timing, that is easily dealt with just by saying that
20 it is a document, internal communications regarding the
21 retention of Dr. Thomas and also putting on a date that
22 starts with the first contact with Dr. Thomas.
23        Let me go to the more significant issue here.
24        Howrey & Simon and the defendants here knew from
25 day one, once they contacted Dr. Thomas, that he was already

## Page 19

1 consulting for Ricoh. There is an e-mail where they said to
2 Dr. Thomas, there appears to be a conflict and consequently
3 we cannot use you.
4         Subsequently, they decided to change their mind
5 and send him a consulting agreement, encourage him to break
6 his agreement, terminate his agreement with Ricoh. and to
7 send him a consulting agreement, which he signed. After he
8 signed it, and after we complained, they went back and asked
9 him about the confidential information and whether or not he
10 got confidential information from Ricoh.
11        We didn't create this problem. Howrey & Simon
12 had a simple thing that they could have done if they chose
13 to. That is, once he indicated, Dr. Thomas said, hey. I am
14 consulting for Ricoh: Thank you very much, nice talking to
15 you, have a good day, goodbye. They chose not to.
16        They chose to go forward with this. And they
17 chose to do it until we found out about the subpoena. which
18 was only after they engaged him, not beforehand, contrary to
19 what they led him to believe, and only after they engaged him
20 already did we complain and did they finally do the checking
21        They created the problem. We didn't create
22 this. What we are trying to do is to seek the information
23 and to place the information before the Court so that
24 appropriate relief, whatever that may be, can be fashioned.
25 As Mr. Brothers indicated, we are not seeking

## Page 20

1 disqualification today. I don't know that we will ever seek
2 disqualification. There may be and I hope there would be
3 other relief less than that that would be appropriate here.
4         But the first thing we need to do is to find out
5 how deep the poison runs. There is clearly a problem. one of
6 their creation. We are just trying to sort it out so that we
7 can seek from the Court appropriate relief.
8         These documents that we are indicating that they
9 should list on a privilege log and send to the Court are not
10 coming to us at this point. These are not documents we are
11 saying at this point -- eventually, we may get there, once we
12 see what is on the log.
13        THE COURT: Let me ask this, Mr. Hoffman: The
14 communications relating to, is it your position that those
15 communications may reveal, I think the words tainted witness
16 were used before, that is, they may impact in some way upon
17 this potential witness' credibility as that credibility or
18 his testimony pertains to the merits of the case?
19        MR. HOFFMAN: It may relate to that. It may
20 relate to the issue of what is the appropriate relief. It
21 may relate to the issue of the fruits of the poisonous tree.
22 as the cliche goes. There is an overall issue as to what
23 should be the appropriate relief that is fashioned here.
24        THE COURT: Right now, I don't have a motion
25 before me asking for relief in that regard. I think what you

**Page 21**

1  are suggesting is how -- it has been discussed earlier
2  whether the Howrey firm should be disqualified or not.
3  Should that be my principal concern at this point? I think
4  it was Mr. Brothers who may have used the words tainted
5  witness. I think you are entitled to challenge this witness'
6  credibility before the finder of fact, as that credibility
7  pertains to his opinions regarding the merits of whatever it
8  is he is going to be testifying regarding the actual
9  substance of this litigation. Isn't the retention or the
10  disqualification of the Howrey firm, at least at this
11  juncture, an ancillary issue?
12      MR. HOFFMAN: It is an ancillary issue at this
13  point. But part of the other issues, Your Honor, in trying
14  to fashion relief, is, there is other forms of potential
15  relief. And we haven't sorted out what we are going to ask
16  for yet ourselves. But, for example, we may ask the Court to
17  say, listen, Howrey & Simon knew that this witness had
18  confidential information. They shouldn't be allowed to do
19  through the back door -- obtain his opinions that he formed
20  as a result of consulting with us. He should just be
21  someone, because of the problem that they created, should
22  just be off everyone's list, period. There is other
23  witnesses familiar with the prior art. He is not the only
24  one.
25      That is number one. It may be that there is

**Page 22**

1  other sanctions. It may be that the individuals who got
2  certain information on Howrey & Simon should not be involved
3  in the case, there should be a Chinese Wall around them.
4  That is another possibility. It does not disqualify the
5  firm. There may be a possibility that the whole firm should
6  be disqualified.
7      Right now, all we are looking for at this time is
8  a list of those communications on a privilege log.
9      MS. CORBIN: Your Honor --
10      THE COURT: Don't interrupt, counsel, please.
11      MS. CORBIN: I am sorry.
12      MR. HOFFMAN: Most people quite often provide a
13  list of privileged documents, anyway. Normally, once the
14  litigation starts, you don't continue. But this is a special
15  situation. And we are asking that the Court -- the way we
16  believe the order read, we ask that the Court require the
17  Howrey & Simon firm and defendants to provide a list of the
18  privileged documents. We also ask that the limited number of
19  documents -- I can't imagine there is many in this
20  category -- be provided to the Court, so that when the Court
21  has the issues laid before it, we can ask for what relief we
22  think is appropriate and the Court can fashion relief that it
23  believes is appropriate.
24      THE COURT: Ms. Corbin, what is the extent of the
25  potential production at issue here?

**Page 23**

1      MS. CORBIN: I wouldn't be able to address that.
2  I wouldn't have personal knowledge at this point.
3      THE COURT: Is there someone who can give the
4  Court that information?
5      MR. KELLEY: I can give you an estimate. I think
6  there is a handful of e-mails.
7      THE COURT: Let's produce them for the Court.
8      MS. CORBIN: Your Honor, my point is -- I don't
9  know whether it is apparent to the Court or not -- we seem to
10  be somewhat making points to cross-purposes here.
11      We did produce all of the exchange of e-mail and
12  any written documentation of an exchange between Howrey and
13  Dr. Thomas to the other side. And as well, Dr. Thomas'
14  deposition was taken. The testimony and those documents show
15  that no confidential information, if Dr. Thomas has any, was
16  ever communicated to Howrey & Simon. And I just want to make
17  clear, because I haven't heard, and I don't believe it's
18  Ricoh's position, that the contrary facts are the case. If
19  so, they haven't stated that.
20      THE COURT: I think they have stated that. Maybe
21  I misunderstood.
22      MS. CORBIN: That is why I wanted to clarify.
23      THE COURT: Let's clarify that.
24      MS. CORBIN: I think what they are complaining
25  about is that he had confidential information and we knew at

**Page 24**

1  some point, he had mentioned to us that he had consulted for
2  this short time with them and we proceeded anyway.
3      THE COURT: Let's get clarification on that. Mr.
4  Brothers.
5      MR. BROTHERS: Yes. Your Honor, we believe,
6  based on the inconsistencies between what Mr. Kelley said
7  during the hearing and Mr. Thomas' testimony, as well as the
8  intent of defendants to continue to pursue Dr. Thomas'
9  testimony, leads us to believe that something more than
10  innocent communications occurred. We don't know what those
11  are and we don't know the extent to them. We know that there
12  was at least one phone call in which the questions were
13  asked.
14      THE COURT: So in other words, Mr. Brothers. it
15  is at least your position that it may have been the case
16  that -- and I don't want to put words in your mouth. but for
17  purposes of clarifying the record and answering Ms. Corbin's
18  question -- is it your assertion that there is the
19  possibility that they may have known of the confidential
20  relationship and proceeded anyway?
21      MR. BROTHERS: Well, certainly, as I understand
22  it, everybody agrees they knew of the confidential
23  relationship. They elected to proceed anyway.
24      THE COURT: And that in fact confidential
25  information had been received by Dr. Thomas?

## Page 25

1  MR. BROTHERS: Dr. Thomas has testified that in
2  fact confidential information was received.
3  MS. CORBIN: Was received, not transmitted to
4  Howrey Simon.
5  THE COURT: I am sorry. I should have gone that
6  additional step.
7  Is it your position, Mr. Brothers, that it was
8  transmitted?
9  MR. BROTHERS: We believe that there is an
10  inference that supports that. But we don't have the internal
11  Howrey documents that would presumably reflect on that, and
12  Dr. Thomas said he could not recall with specificity the
13  contents of his telephone conversation.
14  THE COURT: I thought, Ms. Corbin, I understood
15  counsel to take the position they have just articulated.
16  MS. CORBIN: My confusion is, Your Honor, they
17  have now taken a deposition and they have all the documents.
18  And they still say they have this inference. But they don't
19  have any statements that he made or any evidence from the
20  document exchange that any confidential information was
21  actually transmitted.
22  THE COURT: What is the basis for drawing the
23  inference, Mr. Brothers? That is what is being questioned
24  here.
25  MR. BROTHERS: There are three specific pieces of

## Page 26

1  evidence, Your Honor. First is the fact that the questions
2  were asked during the telephone conversation what
3  confidential information was there, and there was the inquiry
4  following our complaint, and then there was a followup e-mail
5  to that saying -- and I read it as kind of a self-serving or
6  "let's protect ourselves" e-mail -- saying, we talked about
7  this in the phone call and I want you just to give me a
8  general list of the documents that were talked about.
9  Dr. Thomas didn't testify specifically, he
10  couldn't remember the specifics of the phone conversation.
11  But based on their, Howrey's continued pursuit of Dr. Thomas
12  and the e-mail following this exchange, saying we want to
13  take your deposition on in essence the same things that you
14  consulted with for counsel for plaintiff, that leads us to
15  believe that there is going to be favorable testimony coming
16  out of that. And what is the basis for that? We think that
17  there is only one answer to that. They have got some idea
18  from Dr. Thomas as a result of his consulting with Ricoh
19  about what those opinions were going to be. And that is the
20  confidential information.
21  In any event, Your Honor has ordered the Howrey
22  firm to produce those handful of internal documents. I would
23  ask that, because the order of July 31st provides that by
24  August 31st, we may file a two-page letter, I would just ask
25  that that be postponed until 10 days after the submission of

## Page 27

1  the privilege log and internal documents.
2  THE COURT: That is an acceptable process. We
3  will follow that recommendation.
4  Ms. Corbin and Mr. DiGiovanni, are you clear as
5  to what your responsibilities are?
6  MR. DIGIOVANNI: Your Honor, actually, I am
7  somewhat confused with regard to the scope of production.
8  The only documents -- we described these few letters to
9  Ricoh -- the only documents that we have other than the
10  documents that went back and forth to Dr. Thomas, which were
11  all produced, are documents among the attorneys, the Howrey
12  Simon attorneys, there was some e-mail correspondence,
13  including myself, regarding Dr. Thomas and these issues
14  regarding Dr. Thomas. So every single e-mail communication
15  or other communication has at least as a recipient or the
16  author an attorney. So there is no doubt that all these
17  documents are privileged.
18  THE COURT: Sure.
19  MR. DIGIOVANNI: It sounds like they are trying
20  to break the privilege. However, there is no such exception
21  to the privilege that would allow this to break. For
22  example, in an instance where you have the crime/fraud
23  exception, the U.S. Supreme Court and the Third Circuit have
24  said there has to be at least a prima facie case established
25  before that can even be broken. There has to be a reasonable

## Page 28

1  basis to even inquire into these privileged documents for
2  even in camera review.
3  It is our position Ricoh has not even come close
4  to establishing that, especially because we have taken the
5  deposition of Dr. Thomas and he said, quote, I didn't share
6  any information with him -- the one attorney he talked to --
7  about confidential material. So we are somewhat confused as
8  to what the possible inquiry can be, because this is
9  privileged information.
10  THE COURT: I understand what it is. I know the
11  crime/fraud exception, counsel.
12  Mr. Brothers, do you have a position on the
13  crime/fraud exception? Do you want to say something about
14  that?
15  MR. HOFFMAN: Your Honor, if I can just briefly
16  respond. First of all, to return to one of the points in
17  history because it lays the foundation for this. There was a
18  representation to the Court that Dr. Thomas had told the
19  Howrey people that he received no confidential information
20  from Ricoh.
21  THE COURT: I remember that.
22  MR. HOFFMAN: In fact, the Court made a comment
23  about relying on Dr. Thomas' legal opinion when that was
24  indicated. Dr. Thomas, during his deposition, though,
25  testified that he did receive confidential information from

## Page 29

1  Ricoh, obviously, inconsistent with the representations.
2  There is a number of representations that have been made to
3  the Court that are inconsistent -- I am sorry,
4  representations to the Court that are inconsistent with the
5  documents we have obtained to date and also Dr. Thomas'
6  testimony.
7        Your Honor, I think that the whole issue of
8  making certain representations to the Court that they know
9  are inconsistent and these documents that we are asking be
10 turned over to the Court may further our belief, support our
11 belief, does create an issue of potential fraud upon the
12 Court.
13       THE COURT: I think it does. The Court is going
14 to order the production of the July 30 transcript for its
15 inspection at the same time that it reviews the documents
16 that I have just ordered be produced.
17       MR. KELLEY: I want to raise one point.
18       THE COURT: We are done with this point.
19       MS. CORBIN: So I can understand the scope...
20       THE COURT: Let's make sure we understand the
21 scope.
22       MS. CORBIN: You would like every internal
23 document in Howrey that makes reference to Dr. Thomas.
24       THE COURT: Yes. As I understand it, we are
25 talking about a handful of documents.

## Page 30

1        UNIDENTIFIED SPEAKER: Your Honor, is there a
2  time cutoff for this?
3        THE COURT: Ms. Corbin, is that correct?
4        MS. CORBIN: I can't make any personal
5  representation to that. There may be documents that address
6  that particular piece of prior art.
7        THE COURT: I think it was Mr. Kelley who
8  indicated it would be a relatively few number of documents.
9  Is that correct, Mr. Kelley?
10       MR. KELLEY: Yes, Your Honor.
11       MR. DiGIOVANNI: Your Honor, I am not sure about
12 the time cutoff, because I believe Mr. Hoffman had stated he
13 was interested in the internal documents regarding the
14 retention of Dr. Thomas.
15       MR. HOFFMAN: Your Honor, if I can just respond,
16 I can simplify things by proposing a time cutoff. I believe
17 the subpoena was sent out to Dr. Thomas early July --
18       UNIDENTIFIED SPEAKER: Late June.
19       MR. HOFFMAN: -- late June, from whatever that
20 date of that subpoena is going forward, coming to the
21 present.
22       THE COURT: Is that understood on the other
23 side?
24       MS. CORBIN: Yes, thank you, Your Honor.
25       MR. DiGIOVANNI: Your Honor, if we are talking

## Page 31

1  about documents relating to Dr. Thomas through today, this
2  would include the e-mails leading up to this teleconference
3  regarding strategy.
4        MR. HOFFMAN: I apologize, Your Honor.
5        THE COURT: We don't need that. Through the date
6  of the July 30th telephone conference with the Court.
7        Are we now clear on time parameters?
8        UNIDENTIFIED SPEAKER: It would be June 26th,
9  2003, to July 30th, 2003.
10       THE COURT: MS. Corbin, do you understand the
11 time, and Mr. DiGiovanni, do you understand the time
12 parameters?
13       MS. CORBIN: It would capture our communications
14 with each other in preparation for that call.
15       THE COURT: Well, I don't want that, either.
16 That is not the intent of the Court, to include that,
17 either. Let's be a little more specific. Mr. Hoffman.
18       MR. HOFFMAN: Your Honor, it would be with
19 respect to the issue whether or not to retain Dr. Thomas,
20 what Dr. Thomas discussed with them, what was communicated --
21 in other words, internal discussions about what were the
22 communications with Dr. Thomas, whether or not they should or
23 should not retain him. If it will simplify things, Your
24 Honor, nor that we not capture their internal communications
25 regarding preparing for the telephone conference with the

## Page 32

1  Court, why don't we drop it back a few days prior -- Your
2  Honor, we are not looking for things relating to the strategy
3  in preparing for the telephone conference.
4        MR. BROTHERS: I was trying to make clear that
5  the phone conference was on July 30th and recapping that
6  phone conference, then there were additional e-mails to and
7  from Dr. Thomas up through the date of the hearing. So,
8  obviously, to the extent that an e-mail was sent to or
9  received from Dr. Thomas and forwarded to others with the
10 comments about substance and Dr. Thomas' retention and about
11 what was said, then I think all of those are appropriate to
12 include.
13       THE COURT: I agree.
14       MS. CORBIN: So, Your Honor, are you saying
15 through the date of the deposition? I missed what whoever
16 was speaking last just mentioned.
17       MR. BROTHERS: I believe the subpoena was issued
18 on June 25th or 26th. And the hearing was on July 30th, in
19 which the Court said no further communications with Dr.
20 Thomas. So it would be that 34-day period.
21       MS. CORBIN: Excluding any internal
22 communications from Howrey in preparation for that conference
23 call with the Court.
24       THE COURT: Correct.
25       MS. CORBIN: I have that in mind now. Your

CondenseIt™                                           **August 28, 2003**

| Page 33 |
| --- |

1  Honor.  Thank you.

2      THE COURT:  Okay.  Great.

3      MR. HOFFMAN:  Your Honor, I presume you want to

4  proceed in order?

5      THE COURT:  Yes, sir.

6      MR. HOFFMAN:  Yes, sir.  The second topic is a

7  request of Ricoh.  We served the subpoena that was issued out

8  of Delaware, out of this Court, on Synopsys.  Synopsys is not

9  a party to the litigation.  However, Ms. Corbin has

10  previously indicated to the Court back at the time of the

11  scheduling conference that their position is Synopsys is a

12  real party in interest here.

13      We served the subpoena for documents.  Synopsys

14  has objected to every part of that subpoena, to all the

15  categories.  To date, they have produced as far as anything

16  other than some prior art, they have produced approximately I

17  think it's less than 100 pages of documents.

18      What we are trying to discover in general from

19  Synopsys is information about the software, the systems that

20  they have provided to the defendants.  As the Court may

21  recall, and it's also set forth in defendants' motion to

22  dismiss, part of the issue here regarding the defendants'

23  activities relating to their utilization of Design Compiler.

24  There is also another program called Behavioral Compiler,

25  which may also play a part here.

| Page 34 |
| --- |

1      What we indicate, in fact, they have asked us for

2  our basics, some of our infringement positions, and we have

3  set forth a basic explanation of why we think they infringe.

4  It is very general at this point, granted.  But it does in

5  that indicate that part of it involves the use of Design

6  Compiler.  Synopsys has indicated that they are willing to

7  give us some non-confidential, publicly available documents

8  on Design Compiler and Behavioral Compiler, but nothing

9  confidential.

10      We have obviously pushed for more.  We want the

11  confidential documents on both products.  And also we want to

12  know what other products did they provide to the defendants,

13  because there are other products that may come into play

14  here.

15      Synopsys has raised a number of objections.  The

16  first objection that they have raised is that the documents

17  should not have to be produced twice, because that would be

18  duplication, and consequently, they will produce them in the

19  California action and not here.

20      And I start with that one, Your Honor, because in

21  essence during the scheduling conference, Ms. Corbin sought a

22  stay of discovery in this action.  And the Court

23  appropriately indicated that, no, discovery was going to go

24  forward.  What Synopsys is doing here and the defendants are

25  doing here in essence is saying that, no, discovery is not

| Page 35 |
| --- |

1  going to go forward.  We are only going to produce the

2  documents in California.

3      We agree, they don't have to be produced twice.

4  But there is no reason not to produce them here.

5      They have also objected on the basis that the

6  documents are confidential.  Well, Your Honor, there is a

7  protective order.  Howrey & Simon, who represents both

8  Synopsys and the defendants, was involved in negotiating that

9  protective order.  They were involved in working out the

10  details of it.  Clearly, they can be produced underneath the

11  protective order.

12      Next, Your Honor, something I had not mentioned

13  Synopsys has not objected on any type of basis that there is

14  no jurisdiction of this Court over this issue, over the

15  subpoena.  So it is appropriately here, the subpoena.

16      The only issue is what subject matter, what

17  documents do they need to produce.  They have also complained

18  or objected that we haven't explained our patent infringement

19  theory.  This also comes up with the objections that have

20  been raised.  Mr. Meilman will get into that later on when we

21  address that topic.

22      We have indicated to them, in fact, they have

23  stated that the issue of infringement relates to the

24  utilization of Design Compiler.  We are fully aware of that.

25  So for them to tell the Court, we don't -- to object on the

| Page 36 |
| --- |

1  basis we don't understand what you are charging with

2  infringement at the same time they are telling the Court

3  that, oh, what's being charged with infringement is

4  utilization of Design Compiler is simply disingenuous.

5      They have also objected, indicated that the

6  documents can be obtained from the defendants and we would be

7  better off obtaining it directly from the defendants since

8  they are parties to the litigation.

9      Well, first of all, Your Honor, not all the

10  documents can be.  But more importantly here, the defendants

11  in turn, turn around and say, through the same attorneys,

12  Your Honor, saying that, well, we can't provide you the

13  documents because it's the confidential information of

14  Synopsys.  Well, Your Honor, obviously, the information can

15  be provided.  It can be provided underneath the protective

16  order.

17      We next have an objection that the documents,

18  some of the documents are in the public record and can be

19  obtainable from other sources.  Well, to say, well, some of

20  the documents I have are publicly available and you can

21  obtain them, well, who knows what documents they are?  If

22  they gave us a list, here is the dates of the documents, here

23  is where you can obtain them, fine.  But if they have the

24  documents, whether they are publicly available from other

25  sources or not, they should still be obligated to provide

## Page 37

1 them.
2       They also object that apparently some of the
3 documents are confidential information of third parties,
4 unidentified third parties. We have asked them to identify
5 them, these allegedly third parties. They have refused to do
6 that.
7       In essence, what we are getting, what appears to
8 us, Your Honor, is a stonewalling of discovery, a decision to
9 say that basically we are just not going to provide discovery
10 until the Court requires us to. That's the way it looks. Or
11 until the case the case is in California, we are not going to
12 give you discovery. We are not going to provide it in the
13 Delaware action.
14       THE COURT: Okay. Who is going to handle this?
15       MR. KELLEY: Your Honor, I am.
16       Mr. Hoffman just recited several issues that
17 relate to objections that were recorded in our responses to
18 the interrogatories. But it doesn't address the real issue
19 here, which is the breadth -- I said interrogatories, I meant
20 document requests -- which is the breadth of the document
21 requests. If you look at these -- am I talking over
22 someone?
23       THE COURT: No.
24       MR. KELLEY: They have asked for -- I will go to
25 some specific language in a minute. They have asked for

## Page 38

1 every engineering document relating to any product produced
2 by Synopsys. Now, Synopsys is a third party, may be required
3 to produce some documents in this litigation. But the basis
4 for that production has to be that there is a need to get
5 this information from the third party and that the evidence
6 is directly related to a real critical issue in the case that
7 can't be attained from some other source.
8       It's not proper for them to submit document
9 requests that ask us for every engineering document relating
10 to every product that Synopsys has produced. That is the
11 real issue here. Not about the nature of our objections,
12 about whether a document is confidential or not. If they are
13 willing to focus their document requests on the real critical
14 issues, the key part of the Synopsys product that they think
15 is relevant to their theory of infringement, which, as Mr.
16 Hoffman just admitted, they haven't really spelled out in any
17 kind of detail, then that would be a legitimate basis for a
18 document request.
19       Let's cut to some of the text from the document
20 requests.
21       The order that we would ask the Court to issue is
22 a protective order relating to Document Requests 2 through
23 5. Let me just tell you, read to you a little bit, and I
24 won't do this for all of them, because it will become
25 tedious, but let me just read to you from No. 5. It says.

## Page 39

1       Produce all documents concerning all hardware, software
2 libraries, core databases for use in ASIC design systems, and
3 then goes on and on, about including technical reference
4 manuals, technical bulletins, user manuals, installation
5 manuals, training manuals, sourcecodes, tutorials, et cetera
6 et cetera.
7       The real issue here is that these are just not
8 crafted as the kind of discovery that one might reasonably
9 expect one could get from a third party to a case. They are
10 not limited in any manner to the products at issue. They are
11 not limited in any manner to the key parts of the products
12 that they are going to contend infringe.
13       The only thing that they have identified in their
14 interrogatory answers to date as being the basis of their
15 infringement allegations is two steps, two steps that are
16 performed by the defendants in this case. The first is
17 providing input to Design Compiler, and the second is using
18 Design Compiler to take the library cells and create some
19 output that will be used to produce an output for (inaudible)
20 ASIC a chip. That is all they have identified.
21       If they are willing to restrict their document
22 requests to specific things relating to those steps and
23 relating to the product that they say defendants are using in
24 an infringing manner, then we would have a basis to produce
25 documents. They aren't entitled to a fishing expedition of

## Page 40

1 every engineering documents in Synopsys' possession.
2       And I would go on to state, Your Honor, there are
3 a number of documents, document requests, that we have
4 produced documents, agreed to produce documents in response
5 to. This is not an exercise in stonewalling. We have
6 given them some manuals that describe how, what kind of
7 inputs Design Compiler can accept, and describe exactly the
8 steps involved or the state, describe that Design Compiler is
9 used to select library cells in order to produce an output
10 for ASIC design.
11       THE COURT: You have described, counsel, some
12 parameters. Let's see if they are acceptable to counsel for
13 Ricoh.
14       MR. HOFFMAN: Your Honor, first of all, the
15 documents that they have produced is less than 100 pages.
16       THE COURT: I don't want to go over that. What I
17 am interested in knowing is how you react to the objection
18 which Mr. Kelley says is really at essence here, that is the
19 scope, that your request is overly broad.
20       MR. HOFFMAN: Your Honor, what we have indicated
21 to them is that -- and then I would like to go to what is
22 actually the Request No. 5, because it was not properly read.
23       THE COURT: I don't want to do that. What I want
24 to get to is an agreement. I am really not interested in
25 batting this ping-pong ball back and forth across this

## Page 41

1  table. I want to get to an agreement rather quickly.

2      MR. HOFFMAN: Yes. Your Honor, what we have

3  indicated is we will agree to limit our request to No. 1,

4  Design Compiler documents, Behavioral Compiler documents.

5  And they have agreed -- that is just the starting point, and

6  I will go on from there. But they have agreed to produce

7  documents relating to those products, but only the

8  non-confidential documents.

9      THE COURT: Well, let's talk about that then.

10  Insofar as, Mr. Kelley, counsel has now defined what I hope

11  you will agree is a proper scope, what about the production

12  of confidential information pursuant to the terms of your

13  protective order?

14      MR. KELLEY: Is that a question for me, Your

15  Honor?

16      THE COURT: Yes, sir.

17      MR. KELLEY: The reason that we mentioned

18  confidentiality in the objection is that as a third party

19  confidentiality is one of the considerations that is

20  mentioned in the case law about weighing that burden on the

21  third party versus the need in the case.

22      THE COURT: We are trying to reduce the burden.

23  I do understand your complaint regarding the burden.

24      MR. KELLEY: I apologize. The next point, what

25  they have identified as being the basis of infringement,

## Page 42

1  namely, that the user provide certain inputs to Design

2  Compiler and that Design Compiler takes those inputs and

3  selects library cells to produce the output, that they can

4  get from public documentation. There really is no need to go

5  into our sourcecode describing exactly in great detail how

6  those functions are performed or into the internal

7  engineering documents describing every aspect of that. If

8  that is what they need from us, they have already got that.

9  And I will correct Mr. Hoffman. We have already produced

10  several hundred pages of manuals.

11      THE COURT: Let's just deal with this discrete

12  issue, this discrete range of documents, Mr. Hoffman. Do you

13  agree that there are alternate sources?

14      MR. HOFFMAN: No, there are not, Your Honor. The

15  information is going to be in the confidential documents. It

16  is going to be in the sourcecode. It is going to be in the

17  other information that comes out of Synopsys or comes out of

18  the defendants.

19      There is many other parts of this claim, such as

20  discussions of expert systems, discussions or rules. Some of

21  those are going to be parts of the (inaudible) of Design

22  Compiler or Behavioral Compiler.

23      So consequently, just inputting information, yes,

24  that is part of the process here, there is no question that

25  is part of the process. But then it's how the system

## Page 43

1  operates is another part of the process, and some of that is

2  not fully available. The details that we want for trial to

3  prove our case, obviously, we have enough information to

4  bring the case and to allege, quite appropriately allege.

5  that that information and that operation is present. But we

6  are entitled to further information to further establish and

7  prove our case.

8      Synopsys, they keep on saying they are a third

9  party. Yet at other times they keep on saying they are the

10  real party in interest and they are the true party here.

11      THE COURT: I don't hear any objection to the

12  relevance, that it's not discoverable. It's a question of

13  sourcing, where you can get it from, whether you can get it

14  from alternate sources and how to protect it.

15      MR. HOFFMAN: There is a protective order and we

16  cannot get this from --

17      THE COURT: What I am getting at is, it seems to

18  me, counsel, if you remove for a moment -- and I know this is

19  difficult to do -- your adversarial hats and think more in

20  the spirit of cooperation, because there is no apparent

21  disagreement as to the relevance of this information, the

22  discoverability of this information, then you could probably

23  come to a point of agreement as to how it should be

24  produced. Is that just beyond your capability? Or what are

25  we talking about here?

## Page 44

1      MS. CORBIN: Your Honor, I think that now they

2  have the identified Design Compiler, Behavioral Compiler --

3  Design Compiler alone, just for point of reference for the

4  Court, is the largest product at Synopsys, accounts for more

5  than 20 percent of its revenue. They still want all

6  engineering documents relating to Design Compiler. We still

7  have a huge problem with respect to overbreadth.

8      THE COURT: I can understand why you would have a

9  problem with that. And it seems to me the plaintiff should

10  be able to narrow that request somewhat.

11      MR. HOFFMAN: Your Honor, if Synopsys is willing

12  to give us the confidential information, they are willing to

13  give us the sourcecode limited to the time of the scope of

14  documents, going back to 1996, so we are not talking about

15  everything that is there, all documents that they have ever

16  had, we are willing to work with them in trying to work out

17  some other limitations. But to say, well, tell us the

18  details of exactly which parts of Design Compiler you are

19  alleging to infringe and give us a detailed claim chart so

20  that then we can decide whether or not we will give you

21  anything is putting the cart before the horse. What they are

22  asking is prove your case and then we will decide if we will

23  give you discovery.

24      THE COURT: Obviously, you don't have to do that.

25      MS. CORBIN: Your Honor, the sourcecode, since it

CondenseIt™                                                    August 28, 2003

**Page 45**

1  has been mentioned twice now, is of particular import, I
2  think, because that is the most sensitive information about a
3  particular product, it contains a lot of information.  If
4  what they need is an understanding of the inputs that these
5  particular customers input to Design Compiler when they use
6  it, there are other ways to get to that information besides
7  having the sourcecode, which is the most sensitive
8  information in the company, regarding their key product.
9       THE COURT:  Well, inevitably, counsel, in all of
10  these cases, and you know that from your vast experience in
11  this area, there is always information, oftentimes
12  extraordinarily sensitive information like this that is at
13  issue and that needs to be shared in order for the litigation
14  to proceed forward.  That is why we have protective orders.
15  That is why there is a body of law that has grown up around
16  this issue.  But it is incumbent upon counsel to recognize
17  the need to cooperate, and if necessary, to craft new
18  language that will enable this type of information to be
19  shared at appropriate levels.  If it is for attorneys' eyes
20  only -- I think you understand where I am going with this.
21       If there is truly an alternate source that will
22  enable the plaintiff to prosecute its claims in a timely
23  fashion from which it can receive this information, I would
24  be interested in knowing and having the discussion right now
25  as to what that source is and whether it is acceptable to the

**Page 46**

1  plaintiff.
2       MS. CORBIN:  Can you address that, please, Chris
3  Kelley?
4       MR. KELLEY:  Yes, absolutely.  That is where I
5  was intending to go.
6       Your Honor, the issue here is that -- of course,
7  they have stated to this Court -- and I don't want to get
8  into the motion to stay or transfer -- but they have stated
9  that their beef is not with Synopsys.  That it's by
10  defendants that are infringing.  They are now suggesting that
11  Synopsys is a third party and as a party to this case has the
12  same obligations in discovery.
13       If you look at the way the interrogatory is
14  drafted, they identify the two things that would have some
15  connection with the user, namely, putting some stuff in at
16  the top of the process and getting something out at the
17  bottom.  And they didn't mention anything about all the other
18  the stuff, which of course I think they are going to argue
19  are all internal to Design Compiler.
20       Their theory of infringement really is these
21  defendants use Design Compiler.  If that is the case, which
22  they haven't come flat out and stated today, they should have
23  sued Synopsys.  Instead, they elected to sue Synopsys'
24  customers.  Now they are trying to back-door, attack
25  Synopsis' product by getting this very broad discovery.

**Page 47**

1       I think the progression here is, to the extent
2  they really believe their case of infringement rests on
3  something the defendants are doing and there is some
4  peripheral material that is in the exclusive possession of
5  Synopsys, that is the kind of discovery they should get.  But
6  what I think we are going to find out when we actually have
7  this meeting -- and I think that's the proper way to proceed
8  is for the proper parties to get together and work out
9  exactly what they need and what we can give them, how we can
10  get them the information they need.  I think what we are
11  going to find is everything they need relating exclusively to
12  stuff done by Design Compiler, nothing to what these two
13  defendants here are doing except using Design Compiler,
14  providing the regular inputs that Design Compiler normally
15  takes in and at the end of the process say thank you very
16  much for the output, I am going to take this off to go make
17  the chip.
18       THE COURT:  It is not necessary for you to
19  respond, Mr. Hoffman.  The Court has instructed the parties
20  to get together and discuss this matter.  If you are still at
21  an impasse after that discussion, obviously, we will have to
22  revisit this.
23       Let's go on to No. 3.
24       MR. HOFFMAN:  No. 3, Your Honor --
25       MR. KELLEY:  Your Honor, I think this is our

**Page 48**

1  item.
2       THE COURT:  Yes.
3       MR. KELLEY:  This is a relatively simple matter.
4  On the patent at issue, there are two inventors, Mr.
5  Kobayashi and Mr. Shindo.  Ricoh has already agreed to make
6  Mr. Kobayashi available for deposition in Japan.  That is
7  going forward.
8       At a fairly early point during discovery, we
9  asked them whether they were representing Shindo.  I am not
10  going to get this exactly right.  They said, no.  We will see
11  if they will work with us.  Give us your subpoena and we will
12  see if he will accept it, not formally, accept service, but
13  he will respond to it.
14       We haven't yet received from them a commitment,
15  any final word as to, one, whether Mr. Shindo will accept
16  this -- will cooperate in discovery, and two, whether they
17  intend to use him during trial, appear as a witness.
18       Both Mr. Shindo and Mr. Kobayashi, to our
19  knowledge, live in Japan.  We have asked them if they would
20  bring Mr. Shindo to the United States.  They have said, no,
21  you have to go to Japan to take his deposition if you want to
22  take his deposition.  That's assuming of course that he at
23  some point determines to cooperate.
24       The problem we are facing, given the close of
25  discovery in January, the facilities for deposition, which I

Teleconference - Judge Sleet                          Page 45 - Page 48

Page 49

1  assume everyone on the phone is familiar with, depositions in
2  Japan must takes place either at the embassy or one of the
3  consulates. The Tokyo Embassy is already completely booked.
4  There is a little opportunity, some space in the Osaka
5  Consulate, which, to our understanding, that is actually
6  where Mr. Shindo lives, is Osaka.
7      What we would like from the Court is some
8  deadline as to when they actually have to have a final word
9  as to whether Mr. Shindo is going to cooperate or not. Then
10 either to make him available in Japan in accordance -- with
11 one of the windows of opportunity that we have, at the Osaka
12 Embassy, or bring him to the United States for deposition
13 here.
14     THE COURT: Okay.
15     MR. KELLEY: we can depose him in advance of
16 trial.
17     THE COURT: Can we get an answer to the question,
18 counsel?
19     MR. HOFFMAN: Yes. Mr. Shindo, who is a third
20 party, we don't represent him, we have attempted to contact
21 him through numerous ways. He does not respond to any of our
22 requests to see if he would be willing to accept the
23 subpoena.
24     We have asked him to sit for a deposition and
25 produce documents. He does not respond. He is so far, by

Page 50

1  lack of response, at least implicitly is indicating he is not
2  going to cooperate. He has been gone from Ricoh over ten
3  years now. It is our belief that he is not going to
4  cooperate. Obviously, if he is not going to cooperate, he is
5  not going to show up at trial or anything else.
6      Both plaintiff and the defendants had listed Mr.
7  Shindo as someone who might have information. He is one of
8  the inventors. I presume he has some information. But no
9  one can force him as a third party to cooperate or to appear
10 for a deposition. We have been unsuccessful in doing that.
11 Consequently, we can't produce him.
12     With Dr. Kobayashi, he lives in Japan. He is
13 also not employed by Ricoh. We asked him. He came back and
14 said, yes, he would be willing to voluntarily appear. And
15 that deposition is set up in September, late September.
16     THE COURT: Mr. Kelley, what would you have
17 counsel do in this situation?
18     MR. KELLEY: I understand the difficult situation
19 he is in. This is the first time I heard he hadn't
20 responded. What I guess I would like is a drop-dead date, if
21 you will forgive the phrase, by which we will know he is
22 either going to cooperate by this date or there is not going
23 to be an opportunity for him to appear at trial. It seems to
24 me that should be sometime before the close of discovery, not
25 the final day of discovery.

Page 51

1      MR. HOFFMAN: That is fine, Your Honor. We would
2  be willing to do that by the end of the year.
3      THE COURT: The drop-dead date is the end of
4  discovery.
5      MR. KELLEY: The complicating factor is if he is
6  going to be deposed in Japan.
7      THE COURT: No. I understand. Obviously, there
8  are challenges that would have to be overcome. For instance,
9  on the last day of discovery, you get word that he is
10 available, the Court will be flexible, perhaps, in all
11 likelihood, and permit the parties an additional period of
12 time in which to complete his deposition. But we can
13 certainly deal with that at the time. At least theoretically
14 the drop-dead date is the last day of discovery.
15     MR. HOFFMAN: we have asked the defendants to
16 produce all documents -- let me read it to you, a single
17 document request in this regard: Produce all documents and
18 tangible things identified in Section B, Items 1 through 8,
19 of defendants' initial disclosure dated and served on or
20 about May 30, 2003.
21     This is where they listed the documents that they
22 are going to rely upon in support of their case. We asked
23 them to produce the documents. Part of the response is,
24 defendants further object to this request as unduly
25 burdensome in seeking discovery of information not reasonably

Page 52

1  calculated to lead to the discovery of admissible evidence.
2  Defendants further object to this document request as unduly
3  burdensome and on the basis that it seeks detailed discovery
4  regarding operations of defendants that has no relevance to
5  defendants' ASIC products or methods.
6      Your Honor, these are the documents that they
7  listed, the categories of documents they listed in their
8  initial disclosure.
9      The purpose of the initial disclosure, obviously,
10 is either done over the documents, list the categories so the
11 other side can go ahead and request them. We requested
12 them. They came back and have said, no, they are not
13 relevant. We tried to work it out with them. The response
14 was, and this is from Mr. Mower (phonetic), defendants
15 identified eight categories of documents that were likely to
16 be relevant in this dispute. Defendants did not suggest, as
17 your letter implies, that any documents that go into that
18 that fell into these categories were relevant.
19     Well, Your Honor, if they listed them, you only
20 list what you think is relevant. If it is relevant, we are
21 entitled to them. If they didn't list any -- if the
22 documents they listed are not relevant, then why did they
23 list them in their initial disclosure?
24     THE COURT: I agree. What is the defendants'
25 response to this?

## Page 53

1    MR. KELLEY: Your Honor, the categories that are
2  identified are relatively generic phrases. Product design,
3  development materials, marketing, promotional materials.
4  Sales and accounting statements. You get the gist. Sort of
5  generic classifications of documents.
6        When we prepared this, this is in the initial
7  disclosure statement, we did not have any idea what their
8  theory of infringement was. All we had was the complaint,
9  which doesn't provide any detail other than you infringe. We
10  did note what our invalidity arguments were going to be and
11  we started collecting that information as quickly as
12  possible. In fact, we have produced the thousands of
13  documents that plaintiffs sometimes refer to in their papers
14  are all prior art articles that we have produced. So we have
15  produced the materials we knew about in describing these
16  categories at that time. We immediately started producing
17  that stuff.
18        Since then, we have agreed to go ahead and get
19  the materials relating to -- and here's where the parties
20  have had some negotiation in the past few days leading up
21  though this call, not ultimately successful but some
22  narrowing of the differences -- we have agreed to produce, to
23  go get documents relating to ASIC products which were
24  developed in a process where there was some logic synthesis.
25  Logic synthesis is the kind of operation performed by Design

## Page 54

1  Compiler and other product.
2        And we wanted to further restrict the documents
3  to documents that had some bearing on the use of, the steps
4  which they have identified in their interrogatory, providing
5  input to the logic synthesis to Design Compiler and using
6  Design Compiler to map library cells to produce an output
7  file.
8        They have agreed that their document requests,
9  which asks for every information, all documents about every
10  ASIC, should properly, they have agreed to narrow their
11  request, just in the last few days, to ASIC, whether there
12  was some logic synthesis, i.e., having something to do with
13  the process that is described in their patent. So then the
14  remaining difference, really, in the document requests is
15  whether they get every document that the defendants have on
16  that ASIC or if they get the documents that are relevant to
17  the claimed process.
18        THE COURT: I have to say, this is the first time
19  that I have ever had to deal with an issue involving
20  production related to initial disclosures. I find it
21  extraordinary. Counsel --
22        MS. CORBIN: Your Honor, I think that the problem
23  was that the initial disclosure was inartfully drafted.
24        THE COURT: Perhaps. But what you need --
25        MS. CORBIN: The problem may be, there was a

## Page 55

1  subset of documents.
2        THE COURT: Ms. Corbin, I am going to talk over
3  you. You can't talk over me. I know we are on this bridge
4  line and sometimes we talk over one another, and that's okay.
5        But you are going to have to go back and finish
6  your conversation about this, counsel. I am not going to
7  spend any more time on this.
8        Let's move on to No. 5.
9        MR. MEILMAN: Your Honor, actually, you have
10  heard part of the discussion on the document requests.
11  Actually, the interrogatory, No. 7, they are also related.
12        THE COURT: Let's talk about them both then.
13        MR. MEILMAN: Right after the Rule 16 conference
14  in May, we served these document requests and interrogatories
15  on defendants about a month later. And as Mr. Kelley
16  indicated, we have been trying to resolve our differences
17  ever since. We have gotten some information in documents.
18  But it's been dribbled in piece by piece.
19        As Mr. Kelley has told you, that they keep
20  objecting on the grounds that we haven't told them our
21  infringement theory. In essence, what they are doing is they
22  want us to give them our Markman construction before they
23  decide what they are going to give us. That's something that
24  was raised during the Rule 16 conference, and the Court
25  refused to push the Markman conference before any discovery.

## Page 56

1        As Mr. Kelley indicated, we have narrowed the
2  definition of what we want, well, the patent in suit is
3  directed to a computer aided design process for making
4  application specific integrated circuits, what has been
5  referred to in this conference call as an ASIC.
6        We have asked them, we have narrowed our request
7  to processes for making ASICs by a computer-aided design
8  process using logic synthesis, development of those
9  processes, what equipment they have used, and any literature
10  they have had about that.
11        Last Friday, they have told us they will provide
12  us details about their current process (inaudible)
13  development. As to two of the three defendants, they have a
14  plant in the U.S. But as Mr. Kelley indicated, they want to
15  restrict that to Design Compiler because we indicated we knew
16  they used Design Compiler in at least some of their
17  processes.
18        Yesterday, they backtracked, as far as I
19  understand it, and said we will give you only details as to
20  some of these substeps in the process.
21        They have told us that one of the defendants,
22  Matrox Tech, did design work in Florida, but we will be
23  getting no information about that because it closed its plant
24  in 2000 and those records don't seem to be located.
25        Then there is an issue on questions of responses

### Page 57

1 by the Matrox defendants done in Canada. We have been told
2 that there are additional process steps those defendants
3 carry out which makes the foreign production provisions of
4 Title 35 U.S.C. 271(g) inapplicable. As you may guess, the
5 minute they said that to us, we said, What are those steps?
6 And we have been refused disclosure on that.
7       Yesterday I got a call from Mr. -- I got a letter
8 from Mr. Kelley indicating that if we want, they will make
9 people available with knowledge about their design work for
10 deposition, but we are not going to get any interrogatory or
11 document request.
12       Basically, on the definition of the products --
13 the processes that we wish to have disclosure on, we believe
14 that limiting that to the computer-aided design process with
15 logic synthesis is narrow enough to give us the discovery we
16 want. We know as to some processes the defendants use Design
17 Compiler. What we don't know is whether they have any other
18 products that they have gotten from other suppliers.
19       We have asked them, do you have those? And
20 produce the documents. We have asked both in general and
21 specifically as to one of their -- one of the companies we
22 know provides equipment called Cadence. And basically, we
23 are told we are not going to get an answer. As to other
24 things, when they don't have any documents or it has not been
25 applicable, we have been told that. But as to the generally,

### Page 58

1 are you using somebody else's equipment, are you using
2 Cadence's equipment, we are getting no answer at all.
3       I think that's basically -- that whole approach
4 filters down to everything that is in dispute pretty much on
5 the interrogatories and document requests. As Mr. Kelley
6 said, it is a question of what we are entitled to as far as
7 breadth goes.
8       THE COURT: Okay.
9       MR. MEILMAN: It may very well be there are no
10 other alternate products that the defendants are using. But
11 I think we are entitled to know that.
12       THE COURT: Okay. Let's hear from the other
13 side.
14       MR. KELLEY: Your Honor, let me talk about the
15 271(g) issue in a minute. Let me deal with the document
16 requests first.
17       The fight that we have been having over the last,
18 it's been about three or four weeks the parties have been
19 discussing this in earnest, is these document requests. Once
20 again, let me just read this: Produce all documents -- I am
21 reading from No. 5, Document Request No. 5: Produce all
22 documents concerning the conception, design, development,
23 manufacture, or sale of each of the defendants' ASIC
24 products. Then it goes on and gives some examples sort of
25 thing.

### Page 59

1       There are several. The ones we have objected to
2 and said these are too broad are that kind of thing. They
3 haven't (inaudible) with all products and anything having to
4 do with the design of that product.
5       Now, Mr. Meilman just said that, he said CAD
6 process. As far as I know, that is the first time I have
7 heard them say, what we really need is stuff about the CAD
8 process. Although I am not sure whether he meant -- well,
9 the thing that is relevant here is logic synthesis. It's not
10 the specification, the engineering specification describing
11 what the product was going to do that was formulated back
12 when people were kicking around ideas about what a good
13 product for the company would be. So that's what we have
14 been fighting about now.
15       Ricoh just a few days ago said we will limit the
16 products, as I mentioned, we will limit the products to those
17 products that use logic synthesis.
18       Now, I think the remaining issue is whether the
19 scope of these document requests should be restricted to
20 documents describing the use of logic synthesis or relating
21 to logic synthesis for those products, and not anything
22 having to do with the specification of the product,
23 engineering, planning meetings, memos about how, we have got
24 bugs, our design isn't working, because none of that has
25 anything to do with the claim.

### Page 60

1       THE COURT: Is that an acceptable limitation,
2 Ricoh?
3       MR. HOFFMAN: Your Honor, what we are looking
4 for, as Mr. Meilman, I thought, had indicated, is the
5 documents that relate to the process for manufacturing these
6 ASICs in the designing of the ASICs using systems that have
7 logic synthesis in them. We are not looking for things
8 relating to debugging of the ASICs themselves. We are not
9 looking for things on other types of -- there is some
10 categories -- and I would have to go back to exactly what Mr.
11 Kelley said -- other things that were pre the designing of
12 these ASICs using the particular types of processes that are
13 involved in the claims and in the patent here of ASIC
14 designing processes using logic synthesis.
15       That is what we are looking for. We have told
16 them that. To date, they have produced less than a thousand
17 pages of documents.
18       THE COURT: Is that a different way of saying
19 that you are in agreement with the limitation that has just
20 been proposed? Or are you broadening?
21       MR. HOFFMAN: No. I think we are in general
22 agreement of some of the things. Mr. Kelley rattled off a
23 number of things.
24       THE COURT: So did you. So, counsel, my question
25 to you is, now having heard one another speak, and speaking

## Page 61

1 to one another through me, do you think that you can put a
2 finer point on these requests and resolve the objections?
3 Because the Court has now invested an hour and a half of its
4 time on matters, quite frankly, in a manner in which it quite
5 frankly believes could have been better invested.
6      Are we at a point in this discussion as to Items
7 5 and 7 where counsel can be released to your own devices and
8 work it out?
9      MR. KELLEY: I believe.
10      MR. HOFFMAN: I believe, also, Your Honor.
11      If I can just ask one question, because I think
12 it may help in advancing a number of these things that we are
13 trying to work out. We would hope that, and would like a
14 commitment from counsel for the defendants and for Synopsys
15 to work out all these matters, to work diligently over the
16 next week, between now and the end of next week to work out
17 all these matters, so we can get these documents.
18      THE COURT: So ordered, yes.
19      MR. HOFFMAN: And also that the defendants will
20 not object and tell us we can't give it to you, these
21 documents, because it is the confidential information of
22 Synopsys.
23      THE COURT: You have to work through your
24 protective order.
25      MR. HOFFMAN: We will be underneath the

## Page 62

1 protective order, the documents.
2      THE COURT: I think that's a given, counsel.
3      MR. HOFFMAN: Thank you, Your Honor. I
4 appreciate it.
5      THE COURT: Okay.
6      MR. MEILMAN: Your Honor, Mr. Kelley was about to
7 start raising some material on the Matrox people in Canada.
8 I don't want to get that swept under the rug.
9      MR. HOFFMAN: Your Honor, that also probably ties
10 in with Topic No. 8 that they have raised.
11      THE COURT: Topic No. 8 is a non-starter for the
12 Court. I am not going to grant permission to file a letter
13 in support of the seeking of permission to file summary
14 judgment at this time, no.
15      MR. HOFFMAN: I presume we are also entitled then
16 to get discovery out of the people in Canada.
17      THE COURT: I don't see why not.
18      MR. KELLEY: Can I address that issue briefly?
19      THE COURT: Yes.
20      MR. KELLEY: They are seeking discovery -- this
21 claim relates to the logic synthesis process. What they want
22 is the discovery of logic synthesis work done in Canada.
23      THE COURT: Counsel, you are breaking up on us.
24      MR. KELLEY: It seems to me, I know we don't want
25 to get into the issue of whether they are going to prevail on

## Page 63

1 their 271(g) theory. But that's unusual, to try to apply a
2 U.S. patent to seek discovery on work done outside the United
3 States, on things done outside the United States is very
4 unusual.
5      THE COURT: What is the thinking there, Ricoh?
6      MR. HOFFMAN: Your Honor, if a process of
7 manufacturing a product is carried on outside the United
8 States where that process would infringe a process patent
9 inside the United States, then there is a basis for
10 allegation of infringement, the charge of infringement, just
11 boiling it down to a summary format.
12      The Bayer case they are relying upon is talking
13 about something entirely different. It was talking about
14 strictly -- and I have part of the claim here -- a need for
15 determining whether a substance is an inhibitor or
16 activator.
17      That is not what we are talking about here. We
18 are not talking about a method of determining whether or
19 not -- determination of whether a piece of information is in
20 one category or another. We are talking about part of a
21 manufacturing process, and 271 clearly covers that situation,
22 where the products do flow into the United States, that there
23 is infringement of that process patent.
24      This is a manufacturing process. So it's our
25 position we are entitled to it.

## Page 64

1      THE COURT: Does counsel disagree with counsel's
2 statement regarding the current state of the law?
3      MR. KELLEY: Yes, Your Honor. The Bayer case
4 makes it absolutely clear that the manufacturing process,
5 this is the exact question addressed by the Federal Circuit,
6 the manufacturing process, in order to fall within 271(g),
7 the claimed process has to be one using manufacturing the
8 device, the actual physical things that are going to be
9 imported.
10      MR. HOFFMAN: This is all part of the
11 manufacturing process, Your Honor. And what they are trying
12 to do is say, well, since we disagree and we think that we
13 are entitled to summary judgment, we are not going to give
14 you discovery. And we are entitled to that discovery and to
15 show that it is part of the manufacturing process for
16 manufacturing the products that then flow into the United
17 States.
18      THE COURT: Mr. Kelley.
19      MR. KELLEY: Your Honor, if I may finish my
20 point. The case makes it absolutely clear that there has to
21 be a physical good produced under this process. What their
22 claim process produces is a -- a net list, that is then used
23 to produce -- it is sent off to a foundry that actually
24 produces the devices. It is not used in the process of
25 manufacturing the goods. The Federal Circuit decision make

## Page 65

1 it quite clear that the process set out has to talk about the
2 actual process, the mechanical physical process of creating
3 the thing that is going to be imported.
4     THE COURT: Let's see if your opponent agrees
5 with that statement. Do you agree that the case stands for
6 that proposition, counsel?
7     MR. HOFFMAN: No, I don't, Your Honor. The case
8 stands for the proposition -- that is why I read a portion --
9 it stands for the proposition that when all that is
10 determined by the process is a piece of information that is
11 never used in the manufacturing operation, it has nothing to
12 do with manufacturing a product, it is just determining
13 information, that that is not covered by 271.
14     What we have here in this case is one or a series
15 of the steps, the initial steps in designing a product that
16 is -- as part of the manufacturing operation, design and
17 operation, the manufacturing of a product that is imported
18 into the United States. That is very different. That is not
19 what the Bayer case is dealing with.
20     THE COURT: Counsel for Matrox.
21     MR. KELLEY: If I am correct about this, then we
22 don't have to have half of the discovery in this case, and if
23 Mr. Meilman is correct, then we do. What I propose is we
24 brief this question because we are having lawyer argument.
25     THE COURT: What I am going to do first is read

## Page 66

1 Bayer. That might be of some assistance to this issue. Let
2 me take a look. If I feel I need further elucidation on this
3 subject, I will let you further address it in some fashion,
4 whether it be in the form of some limited briefing or further
5 discussion, I don't know exactly at this point. But we will
6 defer No. 8 while the Court takes an opportunity to read the
7 case.
8     MR. HOFFMAN: In the interim, Your Honor, if we
9 can begin to sort out discovery issues with the defendants,
10 with Matrox on this issue, so at least we can resolve the
11 scope and other issues so we can begin to get discovery from
12 them.
13     MR. KELLEY: We are in fact going forward with
14 discovery. We are in the process of collecting that
15 information about where we do our design work and the general
16 design flow stuff. I am not sure what more he wanted. He
17 wanted the same sort of discovery for Matrox that we had for
18 the other defendants.
19     MR. HOFFMAN: Yes, Your Honor.
20     MR. KELLEY: It seems to me it will take -- I
21 understand the Court has a busy schedule. But he seems to be
22 asking that we do this very discovery that I am suggesting
23 could be avoided.
24     THE COURT: I think that is correct. What I am
25 going to order is, as far as the Matrox defendants are

## Page 67

1 concerned, we are going to defer engaging that process. Mr.
2 Hoffman, for a brief period of time, while I take a look at
3 the case, if necessary, get the benefit of further thoughts
4 from counsel.
5     Let's deal with No. 6. Have we dealt with No.
6 6?
7     MR. MEILMAN: Your Honor, just, we use the term
8 Matrox defendants. One of the Matrox defendants was Matrox
9 Tech, which had a plant and was doing work in Florida. I
10 take it that as far as their objections as to activity in
11 Canada, Your Honor's order does not apply to Matrox Tech.
12     THE COURT: Are we in agreement with that?
13     MR. KELLEY: Yes, Your Honor. We are in the
14 process of collecting those documents for that work like we
15 are doing for every other -- the other non-Matrox defendants.
16     THE COURT: Then we are in agreement, counsel.
17     MR. MEILMAN: Thank you, Your Honor.
18     MR. HOFFMAN: Your Honor, since it may help avoid
19 a future dispute or arguments, Mr. Kelley has indicated they
20 are collecting documents. Does he have a date by which he
21 believes they will be produced?
22     THE COURT: Mr. Kelley?
23     MR. KELLEY: We are doing a rolling production.
24 We are getting stuff as quickly as we can get it. We
25 produced documents just a few days ago.

## Page 68

1     MR. HOFFMAN: Will we have all of them produced
2 by mid-September, Mr. Kelley?
3     MR. KELLEY: I would hope so.
4     THE COURT: No. 6, what do we have left with
5 regard to No. 6?
6     MR. KELLEY: We would like to take that off.
7     THE COURT: That is fine with the Court,
8 counsel. You don't need to explain.
9     Counsel, I will take a look at the Bayer case.
10 You will hear from me one way or the other shortly.
11     (Counsel say "thank you.")
12     THE COURT: Take care.
13     (Teleconference concluded at 12:40 p.m.)
14     - - -
15 Reporter: Kevin Maurer
16
17
18
19
20
21
22
23
24
25

-and [2]   1:19        2:3
00 [1]    1:13
03-103-GMS [1]
   1:10
1 [4]      3:8        3:9
   41:3    51:18
10 [1]    26:25
100 [2]   33:17      40:15
11 [1]    1:13
12 [4]    15:20      16:3
   18:9   68:13
14 [2]    6:24       15:20
14th [1]  4:25
15 [1]    16:2
16 [2]    55:13      55:24
17 [2]    6:12       12:11
1996 [1]  44:14
2 [7]      3:4        7:17
   9:8    10:1       10:2
   12:2   38:22
20 [2]    16:2       44:5
2000 [1]  56:24
2003 [5]  1:13        9:8
   31:9   31:9       51:20
21st [1]  6:6
22 [1]    12:12
23rd [1]  6:12
25th [1]  32:18
26th [2]  31:8       32:18
271 [6]   57:4       58:15
   63:1   63:21      64:6
   65:13
28 [1]    1:13
28th [1]  16:12
3 [3]      3:4       47:23
   47:24
30 [2]    29:14      51:20
30th [10] 5:2        8:1
   8:15   11:4       12:4
   13:22  31:6       31:9
   32:5   32:18
31st [7]  3:12       4:7
   7:17   8:23       9:1
   26:23  26:24
34-day [1]           32:20
35 [1]    57:4
40 [1]    68:13
5 [8]      3:5       38:23
   38:25  40:22      55:8
   58:21  58:21      61:7
6 [6]      3:4        9:8
   67:5   67:6       68:4
   68:5
7 [3]      3:5       55:11
   61:7
8 [6]      3:4       12:20
   51:18  62:10      62:11
   66:6
9 [1]     12:11
a.m [1]   1:13
able [2]  23:1       44:10
absolutely [3]       46:4
   64:4   64:20
accept [5]           40:7

48:12    48:12      48:15
49:22
acceptable [4]       27:2
   40:12  45:25      60:1
accordance [1]       49:10
according [1]        5:20
accounting [1]       53:4
accounts [1]         44:4
accurate [1]         15:17
acknowledged [1]
   12:22
action [4]            1:4
   34:19  34:22      37:13
activator [1]        63:16
activities [1]       33:23
activity [1]         67:10
actual [4]           14:24
   21:8   64:8       65:2
additional [6]       8:24
   8:24   25:6       32:6
   51:11  57:2
address [7]          23:1
   30:5   35:21      37:18
   46:2   62:18      66:3
addressed [1]        64:5
admissible [1]       52:1
admitted [1]         38:16
advance [1]          49:15
advancing [1]        61:12
adversarial [1]      43:19
advisable [1]        43:20
AEROFLEX [1]
   1:7
again [2]            14:18
   58:20
agenda [1]           2:25
ago [4]   11:5       11:5
   59:15  67:25
agree [8] 18:12     32:13
   35:3   41:3       41:11
   42:13  52:24      65:5
agreed [8]           40:4
   41:5   41:6       48:5
   53:18  53:22      54:8
   54:10
agreement [11]       19:5
   19:6   19:6       19:7
   40:24  41:1       43:23
   60:19  60:22      67:12
   67:16
agrees [2]           24:22
   65:4
ahead [5]            12:9
   13:12  18:15      52:11
   53:18
aided [1]            56:3
allegation [1]       63:10
allegations [1]      39:15
allege [1]           43:4
   43:4
allegedly [1]        37:5
alleging [1]         44:19
allow [1]            37:21
allowed [1]          21:18

alone [1]             44:3
alternate [4]        42:13
   43:14  45:21      58:10
always [1]           45:11
AMI [1]   1:7
among [1]            27:11
amongst [1]          9:24
amount [1]           9:19
ancillary [1]        21:11
   21:12
answer [4]           26:17
   49:17  57:23      58:2
answering [1]        24:17
answers [1]          39:14
anyway [1]           16:8
   22:13  24:2       24:20
   24:23
apologize [2]        31:4
   41:24
apparent [2]         23:9
   43:20
appear [4]           48:17
   50:9   50:14      50:23
APPEARANCES [1]
   1:17   2:1
applicable [1]       57:25
application [1]      56:4
apply [2]            63:1
   67:11
appreciate [2]       18:16
   62:4
approach [1]         58:3
appropriate [18]
   7:22   13:18      13:18
   13:18  13:18      14:14
   14:19  14:25      15:1
   19:24  20:3       20:7
   20:20  20:23      20:7
   22:23  32:11      45:19
appropriately [1]
   34:23  35:15      43:4
area [1]  45:11
argue [1]            46:18
arguing [3]          2:24
   2:25   3:3
argument [2]         2:22
   65:24
arguments [2]        53:10
   67:19
Arnold [1]           2:5
art [11]  17:2       17:17
   17:21  18:2       18:4
   18:10  18:11      21:23
   30:6   33:16      53:14
articles [1]         53:14
articulated [1]      25:15
ASIC [1]             39:2
   39:20  40:10      52:5
   52:23  54:10      54:11
   54:16  56:5       58:23
   60:13
ASICs [5]            56:7
   60:6   60:6       60:8
   60:12
asks [1]  54:9

aspect [3]           12:12
   17:23  42:7
aspects [2]          17:20
   18:6
assertion [1]        24:18
asserts [1]          12:1
assignment [1]       15:23
assistance [1]       66:1
assume [1]           49:1
assumed [1]          5:18
assuming [1]         48:22
attack [1]           46:24
attained [1]         38:7
attempted [1]        49:20
attorney [6]         8:3
   8:3    9:24       11:22
   27:16  28:6
attorney-client [2]
   4:12   9:4
attorneys [5]        9:24
   11:20  27:11      27:12
   36:11
attorneys' [1]       45:19
August [4]           1:13
   4:25   9:8        26:24
author [1]           27:16
available [9]        7:20
   34:7   36:20      36:24
   43:2   48:6       49:10
   51:10  57:9
avoid [1]            67:18
avoided [1]          66:23
aware [2]            7:18
   35:24
away [1]  13:16
B [1]     51:18
back-door [1]        46:24
backtracked [1]     56:18
ball [1]  40:25
based [4]            14:12
   16:22  24:6       26:11
basic [1] 34:3
basics [1]           34:2
basis [23]           4:12
   4:20   4:23       7:9
   7:11   7:12       9:4
   10:6   10:22      13:25
   25:22  26:16      28:1
   35:5   35:13      36:1
   38:3   38:17      39:14
   39:24  41:25      52:3
   63:9
batting [1]          40:25
Bayer [5]            63:12
   64:3   65:19      66:1
   68:9
bearing [1]          54:3
became [1]           9:1
become [2]           17:5
   38:24
beef [1]  46:9
beforehand [1]       19:18
begin [1]            66:9
   66:11

behalf [2]
3:25
Behavioral [5] 43:24
   34:8   41:4       42:22
   44:2
belief [3]           29:10
   29:11  50:3
believes [1]         32:23
   61:5   67:21
benefit [1]          67:3
better [2]           36:7
   61:5
between [13]         3:10
   4:17   6:9        9:25
   8:13   9:18       9:24
   12:25  13:5       16:6
   23:12  24:6       61:16
beyond [1]           3:25
   12:2   43:24
bit [2]   16:22      38:23
Bob [1]   2:11
body [1]  45:15
boiling [1]          63:11
booked [1]           49:3
bottom [1]           46:17
Bove [2] 2:2         2:20
brand-new [1]        9:11
breadth [1]          37:19
   37:20  58:7
break [3]            19:5
   27:20  27:21
breaking [1]         62:23
bridge [1]           55:3
brief [2] 65:24      67:2
briefing [1]         66:4
briefly [2]          28:15
   62:18
bring [3] 43:4       48:20
   49:12
broad [3]            40:19
   46:25  59:2
broadening [1]       60:20
broken [1]           27:25
Brothers [31]        2:1
   2:15   3:3        3:9
   3:19   3:23       4:5
   4:5    4:6        41:25
   12:10  14:8       14:21
   15:10  15:17      16:9
   16:11  19:25      21:4
   24:4   24:5       24:14
   24:21  25:1       25:7
   25:9   25:23      25:25
   28:12  32:4       32:17
bugs [1]  59:24
bulletins [1]        39:4
burden [3]           41:20
   41:22  41:23
burdensome [2] 51:25
   52:3
busy [1]  66:21
CAD [2]   59:5       59:7
Cadence [1]          67:22
Cadence's [1]        58:2
cage [1]  15:25

CondenseIt™                                                          calculated - Court

**calculated** [1]    52:1
**California** [5]    2:5
2:20    34:19    35:2
37:11
**calls** [1] 6:9
**camera** [10]    4:13
4:20    8:10    10:20
10:20    10:24    12:18
13:25    17:24    28:2
**Canada** [5]    57:1
62:7    62:16    62:22
67:11
**cannot** [3]    18:7
19:3    43:16
**capability** [1]    43:24
**capture** [2]    31:13
31:24
**care** [1] 68:12
**careful** [1]    15:2
**carpet** [1]    13:15
**carried** [1]    63:7
**carry** [1] 57:3
**cart** [1]    43:21
**case** [36] 5:19    6:1
6:4    17:9    18:11
20:18    22:3    23:18
24:15    27:24    37:11
37:11    38:6    39:9
39:16    41:20    41:21
43:3    43:4    43:7
44:22    46:11    46:21
47:2    51:22    63:12
64:3    64:20    65:5
65:7    65:14    65:19
65:22    66:7    67:3
68:9
**cases** [1] 45:10
**categories** [10]    6:16
6:19    33:15    52:7
52:10    52:15    52:18
53:1    53:16    60:10
**category** [2]    22:20
63:20
**cautious** [1]    13:7
**cells** [4] 39:18    40:9
42:3    54:6
**certain** [3]    22:2
29:8    42:1
**certainly** [2]    24:21
51:13
**cetera** [4]    10:5
10:5    39:5    39:6
**challenge** [1]    21:5
**challenges** [1]    51:8
**change** [1]    19:4
**charge** [1]    63:10
**charged** [1]    36:3
**charging** [1]    36:1
**chart** [1] 44:19
**checking** [1]    19:20
**Chinese** [1]    22:3
**chip** [2]    39:20    47:17
**chose** [4]    19:12
19:15    19:16    19:17
**Chris** [2]    2:21

46:2
**Christopher** [2] 2:4
11:2
**Circuit** [3]    27:23
64:5    64:25
**circuits** [1]    56:4
**Civil** [1] 1:4
**claim** [7]    10:23
42:19    44:19    59:25
62:21    63:14    64:22
**claimed** [2]    54:17
64:7
**claims** [2]    45:22
60:13
**clarification** [1]
24:3
**clarify** [3]    17:10
23:22    23:23
**clarifying** [1]    24:17
**classifications** [1]
53:5
**clause** [3]    9:11
9:14    12:1
**clear** [9] 3:20    8:2
23:17    27:4    31:7
32:4    64:4    64:20
65:1
**clearly** [4]    4:21
20:5    35:10    63:21
**cliche** [1]    20:22
**client** [1]    17:15
**clients** [1]    9:24
**close** [3] 28:3    48:24
50:24
**closed** [1]    56:23
**co-counsel** [1]    2:15
**colleague** [1]    2:13
**collected** [1]    13:20
**collecting** [4]    53:11
66:14    67:14    67:20
**coming** [3]    20:10
26:15    30:20
**comment** [1]    28:22
**comments** [1]    32:10
**commitment** [2]
48:14    61:14
**communicated** [2]
23:16    31:20
**communication** [2]
27:14    27:15
**communications** [29]
4:9    4:19    6:7
8:17    9:10    9:13
9:22    9:23    10:10
10:17    12:2    12:15
12:23    12:25    13:24
13:25    16:19    17:13
17:15    18:20    20:14
20:15    22:8    24:10
31:13    31:22    31:24
32:19    32:22
**companies** [1]    57:21
**company** [1]    1:4
45:8    59:13
**compare** [1]    17:2

**Compiler** [34]    33:23
33:24    34:6    34:8
34:8    35:24    36:4
39:17    39:18    40:7
40:8    41:4    41:4
42:2    42:2    42:22
42:22    44:2    44:2
44:3    44:6    44:18
45:5    46:19    46:21
47:12    47:13    47:14
54:1    54:5    54:6
56:15    56:16    57:17
**complain** [1]    19:20
**complained** [2] 19:8
35:17
**complaining** [1]
23:24
**complaint** [2]    26:4
41:23    53:8
**complete** [2]    5:3
51:12
**completely** [2] 10:13
49:3
**complicating** [1]
51:5
**comport** [1]    12:8
**computer** [1]    56:3
**computer-aided** [1]
56:7    57:14
**conception** [1] 58:22
**concern** [5]    4:24
5:3    17:10    17:22
21:3
**concerned** [1]    67:1
**concerning** [2]    39:1
58:22
**concluded** [1]    68:13
**conduct** [1]    17:4
**conference** [17] 1:14
4:1    6:12    11:4
13:21    31:6    31:25
32:3    32:5    32:6
32:22    33:11    34:21
55:13    55:24    55:25
56:5
**confidential** [39]
5:25    6:10    6:14
6:19    7:15    8:5
8:9    11:7    11:11
11:18    11:22    13:3
13:13    14:11    19:9
19:10    21:18    23:15
23:25    24:19    24:22
24:24    25:2    25:20
26:3    26:20    28:7
28:19    28:25    34:9
34:11    35:6    36:13
37:3    38:12    41:12
42:15    44:12    61:21
**confidentiality** [2]
41:18    41:19
**conflict** [1]    19:2
**confused** [1]    27:7
28:7
**confusion** [1]    25:16
**connection** [1]    46:15
**Connolly** [2]    2:2
2:19

**consequently** [4]
19:2    34:18    42:23
50:11
**consider** [1]    4:1
**considerations** [1]
41:19
**construction** [1]
55:22
**Consulate** [1]    49:5
**consulates** [1]    49:3
**consultations** [1]
16:24
**consulted** [2]    24:1
26:14
**consulting** [17]    5:12
7:5    7:8    7:15
13:14    14:16    15:15
16:14    16:18    17:3
18:9    19:1    19:5
19:7    19:14    21:20
26:18
**contact** [1]    18:22
49:20
**contacted** [1]    18:25
**contains** [1]    45:3
**contend** [1]    39:12
**contents** [1]    25:13
**continue** [3]    4:5
22:14    24:8
**continued** [3]    2:1
14:12    26:11
**continues** [1]    4:11
**contract** [3]    5:11
5:12    5:21
**contradicted** [1]
5:1
**contradiction** [1]
7:25
**contrary** [1]    19:18
23:18
**conversation** [6]
11:19    12:9    25:13
26:2    26:10    55:6
**conversations** [1]
16:6
**convinced** [1]    11:10
**cooperate** [9]    45:17
48:16    48:23    49:9
50:2    50:4    50:4
50:9    50:22
**cooperation** [1] 43:20
**copy** [1] 12:10
**Corbin** [33]    2:3
2:21    17:8    18:14
22:9    22:11    22:24
23:1    23:8    23:22
23:24    25:3    25:14
25:16    27:4    29:19
29:22    30:3    30:4
30:24    31:10    31:13
32:14    32:21    33:9
33:9    34:21    44:1
44:25    46:2    54:22
54:25    55:2
**Corbin's** [1]    24:17
**core** [1]    39:2

**CORP** [1]    1:9
**correct** [7]    30:3
30:9    32:24    42:9
65:21    65:23    66:24
**correctly** [1]    15:8
**correspondence** [1]
27:12
**counsel** [57]    1:23
2:6    2:10    4:8
4:18    5:6    5:12
5:14    5:17    6:15
6:17    7:15    8:19
8:23    9:9    9:19
10:11    11:15    11:17
13:1    13:4    13:14
14:5    14:16    15:10
16:19    16:24    17:4
17:8    18:13    22:10
25:15    26:14    28:11
40:11    40:12    41:10
43:18    45:9    45:16
49:18    50:17    54:21
55:6    60:24    61:7
61:14    62:2    62:23
64:1    65:6    65:20
67:4    67:16    68:8
68:9    68:11
**counsel's** [1]    64:1
**couple** [1]    6:15
**course** [5]    9:25
10:18    46:6    46:18
48:22
**Court** [164]    1:1
2:10    2:17    2:22
3:6    3:11    3:16
3:18    3:21    4:5
4:13    4:20    5:7
7:16    7:18    7:21
7:23    8:19    9:2
9:6    11:25    12:4
14:1    14:5    14:18
14:22    14:25    15:7
16:9    16:13    17:24
17:24    18:12    18:15
19:23    20:7    20:9
20:13    20:24    21:16
22:10    22:15    22:16
22:20    22:20    22:22
22:24    23:3    23:4
23:7    23:7    23:9
23:20    23:23    24:3
24:14    24:24    24:25
25:14    25:22    27:2
27:18    27:23    28:10
28:18    28:21    28:22
29:3    29:4    29:8
29:10    29:12    29:13
29:13    29:18    29:20
29:24    30:3    30:7
30:22    31:5    31:10
31:10    31:15    31:16
32:1    32:13    32:22
32:23    32:24    33:2
33:5    33:8    33:10
33:20    34:22    35:14
35:25    36:2    37:10
37:14    37:23    38:21
40:11    40:16    40:23
41:9    41:16    41:22
42:11    43:11    43:17
44:4    44:8    44:24
45:9    46:7    47:18

| | | |
|---|---|---|
| 47:19 | 48:2 | 49:7 |
| 49:14 | 49:17 | 50:16 |
| 51:3 | 51:7 | 51:10 |
| 52:24 | 54:18 | 54:24 |
| 55:2 | 55:12 | 55:24 |
| 58:8 | 58:12 | 60:1 |
| 60:18 | 60:24 | 61:3 |
| 61:18 | 61:23 | 62:2 |
| 62:5 | 62:11 | 62:12 |
| 62:17 | 62:19 | 62:23 |
| 63:5 | 64:1 | 64:18 |
| 65:4 | 65:20 | 65:25 |
| 66:6 | 66:21 | 66:24 |
| 67:12 | 67:16 | 67:22 |
| 68:4 | 68:7 | 68:7 |
| 68:12 | | |

**Court's** [1]  18:16

**cover** [2]  9:21
10:15

**covered** [1]  65:13

**covers** [1]  63:21

**craft** [1] 45:17

**crafted** [1]  39:8

**create** [4]  19:11
19:21  29:11  39:18

**created** [1]  19:21
21:21

**creating** [1]  65:2

**creation** [1]  20:6

**credibility** [4]  20:17
20:17  21:6  21:6

**crime/fraud** [3] 27:22
28:11  28:13

**critical** [3]  14:3
38:6  38:13

**cross-purposes** [1]
23:10

**culled** [1]  17:12

**current** [2]  56:12
64:2

**customers** [2]  45:5
46:24

**cut** [1]  38:19

**cutoff** [3]  30:2
30:12  30:16

**D.C** [1]  1:22

**databases** [1]  39:2

**date** [14] 18:21  29:5
30:20  31:5  32:7
32:15  33:15  39:14
50:20  50:22  51:3
51:14  60:16  67:20

**dated** [1]  51:19

**dates** [1] 36:22

**days** [8]  8:6  11:8
26:25  32:1  53:20
54:11  59:15  67:25

**deadline** [1]  49:8

**deal** [5]  42:1  51:13
54:19  58:15  67:5

**dealing** [1]  65:19

**dealt** [2] 18:19  67:5

**debate** [1]  12:7

**debugging** [1]  60:8

**decide** [3]  44:20
44:22  55:23

| | | |
|---|---|---|
| **decided** [1] | | 19:4 |
| **decision** [3] | | 14:21 |
| 37:8 | 64:25 | |

**declaration** [2]  11:2
11:3

**deep** [1] 20:5

**defendant** [1]  16:20

**defendants** [58] 1:10
2:6  2:18  3:15
3:25  4:8  4:14
4:18  7:1  8:16
9:9  11:17  11:20
12:14  13:1  15:10
17:4  17:9  18:24
22:17  24:8  33:20
34:12  34:24  35:8
36:6  36:7  36:10
39:16  39:23  42:18
46:10  46:21  47:3
47:13  50:6  51:15
51:24  52:2  52:4
52:14  52:16  54:15
55:15  56:13  56:21
57:1  57:2  57:16
58:10  61:14  61:19
66:9  66:18  66:25
67:8  67:8  67:15

**defendants'** [6] 33:21
33:22  51:19  52:5
52:24  58:23

**defer** [2] 66:6  67:1

**deference** [1]  15:17

**defined** [1]  41:10

**definition** [2]  56:2
57:12

**Delaware** [4]  1:2
1:12  33:8  37:13

**depose** [1]  49:15

**deposed** [2]  4:25
51:6

**deposition** [27] 6:13
7:3  8:1  11:6
13:12  14:13  15:13
15:19  15:22  16:5
16:15  23:14  25:17
26:13  28:5  28:24
32:15  48:6  48:21
48:22  48:25  49:12
49:24  50:10  50:15
51:12  57:10

**depositions** [1] 49:1

**describe** [3]  40:6
40:7  40:8

**described** [6]  6:18
9:22  9:23  27:8
40:11  54:13

**describing** [5]  42:5
42:7  53:15  59:10
59:20

**design** [43]  33:23
34:5  34:8  35:24
36:4  39:2  39:17
39:18  40:7  40:8
40:10  41:4  42:1
42:2  42:21  44:2
44:3  44:6  44:8
45:5  46:19  46:21
47:13  47:13  47:14
53:2  53:25  54:5

| | | |
|---|---|---|
| 54:6 | 56:3 | 56:7 |
| 56:15 | 56:16 | 56:22 |
| 57:9 | 57:14 | 57:16 |
| 58:22 | 59:4 | 59:24 |
| 65:16 | 66:15 | 66:15 |

**designing** [4]  60:6
60:11  60:14  65:15

| | | |
|---|---|---|
| **detail** [3] | | 38:17 |
| 42:5 | 53:9 | |

**detailed** [3]  4:14
44:19  52:3

**details** [6]  12:21
35:10  43:2  44:18
56:12  56:19

**determination** [9]
13:9  14:2  14:3
14:6  14:8  14:14
14:19  15:1  63:19

**determine** [1]  10:21

**determined** [1]  65:10

**determines** [1]  48:23

**determining** [3] 61:5
63:18  65:12

**developed** [6]  7:14
15:14  15:24  17:16
18:4  53:24

**development** [5]
17:21  53:3  56:8
56:13  58:22

**device** [1]  64:8

**devices** [2]  61:7
64:24

**Dickstein** [1]  1:21

**difference** [2]  3:10
54:14

**differences** [2] 53:22
55:16

**different** [3]  60:18
63:13  65:18

**difficult** [3]  17:6
43:19  50:18

**DiGiovanni** [22]
2:2  2:19  2:19
2:24  3:13  3:17
3:24  7:23  7:24
9:5  9:7  11:25
13:10  15:16  16:23
17:12  27:4  27:6
27:19  30:11  30:25
31:11

**DiGiovanni's** [1]
12:8

**diligently** [1]  61:15

**directed** [1]  56:3

**directly** [3]  17:3
36:7  38:6

**disagree** [1]  64:1

**disagreement** [1]
43:21

**disclose** [7]  4:8
8:16  9:10  9:10
9:13  10:9  12:14

**disclosed** [2]  5:16
10:15

**disclosure** [9]  17:12
51:19  52:9  52:9

| | | |
|---|---|---|
| 52:23 | 53:7 | 54:23 |
| 57:6 | 57:13 | |

**disclosures** [1]  54:20

**discover** [2]  18:8
33:18

**discoverability** [1]
43:22

**discoverable** [1]
43:12

**discovery** [36]  34:22
34:23  34:25  37:8
37:9  37:12  39:8
44:23  46:12  46:25
47:5  48:8  48:16
48:25  50:24  50:25
51:4  51:9  51:14
51:25  52:1  52:3
55:25  57:15  62:16
62:20  62:22  63:2
64:14  64:14  65:22
66:9  66:11  66:14
66:17  66:22

**discrete** [2]  42:11
42:12

**discuss** [1]  47:20

**discussed** [4]  6:1
12:21  21:1  31:20

**discussing** [1]  47:20

**discussion** [6]  12:3
45:24  47:21  55:10
61:6  66:5

**discussions** [3] 31:21
42:20  42:20

**disingenuous** [1]
36:4

**dismiss** [1]  33:22

**dispute** [2]  52:16
58:4  67:19

**disqualification** [4]
7:19  20:1  20:2
21:10

**disqualified** [4] 14:20
15:3  21:2  22:6

**disqualify** [3]  11:15
13:8  22:4

**DISTRICT** [2]  1:1
1:2

**doctrine** [1]  4:12

**document** [28]  18:20
25:20  29:23  37:20
37:20  38:1  38:8
38:9  38:12  38:13
38:18  38:19  38:22
39:21  40:3  51:17
52:2  54:8  54:14
54:15  55:10  55:14
57:11  58:5  58:15
58:19  58:21  59:19

**documentation** [3]
18:1  23:12  42:4

**documents** [118]
4:10  4:11  4:16
5:9  8:2  8:18
9:4  9:15  10:2
10:3  10:4  10:4
10:6  10:11  10:14
10:20  10:22  12:16
12:17  14:6  14:9

| | | |
|---|---|---|
| 14:10 | 14:23 | 14:24 |
| 20:8 | 20:10 | 22:13 |
| 22:18 | 22:19 | 23:14 |
| 25:11 | 25:17 | 26:8 |
| 26:22 | 27:1 | 27:8 |
| 27:9 | 27:10 | 27:11 |
| 27:17 | 28:1 | 29:5 |
| 29:9 | 29:15 | 29:25 |
| 30:5 | 30:8 | 30:13 |
| 31:1 | 33:13 | 33:17 |
| 34:7 | 34:11 | 34:16 |
| 35:2 | 35:6 | 35:17 |
| 36:6 | 36:10 | 36:13 |
| 36:17 | 36:18 | 36:20 |
| 36:21 | 36:22 | 36:24 |
| 37:3 | 38:3 | 39:1 |
| 39:25 | 40:1 | 40:3 |
| 40:4 | 40:4 | 40:15 |
| 41:4 | 41:4 | 41:7 |
| 41:8 | 42:7 | 42:12 |
| 42:15 | 44:6 | 44:14 |
| 44:15 | 49:25 | 51:16 |
| 51:17 | 51:21 | 51:23 |
| 52:6 | 52:7 | 52:10 |
| 52:15 | 52:17 | 52:22 |
| 53:5 | 53:13 | 53:23 |
| 54:2 | 54:3 | 54:9 |
| 54:16 | 55:1 | 55:17 |
| 57:20 | 57:24 | 58:20 |
| 58:22 | 59:20 | 60:5 |
| 60:17 | 61:17 | 61:21 |
| 62:1 | 67:14 | 67:20 |
| 67:25 | | |

**doesn't** [5]  10:19
10:23  16:3  37:18
53:9

**done** [10]  9:17
10:21  19:12  29:18
47:12  52:10  57:1
62:22  63:2  63:3

**door** [1] 21:19

**doubt** [1]  27:16

**down** [2]  58:4
63:11

**Dr** [94]  4:9  4:10
4:17  4:25  5:10
5:8  5:10  5:10
5:12  5:17  5:18
5:20  5:22  5:24
6:2  6:5  6:10
6:13  6:18  7:5
7:6  7:7  7:11
8:1  8:1  8:6
8:13  8:17  9:11
9:13  9:15  9:19
10:10  10:12  11:8
11:9  11:16  11:18
12:15  12:23  12:25
13:3  13:5  13:11
13:24  14:11  14:16
15:5  15:8  15:19
16:7  16:13  16:16
16:20  16:24  17:5
17:14  17:16  18:3
18:21  18:22  18:25
19:2  19:13  23:13
23:13  23:15  24:8
24:25  25:1  25:12
26:9  26:11  26:18
27:10  27:13  27:14
27:15  28:18  28:23
28:24  29:5  29:23

CondenseIt™                                                          drafted - Hoffman

| 30:14 30:17 31:1 | 43:6 52:21 58:6 | extraordinary [1] | 20:4 26:1 28:16 | general [6] 26:8 |
|---|---|---|---|---|
| 31:19 31:20 31:22 | 58:11 62:15 63:25 | 54:21 | 34:16 36:9 39:16 | 33:18 34:4 57:20 |
| 32:7 32:9 32:10 | 64:13 64:14 | eyes [1] 45:19 | 40:14 45:9 54:18 | 60:21 66:15 |
| 32:19 50:12 | equipment [4] 56:9 | facie [1] 27:24 | 58:16 59:6 65:25 | generally [1] 57:25 |
| drafted [2] 46:14 | 57:22 58:1 58:2 | facilities [1] 48:25 | fishing [1] 39:25 | generic [2] 53:2 |
| 54:23 | Eric [2] 2:4 2:21 | facing [1] 48:24 | five [1] 11:20 | 53:5 |
| drawing [1] 25:22 | especially [1] 28:4 | fact [17] 5:9 11:18 | five-minute [1] 8:4 | genesis [2] 17:18 |
| dribbled [1] 55:18 | ESQ [9] 1:18 1:18 | 14:11 16:2 16:25 | flat [1] 46:22 | gist [1] 53:4 |
| drop [1] 32:1 | 1:20 1:20 1:21 | 17:16 18:2 18:8 | flexible [1] 51:10 | given [6] 5:13 |
| drop-dead [3] 50:20 | 2:2 2:3 2:4 | 21:6 24:24 25:2 | Florida [2] 56:22 | 5:15 7:11 40:6 |
| 51:3 51:14 | 2:4 | 26:1 28:22 34:1 | 67:9 | 48:24 62:2 |
| dropping [1] 13:11 | essence [6] 26:13 | 35:22 53:12 66:13 | flow [3] 63:22 64:16 | goes [6] 10:4 12:2 |
| due [1] 15:17 | 34:21 34:25 37:7 | factor [1] 51:5 | 66:16 | 20:22 39:3 58:7 |
| duplication [1] 34:18 | 40:18 55:21 | facts [3] 15:4 18:7 | flowing [1] 17:3 | 58:24 |
| during [11] 5:1 | essentially [1] 18:11 | 23:18 | flurry [2] 6:9 | gone [4] 8:18 12:16 |
| 5:7 5:24 6:17 | establish [1] 43:6 | factual [1] 13:20 | 6:17 | 25:5 50:2 |
| 24:7 26:2 28:24 | established [1] 27:24 | fairly [1] 48:8 | focus [1] 38:13 | good [6] 2:10 2:11 |
| 34:21 48:8 48:17 | establishing [1]28:4 | fall [1] 64:6 | follow [1] 27:3 | 2:17 19:15 59:12 |
| 55:24 | estimate [1] 23:5 | familiar [2] 21:23 | following [1] 26:4 | 64:21 |
| e-mail [11] 8:7 | et [4] 10:5 10:5 | 49:1 | 26:12 | goodbye [1] 19:15 |
| 8:10 16:13 19:1 | 39:5 39:6 | far [7] 33:15 49:25 | followup [3] 6:12 | goods [1] 64:25 |
| 23:11 26:4 26:6 | event [2] 10:23 | 56:18 58:6 59:6 | 7:18 26:4 | grant [1] 62:12 |
| 26:12 27:12 27:14 | 26:21 | 66:25 67:10 | force [1] 50:9 | granted [1] 34:4 |
| 32:8 | eventually [1] 20:11 | fashion [4] 26:13 | foreign [1] 57:3 | GRAPHICS [1] 1:8 |
| early [2] 30:17 48:8 | everybody [1] 44:22 | 22:22 45:23 66:3 | forgive [1] 50:21 | great [2] 33:2 42:5 |
| earnest [1] 58:19 | everyone's [1] 21:22 | fashioned [2] 19:24 | form [1] 66:4 | GREGORY [1] 1:16 |
| easily [1] 18:19 | evidence [6] 11:16 | 20:23 | formally [1] 48:12 | grounds [1] 55:20 |
| Ed [1] 2:14 | 17:1 25:19 26:1 | favorable [3] 7:7 | format [1] 63:11 | grown [1] 45:15 |
| EDWARD [1] 1:20 | 38:5 52:1 | 7:14 26:15 | formed [4] 7:8 | guess [2] 50:20 |
| eight [1] 52:15 | exact [2] 10:14 64:5 | Federal [2] 64:5 | 15:20 16:25 21:19 | 57:4 |
| either [6] 31:15 | exactly [1] 40:7 | 64:25 | forms [1] 21:14 | half [2] 61:3 65:22 |
| 31:17 49:2 49:10 | 42:5 44:18 47:9 | fell [2] 52:18 | formulated [1] 59:11 | handful [1] 23:6 |
| 50:22 52:10 | 48:10 60:10 66:1 | few [7] 27:8 30:8 | forth [9] 8:13 8:19 | 26:22 29:25 |
| elected [2] 24:23 | example [1] 5:4 | 32:1 53:20 54:11 | 9:18 12:16 12:25 | handle [2] 2:22 |
| 46:23 | 21:16 27:22 | 59:15 67:25 | 27:10 33:21 34:3 | 37:14 |
| ELECTRONIC [1] | examples [1] 58:24 | fight [1] 58:17 | 40:25 | handling [2] 3:5 |
| 1:8 | except [1] 47:13 | fighting [1] 59:14 | forward [10] 7:3 | 3:4 |
| elucidation [1] 66:2 | exception [4] 27:20 | file [5] 7:18 26:24 | 7:10 15:13 19:16 | hardware [1] 39:1 |
| embassy [3] 49:2 | 27:23 28:11 28:13 | 54:7 62:12 62:13 | 30:20 34:24 35:1 | hats [1] 43:19 |
| 49:3 49:12 | exchange [4] 23:11 | filed [1] 5:6 | 45:14 48:7 66:13 | hear [2] 43:11 58:12 |
| employed [1] 50:13 | 23:12 25:20 26:12 | filters [1] 58:4 | forwarded [1] 32:9 | 68:10 |
| enable [2] 45:18 | Excluding [1] 32:21 | final [3] 48:15 49:8 | found [2] 6:8 | heard [5] 33:17 |
| 45:22 | exclusive [1] 47:4 | 50:25 | 19:17 | 50:19 55:10 59:7 |
| encourage [1] 19:5 | exclusively [1] 47:11 | finally [1] 19:20 | foundation [1] 28:17 | 60:25 |
| end [6] 11:13 13:11 | exercise [1] 40:5 | financial [1] 8:8 | foundry [1] 64:23 | hearing [7] 3:2 |
| 47:15 51:2 51:3 | expect [1] 39:9 | finder [1] 21:6 | four [1] 58:18 | 5:8 5:24 6:21 |
| 61:16 | expectation [1] 7:9 | fine [2] 36:23 51:1 | FRANCIS [1] 2:2 | 24:7 32:7 42:18 |
| engage [1] 12:6 | expecting [1] 11:13 | 68:7 | Frank [1] 2:19 | help [2] 61:12 67:18 |
| engaged [2] 19:18 | expedition [1] 39:25 | Fineman [2] 1:18 | frankly [2] 61:4 | hey [1] 19:13 |
| 19:19 | experience [1] 45:10 | 2:13 | 61:5 | hire [1] 5:21 |
| engaging [1] 67:1 | expert [8] 5:17 | finer [1] 61:2 | fraud [1] 29:11 | hired [3] 5:25 6:3 |
| engineering [7] 38:1 | 5:18 7:2 11:9 | Finger [1] 1:19 | Friday [1] 56:11 | 18:9 |
| 38:9 40:1 42:7 | 11:13 15:12 16:14 | finish [2] 55:5 | front [2] 12:5 12:11 | history [2] 12:3 |
| 44:6 59:10 59:23 | 42:20 | 64:19 | fruits [1] 20:21 | 28:17 |
| entered [2] 3:11 | experts [1] 5:16 | firm [18] 4:17 5:4 | full [1] 7:22 | Hoffman [54] 2:10 |
| 12:4 | explain [1] 68:8 | 5:11 5:19 6:10 | fully [3] 11:13 35:24 | 2:14 2:15 8:2 |
| entire [1] 8:12 | explained [1] 35:18 | 6:22 13:2 13:8 | 43:2 | 8:15 11:3 12:20 |
| entirely [1] 63:13 | explanation [1] 34:3 | 13:22 14:19 15:3 | functions [1] 42:6 | 18:13 18:16 20:13 |
| entitled [12] 16:5 | explicitly [1] 5:24 | 16:13 21:2 21:10 | future [1] 67:19 | 20:19 21:12 22:12 |
| 18:8 21:5 39:25 | extended [1] 12:7 | 22:5 22:5 22:17 | g [4] 57:4 58:15 | 28:15 28:22 30:12 |
| | extent [4] 22:24 | 26:22 | 63:1 64:6 | 30:15 30:19 31:4 |
| | 24:11 32:8 47:1 | first [23] 2:24 3:3 | Gary [2] 1:20 2:14 | 31:17 31:18 33:3 |
| | extraordinarily [1] | 6:6 7:24 9:8 | gather [1] 17:25 | 33:6 37:16 38:16 |
| | 45:12 | 12:24 14:9 16:12 | | 40:14 40:20 41:2 |
| | | 17:18 18:18 18:22 | | 42:9 42:12 42:22 |
| | | | | 43:15 44:11 47:19 |

CondenseIt™

Honor - lawyer

| | |
|---|---|
| 47:24 | 49:19 | 51:1 |

47:24  49:19  51:1
51:15  60:3  60:21
61:10  61:19  61:25
62:3  62:9  62:15
63:6  64:10  65:7
66:8  66:19  67:2
67:18  68:1
**Honor** [82]  2:11
3:2  3:9  3:13
3:23  3:24  4:3
8:25  9:5  9:12
11:1  13:22  15:16
16:12  17:8  18:13
21:13  22:9  23:8
24:5  25:16  26:1
26:21  27:6  28:15
29:7  30:1  30:10
30:11  30:15  30:24
30:25  31:4  31:18
31:24  32:2  32:14
33:1  33:3  34:20
35:6  35:12  36:9
36:12  36:14  37:8
37:15  40:2  40:14
40:20  41:2  41:15
42:14  44:1  44:11
44:25  46:6  47:24
47:25  51:1  52:6
52:19  53:1  54:22
55:9  58:14  60:3
61:10  62:3  62:6
62:9  63:6  64:3
64:11  64:19  65:7
66:8  66:19  67:7
67:13  67:17  67:18
**Honor's** [1]  67:11
**HONORABLE** [1]
1:16
**hope** [5] 13:15  20:2
41:10  61:13  68:3
**horse** [1]  44:21
**hour** [1] 61:3
**hours** [3]  15:21
16:3  18:9
**Howrey** [40]  2:5
2:20  4:17  5:4
5:11  5:13  5:14
5:19  6:10  6:20
6:22  7:11  8:2
8:13  13:2  13:8
13:22  14:11  14:15
14:19  15:3  15:4
16:12  18:24  19:11
21:2  21:10  21:17
22:2  22:17  23:12
23:16  25:4  25:11
26:21  27:11  28:19
29:23  32:22  35:7
**Howrey's** [2]  17:14
26:11
**huge** [1] 44:7
**hundred** [1]  42:10
**hundred-percent** [1]
11:10
**Hutz** [1] 2:2
**i.e** [1]  54:12
**idea** [2]  26:17  53:7
**ideas** [1] 59:12
**identified** [10]  6:15
12:1  39:13  39:20

41:25  44:2  51:18
52:15  53:2  54:4
**identify** [3]  17:20
37:4  46:14
**imagine** [1]  22:19
**immediately** [1]
53:16
**impact** [1]  20:16
**impasse** [1]  47:21
**implicitly** [1]  50:1
**implies** [1]  52:17
**import** [1]  45:1
**important** [3]  11:1
14:15  15:23
**importantly** [1] 36:10
**imported** [3]  64:9
65:3  65:17
**in-depth** [1]  16:24
**inapplicable** [1]
57:4
**inartfully** [1]  54:23
**inaudible** [4]  39:19
42:21  56:12  59:3
**INC** [3]  1:7  1:8
1:9
**include** [4]  15:13
31:2  31:16  32:12
**included** [1]  8:24
**including** [2]  27:13
39:3
**inconsistencies** [3]
13:5  13:15  24:6
**inconsistency** [1]
5:23
**inconsistent** [5]
10:13  29:1  29:3
29:4  29:9
**INCORPORATED** [1]
1:7
**incumbent** [1]  45:16
**indeed** [1]  11:7
**indicate** [2]  34:1
34:5
**indicated** [17]  19:13
19:25  28:24  30:8
33:10  34:6  34:23
35:22  36:5  40:20
41:3  55:16  56:1
56:14  56:15  60:4
67:19
**indicating** [1]  20:8
50:1  57:8
**individuals** [1]  22:1
**indulgence** [1]  18:17
**inevitably** [1]  45:9
**inference** [1]  25:10
25:18  25:23
**information** [80]
6:1  6:2  6:11
6:14  6:17  6:19
6:25  7:21  8:5
8:6  8:7  8:8
11:7  11:8  11:11
11:16  11:18  11:21
13:3  13:9  13:20
14:11  15:6  17:3

18:1  18:5  19:9
19:10  19:22  19:23
21:18  22:2  23:4
23:15  23:25  24:25
25:2  25:20  26:3
26:20  28:6  28:9
28:19  28:25  33:19
36:13  36:14  37:3
38:5  41:12  42:15
42:17  42:23  43:3
43:5  43:6  43:21
43:22  44:12  45:2
45:3  45:6  45:8
45:11  45:12  45:18
45:23  47:10  50:7
50:8  51:25  53:11
54:9  55:17  56:23
61:21  63:19  65:10
65:13  66:15
**informed** [1]  15:11
**infringe** [5]  34:3
39:12  44:19  53:9
63:8
**infringement** [15]
34:2  35:18  35:23
36:2  36:3  38:15
39:15  41:25  46:20
47:2  53:8  55:21
63:10  63:10  63:23
**infringing** [2]  39:24
46:10
**inhibitor** [1]  63:15
**initial** [8]  51:19
52:8  52:9  52:23
53:6  54:20  54:23
65:15
**initiated** [1]  4:1
**innocent** [1]  24:10
**input** [3] 39:17  45:5
54:5
**inputs** [5]  40:7
42:1  42:2  45:4
47:14
**inputting** [1]  42:23
**inquire** [1]  15:18
16:6  28:1
**inquiry** [3]  13:19
26:3  28:8
**inside** [1]  63:9
**Insofar** [1]  63:9
**inspection** [2]  4:13
29:15
**installation** [1]  39:4
**instance** [2]  27:22
51:8
**Instead** [1]  46:23
**instructed** [1]  47:19
**integrated** [1]  56:4
**intend** [3]  15:11
15:12  48:17
**intended** [1]  12:7
**intending** [1]  46:5
**intent** [2]  24:8
31:16
**interest** [1]  33:12
43:10
**interested** [4]  30:13

40:17  40:24  45:24
**interim** [1]  66:8
**internal** [4]  4:19
6:20  9:23  13:25
17:14  18:1  18:20
25:10  26:22  27:1
29:22  30:13  31:21
31:24  32:21  42:6
46:19
**INTERNATIONAL**
[1]  1:9
**interpretation** [2]
7:17  14:4
**interrogatories** [4]
37:18  37:19  55:14
58:5
**interrogatory** [5]
39:14  46:13  54:4
55:11  57:10
**interrupt** [3]  3:14
14:18  22:10
**invalidating** [1]
17:17
**invalidity** [1]  53:10
**invention** [1]  15:24
**inventors** [2]  48:4
50:8
**invested** [2]  61:3
61:5
**involved** [5]  22:2
35:8  35:9  40:8
60:13
**involves** [1]  34:5
**involving** [1]  54:19
**issue** [42]  4:2
7:16  10:9  12:24
13:1  13:16  14:3
14:6  18:18  18:23
20:20  20:21  20:22
21:11  21:12  22:25
29:7  29:11  31:19
33:22  35:14  35:16
35:23  37:18  38:6
38:11  38:21  39:7
39:10  42:12  45:13
45:16  46:6  48:4
54:19  56:25  58:15
59:18  62:18  62:25
66:1  66:10
**issued** [2]  32:17
33:7
**issues** [8]  16:21
21:13  22:21  27:13
37:16  38:14  66:9
66:11
**item** [4]  3:3  3:8
3:9  48:1
**items** [5]  2:25
3:4  3:4  51:18
61:6
**J** [1]  1:18
**January** [1]  48:25
**Japan** [7]  48:6
48:19  48:23  49:2
49:10  50:12  51:6
**judgment** [2]  62:14
64:13
**July** [20] 3:11  4:7

6:6  6:6  6:12
7:17  7:25  8:14
8:23  9:1  11:4
12:4  16:12  26:23
29:14  30:17  31:6
31:9  32:5  32:18
**juncture** [1]  21:11
**June** [5]  5:5  30:18
30:19  31:8  32:18
**jurisdiction** [1] 35:14
**keep** [4] 3:6  43:8
43:9  55:19
**Kelley** [59]  2:4
2:21  2:25  5:1
5:7  5:23  6:23
7:25  12:22  13:6
23:5  24:6  29:17
30:7  30:9  30:10
37:15  37:24  40:18
41:10  41:14  41:17
41:24  46:3  46:4
47:25  48:3  49:15
50:16  50:18  51:5
53:1  55:15  55:19
56:1  56:14  57:8
58:5  58:14  60:11
60:22  61:9  62:6
62:18  62:20  62:24
64:3  64:18  64:19
65:21  66:13  66:20
67:13  67:19  67:22
67:23  68:2  68:3
**Ken** [1]  2:15
**KENNETH** [1] 1:21
**Kevin** [1]  68:15
**key** [4]  17:17  38:14
39:11  45:8
**kicking** [1]  59:12
**kind** [8]  10:16  26:5
38:17  39:8  40:6
47:5  53:25  59:2
**knew** [7]  13:23
18:24  21:17  23:25
24:22  53:15  56:15
**knowing** [1] 40:17
45:24
**knowledge** [3]  23:2
48:19  57:9
**known** [1]  24:19
**knows** [1]  36:21
**Kobayashi** [4]  48:5
48:6  48:18  50:12
**lack** [1]  50:1
**laid** [1]  52:9
**language** [6]  3:4
9:2  9:6  17:12
37:25  45:18
**largest** [1]  44:4
**last** [6]  32:16  33:9
51:14  54:11  56:11
58:17
**late** [4]  5:5  30:18
30:19  50:15
**law** [4]  10:24  41:20
45:15  64:2
**lawyer** [1]  65:24

**lays** [1]  28:17

**Layton** [3]                    1:19
  2:12    2:13

**lead** [3]  17:8        18:13
  52:1

**leading** [2]          31:2
  53:20

**leads** [2] 24:9      26:14

**learned** [1]          18:2

**least** [11] 21:10    24:12
  24:15   27:15   27:24
  50:1    51:13   56:16
  66:10

**led** [2]    5:14   19:19

**left** [1]    68:4

**legal** [1] 28:23

**legitimate** [1]      38:17

**less** [5]   15:8       20:3
  33:17   40:15   60:16

**letter** [9] 6:5        9:21
  10:15   12:3   13:22
  26:24   52:17   57:7
  62:12

**letters** [3]           4:17
  7:18    27:8

**levels** [1]            45:19

**libraries** [1]         39:2

**library** [4]          39:18
  40:9    42:3    54:6

**likelihood** [1]  51:11

**likely** [2]            14:12
  52:15

**limit** [3] 41:3    59:15
  59:16

**limitation** [1]  60:1
  60:19

**limitations** [1]  44:17

**limited** [5]          22:18
  39:10   39:11   44:13
  66:4

**limiting** [1]        57:14

**line** [3]   2:20   12:11
  55:4

**list** [12]  20:9    21:22
  22:8    22:13   22:17
  26:8    36:22   52:10
  52:20   52:21   52:23
  64:22

**listed** [6]            50:6
  51:21   52:7   52:7
  52:19   52:22

**listen** [1]            21:17

**listing** [1]           8:7

**literature** [1]       56:9

**litigation** [10]      5:16
  15:9    16:1    16:5
  21:9    22:14   33:9
  36:8    38:3   45:13

**live** [1]  48:19

**lives** [2] 49:6    50:12

**LLP** [3]  1:21    2:2
  2:5

**located** [1]          56:24

**lock** [2]  15:25    16:4

**Lodge** [1]            2:2

**log** [8]    4:15       4:20
  10:7    12:19   20:9
  20:12   22:8   27:1

**logic** [14]            53:24
  53:25   54:5   54:12
  56:8    57:15   59:9
  59:17   59:20   59:21
  60:7    60:14   62:21
  62:22

**look** [5] 37:21   46:13
  66:2    67:2   68:9

**looking** [9]          6:22
  6:25    13:24   22:7
  32:2    60:3   60:7
  60:9    60:15

**looks** [1]            16:17
  37:10

**LTD** [2]  1:4       1:8

**M** [3]    1:16    1:20
  2:3

**major** [2]           17:16
  18:10

**makes** [5]          29:23
  57:3    64:4   64:20
  64:25

**manner** [4]         39:10
  39:11   39:24   61:4

**manuals** [6]         39:4
  39:4    39:5   39:5
  40:6    42:10

**manufacture** [1]
  58:23

**manufacturing** [15]
  60:5    63:7   63:21
  63:24   64:4   64:6
  64:7    64:11   64:15
  64:16   64:25   65:11
  65:12   65:16   65:17

**map** [1]  54:6

**marketing** [1]  53:3

**Markman** [2]        55:22
  55:25

**material** [4]        11:23
  28:7    47:4   62:7

**materials** [4]        53:3
  53:3    53:15   53:19

**Matrox** [15]
  1:8     1:9    1:9
  56:22   57:1   62:7
  65:20   66:10   66:17
  66:25   67:8   67:8
  67:8    67:11

**matter** [4]            7:4
  35:16   47:20   48:3

**matters** [3]          61:4
  61:15   61:17

**Maurer** [1]
  68:15

**may** [36] 14:2     14:21
  14:23   14:24   14:25
  16:2    19:24   20:2
  20:11   20:15   20:16
  20:19   20:19   20:21
  21:4    21:16   21:25
  22:1    22:5   24:15
  24:19   26:24   29:10
  30:5    33:20   33:25
  34:13   38:2   51:20
  54:25   55:14   57:4

**58:9     61:12   64:19**
  67:18

**mean** [4] 3:13      10:9
  14:20   16:3

**means** [1]            10:11

**meant** [2]            37:19
  59:8

**mechanical** [1]  65:2

**meeting** [1]          47:7

**meetings** [1]        59:23

**Meilman** [13]        1:20
  2:14    3:4   35:20
  55:9    55:13   58:9
  59:5    60:4   62:6
  65:23   67:7   67:17

**memos** [1]           59:23

**Menlo** [1]            2:5

**mention** [1]        46:17

**mentioned** [7]      24:1
  32:16   35:12   41:17
  41:20   45:1   59:16

**merits** [2]           20:18
  21:7

**Messrs** [1]           2:14

**method** [1]         63:18

**methods** [1]         52:5

**mid-September** [1]
  68:2

**might** [4]             7:20
  39:8    50:7   66:1

**mind** [3] 3:7       19:4
  32:25

**minute** [3]          37:25
  57:5    58:15

**minutes** [1]         11:20

**missed** [1]           32:15

**misunderstood** [1]
  23:21

**moment** [1]          43:18

**month** [1]            55:15

**Monti** [1]            11:2

**Morin** [1]            1:21

**morning** [4]          2:10
  2:11    2:16   2:17

**most** [5] 18:3       18:4
  22:12   45:2   45:7

**motion** [3]           20:24
  33:21   46:8

**mouth** [1]            24:16

**movant** [2]           3:16
  3:18

**movants** [2]          3:22
  4:2

**move** [1]             55:8

**moving** [1]          16:22

**Mower** [1]           52:14

**Ms** [32]  17:8      18:14
  22:9    22:11   22:24
  23:1    23:8   23:22
  23:24   24:17   25:3
  25:14   25:16   27:4
  29:19   29:22   30:3
  30:4    30:24   31:10
  31:13   32:14   32:21
  32:25   33:9   34:21

**44:1     44:25   46:2**
  54:22   54:25   55:2

**multiple** [1]          5:2

**must** [2]  15:3      49:2

**named** [1]            5:17

**namely** [3]           4:19
  42:1    46:15

**names** [1]            5:15

**narrow** [3]          44:10

**narrowed** [1]       56:1
  56:6

**narrowing** [1]     53:22

**nature** [3]            6:7
  12:23   38:11

**necessary** [4]      17:20
  45:17   47:18   67:3

**need** [18]             7:10
  20:4    31:5   35:17
  38:4    41:21   42:4
  42:8    45:4   45:17
  47:9    47:10   47:11
  54:24   59:7   63:14
  66:2    68:8

**needs** [2]            13:20
  45:13

**negotiating** [1]  35:8

**negotiation** [1]  53:20

**net** [1]   64:22

**never** [2]             5:5
  10:19   15:17   15:21
  65:11

**new** [1]  45:17

**next** [6]  8:23     35:12
  36:17   41:24   61:16
  61:16

**nice** [1]  19:14

**non-confidential** [1]
  34:7    41:8

**non-Matrox** [1] 67:15

**non-starter** [1]  62:14

**none** [2] 8:9     59:24

**nor** [1]   31:24

**normally** [2]        22:13
  47:14

**note** [2] 14:15   53:10
  9:24

**noted** [1]
  12:20

**nothing** [5]          10:6
  10:7    34:8   47:12
  65:11

**notices** [1]           5:6

**now** [22] 6:20      13:7
  15:7    20:24   22:7
  25:17   31:7   32:25
  38:2    41:10   44:1
  45:1    45:24   46:10
  46:24   50:3   59:5
  59:14   59:18   60:25
  61:3    61:16

**number** [8]          21:25
  22:18   29:2   30:8
  34:15   40:3   60:23
  61:12

**numerous** [1]     49:21

**object** [5]           35:25

**37:2     51:24   52:2**
  61:20

**objected** [8]         6:8
  6:18    33:14   35:5
  35:13   35:18   35:20
  59:1

**objecting** [1]       35:20

**objection** [5]       34:16
  36:17   40:17   41:18
  43:11

**objections** [6]     34:15
  35:19   37:17   38:11
  61:2    67:10

**obligated** [1]      36:25

**obligations** [2]   3:11
  46:12

**obtain** [3]          21:19
  36:21   36:23

**obtainable** [1]   36:19

**obtained** [1]        13:3
  29:5    36:6

**obtaining** [1]      36:7

**obviously** [11]     7:6
  29:1    32:8   34:10
  36:14   43:3   44:24
  47:21   50:4   51:7
  52:9

**occurred** [1]      24:10

**off** [6]    21:22    36:7
  47:16   60:22   64:23
  68:6

**often** [2] 10:21   22:12

**oftentimes** [1]  45:11

**Oliver** [2]            2:4
  2:21

**once** [9]  11:1     11:4
  11:6    11:7   18:25
  19:13   20:11   22:13
  58:19

**one** [37]  3:16       6:5
  11:5    11:5   11:19
  11:22   17:16   18:25
  20:5    21:24   21:25
  24:12   26:17   28:6
  28:16   29:17   34:20
  39:8    39:9   41:19
  48:15   49:2   49:11
  50:7    50:9   55:4
  56:21   57:21   57:21
  60:25   61:1   61:11
  63:20   64:7   65:14
  67:8    68:10

**ones** [3]  3:14      3:15
  59:1

**operates** [1]       43:1

**operation** [5]      43:5
  53:25   65:11   65:16
  65:17

**operations** [1]    52:4

**opinion** [5]          3:10
  7:13    15:18   17:1
  28:23

**opinions** [9]
  7:9    14:13   5:14
  15:19   16:25   21:7
  21:19   26:19

**opponent** [1]     5:4

CondenseIt™

opportunity - raised

**opportunity** [4] 49:4
49:11  50:23  66:6
**orally** [1]          12:4
**order** [33]          3:11
4:7    4:22    7:17
8:20   8:23    9:1
9:2    10:18   10:23
12:3   14:3    17:11
17:22  22:16   26:23
29:14  33:4    35:7
35:9   35:11   36:16
38:21  38:22   40:9
41:13  43:15   45:13
61:24  62:1    64:6
66:25  67:11
**ordered** [8]         8:16
8:19   9:9     9:12
9:14   26:21   29:16
61:18
**orders** [1]          45:14
**Osaka** [3]           49:4
49:6   49:11
**Oshinsky** [1]        1:21
**ought** [1]           13:7
**ourselves** [3]       4:1
21:16  26:6
**outlining** [1]       8:20
**output** [6]          39:19
39:19  40:9    42:3
47:16  54:6
**outset** [1]          14:16
**outside** [3]         63:2
63:3   63:7
**overall** [1]         10:22
**overbreadth** [1]     44:7
**overcome** [1]        51:8
**overly** [1]          40:19
**own** [1]  61:7

**p.m** [1]  68:13
**Page** [3]  6:24      12:11
12:20
**pages** [4]           33:17
40:15  42:10   60:17
**paper** [1]           9:18
**papers** [1]          53:13
**paragraph** [8]       4:7
7:17   9:7     9:7
10:1   10:2    12:1
12:13
**parameters** [3]      31:7
31:12  40:12
**Park** [1]  2:5
**part** [20]  4:16     9:12
16:4   17:14   21:13
33:14  33:22   33:25
34:5   38:14   42:24
42:25  43:1    51:23
55:10  63:14   63:20
64:10  64:15   65:16
**particular** [8]      17:20
18:2   18:6    30:6
45:1   45:3    45:5
60:12
**particularly** [1] 17:13
**parties** [11]        3:10
3:19   36:8    37:3
37:4   37:5    47:8

**47:19**  51:11   53:19
58:18
**parts** [4] 39:11     42:19
42:21  44:18
**party** [16]
16:6   33:9    33:12
38:2   38:5    39:9
41:18  41:21   43:9
43:10  43:10   46:11
46:11  49:20   50:9
**past** [1] 53:20
**patent** [10]         17:2
17:18  35:18   48:4
54:13  56:2    60:13
63:2   63:8    63:23
**patents** [1]         8:8
**pay** [1] 5:21
**people** [6]          22:12
28:19  57:9    59:12
62:7   62:16
**percent** [1]         44:5
**performed** [3]       39:16
42:6   53:25
**perhaps** [1]         51:10
54:24
**period** [5]          8:4
21:22  32:20   51:11
67:2
**peripheral** [1]      47:4
**permission** [2]      62:12
62:13
**permit** [1]          51:11
**person** [1]          18:5
**personal** [2]        23:2
30:4
**pertains** [2]        20:18
21:7
**phone** [7]           6:12
24:12  26:7    26:10
32:5   32:6    49:1
**phonetic** [1]        11:2
52:14
**phrase** [3]          8:24
10:13  50:21
**phrases** [1]         53:2
**physical** [3]        64:8
64:21  65:2
**picture** [1]         7:22
**piece** [7] 9:17      18:10
30:6   55:18   55:18
63:19  65:10
**pieces** [3]          11:8
17:17  25:25
**ping-pong** [1]       40:25
**place** [4] 3:25      17:18
19:23  49:2
**plaintiff** [1]       1:5
1:23   2:12    26:14
44:9   45:22   46:1
50:6
**plaintiffs** [1]      4:14
5:6    53:13
**planning** [1]        59:23
**plant** [3] 56:14     56:23
67:9
**play** [1] 33:25      34:13

**point** [23]          13:17
15:3   15:9    20:10
20:11  21:3    21:13
23:2   23:8    24:1
29:17  29:18   34:4
41:5   41:24   43:23
44:3   48:8    48:23
61:2   61:6    64:20
66:5
**points** [3]          5:2
23:10  28:16
**poison** [1]          20:5
**poisonous** [1]       20:21
**portion** [2]         10:1
65:8
**position** [9]        20:14
23:18  24:15   25:7
25:15  28:3    28:12
33:11  63:25
**positions** [1]       34:2
**possession** [2]      40:1
47:4
**possibility** [2]     22:4
22:5   24:19
**possible** [2]        28:8
53:12
**postponed** [1]       26:25
**potential** [4]       20:17
21:14  22:25   29:11
**pre** [1]  60:11
**precisely** [2]       10:15
10:16
**precluded** [1]       16:20
**preparation** [2]   31:14
32:22
**prepare** [1]         8:20
**prepared** [4]        4:10
9:15   10:3    53:6
**preparing** [1]       31:25
32:3
**present** [2]         30:21
43:5
**presumably** [1]    25:11
**presume** [1]         33:3
50:8   62:15
**pretty** [1]          58:4
**prevail** [1]         62:25
**prevent** [1]         16:4
**previously** [1]      33:10
**prima** [1]           17:24
**primary** [1]         4:1
**principal** [2]       2:16
21:3
**privilege** [12]      4:12
4:15   4:20    10:6
10:7   10:21   14:1
20:9   22:8    27:1
27:20  27:21
**privileged** [11]     9:25
10:20  10:22   12:12
14:7   14:10   22:13
22:18  27:17   28:1
28:9
**problem** [10]        17:11
19:11  19:21   20:5
21:21  44:7    44:9

**48:24**  54:22   54:25
**proceed** [2]         24:23
33:4   45:14   47:7
**proceeded** [2]       24:2
24:20
**process** [40]        27:2
42:24  42:25   43:1
46:16  47:15   53:24
54:13  54:17   56:3
56:8   56:12   56:20
57:2   57:14   59:6
59:8   60:5    62:21
63:6   63:8    63:9
63:21  63:23   63:24
64:4   64:6    64:7
64:11  64:15   64:21
64:22  64:24   65:1
65:2   65:5    65:10
66:14  67:1    67:14
**processes** [7]       56:7
56:9   56:17   57:13
57:16  60:12   60:14
**produce** [37]        4:9
4:19   6:20    8:18
9:14   10:3    10:7
10:16  10:18   10:19
12:15  23:7    23:11
26:22  34:18   35:1
35:4   35:17   38:3
39:1   39:19   39:24
40:4   40:9    41:6
42:3   49:25   50:11
51:16  51:17   51:23
53:22  54:6    57:20
58:20  58:21   64:23
**produced** [25]       5:10
8:11   9:17    10:12
27:11  29:16   33:15
33:16  34:17   35:3
35:10  38:1    38:10
40:4   40:15   42:9
43:24  53:12   53:14
53:15  60:16   64:21
67:21  67:25   68:1
**produces** [2]        64:22
64:24
**producing** [2]       10:2
53:16
**product** [21]        4:12
12:17  17:15   38:1
38:10  38:14   39:23
44:4   45:3    45:8
46:25  53:2    54:1
59:4   59:11   59:13
59:22  63:7    65:12
65:15  65:17
**production** [10]     10:1
10:14  22:25   27:7
29:14  38:4    41:11
54:20  57:3    67:23
**products** [19]       34:11
34:12  34:13   39:10
39:11  41:7    52:5
53:23  57:12   57:18
58:10  58:24   59:3
59:16  59:16   59:17
59:21  63:22   64:16
**program** [1]         33:24
**progression** [1]    47:1

**promotional** [1]
53:3
**proper** [4]          38:8
41:11  47:7    47:8
**properly** [2]        40:22
54:10
**propose** [1]         65:23
**proposed** [1]        60:20
**proposing** [1]       30:16
**proposition** [3]     65:6
65:8   65:9
**prosecute** [1]       45:22
**protect** [1]         26:6
43:14
**protective** [10]     35:7
35:9   35:11   36:15
38:22  41:13   43:15
45:14  61:24   62:1
**prove** [1]           33:3
43:7   44:22
**provide** [12]        4:14
17:23  22:12   22:17
34:12  36:12   36:25
37:9   37:12   42:1
53:9   56:11
**provided** [8]        6:6
7:21   11:17   13:13
22:20  33:20   36:15
36:15
**provides** [2]        26:23
57:22
**providing** [3]       39:17
47:14  54:4
**provisions** [1]      37:3
**public** [2]          36:18
42:4
**publications** [1]
8:8
**publicly** [3]        34:7
36:20  36:24
**purpose** [1]         32:9
**purposes** [1]        34:17
**pursuant** [1]        41:12
**pursue** [1]          24:8
**pursuit** [2]         44:13
26:11
**push** [1] 55:25
**pushed** [1]          34:10
**put** [4]  10:7       35:25
24:16  61:1
**putting** [2]         18:21
44:21  46:15
**questioned** [1]      25:23
**questions** [3]       24:12
2:16   56:25
**quickly** [1]         41:1
53:11  67:24
**quite** [5] 22:12     13:4
61:4   61:4    65:1
**quote** [4]           1:21
12:13  12:13   28:5
**raise** [1] 29:17
**raised** [5]          34:15
34:16  35:20   35:24
62:10

CondenseIt™

raising · sort

**raising** [1]  62:7
**range** [1]  42:12
**rather** [1]  41:1
**rattled** [1]  60:22
**react** [1] 40:17
**read** [11] 12:12  22:16
26:5  38:23  38:25
40:22  51:16  58:20
65:8  65:25  66:6
**reading** [2]  10:15
58:21
**real** [7]  33:12  37:18
38:6  38:11  38:13
39:7  43:10
**really** [10]  12:6
17:24  38:16  40:18
40:24  42:4  46:20
47:2  54:14  59:7
**reason** [2]  35:4
41:17
**reasonable** [1]  27:25
**reasonably** [2]  39:8
51:25
**recapping** [1]  32:5
**receive** [3]  11:11
28:25  45:23
**received** [17]  4:10
4:16  4:16  5:25
6:14  9:15  10:3
11:2  11:4  11:7
14:11  24:25  25:2
25:3  28:19  32:9
48:14
**recipient** [1]  27:15
**recited** [1]  37:16
**recognize** [1]  45:16
**recognized** [1]  14:15
**recollection** [1] 12:9
**recommendation** [1]
27:3
**record** [2]  24:17
36:18
**recorded** [1]  37:17
**records** [1]  56:24
**reduce** [1]  41:22
**refer** [1] 53:13
**reference** [4]  6:23
29:23  39:3  44:3
**references** [1]  12:11
**referred** [1]  56:5
**reflect** [2]  14:10
25:11
**reflections** [1]  12:8
**refused** [4]  4:18
37:5  55:25  57:6
**refuses** [1]  6:20
**regard** [4]  20:25
27:7  51:17  68:5
**regarding** [14]  10:24
18:20  21:7  21:8
27:13  27:14  30:13
31:3  31:25  33:22
41:23  45:8  52:4
64:2
**regular** [1]  47:14

**relate** [6]  7:19
20:19  20:20  20:21
37:17  60:5
**related** [3]  38:6
54:20  55:11
**relates** [3]  12:13
35:23  62:21
**relating** [24]  4:9
9:11  9:13  10:10
10:12  12:2  17:14
17:23  20:14  31:1
32:2  33:23  38:1
38:9  38:22  39:22
39:23  41:7  44:6
47:11  53:19  53:23
59:20  60:8
**relationship** [2] 24:20
24:23
**relatively** [3]  30:8
48:3  53:2
**released** [1]  61:7
**relevance** [1]  43:12
43:21  52:4
**relevant** [11]  18:3
18:4  38:15  52:13
52:16  52:18  52:20
52:20  52:22  54:16
59:9
**relief** [11]  3:20
19:24  20:3  20:7
20:20  20:23  20:25
21:14  21:15  22:21
22:22
**rely** [1]  51:22
**relying** [2]  28:23
63:12
**remainder** [1]  3:1
**remaining** [2]  54:14
59:18
**remains** [1]  17:16
**remedies** [1]  7:20
**remedy** [1]  7:22
**remember** [2]  26:10
28:21
**remove** [1]  43:18
**Reporter** [1]  68:15
**represent** [1]  49:20
**representation** [2]
28:18  30:5
**representations** [5]
5:1  29:1  29:2
29:4  29:8
**represented** [1] 7:25
**representing** [2]
13:6  48:9
**represents** [1]  35:7
**request** [16]  8:15
12:12  33:7  38:18
40:19  40:22  41:3
44:10  51:17  51:24
52:2  52:11  54:11
56:6  57:11  58:21
**requested** [2]  6:21
52:11
**requests** [19]  8:20
37:20  37:21  38:9
38:13  38:20  38:22

39:22  40:3  49:22
54:8  54:14  55:10
55:14  58:5  58:16
58:19  59:19  61:2
**require** [4]  10:19
17:23  17:25  22:16
**required** [5]  4:21
8:16  9:25  12:14
38:2
**requires** [2]  4:8
37:10
**resolve** [4]  7:10
55:16  61:2  66:10
**respect** [4]  3:10
13:2  31:19  44:7
**respond** [7]  18:14
28:16  30:15  47:19
48:13  49:21  49:25
**responded** [2]  8:6
50:20
**response** [6]  16:12
40:4  50:1  51:23
52:13  52:25
**responses** [2]  37:17
56:25
**responsibilities** [1]
27:5
**restrict** [3]  39:21
54:2  56:15
**restricted** [1]  59:19
**rests** [1] 47:2
**result** [7]  7:8
7:14  15:14  16:25
17:4  21:20  26:18
**retain** [4]  11:9
15:11  31:19  31:23
**retained** [1]  6:5
**retention** [5]  6:5
18:21  21:9  30:14
32:10
**return** [1]  28:16
**reveal** [1]  20:15
**revenue** [1]  44:5
**review** [4]  10:20
10:22  10:25  28:2
**reviews** [1]  29:15
**revisit** [1]  47:22
**Richards** [3]  1:19
2:12  2:13
**Ricoh** [44]  1:4
2:12  2:14  3:2
5:9  5:12  5:14
5:17  5:21  6:2
6:15  6:18  7:5
7:8  7:15  10:11
13:4  13:14  14:17
15:15  15:20  15:25
16:2  16:7  16:18
16:25  18:14  19:1
19:6  19:10  19:14
26:18  27:9  28:3
28:20  29:1  33:7
40:13  48:5  50:2
50:13  59:15  60:2
63:5
**Ricoh's** [2]  8:19
23:18

**right** [7] 9:9       11:12
20:24  27:7  45:24
48:10  55:13
**ROBERT** [1]  1:18
**rolling** [1]  67:23
**roster** [1]  3:6
**rug** [1]  62:8
**Rule** [2] 55:13  55:24
**rules** [2] 16:13  42:20
**runs** [1]  20:5
**sale** [1]  58:23
**Sales** [1] 53:4
**sanctions** [1]  22:1
**says** [7]  9:3      9:8
9:10  9:10  10:2
10:3  11:21  38:25
40:18
**schedule** [1]  66:21
**scheduling** [2]  33:11
34:21
**scope** [10]  10:14
18:18  27:7  29:19
29:21  40:19  41:11
44:13  59:19  66:11
**second** [9]  4:7
5:23  9:14  10:13
12:13  13:1  14:10
33:6  39:17
**Section** [1]  51:18
**see** [11]  14:24  14:25
17:11  17:24  20:12
40:12  48:10  48:12
49:22  62:17  65:4
**seek** [4] 19:22  20:1
20:7  63:2
**seeking** [7]  3:20
7:13  12:22  19:25
51:25  62:13  62:20
**seeks** [1]  52:3
**seem** [3] 12:8     23:9
56:24
**select** [1]  40:9
**selects** [1]  40:9
**self-serving** [1] 26:5
**SEMICONDUCTOR**
[1]     1:7
**send** [3] 19:5  19:7
20:9
**sense** [1]  10:19
**sensitive** [3]  45:2
45:7  45:12
**sent** [10] 4:10      6:6
9:15  9:18  10:3
13:22  16:13  30:17
32:8  64:23
**sentence** [2]  9:3
9:8
**September** [2]  50:15
50:15
**series** [1]  65:14
**served** [5]  5:5
33:7  33:13  51:19
55:14
**service** [1]  48:12
**serving** [1]  17:19

**set** [4]  33:21    34:3
50:15  65:1
**seven** [2]            8:11
9:20
**sever** [1] 5:20
**several** [3]        37:16
42:10  59:1
**shall** [1]  4:14
**Shapiro** [1]    3:21
**share** [1] 11:21    28:5
**shared** [2]         45:13
45:19
**shield** [1]    38:9
**Shindo** [9]         48:5
48:9  48:15  48:18
48:20  49:6  49:9
49:19  50:7
**short** [2] 8:7     34:2
**shortly** [1]       68:10
**show** [5] 5:10    14:23
23:14  50:5  64:15
**shred** [2]         41:15
11:16
**side** [7]  4:21    15:4
15:5  23:13  30:23
52:11  58:13
**sign** [1]  8:21
**signed** [2]         6:6
19:7  19:8
**significant** [1]  18:23
**Simon** [13]       2:5
2:20  8:2   8:13
18:24  19:11  21:17
22:2  22:17  23:16
25:4  27:12  35:7
**simple** [2]       19:12
48:3
**simplify** [2]     30:16
31:23
**simply** [2]       6:9
36:4
**single** [4]       3:5
9:17  27:14  31:16
**sit** [1]  49:24
**situation** [5]    37:10
22:15  50:17  50:18
63:21
**six** [2]  8:11   9:20
**SLEET** [1]        1:16
**software** [2]    33:19
39:1
**sole** [1]  7:11
**solely** [1]       7:14
**someone** [4]     21:21
23:3  37:22  50:7
**sometime** [1]    50:24
**sometimes** [2]   33:13
55:4
**somewhat** [4]    23:10
27:7  28:7  58:14
**sorry** [5] 3:19   14:8
22:11  25:5  29:3
**sort** [8]  11:17  21:19
17:6  20:6  33:4
58:24  66:9  66:17

CondenseIt™                                                           sorted - United

**sorted** [1]         21:15
**sought** [2]         13:8
    34:21
**sounds** [1]         27:19
**source** [3]         38:7
    45:21    45:25
**sourcecode** [5] 42:2
    42:16    44:13    44:25
    45:7
**sourcecodes** [1] 39:5
**sources** [4]        36:19
    36:25    42:13    43:14
**sourcing** [1]       43:13
**space** [1]          49:4
**speak** [1]          60:25
**SPEAKER** [3]     30:1
    30:18    31:8
**speaking** [2]      32:16
    60:25
**special** [1]        22:14
**specific** [5]       25:25
    31:17    37:25    39:22
    56:4
**specifically** [4] 5:11
    5:13    26:9    57:21
**specification** [3]
    59:10    59:10    59:22
**specificity** [1] 25:12
**specifics** [1]      26:10
**spelled** [1]        38:16
**spend** [1]          55:7
**spirit** [2]          12:3
    43:20
**spokesperson** [1]
    2:16
**stands** [3]          65:5
    65:8    65:9
**start** [4]    3:8      3:18
    34:20    62:7
**started** [2]         53:11
    53:16
**starting** [1]        41:5
**starts** [2]          18:22
    22:14
**state** [3] 40:2      40:8
    64:2
**statement** [3]     53:7
    64:2    65:5
**statements** [2]  25:19
    53:4
**States** [10]          1:1
    48:20    49:12    63:3
    63:3    63:8    63:9
    63:22    64:17    65:18
**stating** [1]         11:16
**stay** [2]  34:22    64:8
**step** [1]   25:6
**steps** [9] 39:15    39:15
    39:22    40:8    54:3
    57:2    57:5    65:15
    65:15
**Steven** [2]          1:18
    2:13
**still** [9]   7:3      13:12
    16:2    18:8    25:18

**subject** [3]         7:4
36:25    44:5    44:6
47:20
**stonewalling** [2]
37:8    40:5
**story** [1] 5:3
**strategy** [3]        6:1
31:3    32:2
**strictly** [1]        63:14
**stuff** [7] 46:15    46:18
47:12    53:17    59:7
66:16    67:24
35:16    66:3
**subjects** [1]        7:4
**submission** [1] 26:25
**submit** [2]          9:1
38:8
**submitted** [3]     4:13
8:23    12:18
**subpoena** [15]     5:5
5:14    5:15    17:19
19:17    30:17    30:20
32:17    33:7    33:13
33:14    35:15    35:15
48:11    49:23
**subsequent** [1] 12:3
**subsequently** [2]
8:19    19:4
**subset** [1]          55:1
**substance** [3]     21:9
32:10    63:15
**substeps** [1]      56:20
**successful** [1]    53:21
**such** [3]  6:7      27:20
42:19
**suddenly** [1]        6:8
**sue** [1]   46:23
**sued** [1]  46:23
**suggest** [1]        52:16
**suggesting** [3]    21:1
46:10    66:22
**suit** [1]  56:2
**summary** [3]       62:13
63:11    64:13
**suppliers** [1]      57:18
**support** [3]        29:10
51:22    62:13
**supports** [1]       25:10
**supposed** [2]       8:25
10:16
**Supreme** [1]       27:23
**suspect** [1]        2:15
**sweep** [1]          13:14
**swept** [1]          62:8
**Synopsis'** [1]    46:25
**Synopsys** [25]     33:8
33:8    33:11    33:13
33:19    34:6    34:15
34:24    35:8    35:13
36:14    38:2    38:2
38:10    38:14    42:17
43:8    44:4    44:11
46:9    46:11    46:23
47:5    61:14    61:22
**Synopsys'** [1]   40:1

46:23
**synthesis** [14]    53:24
53:25    54:5    54:12
56:8    57:15    59:9
59:17    59:20    59:21
60:7    60:14    62:21
62:22
**system** [1]         42:25
**systems** [5]         1:8
33:19    39:2    42:20
60:6
**table** [1] 41:1
**tainted** [5]        17:5
17:6    17:7    20:15
21:4
**takes** [4] 42:2    47:15
49:2    66:6
**talks** [1] 10:2    10:14
**tangible** [1]       51:18
**target** [1]         16:22
**Tech** [4] 1:9      56:22
67:9    67:11
**technical** [2]     39:3
39:4
**technology** [1] 18:6
**tedious** [1]        38:25
**teleconference** [6]
8:1    8:14    9:12
9:16    31:2    68:13
**telephone** [7]     1:14
6:9    25:13    26:2
31:6    31:25    32:3
**telling** [2]        16:23
36:2
**ten** [1]   50:2
**Teresa** [2]          2:3
2:21
**term** [1] 67:7
**terminate** [1]     19:6
**terms** [1]          41:12
**testified** [7]      6:13
7:7    11:19    16:16
16:25    25:1    28:25
**testify** [1]        26:9
**testifying** [1]    21:8
**testimony** [12]  51:17
5:20    7:12    7:13
13:6    17:19    20:18
23:14    24:7    24:9
26:15    29:6
**text** [1]  38:19
**thank** [8]           4:6
19:14    30:24    33:1
47:15    62:3    67:17
68:11
**themselves** [1]  60:8
**theoretically** [1]
51:13
**theory** [4]          7:4
38:15    46:20    53:8
55:21    63:1
**thinking** [1]      63:5
**third** [15]         15:23
16:6    27:23    37:3
37:4    37:5    38:2
38:5    39:9    41:18

41:21    43:8    46:11
49:19    50:9
**third-party** [1] 15:19
17:19
**Thomas** [85]        4:9
4:11    4:18    4:25
5:5    5:8    5:10
5:13    5:17    5:18
5:22    5:24    6:2
6:5    6:10    6:13
6:18    7:2    7:6
7:7    7:11    7:19
8:1    8:6    8:13
8:17    9:11    9:14
9:15    9:19    10:10
10:12    11:6    11:9
11:17    11:18    12:15
12:23    12:25    13:3
13:11    13:13    13:24
14:12    14:16    15:8
15:19    16:7    16:13
16:16    16:21    16:24
17:5    17:14    17:16
18:3    18:21    18:22
18:25    19:2    19:13
23:13    23:15    24:25
25:1    25:12    26:9
26:11    26:18    27:10
27:13    27:14    28:5
28:18    28:24    29:23
30:14    30:17    31:1
31:19    31:20    31:22
32:7    32:9    32:20
**Thomas'** [11]     5:10
5:20    8:1    13:5
15:5    23:13    24:7
24:8    28:23    29:5
32:10
**thought** [3]       13:11
25:14    60:4
**thoughts** [1]      67:3
**thousand** [1]     60:16
**thousands** [1]   53:12
**three** [5] 8:7      16:11
25:25    56:13    58:18
**through** [2]       12:12
21:19    31:1    31:5
32:7    32:25    36:11
38:22    49:21    51:18
61:1    61:23
**Thursday** [1]      1:13
**ties** [1]  62:9
**timely** [1]         45:22
**times** [1]          43:9
**timing** [2]         17:21
18:5    18:19
**Title** [1] 57:4
**today** [5]           2:23
16:23    20:1    31:1
46:22
**together** [1]      47:8
47:20
**Tokyo** [1]          49:3
**too** [1]   59:2
**took** [1] 46:16
**top** [1]   46:16
**topic** [4] 33:6    35:21
62:10    62:11

**topics** [1]         13:13
**total** [1] 12:6
**training** [1]       39:5
**transcript** [4]    6:23
12:5    12:11    29:14
**transfer** [1]       46:8
**transmitted** [3] 25:3
25:8    25:21
**tree** [1]  20:21
**trial** [5] 43:2    48:17
49:16    50:5    50:23
**tried** [1] 52:13
**true** [1]  43:10
**truly** [1] 45:21
**try** [4]    3:6      57:10
11:14    63:1
**trying** [13]        13:8
19:22    20:6    21:13
27:19    32:4    33:18
41:22    44:16    46:24
55:16    61:13    64:11
**turn** [2] 36:11    36:11
**turned** [1]         29:10
**tutorials** [1]      39:5
**twice** [3]          34:17
35:3    45:1
**two** [10] 8:6      11:8
11:8    39:15    39:15
46:14    47:12    48:4
48:16    56:13
**two-page** [1]     26:24
**twofold** [2]       12:24
14:9
**type** [4] 8:5      50:23
35:13    45:18
**types** [4]          6:1
8:7    60:9    60:12
**U.S** [3]  27:23    36:14
63:2
**U.S.C** [1]          57:4
**U.S.D.C.J** [1]   2:10
**ultimately** [1]   14:2
53:21
**under** [5]          3:1
10:1    13:15    62:8
64:21
**underlying** [1] 18:7
**underneath** [3] 35:10
36:15    61:25
**understand** [16] 5:8
24:21    28:10    29:19
29:20    29:24    31:10
31:11    36:1    41:23
44:8    45:20    50:18
51:7    56:19    66:14
**understood** [4]  9:22
6:24    25:14    30:22
**unduly** [1]         51:24
52:2
**unequivocally** [1]
11:19
**unidentified** [4]
30:1    30:18    31:8
37:4
**United** [10]         1:1

48:20    49:12    63:2
63:3    63:7    63:9
63:22    64:16    65:18
**universe** [1]         8:12
**unsuccessful** [1]
50:10
**unusual** [2]         63:1
63:4
**up** [12]    6:7         15:25
16:4    17:25    31:2
32:7    35:19    45:15
50:5    50:15    53:20
62:23
**used** [9]    20:16    21:4
39:19    40:9    56:9
56:16    64:22    64:24
65:11
**user** [3]    39:4    42:1
46:15
**using** [12]         39:17
39:23    47:13    54:5
56:8    58:1    58:1
58:10    60:6    60:12
60:14    64:7
**utilization** [3]    33:23
35:24    36:4
**v** [1]         1:6
**vast** [1]    45:10
**verbally** [1]         15:11
**versus** [1]         41:21
**view** [1] 3:21
**voluntarily** [1] 50:14
**W** [2]    1:18    1:21
**wait** [1]    11:5
**waived** [1]         14:1
**Wall** [1] 22:3
**wants** [1]         17:24
**Washington** [1] 1:22
**ways** [2] 45:6    49:21
**week** [4] 11:5    11:5
61:16    61:16
**weeks** [1]         58:18
**weighing** [1]    41:20
**Whetzel** [3]         1:18
2:11    2:12
**White** [1]         2:5
**whole** [4]         13:16
22:5    29:7    58:3
**willing** [9]         34:6
38:13    39:21    44:11
44:12    44:16    49:22
50:14    51:2
**Wilmington** [1] 1:12
**windows** [1]    49:11
**wish** [2] 12:6    57:13
**withheld** [3]    4:11
9:4    10:5
**withhold** [1]    10:5
**within** [1]    64:6
**witness** [8]    5:1
16:2    17:5    18:3
20:15    21:5    21:17
48:17
**witness'** [2]    20:17
21:5

**witnesses** [2]    16:3
21:23
**word** [3] 48:15    49:8
51:9
**words** [6]    15:25
20:15    21:4    24:14
24:16    31:21
**written** [1]    23:12
**year** [1] 51:2
**years** [1] 50:3
**Yesterday** [2]    56:18
57:7
**yet** [3]    21:16    43:9
48:14
**yourselves** [1]    3:22

EXHIBIT 11

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689

Writer's Direct Dial: (212) 896-5471
E-Mail Address: MeilmanE@dsmo.com

September 4, 2003

**Via Facsimile: (650) 463-8400**
 **Confirmation by Mail**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025

Re:    *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
       Our Ref.: R2180.0100

Dear Mr. Kelley:

        In light of our telephone conversation yesterday, I wish to make the following clear as to our position.

        Judge Sleet's Order of July 31, 2003, second paragraph, required Howrey Simon to submit all documents withheld on the basis of attorney-client privilege or work product doctrine to the Court for an *in camera* inspection and to provide the Plaintiff with a detailed privileged log. Since the case was transferred and not dismissed, the Court's Order remains in effect.

        You sought a "clarification" of that aspect of the Court's Order and Judge Sleet considered that issue at the telephone conference of August 28, 2003. Judge Sleet confirmed that all documents dated between June 25 and July 30, 2003 concerning Dr. Thomas (excluding that portion of internal Howrey Simon communications relating to strategy for the conference call with the Court) were contemplated by the Order and must be produced either to Plaintiff or to the Court for *in camera* inspection with a detailed privilege log provided to Plaintiff. Judge Sleet further indicated that he expected all matters raised at the August 28, 2003 conference to be resolved by the end of this week. Accordingly, it is our position that failure to submit the documents for *in camera* inspection and provide us with the detailed privilege log by close of business on Friday, September 5, 2003 will place the Howrey Simon firm in violation of Judge Sleet's Order.

        We appreciate your comment that Judge Jenkins will not have context if you submit this material. We will not object if you advise Judge Jenkins that the reason for the submission is set forth on pages 4-32 of the August 28, 2003 transcript and enclose a copy of the entire transcripts of the August 28 and July 30, 2003 conference (which

*1177 Avenue of the Americas • 41st Floor • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*http://www.dsmo.com*

Christopher L. Kelley, Esq.
September 4, 2003
Page 2

Judge Sleet ordered produced at page 29 of the August 28, 2003 transcript). We will, however, object if you go beyond that statement and submission in any way.

Also during our conversation, you indicated that you believed all remaining objections to Ricoh's discovery requests were resolved by defining the ASIC Product as being the product of a computer aided design process involving logic synthesis but would advise me if that was not correct by close of business today. As you know, Judge Sleet directed us to resolve that matter by tomorrow and therefore we need to address any further problems quickly (assuming any still exist) and you agreed before Judge Sleet to produce all of the documents by the middle of September. Now that the scope of the requests has been resolved, the documents should be produced no late than September 19, 2003. Would you please confirm this will be done.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.

**EXHIBIT 12**

1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, California 94025
   Telephone:  (650) 463-8100
5  Facsimile:  (650) 463-8400

6  Attorneys for Defendants
   AEROFLEX INCORPORATED,
7  AMI SEMICONDUCTOR, INC., MATROX
   ELECTRONIC SYSTEMS, LTD.,
8  MATROX GRAPHICS INC., MATROX
   INTERNATIONAL CORP. and
9  MATROX TECH, INC.

10

11                 UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14  RICOH COMPANY, LTD                )
                                      )
15         Plaintiff,                 )
                                      )
16     vs.                            )   CV 03-04669 MMC
                                      )
17  AEROFLEX INCORPORATED, AMI        )   **NOTICE TO COURT RE ORDER**
    SEMICONDUCTOR, INC., MATROX       )   **REQUIRING DELIVERY OF DOCUMENTS**
18  ELECTRONIC SYSTEMS, LTD.,         )   **OUTSTANDING AT TIME OF TRANSFER**
    MATROX GRAPHICS, INC., MATROX     )   **OF CASE FROM DELAWARE**
19  INTERNATIONAL CORP., and MATROX   )
    TECH, INC.,                       )
20                                    )
           Defendant.                 )
21  _____ )

22       At the time that the present litigation was transferred from the District of Delaware,

23  Defendants' counsel were subject to an outstanding order from Judge Sleet requiring production of

24  certain internal communications of counsel for the Court's *in camera* review.  Judge Sleet's order,

25  made on August 28, the day before he transferred the case to the Northern District, arose from a

26  dispute over whether Defendants had done anything improper in attempting to retain Dr. Don Thomas

27  as a consultant in connection with this litigation.

28

1    Dr. Thomas has highly relevant personal experience in the logic synthesis field and is one of

2    the developers of a prior art system that is believed to be directly anticipatory of the claims of the

3    patents asserted by Ricoh in this case.  Before Ricoh filed the present suit, Dr. Thomas briefly served

4    as a consultant for Ricoh's counsel regarding logic synthesis technology, but he determined not to

5    assist Ricoh with its lawsuit, apparently because he did not believe that the suit was meritorious.[1]

6    When Defendants' counsel sought to retain Dr. Thomas, Ricoh countered with arguments

7    whose purpose was to suppress Dr. Thomas's testimony about the prior art.  Ricoh's initial argument

8    was that, during discussions with Defendants' counsel about the possibility of serving as a consultant,

9    Dr. Thomas had somehow transmitted Ricoh confidential information to Defendants' counsel.

10    In response to this contention, Judge Sleet ordered discovery of the communications of

11    Defendants' counsel with Dr. Thomas.  This discovery included Dr. Thomas's deposition testimony

12    and copies of all correspondence sent between Defendants' counsel and Dr. Thomas.  *See* Campbell

13    Decl. Exs. A & B, respectively.  The correspondence between Dr. Thomas and Defendants' counsel,

14    and Dr. Thomas's oral testimony, demonstrated the impossibility of Ricoh's notion that Dr. Thomas

15    had conveyed Ricoh confidences to Defendants.  The evidence demonstrated, in fact, that Defendants

16    were extremely careful to prevent any disclosure of Dr. Thomas's conversations with Ricoh.

17    After they were given access to the correspondence, Ricoh's counsel then shifted their position

18    to argue that further investigation of the internal communications of Defendants' counsel was required

19    because, they alleged, Defendants' counsel had lied to the Court about what Dr. Thomas had told them

20    about his communications with Ricoh.  The e-mail correspondence and Dr. Thomas's testimony

21    demonstrated, however, that Defendants' counsel did not mislead the Court, but were accurate when

22    they told Judge Sleet that they had inquired into whether Dr. Thomas received confidential information

23    _____

24    [1] Prior to the initiation of the Delaware lawsuit, Dr. Thomas had briefly served as a consultant for Ricoh, advising them on
the substance of various prior art papers.  *See* Campbell Decl. Ex. B at 7, 30.  In March of 2003, Dr. Thomas told Ricoh's

25    attorneys that he would not testify for Ricoh at trial.  *See* Campbell Decl. Ex. B at 26, 30; Ex. A at 44:16–46:4.  Dr. Thomas
explained at his deposition that he had formed opinions about the patents and that those opinions were the basis for "the

26    comment that I made in March to counsel."  *See* Campbell Decl. Ex. A at 61:6 – 62:7.  Since the only conversation with
Ricoh in March that Dr. Thomas has described was his announcement that he would not appear as a witness for Ricoh, it

27    appears that Dr. Thomas concluded that the Ricoh case was not meritorious.  *See* Campbell Decl. Ex. A at 44:16-45:15, Ex.
B at 26.  Ricoh's counsel, who would know, also suggested to Judge Sleet that Dr. Thomas holds unfavorable opinions of

28    their case that have been expressed in confidential communications with Ricoh.  *See* Campbell Decl. Ex. C at 26:9-20.

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS
OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC
                                                                -2-

1  from Ricoh that might create a conflict of interest and that Dr. Thomas had told Defendants' counsel

2  that he had received only published or publicly available documents.

3      Judge Sleet did not have access to any of this discovery at the time of his August 28 Order.[2]

4  Since Ricoh's accusations are unsupported by the evidence, Defendants believe that there is no reason

5  for *in camera* examination of the internal communications of Defendants' counsel regarding retention

6  of Dr. Thomas.  The internal communications of Defendants' counsel are protected by the work

7  product doctrine.  Although Ricoh has argued that Defendants' counsel may have committed fraud on

8  the Court, it has made no factual showing under the crime-fraud exception that the conditions required

9  for breaching these privileges have been met.  See, Ekeh v. Hartford Fire Ins. Co., 39 F. Supp. 2d

10  1216, 1219 (N.D. Cal. 1999) (before reviewing documents in camera, party challenging privilege must

11  establish " 'a factual basis adequate to support a good faith belief by [sic] reasonable person that in

12  camera review [sic] the materials may reveal evidence' that the crime fraud exception applies.") citing

13  United States v. Zolin 491 U.S. 554, 109 S. Ct 2619 (1989).  Nonetheless, the documents that are the

14  subject of Judge Sleet's order accompany this notice in a sealed envelope.  The Defendants

15  respectfully request that the Court only open this sealed envelope if deemed necessary after reading

16  this notice.

17                    **BACKGROUND OF THE DISPUTE**

18      Dr. Thomas was one of the principal developers of the Design Automation Assistant logic

19  synthesis system, which Defendants believe is prior art to the patent that Ricoh is asserting in this case.

20  On March 31, Defendants first contacted Dr. Thomas by email and asked whether he was available to

21  serve as a consultant to the defense.  *See* Ex. B at 1.  Dr. Thomas responded by email and told

22

23

24  _____

25  [2]  We have, therefore, attached all of the relevant materials as Exhibits to the Declaration of Louis Campbell that accompanies this notice.  Exhibit A attaches the August 15, 2003, deposition testimony of Dr. Donald Thomas.  Exhibit B

26  includes the Defendants' production of communications between Defendants' counsel and Dr. Thomas.  Exhibit C contains a transcript of the August 28, 2003 hearing before Judge Sleet.  Exhibit D contains a transcript of the July 30, 2003 hearing

27  before Judge Sleet.  Exhibit E is a letter dated August 5, 2003 from Mr. Kelley to Mr. Hoffman. Exhibit F is an July 22, 2003, facsimile from Mr. Campbell to Mr. Meilman.  Exhibit G is a letter from Mr. Whetzel to Mr. DiGiovanni enclosing a

28  declaration of Mr. Monsey regarding Ricoh's communications with Dr. Thomas.  Hereinafter, all references to Exhibits should be understood to be references to the Exhibits to the Campbell declaration.

HOWREY
SIMON
ARNOLD &
WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS
OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-3-

1  Defendants counsel that he had done related work for Ricoh, and Defendants counsel did not pursue

2  the matter further at that point.  *See* Ex. B at 7, 13.

3        In June, Defendants subpoenaed Dr. Thomas for documents and testimony relating to the

4  Design Automation Assistant prior art system.  Dr. Thomas then contacted Defendants' counsel by e-

5  mail to work out technical issues relating to compliance with the subpoena. See Ex. B at 24.  In

6  subsequent email communications with Defendants' counsel, Dr. Thomas explained that he believed

7  his relationship with Ricoh was at an end, and that he could "be of great help to the defense." *See* Ex.

8  B at 30, 36; *see also,* Ex. A at 44:16-46:4; 46:21-47:17.

9        Wishing, if possible, to obtain Dr. Thomas's assistance, Defendants arranged to retain Dr.

10  Thomas as a consultant.  Immediately after Dr. Thomas had signed a retention letter, Defendants

11  informed Ricoh of the agreement and notified Ricoh's counsel that defendants were withdrawing Dr.

12  Thomas's subpoena.[3]  Up until this point there had been no oral communications of any kind between

13  Defendants' counsel and Dr. Thomas.  By a letter dated July 22, 2003, Ricoh's counsel objected to

14  Defendants' retention of Dr. Thomas as a consultant and asserted that Dr. Thomas was in possession of

15  Ricoh's confidential and privileged information.  Thereafter, in a short five minute conversation, Mr.

16  Louis Campbell, counsel for Defendants, asked Dr. Thomas questions intended to verify that Dr.

17  Thomas had not received from Ricoh any work product information that might prevent him from

18  consulting for Defendants.  This was the only oral communication between Dr. Thomas and

19  Defendants' counsel.  *See* Ex. B at 45-48, 51-52 and July 23 conversation described in cover letter that

20  accompanies Ex. B documents; Ex. E.  Defendants' counsel was careful not to elicit and cautioned Dr.

21  Thomas not to disclose the substance of any communications with Ricoh or even an identification of

22  any documents received by Dr. Thomas but only the types of documents and whether they were public

23  or not. See Ex. B at 51.  Dr. Thomas responded by email that he had received only public, non-

24  confidential documents. *See* Ex. B at 52.

25  _____

26  [3]    Unfortunately, a mistake was made and Ricoh's counsel had not been immediately supplied with a copy of this
deposition notice and subpoena.  Ricoh has suggested that there was a nefarious motive for this accident, but this is contrary
27  to the evidence.  Ricoh first learned about the subpoena when Defendants' counsel referred to it in this subsequent
communication with Ricoh's counsel withdrawing Dr. Thomas's deposition.  Had Defendants' counsel intended to conceal
28  the subpoena it would not make any sense for them to reveal the existence of the subpoena in a subsequent letter. See Ex. F.

HOWREY
SIMON
ARNOLD &
WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS                    -4-
OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

1    Ricoh strenuously objected to Defendants' retention of Dr. Thomas and asked the Court for a

2    hearing on the matter, which was held on July 30.  During the hearing, Ricoh represented that it had

3    disclosed, to Dr. Thomas, counsel's opinions and litigation strategy and Ricoh's counsel stated that

4    they had a declaration to that effect.  Ricoh's counsel stated that they believed that Dr. Thomas had a

5    conflict of interest and they were concerned that their confidential information had been communicated

6    to Defendants' counsel. At the end of the hearing, Judge Sleet ordered Defendants' counsel to produce

7    copies of their correspondence with Dr. Thomas and ordered Dr. Thomas to appear for a deposition

8    limited to the subject matter of his dealings with Defendants' counsel.  The correspondence was

9    produced and Dr. Thomas's testimony was taken, and both demonstrated that there had been no

10    communication of any Ricoh confidences from Dr. Thomas to Defendants' counsel.  On August 20, six

11    days after Dr. Thomas's deposition, Ricoh's counsel provided to defendants' counsel, for the first time,

12    the Declaration of Christopher A. Monsey regarding Ricoh's counsel's relationship and

13    communications with Dr. Thomas.

14    Thereafter, hoping to put the matter to rest, Defendants' counsel decided they would not use

15    Dr. Thomas as a consultant and would instead take his deposition as a fact witness.  Ricoh, however,

16    raised the issue with the Court again during a telephone conference held on August 28, in which a

17    variety of different discovery issues were addressed.  On this occasion, Ricoh asked the Court to

18    conduct an *in camera* inspection of Defendants' internal communications regarding Dr. Thomas's

19    retention.  Ricoh told Judge Sleet that there was a contradiction between what Defendants' counsel had

20    told the court in the July 30 hearing about counsel's conversations with Dr. Thomas and what Dr.

21    Thomas had testified about those conversations.  The record demonstrates, however, that what

22    Defendants' counsel said on July 30 was perfectly consistent with Dr. Thomas's later testimony

23    regarding those communications.  *Compare* Ex. D at 14:14-15:21 with Ex. A at 70:18-71:15, 73:23-

24    76:15 and Ex. B at 51-52.  Unfortunately, Judge Sleet did not have access to any of the documentary or

25    testimonial evidence.  Acting on Ricoh's characterization of the evidence, he granted Ricoh's request

26    and ordered Defendants' counsel to produce its internal communications for *in camera* review.  The

27    very next day, before Defendants had an opportunity to present the requested documents, the Delaware

28    court transferred the case to this District.

HOWREY
SIMON
ARNOLD &
WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS        -5-
OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

**<u>DR. THOMAS'S TESTIMONY IS ENTIRELY CONSISTENT WITH THE
DOCUMENTARY EVIDENCE AND WITH DEFENDANTS' COUNSEL'S
STATEMENTS</u>**

The documentary materials produced and the deposition testimony of Dr. Thomas are

consistent with Defendants' assertion that Defendants did not receive any confidential information

from Dr. Thomas.  In addition, Dr. Thomas's testimony, rather than contradicting what Defendants'

counsel told Judge Sleet, is entirely consistent with it.

**A.    <u>Defendants did not receive any confidential information from Dr. Thomas.</u>**

The communications between Defendants' counsel and Dr. Thomas demonstrate that there was

nothing improper or untoward in Defendants' counsel's communications with Dr. Thomas.

As described above, Defendants' counsel did not have any substantive communications with

Dr. Thomas. In July of 2003, before Defendants' counsel attempted to use Dr. Thomas in a consulting

capacity, they inquired into what types of materials he had received from Ricoh to determine whether

Dr. Thomas had received attorney work product or other confidential information about Ricoh's case

strategy.  Dr. Thomas told counsel that he had received only non-confidential material from Ricoh's

attorneys.  *See* Ex. B at 52; *see also,* Summary of July 23 conversation contained in August 5 letter

from Mr. Kelley to Mr. Hoffman in Ex. E.  When Ricoh's counsel questioned Dr. Thomas about this

during the deposition, Dr. Thomas explained that there was nothing confidential in what he had

communicated to Ricoh:

> I feel that my work for Ricoh was in patent analysis.  I taught them certain things as if they had
> come to a classroom and I taught them something.  They would ask a question, I would explain
> something.  If somebody else asked me those same questions, as people have done over the
> years and people will over other years, I would feel free to answer those questions.

Ex. A at 35:2-8.  *See also,* Ex. A at 70:18-71:15.

Dr. Thomas testified that Defendants' counsel took pains to avoid eliciting any information

about the substance of Dr. Thomas's communications with Ricoh, and Dr. Thomas was careful not to

provide any such information. *See* Ex. A at 72:11–76:15.

**B.    <u>Defendants' representations to Judge Sleet were consistent with Dr. Thomas's testimony.</u>**

Ricoh's justification for asking the Court to do an *in camera* review of Defendants' internal

communication was its allegation that Defendants' counsel must have misled the Delaware court when

1  counsel told the court that Dr. Thomas had told them that he had not received any confidential

2  information from Ricoh. *See* Ex. C at 28:15–29:16. This allegation, however, is unfounded.

3        Defendants' counsel told Judge Sleet that they had inquired into whether Dr. Thomas had

4  received anything confidential from Ricoh or talked to Ricoh about case strategy. *See* Ex. D at 14:14 –

5  16:3. Defendants have described that these questions were asked in the July 23 telephone conference.

6  *See* Summary of July 23 conversation contained in August 5 letter from Mr. Kelley in Ex. E. Dr.

7  Thomas's testimony was perfectly consistent with this account. He testified that Defendants' counsel

8  had specifically asked whether he had received confidential information and he had responded that the

9  information he had received was a collection of public, non-confidential documents. *See* Ex. A at

10  70:18–71:15, 72:11–73:7, 75:8–75:25; Ex. B at 51-52. Defense counsel assumed that, if Dr. Thomas

11  believed that he had received information about case strategy, he would have so stated in response to

12  Defendants' counsel's question of whether he had received any confidential information from Ricoh.

13  There was no opportunity for Defendants' counsel to confirm this fact or make any follow-up inquiry

14  since Judge Sleet ordered at the July 30 hearing that Defendants' counsel should have no further

15  contact with Dr. Thomas until the matter was resolved. Dr. Thomas did testify that he had never told

16  Defendants' counsel that he believed that he received "confidential information" in any of his

17  conversations with Ricoh. *See* Ex. A at 76:9-12. Far from being inconsistent, Dr. Thomas's testimony

18  corroborates what Defendants' counsel told the Delaware court.[4]

19        Despite Ricoh's assertions, Defendants' counsel did not suggest to Judge Sleet that Dr. Thomas

20  had never discussed the merits of Ricoh's patent with Ricoh – what Defendants' counsel argued was

21  that the possibility that Dr. Thomas had expressed opinions about prior art to Ricoh's counsel did not,

22  in itself, create a conflict of interest that would disqualify Dr. Thomas from serving as a consultant to

23  Defendants. *See* Ex. D at 19:16 – 20:2.

24

25

26

27  [4] Dr. Thomas did testify that he had "confidential" communications with Ricoh, but explained that he regarded the identification of any materials received from Ricoh as confidential, regardless of whether the materials received were public or not. Dr. Thomas did not disclose to Defendants' counsel the identification of the materials he received from Ricoh. *See*

28  Ex. A at 75:8-25.

HOWREY
SIMON
ARNOLD &
WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS
OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-7-

1

## CONCLUSION

2          Defendants do not believe that there is any reason for further inquiry into this matter.

3   Defendants' counsel are supplying to the Court, with this notice a copy of the documents requested by

4   Judge Sleet.  A copy of this notice, and the accompanying declaration of Louis Campbell, has been

5   served on counsel for Ricoh, but the documents provided for *in camera* review contain attorney work

6   product and have not been given to Ricoh's counsel.

7

8   Dated:  October 30, 2003                    Respectfully submitted,

9                                               HOWREY SIMON ARNOLD & WHITE, LLP

10

11                                       By:   /s/ Christopher L. Kelley
12                                             Teresa M. Corbin
                                               Christopher Kelley
13                                             Thomas Mavrakakis
                                               Erik K. Moller
14
                                               Attorneys for Defendants
15                                             AEROFLEX INCORPORATED,
                                               AMI SEMICONDUCTOR, INC.,
16                                             MATROX
                                               ELECTRONIC SYSTEMS, LTD.,
17                                             MATROX GRAPHICS INC., MATROX
                                               INTERNATIONAL CORP. and
18                                             MATROX TECH, INC.

19

20

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

NOTICE TO COURT RE ORDER REQUIRING DELIVERY OF DOCUMENTS
OUTSTANDING AT TIME OF TRANSFER OF CASE FROM DELAWARE
CV 03-04669 MMC

-8-