Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>            Plaintiff,<br><br>    vs.<br><br>AEROFLEX INCORPORATED, et al.,<br><br>        Defendants. | **Case No.  CV 03-04669 MJJ**<br><br>**DECLARATION OF JONATHAN WEISSGLASS IN SUPPORT OF PLAINTIFF RICOH'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

I, Jonathan Weissglass, hereby declare as follows:

1.    I am a member in good standing of the State Bar of California and am a partner in the law firm of Altshuler, Berzon, Nussbaum, Rubin & Demain, LLP, local counsel for Plaintiff Ricoh Company, Ltd. ("Ricoh").

2.    Attached hereto as Exhibit 1 is a true and correct copy of Ricoh's First Set of Document Requests to All Defendants.

3.    Attached hereto as Exhibit 2 is a true and correct copy of Ricoh's Second Set of Document Requests to All Defendants.

4.    Attached hereto as Exhibit 3 is a true and correct copy of a letter dated 8/11/03 from E. Meilman to C. Kelley.

5.    Attached hereto as Exhibit 4 is a true and correct copy of a letter dated 8/26/03 from E. Meilman to E. Moller.

6.    Attached hereto as Exhibit 5 is a true and correct copy of the Transcript of the 8/28/03 Hearing.

7.    Attached hereto as Exhibit 6 is a true and correct copy of a letter dated 8/28/03 from G. Hoffman to T. Corbin.

8.    Attached hereto as Exhibit 7 is a true and correct copy of a letter dated 9/4/03 from E. Meilman to C. Kelley.

9.    Attached hereto as Exhibit 8 is a true and correct copy of correspondence dated 9/8/03 and 9/10/03 between C. Kelley and E. Meilman.

10.    Attached hereto as Exhibit 9 is a true and correct copy of Defendants' Initial Disclosure Statement.

11.    Attached hereto as Exhibit 10 is a true and correct copy of 30(b)(6) Notices of depositions served (9/25/03) on each of the ASIC Defendants (Aeroflex Inc., AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp. and Matrox Tech, Inc.).

12.    Attached hereto as Exhibit 11 is a true and correct copy of a letter dated 10/3/03 from C.Kelly to E. Meilman.

13.    Attached hereto as Exhibit 12 is a true and correct copy of a letter dated 10/23/03 from E. Meilman to C. Kelley.

14.    Attached hereto as Exhibit 13 is a true and correct copy of Defendant Aeroflex Inc.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

15.    Attached hereto as Exhibit 14 is a true and correct copy of Defendant AMI Semiconductor, Inc.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

16.    Attached hereto as Exhibit 15 is a true and correct copy of Defendant Matrox Tech, Inc.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

17.    Attached hereto as Exhibit 16 is a true and correct copy of Defendant Matrox Electronic Systems Ltd.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

18.    Attached hereto as Exhibit 17 is a true and correct copy of Defendant Matrox Graphics Inc.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

19.    Attached hereto as Exhibit 18 is a true and correct copy of Defendant International Corp.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

20.    Attached hereto as Exhibit 19 is a true and correct copy of a letter dated 7/9/03 from E. Meilman to E. Moller.

21.    Attached hereto as Exhibit 20 is a true and correct copy of a letter dated 7/10/03 from E. Moller to E. Meilman.

22.    Attached hereto as Exhibit 21 is a true and correct copy of a letter dated 8/26/03 letter from F. DiGiovanni to Judge G. Sleet.

23.    Attached hereto as Exhibit 22 is a true and correct copy of Defendant Aeroflex Inc.'s Answers to Ricoh's First Set of Document Requests to All Defendants.

24.    Attached hereto as Exhibit 23 is a true and correct copy of Defendant AMI Semiconductor, Inc.'s Answers to Ricoh's First Set of Document Requests to All Defendants.

25.    Attached hereto as Exhibit 24 is a true and correct copy of Defendant Matrox Electronic Systems Ltd.'s Answers to Ricoh's First Set of Document Requests to All Defendants.

26.    Attached hereto as Exhibit 25 is a true and correct copy of Defendant Matrox Graphics Inc.'s Answers to Ricoh's First Set of Document Requests to All Defendants.

27.    Attached hereto as Exhibit 26 is a true and correct copy of Defendant Matrox International Corp.'s Answers to Ricoh's First Set of Document Requests to All Defendants.

28.    Attached hereto as Exhibit 27 is a true and correct copy of Defendant Matrox Tech, Inc.'s Answers to Ricoh's First Set of Document Requests to All Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

29.    Attached hereto as Exhibit 28 is a true and correct copy of a Declaration of Paul Kelley.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of November, 2003, at San Francisco, California

_____/s/_____

Jonathan Weissglass

J. WEISSGLASS DECLARATION IN SUPPORT OF RICOH'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 03-103-GMS |
| v. | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST SET OF DOCUMENT
## REQUESTS TO ALL DEFENDANTS

**PLEASE TAKE NOTICE** that plaintiff demands, pursuant to Rule 34 of the Federal

Rules of Civil Procedure, that the defendants produce documents pursuant to the following

document requests on the 30th day after service of these requests.

## DEFINITIONS AND INSTRUCTIONS

(1) **Communication.** The term "communication" means the transmittal of

information (in the form of facts, ideas, inquiries or otherwise).

(2) **Document.** The term "document" is defined to be synonymous in meaning and

equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including,

without limitation, electronic or computerized data or data compilations. A draft or non-identical

copy is a separate document within the meaning of this term.

1

(3)  **Identify (with respect to persons).**  When referring to a person, "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.  In any response where more than one individual is identified, identify which three individuals have the most knowledge or information concerning the subject and among those three individuals, identify the individual having the most knowledge and the individual having the least knowledge concerning the subject.

(4)  **Identify (with respect to documents).**  When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5)  **Parties.**  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, partners, corporate parent, subsidiaries or affiliates. Where a discovery request does not request a response limited to a specific named defendant, the request shall be construed as seeking knowledge and information concerning all of the defendants named in the caption of this discovery request.

(6)  **Person.**  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7)  **Concerning.**  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) **All/Each.** The terms "all" and "each" shall be construed as all and each.

(9) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

(10) **Number.** The use of the singular form of any word includes the plural and vice versa.

(11) **Privilege.** Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

    (a) Identify the nature of the privilege (including but not limited to work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

    (b) Provide the following information:

        (1) For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and (v) identify any other person to whom the document was displayed or to whom any of its contents were revealed;

3

(2)  For oral communications:  (i) the name of the person making the

communication and the names of persons present while the communication was

made and, where not apparent, the relationship of the persons present to the

person making the communication; (ii) the date and place of communication; (iii)

the general subject matter of the communication and (iv) identify any other person

to whom any aspect of the communication was revealed.

(12)  **Destroyed Documents.**  Where a document has been destroyed or alleged to

have been destroyed, state the date thereof and the reason for its destruction, identify each person

having knowledge of its destruction, identify each person responsible for its destruction, provide

the information set forth in paragraph (11)(b)(1) above and describe the content of the document

to the extent possible.

(13)  **Patent-in-suit.**  As used herein, "patent-in-suit" or "'432 patent" refers to

United States Letters Patent Number 4,922,432.

(14)  **ASIC.**  As used herein, "ASIC" refers to any integrated circuit that is designed

for a specific application, including but not limited to integrated circuits that are referred to or

otherwise denoted in defendant's communications as an "application specific integrated circuit"

or "ASIC," and other integrated circuits designed to perform a desired function in a specific

application, but not including standard, general purpose integrated circuits such as

microprocessors and memory chips.

(15) **ASIC PRODUCT.**  The term "ASIC Product" refers to any integrated circuit

product or item that is designed for a specific application, and/or a product or item that includes

4

such an integrated circuit product that is manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(16) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes which have been used by, on behalf of, or otherwise at the direction of defendant on or after May 1, 1990 (unless another date is specifically identified) in the computer-aided design of any ASIC Product (as defined above) designed, developed, manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(17) **Limitations.** Each discovery request shall be construed independently and no discovery request shall limit the scope of any other discovery request.

(18) **Supplementation.** Each defendant is reminded of the continuing duty to supplement discovery responses set forth in rule 26(e) of the Federal Rules of Civil Procedure.

(19) **Design.** The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

RLF1-2606658-1

## DOCUMENT REQUESTS

Document Request No. 1:  Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Document Request No. 2:  With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Document Request No. 3:  Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

6

Document Request No. 4:  Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Document Request No. 5:  Produce all documents concerning the conception, design, development, manufacture or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

Document Request No. 6:  Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Document Request No. 7:  Produce all patents and patent applications, whether U.S. or foreign, and whether issued, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Document Request No. 8:  Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Document Request No. 9:  Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

Document Request No. 10:  Produce all documents concerning Synopsys Inc.

7

<u>Document Request No. 11:</u>  Produce all documents concerning Build Gates, Build Gates

Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC

ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license

and/or use thereof by defendant.

<u>Document Request No. 12:</u>  Produce all documents concerning any cost savings (actual or

potential) as a consequence of licensing or using Build Gates, Build Gates Extreme ("BGE"),

Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any

other product of Cadence Design Systems, Inc.

<u>Document Request No. 13:</u>  Produce all documents concerning Cadence Design Systems, Inc.

<u>Document Request No. 14:</u>  Produce all documents concerning the annual dollar and unit volume

of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each

of defendant's ASIC Products.

<u>Document Request No. 15:</u>  Produce all documents concerning the annual gross profits (gross

receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit

(gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by

defendant of defendant's ASIC Products, including how defendant defines each item of cost

deducted from gross revenue to calculate gross and net profits.

<u>Document Request No. 16:</u>  Produce all documents concerning the manufacture of each ASIC

Product designed using an ASIC Method.

Document Request No. 17:  Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Document Request No. 18:  Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

Document Request No. 19:  Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

Document Request No. 20:  Produce all documents concerning the validity of the patent-in-suit.

Document Request No. 21:  Produce all documents concerning the enforceability of the patent-in-suit.

Document Request No. 22:  Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

Document Request No. 23:  Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

Document Request No. 24:  Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

Document Request No. 25:  Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

9

Document Request No. 26: Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Document Request No. 27: Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

Document Request No. 28: Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the Untied States or elsewhere.

Document Request No. 29: Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

Document Request No. 30: Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

Document Request No. 31: Produce all documents concerning any infringement of the patent-in-suit by anyone.

Document Request No. 32: Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

10

<u>Document Request No. 33:</u>  Produce all documents concerning all proprietary or third party

hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in

the practice of an ASIC Method, including technical reference manuals, user manuals,

installation manuals, training manuals, tutorials, overviews, summaries, advertising material,

contracts, proposals, licenses, purchase agreements, indemnification agreements, and

communications with third parties.

<u>Document Request No. 34:</u>  Produce all documents concerning the patent-in-suit.

<u>Document Request No. 35:</u>  Produce all documents relating to any indemnification or other hold-

harmless agreement given to you (or by you) with respect to the patent-in-suit.

<u>Document Request No. 36:</u>  Produce all documents identified or relied upon in response to

Plaintiff's First Set of Interrogatories.

<u>Document Request No. 37:</u>  Produce all documents relied upon or referred to in preparing the

response to the Complaint.

<u>Document Request No. 38:</u>  Produce all documents concerning defendant's affirmative defense

of laches.

<u>Document Request No. 39:</u>  Produce all documents referring to plaintiff.

<u>Document Request No. 40:</u>  Produce all documents relating to your first knowledge of the patent-

in-suit.

11

<u>Document Request No. 41:</u>  Produce all documents relating to communications, whether to or from suppliers or customers or any other person, that relate to the subject matter of the patent-in-suit.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
    OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
    OSHINSKY LLP
1177 Avenue of the America
New York, New York  10036
(212) 896-5471

12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICOH COMPANY, LTD.,                      )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )    C.A. No. 03-103-GMS
                                          )
AEROFLEX INCORPORATED, AMI                )
SEMICONDUCTOR, INC., MATROX               )
ELECTRONIC SYSTEMS LTD.,                  )
MATROX GRAPHICS INC., MATROX              )
INTERNATIONAL CORP. and                   )
MATROX TECH, INC.                         )
                                          )
        Defendants.                       )

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that true and correct copies of Plaintiff's First Set of

Document Requests to all Defendants were served on May 30, 2003 on counsel of record in the

manner indicated:


**VIA HAND DELIVERY**
Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1220 Market Street
P. O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants


**VIA FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY  LLP
1177 Avenue of the America
New York, New York  10036
(212) 896-5471

Dated:  May 30, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May 2003, true and correct copies of the foregoing were caused to be served on counsel of record at the following addresses as indicated:

**BY HAND DELIVERY:**
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz, LLP
1220 Market Street
P.O. Box 2207
Wilmington, Delaware  19899
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Steven J. Fineman (#4025)

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY LTD., | ) | |
| | ) | |
| Plaintiff | ) | Civil Case No. 03-103-GMS |
| | ) | |
| v. | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., MATROX | ) | |
| GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

**PLEASE TAKE NOTICE** that plaintiff demands, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that the defendants produce documents pursuant to the following document requests on the 30th day after service of these requests.

## DEFINITIONS AND INSTRUCTIONS

(1) **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2) **Document.** The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data or data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

(3) **Identify (with respect to persons).** When referring to a person, "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

1

Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In any response where more than one individual is identified, identify which three individuals have the most knowledge or information concerning the subject and among those three individuals, identify the individual having the most knowledge and the individual having the least knowledge concerning the subject.

(4) **Identify (with respect to documents)**. When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5) **Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, partners, corporate parent, subsidiaries or affiliates. Where a discovery request does not request a response limited to a specific named defendant, the request shall be construed as seeking knowledge and information concerning all of the defendants named in the caption of this discovery request.

(6) **Person**. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7) **Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) **All/Each**. The terms "all" and "each" shall be construed as all and each.

(9) **And/Or**. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

2

(10) **Number**. The use of the singular form of any word includes the plural and vice versa.

(11) **Privilege**. Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

(a) Identify the nature of the privilege (including but not limited to work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(b) Provide the following information:

(1) For documents: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and (v) identify any other person to whom the document was displayed or to whom any of its contents were revealed;

(2) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; (iii) the general subject matter of the communication and (iv) identify any other person to whom any aspect of the communication was revealed.

3

(12) **Destroyed Documents**. Where a document has been destroyed or alleged to have been destroyed, state the date thereof and the reason for its destruction, identify each person having knowledge of its destruction, identify each person responsible for its destruction, provide the information set forth in paragraph (11)(b)(1) above and describe the content of the document to the extent possible.

(13) **Patent-in-suit**. As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

(14) **ASIC**. As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise denoted in defendant's communications as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

(15) **ASIC PRODUCT**. The term "ASIC Product" refers to any integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(16) **ASIC Method**. As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes which have been used by, on behalf of, or otherwise at the direction of defendant on or after May 1, 1990 (unless another date is specifically identified) in the computer-aided design of any ASIC Product (as defined above) designed, developed, manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

4

(17) **Limitations**. Each discovery request shall be construed independently and no discovery request shall limit the scope of any other discovery request.

(18) **Supplementation**. Each defendant is reminded of the continuing duty to supplement discovery responses set forth in rule 26(e) of the Federal Rules of Civil Procedure.

(19) **Design**. The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

## DOCUMENT REQUEST

Document Request No. 1:    Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &  OSHINSKY LLP
1177 Avenue of the America
New York, New York 10036
(212) 896-5471
(212) 997-9880

Dated: July 2, 2003

5

RLF1-2620061-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC. | ) | |
| | ) | |
|     Defendants. | ) | |

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that true and correct copies of Plaintiff's Second Set of

Document Requests were served on July 2, 2003 on counsel of record in the manner indicated:

**VIA HAND DELIVERY**
Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1220 Market Street
P. O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
1177 Avenue of the America
New York, New York  10036
(212) 896-5471

Dated:  July 2, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July 2003, true and correct copies of the foregoing

were caused to be served on counsel of record at the following addresses as indicated:

**BY HAND DELIVERY:**
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz, LLP
1220 Market Street
P.O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorneys for AMI Semiconductor, Inc.

Steven J. Fineman (#4025)

**EXHIBIT 3**

D I C K S T E I N   S H A P I R O   M O R I N   *&*   O S H I N S K Y   L L P

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

August 11, 2003

**BY FACSIMILE: (650) 463-8400**
**CONFIRMATION BY MAIL**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025

Re: Defendants' Responses to Plaintiffs' First Document Requests
  Civil Action No. 03-103-GMS
  Our Ref.:  R2180.0100

Dear Mr. Kelley:

  The purpose of this letter is to attempt to resolve the Defendants' objections to the various of the first document requests by Plaintiff before taking this matter to the Court.  You should consider this letter as well as any subsequent discussions that may be had as being pursuant to D.R. 7.1.1.

  Dealing first with the General Objections 1-3, please advise us when the logs will be forwarded.

  General Objection No. 4 asserts that documents are confidential to a third party, which is not a valid reason to object.  The burden is on the defendants to seek protection from the Court.   Nevertheless and as a compromise, we will for the time being accept an identification of any third party (other than Synopsys) involved as well as a sufficient identification of any involved documents to identify the documents in a document subpoena in lieu of actual production of the document, provided you advise us of your agreement to do so within 5 business days and we are given such material by August 20, 2003.   As to Synopsys, by its own admission it is already involved in this case and the defendants cannot hide behind any alleged requirement for its consent.

  General Objection 5 is not valid in that only documents relevant to the issues in this case have been sought.

  General Objection 6 makes no sense in that a reasonable search is all that is required.  The term "reasonable", however, will not excuse a sloppy or cursory search.

  General Objection 7  is not valid.  The fact that documents may be obtainable from some other source does not excuse production of those documents.  See, e.g., *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024-25 (Fed. Cir. 1986)

Christopher L. Kelley, Esq.
August 11, 2003
Page 2

General Objection 8 makes no sense in that plaintiff only seeks documents in the possession, custody or control of defendants.

As to General Objection 9, we are willing, for the present, to limit the time frame as being from 1996 to the present unless the document relates to prior art. For prior art documents, this objection is not valid.

Aeroflex and AMI General Objections 10 and 11 (and the corresponding Matrox General Objections 12 and 13) make no logical sense. No request seeks a legal conclusion or go beyond the Federal Rules or the Local Rules.

Aeroflex and AMI General Objection 12 (and the corresponding Matrox General Objection 14) is invalid since the requests advanced fully comply with the Federal Rules and the Local Rules.

Aeroflex and AMI General Objection 13 (and the corresponding Matrox General Objection 15) is invalid since Rule 33(a) concerns interrogatories, not documents.

With regard to Aeroflex and AMI General Objection 14 (and the corresponding Matrox General Objection 16) as to duplicative requests, we agree that any given document need only be produced once and you can incorporate other interrogatory answers by reference.

Aeroflex and AMI General Objection 15 (and the corresponding Matrox General Objection 17) is nonsense. Discovery of defendants' positions is one of the very purposes of discovery. That Ricoh has not advanced a claim construction or contentions may be a proper objection under California rules but we are operating under Delaware rules and that is not a proper objection under the applicable rules.

Aeroflex and AMI General Objection 16 (and the corresponding Matrox General Objection 18) is likewise nonsense. None of the document requests seek documents concerning Ricoh's (or any other party's) contentions.

As to the Aeroflex and AMI General Objection 17 and the Matrox General Objections 10, 11 and 19 based on foreign activity, the provisions of 35 U.S.C. § 271(g) makes those objections invalid.

Turning to the Specific Objection Nos. 1 and 2, no obligation beyond the Federal Rules is being imposed and the plaintiff is entitled to the original of any document, especially those in electronic format. However, we will accept copies of paper documents subject to the originals being available for inspection if we believe that is appropriate.

Specific Objection No. 3 is on the grounds that the term "defendant" includes people other then present employees and agents. However, if such people are under the control of defendant, there is no reason to exclude them. The objection is not valid.

Christopher L. Kelley, Esq.
August 11, 2003
Page 3

Specific Objection No. 4 asserts that the information to be included on a privilege log imposes obligations beyond those imposed by the Federal or local rules. It does not and is only designed to provide sufficient information to determine if the claim of privilege is valid or subject to challenge.

The Specific Objections 3-5 to Definition/Instructions 14-16 are not valid and the definitions are proper. ASIC is defined in the same way as in column 1 of the patent, and the definition of ASIC Product and ASIC Method are tied to computer aided design of ASICs. The definitions are appropriate and not overly broad in light of the patent-in-suit. At a minimum, the definitions cover the defendant' use of Design Compiler and Behavior Compiler.

Moreover, such generalized objections are not proper. See, <u>Walker v. Lakewood Condominium Owners Assoc.</u>, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (objection to discovery request as being "overly broad, burdensome, oppressive and irrelevant" was a "[b]oilerplate, generalized objection that . . . [was] inadequate and tantamount to not making any objection at all"); (citing <u>Josephs v. Harris Corp.</u>, 677 F.2d 985, 992 (3d Cir. 1982)). See also <u>Redland Soccer Club, Inc. v. Department of the Army</u>, 55 F.3d 827, 856 (3d Cir. 1995)("In Josephs, we stated 'the mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory.' *Josephs, 677 F.2d at 992* (internal quotations omitted). Instead, 'the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.' Id. (citations, internal ellipses and internal quotations omitted)."

Defendant Matrox Tech has avoided providing documents to all requests other than number 38 on the grounds that it "has ceased operations and no longer has any documents in its direct possession, custody, or control". That is not a valid ground to refuse to provide documents. Indirect possession, custody, or control is still possession, custody, or control. In today's litigious society, it is not conceivable that Matrox Tech would divest itself of the ability to look at its own records. The documents should be provided immediately. Please advise us when we will receive those documents and the documents promised in answer to Request 38.

Please advise us when we will receive the documents promised in answer to Requests 1, 7, 20, 21,23-27, 32, 34, 36,38, 39 and 40. These should be produced no later than August 15, 2003.

Document Request No. 2 is proper and the refusal to respond is improper. Plaintiff is entitled to any documents which any Defendant has concerning any denial of personal jurisdiction and the fact that a company is or is not a Delaware Corporation is irrelevant to the objection.

The reasons that the objections set forth in Document Request Nos. 3 through 5 are not valid has been set forth above. The capabilities, features, functions, etc., of those design systems are very relevant to the issue of patent infringement. While Ricoh has not asserted that any particular equipment by itself constitutes patent infringement,

Christopher L. Kelley, Esq.
August 11, 2003
Page 4

what the defendants do with such equipment is clearly relevant to a determination of whether or not there is patent infringement. The additional objection by the Matrox defendants based on work in Canada is invalid because 35 U.S.C. § 271(g) explicitly contemplates activity outside the U.S. constituting patent infringement. Documents must be produced.

As to Document Request No. 6, the Defendants have stated that they know of anticipatory prior art. That and any other prior art presently known must be produced now.

The objection to Document Request No. 7 is not valid. The patents and patent applications are not privileged nor does the Request call for construction of the claims of the patent or a legal conclusion nor constitute contention discovery.

The objection to Document Request Nos. 8 to 10 is nonsense. How is Design Compiler or other products of Synopsis "vague"? The assertion that the discovery has no relation to any infringement allegations is completely at odds with the basis for the Motion to Transfer in which the defendants told the Court that the lawsuit is based on allegations that the Defendants use Design Compiler and infringe the patent.

Document Request Nos. 11 to 13 are not vague. Whether a Defendant used or considered using the identified items is clearly relevant to the issue of infringement.

Document Request Nos. 14, 15 and 17 to 19 are proper and clearly relevant to calculation of damages. We will, however, agree to limit the request to sales in the U.S. and/or products imported into the U.S.

Document Request No. 16 is proper. Plaintiff is entitled to any documents showing how a Defendant has made its products in order to show there was patent infringement.

The response to Document Request No. 20 is non-responsive. What was requested was all documents "concerning" the validity of the patent and that language encompasses both validity and invalidity. You cannot limit production to documents you contend are relevant to invalidity only.

The response to Document Request No. 28 is not acceptable. The patent applications must be produced whether or not they contain matter "not described in other documents produced by Defendant". The patent applications are not privileged.

The objections to Request 29 have been shown to be invalid above. The documents must be produced.

The objection to Request 30 is not valid. At the very least, a privilege log is required now even if a decision about reliance is not made until later.

Christopher L. Kelley, Esq.
August 11, 2003
Page 5

Document Request No. 31 is clearly proper. If a document discusses the issue of whether or not there is infringement or the topic of infringement, then it is clearly relevant to the issues in this case.

Documents concerning proprietary or third party hardware or software used by or on behalf of or otherwise under the direction of Defendant in the practice of an ASIC Method (Document Request No. 33) are clearly relevant and must be produced.

Please explain what in Document Request No. 35 is "vague and ambiguous" or could constitute a legal conclusion or contention discovery. The Federal Rules already call for automatic disclosure of some documents relating to payments by others (insurance) and asking for any others is clearly proper. Indeed, Synopsys has already represented to a court in California that it is indemnifying the Defendants in this case and production of documents relating to that event should be produced..

What documents were relied on or referred to in preparing the response to the Complaint (Document Request No. 37) is hardly vague nor ambiguous. They must be produced unless privileged and in that instance, must be itemized in a log.

Please advise us whether or not the objections to production are going to be withdrawn in light of the foregoing by August 14, 2003 so that we will know whether or not to seek assistance of the Court. We also propose that we discuss these matters in a telephone conference on August 15, 2003.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:    Teresa Corbin, Esq. (via fax)
       Francis DiGiovanni, Esq., (via fax)
       Gary Hoffman, Esq.
       Kenneth Brothers, Esq.

EXHIBIT 4

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689

August 26, 2003

**Via Fax**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025-3434

Re:    *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
       Civil Action No. 03-103-GMS
       Our Ref.: R2180.0100

Dear Mr. Moller:

        We have reviewed your letters of April 21, 2003 relating to the first set of interrogatories and document requests. This is a final attempt to resolve some parts of the dispute before discussing this matter with the Court.

        You assert that the defendants do not perform any logic synthesis operations in connection with many of their ASIC products and use large numbers of personnel. In light of that assertion, if we can resolve this matter, we are prepared to limit the definition of ASIC Product to those products made by a method which included computer-aided design that includes some form of logic synthesis, and to accept the identification of the five (5) individuals that the defendants believe have the greatest knowledge in each category. That should resolve your problem with the scope of the inquiries relating to ASIC Products. Please let us know if you disagree.

        You advance in an interesting and creative theory concerning the applicability of 35 U.S.C. 271(g), but one with which we disagree. Further, since you refused to provide any information about what the Matrox defendants do, you are preventing us from making our evaluation of the assertion that there is no infringement under your theory. The information and documents should be provided.

        While we disagree with your assertion that interrogatory 7 exceeds the 50 interrogatory limit, we are prepared to limit the interrogatory to those paragraphs of defendants' answer and counterclaims which constitute a denial per se (i.e., other than a denial based on a lack of knowledge and information), the affirmative defense paragraphs and paragraphs 69 and 72 of the counterclaims. Please advise us whether as so limited, the list of individuals noted in your letter completes defendants' response to Interrogatory 7 as to the individuals. The documents on which the responses is based will still need to be produced.

1177 Avenue of the Americas • 41st Floor • New York, New York 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
http://www.dsmo.com

Erik K. Moller, Esq.
August 26, 2003
Page 2


      Since the Court is scheduled to take up these and other matters on Thursday morning, please let me have your response no later than 3:00 p.m., Delaware time (noon, California time) on Wednesday.

                         Very truly yours,

                         Edward A. Meilman

EAM/hc

cc: Gary Hoffman, Esq.
     Kenneth Brothers, Esq.

**EXHIBIT 5**

CondenseIt™                                    **August 28, 2003**

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
2              IN AND FOR THE DISTRICT OF DELAWARE
3                         - - -
4   RICOH COMPANY, LTD.,         :   Civil Action
5              Plaintiff,        :
6        v.                      :
7   AEROFLEX INCORPORATED, AMI   :
    SEMICONDUCTOR, INC.,         :
8   MATROX ELECTRONIC SYSTEMS    :
    LTD., MATROX INC., GRAPHICS  :
9   MATROX INTERNATIONAL CORP.,  :
    and MATROX TECH, INC.,       :
10                               :
             Defendants.         :   No. 03-103-GMS
11                       - - -
12                  Wilmington, Delaware
13                Thursday, August 28, 2003
                       11:00 a.m.
14                 Telephone Conference
15                        - - -
16  BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
17  APPEARANCES:
18        ROBERT W. WHETZEL, ESQ., and
          STEVEN J. FINEMAN, ESQ.
19        Richards, Layton & Finger
               -and-
20        GARY M. HOFFMAN, ESQ.,
          EDWARD A. MEILMAN, ESQ., and
21        KENNETH W. BROTHERS, ESQ.
          Dickstein Shapiro Morin & Oshinsky LLP
22        (Washington, D.C.)
23                   Counsel for Plaintiff
24
25
```

Page 2

```
1   APPEARANCES CONTINUED:
2         FRANCIS DiGIOVANNI, ESQ.
          Connolly Bove Lodge & Hutz LLP
3              -and-
          TERESA M. CORBIN, ESQ.,
4         CHRISTOPHER KELLEY, ESQ., and
          ERIC OLIVER, ESQ.
5         Howrey Simon Arnold & White, LLP
          (Menlo Park, California)
6
                   Counsel for Defendants
7                        - - -
8
9
10             THE COURT:  Good morning, counsel.
11             MR. WHETZEL:  Good morning, Your Honor.  Bob
12  Whetzel from Richards Layton for plaintiff Ricoh.  With me is
13  my colleague here at Richards Layton Steven Fineman.  Also on
14  the call for Ricoh are Messrs. Gary Hoffman, Ed Meilman and
15  Ken Brothers, my co-counsel.  I suspect Mr. Hoffman will be
16  our principal spokesperson this morning.
17             THE COURT:  Good morning, all.
18             For defendants.
19             MR. DiGIOVANNI:  Frank DiGiovanni from Connolly
20  Bove.  Also on the line from Howrey Simon in California are
21  Teresa Corbin and Chris Kelley and Eric Oliver.
22             THE COURT:  Who is going to handle the argument
23  today?
24             MR. DiGIOVANNI:  I will be arguing the first of
25  the agenda items, and I believe Mr. Kelley will be arguing
```

Page 3

```
1   the remainder.
2              MR. HOFFMAN:  Your Honor, on behalf of Ricoh, I
3   Brothers will be arguing the first item.  I will be handling
4   Items 2, 3, 6 and 8.  And Mr. Meilman will be handling items
5   5 and 7.
6              THE COURT:  Okay.  I will try to keep that roster
7   in mind.
8              Let's start with Item 1.
9              MR. BROTHERS:  Your Honor, on Item 1, there is a
10  difference of opinion between the parties with respect to the
11  obligations of the order that the Court entered on July
12  31st --
13             MR. DiGIOVANNI:  Your Honor, I don't mean to
14  interrupt.  I don't do that.  But we are the ones, the
15  defendants are the ones --
16             THE COURT:  Are you the movant on that one?
17             MR. DiGIOVANNI:  Yes, we are.
18             THE COURT:  Let's start with the movant.
19             MR. BROTHERS:  I am sorry.  Both parties are
20  seeking relief, just to be clear.
21             THE COURT:  So both of you, you each view
22  yourselves as movants?
23             MR. BROTHERS:  Yes, Your Honor.
24             MR. DiGIOVANNI:  Yes, Your Honor.
25             On behalf of defendants, we did place the call
```

Page 4

```
1   and initiated the conference.  We consider ourselves primary
2   movants on this issue.
3              MR. BROTHERS:  Your Honor, we can both have our
4   say.
5              THE COURT:  Mr. Brothers, continue.
6              MR. BROTHERS:  Thank you.
7              The order of July 31st, the second paragraph
8   requires the defendants and their counsel to disclose all
9   communications with or relating to Dr. Thomas and to produce
10  all documents sent to, prepared by, or received from Dr.
11  Thomas.  And then it continues, Any documents withheld on the
12  basis of attorney-client privilege or work product doctrine
13  should be submitted to the Court for an in camera inspection
14  and defendants shall provide plaintiffs with a detailed
15  privilege log.
16             We received part of those documents.  We received
17  the e-mails and letters between the Howrey firm and Dr.
18  Thomas.  But defendants and their counsel have refused to
19  produce anything else, namely, any internal communications on
20  an in camera basis to the Court and to give a privilege log
21  to the other side.  We believe that is clearly required by
22  the order.
23             The history of this gives some basis for our
24  concern.
25             Dr. Thomas was deposed on August 14th.  The
```

## Page 5

1  witness contradicted the representations of Mr. Kelley during
2  the hearing on the 30th on multiple points, which gives us
3  concern as to what the complete story is.
4          For example, you will recall that the Howrey firm
5  served Dr. Thomas with a subpoena in late June but never
6  provided that to counsel for plaintiffs or filed any notices
7  with the Court.  And although Mr. Kelley said during the
8  hearing that Dr. Thomas had called them and said he wasn't
9  working for Ricoh, in fact, what these documents that were
10 produced and Dr. Thomas' testimony show is that Dr. Thomas
11 specifically told the Howrey firm that he was under contract,
12 a consulting contract, with counsel for Ricoh, that Dr.
13 Thomas specifically asked Howrey if they had given the
14 subpoena to counsel for Ricoh, and Howrey led him to believe
15 that the subpoena had been given and that the names of
16 experts had been disclosed in the litigation, and that
17 counsel for Ricoh had not named Dr. Thomas as an expert, so
18 Dr. Thomas assumed that we didn't want him as an expert,
19 which wasn't the case.  And then the Howrey firm said,
20 according to Dr. Thomas' testimony, if you sever your
21 contract with Ricoh, then we can hire you and we can pay
22 you.  And that's what Dr. Thomas did.
23         A second inconsistency was that Mr. Kelley said
24 very explicitly during the hearing that before Dr. Thomas was
25 hired, they asked him if he had received any confidential

## Page 6

1  information or discussed case strategy or other types of
2  information with Ricoh, and that Dr. Thomas had said, no, he
3  hadn't.
4          That is simply not the case.
5          Dr. Thomas was retained.  The retention letter
6  was sent on July 17.  He signed it on July 21st.  The first
7  time any such communications of that nature came up was after
8  we found out about it and objected, and then suddenly there
9  was a flurry of telephone calls and e-mails between the
10 Howrey firm and Dr. Thomas saying, what confidential
11 information did you have?  Tell us about it.  And there was a
12 phone conference on the 23rd of July and followup e-mails.
13         Dr. Thomas testified at his deposition that there
14 was no question that he had received confidential information
15 from counsel for Ricoh.  And he identified a couple of
16 categories of that.
17         During this flurry of information, after counsel
18 for Ricoh had objected, Dr. Thomas had described the
19 categories of this confidential information.
20         Now, Howrey refuses to produce those internal
21 e-mails.  We had requested them even prior to the hearing,
22 and the Howrey firm understood we were looking for them.
23 There is a reference by Mr. Kelley in the transcript that, I
24 think it's on Page 14 or so, that he understood we were
25 looking for that information.

## Page 7

1          After all of this, the defendants say, well,
2  maybe we are not going to use Dr. Thomas as an expert after
3  all, but we still want to go forward and take his deposition
4  on the very subjects which were the subject matter on his
5  consulting with Ricoh.
6          They obviously believe that Dr. Thomas is going
7  to give them favorable opinions.  Dr. Thomas testified that
8  as a result of his consulting with Ricoh he had formed
9  opinions.  What is the basis for their expectation?
10         We need to go forward and try and resolve this.
11 We think the sole basis is that Dr. Thomas has given Howrey
12 some basis to believe that the testimony he is going to give,
13 the opinion testimony that they are seeking, is going to be
14 favorable, and that was developed solely as a result of his
15 confidential consulting with counsel for Ricoh.
16         The issue before the Court not only is the
17 interpretation of Paragraph 2 of the July 31st order.  The
18 Court is also aware that we are to file followup letters that
19 will relate to the disqualification of Thomas and any other
20 remedies that might be available.  We think it advisable that
21 the Court is provided with this information so it has the
22 full picture of what the appropriate remedy should be.
23         THE COURT:  Okay.  Mr. DiGiovanni.
24         MR. DIGIOVANNI:  First of all, there is no
25 contradiction between what Mr. Kelley represented on the July

## Page 8

1  30th teleconference and Dr. Thomas' deposition.  Dr. Thomas
2  was very clear that he was asked by the Howrey Simon
3  attorney, the one single attorney that he talked to for the
4  five-minute period he actually talked to him, do you have any
5  confidential information?  And if so, what type of
6  information is it?  And Dr. Thomas responded two days later
7  in an e-mail, just listing three short types of information
8  he had:  patents, publications, and financial information.
9  None of it was confidential.
10         And all of those e-mails, that e-mail, and there
11 were about six or seven other e-mails, have been produced.
12 And those are the entire universe of documents that went back
13 and forth between Howrey Simon and Dr. Thomas.
14         If you go back to the teleconference on July
15 30th, the request that was made by Mr. Hoffman was that you
16 ordered that the defendants be required to disclose all the
17 communications that they have had with Dr. Thomas, and
18 produce all the documents to us that have gone back and
19 forth.  The Court subsequently ordered Ricoh's counsel to
20 prepare an order outlining the requests that you have made
21 and I will sign it.
22         But what happened later that day or maybe it was
23 the next day, July 31st, counsel submitted an order that
24 included an additional phrase, some additional language.  Your
25 Honor, which actually went beyond what they were supposed to

## Page 9

1  submit. So that became this July 31st order.

2      The language of the order --

3      THE COURT: Is that the sentence that says any

4  documents withheld on the basis of attorney-client --

5      MR. DiGIOVANNI: No, Your Honor.

6      THE COURT: Which language is it?

7      MR. DiGIOVANNI: In the same paragraph, Paragraph

8  2, the first sentence, it says, No later than August 6, 2003

9  defendants and their counsel are ordered to, right where it

10  says disclose, it says disclose all communications with or

11  relating to Dr. Thomas. That clause was brand-new. That was

12  not part of what Your Honor ordered on that teleconference,

13  this disclose all communications with or relating to Dr.

14  Thomas. The second clause of that, ordered to produce all

15  documents sent to, prepared by or received from Dr. Thomas,

16  that's what we talked about on the teleconference. That's

17  what we have done. We have produced every single piece of

18  paper, all e-mails that were sent back and forth between

19  counsel and Dr. Thomas. It didn't amount to much. It was

20  only about six or seven e-mails.

21      We also gave them a cover letter to those

22  e-mails. It described the communications, and it also

23  described the type of internal communications that we had

24  amongst attorneys, between attorney and clients. We noted of

25  course those were privileged, that those weren't required

## Page 10

1  under the production portion of Paragraph 2, because

2  Paragraph 2 says, when it talks about producing documents, it

3  says, produce all documents sent to, prepared by or received

4  from. Then it goes on to talk about documents, any documents

5  withheld, et cetera, et cetera. So we didn't withhold any

6  documents on the basis of privilege. So there was nothing to

7  put on a privilege log. There was nothing to produce in

8  camera.

9      The issue is what does this mean, disclose all

10  communications with or relating to Dr. Thomas? And what

11  counsel for Ricoh is saying is that means that all documents

12  relating to Dr. Thomas had to be produced. That is

13  completely inconsistent with the second phrase, where it

14  talks about the exact scope of production of documents. Our

15  reading of it was, we disclosed in our cover letter precisely

16  what we were supposed to produce, precisely what kind of

17  communications went on.

18      Of course, we didn't produce them. The order

19  doesn't require it. It would never make sense to produce

20  privileged documents, even in camera. An in camera review is

21  often done to determine if there is a privilege, not to

22  actually review some privileged documents to find a basis for

23  a claim. But in any event, the order doesn't call for it,

24  before you even getting into the law regarding in camera

25  review.

## Page 11

1      It is also important, Your Honor, that once we

2  received the declaration of Christopher Monti (phonetic),

3  this is the declaration that Mr. Hoffman talked about on the

4  July 30th conference, once we received that, which, by the

5  way, was one week ago, we had to wait until one week ago to

6  get it, once we took the deposition of Dr. Thomas to find out

7  if, indeed, he received confidential information, once we had

8  those two pieces of information, two days later we said,

9  okay, we are not going to retain Dr. Thomas as an expert.

10  And we are not a hundred-percent convinced that he did

11  receive confidential information.

12      But we told them, all right, we are not going to

13  use him as an expert, fully expecting that would end

14  everything. But they said, no, they want to try to

15  disqualify counsel even though there isn't a shred of

16  information, shred of evidence anywhere stating that Dr.

17  Thomas provided to counsel for defendants any sort of

18  confidential information. In fact, Dr. Thomas,

19  unequivocally, testified that he had one conversation with

20  attorneys for defendants for five minutes. And here is his

21  quote. He says, I didn't share any information with him --

22  this is talking about the one attorney -- about confidential

23  material.

24      That is it.

25      THE COURT: Okay. Mr. Brothers, Mr. DiGiovanni

## Page 12

1  asserts that that clause that he has identified in Paragraph

2  2, all communications with or relating to, goes beyond the

3  letter and spirit of the discussion and subsequent order

4  entered by the Court orally on July 30th.

5      I don't have the transcript in front of me. I

6  don't have total recall. I don't really wish to engage in an

7  extended debate as to what was intended. But Mr.

8  DiGiovanni's reflections do seem to comport with my

9  recollection of that conversation. Go ahead.

10      MR. BROTHERS: Yes. I do have the copy of the

11  transcript in front of me. On Page 9 it references, Line 17

12  through 22, this aspect of the request. And I will read that

13  quote. And this relates to the second paragraph. Quote.

14  That the defendants be required to disclose all

15  communications that they have had with Dr. Thomas and produce

16  all the documents to us that have gone back and forth. If

17  they feel that any documents are privileged or work product,

18  then they can be submitted in camera. But we should get a

19  log so we can sort that out.

20      Prior to that, Mr. Hoffman had noted, on Page 8,

21  we didn't know the details of what had been discussed, and

22  then later on, Mr. Kelley acknowledged that we were seeking

23  the nature of their communications with Dr. Thomas.

24      The issue here is twofold. First, it is not only

25  the communications back and forth between Dr. Thomas and

## Page 13

1 counsel for the defendants. But second, the issue is what
2 did the Howrey firm know and when did it know it with respect
3 to the confidential information that Dr. Thomas had obtained
4 from counsel for Ricoh.
5     There are inconsistencies between Dr. Thomas'
6 testimony and what Mr. Kelley was representing.
7     Now, we ought to be very cautious here. We have
8 not sought to disqualify the Howrey firm. What we are trying
9 to do is get information so that an appropriate determination
10 can be made. What Mr. DiGiovanni has said is, well, we
11 thought by dropping Dr. Thomas that would be the end of it.
12 But they still want to go ahead and take his deposition on
13 the very topics that Mr. Thomas had provided his confidential
14 consulting to counsel for Ricoh. And they just want to sweep
15 under the carpet these inconsistencies and hope that the
16 whole issue will go away.
17     At this point, we don't think that that is
18 appropriate. We think it is appropriate, an appropriate
19 inquiry can be made, but before that can happen, all of the
20 factual information needs to be collected.
21     Prior to our even having the conference with Your
22 Honor on the 30th, we had sent a letter to the Howrey firm,
23 saying, this is what we want. So they knew that we were
24 looking for not only the communications with Dr. Thomas, but
25 the internal communications on an in camera basis if the

## Page 14

1 privilege was not going to be waived, so that the Court could
2 make this determination, because ultimately, that may be the
3 critical issue, the determination of what is in the order and
4 our interpretation.
5     THE COURT: Counsel, let me just ask. The
6 determination being whether the documents at issue are
7 privileged or not.
8     MR. BROTHERS: I am sorry. The determination
9 would be twofold. First, whether the documents would be
10 privileged. But second, if the documents reflect that in
11 fact Howrey had received confidential information from Dr.
12 Thomas, as we believe is likely, based on their continued
13 pursuit of his deposition, so that they can get his opinions,
14 then an appropriate determination should be made.
15     It is important to note that Howrey recognized at
16 the outset that Dr. Thomas was consulting for counsel for
17 Ricoh --
18     THE COURT: Let me interrupt again. So that
19 appropriate determination being whether the Howrey firm
20 should be disqualified or not. Is that what you mean?
21     MR. BROTHERS: That is a decision that we may
22 well ask the Court to make. We are not asking it at this
23 time. We don't know what those documents may show. And we
24 may not ever see those actual documents. But we think that
25 it may be appropriate for the Court to see what is in there

## Page 15

1 so it can make an appropriate determination.
2     We want to be very careful. We are not at this
3 point saying the Howrey firm must be disqualified, because we
4 don't have all the facts from the Howrey side. We have it
5 from Dr. Thomas' side. But we don't have all of the
6 information.
7     THE COURT: Now, let me ask this: Do I
8 understand correctly that Dr. Thomas is more or less out of
9 this litigation at this point?
10     MR. BROTHERS: Counsel for defendants have
11 verbally informed us that they do not intend to retain him as
12 an expert. However, they have said that they intend to go
13 forward and take his deposition, which will include, they
14 say, the opinions that he developed as a result of his
15 consulting for Ricoh.
16     MR. DiGIOVANNI: Your Honor, that is not
17 accurate, with all due deference to Mr. Brothers. We never
18 said we were going to inquire as to any opinion in a
19 third-party deposition of Dr. Thomas, of any opinions he
20 formed while working with Ricoh, which he did for 12 or 14
21 hours. We never said that.
22     We will take his deposition, as we would any
23 other third party. His assignment was very important at the
24 time this invention was being developed. There is no way
25 that Ricoh can lock him up, in other words, put a cage around

## Page 16

1 him so we can't even get to him in this litigation. He is
2 still a fact witness. Ricoh may have talked to 15 or 20
3 witnesses and hired them for 12 hours. That doesn't mean
4 they can lock them up and prevent them from being part of
5 this litigation. We are entitled to take his deposition as a
6 third party. We will not inquire into conversations between
7 Dr. Thomas and Ricoh. We will not do that. We know we
8 can't, and we wouldn't, anyway.
9     THE COURT: Mr. Brothers, what do you say to
10 that?
11     MR. BROTHERS: Well, there are three things in
12 response, Your Honor. First, on the 28th of July, the Howrey
13 firm sent Dr. Thomas an e-mail, saying if the Court rules
14 that we can't use you as a consulting expert, we are going to
15 take your deposition on the things that we have been talking
16 about. And Dr. Thomas testified, when I asked him about
17 that, he said, that looks just like the things that I was
18 consulting with Ricoh about. And it does. And in the
19 communications that we have had with counsel for the
20 defendant, they have said we are precluded from asking Dr.
21 Thomas about those issues.
22     It seems to be a bit of a moving target, based on
23 what Mr. DiGiovanni is telling me today. But the facts
24 that Dr. Thomas had in-depth consultations with counsel for
25 Ricoh, and he testified he formed opinions as a result of

## Page 17

1  that. That opinion evidence, because they are going to ask
2  him to compare the patent to the prior art, that's
3  information that is all flowing directly from his consulting
4  work. As a result of the conduct of counsel for defendants,
5  Dr. Thomas has become a tainted witness. And it will be very
6  difficult to sort out what is tainted and what is not
7  tainted.
8      MS. CORBIN: Your Honor, I am the lead counsel in
9  this case for defendants.
10     If I could clarify the situation. The concern we
11 have about what we see as the problem with the order, the
12 language that Mr. DiGiovanni culled out, which was disclosure
13 of all communications with, and it's particularly the "or
14 relating to Dr. Thomas" part which gets to Howrey's internal
15 work product and communications with its client, because the
16 fact remains that Dr. Thomas developed one of the major and
17 key pieces of what we believe is invalidating prior art to
18 this patent, that was the genesis in the first place of
19 serving him with a third-party subpoena, to get the testimony
20 necessary to identify all the aspects of that particular
21 prior art and the timing of its development and so on.
22     Going back to the order, this is our concern.
23 The "or relating to" aspect would require us to provide in
24 camera for the Court, which if the Court really wants to see
25 it, we would do that, but it would require us to gather up

## Page 18

1  all the information and internal documentation we have about
2  that particular prior art and the fact that, as we learned,
3  Dr. Thomas was probably the most relevant witness who
4  developed that prior art, and would be the most relevant
5  person from whom to get the information as to the timing and
6  the particular aspects of that technology.
7      I do believe that those underlying facts cannot
8  be -- we are still entitled to discover those. The fact that
9  they hired him for 12 hours of consulting work can't shield
10 what is a major piece of prior art and take that prior art
11 essentially out of the case.
12     THE COURT: I agree with that.
13     MR. HOFFMAN: Your Honor, I am lead counsel for
14 Ricoh. If I could respond, since Ms. Corbin has?
15     THE COURT: Go ahead.
16     MR. HOFFMAN: I would appreciate the Court's
17 indulgence.
18     First of all, on the issue of what the scope is
19 and the timing, that is easily dealt with just by saying that
20 it is a document, internal communications regarding the
21 retention of Dr. Thomas and also putting on a date that
22 starts with the first contact with Dr. Thomas.
23     Let me go to the more significant issue here.
24 Howrey & Simon and the defendants here knew from
25 day one, once they contacted Dr. Thomas, that he was already

## Page 19

1  consulting for Ricoh. There is an e-mail where they said to
2  Dr. Thomas, there appears to be a conflict and consequently
3  we cannot use you.
4      Subsequently, they decided to change their mind
5  and send him a consulting agreement, encourage him to break
6  his agreement, terminate his agreement with Ricoh, and to
7  send him a consulting agreement, which he signed. After he
8  signed it, and after we complained, they went back and asked
9  him about the confidential information and whether or not he
10 got confidential information from Ricoh.
11     We didn't create this problem. Howrey & Simon
12 had a simple thing that they could have done if they chose
13 to. That is, once he indicated, Dr. Thomas said, hey. I am
14 consulting for Ricoh: Thank you very much, nice talking to
15 you, have a good day, goodbye. They chose not to.
16     They chose to go forward with this. And they
17 chose to do it until we found out about the subpoena, which
18 was only after they engaged him, not beforehand, contrary to
19 what they led him to believe, and only after they engaged him
20 already did we complain and did they finally do the checking.
21     They created the problem. We didn't create
22 this. What we are trying to do is to seek the information
23 and to place the information before the Court so that
24 appropriate relief, whatever that may be, can be fashioned.
25 As Mr. Brothers indicated, we are not seeking

## Page 20

1  disqualification today. I don't know that we will ever seek
2  disqualification. There may be and I hope there would be
3  other relief less than that that would be appropriate here.
4      But the first thing we need to do is to find out
5  how deep the poison runs. There is clearly a problem, one of
6  their creation. We are just trying to sort it out so that we
7  can seek from the Court appropriate relief.
8      These documents that we are indicating that they
9  should list on a privilege log and send to the Court are not
10 coming to us at this point. These are not documents we are
11 saying at this point -- eventually, we may get there, once we
12 see what is on the log.
13     THE COURT: Let me ask this, Mr. Hoffman: The
14 communications relating to, is it your position that those
15 communications may reveal, I think the words tainted witness
16 were used before, that is, they may impact in some way upon
17 this potential witness' credibility as that credibility or
18 his testimony pertains to the merits of the case?
19     MR. HOFFMAN: It may relate to that. It may
20 relate to the issue of what is the appropriate relief. It
21 may relate to the issue of the fruits of the poisonous tree,
22 as the cliche goes. There is an overall issue as to what
23 should be the appropriate relief that is fashioned here.
24     THE COURT: Right now. I don't have a motion
25 before me asking for relief in that regard. I think what you

**Page 21**

1 are suggesting is how -- it has been discussed earlier
2 whether the Howrey firm should be disqualified or not.
3 Should that be my principal concern at this point? I think
4 it was Mr. Brothers who may have used the words tainted
5 witness. I think you are entitled to challenge this witness'
6 credibility before the finder of fact, as that credibility
7 pertains to his opinions regarding the merits of whatever it
8 is he is going to be testifying regarding the actual
9 substance of this litigation. Isn't the retention or the
10 disqualification of the Howrey firm, at least at this
11 juncture, an ancillary issue?
12      MR. HOFFMAN: It is an ancillary issue at this
13 point. But part of the other issues, Your Honor, in trying
14 to fashion relief, is, there is other forms of potential
15 relief. And we haven't sorted out what we are going to ask
16 for yet ourselves. But, for example, we may ask the Court to
17 say, listen, Howrey & Simon knew that this witness had
18 confidential information. They shouldn't be allowed to do
19 through the back door -- obtain his opinions that he formed
20 as a result of consulting with us. He should just be
21 someone, because of the problem that they created, should
22 just be off everyone's list, period. There is other
23 witnesses familiar with the prior art. He is not the only
24 one.
25      That is number one. It may be that there is

**Page 22**

1 other sanctions. It may be that the individuals who got
2 certain information on Howrey & Simon should not be involved
3 in the case, there should be a Chinese Wall around them.
4 That is another possibility. It does not disqualify the
5 firm. There may be a possibility that the whole firm should
6 be disqualified.
7      Right now, all we are looking for at this time is
8 a list of those communications on a privilege log.
9      MS. CORBIN: Your Honor --
10      THE COURT: Don't interrupt, counsel, please.
11      MS. CORBIN: I am sorry.
12      MR. HOFFMAN: Most people quite often provide a
13 list of privileged documents, anyway. Normally, once the
14 litigation starts, you don't continue. But this is a special
15 situation. And we are asking that the Court -- the way we
16 believe the order read, we ask that the Court require the
17 Howrey & Simon firm and defendants to provide a list of the
18 privileged documents. We also ask that the limited number of
19 documents -- I can't imagine there is many in this
20 category -- be provided to the Court, so that when the Court
21 has the issues laid before it, we can ask for what relief we
22 think is appropriate and the Court can fashion relief that it
23 believes is appropriate.
24      THE COURT: MS. Corbin, what is the extent of the
25 potential production at issue here?

**Page 23**

1      MS. CORBIN: I wouldn't be able to address that.
2 I wouldn't have personal knowledge at this point.
3      THE COURT: Is there someone who can give the
4 Court that information?
5      MR. KELLEY: I can give you an estimate. I think
6 there is a handful of e-mails.
7      THE COURT: Let's produce them for the Court.
8      MS. CORBIN: Your Honor, my point is -- I don't
9 know whether it is apparent to the Court or not -- we seem to
10 be somewhat making points to cross-purposes here.
11      We did produce all of the exchange of e-mail and
12 any written documentation of an exchange between Howrey and
13 Dr. Thomas to the other side. And as well, Dr. Thomas'
14 deposition was taken. The testimony and those documents show
15 that no confidential information, if Dr. Thomas has any, was
16 ever communicated to Howrey & Simon. And I just want to make
17 clear, because I haven't heard, and I don't believe it's
18 Ricoh's position, that the contrary facts are the case. If
19 so, they haven't stated that.
20      THE COURT: I think they have stated that. Maybe
21 I misunderstood.
22      MS. CORBIN: That is why I wanted to clarify.
23      THE COURT: Let's clarify that.
24      MS. CORBIN: I think what they are complaining
25 about is that he had confidential information and we knew at

**Page 24**

1 some point, he had mentioned to us that he had consulted for
2 this short time with them and we proceeded anyway.
3      THE COURT: Let's get clarification on that. Mr.
4 Brothers.
5      MR. BROTHERS: Yes. Your Honor, we believe.
6 based on the inconsistencies between what Mr. Kelley said
7 during the hearing and Mr. Thomas' testimony, as well as the
8 intent of defendants to continue to pursue Dr. Thomas'
9 testimony, leads us to believe that something more than
10 innocent communications occurred. We don't know what those
11 are and we don't know the extent to them. We know that there
12 was at least one phone call in which the questions were
13 asked.
14      THE COURT: So in other words, Mr. Brothers. it
15 is at least your position that it may have been the case
16 that -- and I don't want to put words in your mouth. but for
17 purposes of clarifying the record and answering Ms. Corbin's
18 question -- is it your assertion that there is the
19 possibility that they may have known of the confidential
20 relationship and proceeded anyway?
21      MR. BROTHERS: Well, certainly, as I understand
22 it, everybody agrees they knew of the confidential
23 relationship. They elected to proceed anyway.
24      THE COURT: And that in fact confidential
25 information had been received by Dr. Thomas?

## Page 25

1    MR. BROTHERS: Dr. Thomas has testified that in
2  fact confidential information was received.
3    MS. CORBIN: Was received, not transmitted to
4  Howrey Simon.
5    THE COURT: I am sorry. I should have gone that
6  additional step.
7    Is it your position, Mr. Brothers, that it was
8  transmitted?
9    MR. BROTHERS: We believe that there is an
10  inference that supports that. But we don't have the internal
11  Howrey documents that would presumably reflect on that, and
12  Dr. Thomas said he could not recall with specificity the
13  contents of his telephone conversation.
14    THE COURT: I thought, Ms. Corbin, I understood
15  counsel to take the position they have just articulated.
16    MS. CORBIN: My confusion is, Your Honor, they
17  have now taken a deposition and they have all the documents.
18  And they still say they have this inference. But they don't
19  have any statements that he made or any evidence from the
20  document exchange that any confidential information was
21  actually transmitted.
22    THE COURT: What is the basis for drawing the
23  inference, Mr. Brothers? That is what is being questioned
24  here.
25    MR. BROTHERS: There are three specific pieces of

## Page 26

1  evidence, Your Honor. First is the fact that the questions
2  were asked during the telephone conversation what
3  confidential information was there, and there was the inquiry
4  following our complaint, and then there was a followup e-mail
5  to that saying -- and I read it as kind of a self-serving or
6  "let's protect ourselves" e-mail -- saying, we talked about
7  this in the phone call and I want you just to give me a
8  general list of the documents that were talked about.
9    Dr. Thomas didn't testify specifically, he
10  couldn't remember the specifics of the phone conversation.
11  But based on their, Howrey's continued pursuit of Dr. Thomas
12  and the e-mail following this exchange, saying we want to
13  take your deposition on in essence the same things that you
14  consulted with for counsel for plaintiff, that leads us to
15  believe that there is going to be favorable testimony coming
16  out of that. And what is the basis for that? We think that
17  there is only one answer to that. They have got some idea
18  from Dr. Thomas as a result of his consulting with Ricoh
19  about what those opinions were going to be. And that is the
20  confidential information.
21    In any event, Your Honor has ordered the Howrey
22  firm to produce those handful of internal documents. I would
23  ask that, because the order of July 31st provides that by
24  August 31st, we may file a two-page letter, I would just ask
25  that that be postponed until 10 days after the submission of

## Page 27

1  the privilege log and internal documents.
2    THE COURT: That is an acceptable process. We
3  will follow that recommendation.
4    Ms. Corbin and Mr. DiGiovanni, are you clear as
5  to what your responsibilities are?
6    MR. DiGIOVANNI: Your Honor, actually, I am
7  somewhat confused with regard to the scope of production.
8  The only documents -- we described these few letters to
9  Ricoh -- the only documents that we have other than the
10  documents that went back and forth to Dr. Thomas, which were
11  all produced, are documents among the attorneys, the Howrey
12  Simon attorneys, there was some e-mail correspondence,
13  including myself, regarding Dr. Thomas and these issues
14  regarding Dr. Thomas. So every single e-mail communication
15  or other communication has at least as a recipient or the
16  author an attorney. So there is no doubt that all these
17  documents are privileged.
18    THE COURT: Sure.
19    MR. DiGIOVANNI: It sounds like they are trying
20  to break the privilege. However, there is no such exception
21  to the privilege that would allow this to break. For
22  example, in an instance where you have the crime/fraud
23  exception, the U.S. Supreme Court and the Third Circuit have
24  said there has to be at least a prima facie case established
25  before that can even be broken. There has to be a reasonable

## Page 28

1  basis to even inquire into these privileged documents for
2  even in camera review.
3    It is our position Ricoh has not even come close
4  to establishing that, especially because we have taken the
5  deposition of Dr. Thomas and he said, quote, I didn't share
6  any information with him -- the one attorney he talked to --
7  about confidential material. So we are somewhat confused as
8  to what the possible inquiry can be, because this is
9  privileged information.
10    THE COURT: I understand what it is. I know the
11  crime/fraud exception, counsel.
12    Mr. Brothers, do you have a position on the
13  crime/fraud exception? Do you want to say something about
14  that?
15    MR. HOFFMAN: Your Honor, if I can just briefly
16  respond. First of all, to return to one of the points in
17  history because it lays the foundation for this. There was a
18  representation to the Court that Dr. Thomas had told the
19  Howrey people that he received no confidential information
20  from Ricoh.
21    THE COURT: I remember that.
22    MR. HOFFMAN: In fact, the Court made a comment
23  about relying on Dr. Thomas' legal opinion when that was
24  indicated. Dr. Thomas, during his deposition, though,
25  testified that he did receive confidential information from

CondenseIt™                                                August 28, 2003

## Page 29

1  Ricoh, obviously, inconsistent with the representations.
2  There is a number of representations that have been made to
3  the Court that are inconsistent -- I am sorry,
4  representations to the Court that are inconsistent with the
5  documents we have obtained to date and also Dr. Thomas'
6  testimony.
7      Your Honor, I think that the whole issue of
8  making certain representations to the Court that they know
9  are inconsistent and these documents that we are asking be
10  turned over to the Court may further our belief, support our
11  belief, does create an issue of potential fraud upon the
12  Court.
13      THE COURT: I think it does. The Court is going
14  to order the production of the July 30 transcript for its
15  inspection at the same time that it reviews the documents
16  that I have just ordered be produced.
17      MR. KELLEY: I want to raise one point.
18      THE COURT: We are done with this point.
19      MS. CORBIN: So I can understand the scope...
20      THE COURT: Let's make sure we understand the
21  scope.
22      MS. CORBIN: You would like every internal
23  document in Howrey that makes reference to Dr. Thomas.
24      THE COURT: Yes. As I understand it, we are
25  talking about a handful of documents.

## Page 30

1      UNIDENTIFIED SPEAKER: Your Honor, is there a
2  time cutoff for this?
3      THE COURT: Ms. Corbin, is that correct?
4      MS. CORBIN: I can't make any personal
5  representation to that. There may be documents that address
6  that particular piece of prior art.
7      THE COURT: I think it was Mr. Kelley who
8  indicated it would be a relatively few number of documents.
9  Is that correct, Mr. Kelley?
10      MR. KELLEY: Yes, Your Honor.
11      MR. DiGIOVANNI: Your Honor, I am not sure about
12  the time cutoff, because I believe Mr. Hoffman had stated he
13  was interested in the internal documents regarding the
14  retention of Dr. Thomas.
15      MR. HOFFMAN: Your Honor, if I can just respond,
16  I can simplify things by proposing a time cutoff. I believe
17  the subpoena was sent out to Dr. Thomas early July --
18      UNIDENTIFIED SPEAKER: Late June.
19      MR. HOFFMAN: -- late June, from whatever that
20  date of that subpoena is going forward, coming to the
21  present.
22      THE COURT: Is that understood on the other
23  side?
24      MS. CORBIN: Yes, thank you, Your Honor.
25      MR. DiGIOVANNI: Your Honor, if we are talking

## Page 31

1  about documents relating to Dr. Thomas through today, this
2  would include the e-mails leading up to this teleconference
3  regarding strategy.
4      MR. HOFFMAN: I apologize, Your Honor.
5      THE COURT: We don't need that. Through the date
6  of the July 30th telephone conference with the Court.
7      Are we now clear on time parameters?
8      UNIDENTIFIED SPEAKER: It would be June 26th.
9  2003, to July 30th, 2003.
10      THE COURT: MS. Corbin, do you understand the
11  time, and Mr. DiGiovanni, do you understand the time
12  parameters?
13      MS. CORBIN: It would capture our communications
14  with each other in preparation for that call.
15      THE COURT: Well, I don't want that, either.
16  That is not the intent of the Court, to include that,
17  either. Let's be a little more specific. Mr. Hoffman.
18      MR. HOFFMAN: Your Honor, it would be with
19  respect to the issue whether or not to retain Dr. Thomas,
20  what Dr. Thomas discussed with them, what was communicated --
21  in other words, internal discussions about what were the
22  communications with Dr. Thomas, whether or not they should or
23  should not retain him. If it will simplify things, Your
24  Honor, nor that we not capture their internal communications
25  regarding preparing for the telephone conference with the

## Page 32

1  Court, why don't we drop it back a few days prior -- Your
2  Honor, we are not looking for things relating to the strategy
3  in preparing for the telephone conference.
4      MR. BROTHERS: I was trying to make clear that
5  the phone conference was on July 30th and recapping that
6  phone conference, then there were additional e-mails to and
7  from Dr. Thomas up through the date of the hearing. So,
8  obviously, to the extent that an e-mail was sent to or
9  received from Dr. Thomas and forwarded to others with the
10  comments about substance and Dr. Thomas' retention and about
11  what was said, then I think all of those are appropriate to
12  include.
13      THE COURT: I agree.
14      MS. CORBIN: So, Your Honor, are you saying
15  through the date of the deposition? I missed what whoever
16  was speaking last just mentioned.
17      MR. BROTHERS: I believe the subpoena was issued
18  on June 25th or 26th. And the hearing was on July 30th, in
19  which the Court said no further communications with Dr.
20  Thomas. So it would be that 34-day period.
21      MS. CORBIN: Excluding any internal
22  communications from Howrey in preparation for that conference
23  call with the Court.
24      THE COURT: Correct.
25      MS. CORBIN: I have that in mind now. Your

**Page 33**

1  Honor.  Thank you.
2          THE COURT:  Okay.  Great.
3          MR. HOFFMAN:  Your Honor, I presume you want to
4  proceed in order?
5          THE COURT:  Yes, sir.
6          MR. HOFFMAN:  Yes, sir.  The second topic is a
7  request of Ricoh.  We served the subpoena that was issued out
8  of Delaware, out of this Court, on Synopsys.  Synopsys is not
9  a party to the litigation.  However, Ms. Corbin previously
10  previously indicated to the Court back at the time of the
11  scheduling conference that their position is Synopsys is a
12  real party in interest here.
13          We served the subpoena for documents.  Synopsys
14  has objected to every part of that subpoena, to all the
15  categories.  To date, they have produced as far as anything
16  other than some prior art, they have produced approximately I
17  think it's less than 100 pages of documents.
18          What we are trying to discover in general from
19  Synopsys is information about the software, the systems that
20  they have provided to the defendants.  As the Court may
21  recall, and it's also set forth in defendants' motion to
22  dismiss, part of the issue here regarding the defendants'
23  activities relating to their utilization of Design Compiler.
24  There is also another program called Behavioral Compiler,
25  which may also play a part here.

**Page 34**

1          What we indicate, in fact, they have asked us for
2  our basics, some of our infringement positions, and we have
3  set forth a basic explanation of why we think they infringe.
4  It is very general at this point, granted.  But it does in
5  that indicate that part of it involves the use of Design
6  Compiler.  Synopsys has indicated that they are willing to
7  give us some non-confidential, publicly available documents
8  on Design Compiler and Behavioral Compiler, but nothing
9  confidential.
10          We have obviously pushed for more.  We want the
11  confidential documents on both products.  And also we want to
12  know what other products did they provide to the defendants,
13  because there are other products that may come into play
14  here.
15          Synopsys has raised a number of objections.  The
16  first objection that they have raised is that the documents
17  should not have to be produced twice, because that would be
18  duplication, and consequently, they will produce them in the
19  California action and not here.
20          And I start with that one, Your Honor, because in
21  essence during the scheduling conference, Ms. Corbin sought a
22  stay of discovery in this action.  And the Court
23  appropriately indicated that, no, discovery was going to go
24  forward.  What Synopsys is doing here and the defendants are
25  doing here in essence is saying that, no, discovery is not

**Page 35**

1  going to go forward.  We are only going to produce the
2  documents in California.
3          We agree, they don't have to be produced twice.
4  But there is no reason not to produce them here.
5          They have also objected on the basis that the
6  documents are confidential.  Well, Your Honor, there is a
7  protective order.  Howrey & Simon, who represents both
8  Synopsys and the defendants, was involved in negotiating that
9  protective order.  They were involved in working out the
10  details of it.  Clearly, they can be produced underneath the
11  protective order.
12          Next, Your Honor, something I had not mentioned
13  Synopsys has not objected on any type of basis that there is
14  no jurisdiction of this Court over this issue, over the
15  subpoena.  So it is appropriately here, the subpoena.
16          The only issue is what subject matter, what
17  documents do they need to produce.  They have also complained
18  or objected that we haven't explained our patent infringement
19  theory.  This also comes up with the objections that have
20  been raised.  Mr. Meilman will get into that later on when we
21  address that topic.
22          We have indicated to them, in fact, they have
23  stated that the issue of infringement relates to the
24  utilization of Design Compiler.  We are fully aware of that.
25  So for them to tell the Court, we don't -- to object on the

**Page 36**

1  basis we don't understand us what you are charging with
2  infringement at the same time they are telling the Court
3  that, oh, what's being charged with infringement is
4  utilization of Design Compiler is simply disingenuous.
5          They have also objected, indicated that the
6  documents can be obtained from the defendants and we would be
7  better off obtaining it directly from the defendants since
8  they are parties to the litigation.
9          Well, first of all, Your Honor, not all the
10  documents can be.  But more importantly here, the defendants
11  in turn, turn around and say, through the same attorneys,
12  Your Honor, saying that, well, we can't provide you the
13  documents because it's the confidential information of
14  Synopsys.  Well, Your Honor, obviously, the information can
15  be provided.  It can be provided underneath the protective
16  order.
17          We next have an objection that the documents,
18  some of the documents are in the public record and can be
19  obtainable from other sources.  Well, to say, well, some of
20  the documents I have are publicly available and you can
21  obtain them, well, who knows what documents they are?  If
22  they gave us a list, here is the dates of the documents, here
23  is where you can obtain them, fine.  But if they have the
24  documents, whether they are publicly available from other
25  sources or not, they should still be obligated to provide

Page 37

1 them.
2      They also object that apparently some of the
3 documents are confidential information of third parties,
4 unidentified third parties.  We have asked them to identify
5 them, these allegedly third parties.  They have refused to do
6 that.
7      In essence, what we are getting, what appears to
8 us, Your Honor, is a stonewalling of discovery, a decision to
9 say that basically we are just not going to provide discovery
10 until the Court requires us to.  That's the way it looks.  Or
11 until the case the case is in California, we are not going to
12 give you discovery.  We are not going to provide it in the
13 Delaware action.
14      THE COURT:  Okay.  Who is going to handle this?
15      MR. KELLEY:  Your Honor, I am.
16      Mr. Hoffman just recited several issues that
17 relate to objections that were recorded in our responses to
18 the interrogatories.  But it doesn't address the real issue
19 here, which is the breadth -- I said interrogatories, I meant
20 document requests -- which is the breadth of the document
21 requests.  If you look at these -- am I talking over
22 someone?
23      THE COURT:  No.
24      MR. KELLEY:  They have asked for -- I will go to
25 some specific language in a minute.  They have asked for

Page 38

1 every engineering document relating to any product produced
2 by Synopsys.  Now, Synopsys is a third party, may be required
3 to produce some documents in this litigation.  But the basis
4 for that production has to be that there is a need to get
5 this information from the third party and that the evidence
6 is directly related to a real critical issue in the case that
7 can't be attained from some other source.
8      It's not proper for them to submit document
9 requests that ask us for every engineering document relating
10 to every product that Synopsys has produced.  That is the
11 real issue here.  Not about the nature of our objections,
12 about whether a document is confidential or not.  If they are
13 willing to focus their document requests on the real critical
14 issues, the key part of the Synopsys product that they think
15 is relevant to their theory of infringement, which, as Mr.
16 Hoffman just admitted, they haven't really spelled out in any
17 kind of detail, then that would be a legitimate basis for a
18 document request.
19      Let's cut to some of the text from the document
20 requests.
21      The order that we would ask the Court to issue is
22 a protective order relating to Document Requests 2 through
23 5.  Let me just tell you, read to you a little bit, and I
24 won't do this for all of them, because it will become
25 tedious, but let me just read to you from No. 5.  It says.

Page 39

1 Produce all documents concerning all hardware, software
2 libraries, core databases for use in ASIC design systems, and
3 then goes on and on, about including technical reference
4 manuals, technical bulletins, user manuals, installation
5 manuals, training manuals, sourcecodes, tutorials, et cetera
6 et cetera.
7      The real issue here is that these are just not
8 crafted as the kind of discovery that one might reasonably
9 expect one could get from a third party to a case.  They are
10 not limited in any manner to the products at issue.  They are
11 not limited in any manner to the key parts of the products
12 that they are going to contend infringe.
13      The only thing that they have identified in their
14 interrogatory answers to date as being the basis of their
15 infringement allegations is two steps, two steps that are
16 performed by the defendants in this case.  The first is
17 providing input to Design Compiler, and the second is using
18 Design Compiler to take the library cells and create some
19 output that will be used to produce an output for (inaudible)
20 ASIC a chip.  That is all they have identified.
21      If they are willing to restrict their document
22 requests to specific things relating to those steps and
23 relating to the product they say defendants are using in
24 an infringing manner, then we would have a basis to produce
25 documents.  They aren't entitled to a fishing expedition of

Page 40

1 every engineering documents in Synopsys' possession.
2      And I would go on to state, Your Honor, there are
3 a number of documents, document requests, that we have
4 produced documents, agreed to produce documents in response
5 to.  This is not an exercise in stonewalling.  And we have
6 given them some manuals that describe how, what kind of
7 inputs Design Compiler can accept, and describe exactly the
8 steps involved or the state, describe that Design Compiler is
9 used to select library cells in order to produce an output
10 for ASIC design.
11      THE COURT:  You have described, counsel, some
12 parameters.  Let's see if they are acceptable to counsel for
13 Ricoh.
14      MR. HOFFMAN:  Your Honor, first of all, the
15 documents that they have produced is less than 100 pages.
16      THE COURT:  I don't want to go over that.  What I
17 am interested in knowing is how you react to the objection
18 which Mr. Kelley says is really at essence here, that is the
19 scope, that your request is overly broad.
20      MR. HOFFMAN:  Your Honor, what we have indicated
21 to them is that -- and then I would like to go to what is
22 actually the Request No. 5, because it was not properly read.
23      THE COURT:  I don't want to do that.  What I want
24 to get to is an agreement.  I am really not interested in
25 batting this ping-pong ball back and forth across this

## Page 41

1   table. I want to get to an agreement rather quickly.

2        MR. HOFFMAN: Yes. Your Honor, what we have

3   indicated is we will agree to limit our request to No. 1,

4   Design Compiler documents, Behavioral Compiler documents.

5   And they have agreed -- that is just the starting point, and

6   I will go on from there. But they have agreed to produce

7   documents relating to those products, but only the

8   non-confidential documents.

9        THE COURT: Well, let's talk about that then.

10  Insofar as, Mr. Kelley, counsel has now defined what I hope

11  you will agree is a proper scope, what about the production

12  of confidential information pursuant to the terms of your

13  protective order?

14       MR. KELLEY: Is that a question for me, Your

15  Honor?

16       THE COURT: Yes, sir.

17       MR. KELLEY: The reason that we mentioned

18  confidentiality in the objection is that as a third party

19  confidentiality is one of the considerations that is

20  mentioned in the case law about weighing that burden on the

21  third party versus the need in the case.

22       THE COURT: We are trying to reduce the burden.

23  I do understand your complaint regarding the burden.

24       MR. KELLEY: I apologize. The next point, what

25  they have identified as being the basis of infringement,

## Page 42

1   namely, that the user provide certain inputs to Design

2   Compiler and that that Design Compiler takes those inputs and

3   selects library cells to produce the output, that they can

4   get from public documentation. There really is no need to go

5   into our sourcecode describing exactly in great detail how

6   those functions are performed or into the internal

7   engineering documents describing every aspect of that. If

8   that is what they need from us, they have already got that.

9   And I will correct Mr. Hoffman. We have already produced

10  several hundred pages of manuals.

11       THE COURT: Let's just deal with this discrete

12  issue, this discrete range of documents, Mr. Hoffman. Do you

13  agree that there are alternate sources?

14       MR. HOFFMAN: No, there are not, Your Honor. The

15  information is going to be in the confidential documents. It

16  is going to be in the sourcecode. It is going to be in the

17  other information that comes out of Synopsys or comes out of

18  the defendants.

19       There is many other parts of this claim, such as

20  discussions of expert systems, discussions or rules. Some of

21  those are going to be parts of the (inaudible) of Design

22  Compiler or Behavioral Compiler.

23       So consequently, just inputting information, yes,

24  that is part of the process here, there is no question that

25  is part of the process. But then it's how the system

## Page 43

1   operates is another part of the process, and some of that is

2   not fully available. The details that we want for trial to

3   prove our case, obviously, we have enough information to

4   bring the case and to allege, quite appropriately allege.

5   that that information and that operation is present. But we

6   are entitled to further information to further establish and

7   prove our case.

8        Synopsys, they keep on saying they are a third

9   party. Yet at other times they keep on saying they are the

10  real party in interest and they are the true party here.

11       THE COURT: I don't hear any objection to the

12  relevance, that it's not discoverable. It's a question of

13  sourcing, where you can get it from, whether you can get it

14  from alternate sources and how to protect it.

15       MR. HOFFMAN: There is a protective order and we

16  cannot get this from --

17       THE COURT: What I am getting at is, it seems to

18  me, counsel, if you remove for a moment -- and I know this is

19  difficult to do -- your adversarial hats and think more in

20  the spirit of cooperation, because there is no apparent

21  disagreement as to the relevance of this information, the

22  discoverability of this information, then you could probably

23  come to a point of agreement as to how it should be

24  produced. Is that just beyond your capability? Or what are

25  we talking about here?

## Page 44

1        MS. CORBIN: Your Honor, I think that now they

2   have identified Design Compiler, Behavioral Compiler --

3   Design Compiler alone, just for point of reference for the

4   Court, is the largest product at Synopsys, accounts for more

5   than 20 percent of its revenue. They still want all

6   engineering documents relating to Design Compiler. We still

7   have a huge problem with respect to overbreadth.

8        THE COURT: I can understand why you would have a

9   problem with that. And it seems to me the plaintiff should

10  be able to narrow that request somewhat.

11       MR. HOFFMAN: Your Honor, if Synopsys is willing

12  to give us the confidential information, they are willing to

13  give us the sourcecode limited to the time of the scope of

14  documents, going back to 1996, so we are not talking about

15  everything that is there, all documents that they have ever

16  had, we are willing to work with them in trying to work out

17  some other limitations. But to say, well, tell us the

18  details of exactly which parts of Design Compiler you are

19  alleging to infringe and give us a detailed claim chart so

20  that then we can decide whether or not we will give you

21  anything is putting the cart before the horse. What they are

22  asking is prove your case and then we will decide if we will

23  give you discovery.

24       THE COURT: Obviously, you don't have to do that.

25       MS. CORBIN: Your Honor, the sourcecode, since it

Page 45

1 has been mentioned twice now, is of particular import, I
2 think, because that is the most sensitive information about a
3 particular product, it contains a lot of information. If
4 what they need is an understanding of the inputs that these
5 particular customers input to Design Compiler when they use
6 it, there are other ways to get to that information besides
7 having the sourcecode, which is the most sensitive
8 information in the company, regarding their key product.
9     THE COURT: Well, inevitably, counsel, in all of
10 these cases, and you know that from your vast experience in
11 this area, there is always information, oftentimes
12 extraordinarily sensitive information like this that is at
13 issue and that needs to be shared in order for the litigation
14 to proceed forward. That is why we have protective orders.
15 That is why there is a body of law that has grown up around
16 this issue. But it is incumbent upon counsel to recognize
17 the need to cooperate, and if necessary, to craft new
18 language that will enable this type of information to be
19 shared at appropriate levels. If it is for attorneys' eyes
20 only -- I think you understand where I am going with this.
21     If there is truly an alternate source that will
22 enable the plaintiff to prosecute its claims in a timely
23 fashion from which it can receive this information, I would
24 be interested in knowing and having the discussion right now
25 as to what that source is and whether it is acceptable to the

Page 46

1 plaintiff.
2     MS. CORBIN: Can you address that, please, Chris
3 Kelley?
4     MR. KELLEY: Yes, absolutely. That is where I
5 was intending to go.
6     Your Honor, the issue here is that -- of course,
7 they have stated to this Court -- and I don't want to get
8 into the motion to stay or transfer -- but they have stated
9 that their beef is not with Synopsys. That it's by
10 defendants that are infringing. They are now suggesting that
11 Synopsys is a third party and as a party to this case has the
12 same obligations in discovery.
13     If you look at the way the interrogatory is
14 drafted, they identify the two things that would have some
15 connection with the user, namely, putting some stuff in at
16 the top of the process and getting something out at the
17 bottom. And they didn't mention anything about all the other
18 the stuff, which of course I think they are going to argue
19 are all internal to Design Compiler.
20     Their theory of infringement really is these
21 defendants use Design Compiler. If that is the case, which
22 they haven't come flat out and stated today, they should have
23 sued Synopsys. Instead, they elected to sue Synopsys'
24 customers. Now they are trying to back-door, attack
25 Synopsis' product by getting this very broad discovery.

Page 47

1     I think the progression here is, to the extent
2 they really believe their case of infringement rests on
3 something the defendants are doing and there is some
4 peripheral material that is in the exclusive possession of
5 Synopsys, that is the kind of discovery they should get. But
6 what I think we are going to find out when we actually have
7 this meeting -- and I think that's the proper way to proceed
8 is for the proper parties to get together and work out
9 exactly what they need and what we can give them, how we can
10 get them the information they need. I think what we are
11 going to find is everything they need relating exclusively to
12 stuff done by Design Compiler, nothing to what these two
13 defendants here are doing except using Design Compiler,
14 providing the regular inputs that Design Compiler normally
15 takes in and at the end of the process say thank you very
16 much for the output, I am going to take this off to go make
17 the chip.
18     THE COURT: It is not necessary for you to
19 respond, Mr. Hoffman. The Court has instructed the parties
20 to get together and discuss this matter. If you are still at
21 an impasse after that discussion, obviously, we will have to
22 revisit this.
23     Let's go on to No. 3.
24     MR. HOFFMAN: No. 3, Your Honor --
25     MR. KELLEY: Your Honor, I think this is our

Page 48

1 item.
2     THE COURT: Yes.
3     MR. KELLEY: This is a relatively simple matter.
4 On the patent at issue, there are two inventors, Mr.
5 Kobayashi and Mr. Shindo. Ricoh has already agreed to make
6 Mr. Kobayashi available for deposition in Japan. That is
7 going forward.
8     At a fairly early point during discovery, we
9 asked them whether they were representing Shindo. I am not
10 going to get this exactly right. They said, no. We will see
11 if they will work with us. Give us your subpoena and we will
12 see if he will accept it, not formally, accept service, but
13 he will respond to it.
14     We haven't yet received from them a commitment
15 any final word as to, one, whether Mr. Shindo will accept
16 this -- will cooperate in discovery, and two, whether they
17 intend to use him during trial, appear as a witness.
18     Both Mr. Shindo and Mr. Kobayashi, to our
19 knowledge, live in Japan. We have asked them if they would
20 bring Mr. Shindo to the United States. They have said, no,
21 you have to go to Japan to take his deposition if you want to
22 take his deposition. That's assuming of course that he at
23 some point determines to cooperate.
24     The problem we are facing, given the close of
25 discovery in January, the facilities for deposition, which I

1  assume everyone on the phone is familiar with, depositions in
2  Japan must takes place either at the embassy or one of the
3  consulates. The Tokyo Embassy is already completely booked.
4  There is a little opportunity, some space in the Osaka
5  Consulate, which, to our understanding, that is actually
6  where Mr. Shindo lives, is Osaka.
7       What we would like from the Court is some
8  deadline as to when they actually have to have a final word
9  as to whether Mr. Shindo is going to cooperate or not. Then
10 either to make him available in Japan in accordance -- with
11 one of the windows of opportunity that we have, at the Osaka
12 Embassy, or bring him to the United States for deposition
13 here.
14      THE COURT: Okay.
15      MR. KELLEY: We can depose him in advance of
16 trial.
17      THE COURT: Can we get an answer to the question,
18 counsel?
19      MR. HOFFMAN: Yes. Mr. Shindo, who is a third
20 party, we don't represent him, we have attempted to contact
21 him through numerous ways. He does not respond to any of our
22 requests to see if he would be willing to accept the
23 subpoena.
24      We have asked him to sit for a deposition and
25 produce documents. He does not respond. He is so far, by

1  lack of response, at least implicitly is indicating he is not
2  going to cooperate. He has been gone from Ricoh over ten
3  years now. It is our belief that he is not going to
4  cooperate. Obviously, if he is not going to cooperate, he is
5  not going to show up at trial or anything else.
6       Both plaintiff and the defendants had listed Mr.
7  Shindo as someone who might have information. He is one of
8  the inventors. I presume he has some information. But no
9  one can force him as a third party to cooperate or to appear
10 for a deposition. We have been unsuccessful in doing that.
11 Consequently, we can't produce him.
12      With Dr. Kobayashi, who lives in Japan. He is
13 also not employed by Ricoh. We asked him. He came back and
14 said, yes, he would be willing to voluntarily appear. And
15 that deposition is set up in September, late September.
16      THE COURT: Mr. Kelley, what would you have
17 counsel do in this situation?
18      MR. KELLEY: I understand the difficult situation
19 he is in. This is the first time I heard he hadn't
20 responded. What I guess I would like is a drop-dead date, if
21 you will forgive the phrase, by which we will know he is
22 either going to cooperate by this date or there is not going
23 to be an opportunity for him to appear at trial. It seems to
24 me that should be sometime before the close of discovery, not
25 the final day of discovery.

1       MR. HOFFMAN: That is fine, Your Honor. We would
2  be willing to do that by the end of the year.
3       THE COURT: The drop-dead date is the end of
4  discovery.
5       MR. KELLEY: The complicating factor is if he is
6  going to be deposed in Japan.
7       THE COURT: No. I understand. Obviously, there
8  are challenges that would have to be overcome. For instance,
9  on the last day of discovery, you get word that he is
10 available, the Court will be flexible, perhaps, in all
11 likelihood, and permit the parties an additional period of
12 time in which to complete his deposition. But we can
13 certainly deal with that at the time. At least theoretically
14 the drop-dead date is the last day of discovery.
15      MR. HOFFMAN: We have asked the defendants to
16 produce all documents -- let me read it to you, a single
17 document request in this regard: Produce all documents and
18 tangible things identified in Section B, Items 1 through 8,
19 of defendants' initial disclosure dated and served on or
20 about May 30, 2003.
21      This is where they listed the documents that they
22 are going to rely upon in support of their case. We asked
23 them to produce the documents. Part of the response is,
24 defendants further object to this request as unduly
25 burdensome in seeking discovery of information not reasonably

1  calculated to lead to the discovery of admissible evidence.
2  Defendants further object to this document request as unduly
3  burdensome and on the basis that it seeks detailed discovery
4  regarding operations of defendants that has no relevance to
5  defendants' ASIC products or methods.
6       Your Honor, these are the documents that they
7  listed, the categories of documents they listed in their
8  initial disclosure.
9       The purpose of the initial disclosure, obviously,
10 is either done over the documents, list the categories so the
11 other side can go ahead and request them. We requested
12 them. They came back and have said, no, they are not
13 relevant. We tried to work it out with them. The response
14 was, and this is from Mr. Mower (phonetic), defendants
15 identified eight categories of documents that were likely to
16 be relevant to this dispute. Defendants did not suggest, as
17 your letter implies, that any documents that go into that
18 that fell into these categories were relevant.
19      Well, Your Honor, if they listed them, you only
20 list what you think is relevant. If it is relevant, we are
21 entitled to them. If they didn't list any -- if the
22 documents they listed are not relevant, then why did they
23 list them in their initial disclosure?
24      THE COURT: I agree. What is the defendants'
25 response to this?

Page 53

1    MR. KELLEY: Your Honor, the categories that are
2    identified are relatively generic phrases. Product design,
3    development materials, marketing, promotional materials.
4    Sales and accounting statements. You get the gist. Sort of
5    generic classifications of documents.
6        When we prepared this, this is in the initial
7    disclosure statement, we did not have any idea what their
8    theory of infringement was. All we had was the complaint,
9    which doesn't provide any detail other than you infringe. We
10   did note what our invalidity arguments were going to be and
11   we started collecting that information as quickly as
12   possible. In fact, we have produced the thousands of
13   documents that plaintiffs sometimes refer to in their papers
14   are all prior art articles that we have produced. So we have
15   produced the materials we knew about in describing these
16   categories at that time. We immediately started producing
17   that stuff.
18       Since then, we have agreed to go ahead and get
19   the materials relating to -- and here's where the parties
20   have had some negotiation in the past few days leading up
21   though this call, not ultimately successful but some
22   narrowing of the differences -- we have agreed to produce, to
23   go get documents relating to ASIC products which were
24   developed in a process where there was some logic synthesis.
25   Logic synthesis is the kind of operation performed by Design

Page 54

1    Compiler and other product.
2        And we wanted to further restrict the documents
3    to documents that had some bearing on the use of, the steps
4    which they have identified in their interrogatory, providing
5    input to the logic synthesis to Design Compiler and using
6    Design Compiler to map library cells to produce an output
7    file.
8        They have agreed that their document requests,
9    which asks for every information, all documents about every
10   ASIC, should properly, they have agreed to narrow their
11   request, just in the last few days, to ASIC, whether there
12   was some logic synthesis, i.e., having something to do with
13   the process that is described in their patent. So then the
14   remaining difference, really, in the document requests is
15   whether they get every document that the defendants have on
16   that ASIC or if they get the documents that are relevant to
17   the claimed process.
18       THE COURT: I have to say, this is the first time
19   that I have ever had to deal with an issue involving
20   production related to initial disclosures. I find it
21   extraordinary. Counsel --
22       MS. CORBIN: Your Honor, I think that the problem
23   was that the initial disclosure was inartfully drafted.
24       THE COURT: Perhaps. But what you need --
25       MS. CORBIN: The problem may be, there was a

Page 55

1    subset of documents.
2        THE COURT: Ms. Corbin, I am going to talk over
3    you. You can't talk over me. I know we are on this bridge
4    line and sometimes we talk over one another, and that's okay.
5        But you are going to have to go back and finish
6    your conversation about this, counsel. I am not going to
7    spend any more time on this.
8        Let's move on to No. 5.
9        MR. MEILMAN: Your Honor, actually, you have
10   heard part of the discussion on the document requests.
11   Actually, the interrogatory, No. 7, they are also related.
12       THE COURT: Let's talk about them both then.
13       MR. MEILMAN: Right after the Rule 16 conference
14   in May, we served these document requests and interrogatories
15   on defendants about a month later. And as Mr. Kelley
16   indicated, we have been trying to resolve our differences
17   ever since. We have gotten some information in documents.
18   But it's been dribbled in piece by piece.
19       As Mr. Kelley has told you, that they keep
20   objecting on the grounds that we haven't told them our
21   infringement theory. In essence, what they are doing is they
22   want us to give them our Markman construction before they
23   decide what they are going to give us. That's something that
24   was raised during the Rule 16 conference, and the Court
25   refused to push the Markman conference before any discovery.

Page 56

1        As Mr. Kelley indicated, we have narrowed the
2    definition of what we want, well, the patent in suit is
3    directed to a computer aided design process for making
4    application specific integrated circuits, what has been
5    referred to in this conference call as an ASIC.
6        We have asked them, we have narrowed our request
7    to processes for making ASICs by a computer-aided design
8    process using logic synthesis, development of those
9    processes, what equipment they have used, and any literature
10   they have had about that.
11       Last Friday, they have told us they will provide
12   us details about their current process (inaudible)
13   development. As to two of the defendants, they have a
14   plant in the U.S. But as Mr. Kelley indicated, they want to
15   restrict that to Design Compiler because we indicated we knew
16   they used Design Compiler in at least some of their
17   processes.
18       Yesterday, they backtracked, as far as I
19   understand it, and said we will give you only details as to
20   some of these substeps in the process.
21       They have told us that one of the defendants,
22   Matrox Tech, did design work in Florida, but we will be
23   getting no information about that because it closed its plant
24   in 2000 and those records don't seem to be located.
25       Then there is an issue on questions of responses

## Page 57

1  by the Matrox defendants done in Canada. We have been told
2  that there are additional process steps those defendants
3  carry out which makes the foreign production provisions of
4  Title 35 U.S.C. 271(g) inapplicable. As you may guess, the
5  minute they said that to us, we said, What are those steps?
6  And we have been refused disclosure on that.
7       Yesterday I got a call from Mr. -- I got a letter
8  from Mr. Kelley indicating that if we want, they will make
9  people available with knowledge about their design work for
10 deposition, but we are not going to get any interrogatory or
11 document request.
12      Basically, on the definition of the products --
13 the processes that we wish to have disclosure on, we believe
14 that limiting that to the computer-aided design process with
15 logic synthesis is narrow enough to give us the discovery we
16 want. We know as to some processes the defendants use Design
17 Compiler. What we don't know is whether they have any other
18 products that they have gotten from other suppliers.
19      We have asked them, do you have those? And
20 produce the documents. We have asked both in general and
21 specifically as to one of their -- one of the companies we
22 know provides equipment called Cadence. And basically, we
23 are told we are not going to get an answer. As to other
24 things, when they don't have any documents or it has not been
25 applicable, we have been told that. But as to the generally,

## Page 58

1  are you using somebody else's equipment, are you using
2  Cadence's equipment, we are getting no answer at all.
3       I think that's basically -- that whole approach
4  filters down to everything that is in dispute pretty much on
5  the interrogatories and document requests. As Mr. Kelley
6  said, it is a question of what we are entitled to as far as
7  breadth goes.
8       THE COURT: Okay.
9       MR. MEILMAN: It may very well be there are no
10 other alternate products that the defendants are using. But
11 I think we are entitled to know that.
12      THE COURT: Okay. Let's hear from the other
13 side.
14      MR. KELLEY: Your Honor, let me talk about the
15 271(g) issue in a minute. Let me deal with the document
16 requests first.
17      The fight that we have been having over the last,
18 it's been about three or four weeks the parties have been
19 discussing this in earnest, is these document requests. Once
20 again, let me just read this: Produce all documents -- I am
21 reading from No. 5, Document Request No. 5: Produce all
22 documents concerning the conception, design, development,
23 manufacture, or sale of each of the defendants' ASIC
24 products. Then it goes on and gives some examples sort of
25 thing.

## Page 59

1       There are several. The ones we have objected to
2  and said these are too broad are that kind of thing. They
3  haven't (inaudible) with all products and anything having to
4  do with the design of that product.
5       Now, Mr. Meilman just said that, he said CAD
6  process. As far as I know, that is the first time I have
7  heard them say, what we really need is stuff about the CAD
8  process. Although I am not sure whether he meant -- well,
9  the thing that is relevant here is logic synthesis. It's not
10 the specification, the engineering specification describing
11 what the product was going to do that was formulated back
12 when people were kicking around ideas about what a good
13 product for the company would be. So that's what we have
14 been fighting about now.
15      Ricoh just a few days ago said we will limit the
16 products, as I mentioned, we will limit the products to those
17 products that use logic synthesis.
18      Now, I think the remaining issue is whether the
19 scope of these document requests should be restricted to
20 documents describing the use of logic synthesis or relating
21 to logic synthesis for those products, and not anything
22 having to do with the specification of the product,
23 engineering, planning meetings, memos about how, we have got
24 bugs, our design isn't working, because none of that has
25 anything to do with the claim.

## Page 60

1       THE COURT: Is that an acceptable limitation,
2  Ricoh?
3       MR. HOFFMAN: Your Honor, what we are looking
4  for, as Mr. Meilman, I thought, had indicated, is the
5  documents that relate to the process for manufacturing these
6  ASICs in the designing of the ASICs using systems that have
7  logic synthesis in them. We are not looking for things
8  relating to debugging of the ASICs on other types of -- there is not
9  looking for things on other types of -- there is some
10 categories -- and I would have to go back to exactly what Mr.
11 Kelley said -- other things that were pre the designing of
12 these ASICs using the particular types of processes that are
13 involved in the claims and in the patent here of ASIC
14 designing processes using logic synthesis.
15      That is what we are looking for. We have told
16 them that. To date, they have produced less than a thousand
17 pages of documents.
18      THE COURT: Is that a different way of saying
19 that you are in agreement with the limitation that has just
20 been proposed? Or are you broadening?
21      MR. HOFFMAN: No. I think we are in general
22 agreement of some of the things. Mr. Kelley rattled off a
23 number of things.
24      THE COURT: So did you. So, counsel, my question
25 to you is, now having heard one another speak, and speaking

## Page 61

1  to one another through me, do you think that you can put a
2  finer point on these requests and resolve the objections?
3  Because the Court has now invested an hour and a half of its
4  time on matters, quite frankly, in a manner in which it quite
5  frankly believes could have been better invested.
6      Are we at a point in this discussion as to Items
7  5 and 7 where counsel can be released to your own devices and
8  work it out?
9      MR. KELLEY: I believe.
10     MR. HOFFMAN: I believe, also, Your Honor.
11     If I can just ask one question, because I think
12 it may help in advancing a number of these things that we are
13 trying to work out. We would hope that, and would like a
14 commitment from counsel for the defendants and for Synopsys
15 to work out all these matters, to work diligently over the
16 next week, between now and the end of next week to work out
17 all these matters, so we can get these documents.
18     THE COURT: So ordered, yes.
19     MR. HOFFMAN: And also that the defendants will
20 not object and tell us we can't give it to you, these
21 documents, because it is the confidential information of
22 Synopsys.
23     THE COURT: You have to work through your
24 protective order.
25     MR. HOFFMAN: We will be underneath the

## Page 62

1  protective order, the documents.
2      THE COURT: I think that's a given, counsel.
3      MR. HOFFMAN: Thank you, Your Honor. I
4  appreciate it.
5      THE COURT: Okay.
6      MR. MEILMAN: Your Honor, Mr. Kelley was about to
7  start raising some material on the Matrox people in Canada.
8  I don't want to get that swept under the rug.
9      MR. HOFFMAN: Your Honor, that also probably ties
10 in with Topic No. 8 that they have raised.
11     THE COURT: Topic No. 8 is a non-starter for the
12 Court. I am not going to grant permission to file a letter
13 in support of the seeking of permission to file summary
14 judgment at this time, no.
15     MR. HOFFMAN: I presume we are also entitled then
16 to get discovery out of the people in Canada.
17     THE COURT: I don't see why not.
18     MR. KELLEY: Can I address that issue briefly?
19     THE COURT: Yes.
20     MR. KELLEY: They are seeking discovery -- this
21 claim relates to the logic synthesis process. What they want
22 is the discovery of logic synthesis work done in Canada.
23     THE COURT: Counsel, you are breaking up on us.
24     MR. KELLEY: It seems to me, I know we don't want
25 to get into the issue of whether they are going to prevail on

## Page 63

1  their 271(g) theory. But that's unusual, to try to apply a
2  U.S. patent to seek discovery on work done outside the United
3  States, on things done outside the United States is very
4  unusual.
5      THE COURT: What is the thinking there, Ricoh?
6      MR. HOFFMAN: Your Honor, if a process of
7  manufacturing a product is carried on outside the United
8  States where that process would infringe a process patent
9  inside the United States, then there is a basis for
10 allegation of infringement, the charge of infringement, just
11 boiling it down to a summary format.
12     The Bayer case they are relying upon is talking
13 about something entirely different. It was talking about
14 strictly -- and I have part of the claim here -- a need for
15 determining whether a substance is an inhibitor or
16 activator.
17     That is not what we are talking about here. We
18 are not talking about a method of determining whether or
19 not -- determination of whether a piece of information is in
20 one category or another. We are talking about part of a
21 manufacturing process, and 271 clearly covers that situation,
22 where the products do flow into the United States, that there
23 is infringement of that process patent.
24     This is a manufacturing process. So it's our
25 position we are entitled to it.

## Page 64

1      THE COURT: Does counsel disagree with counsel's
2  statement regarding the current state of the law?
3      MR. KELLEY: Yes, Your Honor. The Bayer case
4  makes it absolutely clear that the manufacturing process,
5  this is the exact question addressed by the Federal Circuit,
6  the manufacturing process, in order to fall within 271(g),
7  the claimed process has to be one using manufacturing the
8  device, the actual physical things that are going to be
9  imported.
10     MR. HOFFMAN: This is all part of the
11 manufacturing process, Your Honor. And what they are trying
12 to do is say, well, since we disagree and we think that we
13 are entitled to summary judgment, we are not going to give
14 you discovery. And we are entitled to that discovery and to
15 show that it is part of the manufacturing process for
16 manufacturing the products that then flow into the United
17 States.
18     THE COURT: Mr. Kelley.
19     MR. KELLEY: Your Honor, if I may finish my
20 point. The case makes it absolutely clear that there has to
21 be a physical good produced under this process. What their
22 claim process produces is a -- a net list, that is then used
23 to produce -- it is sent off to a foundry that actually
24 produces the devices. It is not used in the process of
25 manufacturing the goods. The Federal Circuit decision make

Page 65

1 it quite clear that the process set out has to talk about the
2 actual process, the mechanical physical process of creating
3 the thing that is going to be imported.
4        THE COURT: Let's see if your opponent agrees
5 with that statement.  Do you agree that the case stands for
6 that proposition, counsel?
7        MR. HOFFMAN: No, I don't, Your Honor.  The case
8 stands for the proposition -- that is why I read a portion --
9 it stands for the proposition that when all that is
10 determined by the process is a piece of information that is
11 never used in the manufacturing operation, has nothing to
12 do with manufacturing a product, it is just determining
13 information, that that is not covered by 271.
14        What we have here in this case is one or a series
15 of the steps, the initial steps in designing a product that
16 is -- as part of the manufacturing operation, design and
17 operation, the manufacturing of a product that is imported
18 into the United States.  That is very different.  That is not
19 what the Bayer case is dealing with.
20        THE COURT: Counsel for Matrox.
21        MR. KELLEY: If I am correct about this, then we
22 don't have to have half of the discovery in this case, and if
23 Mr. Meilman is correct, then we do.  What I propose is we
24 brief this question because we are having lawyer argument.
25        THE COURT: What I am going to do first is read

Page 66

1 Bayer.  That might be of some assistance to this issue.  Let
2 me take a look.  If I feel I need further elucidation on this
3 subject, I will let you further address it in some fashion,
4 whether it be in the form of some limited briefing or further
5 discussion, I don't know exactly at this point.  But we will
6 defer No. 8 while the Court takes an opportunity to read the
7 case.
8        MR. HOFFMAN: In the interim, Your Honor, if we
9 can begin to sort out discovery issues with the defendants,
10 with Matrox on this issue, so at least we can resolve the
11 scope and other issues so we can begin to get discovery from
12 them.
13        MR. KELLEY: We are in fact going forward with
14 discovery.  We are in the process of collecting that
15 information about where we do our design work and the general
16 design flow stuff.  I am not sure what more he wanted.  He
17 wanted the same sort of discovery for Matrox that we had for
18 the other defendants.
19        MR. HOFFMAN: Yes, Your Honor.
20        MR. KELLEY: It seems to me it will take -- I
21 understand the Court has a busy schedule.  But he seems to be
22 asking that we do this very discovery that I am suggesting
23 could be avoided.
24        THE COURT: I think that is correct.  What I am
25 going to order is. as far as the Matrox defendants are

Page 67

1 concerned, we are going to defer engaging that process. Mr.
2 Hoffman, for a brief period of time, while I take a look at
3 the case, if necessary, get the benefit of further thoughts
4 from counsel.
5        Let's deal with No. 6.  Have we dealt with No.
6 6?
7        MR. MEILMAN: Your Honor, just, we use the term
8 Matrox defendants.  One of the Matrox defendants was Matrox
9 Tech, which had a plant and was doing work in Florida.  I
10 take it that as far as their objections as to activity in
11 Canada, Your Honor's order does not apply to Matrox Tech.
12        THE COURT: Are we in agreement with that?
13        MR. KELLEY: Yes, Your Honor.  We are in the
14 process of collecting those documents for that work like we
15 are doing for every other -- the other non-Matrox defendants.
16        THE COURT: Then we are in agreement, counsel.
17        MR. MEILMAN: Thank you, Your Honor.
18        MR. HOFFMAN: Your Honor, since it may help avoid
19 a future dispute or arguments, Mr. Kelley has indicated they
20 are collecting documents.  Does he have a date by which he
21 believes they will be produced?
22        THE COURT: Mr. Kelley?
23        MR. KELLEY: We are doing a rolling production.
24 We are getting stuff as quickly as we can get it.  We
25 produced documents just a few days ago.

Page 68

1        MR. HOFFMAN: Will we have all of them produced
2 by mid-September, Mr. Kelley?
3        MR. KELLEY: I would hope so.
4        THE COURT: No. 6, what do we have left with
5 regard to No. 6?
6        MR. KELLEY: We would like to take that off.
7        THE COURT: That is fine with the Court,
8 counsel.  You don't need to explain.
9        Counsel, I will take a look at the Bayer case.
10 You will hear from me one way or the other shortly.
11        (Counsel say "thank you.")
12        THE COURT: Take care.
13        (Teleconference concluded at 12:40 p.m.)
14             - - -
15 Reporter:  Kevin Maurer
16
17
18
19
20
21
22
23
24
25

| | | |
|---|---|---|
| **-and** [2] 1:19    2:3 | 48:12    48:12    48:15 | **alone** [1]    44:3 |
| **00** [1]    1:13 | 49:22 | **alternate** [4]    42:13 |
| **03-103-GMS** [1] | **acceptable** [4]    27:2 | 43:14    45:21    58:10 |
| 1:10 | 40:12    45:25    60:1 | **always** [1]    45:11 |
| **1** [4]    3:8    3:9 | **accordance** [1]    49:10 | **AMI** [1] 1:7 |
| 41:3    51:18 | **according** [1]    5:20 | **among** [1]    27:11 |
| **10** [1]    26:25 | **accounting** [1]    53:4 | **amongst** [1]    9:24 |
| **100** [2]    33:17    40:15 | **accounts** [1]    44:4 | **amount** [1]    9:19 |
| **11** [1]    1:13 | **accurate** [1]    15:17 | **ancillary** [2]    21:11 |
| **12** [4]    15:20    16:3 | **acknowledged** [1] | 21:12 |
| 18:9    68:13 | 12:22 | **answer** [4]    26:17 |
| **14** [2]    6:24    15:20 | **action** [4]    1:4 | 49:17    57:23    58:2 |
| **14th** [1]    4:25 | 34:19    34:22    37:13 | **answering** [1]    24:17 |
| **15** [1]    16:2 | **activator** [1]    63:16 | **answers** [1]    39:14 |
| **16** [2]    55:13    55:24 | **activities** [1]    33:23 | **anyway** [5]    16:8 |
| **17** [2]    6:6    12:11 | **activity** [1]    67:10 | 22:13    24:2    24:20 |
| **1996** [1] 44:14 | **actual** [4]    14:24 | 24:23 |
| **2** [7]    3:4    7:17 | 21:8    64:8    65:2 | **apologize** [2]    31:4 |
| 9:8    10:1    10:2 | **additional** [6]    8:24 | 41:24 |
| 12:2    38:22 | 8:24    25:6    32:6 | **apparent** [2]    23:9 |
| **20** [2]    16:2    44:5 | 51:11    57:2 | 43:20 |
| **2000** [1] 56:24 | **address** [7]    23:1 | **appear** [4]    48:17 |
| **2003** [5] 1:13    9:8 | 30:5    35:21    37:18 | 50:9    50:14    50:23 |
| 31:9    31:9    51:20 | 46:2    62:18    66:3 | **APPEARANCES** [2] |
| **21st** [1]    6:6 | **addressed** [1]    64:5 | 1:17    2:1 |
| **22** [1]    12:12 | **admissible** [1]    52:1 | **applicable** [1]    57:25 |
| **23rd** [1] 6:12 | **admitted** [1]    38:16 | **application** [1]    56:4 |
| **25th** [1] 32:18 | **advance** [1]    49:15 | **apply** [1]    63:1 |
| **26th** [2] 31:8    32:18 | **advancing** [1]    61:12 | 67:11 |
| **271** [6]    57:4    58:15 | **adversarial** [1]    43:19 | **appreciate** [2]    18:16 |
| 63:1    63:21    64:6 | **advisable** [1]    7:20 | 62:4 |
| 65:13 | **AEROFLEX** [1] | **approach** [1]    58:3 |
| **28** [1]    1:13 | 1:7 | **appropriate** [18] |
| **28th** [1] 16:12 | **again** [2]    14:18 | 7:22    13:9    13:18 |
| **3** [3]    3:4    47:23 | 58:20 | 13:18    13:18    14:14 |
| 47:24 | **agenda** [1]    2:25 | 14:19    14:25    15:1 |
| **30** [2]    29:14    51:20 | **ago** [4]    11:5    11:5 | 19:24    20:3    20:7 |
| **30th** [10] 5:2    8:1 | 59:15    67:25 | 20:20    20:23    22:22 |
| 8:15    11:4    12:4 | **agree** [8] 18:12    32:13 | 22:23    32:11    45:19 |
| 13:22    31:6    31:9 | 35:3    41:3    41:11 | **appropriately** [1] |
| 32:5    32:18 | 41:12    52:24    65:5 | 34:23    35:15    43:4 |
| **31st** [7]    3:12    4:7 | 54:10 | **area** [1]    45:11 |
| 7:17    8:23    9:1 | **agreed** [8] | **argue** [1]    46:18 |
| 26:23    26:24 | 41:5    41:6    48:5 | **arguing** [3]    2:24 |
| **34-day** [1]    32:20 | 53:18    53:22    54:8 | 2:25    3:3 |
| **35** [1]    57:4 | 54:10 | **argument** [2]    2:22 |
| **40** [1]    68:13 | **agreement** [11]    19:5 | 65:24 |
| **5** [8]    3:5    38:23 | 19:6    19:6    19:7 | **arguments** [2]    53:10 |
| 38:25    40:22    55:8 | 40:24    41:1    43:23 | 67:19 |
| 58:21    58:21    61:7 | 60:19    60:22    67:12 | **Arnold** [1]    2:5 |
| **6** [6]    3:4    9:8 | 67:16 | **art** [11]    17:2    17:17 |
| 67:5    67:6    68:4 | **agrees** [2]    24:22 | 17:21    18:2    18:4 |
| 68:5 | 65:4 | 18:10    18:10    21:23 |
| **7** [3]    3:5    55:11 | **ahead** [5]    12:9 | 30:6    33:16    53:14 |
| 61:7 | 13:12    18:15    52:11 | **articles** [1]    53:14 |
| **8** [6]    3:4    12:20 | 53:18 | **articulated** [1]    25:15 |
| 51:18    62:10    62:11 | **aided** [1]    56:3 | **ASIC** [1]    39:2 |
| 66:6 | **allegation** [1]    63:10 | 39:20    40:10    52:5 |
| **9** [1]    12:11 | **allegations** [1]    39:15 | 52:23    54:10    54:11 |
| **a.m** [1]    12:11 | **allege** [2]    43:4 | 54:16    56:5    58:23 |
| **able** [2]    23:1    44:10 | 43:4 | 60:13 |
| **absolutely** [3]    46:4 | **allegedly** [1]    37:5 | **ASICs** [5]    56:7 |
| 64:4    64:22 | **alleging** [1]    44:19 | 60:6    60:6    60:8 |
| **accept** [5]    40:7 | **allow** [1]    67:21 | 60:12 |
| | **allowed** [1]    21:18 | **asks** [1]    54:9 |

| | | |
|---|---|---|
| **aspect** [3]    12:12 | **behalf** [2]    3:2 |
| 17:23    42:7 | 3:25 |
| **aspects** [1]    17:20 | **Behavioral** [5]    33:24 |
| 18:6 | 34:8    41:4    42:22 |
| **assertion** [1]    24:18 | 44:2 |
| **asserts** [1]    12:1 | **belief** [2]    29:10 |
| **assignment** [1] 15:23 | 29:11    50:3 |
| **assistance** [1]    66:1 | **believes** [3]    32:23 |
| **assume** [1]    49:1 | 61:5    67:21 |
| **assumed** [1]    5:18 | **benefit** [1]    67:3 |
| **assuming** [1]    48:22 | **better** [2]    36:7 |
| **attack** [1]    46:24 | 61:5 |
| **attained** [1]    38:7 | **between** [13]    3:10 |
| **attempted** [1]    49:20 | 4:17    6:9    7:25 |
| **attorney** [6]    8:3 | 8:13    9:18    9:24 |
| 8:3    9:24    11:22 | 12:25    13:5    16:6 |
| 27:16    28:6 | 23:12    24:6    61:7 |
| **attorney-client** [2] | **beyond** [3]    3:25 |
| 4:12    9:4 | 12:2    43:24 |
| **attorneys** [5]    9:24 | **bit** [2]    16:22    38:23 |
| 11:20    27:11    27:12 | **Bob** [1]    2:11 |
| 36:11 | **body** [2] 45:15 |
| **attorneys'** [1]    45:19 | **boiling** [1]    63:11 |
| **August** [1]    1:13 | **booked** [1]    49:3 |
| 4:25    9:8    26:24 | **bottom** [1]    46:17 |
| **author** [1]    27:16 | **Bove** [2] 2:2    2:20 |
| **available** [9]    7:20 | **brand-new** [1]    9:11 |
| 34:7    36:20    36:24 | **breadth** [2]    37:19 |
| 43:2    48:6    49:10 | 37:20    58:7 |
| 51:10    57:9 | **break** [3]    19:5 |
| **avoid** [1]    67:18 | 27:20    27:21 |
| **avoided** [1]    66:23 | **breaking** [1]    62:23 |
| **aware** [2]    7:18 | **bridge** [1]    55:3 |
| 35:24 | **brief** [2] 65:24    67:2 |
| **away** [1] 13:16 | **briefing** [1]    66:4 |
| **B** [1]    51:18 | **briefly** [2]    38:15 |
| **back-door** [1]    46:24 | 62:18 |
| **backtracked** [1] 56:18 | **bring** [3] 43:4    48:20 |
| **ball** [1]    40:25 | 49:12 |
| **based** [4]    14:12 | **broad** [3]    40:19 |
| 16:22    24:6    26:11 | 46:25    59:2 |
| **basic** [1] 34:3 | **broadening** [1]    60:20 |
| **basics** [1]    34:2 | **broken** [1]    37:25 |
| **basis** [23]    4:12 | **Brothers** [31]    1:21 |
| 4:20    4:23    7:9 | 2:15    3:13    3:9 |
| 7:11    7:12    9:4 | 3:19    3:23    4:5 |
| 10:6    10:22    13:25 | 4:5    4:6    11:25 |
| 25:22    26:16    28:1 | 12:10    14:8    14:21 |
| 35:5    35:13    36:1 | 15:10    15:17    16:9 |
| 38:3    38:17    39:14 | 16:11    19:25    21:4 |
| 39:24    41:25    52:3 | 24:4    24:5    24:14 |
| 63:9 | 24:21    25:1    25:7 |
| **batting** [1]    40:25 | 25:9    25:23    25:25 |
| **Bayer** [5]    63:11 | 28:12    32:4    32:17 |
| 64:3    65:19    66:1 | **bugs** [1] 59:24 |
| 68:9 | **bulletins** [1]    39:4 |
| **bearing** [1]    54:3 | **burden** [3]    41:20 |
| **became** [1]    9:1 | 41:22    41:23 |
| **become** [2]    17:5 | **burdensome** [2] 51:25 |
| 38:24 | 52:3 |
| **beef** [1]    46:9 | **busy** [1] 66:21 |
| **beforehand** [1]    19:18 | **CAD** [2] 59:5    59:7 |
| **begin** [1]    66:9 | **Cadence** [1]    59:22 |
| 66:11 | **Cadence's** [1]    58:2 |
| | **cage** [1]    15:25 |

CondenseIt™

calculated · Court

**calculated** [1] 52:1
**California** [5] 2:5
2:20  34:19  35:2
37:11
**calls** [1] 6:9
**camera** [10] 4:13
4:20  10:8  10:20
10:20  10:24  12:18
13:25  17:24  28:2
**Canada** [5] 57:1
62:7  62:16  62:22
67:11
**cannot** [3] 18:7
19:3  43:16
**capability** [1] 43:24
**capture** [2] 31:13
31:24
**care** [1] 68:12
**careful** [1] 15:2
**carpet** [1] 13:15
**carried** [1] 63:7
**carry** [1] 57:3
**cart** [1] 44:21
**case** [36] 5:19  6:1
6:4  17:9  18:11
20:18  22:3  23:18
24:15  27:24  37:11
37:11  38:6  39:9
39:16  41:20  41:21
43:3  43:4  43:7
44:22  46:11  46:21
47:2  51:22  63:12
64:3  64:20  65:5
65:7  65:14  65:19
65:22  66:7  67:3
68:9
**cases** [1] 45:10
**categories** [10] 6:16
6:19  33:15  52:7
52:10  52:15  52:18
53:1  53:16  60:10
**category** [2] 22:20
63:20
**cautious** [1] 13:7
**cells** [4] 39:18  40:9
42:3  54:6
**certain** [3] 22:2
29:8  42:1
**certainly** [2] 24:21
51:13
**cetera** [4] 10:5
10:5  39:5  39:6
**challenge** [1] 21:5
**challenges** [1] 51:8
**change** [1] 19:4
**charge** [1] 63:10
**charged** [1] 36:3
**charging** [1] 36:1
**chart** [1] 44:19
**checking** [1] 19:20
**Chinese** [1] 22:3
**chip** [2] 39:20  47:17
**chose** [4] 19:12
19:15  19:16  19:17
**Chris** [2] 2:21

46:2
**Christopher** [2] 2:4
11:2
**Circuit** [3] 27:23
64:5  64:25
**circuits** [1] 56:4
**Civil** [1] 1:4
**claim** [7] 10:23
42:19  44:19  59:25
62:21  63:14  64:22
**claimed** [2] 54:17
64:7
**claims** [2] 45:22
60:13
**clarification** [1]
24:3
**clarify** [3] 17:10
23:22  23:23
**clarifying** [1] 24:17
**classifications** [1]
53:5
**clause** [3] 9:11
9:14  12:1
**clear** [9] 3:20  8:2
23:17  27:4  31:7
32:4  64:4  64:20
65:1
**clearly** [4] 4:21
20:5  35:10  63:21
**cliche** [1] 20:22
**client** [1] 17:15
**clients** [1] 9:24
**close** [3] 28:3  48:24
50:24
**closed** [1] 56:23
**co-counsel** [1] 2:15
**colleague** [1] 2:13
**collected** [1] 13:20
**collecting** [4] 53:11
66:14  67:14  67:20
**coming** [1] 20:10
26:15  30:20
**comment** [1] 28:22
**comments** [1] 32:10
**commitment** [2]
48:14  61:14
**communicated** [1]
23:16  31:20
**communication** [1]
27:14  27:15
**communications** [29]
4:9  4:19  6:7
8:17  9:10  9:13
9:22  9:23  10:10
10:17  12:2  12:15
12:23  12:25  13:24
13:25  16:19  17:13
17:15  18:20  20:14
20:15  22:8  24:10
31:13  31:22  31:24
32:19  32:22
**companies** [1] 57:21
**company** [1] 1:4
45:8  59:13
**compare** [1] 17:2

**Compiler** [34] 33:23
33:24  34:6  34:8
34:8  35:24  36:4
39:17  39:18  40:7
40:8  41:4  41:4
42:2  42:2  42:22
42:22  44:2  44:12
44:3  44:6  44:18
45:5  46:19  46:21
47:12  47:13  47:14
54:1  54:5  54:6
56:15  56:16  57:17
**complain** [1] 19:20
**complained** [2] 19:8
35:17
**complaining** [1]
23:24
**complaint** [2] 26:4
41:23  53:8
**complete** [2] 5:3
51:12
**completely** [2] 10:13
49:3
**complicating** [1]
51:5
**comport** [1] 12:8
**computer** [1] 56:3
**computer-aided** [1]
56:7  57:14
**conception** [1] 58:22
**concern** [5] 4:24
5:3  17:10  17:22
21:3
**concerned** [1] 67:1
**concerning** [2] 39:1
58:22
**concluded** [1] 68:13
**conduct** [1] 17:4
**conference** [17] 1:14
4:1  6:12  11:4
13:21  31:6  31:25
32:3  32:5  32:6
32:22  33:11  34:21
55:13  55:24  55:25
56:5
**confidential** [39]
5:25  6:10  6:14
6:19  7:15  8:5
8:9  11:7  11:11
11:18  11:22  13:3
13:13  14:11  19:9
19:10  21:18  23:15
23:25  24:19  24:22
24:24  25:2  25:20
26:3  26:20  28:7
28:19  28:25  34:9
34:11  35:6  36:13
37:3  38:12  41:12
42:15  44:12  61:21
**confidentiality** [2]
41:18  41:19
**conflict** [1] 19:2
**confused** [2] 27:7
28:7
**confusion** [1] 25:16
**connection** [1] 46:15
**Connolly** [2] 2:2
2:19

**consequently** [4]
19:2  34:18  42:23
50:11
**consider** [1] 4:1
**considerations** [1]
41:19
**construction** [1]
55:22
**Consulate** [1] 49:5
**consulates** [1] 49:3
**consultations** [1]
16:24
**consulted** [2] 24:1
26:14
**consulting** [17] 5:12
7:5  7:8  7:15
13:14  14:16  15:15
16:14  16:18  17:3
18:9  19:1  19:5
19:7  19:14  21:20
26:18
**contact** [2] 18:22
49:20
**contacted** [1] 18:25
**contains** [1] 45:3
**contend** [1] 39:12
**contents** [1] 25:13
**continue** [3] 4:5
22:14  24:8
**continued** [3] 2:1
14:12  26:11
**continues** [1] 4:11
**contract** [3] 5:11
5:12  5:21
**contradicted** [1]
5:1
**contradiction** [1]
7:25
**contrary** [1] 19:18
23:18
**conversation** [6]
11:19  12:9  25:13
26:2  26:10  55:6
**conversations** [1]
16:6
**convinced** [1] 11:10
**cooperate** [9] 45:17
48:16  48:23  49:9
50:2  50:4  50:4
50:9  50:22
**cooperation** [1] 43:20
**copy** [1] 12:10
**Corbin** [33] 2:3
2:21  17:8  18:14
22:9  22:11  22:24
23:1  23:8  23:22
23:24  25:3  25:14
25:16  27:4  29:19
29:22  30:3  30:4
30:24  31:10  31:13
32:14  32:21  32:25
33:9  34:21  44:1
44:25  46:2  54:22
54:25  55:2
**Corbin's** [1] 24:17
**core** [1] 39:2

**CORP** [1] 1:9
**correct** [7] 30:3
30:9  32:24  42:9
65:21  65:23  66:24
**correctly** [1] 15:8
**correspondence** [1]
27:12
**counsel** [57] 1:23
2:6  2:10  4:8
4:18  5:6  5:12
5:14  5:17  6:15
6:17  7:15  8:19
8:23  9:9  9:19
10:11  11:15  11:17
13:1  13:4  13:14
14:5  14:16  15:10
16:19  16:24  17:4
17:8  18:13  22:10
25:15  26:14  38:11
40:11  40:12  41:10
43:18  45:9  45:16
49:18  50:17  54:21
55:6  60:24  61:7
61:14  62:2  62:23
64:1  65:6  65:20
67:4  67:16  68:8
68:9  68:11
**counsel's** [1] 64:1
**couple** [1] 6:15
**course** [5] 9:25
10:18  46:6  46:18
48:22
**Court** [164] 1:1
2:10  2:17  2:22
3:6  3:11  3:16
3:18  3:21  4:5
4:13  4:20  5:7
7:16  7:18  7:21
7:23  8:19  9:3
9:6  11:25  12:4
14:1  14:5  14:18
14:22  14:25  15:7
16:9  16:13  17:24
17:24  18:12  18:15
19:23  20:7  20:9
20:13  20:24  21:16
22:10  22:15  22:16
22:20  22:20  22:22
22:24  23:3  23:4
23:7  23:7  23:9
23:20  23:23  24:3
24:14  24:24  25:5
25:14  25:22  27:2
27:18  27:23  28:10
28:18  28:21  28:22
29:3  29:4  29:8
29:10  29:12  29:13
29:13  29:18  29:20
29:24  30:3  30:7
30:22  31:5  31:6
31:10  31:15  31:16
32:1  32:13  32:15
32:23  32:24  33:2
33:5  33:8  33:10
33:20  34:22  35:14
35:25  36:2  37:10
37:14  37:23  38:14
40:11  40:16  40:23
41:9  41:16  41:22
42:11  43:11  43:17
44:4  44:8  44:21
45:9  46:7  47:18

| | | | |
|---|---|---|---|
| 47:19  48:2  49:7 | **decided** [1]  19:4 | 54:6  56:3  56:7 | 52:23  53:7  54:23 | 14:10  14:23  14:24 |
| 49:14  49:17  50:16 | **decision** [3]  14:21 | 56:15  56:16  56:22 | 57:6  57:13 | 20:8  20:10  22:13 |
| 51:3  51:7  51:10 | 37:8  64:25 | 57:9  57:14  57:16 | **disclosures** [1]  54:20 | 22:18  22:19  23:14 |
| 52:24  54:18  54:24 | **declaration** [2]  11:2 | 58:22  59:4  59:24 | **discover** [1]  18:8 | 25:11  25:17  26:8 |
| 55:2  55:12  55:24 | 11:3 | 65:16  66:15  66:16 | 33:18 | 26:22  27:1  27:8 |
| 58:8  58:12  60:1 | **deep** [1]  20:5 | **designing** [4]  60:6 | **discoverability** [1] | 27:9  27:10  27:11 |
| 60:18  60:24  61:3 | **defendant** [1]  16:20 | 60:11  60:14  65:15 | 43:22 | 27:17  28:1  29:5 |
| 61:18  61:23  62:2 | **defendants** [58]  1:10 | **detail** [3]  38:17 | **discoverable** [1] | 29:9  29:15  29:25 |
| 62:5  62:11  62:12 | 2:6  2:18  3:15 | 42:5  53:9 | 43:12 | 30:5  30:8  30:13 |
| 62:17  62:19  62:23 | 3:25  4:8  4:14 | **detailed** [3]  4:14 | **discovery** [36]  34:22 | 31:1  33:13  33:17 |
| 63:5  64:1  64:18 | 4:18  7:1  8:16 | 44:19  52:3 | 34:23  34:25  37:8 | 34:7  34:11  34:16 |
| 65:4  65:20  65:25 | 9:9  11:17  11:20 | **details** [6]  12:21 | 37:9  37:12  39:8 | 35:2  35:6  35:17 |
| 66:6  66:21  66:24 | 12:14  13:1  15:10 | 35:10  43:2  44:18 | 44:23  46:12  46:25 | 36:6  36:10  36:13 |
| 67:12  67:16  67:22 | 17:4  17:19  18:24 | 56:12  56:19 | 48:2  48:15  48:18 | 36:17  36:18  36:20 |
| 68:4  68:7  68:7 | 22:17  24:8  33:20 | **determination** [9] | 48:25  50:24  50:25 | 36:21  36:22  36:24 |
| 68:12 | 34:12  34:24  35:8 | 13:9  14:2  14:3 | 51:4  51:9  51:14 | 37:3  38:3  39:1 |
| **Court's** [1]  18:16 | 36:6  36:7  36:10 | 14:6  14:8  14:14 | 51:25  52:1  52:3 | 39:25  40:1  40:4 |
| **cover** [2]  9:21 | 39:16  39:23  42:18 | 14:19  15:1  63:19 | 55:25  57:15  62:16 | 40:4  40:4  40:15 |
| 10:15 | 46:10  46:21  47:3 | **determine** [1]  62:20 | 62:22  63:2 | 41:4  41:4  41:7 |
| **covered** [1]  65:13 | 47:13  50:6  51:15 | **determined** [1]  65:10 | 64:14  64:14  65:22 | 41:8  42:7  42:12 |
| **covers** [1]  63:21 | 51:24  52:2  52:4 | **determines** [1]  48:23 | 66:6  66:11  66:14 | 42:15  44:6  44:14 |
| **craft** [1]  45:17 | 52:14  52:16  54:15 | **determining** [3] 63:15 | 66:17  66:22 | 44:15  49:25  51:16 |
| **crafted** [1]  39:8 | 55:15  56:13  56:21 | 63:18  65:12 | **discrete** [2]  41:7 | 51:17  51:21  51:23 |
| **create** [4]  19:11 | 57:1  57:2  57:16 | **developed** [1]  7:14 | 42:12 | 52:6  52:7  52:10 |
| 19:21  29:11  39:18 | 58:10  61:14  61:19 | 15:14  15:24  17:16 | **discuss** [1]  47:20 | 52:15  52:17  52:22 |
| **created** [1]  19:21 | 66:9  66:18  66:25 | 18:4  53:24 | **discussed** [4]  6:1 | 53:5  53:13  53:23 |
| 21:21 | 67:8  67:8  67:15 | **development** [5] | 12:21  21:1  31:20 | 54:2  54:3  54:9 |
| **creating** [1]  65:2 | **defendants'** [6] 33:21 | 17:21  53:3  56:8 | **discussing** [1]  58:19 | 54:16  55:1  55:17 |
| **creation** [1]  20:6 | 33:22  51:19  52:5 | 56:13  58:22 | **discussion** [6]  12:3 | 57:20  57:24  58:20 |
| **credibility** [4]  20:17 | 52:24  58:23 | **device** [1]  64:8 | 45:24  47:25  55:10 | 58:22  59:20  60:5 |
| 20:17  21:6  21:6 | **defer** [2] 66:6  67:1 | **devices** [2]  61:7 | 61:6  66:5 | 60:17  61:17  61:21 |
| **crime/fraud** [3] 27:22 | **deference** [1]  15:17 | 64:24 | **discussions** [3] 31:21 | 62:1  67:14  67:20 |
| 28:11  28:13 | **defined** [1]  41:10 | **Dickstein** [1]  1:21 | 42:20  42:20 | 67:25 |
| **critical** [3]  14:3 | **definition** [2]  56:2 | **difference** [2]  3:10 | **disingenuous** [1] | **doesn't** [5]  10:19 |
| 38:6  38:13 | 57:12 | 54:14 | 36:4 | 10:23  16:3  17:18 |
| **cross-purposes** [1] | **Delaware** [4]  1:2 | **differences** [3] 53:22 | **dismiss** [1]  33:22 | 53:9 |
| 23:10 | 1:12  33:8  37:13 | 55:16 | **dispute** [3]  52:16 | **done** [10]  9:17 |
| **culled** [1]  17:12 | **depose** [1]  39:15 | **different** [3]  60:18 | 58:4  67:19 | 10:21  19:12  29:18 |
| **current** [2]  56:12 | **deposed** [2]  4:25 | 63:13  65:18 | **disqualification** [4] | 47:12  52:10  57:1 |
| 64:2 | 51:6 | **difficult** [3]  17:6 | 7:19  20:1  20:2 | 62:22  63:2  63:3 |
| **customers** [2]  45:5 | **deposition** [27]  6:13 | 43:19  50:18 | 21:10 | **door** [1]  21:19 |
| 46:24 | 7:3  8:1  11:6 | **DiGiovanni** [22] | **disqualified** [4] 14:20 | **doubt** [1]  27:16 |
| **cut** [1]  38:19 | 13:12  14:13  15:13 | 2:2  2:19  2:19 | 15:3  21:2  22:6 | **down** [2]  58:4 |
| **cutoff** [3]  30:2 | 15:19  15:22  16:5 | 2:24  3:13  3:17 | **disqualify** [3]  11:15 | 63:11 |
| 26:13  28:5  28:24 | 16:15  23:14  25:17 | 3:24  7:23  7:24 | 13:8  22:4 | **Dr** [94]  4:9  4:10 |
| **D.C** [1]  1:22 | 26:13  28:5  28:24 | 9:5  9:7  11:25 | **DISTRICT** [2]  1:1 | 4:17  4:25  5:1 |
| **databases** [1]  39:2 | 32:15  48:6  48:21 | 13:10  15:16  16:23 | 1:2 | 5:8  5:10  5:10 |
| **date** [14]  18:21  29:5 | 48:22  48:25  49:12 | 17:12  27:4  27:6 | **doctrine** [1]  4:12 | 5:12  5:17  5:18 |
| 30:20  31:5  32:7 | 49:24  50:10  50:15 | 27:19  30:11  30:25 | **document** [28]  18:20 | 5:20  5:22  5:24 |
| 32:15  33:15  39:14 | 51:12  57:10 | 31:11 | 25:20  29:23  37:20 | 6:2  6:5  6:10 |
| 50:20  50:22  51:3 | **depositions** [1] 49:1 | **DiGiovanni's** [1] | 37:20  38:1  38:8 | 6:13  6:18  7:1 |
| 51:14  60:16  67:20 | **describe** [2]  40:6 | 12:8 | 38:9  38:12  38:13 | 7:6  7:7  7:11 |
| **dated** [1]  51:19 | 40:7  40:8 | **diligently** [1]  61:15 | 38:18  38:19  38:22 | 8:1  8:1  8:6 |
| **dates** [1] 36:22 | **described** [6]  6:18 | **directed** [1]  56:3 | 39:21  40:3  51:17 | 8:13  8:17  9:11 |
| **days** [8]  8:6  11:8 | 9:22  9:23  27:8 | **directly** [1]  17:3 | 52:2  54:8  54:14 | 9:13  9:15  10:9 |
| 26:25  32:1  53:20 | 40:11  54:13 | 36:7  38:6 | 54:15  55:10  55:14 | 10:10  10:12  11:5 |
| 54:11  59:15  67:25 | **describing** [5]  42:5 | **disagree** [1]  64:1 | 57:11  58:5  58:15 | 11:9  11:16  11:18 |
| **deadline** [1]  49:8 | 42:7  53:15  59:10 | 64:12 | 58:19  58:21  59:19 | 12:15  12:23  12:25 |
| **deal** [5]  42:1  51:13 | 59:20 | **disagreement** [1] | **documentation** [3] | 13:3  13:5  13:11 |
| 54:19  58:15  67:5 | **design** [43]  33:23 | 43:21 | 18:1  23:12  42:4 | 13:24  14:11  14:16 |
| **dealing** [1]  65:19 | 34:5  34:8  35:24 | **disclose** [7]  4:8 | **documents** [118] | 15:5  15:8  15:19 |
| **dealt** [2] 18:19  67:5 | 36:4  39:2  39:17 | 8:16  9:10  9:10 | 4:10  4:11  4:16 | 16:7  16:13  16:16 |
| **debate** [1]  12:7 | 39:18  40:7  40:8 | 9:13  10:9  12:14 | 5:9  8:12  8:18 | 16:20  16:24  17:5 |
| **debugging** [1]  60:8 | 40:10  41:4  42:1 | **disclosed** [2]  5:16 | 9:4  9:15  10:2 | 17:14  17:16  18:3 |
| **decide** [3]  44:20 | 42:2  42:21  44:2 | 10:15 | 10:3  10:4  10:4 | 18:21  18:22  18:25 |
| 44:22  55:23 | 44:3  44:6  44:18 | **disclosure** [9]  17:12 | 10:6  10:11  10:14 | 19:2  19:13  23:13 |
| | 45:5  46:19  46:21 | 51:19  52:8  52:9 | 10:20  10:22  12:16 | 23:13  23:15  24:8 |
| | 47:12  47:13  47:14 | | 12:17  14:6  14:9 | 24:25  25:1  25:12 |
| | 53:2  53:25  54:5 | | | 26:9  26:11  26:18 |
| | | | | 26:17  27:13  27:14 |
| | | | | 28:5  28:18  28:23 |
| | | | | 28:24  29:5  29:23 |

CondenseIt™                                                                    drafted - Hoffman

| | | |
|---|---|---|
| 30:14 | 30:17 | 31:1 |
| 31:19 | 31:20 | 31:22 |
| 32:7 | 32:9 | 32:10 |
| 32:19 | 50:12 | |

**drafted** [2]            46:14
54:23

**drawing** [1]          25:22

**dribbled** [1]         55:18

**drop** [1] 32:1

**drop-dead** [3]       50:20
51:3     51:14

**dropping** [1]        13:11

**due** [1]  15:17

**duplication** [1] 34:18

**during** [11]                5:1
5:7     5:24    6:17
24:7    26:2    28:24
34:21   48:8    48:17
55:24

**e-mail** [11]             8:7
8:10    16:13   19:1
23:11   26:4    26:6
26:12   27:12   27:14
32:8

**e-mails** [12]          4:17
6:9     6:12    6:21
8:10    8:11    9:18
9:20    9:22    23:6
31:2    32:6

**early** [2] 30:17    48:8

**earnest** [1]         58:19

**easily** [1]          18:19

**Ed** [1]   2:14

**EDWARD** [1]   1:20

**eight** [1] 52:15

**either** [6]             31:15
31:17   49:2    49:10
50:22   52:10

**elected** [1]          24:23
46:23

**ELECTRONIC** [1]
1:8

**elucidation** [1] 66:2

**embassy** [3]         49:2
49:3    49:12

**employed** [1]        50:13
45:22

**enable** [2]           45:18

**encourage** [1]       19:5

**end** [6]    11:13    13:11
47:15   51:2    51:3
61:16

**engage** [1]           12:6

**engaged** [2]         19:18
19:19

**engaging** [1]        67:1

**engineering** [7] 38:1
38:9    40:1    42:7
44:6    59:10   59:23

**entered** [2]          3:11
12:4

**entire** [1]           8:12

**entirely** [1]        63:13

**entitled** [12]        16:5
18:8    21:5    39:25

43:6     52:21   58:6
58:11    62:15   63:25
64:13    64:14

**equipment** [4]       56:9
57:22    58:1    58:2

Eric [2]  2:4    2:21

**especially** [1]      28:4

**ESQ** [9]  1:18      1:18
1:20     1:20    1:21
2:2      2:3     2:4
2:4

**essence** [6]         26:13
34:21    34:25   37:7
40:18    55:21

**essentially** [1]     18:11

**establish** [1]       43:6

**established** [1] 27:24

**establishing** [1] 28:4

**estimate** [1]        23:5

**et** [4]   10:5     10:5
39:5     39:6

**event** [2]           10:23
26:21

**eventually** [1]      20:11

**everybody** [1]       24:22

**everyone's** [1]      21:22

**evidence** [6]        11:16
17:1     25:19   26:1
38:5     52:1

**exact** [2] 10:14     64:5

**exactly** [1]          40:7
42:5     44:18   47:9
48:10    60:10   66:5

**example** [1]          5:4
21:16    27:22

**examples** [1]        58:24

**except** [1]          47:13

**exception** [4]       27:20
27:23    28:11   28:13

**exchange** [4]        23:11
23:12    25:20   26:12

**Excluding** [1]       32:21

**exclusive** [1]        47:4

**exclusively** [1]     47:11

**exercise** [1]        40:5

**expect** [1]           39:9

**expectation** [1]     7:9

**expecting** [1]       11:13

**expedition** [1]     39:25

**experience** [1]      45:10

**expert** [8]          5:17
5:18     7:2     11:9
11:13    15:12   16:14
42:20

**experts** [1]          5:16

**explain** [1]         68:8

**explained** [1]       35:18

**explanation** [1]     34:3

**explicitly** [1]       5:24

**extended** [1]        12:7

**extent** [4]          22:24
24:11    32:8    47:1

**extraordinarily** [1]
45:12

**extraordinary** [1]
54:21

**eyes** [1]  45:19

**facie** [1] 27:24

**facilities** [1]      48:25

**facing** [1]          48:24

**fact** [17]  5:9     11:18
14:11    16:2    16:13
17:16    18:2    18:8
21:6     24:24   25:2
26:1     28:22   34:1
35:22    53:12   66:13

**factor** [1]          51:5

**facts** [3] 15:4      18:7
23:18

**factual** [1]         13:20

**fairly** [1]          48:8

**fall** [1] 64:6

**familiar** [2]        21:23
49:1

**far** [7]   33:15     49:25
56:18    58:6    59:6
66:25    67:10

**fashion** [4]         21:14
22:22    45:23   66:3

**fashioned** [1]       19:24
20:23

**favorable** [3]        7:7
7:14     26:15

**Federal** [1]         64:5
64:25

**fell** [1]  52:18

**few** [7]   27:8      30:8
32:1     53:20   54:11
59:15    67:25

**fight** [1] 58:17

**fighting** [1]        59:14

**file** [5]  7:18      26:24
54:7     62:12   62:13

**filed** [1] 5:6

**filters** [1]         58:4

**final** [3] 48:15     49:8
50:25

**finally** [1]         19:20

**financial** [1]        8:8

**finder** [1]          21:6

**fine** [3]  36:23     51:1
68:7

Fineman [2]   1:18
2:13

**finer** [1] 61:2

**Finger** [1]          1:19

**finish** [2]          55:5
64:19

**firm** [18] 4:17      5:4
5:11     5:19    6:10
6:22     13:2    13:8
13:22    14:19   15:3
16:13    21:2    21:10
22:5     22:5    22:17
26:22

**first** [23] 2:24     3:3
6:6      7:24    9:8
12:24    14:9    16:12
17:18    18:18   18:22

| | | |
|---|---|---|
| 20:4 | 26:1 | 28:16 |
| 34:16 | 36:9 | 39:16 |
| 40:14 | 50:24 | 54:18 |
| 58:16 | 59:6 | 65:25 |

**fishing** [1]         39:25

**five** [1]  11:20

**five-minute** [1] 8:4

**flat** [1]  46:22

**flexible** [1]        51:10

**Florida** [2]         56:22
67:9

**flow** [3] 63:22      64:16
66:16

**flowing** [1]         17:3

**flurry** [2]          6:9
6:17

**focus** [1]           38:13

**follow** [1]          27:3

**following** [2]        26:4
26:12

**followup** [3]        6:12
7:18     26:4

**force** [1] 50:9

**foreign** [1]         57:3

**forgive** [1]         50:21

**form** [1] 66:4

**formally** [1]        48:12

**format** [1]          63:11

**formed** [4]          7:8
15:20    16:25   21:19

**forms** [1]           21:14

**formulated** [1]      59:11

**forth** [9] 8:13      8:19
9:18     12:16   12:25
27:10    33:21   34:3
40:25

**forward** [10]        7:3
7:10     15:19   19:16
30:20    34:24   35:1
45:14    48:7    66:13

**forwarded** [1]       32:9

**found** [2]           6:8
19:17

**foundation** [1] 28:17

**foundry** [1]         64:23

**four** [1] 58:18

**FRANCIS** [1]   2:2

**Frank** [1]           2:19

**frankly** [2]         61:4
61:5

**fraud** [1]           29:11

**Friday** [1]          56:11

**front** [2] 12:5      12:11

**fruits** [1]          20:21

**full** [1]   7:22

**fully** [3] 11:13     35:24
43:2

**functions** [1]       42:6

**future** [1]          67:19

**g** [4]      57:4     58:15
63:1     64:6

**Gary** [2] 1:20       2:14

**gather** [1]          17:25

**general** [6]          26:8
33:18    34:4    57:20
60:21    66:15

**generally** [1]       57:25

**generic** [2]         53:2
53:5

**genesis** [1]         17:18

**gist** [1]  53:4

**given** [6]            9:13
5:15     7:11    40:6
48:24    62:2

**goes** [6]  10:4      12:2
20:22    39:3    58:7
58:24

**gone** [4]  8:18      12:16
25:5     50:2

**good** [6]  2:10      2:11
2:17     19:15   59:12
64:21

**goodbye** [1]         19:15

**goods** [1]           64:25

**grant** [1] 62:12

**granted** [1]         34:4

**GRAPHICS** [1] 1:8

**great** [2] 33:2      42:5

**GREGORY** [1] 1:16

**grounds** [1]         55:20

**grown** [1]           45:15

**guess** [2]           50:20
57:4

**half** [2]  61:3      65:22

**handful** [1]         23:6
26:22    29:25

**handle** [2]          6:22
37:14

**handling** [2]        3:5
3:4

**hardware** [1]        39:1

**hats** [1] 43:19

**hear** [3] 43:11      58:12
68:10

**heard** [5]           13:17
50:19    55:10   59:7
60:25

**hearing** [7]         3:5
5:8      5:24    62:16
24:7     32:7    52:18

**help** [2] 61:12      67:18

**hey** [1]  19:13

**hire** [1] 5:21

**hired** [3] 5:25      16:3
18:9

**history** [2]         1:23
28:17

**Hoffman** [54]        1:20
2:14     2:15    3:15
8:15     11:3    12:20
18:13    18:16   30:13
20:19    21:12   22:12
28:15    28:22   30:12
30:15    30:19   31:4
31:17    31:18   33:3
33:6     37:16   38:16
40:14    40:20   41:2
42:9     43:12   43:14
43:15    44:11   47:19

CondenseIt™                                                         Honor - lawyer

| | | |
|---|---|---|
| 47:24 49:19 51:1 | 41:25 44:2 51:18 | 18:1 18:5 19:9 |
| 51:15 60:3 60:21 | 52:15 53:2 54:4 | 19:10 19:22 19:23 |
| 61:10 61:19 61:25 | **identify** [3] 17:20 | 21:18 22:2 23:4 |
| 62:3 62:9 62:15 | 37:4 46:14 | 23:15 23:25 24:25 |
| 63:6 64:10 65:7 | **imagine** [1] 22:19 | 25:2 25:20 26:3 |
| 66:8 66:19 67:2 | **immediately** [1] | 26:20 28:6 28:9 |
| 67:18 68:1 | 53:16 | 28:19 28:25 33:19 |
| **Honor** [82] 2:11 | **impact** [1] 20:16 | 36:13 36:14 37:3 |
| 3:2 3:9 3:13 | **impasse** [1] 47:21 | 38:5 41:12 42:15 |
| 3:23 3:24 4:3 | **implicitly** [1] 50:1 | 42:17 42:23 43:3 |
| 8:25 9:5 9:12 | **implies** [1] 52:17 | 43:5 43:6 43:21 |
| 11:1 13:22 15:16 | **import** [1] 45:1 | 43:22 44:12 45:2 |
| 16:12 17:8 18:13 | **important** [3] 11:1 | 45:3 45:6 45:8 |
| 21:13 22:9 23:8 | 14:15 15:23 | 45:11 45:12 45:18 |
| 24:5 25:16 26:1 | **importantly** [1] 36:10 | 45:23 47:10 50:7 |
| 26:21 27:6 28:15 | **imported** [3] 64:9 | 50:8 51:25 53:11 |
| 29:7 30:1 30:10 | 65:3 65:17 | 54:9 55:17 56:23 |
| 30:11 30:15 30:24 | **in-depth** [1] 16:24 | 61:21 63:19 65:10 |
| 30:25 31:4 31:18 | **inapplicable** [1] | 65:13 66:15 |
| 31:24 32:2 32:14 | 57:4 | **informed** [1] 15:11 |
| 33:1 33:3 34:20 | **inartfully** [1] 54:23 | **infringe** [5] 34:3 |
| 35:6 35:12 36:9 | **inaudible** [4] 39:19 | 39:12 44:10 55:12 |
| 36:12 36:14 37:8 | 42:21 56:12 59:3 | 63:8 |
| 37:15 40:2 40:14 | **INC** [3] 1:7 1:8 | **infringement** [15] |
| 40:20 41:2 41:15 | 1:9 | 34:2 35:18 35:23 |
| 42:14 44:1 44:11 | **include** [4] 15:13 | 36:2 36:3 38:15 |
| 44:25 46:6 47:24 | 31:2 31:16 32:12 | 39:15 41:25 46:20 |
| 47:25 51:1 52:6 | **included** [1] 8:24 | 47:2 53:8 55:21 |
| 52:19 53:1 54:22 | **including** [2] 27:13 | 63:10 63:10 63:23 |
| 55:9 58:14 60:3 | 39:3 | **infringing** [2] 39:24 |
| 61:10 62:3 62:6 | **inconsistencies** [3] | 46:10 |
| 62:9 63:6 64:3 | 13:5 13:15 24:6 | **inhibitor** [1] 63:15 |
| 64:11 64:19 65:7 | **inconsistency** [1] | **initial** [8] 51:19 |
| 66:8 66:19 67:7 | 5:23 | 52:8 52:9 52:23 |
| 67:13 67:17 67:18 | **inconsistent** [5] | 53:6 54:20 54:23 |
| **Honor's** [1] 67:11 | 10:13 29:1 29:3 | 65:15 |
| **HONORABLE** [1] | 29:4 29:9 | **initiated** [1] 4:1 |
| 1:16 | **INCORPORATED** [1] | **innocent** [1] 24:10 |
| **hope** [5] 13:15 20:2 | 1:7 | **input** [3] 39:17 45:5 |
| 41:10 61:13 68:3 | **incumbent** [1] 45:16 | 54:5 |
| **horse** [1] 44:21 | **indeed** [1] 11:7 | **inputs** [5] 40:7 |
| **hour** [1] 61:3 | **indicate** [2] 34:1 | 42:1 42:2 45:4 |
| **hours** [3] 15:21 | 34:5 | 47:14 |
| 16:3 18:9 | **indicated** [17] 19:13 | **inputting** [1] 42:23 |
| **Howrey** [40] 2:5 | 19:25 28:24 30:8 | **inquire** [1] 15:18 |
| 2:20 4:17 5:4 | 33:10 34:6 34:23 | 16:6 28:1 |
| 5:11 5:13 5:14 | 35:22 36:5 40:20 | **inquiry** [3] 13:19 |
| 5:19 6:10 6:20 | 41:3 55:16 56:1 | 26:3 28:8 |
| 6:22 7:11 8:2 | 56:14 56:15 60:4 | **inside** [1] 63:9 |
| 8:13 13:2 13:8 | 67:19 | **Insofar** [1] 41:10 |
| 13:22 14:11 14:15 | **indicating** [3] 20:8 | **inspection** [2] 4:13 |
| 14:19 15:3 15:4 | 50:1 57:8 | 29:15 |
| 16:12 18:24 19:11 | **individuals** [1] 22:1 | **installation** [1] 39:4 |
| 21:2 21:10 21:17 | **indulgence** [1] 18:17 | **instance** [2] 27:22 |
| 22:2 22:17 23:12 | **inevitably** [1] 45:9 | 51:8 |
| 23:16 25:4 25:11 | **inference** [1] 25:10 | **Instead** [1] 46:23 |
| 26:21 27:11 28:19 | 25:18 25:23 | **instructed** [1] 47:19 |
| 29:23 32:22 67:7 | **information** [80] | **integrated** [1] 56:4 |
| **Howrey's** [2] 17:14 | 6:1 6:2 6:11 | **intend** [3] 15:11 |
| 26:11 | 6:14 6:17 6:19 | 15:12 48:17 |
| **huge** [1] 44:7 | 6:25 7:21 8:5 | **intended** [1] 12:7 |
| **hundred** [1] 42:10 | 8:6 8:7 8:8 | **intending** [1] 46:5 |
| **hundred-percent** [1] | 11:7 11:8 11:11 | **intent** [2] 24:8 |
| 11:10 | 11:16 11:18 11:21 | 31:16 |
| **Hutz** [1] 2:2 | 13:3 13:9 13:20 | **interest** [2] 33:12 |
| **i.e** [1] 54:12 | 14:11 15:6 17:3 | 43:10 |
| **idea** [2] 26:17 53:7 | | **interested** [4] 30:13 |
| **ideas** [1] 59:12 | | |
| **identified** [10] 6:15 | | |
| 12:1 39:13 39:20 | | |

| | | |
|---|---|---|
| 40:17 40:24 45:24 | 6:6 6:6 6:12 |
| **interim** [1] 66:8 | 7:17 7:25 8:14 |
| **internal** [17] 4:19 | 8:23 9:1 11:4 |
| 6:20 9:23 13:25 | 12:4 16:12 26:23 |
| 17:14 18:1 18:20 | 29:14 30:17 31:6 |
| 25:10 26:22 27:1 | 31:9 32:5 32:18 |
| 29:22 30:13 31:21 | **juncture** [1] 21:11 |
| 31:24 32:21 42:6 | **June** [5] 5:5 30:18 |
| 46:19 | 30:19 31:8 32:18 |
| **INTERNATIONAL** | **jurisdiction** [1] 35:14 |
| [1] 1:9 | **keep** [4] 3:6 43:8 |
| **interpretation** [2] | 43:9 55:19 |
| 7:17 14:4 | **Kelley** [59] 2:4 |
| **interrogatories** [4] | 2:21 2:25 5:1 |
| 37:18 37:19 55:14 | 5:7 5:23 6:3 |
| 58:5 | 7:25 12:22 13:6 |
| **interrogatory** [5] | 23:5 24:6 29:17 |
| 39:14 46:13 54:4 | 30:7 30:9 30:10 |
| 55:11 57:10 | 37:15 37:24 40:18 |
| **interrupt** [3] 3:14 | 41:10 41:14 41:17 |
| 14:18 22:10 | 41:24 46:3 46:4 |
| **invalidating** [1] | 47:25 48:3 49:15 |
| 17:17 | 50:16 50:18 51:5 |
| **invalidity** [1] 53:10 | 53:1 55:15 55:19 |
| **invention** [1] 15:24 | 56:1 56:14 57:8 |
| **inventors** [1] 48:4 | 58:5 58:14 60:11 |
| 50:8 | 60:22 61:9 62:6 |
| **invested** [2] 61:3 | 62:18 62:20 62:24 |
| 61:5 | 64:3 64:18 64:19 |
| **involved** [5] 22:2 | 65:21 66:13 66:20 |
| 35:8 35:9 40:8 | 67:13 67:19 67:22 |
| 60:13 | 67:23 68:2 68:3 |
| **involves** [1] 34:5 | 68:6 |
| **involving** [1] 54:19 | **Ken** [1] 2:15 |
| **issue** [42] 4:2 | **KENNETH** [1] 1:21 |
| 7:16 10:9 12:24 | **Kevin** [1] 68:15 |
| 13:1 13:16 14:3 | **key** [4] 17:17 38:14 |
| 14:6 18:18 18:23 | 39:11 45:8 |
| 20:20 20:21 20:22 | **kicking** [1] 59:12 |
| 21:11 21:12 22:25 | **kind** [8] 10:16 26:5 |
| 29:7 29:11 31:19 | 38:17 39:8 40:6 |
| 33:22 35:14 35:16 | 47:5 53:25 59:2 |
| 35:23 37:18 38:6 | **knew** [7] 13:23 |
| 38:11 38:21 39:7 | 18:24 21:17 23:25 |
| 39:10 42:12 45:13 | 24:22 53:15 56:15 |
| 45:16 46:6 48:4 | **knowing** [2] 40:17 |
| 54:19 56:25 58:15 | 45:24 |
| 59:18 62:18 62:25 | **knowledge** [3] 23:2 |
| 66:1 66:10 | 48:19 57:9 |
| **issued** [2] 32:17 | **known** [1] 24:19 |
| 33:7 | **knows** [1] 36:21 |
| **issues** [8] 16:21 | **Kobayashi** [4] 2:10 |
| 21:13 22:21 27:13 | 48:6 48:18 50:12 |
| 37:16 38:14 66:9 | **lack** [1] 50:1 |
| 66:11 | **laid** [1] 52:17 |
| **item** [4] 3:3 3:8 | **language** [6] 8:4 |
| 3:9 48:1 | 9:2 9:6 17:12 |
| **items** [2] 2:25 | 37:25 45:18 |
| 3:4 3:4 51:18 | **largest** [1] 44:4 |
| 61:6 | **last** [6] 32:16 51:9 |
| **J** [1] 1:18 | 51:14 54:11 56:11 |
| **January** [1] 48:25 | 58:17 |
| **Japan** [7] 48:6 | **late** [4] 5:5 30:18 |
| 48:19 48:21 49:2 | 30:19 50:15 |
| 49:10 50:12 51:6 | **law** [4] 10:24 41:20 |
| **judgment** [2] 62:14 | 45:15 64:2 |
| 63:13 | **lawyer** [1] 25:24 |
| **July** [20] 3:11 4:7 | |

**lays** [1] 28:17

**Layton** [1]   1:19
2:12   2:13

**lead** [3] 17:8   18:13
52:1

**leading** [2]   31:2
53:20

**leads** [2] 24:9   26:14

**learned** [1]   18:2

**least** [7] 21:10   24:12
24:15   27:15   27:24
50:1   51:13   56:16
66:10

**led** [2] 5:14   19:19

**left** [1] 68:4

**legal** [1] 28:23

**legitimate** [1]   38:17

**less** [5] 15:8   20:3
33:17   40:15   60:16

**letter** [9] 6:5   9:21
10:15   12:3   13:22
26:24   52:17   57:7
62:12

**letters** [3]   4:17
7:18   27:8

**levels** [1]   45:19

**libraries** [1]   39:2

**library** [4]   39:18
40:9   42:3   54:6

**likelihood** [1] 51:11

**likely** [2]   14:12
52:15

**limit** [3] 41:3   59:15
59:16

**limitation** [2]   60:1
60:19

**limitations** [1] 44:17

**limited** [5]   22:18
39:10   39:11   44:13
66:4

**limiting** [1]   57:14

**line** [3]  2:20   12:11
55:4

**list** [12]  20:9   21:22
22:8   22:13   22:17
26:8   36:22   52:10
52:20   52:21   52:23
64:22

**listed** [6]   50:6
51:21   52:7   52:7
52:19   52:22

**listen** [1]   21:17

**listing** [1]   8:7

**literature** [1]   56:9

**litigation** [10]   5:16
15:9   16:1   16:5
21:9   22:14   33:9
36:8   38:3   45:13

**live** [1]  48:19

**lives** [2] 49:6   50:12

**LLP** [3] 1:21   2:2
2:5

**located** [1]   56:24

**lock** [2] 15:25   16:4

**Lodge** [1]   2:2

---

**log** [8]   4:15   4:20
10:7   12:19   20:9
20:12   22:8   27:1

**logic** [14]   53:24
53:25   54:5   54:12
56:8   57:15   59:9
59:17   59:20   59:21
60:7   60:14   62:21
62:22

**look** [5] 37:21   46:13
66:2   67:2   68:9

**looking** [9]   6:22
6:25   13:24   22:7
32:2   60:3   60:7
60:9   60:15

**looks** [1]   16:17
37:10

**LTD** [1] 1:4   1:8

**M** [3]   1:16   1:20
2:3

**major** [2]   17:16
18:10

**makes** [5]   29:23
57:3   64:4   64:20
64:25

**manner** [4]   39:10
39:11   39:24   61:4

**manuals** [6]   39:4
39:4   39:5   39:5
40:6   42:10

**manufacture** [1]
58:23

**manufacturing** [15]
60:5   63:7   63:21
63:24   64:4   64:6
64:7   64:11   64:15
64:16   64:25   65:11
65:12   65:16   65:17

**map** [1] 54:6

**marketing** [1]   53:3

**Markman** [2]   55:22
55:25

**material** [4]   11:23
28:7   47:4   62:7

**materials** [4]   53:3
53:3   53:15   53:19

**Matrox** [15]   1:8
1:8   1:9   1:9
56:22   57:1   62:7
65:20   66:10   66:17
66:25   67:8   67:8
67:8   67:11

**matter** [4]   7:4
35:16   47:20   48:3

**matters** [3]   61:4
61:15   61:17

**Maurer** [1]   68:15

**may** [36] 14:2   14:21
14:23   14:24   14:25
16:2   19:24   20:2
20:11   20:15   20:16
20:19   20:19   20:21
21:4   21:16   21:25
22:1   22:5   24:15
24:19   26:24   29:10
30:5   33:20   33:25
34:13   38:2   51:20
54:25   55:14   57:4

---

58:9   61:12   64:19
67:18

**mean** [4] 3:13   10:9
14:20   16:3

**means** [1]   10:11

**meant** [2]   37:19
59:8

**mechanical** [1] 65:2

**meeting** [1]   47:7

**meetings** [1]   55:9

**Meilman** [13]   1:20
2:14   3:4   35:20
55:9   55:13   58:9
59:5   60:4   62:6
65:23   67:7   67:17

**memos** [1]   59:23

**Menlo** [1]   2:5

**mention** [1]   46:17

**mentioned** [7]   24:1
32:16   35:12   41:17
41:20   45:1   59:16

**merits** [2]   20:18
21:7

**Messrs** [1]   2:14

**method** [1]   63:18

**methods** [1]   52:5

**mid-September** [1]
68:2

**might** [4]   7:20
39:8   50:7   66:1

**mind** [3] 3:7   19:4
32:25

**minute** [3]   37:25
57:5   58:15

**minutes** [1]   11:20

**missed** [1]   32:15

**misunderstood** [1]
23:21

**moment** [1]   43:18

**month** [1]   55:15

**Monti** [1]   11:2

**Morin** [1]   1:21

**morning** [4]   2:10
2:11   2:16   2:17

**most** [5] 18:3   18:4
22:12   45:2   45:7

**motion** [1]   20:24
33:21   46:8

**mouth** [1]   24:16

**movant** [2]   3:16
3:18

**movants** [2]   3:22
4:2

**move** [1]   55:8

**moving** [1]   16:22

**Mower** [1]   52:14

**Ms** [32] 2:19   22:9
22:9   22:11   22:24
23:1   23:8   23:22
23:24   24:17   25:3
25:14   25:16   27:4
29:19   29:22   30:3
30:4   30:24   31:10
31:13   32:14   32:21
32:25   33:9   34:21

---

44:1   44:25   46:2
54:22   54:25   55:2

**multiple** [1]   5:2

**must** [2] 15:3   49:2

**named** [1]   5:17

**namely** [3]   4:19
42:1   46:15

**names** [1]   5:15

**narrow** [3]   44:10
54:10   57:15

**narrowed** [1]   56:1
56:6

**narrowing** [1]   53:22

**nature** [3]   6:7
12:23   38:11

**necessary** [4]   17:20
45:17   47:18   67:3

**need** [18]   7:10
20:4   31:5   35:17
38:4   41:21   42:4
42:8   45:4   45:17
47:9   47:10   47:11
54:24   59:7   63:14
66:2   68:8

**needs** [2]   13:20
45:13

**negotiating** [1]   35:8

**negotiation** [1] 53:20

**net** [1]   64:22

**never** [5]   5:5
10:19   15:17   15:21
65:11

**new** [1] 45:17

**next** [6]  8:23   35:12
36:17   41:24   61:16
61:16

**nice** [1]   19:14

**non-confidential** [1]
34:7   41:8

**non-Matrox** [1] 67:15

**non-starter** [1] 62:11

**none** [2] 8:9   59:24

**nor** [1]   31:24

**normally** [2]   22:13
47:14

**note** [2] 14:15   53:10

**noted** [1]   9:24
12:20

**nothing** [5]   10:6
10:7   34:8   47:12
65:11

**notices** [1]   5:6

**now** [22] 6:20   13:7
15:7   20:24   22:7
25:17   31:7   32:25
38:2   41:10   44:1
45:1   45:24   46:10
46:24   50:3   59:5
59:14   59:18   60:25
61:3   61:16

**number** [8]   21:25
22:18   29:2   30:8
34:15   40:3   60:23
61:12

**numerous** [1] 49:21

**object** [5]   35:25

---

37:2   51:24   52:2
61:20

**objected** [8]   6:8
6:18   33:14   35:5
35:13   35:18   36:5
59:1

**objecting** [1]   35:20

**objection** [5]   34:16
36:17   40:17   41:18
43:11

**objections** [6]   34:16
35:19   37:17   38:11
61:2   67:10

**obligated** [1]   36:25

**obligations** [2]   3:11
46:12

**obtain** [3]   21:19
36:21   36:23

**obtainable** [1]   36:19

**obtained** [1]   13:3
29:5   36:6

**obtaining** [1]   36:7

**obviously** [11]   7:6
29:1   32:8   34:10
36:14   43:3   44:24
47:21   50:4   51:7
52:9

**occurred** [1]   24:10

**off** [6]   21:22   36:7
47:16   60:22   64:23
68:6

**often** [2] 10:21   22:12

**oftentimes** [1]   45:11

**Oliver** [1]   2:4
2:21

**once** [9]  11:1   11:4
11:6   11:7   18:25
19:13   20:11   32:16
58:19

**one** [37] 3:16   3:16
11:5   11:5   11:19
11:22   17:16   18:25
20:5   21:24   21:25
24:12   26:17   28:6
28:16   29:17   34:20
39:8   39:9   41:19
48:15   49:2   49:11
50:7   50:9   55:4
56:21   57:21   57:21
60:25   61:1   61:11
63:20   64:7   65:14
67:8   68:10

**ones** [3] 3:14   3:15
59:1

**operates** [1]   43:1

**operation** [5]   13:5
53:25   65:11   65:16
65:17

**operations** [1] 52:4

**opinion** [5]   3:10
7:13   15:18   17:1
28:23

**opinions** [9]   5:1
7:9   14:13   15:14
15:19   16:25   21:7
21:19   26:19

**opponent** [1]   23:4

**opportunity** [4] 49:4 49:11 50:23 66:6
**orally** [1] 12:4
**order** [33] 3:11 4:7 4:22 7:17 8:20 8:23 9:1 9:2 10:18 10:23 12:3 14:3 17:11 17:22 22:16 26:23 29:14 33:4 35:7 35:9 35:11 36:16 38:21 38:22 40:9 41:13 43:15 45:13 61:24 62:1 64:6 66:25 67:11
**ordered** [8] 8:16 8:19 9:9 9:12 9:14 26:21 29:16 61:18
**orders** [1] 45:14
**Osaka** [3] 49:4 49:6 49:11
**Oshinsky** [1] 1:21
**ought** [1] 13:7
**ourselves** [4] 4:1 21:16 26:6
**outlining** [1] 8:20
**output** [6] 39:19 39:19 40:9 42:3 47:16 54:6
**outset** [1] 14:16
**outside** [3] 63:2 63:3 63:7
**overall** [1] 20:22
**overbreadth** [1] 44:7
**overcome** [1] 51:8
**overly** [1] 40:19
**own** [1] 61:7
**p.m** [1] 68:13
**Page** [3] 6:24 12:11 12:20
**pages** [4] 33:17 40:15 42:10 60:17
**paper** [1] 9:18
**papers** [1] 53:13
**paragraph** [8] 4:7 7:17 9:7 9:7 10:1 10:2 12:1 12:13
**parameters** [3] 31:7 31:12 40:12
**Park** [1] 2:5
**part** [20] 4:16 9:12 16:4 17:14 21:13 33:14 33:22 33:25 34:5 38:14 42:24 42:25 43:1 51:23 55:10 63:14 63:20 64:10 64:15 65:16
**particular** [8] 17:20 18:2 18:6 30:6 45:1 45:3 45:5 60:12
**particularly** [1] 17:13
**parties** [11] 3:10 3:19 36:8 37:3 37:4 37:5 47:8

47:19 51:11 53:19 58:18
**parts** [4] 39:11 42:19 42:21 44:18
**party** [16] 15:23 16:6 33:9 33:12 38:2 38:5 39:9 41:18 41:21 43:9 43:10 43:10 46:11 46:11 49:20 50:9
**past** [1] 53:20
**patent** [10] 17:2 17:18 35:18 48:4 54:13 56:2 60:13 63:2 63:8 63:23
**patents** [1] 8:8
**pay** [1] 5:21
**people** [6] 22:12 28:19 57:9 59:12 62:7 62:16
**percent** [1] 44:5
**performed** [3] 39:16 42:6 53:25
**perhaps** [2] 51:10 54:24
**period** [5] 8:4 21:22 32:20 51:11 67:2
**peripheral** [1] 47:4
**permission** [2] 62:12 62:13
**permit** [1] 51:11
**person** [1] 18:5
**personal** [2] 23:2 30:4
**pertains** [2] 20:18 21:7
**phone** [7] 6:12 24:12 26:7 26:10 32:5 32:6 49:1
**phonetic** [1] 11:2 52:14
**phrase** [3] 8:24 10:13 50:21
**phrases** [1] 53:2
**physical** [3] 64:8 64:21 65:2
**picture** [1] 7:22
**piece** [7] 9:17 18:10 30:6 55:18 55:18 63:19 65:10
**pieces** [3] 11:8 17:17 25:25
**ping-pong** [1] 40:25
**place** [4] 3:25 17:18 19:23 49:2
**plaintiff** [8] 1:5 1:23 2:12 26:14 44:9 45:22 46:1 50:6
**plaintiffs** [1] 4:14 5:6 5:13
**planning** [1] 59:23
**plant** [3] 56:14 56:23 67:9
**play** [2] 33:25 34:13

**point** [23] 13:17 15:3 15:9 20:10 20:11 21:3 21:13 23:2 23:8 24:1 29:17 29:18 34:4 41:5 41:24 43:23 44:3 48:8 48:23 61:2 61:6 64:20 66:5
**points** [3] 5:2 23:10 28:16
**poison** [1] 20:5
**poisonous** [1] 10:1
**portion** [1] 10:1 65:8
**position** [9] 20:14 23:18 24:15 25:7 25:15 28:13 28:12 33:11 63:25
**positions** [1] 34:2
**possession** [2] 40:1 47:4
**possibility** [3] 22:4 22:5 24:19
**possible** [1] 28:8 53:12
**postponed** [1] 26:25
**potential** [4] 20:17 21:14 22:25 29:11
**pre** [1] 60:11
**precisely** [2] 10:15 10:16
**precluded** [1] 16:20
**preparation** [2] 31:14 32:22
**prepare** [1] 8:20
**prepared** [4] 4:10 9:15 10:3 53:6
**preparing** [1] 31:25 32:3
**present** [2] 30:21 43:5
**presumably** [1] 25:11
**presume** [1] 33:3 50:8 62:15
**pretty** [1] 58:4
**prevail** [1] 62:25
**prevent** [1] 16:4
**previously** [1] 33:10
**prima** [1] 27:24
**primary** [1] 4:1
**principal** [2] 2:16 21:3
**privilege** [12] 4:12 4:15 4:20 10:6 10:7 10:21 14:1 20:9 22:8 27:1 27:20 27:21
**privileged** [11] 9:25 10:20 10:22 12:17 14:7 14:10 22:13 22:18 27:17 28:1 28:9
**problem** [10] 17:11 19:11 19:21 20:5 21:21 44:7 44:9

48:24 54:22 54:25
**proceed** [1] 24:23 33:4 45:14 47:7
**proceeded** [2] 24:2 24:20
**process** [40] 27:2 42:24 42:25 43:1 46:16 47:15 53:24 54:13 54:17 56:3 56:8 56:12 56:20 57:2 57:14 59:6 59:8 60:5 62:21 63:6 63:8 63:8 63:21 63:23 63:24 64:4 64:6 64:7 64:11 64:16 64:21 64:22 64:24 65:1 65:2 65:2 65:10 66:14 67:1 67:14
**processes** [7] 56:7 56:9 56:17 57:13 57:16 60:12 60:14
**produce** [37] 4:9 4:19 6:20 8:18 9:14 10:3 10:7 10:16 10:18 10:19 12:15 23:7 23:11 26:22 34:18 35:1 35:4 35:17 38:3 39:1 39:19 39:24 40:4 40:9 41:6 42:3 49:25 52:5 51:16 51:17 51:23 53:22 54:6 57:20 58:20 58:21 64:23
**produced** [25] 5:10 8:11 9:17 10:12 27:11 29:16 33:15 33:16 34:17 35:3 35:10 38:1 38:10 40:4 40:15 42:9 43:24 53:12 53:14 53:15 60:16 64:21 67:21 67:25 68:1
**produces** [2] 64:22 64:24
**producing** [1] 10:2 53:16
**product** [21] 4:12 12:17 17:15 38:1 38:10 38:14 39:23 44:4 45:3 45:8 46:25 53:2 54:1 59:4 59:11 59:13 59:22 63:7 65:12 65:25 65:17
**production** [10] 10:1 10:14 22:25 27:7 29:14 38:4 41:11 54:20 57:3 63:23
**products** [19] 34:11 34:12 34:13 39:10 39:11 41:7 52:5 53:23 57:12 57:18 58:10 58:24 59:3 59:16 59:16 59:17 59:21 63:22 64:16
**program** [1] 33:24
**progression** [1] 47:1

**promotional** [1] 53:3
**proper** [4] 38:8 41:11 47:7 47:8
**properly** [2] 40:22 54:10
**propose** [1] 65:23
**proposed** [1] 65:20
**proposing** [1] 30:16
**proposition** [3] 65:6 65:8 65:9
**prosecute** [1] 45:22
**protect** [1] 26:6 43:14
**protective** [10] 35:7 35:9 35:11 36:15 38:22 41:13 43:15 45:14 61:24 62:1
**prove** [3] 43:7 43:7 44:22
**provide** [3] 4:14 17:23 22:12 22:17 34:12 36:12 36:25 37:9 37:12 42:1 53:9 56:11
**provided** [8] 3:6 7:21 11:17 13:13 22:20 33:20 36:15 36:15
**provides** [1] 26:23 57:22
**providing** [1] 39:19 47:14 54:4
**provisions** [1] 37:3
**public** [2] 36:18 42:4
**publications** [1] 8:8
**publicly** [3] 34:7 36:20 36:24
**purpose** [1] 32:9
**purposes** [1] 34:17
**pursuant** [1] 41:12
**pursue** [1] 24:8
**pursuit** [3] 14:13 26:11
**push** [1] 55:25
**pushed** [1] 34:10
**put** [4] 10:7 55:25 24:16 61:1
**putting** [1] 18:21 44:21 46:15
**questioned** [1] 25:23
**questions** [3] 24:12 26:1 56:25
**quickly** [3] 41:1 53:11 67:24
**quite** [5] 22:12 13:4 61:4 61:4 65:1
**quote** [4] 1:21 12:13 12:13 28:5
**raise** [1] 29:17
**raised** [5] 34:15 14:5 34:16 35:20 35:24 62:10

**raising** [1]              62:7
**range** [1]               42:12
**rather** [1]              41:1
**rattled** [1]             60:22
**react** [1] 40:17
**read** [11] 12:12      22:16
  26:5      38:23     38:25
  40:22     51:16     58:20
  65:8      65:25     66:6
**reading** [2]             10:15
  58:21
**real** [7]  33:12      37:18
  38:6      38:13     38:13
  39:7      43:10
**really** [10]             12:6
  17:24     38:16     40:18
  40:24     42:4      46:20
  47:2      54:14     59:7
**reason** [2]              35:4
  41:17
**reasonable** [1]  27:25
**reasonably** [1]  39:8
  51:25
**recapping** [1]    32:5
**receive** [3]             11:11
  28:25     45:23
**received** [17]           4:10
  4:16      4:16      5:25
  6:14      9:15      10:3
  11:2      11:4      11:7
  14:11     24:25     25:2
  25:3      28:19     32:9
  48:14
**recipient** [1]         27:15
**recited** [1]           37:16
**recognize** [1]         45:16
**recognized** [1]  14:15
**recollection** [1] 12:9
**recommendation** [1]
  27:3
**record** [2]            24:17
  36:18
**recorded** [1]          37:17
**records** [1]           56:24
**reduce** [1]            41:22
**refer** [1] 53:13
**reference** [4]  6:23
  29:23     39:3      44:3
**references** [1]   12:11
**referred** [1]          56:5
**reflect** [2]           14:10
  25:11
**reflections** [1]  12:8
**refused** [4]           4:18
  37:5      55:25     57:6
**refuses** [1]           6:20
**regard** [4]            20:25
  27:7      51:17     68:5
**regarding** [14]        10:24
  18:20     21:7      21:8
  27:13     27:14     30:13
  31:3      31:25     33:22
  41:23     45:8      52:4
  64:2
**regular** [1]           47:14

**relate** [6]             7:19
  20:19     20:20     20:21
  37:17     60:5
**related** [3]            38:6
  54:20     55:11
**relates** [3]           12:13
  35:23     62:21
**relating** [24]          4:9
  9:11      9:13      10:10
  10:12     12:2      17:14
  17:23     20:14     31:1
  32:3      33:23     38:1
  38:9      38:22     39:22
  39:23     41:7      44:6
  47:11     53:19     53:23
  59:20     60:8
**relationship** [2] 24:20
  24:23
**relatively** [3]         30:8
  48:3      53:2
**released** [1]           61:7
**relevance** [3]         43:12
  43:21     52:4
**relevant** [11]          18:3
  18:4      38:15     52:13
  52:16     52:18     52:20
  52:20     52:22     54:16
  59:9
**relief** [1]             3:20
  19:24     20:3      20:7
  20:20     20:23     20:25
  21:14     21:15     22:21
  22:22
**rely** [1] 51:22
**relying** [2]           28:23
  63:12
**remainder** [1]    3:1
**remaining** [2]    54:14
  59:18
**remains** [1]           17:16
**remedies** [1]          7:20
**remedy** [1]            7:22
**remember** [2]          26:10
  28:21
**remove** [1]            43:18
**Reporter** [1]          68:15
**represent** [1]    49:20
**representation** [2]
  28:18     30:5
**representations** [5]
  5:1       29:1      29:2
  29:4      29:8
**represented** [1] 7:25
**representing** [2]
  13:6      48:9
**represents** [1]   35:7
**request** [16]          8:15
  12:12     33:7      38:18
  40:19     40:22     41:3
  44:10     51:17     51:24
  52:2      52:11     54:11
  56:6      57:11     58:21
**requested** [1]         6:21
  52:11
**requests** [19]         8:20
  37:20     37:21     38:9
  38:13     38:20     38:22

**39:22     40:3      49:22
  54:8      54:14     55:10
  55:14     58:5      58:16
  58:19     59:19     61:21
**require** [4]            10:19
  17:23     17:25     22:16
**required** [5]          4:21
  8:16      9:25      12:14
  38:2
**requires** [1]          4:8
  37:10
**resolve** [1]           7:10
  55:16     61:2      66:10
**respect** [4]           3:10
  13:2      31:19     44:7
**respond** [7]           18:14
  28:16     30:15     47:19
  48:13     49:21     49:25
**responded** [2]    8:6
  50:20
**response** [6]          16:12
  40:4      50:1      51:23
  52:13     52:25
**responses** [2]    37:17
  56:25
**responsibilities** [1]
  27:5
**restrict** [1]          39:21
  54:2      56:15
**restricted** [1]   59:19
**rests** [1] 47:2
**result** [7]            7:8
  7:14      15:14     16:25
  17:4      21:20     26:18
**retain** [2]            16:5
  15:11     31:19     31:23
**retained** [1]          6:5
**retention** [5]         6:5
  18:21     21:9      30:14
  21:15
**return** [1]            28:16
**reveal** [1]            20:15
**revenue** [1]           44:5
**review** [4]            10:20
  10:22     10:25     28:2
**reviews** [1]           29:15
**revisit** [1]           47:22
**Richards** [3]          1:19
  2:12      2:13
**Ricoh** [44]            1:4
  2:12      2:14      3:2
  5:9       5:12      5:14
  5:17      5:21      6:2
  6:15      6:18      7:5
  7:8       7:15      10:11
  13:4      13:14     14:17
  15:15     15:20     15:25
  16:2      16:7      16:18
  19:6      19:10     19:14
  26:18     27:9      28:3
  28:20     29:1      33:7
  40:13     48:5      50:2
  50:13     59:15     60:2
  63:5
**Ricoh's** [2]           8:19
  23:18

**right** [7] 9:9        11:12
  20:24     27:17     45:24
  48:10     55:13
**ROBERT** [1]       1:18
**rolling** [1]           67:23
**roster** [1]            3:6
**rug** [1] 62:8
**Rule** [2] 55:13      55:24
**rules** [2] 16:13      42:20
**runs** [1]  20:5
**sale** [1]  58:23
**Sales** [1] 53:4
**sanctions** [1]    22:1
**says** [9]  9:3        9:8
  9:10      9:10      10:2
  10:3      11:21     38:25
  40:18
**schedule** [1]          66:21
**scheduling** [2]   33:11
  34:21
**scope** [10]            10:14
  18:18     27:7      29:19
  29:21     40:19     41:11
  44:13     59:19     66:11
**second** [9]            4:7
  5:23      9:14      10:13
  12:13     13:1      14:10
  33:6      39:17
**Section** [1]           51:18
**see** [11]  14:24      14:25
  17:11     17:24     20:12
  40:12     48:10     48:12
  49:22     62:17     65:4
**seek** [4] 19:22      20:1
  20:7      63:2
**seeking** [7]           3:20
  7:13      12:22     19:25
  51:25     62:13     62:20
**seeks** [1]             52:3
**seem** [3] 12:8       23:9
  56:24
**select** [1]            40:9
**selects** [1]           42:3
**self-serving** [1] 26:5
**SEMICONDUCTOR**
  [1]       1:7
**send** [3] 19:5       19:7
  20:9
**sense** [1]             10:19
**sensitive** [3]         45:2
  45:7      45:12
**sent** [10] 4:10      6:6
  9:15      9:18      10:3
  13:22     16:13     30:17
  32:8      64:23
**sentence** [2]          9:3
  9:8
**September** [2]    50:15
  50:15
**series** [1]            65:14
**served** [5]            5:5
  33:7      33:13     51:19
  55:14
**service** [1]           48:12
**serving** [1]           17:19

**set** [4]   33:21      34:3
  50:15     65:1
**seven** [2]             8:11
  9:20
**sever** [1] 5:20
**several** [3]           37:16
  42:10     59:1
**shall** [1] 4:14
**Shapiro** [1]           3:21
**share** [1] 11:21      28:5
**shared** [2]            45:13
  45:19
**shield** [1]            48:9
**Shindo** [9]            48:5
  48:9      48:15     48:18
  48:20     49:6      49:9
  49:19     50:7
**short** [2] 8:7        34:2
**shortly** [1]           68:10
**show** [5] 5:10       14:23
  23:14     50:5      64:15
**shred** [2]             41:15
  11:16
**side** [7]  4:21      15:4
  15:5      23:13     30:23
  52:11     58:13
**sign** [1]  8:21
**signed** [2]            6:6
  19:7      19:8
**significant** [1]  18:23
**Simon** [13]            2:5
  2:20      8:2       8:13
  18:24     19:11     21:17
  22:2      22:17     23:16
  25:4      27:12     35:7
**simple** [2]            19:12
  48:3
**simplify** [2]          30:16
  31:23
**simply** [2]            6:9
  36:4
**single** [4]            8:5
  9:17      27:14     31:16
**sit** [1]   49:24
**situation** [5]         17:10
  22:15     50:17     50:18
  63:21
**six** [2]   8:11      9:20
**SLEET** [1]             1:16
**software** [2]          33:19
  39:1
**sole** [1]  7:11
**solely** [1]            5:14
**someone** [4]           21:21
  23:3      37:22     50:7
**sometime** [1]     50:24
**sometimes** [2]    33:13
  55:4
**somewhat** [4]     23:10
  27:7      28:7      44:10
**sorry** [5] 3:19      14:8
  22:11     25:5      29:3
**sort** [8]  11:17      2:19
  17:6      20:6      33:4
  58:24     66:9      66:17

| | | |
|---|---|---|
| **sorted** [1] | 21:15 | |
| **sought** [2] | 13:8 | |
| 34:21 | | |
| **sounds** [1] | 27:19 | |
| **source** [3] | 38:7 | |
| 45:21 | 45:25 | |
| **sourcecode** [5] | 42:5 | |
| 42:16 | 44:13 | 44:25 |
| 45:7 | | |
| **sourcecodes** [1] | 39:5 | |
| **sources** [4] | 36:19 | |
| 36:25 | 42:13 | 43:14 |
| **sourcing** [1] | 43:13 | |
| **space** [1] | 49:4 | |
| **speak** [1] | 60:25 | |
| **SPEAKER** [3] | 30:1 | |
| 30:18 | 31:8 | |
| **speaking** [2] | 32:16 | |
| 60:25 | | |
| **special** [1] | 22:14 | |
| **specific** [5] | 25:25 | |
| 31:17 | 37:25 | 39:22 |
| 56:4 | | |
| **specifically** [4] | 5:11 | |
| 5:13 | 26:9 | 57:21 |
| **specification** [3] | | |
| 59:10 | 59:10 | 59:22 |
| **specificity** [1] | 25:12 | |
| **specifics** [1] | 26:10 | |
| **spelled** [1] | 38:16 | |
| **spend** [1] | 55:7 | |
| **spirit** [1] | 12:3 | |
| 43:20 | | |
| **spokesperson** [1] | | |
| 2:16 | | |
| **stands** [3] | 65:5 | |
| 65:8 | 65:9 | |
| **start** [4] | 3:8 | 3:18 |
| 34:20 | 62:7 | |
| **started** [2] | 53:11 | |
| 53:16 | | |
| **starting** [1] | 41:5 | |
| **starts** [2] | 18:22 | |
| 22:14 | | |
| **state** [3] | 40:2 | 40:8 |
| 64:2 | | |
| **statement** [3] | 53:7 | |
| 64:2 | 65:5 | |
| **statements** [2] | 25:19 | |
| 53:4 | | |
| **States** [10] | 1:1 | |
| 48:20 | 49:12 | 63:3 |
| 63:3 | 63:8 | 63:9 |
| 63:22 | 64:17 | 65:18 |
| **stating** [1] | 11:16 | |
| **stay** [3] | 34:22 | 46:8 |
| **step** [1] | 25:6 | |
| **steps** [9] | 39:15 | 39:15 |
| 39:22 | 40:8 | 54:3 |
| 57:2 | 57:5 | 65:15 |
| 65:15 | | |
| **Steven** [2] | 1:18 | |
| 2:13 | | |
| **still** [9] | 7:3 | 13:12 |
| 16:2 | 18:8 | 25:18 |

| | | |
|---|---|---|
| 36:25 | 44:5 | 44:6 |
| 47:20 | | |
| **stonewalling** [2] | | |
| 37:8 | 40:5 | |
| **story** [1] | 5:3 | |
| **strategy** [3] | 6:1 | |
| 31:3 | 32:2 | |
| **strictly** [1] | 63:14 | |
| **stuff** [7] | 46:15 | 46:18 |
| 47:12 | 53:17 | 59:7 |
| 66:16 | 67:24 | |
| **subject** [3] | 7:4 | |
| 35:16 | 66:3 | |
| **subjects** [1] | 7:4 | |
| **submission** [1] | 26:25 | |
| **submit** [2] | 9:1 | |
| 38:8 | | |
| **submitted** [3] | 4:13 | |
| 8:23 | 12:18 | |
| **subpoena** [15] | 5:5 | |
| 5:14 | 5:15 | 17:19 |
| 19:17 | 30:17 | 30:20 |
| 32:17 | 33:7 | 33:13 |
| 33:14 | 35:15 | 35:15 |
| 48:11 | 49:23 | |
| **subsequent** [1] | 12:3 | |
| **subsequently** [2] | | |
| 8:19 | 19:4 | |
| **subset** [1] | 55:1 | |
| **substance** [3] | 21:9 | |
| 32:10 | 63:15 | |
| **substeps** [1] | 56:20 | |
| **successful** [1] | 53:21 | |
| **such** [3] | 6:7 | 27:20 |
| 42:19 | | |
| **suddenly** [1] | 6:8 | |
| **sue** [1] | 46:23 | |
| **sued** [1] | 46:23 | |
| **suggest** [1] | 52:16 | |
| **suggesting** [1] | 21:1 | |
| 46:10 | 66:22 | |
| **suit** [1] | 56:2 | |
| **summary** [3] | 62:13 | |
| 63:11 | 64:13 | |
| **suppliers** [1] | 57:18 | |
| **support** [3] | 29:10 | |
| 51:22 | 62:13 | |
| **supports** [1] | 25:10 | |
| **supposed** [2] | 8:25 | |
| 10:16 | | |
| **Supreme** [1] | 27:23 | |
| **suspect** [1] | 2:15 | |
| **sweep** [1] | 13:14 | |
| **swept** [1] | 62:8 | |
| **Synopsis'** [1] | 46:25 | |
| **Synopsys** [25] | 33:8 | |
| 33:8 | 33:11 | 33:13 |
| 33:19 | 34:6 | 34:15 |
| 34:24 | 35:8 | 35:13 |
| 36:14 | 38:2 | 38:2 |
| 38:10 | 38:14 | 42:17 |
| 43:8 | 44:4 | 44:11 |
| 46:9 | 46:11 | 46:23 |
| 47:5 | 61:14 | 61:22 |
| **Synopsys'** [1] | 40:1 | |

| | | |
|---|---|---|
| 46:23 | | |
| **synthesis** [14] | 53:24 | |
| 53:25 | 54:5 | 54:12 |
| 56:8 | 57:15 | 59:9 |
| 59:17 | 59:20 | 59:21 |
| 60:7 | 60:14 | 62:21 |
| 62:22 | | |
| **system** [1] | 42:25 | |
| **systems** [5] | 1:8 | |
| 33:19 | 39:2 | 42:20 |
| 60:6 | | |
| **table** [1] | 41:1 | |
| **tainted** [5] | 17:5 | |
| 17:6 | 17:7 | 20:15 |
| 21:4 | | |
| **takes** [4] | 42:2 | 47:15 |
| 49:2 | 66:6 | |
| **talks** [1] | 10:2 | 10:14 |
| **tangible** [1] | 51:18 | |
| **target** [1] | 16:22 | |
| **Tech** [4] | 1:9 | 56:22 |
| 67:9 | 67:11 | |
| **technical** [2] | 39:3 | |
| 39:4 | | |
| **technology** [1] | 18:6 | |
| **tedious** [1] | 38:25 | |
| **teleconference** [6] | | |
| 8:1 | 8:14 | 9:12 |
| 9:16 | 31:2 | 68:13 |
| **telephone** [7] | 1:14 | |
| 6:9 | 25:13 | 26:2 |
| 31:6 | 31:25 | 32:3 |
| **telling** [2] | 16:23 | |
| 36:2 | | |
| **ten** [1] | 50:2 | |
| **Teresa** [2] | 2:3 | |
| 2:21 | | |
| **term** [1] | 67:7 | |
| **terminate** [1] | 19:6 | |
| **terms** [1] | 41:12 | |
| **testified** [7] | 6:13 | |
| 7:7 | 11:19 | 16:16 |
| 16:25 | 25:1 | 28:25 |
| **testify** [1] | 26:9 | |
| **testifying** [1] | 21:8 | |
| **testimony** [12] | 5:10 | |
| 5:20 | 7:2 | 7:13 |
| 13:6 | 17:19 | 20:18 |
| 23:14 | 24:7 | 24:9 |
| 26:15 | 29:6 | |
| **text** [1] | 38:19 | |
| **thank** [8] | 4:6 | |
| 19:14 | 30:24 | 33:1 |
| 47:15 | 62:3 | 67:17 |
| 68:11 | | |
| **themselves** [1] | 60:8 | |
| **theoretically** [1] | | |
| 51:13 | | |
| **theory** [6] | 35:19 | |
| 38:15 | 46:20 | 53:8 |
| 55:21 | 63:1 | |
| **thinking** [1] | 63:5 | |
| **third** [15] | 15:23 | |
| 16:6 | 27:23 | 37:3 |
| 37:4 | 37:5 | 38:2 |
| 38:5 | 39:9 | 41:18 |

| | | |
|---|---|---|
| 41:21 | 43:8 | 46:11 |
| 49:19 | 50:9 | |
| **third-party** [2] | 15:19 | |
| 17:19 | | |
| **Thomas** [85] | 4:9 | |
| 4:11 | 4:18 | 4:25 |
| 5:5 | 5:8 | 5:10 |
| 5:13 | 5:17 | 5:18 |
| 5:22 | 5:24 | 6:2 |
| 6:5 | 6:10 | 6:13 |
| 6:18 | 7:2 | 7:6 |
| 7:7 | 7:11 | 7:19 |
| 8:1 | 8:6 | 8:13 |
| 8:17 | 9:11 | 9:14 |
| 9:15 | 9:19 | 10:12 |
| 10:12 | 11:6 | 11:9 |
| 11:17 | 11:18 | 12:15 |
| 12:23 | 12:25 | 13:3 |
| 13:11 | 13:13 | 13:24 |
| 14:12 | 14:16 | 15:8 |
| 15:19 | 16:7 | 16:13 |
| 16:16 | 16:21 | 16:24 |
| 17:5 | 17:14 | 17:16 |
| 18:3 | 18:21 | 18:22 |
| 18:25 | 19:2 | 19:21 |
| 23:13 | 23:15 | 24:25 |
| 25:1 | 25:16 | 26:9 |
| 26:11 | 26:18 | 27:10 |
| 27:13 | 27:14 | 28:5 |
| 28:18 | 28:24 | 29:23 |
| 30:14 | 30:17 | 31:1 |
| 31:19 | 31:20 | 31:22 |
| 32:7 | 32:9 | 32:20 |
| **Thomas'** [11] | 5:10 | |
| 5:20 | 8:1 | 13:5 |
| 15:5 | 23:13 | 24:7 |
| 24:8 | 28:23 | 29:5 |
| 32:10 | | |
| **thought** [3] | 13:11 | |
| 25:14 | 60:4 | |
| **thoughts** [1] | 67:3 | |
| **thousand** [1] | 60:16 | |
| **thousands** [1] | 53:12 | |
| **three** [5] | 8:7 | 16:11 |
| 25:25 | 56:13 | 58:18 |
| **through** [2] | 12:12 | |
| 21:19 | 31:1 | 31:5 |
| 32:7 | 32:15 | 36:11 |
| 38:22 | 49:21 | 51:18 |
| 61:1 | 61:23 | |
| **Thursday** [1] | 1:13 | |
| **ties** [1] | 62:9 | |
| **timely** [1] | 45:22 | |
| **times** [1] | 43:9 | |
| **timing** [1] | 17:21 | |
| 18:5 | 18:19 | |
| **Title** [1] | 57:4 | |
| **today** [5] | 2:23 | |
| 16:23 | 20:1 | 31:1 |
| 46:22 | | |
| **together** [2] | 47:8 | |
| 47:20 | | |
| **Tokyo** [1] | 49:3 | |
| **too** [1] | 59:2 | |
| **took** [1] | 51:18 | |
| **top** [1] | 46:16 | |
| **topic** [4] | 33:6 | 35:21 |
| 62:10 | 62:11 | |

| | | |
|---|---|---|
| **topics** [1] | 43:13 | |
| **total** [1] | 12:6 | |
| **training** [1] | 39:5 | |
| **transcript** [4] | 6:23 | |
| 12:5 | 12:11 | 29:14 |
| **transfer** [1] | 46:8 | |
| **transmitted** [3] | 25:3 | |
| 25:8 | 25:21 | |
| **tree** [1] | 20:21 | |
| **trial** [5] | 43:2 | 48:17 |
| 49:16 | 50:5 | 50:23 |
| **tried** [1] | 52:13 | |
| **true** [1] | 43:10 | |
| **truly** [1] | 45:21 | |
| **try** [4] | 3:6 | 7:10 |
| 11:14 | 63:1 | |
| **trying** [13] | 13:8 | |
| 19:22 | 20:6 | 21:13 |
| 27:19 | 32:4 | 33:18 |
| 41:22 | 44:16 | 46:24 |
| 55:16 | 61:13 | 64:11 |
| **turn** [2] | 36:11 | 66:11 |
| **turned** [1] | 29:10 | |
| **tutorials** [1] | 39:5 | |
| **twice** [3] | 34:17 | |
| 35:3 | 45:1 | |
| **two** [10] | 8:6 | 11:8 |
| 11:8 | 39:15 | 39:15 |
| 46:14 | 47:12 | 48:4 |
| 48:16 | 56:13 | |
| **two-page** [1] | 16:24 | |
| **twofold** [2] | 12:24 | |
| 14:9 | | |
| **type** [4] | 8:5 | 9:23 |
| 35:13 | 45:18 | |
| **types** [4] | 6:1 | |
| 8:7 | 60:9 | 60:12 |
| **U.S** [3] | 27:23 | 56:14 |
| 63:2 | | |
| **U.S.C** [1] | 57:4 | |
| **U.S.D.C.J** [1] | 1:10 | |
| **ultimately** [2] | 14:2 | |
| 53:21 | | |
| **under** [5] | 3:11 | |
| 10:1 | 13:15 | 62:8 |
| 64:21 | | |
| **underlying** [1] | 18:7 | |
| **underneath** [3] | 35:10 | |
| 36:15 | 61:25 | |
| **understand** [16] | 15:8 | |
| 24:21 | 28:10 | 29:19 |
| 29:20 | 29:24 | 31:10 |
| 31:11 | 36:1 | 41:23 |
| 44:8 | 45:20 | 50:18 |
| 51:7 | 56:19 | 64:18 |
| **understood** [4] | 6:22 | |
| 6:24 | 25:14 | 30:22 |
| **unduly** [1] | 51:24 | |
| 52:2 | | |
| **unequivocally** [1] | | |
| 11:19 | | |
| **unidentified** [4] | | |
| 30:1 | 30:18 | 31:8 |
| 37:4 | | |
| **United** [10] | 1:1 | |

universe - yourselves

| | | | |
|---|---|---|---|
| 48:20 | 49:12 | 63:2 | |
| 63:3 | 63:7 | 63:9 | |
| 63:22 | 64:16 | 65:18 | |

**universe** [1]    8:12

**unsuccessful** [1]
50:10

**unusual** [2]    63:1
63:4

**up** [12]    6:7    15:25
16:4    17:25    31:2
32:7    35:19    45:15
50:5    50:15    53:20
62:23

**used** [9]    20:16    21:4
39:19    40:9    56:9
56:16    64:22    64:24
65:11

**user** [3]    39:4    42:1
46:15

**using** [12]    39:17
39:23    47:13    54:5
56:8    58:1    58:1
58:10    60:6    60:12
60:14    64:7

**utilization** [3]    33:23
35:24    36:4

**v** [1]    1:6

**vast** [1]    45:10

**verbally** [1]    15:11

**versus** [1]    41:21

**view** [1] 3:21

**voluntarily** [1] 50:14

**W** [2]    1:18    1:21

**wait** [1]    11:5

**waived** [1]    14:1

**Wall** [1] 22:3

**wants** [1]    17:24

**Washington** [1] 1:22

**ways** [2] 45:6    49:21

**week** [4] 11:5    11:5
61:16    61:16

**weeks** [1]    58:18

**weighing** [1]    41:20

**Whetzel** [3]    1:18
2:11    2:12

**White** [1]    2:5

**whole** [4]    13:16
22:5    29:7    58:3

**willing** [9]    34:6
38:13    39:21    44:11
44:12    44:16    49:22
50:14    51:2

**Wilmington** [1] 1:12

**windows** [1]    49:11

**wish** [2] 12:6    57:13

**withheld** [3]    4:11
9:4    10:5

**withhold** [1]    10:5

**within** [1]    64:6

**witness** [8]    5:1
16:2    17:5    18:3
20:15    21:5    21:17
48:17

**witness'** [2]    20:17
21:5

**witnesses** [2]    16:3
21:23

**word** [3] 48:15    49:8
51:9

**words** [6]    15:25
20:15    21:4    24:14
24:16    31:21

**written** [1]    23:12

**year** [1]    51:2

**years** [1] 50:3

**Yesterday** [2]    56:18
57:7

**yet** [3]    21:16    43:9
48:14

**yourselves** [1]    3:22

**EXHIBIT 6**

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 828-2228
E-Mail Address: HoffmanG@dsmo.com

August 28, 2003

BY FACSIMILE

Theresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA  94025

Re:            Ricoh Company, Ltd. v. Aeroflex et al.

Dear Terry:

        I write to follow up on two of the discovery issues that were discussed at today's hearing.  You represented that defendants' initial disclosures were "inartfully drafted" and "vague."  We, therefore, request that you  submit a revised initial disclosure that  complies with Rule 26(a) and produce all of the documents described therein.

        With respect to defendants' responses to Ricoh's document requests and Synopsys' response to Ricoh's subpoena, now that those categories have been narrowed and the Court has directed document discovery, including the production of confidential documents, to proceed, please identify before the end of next week the documents that will be produced and make such production by no later than mid-September.  To the extent that defendants or Synopsys are refusing to produce and responsive documents, please  identify them to us before the end of next week so we can (as Judge Sleet said), "finish our conversation."

1177 Avenue of the Americas • New York, New York 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
www.legalinnovators.com



Theresa M. Corbin, Esq.
August 28, 2003
Page 2


We look forward to your prompt response so we can resolve all of these issues by September 5, as directed by the Court.

Very truly yours,

Gary M. Hoffman

cc:    Edward Meilman, Esq. (via facsimile)
       Christopher M. Kelley, Esq. (via facsmilie)
       Frank DiGionani, Esq. (via facsimile)
       Robert Whetzel, Esq. (via facsimile)

**EXHIBIT 7**

DICKSTEIN    SHAPIRO    MORIN    &    OSHINSKY    LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689

Writer's Direct Dial: (212) 896-5471
E-Mail Address: MeilmanE@dsmo.com

September 4, 2003

**Via Facsimile: (650) 463-8400**
** Confirmation by Mail**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025

Re:    *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
       Our Ref.: R2180.0100

Dear Mr. Kelley:

In light of our telephone conversation yesterday, I wish to make the following clear as to our position.

Judge Sleet's Order of July 31, 2003, second paragraph, required Howrey Simon to submit all documents withheld on the basis of attorney-client privilege or work product doctrine to the Court for an *in camera* inspection and to provide the Plaintiff with a detailed privileged log. Since the case was transferred and not dismissed, the Court's Order remains in effect.

You sought a "clarification" of that aspect of the Court's Order and Judge Sleet considered that issue at the telephone conference of August 28, 2003. Judge Sleet confirmed that all documents dated between June 25 and July 30, 2003 concerning Dr. Thomas (excluding that portion of internal Howrey Simon communications relating to strategy for the conference call with the Court) were contemplated by the Order and must be produced either to Plaintiff or to the Court for *in camera* inspection with a detailed privilege log provided to Plaintiff. Judge Sleet further indicated that he expected all matters raised at the August 28, 2003 conference to be resolved by the end of this week. Accordingly, it is our position that failure to submit the documents for *in camera* inspection and provide us with the detailed privilege log by close of business on Friday, September 5, 2003 will place the Howrey Simon firm in violation of Judge Sleet's Order.

We appreciate your comment that Judge Jenkins will not have context if you submit this material. We will not object if you advise Judge Jenkins that the reason for the submission is set forth on pages 4-32 of the August 28, 2003 transcript and enclose a copy of the entire transcripts of the August 28 and July 30, 2003 conference (which

*1177 Avenue of the Americas • 41st Floor • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*http://www.dsmo.com*

79755 v1; 1PJF01!.DOC

Christopher L. Kelley, Esq.
September 4, 2003
Page 2


Judge Sleet ordered produced at page 29 of the August 28, 2003 transcript).  We will,
however, object if you go beyond that statement and submission in any way.

        Also during our conversation, you indicated that you believed all remaining
objections to Ricoh's discovery requests were resolved by defining the ASIC Product as
being the product of a computer aided design process involving logic synthesis but
would advise me if that was not correct by close of business today.  As you know, Judge
Sleet directed us to resolve that matter by tomorrow and therefore we need to address
any further problems quickly (assuming any still exist) and you agreed before Judge
Sleet to produce all of the documents by the middle of September.  Now that the scope
of the requests has been resolved, the documents should be produced no late than
September 19, 2003.  Would you please confirm this will be done.


                        Very truly yours,

                        Edward A. Meilman


EAM/hc


cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.

**EXHIBIT 8**



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

CHRISTOPHER L. KELLEY
PARTNER
650.463.8113
kelleyc@howrey.com

September 8, 2003

## VIA FACSIMILE AND U.S. MAIL

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:     *Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.*
        Civil Action No. 03-103-GMS

Dear Ed:

I have your letter to me of August 28.

During the telephone conference with Judge Sleet, we proposed several bounds on the sweeping discovery that Ricoh has originally submitted. The parties indicated to the Court that compromise on discovery appeared possible based on those limiting bounds. The conference confirmed the course of action that we had undertaken prior to the conference when we had determined to begin collecting the following types of materials from AMI, Aeroflex and from the Matrox defendants regarding the operations of Matrox Tech:

> *for those ASICs for which a defendant's design process included a computer-assisted logic synthesis step, documents relating to computer-assisted logic synthesis operations*

Defendants will also produce documents identifying those ASICs whose design did include a computer-assisted logic synthesis step.

Based on the content of the discussion before Judge Sleet and your letter of August 28, I am not aware of any disagreement between the parties as to the appropriate scope of the discovery that defendants will provide. Your letter, however, cryptically states that I "expressed reservations to the Judge" about certain discovery. We did make objection to Ricoh's document requests as drafted, but Ricoh itself did not attempt at the hearing to defend its document requests as drafted. If you were intending to raise some other issue, please be more specific about the nature of the dispute.

Very truly yours,

Christopher L. Kelley

CLK:gg

BRUSSELS    CHICAGO    HOUSTON    IRVINE    LONDON    LOS ANGELES    MENLO PARK    SAN FRANCISCO    WASHINGTON, DC

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689

Writer's Direct Dial: (212) 896-5471
E-Mail Address: MeilmanE@dsmo.com

September 10, 2003

**Via Facsimile:  (650) 463-8400**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025

      Re:   *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
             Delaware Civil Action No. 03-103-GMS
             Our Ref.: R2180.0171

Dear Mr. Kelley:

        Your letter of September 8, 2003 appear to reflect an attempt to backtrack; this is the problem that I  mentioned to Judge Sleet and which you did not attempt to defend during the conference with the Court.  While there was agreement that the subject matter would be ASICs that were designed by a process including a computer-assisted logic synthesis operation, our document requests relate to the entire process of making those ASICs and not strictly limited to the computer assisted logic synthesis operations.  The request include those documents showing the input specification to the logic synthesis operation and high level documentation showing what happens to the netlist output that is obtained.  Also, as you seem to agree, the document requests also cover the production of documents fully identifying and describing the ASIC designed using a logic synthesis operation, including the sale of such ASICS.  If you are going to try to restrict your responses to just the computer assisted logic synthesis operations themselves, then we will obviously have to go back to the Court once again.  Please let me know if you are going to insist on such a limitation.

        We are still seeking information and documents about the activities of the Matrox defendants in Canada.  We disagree with your contentions regarding the patent covering the Canadian activities.  In any event, you have refused to provide us with any factual information which will allow us, and eventually the Court, to determine whether your interpretation of the law is applicable to the facts.  For example, you have asserted that there are subsequent process steps which materially change the product but you refuse to tell us what are those steps.  We urge you to reconsider your position and provide the requested discovery.

80180 v1; 1PV801!.DOC

Christopher L. Kelley, Esq.
September 10, 2003
Page 2


        Please send copies of all correspondence to Gary Hoffman.



                                Very truly yours,



                                Edward A. Meilman


EAM/hc
Cc: Gary Hoffman, Esq.
      Kenneth Brothers, Esq.

**EXHIBIT 9**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RECEIVED

JUN 0 2 2003

Robert W. Whetzel

RICOH COMPANY, LTD.                          )
                                             )
            Plaintiff,                       )
                                             )
     v.                                      )     C.A. No. 03-103-GMS
                                             )
                                             )
AEROFLEX INCORPORATED, AMI                   )
SEMICONDUCTOR, INC., MATROX                  )
ELECTRONIC SYSTEMS LTD.,                     )
MATROX GRAPHICS INC., MATROX                 )
INTERNATIONAL CORP., and                     )
MATROX TECH, INC.,                           )
                                             )
            Defendants.                      )
                                             )

**DEFENDANTS' INITIAL DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendants Aeroflex

Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), Matrox Electronic

Systems Ltd. ("Matrox"), Matrox Graphics, Inc. ("Matrox Graphics"), Matrox

International Corp. ("Matrox Int'l"), and Matrox Tech, Inc. ("Matrox Tech") (Matrox,

Matrox Graphics, Matrox Int'l, and Matrox Tech are collectively referred to as "the

Matrox entities") (Aeroflex, AMIS and the Matrox entities are collectively referred to as

"Defendants"), hereby make the following Initial Disclosures. These disclosures are

based on information reasonably available to Defendants at the present time. Defendants'

investigation of the facts of this case is ongoing. Therefore, Defendants reserve the right

to supplement these disclosures when and if additional information becomes available.

Defendants' disclosures are made without waiving, in any way: (1) the right to

object on any basis permitted by law to the use of any such information, for any purpose,

-1-

in whole or in part, in any subsequent proceeding in this action or any other action; and
(2) the right to object on any basis permitted by law to any other discovery request or
proceeding involving or relating to the subject matter of these disclosures.  All of the
following disclosures are made subject to the above objections and qualifications.

### A.    Individuals with Discoverable Information

Pursuant to Fed. R. Civ. P.26(a)(1)(A), Defendants list the following individuals
who are likely to have discoverable information relevant to the disputed facts in this
action.  In disclosing the individuals whom are employees, consultants or former
employees of Defendants, Defendants do not authorize any effort by plaintiff Ricoh
Company, Ltd., ("Ricoh") to contact individuals associated with any of the Defendants in
connection with this lawsuit, except through appropriate counsel.

| Name and Address | Subject Matter |
|---|---|
| **Aeroflex** | |
| Peter Milliken<br>Director, Semi-Custom Products & Services<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Design and development of Aeroflex' ASIC products |
| John Reinert<br>Director, Program Management<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Design and development of Aeroflex' ASIC products |
| Vern Schnathorst<br>Design Manager, Standard Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Design and development of Aeroflex' ASIC products |

| | |
|---|---|
| Brandon Coco<br>Principal ASIC Engineer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Design and development of Aeroflex' ASIC products |
| James Webster<br>Product Design Engineer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Design and development of Aeroflex' ASIC products |
| Anthony Jordan<br>Director, Standard Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Design and development of Aeroflex' ASIC products |
| David Kerwin<br>Director, Mixed-Signal Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Design and development of Aeroflex' ASIC products |
| Richard Bruder<br>Chief Financial Officer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO  80907 | Financial |

AMIS

| | |
|---|---|
| Jon Stoner<br>Chief Technology Officer<br>AMI Semiconductor, Inc.<br>2300 Buckskin Road<br>Pocatello, ID  83201 | Design and development of AMIS' ASIC products |
| Bob Kirk<br>Director, Applications Engineering-Digital<br>ASICs<br>AMI Semiconductor, Inc.<br>P.O. Box 967<br>22960 Vantage Pointe Dr., Ste A<br>Twain Harte, CA  95383 | Design and development of AMIS' ASIC products |

-3-

Matrox entities

Erik Boisvert                                          Design and development of the Matrox
Senior Engineer                                        entities' ASIC products
Matrox Electronic Systems Ltd.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

David Chiappini                                        Design and development of the Matrox
ASIC Project Director                                  entities' ASIC products
Matrox Graphics Inc.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Ed Dwyer                                               Design and development of the Matrox
Executive Vice-President                               entities' ASIC products
Matrox Graphics Inc.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Andres Desbiens                                        Financial
Corporate Controller
Matrox Electronic Systems Ltd.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Other Individuals

        To the extent Ricoh is advancing a claim construction that would read on the

Defendants' logic design or logic synthesis practices, such a claim construction would be

anticipated by a multitude of prior art logic synthesis systems and prior art logic design

practices.  Persons with knowledge of such prior art include Aart de Geus, CEO of

Synopsys, Inc. ("Synopsys"), Mountain View and Sunnyvale, California, and David

Gregory, William Cohen, and Karen Bartlett, all previously associated with Synopsys.

Messers. de Geus, Gregory, and Cohen, and Ms. Bartlett all have knowledge of the prior

"Socrates" logic synthesis system; Paul Drongowski of Compaq Corporation, address

-4-

unknown, who has knowledge of the prior art "Gdl" synthesis system; John Darringer, address unknown, who has knowledge of the prior art "LSS" logic synthesis system; and Kurt Keutzer, Department of Electrical Engineering and Computer Sciences, University of California at Berkeley, who has knowledge about the prior art "Dagon" synthesis system. Other prior art logic synthesis systems are believed to be relevant and will be identified as defendants obtain more information about these systems.

In addition, Defendants believe that a number of additional individuals are likely to have personal knowledge about prior art relating to logic synthesis systems and logic design practices, including individuals at Cadence Design Systems, Inc., San Jose, California, Monterey Design Systems, Sunnyvale, California, Magma Design Automation, Cupertino, California, Get2Chip, Inc., San Jose, California, Incentia Design Systems, Inc., Santa Clara, California, Stanford University, Stanford California, University of California at Berkeley, Berkeley, California, University of Southern California, Los Angeles, California, and Carnegie-Mellon University, Pittsburgh, Pennsylvania.

Defendants additionally believe that a number of present or former employees of Ricoh, International Chip Corporation and Knowledge Based Silicon are likely to have information about the scope of the subject matter of the claims of U.S. patent number 4,922,432 (the "'432 patent") and about Defendant's laches and equitable estoppel defenses, including at least Hideaki Kobayashi, address unknown, Masahiro Shindo, address unknown, and James P. Davis, Department of Computer Science and Engineering, University of South Carolina, Columbia, South Carolina.

**B.    Documents**

Defendants identify the following categories of documents and tangible things in the possession, custody or control of Defendants located at, among other places, their principal places of business that are relevant to the disputed facts in this action.

1.      Product design and development materials

2.      Marketing and promotional materials

3.      Sales and accounting statements

4.      Correspondence

5.      Reports

6.      Presentations

7.      Publications

8.      Electronic files

Defendants are in the process of providing the documents described in Items 1 through 8 above to their counsel.

Defendants reserve the right to supplement these disclosures should new information become available.

**C.      Computation of Damages**

Defendants seek attorneys' fees and costs. Although the total amount of Defendants' fees and costs are unknown at this time, Defendants reserve the right to supplement this Disclosure as discovery proceeds and additional information becomes available.

**D.      Insurance Policies**

There are no insurance policies referred to in Fed. R. Civ. P. 26(a)(1)(D) that Defendants are aware of at this time.

Dated: May 30, 2003                    By: _____

                                     Teresa M. Corbin
                                     Christopher L. Kelley
                                     Erik K. Moller
                                     HOWREY SIMON ARNOLD & WHITE, LLP
                                     301 Ravenswwod Ave.
                                     Menlo Park, CA 94025
                                     Telephone: (650)463-8100

Attorneys for Defendants/
Counterclaimants AEROFLEX
INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD.,
MATROX GRAPHICS INC.,
MATROX INTERNATIONAL CORP.
and MATROX TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Initial Disclosure Statement of Intervenor Synopsys, Inc. was served this 30th day of May, 2003 on the following First Class U.S. Mail:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526


Gayle L. Jacob

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on this 2nd day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel, Esq.
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899
(302) 651-7700

**VIA FEDERAL EXPRESS**

Gary M. Hoffman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526
(202) 828-2228

**VIA FEDERAL EXPRESS**

Edward A. Meilman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue of the Americas
New York, New York  10036
(212) 896-5471

Francis DiGiovanni

257809

EXHIBIT 10

1  Gary M. Hoffman, pro hac vice
2  Kenneth W. Brothers, pro hac vice
   Eric Oliver, pro hac vice
3  Dickstein Shapiro Morin & Oshinsky LLP
   2101 L Street, NW
4  Washington, DC  20037-1526
   Phone:  (202) 785-9700
5  Fax:  (202) 887-0689

6
   Edward A. Meilman, pro hac vice
7  Dickstein Shapiro Morin & Oshinsky LLP
   1177 Avenue of the Americas
8  New York, New York  10036-2714
   Phone:  (212) 835-1400
9  Fax:  (212) 992-9880

10
   Jeffrey B. Demain, State Bar No. 126715
11 Jonathan Weissglass, State Bar No. 185008
   Altshuler, Berzon, Nussbaum, Rubin & Demain
12 177 Post Street, Suite 300
   San Francisco, California  94108
13 Phone: (415) 421-7151
   Fax: (415) 362-8064
14

15 Attorneys for Plaintiff Ricoh Company, Ltd.

16            IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
17               SAN FRANCISCO DIVISION

18

19 RICOH COMPANY, LTD.,                )  Case No. CV-
                                       )
20          Plaintiff,                 )  (D. Del Case No.  03-103 GMS)
                                       )
21     vs.                             )  PATENT INFRINGEMENT ACTION
                                       )
22 AEROFLEX INCORPORATED, AMI          )  NOTICE OF DEPOSITION OF
23 SEMICONDUCTOR, INC., MATROX         )  AEROFLEX INCORPORATED
   ELECTRONIC SYSTEMS, LTD., MATROX    )  PURSUANT TO FED. R. CIV. P. 30(b)(6)
24 GRAPHICS INC., MATROX               )
   INTERNATIONAL CORP. and MATROX      )
25 TECH, INC.,                         )
                                       )
26          Defendants.                )
                                       )
27 _____    )

28

1

2      PLEASE TAKE NOTICE that Ricoh Company, Ltd. ("Ricoh"), by and through its

3    attorneys, will take the depositions upon oral examination pursuant to Rule 30(b)(6) of the Federal

4    Rules of Civil Procedure of the person(s) designated by Aeroflex Incorporated ("Aeroflex") as

5    knowledgeable regarding the subject areas listed below.  The deposition will take place at the

6    offices of Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, Delaware 19899, or

7    at a place mutually agreed upon by the parties, commencing at 9:00 a.m. on October 8, 2003, or on

8    a date mutually agreed upon by the parties, and will continue from day to day until completed.

9      The deposition may be videotaped and will be made before an officer authorized to

10   administer an oath and will be recorded by stenographic means.

11                            **DEFINITIONS**

12      a)  **Communication.**  The term "communication" means the transmittal of information (in

13   the form of facts, ideas, inquiries or otherwise).

14
15      b)  **Document.**  The term "document" is defined to be synonymous in meaning and equal

16   in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without

17   limitation, electronic or computerized data or data compilations.  A draft or non-identical copy is a

18   separate document within the meaning of this term.

19      c)  **Synopsys, Inc.**  The term "Synopsys, Inc." as well as its abbreviated name (e.g.,

20   "Synopsys") or a pronoun referring to the foregoing means the Delaware corporation known as

21   Synopsys, Inc and having place of business at 700 E. Middlefield Road, Mountain View,

22   California, and, where applicable, its officers, directors, employees, agents, independent

23   contractors, partners, corporate parent, subsidiaries or affiliates.

24      d)  **Aeroflex Incorporated.**  The term "Aeroflex Incorporated" as well as its abbreviated

25   name (e.g., "Aeroflex") or a pronoun referring to the foregoing means the Delaware corporation

26   known as Aeroflex Incorporated and having place of business at 35 South Service Road,

27

28

Plainview, New York, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

e) **Plaintiff.** The term "plaintiff" as well as the plaintiff's full ("Ricoh Company, Ltd.") or abbreviated name ("Ricoh") or a pronoun referring to Ricoh shall mean Ricoh and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

f) **Defendant.** The term "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates. Where the listed subject area is not related or limited to a specific named defendant, the listed subject area shall be construed as seeking knowledge and information concerning any and all of the defendants named in this action, including Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc.

g) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

h) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

i) **All/Each.** The terms "all" and "each" shall be construed as all and each.

j) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

k) **Number.** The use of the singular form of any word includes the plural and vice versa.

l) **Sale/Sold/Offered for Sale.** As used herein, "sale," "sold" and "offered for sale" shall include "license," "licensed" and "offered for license."

m) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

n) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise known by defendant as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

o) **ASIC Product.** The term "ASIC Product" refers to any ASIC or integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured in whole or in part by a computer aided design including logic synthesis, used, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

p) **ASIC Design System.** As used herein, "ASIC Design System" refers to any and all software, hardware, database library or other components making up or otherwise contributing to systems, modules, tools or products for use in any part of a computer-aided design including any ASIC Product (as defined above). ASIC Design Systems include but are not limited to the Synopsys software, hardware, database libraries or other components known as Design Compiler, Knowledge Consultant, Behavioral Compiler, Module Compiler, DesignWare Library/DesignWare Foundation Library, CoCentric System C Compiler, HDL Compiler Family, VHDL Compiler, HDL Compiler for Verilog, and DC Shell.

q) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes that use ASIC Design Systems in the computer-aided design including logic synthesis of any ASIC Product (as defined above).

r)  **Limitations.**  Each listed subject area shall be construed independently and no listed subject area shall limit the scope of any other listed subject area.

s)  **Design.**  The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

t)  **Time period**  Unless otherwise specified, the time period for the these topics is from January 1, 1996 to the present.

## TOPICS FOR EXAMINATION

Pursuant to Fed. R. Civ. P. 30(b)(6), Aeroflex shall produce to testify on its behalf one or more officers, directors, managing agents, or other persons, who are qualified, knowledgeable and competent to testify as to all matters known or reasonable available to Aeroflex with respect to the following topics:

1.  The organizational structure of Aeroflex, including, but not limited to those groups, divisions, teams and other organizations having any involvement in Aeroflex's ASIC Method at any time, and the identity of all individuals who can testify about such organization.

2.  The identification of any business entity that designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Aeroflex, any ASIC Product.

3.  The identification of any business entity that uses the ASIC Method to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Aeroflex, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Aeroflex, the person or entity performing such step or activity.

4.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture any ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Aeroflex, and identification of the individual's activity concerning such involvement.

5.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in performing an ASIC Method for any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Aeroflex; identification of the ASIC Products for which such ASIC Method was performed; and

NOTICE OF DEPOSITION OF AEROFLEX INCORPORATED PURSUANT TO FED. R. CIV. P. 30(b)(6)

identification of the acts of each individual that contributed to performing the ASIC Method.

6.    Any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and Aeroflex.

7.    Any product, including, but not limited to any software or ASIC Design System product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided to Aeroflex.

8.    Any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to Aeroflex (or from Aeroflex to Synopsys), including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue.

9.    Any product designed or otherwise made by Aeroflex, using any ASIC Design System, including, but not limited to, products designed or made using Design Compiler (or any product that includes Design Compiler).

10.    The identification of any ASIC Design System including, but not limited to, the manufacturer, product name, and version, used by Aeroflex to design or otherwise make any product.

11.    The identification of any software library, cell library, and database used by Aeroflex with any ASIC Design System, including, but not limited to, Design Compiler.

12.    The user interface to any ASIC Design System for designing, making or using ASIC Products, including, but not limited to, the user interface for designing, making or using products designed or made using Design Compiler (or any product that includes Design Compiler), and the forms and methods of user input used by or on behalf of Aeroflex (whether such input is Verilog, VHDL, HDL, or any other form of input).

13.    The output or netlist (and use thereof) of ASIC Design Systems used by or on behalf of Aeroflex to fabricate any product designed or otherwise made, using any ASIC Design System, including, but not limited to, the output or netlist used to fabricate any ASIC Products designed or otherwise made using Design Compiler (or any product that includes Design Compiler).

14.    The identification of the steps or other activities making up the ASIC Method used to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Aeroflex, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Aeroflex, the person or entity performing such step or activity.  Such steps or other activities include, but are not limited to, the use of ASIC Design Systems in:  defining a library of available hardware cells; selecting hardware cells based on input specifications; and generating an output or netlist of hardware cells needed to achieve the intended function of an ASIC Product.

15. Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Aeroflex, including, but not limited to the identification for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by Aeroflex (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

16. The use by Aeroflex of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS'), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by Aeroflex.

17. The cost savings (actual or potential) by Aeroflex as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

18. The marketing of any product designed, sold, or otherwise made by Aeroflex using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

19. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in Aeroflex's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each Aeroflex product.

20. The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

21. The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by Aeroflex of each of Aeroflex's ASIC Products.

22. The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by Aeroflex of Aeroflex's ASIC Products, including how Aeroflex defines each item of cost deducted from gross revenue to calculate gross and net profits.

23. The sales by Aeroflex of each ASIC Product produced by an ASIC Method.

24. All facts related to any infringement or non-infringement of the patent-in-suit.

25. All facts related to the validity or invalidity of the patent-in-suit.

26. All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

27. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

28. Knowledge by Aeroflex of the patent-in-suit prior to January 20, 2003.

29. The identification of each individual from Aeroflex (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

30. Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

31. Any communications within Aeroflex concerning the patent-in-suit.

32. The identification of all documents concerning all materials presented to any of Aeroflex's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

33. Any communications between Aeroflex and any other defendant concerning the patent-in-suit.

34. Any communications between Aeroflex and Synopsys concerning the patent-in-suit.

35. Any communications between Aeroflex and any person or entity other that the other defendants and Synopsys concerning the patent-in-suit.

Aeroflex is requested to identify in writing the name, position, and employer of the individuals(s) so designated and to set forth the matters on which that person will testify no later than seven (7) days prior to the agreed upon deposition date.

1

2

3    Dated: September 25, 2003

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Ricoh Company, Ltd.

By: _____

Gary M. Hoffman
Kenneth W. Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
OSHINSKY  LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, California  94108
Phone:  (415) 421-7151
Fax:  (415) 362-8064

Attorneys for the Plaintiff

1   Gary M. Hoffman, pro hac vice
    Kenneth W. Brothers, pro hac vice
2   Eric Oliver, pro hac vice
3   Dickstein Shapiro Morin & Oshinsky LLP
    2101 L Street, NW
4   Washington, DC 20037-1526
    Phone: (202) 785-9700
5   Fax: (202) 887-0689

6
    Edward A. Meilman, pro hac vice
7   Dickstein Shapiro Morin & Oshinsky LLP
    1177 Avenue of the Americas
8   New York, New York 10036-2714
    Phone: (212) 835-1400
9   Fax: (212) 992-9880

10
    Jeffrey B. Demain, State Bar No. 126715
11  Jonathan Weissglass, State Bar No. 185008
    Altshuler, Berzon, Nussbaum, Rubin & Demain
12  177 Post Street, Suite 300
    San Francisco, California 94108
13  Phone: (415) 421-7151
    Fax: (415) 362-8064
14

15  Attorneys for Plaintiff Ricoh Company, Ltd.

16              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
17                   SAN FRANCISCO DIVISION

18

19  RICOH COMPANY, LTD.,                    )  Case No. CV-
                                            )
20              Plaintiff,                   )  (D. Del Case No. 03-103 GMS)
                                            )
21      vs.                                  )  PATENT INFRINGEMENT ACTION
                                            )
22  AEROFLEX INCORPORATED, AMI               )  NOTICE OF DEPOSITION OF AMI
23  SEMICONDUCTOR, INC., MATROX             )  SEMICONDUCTOR, INC.
    ELECTRONIC SYSTEMS, LTD., MATROX        )  PURSUANT TO FED. R. CIV. P. 30(b)(6)
24  GRAPHICS INC., MATROX                    )
    INTERNATIONAL CORP. and MATROX          )
25  TECH, INC.,                              )
                                            )
26              Defendants.                  )
                                            )
27  _____     )

28

1

2    PLEASE TAKE NOTICE that Ricoh Company, Ltd. ("Ricoh"), by and through its

3    attorneys, will take the depositions upon oral examination pursuant to Rule 30(b)(6) of the Federal

4    Rules of Civil Procedure of the person(s) designated by AMI Semiconductor, Inc. ("AMI") as

5    knowledgeable regarding the subject areas listed below.  The deposition will take place at the

6    offices of Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, Delaware 19899, or

7    at a place mutually agreed upon by the parties, commencing at 9:00 a.m. on October 9, 2003, or on

8    a date mutually agreed upon by the parties, and will continue from day to day until completed.

9    The deposition may be videotaped and will be made before an officer authorized to

10   administer an oath and will be recorded by stenographic means.

11   ## DEFINITIONS

12   a) **Communication.**  The term "communication" means the transmittal of information (in

13   the form of facts, ideas, inquiries or otherwise).

14   b) **Document.**  The term "document" is defined to be synonymous in meaning and equal

15   in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without

16   limitation, electronic or computerized data or data compilations.  A draft or non-identical copy is a

17   separate document within the meaning of this term.

18

19   c) **Synopsys, Inc.**  The term "Synopsys, Inc." as well as its abbreviated name (e.g.,

20   "Synopsys") or a pronoun referring to the foregoing means the Delaware corporation known as

21   Synopsys, Inc and having place of business at 700 E. Middlefield Road, Mountain View,

22   California, and, where applicable, its officers, directors, employees, agents, independent

23   contractors, partners, corporate parent, subsidiaries or affiliates.

24   d) **AMI Semiconductor, Inc.**  The term "AMI Semiconductor, Inc." as well as its

25   abbreviated name (e.g., "AMI") or a pronoun referring to the foregoing means the Delaware

26   corporation known as AMI Semiconductor, Inc. and having place of business at 2300 Buckskin,

27

28

Road, Pocatello, ID 83201, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

e) **Plaintiff.** The term "plaintiff" as well as the plaintiff's full ("Ricoh Company, Ltd.") or abbreviated name ("Ricoh") or a pronoun referring to Ricoh shall mean Ricoh and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

f) **Defendant.** The term "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates. Where the listed subject area is not related or limited to a specific named defendant, the listed subject area shall be construed as seeking knowledge and information concerning any and all of the defendants named in this action, including Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc.

g) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

h) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

i) **All/Each.** The terms "all" and "each" shall be construed as all and each.

j) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

k) **Number.** The use of the singular form of any word includes the plural and vice versa.

l) **Sale/Sold/Offered for Sale**. As used herein, "sale," "sold" and "offered for sale" shall include "license," "licensed" and "offered for license."

1

2    m) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to United

3    States Letters Patent Number 4,922,432.

4    n) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a

5    specific application, including but not limited to integrated circuits that are referred to or otherwise

6    known by defendant as an "application specific integrated circuit" or "ASIC," and other integrated

7    circuits designed to perform a desired function in a specific application, but not including

8    standard, general purpose integrated circuits such as microprocessors and memory chips.

9    o) **ASIC Product.** The term "ASIC Product" refers to any ASIC or integrated circuit

10   product or item  that is designed for a specific application, and/or a product or item that includes

11   such an integrated circuit product that is manufactured in whole or in part by a computer aided

12   design including logic synthesis, used, sold, offered for sale, imported, or distributed by, on behalf

13   of, or otherwise at the direction of defendant.

14   p) **ASIC Design System.** As used herein, "ASIC Design System" refers to any and all

15   software, hardware, database library or other components making up or otherwise contributing to

16   systems, modules, tools or products for use in any part of a computer-aided design including of

17   any ASIC Product (as defined above). ASIC Design Systems include but are not limited to the

18   Synopsys software, hardware, database libraries or other components known as Design Compiler,

19   Knowledge Consultant, Behavioral Compiler, Module Compiler, DesignWare

20   Library/DesignWare Foundation Library, CoCentric System C Compiler, HDL Compiler Family,

21   VHDL Compiler, HDL Compiler for Verilog, and DC Shell.

22   q) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other

23   activities making up or otherwise contributing to methods and/or processes that use ASIC Design

24   Systems in the computer-aided design including logic synthesis of any ASIC Product (as defined

25   above).

26

27

28

r)  **Limitations.**  Each listed subject area shall be construed independently and no listed subject area shall limit the scope of any other listed subject area.

s)  **Design.**  The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

t)  **Time period**  Unless otherwise specified, the time period for the these topics is from January 1, 1996 to the present.

## TOPICS FOR EXAMINATION

Pursuant to Fed. R. Civ. P. 30(b)(6), AMI shall produce to testify on its behalf one or more officers, directors, managing agents, or other persons, who are qualified, knowledgeable and competent to testify as to all matters known or reasonable available to AMI with respect to the following topics:

1.  The organizational structure of AMI, including, but not limited to those groups, divisions, teams and other organizations having any involvement in AMI's ASIC Method at any time, and the identity of all individuals who can testify about such organization.

2.  The identification of any business entity that designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of AMI, any ASIC Product.

3.  The identification of any business entity that uses the ASIC Method to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of AMI, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by AMI, the person or entity performing such step or activity.

4.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture any ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of AMI, and identification of the individual's activity concerning such involvement.

5.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in performing an ASIC Method for any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of AMI; identification of

the ASIC Products for which such ASIC Method was performed; and identification of the acts of each individual that contributed to performing the ASIC Method.

6.    Any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and AMI.

7.    Any product, including, but not limited to any software or ASIC Design System product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided to AMI.

8.    Any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to AMI (or from AMI to Synopsys), including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue.

9.    Any product designed or otherwise made by AMI, using any ASIC Design System, including, but not limited to, products designed or made using Design Compiler (or any product that includes Design Compiler).

10.   The identification of any ASIC Design System including, but not limited to, the manufacturer, product name, and version, used by AMI to design or otherwise make any product.

11.   The identification of any software library, cell library, and database used by AMI with any ASIC Design System, including, but not limited to, Design Compiler.

12.   The user interface to any ASIC Design System for designing, making or using ASIC Products, including, but not limited to, the user interface for designing, making or using products designed or made using Design Compiler (or any product that includes Design Compiler), and the forms and methods of user input used by or on behalf of AMI (whether such input is Verilog, VHDL, HDL, or any other form of input).

13.   The output or netlist (and use thereof) of ASIC Design Systems used by or on behalf of AMI to fabricate any product designed or otherwise made, using any ASIC Design System, including, but not limited to, the output or netlist used to fabricate any ASIC Products designed or otherwise made using Design Compiler (or any product that includes Design Compiler).

14.   The identification of the steps or other activities making up the ASIC Method used to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of AMI, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by AMI, the person or entity performing such step or activity. Such steps or other activities include, but are not limited to, the use of ASIC Design Systems in: defining a library of available hardware cells; selecting hardware cells based on input specifications; and generating an output or netlist of hardware cells needed to achieve the intended function of an ASIC Product.

15.   Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of AMI, including, but not limited to the identification

for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by AMI (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

16. The use by AMI of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS'), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by AMI.

17. The cost savings (actual or potential) by AMI as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

18. The marketing of any product designed, sold, or otherwise made by AMI using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

19. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in AMI's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each AMI product.

20. The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

21. The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by AMI of each of AMI's ASIC Products.

22. The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by AMI of AMI's ASIC Products, including how AMI defines each item of cost deducted from gross revenue to calculate gross and net profits.

23. The sales by AMI of each ASIC Product produced by an ASIC Method.

24. All facts related to any infringement or non-infringement of the patent-in-suit.

25. All facts related to the validity or invalidity of the patent-in-suit.

26. All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

27. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person

from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

28.    Knowledge by AMI of the patent-in-suit prior to January 20, 2003.

29.    The identification of each individual from AMI (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

30.    Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

31.    Any communications within AMI concerning the patent-in-suit.

32.    The identification of all documents concerning all materials presented to any of AMI's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

33.    Any communications between AMI and any other defendant concerning the patent-in-suit.

34.    Any communications between AMI and Synopsys concerning the patent-in-suit.

35.    Any communications between AMI and any person or entity other that the other defendants and Synopsys concerning the patent-in-suit.

AMI is requested to identify in writing the name, position, and employer of the individuals(s) so designated and to set forth the matters on which that person will testify no later than seven (7) days prior to the agreed upon deposition date.

Dated: September 25, 2003

Respectfully submitted,

Ricoh Company, Ltd.

By: _____
Gary M. Hoffman
Kenneth W. Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526



1    Telephone: (202) 785-9700
     Facsimile: (202) 887-0689
2
3    Edward A. Meilman
     DICKSTEIN SHAPIRO MORIN &
4    OSHINSKY LLP
     1177 Avenue of the Americas
5    New York, New York 10036
     Telephone: (212) 896-5471
6    Facsimile: (212) 997-9880

7    Jeffrey B. Demain, State Bar No. 126715
     Jonathan Weissglass, State Bar No. 185008
8    Altshuler, Berzon, Nussbaum, Rubin & Demain
     177 Post Street, Suite 300
9    San Francisco, California 94108
     Phone: (415) 421-7151
10   Fax: (415) 362-8064
11
12   Attorneys for the Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Gary M. Hoffman, pro hac vice
   Kenneth W. Brothers, pro hac vice
2  Eric Oliver, pro hac vice
3  Dickstein Shapiro Morin & Oshinsky LLP
   2101 L Street, NW
4  Washington, DC  20037-1526
   Phone:  (202) 785-9700
5  Fax:  (202) 887-0689

6
   Edward A. Meilman, pro hac vice
7  Dickstein Shapiro Morin & Oshinsky LLP
   1177 Avenue of the Americas
8  New York, New York  10036-2714
   Phone:  (212) 835-1400
9  Fax:  (212) 992-9880

10
   Jeffrey B. Demain, State Bar No. 126715
11 Jonathan Weissglass, State Bar No. 185008
   Altshuler, Berzon, Nussbaum, Rubin & Demain
12 177 Post Street, Suite 300
   San Francisco, California  94108
13 Phone: (415) 421-7151
   Fax: (415) 362-8064
14

15 Attorneys for Plaintiff Ricoh Company, Ltd.

16                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
17                    SAN FRANCISCO DIVISION

18

19 RICOH COMPANY, LTD.,                    )  Case No. CV-
                                           )
20           Plaintiff,                     )  (D. Del Case No.  03-103 GMS)
                                           )
21      vs.                                )  PATENT INFRINGEMENT ACTION
                                           )
22 AEROFLEX INCORPORATED, AMI              )  NOTICE OF DEPOSITION OF
23 SEMICONDUCTOR, INC., MATROX            )  MATROX ELECTRONIC SYSTEMS
   ELECTRONIC SYSTEMS, LTD., MATROX       )  LTD. PURSUANT TO FED. R. CIV. P.
24 GRAPHICS INC., MATROX                  )  30(b)(6)
   INTERNATIONAL CORP. and MATROX         )
25 TECH, INC.,                            )
                                           )
26           Defendants.                    )
                                           )
27 _____)
                                           )
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLEASE TAKE NOTICE that Ricoh Company, Ltd. ("Ricoh"), by and through its attorneys, will take the depositions upon oral examination pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure of the person(s) designated by Matrox Electronic Systems Ltd. ("Matrox Systems") as knowledgeable regarding the subject areas listed below.  The deposition will take place at the offices of Altshuler, Berzon, Nussbaum, Rubin & Demain, 177 Post Street, Suite 300, San Francisco, California  94108, or at a place mutually agreed upon by the parties, commencing at 9:00 a.m. on October 21, 2003, or on a date mutually agreed upon by the parties, and will continue from day to day until completed.

The deposition may be videotaped and will be made before an officer authorized to administer an oath and will be recorded by stenographic means.

## DEFINITIONS

a) **Communication.**  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

b) **Document.**  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data or data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

c) **Synopsys, Inc.**  The term "Synopsys, Inc." as well as its abbreviated name (e.g., "Synopsys") or a pronoun referring to the foregoing means the Delaware corporation known as Synopsys, Inc and having place of business at 700 E. Middlefield Road, Mountain View, California, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

d) **Matrox Electronic Systems Ltd.**  The term "Matrox Electronic Systems Ltd." as well as its abbreviated name (e.g., "Matrox Systems") or a pronoun referring to the foregoing means the Canadian corporation known as Matrox Electronic Systems Ltd. and having place of business

at 1055 Boul St-Regis, Dorval, Quebec H9P 2T4, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

e) **Plaintiff.** The term "plaintiff" as well as the plaintiff's full ("Ricoh Company, Ltd.") or abbreviated name ("Ricoh") or a pronoun referring to Ricoh shall mean Ricoh and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

f) **Defendant.** The term "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates. Where the listed subject area is not related or limited to a specific named defendant, the listed subject area shall be construed as seeking knowledge and information concerning any and all of the defendants named in this action, including Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Graphics Inc., Matrox Electronic Systems Ltd., Matrox International Corp., and Matrox Tech, Inc.

g) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

h) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

i) **All/Each.** The terms "all" and "each" shall be construed as all and each.

j) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

k) **Number.** The use of the singular form of any word includes the plural and vice versa.

l) **Sale/Sold/Offered for Sale**. As used herein, "sale," "sold" and "offered for sale" shall include "license," "licensed" and "offered for license."

m) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

n) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise known by defendant as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

o) **ASIC Product.** The term "ASIC Product" refers to any ASIC or integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured in whole or in part by a computer aided design including logic synthesis, used, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

p) **ASIC Design System.** As used herein, "ASIC Design System" refers to any and all software, hardware, database library or other components making up or otherwise contributing to systems, modules, tools or products for use in any part of a computer-aided design including of any ASIC Product (as defined above). ASIC Design Systems include but are not limited to the Synopsys software, hardware, database libraries or other components known as Design Compiler, Knowledge Consultant, Behavioral Compiler, Module Compiler, DesignWare Library/DesignWare Foundation Library, CoCentric System C Compiler, HDL Compiler Family, VHDL Compiler, HDL Compiler for Verilog, and DC Shell.

q) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes that use ASIC Design Systems in the computer-aided design including logic synthesis of any ASIC Product (as defined above).

r)  **Limitations.**  Each listed subject area shall be construed independently and no listed subject area shall limit the scope of any other listed subject area.

s)  **Design.**  The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

t)  **Time period**  Unless otherwise specified, the time period for the these topics is from January 1, 1996 to the present.

## TOPICS FOR EXAMINATION

Pursuant to Fed. R. Civ. P. 30(b)(6), Matrox Systems shall produce to testify on its behalf one or more officers, directors, managing agents, or other persons, who are qualified, knowledgeable and competent to testify as to all matters known or reasonable available to Matrox Systems with respect to the following topics:

1.  The organizational structure of Matrox Systems, including, but not limited to those groups, divisions, teams and other organizations having any involvement in Matrox Systems's ASIC Method at any time, and the identity of all individuals who can testify about such organization.

2.  The identification of any business entity that designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Systems, any ASIC Product.

3.  The identification of any business entity that uses the ASIC Method to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Systems, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Matrox Systems, the person or entity performing such step or activity.

4.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture any ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Systems, and identification of the individual's activity concerning such involvement.

5.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in performing an ASIC Method for any ASIC Product designed, manufactured, sold,

offered for sale, imported, or distributed by or on behalf of Matrox Systems; identification of the ASIC Products for which such ASIC Method was performed; and identification of the acts of each individual that contributed to performing the ASIC Method.

6. Any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and Matrox Systems.

7. Any product, including, but not limited to any software or ASIC Design System product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided to Matrox Systems.

8. Any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to Matrox Systems (or from Matrox Systems to Synopsys), including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue.

9. Any product designed or otherwise made by Matrox Systems, using any ASIC Design System, including, but not limited to, products designed or made using Design Compiler (or any product that includes Design Compiler).

10. The identification of any ASIC Design System including, but not limited to, the manufacturer, product name, and version, used by Matrox Systems to design or otherwise make any product.

11. The identification of any software library, cell library, and database used by Matrox Systems with any ASIC Design System, including, but not limited to, Design Compiler.

12. The user interface to any ASIC Design System for designing, making or using ASIC Products, including, but not limited to, the user interface for designing, making or using products designed or made using Design Compiler (or any product that includes Design Compiler), and the forms and methods of user input used by or on behalf of Matrox Systems (whether such input is Verilog, VHDL, HDL, or any other form of input).

13. The output or netlist (and use thereof) of ASIC Design Systems used by or on behalf of Matrox Systems to fabricate any product designed or otherwise made, using any ASIC Design System, including, but not limited to, the output or netlist used to fabricate any ASIC Products designed or otherwise made using Design Compiler (or any product that includes Design Compiler).

14. The identification of the steps or other activities making up the ASIC Method used to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Systems, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Matrox Systems, the person or entity performing such step or activity. Such steps or other activities include, but are not limited to, the use of ASIC Design Systems in: defining a library of available hardware cells; selecting hardware cells based on input specifications; and

generating an output or netlist of hardware cells needed to achieve the intended function of an ASIC Product.

15.    Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Systems, including, but not limited to the identification for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

16.    The use by Matrox Systems of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by Matrox Systems.

17.    The cost savings (actual or potential) by Matrox Systems as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

18.    The marketing of any product designed, sold, or otherwise made by Matrox Systems using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

19.    The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in Matrox Systems's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each Matrox Systems product.

20.    The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

21.    The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by Matrox Systems of each of Matrox Systems's ASIC Products.

22.    The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by Matrox Systems of Matrox Systems's ASIC Products, including how Matrox Systems defines each item of cost deducted from gross revenue to calculate gross and net profits.

23.    The sales by Matrox Systems of each ASIC Product produced by an ASIC Method.

24.    All facts related to any infringement or non-infringement of the patent-in-suit.

25.    All facts related to the validity or invalidity of the patent-in-suit.

26.    All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

27.    The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

28.    Knowledge by Matrox Systems of the patent-in-suit prior to January 20, 2003.

29.    The identification of each individual from Matrox Systems (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

30.    Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

31.    Any communications within Matrox Systems concerning the patent-in-suit.

32.    The identification of all documents concerning all materials presented to any of Matrox Systems's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

33.    Any communications between Matrox Systems and any other defendant concerning the patent-in-suit.

34.    Any communications between Matrox Systems and Synopsys concerning the patent-in-suit.

35.    Any communications between Matrox Systems and any person or entity other than the other defendants and Synopsys concerning the patent-in-suit.

36.    The identification of any business contact with the United States or any part thereof or any entity in the United States or any part thereof, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or any sales of goods and/or services to any entity within the United States or any part thereof, the presence in the United States or any part thereof for any length of time of any employee, officer, agent and/or representative in connection with Matrox Systems's business or interests, the nature of any degree or control or supervision or oversight in any other defendant or any other entity in the United States or any part thereof, the nature of any degree of control or supervision or oversight in Matrox Systems by any other defendant or any other entity in the United States or any part thereof, and

1    involvement of any type in research and development, design, manufacturing,
     testing, sales or marketing of an ASIC product by or for any other defendant or any
2    other entity in the United States or any part thereof, and the identification of all
     communications with any parent, subsidiary, division or affiliate of Matrox
3    Systems concerning an ASIC product or ASIC method.

4         Matrox Systems is requested to identify in writing the name, position, and employer of

5    the individuals(s) so designated and to set forth the matters on which that person will testify no

6    later than seven (7) days prior to the agreed upon deposition date.

7

8                                           Respectfully submitted,
     Dated: September 25, 2003
9                                           Ricoh Company, Ltd.

10

11                                          By: _____
                                            Gary M. Hoffman
12                                          Kenneth W. Brothers
                                            Eric Oliver
13                                          DICKSTEIN SHAPIRO MORIN &
                                            OSHINSKY  LLP
14                                          2101 L Street NW
                                            Washington, D.C.  20037-1526
15                                          Telephone: (202) 785-9700
                                            Facsimile: (202) 887-0689
16

17                                          Edward A. Meilman
                                            DICKSTEIN SHAPIRO MORIN &
18                                          OSHINSKY  LLP
                                            1177 Avenue of the Americas
19                                          New York, New York  10036
                                            Telephone:  (212) 896-5471
20                                          Facsimile:  (212) 997-9880

21
                                            Jeffrey B. Demain, State Bar No. 126715
22                                          Jonathan Weissglass, State Bar No. 185008
                                            Altshuler, Berzon, Nussbaum, Rubin & Demain
23                                          177 Post Street, Suite 300
                                            San Francisco, California  94108
24                                          Phone:  (415) 421-7151
                                            Fax:  (415) 362-8064
25

26                                          Attorneys for the Plaintiff

27

28

1  Gary M. Hoffman, pro hac vice
2  Kenneth W. Brothers, pro hac vice
   Eric Oliver, pro hac vice
3  Dickstein Shapiro Morin & Oshinsky LLP
   2101 L Street, NW
4  Washington, DC  20037-1526
   Phone: (202) 785-9700
5  Fax: (202) 887-0689

6
   Edward A. Meilman, pro hac vice
7  Dickstein Shapiro Morin & Oshinsky LLP
   1177 Avenue of the Americas
8  New York, New York  10036-2714
   Phone: (212) 835-1400
9  Fax: (212) 992-9880

10
   Jeffrey B. Demain, State Bar No. 126715
11 Jonathan Weissglass, State Bar No. 185008
   Altshuler, Berzon, Nussbaum, Rubin & Demain
12 177 Post Street, Suite 300
   San Francisco, California  94108
13 Phone: (415) 421-7151
   Fax: (415) 362-8064
14

15 Attorneys for Plaintiff Ricoh Company, Ltd.

16           IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
17                 SAN FRANCISCO DIVISION

18 _____

19 RICOH COMPANY, LTD.,                    )  Case No. CV-
                                           )
20           Plaintiff,                     )  (D. Del Case No.  03-103 GMS)
                                           )
21      vs.                                 )  PATENT INFRINGEMENT ACTION
                                           )
22 AEROFLEX INCORPORATED, AMI               )  NOTICE OF DEPOSITION OF
23 SEMICONDUCTOR, INC., MATROX              )  MATROX GRAPHICS INC.
   ELECTRONIC SYSTEMS, LTD., MATROX         )  PURSUANT TO FED. R. CIV. P. 30(b)(6)
24 GRAPHICS INC., MATROX                    )
   INTERNATIONAL CORP. and MATROX           )
25 TECH, INC.,                              )
                                           )
26           Defendants.                    )
                                           )
27 _____         )

28

1
2      PLEASE TAKE NOTICE that Ricoh Company, Ltd. ("Ricoh"), by and through its

3   attorneys, will take the depositions upon oral examination pursuant to Rule 30(b)(6) of the Federal

4   Rules of Civil Procedure of the person(s) designated by Matrox Graphics Inc. ("Matrox

5   Graphics") as knowledgeable regarding the subject areas listed below.  The deposition will take

6   place at the offices of Altshuler, Berzon, Nussbaum, Rubin & Demain, 177 Post Street, Suite 300,

7   San Francisco, California  94108, or at a place mutually agreed upon by the parties, commencing

8   at 9:00 a.m. on October 20, 2003, or on a date mutually agreed upon by the parties, and will

9   continue from day to day until completed.

10      The deposition may be videotaped and will be made before an officer authorized to

11   administer an oath and will be recorded by stenographic means.

12                              **DEFINITIONS**

13      a)  **Communication.**  The term "communication" means the transmittal of information (in

14   the form of facts, ideas, inquiries or otherwise).

15
16      b)  **Document.**  The term "document" is defined to be synonymous in meaning and equal

17   in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without

18   limitation, electronic or computerized data or data compilations.  A draft or non-identical copy is a

19   separate document within the meaning of this term.

20      c)  **Synopsys, Inc.**  The term "Synopsys, Inc." as well as its abbreviated name (e.g.,

21   "Synopsys") or a pronoun referring to the foregoing means the Delaware corporation known as

22   Synopsys, Inc and having place of business at 700 E. Middlefield Road, Mountain View,

23   California, and, where applicable, its officers, directors, employees, agents, independent

24   contractors, partners, corporate parent, subsidiaries or affiliates.

25      d)  **Matrox Graphics Inc.**  The term "Matrox Graphics Inc." as well as its abbreviated

26   name (e.g., "Matrox Graphics") or a pronoun referring to the foregoing means the Canadian

27   corporation known as Matrox Graphics Inc. and having place of business at 1055 Boul St-Regis,

28

Dorval, Quebec H9P 2T4, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

e) **Plaintiff.** The term "plaintiff" as well as the plaintiff's full ("Ricoh Company, Ltd.") or abbreviated name ("Ricoh") or a pronoun referring to Ricoh shall mean Ricoh and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

f) **Defendant.** The term "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates. Where the listed subject area is not related or limited to a specific named defendant, the listed subject area shall be construed as seeking knowledge and information concerning any and all of the defendants named in this action, including Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc.

g) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

h) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

i) **All/Each.** The terms "all" and "each" shall be construed as all and each.

j) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

k) **Number.** The use of the singular form of any word includes the plural and vice versa.

l) **Sale/Sold/Offered for Sale**. As used herein, "sale," "sold" and "offered for sale" shall include "license," "licensed" and "offered for license."

m) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

n) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise known by defendant as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

o) **ASIC Product.** The term "ASIC Product" refers to any ASIC or integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured in whole or in part by a computer aided design including logic synthesis, used, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

p) **ASIC Design System.** As used herein, "ASIC Design System" refers to any and all software, hardware, database library or other components making up or otherwise contributing to systems, modules, tools or products for use in any part of a computer-aided design including of any ASIC Product (as defined above). ASIC Design Systems include but are not limited to the Synopsys software, hardware, database libraries or other components known as Design Compiler, Knowledge Consultant, Behavioral Compiler, Module Compiler, DesignWare Library/DesignWare Foundation Library, CoCentric System C Compiler, HDL Compiler Family, VHDL Compiler, HDL Compiler for Verilog, and DC Shell.

q) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes that use ASIC Design Systems in the computer-aided design including logic synthesis of any ASIC Product (as defined above).

r) **Limitations.** Each listed subject area shall be construed independently and no listed subject area shall limit the scope of any other listed subject area.

s) **Design.** The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

t) **Time period** Unless otherwise specified, the time period for the these topics is from January 1, 1996 to the present.

## TOPICS FOR EXAMINATION

Pursuant to Fed. R. Civ. P. 30(b)(6), Matrox Graphics shall produce to testify on its behalf one or more officers, directors, managing agents, or other persons, who are qualified, knowledgeable and competent to testify as to all matters known or reasonable available to Matrox Graphics with respect to the following topics:

1. The organizational structure of Matrox Graphics, including, but not limited to those groups, divisions, teams and other organizations having any involvement in Matrox Graphics's ASIC Method at any time, and the identity of all individuals who can testify about such organization.

2. The identification of any business entity that designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Graphics, any ASIC Product.

3. The identification of any business entity that uses the ASIC Method to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Graphics, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Matrox Graphics, the person or entity performing such step or activity.

4. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture any ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Graphics, and identification of the individual's activity concerning such involvement.

5. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in performing an ASIC Method for any ASIC Product designed, manufactured, sold,

1    offered for sale, imported, or distributed by or on behalf of Matrox Graphics;
2    identification of the ASIC Products for which such ASIC Method was performed;
     and identification of the acts of each individual that contributed to performing the
3    ASIC Method.

4    6.    Any relationship, including, but not limited to, any contractual, business, or
            financial relationship, between Synopsys and Matrox Graphics.
5

6    7.    Any product, including, but not limited to any software or ASIC Design System
            product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or
7            indirectly) provided to Matrox Graphics.

8    8.    Any agreement or other arrangement granting rights in or otherwise concerning
            ASIC Design Systems and/or use thereof from Synopsys to Matrox Graphics (or
9            from Matrox Graphics to Synopsys), including but not limited to contracts,
            licenses, purchase agreements, indemnification agreements, and hold-harmless
10          agreements/covenants not to sue.

11   9.    Any product designed or otherwise made by Matrox Graphics, using any ASIC
            Design System, including, but not limited to, products designed or made using
12          Design Compiler (or any product that includes Design Compiler).

13   10.   The identification of any ASIC Design System including, but not limited to, the
            manufacturer, product name, and version, used by Matrox Graphics to design or
14          otherwise make any product.

15   11.   The identification of any software library, cell library, and database used by Matrox
            Graphics with any ASIC Design System, including, but not limited to, Design
16          Compiler.

17   12.   The user interface to any ASIC Design System for designing, making or using
18          ASIC Products, including, but not limited to, the user interface for designing,
            making or using products designed or made using Design Compiler (or any product
19          that includes Design Compiler), and the forms and methods of user input used by or
            on behalf of Matrox Graphics (whether such input is Verilog, VHDL, HDL, or any
20          other form of input).

21   13.   The output or netlist (and use thereof) of ASIC Design Systems used by or on
22          behalf of Matrox Graphics to fabricate any product designed or otherwise made,
            using any ASIC Design System, including, but not limited to, the output or netlist
23          used to fabricate any ASIC Products designed or otherwise made using Design
            Compiler (or any product that includes Design Compiler).

24   14.   The identification of the steps or other activities making up the ASIC Method used
25          to design or otherwise make ASIC Products that are designed, manufactured, sold,
            offered for sale, imported, or distributed by or on behalf of Matrox Graphics,
26          including, but not limited to, the date(s) such steps or other activity occurred, and,
            where such step or activity is not performed by Matrox Graphics, the person or
27          entity performing such step or activity.  Such steps or other activities include, but
            are not limited to, the use of ASIC Design Systems in:  defining a library of
28          available hardware cells; selecting hardware cells based on input specifications; and

generating an output or netlist of hardware cells needed to achieve the intended function of an ASIC Product.

15. Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Graphics, including, but not limited to the identification for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by Matrox Graphics (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

16. The use by Matrox Graphics of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by Matrox Graphics.

17. The cost savings (actual or potential) by Matrox Graphics as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

18. The marketing of any product designed, sold, or otherwise made by Matrox Graphics using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

19. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in Matrox Graphics's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each Matrox Graphics product.

20. The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

21. The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by Matrox Graphics of each of Matrox Graphics's ASIC Products.

22. The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by Matrox Graphics of Matrox Graphics's ASIC Products, including how Matrox Graphics defines each item of cost deducted from gross revenue to calculate gross and net profits.

23. The sales by Matrox Graphics of each ASIC Product produced by an ASIC Method.

24. All facts related to any infringement or non-infringement of the patent-in-suit.

25. All facts related to the validity or invalidity of the patent-in-suit.

26. All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

27. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

28. Knowledge by Matrox Graphics of the patent-in-suit prior to January 20, 2003.

29. The identification of each individual from Matrox Graphics (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

30. Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

31. Any communications within Matrox Graphics concerning the patent-in-suit.

32. The identification of all documents concerning all materials presented to any of Matrox Graphics's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

33. Any communications between Matrox Graphics and any other defendant concerning the patent-in-suit.

34. Any communications between Matrox Graphics and Synopsys concerning the patent-in-suit.

35. Any communications between Matrox Graphics and any person or entity other that the other defendants and Synopsys concerning the patent-in-suit.

36. The identification of any business contact with the United States or any part thereof or any entity in the United States or any part thereof, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or any sales of goods and/or services to any entity within the United States or any part thereof, the presence in the United States or any part thereof for any length of time of any employee, officer, agent and/or representative in connection with Matrox Graphics's business or interests, the nature of any degree of control or supervision or oversight in any other defendant or any other entity in the United States or any part thereof, the nature of any degree of control or supervision or oversight in Matrox Graphics by any other

1
2
3
4

defendant or any other entity in the United States or any part thereof, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for any other defendant or any other entity in the United States or any part thereof, and the identification of all communications with any parent, subsidiary, division or affiliate of Matrox Graphics concerning an ASIC product or ASIC method.

5        Matrox Graphics is requested to identify in writing the name, position, and employer of

6    the individuals(s) so designated and to set forth the matters on which that person will testify no

7    later than seven (7) days prior to the agreed upon deposition date.

8

9    Dated: September 25, 2003

10

Respectfully submitted,

Ricoh Company, Ltd.

11

12    By: _____
     Gary M. Hoffman
13    Kenneth W. Brothers
     Eric Oliver
14    DICKSTEIN SHAPIRO MORIN &
     OSHINSKY LLP
15    2101 L Street NW
     Washington, D.C. 20037-1526
16    Telephone: (202) 785-9700
     Facsimile: (202) 887-0689
17
18    Edward A. Meilman
     DICKSTEIN SHAPIRO MORIN &
     OSHINSKY LLP
19    1177 Avenue of the Americas
     New York, New York 10036
20    Telephone: (212) 896-5471
     Facsimile: (212) 997-9880
21
22    Jeffrey B. Demain, State Bar No. 126715
     Jonathan Weissglass, State Bar No. 185008
23    Altshuler, Berzon, Nussbaum, Rubin & Demain
     177 Post Street, Suite 300
24    San Francisco, California 94108
     Phone: (415) 421-7151
25    Fax: (415) 362-8064
26    Attorneys for the Plaintiff
27
28

1  Gary M. Hoffman, pro hac vice
   Kenneth W. Brothers, pro hac vice
2  Eric Oliver, pro hac vice
   Dickstein Shapiro Morin &  Oshinsky LLP
3  2101 L Street, NW
   Washington, DC  20037-1526
4  Phone:  (202) 785-9700
   Fax:  (202) 887-0689
5

6  Edward A. Meilman, pro hac vice
7  Dickstein Shapiro Morin &  Oshinsky LLP
   1177 Avenue of the Americas
8  New York, New York  10036-2714
   Phone:  (212) 835-1400
9  Fax:  (212) 992-9880

10
   Jeffrey B. Demain, State Bar No. 126715
11 Jonathan Weissglass, State Bar No. 185008
   Altshuler, Berzon, Nussbaum, Rubin & Demain
12 177 Post Street, Suite 300
   San Francisco, California  94108
13 Phone:  (415) 421-7151
   Fax:  (415) 362-8064
14

15 Attorneys for Plaintiff Ricoh Company, Ltd.

16              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
17                    SAN FRANCISCO DIVISION

18

19 RICOH COMPANY, LTD.,              )  Case No. CV-
                                     )
20            Plaintiff,             )  (D. Del Case No.  03-103 GMS)
                                     )
21    vs.                            )  PATENT INFRINGEMENT ACTION
                                     )
22 AEROFLEX INCORPORATED, AMI        )  NOTICE OF DEPOSITION OF
23 SEMICONDUCTOR, INC., MATROX       )  MATROX INTERNATIONAL CORP.
   ELECTRONIC SYSTEMS, LTD., MATROX  )  PURSUANT TO FED. R. CIV. P. 30(b)(6)
24 GRAPHICS INC., MATROX             )
   INTERNATIONAL CORP. and MATROX    )
25 TECH, INC.,                       )
                                     )
26            Defendants.            )
                                     )
27                                   )

28

1

2      PLEASE TAKE NOTICE that Ricoh Company, Ltd. ("Ricoh"), by and through its

3   attorneys, will take the depositions upon oral examination pursuant to Rule 30(b)(6) of the Federal

4   Rules of Civil Procedure of the person(s) designated by Matrox International Corp. ("Matrox

5   Int'l") as knowledgeable regarding the subject areas listed below.  The deposition will take place

6   at the offices of Dickstein Shapiro Morin & Oshinsky LLP, 1177 Avenue of the Americas, New

7   York, New York  10036, or at a place mutually agreed upon by the parties, commencing at 9:00

8   a.m. on October 13, 2003, or on a date mutually agreed upon by the parties, and will continue

9   from day to day until completed.

10      The deposition may be videotaped and will be made before an officer authorized to

11  administer an oath and will be recorded by stenographic means.

12                              **DEFINITIONS**

13      a)  **Communication.**  The term "communication" means the transmittal of information (in

14  the form of facts, ideas, inquiries or otherwise).

15

16      b)  **Document.**  The term "document" is defined to be synonymous in meaning and equal

17  in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without

18  limitation, electronic or computerized data or data compilations.  A draft or non-identical copy is a

19  separate document within the meaning of this term.

20      c)  **Synopsys, Inc.**  The term "Synopsys, Inc." as well as its abbreviated name (e.g.,

21  "Synopsys") or a pronoun referring to the foregoing means the Delaware corporation known as

22  Synopsys, Inc and having place of business at 700 E. Middlefield Road, Mountain View,

23  California, and, where applicable, its officers, directors, employees, agents, independent

24  contractors, partners, corporate parent, subsidiaries or affiliates.

25      d)  **Matrox International Corp.**  The term "Matrox International Corp." as well as its

26  abbreviated name (e.g., "Matrox Int'l") or a pronoun referring to the foregoing means the New

27  York Corporation known as Matrox International Corp. and having place of business at 625 State

28

Rt. 3, Unit B, Plattsburgh, NY, 12901, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

e) **Plaintiff.** The term "plaintiff" as well as the plaintiff's full ("Ricoh Company, Ltd.") or abbreviated name ("Ricoh") or a pronoun referring to Ricoh shall mean Ricoh and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

f) **Defendant.** The term "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates. Where the listed subject area is not related or limited to a specific named defendant, the listed subject area shall be construed as seeking knowledge and information concerning any and all of the defendants named in this action, including Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc.

g) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

h) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

i) **All/Each.** The terms "all" and "each" shall be construed as all and each.

j) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

k) **Number.** The use of the singular form of any word includes the plural and vice versa.

l) **Sale/Sold/Offered for Sale.** As used herein, "sale," "sold" and "offered for sale" shall include "license," "licensed" and "offered for license."

1

2

3

    m) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

4

    n) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a

5

specific application, including but not limited to integrated circuits that are referred to or otherwise

6

known by defendant as an "application specific integrated circuit" or "ASIC," and other integrated

7

circuits designed to perform a desired function in a specific application, but not including

8

standard, general purpose integrated circuits such as microprocessors and memory chips.

9

    o) **ASIC Product.** The term "ASIC Product" refers to any ASIC or integrated circuit

10

product or item  that is designed for a specific application, and/or a product or item that includes

11

such an integrated circuit product that is manufactured in whole or in part by a computer aided

12

design including logic synthesis, used, sold, offered for sale, imported, or distributed by, on behalf

13

of, or otherwise at the direction of defendant.

14

    p) **ASIC Design System.** As used herein, "ASIC Design System" refers to any and all

15

software, hardware, database library or other components making up or otherwise contributing to

16

systems, modules, tools or products for use in any part of a computer-aided design including of

17

any ASIC Product (as defined above).  ASIC Design Systems include but are not limited to the

18

Synopsys software, hardware, database libraries or other components known as Design Compiler,

19

Knowledge Consultant, Behavioral Compiler, Module Compiler, DesignWare

20

Library/DesignWare Foundation Library, CoCentric System C Compiler, HDL Compiler Family,

21

VHDL Compiler, HDL Compiler for Verilog, and DC Shell.

22

    q) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other

23

activities making up or otherwise contributing to methods and/or processes that use ASIC Design

24

Systems in the computer-aided design including logic synthesis of any ASIC Product (as defined

25

above).

26

27

28

1    r)  **Limitations.**  Each listed subject area shall be construed independently and no listed
2
3    subject area shall limit the scope of any other listed subject area.

4    s)  **Design.**  The term "design" as used herein refers to any and all acts of creation,
5    development, translation, formulation, transformation, synthesis, or other realization of desired
6    integrated circuit functionality in an ASIC (as defined above).

7    t)  **Time period**  Unless otherwise specified, the time period for the these topics is from
8    January 1, 1996 to the present.

9
10                    **TOPICS FOR EXAMINATION**

11        Pursuant to Fed. R. Civ. P. 30(b)(6), Matrox Int'l shall produce to testify on its behalf one
12    or more officers, directors, managing agents, or other persons, who are qualified, knowledgeable
13    and competent to testify as to all matters known or reasonable available to Matrox Int'l with
      respect to the following topics:

14    1.    The organizational structure of Matrox Int'l, including, but not limited to those
15          groups, divisions, teams and other organizations having any involvement in Matrox
             Int'l's ASIC Method at any time, and the identity of all individuals who can testify
16          about such organization.

17    2.    The identification of any business entity that designed, manufactured, sold, offered
             for sale, imported, or distributed by or on behalf of Matrox Int'l, any ASIC
18          Product.

19    3.    The identification of any business entity that uses the ASIC Method to design or
             otherwise make ASIC Products that are designed, manufactured, sold, offered for
20          sale, imported, or distributed by or on behalf of Matrox Int'l, including, but not
             limited to, the date(s) such steps or other activity occurred, and, where such step or
21          activity is not performed by Matrox Int'l, the person or entity performing such step
             or activity.
22

23    4.    The identification of each individual (including their full name, address, telephone
             number, job title and description, and employer) involved in any way (including
24          but not limited to managerial responsibility) in research and development, design,
             manufacturing, testing, sales or marketing of, or in the decision to design, develop,
25          or manufacture any ASIC Products designed, manufactured, sold, offered for sale,
             imported, or distributed by or on behalf of Matrox Int'l, and identification of the
26          individual's activity concerning such involvement.

27    5.    The identification of each individual (including their full name, address, telephone
             number, job title and description, and employer) who participated in any way in
28          performing an ASIC Method for any ASIC Product designed, manufactured, sold,

offered for sale, imported, or distributed by or on behalf of Matrox Int'l; identification of the ASIC Products for which such ASIC Method was performed; and identification of the acts of each individual that contributed to performing the ASIC Method.

6. Any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and Matrox Int'l.

7. Any product, including, but not limited to any software or ASIC Design System product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided to Matrox Int'l.

8. Any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to Matrox Int'l (or from Matrox Int'l to Synopsys), including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue.

9. Any product designed or otherwise made by Matrox Int'l, using any ASIC Design System, including, but not limited to, products designed or made using Design Compiler (or any product that includes Design Compiler).

10. The identification of any ASIC Design System including, but not limited to, the manufacturer, product name, and version, used by Matrox Int'l to design or otherwise make any product.

11. The identification of any software library, cell library, and database used by Matrox Int'l with any ASIC Design System, including, but not limited to, Design Compiler.

12. The user interface to any ASIC Design System for designing, making or using ASIC Products, including, but not limited to, the user interface for designing, making or using products designed or made using Design Compiler (or any product that includes Design Compiler), and the forms and methods of user input used by or on behalf of Matrox Int'l (whether such input is Verilog, VHDL, HDL, or any other form of input).

13. The output or netlist (and use thereof) of ASIC Design Systems used by or on behalf of Matrox Int'l to fabricate any product designed or otherwise made, using any ASIC Design System, including, but not limited to, the output or netlist used to fabricate any ASIC Products designed or otherwise made using Design Compiler (or any product that includes Design Compiler).

14. The identification of the steps or other activities making up the ASIC Method used to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Int'l, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Matrox Int'l, the person or entity performing such step or activity. Such steps or other activities include, but are not limited to, the use of ASIC Design Systems in: defining a library of available hardware cells; selecting hardware cells based on input specifications; and generating an output or

netlist of hardware cells needed to achieve the intended function of an ASIC Product.

15.    Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Int'l, including, but not limited to the identification for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by Matrox Int'l (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

16.    The use by Matrox Int'l of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS'), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by Matrox Int'l.

17.    The cost savings (actual or potential) by Matrox Int'l as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

18.    The marketing of any product designed, sold, or otherwise made by Matrox Int'l using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

19.    The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in Matrox Int'l's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each Matrox Int'l product.

20.    The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

21.    The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by Matrox Int'l of each of Matrox Int'l's ASIC Products.

22.    The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by Matrox Int'l of Matrox Int'l's ASIC Products, including how Matrox Int'l defines each item of cost deducted from gross revenue to calculate gross and net profits.

23.    The sales by Matrox Int'l of each ASIC Product produced by an ASIC Method.

24.    All facts related to any infringement or non-infringement of the patent-in-suit.

25.    All facts related to the validity or invalidity of the patent-in-suit.

1

2

3    26.    All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

4

5    27.    The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

6

7

8    28.    Knowledge by Matrox Int'l of the patent-in-suit prior to January 20, 2003.

9    29.    The identification of each individual from Matrox Int'l (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

10

11    30.    Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

12

13

14    31.    Any communications within Matrox Int'l concerning the patent-in-suit.

15    32.    The identification of all documents concerning all materials presented to any of Matrox Int'l's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

16

17

18    33.    Any communications between Matrox Int'l and any other defendant concerning the patent-in-suit.

19    34.    Any communications between Matrox Int'l and Synopsys concerning the patent-in-suit.

20

21    35.    Any communications between Matrox Int'l and any person or entity other that the other defendants and Synopsys concerning the patent-in-suit.

22

23    Matrox Int'l is requested to identify in writing the name, position, and employer of the

24    individuals(s) so designated and to set forth the matters on which that person will testify no later

25    than seven (7) days prior to the agreed upon deposition date.

26

27

28

1

2

3    Dated: September 25, 2003

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Ricoh Company, Ltd.

By: _____
Gary M. Hoffman
Kenneth W. Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
OSHINSKY  LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, California  94108
Phone:  (415) 421-7151
Fax:  (415) 362-8064

Attorneys for the Plaintiff

1   Gary M. Hoffman, pro hac vice
    Kenneth W. Brothers, pro hac vice
2   Eric Oliver, pro hac vice
3   Dickstein Shapiro Morin &  Oshinsky LLP
    2101 L Street, NW
4   Washington, DC  20037-1526
    Phone:  (202) 785-9700
5   Fax: (202) 887-0689

6
    Edward A. Meilman, pro hac vice
7   Dickstein Shapiro Morin &  Oshinsky LLP
    1177 Avenue of the Americas
8   New York, New York  10036-2714
    Phone: (212) 835-1400
9   Fax: (212) 992-9880

10
    Jeffrey B. Demain, State Bar No. 126715
11  Jonathan Weissglass, State Bar No. 185008
    Altshuler, Berzon, Nussbaum, Rubin & Demain
12  177 Post Street, Suite 300
    San Francisco, California  94108
13  Phone: (415) 421-7151
    Fax: (415) 362-8064
14

15  Attorneys for Plaintiff Ricoh Company, Ltd.

16              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
17                   SAN FRANCISCO DIVISION

18

19  RICOH COMPANY, LTD.,                    )   Case No. CV-
                                            )
20              Plaintiff,                  )   (D. Del Case No.  03-103 GMS)
                                            )
21       vs.                                )   PATENT INFRINGEMENT ACTION
                                            )
22  AEROFLEX INCORPORATED, AMI              )   NOTICE OF DEPOSITION OF
23  SEMICONDUCTOR, INC., MATROX             )   MATROX TECH, INC.
    ELECTRONIC SYSTEMS, LTD., MATROX        )   PURSUANT TO FED. R. CIV. P. 30(b)(6)
24  GRAPHICS INC., MATROX                   )
    INTERNATIONAL CORP. and MATROX          )
25  TECH, INC.,                             )
                                            )
26              Defendants.                 )
                                            )
27  _____        )

28

              (D. DEL. CASE NO. 03-103-GMS)       Page 1
    NOTICE OF DEPOSITION OF MATROX TECH, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)

1

2

    PLEASE TAKE NOTICE that Ricoh Company, Ltd. ("Ricoh"), by and through its

3

attorneys, will take the depositions upon oral examination pursuant to Rule 30(b)(6) of the Federal

4

Rules of Civil Procedure of the person(s) designated by Matrox Tech, Inc. ("Matrox Tech") as

5

knowledgeable regarding the subject areas listed below.  The deposition will take place at the

6

offices of Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, Delaware 19899, or

7

at a place mutually agreed upon by the parties, commencing at 9:00 a.m. on October 10, 2003, or

8

on a date mutually agreed upon by the parties, and will continue from day to day until completed.

9

    The deposition may be videotaped and will be made before an officer authorized to

10

administer an oath and will be recorded by stenographic means.

11

## DEFINITIONS

12

    a) **Communication.**  The term "communication" means the transmittal of information (in

13

the form of facts, ideas, inquiries or otherwise).

14

    b) **Document.**  The term "document" is defined to be synonymous in meaning and equal

15

in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without

16

limitation, electronic or computerized data or data compilations.  A draft or non-identical copy is a

17

separate document within the meaning of this term.

18

19

    c) **Synopsys, Inc.**  The term "Synopsys, Inc." as well as its abbreviated name (e.g.,

20

"Synopsys") or a pronoun referring to the foregoing means the Delaware corporation known as

21

Synopsys, Inc and having place of business at 700 E. Middlefield Road, Mountain View,

22

California, and, where applicable, its officers, directors, employees, agents, independent

23

contractors, partners, corporate parent, subsidiaries or affiliates.

24

    d) **Matrox Tech, Inc.**  The term "Matrox Tech, Inc." as well as its abbreviated name

25

(e.g., "Matrox Tech") or a pronoun referring to the foregoing means the Delaware corporation

26

known as Matrox Tech, Inc. and having place of business at 1075 Broken Sound Parkway, NW,

27

28

Boca Raton, FL 33487, and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

e) **Plaintiff.** The term "plaintiff" as well as the plaintiff's full ("Ricoh Company, Ltd.") or abbreviated name ("Ricoh") or a pronoun referring to Ricoh shall mean Ricoh and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates.

f) **Defendant.** The term "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, independent contractors, partners, corporate parent, subsidiaries or affiliates. Where the listed subject area is not related or limited to a specific named defendant, the listed subject area shall be construed as seeking knowledge and information concerning any and all of the defendants named in this action, including Aeroflex Incorporated, AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc.

g) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

h) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

i) **All/Each.** The terms "all" and "each" shall be construed as all and each.

j) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

k) **Number.** The use of the singular form of any word includes the plural and vice versa.

l) **Sale/Sold/Offered for Sale.** As used herein, "sale," "sold" and "offered for sale" shall include "license," "licensed" and "offered for license."

m) **Patent-in-suit.** As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

n) **ASIC.** As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise known by defendant as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

o) **ASIC Product.** The term "ASIC Product" refers to any ASIC or integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured in whole or in part by a computer aided design including logic synthesis, used, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

p) **ASIC Design System.** As used herein, "ASIC Design System" refers to any and all software, hardware, database library or other components making up or otherwise contributing to systems, modules, tools or products for use in any part of a computer-aided design including of any ASIC Product (as defined above). ASIC Design Systems include but are not limited to the Synopsys software, hardware, database libraries or other components known as Design Compiler, Knowledge Consultant, Behavioral Compiler, Module Compiler, DesignWare Library/DesignWare Foundation Library, CoCentric System C Compiler, HDL Compiler Family, VHDL Compiler, HDL Compiler for Verilog, and DC Shell.

q) **ASIC Method.** As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes that use ASIC Design Systems in the computer-aided design including logic synthesis of any ASIC Product (as defined above).

r)  **Limitations.**  Each listed subject area shall be construed independently and no listed subject area shall limit the scope of any other listed subject area.

s)  **Design.**  The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

t)  **Time period**  Unless otherwise specified, the time period for the these topics is from January 1, 1996 to the present.

## TOPICS FOR EXAMINATION

Pursuant to Fed. R. Civ. P. 30(b)(6), Matrox Tech shall produce to testify on its behalf one or more officers, directors, managing agents, or other persons, who are qualified, knowledgeable and competent to testify as to all matters known or reasonable available to Matrox Tech with respect to the following topics:

1.  The organizational structure of Matrox Tech, including, but not limited to those groups, divisions, teams and other organizations having any involvement in Matrox Tech's ASIC Method at any time, and the identity of all individuals who can testify about such organization.

2.  The identification of any business entity that designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Tech, any ASIC Product.

3.  The identification of any business entity that uses the ASIC Method to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Tech, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Matrox Tech, the person or entity performing such step or activity.

4.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales or marketing of, or in the decision to design, develop, or manufacture any ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Tech, and identification of the individual's activity concerning such involvement.

5.  The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in performing an ASIC Method for any ASIC Product designed, manufactured, sold,

offered for sale, imported, or distributed by or on behalf of Matrox Tech; identification of the ASIC Products for which such ASIC Method was performed; and identification of the acts of each individual that contributed to performing the ASIC Method.

6. Any relationship, including, but not limited to, any contractual, business, or financial relationship, between Synopsys and Matrox Tech.

7. Any product, including, but not limited to any software or ASIC Design System product, Synopsys sold, licensed, leased, lent, gave, or otherwise (directly or indirectly) provided to Matrox Tech.

8. Any agreement or other arrangement granting rights in or otherwise concerning ASIC Design Systems and/or use thereof from Synopsys to Matrox Tech (or from Matrox Tech to Synopsys), including but not limited to contracts, licenses, purchase agreements, indemnification agreements, and hold-harmless agreements/covenants not to sue.

9. Any product designed or otherwise made by Matrox Tech, using any ASIC Design System, including, but not limited to, products designed or made using Design Compiler (or any product that includes Design Compiler).

10. The identification of any ASIC Design System including, but not limited to, the manufacturer, product name, and version, used by Matrox Tech to design or otherwise make any product.

11. The identification of any software library, cell library, and database used by Matrox Tech with any ASIC Design System, including, but not limited to, Design Compiler.

12. The user interface to any ASIC Design System for designing, making or using ASIC Products, including, but not limited to, the user interface for designing, making or using products designed or made using Design Compiler (or any product that includes Design Compiler), and the forms and methods of user input used by or on behalf of Matrox Tech (whether such input is Verilog, VHDL, HDL, or any other form of input).

13. The output or netlist (and use thereof) of ASIC Design Systems used by or on behalf of Matrox Tech to fabricate any product designed or otherwise made, using any ASIC Design System, including, but not limited to, the output or netlist used to fabricate any ASIC Products designed or otherwise made using Design Compiler (or any product that includes Design Compiler).

14. The identification of the steps or other activities making up the ASIC Method used to design or otherwise make ASIC Products that are designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Tech, including, but not limited to, the date(s) such steps or other activity occurred, and, where such step or activity is not performed by Matrox Tech, the person or entity performing such step or activity. Such steps or other activities include, but are not limited to, the use of ASIC Design Systems in: defining a library of available hardware cells; selecting hardware cells based on input specifications; and generating an output or

netlist of hardware cells needed to achieve the intended function of an ASIC Product.

15.    Any ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Matrox Tech, including, but not limited to the identification for each ASIC Product, any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by Matrox Tech (whether or not known to third parties) in connection with that product, including whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, the date of termination thereof.

16.    The use by Matrox Tech of Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS'), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by Matrox Tech.

17.    The cost savings (actual or potential) by Matrox Tech as a consequence of licensing or using Build Gates, Build Gates Extreme (i.e., "BGE"), Physically knowledgeable synthesis (i.e., "PKS"), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

18.    The marketing of any product designed, sold, or otherwise made by Matrox Tech using any ASIC Design System including, but not limited to, any Synopsys ASIC Design System.

19.    The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in Matrox Tech's marketing activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for each Matrox Tech product.

20.    The cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

21.    The annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by Matrox Tech of each of Matrox Tech's ASIC Products.

22.    The annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by Matrox Tech of Matrox Tech's ASIC Products, including how Matrox Tech defines each item of cost deducted from gross revenue to calculate gross and net profits.

23.    The sales by Matrox Tech of each ASIC Product produced by an ASIC Method.

24.    All facts related to any infringement or non-infringement of the patent-in-suit.

25.    All facts related to the validity or invalidity of the patent-in-suit.

26. All facts related to enforceability of the patent-in-suit, including but not limited to the applicability or non-applicability of the doctrines of laches and equitable estoppel.

27. The identification of each individual (including their full name, address, telephone number, job title and description, and employer) who participated in any way in any discussions, communications, correspondence, or otherwise with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

28. Knowledge by Matrox Tech of the patent-in-suit prior to January 20, 2003.

29. The identification of each individual from Matrox Tech (including their full name, address, telephone number, job title and description, and employer) who was aware of the patent-in-suit prior to January 20, 2003.

30. Any discussions, communications, correspondence, or other contact with any person from, or any agent representing International Chip Corporation or Knowledge Based Silicon Corporation referring to, relating to, or regarding, directly or indirectly, the patent-in-suit.

31. Any communications within Matrox Tech concerning the patent-in-suit.

32. The identification of all documents concerning all materials presented to any of Matrox Tech's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

33. Any communications between Matrox Tech and any other defendant concerning the patent-in-suit.

34. Any communications between Matrox Tech and Synopsys concerning the patent-in-suit.

35. Any communications between Matrox Tech and any person or entity other that the other defendants and Synopsys concerning the patent-in-suit.

Matrox Tech is requested to identify in writing the name, position, and employer of the individuals(s) so designated and to set forth the matters on which that person will testify no later than seven (7) days prior to the agreed upon deposition date.

1

2

3    Dated: September 25, 2003

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Ricoh Company, Ltd.

By: _____
Gary M. Hoffman
Kenneth W. Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 896-5471
Facsimile: (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Attorneys for the Plaintiff

1
2

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | ) Case No. |
| Plaintiff, | ) (D. Del Case No.  03-103 GMS) |
| vs. | ) PATENT INFRINGEMENT ACTION |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC., | ) CERTIFICATE OF SERVICE |
| Defendants. | ) |

I am employed in Washington, District of Columbia. I am over the age of eighteen (18) years and not a party to the within action; my business address is 2101 L Street, NW, Washington, DC, 20037.

On September 25, 2003, I served the following documents:

I.     NOTICE OF DEPOSITION OF AEROFLEX INCORPORATED;

II.    NOTICE OF DEPOSITION OF AMI SEMICONDUCTOR, INC.;

III.   NOTICE OF DEPOSITION OF MATROX ELECTRONIC SYSTEMS, LTD.;

IV.    NOTICE OF DEPOSITION OF MATROX GRAPHICS INC.;

V.     NOTICE OF DEPOSITION OF MATROX TECH, INC.;

VI.    NOTICE OF DEPOSITION OF MATROX INTERNATIONAL CORP.; AND

VII.   NOTICE OF DEPOSITION OF SYNOPSYS, INC.

1   on the parties, through their attorneys of record, by transmitting true copies as shown

2   below for service as designated below:

3

4   By Facsimile:

5   Christopher L. Kelley, Esq.

6   Howrey Simon Arnold & White LLP
    301 Ravenswood Avenue

7   Menlo Park, CA  94025

8   1-650-463-8100
    1-650-463-8400 (Fax)

9   Attorneys for Defendants

10

11  Alan H. MacPherson, Esq.
    MacPherson Kwok Chen & Heid LLP

12  2001 Gateway Place, Suite 195E
    San Jose, CA  95014

13  (408) 392-9250

14  (408) 392-9262 (fax)

15  Attorneys for AMI Semiconductor, Inc.

16        I declare that I am employed in the office of a member pro hac vice of the Bar of

17  this Court at whose direction this service was made.

18

19        I declare under penalty of perjury that the foregoing is true and correct.  Executed

20  in Washington, D.C. on September 25, 2003.

21

22

23  _____

24                Alan Seutter

25

26

27

28

(D. DEL. CASE NO. 03-103-GMS)        Page 2
CERTIFICATE OF SERVICE

EXHIBIT 11



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

**CHRISTOPHER L. KELLEY**
PARTNER
650.463.8113
kelleyc@howrey.com

October 3, 2003

**<u>VIA FACSIMILE AND U.S. MAIL</u>**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:   *Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.*
      Civil Action No. 03-103-GMS

Dear Mr. Meilman:

        We have received Ricoh's notices of depositions of the defendants in the Delaware cases and a subpoena for Synopsys with accompanying deposition notice. We are trying to identify the personnel most appropriate to address the rather lengthy list of topics identified in Ricoh's Rule 30(b)(6) notices and suitable dates for deposition of the Delaware witnesses. The dates that you propose will not work. We will offer witnesses at locations near their places of work or residence. With respect to the subpoena of Synopsys, please let me know whether this has been served or if you are asking us to accept service on behalf of Synopsys. We would prefer to have discovery of Synopsys await the October 28 Case Management Conference.

        Thank you for providing a date for the deposition of Brian Bershrader. We will soon send out a confirming deposition notice. We are still awaiting a date for our noticed Rule 30(b)(6) deposition of Ricoh Corp.

                                   Very truly yours,

                                   Christopher L. Kelley

CLK:gg
cc:  Gary M. Hoffman, Esq.

**EXHIBIT 12**

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

October 23, 2003

<u>Via Facsimile: 650-463-8400</u>

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025-3434

RE:    *Ricoh Company Ltd. v. Aeroflex Incorporated, et al.*
       U.S. District Court, California Northern District (San Jose)
       Civil Action No.: 5:03-CV-04669 PVT
       <u>Our Ref.: R2180.0171</u>

Dear Mr. Kelley:

Your letter of October 3, 2003 stated that you were trying to identify the personnel of the defendants in the original Delaware case who most appropriate to address the list of topics in the Rule 30(b)(6) notices and suitable dates for deposition. Since three (3) weeks have passed, you should now be able to provide us with that information. Would you please do so by return telefax.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.
       Jeffrey Demain, Esq.

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*www.legalinnovators.com*

84665 v1; 1TBT01!.DOC

**EXHIBIT 13**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., | ) ) ) **Civil Action No. 03-103-GMS** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

## DEFENDANT AEROFLEX INCORPORATED'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Aeroflex Incorporated ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.    Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that has no relevance to Defendant's ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce relevant, non-privileged documents in response to this document request.

Dated: August 1, 2003                    By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT AEROFLEX INCORPORATED'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC 20037-1526

Gayle L. Jacob

EXHIBIT 14

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>              Plaintiff,<br><br>      v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 03-103-GMS |

## DEFENDANT AMI SEMICONDUCTOR, INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant AMI

Semiconductor, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s

("Ricoh") Second Set of Document Requests. These responses are based on information

reasonably available to Defendant at the present time. Defendant reserves the right to

supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good

faith search for responsive documents as required under the Federal Rules and Local Rules.

However, Defendant and its attorneys have not yet completed discovery or preparation for trial,

nor have they concluded their analyses of the information gathered to date by the parties. These

responses, therefore, are based on information presently available to and reviewed by Defendant

and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any

basis permitted by law to the use of any such information, for any purpose, in whole or in part, in

any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.    Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce relevant, non-privileged documents in response to this document request.

Dated:  August 1, 2003

By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT AMI SEMICONDUCTOR, INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC 20037-1526


Gayle L. Jacob

**EXHIBIT 15**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>       Plaintiff,<br><br>   v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>       Defendants. | Civil Action No. 03-103-GMS |

## DEFENDANT MATROX ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Electronic Systems Ltd. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.     Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks an overly broad discovery of Defendant's operations that has no relevance to the Defendant's accused ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of people.  Plaintiff has not mentioned if it conducted a reasonable pre-filing investigation to tailor its discovery.

Also, Plaintiff has not identified its theory of infringement or the specific design step(s) or activities that are relevant to its allegations of infringement.  Defendant further objects to this document request because it is redundant to Plaintiff's previous document requests.  Defendant further objects to this document request because the requested documents are at the Defendant's

facilities in Canada, where the Defendant designs the accused ASICs and other electronic systems and devices. Designing of a product in Canada cannot cause infringement of a United States patent under any provision of 35 U.S.C. § 271.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated: August 1, 2003                         By: _____
                                                   Francis DiGiovanni (#3189)
                                                   CONNOLLY BOVE LODGE & HUTZ LLP
                                                   1220 Market Street, 10th Floor
                                                   Wilmington, DE 19899-2207
                                                   (302) 658-9141

                                                   Terry M. Corbin
                                                   Christopher L. Kelley
                                                   Erik K. Moller
                                                   HOWREY SIMON ARNOLD & WHITE, LLP
                                                   301 Ravenswood Avenue
                                                   Menlo Park, CA 94025
                                                   (650) 463-8100 (Telephone)
                                                   (650) 463-8400 (Facsimile)

                                                   Attorneys for Defendants
                                                   AEROFLEX INCORPORATED, AMI
                                                   SEMICONDUCTOR, INC., MATROX
                                                   ELECTRONIC SYSTEMS, LTD., MATROX
                                                   GRAPHICS INC., MATROX
                                                   INTERNATIONAL CORP. and MATROX
                                                   TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526


Gayle L. Jacob

**EXHIBIT 16**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>        Plaintiff,<br><br>    v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **Civil Action No. 03-103-GMS** |

## DEFENDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Graphics, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.       Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests. Defendant further objects to this document

request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated:  August 1, 2003

By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526


Gayle L. Jacob

EXHIBIT 17

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| Plaintiff, | ) **Civil Action No. 03-103-GMS** |
| v. | ) |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC., | ) |
| Defendants. | ) |

### DEFENDANT MATROX INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox International Corp. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1. Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests. Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its General and Specific Objections to Ricoh's First Set of Document Requests. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests. Defendant further objects to this document

request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated: August 1, 2003        By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526

_____
Gayle L. Jacob

EXHIBIT 18

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AEROFLEX INCORPORATED, AMI | ) |
| SEMICONDUCTOR, INC., MATROX | ) |
| ELECTRONIC SYSTEMS LTD., MATROX | ) |
| GRAPHICS INC., MATROX | ) |
| INTERNATIONAL CORP. and MATROX | ) |
| TECH, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 03-103-GMS

## DEFENDANT MATROX TECH, INC. RESPONSES TO
## PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Tech, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.    Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests.  Defendant further objects to this document

request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated:  August 1, 2003                    By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX TECH, INC.
RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS
was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC 20037-1526

Gayle L. Jacob

EXHIBIT 19

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

July 9, 2003

**VIA FACSIMILE No. 650-463-8400**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434

     Re:    DSMO File:  R2180.0100
             Ricoh v. Aeroflex et al.

Dear Erik:

     The purpose this letter is to acknowledge your telefax of July 8, 2003 in which you state that Plaintiff's Initial Disclosure documents would be responsive to your documents requests.  We understand that you are asking us to provide copies of documents which we agree are producible when we respond to Defendants' First Set of Document Requests (due July 21, 2003) rather than making them available for inspection and copying in Washington, D.C.  We will let you know when they are ready for production, which will be sometime this month but after July 21, 2003, we will arrange for a copy company to pick them up and make copies of the documents.  We will send you the name of the copy company so that you can arrange for them to directly bill your firm.

     The documents listed in the Defendants' Initial Disclosure are similarly responsive to the Plaintiff's discovery requests.  We will accept copies of those documents provided that the originals are maintained available for inspection, if necessary.  Since the Defendants' response to those document requests has already been made, those documents should already be on their way to us.  Would you please confirm that they have been sent to us.

     Very truly yours,

     Edward A. Meilman

EAM/mgs

cc:  Gary Hoffman, Esq.
     Kenneth Brothers, Esq.

bcc:  Solomon Seyoum

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*www.legalinnovators.com*

74232 v1; 1L@001!.DOC

EXHIBIT 20



301 Ravenswood Avenue
Menlo Park, CA 94025-3434
Phone 650.463.8100
Fax 650.463.8400
A Limited Liability Partnership

July 10, 2003

*Via Facsimile and Regular U.S. Mail*

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Dear Ed:

This letter is in response to your correspondence of July 9, 2003.

First, the defendants are in the process of collecting documents responsive to Ricoh's first set of document requests, and will be producing documents as indicated in their written responses to those requests in due course.

Second, thank you for your agreement to have copies made of the materials identified in your initial disclosure. In order to minimize bookkeeping, may we propose that the parties agree to bear their own costs for the routine production of documents, including copying costs. If there are unusual or extraordinary costs we can discuss alternative arrangements. We are willing to apply the same rule in the Synopsys case in California. Let us know if you will agree to this arrangement.

Very Truly Yours,

Erik K. Moller

EKM/gj

BRUSSELS    CHICAGO    HOUSTON    IRVINE    LONDON    LOS ANGELES    MENLO PARK    SAN FRANCISCO .    WASHINGTON, DC

EXHIBIT 21

LAW OFFICES

## CONNOLLY BOVE LODGE & HUTZ LLP

**FRANCIS DiGiovanni**
Partner

DIRECT DIAL 302-888-6316
DIRECT FAX 302-255-4316
FD@CBLHLAW.COM

1220 MARKET STREET
P.O. BOX 2207
WILMINGTON, DELAWARE 19899

TELEPHONE   (302) 658-9141
FACSIMILE   (302) 658-5614

www.cblhlaw.com

WASHINGTON OFFICE
SUITE 800
1990 M STREET NW
WASHINGTON, DC 20036-3425
TELEPHONE: (202) 331-7111
FACSIMILE: (202) 293-6229

August 26, 2003

**Via Hand Delivery**
The Honorable Gregory M. Sleet
J. Caleb Boggs Federal Building
844 N. King Street, Room 2124
Wilmington, DE 19801

        Re:     *Ricoh v. Aeroflex et al.*, C.A. No. 03-103-GMS

Dear Judge Sleet:

        In accordance with this Court's Scheduling Order dated May 30, 2003, the parties hereby jointly submit the following agenda for the discovery teleconference scheduled for 11:00 a.m. EDT on Thursday, August 28, 2003:

1.      During the discovery teleconference of July 30, 2003, regarding the defendants' retention of an expert witness, Dr. Thomas, who Ricoh had previously retained, counsel for Ricoh requested "[t]hat the defendants be required to disclose all the communications that they have had with Dr. Thomas and produce all the documents to us that have gone back and forth. If they feel that any documents are privileged or work product, then they can be submitted in-camera, but we should get a log so we can sort that out." Tr. at 9. The Court subsequently ordered counsel for Ricoh to "prepare an order outlining the request that you have just made and I will sign it." Tr. at 21. Ricoh submitted an order, and the Court entered it. Paragraph 2 of the Order states: "Defendants and their counsel are ordered to disclose all communications with or relating to Dr. Thomas and to produce all documents sent to, prepared by, or received from Dr. Thomas. Any documents withheld on the basis of the attorney-client privilege or the work-product doctrine should be produced to the Court for an in camera inspection, and Defendants shall provide Plaintiff with a detailed privilege log." Defendants have made their disclosure and production and submit that they have complied with the Order, but Ricoh has complained that the production is insufficient and does not comply with the Order. Defendants seek a clarification of paragraph 2 of the Court's July 31 Order. Ricoh seeks to have Defendants comply with the Order.

2.      Ricoh has served a subpoena duces tecum (issued out of this Court) upon third party Synopsys, Inc. ("Synopsys"). Synopsys has objected to the scope of the subpoena. Synopsys asks the Court to quash portions of the subpoena or grant Synopsys a protective order. Ricoh asks the Court to compel Synopsys to comply with the subpoena and produce the requested documents. Synopsys and the Defendants are represented by the same counsel and will be participating in the conference call.

LAW OFFICES
CONNOLLY BOVE LODGE & HUTZ LLP

The Honorable Gregory M. Sleet
August 26, 2003
Page 2 of 2

3.      Defendants noticed the depositions of Hideaki Kobayashi and Masahiro Shindo, the named inventors of the patent in suit, on June 11, 2003. Ricoh has listed both inventors in its initial disclosure statement. Neither inventor is employed by Ricoh. Dr. Kobayahsi has agreed to voluntarily appear for his deposition. Mr. Shindo, who resides in Japan, has not been served with a subpoena and has not agreed to appear for a deposition. The Defendants seek to compel Ricoh to produce Mr. Shindo for a deposition.

4.      Ricoh has requested that Defendants produce all the documents and things identified in their Initial Disclosures. Ricoh now asks the Court to compel Defendants to produce those documents.

5.      Defendants have objected to Ricoh's First Set of Document Requests. Ricoh seeks to compel Defendants to produce the requested documents.

6.      On June 5, 2003, the defendants served its First Set of Requests for Production of Documents (1–32) on Ricoh. To date, Ricoh has produced: the prosecution history of the patent-in-suit; and a user manual to Synopsys's Design Compiler product. Defendants now ask the Court to compel Ricoh to produce other responsive documents. Ricoh objects to this matter being heard by this Court at this time, on the ground that there has been no meet and confer as required by the local rules, and because Ricoh's production is ongoing.

7.      In response to certain of Ricoh's interrogatories, Defendants have asserted objections and have not provided substantive responses. Ricoh asks the Court to compel Defendants to provide complete responses to those interrogatories.

8.      Matrox defendants seek permission to bring, prior to the February 12, 2004 date set forth in ¶ 8 of the Scheduling Order, a summary judgment motion (or a letter request to file a summary judgment motion) regarding noninfringement. Infringement is alleged under 35 U.S.C. § 271(g); the issue is now governed by *Bayer AG v. Housey Pharmaceuticals, Inc.* (Fed. Cir. Aug. 22, 2003).

The parties' respective counsel have approved this agenda and the submission thereof.

Respectfully Submitted,

Francis DiGiovanni

FD/dhd
cc:     Clerk of the Court (by hand)
        Robert W. Whetzel, Esq. (by hand)
        Gary Hoffman, Esq. (by facsimile)
        Edward Meilman, Esq. (by facsimile)
        Theresa M. Corbin, Esq. (by facsimile)
        Christopher Kelley, Esq. (by facsimile)

EXHIBIT 22

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>AEROFLEX INCORPORATED, AMI )<br>SEMICONDUCTOR, INC., MATROX )<br>ELECTRONIC SYSTEMS LTD., MATROX )<br>GRAPHICS INC., MATROX )<br>INTERNATIONAL CORP. and MATROX )<br>TECH, INC., )<br><br>Defendants. )<br> ) | **Civil Action No. 03-103-GMS** |

## DEFENDANT AEROFLEX INCORPORATED'S ANSWERS TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Aeroflex Incorporated ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") First Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in

any subsequent proceeding in this action or any other action; and (2) the right to object on any basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## GENERAL OBJECTIONS

1.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

2.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

3.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by any other privilege or protection (other than by the attorney-client privilege or work product doctrine) afforded by state or federal law. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

- 2 -

4.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party.  Without third party permission, Defendant will not provide such information unless required by the Court.

5.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's First Set of Document Requests as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant employees.

7.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendant, or refers to persons, entities, or events not known to Defendant, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432  (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is

not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.     Defendant objects to Ricoh's First Set of Document Requests insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

11.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek a legal conclusion.

12.     Defendant objects to Ricoh's First Set of Document Requests, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Document Requests in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

13.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

14.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unreasonably cumulative, redundant, or duplicative of other Document Requests, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

15.     Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information from Defendant concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Defendant cannot determine the positions they will take at trial without first having such discovery, nor without having a proper identification from Ricoh of its own claims and contentions as the plaintiff in this action.

- 4 -

Defendant will provide such responses to such Document Requests at such time according to the schedule set by the Court in this action.

16.    Defendant objects to Ricoh's First Set of Document Requests to the extent that it is premature to the extent that it seeks Ricoh's contentions before substantial discovery has been completed in this action. Defendant reserve the right to supplement, amend, modify, correct, or change these Responses at the appropriate time to the extent that additional information becomes known.

17.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information or documents about products not made, used, offered for sale, or sold within the United States, and will not produce information or documents concerning such products.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.    Defendant objects to Definition/Instruction 2 on the grounds that it is unduly burdensome, overbroad, and purports to impose obligations on Defendant far beyond those imposed by the Federal or Local Rules. To the extent that e-mail or other information stored in an electronic format is responsive to these Requests, Defendant will produce printouts of the e-mails or other information.

2.    Defendant object to Definition/Instruction 2 to the extent that it purports to require Defendant to produce the original of any document. Such a requirement would be unduly burdensome and improper to the extent that it purports to impose obligations on Defendant beyond those imposed by the Federal Rules or Local Rules. Defendant will produce copies of any responsive file folders or tabs except in specific circumstances agreed upon by the parties.

3.    Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "Defendant" extends to any person or entity other than Defendant's present employees and agents.

4.      Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

5.      Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Response to Document Request No. 1:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 2:

With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Response to Document Request No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as overbroad and unduly burdensome on the basis that it seeks detailed discovery on subject matter and allegations irrelevant to the Defendant. Defendant further objects to this document request on the grounds that Matrox International Corp. is not a Delaware corporation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

- 7 -

In light of the foregoing objections, Defendant will not respond to this request.

Document Request No. 3:

Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

Response to Document Request No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 4:

Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel

involved in production.  Plaintiff has not identified any theory of infringement or which specific

design step(s) or activities are relevant to its allegations of infringement, or what activities

Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior

to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant

responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to

this document request.


Document Request No. 5:

Produce all documents concerning the conception, design, development, manufacture or

sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams,

specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks,

diaries, notes and/or manufacturing drawings.

Response to Document Request No. 5:

Defendant incorporates by reference its General and Specific Objections.  Defendant

further objects to this document request as unduly burdensome and seeking discovery of

information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant

designs and manufactures a large number of products and employs a large number of personnel

involved in production.  Plaintiff has not identified any theory of infringement or which specific

design step(s) or activities are relevant to its allegations of infringement, or what activities

Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior

to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant

responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to

this document request.

Document Request No. 6:

Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Response to Document Request No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will respond to this Document Request as the requested information becomes available and is analyzed.

Document Request No. 7:

Produce all patents and patent applications, whether U.S. or foreign, and whether issues, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 8:

Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 9:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

Response to Document Request No. 9:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 10:

Produce all documents concerning Synopsys Inc.

Response to Document Request No. 10:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 11:

Produce all documents concerning Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 11:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 12:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

Response to Document Request No. 12:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 13:

Produce all documents concerning Cadence Design Systems, Inc.

Response to Document Request No. 13:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 14:

Produce all documents concerning the annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each of defendant's ASIC Products.

Response to Document Request No. 14:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 15:

Produce all documents concerning the annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by defendant of defendant's ASIC Products, including how defendant defines each item of cost deducted from gross revenue to calculate gross and net profits.

- 14 -

Response to Document Request No. 15:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 16:

Produce all documents concerning the manufacture of each ASIC Product designed using an ASIC Method.

Response to Document Request No. 16:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 17:

Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 17:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No.18:

Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

- 16 -

<u>Response to Document Request No. 18:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

<u>Document Request No.19:</u>

Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

<u>Response to Document Request No. 19:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 20:

Produce all documents concerning the validity of the patent-in-suit.

Response to Document Request No. 20:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the invalidity of the patent in suit.

Document Request No. 21:

Produce all documents concerning the enforceability of the patent-in-suit.

Response to Document Request No. 21:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the enforceability of the patent in suit.


Document Request No. 22:

Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

Response to Document Request No. 22:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any documents responsive to this document request.


Document Request No. 23:

Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

Response to Document Request No. 23:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work

- 19 -

product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged document in response to this document request.

Document Request No. 24:

Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

Response to Document Request No. 24:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 25:

Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 25:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls

for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 26:

Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 26:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 27:

Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

Response to Document Request No. 27:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 28:

Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the United States or elsewhere.

Response to Document Request No. 28:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, duplicative of previous document requests, is not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged patent applications, if any exist, that describe "ASIC Methods" practiced by the Defendant to the extent that these are not described in other documents produced by the Defendant.

Document Request No. 29:

Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

Response to Document Request No. 29:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 30:

Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

Response to Document Request No. 30:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. If Defendant determines to rely on an

opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 31:

Produce all documents concerning any infringement of the patent-in-suit by anyone.

Response to Document Request No. 31:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not respond to this request.

Document Request No. 32:

Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

Response to Document Request No. 32:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document requests on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 33:

Produce all documents concerning all proprietary or third party hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in the practice of an ASIC Method, including technical reference manuals, user manuals, installation manuals, training manuals, tutorials, overviews, summaries, advertising material, contracts, proposals, licenses, purchase agreements, indemnification agreements, and communications with third parties.

Response to Document Request No. 33:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further object to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

<u>Document Request No. 34:</u>

Produce all documents concerning the patent-in-suit.

<u>Response to Document Request No. 34:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

<u>Document Request No. 35:</u>

Produce all documents relating to any indemnification or other hold-harmless agreement given to you (or by you) with respect to the patent-in-suit.

<u>Response to Document Request No. 35:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, is not reasonably calculated to lead to the discovery of admissible evidence, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 36:

Produce all documents identified or relied upon in response to Plaintiff's First Set of Interrogatories.

Response to Document Request No. 36:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control.

Document Request No. 37:

Produce all documents relied upon or referred to in preparing the response to the Complaint.

Response to Document Request No. 37:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 38:

Produce all documents concerning defendant's affirmative defense of laches.

Response to Document Request No. 38:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 39:

Produce all documents referring to plaintiff.

Response to Document Request No. 39:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, overbroad, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents, if any exist, relevant to the '432 patent or Ricoh design techniques to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 40:

Produce all documents relating to your first knowledge of the patent-in-suit.

Response to Document Request No. 40:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Dated: June 30 2003                    By: _____

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
(302) 658-9141

Christopher L. Kelley
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT AEROFLEX INCORPORATED'S ANSWERS TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 30th day of June, 2003 on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899


Gayle L. Jacob

EXHIBIT 23

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC., <br><br> Defendants. | Civil Action No. 03-103-GMS |

## DEFENDANT AMI SEMICONDUCTOR, INC.'S ANSWERS TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant AMI Semiconductor, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") First Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in

any subsequent proceeding in this action or any other action; and (2) the right to object on any basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## GENERAL OBJECTIONS

1.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

2.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

3.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by any other privilege or protection (other than by the attorney-client privilege or work product doctrine) afforded by state or federal law. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

4.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is subject to any protective order, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party.  Without third party permission, Defendant will not provide such information unless required by the Court.

5.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's First Set of Document Requests as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant employees.

7.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendant, or refers to persons, entities, or events not known to Defendant, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432  (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is

- 3 -

not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Defendant objects to Ricoh's First Set of Document Requests insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

11.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek a legal conclusion.

12.    Defendant objects to Ricoh's First Set of Document Requests, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Document Requests in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

13.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

14.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unreasonably cumulative, redundant, or duplicative of other Document Requests, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

15.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information from Defendant concerning the positions they will take at trial, on the grounds that discovery in this action is in its earliest stages and Defendant cannot determine the positions they will take at trial without first having such discovery, nor without having a proper identification from Ricoh of its own claims and contentions as the plaintiff in this action.

- 4 -

Defendant will provide such responses to such Document Requests at such time according to the schedule set by the Court in this action.

16.    Defendant objects to Ricoh's First Set of Document Requests to the extent that it is premature to the extent that it seeks Ricoh's contentions before substantial discovery has been completed in this action. Defendant reserve the right to supplement, amend, modify, correct, or change these Responses at the appropriate time to the extent that additional information becomes known.

17.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information or documents about products not made, used, offered for sale, or sold within the United States, and will not produce information or documents concerning such products.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.    Defendant objects to Definition/Instruction 2 on the grounds that it is unduly burdensome, overbroad, and purports to impose obligations on Defendant far beyond those imposed by the Federal or Local Rules. To the extent that e-mail or other information stored in an electronic format is responsive to these Requests, Defendant will produce printouts of the e-mails or other information.

2.    Defendant object to Definition/Instruction 2 to the extent that it purports to require Defendant to produce the original of any document. Such a requirement would be unduly burdensome and improper to the extent that it purports to impose obligations on Defendant beyond those imposed by the Federal Rules or Local Rules. Defendant will produce copies of any responsive file folders or tabs except in specific circumstances agreed upon by the parties.

3.    Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "Defendant" extends to any person or entity other than Defendant's present employees and agents.

- 5 -

4.    Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

5.    Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

7.    Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Response to Document Request No. 1:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 2:

With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Response to Document Request No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as overbroad and unduly burdensome on the basis that it seeks detailed discovery on subject matter and allegations irrelevant to the Defendant. Defendant further objects to this document request on the grounds that Matrox International Corp. is not a Delaware corporation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not respond to this request.

Document Request No. 3:

Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

Response to Document Request No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 4:

Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel

involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 5:

Produce all documents concerning the conception, design, development, manufacture or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

Response to Document Request No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

- 9 -

Document Request No. 6:

Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Response to Document Request No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will respond to this Document Request as the requested information becomes available and is analyzed.


Document Request No. 7:

Produce all patents and patent applications, whether U.S. or foreign, and whether issues, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 8:

Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 9:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys, Inc.

Response to Document Request No. 9:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

- 11 -

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 10:

Produce all documents concerning Synopsys Inc.

Response to Document Request No. 10:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 11:

Produce all documents concerning Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 11:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 12:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

Response to Document Request No. 12:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 13:

Produce all documents concerning Cadence Design Systems, Inc.

Response to Document Request No. 13:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 14:

Produce all documents concerning the annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each of defendant's ASIC Products.

Response to Document Request No. 14:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 15:

Produce all documents concerning the annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by defendant of defendant's ASIC Products, including how defendant defines each item of cost deducted from gross revenue to calculate gross and net profits.

- 14 -

Response to Document Request No. 15:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 16:

Produce all documents concerning the manufacture of each ASIC Product designed using an ASIC Method.

Response to Document Request No. 16:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

- 15 -

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 17:

Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 17:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No.18:

Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

- 16 -

Response to Document Request No. 18:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No.19:

Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

Response to Document Request No. 19:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 20:

 Produce all documents concerning the validity of the patent-in-suit.

Response to Document Request No. 20:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the invalidity of the patent in suit.


Document Request No. 21:

 Produce all documents concerning the enforceability of the patent-in-suit.

Response to Document Request No. 21:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the enforceability of the patent in suit.

Document Request No. 22:

Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

Response to Document Request No. 22:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any documents responsive to this document request.

Document Request No. 23:

Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

Response to Document Request No. 23:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work

product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged document in response to this document request.

Document Request No. 24:

Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

Response to Document Request No. 24:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 25:

Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 25:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls

for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 26:

Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 26:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 27:

Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

- 21 -

Response to Document Request No. 27:

     Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

     Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

     Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 28:

     Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the United States or elsewhere.

Response to Document Request No. 28:

     Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, duplicative of previous document requests, is not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

     Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

     Defendant will produce non-privileged patent applications, if any exist, that describe "ASIC Methods" practiced by the Defendant to the extent that these are not described in other documents produced by the Defendant.

<u>Document Request No. 29:</u>

Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

<u>Response to Document Request No. 29:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

<u>Document Request No. 30:</u>

Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

<u>Response to Document Request No. 30:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. If Defendant determines to rely on an

- 23 -

opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 31:

Produce all documents concerning any infringement of the patent-in-suit by anyone.

Response to Document Request No. 31:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not respond to this request.

Document Request No. 32:

Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

Response to Document Request No. 32:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document requests on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 33:

Produce all documents concerning all proprietary or third party hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in the practice of an ASIC Method, including technical reference manuals, user manuals, installation manuals, training manuals, tutorials, overviews, summaries, advertising material, contracts, proposals, licenses, purchase agreements, indemnification agreements, and communications with third parties.

Response to Document Request No. 33:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further object to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

<u>Document Request No. 34:</u>

Produce all documents concerning the patent-in-suit.

<u>Response to Document Request No. 34:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

<u>Document Request No. 35:</u>

Produce all documents relating to any indemnification or other hold-harmless agreement given to you (or by you) with respect to the patent-in-suit.

<u>Response to Document Request No. 35:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, is not reasonably calculated to lead to the discovery of admissible evidence, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

- 26 -

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 36:

Produce all documents identified or relied upon in response to Plaintiff's First Set of Interrogatories.

Response to Document Request No. 36:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control.

Document Request No. 37:

Produce all documents relied upon or referred to in preparing the response to the Complaint.

Response to Document Request No. 37:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 38:

Produce all documents concerning defendant's affirmative defense of laches.

Response to Document Request No. 38:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 39:

Produce all documents referring to plaintiff.

Response to Document Request No. 39:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, overbroad, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents, if any exist, relevant to the '432 patent or Ricoh design techniques to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 40:

Produce all documents relating to your first knowledge of the patent-in-suit.

Response to Document Request No. 40:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

- 29 -

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search..


Dated: June 1º 2003                           By: _____

                                              Francis DiGiovanni
                                              CONNOLLY BOVE LODGE & HUTZ LLP
                                              1220 Market Street, 10th Floor
                                              Wilmington, DE  19899-2207
                                              (302) 658-9141

                                              Christopher L. Kelley
                                              HOWREY SIMON ARNOLD & WHITE, LLP
                                              301 Ravenswood Avenue
                                              Menlo Park, CA  94025
                                              (650) 463-8100 (Telephone)
                                              (650) 463-8400 (Facsimile)

                                              Attorneys for Defendants
                                              AEROFLEX INCORPORATED, AMI
                                              SEMICONDUCTOR, INC., MATROX
                                              ELECTRONIC SYSTEMS, LTD., MATROX
                                              GRAPHICS INC., MATROX
                                              INTERNATIONAL CORP. and MATROX
                                              TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the DEFENDANT AMI
SEMICONDUCTOR, INC.'S ANSWERS TO PLAINTIFF'S FIRST SET OF
DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 30th day of June,
2003 on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899


Gayle L. Jacob

EXHIBIT 24

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AEROFLEX INCORPORATED, AMI | ) |
| SEMICONDUCTOR, INC., MATROX | ) |
| ELECTRONIC SYSTEMS LTD., MATROX | ) |
| GRAPHICS INC., MATROX | ) |
| INTERNATIONAL CORP. and MATROX | ) |
| TECH, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 03-103-GMS

## DEFENDANT MATROX ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox

Electronic Systems Ltd. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s

("Ricoh") First Set of Document Requests.  These responses are based on information reasonably

available to Defendant at the present time.  Defendant reserves the right to supplement these

responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good

faith search for responsive documents as required under the Federal Rules and Local Rules.

However, Defendant and its attorneys have not yet completed discovery or preparation for trial,

nor have they concluded their analyses of the information gathered to date by the parties.  These

responses, therefore, are based on information presently available to and reviewed by Defendant

and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any

basis permitted by law to the use of any such information, for any purpose, in whole or in part, in

any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## GENERAL OBJECTIONS

1.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.  Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log.  Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

2.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.  Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log.  Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

3.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by any other privilege or protection (other than by the attorney-client privilege or work product doctrine) afforded by state or federal law.  Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log.  Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

4.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is subject to any protective order, privacy interest, contractual

obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party. Without third party permission, Defendant will not provide such information unless required by the Court.

5.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's First Set of Document Requests as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant employees.

7.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendant, or refers to persons, entities, or events not known to Defendant, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

- 3 -

10.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information that related to an act in Canada which is not an infringing act within the scope of 35 U.S.C. §271.

12.    Defendant objects to Ricoh's First Set of Document Requests insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek a legal conclusion.

14.    Defendant objects to Ricoh's First Set of Document Requests, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Document Requests in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unreasonably cumulative, redundant, or duplicative of other Document Requests, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information from Defendant concerning the positions they will take at trial, on the grounds

that discovery in this action is in its earliest stages and Defendant cannot determine the positions they will take at trial without first having such discovery, nor without having a proper identification from Ricoh of its own claims and contentions as the plaintiff in this action. Defendant will provide such responses to such Document Requests at such time according to the schedule set by the Court in this action.

18.     Defendant objects to Ricoh's First Set of Document Requests to the extent that it is premature to the extent that it seeks Ricoh's contentions before substantial discovery has been completed in this action. Defendant reserve the right to supplement, amend, modify, correct, or change these Responses at the appropriate time to the extent that additional information becomes known.

19.     Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information or documents about products not made, used, offered for sale, or sold within the United States, and will not produce information or documents concerning such products.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.     Defendant objects to Definition/Instruction 2 on the grounds that it is unduly burdensome, overbroad, and purports to impose obligations on Defendant far beyond those imposed by the Federal or Local Rules. To the extent that e-mail or other information stored in an electronic format is responsive to these Requests, Defendant will produce printouts of the e-mails or other information.

2.     Defendant object to Definition/Instruction 2 to the extent that it purports to require Defendant to produce the original of any document. Such a requirement would be unduly burdensome and improper to the extent that it purports to impose obligations on Defendant beyond those imposed by the Federal Rules or Local Rules. Defendant will produce copies of any responsive file folders or tabs except in specific circumstances agreed upon by the parties.

3.      Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "Defendant" extends to any person or entity other than Defendant's present employees and agents.

4.      Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

5.      Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Response to Document Request No. 1:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks

detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 2:

With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Response to Document Request No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as overbroad and unduly burdensome on the basis that it seeks detailed discovery on subject matter and allegations irrelevant to the Defendant. Defendant

further objects to this document request on the grounds that Matrox International Corp. is not a Delaware corporation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any responsive documents.


Document Request No. 3:

Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

Response to Document Request No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

- 8 -

Document Request No. 4:

Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 5:

Produce all documents concerning the conception, design, development, manufacture or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

Response to Document Request No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 6:

Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Response to Document Request No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will respond to this document request as the requested information becomes available and is analyzed.


Document Request No. 7:

Produce all patents and patent applications, whether U.S. or foreign, and whether issued, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.


Document Request No. 8:

Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome,

seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 9:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

Response to Document Request No. 9:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 10:

Produce all documents concerning Synopsys, Inc.

Response to Document Request No. 10:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 11:

Produce all documents concerning Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 11:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 12:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

Response to Document Request No. 12:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 13:

Produce all documents concerning Cadence Design Systems, Inc.

Response to Document Request No. 13:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 14:

Produce all documents concerning the annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each of defendant's ASIC Products.

Response to Document Request No. 14:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 15:

Produce all documents concerning the annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by defendant of defendant's ASIC Products, including how defendant defines each item of cost deducted from gross revenue to calculate gross and net profits.

Response to Document Request No. 15:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant

- 15 -

designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 16:

Produce all documents concerning the manufacture of each ASIC Product designed using an ASIC Method.

Response to Document Request No. 16:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant

to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 17:

Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 17:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No.18:

Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 18:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

- 18 -

Document Request No.19:

Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

Response to Document Request No. 19:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 20:

Produce all documents concerning the validity of the patent-in-suit.

Response to Document Request No. 20:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the

production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the invalidity of the patent in suit.


**Document Request No. 21:**

Produce all documents concerning the enforceability of the patent-in-suit.

**Response to Document Request No. 21:**

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the enforceability of the patent in suit.


**Document Request No. 22:**

Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

**Response to Document Request No. 22:**

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any documents responsive to this document request.


Document Request No. 23:

Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

Response to Document Request No. 23:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged document in response to this document request.


Document Request No. 24:

Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

Response to Document Request No. 24:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 25:

Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 25:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 26:

Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such

personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 26:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 27:

Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

Response to Document Request No. 27:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 28:

Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the United States or elsewhere.

Response to Document Request No. 28:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, duplicative of previous document requests, is not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged patent applications, if any exist, that describe "ASIC Methods" practiced by the Defendant to the extent that these are not described in other documents produced by the Defendant.


Document Request No. 29:

Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

Response to Document Request No. 29:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior

- 24 -

to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control.

Document Request No. 30:

Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

Response to Document Request No. 30:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. If Defendant determines to rely on an opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

- 25 -

Document Request No. 31:

Produce all documents concerning any infringement of the patent-in-suit by anyone.

Response to Document Request No. 31:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 32:

Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

Response to Document Request No. 32:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 33:

Produce all documents concerning all proprietary or third party hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in the practice of an ASIC Method, including technical reference manuals, user manuals, installation manuals, training manuals, tutorials, overviews, summaries, advertising material, contracts, proposals, licenses, purchase agreements, indemnification agreements, and communications with third parties.

Response to Document Request No. 33:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further object to this document request as duplicative of previous document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 34:

Produce all documents concerning the patent-in-suit.

Response to Document Request No. 34:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 35:

Produce all documents relating to any indemnification or other hold-harmless agreement given to you (or by you) with respect to the patent-in-suit.

Response to Document Request No. 35:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, is not reasonably calculated to lead to the discovery of admissible evidence, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 36:

Produce all documents identified or relied upon in response to Plaintiff's First Set of

Interrogatories.

Response to Document Request No. 36:

Defendant incorporates by reference its General and Specific Objections. Defendant

further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, is duplicative of other document requests, and calls for the production of documents

and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant

responds as follows:

Defendant will produce non-privileged documents that are responsive to this document

request, to the extent such records currently exist within Defendant's possession, custody or

control.


Document Request No. 37:

Produce all documents relied upon or referred to in preparing the response to the

Complaint.

Response to Document Request No. 37:

Defendant incorporates by reference its General and Specific Objections. Defendant

further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, is duplicative of other document requests, and calls for the production of documents

and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant

responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to

this document request.

- 29 -

<u>Document Request No. 38:</u>

Produce all documents concerning defendant's affirmative defense of laches.

<u>Response to Document Request No. 38:</u>

Defendant incorporates by reference its General and Specific Objections.  Defendant

further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, is duplicative of other document requests, and calls for the production of documents

and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant

responds as follows:

Defendant will produce non-privileged documents that are responsive to this document

request, to the extent such records currently exist within Defendant's possession, custody or

control, and are discoverable after a reasonable search.


<u>Document Request No. 39:</u>

Produce all documents referring to plaintiff.

<u>Response to Document Request No. 39:</u>

Defendant incorporates by reference its General and Specific Objections.  Defendant

further objects to this document request on the grounds that it is vague and ambiguous,

overbroad, unduly burdensome, is duplicative of other document requests, and calls for the

production of documents and information protected by the attorney-client privilege and work

product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant

responds as follows:

Defendant will produce non-privileged documents, if any exist, relevant to the '432

patent or Ricoh design techniques to the extent such records currently exist within Defendant's

possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 40:

Produce all documents relating to your first knowledge of the patent-in-suit.

Response to Document Request No. 40:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Dated: June 30 2003                        By: _____

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
(302) 658-9141

Christopher L. Kelley
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX
ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S FIRST SET OF
DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 30th day of June,
2003 on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899


Gayle L. Jacob

**EXHIBIT 25**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| RICOH COMPANY, LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>AEROFLEX INCORPORATED, AMI )<br>SEMICONDUCTOR, INC., MATROX )<br>ELECTRONIC SYSTEMS LTD., MATROX )<br>GRAPHICS INC., MATROX )<br>INTERNATIONAL CORP. and MATROX )<br>TECH, INC., )<br><br>Defendants. )<br> ) | Civil Action No. 03-103-GMS |

## DEFENDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Graphics Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") First Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## GENERAL OBJECTIONS

1.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege.  Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log.  Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

2.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys.  Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log.  Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

3.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by any other privilege or protection (other than by the attorney-client privilege or work product doctrine) afforded by state or federal law.  Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log.  Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

4.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is subject to any protective order, privacy interest, contractual

obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party. Without third party permission, Defendant will not provide such information unless required by the Court.

5.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's First Set of Document Requests as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant employees.

7.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendant, or refers to persons, entities, or events not known to Defendant, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432  (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information that related to an act in Canada which is not an infringing act within the scope of 35 U.S.C. §271.

12.    Defendant objects to Ricoh's First Set of Document Requests insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek a legal conclusion.

14.    Defendant objects to Ricoh's First Set of Document Requests, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Document Requests in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unreasonably cumulative, redundant, or duplicative of other Document Requests, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information from Defendant concerning the positions they will take at trial, on the grounds

that discovery in this action is in its earliest stages and Defendant cannot determine the positions they will take at trial without first having such discovery, nor without having a proper identification from Ricoh of its own claims and contentions as the plaintiff in this action. Defendant will provide such responses to such Document Requests at such time according to the schedule set by the Court in this action.

18.     Defendant objects to Ricoh's First Set of Document Requests to the extent that it is premature to the extent that it seeks Ricoh's contentions before substantial discovery has been completed in this action. Defendant reserve the right to supplement, amend, modify, correct, or change these Responses at the appropriate time to the extent that additional information becomes known.

19.     Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information or documents about products not made, used, offered for sale, or sold within the United States, and will not produce information or documents concerning such products.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.     Defendant objects to Definition/Instruction 2 on the grounds that it is unduly burdensome, overbroad, and purports to impose obligations on Defendant far beyond those imposed by the Federal or Local Rules. To the extent that e-mail or other information stored in an electronic format is responsive to these Requests, Defendant will produce printouts of the e-mails or other information.

2.     Defendant object to Definition/Instruction 2 to the extent that it purports to require Defendant to produce the original of any document. Such a requirement would be unduly burdensome and improper to the extent that it purports to impose obligations on Defendant beyond those imposed by the Federal Rules or Local Rules. Defendant will produce copies of any responsive file folders or tabs except in specific circumstances agreed upon by the parties.

3.      Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "Defendant" extends to any person or entity other than Defendant's present employees and agents.

4.      Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

5.      Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Response to Document Request No. 1:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks

detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.


Document Request No. 2:

With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Response to Document Request No. 2:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request as overbroad and unduly burdensome on the basis that it seeks detailed discovery on subject matter and allegations irrelevant to the Defendant.  Defendant

further objects to this document request on the grounds that Matrox International Corp. is not a Delaware corporation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any responsive documents.


Document Request No. 3:

Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

Response to Document Request No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

- 8 -

Document Request No. 4:

Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 5:

Produce all documents concerning the conception, design, development, manufacture or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

Response to Document Request No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 6:

Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Response to Document Request No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will respond to this Document Request as the requested information becomes available and is analyzed.

Document Request No. 7:

Produce all patents and patent applications, whether U.S. or foreign, and whether issued, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 8:

Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome,

seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 9:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

Response to Document Request No. 9:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 10:

Produce all documents concerning Synopsys Inc.

Response to Document Request No. 10:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 11:

Produce all documents concerning Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 11:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 12:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

Response to Document Request No. 12:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 13:

Produce all documents concerning Cadence Design Systems, Inc.

Response to Document Request No. 13:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 14:

Produce all documents concerning the annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each of defendant's ASIC Products.

- 14 -

Response to Document Request No. 14:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 15:

Produce all documents concerning the annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by defendant of defendant's ASIC Products, including how defendant defines each item of cost deducted from gross revenue to calculate gross and net profits.

Response to Document Request No. 15:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of

information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

## Document Request No. 16:

Produce all documents concerning the manufacture of each ASIC Product designed using an ASIC Method.

## Response to Document Request No. 16:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds

that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 17:

Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 17:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

- 17 -

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No.18:

Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 18:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

- 18 -

<u>Document Request No.19:</u>

Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

<u>Response to Document Request No. 19:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


<u>Document Request No. 20:</u>

Produce all documents concerning the validity of the patent-in-suit.

<u>Response to Document Request No. 20:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the

production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the invalidity of the patent in suit.

Document Request No. 21:

Produce all documents concerning the enforceability of the patent-in-suit.

Response to Document Request No. 21:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the enforceability of the patent in suit.

Document Request No. 22:

Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

Response to Document Request No. 22:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any documents responsive to this document request.

Document Request No. 23:

Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

Response to Document Request No. 23:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged document in response to this document request.

Document Request No. 24:

Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

<u>Response to Document Request No. 24:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

<u>Document Request No. 25:</u>

Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

<u>Response to Document Request No. 25:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 26:

Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 26:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.


Document Request No. 27:

Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

Response to Document Request No. 27:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 28:

Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the United States or elsewhere.

Response to Document Request No. 28:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, duplicative of previous document requests, is not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged patent applications, if any exist, that describe "ASIC Methods" practiced by the Defendant to the extent that these are not described in other documents produced by the Defendant.

Document Request No. 29:

Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

Response to Document Request No. 29:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant

designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 30:

Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

Response to Document Request No. 30:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. If Defendant determines to rely on an opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


## Document Request No. 31:

Produce all documents concerning any infringement of the patent-in-suit by anyone.

## Response to Document Request No. 31:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


## Document Request No. 32:

Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

## Response to Document Request No. 32:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 33:

Produce all documents concerning all proprietary or third party hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in the practice of an ASIC Method, including technical reference manuals, user manuals, installation manuals, training manuals, tutorials, overviews, summaries, advertising material, contracts, proposals, licenses, purchase agreements, indemnification agreements, and communications with third parties.

Response to Document Request No. 33:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement.  Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.  Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 34:

Produce all documents concerning the patent-in-suit.

Response to Document Request No. 34:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 35:

Produce all documents relating to any indemnification or other hold-harmless agreement given to you (or by you) with respect to the patent-in-suit.

Response to Document Request No. 35:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, is not reasonably calculated to lead to the discovery of admissible evidence, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 36:

Produce all documents identified or relied upon in response to Plaintiff's First Set of Interrogatories.

Response to Document Request No. 36:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control.

Document Request No. 37:

Produce all documents relied upon or referred to in preparing the response to the Complaint.

Response to Document Request No. 37:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

- 29 -

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 38:

Produce all documents concerning defendant's affirmative defense of laches.

Response to Document Request No. 38:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 39:

Produce all documents referring to plaintiff.

Response to Document Request No. 39:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, overbroad, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents, if any exist, relevant to the '432 patent or Ricoh design techniques to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 40:

Produce all documents relating to your first knowledge of the patent-in-suit.

Response to Document Request No. 40:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Dated: June 30 2003                    By: _____

                                       Francis DiGiovanni
                                       CONNOLLY BOVE LODGE & HUTZ LLP
                                       1220 Market Street, 10th Floor
                                       Wilmington, DE  19899-2207
                                       (302) 658-9141

                                       Christopher L. Kelley
                                       HOWREY SIMON ARNOLD & WHITE, LLP
                                       301 Ravenswood Avenue
                                       Menlo Park, CA  94025
                                       (650) 463-8100 (Telephone)
                                       (650) 463-8400 (Facsimile)

                                       Attorneys for Defendants
                                       AEROFLEX INCORPORATED,AMI
                                       SEMICONDUCTOR, INC., MATROX
                                       ELECTRONIC SYSTEMS, LTD., MATROX
                                       GRAPHICS INC., MATROX
                                       INTERNATIONAL CORP. and MATROX
                                       TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 30th day of June, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899

Gayle L. Jacob

EXHIBIT 26

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) ) ) | Civil Action No. 03-103-GMS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT MATROX INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox International Corp. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") First Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## GENERAL OBJECTIONS

1. Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

2. Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

3. Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by any other privilege or protection (other than by the attorney-client privilege or work product doctrine) afforded by state or federal law. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

4. Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is subject to any protective order, privacy interest, contractual

obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party. Without third party permission, Defendant will not provide such information unless required by the Court.

5.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.     Defendant objects to Ricoh's First Set of Document Requests as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant employees.

7.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendant, or refers to persons, entities, or events not known to Defendant, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.     Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information that related to an act in Canada which is not an infringing act within the scope of 35 U.S.C. §271.

12.    Defendant objects to Ricoh's First Set of Document Requests insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek a legal conclusion.

14.    Defendant objects to Ricoh's First Set of Document Requests, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Document Requests in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unreasonably cumulative, redundant, or duplicative of other Document Requests, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information from Defendant concerning the positions they will take at trial, on the grounds

that discovery in this action is in its earliest stages and Defendant cannot determine the positions they will take at trial without first having such discovery, nor without having a proper identification from Ricoh of its own claims and contentions as the plaintiff in this action. Defendant will provide such responses to such Document Requests at such time according to the schedule set by the Court in this action.

18.     Defendant objects to Ricoh's First Set of Document Requests to the extent that it is premature to the extent that it seeks Ricoh's contentions before substantial discovery has been completed in this action. Defendant reserve the right to supplement, amend, modify, correct, or change these Responses at the appropriate time to the extent that additional information becomes known.

19.     Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information or documents about products not made, used, offered for sale, or sold within the United States, and will not produce information or documents concerning such products.

## SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

1.     Defendant objects to Definition/Instruction 2 on the grounds that it is unduly burdensome, overbroad, and purports to impose obligations on Defendant far beyond those imposed by the Federal or Local Rules. To the extent that e-mail or other information stored in an electronic format is responsive to these Requests, Defendant will produce printouts of the e-mails or other information.

2.     Defendant object to Definition/Instruction 2 to the extent that it purports to require Defendant to produce the original of any document. Such a requirement would be unduly burdensome and improper to the extent that it purports to impose obligations on Defendant beyond those imposed by the Federal Rules or Local Rules. Defendant will produce copies of any responsive file folders or tabs except in specific circumstances agreed upon by the parties.

- 5 -

3.    Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "defendant" extends to any person or entity other than Defendant's present employees and agents.

4.    Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

5.    Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

7.    Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Response to Document Request No. 1:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks

- 6 -

detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 2:

With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Response to Document Request No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as overbroad and unduly burdensome on the basis that it seeks detailed discovery on subject matter and allegations irrelevant to the Defendant. Defendant

further objects to this document request on the grounds that Matrox International Corp. is not a Delaware corporation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any responsive documents.


Document Request No. 3:

Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

Response to Document Request No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 4:

Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 5:

Produce all documents concerning the conception, design, development, manufacture or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

Response to Document Request No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of

information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products n. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 6:

Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Response to Document Request No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will respond to this Document Request as the requested information becomes available and is analyzed.

Document Request No. 7:

Produce all patents and patent applications, whether U.S. or foreign, and whether issued, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.


Document Request No. 8:

Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 9:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

Response to Document Request No. 9:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 10:

Produce all documents concerning Synopsys Inc.

Response to Document Request No. 10:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 11:

Produce all documents concerning Build Gates, Build Gates Extreme ("BGE"),
Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any
other product of Cadence Design Systems, Inc., including any license and/or use thereof by
defendant.

Response to Document Request No. 11:

Defendant incorporates by reference its General and Specific Objections.  Defendant
further objects to this document request on the grounds that it is vague, unduly burdensome,
seeks discovery having no relationship to any infringement allegations made by Ricoh against
Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant
responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to
this document request.

Document Request No. 12:

Produce all documents concerning any cost savings (actual or potential) as a consequence
of licensing or using Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable
synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence
Design Systems, Inc.

Response to Document Request No. 12:

Defendant incorporates by reference its General and Specific Objections.  Defendant
further objects to this document request on the grounds that it is vague, unduly burdensome,
seeks discovery having no relationship to any infringement allegations made by Ricoh against
Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 13:

Produce all documents concerning Cadence Design Systems, Inc.

Response to Document Request No. 13:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 14:

Produce all documents concerning the annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each of defendant's ASIC Products.

Response to Document Request No. 14:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what

- 14 -

activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 15:

Produce all documents concerning the annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by defendant of defendant's ASIC Products, including how defendant defines each item of cost deducted from gross revenue to calculate gross and net profits.

Response to Document Request No. 15:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices

done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 16:

Produce all documents concerning the manufacture of each ASIC Product designed using an ASIC Method.

Response to Document Request No. 16:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 17:

Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 17:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No.18:

Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 18:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

## Document Request No.19:

Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

## Response to Document Request No. 19:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it

conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 20:

Produce all documents concerning the validity of the patent-in-suit.

Response to Document Request No. 20:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the invalidity of the patent in suit.

Document Request No. 21:

Produce all documents concerning the enforceability of the patent-in-suit.

Response to Document Request No. 21:

- 19 -

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged documents relevant to the enforceability of the patent in suit.

Document Request No. 22:

Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

Response to Document Request No. 22:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant is not aware of any documents responsive to this document request.

Document Request No. 23:

Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

<u>Response to Document Request No. 23:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce responsive non-privileged document in response to this document request.

<u>Document Request No. 24:</u>

Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

<u>Response to Document Request No. 24:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

<u>Document Request No. 25:</u>

Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 25:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 26:

Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 26:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.


Document Request No. 27:

Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

Response to Document Request No. 27:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.


Document Request No. 28:

Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the United States or elsewhere.

Response to Document Request No. 28:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, duplicative of previous document requests, is not reasonably calculated to lead to the discovery

of admissible evidence, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged patent applications, if any exist, that describe "ASIC Methods" practiced by the Defendant to the extent that these are not described in other documents produced by the Defendant.

Document Request No. 29:

Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

Response to Document Request No. 29:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 30:

Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

Response to Document Request No. 30:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. If Defendant determines to rely on an opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 31:

Produce all documents concerning any infringement of the patent-in-suit by anyone.

Response to Document Request No. 31:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.


Document Request No. 32:

Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

Response to Document Request No. 32:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.


Document Request No. 33:

Produce all documents concerning all proprietary or third party hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in the practice of an ASIC Method, including technical reference manuals, user manuals, installation manuals, training manuals, tutorials, overviews, summaries, advertising material, contracts, proposals, licenses, purchase agreements, indemnification agreements, and communications with third parties.

Response to Document Request No. 33:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant sells a large number of products. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that production is performed at facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 34:

Produce all documents concerning the patent-in-suit.

Response to Document Request No. 34:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

- 27 -

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 35:

Produce all documents relating to any indemnification or other hold-harmless agreement given to you (or by you) with respect to the patent-in-suit.

Response to Document Request No. 35:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, is not reasonably calculated to lead to the discovery of admissible evidence, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 36:

Produce all documents identified or relied upon in response to Plaintiff's First Set of Interrogatories.

Response to Document Request No. 36:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control.

Document Request No. 37:

Produce all documents relied upon or referred to in preparing the response to the Complaint.

Response to Document Request No. 37:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Document Request No. 38:

Produce all documents concerning defendant's affirmative defense of laches.

Response to Document Request No. 38:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 39:

Produce all documents referring to plaintiff.

Response to Document Request No. 39:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, overbroad, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents, if any exist, relevant to the '432 patent or Ricoh design techniques to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Document Request No. 40:

Produce all documents relating to your first knowledge of the patent-in-suit.

Response to Document Request No. 40:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is duplicative of other document

requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control, and are discoverable after a reasonable search.

Dated: June 30 2003                     By: _____

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Christopher L. Kelley
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 30th day of June, 2003 on the following via Federal Express:


Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899


Gayle D. Jacob

**EXHIBIT 27**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.,       )<br>                Plaintiff,   )<br>        v.             )<br><br>AEROFLEX INCORPORATED, AMI )<br>SEMICONDUCTOR, INC., MATROX )<br>ELECTRONIC SYSTEMS LTD., MATROX )<br>GRAPHICS INC., MATROX )<br>INTERNATIONAL CORP. and MATROX )<br>TECH, INC., )<br>               Defendants. )<br>                        ) | Civil Action No. 03-103-GMS |

## DEFENDANT MATROX TECH, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Tech, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") First Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## GENERAL OBJECTIONS

1.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the attorney-client privilege, including the impressions, conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their client, and/or any other applicable privilege. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

2.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by the work product doctrine, including the impressions, conclusions, opinions, legal research or theories of attorneys. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

3.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information protected by any other privilege or protection (other than by the attorney-client privilege or work product doctrine) afforded by state or federal law. Defendant will provide identification of any such privileged or protected documents in a forthcoming privileged document log. Any inadvertent production of documents that are subject to any such privilege or protection shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

4.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is subject to any protective order, privacy interest, contractual

obligation, non-disclosure agreement, confidentiality agreement or other such confidentiality obligation owed to any third party. Without third party permission, Defendant will not provide such information unless required by the Court.

5.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Defendant objects to Ricoh's First Set of Document Requests as overly broad and unduly burdensome to the extent that they seek information beyond what is available from a reasonable search of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of Defendant employees.

7.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek documents that are a matter of public record or are equally available or readily ascertainable by Ricoh from some other source.

8.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek information or the identification of documents that are not within the possession, custody, or control of Defendant, or refers to persons, entities, or events not known to Defendant, subjecting them to unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an obligation to discover information or materials from third parties or services who are equally accessible to Ricoh.

9.      Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to U.S. Patent No. 4,922,432 (the "'432 patent"), on the grounds that each such request for production is overly broad, unduly burdensome, and seeks the discovery of information that is not relevant to a claim or defense of any party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information concerning Defendant's processes that are not made, used, sold, offered for sale or imported into the United States.

11.    Defendant objects generally to Ricoh's First Set of Document Requests to the extent that they seek information that related to an act in Canada which is not an infringing act within the scope of 35 U.S.C. §271.

12.    Defendant objects to Ricoh's First Set of Document Requests insofar as they call for a construction of the claims of the '432 patent on the grounds that such requests are overly broad and premature; Ricoh has identified neither the accused products nor the asserted claims and the Court has not yet construed the claims of the '432 patent.

13.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they seek a legal conclusion.

14.    Defendant objects to Ricoh's First Set of Document Requests, including its Definitions and Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of Civil Procedure and the Local Rules of the District Court of Delaware and/or other applicable law.  Defendant will respond to Ricoh's First Set of Document Requests in accordance with the Federal Rules of Civil Procedure, the Local Rules of the District Court of Delaware and/or other applicable law.

15.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are compound and contain unrelated subparts in violation of Rule 33(a) of the Federal Rules.

16.    Defendant objects to Ricoh's First Set of Document Requests to the extent that they are unreasonably cumulative, redundant, or duplicative of other Document Requests, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

17.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information from Defendant concerning the positions they will take at trial, on the grounds

that discovery in this action is in its earliest stages and Defendant cannot determine the positions they will take at trial without first having such discovery, nor without having a proper identification from Ricoh of its own claims and contentions as the plaintiff in this action. Defendant will provide such responses to such Document Requests at such time according to the schedule set by the Court in this action.

18.    Defendant objects to Ricoh's First Set of Document Requests to the extent that it is premature to the extent that it seeks Ricoh's contentions before substantial discovery has been completed in this action.  Defendant reserve the right to supplement, amend, modify, correct, or change these Responses at the appropriate time to the extent that additional information becomes known.

19.    Defendant objects to Ricoh's First Set of Document Requests to the extent they seek information or documents about products not made, used, offered for sale, or sold within the United States, and will not produce information or documents concerning such products.

**SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS**

1.    Defendant objects to Definition/Instruction 2 on the grounds that it is unduly burdensome, overbroad, and purports to impose obligations on Defendant far beyond those imposed by the Federal or Local Rules.  To the extent that e-mail or other information stored in an electronic format is responsive to these Requests, Defendant will produce printouts of the e-mails or other information.

2.    Defendant object to Definition/Instruction 2 to the extent that it purports to require Defendant to produce the original of any document.  Such a requirement would be unduly burdensome and improper to the extent that it purports to impose obligations on Defendant beyond those imposed by the Federal Rules or Local Rules.  Defendant will produce copies of any responsive file folders or tabs except in specific circumstances agreed upon by the parties.

- 5 -

3.    Defendant objects to Ricoh's Definition/Instruction 5 to the extent that the term "Defendant" extends to any person or entity other than Defendant's present employees and agents.

4.    Defendant objects to Ricoh's Definition/Instruction 11 to the extent that it purports to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

5.    Defendant objects to Ricoh's Definition/Instruction 14 to the extent that the definition of "ASIC" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Defendant objects to Ricoh's Definition/Instruction 15 to the extent that the definition of "ASIC PRODUCT" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

7.    Defendant objects to Ricoh's Definition/Instruction 16 to the extent that the definition of "ASIC Method" is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents concerning defendant's corporate structure including, but not limited to, the existence of related companies, subsidiaries, divisions, affiliates, teams, organizations, etc. and the legal and business relationships between such entities.

Response to Document Request No. 1:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks

detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 2:

With respect to those defendants which have denied personal jurisdiction, produce all documents concerning any and all of those defendants' contacts with Delaware or any entity in Delaware, including but not limited to any ownership (including stock, leasehold or other) interest in any entity or property (real or personal), interest of any type in bank accounts of any nature, solicitation of any business, provision of or sales of any goods and/or services to any entity within Delaware, the presence for any length of time of an employee, officer, agent and/or representative in connection with defendant's business or interests, the nature of any degree of control or supervision or oversight in Matrox International Corp. or any other entity in Delaware, the nature of any degree of control or supervision or oversight in defendant by Matrox International Corp. or any other entity in Delaware, and involvement of any type in research and development, design, manufacturing, testing, sales or marketing of an ASIC product by or for Matrox International Corp. or any other entity in Delaware, as well as any documents concerning communication with any parent, subsidiary, division or affiliate relating to an ASIC Product or ASIC Method.

Response to Document Request No. 2:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as overbroad and unduly burdensome on the basis that it seeks detailed discovery on subject matter and allegations irrelevant to the Defendant. Defendant

further objects to this document request on the grounds that Matrox International Corp. is not a Delaware corporation.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 3:

Produce all documents concerning each of defendant's ASIC Products, including, but not limited to, advertising literature, instruction sheets and commercial packaging.

Response to Document Request No. 3:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs over 300 personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 4:

Produce all documents concerning ASIC Methods performed by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 4:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 5:

Produce all documents concerning the conception, design, development, manufacture or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

Response to Document Request No. 5:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 6:

Produce all prior art of any kind of which defendant is aware and which defendant deems pertinent in any way to the alleged invention described and claimed in the patent-in-suit.

Response to Document Request No. 6:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 7:

Produce all patents and patent applications, whether U.S. or foreign, and whether issued, pending or abandoned, which at any time were owned or controlled by defendant and concern an ASIC Method used by, on behalf of, or otherwise under the direction of defendant.

Response to Document Request No. 7:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 8:

Produce all documents concerning Design Compiler and/or any other product of Synopsys Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 8:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome,

seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 9:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Design Compiler and/or any other product of Synopsys Inc.

Response to Document Request No. 9:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 10:

Produce all documents concerning Synopsys Inc.

Response to Document Request No. 10:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 11:

Produce all documents concerning Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc., including any license and/or use thereof by defendant.

Response to Document Request No. 11:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 12:

Produce all documents concerning any cost savings (actual or potential) as a consequence of licensing or using Build Gates, Build Gates Extreme ("BGE"), Physically knowledgeable synthesis (PKS), Ambit Synthesis, SoC ENCOUNTER and/or any other product of Cadence Design Systems, Inc.

Response to Document Request No. 12:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 13:

Produce all documents concerning Cadence Design Systems, Inc.

Response to Document Request No. 13:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 14:

Produce all documents concerning the annual dollar and unit volume of sales and/or sales projections in (a) the United States and (b) elsewhere, by defendant of each of defendant's ASIC Products.

Response to Document Request No. 14:

     Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

     Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

     Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 15:

     Produce all documents concerning the annual gross profits (gross receipts less cost of goods sold before allowance for operating expenses and taxes) and net profit (gross profit less other cost items) from sales in (a) the United States and (b) elsewhere, by defendant of defendant's ASIC Products, including how defendant defines each item of cost deducted from gross revenue to calculate gross and net profits.

Response to Document Request No. 15:

     Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant

designs and manufactures a large number of products and employs over 300 personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 16:

Produce all documents concerning the manufacture of each ASIC Product designed using an ASIC Method.

Response to Document Request No. 16:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs over 300 personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to

Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further object to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 17:

Produce all documents concerning the sale by defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 17:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs over 300 personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further object to this document request as duplicative of previous document requests.

- 17 -

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No.18:

Produce all documents concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method.

Response to Document Request No. 18:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant designs and manufactures a large number of products and employs over 300 personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement.  Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.  Defendant further object to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No.19:

Produce all documents concerning the marketing by or for defendant of defendant's ASIC Products.

Response to Document Request No. 19:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs over 300 personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further object to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 20:

Produce all documents concerning the validity of the patent-in-suit.

Response to Document Request No. 20:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the

production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 21:

Produce all documents concerning the enforceability of the patent-in-suit.

Response to Document Request No. 21:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 22:

Produce all documents concerning the infringement or possibility of infringement by defendant of the patent-in-suit.

Response to Document Request No. 22:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 23:

Produce all documents that constitute or concern prior art, prior use, prior publications, prior knowledge, prior offers to sell or prior sale relating to the patent-in-suit.

Response to Document Request No. 23:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is unduly burdensome, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 24:

Produce all documents concerning communications between defendant and any other person or entity concerning the patent-in-suit.

- 21 -

Response to Document Request No. 24:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 25:

Produce all documents concerning all materials presented to the Board of Directors of defendant and all agendas or notes of Board meetings which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 25:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 26:

Produce all documents concerning all materials presented to any of defendant's personnel having managerial responsibility and all agendas or notes of meetings involving such

personnel which refer to, mention or discuss the patent-in-suit or any possible infringement thereof.

Response to Document Request No. 26:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 27:

Produce all documents concerning defendant's policies regarding the retention or destruction of documents.

Response to Document Request No. 27:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 28:

Produce all pending patent applications concerning any ASIC Method including any documents filed in connection with such applications, by defendant or as to which defendant has any rights, in the United States or elsewhere.

Response to Document Request No. 28:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, duplicative of previous document requests, is not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 29:

Produce all documents concerning any examinations, tests, studies, etc. conducted by or for defendant on or with respect to any ASIC Method identified in response to any interrogatory.

Response to Document Request No. 29:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs over 300 personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its

- 24 -

production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further objects to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 30:

Produce all documents concerning any analysis of the patent-in-suit or of the alleged infringement or invalidity thereof, by anyone.

Response to Document Request No. 30:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. If Defendant determines to rely on an opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 31:

Produce all documents concerning any infringement of the patent-in-suit by anyone.

<u>Response to Document Request No. 31:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

<u>Document Request No. 32:</u>

Produce all documents concerning conversations, communications, correspondence, discussions or meetings concerning the patent-in-suit.

<u>Response to Document Request No. 32:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

<u>Document Request No. 33:</u>

Produce all documents concerning all proprietary or third party hardware and/or software used by, on behalf of, or otherwise under the direction of defendant in the practice of an ASIC

Method, including technical reference manuals, user manuals, installation manuals, training manuals, tutorials, overviews, summaries, advertising material, contracts, proposals, licenses, purchase agreements, indemnification agreements, and communications with third parties.

Response to Document Request No. 33:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant designs and manufactures a large number of products and employs over 300 personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent. Defendant further object to this document request as duplicative of previous document requests.

Subject to, and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 34:

Produce all documents concerning the patent-in-suit.

Response to Document Request No. 34:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly

burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 35:

Produce all documents relating to any indemnification or other hold-harmless agreement given to you (or by you) with respect to the patent-in-suit.

Response to Document Request No. 35:

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, seeks discovery having no relationship to any infringement allegations made by Ricoh against Defendant, is not reasonably calculated to lead to the discovery of admissible evidence, calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, improperly and prematurely calls for the construction of the claims of the patent-in-suit, calls for a legal conclusion, and constitutes premature contention discovery.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Document Request No. 36:

Produce all documents identified or relied upon in response to Plaintiff's First Set of Interrogatories.

<u>Response to Document Request No. 36:</u>

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

<u>Document Request No. 37:</u>

Produce all documents relied upon or referred to in preparing the response to the Complaint.

<u>Response to Document Request No. 37:</u>

Defendant incorporates by reference its General and Specific Objections.  Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

<u>Document Request No. 38:</u>

Produce all documents concerning defendant's affirmative defense of laches.

<u>Response to Document Request No. 38:</u>

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce non-privileged documents that are responsive to this document request, to the extent such records currently exist within Defendant's possession, custody or control.

Document Request No. 39:

Produce all documents referring to plaintiff.

Response to Document Request No. 39:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is vague and ambiguous, overbroad, unduly burdensome, is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.

Document Request No. 40:

Produce all documents relating to your first knowledge of the patent-in-suit.

Response to Document Request No. 40:

Defendant incorporates by reference its General and Specific Objections. Defendant further objects to this document request on the grounds that it is duplicative of other document requests, and calls for the production of documents and information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant has ceased operations and no longer has any documents in its direct possession, custody, or control.


Dated:  June 30 2003                          By:_____

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Christopher L. Kelley
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT MATROX TECH, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 30th day of June, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899

Gayle L. Jacob

EXHIBIT 28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICOH COMPANY, LTD., ) | **Case No.  CV 03-04669 MJJ** |
| Plaintiff, ) | |
| ) | **DECLARATION OF PAUL KELLEY** |
| vs. ) | |
| AEROFLEX INCORPORATED, et al., ) | |
| Defendants. ) | |

I, Paul Kelley, hereby declare as follows:

1.    I am at least 18 years of age.

2.    I am employed in the law firm of Dickstein Shapiro Morin and Oshinsky, LLP, attorneys for the Plaintiff Ricoh Company, Ltd. ("Ricoh").  The matters set forth in this declaration are based upon my personal knowledge and, except where otherwise indicated, and if called as a witness, I could and would testify competently thereto.

3.    I work as part of the Management information systems/Automated Litigation Support department, where I provide computer consulting services and software support.

4.    I received fifteen compact discs, Marked DEF22808-22822 and attempted to access the contents of the files on these discs. There was no information accompanying these discs, nor information on the discs, identifying the contents of the files, the file formats, or how to access the files.  I tried opening and/or viewing the files using several different software applications to, but, to no avail.  I also unsuccessfully tried to view the contents of the files using several different software file viewers. In my opinion, trying to convert these files without proper instructions may cause damage to the existing files. These discs are unreadable as sent.

I declare under penalty of perjury under the laws of the United States of America that the

1   foregoing is true and correct.  This declaration was executed in Washington, DC on November

2   10, 2003.

3

4                                                                    _____

5                                                                    Paul Kelley

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28