1  Gary M. Hoffman (*Pro Hac Vice*)
   Kenneth W. Brothers(*Pro Hac Vice*)
2  DICKSTEIN SHAPIRO MORIN
     & OSHINSKY, LLP
3  2101 L Street, NW
   Washington, DC  20037-1526
4  Phone (202) 785-9700
   Fax (202) 887-0689
5
   Edward A. Meilman (*Pro Hac Vice*)
6  DICKSTEIN SHAPIRO MORIN
     & OSHINSKY, LLP
7  1177 Avenue of the Americas
   New York, New York  10036-2714
8  Phone (212) 835-1400
   Fax (212) 997-9880
9
   Jeffrey B. Demain, State Bar No. 126715
10 Jonathan Weissglass, State Bar No. 185008
   ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
11 177 Post Street, Suite 300
   San Francisco, California  94108
12 Phone  (415) 421-7151
   Fax (415) 362-8064
13
   Attorneys for Ricoh Company, Ltd.
14

15               UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
16                SAN FRANCISCO DIVISION

17

18  _____
    RICOH COMPANY, LTD.,                )   CASE NO. CV -4669-MJJ
19                                      )
                   Plaintiff,           )   **DECLARATION OF EDWARD A.**
20                                      )   **MEILMAN IN SUPPORT OF RICOH'S**
          vs.                           )   **OBJECTIONS TO DEFENDANTS' MOTION**
21                                      )   **TO CONTINUE RICOH'S DISCOVERY**
    AEROFLEX INCORPORATED, et al.,      )   **MOTIONS, AND RESPONSE TO MOTION**
22                                      )   **TO SHORTEN TIME FOR HEARING ON**
                   Defendants.          )   **MOTION TO STAY**
23                                      )
                                        )   **Date:  Not Set**
24                                      )   **Time: Not Set**
                                        )   **Courtroom: 11**
25  _____ )

26

27        Edward A. Meilman declares as follows:

28

DECLARATION OF EDWARD A. MEILMAN IN SUPPORT OF RICOH'S OBJECTIONS TO DEFENDANTS' MOTION TO CONTINUE RICOH'S
DISCOVERY MOTIONS, AND RESPONSE TO MOTION TO SHORTEN TIME FOR HEARING ON MOTION TO STAY

1.      I am an attorney at law licensed to practice in the State of New York and admitted in this case *pro hac vice*, and am a partner in the law firm of Dickstein Shapiro Morin & Oshinsky, LLP, attorneys for plaintiff Ricoh Company, Ltd.  The matters set forth in this declaration are based on my personal knowledge, except where indicated, and if called as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the May 30, 2003 Scheduling Order in the above captioned action.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the June 12, 2003 motion to stay filed by the defendants in the above captioned action.

4.      There have been a number of "meet and confer" held between counsel for the parties relating to Ricoh's discovery requests which are the subject of the current motion to compel and which have been outstanding for more than six (6) months.  Some of those occurred before the two (2) hour conference held by United States District Court Judge Sleet of the District of Delaware (where this action was pending prior to its transfer here) on August 28, 2003, as required by the local rules of that court.  At that hearing, Judge Sleet ordered that the parties consult and resolve their differences concerning the discovery no later than September 5, 2003 and produce documents by mid-September. Attached hereto as Exhibit 3 is a true and correct copy of pages 60-61 of the hearing transcript.

5.      Subsequent to Judge Sleet's August 28, 2003 direction, I had no less than three (3) telephone conferences with defendants' counsel relating to the discovery disputes and sent no less than four (4) letters to defendants' counsel relating to the discovery dispute.  Attached hereto as Exhibit 4 are true and correct copies my letters of August 28, 2003, September 10, 2003, and September 12, 2003. The discovery dispute remains unresolved today and I respectfully submit that the efforts made to resolve it without court intervention satisfy the meet and confer requirements of this Court.

6.      Ricoh noticed Rule 30(b)(6) depositions of each of the defendants.  On the eve of those depositions, counsel for the defendants stated they had not identified the personnel to produce witnesses

to testify, would do so in the future and cancelled the depositions. After three additional weeks of silence, I sent a reminder on October 23, 2003, a true copy of which is attached hereto as Exhibit 5, but received no response from defendants on this topic. Finally, at a conference between counsel on November 13, 2003, defendants stated they would not determine who should testify on their behalf until after this Court ruled on their motion to stay. Attached hereto as Exhibit 6 is a true copy of a letter I received on November 13, 2003 confirming that statement on page 2.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Signed at New York, NY on November 17, 2003.

Edward A. Meilman

EXHIBIT 1



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT Of DELAWARE

RICOH COMPANY, LTD.                    )
                                       )
    Plaintiff,                     )
                                       )
    v.                             )   C.A. No.03-103-GMS
                                       )
AEROFLEX INCORPORATED, AMI             )
SEMICONDUCTOR, INC., MATROX            )
ELECTRONIC SYSTEMS LTD.,               )
MATROX GRAPHICS INC., MATROX           )
INTERNATIONAL CORP. and                )
MATROX TECH, INC.                      )
                                       )
    Defendants.                    )

**RECEIVED**

MAY 3 0 2003

Robert W. Whetzel

FILED

MAY 3 0 2003

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## SCHEDULING ORDER

This 30th day of _____May_____ 2003, the Court having conducted an initial

Rule 16 scheduling and planning conference pursuant to Local Rule 16.2(b) on May 16, 2003,

and the parties having determined after discussion that the matter cannot be resolved at this

juncture by settlement, voluntary mediation or binding arbitration;

IT IS ORDERED that:

1.   **Rule 26(a) Initial Disclosures.**  Unless otherwise agreed to by the parties, they

shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a) on or before

May 30, 2003.

2.   **Joinder of other Parties and Amendment of Pleadings.**  All motions to join

other parties and amend the pleadings shall be filed on or before July 30, 2003.

3.   **Reliance Upon Advice of Counsel.**  Defendants shall inform plaintiff whether

they intend to rely upon advice of counsel as a defense to willful infringement no later than

December 9, 2003. If defendants elect to rely on advice of counsel as a defense to willful infringement, defendants shall produce any such opinions on which defendants intend to rely to plaintiff no later than December 19, 2003.

    4.    **_Markman_ Claim Construction Hearing**. A _Markman_ claim construction hearing shall be held on March 2, 2004 at 9:30 a.m. The _Markman_ hearing is scheduled for a total of not more than 1 day. The parties shall meet and confer regarding narrowing and reducing the number of claim construction issues no later than January 5, 2004 and shall exchange initial claim charts no later than January 12, 2004. On or before January 20, 2004, the parties shall submit a final joint claim chart which shall include citations to intrinsic evidence. The parties shall exchange opening claim construction briefs on January 23, 2004, and the answering claim construction briefs on February 6, 2004.

    5.    **Discovery**. All fact discovery in this case shall be initiated so that it will be completed on or before January 9, 2004. Opening expert reports shall be exchanged on March 22, 2004 and rebuttal expert reports shall be exchanged on April 23, 2004. Expert Discovery in this case shall be initiated so that it will be completed on or before June 23, 2004. The total time allowed for depositions shall be 240 hours per side, excluding expert discovery, unless extended by agreement of the parties.

    a.    **Discovery Disputes**. Should counsel find they are unable to resolve a discovery dispute, the party seeking the relief shall contact chambers at (302) 573-6470 to schedule a telephone conference. Not less than forty-eight hours prior to the conference, by hand delivery or facsimile at (302) 573-6472, the party seeking relief shall file with the Court a letter agenda not to exceed two (2) pages outlining the issues in dispute. Should the Court find further

briefing necessary upon conclusion of the telephone conference, the Court shall order the party seeking relief to file with the Court a **TWO PAGE LETTER**, exclusive of exhibits, describing the issues in contention. The responding party shall file within five (5) days from the date of service of the opening letter an answering letter of no more than **TWO PAGES**. The party seeking relief may then file a reply letter of no more than **TWO PAGES** within three (3) days from the date of service of the answering letter.

6.      **Confidential Information and Papers filed under Seal.** Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, they should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court within 10 days from the date of this order. When filing papers under seal, counsel should deliver to the Clerk an original and two copies of the papers.

**If after making a diligent effort the parties are unable to agree on the contents of the joint proposed protective order, then they shall follow the dispute resolution process outlined in paragraph 5(a).**

7.      **Settlement Conference.** Pursuant to 28 U. S.C. §636, this matter is referred to the United States Magistrate for the purpose of exploring the possibility of a settlement. If the parties agree that the possibility of settlement may be enhanced by such referral, the parties shall contact Magistrate Judge Thynge to schedule a settlement conference with counsel and clients.

8.      **Summary Judgment Motions.** Prior to filing any summary judgment motion, the parties must submit letter briefs seeking permission to file the motion. The opening letter brief shall be no longer than five (5) pages and shall be filed with the Court no later than

February 12, 2004. Answering letter briefs shall be no longer than five (5) pages and filed with the Court no later than February 27, 2004. Reply letter briefs shall be no longer than three (3) pages and filed with the Court on or before March 8, 2004. The Court shall hold a status conference to hear argument and to determine whether the filing of any motion will be permitted on March 23, 2004 at 11:00 a.m. **Unless the Court directs otherwise, no letter requests to file a motion for summary judgment may be filed at a time before the dates set forth in paragraph 8.**

9. **Case Dispositive Motions.** Should the Court permit the filing of summary judgment motions an opening brief and affidavits, if any, in support of the motion shall be served and filed on or before April 2, 2004. Parties must submit an original and two (2) copies. Briefing will be presented pursuant to the Court's Local Rules, unless the parties agree to an alternative briefing schedule. Any such agreement shall be in writing and filed with the Court for approval.

10. **Applications by Motion.** Except as provided in this Order or for matters relating to scheduling, any application to the Court shall be by written -motion filed with the Clerk. Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to Chambers. Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

11. **Oral Argument.** If the Court believes that oral argument is necessary, the Court will schedule a hearing Pursuant to Local Rule 7.1.4.

12. **Status/Daubert Conference.** On or before June 30, 2004, the parties shall meet and confer on any Daubert issues and motion in limine issues that any party wants to raise. On or before July 2, 2004, the parties shall submit a joint agenda identifying any Daubert issues that the

parties intend to raise. The Court will hold a telephone conference on July 7, 2004 at 11:00 a.m. to discuss Daubert issues identified in the joint agenda.

13. **Pretrial Conference.** On September 13, 2004, the Court will hold a Pretrial Conference in Chambers with counsel beginning at 9:30 a.m. Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement in Federal Rule of Civil Procedure 26(a)(3). Thirty (30) days before the joint proposed pretrial order is due, plaintiff's counsel shall forward to defendants' counsel a draft of the pretrial order containing the information plaintiff proposes to include in the draft. Defendants' counsel shall, in turn, provide to plaintiff's counsel any comments on the plaintiff's draft as well as the information defendants propose to include in the proposed pretrial order. *Motions in limine*: No party shall file more than ten (10) motions in limine. Briefs (opening, answering and reply) on all motions *in limine* shall be filed by August 6, 2004. Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages. The parties shall file with the Court the joint proposed final pretrial order with the information required by the form of Final Pretrial Order which accompanies this Scheduling Order on or before August 16, 2004.

14. **Trial.** This matter is scheduled for a seven day jury trial beginning at 9:00 a.m. on October 12, 2004.

15. **Scheduling.** The parties shall direct any requests or questions regarding the scheduling and management of this matter to Chambers at (302) 573-6470.

UNITED STATES DISTRICT JUDGE

**EXHIBIT 2**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY LTD.,        ) <br> ) <br> Plaintiff,        ) <br> v.                     ) <br> ) <br> AEROFLEX, INC., ET AL.,    ) <br> ) <br> Defendants.       ) <br> ) <br> ) | Civil Action No. 03-0103-GMS |

## DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER VENUE

Defendants hereby move this Court for an Order staying the captioned action pending the outcome of the case of *Synopsys, Inc. v. Ricoh Company, Ltd.*, No. C03 02289 (N.D. Cal.), for the reasons set forth in the accompanying Brief;

Defendants further move this Court, in the alternative, for an Order pursuant to 28 U.S.C. § 1404 transferring this case to the Northern District of California for consolidation with *Synopsys, Inc. v. Ricoh Company, Ltd.*, No. C03 02289 (N.D. Cal.), for the reasons set forth in the accompanying Brief.

Attached is a Statement Pursuant to Local Rule 7.1.1 confirming that the parties were unable to reach agreement with regard to the relief sought. Also attached is a proposed Order implementing the primary relief sought.

Dated: June 12, 2003

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
Telephone: (302) 658-9141

Teresa M. Corbin
Christopher L. Kelley
Matthew E. Hocker
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
Telephone: (650) 463-8100

COUNSEL FOR DEFENDANTS

270797v1

## STATEMENT PURSUANT TO LOCAL RULE 7.1.1

I, Francis DiGiovanni, Esq., an attorney for all of the defendants in this case, hereby state that the parties have attempted to reach an agreement on the matters set forth in Defendants' Motion to Stay, or in the Alternative, Transfer, by communications among counsel on June 12, 2003. Specifically, I conferred with Steven J. Fineman, Esq., an attorney for plaintiff, and Mr. Fineman informed me that plaintiff would oppose defendants' motion to stay or transfer.

Date:  June 12, 2003

Francis DiGiovanni (#3189)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY LTD., <br><br> Plaintiff, <br><br> v. <br><br> AEROFLEX, INC., ET AL., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )   **Civil Action No. 03-0103-GMS** <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Stay or, in the Alternative, Transfer Venue, and the briefs and arguments submitted thereon,

IT IS HEREBY ORDERED that this case is stayed pending the outcome of the case of *Synopsys, Inc. v. Ricoh Company, Ltd.*, No. C03 02289 (N.D. Cal.).

SO ORDERED this _____ day of _____, 2003.

_____
United States District Judge

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

**FEDERAL EXPRESS**
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526

**VIA FEDERAL EXPRESS**
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, N.Y.  10036-2714

Francis DiGiovanni (#3189)

265624

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **RICOH COMPANY LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**AEROFLEX, INC., ET AL.,**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 03-0103-GMS**<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER VENUE

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
Telephone: (302) 888-6316

Teresa M. Corbin
Christopher L. Kelley
Matthew E. Hocker
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
Telephone: (650) 463-8100

COUNSEL FOR DEFENDANTS

Dated: June 12, 2003

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................1

II.   SUMMARY OF ARGUMENT ...........................................................................1

      A.    The Court Should Stay The Present Action ............................................2

      B.    The Court Should Transfer The Present Action to the
            Northern District of California for Consolidation with the
            Synopsys Case.........................................................................................3

III.  FACTUAL BACKGROUND ...............................................................................6

IV.   ARGUMENT ........................................................................................................9

      A.    As a suit against Synopsys' customers, this litigation should
            be stayed pending the outcome of the California *Synopsys*
            case........................................................................................................10

      B.    Since "forum shopping" alone motivated Ricoh's selection
            of Delaware, this litigation should be stayed pending the
            outcome of the California Synopsys case. ............................................13

      C.    If not stayed, this litigation should be transferred to the
            Northern District of California pursuant to 28 U.S.C. §
            1404.......................................................................................................13

            1.    Ricoh could have brought this litigation in the
                  Northern District of California..................................................15

            2.    The balance of convenience factors strongly favors
                  transfer to the Northern District of California. .......................15

V.    CONCLUSION...................................................................................................20

TABLE OF AUTHORITIES

<u>Cases</u>

*Affymetrix, Inc. v. Synteni, Inc.,*
  28 F. Supp. 2d 192 (D. Del. 1998. ............................................................... 14, 15, 17, 19

*Allergan, Inc. v. Alcon Labs., Inc.,*
  2003 U.S. Dist. LEXIS 2564
  (D. Del. Feb. 25, 2003) (C.A. No. 02-1682-GMS) ........................................ 15

*AT&T Corp. v. Public Serv. Enters. Of Pa., Inc.,*
  2000 U.S. Dist. LEXIS 4649 (E.D. Pa. 2000) (C.A. No. 99-4975) .............. 11

*ATSPI, Inc. v. Sharper Image, Inc.,*
  677 F. Supp. 842 (W.D. Pa. 1988) ................................................................. 12

*Crawford v. West Jersey Health Sys.,*
  847 F. Supp. 1232 (D.N.J. 1994) ................................................................... 11

*Crosley Corp. v. Hazeltine Corp.,*
  122 F.2d 925 (3d Cir. 1941),
  *cert. denied,* 315 U.S. 813, 86 L. Ed. 1211, 62 S. Ct. 798 (1942) .............. 11

*E.E.O.C. v. University of Pennsylvania,*
  850 F.2d 969 (3d Cir. 1988),
  *aff'd,* 493 U.S. 182 (1990) ........................................................................... 10, 11

*GPAC, Inc. v. D.W.W. Enters., Inc.,*
  144 F.R.D. 60 (D.N.J. 1992) .......................................................................... 11

*IKOS Systems, Inc. v. Cadence Design Systems, Inc.,*
  2002 U.S. Dist. LEXIS 20574,
   (D. Del. 2002 (C.A. No. 02-1335-GMS) ...................................................... 5, 15, 19

*Intel Corp. v. ULSI Corp.,*
  995 F.2d 1566 (Fed. Cir. 1993) ...................................................................... 12

*Jumara v. State Farm Insurance Co.,*
  55 F.3d 873 (3rd Cir. 1995) ........................................................................... 14, 15, 16

*Kahn v. General Motors Corp.,*
  889 F.2d 1078 (Fed. Cir. 1989) ...................................................................... 3, 11, 13

*Katz v. Lear Siegler, Inc.,*
  909 F.2d 1459 (Fed. Cir. 1990) ...................................................................... 3, 11

*Landis v. North American Co.,*
  229 U.S. 248 (1936) ....................................................................................... 10

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,*
  77 F. Supp. 2d 505 (D. Del. 1999) ................................................................ 16, 17, 19

*Panavision Int'l, L.P. v. Toeppen,*
  141 F.3d 1316 (9th Cir. 1998) ....................................................................... 15

*Refac International, Ltd., v. IBM,*
 790 F.2d 79, *aff'd on reconsideration in relevant part by* 798 F.2d 459 (Fed. Cir. 1986)
 ........................................................................................................................... 12

*Remington Rand Corporation v. Business Systems, Inc.,*
 830 F.2d 1274 (3d Cir. 1987) ...................................................................... 10

*Whelen Technologies, Inc. v. Mill Specialties, Inc.,*
 741 F. Supp. 715 (N.D. Ill. 1990) .............................................................. 12

*William Gluckin & Co. v. International Playtex Corp.,*
 407 F.2d 177 (2d Cir. 1969) ........................................................................ 11

<u>Statutes</u>

28 U.S.C. § 1391 ........................................................................................... 15

28 U.S.C. § 1400 ........................................................................................... 15

28 U.S.C. § 1404 .................................................................................... passim

## I.    NATURE AND STAGE OF PROCEEDINGS

On January 21, 2003, Ricoh Company Ltd. ("Ricoh") filed this patent infringement suit against Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech, Inc. ("Matrox Tech") (collectively "Defendants").  Ricoh alleges that each of the Defendants infringes its U.S. Patent No. 4,922,432 (the "'432 patent") by "using, offering to sell, and/or by selling and/or importing into the United States application specific integrated circuits designed by or using information generated by, the process" described in the '432 patent.

The Defendants hereby move the Court to stay this action or, in the alternative, to transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404.

## II.    SUMMARY OF ARGUMENT

In this litigation, Ricoh, a company with virtually no connection with Delaware, has sued six companies, also with virtually no connection with Delaware, for patent infringement involving complex logic synthesis technology.  It cannot be disputed that Ricoh has brought this suit in a district in which:

1.    none of the parties has its principal place of business;

2.    none of the inventors reside;

3.    none of the inventions were made.

4.    no potential witness for any party resides;

5.    neither party maintains a facility;

6.    no documents of the parties are maintained in the regular course of business;

1

7.  no research, development or manufacturing of the accused products has ever taken place; and

8.  none of the relevant third-party testimony or documents related to prior art exists.

Furthermore, Synopsys, Inc. ("Synopsys"), the real target in this patent infringement litigation, has filed suit in the more appropriate forum of the Northern District of California seeking declaratory judgment that the '432 patent is invalid and its Synopsys' Design Compiler product does not infringe the '432 patent ("Synopsys case"). Because resolution of the Synopsys case will resolve all issues in this litigation, and because the Northern District of California is a more convenient forum for litigation of the relevant issues in the present case, this action should be stayed pending the resolution of the Synopsys case.

In the alternative, the Court should transfer this action to the Northern District of California for consolidation with the Synopsys case because of (1) the grave injustice that would result in forcing Defendants to litigate in a forum where numerous third-party witnesses necessary to their defense are not subject to the subpoena power of the court and (2) the substantial savings of judicial and party resources that would result.

**A.    The Court Should Stay The Present Action**

Although Synopsys is not named as a defendant in the present case, it is the real target of Ricoh's patent infringement allegations.  Ricoh has indicated, in several different statements made by its counsel, that its infringement allegations are based on Defendants' use of Synopsys' Design Compiler software as part of their engineering processes.  In a declaratory judgment action filed May 15, 2003 in the Northern District of California, Synopsys has sought a determination that Design Compiler does not, in

2

fact, infringe the patent that is the basis of Ricoh's suit here in Delaware.[1]  *See* Ex. A. to Declaration of Erik K. Moller ("Moller Decl.").[2]  Synopsys' declaratory judgment action will inevitably resolve the dispute between Ricoh and Synopsys' customers: either Synopsys will prevail and use of Design Compiler will be determined to be non-infringing or Ricoh will prevail and Synopsys will be forced to pay damages or take a license to the Ricoh patent, in which case Synopsys' customers will be immunized from liability under the doctrine of "patent exhaustion."

Litigation against or brought by a manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.  *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  This is especially true where, as here, plaintiff's choice of venue was dictated by forum shopping in a blatant attempt to select a venue where critical third party witnesses for the defense are not subject to the subpoena power of the Court in plaintiff's selected forum.  *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  Defendants, therefore, request that the current action be stayed, pending resolution of the underlying patent dispute in the Northern District.

**B.    The Court Should Transfer The Present Action to the Northern District of California for Consolidation with the Synopsys Case.**

In the alternative, Defendants request that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404 for consolidation with the

---

[1]  Defendants originally intended to file this motion soon after filing the complaint in the Synopsys case.  However, filing this motion was delayed by Ricoh's counsel's refusal to accept service of process of the summons and complaint in the Synopsys case and by Ricoh's officers avoidance of acceptance of service.  *See* Moller Decl. at ¶¶3-4.

[2]  Referenced exhibits are attached to the Moller Decl. unless otherwise indicated.

Synopsys case.  Ricoh could have brought this case in the Northern District, and the dispute between Ricoh and Synopsys is more closely tied to events and persons in California than it is to Delaware. No acts of infringement are alleged to have taken place in Delaware.  None of the parties or relevant third party witnesses has a substantial presence in Delaware.  Numerous third parties critical to Defendants' case and their defenses of noninfringement, invalidity and equitable estoppel are resident in the Northern District of California and are outside the subpoena power of this Court.

California's interest in the suit arises from the fact that Synopsys and Knowledge Based Silicon Corporation ("KBSC"), a former assignee of the '432 patent, have an earlier history of dealings that took place in California.  Synopsys' complaint contends that KBSC, an assignee of the Kobayashi patents, originally approached Synopsys to demand that it license these patents in 1991 during the annual meeting of the Design Automation Conference in San Francisco, California.  When Synopsys declined to take a license, KBSC abandoned their efforts for twelve years, and instead pursued cooperative contractual relationships with Synopsys.  Synopsys intends to argue, based on these facts, that Ricoh is equitably estopped from seeking to enforce the Kobayashi patents against Synopsys or licensed users of its software. *See* Ex. A at ¶¶10-11, 25-29.[3]

Furthermore, California is a more convenient jurisdiction for this litigation.  The Electronic Design Automation ("EDA") industry grew up in the Northern District of California and is now, in effect, resident there.  Synopsys and its most significant competitors, including Cadence Design Systems and Monterey Design Systems, are all headquartered in the Northern District and maintain their principal engineering facilities

---

[3] Defendants intend to seek leave of court to amend their first amended answer to plead the defense of inequitable conduct.

there. The University of California at Berkeley and Stanford University are pre-eminent centers of research on design synthesis issues and have many of the authorities in the field on their faculty. This unique concentration of the EDA industry within the Northern District of California was previously recognized by this Court in its decision in *IKOS Systems, Inc. v. Cadence Design Systems, Inc.*, where the Court relied on the fact that the industry was "located in the Silicon Valley" as part of the basis for a transfer to the Northern District. *See IKOS Systems, Inc. v. Cadence Design Systems, Inc.*, C.A. No. 02-1335-GMS, 2002 U.S. Dist. LEXIS 20574, at *5 (D. Del. Oct 21, 2002 (Ex. G).

The only connection Defendants have to Ricoh's allegations of patent infringement against Design Compiler is the fact that some of the Defendants use Design Compiler in their business. The detailed factual questions about the operation of Synopsys' Design Compiler raised by Ricoh's patent infringement allegations can only be answered by Synopsys and not by Defendants in this case, who possess no substantive information about the operation of Design Compiler. *See* Declaration of Julie McManus at ¶7 ("McManus Decl."). Given that Ricoh's allegations against Defendants will inevitably be resolved by the action brought directly by Synopsys in the Northern District of California, and that most, if not all, of the witnesses necessary to the defense of this case reside in the Northern District of California and are outside the subpoena power of this court, Defendants respectfully submit that it is appropriate for the Court to stay the present proceeding until Ricoh's patent infringement allegations can be litigated to resolution in the Northern District of California. If the Court is unwilling to stay the present case, Defendants request that this matter be transferred, pursuant to 28 U.S.C. § 1404 to the Northern District of California so that it can be joined or otherwise coordinated with Synopsys' declaratory judgment action.

### III.    FACTUAL BACKGROUND

The facts of this action clearly establish that Delaware has only a passing interest in this matter, and that the most convenient forum for this litigation is in the United States District Court for the Northern District of California.

This case is a patent infringement action involving the technology involved in the design of application specific integrated circuits (ASICs). ASICs are microelectronic devices that electronics manufacturers design for a specific function, for example for use in graphics and telecommunications devices. As ASICs have become more complicated, their design has become more difficult.

Importantly, neither the parties nor any of the relevant third parties have a substantial presence in Delaware. None of the Defendants have a substantial presence in Delaware. Aeroflex Incorporated ("Aeroflex") is a high technology company that designs, develops, manufactures and markets a diverse range of microelectronic, and test and measurement products for use in communication systems, networks and automatic test systems. Aeroflex has its principal place of business in Plainview, New York. *See* Declaration of Charles Badlato at ¶2 ("Badlato Decl."). AMI Semiconductor, Inc. ("AMIS") is a high technology company that designs, develops, and manufactures a broad range of integrated circuit (IC) products for a number of end-uses including automotive, medical, industrial, communications, computing, defense and consumer products. AMIS has its principal place of business in Pocatello, Idaho. *See* Declaration of Jon Stoner at ¶2 ("Stoner Decl."). The Matrox defendants are high technology companies that design software and hardware solutions in the fields of graphics, video editing, image processing and new business media. Matrox Electronic Systems Ltd. ("Matrox") and Matrox Graphics, Inc. ("Matrox Graphics") have their principal places of business in Dorval,

Quebec, Canada. Matrox International, Inc. ("Matrox Int'l") has its principal place of business in Plattsburg, New York. Matrox Tech, Inc. ("Matrox Tech") has its principal place of business in Boca Raton, Florida. *See* Declaration of André Desbiens at ¶¶2-4 ("Desbiens Decl.").

Plaintiff does not have a substantial presence in Delaware. Ricoh is a high technology corporation that manufactures digital office equipment, including color and black & white digital copiers, printers, facsimile machines, scanners, and digital cameras. Ricoh has its principal place of business in Tokyo, Japan. On information and belief, the technologies described in the '432 patent were developed in South Carolina. While it does not appear to have any facilities in Delaware, Ricoh has six subsidiaries in California, including three within the Northern District of California, Ricoh Innovations, Inc. in Menlo Park, Ricoh Corporation Office Solutions and Systems Development Group in San Jose, Ricoh Silicon Valley, Inc. in Cupertino. *See* Moller Decl. at ¶¶5-6.

Finally, none of the relevant third parties necessary to the defendant's case are within the subpoena powers of this Court. Ricoh filed this suit on January 21, 2003 alleging that each of the Defendants infringes the '432 patent. The precise nature of the Defendants' infringing actions is not described in the complaint. However, in correspondence, Ricoh implies that the Defendants' infringing activities are their use of Synopsys' computer-aided design systems:

> We are writing to you on behalf of Ricoh Company Ltd. because we are aware that your company is involved with the design of custom ICs that include application specific designed circuitry. We understand that in designing these circuits, you use a computer-aided design system obtained from *Synopsys, including Design Compiler.*
>
> As you may know, Ricoh owns two of the basic patents directed to computer-aided design processes. These are U.S. Patent Nos. 4,922, 432 and 5,197,016. They cover significant advances in computer-aided design

processes for designing custom designed ICs for specific applications directly from architecture independent functional specifications for the integrated circuit.

Moller Decl., Ex. D (emphasis added).

Ricoh's allegations in its complaint and correspondence clearly implicate individuals at Synopsys who are involved with the design of Synopsys' computer-aided design products. Third party Synopsys is a designer and manufacturer of high-level design automation solutions for the design of integrated circuits, systems on a chip (SoCs) and electronic systems. Synopsys sells its products to semiconductor, computer, communications, consumer electronics and aerospace companies, including all of the Defendants. *See* McManus Decl. at ¶2. Synopsys has its principal place of business in Mountain View, California. *See id.* at ¶3. As with the parties to this action, Synopsys does not have a substantial presence in Delaware. *See id.* at ¶4. Synopsys' engineering staff, whose knowledge of Design Compiler will be essential to resolution of this case, are located in Northern California. *See id.* at ¶¶5-6.

Synopsys' employees and former employees with critical information regarding the development of Design Compiler and the '432 patent assignee's earlier efforts to license the patent-in-suit to Synopsys, and the abandonment of those efforts, are located in the Northern District of California. First, representatives of Knowledge Based Silicon Corporation ("KBS"), an assignee of the '432 patent met with Synopsys employees in 1991 urging Synopsys to take a license to the Kobayashi patents. Synopsys did not take a license, and KBS abandoned its efforts. *See id.* at ¶8; Moller Decl. at ¶10. This testimony is necessary to Defendants' equitable estoppel defense. Second, David Gregory, a former employee of Synopsys and currently the CEO of ReShape, Inc. in

Mountain View, California, is a primary architect of Design Compiler and has valuable testimony regarding the operation of that product. *See* McManus Decl. at ¶¶9-10.

In addition, on information and belief, the inventors of the patent in suit do not reside in Delaware. The inventors on the '432 patent are Hideaki Kobayashi and Masahiro Shindo. The Defendants believe that both inventors currently reside in Japan and do not work for Ricoh, and are therefore outside the subpoena power of this Court. Dr. Hideaki Kobayashi, who is named as one of the inventors on the patent at issue in the present case, currently serves as Chairman of Knowledge Edge, K.K., which runs a training program for Japanese engineers out of offices in Mountain View, California, within the Northern District. *See* Moller Decl. at ¶9.

Furthermore, many of the witnesses knowledgeable about prior art to the '432 patent are outside the subpoena power of this Court. It is well known that the electronic design automation industry, the relevant industry to the patent in suit, is based in the Silicon Valley in California. Therefore, in addition to witnesses at Synopsys, the Defendants anticipate requiring testimony from many individuals who reside in northern California and outside the subpoena power of this Court. Many individuals who developed the early logic synthesis systems that will be relevant in this case are located in the Northern District of California. *See* Moller Decl. at ¶11.

## IV.    ARGUMENT

This patent infringement litigation was brought by Ricoh against three groups of companies without any relationship to each other.[4] The only common thread among these companies is that Ricoh alleges that they all use Synopsys software to design ASICs. As

---

[4] The Matrox defendants are related companies, but have no relationship with Aeroflex or AMI.

such, the Defendants are merely proxies for Synopsys, the real party in interest. Because Synopsys has filed its own action against Ricoh in the Northern District of California for declaratory judgment on the patent-in-suit here, all issues in this case will be definitively resolved by the California Synopsys case. Therefore, this case should to be stayed pending the outcome of the Synopsys case. In the event this case is not stayed, it should be transferred to the Northern District of California, which is a more convenient forum.

### A.    As a suit against Synopsys' customers, this litigation should be stayed pending the outcome of the California *Synopsys* case

It has long been clear that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 229 U.S. 248, 254 (1936). The Third Circuit has noted that "as a general principle, duplicative litigation in the federal court system is to be avoided." *Remington Rand Corporation v. Business Systems, Inc.*, 830 F.2d 1274, 1276 (3d Cir. 1987). Where proceedings are pending in another district court on the same issues, there is no question that judicial economy would be served through use of a stay.

The purpose of the rule is to conserve judicial resources, avoid piecemeal litigation, eliminate the risk of inconsistent adjudications, and "to promote comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971-72 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). As long ago as sixty years ago, the Third Circuit warned against duplicative litigation and pointed out its pitfalls with language that rings true today:

> The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of

10

> judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issue and the same parties.

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941), *cert. denied*, 315 U.S. 813, 86 L. Ed. 1211, 62 S. Ct. 798 (1942). Courts in the Third Circuit and the district courts within this Circuit have stayed cases under various circumstances to avoid the waste, delay, and potential inconsistent outcomes that would result from concurrent litigation. *See, e.g., E.E.O.C.*, 850 F.2d at 971-2; *Remington Rand Corporation*, 830 F.2d at 1276; *AT&T Corp. v. Public Serv. Enters. of Pa., Inc.*, C.A. No. 99-4975, 2000 U.S. Dist. LEXIS 4649, at *16 (E.D. Pa. Apr. 12, 2000) (Ex. I) ("Staying the instant action avoids a potentially gross waste of judicial resources" when pending appeal of related case may render action moot.); *Crawford v. West Jersey Health Sys.*, 847 F. Supp. 1232, 1243 (D.N.J. 1994) (staying entire litigation pending arbitration of certain counts to conserve judicial resources); *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992) ("[A] stay [pending reexamination of the patent-in-suit] would surely conserve the time and resources of the court as well as the parties.").

When two suits are pending regarding the same patents, "[t]he general rule . . . is that 'as a principle of sound judicial *Kahn* administration, the first suit should have priority, absent special circumstances.'" 889 F.2d at 1081 (Fed. Cir. 1989), quoting *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). One of these "special circumstances" is the "customer suit" exception, "whereby litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz*, 909 F.2d at 1464. This preference for litigation involving the manufacturer of an accused product "is

11

based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Kahn*, 889 F.2d at 1081. For this reason, courts will stay a first-filed customer suit when a later-filed manufacturer suit will resolve the issues presented by the customer suit. *See Refac International, Ltd., v. IBM*, 790 F.2d 79, 81, *aff'd on reconsideration in relevant part by* 798 F.2d 459 (Fed. Cir. 1986) (affirming stay of suit against customers while suit proceeds against manufacturer); *Whelen Technologies, Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715 (N.D. Ill. 1990) (staying customer suit pending outcome of second-filed manufacturer suit); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842 (W.D. Pa. 1988) (same).

It cannot be disputed that this litigation is a customer suit that should be stayed in favor of the California Synopsys case. Ricoh has informed at least one defendant that Ricoh's allegations of infringement here are based solely on the Defendants' use of Synopsys' Design Compiler. *See* Declaration of Alan MacPherson at ¶¶2-4. Synopsys has brought a case in the Northern District of California against Ricoh for a declaration of non-infringement of the '432 patent and of invalidity of that patent. *See* Ex. A. The California Court's determination regarding infringement and validity of the '432 patent will essentially dispose of the infringement issues regarding Synopsys' customers in this case. Either Synopsys will prevail and use of Design Compiler will be determined to be non-infringing or Ricoh will prevail and Synopsys will be forced to pay damages or take a license to the Ricoh patent, in which case Synopsys' customers will be immunized from liability under the doctrine of "patent exhaustion." *See Intel Corp. v. ULSI Corp.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("The law is well settled that an authorized sale of a

patented product places the product beyond the reach of the patent.") (*citing Bloomer v. Millinger*, 68 U.S. (1 Wall.) 340, 350-51 (1864)).

**B.    Since "forum shopping" alone motivated Ricoh's selection of Delaware, this litigation should be stayed pending the outcome of the California Synopsys case.**

Another "special circumstance" constituting an exception to the first to file doctrine is "where forum shopping alone motivated the choice of sites for the suit . . . ." *Kahn*, 889 F.2d at 1081. Here, all of the circumstantial evidence indicates that forum shopping was a primary if not sole motivating factor for Ricoh's selecting the District of Delaware and avoiding the Northern District of California. No acts of infringement are alleged to have taken place in Delaware and none of the parties maintains any facilities in Delaware. None of the party witnesses or party documents are found in Delaware. Ricoh is based in Tokyo, Japan and the East Coast is therefore less convenient than other possible jurisdictions on the West Coast, including the Northern District of California. Most importantly, despite the fact that Ricoh's infringement allegations are based upon Defendants' use of Synopsys' Design Compiler, Ricoh picked a jurisdiction where none of the relevant Synopsys witnesses reside. As stated below, none of the other third party witnesses, whose testimony is necessary to prove Defendants' noninfringement, invalidity and equitable estoppel defenses, are subject to the subpoena power of this Court.

Given these facts, it is appropriate for the Court to stay this action, filed against Synopsys' customers, in favor of the action filed by Synopsys.

**C.    If not stayed, this litigation should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404.**

If this litigation is not stayed it ought to be transferred to the Northern District of California where it can be consolidated or coordinated with Synopsys' declaratory

judgment case. Title 28 of the U.S. Code, § 1404 (a) permits transfers of cases "[f]or the convenience of parties and witnesses [and] in the interests of justice." The present dispute is integrally tied to events and persons in California. Present and former Synopsys engineers, the only persons familiar with the design of the software product that Ricoh accuses of infringement, live and work in the Bay Area. Synopsys' equitable estoppel defense arises from historical events that took place in California. The Synopsys employees that attended the negotiations that give rise to the equitable estoppel defense are resident in the Northern District of California. Additionally, because the Electronic Design Automation industry of which Synopsys is a part is so tightly focused in the San Francisco Bay Area, the witnesses most familiar with the relevant prior art are also resident in the Northern District of California. The convenience to the parties and third party witnesses both suggest that the Northern District of California is a more suitable venue for resolution of the underlying patent dispute.

A case should be transferred transfer when the original matter could have been brought in the district to which the case is transferred, and where, after considering all relevant public and private factors, "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3rd Cir. 1995). This Court has held that some of the private factors identified in *Jumara* significantly duplicate the provisions of Section 1404 (a) and, therefore, should not be given much weight to avoid the risk of double-counting. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197 (D. Del. 1998. The remaining factors all weigh in favor of transfer to the Northern District.

1.    **Ricoh could have brought this litigation in the Northern
District of California**

In a patent case, venue is proper "where the defendant resides." 28 U.S.C. §
1400(a). "For purposes of venue ... , a corporation shall be deemed to reside in any
judicial district in which it is subject to personal jurisdiction..." 28 U.S.C. § 1391(c).
Jurisdiction in the Northern District of California under California's long-arm statute
reaches to the extent allowed by the Due Process Clause, and is coextensive with the
jurisdiction of the Delaware court in this action. *See Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316, 1320 (9th Cir. 1998). Furthermore, all the Defendants have stated that,
should this action proceed, litigation would be more convenient in the Northern District
of California than in the District of Delaware. *See* Badlato Decl. at ¶4; Stoner Decl. at ¶4;
Desbiens Decl. at ¶6. Ricoh could, therefore, have brought this case against the
Defendants in the Northern District of California.

2.    **The balance of convenience factors strongly favors
transfer to the Northern District of California.**

This Court has formulated a "balance of convenience" test based upon the *Jumara*
factors to determine whether transfer is appropriate. *See Affymetrix*, 28 F. Supp. 2d at
208-209. Among the factors considered are the connection between Delaware and the
action; the physical locations of the parties and their financial position; the convenience
and availability of witnesses; the location of records and other documents; and the
relative congestion of the dockets in Delaware and the proposed transferee court. *Id.* at
197-208; *see also Allergan, Inc. v. Alcon Labs., Inc.*, C.A. No. 02-1682-GMS, 2003 U.S.
Dist. LEXIS 2564, at *5 (D. Del. Feb. 25, 2003) (Ex. 4); *IKOS Systems*, 2002 U.S. Dist.
LEXIS 20574 at *4-*6. To prevail, Defendants have the burden of showing that the

balance of these factors strongly favors transfer. *See Jumara*, 55 F.3d at 879; *Affymetrix*, 28 F. Supp. 2d at 200. Here, all the relevant factors favor transfer.

### a)    Delaware has a minimal interest in this case

No acts of infringement are alleged to have taken place in Delaware, and none of the parties maintain facilities in Delaware. *See* Badlato Decl. at ¶3; Stoner Decl. at ¶3; Desbiens Decl. at ¶4. In fact, the only relationship between this case and Delaware is that three of the Defendants are incorporated in Delaware, which only serves to give this Court personal jurisdiction over those Defendants. While not completely irrelevant, the Defendants' state of incorporation is "certainly not dispositive" for purposes of establishing the most convenient place to try this lawsuit. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 509 n.6 (D. Del. 1999).

### b)    No party is physically present in Delaware, and the parties can litigate equally well in California

Neither Ricoh nor any defendant maintains its principal place of business nor, indeed, any facility, in Delaware. Aeroflex is located in Plainview, New York, on Long Island. *See* Badlato Decl. at ¶2. AMI is located in Idaho. *See* Stoner Decl. at ¶2. The Matrox defendants are located in Quebec, upstate New York, and Florida. See Desbiens Decl. at ¶¶2-4. Ricoh is located in Japan. It has no apparent facilities in Delaware, but does maintain six subsidiaries in California, including three within the Northern District of California, Ricoh Innovations, Inc. in Menlo Park, Ricoh Corporation Office Solutions and Systems Development Group in San Jose, Ricoh Silicon Valley, Inc. in Cupertino. *See* Möller Decl. at ¶5. Although no defendant is headquartered in California, all consider California to be a more convenient forum than Delaware. *See* Badlato Decl. at ¶4; Stoner Decl. at ¶4; Desbiens Decl. at ¶6. Finally, California is approximately 3,000

miles closer to Japan than Delaware, suggesting that it might be a more convenient forum were either of the inventors on the Ricoh patent to agree to appear in this litigation. *See* Moller Decl. at ¶9 (both inventors on the Ricoh patent appear to be located in Japan). A transfer to the Northern District would also reduce expenses since Defendants are represented by attorneys located in Northern California, and the "added expense of local Delaware counsel would be avoided if this case is transferred."[5] *See Mentor*, 77 F. Supp. 2d at 510 n.7. This factor weighs in favor of transfer.

### c) Crucial third-party fact witnesses reside in California, beyond the subpoena power of this Court

This Court has noted that "[f]act witnesses who possess first-hand knowledge of the events giving rise to the lawsuit . . . have traditionally weighed quite heavily in the 'balance of convenience' analysis." *Affymetrix*, 28 F. Supp. 2d at 203. The major fact questions in this case will require testimony from Synopsys personnel located in the Northern District. Defendants will need to obtain testimony from Synopsys personnel about the internal structure of Design Compiler in order to defend themselves against Ricoh's patent infringement allegations. In support of its equitable estoppel defense, Defendants will also want to introduce testimony from present and/or former Synopsys employees regarding the 1991 meeting between KBS and Synopsys. *See* McManus Decl. at ¶8.

Furthermore, many of the key individuals who participated in the design of early logic synthesis systems and are therefore knowledgeable about the relevant prior art are located in the Bay Area. Some of the well-known prior art systems that are likely to be

---

[5] Plaintiff is represented by attorneys located in Washington, DC, and would require local counsel in either venue.

relevant to this case include: the Cathedral system, the Socrates system, and the Yorktown Silicon Compiler. *See* Moller Decl. at ¶11. For example, a principal engineer involved with the design and development of the Cathedral system, Dr. Jan Rabaey, is currently on the faculty of the University of California at Berkeley. *See id.* In addition, David Gregory, a former Synopsys employee and currently CEO of ReShape, Inc. in Mountain View, California, was a principal architect of the Socrates system for the synthesis and optimization of logic circuit design. His Ph.D dissertation concerned aspects of the Socrates system. *See id.*; McManus Decl. at ¶¶9-10. Aart de Geus, now an executive with Synopsys, was also involved with the development of the Socrates synthesis system. Last, the principals involved in development of the Yorktown Silicon Compiler included Drs. Robert Brayton, Raul Camposano and Giovanni De Micheli. Dr. Brayton is on the faculty at the University of California at Berkeley, Dr. Camposano is an executive at Synopsys and Dr. De Micheli is on the faculty at Stanford University. *See* Moller Decl. at ¶11. All of these persons, with their extensive knowledge of prior art systems, are resident in the Northern District of California.

In addition, many of the individuals with the greatest familiarity with the Electronic Design Automation industry in general, and with logic synthesis in particular, are located in the Northern District. The significant players in the logic synthesis industry are Synopsys, Cadence Design Systems, Inc. ("Cadence"), Monterey Design Systems ("Monterey"), Magma Design Automation ("Magma"), Get2Chip, Inc. (recently acquired by Cadence) ("Get2Chip"), and Incentia Design Systems, Inc. ("Incentia"). Synopsys is headquartered, and has its principal engineering facilities, in Mountain View and Sunnyvale, California, Cadence and Get2Chip are located in San Jose, California, Monterey is located in Sunnyvale, Magma is located in Cupertino, California, and

Incentia has its principal place of business in Santa Clara, California. *See* McManus Decl. at ¶¶3, 12. All of these locations are within a few miles of each other in the Northern District of California.

The fact that all of the significant competitors in the logic synthesis arena and many, perhaps most, of the experts in this area are clustered in the Northern District reflects the accuracy of this Court's observation in the *IKOS Systems* decision that the Electronic Design Automation industry is, in effect, "resident" in the Northern District of California. *See IKOS Systems*, 2002 U.S. Dist. LEXIS 20574, at *5. The fact that Defendants' case is so heavily reliant on factual evidence that will have to be obtained from third parties in another judicial district is a strong factor weighing in favor of transfer.

Importantly, all of these witnesses vital to the Defendants' defense in this action are outside the subpoena power of this Court. The Defendants would therefore be greatly prejudiced if this action were to go forward in Delaware.

By contrast, no known witnesses for either party reside within Delaware. Because there are no critical witnesses located in this District, and there are critical witnesses located within the Northern District of California, this factor weighs strongly in favor of transfer. *See Affymetrix*, 28 F. Supp. 2d at 203-205; *Mentor*, 77 F. Supp. 2d at 510-512

> **d)    No relevant documents are present in Delaware, while many are present in California**

This Court has noted that the weight of this factor has decreased in recent years. *See Affymetrix*, 28 F. Supp. 2d at 205. Nevertheless, Defendants are aware of no documents relevant to this case in Delaware, whereas Synopsys presumably has many documents relevant to this case. This factor weighs in favor of transfer.

It is clear that this case would more conveniently proceed and the interests of justice would be better served by a transfer to the Northern District of California.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay the present litigation pending the outcome of the Synopsys case pending in the Northern District of California, or, alternatively, transfer this case to the Northern District of California for consolidation with the Synopsys case.

Dated: June 12, 2003

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
Telephone: (302) 888-6316

Teresa M. Corbin
Christopher L. Kelley
Matthew E. Hocker
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE
LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
Telephone: (650) 463-8100

COUNSEL FOR DEFENDANTS

270783v1

20

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

### VIA HAND DELIVERY

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899


**FEDERAL EXPRESS**
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526

**VIA FEDERAL EXPRESS**
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, N.Y. 10036-2714



Francis DiGiovanni (#3189)

265624

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICOH COMPANY, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP., and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JULIE D. McMANUS IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER

I, Julie D. McManus, hereby declare as follows:

1.    I am an Executive Assistant for Synopsys, Inc. ("Synopsys"). I am familiar with Synopsys' business, facilities, and personnel. The matters set forth in this declaration are based upon my personal knowledge, except where otherwise indicated, and if called as a witness, I could and would testify competently thereto.

2.    Synopsys is a designer and manufacturer of high-level design automation solutions for the design of integrated circuits, systems on a chip (SoCs) and electronic systems, and sells its products to semiconductor, computer, communications, consumer electronics and aerospace companies, including all of the defendants.

3.    ˜ Synopsys has its principal place of business at a facility with a business address in Mountain View, California and buildings in both Mountain View and Sunnyvale, California. Synopsys houses its corporate, manufacturing, research and development, and sales and distribution resources at this facility.

4.     Synopsys does not maintain any office or facility in the state of Delaware.

5.     Most of Synopsys' present and former research and development engineers work in Synopsys' Mountain View/Sunnyvale campus and live in northern California, including those responsible for the development of Synopsys' Design Compiler product.

6.     I am not aware of any present or former Synopsys engineering personnel knowledgeable as to Design Compiler who reside within the state of Delaware.

7.     Synopsys does not provide its customers with detailed information regarding the internal operation of its products, including Design Compiler.

8.     On information and belief, on or about 1991 and/or early 1992, representatives of Knowledge Based Silicon Corporation ("KBS") met with representatives of Synopsys, at the Design Automation Conference held in San Francisco, California and/or other industry trade shows in an effort to obtain Synopsys' agreement to take a license to the Kobayashi family of patents. Synopsys did not take a license, and KBS abandoned its efforts. KBS never again raised the issue of Synopsys' taking a license to the Kobayashi patents.

9.     David Gregory, one of the co-founders of Synopsys, was involved with the design and development of the SOCRATES system for the synthesis and optimization of logic circuit design prior to founding Synopsys. Dr. Gregory managed the development of the Design Compiler product in addition to other Synopsys' synthesis tools. SOCRATES was a building block for Synopsys' products, including the Design Compiler product, and Dr. Gregory developed many key algorithms that may be of issue in relation to the patent.

10.     Dr. Gregory is no longer an employee of Synopsys, and is currently President and CEO of ReShape, Inc. also located in Mountain View, California. ReShape, Inc. is a designer of electronic design automation software that assists engineers in developing system-on-a-chip integrated circuit designs.

270756_1

-2-

11.    It would be extremely burdensome and a major inconvenience for Synopsys to be forced to send witnesses to Delaware to testify regarding the design and operation of the Design Compiler product in a patent case to which Synopsys is not a party.

12.    Synopsys' primary synthesis competitors include Cadence Design Systems, Inc. ("Cadence"), Monterey Design Systems ("Monterey"), Magma Design Automation ("Magma"), Get2Chip, Inc. (recently acquired by Cadence) ("Get2Chip"), and Incentia Design Systems, Inc. ("Incentia"). All of these companies are based in the Silicon Valley area of northern California; Cadence has its corporate headquarters in San Jose, California, Monterey has its corporate headquarters in Sunnyvale, California, Magma has its has its corporate headquarters in Cupertino, California, Get2Chip has its corporate headquarters in San Jose, California, and Incentia has its corporate headquarters in Santa Clara, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Mountain View, California on June 12, 2003.

Julie D. McManus

**CERTIFICATE OF SERVICE**

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

**FEDERAL EXPRESS**                          **VIA FEDERAL EXPRESS**
Gary M. Hoffman                              Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky LLP       Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.                          1177 Avenue of the Americas
Washington, D.C.  20037-1526                 New York, N.Y.  10036-2714


Francis DiGiovanni (#3189)

265624

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP., and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF CHARLES BADLATO IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER

I, Charles Badlato, hereby declare as follows:

1.      I am treasure for defendant Aeroflex Incorporated ("Aeroflex"). I have been an employee of Aeroflex since 1987, and am familiar with Aeroflex' facilities and operations during the period 1991 to the present. The matters set forth in this declaration are based upon my personal knowledge, except where otherwise indicated, and if called as a witness, I could and would testify competently thereto.

2.      Aeroflex' principal place of business is in Plainview, New York. This facility houses the corporate office for Aeroflex and its subsidiaries.

3.      Aeroflex does not presently have any corporate, manufacturing, research and development, sales and distribution, or repair facilities in the state of Delaware.

4.      If this action were to proceed, the United States District Court for the Northern District of California would be a more convenient forum for the litigation of this action than the District of Delaware.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed in Plainview, New York on May _19_, 2003.

_____

Charles Badlato

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

| **FEDERAL EXPRESS** | **VIA FEDERAL EXPRESS** |
|---|---|
| Gary M. Hoffman | Edward A. Meilman |
| Dickstein Shapiro Morin & Oshinsky LLP | Dickstein Shapiro Morin & Oshinsky, LLP |
| 2101 L Street, N.W. | 1177 Avenue of the Americas |
| Washington, D.C.  20037-1526 | New York, N.Y.  10036-2714 |

Francis DiGiovanni (#3189)

265624

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP., and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JON STONER IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER

I, Jon Stoner, hereby declare as follows:

1.    I am Chief Technology Officer for defendant AMI Semiconductor, Inc ("AMIS"). I am familiar with AMIS' facilities and operations during the period 1991 to the present. The matters set forth in this declaration are based upon my personal knowledge, except where otherwise indicated, and if called as a witness, I could and would testify competently thereto.

2.    AMIS' principal place of business is in Pocatello, Idaho. This facility houses the AMIS corporate office, as well as a substantial portion of AMIS' research and development and manufacturing facilities.

3.    AMIS does not presently have any corporate, manufacturing, research and development, sales and distribution, or repair facilities in the state of Delaware.

-1-

4.    If this action were to proceed, the United States District Court for the Northern District of California would be a more convenient forum than the District of Delaware for AMIS because of AMIS' more substantial business connections in northern California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed in Pocatello, Idaho on May __, 2003.

June 2, 2003

Jon Stoner

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

**FEDERAL EXPRESS**
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526

**VIA FEDERAL EXPRESS**
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, N.Y.  10036-2714

Francis DiGiovanni (#3189)

265624

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD. | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC., | ) | |
| Defendants. | ) | |

### DECLARATION OF ALAN MACPHERSON IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER

I, Alan MacPherson, hereby declare as follows:

1.    I am an attorney at law licensed to practice in the State of California and a partner of the law firm of MacPherson Kowk Chen & Heid LLP, attorneys for defendant AMI Semiconductor, Inc ("AMIS"). The matters set forth in this declaration are based upon my personal knowledge, except where otherwise indicated, and if called as a witness, I could and would testify competently thereto.

2.    On or about February 10, 2003, I spoke by  telephone regarding this matter  with Gary Hoffman, Esq., of the law firm of Dickstein Shapiro Warren & Moshinsky, LLP in Washington, D.C., who I knew from an earlier conversation with Mr. Hoffman  to be an attorney for plaintiff Ricoh Company Ltd. ("Ricoh").

3.    Mr. Hoffman stated that the basis for Ricoh suing AMIS was because of AMIS' use of Synopsys' Design Compiler® product.

4.     My understanding following this conversation was that the other parties in this litigation had also been sued because of their use of Synopsys' Design Compiler Product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed in San Jose, California on June 10, 2003.

Alan MacPherson

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

**FEDERAL EXPRESS**
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526

**VIA FEDERAL EXPRESS**
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, N.Y. 10036-2714

Francis DiGiovanni (#3189)

265624

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP., and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF ANDRÉ DESBIENS IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER

I, André Desbiens, hereby declare as follows:

1.      I am Corporate Controller for defendant Matrox Electronic Systems, Inc. ("Matrox").  Matrox is the sister company of defendant Matrox Graphics, Inc. ("Matrox Graphics"), parent company of Matrox International Corp. ("Matrox Int'l"), and an affiliate of Matrox Tech, Inc. ("Matrox Tech") (collectively "Matrox entities").  I have been an employee of Matrox since 1998, and am familiar with the Matrox entities' facilities and operations during the period 1991 to the present.  The matters set forth in this declaration are based upon my personal knowledge, except where otherwise indicated, and if called as a witness, I could and would testify competently thereto.

2.      Matrox' and Matrox Graphics' share a principal place of business in Dorval, Quebec.  This facility houses both companies' corporate offices, as well as a substantial portion of their manufacturing facilities.

3.      Matrox Int'l has its principal place of business in Plattsburg, New York. This facility houses all of Matrox Int'l's corporate offices.

4.      Matrox Tech has its principal place of business in Boca Raton, Florida. This facility houses all of Matrox Tech's corporate offices.

5.      The Matrox entities do not presently have any corporate, manufacturing, research and development, sales and distribution, or repair facilities in the state of Delaware.

6.      If this action were to proceed, the United States District Court for the Northern District of California would be a more convenient forum than the District of Delaware for the Matrox entities' because of the Matrox entities' more substantial business connections in northern California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Dorval, Qc., Canada, on June 12, 2003.

                                        André Desbiens, CA

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

### VIA HAND DELIVERY

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

### FEDERAL EXPRESS
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526

### VIA FEDERAL EXPRESS
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, N.Y.  10036-2714

Francis DiGiovanni (#3189)

265624

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD.<br><br>        Plaintiff,<br><br>        v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS LTD.,<br>MATROX GRAPHICS INC., MATROX<br>INTERNATIONAL CORP., and<br>MATROX TECH, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 03-103-GMS |

## DECLARATION OF ERIK K. MOLLER IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER

I, Erik K. Moller, hereby declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and an associate of the law firm of Howrey Simon Arnold & White, LLP ("Howrey"), attorneys of record for defendants Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics, Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech, Inc. ("Matrox Tech") (collectively "Defendants") in this litigation. The matters set forth in this declaration are based upon my personal knowledge, except where otherwise indicated, and if called as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of the Complaint for Declaratory Relief filed May 15, 2003 in the District Court for the Northern District of California in *Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. C03-2289 (PVT) ("D.J. Complaint").

Complaint on behalf of Ricoh. A true and correct copy of email correspondence dated May 20, 2003 from Mr. Meilman to me is attached hereto as Exhibit B.

4.      On May 30, 2003, Guaranteed Process Service unsuccessfully attempted to serve Mr. Katsumi Yoshida, executive vice president and managing director of Ricoh and CEO of Ricoh Corporation, Inc., in his capacity as an officer of Ricoh with the D.J. Complaint at Mr. Yoshida's place of business at Ricoh Corporation, Inc. in West Caldwell, New Jersey. According to the process server, Mr. Yoshida would not meet him, and neither the receptionist, Mr. Yoshida's assistant, nor Ricoh Corporation, Inc.'s in-house counsel agreed to accept substituted service of the D.J. Complaint.

5.      According to its website, Ricoh maintains no corporate, manufacturing, research and development, or sales and marketing facilities in Delaware. In addition, according to its website, Ricoh has five subsidiaries located in California; Ricoh Electronics, Inc. in Tustin, Ricoh Innovations, Inc. in Menlo Park, Ricoh Corporation Office Solutions and Systems Development Group in San Jose, Ricoh Silicon Valley, Inc. in Cupertino, and Ricoh Business Systems, Inc. in Huntington Beach. Three of these subsidiaries, Ricoh Innovations, Inc., Ricoh Corporation Office Solutions and Systems Development Group, and Ricoh Silicon Valley, Inc., Cupertino, California are located in the Silicon Valley, within the Northern District of California. True and correct copies of web pages from Ricoh's web site are attached hereto as Exhibit C.

6.      Ricoh's principal place of business is in Tokyo, Japan.

7.      Attached hereto as Exhibit E is a true and correct copy of correspondence from Gary M. Hoffman to Steve McMinn dated March 7, 2003

8.      U.S. Patent No. 4,922,432 (the "'432 patent"), the patent in suit, was assigned at issuance to co-assignees Ricoh and International Chip Corporation ("ICC") of Columbia, South Carolina. International Chip Corporation subsequently assigned its interest in the '432 patent to

270706_1

-2-

Knowledge Based Silicon Corporation ("KBSC") of Columbia, South Carolina on July 23, 1991. Knowledge Based Silicon Corporation then assigned its interest to Ricoh on October 12, 2001. A true and correct copy of the assignment history of the '432 patent is attached hereto as Exhibit F.

9.      KBSC has relocated from Columbia, South Carolina to Mountain View, California, and is now operating under the name of Knowledge Edge, K.K. Dr. Hideaki Kobayashi, a named inventor of the '432 patent, is the founder of KBSC and chairman of Knowledge Edge. True and correct copies of Internet web pages for KBSC and Knowledge Edge are attached hereto as Exhibit G.

10.      On May 6, 2003, I received an email from Dr. James P. Davis who served as Vice President and Chief Operating Officer of KBS in the early 1990s. Dr. Davis stated that KBS approached Synopsys in 1991 at the Design Automation Conference held in San Francisco, California intending to elicit Synopsys to agree to a license to the Kobayashi family of patents.

11.      Early logic synthesis systems that are likely to be relevant to this case include: the Cathedral system, the Socrates system, and the Yorktown Silicon Compiler. Dr. Jan Rabaey, a principal engineer involved with the design of the Cathedral system, is currently on the faculty of the University of California at Berkeley. Dr. David Gregory, a principal engineer involved with the design of the Socrates system, is CEO of ReShape, Inc., located in Mountain View, California. Drs. Robert Brayton, Raul Camposano, and Giovanni Di Michelli are principal engineers involved with the design of the Yorktown Silicon Compiler. Dr. Brayton is on the faculty at University of California at Berkeley. Dr. Camposano is an executive with Synopsys. Dr. Di Micheli is on the faculty at Stanford University.

12.      On or about April 30, 2003, we contacted Dr. Brayton by telephone at the University of California at Berkeley regarding his involvement in the early stages of the development of logic design and synthesis methods, and to determine if he would be interested in assisting us in this litigation. Dr. Brayton stated that he was not interested in speaking with us

-3-

either regarding his research or regarding logic design and synthesis more generally. We believe that Dr. Brayton would be unwilling to travel to Delaware to provide testimony.

13.     On or about May 1, 2003, we contacted Dr. Giovanni Di Micheli by telephone at Stanford University regarding his involvement in the early stages of the development of logic design and synthesis methods, and to determine if he would be interested in assisting us in this litigation. Dr. Di Micheli declined to speak with us regarding his research or regarding logic design and synthesis more generally. We believe that Dr. Di Michelli would be unwilling to travel to Delaware to provide testimony.

14.     Attached hereto as Exhibit I is a true and correct copy of *IKOS Systems, Inc. v. Cadence Design Systems, Inc.*, 2002 U.S. Dist. LEXIS 20574 (D. Del. 2002).

15.     Attached hereto as Exhibit J is a true and correct copy of *AT&T Corp. v. Public Serv. Enters. Of Pa.*, 2000 U.S. Dist. LEXIS 4649 (E.D. Pa. 2000)

16.     Attached hereto as Exhibit K is a true and correct copy of *Allergan, Inc. v. Alcon Labs., Inc.*, 2003 U.S. Dist. LEXIS 2564 (D. Del. 2003)


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Menlo Park, California on June 11, 2003.

_____
Erik K. Moller

Exhibit A

1 | Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
2 | Erik K. Moller (SBN 147674)
HOWREY SIMON ARNOLD & WHITE, LLP
3 | 301 Ravenswood Avenue
Menlo Park, California 94025
4 | Telephone: (650) 463-8100
Facsimile: (650) 463-8400
5 |
Attorneys for Plaintiff Synopsys, Inc.
6 |

**ORIGINAL FILED**
MAY 15 2003

7 |
8 |
9 | UNITED STATES DISTRICT COURT
10 | NORTHERN DISTRICT OF CALIFORNIA
11 |

E-filing   ADR

12 | SYNOPSYS, INC.,                          ) Case No. **C03 02289PVT**
13 |              Plaintiff,                   ) **COMPLAINT FOR DECLARATORY**
14 |     vs.                                   ) **JUDGMENT**
15 | RICOH COMPANY, LTD., a Japanese          ) **DEMAND FOR JURY TRIAL**
     corporation.,                            )
16 |                                          )
17 |              Defendant.                   )
     _____ )

18 |     Plaintiff Synopsys, Inc. ("Synopsys"), for its complaint against Ricoh Company, Ltd.

19 | ("Ricoh"), alleges:

20 |                                    **PARTIES**

21 |     1.     Synopsys is a Delaware corporation having its principal place of business at 700 E.

22 | Middlefield Road, Mountain View, California.

23 |     2.     Ricoh is, upon information and belief, a Japanese corporation having its principal place

24 | of business at 3-6 Nakamagome 1-chome, Ohta-ku Tokyo, Japan.

25 |                                   **OVERVIEW**

26 |     3.     This action is brought to resolve the apprehension under which Synopsys is forced to

27 | conduct its business in the United States as a result of the threatened assertion of infringement of

28 | certain patents assigned to Ricoh.

HOWREY
SIMON
ARNOLD &
WHITE
Case No.
COMPLAINT FOR DECLARATORY JUDGMENT

4.      Synopsys is a leading supplier of a type of Electronic Design Automation ("EDA") software known as logic synthesis software.  One of Synopsys' most popular products is its "Design Compiler" synthesis tool.

5.      Ricoh contends that it is the assignee and beneficial owner of United States patents U.S. Patent No. 4,922,432 (the "'432 Patent") and U.S. Patent No. 5,197,016 (the "'016 Patent").  These patents purport to disclose and claim a particular logic synthesis software tool.  The '016 Patent issued as the result of a continuation in part of the same patent application that issued as the '432 Patent.  The '432 Patent and the '016 Patent are attached to this complaint as Exhibits A and B respectively.

6.      On January 21, 2003, Ricoh filed a patent infringement action against Aeroflex Inc. ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), and Matrox Electronic Systems, Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc. (collectively "Matrox") in the United States District Court for the District of Delaware.  Ricoh's suit alleges that each of the defendants infringe one or more of the claims of the '432 Patent.  Aeroflex, AMI and some of the Matrox entities are users of Synopsys' software.  Ricoh has indicated in communications to one of the defendants in the Delaware litigation that the basis of its infringement allegations is the defendants' use of Synopsys' Design Compiler product.

7.      After filing the Delaware suit, Ricoh, through its counsel, sent letters to one or more users of Synopsys' software.  Ricoh's letters assert that the recipients are using "a computer-aided design system obtained from Synopsys, including Design Compiler."  Ricoh's letter then states that the '432 Patent and '016 Patent are "basic patents directed to computer-aided design processes," and that Ricoh is currently enforcing these patents in a lawsuit filed in the U.S. District Court in Delaware.  The letter concludes with a request that the recipient contact Ricoh regarding licensing of the patents.

8.      Based on these letters and the Delaware suit, Synopsys is informed and believes that Ricoh's purpose is to assert the '432 Patent and the '016 Patent against Synopsys' customers in an effort to extract licensing royalties from the use of Synopsys' products, including Design Compiler.

9.      The original assignees to the '432 Patent and '016 Patent were International Chip Corporation ("ICC") and Ricoh.  In 1991, ICC assigned its interests in both patents to Knowledge

HOWREY
SIMON
ARNOLD &
WHITE

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT                    -2-

1  Based Silicon Corporation ("KBS").  KBS subsequently assigned its interests in both patents to Ricoh

2  in 2001.

3        10.      Persons representing KBS met with representatives from Synopsys during the 1991

4  meeting of the Design Automation Conference, held in San Francisco.  During that meeting, Synopsys

5  was told that its Design Compiler product practiced certain claims of the '432 Patent.  KBS' efforts to

6  persuade Synopsys to obtain a license to the '432 Patent and the '016 Patent were unsuccessful and

7  subsequently abandoned.

8        11.      KBS developed and marketed products, including products named flowHDL and

9  blockHDL, which were designed to be interoperable with Synopsys' Design Compiler product.  In

10  1993 and 1995, in order to assist KBS with efforts to make its products interoperable with Synopsys'

11  products, KBS and Synopsys entered into several agreements, including a license to Design Compiler,

12  under which Synopsys disclosed confidential information about its products, and rendered other

13  technical assistance, to KBS.  At no point during these cooperative efforts did KBS make any

14  allegations that Synopsys' products were infringing either the '432 Patent or the '016 Patent.  Ricoh

15  has been a licensed user of Synopsys' Design Compiler software since at least 1997.

16                                    **JURISDICTION**

17        12.      This is an action for the resolution of an existing conflict under the Declaratory

18  Judgment Act, 28 U.S.C. §§ 2201 and 2202.  The underlying causes of action arise under the patent

19  laws of the United States, including 35 U.S.C. §§ 271 and 282.  Synopsys seeks a declaration by this

20  Court that the '432 Patent and the '016 Patent are invalid, unenforceable, and not infringed by

21  Synopsys and its customers.  The subject matter jurisdiction of this Court is therefore established by 28

22  U.S.C. § 1338

23        13.      The subject matter jurisdiction of this Court for all counts stated herein is also

24  established by the general jurisdiction of district courts under United States law, 28 U.S.C. §§ 1331

25  and 1332."

26        14.      Upon information and belief, this Court has personal jurisdiction over Ricoh because

27  Ricoh transacts business, performs some character of work or service in California, or contracts to

28  supply services or things in California and has sufficient minimum contacts with this state.

HOWREY
SIMON
ARNOLD &
WHITE

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT                    -3-

1    15.    This action presents an actual case or controversy because the acts of Ricoh have

2    created in Synopsys a reasonable apprehension that, as a result of Synopsys' continuing manufacture,

3    use, and sale of its Design Compiler product in the United States, Synopsys will be sued for

4    infringement of the '432 Patent and the '016 Patent.  In addition, Synopsys fears that it will suffer

5    commercial injury if Ricoh continues to sue, and threaten to sue, Synopsys' customers, as those

6    customers will then be dissuaded from purchasing and using Design Compiler and other Synopsys

7    logic synthesis products.

8                                             **VENUE**

9    16.    Venue for this action is proper in this judicial district under 38 U.S.C. § 1391 (b) and

10    (c).

11                                             **COUNT I**

12

13    **Declaratory Judgment That U.S. Patent No. 4,922,432 Is Not Infringed By Any**
        **Synopsys Logic Synthesis Product**

14    17.    Synopsys repeats and realleges paragraphs 1 through 16 of this Complaint as if the same

15    were fully set forth herein.

16    18.    Synopsys has not made, used, offered to sell or sold, within the United States, or

17    imported into the United States, any products or processes that infringe any valid claim of the '432

18    Patent, either directly, indirectly, contributorily or otherwise, and has not induced others to infringe the

19    '432 Patent.

20                                            **COUNT II**

21

22    **Declaratory Judgment That The Claims of U.S. Patent 4,922,432 Are Invalid**

23    19.    Synopsys repeats and realleges paragraphs 1 through 18 of this Complaint as if the same

      were fully set forth herein.

24

25    20.    The claims of the '432 Patent are invalid for failure to meet the requirements specified

26    in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and

27    112 including one or more of the following reasons:  (a) the inventor named in the '432 Patent did not

28    invent or discover any new useful process, machine, manufacture, or composition of matter, or any

HOWREY
SIMON
ARNOLD &
WHITE
Case No.
COMPLAINT FOR DECLARATORY JUDGMENT                    -4-

1    new and useful improvement thereof within the meaning of 35 U.S.C. § 101; (b) the subject matter

2    claimed in the '432 Patent was known or used by others in this country, or patented or described in a

3    printed publication in this or a foreign country, before it was invented by the inventors named in the

4    '432 Patent, as prohibited by 35 U.S.C. § 102(a); (c) the subject matter claimed in the '432 Patent was

5    patented or described in a printed publication in this or a foreign country or was in public use or on

6    sale in this country, more than one year prior to the filing of the application which resulted in the '432

7    Patent in the United States, as prohibited by 35 U.S.C. § 102(b); (d) the subject matter claimed in the

8    '432 Patent was described in a United States patent based on an application filed in the United States

9    or described in an application published prior to its invention by the inventors named in the '432

10   Patent, as prohibited by 35 U.S.C. § 102(e); (e) the inventor named in the '432 Patent did not invent

11   the subject matter; (f) the subject matter claimed in the '432 Patent was invented in this country by

12   another inventor, who did not abandon, suppress or conceal it, before its invention by the inventors

13   named in the '432 Patent, as prohibited by 35 U.S.C. § 102(g); (g) the subject matter claimed in the

14   '432 Patent would have been obvious, in view of the prior art, to a person having ordinary skill in the

15   art at the time the invention was made under 35 U.S.C. § 103; and/or (h) the claims of the '432 Patent

16   are invalid for failing to comply with 35 U.S.C. § 112, in that (i) the specification fails to contain a

17   written description of the subject matter claimed in the '432 Patent and the manner and process of

18   making and using it; (ii) the claims fail to particularly point out and distinctly claim a patentable

19   invention, (iii) the claims are indefinite, (iv) the specification fails to enable one skilled in the art to

20   practice the claimed invention, and/or (v) the specification fails to set forth the best mode contemplated

21   by the named inventors for carrying out the alleged invention.  Plaintiff reserves the right to amend this

22   count further, as additional information is developed through discovery or otherwise.

23                                              **COUNT III**

24

25       **Declaratory Judgment That U.S. Patent No. 5,197,016 Is Not Infringed By Any
                        Synopsys Logic Synthesis Product**

26           21.      Synopsys repeats and realleges paragraphs 1 through 20 of this Complaint as if the same

27   were fully set forth herein.

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT                              -5-

1    22.    Synopsys has not made, used, offered to sell or sold, within the United States, or

2    imported into the United States, any products or processes that infringe any valid claim of the '016

3    Patent, either directly, indirectly, contributorily or otherwise, and has not induced others to infringe the

4    '016 Patent.

## COUNT IV

### Declaratory Judgment That The Claims of U.S. Patent 5,197,016 Are Invalid

5

6

7    23.    Synopsys repeats and realleges paragraphs 1 through 22 of this Complaint as if the same

8    were fully set forth herein.

9    24.    The claims of the '016 Patent are invalid for failure to meet the requirements specified

10   in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and

11   112 including one or more of the following reasons:  (a) the inventor named in the '016 Patent did not

12   invent or discover any new useful process, machine, manufacture, or composition of matter, or any

13   new and useful improvement thereof within the meaning of 35 U.S.C. § 101; (b) the subject matter

14   claimed in the '016 Patent was known or used by others in this country, or patented or described in a

15   printed publication in this or a foreign country, before it was invented by the inventors named in the

16   '016 Patent, as prohibited by 35 U.S.C. § 102(a); (c) the subject matter claimed in the '016 Patent was

17   patented or described in a printed publication in this or a foreign country or was in public use or on

18   sale in this country, more than one year prior to the filing of the application which resulted in the '016

19   Patent in the United States, as prohibited by 35 U.S.C. § 102(b); (d) the subject matter claimed in the

20   '016 Patent was described in a United States patent based on an application filed in the United States

21   or described in an application published prior to its invention by the inventors named in the '016

22   Patent, as prohibited by 35 U.S.C. § 102(e); (e) the inventor named in the '016 Patent did not invent

23   the subject matter; (f) the subject matter claimed in the '016 Patent was invented in this country by

24   another inventor, who did not abandon, suppress or conceal it, before its invention by the inventors

25   named in the '016 Patent, as prohibited by 35 U.S.C. § 102(g); (g) the subject matter claimed in the

26   '016 Patent would have been obvious, in view of the prior art, to a person having ordinary skill in the

27   art at the time the invention was made under 35 U.S.C. § 103; and/or (h) the claims of the '016 Patent

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT                    -6-

1   are invalid for failing to comply with 35 U.S.C. § 112, in that (i) the specification fails to contain a

2   written description of the subject matter claimed in the '016 Patent and the manner and process of

3   making and using it; (ii) the claims fail to particularly point out and distinctly claim a patentable

4   invention, (iii) the claims are indefinite, (iv) the specification fails to enable one skilled in the art to

5   practice the claimed invention, and/or (v) the specification fails to set forth the best mode contemplated

6   by the named inventors for carrying out the alleged invention.  Plaintiff reserves the right to amend this

7   count further, as additional information is developed through discovery or otherwise.

8                                    **COUNT V**

9

**Declaratory Judgment Barring Ricoh From Recovery Under the Doctrine of Laches**

10

11      25.     Synopsys repeats and realleges paragraphs 1 through 24 of this Complaint as if the same

were fully set forth herein.

12

13      26.     Ricoh uses Synopsys' logic synthesis software and is familiar with the operation of this

software.

14

15      27.     Ricoh is barred under the equitable doctrine of laches from recovering damages for any

16   past practice of its patents.  Ricoh unreasonably and inexcusably delayed filing suit to the material

prejudice of Synopsys and Synopsys' customers.

17

18                                   **COUNT VI**

19

**Declaratory Judgment Barring Ricoh From Recovery Under the Doctrine of
Equitable Estoppel**

20

21      28.     Synopsys repeats and realleges paragraphs 1 through 27 of this Complaint as if the same

were fully set forth herein.

22

23      29.     Ricoh is barred under the doctrine of equitable estoppel from seeking enforcement of its

24   patent rights in the '432 Patent and '016 Patent.  The conduct of the assignees of the '432 Patent and

'016 Patent led Synopsys to believe that the assignees did not believe that those patents were infringed

25   by any Synopsys product.  Synopsys reasonably relied on assignees' conduct.  In the light of Ricoh's

26   attempts to enforce the '432 and '016 patents against Synopsys' products, Synopsys' reliance was

27   detrimental to its interests.

28

HOWREY
SIMON
ARNOLD &
WHITE
Case No.
COMPLAINT FOR DECLARATORY JUDGMENT                          -7-

**RESERVATION OF CLAIMS**

30.    Synopsys reserves the right to assert any other claims that discovery may reveal, including, but not limited to, inequitable conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Synopsys, Inc. prays that the Court enter judgment that:

(a)    United States Patent No. 4,922,432 is invalid;

(b)    United States Patent No. 4,922,432 is unenforceable;

(c)    United States Patent No. 4,922,432 is not infringed by Synopsys and its customers;

(d)    United States Patent No. 5,197,016 is invalid;

(e)    United States Patent No. 5,197,016 is unenforceable;

(f)    United States Patent No. 5,197,016 is not infringed by Synopsys and its customers;

(g)    For a preliminary and permanent injunction enjoining and restraining Ricoh, and its respective officers, agents, servants, employees and attorneys, and all persons acting in concert with them, and each of them,

    (i)    From making any claims to any person or entity that any Synopsys logic synthesis product infringes either of the '432 or '016 patents;

    (ii)    From interfering with or threatening to interfere with the manufacture, use, or sale of any Synopsys logic synthesis product; and

    (iii)    From instituting or prosecuting any lawsuit or proceeding, placing in issue the right of Synopsys, its distributors, customers, predecessors, or assigns to make, use, or sell any logic synthesis product;

(h)    Synopsys be awarded damages in accordance with its proof at trial;

(i)    Synopsys be awarded its costs and reasonable attorneys' fees incurred herein; and

(j)    Such other and further relief be granted as the Court deems just and proper.

HOWREY
SIMON
ARNOLD &
WHITE

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT                    -8-

**JURY DEMAND**

Synopsys demands a trial by jury on all issues so triable.

Dated: May 15, 2003

Respectfully submitted,

HOWREY SIMON ARNOLD & WHITE, LLP

By: _____

Teresa M. Corbin
Christopher Kelley
Erik K. Moller
Attorneys for Plaintiff
Synopsys, Inc.

HOWREY
SIMON
ARNOLD &
WHITE

Case No.
COMPLAINT FOR DECLARATORY JUDGMENT

-9-

Exhibit B

## Moller, Erik

| | |
|---|---|
| **From:** | Meilman, Edward [MeilmanE@dsmo.com] |
| **Sent:** | Tuesday, May 20, 2003 12:38 PM |
| **To:** | 'MollerE@howrey.com' |
| **Cc:** | Hoffman, Gary; 'Ricoh432@dsmo.com' |
| **Subject:** | Ricoh v. AMI et al |

In answer to your voice mail, we have _not_ been authorized by Ricoh to accept service of the California action you started.

"MMS <DSMO.COM>" made the following annotations.
-------------------------------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

Exhibit C



▲|Home |About Ricoh |Products |Investor Information |Environment |

# Company Profile

About RICOH

SELECT MENU ▼ **GO**

### Outline of Ricoh

■ **Corporate Name**

Ricoh Company, Ltd.

■**Founded**

February 6, 1936

■**Philosophy**

Corporate Philosophy
Management Philosophy

■**Capital**

Yen120,461million(as of March 31, 2002)

■**Net Sales**

Yen1,672,340million(Year ended March 31,2002)

■**Chairman and CEO**

Hiroshi Hamada

■**President and COO**

Masamitsu Sakurai

■**Group Companies (as of March 31, 2002)**

404 companies

■**Number of Employees**

Consolidated: 74,200(as of March 31, 2002)

■**Headquarter**

15-5, Minami Aoyama 1-chome, Minato-ku, Tokyo 107-8544, Japan

■**Major facilities**

Manufacturing Facilities
Research and Development Facilities
Overseas Sales Subsidiaries

■**Main Products**

Introduction of Main Products

|Manufacturing Facilities |Research and Development |CONTACT RICOH |COMMENTS |

Copyright (C) 2000-2002 Ricoh Co., Ltd. All Rights Reserved.



|Home |About Ricoh |Products |Investor Information |Environment |

## Manufacturing Facilities

#### Domestic     Overseas

---

### ■ Domestic

#### ► Ricoh Atsugi Plant

1005 Shimo-Ogino, Atsugi, Kanagawa 243-0298, Japan — (81) 46-241-1511

**Area of Operations**

OA equipment and other products

**Date of Establishment**

May 1971

---

#### ► Ricoh Numazu Plant

16-1 Honda-machi, Numazu, Shizuoka 410-8505, Japan — (81) 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

**Area of Operations**

Supplies

**Date of Establishment**

April 1960

---

#### ► Ricoh Ikeda Plant

13-1 Himemuro-cho, Ikeda, Osaka 563-8501, Japan — (81) 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

**Area of Operations**

Electronic devices

**Date of Establishment**

April 1981

---

#### ► Ricoh Hatano Plant

423 Hirasawa, Hadano, Kanagawa 257-8586, Japan — (81) 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

**Area of Operations**

Printed circuit boards and electronic components

**Date of Establishment**

July 1982

---

#### ► Ricoh Fukui Plant

64-1 Ohmi, Sakai-cho, Sakai-gun, Fukui 919-0547, Japan                (81) 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

**Area of Operations**                                                **Date of Establishment**

Supplies                                                              May 1982

---

▶ **Ricoh Gotemba Plant**

1-10 Komakado, Gotemba, Shizuoka 412-0038, Japan                      (81) 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

**Area of Operations**                                                **Date of Establishment**

Copiers, fax machines and data processing systems                    October 1985

---

▶ **Ricoh Yashiro Plant**

30-1 Saho, Yashiro-cho, Kato-gun, Hyogo 673-1447, Japan               (81) 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

**Area of Operations**                                                **Date of Establishment**

Electronic devices                                                   April 1989

---

▶ **Ricoh Optical Industries Co., Ltd.**

10-109 Ohata, Hanamaki, Iwate 025-0303, Japan   (81) 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

**Area of Operations**                           **Date of Establishment**

Photographic equipment                           July 1973

---

▶ **Tohoku Ricoh Co., Ltd.**

3-1 Shinmeido, Nakanomyo Shibata-machi, Shibata-gun, Miyagi 989-1695, Japan    (81) 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

**Area of Operations**                                                        **Date of Establishment**

OA equipment and parts for copiers                                            July 1967

---

▶ **Hasama Ricoh, Inc.**

86 Aza-Kitasanden, Sanuma, Hasama-cho, Tome-gun, Miyagi 987-0511, Japan    (81) 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

**Area of Operations**                                                    **Date of Establishment**

Parts for copiers and data processing equipment | April 1973

▶ **Ricoh Unitechno Co., Ltd.**

713 Tsurugasone, Yashio, Saitama 340-0802, Japan | (81) 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

**Area of Operations** | **Date of Establishment**

Fax machines, copiers and microfilm equipment | October 1967

▶ **Ricoh Keiki Co., Ltd.**

3144-1 Aza-Ipponguri Shimoizumi, Kuboizumi-machi, Saga 849-0903, Japan | (81) 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

**Area of Operations** | **Date of Establishment**

Parts for copiers and data processing equipment | March 1950

▶ **Ricoh Microelectronics Co., Ltd.**

10-3 Kitamura, Tottori 680-0911, Japan | (81) 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

**Area of Operations** | **Date of Establishment**

Printed circuit boards | April 1988

▶ **Ricoh Elemex Corporation**

2-13 Nishiki 2-chome, Naka-ku, Nagoya, Aichi 460-0003, Japan | (81) 52-223-5221

**Area of Operations** | **Date of Establishment**

OA equipment, clocks, watches, and educational eqipment | April 1938

■ **Overseas**

▶ **Ricoh Electronics, Inc.**

One Ricoh Square, 1100 Valencia Avenue, Tustin, California 92680, U.S.A | (1)714-566-2500

**Area of Operations** | **Date of Establishment**

| | |
|---|---|
| OA equipment and supplies | January 1973 |

### ▶ Ricoh Electronics, Inc. Georgia Plant

| | |
|---|---|
| 1125 Hurricane Shoals Road, Lawrenceville, Georgia 30243, U.S.A. | (1)770-338-7200 |
| **Area of Operations** | **Date of Establishment** |
| Supplies | July 1990 |

### ▶ Ricoh UK Products Ltd.

| | |
|---|---|
| Priorslee, Telford, Shropshire TF2 9NS, U.K. | (44)1952-29-0090 |
| **Area of Operations** | **Date of Establishment** |
| Copiers and supplies | December 1983 |

### ▶ GR Advanced Materials Ltd.

| | |
|---|---|
| P.O. Box 22 Stirling, FK9 5N2, Scotland, U.K. | (44)178-644-6555 |
| **Area of Operations** | **Date of Establishment** |
| Supplies of duplicators | *January 1994 |

### ▶ Ricoh Industrie France S.A.

| | |
|---|---|
| 144 Route de Rouffach 68920, Wettolsheim, France | (33)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 |
| **Area of Operations** | **Date of Establishment** |
| Copiers, fax machines and supplies | April 1987 |

### ▶ Taiwan Ricoh Co., Ltd.

| | |
|---|---|
| 34 Lane 200, Jwu Her Road, Fuh Shing Li, Chang Hwa, Taiwan | (886)47-224661 |
| **Area of Operations** | **Date of Establishment** |
| Photographic equipment | June 1966 |

### ▶ Ricoh Component (H.K.) Ltd.

| | |
|---|---|
| 3/F., Grandmark, 8A-10 Granville Road, Tsim Sha Tsui, Kowloon, Hong Kong | (852)3684-238 |

| Area of Operations | Date of Establishment |
|---|---|
| Parts and components | March 1994 |

### ▶ Ricoh Asia Industry (Shenzhen) Ltd.

| Color TV Industrial Zone, Futian District, Shenzhen, People's Republic of China | (86)21-755-3360-885 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Copiers | January 1991 |

### ▶ Ricoh Dianzhuang (Shenzhen) Electronics Co., Ltd.

| Shangimei Lin, Beihuan Road, Shenzhen, People's Republic of China | (86)755-331-8240 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Copiers | September 1992 |

### ▶ Ricoh International (Shanghai) Co., Ltd.

| F-7-6 Block Xiya-Lu, Waigaoqiao Free Trade Zone, Shanghai, People's Republic of China | (86)21-5046-0698 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Fax machines and copiers | December 1996 |

### ▶ Sindo Ricoh Co., Ltd.

| 277-22, 2Ka, Sungsu-Dong, Sungdong-ku, Seoul 133, Republic of Korea | (82)2-463-3781 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Copiers, fax machines and supplies | July 1960 |

### ▶ Shanghai Ricoh Facsimile Co., Ltd.

| No.885, Jingang Rd., Jinqiao Export Processeing Area, Pudong, Shanghai, People's Republic of China | (86)21-5854-9000 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Fax machines | October 1993 |

|Manufacturing Facilities |Research and Development |CONTACT RICOH |COMMENTS |

Copyright (C) 2000-2002 Ricoh Co., Ltd. All Rights Reserved.

 **RICOH** Image Communication

◢Home |About Ricoh |Products |Investor Information |Environment |

■ **Research and Development Facilities**

▶ **Ricoh Research and Development Center**

| | |
|---|---|
| 16-1 Shinei-cho, Tsuzuki-ku, Yokohama 224-0035, Japan | (81) 45-593-3411 |
| **Area of Operations** | **Date of Establishment** |
| Materials, devices research and development | April 1986 |

▶ **Photonics R&D Center**

| | |
|---|---|
| 16-1 Shinei-cho, Tsuzuki-ku, Yokohama 224-0035, Japan | (81) 45-593-3411 |
| **Area of Operations** | **Date of Establishment** |
| Photonics-related technology research and development | April 2002 |

▶ **Environmental Technology R&D Center**

| | |
|---|---|
| 16-1 Shinei-cho, Tsuzuki-ku, Yokohama 224-0035, Japan | (81) 45-593-3411 |
| **Area of Operations** | **Date of Establishment** |
| Enviromental technology research and development | April 2002 |

▶ **Optical Memory R&D Center**

| | |
|---|---|
| 16-1 Shinei-cho, Tsuzuki-ku, Yokohama 224-0035, Japan | (81) 45-593-3411 |
| **Area of Operations** | **Date of Establishment** |
| Optical memory-related technology research and development | April 2002 |

▶ **Manufacturing Technology R&D Center**

| | |
|---|---|
| c/o Ricoh Atsugi Plant, 1005 Shimo-Ogino, Atsugi, Kanagawa 243-0298, Japan | (81) 46-241-1511 |
| | **Date of** |

| Area of Operations | Establishment |
|---|---|
| Manufacturing system technology research and development | April 1985 |

▶ **General Electronics R&D Center**

| 5-10 Aza-Yokata-Kami, Kumanodo Takadate, Natori, Miyagi 981-1241, Japan | (81) 22-386-2011 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Compounds and devices research and development | April 1984 |

▶ **Office System R&D Center**

| 16-1 Shinei-cho, Tsuzuki-ku, Yokohama 224-0035, Japan | (81) 45-593-3411 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Total R&D forecasting future offices | August 1997 |

▶ **Imaging LSI R&D Center**

| c/o Ikeda Plant, 13-1 Himemuro-cho, Ikeda, Osaka 563-8501, Japan | (81)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 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Electronic device component technology research and development | September 1983 |

▶ **Software R&D Group**

| Tomin Nissei Kasuga-cho Bldg., 1-17 Koishikawa 1-chome, Bunkyo-ku, Tokyo 112-0002, Japan | (81) 3-3815-7261 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Software research and development | May 1982 |

▶ **Ricoh Toda Technical Center**

| 2446, Toda, Atsugi, Kanagawa 243-0023, Japan | (81) 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 |
|---|---|
| **Area of Operations** | **Date of Establishment** |
| Communications-related equipment research and development | July 1980 |

▶ **Ricoh Tottori Technical Development Co., Ltd.**

1-100 Chiyomi, Tottori 680-1172, Japan          (81) 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

**Area of Operations**                          **Date of Establishment**

Software research and development               September 1983

---

▶ **Ricoh System Kaihatsu Co., Ltd.**

Forefront Tower, 12-1, Kachidoki 3-chome, Chuo-ku, Tokyo 104-0054, Japan          (81) 3-5560-8911

**Area of Operations**                          **Date of Establishment**

Software research and development               October 1982

---

▶ **Ricoh System Kaihatsu Co., Ltd. (Kitami)**

592-7 Takiwa-cho 2-chome, Kitami, Hokkaido 090-0013, Japan          (81) 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

**Area of Operations**                          **Date of Establishment**

Software research and development               October 1989

---

▶ **Ricoh System Kaihatsu Co., Ltd. (Akita)**

6-46 Omachi 2-chome, Akita 010-0921, Japan          (81) 18-864-1211

**Area of Operations**                          **Date of Establishment**

Software research and development               April 1990

---

▶ **Ricoh System Kaihatsu Co., Ltd. (Kagoshima)**

2-30 Yamanokuchi-cho, Kagoshima 892-0844, Japan          (81) 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

**Area of Operations**                          **Date of Establishment**

Software research and development               October 1990

---

▶ **Imaging Technology Division**

c/o Omori Office, 1-3-6 Nakamagome, Ota-ku, Tokyo 143-8555, Japan          (81)3-3777-8111

**Area of Operations**                          **Date of**

| | |
|---|---|
| Imaging technology-related R&D | **Establishment** April 1999 |

▶ **Ricoh Innovations, Inc.**

| | |
|---|---|
| 2882 Sand Hill Road, Suite 115, Menlo Park, California 94025-7022, U.S.A. | (1) 650-496-5700 |
| **Area of Operations** | **Date of Establishment** |
| Basic and applied R&D and venture capital financing | March 1997 |

▶ **Ricoh Corporation Office Solutions and Systems Development Group**

| | |
|---|---|
| 2071 Concourse Drive, San Jose, California 95131, U.S.A. | (1) 408-432-8800 |
| **Area of Operations** | **Date of Establishment** |
| OA-related equipment research and development | May 1994 |

▶ **Ricoh European Digital Solution Center**

| | |
|---|---|
| Oberrather Strasse 6, 40472, Düsseldorf, Germany | (49) 21-165-460 |
| **Area of Operations** | **Date of Establishment** |
| Communications-related equipment | October 1987 |

|Manufacturing Facilities |Research and Development |CONTACT RICOH |COMMENTS |

Copyright (C) 2000-2003 Ricoh Co., Ltd. All Rights Reserved.



|Home |About Ricoh |Products |Investor Information |Environment |

**Overseas Sales Subsidiaries**

| Americas | Europe | Asia/Oceania |
|---|---|---|

### ■ Americas

#### ▶ Ricoh Corporation

5 Dedrick Place, West Caldwell, New Jersey
07006, U.S.A.                                    (1)973-882-2000

**Area of Operations**                          **Date of
                                                Establishment**

Marketing in U.S.A.                             December 1962

---

#### ▶ Ricoh Silicon Valley, Inc.

4 Results Way, Cupertino, California 95014,
U.S.A.                                          (1)408-346-4500

**Area of Operations**                          **Date of
                                                Establishment**

Marketing Worldwide                             March 1997

---

#### ▶ Savin Corporation

Stamford Harbor Park 333, Ludlow Street,
Stamford, Connecticut 06904, U.S.A.             (1) 203-967-5000

**Area of Operations**                          **Date of
                                                Establishment**

Marketing in U.S.A.                             *March 1995

---

#### ▶ Ricoh Latin America, Inc.

7650 NW 19 Street, Suite #290, Miami, Florida
33126, U.S.A.                                   (1) 305-597-1000

**Area of Operations**                          **Date of
                                                Establishment**

Marketing in Latin America                      October 1997

---

#### ▶ Ricoh Canada, Inc.

| | |
|---|---|
| 4100 Yonge Street, Suite 600, Toronto, Ontario, M2P 2B5, Canada | (1) 416-218-8202 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Canada | January 1997 |

▶ **Ricoh Mexicana, S.A. de C.V.**

| | |
|---|---|
| Insurgentes Sur664 Colonia Del Valle, Mexico, D.F CP 03100 | (525) 682-9360 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Mexico | October 1991 |

▶ **Lanier Worldwide, Inc.**

| | |
|---|---|
| 2300 Parklake Drive, NE, Atlanta, Georgia 30345, U.S.A. | 770-496-9500 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in U.S.A., Europe, Australia and Asia | *January 2001 |

■**Europe**

▶ **Ricoh Europe B.V.**

| | |
|---|---|
| Groenelaan 3, 1186 AA Amstelveen, Netherlands | (31)20-5474-111 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Europe, Midde East, and Africa | November 1971 |

▶ **Ricoh Nederland B.V.**

| | |
|---|---|
| Basicweg 24, 3821 BR, Amersfoort, Netherlands | (31)33-5407-811 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in the Netherlands | April 1988 |

▶ **Ricoh Austria GmbH**

| | |
|---|---|
| Kettenbrückengasse 16, 1052, Vienna, Austria | (43)1-588-650 |

| Area of Operations | Date of Establishment |
| --- | --- |
| Marketing in Austria, Bosnia-Herz.,Macedonia and Yugoslavia | November 1996 |

---

▶ **Ricoh Deutschland GmbH**

| Mergenthalerallee 38-40, 65760, Eschborn, Germany | (49) 6196-9060 |
| --- | --- |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Germany | July 1978 |

---

▶ **Ricoh UK Ltd.**

| Ricoh House, 1 Plane Tree Crescent, Feltham, Middlesex TW13 7HG, U.K. | (44)20-8261-4000 |
| --- | --- |
| **Area of Operations** | **Date of Establishment** |
| Marketing in U.K. and Ireland | July 1980 |

---

▶ **NRG Group PLC**

| 66 Chiltern Street, London W1U 4AG, U.K. | (44)20-7465-1000 |
| --- | --- |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Europe, Middle East and Africa | *October 1991 |

---

▶ **Ricoh France S.A.**

| 383, Avenue du Général de Gaulle BP307, 92143 Clamart Cédex, France | (33) 1-4094-3838 |
| --- | --- |
| **Area of Operations** | **Date of Establishment** |
| Marketing in France | May 1986 |

---

▶ **Ricoh Italia S.p.A.**

| Viale Della Metallurgia 12, Zona Basson 37139 Verona, Italy | (39) 045-8181500 |
| --- | --- |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Italy | September 1990 |

---

► **Ricoh España S.A.**

Avda. Litoral Mar.12-14 08005, Barcelona, Spain       (34) 9-3-295-7600

| **Area of Operations** | **Date of Establishment** |
|---|---|
| Marketing in Spain | April 1986 |

► **Ricoh Norge A.S.**

Gjerdrumsvel 11, Nydalen Park, 0486 Oslo, Norway       (47) 22-68-7800

| **Area of Operations** | **Date of Establishment** |
|---|---|
| Marketing in Norway | *February 1987 |

► **Ricoh Hungary Kft.**

Lomb.U 37-39 H-1139, Budapest, Hungary       (36) 1-270-9797

| **Area of Operations** | **Date of Establishment** |
|---|---|
| Marketing in Hungary | *May 1995 |

► **Ricoh Polska Sp.zo.o.**

Al. Jerozolimskie 146A 20-305, Warszawa, Poland       (48)22-608-1555

| **Area of Operations** | **Date of Establishment** |
|---|---|
| Marketing in Poland | April 1996 |

► **Ricoh Europe B.V. Belgium Branch**

Horizon Park Leuvensesteenweg 510, Gebouw 7, Bus 46, 1930 Zaventem, Belgium       (32)271-212-12

| **Area of Operations** | **Date of Establishment** |
|---|---|
| Marketing in Belgium | April 1985 |

► **Ricoh Europe B.V. Portugal Branch**

Rue da Paz 66-06, 4050 PORTO, Portugal       (351)2-2-608-3800

| **Area of Operations** | **Date of Establishment** |
|---|---|
| Marketing in Portugal | January 1994 |

■**Asia/Oceania**

▶ **Ricoh China Co., Ltd.**

| | |
|---|---|
| 29/F.,Lippo Plaza, No.222 Huai Hai Zhong Road, Lu Wan District, Shanghai, China | (86)21-5396-6888 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in mainland China | January 2003 |

▶ **Ricoh Hong Kong Ltd.**

| | |
|---|---|
| 21/F., Tai Yau Building, 181 Johnston Road, Wan Chai, Hong Kong | (852) 2862-2888 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Hong Kong area | December 1978 |

▶ **Ricoh Asia Pacific Pte. Ltd.**

| | |
|---|---|
| 260 Orchard Road #15-01/02 The Heeren, Singapore 238855 | (65)830-5888 |
| **Area of Operations** | **Date of Establishment** |
| Marketing in Asia and Oceania | December 1996 |

▶ **Ricoh Electronic Technology, (Beijing) Co., Ltd.**

| | |
|---|---|
| No.6 Yangfangdian Road, Haidian District, Beijing 100038, People's Republic of China | (86) 10-6396-9392 |
| **Area of Operations** | **Date of Establishment** |
| Marketing supplies in China | August 1995 |

▶ **Ricoh Software Technology (Shanghai) Co., Ltd.**

| | |
|---|---|
| Xinyin Building 20F, No.888 Yishan Road, Shanghai, People's Republic of China | (86) 21-6495-8992 |
| **Area of Operations** | **Date of Establishment** |
| Software development | June 2002 |

### ▶ Ricoh International Logistics (H.K.) Ltd.

9/F, No. 100 Canton Road, Tsimshatsui, Kowloon, Hong Kong

(852) 2369-7128

**Area of Operations**

**Date of Establishment**

Logistics, warehousing, packaging, export and import

February 1995

---

### ▶ Ricoh (Singapore) Pte Ltd.

4 Leng Kee Road #03/04/05/06 SiS Building Singapore 159088

65-6474-0777

**Area of Operations**

**Date of Establishment**

Marketing in Singapore

September 1995

---

### ▶ Ricoh (Malaysia) Sdn.Bhd.

3rd. Fl., Lot 1, Jalan 13/6, 46200 Petaling Jaya, Selangor Darul Ehsan, Malaysia

603-757-3311

**Area of Operations**

**Date of Establishment**

Marketing in Malaysia

September 1995

---

### ▶ Ricoh (Thailand) Limited

106 Sukhumvit 77, Soi Onnuji, Prawet Bangkok 10250,Thailand

66-2-322-9840

**Area of Operations**

**Date of Establishment**

Marketing in Thailand

September 1995

---

### ▶ Ricoh (Philippines),Inc.

2316 B1, Karrivin Plaza,Pasong Tamo Extention, Magallanes, Makati City, 1232 Manila, Philippines

632-729-3210

**Area of Operations**

**Date of Establishment**

Marketing in Philippines

September 1995

---

### ▶ Ricoh Australia Pty, Ltd.

8 Rodborough Road, Frenchs Forest, NSW 2086 Australia

(61)-2-8977-1111

Case 5:03-cv-04669-JW    Document 37-3    Filed 11/17/2003    Page 82 of 87

| Area of Operations | Date of Establishment |
|---|---|
| Marketing in Australia | March 1995 |

▶ **Ricoh New Zealand Ltd.**

| 60 Stanley St., Parnell, P.O. Box 68-024, Newton Auckland 1, N.Z. | 64-9-357-4910 |
|---|---|

| Area of Operations | Date of Establishment |
|---|---|
| Marketing in New Zealand | September 1995 |

▶ **Ricoh India Limited**

| 52-B, First Floor, Okhla Industrial Estate (Phase III) New Delhi, 110 020 India. | (91)-11-631-1480 |
|---|---|

| Area of Operations | Date of Establishment |
|---|---|
| Marketing in India | October 1993 |

\* Indicates date when company became part of the Ricoh Group.

|Manufacturing Facilities |Research and Development |CONTACT RICOH |COMMENTS |

Copyright (C) 2000-2003 Ricoh Co., Ltd. All Rights Reserved.

**RICOH**
Image Communication

How well d

Home | About Ricoh | Product Showroom | Support Center | Software Download | Conta

About Ricoh > Corporate Overview

- Corporate Overview
- History of Ricoh
- Ricoh Environment
- Image Comm.
- Media Library
- Better in the USA
- Diversity Program
- Investor Relations
- Press Releases
- Office Locations
- Awards
- Accessibility

# corporate overview

**Ricoh Corporation Established:** December 13, 1962

**Type of Business:** Distributor, importer, provider, marketing, sales and service.

**Major Products:** Digital imaging systems, facsimiles, multifunctional systems, scanners, printers, cameras and related supplies.

**Parent Company:** Ricoh Company, Ltd. Tokyo, Japan

Ricoh Corporation, a 40 year-old U.S. company with headquarters in West Caldwell, Nev diversified office automation equipment and electronics provider with sales in excess of annually.

Ricoh is a leading provider of digital office equipment, including color and black & white Printers, Facsimile systems, Scanners, Digital Duplicators, Wide format copiers, and Dig

Ricoh Corporation also has three wholly-owned subsidiaries that are OEM distributors of products. These companies are Savin purchased in 1995, Gestetner in 1995, and Lanier 2001.

Supporting the marketing and sales for its full line of brand name office products, Ricoh nationwide network of independent dealers as well as regional direct sales forces. Additi markets its products through 4 wholly-owned subsidiaries that sell its brand name solut

## Corporate Divisions

▶ **Ricoh Business Systems, Inc.**
Ricoh Business Systems, Inc., (RBS) are wholly owned sales subsidiaries of Ricoh Corporati Northern New Jersey, Troy, Michigan; Southern California; and Seattle, Washington. RBS se comprehensive resource for distributing Ricoh's full line of office equipment. RBS brings gro geographical areas and increases marketing efforts on a national scale.

▶ **Ricoh Electronics, Inc.**
Ricoh Electronics, Inc. (REI) is Ricoh's U.S. manufacturing subsidy based in Tustin, Californi manufacturing Ricoh products in 1973, making Ricoh the first Japanese manufacturer to ma equipment and consumables in the United States. Since then, REI has developed toner and facilities in Santa Ana, plain-paper copier and printed circuit board facilities in Tustin, dry to and thermal media facilities in Lawrenceville, Georgia and a dry toner facility in Toluca, Mex

▶ **Ricoh Silicon Valley**
In 1997, Ricoh Company, Ltd. announced the creation of a new business development and subsidiary in Menlo Park, CA - Ricoh Silicon Valley, Inc. (RSV) - a wholly owned subsidiary Company Ltd. RSV includes Ricoh's California Research Center, which had been conducting applied research in Menlo Park for more than eight years, and a new unit, the Ricoh Strateg Center, which is charged with forging alliances and making equity investments.

Ricoh Silicon Valley, Inc. (RSV) - has pioneered a new class of products called Network Offi NOAs take maximum advantage of the combining strengths of office networks to provide cu efficient, easy-to-use and affordable solutions for document management.

▶ **Ricoh Canada**



Ricoh Canada is a wholly owned subsidiary of Ricoh Corporation. Located in Toronto with m
employees nationwide, Ricoh Canada is a leading provider of high quality document and im:
including black and white, color and multifunctional copiers, networked faxes, printers and :

▶ **Ricoh Latin America**

Home  |  About Ricoh  |  Product Showroom  |  Support Center  |  Software Download  |  Contact  |  Se

Copyright © 2001-200



We're in yo[u

| Home | About RBS | Product Showroom | Support Center | Software Download | Soluti

About RBS > RBS Locations

# **rbs** locations

▶ Outsourcing
▶ Supplies
▶ Solution Consulting
▶ Other Interests

About RBS
> Quality
> Support
  • Why Ricoh?
> Satisfaction
> Mission Statement
> Product & Awards
> Locations
> Contact RBS

**Contacting Ricoh Business Systems, Inc.**

Inquiries from companies with **no** offices in Southern California may be directed to a more local Ricoh office.
To find an authorized Ricoh dealer anywhere in the US feel free to call (800)63-RICOH

Get driving direction with **MapQuest**

### RICOH CORPORATE HEADQUARTERS
Ricoh Corporation
5 Dedrick Place
West Caldwell, NJ 07006
Phone: 973/882-2000
Fax: 973/882-5840

| **RBS Headquarters-Huntington Beach California:** | **RBS San Diego California** | **RBS Los Angeles California** |
|---|---|---|
| Ricoh Business Systems, Inc.<br>5632 Bolsa Ave.<br>Huntington Beach, CA 92649<br>(800) 776-9484<br>Executive Fax (714) 903-3291<br>Administration Fax (714) 892-6275<br>Order Processing Fax (714) 903-4275<br>Service Fax (714) 372-3102<br>Sales Fax (714) 903-3264 | Ricoh Business Systems, Inc.<br>5095 Murphy Canyon Rd., Suite 120<br>San Diego, CA 92123<br>(858) 495-1050<br><br>Sales Fax (858) 495-1067 | Ricoh Business Systems, Inc.<br>5670 Wilshire Blvd. #120<br>Los Angeles, CA 90036<br>(323) 954-6800<br><br>Sales Fax (323) 954-6900 |
| **Network Solutions Group**<br>**Help Desk** (877) 423-4246<br>(714) 891-9397 ex: 2096 or 2095 | **RBS Carpinteria California**<br>Ricoh Business Systems, Inc.<br>6305 Carpinteria Ave., Suite 200<br>Carpinteria, CA 93013<br>(805) 684-6399<br>Sales Fax (805) 684-6369 | **RBS Ontario California**<br>Ricoh Business Systems, Inc.<br>3200 Inland Empire Bl. Suite 190<br>Ontario, CA 91764<br>(909) 476-0800<br>Sales Fax (909) 476-0822 |



View larger Map
See Legend

Home  |  About RBS  |  Product Showroom  |  Support Center  |  Software Download  |  Contact  |

Copyright © 2001 Ricoh Co., Ltd.



**RICOH**
RICOH SILICON VALLEY

HOME ◼ PRODUCTS ◼ SUPPORT ◼ PARTNERS ◼ NEWS ◼ CAREERS ◼ ABOUT U

**FIND**    Path: ▸ **Home** ▸ **About Us** ▸ Office Locations

**About Us**
▸ **Philosophy**
▸ **Fact Sheet**
▸ **Executive Team**
▸ **RSV Advertising**
▸ **Office Locations**
▸ **Contact Us**

Save Everything. Find Anything.

## Office Locations

**Ricoh Silicon Valley, Inc.**
4 Results Way
Cupertino, CA 95014
Phone (408) 346-4500
Fax (408) 346-4550
**click here to view map**

**Ricoh Innovations, Inc.**
2882 Sand Hill Road, Suite 115
Menlo Park, CA 94025-7022
Phone (650) 496-5700
Fax (650) 854-8740
**http://rii.ricoh.com**

**Sales Information**
(877) 580-3030

**Technical support**
(888) 742-6466, 7am - 7pm CST

Executi

**Minshull**
Presiden

**Harada,**
Vice Pres
Engineer

**Piersol,**
Chief Tec

**Lopez, A**
Vice Pres
Sales & M

**Pinkston**
Vice Pres
Finance

HOME | PRODUCTS | SUPPORT | PARTNERS | NEWS | CAREERS | ABOUT US

Copyright © 1999-2002 Ricoh Silicon Valley, Inc.

Exhibit D

# DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 828-2228*
*E-Mail Address: HoffmanG@dsmo.com*

March 7, 2003

**BY CERTIFIED MAIL-**
**RETURN RECEIPT REQUESTED**

Mr. Steve McMinn
President & CEO
Chip Express Corporation
2323 Owen Street
Santa Clara CA 95054

**CONFIDENTIAL TREATMENT**
**REQUESTED**

Dear Mr. McMinn:

We are writing to you on behalf of Ricoh Company Ltd. because we are aware that your company is involved with the design of custom ICs that include application specific designed circuitry. We understand that in designing these circuits, you use a computer-aided design system obtained from Synopsys, including Design Compiler.

As you may know, Ricoh owns two of the basic patents directed to computer-aided design processes. These are U.S. Patent Nos. 4,922,432 and 5,197,016. They cover significant advances in computer-aided design processes for designing custom designed ICs for specific applications directly from architecture independent functional specifications for the integrated circuit. We are enclosing copies of these patents for your information.

While Ricoh is currently enforcing these patents in a lawsuit it recently filed in the U.S. District Court for the District of Delaware, Ricoh remains willing to license the patents. In fact, Ricoh has already granted non-exclusive licenses under these patents. Ricoh also would be willing to provide your company with a non-exclusive license. For your information, there are counterpart patents and applications in a number of countries outside the United States.

Because Ricoh is at an early stage in its licensing activities, at the current time, Ricoh is prepared to grant a non-exclusive license on favorable terms. However, we trust you will recognize that such favorable terms will cease to exist as time progresses.

If you are of the opinion that you do not need or want a license from Ricoh, it would be helpful if you would give us some insight into your reasons. We request your response within 60 days from the date of this letter.

Very truly yours,

Gary M. Hoffman

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.legalinnovators.com*

Exhibit E

# Patent Assignment Abstract of Title

**NOTE:Results display only for issued patents and published applications. For pending or abandoned applications please consult USPTO staff.**

**Total Assignments: 3**
  **Patent #:** 4922432    **Issue Dt:** 05/01/1990    **Application #:** 07143821    **Filing Dt:** 01/13/1988
**Inventors:** HIDEAKI KOBAYASHI, MASAHIRO SHINDO
       **Title:** KNOWLEDGE BASED METHOD AND APPARATUS FOR DESIGNING INTEGRATED CIRCUITS USING FUNCTIONAL SPECIFICATIONS
**Assignment: 1**
   **Reel/Frame:** 004836/0017       **Recorded:** 01/13/1988              **Pages:** 3
   **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST.
     **Assignors:** KOBAYASHI, HIDEAKI              **Exec Dt:** 01/12/1988
                SHINDO, MASAHIRO               **Exec Dt:** 01/12/1988
     **Assignees:** INTERNATIONAL CHIP CORPORATION, COLUMBIA, SOUTH CAROLINA A CORP. OF SC
                RICOH COMPANY, LTD.
  **Correspondent:** RAYMOND O. LINKER, JR.
                BELL, SELTZER, PARK & GIBSON
                POST OFFICE DRAWER 34009
                CHARLOTTE, NC 28234
**Assignment: 2**
   **Reel/Frame:** 007411/0318       **Recorded:** 03/20/1995              **Pages:** 2
   **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
     **Assignor:** INTERNATIONAL CHIP CORPORATION      **Exec Dt:** 07/23/1991
     **Assignee:** KNOWLEDGE BASED SILICON CORPORATION
                1201 MAIN STREET, STE. 2000 COLUMBIA, SC 29201
  **Correspondent:** RAYMOND O. LINKER, JR.
                BELL, SELTZER, PARK & GIBSON
                P.O. DRAWER 34009
                CHARLOTTE, NC 28234
**Assignment: 3**
   **Reel/Frame:** 012333/0522       **Recorded:** 12/04/2001              **Pages:** 3
   **Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
     **Assignor:** KNOWLEDGE BASED SILICON CORPORATION    **Exec Dt:** 10/12/2001
     **Assignee:** RICOH COMPANY, LTD.
                OHTA-KU
                3-6, 1-CHOME NAKAMAGOME
                TOKYO, JAPAN
  **Correspondent:** DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
                MARK J. THRONSON
                2101 L STREET, N.W.
                WASHINGTON, DC 20037

Search Results as of: 2/20/2003 2:53:42 P.M.

If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 703-308-9723
Web interface last modified: Oct. 3, 2002

Exhibit F



Knowledge Edge, K.K.

A Knowledge Outsourcing Company

About Knowledge Edge    Employment    Contact    ▶▶ view in Japanese

## SERVICE

- ▶ **DESIGN**
- ▶ **TRAINING**

## About Knowledge Edge

### What we offer

Knowledge Edge, a leading design and consulting services provider, offers clients the talents of its domain-experts and senior and mid-level HW and SW professionals. The Company also provides market and methodology consulting, project leadership and engineering training services related to System-LSI product design. Our customer base includes several of the world's largest electronic companies, active in Japan and the United States. Knowledge Edge acts as an agent of change for its clients, contributing to their competitiveness and helping them strengthen their position in the global marketplace.

### Leadership

Dr. Hideaki Kobayashi, Chairman of Knowledge Edge, earned his Ph.D. in Tokyo, from Waseda University's School of Science and Engineering in 1979. From 1980-2001 he taught on the faculty of the College of Engineering at the University of South Carolina. During this time Dr. Kobayashi gained international acclaim for his work in the field of knowledge-based system design. In 1985 Dr. Kobayashi founded Knowledge Based Silicon Corporation, a pioneering CAD tool (for ASIC chip design) provider. He maintains close contacts throughout the world with many leaders in the electronics industry.

Teruo Horiuchi, Executive Vice President, has held engineering and Management positions at Fujitsu and Seiko Instruments. He also served as a consulting executive of Cadence Design Systems, prior to joining KE.

### Offices

*Japan*
Knowledge Edge, K.K.
Hachi-honkan 7F
Minami Aoyama 5-10-1
Minato-ku, Tokyo 107-0062
Tel: +81.3.5766.1511
Fax: +81.3.5766.1512

*U.S.*

Knowledge Edge, Inc.
(100% subsidiary of Knowledge Edge, K.K.)
201 San Antonio Circle, Suite225
Mountain View, CA94040
Tel: +1.650.947.8350
Fax: +1.650.947.8351

*China*

Knowledge Edge Shanghai Office
22F United Plaza, 1468 Nan Jing Rd.
West, Shanghai 200040
Tel: +86.21.6247.0682/0683
Fax: +86.21.6247.0696

© 2001 Knowledge Edge, K.K.

http://www.knowledge-edge.com/index.html



# Company Profile
## KNOWLEDGE BASED SILICON CORPORATION

Knowledge Based Silicon Corporation (KBS) designs, manufactures, markets and supports graphical HDL solutions for the design of integrated circuits and electronic systems. KBS' patented design methodology, combined with a growing suite of design entry, simulation and verification tools, offers enhanced design productivity and faster time-to-market compared to traditional circuit and system design methodologies.

The mission of KBS is to bridge the gap between ES-level and RT-level design by allowing designers to progress easily between RT and ES-level technologies. KBS brings gate and RT-level knowledge upstream in the design process, allowing more informed decision making at the system level of design. This methodology supports the move to deep sub-micron and low power design styles that are the current trend in the industry. KBS is committed to providing the next generation tools and methodologies that will help customers build high-quality systems in silicon quickly and easily.

KBS was founded in 1985 by Dr. Hideaki Kobayashi, a graduate of Waseda University, Japan and an Associate Professor of Electrical and Computer Engineering at the University of South Carolina in Columbia, South Carolina. For over 15 years, Dr. Kobayashi has performed pioneering research in the application of artificial intelligence (AI) technology for very large scale integration (VLSI) design.

While providing world class R & D services for major Japanese electronics companies for seven years, KBS made advanced developments in the areas of digital and analog design tools for VLSI circuits, expert systems and AI RISC processor chips for embedded intelligent systems applications. This work resulted in several worldwide patents being granted to the company.

In 1991, with advances in technology and changes in its target markets, KBS shifted its business emphasis to being a market-oriented product supplier in the high level design automation industry. KBS is committed to providing high-quality graphical HDL solutions at competitive prices for target customers, including computer, semiconductor, electronic, automotive, aerospace, defense, manufacturing and telecommunication companies who design application specific integrated circuits (ASICs), field programmable gate arrays (FPGAs) and programmable logic devices (PLDs).

KBS' two core products are flowHDL and blockHDL. flowHDL is a "graphical modeling and simulation" toolset which increases design productivity and reduces time-to-market by allowing users to easily and intuitively model design behavior graphically. With flowHDL, users are able to design by building algorithmic state machine (ASM) models. In addition, design behavior can be simulated before generating HDL code, thus saving time in downstream HDL simulation.

blockHDL is a "system binding" toolset that enables users to create large, complex systems in an entry format similar to schematic entry. With blockHDL, users represent the structure of a complex hierarchical system and bind together behavioral descriptions created by various design entry methods. The structure and interconnect for the entire model may then be verified, and hierarchically structured VHDL or Verilog HDL code may be generated. blockHDL makes it easy to modify, maintain, and re-use HDL components.

Exhibit G

LEXSEE 2002 U.S. Dist. LEXIS 20574

**IKOS SYSTEMS, INC., Plaintiff, v. CADENCE DESIGN SYSTEMS, INC., and QUICK TURN DESIGN SYSTEMS, INC., Defendant.**

**C.A. No. 02-1335-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 20574*

**October 21, 2002, Decided**

**DISPOSITION:**
[*1] Defendants' motion to transfer the case granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff sued defendants for patent infringement. Defendants moved to transfer the case to the United States District Court for the Northern District of California pursuant to *28 U.S.C.S. § 1404*(a).

**OVERVIEW:** Defendants moved to have the case transferred to the Northern District of California, where each of the parties was headquartered. Defendants demonstrated to the court that transfer was appropriate. While the parties were Delaware corporations and could reasonably expect to litigate in Delaware, there appeared to be little connection between Delaware and the lawsuit or the parties. Each party was headquartered in northern California. The parties were large national and international organizations with apparently substantial assets. Because the parties maintained geographically diverse operating locations, travel time and convenience in the aggregate would be neither increased nor decreased substantially with a transfer of forum. Any disparity in court congestion was not so great as to justify a transfer of venue. The relevant industry in the instant patent suit was the Electronic Design Automotive Industry, which apparently was located in northern California. Finally, while some potential witnesses who were not employed by defendants resided the East Coast, it appeared that the majority of the potential witnesses were located in the Northern District of California.

**OUTCOME:** The court granted defendants' motion for transfer.

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] *28 U.S.C.S. § 1404*(a) provides that for convenience of the parties and witnesses, in the interest of justice, the court may transfer a civil action to any other district where it might have been brought. It is the movants burden to establish the need for transfer, and the plaintiff's choice of venue will not be lightly disturbed.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] When considering a motion to transfer, the court must determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. Among the relevant public interests are: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the public policies of the fora.

**COUNSEL:**
For Ikos Systems Inc, PLAINTIFF: Robert K Payson, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Cadence Design Systems, Inc, Quickturn Design Systems, Inc, DEFENDANTS: Josy W Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Cadence Design Systems, Inc, Quickturn Design Systems, Inc, COUNTER-CLAIMANTS: Josy W Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For Ikos Systems Inc, COUNTER-DEFENDANT: Robert K Payson, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:**
Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:**
Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

**I. INTRODUCTION**

On July 29, 2002, the plaintiff, IKOS Systems, Inc. ("IKOS"), filed the instant action for patent infringement against Cadence Design Systems, Inc. ("Cadence") and Quick Turn Design Systems, Inc. ("Quick Turn") (collectively "the defendants"). IKOS alleges that Quick Turn's Palladium TM design verification product infringes United States Patent No. 5,847,578 ("the '578 patent"). The defendants, move [*2] to transfer this case to the United States District Court for the Northern District of California pursuant to *28 U.S.C. § 1404*(a) (D.I. 11). For the following reasons, the court will grant the defendants' motion.

**II. DISCUSSION**

Each of the parties in this case is a Delaware corporation n1 with headquarters located within several miles of one another in what is commonly known as the Silicon Valley of northern California.

n1 IKOS is a subsidiary of Mentor Graphics Corporation ("Mentor") which is incorporated under the laws of the State of Oregon. The defendants assert that Mentor is the real party in interest in this action. IKOS does not seem to seriously contest this assertion. Nevertheless, given the court's analysis and conclusions as to

the most appropriate forum for the litigation of this matter, the court need not reach this issue.

The defendants move to transfer this action to the District Court for the Northern District of California pursuant to *28 U.S.C. § 1404*(a) [*3] . Section 1404(a) [HN1] provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." *28 U.S.C. § 1404*(a). It is the movants' burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)* (citations omitted).

[HN2] When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.*. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id. at 875, 879.* These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be [*4] produced in the alternative forum. n2 *Id. at 879.* Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

n2 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion the court relied on the following considerations, among others: (1) while [*5] the defendants and the plaintiff are Delaware corporations and should reasonably expect to litigate in the forum, there seems to be little connection between Delaware and

this action or the parties; (2) each party is headquartered in northern California; (3) the parties are large national and international organizations with apparently substantial assets; (4) because the parties maintain geographically diverse operating locations, travel time and convenience in the aggregate would be neither increased nor decreased substantially with a transfer of forum; (5) any disparity in court congestion is not so great as to justify a transfer of venue; (6) while patent disputes are often not properly characterized as "local" in nature or otherwise unique to a particular locale, *see Affymetrix, 28 F. Supp. 2d at 207,* the relevant industry, the Electronic Design Automotive Industry, is apparently located in the Silicon Valley. Finally, IKOS has identified six potential witnesses who are not employed by the defendants and reside on the east coast. n3 However, it appears that the majority of the defendants' engineers, as well as other potential witnesses, are located in the Northern [*6] District. Thus, the court is convinced that this fact and the other public and private interests are sufficient to tip "the balance of convenience ... *strongly* in favor of [the] defendant[s]." *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)* (emphasis in original).

n3 In its brief and an accompanying declaration by Giovanni Mancini, a former employee of the plaintiff, IKOS has identified William R. Beausoleil as a seventh potential non-party employee witness. In his declaration, Mr. Mancini states that the witness elected not to join the defendant, Cadence. In contrast, the defendants offer the declaration of the witness himself. In that declaration, Mr. Beausoleil attests that he entered the employ of Cadence on March 28, 2002. The court will credit Mr. Beausoleil's declaration.

**III. CONCLUSION**

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' motion to transfer the case to the United States District Court for the Northern District [*7] of California (D.I. 11) is GRANTED.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Dated: October 21, 2002

Exhibit H

FOCUS - 9 of 167 DOCUMENTS

**ALLERGAN, INC. and ALLERGAN SALES, LLC, Plaintiffs, v. ALCON LABORATORIES, INC., ALCON RESEARCH LTD., ALCON INC., and BAUSCH & LOMB, INC., Defendants.**

**C.A. No. 02-1682-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 2564*

**February 25, 2003, Decided**

**DISPOSITION:**
[*1] Defendants' motion to transfer this case granted.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff patent holders sued defendant competitors, seeking a declaratory judgment regarding the alleged infringement of a patent based on a continuation application of two patents asserted in a prior action. The competitors moved to transfer the action to the Central District of California, Southern Division.

**OVERVIEW:** The patent holders prosecuted the prior suit in the Central District of California. In that suit, two defendants obtained summary judgment against the patent holder. Shortly after the patent holders filed the instant suit, the competitors filed a "mirror image" suit in the Central District of California. They then sought transfer of the instant suit to that district. Based, in part, on the following, the competitors met their burden of demonstrating that transfer was appropriate: (1) while the patent holders and several of the competitors were Delaware entities, and should reasonably expect to litigate in the forum, there was little connection between Delaware and the instant action or the parties; (2) each party either maintained its principle place of business in California, or had facilities there, whereas no party maintained operations in Delaware; (3) the parties were large and international organizations with apparently substantial assets; and (4) because the parties were already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum.

**OUTCOME:** The court granted the motion.

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] See *28 U.S.C.S. § 1404*(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] In the Third Circuit, when considering a motion to transfer, the court must determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. Among the relevant public interests are: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the public policies of the fora.

**COUNSEL:**
For ALLERGAN INC., ALLERGAN SALES LLC, plaintiffs: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

Case 5:03-cv-04669-JW    Document 37-4    Filed 11/17/2003    Page 16 of 25

Page 2
2003 U.S. Dist. LEXIS 2564, *

For ALCON LABORATORIES, INCORPORATED, ALCON RESEARCH LTD., ALCON INC., defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For BAUSCH & LOMB INC., defendant: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

JUDGES:
Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY:
Gregory M. Sleet

OPINION:

MEMORANDUM AND ORDER

I. INTRODUCTION

On December 16, 2002, the plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), filed the above-captioned action seeking a declaratory judgment against the defendants, Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon, Inc., and Bausch & Lomb, Inc. (collectively "Alcon and B&L"). Specifically, Allergan asserts infringement of its U.S. Patent No. 6,465,464 B2 ("the '464 Patent"). The '464 Patent is based on a continuation application of two Allergan patents asserted in a prior California action.

Presently before the court is Alcon and B&L's motion to transfer this action to the Central District [*2] of California, Southern Division. For the reasons that follow, the court will grant this motion.

II. BACKGROUND

Both of the plaintiffs are Delaware entities with their principle place of business in Irvine, California. The defendant Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in Forth Worth, Texas. Alcon Research, Ltd. is a limited partnership organized under the laws of Texas, with Alcon Laboratories, Inc. as a general partner. Alcon, Inc. is the parent of Alcon Laboratories, and is a Swiss corporation headquartered in Hunenberg, Switzerland. Finally, Bausch and Lomb is a New York corporation, with its principle place of business in Rochester, New York.

On January 9, 2002, Allergan filed suit against Alcon and B&L in the Central District of California asserting infringement of United States Patent Nos. 6,199,415 B1 ("the '415 Patent") and 6,248,741 B1 ("the '741 Patent"). Alcon moved for summary judgment of non-infringement, which the court granted on May 8, 2002. See Allergan, Inc. v. Alcon Laboratories, Inc., 200 F. Supp. 2d 1219 (C.D. Cal. 2002). B&L subsequently filed a similar motion, which was also granted. [*3]

On October 15, 2002, Allergan obtained the '464 patent, which issued as a continuation of the application that led to the '741 patent, which, in turn, is a continuation of the application that led to the '415 patent. The '464 patent is the subject of the current action.

The defendants in the present case filed a "mirror image" declaratory judgment action against Allergan concerning the '464 patent in the Central District of California on December 23, 2002.

III. DISCUSSION

Alcon and B&L move to transfer this action to the District Court for the Central District of California, Southern Division pursuant to 28 U.S.C. § 1404(a). Section 1404(a) [HN1] provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action could have been filed in the Central District of California, Southern Division. The court will, therefore, move on with the inquiry as directed by the Third Circuit. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). [*4]

[HN2] When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' Id. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. Id. at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. n1 Id. at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." Id. at 879-80 (citations omitted).

n1 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

[*5]

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the plaintiffs and several of the defendants are Delaware entities, and should reasonably expect to litigate in the forum, there is little connection between Delaware and this action or the parties; (2) each party either maintains its principle place of business in California, or has facilities there, whereas no party maintains operations in Delaware; (3) the parties are large and international organizations with apparently substantial assets; (4) because the parties are already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the defendants' "mirror image" action currently pending in the Central District of California, Southern Division. Thus, given the on-going relationship the Central District of California has with the same parties, and [*6] the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants.

### III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' motion to transfer this case (D.I. 6) is GRANTED.

2. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Central District of California, Southern Division.

Dated: February 25, 2003

    Gregory M. Sleet

    UNITED STATES DISTRICT JUDGE

Exhibit I

LEXSEE 2000 us dist lexis 4649

**AT&T CORP., Plaintiff, vs. PUBLIC SERVICE ENTERPRISES OF PENNSYLVANIA, INC., et al., Defendants.**

**CIVIL ACTION No. 99-4975**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2000 U.S. Dist. LEXIS 4649*

**April 12, 2000, Decided**

**April 12, 2000, Filed, Entered**

**DISPOSITION:**
[*1] Defendants' Motion to Dismiss Counts I and II GRANTED. Defendant Scardino's Motion to Stay GRANTED. AT&T's Motion to Dismiss GRANTED. PSE's Motion to Seal Record DENIED. All pending motions DENIED as moot.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff, a creditor that prevailed in arbitration of an underlying obligation, alleged that the individual defendants diverted revenues and assets from defendant debtor corporation which they owned and controlled without fair or reasonably equivalent consideration, and they counterclaimed. Each party moved to dismiss the other's claims; defendants requested a stay.

**OVERVIEW:** Defendant corporation purchased long-distance services from plaintiff on a large volume steep discount basis. After disputes arose between them, the parties went to arbitration and plaintiff was awarded $ 26 million. The arbitration award was confirmed in district court and defendant appealed. Meanwhile, plaintiff filed this action, alleging the individual defendants diverted revenue and assets from defendant corporation, and sought to execute on assets held by the individuals or related entities. The court granted defendants' motion to dismiss because plaintiff had not followed the execution and garnishment procedures of Fed. R. Civ. P. 69, Pa. R. Civ. P. 3108(4), 3117. The court rejected defendants' argument that plaintiff had breached the confidentiality provision of the arbitration agreement. The court also determined that the interests of judicial economy would

best be served by staying the proceeding until the court of appeals ruled on the underlying action.

**OUTCOME:** Defendants' motion to dismiss was granted, because plaintiff must follow traditional manner of discovery in aid of execution; plaintiff's motion to dismiss was granted because the complaint was a continuation of the arbitration proceeding. The matter was stayed pending court of appeals ruling on underlying claim for judicial economy.

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of the complaint.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN2] A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) only if it appears beyond doubt that the plaintiff could prove no set of facts in support of the claim that would entitle him to relief. In considering such a motion, a court must accept all of the facts alleged in the complaint as true and must liberally construe the complaint in the light most favorable to the plaintiff.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN3] The question in considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is not whether the

plaintiff will ultimately prevail, but whether plaintiff is entitled to present evidence in support of his claims.

*Governments > Courts > Court Records*
[HN4] The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents. .

*Governments > Courts > Court Records*
[HN5] A transcript of arbitration proceedings is part of the record in the district court.

*Civil Procedure > Entry of Judgments > Enforcement & Execution*
[HN6] Pa. R. Civ. P. 3108(4) allows service of a writ of execution on intangible property by serving a garnishee.

*Civil Procedure > Entry of Judgments > Enforcement & Execution*
[HN7] Unliquidated claims for tort or breach of contract are not subject to garnishment. Only such debts as are not dependent upon a contingency but are certain and payable are properly attachable in a garnishment proceedings.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN8] A court has inherent power to control its docket in order to conserve scarce judicial resources.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN9] Giving due regard to the desirability of resolving litigation comprehensively and conserving judicial resources, a court ultimately must determine what is the most wise course of judicial administration under all the circumstances.

**COUNSEL:**
For AT&T CORP., PLAINTIFF: EDWARD F. MANNINO, AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, PHILADELPHIA, PA. DAVID L. COMERFORD, AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, PHILADELPHIA, PA. CAHRLES W. DOUGLAS, WILLIAM J. NISSEN, DAVID C. GIARDINA, SIDLEY & AUSTIN, CHICAGO, IL USA.

For PUBLIC~ · SERVICE ENTERPRISES OF PENNSYLVANIA, INC., WILLIAM B. SORDONI, CHARLES E. PARENTE, PATRICK A. BELLO, FRANK G. SCARDINO, DEFENDANTS: PATRICK J. O'CONNOR, COZEN & O'CONNOR, PHILADELPHIA, PA USA. JOHN F. MULLEN, SCHNADER, HARRISON, SEGAL & LEWIS, PHILADELPHIA, PA.

**JUDGES:**
John R. Padova, J.

**OPINIONBY:**
John R. Padova

**OPINION:**

**MEMORANDUM**

Padova, J.

April 12, 2000

This matter arises on various motions filed by both parties. The Court held oral argument on these motions on April 7, 2000. These matters are fully briefed and ready for decision.

## I. BACKGROUND

AT&T provides telecommunications services, including long-distance telephone services. From 1991 to 1996, Public Service Enterprises of Pennsylvania, Inc. ("PSE"), purchased long-distance services from AT&T. In exchange for committing to purchase large volumes of such services, PSE obtained steep discounts from AT&T. A series of disputes arose between AT&T and PSE, and in July 1996, they agreed to settle these disputes by means of an arbitration proceeding. In August 1998, the arbitrators awarded $ 26 million to AT&T. The arbitration award was confirmed by the U.S. District Court for the Southern District of New York on September 8, 1999 ("Judgment"). In October 1999, PSE filed an appeal [*2] with the United States Court of Appeals for the Second Circuit: Public Service Enterprises of Pennsylvania, Inc. v. AT&T, United States Court of Appeals for the Second Circuit, Docket No. 99-9192.

AT&T, however, has not collected the Judgment. In the instant Complaint, AT&T alleges that the individual defendants n1 diverted all PSE revenues into another corporation that they owned and controlled, Enterprise Telcom Services, Inc. ("ETS"). PSE allegedly transferred the telecommunication services it received from AT&T to ETS "without fair or reasonably equivalent consideration." [Complaint P26]. AT&T alleges that this corporate structure enabled the individual defendants to convey to ETS and themselves the benefits of the volume commitments PSE made to AT&T without the corresponding liabilities.

n1 AT&T names four individual defendants: William B. Sordoni, Charles E. Parente, Patrick

Case 5:03-cv-04669-JW     Document 37-4     Filed 11/17/2003     Page 21 of 25

Page 3
2000 U.S. Dist. LEXIS 4649, *

A. Bello and Frank G. Scardino. AT&T alleges that in 1991, PSE was a wholly-owned subsidiary of Sordoni Enterprises, which in turn was owned by a holding company in which Defendants Sordoni, Parente, and two brothers of Sordoni are the sole shareholders. AT&T alleges that Bello and Scardino "held beneficial interests in PSE from at least the end of 1991 forward." [Complaint P15]. In addition, Sordoni, Parente and Scardino were officers of PSE, and Sordoni and Parente were directors of PSE. [Complaint P7].

**[*3]**

In addition, AT&T alleges that the individual defendants stripped real estate assets from PSE after PSE entered into the resale business with AT&T. AT&T alleges that the individual defendants transferred real estate assets or the proceeds of these assets to themselves, their families, or other entities under their ownership or control. [Complaint PP28-29]. AT&T alleges that these transfers were "without fair consideration," and left PSE "grossly undercapitalized for the business in which it was engaged." [Complaint PP28-30]. PSE, however, continued to purchase long distance services from AT&T, and allegedly increased its commitments to AT&T through June 1994. [Complaint PP32-34].

In July 1994, ETS sold its assets to a new limited partnership, New Enterprises Wholesale Services, L.P. ("NEWS"). Like ETS, NEWS allegedly purchased the long distances services from PSE "without fair or reasonably equivalent consideration." [Complaint P37]. AT&T alleges that the sale of ETS' assets to NEWS, and PSE's continued transfer of services to NEWS caused the individual defendants to receive approximately $ 13 million "which in equity belongs to PSE." [Complaint P38].

As a result of these **[*4]** alleged actions, AT&T claims that PSE has insufficient assets to pay the Judgment. On October 5, 1999, AT&T registered the Judgment in this Court. AT&T subsequently filed this action on October 7, 1999. AT&T brings five counts against Defendants. In Count I, AT&T seeks to enforce the Judgment against PSE by means of assigning PSE's right to an action against the individual defendants for breach of fiduciary duty to AT&T. AT&T then brings Count II as the assignee of PSE, pursuant to Fed. R. Civ. P. 18(b), for breach of fiduciary duty against the individual defendants. In Counts III and IV, AT&T brings fraudulent conveyance claims against the individual defendants. Finally, in Count V, AT&T seeks

to hold the individual defendants personally liable for the Judgment based on fraud, or piercing the corporate veil.

By Order dated January 19, 2000, the Court consolidated this action with Cause No. 99-6099 ("PSE Complaint"). In the PSE Complaint, PSE claims that the AT&T action breaches the release and confidentiality provisions of the Arbitration Agreement. PSE asks the Court to enjoin AT&T from proceeding with the original action.

## II. MOTIONS TO DISMISS

The Court faces two **[*5]** motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. AT&T moves to dismiss the PSE Complaint, and PSE moves to dismiss Counts I and II of the AT&T Complaint.

### A. STANDARD

[HN1] The purpose of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Winterberg v. CNA Ins. Co., 868 F. Supp. 713, 718 (E.D. Pa. 1994),* aff'd, *72 F.3d 318 (3d Cir. 1995).* [HN2] A claim may be dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff could prove no set of facts in support of the claim that would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* In considering such a motion, a Court must accept all of the facts alleged in the complaint as true and must liberally construe the complaint in the light most favorable to the plaintiff. *ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Robb v. City of Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984); Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).* [HN3] The **[*6]** question is not whether the plaintiff will ultimately prevail, but whether he is entitled to present evidence in support of his claims. *Scheuer v. Rhodes, 416 U.S. at 236.*

### B. PSE Complaint

AT&T moves to dismiss the PSE Complaint on two grounds. First, AT&T argues that the Arbitration Agreement permits the use of confidential information for the purposes of the arbitration. AT&T submits that its action constitutes a continuation of the arbitration proceeding in that it seeks to enforcement the arbitration Judgment. Second, AT&T contends that PSE waived its confidentiality interests by placing the arbitration transcript in the district court record.

In response, PSE contends that because the arbitration transcript physically was not filed with the Southern Distrct of New York, but rather retained by counsel, the transcript never became public record.

Further, PSE argues that the AT&T Complaint is not a continuation of the arbitration action, but rather a new lawsuit stating new legal theories against the defendants.

The Court will grant AT&T's Motion to Dismiss. The Court concludes that this case, though novel, is in essence an effort to collect the underlying [*7] Judgment. As such, the AT&T Complaint clearly represents a continuation of the arbitration proceeding. Thus, the use of any allegedly confidential information in the AT&T Complaint is authorized under the Arbitration Agreement. (Arbitration Agreement § 9.1).

Furthermore, this case arrived before the undersigned following a prolonged history before colleagues in New York. In both the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit, both parties made numerous public filings which related the facts and history of their dispute. Moreover, the transcripts of the evidentiary hearing, admitted to the record by Judge Loretta A. Preska by Order dated January 5, 1999, are publicly available judicial records. *Littlejohn v. BIC Corp., 851 F.2d 673, 681-83 (3d Cir. 1988).* PSE submits that because the arbitration transcript was not "admitted into evidence," the transcript is not a part of the record. This argument, however, is without merit. "[HN4] The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents." *Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 659 (3d Cir. 1991)* [*8] (internal citations and quotations omitted). Indeed, on appeal to the Second Circuit, PSE's counsel acknowledged that [HN5] "[a] transcript of the arbitration proceedings. . . is part of the record in the district court." [AT&T's Motion to Dismiss, Ex. 8]. PSE never requested that the transcript be admitted conditionally, or be maintained under seal based on its present confidentiality concerns. Cf. *United States v. Amodeo, 71 F.3d 1044 (2d Cir. 1995)*(concluding that while report filed with court was judicial document, right of public access was limited because report was filed under seal). Rather, it appears to the Court that PSE requested that the transcript copies be maintained by counsel as a matter of convenience due to the immense size of the transcript, namely eighteen volumes. (See AT&T Motion to Dismiss, Ex. 3). Accordingly, the Court concludes that to the extent PSE seeks to use the confidentiality provision of the Arbitration Agreement to bar the AT&T Complaint, PSE has waived any such confidentiality interests. n2

n2 The Court expresses no opinion on whether the confidentiality provision remains in effect and governs other issues and transactions

between the parties. Rather, the Court's opinion addresses the sole issue presented in AT&T's Motion to Dismiss: whether the confidentiality provision prohibits AT&T from proceeding with Cause No. 99-4975 in this Court.

[*9]

PSE separately raises the release provision of the Arbitration Agreement as ground for the injunctive relief sought in its Complaint. The Court, however, concludes that the release provision can be pled as an affirmative defense to the AT&T Complaint, and presented to the Court in the form of a Motion for Partial Summary Judgment. PSE, thus, has an adequate remedy at law, and the Court will not resort to its equitable powers when legal relief is available. *Younger v. Harris, 401 U.S. 37, 43-44, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971)*("Courts of equity should not act. . . when the moving party has an adequate remedy at law.").

Accordingly, the Court will dismiss Cause No. 99-6099, and deny PSE's Motion for Injunctive Relief as moot.

## C. AT&T Complaint

In Count I of its Complaint, AT&T brings the following claim:

40. On information and belief, PSE has unliquidated assets, including a cause of action against the Individual Defendants for breaches of fiduciary duties by Sordoni, Parente, and Scardino, and for the aiding and abetting, conspiracy and/or participation in such breaches by Bello.

41. Because PSE has not satisfied the Judgment, AT&T is entitled [*10] to an order requiring PSE to assign its rights in any such causes of action to AT&T, either directly or through a sheriff's sale, with the proceeds of such causes of action, or their sale, to be applied by AT&T in partial or full satisfaction of the Judgment.

42. Through discovery, AT&T believes it may locate other assets of PSE which can be used to satisfy the Judgment.

WHEREFORE, AT&T prays for judgment on Count I against PSE as follows:

(a) That the Court order PSE to assign to AT&T, either directly or through a sheriff's sale, all of its right, title, and interest in and to any and all causes of action it has or may have against the Individual Defendants and any other persons acting in concert with them; and

(b) That the Court order PSE to turn over to AT&T, either directly or through a sheriff's sale, all other assets of PSE that may be discovered by AT&T during the course of his proceeding until such time as the Judgment is satisfied.

(Complaint PP41-42).

In their Motion to Dismiss, PSE and the individual defendants (collectively referred to as "PSE") argue that this involuntary assignment of PSE's alleged tort claims against its principals has no basis in Pennsylvania [*11] law. PSE contends that the process for enforcing the Judgment is by writ of execution under Rule 69(a) of the Federal Rules of Civil Procedure.

In response, AT&T argues that Pennsylvania law allows a judgment creditor to attach a judgment debtor's intangible property. The Court disagrees. [HN6] Rule 3108 of the Pennsylvania Rules of Civil Procedure allows service of a writ of execution on intangible property by serving a garnishee. Pa. R.Civ. P. 3108(4). Yet, one case here in the United States District Court for the Eastern District of Pennsylvania, and one Pennsylvania Superior Court case both hold that [HN7] unliquidated claims for tort or breach of contract are not subject to garnishment. *In re Pierson, Inc., 44 B.R. 556, 559 (E.D. Pa. 1984); Brown v. Candelora, 708 A.2d 104 (Pa. Super. Ct. 1998).* As the Pierson Court explained, "only such debts as are not dependent upon a contingency but are certain and payable are properly attachable in a garnishment proceedings." *Pierson, 44 B.R. at 559.*

PSE directs the Court's attention to *National Recovery Systems v. Pinto, 18 Pa. D. & C.3d 684 (C.P. Bucks 1981).* Interpreting Rule [*12] 3118 of the Pennsylvania Rules of Civil Procedure, the National Recovery Systems Court denied the plaintiff's request to assign defendant's interest in a corporation and a mortgage to the plaintiff. The Court finds National Recovery Systems persuasive, and concludes that Pennsylvania law does not support AT&T's requested assignment in Count I.

AT&T suggests that the Court's "inherent powers" support Count I and cites in support *In re Estate of Marcos, 910 F. Supp. 1470 (D. Haw. 1995).* In Marcos, the judgment debtor had approximately $ 320 million deposited in Swiss bank accounts, but failed to make any effort to satisfy the $ 1.2 billion judgment entered against it. Applying California law, the Marcos Court assigned the judgment debtor's interest in the Swiss bank account to the judgment's creditor. Marcos is thus readily distinguishable from the instant case because it involved the assignment of a fixed sum of money, not an unliquidated chose in action. Accordingly, Marcos does not support AT&T's position.

Other cases relied upon by AT&T are also inapposite. In *Ikuno v. Yip, 912 F.2d 306 (9th Cir. 1990),* the plaintiff purchased all of the [*13] third-party's right in "all choses in action and claims of any kind or nature." *Id. at 313 n. 9.* Moreover, the sheriff's sale specifically named the potential defendant. Likewise, *Bergen v. F/V St. Patrick, 686 F. Supp. 786 (D. Ala. 1988),* permits disposal of a judgment debtor's acknowledged chose in action by writ of execution at a sheriff's sale, but expressly precludes an involuntary assignment of such claims. Similarly, in *Denham v. Farmers Ins. Co., 213 Cal. App. 3d 1061, 262 Cal. Rptr. 146 (Cal. App. 1989),* the plaintiff-judgment creditor first obtained the right to the judgment-debtor's chose in action against its insurer by writ of execution.

None of the cases cited by AT&T persuade the Court that Pennsylvania law allows a judgment-creditor to obtain a judgment-debtor's unacknowledged and unliquidated chose in action in this manner. The Court, therefore, will grant PSE's Motion to Dismiss as to the requested assignment.

AT&T, however, submits that Count I "generally seeks to discover what other assets PSE may possess and to execute upon those assets in satisfaction of the judgment." AT&T contends that such discovery is permitted [*14] under Pennsylvania Rules. Thus, AT&T submits that even if AT&T's requested assignment of PSE's claims against its officers is prohibited, Count I states a claim for relief. The Court disagrees. AT&T has not invoked the proper procedure for seeking discovery in aid of execution. See Pa. R. Civ. P. 3117.

In accordance with the foregoing, the Court will dismiss Count I in its entirety. Furthermore, as Count II is dependent on Count I, the Court will dismiss Count II as well.

## II. MOTION TO SEAL RECORD

PSE moves the Court to seal the record in Cause No. 99-4975 because the Arbitration Agreement's confidentiality provision prohibits use of confidential information. The Court appreciates PSE's confidentiality concerns, but finds that these issues do not provide grounds for sealing the entire case. The parties' confidentiality concerns are fully protected by their ability to designate any filing or portion thereof as "confidential," and filing such pleadings or section under seal. To the extent that confidential materials are contained only in an exhibit or an appendix to any court filing, only such exhibit or appendix shall be filed under

seal. Accordingly, the Court [*15] will deny PSE's Motion to Seal.

## III. MOTION TO STAY

Finally, Defendant Scardino filed a Motion to Stay on March 23, 2000, asking the Court to stay trial of this action pending resolution of the PSE appeal by the United States Court of Appeals for the Second Circuit. The other defendants join in this request, and further ask the Court to stay discovery. AT&T opposes this request, and submits that a stay would prejudice it by delaying collection of the Judgment.

[HN8] The Court has inherent power to control its docket in order to conserve scarce judicial resources. *Cost Bros., Inc. v. Travelers Indemnity Co., 760 F.2d 58, 60 (3d Cir.1985).* [HN9] Giving due regard to the desirability of resolving litigation comprehensively and conserving judicial resources, the Court ultimately must determine what is the most wise course of judicial administration under all the circumstances. The pending appeal brings the validity of the arbitration award itself into question. At oral argument, Plaintiff's counsel agreed that a reversal by the Second Circuit would render all proceedings in this Court moot. The Court concludes that the efficient and equitable solution would be to [*16] stay the present litigation pending a decision by the United States Court of Appeals for the Second Circuit. Staying the instant action avoids a potentially gross waste of judicial resources. Moreover, the Court perceives no prejudice to AT&T in that interest continues to run on the Judgment. Accordingly, the Court will grant Defendants' Motion to Stay, and place this case in civil suspense.

Appropriate Orders follow.

## ORDER

AND NOW, this    day of April, 2000, in accordance with the Memorandum entered this day, **IT IS HEREBY ORDERED** that

1. Defendants' Motion to Dismiss Counts I and II (docket # 3) is **GRANTED**.

2. Counts I and II of Cause No. 99-4975 are **DISMISSED**.

3. Defendant Scardino's Motion to Stay (docket # 26) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending a decision by the United States Court of Appeals for the Second Circuit in Public Service Enterprises of Pennsylvania, Inc., v. AT&T Corp., No. 99-9192. The Clerk of Court shall mark this action closed for statistical purposes and place the matter in the Civil Suspense File.

It is **FURTHER ORDERED** that the Court shall retain jurisdiction, [*17] and that the case be restored to the trial docket when the action is in a status so that it may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation.

BY THE COURT:

John R. Padova

**ORDER**

AND NOW, this 12th day of April, 2000, in accordance with the Memorandum entered this date, **IT IS HEREBY ORDERED** that

1. AT&T's Motion to Dismiss (docket # 7) is **GRANTED**.

2. PSE's Motion to Seal Record (docket # 2) is **DENIED**.

3. All pending motions are **DENIED** as moot.

4. The Clerk shall mark Cause No. 90-6099 **CLOSED** for statistical purposes.

BY THE COURT:

John R. Padova

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

**FEDERAL EXPRESS**
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526

**VIA FEDERAL EXPRESS**
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, N.Y. 10036-2714

Francis DiGiovanni (#3189)

265624

**EXHIBIT 3**

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            IN AND FOR THE DISTRICT OF DELAWARE
 3                        - - -
 4   RICOH COMPANY, LTD.,          :       Civil Action
 5              Plaintiff,         :
 6         v.                      :
 7   AEROFLEX INCORPORATED, AMI    :
     SEMICONDUCTOR, INC.,          :
 8   MATROX ELECTRONIC SYSTEMS     :
     LTD., MATROX INC., GRAPHICS   :
 9   MATROX INTERNATIONAL CORP.,   :
     and MATROX TECH, INC.,        :
10                                 :
              Defendants.          :      No. 03-103-GMS
11
12                      - - -
13                 Wilmington, Delaware
                 Thursday, August 28, 2003
14                    11:00 a.m.
                  Telephone Conference
15
                        - - -
16   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
17   APPEARANCES:
18           ROBERT W. WHETZEL, ESQ., and
             STEVEN J. FINEMAN, ESQ.
19           Richards, Layton & Finger
                    -and-
20           GARY M. HOFFMAN, ESQ.,
             EDWARD A. MEILMAN, ESQ., and
21           KENNETH W. BROTHERS, ESQ.
             Dickstein Shapiro Morin & Oshinsky LLP
22           (Washington, D.C.)
23                      Counsel for Plaintiff
24
25
```

Page 2

```
 1   APPEARANCES CONTINUED:
 2           FRANCIS DiGIOVANNI, ESQ.
             Connolly Bove Lodge & Hutz LLP
 3                  -and-
             TERESA M. CORBIN, ESQ.,
 4           CHRISTOPHER KELLEY, ESQ., and
             ERIC OLIVER, ESQ.
 5           Howrey Simon Arnold & White, LLP
             (Menlo Park, California)
 6                      Counsel for Defendants
 7                      - - -
 8
 9
10           THE COURT:  Good morning, counsel.
11           MR. WHETZEL:  Good morning, Your Honor.  Bob
12   Whetzel from Richards Layton for plaintiff Ricoh.  With me is
13   my colleague here at Richards Layton Steven Fineman.  Also on
14   the call for Ricoh are Messrs. Gary Hoffman, Ed Meilman and
15   Ken Brothers, my co-counsel.  I suspect Mr. Hoffman will be
16   our principal spokesperson this morning.
17           THE COURT:  Good morning, all.
18           For defendants.
19           MR. DiGIOVANNI:  Frank DiGiovanni from Connolly
20   Bove.  Also on the line from Howrey Simon in California are
21   Teresa Corbin and Chris Kelley and Eric Oliver.
22           THE COURT:  Who is going to handle the argument
23   today?
24           MR. DiGIOVANNI:  I will be arguing the first of
25   the agenda items, and I believe Mr. Kelley will be arguing
```

Page 3

```
 1   the remainder.
 2           MR. HOFFMAN:  Your Honor, on behalf of Ricoh, I ..
 3   Brothers will be arguing the first item.  I will be handling
 4   Items 2, 3, 6 and 8.  And Mr. Meilman will be handling it..:
 5   5 and 7.
 6           THE COURT:  Okay.  I will try to keep that ro..r
 7   in mind.
 8           Let's start with Item 1.
 9           MR. BROTHERS:  Your Honor, on Item 1, there i..
10   difference of opinion between the parties with respect to .. ..
11   obligations of the order that the Court entered on July
12   31st --
13           MR. DiGIOVANNI:  Your Honor, I don't mean to
14   interrupt.  I don't do that.  But we are the ones, th..
15   defendants are the ones --
16           THE COURT:  Are you the movant on that one?
17           MR. DiGIOVANNI:  Yes, we are.
18           THE COURT:  Let's start with the movant.
19           MR. BROTHERS:  I am sorry.  Both parties are
20   seeking relief, just to be clear.
21           THE COURT:  So both of you, you each view
22   yourselves as movants?
23           MR. BROTHERS:  Yes, Your Honor.
24           MR. DiGIOVANNI:  Yes, Your Honor.
25           On behalf of defendants, we did place the cal.
```

Page 4

1  and initiated the conference. We consider ourselves primary
2  movants on this issue.
3          MR. BROTHERS: Your Honor, we can both have our
4  say.
5          THE COURT: Mr. Brothers, continue.
6          MR. BROTHERS: Thank you.
7          The order of July 31st, the second paragraph
8  requires the defendants and their counsel to disclose all
9  communications with or relating to Dr. Thomas and to produce
10  all documents sent to, prepared by, or received from Dr.
11  Thomas. And then it continues, Any documents withheld on the
12  basis of attorney-client privilege or work product doctrine
13  should be submitted to the Court for an in camera inspection
14  and defendants shall provide plaintiffs with a detailed
15  privilege log.
16          We received part of those documents. We received
17  the e-mails and letters between the Howrey firm and Dr.
18  Thomas. But defendants and their counsel have refused to
19  produce anything else, namely, any internal communications on
20  an in camera basis to the Court and to give a privilege log
21  to the other side. We believe that is clearly required by
22  the order.
23          The history of this gives some basis for our
24  concern.
25          Dr. Thomas was deposed on August 14th. The

1  by the Matrox defendants done in Canada. We have been told
2  that there are additional process steps those defendants
3  carry out which makes the foreign production provisions of
4  Title 35 U.S.C. 271(g) inapplicable. As you may guess, the
5  minute they said that to us, we said, What are those steps?
6  And we have been refused disclosure on that.
7      Yesterday I got a call from Mr. -- I got a letter
8  from Mr. Kelley indicating that if we want, they will make
9  people available with knowledge about their design work for
10  deposition, but we are not going to get any interrogatory or
11  document request.
12      Basically, on the definition of the products --
13  the processes that we wish to have disclosure on, we believe
14  that limiting that to the computer-aided design process with
15  logic synthesis is narrow enough to give us the discovery we
16  want. We know as to some processes the defendants use Design
17  Compiler. What we don't know is whether they have any other
18  products that they have gotten from other suppliers.
19      We have asked them, do you have those? And
20  produce the documents. We have asked both in general and
21  specifically as to one of their -- one of the companies we
22  know provides equipment called Cadence. And basically, we
23  are told we are not going to get an answer. As to other
24  things, when they don't have any documents or it has not been
25  applicable, we have been told that. But as to the generally,

1  are you using somebody else's equipment, are you using
2  Cadence's equipment, we are getting no answer at all.
3      I think that's basically -- that whole approach
4  filters down to everything that is in dispute pretty much on
5  the interrogatories and document requests. As Mr. Kelley
6  said, it is a question of what we are entitled to as far as
7  breadth goes.
8      THE COURT: Okay.
9      MR. MEILMAN: It may very well be there are no
10  other alternate products that the defendants are using. But
11  I think we are entitled to know that.
12      THE COURT: Okay. Let's hear from the other
13  side.
14      MR. KELLEY: Your Honor, let me talk about the
15  271(g) issue in a minute. Let me deal with the document
16  requests first.
17      The fight that we have been having over the last,
18  it's been about three or four weeks the parties have been
19  discussing this in earnest, is these document requests. Once
20  again, let me just read this: Produce all documents -- I am
21  reading from No. 5, Document Request No. 5: Produce all
22  documents concerning the conception, design, development,
23  manufacture, or sale of each of the defendants' ASIC
24  products. Then it goes on and gives some examples sort of
25  thing.

1      There are several. The ones we have objected to
2  and said these are too broad are that kind of thing. They
3  haven't (inaudible) with all products and anything having to
4  do with the design of that product.
5      Now, Mr. Meilman just said that, he said CAD
6  process. As far as I know, that is the first time I have
7  heard them say, what we really need is stuff about the CAD
8  process. Although I am not sure whether he meant -- well,
9  the thing that is relevant here is logic synthesis. It's not
10  the specification, the engineering specification describing
11  what the product was going to do that was formulated back
12  when people were kicking around ideas about what a good
13  product for the company would be. So that's what we have
14  been fighting about now.
15      Ricoh just a few days ago said we will limit the
16  products, as I mentioned, we will limit the products to those
17  products that use logic synthesis.
18      Now, I think the remaining issue is whether the
19  scope of these document requests should be restricted to
20  documents describing the use of logic synthesis or relating
21  to logic synthesis for those products, and not anything
22  having to do with the specification of the product,
23  engineering, planning meetings, memos about how, we have got
24  bugs, our design isn't working, because none of that has
25  anything to do with the claim.

1      THE COURT: Is that an acceptable limitation,
2  Ricoh?
3      MR. HOFFMAN: Your Honor, what we are looking
4  for, as Mr. Meilman, I thought, had indicated, is the
5  documents that relate to the process for manufacturing these
6  ASICs in the designing of the ASICs using systems that have
7  logic synthesis in them. We are not looking for things
8  relating to debugging of the ASICs themselves. We are not
9  looking for things on other types of -- there is some
10  categories -- and I would have to go back to exactly what Mr.
11  Kelley said -- other things that were pre the designing of
12  these ASICs using the particular types of processes that are
13  involved in the claims and in the patent here of ASIC
14  designing processes using logic synthesis.
15      That is what we are looking for. We have told
16  them that. To date, they have produced less than a thousand
17  pages of documents.
18      THE COURT: Is that a different way of saying
19  that you are in agreement with the limitation that has just
20  been proposed? Or are you broadening?
21      MR. HOFFMAN: No. I think we are in general
22  agreement of some of the things. Mr. Kelley rattled off a
23  number of things.
24      THE COURT: So did you. So, counsel, my question
25  to you is, now having heard one another speak and speaking

## Page 61

1  to one another through me, do you think that you can put a
2  finer point on these requests and resolve the objections?
3  Because the Court has now invested an hour and a half of its
4  time on matters, quite frankly, in a manner in which it quite
5  frankly believes could have been better invested.
6      Are we at a point in this discussion as to Items
7  5 and 7 where counsel can be released to your own devices and
8  work it out?
9      MR. KELLEY: I believe.
10     MR. HOFFMAN: I believe, also, Your Honor.
11     If I can just ask one question, because I think
12  it may help in advancing a number of these things that we are
13  trying to work out. We would hope that, and would like a
14  commitment from counsel for the defendants and for Synopsys
15  to work out all these matters, to work diligently over the
16  next week, between now and the end of next week to work out
17  all these matters, so we can get these documents.
18     THE COURT: So ordered, yes.
19     MR. HOFFMAN: And also that the defendants will
20  not object and tell us we can't give it to you, these
21  documents, because it is the confidential information of
22  Synopsys.
23     THE COURT: You have to work through your
24  protective order.
25     MR. HOFFMAN: We will be underneath the

## Page 62

1  protective order, the documents.
2      THE COURT: I think that's a given, counsel.
3      MR. HOFFMAN: Thank you, Your Honor. I
4  appreciate it.
5      THE COURT: Okay.
6      MR. MEILMAN: Your Honor, Mr. Kelley was about to
7  start raising some material on the Matrox people in Canada.
8  I don't want to get that swept under the rug.
9      MR. HOFFMAN: Your Honor, that also probably ties
10  in with Topic No. 8 that they have raised.
11     THE COURT: Topic No. 8 is a non-starter for the
12  Court. I am not going to grant permission to file a letter
13  in support of the seeking of permission to file summary
14  judgment at this time, no.
15     MR. HOFFMAN: I presume we are also entitled then
16  to get discovery out of the people in Canada.
17     THE COURT: I don't see why not.
18     MR. KELLEY: Can I address that issue briefly?
19     THE COURT: Yes.
20     MR. KELLEY: They are seeking discovery -- this
21  claim relates to the logic synthesis process. What they want
22  is the discovery of logic synthesis work done in Canada.
23     THE COURT: Counsel, you are breaking up on us.
24     MR. KELLEY: It seems to me, I know we don't want
25  to get into the issue of whether they are going to prevail on

## Page 63

1  their 271(g) theory. But that's unusual, to try to apply a
2  U.S. patent to seek discovery on work done outside the United
3  States, on things done outside the United States is very
4  unusual.
5      THE COURT: What is the thinking there, Ricoh?
6      MR. HOFFMAN: Your Honor, if a process of
7  manufacturing a product is carried on outside the United
8  States where that process would infringe a process patent
9  inside the United States, then there is a basis for
10  allegation of infringement, the charge of infringement, just
11  boiling it down to a summary format.
12     The Bayer case they are relying upon is talking
13  about something entirely different. It was talking about
14  strictly -- and I have part of the claim here -- a need for
15  determining whether a substance is an inhibitor or
16  activator.
17     That is not what we are talking about here. We
18  are not talking about a method of determining whether or
19  not -- determination of whether a piece of information is in
20  one category or another. We are talking about part of a
21  manufacturing process, and 271 clearly covers that situation,
22  where the products do flow into the United States, that there
23  is infringement of that process patent.
24     This is a manufacturing process. So it's our
25  position we are entitled to it.

## Page 64

1      THE COURT: Does counsel disagree with counsel's
2  statement regarding the current state of the law?
3      MR. KELLEY: Yes, Your Honor. The Bayer case
4  makes it absolutely clear that the manufacturing process,
5  this is the exact question addressed by the Federal Circuit,
6  the manufacturing process, in order to fall within 271(g),
7  the claimed process has to be one using manufacturing
8  device, the actual physical things that are going to be
9  imported.
10     MR. HOFFMAN: This is all part of the
11  manufacturing process, Your Honor. And what they are trying
12  to do is say, well, since we disagree and we think that we
13  are entitled to summary judgment, we are not going to give
14  you discovery. And we are entitled to that discovery and to
15  show that it is part of the manufacturing process for
16  manufacturing the products that then flow into the United
17  States.
18     THE COURT: Mr. Kelley.
19     MR. KELLEY: Your Honor, if I may finish my
20  point. The case makes it absolutely clear that there has to
21  be a physical good produced under this process. What their
22  claim process produces is a -- a net list, that is then used
23  to produce -- it is sent off to a foundry that actually
24  produces the devices. It is not used in the process of
25  manufacturing the goods. The Federal Circuit decision make

**EXHIBIT 4**

DICKSTEIN   SHAPIRO   MORIN   &   OSHINSKY   LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

August 28, 2003

**Via Fax**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025

> Re:   *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
>        Civil Action No. 03-103-GMS
>        Our Ref.: R2180.0100

Dear Mr. Kelley:

Both sides told Judge Sleet that the appropriate scope of Ricoh's discovery requests was the operation of computer aided design systems including logic synthesis process and the resulting products.  You expressed reservations to the Judge about some categories of information falling within this scope and the Judge told us to work those out.  Please explicitly set forth all such categories and we will give you our position as to whether or not we agree with a further limitation.  Since the Judge want this resolved by the end of next week, please send us this information no later than 2 P.M. (EDT) on Monday.

Very truly yours,

Edward A. Meilman

EAM/hc
cc: Gary Hoffman, Esq.
    Kenneth Brothers, Esq.
    Robert Wetzel, Esq.
    Teresa M. Corbin, Esq.
    Francis DiGiovanni, Esq.

*1177 Avenue of the Americas • 41st Floor • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*http://www.dsmo.com*

79296 v1; 1P6_011.DOC

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

September 10, 2003

**Via Facsimile:  (650) 463-8400**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025

Re:    *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
       Delaware Civil Action No. 03-103-GMS
       Our Ref.:  R2180.0171

Dear Mr. Kelley:

Your letter of September 8, 2003 appear to reflect an attempt to backtrack; this is the problem that I  mentioned to Judge Sleet and which you did not attempt to defend during the conference with the Court.  While there was agreement that the subject matter would be ASICs that were designed by a process including a computer-assisted logic synthesis operation, our document requests relate to the entire process of making those ASICs and not strictly limited to the computer assisted logic synthesis operations.  The request include those documents showing the input specification to the logic synthesis operation and high level documentation showing what happens to the netlist output that is obtained.  Also, as you seem to agree, the document requests also cover the production of documents fully identifying and describing the ASIC designed using a logic synthesis operation, including the sale of such ASICS.  If you are going to try to restrict your responses to just the computer assisted logic synthesis operations themselves, then we will obviously have to go back to the Court once again.  Please let me know if you are going to insist on such a limitation.

We are still seeking information and documents about the activities of the Matrox defendants in Canada.  We disagree with your contentions regarding the patent covering the Canadian activities.  In any event, you have refused to provide us with any factual information which will allow us, and eventually the Court, to determine whether your interpretation of the law is applicable to the facts.  For example, you have asserted that there are subsequent process steps which materially change the product but you refuse to tell us what are those steps.   We urge you to reconsider your position and provide the requested discovery.

*1177 Avenue of the Americas • 41st Floor • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*http://www.dsmo.com*

Christopher L. Kelley, Esq.
September 10, 2003
Page 2


Please send copies of all correspondence to Gary Hoffman.


Very truly yours,

Edward A. Meilman

EAM/hc
Cc: Gary Hoffman, Esq.
        Kenneth Brothers, Esq.

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

September 12, 2003

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025

> Re: *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
> Del. Civil Action No. 03-103-GMS
> Our Ref.: R2180.0171

Dear Mr. Kelley:

The assertion in your letter of September 11, 2003 that Judge Sleet viewed your position as the appropriate basis for compromise is wrong. During the conference with the Court, you stated your position and we stated ours, namely that what we were looking for was information relating to the process of manufacturing ASICs using systems that have logic synthesis in them (Tr. at 60). Judge Sleet then asked "are we at a point in this discussion as to items 5 and 7 where counsel can be released to your own devices and work it out?", to which both sides said yes (Tr. at 61). Since the Judge had ordered that the matter be resolved by September 5, 2003 (*Id.*), I reiterated our position by letter on August 28, 2003 and asked you to set forth any further proposal for limitation within the time limit set by Judge Sleet. At no time has Ricoh withdraw from any position it took at the hearing.

Since you did not reply to my August 28, 2003 letter within the time set by the Court, you have waived any such further limitation on the scope of discovery. Nevertheless, my letter of September 10, 2003 further refines the scope of the discovery to which we are entitled, even though you were not entitled to such refinement. Proper responses to interrogatories and production of documents are required now.

We disagree with your position about the applicability of 271(g). Beyond that disagreement, you are also wrong when you assert that my "statement that we [Howrey] have 'asserted there are subsequent processes that materially change the product' is false". I call your attention to the letter from your firm of August 21, 2003. The last sentence on the second page reads

> "Substantial subsequent processes are necessary that materially change the computer code netlist into the ASIC chip that the Matrox defendants eventually sell in the United States."

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*www.legalinnovators.com*

80590 v1; 1Q6M01!.DOC

Christopher L. Kelley, Esq.
September 12, 2003
Page 2


      Please advise us whether you have unequivocally abandoned that position. Failure to do so is a concession that the requested discovery is relevant to an issue raised by the Matrox defendants, even under your misinterpretation and attempted misapplication of the *Housey* case.

                  Very truly yours,

                  Edward A. Meilman

EAM/hc

cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.

**EXHIBIT 5**

DICKSTEIN  SHAPIRO  MORIN  &  OSHINSKY  LLP

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

October 23, 2003

<u>Via Facsimile:  650-463-8400</u>

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434

RE:    *Ricoh Company Ltd. v. Aeroflex Incorporated, et al.*
       U.S. District Court, California Northern District (San Jose)
       Civil Action No.: 5:03-CV-04669 PVT
       <u>Our Ref.: R2180.0171</u>

Dear Mr. Kelley:

      Your letter of October 3, 2003 stated that you were trying to identify the personnel of the defendants in the original Delaware case who most appropriate to address the list of topics in the Rule 30(b)(6) notices and suitable dates for deposition. Since three (3) weeks have passed, you should now be able to provide us with that information.  Would you please do so by return telefax.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.
       Jeffrey Demain, Esq.

84665 v1; 1TBT01!.DOC

**EXHIBIT 6**



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

*VIA FACSIMILE and*
     *FIRST CLASS U.S. MAIL*

November 13, 2003

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:  *Synopsys, Inc. v Ricoh Company, Ltd.*, Case No. CV 03-02289 MJJ and
     *Ricoh Company, Ltd. v. Aeroflex Inc., et al.*, Case No. CV 03-04669 MMJ

Dear Ed:

Here is my recap of the subjects covered in today's meet and confer. I recount our positions here so that they will be part of the written record, not, obviously, as an indication that you agreed with them. If I omitted something significant, please let me know.

(1)  Rule 30(b)(6) deposition notice of Synopsys in the *Ricoh v. Aeroflex* action.

Synopsys objects to some of the issues identified in your Rule 30(b)(6) notice. As to the remaining issues, Synopsys contends that these are properly at issue in the *Synopsys v. Ricoh* action and not in the *Ricoh v. Aeroflex* action. The district courts in Delaware and Northern California have determined that Ricoh's patent litigation is a "customer suit" targeted at Synopsys but brought under the guise of litigation against Synopsys' customers. In the face of this determination, the Delaware district court determined that Ricoh's litigation against Synopsys was less deserving of priority than Synopsys' declaratory judgment action against Ricoh.

Therefore, questions relating to the characteristics of Synopsys' products, and whether or not these products practice the '432 or '016 patents, should be resolved in the *Synopsys v. Ricoh* declaratory judgment action. We believe that the *Ricoh v. Aeroflex* action ought to be stayed while the questions raised in the *Synopsys v. Ricoh* action are resolved. However, if the *Ricoh v. Aeroflex* action does proceed, Ricoh may conduct discovery under the aegis of that litigation on peripheral questions such as the extent to which the defendants named in *Ricoh v. Aeroflex* used Synopsys' software, or whether some activities by these defendants other than their ordinary use of Synopsys' products might constitute patent infringement.

If Ricoh renotices its Rule 30(b)(6) deposition of Synopsys in the *Synopsys v. Ricoh* action, we will provide you with a date for a first designee on some of the organizational and/or technical issues identified in your notice by next Wednesday, November 19.



Edward A. Meilman
November 13, 2003
Page 2

On a related note we agreed to provide you with information regarding what Synopsys products the Defendants in the *Ricoh v. Aeroflex* action were licensed to use.

(2)  Rule 30(b)(6) deposition notice of defendants in the *Ricoh v. Aeroflex* action.

We cannot realistically arrange depositions of the defendants before the December 16 hearing date set for the defendants' motion to stay. If that motion is denied, defendants are prepared to promptly make witnesses available in response to these notices.

(3)  Noticed depositions of Bershrader and Ricoh in the *Synopsys v. Ricoh* action.

You agreed to provide us with dates for these depositions.

(4)  Earlier date for the case management conference.

I stated that we had no objection in principle to asking the Court to set the case management conference in the pending cases for some date earlier than the current February date. Our objection to the proposal in your November 11 letter was that it tied together the unrelated issues of our request for an earlier hearing date on the motion to stay and rescheduling the Case Management Conference.

Very Truly Yours,

Christopher L. Kelley

EKM/gj

cc:   Gary M. Hoffman
      Jeffrey Demain