Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | **CASE NO. C-03-4669-MJJ** |
| Plaintiff, | **RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| vs. | **Date:  December 9, 2003** |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., AND MATROX TECH, INC., | **Time: 9:30 a.m.** |
| | **Courtroom:  11** |
| Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

SUMMARY ...................................................................................................................1

BACKGROUND ............................................................................................................2

    A.    Ricoh's Infringement Claims Are Against The ASIC
         Defendants ..................................................................................3

    B.    Synopsys Is Not The "Real Target" of Ricoh ...................................................5

        1.    The Ishijima Deposition Supports Ricoh's Infringement
             Theory .................................................................................5

        2.    Ricoh's Interrogatory Responses Support Its
             Infringement Theory ...........................................................6

ARGUMENT ..................................................................................................................6

    I.    THE MOTION TO STAY SHOULD BE DENIED BECAUSE IT
       HAS ALREADY BEEN MADE AND REJECTED ..................................6

    II.   ASIC DEFENDANTS HAVE NOT DEMONSTRATED THAT A
       STAY IS NECESSARY OR APPROPRIATE ........................................8

    III.  THE DECLARATORY JUDGMENT ACTION WILL NOT
       RESOLVE ALL ISSUES ....................................................................10

        A.    A Decision In The Synopsys Declaratory Judgment Action
            Will Not Remove All Issues As To The ASIC Defendants...........................10

        B.    Even If Infringement Was At Issue In The Synopsys Action,
            There Will Still Be Outstanding Issues As To The ASIC
            Defendants' Infringement ....................................................12

        C.    If Synopsys Is Unsuccessful In The Declaratory Judgment
            Action, There Will Still Be Outstanding Issues As To Damages ...................12

    IV.  CONSOLIDATION WILL PROMOTE JUDICIAL EFFICIENCY ......................13

        A.    All Issues As To Synopsys And The ASIC Defendants Could
            Be Resolved In One Proceeding ...............................................13

        B.    Consolidation Would Conserve Judicial Resources And
            Balance The Conveniences .....................................................14

    V.   THE CUSTOMER SUIT CASE LAW SUPPORTS
       CONSOLIDATION .............................................................................14

        A.    The Customer Suit Exception Does Not Support A Stay When
            A Customer Is A Direct Infringer Of A Process Patent.................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.    Defendants' Reliance On Product Patent Cases That Granted Stays Is Inapposite ........................................................................................16

CONCLUSION................................................................................................................................18

RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

4

*A.P.T. Inc. v. Quad Environmental Technologies Corp., Inc.*, 698 F. Supp. 718
  (N.D. Ill. 1988)...............................................................................................15, 18

5

*ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842 (W.D. Pa. 1988) .......................17

6

7

*American Academy of Science v. Novell*, 1992 U.S. Dist. LEXIS 20145, 24 U.S.P.Q. 2d
  (BNA) 1386 (N.D. Cal. 1992) .......................................................................15

8

*Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (U.S. Dist. DE. 1986)..................13

9

*Ciba Geigy Corp. v. Minnesota Mining & Manufacturing*, 439 F. Supp. 625 (D.R.I. 1977)........15

10

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir. 1977) .................................10, 16

11

12

*Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) .......................................8, 10, 13

13

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) ........................................11, 17

14

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952).................17

15

*Landis et al. v. North American Co.*, 299 U.S. 248 (1936)..................................................8

16

*Mitsubishi Electric Corp. v. IMS Technology, Inc.*, 1996 U.S. Dist. LEXIS 12239
  (N.D. Ill. 1996).............................................................................................12

17

18

*Refac International, Ltd. v. IBM*, 790 F.2d 79 (Fed. Cir. 1986) .......................................17

19

*Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997).............................8

20

*Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298 (U.S. Dist. DE. 1981) ......................13

21

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805
  (N.D. Cal. 1989)............................................................................................13

22

23

*Whelan Technologies, Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715
  (N.D. Ill. 1990).............................................................................................17

24

*Williams Gold Refining Co. v. Semi-Alloys, Inc.*, 198 U.S.P.Q. (BNA) 100 (W.D.N.Y.
  1978)........................................................................................................15

25

26

*Zemel Brothers v. Dewey Electronics Corp.*, 218 U.S.P.Q. (BNA) 722
  (N.D.N.Y. 1982) .........................................................................................16

27

28

1

## FEDERAL STATUTES

2

Fed. R. Civ. P. 42(a) ...................................................................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

1

2
**SUMMARY**

3        Less than six months ago these defendants – the accused direct infringers of Ricoh's '432

4  patent – moved the Delaware Court to stay this case, but that motion was rejected.  Instead, the Court

5  granted defendants' alternative motion to transfer the case to this Court for consolidation with the

6  pending *Synopsys v. Ricoh* declaratory judgment action.  Defendants have now filed a second motion to

7  stay, even though nothing has changed since their identical motion was denied three months ago.

8  Instead of staying the only action that has any claims of patent infringement, this Court should

9  consolidate the two actions.  Accompanying this opposition is a cross-motion to consolidate the two

10  cases, with Ricoh as the plaintiff.  The ASIC defendants have agreed that this cross-motion may also be

11  considered during the hearing scheduled for December 9.

12        This brief provides five reasons why defendants' motion to stay this case should be denied,

13  and Ricoh's cross-motion to consolidate the two cases, should be granted.  *First,* this question has

14  already been decided.  The Delaware Court rejected an identical motion to stay, and instead granted

15  defendants' alternative motion to transfer and consolidate.  Defendants have not articulated any reasons

16  to support their argument that have not already been considered and found to be unpersuasive.

17        *Second,* defendants have not satisfied the criteria necessary for granting of a stay.  The

18  prejudice to the non-moving party, Ricoh, would be great, because it would prevent a trial on the central

19  issue of whether Ricoh's '432 patent is being infringed.  There is no inconvenience to the defendants if a

20  stay is not granted, both because they will be involved in the Synopsys action anyway, and because

21  Synopsys is indemnifying them.  Consolidating the two actions would conserve judicial resources, as a

22  consolidated trial would only add two trial days instead of at least ten extra days if both cases must be

23  tried.

24

25        *Third,* granting a stay would be futile, because Synopsys' declaratory judgment case would

26  not resolve all of the issues as to the defendants.  Ricoh's direct infringement claims against defendants

27  would survive even if Synopsys was found to not infringe, because in addition to using Design

28  Compiler, the ASIC defendants take additional independent actions that infringe the process claims of

RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

Ricoh's '432 patent. These outstanding issues of direct infringement and damages against the ASIC defendants cannot be addressed during the Synopsys declaratory judgment action and would require a second full proceeding.

*Fourth,* consolidation would resolve all issues for all involved, and is a more efficient way to resolve both cases. All parties agree that common questions of law and fact exist as to both the Synopsys action and the action against the ASIC defendants. These common issues can and should be litigated in one proceeding. Consolidation would balance the conveniences and conserve judicial resources because duplicative discovery and trials on the common issues would be avoided.

*Fifth,* because the claims of the patent-in-suit at issue in this litigation are process patent claims instead of product patent claims, the product "customer suit" line of cases cited by defendants do not apply. Defendants cite no process patent cases where a stay was granted. The process patent cases show that stays are inappropriate because the customer is the direct infringer and the manufacturer is at most a contributory infringer. Those cases consistently hold that the two cases should be consolidated, and the same is required here.

## BACKGROUND

In January 2003, Ricoh sued the six defendants identified in the caption in the District of Delaware for infringing upon the computer chip design process described in U.S. Patent No. 4,922,432 (the '432 patent). The patent-in-suit has claims directed to a computer-aided design process for making an application specific integrated circuit (ASIC), as well as other claims not at issue here. The six defendants are all designers and manufacturers of ASIC computer chips, and are collectively referred to herein as "the ASIC defendants."

The ASIC defendants moved the Delaware Court to stay that action on June 12, 2003. (Brothers Decl. Ex. 1.) At the same time, the ASIC defendants made an alternative motion to transfer the case to this Court so that it could be consolidated with a later filed declaratory judgment action brought by Synopsys. The Delaware Court did not grant the ASIC defendants' motion to stay. Instead, it granted the alternative motion to transfer the case to this Court for consolidation.

**A.      Ricoh's Infringement Claims Are Against The ASIC Defendants**

Although the ASIC defendants use a Synopsys product called Design Compiler during their infringement, Ricoh contends that the ASIC defendants are *direct infringers* of the '432 patent because they, and not Synopsys, actually perform each step of the recited process at issue in the course of designing and manufacturing the ASIC chips.  Infringing actions are taken by the ASIC defendants alone and not by Synopsys or its Design Compiler, such as describing, for a proposed ASIC, a series of architecture independent actions and conditions.  (Brothers Decl. Ex. 2, '432 patent, claim 13, clause 4.) Likewise, it is each ASIC defendant (and not Synopsys) that creates and stores a set of definitions of architecture independent actions and conditions.  (*Id.* clause 2.)  The ASIC designer defendants (and not Synopsys) also perform the act of storing, upon loading, the relevant libraries that contain data representing hardware cells.  (*Id.* clause 3.)

By contrast, Ricoh has *never* contended that Synopsys or its Design Compiler product, by itself, infringes the process claims at issue in the '432 patent.  Indeed, Ricoh has stated that it will not sue Synopsys for infringing the '432 patent based upon Synopsys' current or past actions.  Ricoh is able to make this representation because Design Compiler, by itself, does not infringe the process claims of the '432 patent.  It is true that each of the ASIC defendants' infringement involves the use of Design Compiler, but it does not end there.  Design Compiler can be used in such a way that the user, when incorporating other steps of the design process, does not infringe certain claims of the '432 patent, or Design Compiler can be used in such a way that does infringe the '432 patent, depending on other actions done only by the ASIC designer.  The decision of whether a manufacturer uses Design Compiler in such a way that infringes the '432 patent is not up to Synopsys, but up to the individual manufacturer.[1]  The ASIC defendants have elected to carry out a design process that does infringe the process claims of the '432 patent.

_____

[1] Defendants may also use other products from other suppliers or even Synopsys during their infringing ASIC design process.  As of the date of this brief, the ASIC defendants have refused to answer discovery inquiries that would reveal which products they use in designing the ASIC chips.  That refusal is part of the pending discovery motion which the Court deferred until the current motion is decided.

The only claims of the '432 patent which Ricoh has asserted are infringed in this litigation describe a *process* that requires independent steps performed by each of the ASIC defendants. Hence, discovery from the ASIC defendants regarding their activities will be needed and will constitute an important part of any trial relating to infringement issues.

As the Court is aware, Synopsys has taken over the defense of the ASIC defendants. But even Synopsys has conceded that the ASIC defendants (and not Synopsys or its Design Compiler software) perform the ASIC design and manufacture steps. (D.I. 26, Synopsys Opposition to Motion to Dismiss or in the Alternative, Stay or Transfer Venue ("Syn. Calif. Opp. Br.") at 2-3). Without the conduct of the ASIC defendants, there is no direct infringement claim. Ricoh is pursuing the direct infringers, which is its right.

The moving papers of the ASIC defendants state: "The Delaware defendants agree to be bound by the outcome of Synopsys's declaratory judgment action against Ricoh on issues relating to Synopsys's Design Compiler software *including whether the ordinary use of Design Compiler infringes the '432 patent and invalidity*." (Moller Decl. ¶ 8.) This representation is either a sham or an admission that the cases must be consolidated, however, because *there is no infringement claim in the Synopsys declaratory judgment action*. The only infringement claims are in this action. Regardless of whether Synopsys proves non-infringement in its declaratory judgment action, Ricoh will still need to go forward with its action against the ASIC defendants to prove that their independent activities infringe the process claims of the '432 patent. Because the ASIC defendants are the direct infringers, Ricoh's statutory right to damages is a reasonable royalty based upon the sale of the ASIC chips that were designed using the process described in the '432 patent. Ricoh's damages are not based upon the sales of the Design Compiler software by Synopsys. The only way that the ASIC defendants can be bound by a finding of whether their use of Design Compiler and their additional actions infringe the '432 patent is to consolidate the two actions.

**B.    Synopsys Is Not The "Real Target" of Ricoh**

Both the ASIC defendants and Synopsys insist that Synopsys is the "real target" of Ricoh's patent infringement allegations.  This is simply not the case.  Ricoh has repeatedly stated that it will not assert an infringement claim against Synopsys on the '432 patent based upon any other past or current Synopsys product such as Design Compiler.  In response to Synopsys' declaratory judgment complaint, Ricoh has *not* asserted a counterclaim for infringement.  The issue raised by Ricoh's complaint is not whether Design Compiler infringes the '432 patent, it is whether the ASIC defendants' process of designing ASIC chips infringes the '432 patent.

To support their argument that Synopsys is the "real target", the ASIC defendants have misrepresented and misconstrued both the testimony of Mr. Ishijima and Ricoh's responses to ASIC defendants' First Set of Interrogatories.  We address each in turn.

**1.    The Ishijima Deposition Supports Ricoh's Infringement Theory**

Mr. Ishijima was a Ricoh Rule 30(b)(6) witness who was deposed by the ASIC defendants in July 2003.  In response to questions well outside the scope of the notice, Mr. Ishijima testified that Ricoh's contention that the ASIC defendants infringe certain of the '432 patent process claims is based on those defendants' own actions.  He stated that, beyond Synopsys materials, Ricoh considered third-party articles, the ASIC defendants' own materials, information from technical experts, and expert opinions in order to evaluate each ASIC defendant's infringement.  (*See, e.g.,* D.I. 34, Ricoh's 8/5/03 reply brief in support of its motion to dismiss, Ex. B Ishijima Tr. at 61-62.)  Mr. Ishijima also stated that persons in the Ricoh legal department were involved in a study of the relationship between the patent and ASIC defendants' products.  (*See id.* at 80-81.)  Mr. Ishijima never testified that Synopsys is the "real target" of Ricoh's infringement claims, as the ASIC defendant imply.  Instead, his testimony explained Ricoh's evaluation that each of the ASIC defendants used every step of the process disclosed in the '432 Patent.[2]

---

[2] For a more detailed rebuttal to the ASIC defendants' misrepresentations regarding Mr. Ishijima, see

## 2.    Ricoh's Interrogatory Responses Support Its Infringement Theory

The ASIC defendants attempt to cherry-pick from sections of Ricoh's interrogatory responses to imply that Ricoh's claims are only against the "ordinary use" Design Compiler. A review of Ricoh's complete interrogatory responses make clear that it is the ASIC defendants, and not Synopsys, who perform all of the steps of the process at issue. For example, ASIC defendants, and not Synopsys, perform the process steps described in claim 13 of the '432 patent of "describing for a proposed application specific integrated circuit a series of architecture independent actions and conditions" and of "specifying for each described action and condition of the series one of said stored definitions which corresponds to the desired action or condition to be performed." (Brothers Decl. Ex. 2, '432 patent, claim 13, clauses 4 and 5). Ricoh's interrogatory responses explain that the accused ASIC design process includes inputting the behavioral aspects of the target ASIC which is performed by or on behalf of each of the ASIC defendants, not Synopsys. (Moller Decl. Ex. C, Plaintiff's Answers to Aeroflex Incorporated's First Set of Interrogatories ("Ricoh Interrog. Resp.") at No. 1.) Indeed, Synopsys has conceded that the ASIC defendants input the ASIC design requirements. (D.I. 26, Syn. Calif. Opp. Br. at 2-3.) This is a critical fact on which there is no apparent disagreement, and which effectively forecloses the ASIC defendants' argument that Ricoh's claims against them are only on the "ordinary use" of Design Compiler.

## ARGUMENT

## I.    THE MOTION TO STAY SHOULD BE DENIED BECAUSE IT HAS ALREADY BEEN MADE AND REJECTED

These very defendants have already unsuccessfully sought to stay this action, and are precluded from renewing the motion, especially in the absence of any new basis for so moving. Five months after Ricoh initiated this action, the ASIC defendants moved the Delaware Court to stay that action. (Brothers Decl. Ex. 1.) That motion made the exact same arguments – in some instances, word-for-word – that the same defendants are pressing in their present motion. At the same time, the ASIC

---

D.I. 34, Ricoh's 8/5/03 reply brief in support of its motion to dismiss.

defendants made an alternative motion to transfer the case to this Court so that it could be consolidated with a later filed declaratory judgment action brought by Synopsys. The defendants argued that the Delaware Court should transfer the action to the Northern District of California *for consolidation with the Synopsys case.* Following are excerpts from the ASIC defendants' initial brief:

> B. The Court Should Transfer The Present Action to the Northern District of California *for Consolidation with the Synopsys Case.*

> In the alternative, Defendants request that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404 *for consolidation with the Synopsys case….* If the Court is unwilling to stay the present case, Defendants request that this matter be transferred, pursuant to 28 U.S.C. § 1404 to the Northern District of California so *that it can be joined or otherwise coordinated with Synopsys' declaratory judgment action…*

Brothers Decl. Ex. 1, Memorandum In Support Of Defendants' Motion To Stay Or, In The Alternative, Transfer Venue, at 3-5 (June 12, 2003) (emphasis added). Defendants reiterated their request:

> C. If not stayed, this litigation should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404.

> If this litigation is not stayed it ought to be transferred to the Northern District of California *where it can be consolidated or coordinated with Synopsys' declaratory judgment case….*

*Id.* at 13-14 (emphasis added). The brief ended as follows:

> V. CONCLUSION

> For the foregoing reasons, Defendants respectfully request that this Court stay the present litigation pending the outcome of the Synopsys case pending in the Northern District of California, or, alternatively, transfer this case to the Northern District of California *for consolidation with the Synopsys case.*

*Id.* at 20 (emphasis added).

The Delaware Court did not grant the ASIC defendants' motion to stay the case. Instead, it granted the alternative motion to transfer the case to this Court, where the two cases could be consolidated. The rejection of the identical motion to stay should preclude the ASIC defendants from making the exact same motion again. There are no new facts or any other reason to justify a renewed motion or a suspension of discovery based upon that renewed motion. Instead, the two cases should be consolidated, which is exactly what the ASIC defendants sought.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    ASIC DEFENDANTS HAVE NOT DEMONSTRATED THAT A STAY IS NECESSARY OR APPROPRIATE

The ASIC defendants argued in their first motion for a stay that if a stay was not granted, a transfer was necessary for the convenience of the parties.  The Delaware Court refused to grant a stay, and addressed defendants' concerns regarding convenience to the parties by transferring the case to the Northern District of California.  (Moller Decl., Ex. A).  Nothing has changed since then.  Defendants cite no new facts to meet the requirement of a stay.

Although a decision to stay is in the discretion of the Court, an "abuse of discretion resides in any 'stay of indefinite duration in the absence of a pressing need.'" *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989), quoting *Landis et al. v. North American Co.*, 299 U.S. 248, 255 (1936).  No such "pressing need" has been identified.  This Court should deny defendants' motion to stay and instead consolidate the two actions because the case has already been transferred, the defendants have already made a motion to stay that was not granted in Delaware and defendants have not demonstrated that a stay is necessary or appropriate in this case to balance the conveniences or increase judicial economy.

"When considering a motion to stay, the district Court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated."  *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).  The *Rivers* test shows that a stay is inappropriate.  If a stay were granted, the prejudice to Ricoh is great.  The movant must show "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay will for which he prays will work damage to some one else." *Landis et al. v. North American Co.*, 299 U.S. 248, 255 (1936).  Ricoh already has been delayed in seeking redress for its claims due to the transfer of the case from the District of Delaware to the Northern District of California.  Ricoh's litigation against the ASIC defendants was set for trial in October 2004 with fact discovery cut off in January 2004.  Any stay effectively diminishes Ricoh's rights to an injunction and delays its ability to obtain damages.

1    A stay would do nothing to help resolve Ricoh's claims against the ASIC defendants, but

2  quite to the contrary, would delay its resolution.  As discussed below, if Synopsys' declaratory judgment

3  is resolved in Ricoh's favor, Ricoh will still have to litigate its claims against the ASIC defendants,

4  because the ASIC defendants have not agreed that, in the event that Ricoh prevails, the Court should

5  enter an injunction precluding them from selling any ASIC products designed utilizing any process

6  alleged by Ricoh to be infringing any of the process claims of the '432 patent.  Further, the ASIC

7  manufacturers have not agreed that if Synopsys fails to prove non-infringement of all of the process

8  claims of the '432 patent by any type of use of any of the Synopsys' products, that judgment should be

9  entered against them.  Even if Synopsys prevails, Ricoh will still be able to proceed against the ASIC

10  defendants, because the issue is not whether Design Compiler standing alone does or does not infringe

11  the '432 patent in every instance, but whether the ASIC defendants take additional actions that result in

12  practicing the process of the '432 patent.  In other words, one of the infringement issues is whether the

13  ASIC defendants infringe the '432 patent by starting with Design Compiler, then describing, for a

14  proposed ASIC, a series of architecture independent actions and conditions.  (Brothers Decl. Ex. 2, '432

15  patent, claim 13, clause 4.)  Another infringement issue is whether each ASIC defendant (and not

16  Synopsys) creates and stores a set of definitions of architecture independent actions and conditions.  (*Id.*

17  clause 2.)  Another infringement issue is whether the ASIC designer defendant (and not Synopsys) also

18  performs the act of storing upon loading the relevant libraries that contain data representing hardware

19  cells.  (*Id.* clause 3.)  Thus, it is possible that Synopsys could "win" on its declaratory judgment claim,

20  but this Court would still have to reactivate this case to consider whether the ASIC defendants infringe

21  and damages (considerations which could hardly be characterized as saving judicial resources).

22    By contrast, there is no hardship or inequity to ASIC defendants in consolidation and

23  their continuing to litigate the case, for four reasons.  First, they have already agreed that, if the case was

24  transferred from Delaware to this Court, it should be consolidated.  Second, by granting the motion to

25  transfer, the Court already has addressed the bases of the renewed motion to stay.  Third, Synopsys is

26  fully indemnifying the ASIC defendants as to the costs of the litigation, so their costs of defense are

27  non-existent.  Fourth, if the action were stayed, ASIC defendants would still have to eventually litigate

28  any issues that are not resolved by the Synopsys action, including infringement and damages.

Judicial resources would be saved if the two actions, *Ricoh v. Aeroflex et. al.* and *Synopsys v. Ricoh*, are consolidated as was previously proposed by the ASIC defendants. If the *Aeroflex* action is stayed, then this Court will still have to resolve issues unique to the ASIC defendants, no matter what the outcome of Synopsys' declaratory judgment action regarding infringement and damages. Because the actions taken only by the ASIC defendants raise infringement and damages issues that are different between the ASIC defendants' case and the Synopsys case, there could be continued litigation, even after a determination in the Synopsys case.

In addition, the balance of conveniences weighs toward consolidation rather than a stay of the action against the ASIC defendants. In many cases addressing the "customer suit" exception to the first filed suit priority, the Court is deciding whether to transfer or stay an action in favor of a manufacturer's home forum. *See e.g., Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir. 1977). The ASIC defendants have already transferred this case to Synopsys' home forum and therefore the balance of convenience should now weigh more heavily in favor of Ricoh.

## III.   THE DECLARATORY JUDGMENT ACTION WILL NOT RESOLVE ALL ISSUES

### A.   A Decision In The Synopsys Declaratory Judgment Action Will Not Remove All Issues As To The ASIC Defendants

In *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989), the Federal Circuit held that a lower Court's grant of a stay under the customer suit exception was an abuse of discretion where the later filed suit would not have resolved all issues with the customers. The *Kahn* Court differentiated cases where the customer suit exception was not applicable to those where it was applicable because in those cases where it applied, all issues would be resolved in one proceeding, including liability for damages, infringement against customers and validity. *Id.* at 1081. However, in cases where the customer suit exception was not applicable, these issues would not be resolved in one proceeding. Likewise, a decision in the Synopsys declaratory judgment action will not resolve all issues as to the ASIC defendants.

ASIC defendants rely on *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) for the proposition that a "manufacturer's representation that the resolution of the major issues such as patent infringement and patent validity in its own action would resolve these issues as to its customers."

1   (Def. Mot. at 3, citing *Katz*, 909 F.2d at 1464).  The ASIC defendants include a statement from counsel

2   purporting to be bound by any Synopsys decision "on issues relating to Synopsys's Design Compiler

3   software, including whether the ordinary use of Design Compiler infringes the '432 patent and

4   invalidity."  This statement, to the extent it has any effect at all, since it is not a statement from any

5   defendant, is virtually meaningless.  The issue of infringement is nowhere to be found in the Synopsys

6   declaratory judgment action.  Ricoh has made no infringement claim against Synopsys.  Because

7   infringement by the ASIC defendants is a separate issue from the Synopsys action, the outcome of the

8   Synopsys action will not address infringement by the ASIC defendants.  In addition, the disparity in

9   damages between Synopsys and the ASIC defendants is not addressed by this statement. [3]

10              The fact that there are different issues in the two cases is also illustrated by Synopsys's

11   statement that the issue of comparing the Synopsys product with the '432 patent is "irrelevant."  See

12   Brothers Decl. Ex. 3, Synopsys Responses to Plaintiff's Deposition Subpoena.  Synopsys claims that

13   "Synopsys's declaratory judgment action has priority as the venue for addressing any issues regarding

14   this relationship, or lack thereof, between Synopsys products and Ricoh's patents.  Those issues are not

15   pending in this case.  The identification of technical documentation for Synopsys software products is

16   therefore irrelevant to this case."  *Id.*, Response to Deposition Topic 11.  Thus, Synopsys is effectively

17   admitting that the issues in the suit against the ASIC defendants are different from those in the Synopsys

18   action.  This is contrary to the ASIC defendants' motion to stay which asserts that all issues as to the

19   ASIC defendants will be resolved in the Synopsys action.

---

[3]  ASIC defendants claim (Def. Mot. at 9) that all issues will be resolved by a decision in the Synopsys
action.  It follows then, using this logic, that in order for one case to resolve all issues, the ASIC
defendants would have to stipulate that if they use Design Compiler for any purpose, they infringe
regardless of whatever else they do, and that an injunction and/or damages are automatic.  Until and
unless both the ASIC defendants and Ricoh agree on the form and content of such a stipulation, there is
no way for all issues to be resolved through one decision in the Synopsys case.  The defendants' current
statement – to the extent it has any effect at all, since it is not a statement from any defendant -- is
virtually meaningless.  Therefore, a stay would not resolve all issues, as the ASIC defendants contend,
but consolidation will.

1

2

**B.    Even If Infringement Was At Issue In The Synopsys Action, There Will Still Be Outstanding Issues As To The ASIC Defendants' Infringement**

Infringement is not at issue in the declaratory judgment action.  Ricoh has not alleged that Synopsys is an infringer.  By contrast, Ricoh accuses the ASIC defendants of infringement.  One of the key issues of Ricoh's case is whether the ASIC defendants use of Design Compiler, with additional input by those defendants, infringes the process disclosed in the '432 patent.  Regardless of the outcome of Synopsys' declaratory judgment action, the ASIC defendants' infringing processes in designing ASICs, part of which includes the use of the Design Compiler in a certain manner, would still have to be litigated.  Therefore, all issues would not be resolved through the declaratory judgment action.

Even if Synopsys was found to be non-infringing, the ASIC defendants could be found to be infringing.  In this case, Ricoh contends that the steps taken by the defendants using the Design Compiler infringe the process claims of the '432 patent.  Even if Synopsys's manufacture of the Design Compiler does not itself infringe, the ASIC defendants' use of Design Compiler along with other steps taken by them is alleged to infringe the process claims at issue of Ricoh's patent, thereby necessitating another proceeding.  Therefore, even if Synopsys does not infringe the '432 patent, defendants could still infringe the '432 patent and all issues would not be resolved in the Synopsys proceeding alone.  *See, e.g.*, *Mitsubishi Electric Corp. v. IMS Technology, Inc.*, 1996 U.S. Dist. LEXIS 12239 at *9 (N.D. Ill. 1996) (Brothers Decl., Ex. 4) (stay or injunction denied where damages sought for infringement of both apparatus and method claims).

**C.    If Synopsys Is Unsuccessful In The Declaratory Judgment Action, There Will Still Be Outstanding Issues As To Damages**

Since Ricoh is not asserting any claim of infringement against Synopsys, there is no issue of damages with respect to Synopsys.  Further, the hypothetical measure of damages against Synopsys would be very different from the actual measure of damages against the ASIC defendants.  Typically the measure of damages for practicing a process is based on the end product (here a chip) and not on some piece of equipment used in the process.  Synopsys does not make chips and therefore any damages against it must, of necessity, be based on something else.  By contrast, the measure of damages against the ASIC defendants is based on their actual production of each chip.  An award based on potential

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

royalty loss would be on the defendants' production of chips, not software. Where the obligation of damages of the manufacturer versus the customer involve different parameters, an action solely against the manufacturer cannot resolve all damage issues against the customers. *Kahn*, supra at 1081-1082. A determination of damages on products manufactured by the defendants using the '432 process would necessitate a second proceeding. The ASIC defendants' statement that they agree to be bound by the Synopsys action "including whether the ordinary use of Design Compiler infringes the '432 patent and invalidity" does not address this inconsistency between the potential damages and therefore cannot resolve all the issues regarding damages.

## IV.    CONSOLIDATION WILL PROMOTE JUDICIAL EFFICIENCY

### A.    All Issues As To Synopsys And The ASIC Defendants Could Be Resolved In One Proceeding

As discussed above, all issues cannot be resolved if the ASIC defendants' action is stayed. Those issues particular to the ASIC defendants, including infringement and damages, would necessitate a second trial. A second trial would not be needed if both cases are handled together. Fed. R. Civ. P. 42(a) states that consolidation may be proper when "actions involving a common question of law or fact are pending before the court." A court must balance "the savings of time and effort gained from consolidation against the inconvenience, delay or expense that might result from simultaneous disposition of separate actions." *Cedars-Sinai Medical Center v. Revlon, Inc.* 111 F.R.D. 24, 32 (U.S. Dist. DE. 1986), citing *Rohm & Haas Co. v. Mobil Oil Corp*., 525 F. Supp. 1298, 1309 (U.S. Dist. DE. 1981). The Northern District of California follows the same test. *See, e.g., Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,* 720 F.Supp. 805, 807 (N.D. Cal. 1989).

Here, common questions of law and fact exist as to both actions which favor a consolidation. Common issues of fact exist with respect to the '432 patent, the patent history and claim construction. All parties agree that the ASIC defendants use Design Compiler, although there is a sharp disagreement with respect to what actions constitute infringement. Resolving those issues will require discovery from both the ASIC defendants and Synopsys. The complex and technical aspects of the activities of the ASIC defendants, including their particular use of the Design Compiler, should properly

1    be resolved in a single proceeding.  Resolving those common issues as to one party will not dispose of

2    all issues as to all parties.

3        Consolidation of the related cases would resolve all issues in a single proceeding without

4    need for further litigation.  Ricoh has estimated that a trial of the consolidated matter will take only two

5    extra days.  There is no question that consolidation is far more efficient than a stay for both the Court

6    and the parties.  Inconvenience is a non-issue since the case has been transferred to a more favorable

7    forum for the defendants and Synopsys.  There is more danger of delay of resolution of the relevant

8    issues or increased expense if a stay is granted.  The savings of time and effort incurred through a

9    consolidation greatly outweighs any minimal inconvenience, delay or expense.  The balance should not

10   be further tipped toward the ASIC defendants by granting their motion to stay.  Judicial resources would

11   be conserved by consolidating these two actions because resources would not have to be duplicated for

12   separate trials.

13       **B.    Consolidation Would Conserve Judicial Resources And Balance The Conveniences**

14       A stay would cause more discovery disputes as the ASIC defendants would resist Rule 45

15   subpoenas and motions for Court intervention would be needed.  Although the ASIC defendants contend

16   that the real dispute is with Synopsys, which has taken over their defense, when Ricoh has discovery

17   from Synopsys (particularly as to how its product works), Synopsys relies on the fact that it is a third

18   party to attempt to limit discovery in this action.  Given this demonstrated litigation tactic, the same

19   tactic can be expected in the Synopsys case where these defendants are presently a third party, and thus

20   a stay will only prolong the litigation.  Consolidation would avoid that result.

21   **V.    THE CUSTOMER SUIT CASE LAW SUPPORTS CONSOLIDATION**

22       Ricoh acknowledges that, in ordering the case transferred to this Court, the Delaware District

23   Court accepted the ASIC defendants' assertion that Ricoh's lawsuit fell within the customer suit

24   exception.  The case law is clear, however, that if the customer suit exception relates to a process patent

25   (as opposed to a product patent), no stay is appropriate.  *A.P.T. Inc. v. Quad Environmental*

26   *Technologies Corp., Inc.*, 698 F.Supp. 718, 720-721 (N.D. Ill. 1988).  Indeed, the Delaware Court tacitly

27

28

1  acknowledged this rule of law because it refused to stay the *Ricoh v. Aeroflex* case and instead

2  transferred it to this Court.

**A.    The Customer Suit Exception Does Not Support A Stay When A Customer Is A Direct Infringer Of A Process Patent**

A motion to stay based on the customer suit exception should be denied where the patent-in-suit is a process patent that the customer is directly infringing.  Indeed, in these circumstances, the two actions should be consolidated and the first-filed suit should maintain priority.  For example, in *A.P.T. Inc. v. Quad Environmental Tech. Corp.*, 698 F. Supp. 718 (N.D. Ill. 1988), the Court found a declaratory judgment plaintiff was not entitled to an injunction against the defendant's first filed infringement suit against plaintiff's customers because the patent was a process patent.  The facts of *A.P.T.* are similar to the present case.  In *A.P.T.*, Quad (like Ricoh) first filed an infringement action for its process patent against customers of A.P.T. that purchased a product from A.P.T. (as the defendants here have done from Synopsys).  The customers (like the ASIC defendants) were the alleged direct infringers for using the patented process in conjunction with A.P.T.'s product.  A.P.T. sought to stay Quad's suit against the A.P.T. customers, and the Court refused.  The Court held that because the patent at issue was a process patent where the customers are allegedly direct infringers, Quad had a particular interest in suing the customers and that no stay should be granted.  *Id.* at 722.  The Court further stated that A.P.T., the manufacturer, could only be liable for contributory infringement or inducement.  *Id.  See also Williams Gold Refining Co. v. Semi-Alloys, Inc.*, 198 U.S.P.Q. (BNA) 100 (W.D.N.Y. 1978) (denying motion to stay first-filed actions against customer claiming infringement of a method patent because such actions were not against "mere customers"); *Ciba Geigy Corp. v. Minnesota Mining & Mfg.*, 439 F. Supp. 625 (D.R.I. 1977) (customer exception unavailable in suit based upon a combination patent).

This Court, in *American Academy of Science v. Novell,* 1992 U.S. Dist. LEXIS 20145, 24 U.S.P.Q. 2d (BNA) 1386 (N.D. Cal. 1992)  (Brothers Decl., Ex. 5), followed the *A.P.T.* Court in finding that where the patentee has a particular interest in bringing suit against the customer, the customer suit should not be stayed.  There, the Court found that, like Synopsys here, the manufacturer could only be

1   liable for contributory infringement or inducement and where only the customer is alleged to be the

2   direct infringer, no stay should be granted. *Id.*

3            Likewise, in *Zemel Bros. v. Dewey Electronics Corp.*, 218 U.S.P.Q. (BNA) 722

4   (N.D.N.Y. 1982) (attached as Brothers Decl., Ex. 6), the Court held that a process infringement action

5   against customers should not be stayed. The facts in *Zemel* are also similar to the present case. Dewey

6   sued customers of Zemel who had purchased snow making equipment from Zemel. *Zemel* at *2.

7   Dewey contended, in addition to product claims, that the customers had infringed Dewey's process

8   claims through their snowmaking process using Zemel's product. *Id.* at *3. Zemel, the declaratory

9   judgment plaintiff, attempted to enjoin Dewey's suits against its customers under the customer suit

10  exception. *Id.* at *4-5. The Court in Zemel found that Dewey's claims against the customer defendants

11  would not be able to be properly addressed in Zemel's declaratory judgment action because only the

12  customers could be found liable of direct infringement of the snow making process of Dewey's patent.

13  *Id.* at *5-6. Zemel could only be found liable for contributory infringement at most and therefore the

14  direct infringers were necessary parties and the customer suits could not be stayed. *Id.*[4]

15       **B.    Defendants' Reliance On Product Patent Cases That Granted Stays Is Inapposite**

16           The ASIC defendants have cited no cases where a stay was granted to "customers" using

17  process patents. The "customer exception" cases cited by ASIC defendants (Def. Mot. at 7-8) are

18  inapposite because they involve an infringing *product* made by a manufacturer who passed it through to

19  the customer, and where the patentee elected to sue the customers using the product for infringement

20  rather than the manufacturer. *See, e.g., Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1463-64 (Fed. Cir.

21  1990) (customer was a distributor of manufacturer's infringing goods); *Whelan Technologies, Inc. v.*

22

23  _____

24  [4]  Some circumstances, such as damages, also allow the patentee a special interest in suing a customer.
    *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (First Cir. 1977). In *Codex*, the Court
25  acknowledged that "[t]here may be situations, due to the prospects of recovery of damages or other
    reasons, in which the patentee has a special interest in proceeding against a customer himself, rather than
26  solely as a shadow of the manufacturer, and therefore less weight should be given to the manufacturer's
    forum." *Id.* at 738n.6. This acknowledgement is dead on with the present case. In the present case,
27  infringement liability and the proper basis for damages lie with the parties that actually perform the
    process – the ASIC defendants. Ricoh submits that its special interest in pursuing claims against the
28  infringing parties is consistent with *Codex.*

1

2

*Mill Specialties, Inc.*, 741 F. Supp. 715, 716 (N.D. Ill. 1990) (defendant was merely a reseller of

manufacturer's goods); *ATSPI, Inc. v. Sharper Image, Inc.,* 677 F. Supp. 842 (W.D. Pa. 1988)

3

(defendants were resellers of product imported by third party).[5]

4

5

In particular, defendants' reliance on *Katz* is misplaced.  *Katz* relates to a product patent, not

a process patent.  As discussed above, in cases where a process patent is infringed, the customer is the

6

7

direct infringer and the patentee has a special interest in bringing suit against them, making a stay

inappropriate.  In addition, in a process patent suit, the manufacturer will at most be liable for

8

9

contributory infringement/inducement, so a stay of the action against the direct infringers is not granted.

In *Katz*, the manufacturer parties (Lear Siegler/Smith & Wesson) represented to the Court

10

that their customers' issues would be resolved through a decision in the manufacturers' case.  909 F.2d

11

12

at 1464.  The *Katz* Court relied on this representation that all issues would be resolved in one proceeding

and deferred to the lower Court's discretion on that issue.  *Id*.  The Court in *Katz* framed the question as

13

14

one of "whether the issues and parties are such that the disposition of one case would be dispositive of

the other." *Id*. at 1463, citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952).  As

15

16

discussed above, that disposition of the Synopsys case would not be dispositive of the ASIC defendants

17

case.

The customer suit exception is not applicable to every situation where a declaratory judgment

18

19

action and an infringement suit are proceeding simultaneously.  As discussed above, in the cases cited

20

by the defendants, the Courts in their discretion applied the customer suit exception where a *product*

21

patent was infringed or where a manufacturer was precluded from suit in its home forum.  Neither

22

23

circumstance is present here.  The patent-in-suit is a process patent and at the request of the ASIC

defendants the case has now been transferred to the manufacturer's home forum.

24

25

26

27

28

---

[5] Defendants also cited *Refac International, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986).  The opinion
does not state whether the patent-in-suit was a process or product patent.  In addition, unlike the ASIC
defendants here, the *Refac* customer defendants explicitly agreed to be bound by "any injunction".

A further point of distinction from the product cases is the fact that the ASIC defendants have not agreed to be bound by any infringement judgment or an injunction.  To the contrary, the ASIC defendants have only agreed to be bound by the "outcome" of the declaratory judgment action (whatever that means).  Following the authority of *A.P.T.* and *American Academy of Science* line of cases, this Court should reject the motion to stay as inconsistent with the case law and instead consolidate the two cases for discovery and trial.

## CONCLUSION

The ASIC defendants, in their first motion to stay in the Delaware Court, stated that if the Delaware Court would not stay its proceeding, it should be transferred to the Northern District of California "so that it can be joined or otherwise coordinated with Synopsys' declaratory judgment action."  Now is the time to honor this request.

Dated: November 25, 2003

Respectfully submitted,

Ricoh Company, Ltd.

By:     Kenneth Brothers

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum,
   Rubin & Demain
177 Post Street, Suite 300
San Francisco, California  94108
Phone:  (415) 421-7151
Fax:  (415) 362-8064

Gary M. Hoffman
Ken Brothers
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY  LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Attorneys for Ricoh Company, Ltd.