Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone:  (650) 463-8100
Facsimile:   (650) 463-8400

Attorneys for Defendants
MATROX ELECTRONIC SYSTEMS LTD. and
MATROX GRAPHICS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | Case No. C03-4669 MJJ |
| Plaintiff, | **DEFENDANT MATROX ELECTRONIC SYSTEMS, LTD. AND MATROX GRAPHICS INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** |
| vs. | |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC., | Date:    January 6, 2004<br>Time:    9:30 a.m.<br>Ctrm:    11, 19th Floor<br>Judge:  Hon. Martin J. Jenkins |
| Defendants. | |

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-4669 MJJ
MATROX ELECTRONIC SYSTEMS and MATROX
GRAPHICS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................I

NOTICE OF MOTION AND RELIEF SOUGHT ......................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION .................. 2

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 2

II. STATEMENT OF ISSUES TO BE DECIDED ................................................................ 4

III. FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 5

IV. AS A MATTER OF LAW, NEITHER MATROX ELECTRONIC SYSTEMS NOR MATROX GRAPHICS CAN BE HELD LIABLE AS AN INFRINGER UNDER SECTION 271(G). ................................................................... 7

    A. Legal Standard For Summary Judgment ............................................................... 7

    B. The Federal Circuit's Decision In *Bayer AG v. Housey Pharmaceuticals* Is Dispositive Of The Section 271(g) Infringement Claim Against These Two Matrox Defendants ........................ 8

        1. The Language of the Statute .................................................................... 8

        2. Section 271(g) Infringement Is Limited To The Manufacture Of "Physical Goods" And Does Not Encompass Generation Of "Information" ............................................................ 8

        3. Section 271(g) Infringement Is Limited To Processes Used *Directly* in the Manufacture of Physical Products, And Does Not Encompass "Predicate" Processes ..................................... 10

V. CONCLUSION ................................................................................................................ 12

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-4669 MJJ
MATROX ELECTRONIC SYSTEMS and MATROX
GRAPHICS' MOTION FOR SUMMARY JUDGMENT

i

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ............................................................................... 7, 8

*Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831 (Fed. Cir. 1984) ......................................................................................................................................... 7

*Bayer AG v. Housey Pharmaceuticals, Inc.*, 340 F. 3d 1367 (Fed. Cir. 2003) ........................ 8, 9, 10, 11

*Bio-Technology General Corp. v. Genetech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996)) .............................. 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................................ 7

*Colgate Palmolive Co. v. W.L. Gore & Assoc., Inc.*, 919 F. Supp. 767 (D. N.J. 1996) ......................................................................................................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............................................. 8

*Tinoco v. Belshe*, 916 F. Supp. 974 (N.D. Cal. 1995) ........................................................................... 7

**STATUTES**

19 U.S.C. § 1337 ..................................................................................................................................... 9

35 U.S.C. § 271(g) .................................................................................... 2, 4, 5, 7, 8, 9, 10, 11, 12

**OTHER AUTHORITIES**

Process Patents Amendments Act ........................................................................................................... 9

**RULES**

Federal Rules of Civil Procedure 12(b)(6) .............................................................................................. 4

Federal Rules of Civil Procedure 56 ....................................................................................................... 2

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-4669 MJJ
MATROX ELECTRONIC SYSTEMS and MATROX
GRAPHICS' MOTION FOR SUMMARY JUDGMENT

ii

# NOTICE OF MOTION AND RELIEF SOUGHT

Please take notice that, on January 6, 2004 at 9:30 a.m., before the Honorable Martin J. Jenkins in Courtroom 11, 19th Floor, in the United States District Court, 450 Golden Gate Avenue, San Francisco, California, Defendants Matrox Electronic Systems, Ltd. ("Matrox Electronics"), and Matrox Graphics Inc. ("Matrox Graphics") will each seek a judgment from the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, that Matrox Electronics and Matrox Graphics do not infringe claims 13-20 of United States Patent No. 4,922,432 (the "'432 Patent") under 35 U.S.C. § 271(g).[1] This motion is based upon the following memorandum of points and authorities, the accompanying declarations of Ed Dwyer and Erik K. Moller and exhibits in support thereof, the oral arguments of counsel at the hearing on this motion, and all other pleadings and matters of record in this action and in the related declaratory judgment action entitled *Synopsys, Inc. v. Ricoh Company, Ltd.*, N.D. Cal. Case No. C 03 02289 MJJ.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Ricoh Company ("Ricoh") asserts that Matrox Electronics and Matrox Graphics are infringing the '432 Patent, which purports to disclose and claim computer-aided design methods. In particular, Ricoh alleges that Defendants are using, offering to sell, selling and importing into the U.S. computer chips known as "application specific integrated circuits" (or "ASICs") "designed by or using information generated by" the patented computer-aided design method in claims 13-20 of the '432 Patent. (*See* Complaint at ¶¶ 28 and 34).

Ricoh filed this case initially in the District of Delaware, against Aeroflex, Inc., AMI Semiconductor, Inc., and four Matrox entities, among them Matrox Electronics and Matrox Graphics,

---

[1] Matrox Electronics and Matrox Graphics have joined in the motion to stay the present action now set to be heard on December 9, 2003, with the other customer defendants. Matrox Electronics and Matrox Graphics believe that this Court should grant that motion. But they also believe that the Court should still address the present dispositive motion, which will relieve these two defendants of the completely unnecessary burden of having the present action pending against them.

both of which are Canadian companies. Defendants successfully transferred the case to this District, where Synopsys' declaratory judgment action is pending.[2] While Ricoh did not name Synopsys as a defendant in the Delaware action, at the heart of this case is each of the Defendants' alleged use of Synopsys' product called "Design Compiler," a type of Electronic Design Automation ("EDA") software that has been on the market since at least June 1988.

While Matrox Electronics' and Matrox Graphics' use of Design Compiler for their design work does not infringe any of the '432 Patent claims, the question of whether Design Compiler's methodology infringes any claim of the '432 Patent is irrelevant to the present motion. Equally irrelevant to the present motion is the question of whether either Matrox Electronics or Matrox Graphics use, sell, offer to sell, or import ASICs into the United States. The sole issue with respect to Matrox Electronics and Matrox Graphics is whether the patented computer-aided design method in the '432 Patent falls within the purview of 35 U.S.C. § 271(g) since there is no dispute that both are Canadian companies that perform all of their integrated-circuit design work <u>outside</u> the United States.

The Federal Circuit recently has confirmed that Section 271(g) patent infringement relief is available only for patented processes used *directly* in the manufacture of *physical goods*. In this case, however, the patented '432 methods generate *information* for an ASIC's design. This design information eventually can be used to generate the mask data needed to make photomasks, which photomasks are *then* used to create an ASIC; none of these additional steps is part of the patented process. In other words, the '432 Patent does not even purport to cover the manufacture or production of an ASIC—or any physical product—but instead sits many steps back at the design information level. Accordingly, as a matter of law, neither Matrox Electronics nor Matrox Graphics can infringe the '432 Patent—whether by using Design Compiler or any other computer-aided design software—and the Court should grant summary judgment of noninfringement of the '432 Patent.

---

[2] Among other things, Synopsys seeks declarations of noninfringement and invalidity of the '432 Patent, as well as U.S. Patent No. 5,197,016 (the " '016 Patent")—which is the result of a continuation in part of the same patent application that issued as the '432 Patent. Ricoh has not asserted infringement of the '016 Patent in this action.

## II. STATEMENT OF ISSUES TO BE DECIDED

*Whether Canadian corporations Matrox Electronics and/or Matrox Graphics, both of which confine all of their circuit-design work to Canada, could be held liable as infringers of the '432 Patent, which purports to cover only methods of integrated-circuit design, and does not cover the manufacture of any chip or other physical product.*

Recently, the Federal Circuit affirmed the dismissal under Rule 12(b)(6) of a patent infringement claim arising under 35 U.S.C. § 271(g), holding that information or data is not "a product which is made by a process" under Section 271(g), and that a "predicate process to identify the product to be manufactured" (rather than a process used directly in the manufacture of the product) is not sufficiently related to the accused product to warrant a claim for infringement under Section 271(g). In other words, infringement under Section 271(g) is strictly limited to physical goods that are manufactured *directly* by the patented processes.

Here, Matrox Electronics' and Matrox Graphics' use of Design Compiler for their design work would not infringe any of the '432 Patent claims even if they performed their design work in the United States. Because their design work is performed exclusively in Canada, however, their use of Design Compiler can only subject them to infringement liability of the '432 Patent's design method under 35 U.S.C. § 271(g).

The use of the '432 Patent's computer-aided design method results in a list that identifies the following design information: 1) the hardware cells and their interconnection requirements; and 2) the controller and control paths for those hardware cells. (*See* Declaration of Erik Moller ("Moller Decl."), Exh. A, '432 Patent 2:21 – 45). Given that the patented '432 method generates only design information, and Section 271(g) infringement is limited to physical goods that are manufactured using the patented processes, the Court must decide whether the '432 Patent's design information could reasonably be characterized as "a product which is made by a [patented] process."

Next, as noted above, the use of the '432 Patent's method results in the design information only. That design information is eventually and after many other essential and complex processes used to generate the mask data needed to make photomasks. It is these photomasks that are then used in the processes that actually manufacture the integrated circuits. (*See id.*; Declaration of Ed Dwyer ("Dwyer

1  Decl.") ¶¶ 2-3).  Given that the '432 Patent's design information is used only to generate the
2  information eventually used to make photomasks—which then are used in the processes that
3  manufacture the ASICs—and that infringement under Section 271(g) is limited to processes "used
4  directly in the manufacture of the product," the Court must also decide whether the use of the '432
5  Patent's computer-aided design method could reasonably be defined as a process "used directly in the
6  manufacture" of an ASIC.

7  If the answer to these questions is "No," the Court should grant summary judgment of
8  noninfringement in favor of the Canadian Matrox defendants.

9  III.  **FACTUAL AND PROCEDURAL BACKGROUND**

10  On January 21, 2003, Ricoh filed this case in the District of Delaware, asserting that
11  Defendants Aeroflex, Inc., AMI Semiconductor, Inc., Matrox Electronic Systems, Ltd., Matrox
12  Graphics Inc., Matrox International Corp., and Matrox Tech, Inc. have been and are infringing one or
13  more of claims 13 through 20 of the '432 Patent.  (*See generally* Complaint).  The present motion
14  relates only to the infringement claims against Matrox Electronics and Matrox Graphics.

15  In general, the '432 Patent purports to describe a computer-aided method for designing an
16  application specific integrated circuit, or "ASIC."  (*Id.* ¶ 14; *see generally* Moller Decl., Exh. A, '432
17  Patent).  In particular, claim 13 (along with dependent claims 15-17) describes a computer-aided
18  process for the design of an ASIC that results in the generation of information that could be used to
19  generate mask data (which can be used to produce the photomasks eventually used in the manufacture
20  of an ASIC).  (*See* Moller Decl., Exh. A, '432 Patent, 16:34 – 17:10).  Claim 14 (also dependent from
21  claim 13) describes the same process but adds the step of generating the mask data needed to make the
22  photomasks.  (*See* Moller Decl., Exh. A, '432 Patent, 16:34 – 17:10).  Similarly, claim 18 (along with
23  dependent claims 19 and 20) describes a design process that, like claims 13 as well as 15 through 17,
24  also results in the generation of design information that could be used to generate mask data.  (*See*
25  Moller Decl., Exh. A, '432 Patent, 17:11 – 18:24).  None of these claims, however, describes a process
26  used *directly* in the manufacture of *physical goods* (e.g. an ASIC).  (*See generally* Moller Decl., Exh.
27  A, '432 Patent).

28

At the heart of this action lies the Customer Defendants' use of a computer-aided design system called "Design Compiler"—a popular and established product of Synopsys, Inc. (*See* Memorandum and Order dated August 29, 2003, Moller Decl., Exh. B at 5). Design Compiler is logic synthesis software used in the design of integrated circuits. (*See* Dwyer Decl. ¶ 5). Design Compiler, however, does not generate the information that can be used *directly* to make photomasks. (*See id.* at ¶¶ 2-3, 5). Instead, Design Compiler generates design information, which may be used in the many other essential and complex software processes necessary for producing the information used to make photomasks. (*See id.* at ¶¶ 2, 5). Typically, the design information generated by logic synthesis software must be used in at least the following additional processes before the information that can be used to manufacture the photomasks is generated:

1. verifying the functionality of the identified components and their interconnection;
2. generating the design information known as physical layout using software for placement and routing of the components and their interconnections;
3. verifying the physical layout with other software processes such as those for timing characterization, design rule checking, layout-versus-schematic, etc;
4. fracturing (or mask-data-preparation) of the physical layout to generate the instructions used by the electron beam machine to make the photomasks.

(*See id.* at ¶¶ 2, 3).

Once the up to 25 photomasks required to manufacture the integrated circuit have been made, the approximately 100 steps necessary for actually manufacturing the integrated circuit can proceed using those photomasks. (*See id.* at ¶ 4). These manufacturing steps typically include, but are not limited to, processes such as chemical vapor deposition, physical vapor deposition, etching, chemical mechanical polishing, etc. (*See id.* at ¶ 3).

Here both Matrox Electronics and Matrox Graphics are Canadian corporations with their principal places of business in Dorval, Quebec. (*See id.* at ¶ 6). Matrox Electronics is an industry leader in digital video production hardware, and Matrox Graphics is a highly acclaimed manufacturer of graphics cards for use with LCD video displays. (*See id.*). Matrox Electronics and Matrox Graphics are involved in the design of integrated circuits, for which process they employ logic synthesis tools,

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-4669 MJJ                                    -6-
MATROX ELECTRONIC SYSTEMS and MATROX
GRAPHICS' MOTION FOR SUMMARY JUDGMENT

1  such as Synopsys' Design Compiler. (*See id.* at ¶ 7). However, Matrox Graphics' and Matrox

2  Electronics' use of those tools and the conduct of their design work take place exclusively within

3  Canada. (*See id.*).[3]  Because of this and the fact that the '432 Patent's method does not fall within

4  Section 271(g), Matrox Graphics and Matrox Electronics design work in Canada simply cannot, as a

5  matter of law, subject either of them to liability for patent infringement in the United States.

6  **IV.   AS A MATTER OF LAW, NEITHER MATROX ELECTRONIC SYSTEMS NOR
        MATROX GRAPHICS CAN BE HELD LIABLE AS AN INFRINGER UNDER
7       SECTION 271(g).**

8      **A.   Legal Standard For Summary Judgment**

9         Summary judgment is just as reasonable in a patent case as in any other case. *See Barmag*

10 *Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).  When facts

11 conclusively establish that a patent is not infringed, there is no reason to allow the case go to a jury.

12 *Cf. id.*  Moreover, "[s]ummary judgment is not a disfavored procedural shortcut, but rather an essential

13 thread in the fabric of the Federal Rules that eliminates unfounded claims without recourse to a costly

14 and lengthy trial."  *Colgate Palmolive Co. v. W.L. Gore & Assoc., Inc.*, 919 F. Supp. 767, 769 (D. N.J.

15 1996).  Once a party has made an initial showing that summary judgment is warranted, the opposing

16 party may not rest upon pleadings; rather, "the non-moving party must 'designate specific facts

17 showing that there is a genuine issue for trial.'"  *Tinoco v. Belshe*, 916 F. Supp. 974, 979 (N.D. Cal.

18 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Here, the Court must carefully

19 scrutinize any evidence proffered by Ricoh to determine if it raises a genuine issue of material fact as

20 to whether Matrox Electronics or Matrox Graphics could infringe the '432 Patent.  The Court may

21 grant summary judgment if Ricoh's evidence "is merely colorable, or is not significantly probative."

22 *Tinoco*, 916 F. Supp. at 979 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250 (1986)).

23        In this case, summary judgment is warranted because the '432 Patent purports to describe a

24 process of *design*, the result of which is information; it does *not* describe a process for the manufacture

---

[3] Ricoh is more than likely aware that neither of these Canadian Matrox defendants conducts their design work in the United States since Ricoh's complaint does not allege that either company uses the patented design method in the United States. (*See* Complaint at ¶¶ 28 and 34).

Case No. C03-4669 MJJ                                     -7-
MATROX ELECTRONIC SYSTEMS and MATROX
GRAPHICS' MOTION FOR SUMMARY JUDGMENT

HOWREY
SIMON
ARNOLD &
WHITE

1  of an ASIC or of any physical product.  Because it is an irrefutable fact that the Canadian Matrox

2  companies perform all of their design work in Canada, it is impossible for either of these defendants to

3  infringe the '432 Patent under Section 271(g).  Accordingly, there is no reason the infringement claims

4  against these Matrox defendants should go to the jury, and the Court should grant summary judgment

5  of noninfringement.  *See Anderson v. Liberty Lobby*, 477 U.S. at 252; *Matsushita Elec. Indus. Co. v.*

6  *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

   B.   **The Federal Circuit's Decision In *Bayer AG v. Housey Pharmaceuticals* Is Dispositive Of The Section 271(g) Infringement Claim Against These Two Matrox Defendants**

   1.   **The Language of the Statute**

10 Ricoh's theory of infringement against these two Canadian Matrox companies arises under 35

11 U.S.C § 271(g), which provides:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.  In an action for infringement of a process patent, no remedy may be granted for infringement on account of the noncommercial use or retail sale of a product unless there is no adequate remedy under this title for infringement on account of the importation or other use, offer to sell, or sale of that product.  A product which is made by a patented process will, for purposes of this title, not be considered to be so made after - (1) it is materially changed by subsequent processes; or (2) it becomes a trivial and nonessential component of another product.

35 U.S.C. § 271(g).

   2.   **Section 271(g) Infringement Is Limited To The Manufacture Of "Physical Goods" And Does Not Encompass Generation Of "Information"**

23 In August of this year, the Federal Circuit clarified the meaning of the phrase "a product which

24 is made by a process" to require the manufacture of a physical product by an alleged infringer, and in

25 doing so obviated Ricoh's only alleged avenue of relief against the foreign Matrox Defendants.  In

26 *Bayer AG v. Housey Pharmaceuticals, Inc.*, the Federal Circuit reviewed the dismissal by the Delaware

27 District Court of Housey's counterclaim of patent infringement, for failure to state a claim against

28 Bayer under Section 271(g).  In response to Bayer's declaratory relief action, Housey alleged that

Bayer infringed its patented methods of screening compounds for their ability to inhibit or activate proteins in a cell. The result of the patented screening process was information used to identify and describe new drugs that could then be manufactured using that information. *See Bayer AG v. Housey Pharmaceuticals, Inc.*, 340 F. 3d 1367, 1369-70 (Fed. Cir. 2003).

The parties agreed that the scope of the counterclaim for infringement extended to both the importation of a drug identified by the patented process as a protein inhibitor or activator, as well as to the importation into or use in the United States of information generated by the patented process, *i.e.*, "knowledge and information reflecting the identification or characterization of a drug acquired from using the patented methods." *Id.* at 1370.

In addressing both theories of infringement, the court analyzed both the language and legislative history of Section 271(g) in detail, including a discussion of the enactment of the Process Patents Amendments Act, drafted in response to concerns that competitors could avoid infringement of method patents by employing those methods abroad, and then importing the resulting products into the United States. *Id.* at 1373-74. The Act supplemented existing remedies available from the International Trade Commission ("ITC") under 19 U.S.C. § 1337 (including in its definition of "unfair methods of competition" the importation into or the sale within the United States of articles made by means of a process covered by a United States patent). *See id.* (citing 19 U.S.C. § 1337(a)(1)(B)). The court's analysis of the phrase "product which is made by a process," along with its extensive review of the legislative history, led the Federal Circuit to conclude: "that Congress was concerned solely with physical goods that had undergone manufacture." *Id.* The court noted, "Each and every reference to the provision that became section 271(g) describes it as directed to manufacturing." *Id.* at 1374. Accordingly, the Federal Circuit held that Section 271(g) can apply only to the importation or sale of "physical objects" derived from manufacturing processes, and that "the production of information is not within the scope of processes of 'manufacture.'" *Id.* at 1376-77.[4]

---

[4] The Court found further indications that the statute was concerned exclusively with physical goods produced by a manufacturing process in the statutory exceptions to Section 271(g). For example, the statute rules out infringement where an allegedly infringing product "is materially changed by subsequent processes." 35 U.S.C. § 271(g)(1). The Court found Housey's assertion—that the information itself was a "product"—difficult to reconcile with the exception, "which appears to

(Continued...)

As such, any circuit-design information generated via the Canadian Matrox companies' use of Design Compiler is not a physical object, and thus it cannot be a "product which is made by a process" under Section 271(g). Because Matrox Electronics and Matrox Graphics do all of their circuit-design work exclusively in Canada, they do not, and they simply cannot, infringe the '432 Patent.

        3.    **Section 271(g) Infringement Is Limited To Processes Used *Directly* in the Manufacture of Physical Products, And Does Not Encompass "Predicate" Processes**

Ricoh's allegations of patent infringement against Matrox Electronics and Matrox Graphics include the claim that the two companies are infringing the '432 Patent by "using, offering to sell, and/or by selling and/or importing into the United States application specific integrated circuits *designed by or using information generated by, the process* of one or more of claims 13-20 of the '432 Patent[.]" (*See* Complaint ¶¶ 28, 34).

As indicated above, the Federal Circuit's analysis, in the *Housey* decision, did not end with the Court's holding that information is not a "product" under Section 271(g). Because Housey's claim of infringement against Bayer also included actual drug products that Housey alleged Bayer had manufactured using the process described in the patent-in-suit, the Court went on to assess the merits of those assertions as well. *See Housey*, 340 F.3d at 1376-77. Neither the court nor the parties disputed the fact that such drugs were physical products that had been manufactured. *See id.* at 1377. Here Ricoh has similarly asserted that Defendants are infringing its process claims via importation or sale of ASICs. (*See* Complaint ¶¶ 28, 34). The Matrox companies do not dispute that an ASIC indeed is also a manufactured product. The issue here, however, as it was in *Housey,* is the "necessary relationship between the 'process patented in the United States' and the resulting product[.]" *Housey*, 340 F.3d at 1377.

---

(...Continued)

contemplate a change in a physical product." *Housey*, 340 F.3d at 1373. Similarly, the Court found that the second exception under Section 271(g), which excludes infringement where an accused product "becomes a trivial and nonessential component of another product," appears to contemplate a physical product. *Id.*

In determining whether a drug "identified as useful through the use of a patented process" was a product made by that process under Section 271(g), the *Housey* court observed that it was charged with resolving the "critical question of proximity to the product of the patented process" on a case-by-case basis. *Id.* at 1377 (quoting *Bio-Technology General Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1561 (Fed. Cir. 1996)). To assess this requisite "proximity," the Federal Circuit turned once again to the plain language of the statute, noting that it required the allegedly infringing product to have been "made *by* a process patented in the United States." *Id.* at 1377-78 (quoting 35 U.S.C. § 271(g)) (emphasis in original). The Court interpreted the word "by" to require that the process be used *directly* in the manufacture of the product, "and not merely as a predicate process to identify the product to be manufactured." *Id.* at 1378. Accordingly, because Bayer did not use the patented process in the actual manufacturing of the drug, the Court held that that drug was not a product "made by" those processes—regardless of the fact that Bayer had been able to study the compound and generate information regarding its characteristics using the claimed processes. *Id.*

Likewise, the processes Ricoh claims under the '432 Patent are not, and cannot be, used *directly* in the manufacture of integrated circuits (ASICs). Instead, and as discussed in detail above, such processes result in the generation of design information only. Indeed, as in *Housey*, such processes are merely predicates for the identification of the product to be manufactured. *See id.* at 1378. This case fits squarely within the Federal Circuit's analysis. An ASIC is not a product "made by" any process described in the '432 Patent, and the process that *is* contemplated by the '432 Patent merely generates "design information," which is not a manufactured product as required by Section 271(g).

The computer-aided design methods claimed in Ricoh's '432 Patent do not describe the steps of any process for the manufacture of a physical ASIC, but produce only information used in the process of *designing* a product. Tellingly, Ricoh's complaint does not even allege that Matrox Graphics or Matrox Electronics use Ricoh's patented method in the *manufacture* of their ASICS. Instead Ricoh alleges that they sell ASICS "designed by or using information generated by," the claimed process. (*See* Complaint ¶¶ 28, 34). These allegations are not sufficient to make out a cause of action under Section 271(g). Moreover, amending the complaint to correct this defect would be futile, since the

HOWREY
SIMON
ARNOLD &
WHITE

Case No. C03-4669 MJJ                              -11-
MATROX ELECTRONIC SYSTEMS and MATROX
GRAPHICS' MOTION FOR SUMMARY JUDGMENT

method claimed in Ricoh's patent is, at best, a precursor or predicate method to the manufacture of physical goods, and cannot, as a matter of law, be enforced under Section 271(g). Therefore, summary judgment of noninfringement is proper, and the Court should grant this Motion on behalf of Matrox Electronics and Matrox Graphics.

## V.     CONCLUSION

As detailed above, neither Matrox Electronics nor Matrox Graphics has been, or can be, accused of manufacturing a "physical product" that is "made by" the patented methods described in the '432 Patent. The method set forth in the '432 Patent produces information identifying designs for integrated circuits—not the chips themselves or any other physical product. As such, and in accordance with the Federal Circuit's analysis and clarification of Section 271(g), relief is simply not available to a patentee—such as Ricoh—where there are no "physical goods that are manufactured *directly* by the patented process." Accordingly, as a matter of law, neither Matrox Electronics nor Matrox Graphics can infringe the '432 Patent, and the Court should enter summary judgment of noninfringement in their favor.

Dated:  December 2, 2003                               Respectfully submitted,

HOWREY SIMON ARNOLD & WHITE, LLP


By:  /s/
     Teresa M. Corbin
     Attorneys for Defendants
     MATROX ELECTRONIC SYSTEMS
     LTD. and MATROX GRAPHICS INC.