1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, California 94025
   Telephone: (650) 463-8100
5  Facsimile: (650) 463-8400

6  Attorneys for Defendants AEROFLEX INC., et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **RICOH COMPANY LTD.**, <br><br>   Plaintiff, <br><br> v. <br><br> **AEROFLEX, INC., ET AL.,** <br><br>   Defendants. | Case No. CV 03-04669 MJJ <br><br> **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY RICOH'S CUSTOMER SUIT** <br><br> Date:     December 9, 2003 <br> Time:     9:30 a.m. <br> Courtroom: Courtroom 11, 19th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II. ARGUMENT ..........................................................................................................................5

    A. The United States District Court For The District of Delaware Did Not *Deny* The Customer Defendants' Motion To Stay By Transferring This Action To This District. ...............................................................5

    B. A Stay Will Be Procedurally Efficient and Will Cause the Least Hardship for the Greatest Number of Parties. ..................................................6

    C. The Customer Suit Exception To The First-Filed Rule Applies In This Action. ..........................................................................................................9

III. CONCLUSION .....................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*A.P.T., Inc. v. Quad Environmental Tech. Corp., Inc.*,
    698 F. Supp. 718 (N.D. Ill. 1988) ............................................................................................. 11

*aff's by Williams Gold Refining Co., Inc. v. Semi-Alloy Inc.,* 198 U.S.P.Q. 100
    (W.D.N.Y. 1978) ........................................................................................................................ 11

*American Academy of Science v. Novell Inc.*,
    1992 U.S. Dist. LEXIS 20145 (N.D. Cal. 1992) ...................................................................... 11

*ATSPI, Inc. v. Sharper Image, Inc.*,
    677 F. Supp. 842 (W.D. Pa. 1988) ............................................................................................ 10

*Ciba-Giegy Corp. v. Minnesota Mining and Mng. Co.*,
    439 F. Supp. 625 (D.R.I. 1977) ................................................................................................. 11

*Gen-Probe, Inc. v. Amoco Corp.*,
    926 F.Supp. 948 (S.D. Cal. 1996) ............................................................................................... 8

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1997) ................................................................................................... 9

*Katz v. Lear Sielger, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) .............................................................................................. 4, 10

*Landis v. North American Co.*,
    229 U.S. 248 (1936) ...................................................................................................................... 5

*Lemelson v. Apple Computer*,
    1993 U.S. Dist LEXIS 20128 (D. Nev. 1993) .......................................................................... 7

*Leyva v. Certified Crocers of Californis, Ltd.*,
    593 F.2d 857 (9th Cir.),
    *cert. denied*, 444 U.S. 827 (1979) .............................................................................................. 5

*Refac International, Ltd., v. IBM*,
    790 F.2d 79,
    *aff'd on reconsideration in relevant part by* 798 F.2d 459 (Fed. Cir. 1986) ........................ 10

*Whelen Technologies, Inc. v. Mill Specialties, Inc.*,
    741 F. Supp. 715 (N.D. Ill. 1990) ............................................................................................. 10

*Williams Gold Refining Co., Inc. v. Semi-Alloy Inc.*,
    434 F. Supp. 453 (W.D.N.Y. 1977) ........................................................................................... 11

*Zemel Bros., Inc. v. The Dewey Electronics Corp.*,
    1982 U.S. Dist. LEXIS 10201 (N.D.N.Y. 1982) ..................................................................... 11

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996) ..................................................................................................... 8

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
REPLY ISO MOTION TO STAY           -ii-

**STATUTES**

35 U.S.C. § 271(g) ................................................................................................................ 8

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
REPLY ISO MOTION TO STAY

-iii-

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In its papers opposing a stay, Ricoh asserts that it does not intend to accuse Aeroflex et al. (the "Customer defendants") of infringing its patent because of their use of Design Compiler, but will only accuse the use of Design Compiler joined with some, unspecified, "extra step" taken by the Customer defendants. Based on this, Ricoh argues that this case should not be stayed because the presence or absence of that extra step in each Customer defendant's design process cannot be adjudicated in the declaratory judgment action brought by Synopsys. This presentation of Ricoh's allegations marks a dramatic change from the manner in which Ricoh has previously described this case. On those prior occasions, Ricoh has focused entirely upon Design Compiler and said nothing about extra steps performed by the Customer defendants beyond ordinary use of Design Compiler:

- When Ricoh sent demand letters accusing Synopsys' customers of infringing its patent, Ricoh referred in those letters only to one design practice – use of Design Compiler. *See* Declaration of Erik K. Moller in Support of Defendants' Motion to Stay Ricoh's Customer Suit ("Moller Decl."), Exhibit E.

- When Ricoh's in-house counsel, Mr. Ishijimi, assembled the pre-filing evidence required under F.R.C.P. Rule 11 for filing this case, the only evidence that he remembers considering with respect to the design practices of each of the defendants was that they used Design Compiler. *See* Moller Decl., Exhibit B at 47:8–53:1, 61:8 - 71:5.

- When Ricoh was asked in interrogatories to identify the basis of its infringement allegations, its answer referred only to the fact that the defendants used Design Compiler. *See* Moller Decl., Exhibit C at 5-6

Not only does Ricoh's position appear to be at odds with its prior conduct, but Ricoh's in-house counsel, Mr. Ishijimi, has already testified that Ricoh's filing was based on the very limited knowledge that the Customer defendants used Design Compiler. There is no reason to believe that Ricoh has any information at all about the specific manner in which each of the Customer defendants use Design Compiler, and, therefore, no reason to believe that Ricoh has any basis to advance a theory of infringement alleging that the Customer defendants perform particular extra steps beyond the ordinary use of Design Compiler. While Ricoh may wish to enlarge its allegations to include a theory of infringement that relies on additional steps beyond the ordinary use of Design Compiler, it lacks the factual basis required under F.R.C.P. Rule 11 to do so.

Ricoh's brief never states what particular acts by the Customer defendants beyond the ordinary use of Design Compiler are essential elements of its infringement case. Instead, in the section of its brief where one would expect it to provide some explanation of what specific actions by the Customer defendants it is accusing, Ricoh instead simply paraphrases language from some of the steps in its patent claims and asserts that the claim language describes the actions of the Customer defendants. *See* Ricoh's Opposition to Defendants' Motion to Stay at 3:5-12 ("Opposition"). Ricoh insists that the claim language refers to actions taken by the Customer defendants but it is silent on the question of whether those actions involve steps that one must take to use Design Compiler, or something else independent of Design Compiler.

Like any piece of software, Design Compiler can only do useful work when a user has provided it with the requisite input information. Design Compiler, and logic synthesis systems generally, require that the user supply an input design file describing the design to be synthesized in a format that can be interpreted by the logic synthesis software, and a library of target cells from which the logic synthesis software is to synthesize a circuit to implement the functions in the input design. If the extra steps that Ricoh attributes to the Customer defendants are nothing more than constructing and providing input files to the Design Compiler software, then these steps are nothing more than the ordinary steps involved in using Design Compiler.[1]

Judging from the claim language that Ricoh recites it appears that in fact Ricoh's "extra steps" will be read to refer to nothing more than providing inputs to Design Compiler. The claim steps that Ricoh identifies all focus on providing inputs to the logic synthesis software. They include providing design files that describe an ASIC in terms of "architecture independent actions and conditions," storing a set of definitions of these actions and conditions, and supplying library files that contain data describing hardware cells. *See id.* at 3:5-12. Ricoh's contention seems to be that there are infringing and non-infringing modes of operation of Design Compiler, and that infringement depends upon the

---

[1] Ricoh contends in its brief that providing design inputs to Design Compiler is not an "ordinary use" of Design Compiler. *See* Opposition at 6:14-18. This is simply wrong. If a user does not provide design input, the Design Compiler will do nothing useful.

particulars contained in the input files provided by the user to the software. *See id.* 3:20-21 ("Design Compiler can be used in such a way that the user … does not infringe certain claims of the '432 patent, or Design Compiler can be used in such a way that does infringe"). While the parties dispute whether Design Compiler can process input design files composed of "architecture independent actions and conditions," if Design Compiler *does* process such files, it does so only because Design Compiler was designed to handle this type of input and the act, therefore, of generating and providing the input file to the Design Compiler software cannot be characterized as anything other than the ordinary use of Design Compiler.[2]

In its opposition to the Customer defendants' motion to stay this suit, Ricoh advances three principal arguments. Ricoh's first argument, that Judge Sleet denied the Customer defendants' request for a stay at the time this case transferred, is a gross mischaracterization of the Delaware court's transfer order. What Judge Sleet did was determine that this case was fundamentally a dispute between Ricoh and Synopsys, Inc. ("Synopsys"), and that Ricoh's action against the Customer defendants was a "customer suit." *See* Moller Decl., Exhibit A at 4-5. Judge Sleet, therefore, gave greater priority to Synopsys' declaratory judgment action pending in this district, and transferred the customer suit to this Court for coordination with Synopsys' declaratory judgment action (*Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. CV 03-2289 MJJ). He left the question of whether to stay this case to this Court.

The second argument that Ricoh makes is that Judge Sleet was incorrect and that this is not in fact a customer suit because Ricoh is alleging that the Customer defendants play some role in the accused infringement. For the reasons discussed above, this argument is not credible. Ricoh's vague allegations in its brief that the Customer defendants contribute something extra to the alleged infringement underscores, rather than contradicts, the conclusion that Ricoh is accusing the Customer defendants of nothing more than the ordinary use of Design Compiler. Furthermore, Ricoh lacks any Rule 11 basis to allege anything about the particular manner in which the Customer defendants use

---

[2] The same is true for Ricoh's other prefatory actions of providing the accused logic synthesis software with definitions and conditions and supplying library files.

1  Design Compiler. To the extent, therefore, that Ricoh contends that this case is based on specific acts
2  by the Customer defendants the Court ought not to credit those statements until and unless Ricoh
3  provides the basis under F.R.C.P. Rule 11 for its infringement allegations against the Customer
4  defendants.

5        In the final section of its brief, Ricoh asks this Court to revisit the Delaware court's
6  determination that the present action is a customer suit that should be subrogated by Synopsys'
7  declaratory judgment action. Ricoh now contends that the case law precludes determining that a case
8  is a customer suit when the patent at issue is a process patent and the customers play some role in
9  carrying out the process steps. Ricoh too narrowly construes these cases, and conveniently omits that
10 Judge Sleet has already determined that Ricoh's case against the Customer defendants *is* a customer
11 suit, and that Synopsys' declaratory judgment action should take priority. Importantly, the cases cited
12 by Ricoh do not stand for the proposition that the customer suit exception does not apply when the
13 manufacturer's declaratory judgment suit will resolve "the major issues as to the manufacturer's
14 customers." *See Katz v. Lear Sielger, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). As the Delaware
15 court has found, since the *Synopsys* action will resolve all major issues as to the Customer defendants,
16 this action should be stayed pending the resolution of Synopsys' declaratory judgment.

17       A stay of this case will neatly divide the issues, allowing the Court and parties to first address
18 the question of liability raised in the *Synopsys v. Ricoh* declaratory judgment action and to turn to the
19 question of the individual damages owed by each defendant only if Ricoh can establish that the
20 ordinary use of Design Compiler does in fact practice its patent. The unlikelihood that it will be
21 necessary for the Customer defendants to participate in this litigation is further compounded by the fact
22 that if Synopsys loses its declaratory judgment action, it is very likely that some kind of licensing deal
23 will be arranged between the parties.[3] If, however, it becomes necessary to litigate the question of

---

[3] Ricoh declared in its opposition that the *Synopsys v. Ricoh* action cannot serve as a vehicle for determining liability because "there is no infringement claim in the Synopsys declaratory judgment action." Opposition at 4:16-17. There is, however, a **non-infringement claim**, made by Synopsys. If it can prove that it is entitled to the requested declaratory judgment of non-infringement, that determination will be binding on Ricoh. If Synopsys does not prevail, presumably this will be because Ricoh was able to establish that there is an infringing use of Design Compiler and this fact will carry over to any proceeding against the Customer defendants. *See* Moller Decl. at ¶ 8.

1  damages based on the uses the Customer defendants make of Design Compiler, the Court can lift a stay
2  of this case at that time.

3  II. **ARGUMENT**

4  A. **The United States District Court For The District of Delaware Did Not *Deny* The**
5     **Customer Defendants' Motion To Stay By Transferring This Action To This**
6     **District.**

7  Ricoh first argues that the Customer defendants' motion to stay this action pending the
8  resolution of Synopsys' declaratory judgment action should be denied because the District Court for
9  the District of Delaware has already considered this motion and denied it. Ricoh's argument, not
10 supported by any legal precedent and based on an obvious factual misstatement, should be rejected.

11 Every trial court has the discretion to control litigation pending before it. *See, e.g., Landis v.*
12 *North American Co.*, 229 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the
13 power inherent in every court to control the disposition of the causes on its docket with economy of
14 time and effort for itself, for counsel, and for litigants."); *Leyva v. Certified Crocers of Californis, Ltd.*,
15 593 F.2d 857, 846 (9th Cir.), *cert. denied*, 444 U.S. 827 (1979) ("A trial court may, with propriety, find
16 it efficient for its own docket and the fairest course for the parties to enter a stay of an action before it,
17 pending resolution of independent proceedings which bear upon the case."). In the present case, this
18 Court should exercise that discretion and stay this action.

19 Without directly stating it, Ricoh's argument is based on the assertion that Judge Sleet
20 considered the Customer defendants' motion to stay and denied it. However, a perfunctory review of
21 events demonstrates that this is not the case.[4] The Customer defendants sought the Delaware court's
22 relief from the inefficiencies of litigating fundamentally the same issues in two jurisdictions; the

---

[4] Even Ricoh has to admit that the Judge Sleet did not in fact deny the Customer defendants' motion to stay. Ricoh, apparently hoping that the Court will not question the distinction, states that "[t]he Delaware Court *did not grant* the ASIC defendants' motion to stay the case," instead of stating that the Delaware Court denied the ASIC defendants' motion to stay. *See* Opposition at 7:22. However, the fact that Judge Sleet transferred Ricoh's patent infringement action to the Northern District of California is not the same as denying the Customer defendants' request for a stay of the action pending the resolution of Synopsys' declaratory judgment action, nor is it particularly surprising.

1  District of Delaware and the Northern District of Delaware. Judge Sleet in fact granted the Customer
2  defendants' motion, and, applying his discretion to control the docket in his court, decided to provide
3  the Customer defendants the relief of transfer of this litigation to the Northern District of California.
4  Judge Sleet determined that "Ricoh's infringement claims against the defendants are
5  fundamentally claims against the ordinary use of Synopsys' Design Compiler." Moller Decl., Exhibit
6  A at 5. He further determined that the outcome of Synopsys' declaratory judgment action would
7  "efficiently dispose of the infringement issues regarding Synopsys' customers in this [patent
8  infringement] case." *Id.* Since Judge Sleet determined that all issues dispositive to the resolution of
9  the patent infringement action against the Customer defendants would be resolved in Synopsys'
10 declaratory judgment action, the best course of action was to transfer the case to the Northern District
11 of California where Synopsys' declaratory judgment action was being litigated. While he might have
12 stayed the case, this would have created a complicated situation where closely related proceedings
13 would be pending in different jurisdictions. There is no evidence that Judge Sleet's determination to
14 transfer this case constituted a rejection of the Customer defendants' application for a stay.
15 Furthermore, the factors that made a stay less attractive than a transfer when this case was
16 pending in Delaware are not relevant to consideration of this motion, after both cases have been placed
17 under the jurisdiction of this Court.[5] For all of the reasons described in the Customer defendants'
18 motion papers here and filed in the District of Delaware, this patent infringement action should be
19 stayed pending the resolution of Synopsys' declaratory judgment action against Ricoh.

### B. **A Stay Will Be Procedurally Efficient and Will Cause the Least Hardship for the Greatest Number of Parties.**

22 Contrary to what Ricoh contends, a stay would be more procedurally efficient than having both
23 cases proceed simultaneously, whether the matters are consolidated or not. A stay would have the

---

[5] Ricoh states that there exists no new basis for the Customer defendants' motion to this Court to stay this patent infringement action. This is not true. One very important new fact exists; the case has been transferred from the District of Delaware to this Court, and this Court is now the first to face the question of how best to coordinate and manage this case in the context of Synopsys' declaratory judgment action.

1  effect of bifurcating the issues presented into separate liability and damages components.  Bifurcation
2  is appropriate for patent cases, and will allow for maximally efficient adjudication of the present cause.
3  *See Lemelson v. Apple Computer*, 1993 U.S. Dist LEXIS 20128 at *6 - *9 (D. Nev. 1993)
4  (Supplemental Declaration of Erik K. Moller ("Supp. Moller Decl."), Exhibit B).

5        A stay of the present case will allow Ricoh and Synopsys to litigate the initial question of
6  whether there any infringing modes of operation of the Design Compiler software without getting into
7  the particular ASIC design practices of each of the six different customer entities that Ricoh has named
8  in this suit.  In all likelihood, the case between Ricoh and Synopsys will resolve the matter.  If
9  Synopsys invalidates Ricoh's patent or proves that Design Compiler has no infringing mode of use,
10 then the Customer defendants can rely on that judgment in their defense and the matter can be resolved
11 without requiring the participation of the Customer defendants.  If Synopsys loses its case against
12 Ricoh, in all likelihood the principal parties will arrange some licensing agreement or other alternative
13 resolution.  It strains credibility to believe that Synopsys would leave its customers exposed to actions
14 for patent damages resulting from their use of Synopsys' products after certain uses of those products
15 had already been determined to infringe Ricoh's patents, especially given Synopsys' indemnity
16 obligations to those customers.

17       However, in the unlikely event that Ricoh is compelled to pursue a damages action against the
18 Customer defendants after defeating Synopsys, the present case could be re-opened to identify those
19 occasions, if any, on which the Customer defendants used Design Compiler in an infringing mode of
20 operation and to develop evidence on the appropriate measure of damages owed for this use.  The
21 effect of this would be to stage the liability and damages phases of discovery as if the case had been
22 bifurcated.

23       Ricoh blithely asserts that calculation of damages will be a simple matter requiring no more
24 than two additional days of trial time, but this seems wildly improbable.  *See* Opposition at 14:4-5.
25 The relevant evidence will require a review of the ASIC design practices of each of the six defendants
26 and consideration of how to calculate an appropriate royalty rate for Synopsys' customers to pay for
27 use of a software tool that incorporates Ricoh's patent.  This will require, inter alia, testimony on: i) the
28 extent to which there are alternative non-infringing logic synthesis techniques, ii) whether these

techniques would be acceptable for the needs of each individual Customer defendant, and iii) what benefit, if any, the Customer defendants derive from using the infringing logic synthesis method as opposed to a non-infringing alternative. *See Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1571-72 (Fed. Cir. 1996) (the fact an infringer could use a non-infringing alternative is a relevant factor in calculating a proper royalty). These are unlikely to be simple issues.[6]

In addition, each Customer defendant brings to the litigation its own set of complicating issues and discovery problems. For example, some of the Matrox companies that are defendants in this action do their design work and logic synthesis in Canada. Ricoh contends that its patents apply to these Matrox companies under 35 U.S.C. § 271(g), which allows infringement allegations to be made against products made abroad by a manufacturing process patented in the United States, provided those goods are then imported into the United States. The Matrox companies argue that this statutory section does not apply to them. If Ricoh's patent claims can be resolved directly between Synopsys and Ricoh, these sorts of complicating issues arising from the circumstances of the individual Customer defendants can be avoided.

The balance of hardships also tips towards granting a stay. *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F.Supp. 948, 963 (S.D. Cal. 1996) (exercise of stay power should be based on weighing the comparative hardships of the parties and court's interest in orderly adjudication). Ricoh complains that it has been injured by the delay of this case resulting from the transfer from Delaware and that a stay will work further hardship. Ricoh's injury, however, is self-inflicted. It was Ricoh's election to bring a patent fight using Synopsys' customers as proxies rather than to litigate against Synopsys directly.[7] In May, Synopsys began efforts to initiate a declaratory judgment action against Ricoh. Ricoh, however, did everything in its power to thwart this, first by refusing to allow its domestic subsidiaries

---

[6] Furthermore, the complexity of the combined case would be further heightened by the fact that Synopsys' declaratory judgment action also seeks a declaration that Ricoh's U.S. Patent No. 5,197,016 (the "'016 patent") is invalid and not infringed by Synopsys' Design Compiler product while Ricoh has not asserted the '016 patent against the Customer defendants.

[7] While Ricoh has now bound itself not to bring an infringement action on the patents in suit against Synopsys, it did this after it initiated the suit against Synopsys' customers and as an unsuccessful tactical device by which it hoped to avoid Synopsys' declaratory judgment action.

1  to accept service on its behalf (*see* Supp. Moller Decl., Exhibit A), and then, after one its executives in
2  the United States was served, by bringing a non-meritorious jurisdictional motion that further delayed
3  this case. To the extent that the better part of this year has been spent in placing this dispute in the
4  correct procedural posture with Synopsys and Ricoh facing each other as direct adversaries, the blame
5  for this delay lies exclusively with Ricoh and not with the Customer defendants or Synopsys.

6  Proceeding with the present case before Ricoh has established that there are, in fact, possible
7  infringing uses of Design Compiler will work a hardship to the Customer defendants. The defendants
8  ought not to be forced to the inconvenience and expense of participating in a patent litigation because
9  of their use of a commercial product whose internal design they have no knowledge of. *See Kahn v.*
10 *General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1997) (the customer suit exception "is based on
11 the manufacturer's presumed greater interest in defending its actions against charges of patent
12 infringement; and to guard against possibility of abuse."). Staying the case will allow the Court to
13 involve the Customer defendants only if absolutely necessary, and only on the issue – damages – for
14 which their participation is vital.

15 Ricoh argues that because Synopsys has objected to providing discovery about the design of its
16 products in the present suit that this shows that there are important issues regarding the ASIC
17 defendants that are different from those in the *Synopsys* action. *See* Opposition at 11:10-14. The
18 reason that Synopsys opposes providing discovery on liability issues in *this* case is, however, because
19 the issues of liability are best resolved in the *Synopsys* action. Nowhere does Synopsys contend that
20 there is any substantial issue of liability as to any of the Customer defendants that will be left over for
21 the present case. If Ricoh intends to prove that only certain modes of operation of Design Compiler
22 are infringing then there may be a peripheral question as to whether or not each Customer defendant
23 uses Design Compiler in that mode or in some other, but the more significant question of whether that
24 mode is infringing or not will have been resolved.

25 **C.  The Customer Suit Exception To The First-Filed Rule Applies In This Action.**

26 The last section of Ricoh's brief invites the Court to revisit the Delaware court's determination
27 that Ricoh's action against the Customer defendants is a "customer suit." Ricoh argues that a case
28 involving a method patent can never be a customer suit if some aspect of the method claim involves

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                    -9-
REPLY ISO MOTION TO STAY

1  action by the customer. The case law cannot be read that narrowly. If the customer activities that are
2  accused of infringement are necessary for use of the manufacturer's accused product (in at least one of
3  its intended modes of operation), the customer-suit exception to the first-filed rule should apply.

4        The fundamental inquiry in whether a case is a "customer-suit" that should be stayed is whether
5  the later-filed manufacturer's case will resolve the central issues against the manufacturer's customer.
6  *See, e.g., Katz*, 909 F.2d at 1464 ("Lear Siegler/Smith & Wesson have represented to the
7  Massachusetts court that resolution of the major issues before that court, including patent infringement,
8  patent validity, and Mr. Katz' capacity to sue, will resolve these issues as to their customers."); *Refac*
9  *International, Ltd., v. IBM*, 790 F.2d 79, 81, *aff'd on reconsideration in relevant part by* 798 F.2d 459
10 (Fed. Cir. 1986) (affirming stay of customer suit in favor of suit against manufacturer); *Whelen*
11 *Technologies, Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715 (N.D. Ill. 1990) (staying customer suit
12 pending outcome of manufacturer's suit); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842 (W.D.
13 Pa. 1988) (same). As the Customer defendants have already shown this exception reflects the business
14 reality that the manufacturer is the true defendant in the customer suit, with the incentive to vigorously
15 advocate against the patentee.

16       Importantly, the Delaware district court has already found the present case to be one in which
17 the customer suit exception should be applied, finding that Synopsys' declaratory judgment case will
18 "efficiently dispose of the infringement issues regarding Synopsys' customers in this case," and that
19 the outcome of Synopsys' declaratory judgment case will fundamentally resolve this case. *See* Moller
20 Decl., Exhibit A at 5. The Delaware district court has therefore determined that the major issues in this
21 litigation: the validity of the patent and whether there is some mode of usage of the Design Compiler
22 product that will infringe the Ricoh patent, will be determined in Synopsys' declaratory judgment case.
23 *See, e.g., Katz*, 909 F.2d at 1464.

24       The cases that Ricoh cites can all be distinguished since in each one the court determined that
25 fundamental issues necessary to a determination of the customer's liability would not be resolved by
26 the manufacturer's suit. For example, in *American Academy of Science v. Novell Inc.*, the court
27 determined that the manufacturer's declaratory judgment action would not resolve significant liability
28 issues for the customer. *See American Academy of Science v. Novell Inc.*, 1992 U.S. Dist. LEXIS

1  20145 at *8 n.3 -*9 (N.D. Cal. 1992) ("For example; AAS claims that about half of BOA's $50 million
2  infringing computer network systems have nothing to do with Novell's databases. The declaratory
3  judgment action by Novell will not resolve the infringement issues raised by these non-Novell
4  systems.") (Declaration of Kenneth W. Brothers In Support Of Plaintiff Ricoh's Opposition to
5  Defendants Motion to Stay, Exhibit 5 ("Brothers' Decl.")). Based on this fact, the court denied the
6  motion to stay. *See id.* at *9 *("*Because [the manufacturer's] action will thus have little, if any, effect
7  on issues to be litigated in the action against [the customer], the Court finds that the customer suit
8  exception is inapplicable. Novell's motion to stay is therefore DENIED.").

9    Similarly, in the other cases cited by Ricoh, the allegedly infringing customer was necessary to
10 the determination of a dispositive issue relevant to liability or had some other independent interest in
11 the litigation. *See A.P.T., Inc. v. Quad Environmental Tech. Corp., Inc.*, 698 F. Supp. 718, 721 (N.D.
12 Ill. 1988) (""[W]here the patentee has a separate interest in litigating against the customer, the 'real
13 party in interest' rationale for giving priority to the manufacturer's lawsuit is inapplicable."); *Zemel*
14 *Bros., Inc. v. The Dewey Electronics Corp.*, 1982 U.S. Dist. LEXIS 10201 at *3 (N.D.N.Y. 1982) (no
15 evidence that the manufacturer would indemnify customer's patent infringement liability) (Brothers'
16 Decl., Exhibit 6). In fact, two cases cited by Ricoh involved primarily supplier-customer relationships
17 as opposed to manufacturer-customer relationships and are completely irrelevant to this issue. *See*
18 *Ciba-Giegy Corp. v. Minnesota Mining and Mng. Co.*, 439 F. Supp. 625, 631 (D.R.I. 1977) ("Ciba
19 provides the parts, the directions for assembly and the inducement but that does not make a
20 manufacturer."); *Williams Gold Refining Co., Inc. v. Semi-Alloy Inc.*, 434 F. Supp. 453, 454-55
21 (W.D.N.Y. 1977) (plaintiff produces semiconductor cover used by patent infringement defendant in
22 manufacturer of container by allegedly patented method), *aff's by Williams Gold Refining Co., Inc. v.*
23 *Semi-Alloy Inc.,* 198 U.S.P.Q. 100 (W.D.N.Y. 1978).

24   By contrast, in the present case, the issues dispositive to the resolution of this action, namely
25 patent validity and infringement, will be necessarily decided in Synopsys' declaratory judgment action.
26 As repeatedly stated, either Synopsys will win in its declaratory judgment action, in which case the
27 Customer defendants can rely on that judgment in their defense or Synopsys will lose its case and
28 likely arrange some licensing agreement or other alternative resolution. All relevant dispositive issues

1  will be resolved in Synopsys' declaratory judgment action, and Ricoh has no independent interest
2  against the Customer defendants.
3      This case should be stayed pending the resolution of Synopsys' declaratory judgment action.

5  III.  **CONCLUSION**
6      For the reasons stated in the Customer defendants' brief in support of its motion and above,
7  litigation against the Customer defendants should be stayed pending resolution of Synopsys'
8  declaratory judgment action against Ricoh.
9  Dated: December 2, 2003          Respectfully submitted,
10                                   HOWREY SIMON ARNOLD & WHITE, LLP

12                               By: /s/
13                                   Erik K. Moller
                                  Attorneys for Defendants
14                                   Aeroflex Incorporated, et al.