1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, California 94025
   Telephone: (650) 463-8100
5  Facsimile: (650) 463-8400

6  Attorneys for Defendants
   AEROFLEX INCORPORATED,
7  AMI SEMICONDUCTOR, INC., MATROX
   ELECTRONIC SYSTEMS, LTD.,
8  MATROX GRAPHICS INC., MATROX
   INTERNATIONAL CORP. and
9  MATROX TECH, INC.

10

11                     UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                         SAN FRANCISCO DIVISION

14 | RICOH COMPANY, LTD                    ) CV 03-04669 MJJ
                                           )
15 |         Plaintiff,                    ) **NOTICE OF MOTION AND MOTION**
                                           ) **REQUESTING COURT ORDER LIFTING**
16 |    vs.                                ) **RESTRICTIONS IMPOSED BY**
                                           ) **DELAWARE COURT ON DEPOSITION OF**
17 | AEROFLEX INCORPORATED, AMI            ) **DR. DONALD THOMAS; MEMORANDUM**
     SEMICONDUCTOR, INC., MATROX           ) **OF POINTS AND AUTHORITIES IN**
18 | ELECTRONIC SYSTEMS, LTD.,             ) **SUPPORT THEREOF**
     MATROX GRAPHICS, INC., MATROX         )
19 | INTERNATIONAL CORP., and MATROX       ) Date:  January 6, 2004
     TECH, INC.,                           ) Time:  9:30 a.m.
20 |                                       ) Place: Courtroom 11, 19TH Floor
             Defendant.                    )
21                                         )

Case No. CV 03-04669 MJJ
NOTICE OF MOTION AND MOTION RE
RESTRICTIONS ON THOMAS DEPOSITION
P:\8001425

HOWREY
SIMON
ARNOLD &
WHITE

# NOTICE OF MOTION AND RELIEF REQUESTED

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 6, 2004, at 9:30 A.M., or as soon thereafter as counsel may be heard in Courtroom 11 of the above-entitled Court, defendants Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech, Inc. ("Matrox Tech") (collectively "Defendants") will seek an order from this Court authorizing them to take the deposition of Dr. Donald Thomas. The Defendants' motion is based on the following memorandum of points and authorities, the Declaration of Erik K. Moller ("Moller Decl.") and exhibits thereto, all pleadings and papers in the Court's file, the arguments of counsel, and any additional evidence this Court may consider at the time of the hearing.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The Defendants respectfully request that the Court issue an order authorizing them to take the deposition of Dr. Donald Thomas. Dr. Thomas is one of the principal engineers involved during the 1980s in the development of an early logic synthesis software system, known as the Design Automation Assistant (DAA), at Carnegie Mellon University. The Defendants believe DAA is prior art that anticipates the patent that Ricoh has asserted against the Defendants in this case.[1] Before this case was transferred from Delaware, the Delaware district court ordered discovery on the question of whether Dr. Thomas had provided confidential information from Ricoh's counsel to counsel for the Defendants. The Delaware district court also issued an order that might be interpreted to suspend the

---

[1] Aspects of this system is described in several articles co-authored by Dr. Thomas, including:

Kowalski, Thomas, "The VLSI Design Automation Assistant: What's in a Knowledge Base," 22nd Design Automation Conference, at 252-258 (1985), and

Director, Parker, Siewiorek, Thomas, "A design methodology and computer aids for digital VLSI systems" IEEE Transactions on Circuits and Systems, vol. Cas-28 No. 7, 634-645 (1981).

Defendants' ability to take oral testimony from Dr. Thomas while this investigation was underway. The Defendants have provided the discovery ordered by the Delaware district court, and this discovery demonstrates that there is absolutely no basis to believe that Dr. Thomas has conveyed any Ricoh confidential information to the Defendants or their counsel. The discovery further shows that Defendants' counsel was circumspect in their dealings with Dr. Thomas and truthful in its recounting of its dealings with Dr. Thomas to the Delaware court. The Defendants, therefore, request that this Court lift the order limiting their ability to take from the deposition of Dr. Thomas.[2]

Before Ricoh brought the present litigation it retained Dr. Thomas, apparently for the purpose of explaining the technology at issue and relevant prior art to Ricoh's counsel. *See* Campbell Decl.,[3] Ex. B at 7, 30. It appears that at some point Dr. Thomas explained to the Ricoh attorneys that he did not believe that there was any merit to their patent. *See* Ex. A at 44:16 – 46:4, Ex. B at 26. Dr. Thomas then told Ricoh's attorneys that he did not wish to appear on their behalf during any litigation. *See* Campbell Decl. Ex. B at 26, 30; Ex. A at 44:16–46:4.

The Defendants' counsel subsequently contacted Dr. Thomas in researching prior art to the patent in suit.

Since the time that the Defendants announced that they wished to retain Dr. Thomas as a consultant, Ricoh has done everything in its power to prevent Dr. Thomas from testifying, including making unsupported allegations that Dr. Thomas passed Ricoh's confidential information to Defendants and that Defendants' counsel lied to Judge Sleet. While the Defendants have refuted each of these allegations,[4] and have withdrawn their plan to retain Dr. Thomas as a consultant, Ricoh still

---

[2] While this motion relates to discovery issues, because it requests lifting of an order imposed by Judge Sleet in Delaware, defendants have not marked this motion for referral to the Magistrate Judge assigned to this action.

[3] Unless otherwise indicated, all references to Exhibits refer to exhibits attached to the Declaration of Louis Campbell (Docket Index No. 10), filed on October 30, 2003, in Support of Defendants' "Notice to Court Re Order Requiring Delivery of Documents Outstanding at Time of Transfer of Case from Delaware."

[4] All of the documents constituting the communications between Defendants and Dr. Thomas were produced to the Court with Louis Campbell's Declaration of October 30. The Court can, therefore, ascertain for itself that there is no merit to Ricoh's allegations. Exhibit A attaches the August 15,

(Continued...)

demands that Dr. Thomas' testimony be suppressed. The Defendants have conferred with Ricoh's counsel in an effort to resolve the dispute relating to Dr. Thomas, but Ricoh's proposal for resolving the dispute requires, *inter alia*, that discovery from Dr. Thomas be declared off limits. *See, e.g.,* Declaration of Erik K. Moller, Exhibit A. This is an unacceptable demand. Dr. Thomas has highly relevant knowledge of the subject matter and of the prior art. The fact that Dr. Thomas previously expressed his, apparent, negative opinions of Ricoh's patents directly to Ricoh when he was serving as a paid consultant does not give Ricoh "ownership" of Dr. Thomas' knowledge or his opinions.[5] The Defendants, therefore, request that the Court lift any restrictions on their ability to depose Dr. Thomas, subject only to the restriction that Dr. Thomas shall not disclose the substance of any communications that he may have had with counsel for Ricoh.

An identical motion is being made contemporaneously in the related declaratory judgment case brought by Synopsys, Inc. against Ricoh. While there is no order restricting discovery from Dr. Thomas in the *Synopsys v. Ricoh* case, Synopsys and the Defendants in this case are represented by the same counsel. Any determinations about communications between Dr. Thomas and the Defendants' counsel in this case will, presumably, have applicability to the *Synopsys* case as well. This motion will, therefore, have relevance in the *Synopsys* declaratory judgment action, even if the present case is stayed.

---

(...Continued)
2003, deposition testimony of Dr. Donald Thomas. Exhibit B includes the Defendants' production of communications between Defendants' counsel and Dr. Thomas. Exhibit C contains a transcript of the August 28, 2003 hearing before Judge Sleet. Exhibit D contains a transcript of the July 30, 2003 hearing before Judge Sleet. Exhibit E is a letter dated August 5, 2003 from Mr. Kelley to Mr. Hoffman. Exhibit F is an July 22, 2003, facsimile from Mr. Campbell to Mr. Meilman. Exhibit G is a letter from Mr. Whetzel to Mr. DiGiovanni enclosing a declaration of Mr. Monsey regarding Ricoh's communications with Dr. Thomas. Hereinafter, all references to Exhibits should be understood to be references to the Exhibits to the Campbell declaration.

[5]  If, however, Dr. Thomas was asked to opine about the validity of Ricoh's patent and conveyed to Ricoh that he believed that their patent was invalid before Ricoh filed its lawsuit against the Defendants that would certainly raise significant questions under F.R.C.P. Rule 11.

## II. STATEMENT OF FACTS

Dr. Thomas was one of the principal developers of the Design Automation Assistant logic synthesis system, which the Defendants believe is prior art to the patent that Ricoh is asserting in this case. Prior to the initiation of the Delaware lawsuit, Dr. Thomas had briefly served as a consultant for Ricoh, advising them on the substance of various prior art papers. *See* Campbell Decl. Ex. B at 7, 30. In March of 2003, Dr. Thomas told Ricoh's attorneys that he would not testify for Ricoh at trial. *See* Campbell Decl. Ex. B at 26, 30; Ex. A at 44:16–46:4. Dr. Thomas explained at his deposition that he had formed opinions about the patents and that those opinions were the basis for "the comment that I made in March to counsel." *See* Cambell Decl. Ex. A at 61:6 – 62:7. Since the only conversation with Ricoh in March that Dr. Thomas has described was his announcement that he would not appear as a witness for Ricoh, it appears that Dr. Thomas concluded that the Ricoh case was not meritorious. *See* Campbell Decl. Ex. A at 44:16-45:15, Ex. B at 26. Ricoh's counsel, who would know, also suggested to Judge Sleet that Dr. Thomas holds unfavorable opinions of their case that have been expressed in confidential communications with Ricoh. *See* Campbell Decl. Ex. C at 26:9-20.

On March 31, the Defendants first contacted Dr. Thomas by email and asked whether he was available to serve as a consultant to the defense. *See* Ex. B at 1. Dr. Thomas responded by email and told the Defendants that he had done related work for Ricoh, and the Defendants did not pursue the matter further at that point. *See* Ex. B at 7, 13. In June, the Defendants subpoenaed Dr. Thomas for documents and testimony relating to the prior art Design Automation Assistant logic synthesis system. Dr. Thomas then contacted Defendants' counsel by e-mail to work out technical issues relating to compliance with the subpoena. See Ex. B at 24. In subsequent email communications with Defendants' counsel, Dr. Thomas explained that he believed his relationship with Ricoh was at an end, and that he could "be of great help to the defense." *See* Ex. B at 30, 36; *see also,* Ex. A at 44:16-46:4; 46:21-47:17.

Wishing, if possible, to obtain Dr. Thomas' assistance, the Defendants arranged to retain Dr. Thomas as a consultant. Immediately after Dr. Thomas had signed a retention letter, the Defendants

1  informed Ricoh of the agreement and notified Ricoh's counsel that the Defendants were withdrawing
2  Dr. Thomas' subpoena.[6] Up until this point there had been no oral communications of any kind
3  between Defendants' counsel and Dr. Thomas.  By a letter dated July 22, 2003, Ricoh's counsel
4  objected to the Defendants' retention of Dr. Thomas as a consultant and asserted that Dr. Thomas was
5  in possession of Ricoh's confidential and privileged information.  Thereafter, in a short five minute
6  conversation, Mr. Luis Campbell, counsel for Defendants, asked Dr. Thomas questions intended to
7  verify that Dr. Thomas had not received from Ricoh any work product information that might prevent
8  him from consulting for the Defendants.  This was the only oral communication between Dr. Thomas
9  and Defendants' counsel.  *See* Ex. B at 45-48, 51-52 and July 23 conversation described in cover letter
10 that accompanies Ex. B documents; Ex. E.  Defendants' counsel was careful not to elicit and cautioned
11 Dr. Thomas not to disclose the substance of any communications with Ricoh or even an identification
12 of any documents received by Dr. Thomas but only the types of documents and whether they were
13 public or not.  *See* Ex. B at 51.  Dr. Thomas responded by email that he had received only public, non-
14 confidential documents.  *See* Ex. B at 52.

15     Ricoh strenuously objected to the Defendants' retention of Dr. Thomas and asked the Court for
16 a hearing on the matter, which was held on July 30.  During the hearing, Ricoh represented that it had
17 disclosed to Dr. Thomas counsel's opinions and litigation strategy and Ricoh's counsel stated that they
18 had a declaration to that effect.  Ricoh's counsel stated that they believed that Dr. Thomas had a
19 conflict of interest and they were concerned that their confidential information had been communicated
20 to Defendants' counsel.  At the end of the hearing, Judge Sleet ordered Defendants' counsel to produce
21 copies of their correspondence with Dr. Thomas and ordered Dr. Thomas to appear for a deposition
22 limited to the subject matter of his dealings with Defendants' counsel.  The correspondence was

---

24 [6] Unfortunately, a mistake was made and Ricoh's counsel had not been immediately supplied with a copy of this deposition notice and subpoena.  Ricoh has suggested that there was a nefarious motive for this accident, but this is contrary to the evidence.  Ricoh first learned about the subpoena when Defendants' counsel referred to it in this subsequent communication with Ricoh's counsel withdrawing Dr. Thomas' deposition.  Had Defendants' counsel intended to conceal their contact with Dr. Thomas or the subpoena it would not make any sense for them to reveal to Ricoh that they had retained Dr. Thomas or to refer to the subpoena that was now being withdrawn.  *See* Ex. F.

HOWREY
SIMON
ARNOLD &
WHITE

Case No.  CV 03-04669 MJJ                              -5-
NOTICE OF MOTION AND MOTION RE
RESTRICTIONS ON THOMAS DEPOSITION

produced and Dr. Thomas's testimony was taken, and both demonstrated that there had been no communication of any Ricoh confidences from Dr. Thomas to Defendants' counsel. On August 20, five days after Dr. Thomas' deposition, Ricoh's counsel provided to Defendants' counsel for the first time the Declaration of Christopher A. Monsey regarding Ricoh's counsel's relationship and communications with Dr. Thomas.

Thereafter, hoping to put the matter to rest, Defendants' counsel decided they would not use Dr. Thomas as a consultant and would instead take his deposition as a fact witness. Ricoh, however, raised the issue with the Court again during a telephone conference held on August 28, in which a variety of different discovery issues were addressed. On this occasion, Ricoh asked the Court to conduct an *in camera* inspection of the Defendants' internal communications regarding Dr. Thomas's retention. Ricoh told Judge Sleet that there was a contradiction between what Defendants' counsel had told the court in the July 30 hearing about counsel's conversations with Dr. Thomas and what Dr. Thomas had testified about those conversations. The record demonstrates, however, that what Defendants' counsel said on July 30 was perfectly consistent with Dr. Thomas's later testimony regarding those communications. *Compare* Ex. D at 14:14-15:21 with Ex. A at 70:18-71:15, 73:23-76:15 and Ex. B at 51-52. Unfortunately, Judge Sleet did not have access to any of the documentary or testimonial evidence. Acting on Ricoh's characterization of the evidence, he granted Ricoh's request and ordered Defendants' counsel to produce its internal communications for *in camera* review. The very next day, before the Defendants had an opportunity to present the requested documents, the Delaware court transferred the case to this District.

**III.   ARGUMENT**

The order of the Delaware court suspending communications between the Defendants and Dr. Thomas was enacted to allow Ricoh the opportunity to find evidence, if it could, to support its position that Defendants should not be permitted to retain Dr. Thomas. Ricoh has now had all the discovery that it requested: it has copies of all of the written communication between Dr. Thomas and Defendants' counsel and it has taken Dr. Thomas' deposition on this subject. Ricoh has come up empty-handed: there is absolutely no evidence of any Ricoh confidential information being discussed.

Indeed, the evidence demonstrates that Dr. Thomas and Defendants' counsel were both careful to avoid any possibility of a transfer of confidential information.

Given that there is no evidence of a transfer of confidential information, Ricoh has shifted gears and has recently advanced an alternative theory that Dr. Thomas' testimony should be suppressed as a sanction for alleged misconduct by the Defendants. There is, however, nothing sanctionable in the conduct of Defendants' counsel. It was not improper for the Defendants to at least consider the possibility of retaining Dr. Thomas.[7]

When arguing before the Delaware court, Ricoh argued that the evidence suggested that Defendants' counsel had lied to the court when characterizing its communications with Dr. Thomas. When Ricoh made this allegation, it did so knowing that the Delaware court had not seen the communications with Dr. Thomas produced by the Defendants or read the oral testimony of Dr. Thomas. In reality, there is absolutely no basis for the innuendo leveled by Ricoh against Defendants' counsel: what Defendants' counsel told the Delaware court is entirely consistent with the evidence.

The issue that the Delaware Court was originally asked to address – whether the Defendants could retain Dr. Thomas as a paid consultant – is no longer relevant. The evidence that Ricoh sought has all been provided and there is nothing in any of it that would justify suppressing Dr. Thomas's testimony. The Defendants, therefore, request an order authorizing them to take discovery from Dr. Thomas.

**A.  Defendants Did Not Receive Any Confidential Information From Dr. Thomas.**

The communications between Defendants' counsel and Dr. Thomas demonstrate that there was nothing improper or untoward in Defendants' counsel's communications with Dr. Thomas.

---

[7]  The decision in *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1249-50 (E.D. Va. 1991) counsels that parties considering retaining a consultant who has had relationships with an opposing party should take care to ascertain the nature of the disclosures between the consultant and the opposing party and should disclose any retention promptly to the other side. Defendants' counsel did both of these things.

1    As described above, Defendants' counsel did not have any substantive communications with
2  Dr. Thomas. In July of 2003, before Defendants' counsel attempted to use Dr. Thomas in a consulting
3  capacity, they inquired into what types of materials he had received from Ricoh to determine whether
4  Dr. Thomas had received attorney work product or other confidential information about Ricoh's case
5  strategy. Dr. Thomas told counsel that he had received only non-confidential material from Ricoh's
6  attorneys. *See* Ex. B at 52; *see also* Summary of July 23 conversation contained in August 5 letter
7  from Mr. Kelley to Mr. Hoffman in Ex. E. When Ricoh's counsel questioned Dr. Thomas about this
8  during the deposition, Dr. Thomas explained that there was nothing confidential in what he had
9  communicated to Ricoh:

> I feel that my work for Ricoh was in patent analysis. I taught them certain things as if they had come to a classroom and I taught them something. They would ask a question, I would explain something. If somebody else asked me those same questions, as people have done over the years and people will over other years, I would feel free to answer those questions.

Ex. A at 35:2-8. *See also,* Ex. A at 70:18-71:15.

    Dr. Thomas testified that Defendants' counsel took pains to avoid eliciting any information
about the substance of Dr. Thomas's communications with Ricoh, and Dr. Thomas was careful not to
provide any such information. *See* Ex. A at 72:11–76:15.

**B.    Defendants' Representations To Judge Sleet Were Consistent With Dr. Thomas's Testimony.**

    Ricoh's justification for asking the Court to do an *in camera* review of the Defendants' internal
communication was its allegation that Defendants' counsel must have misled the Delaware court when
counsel told the court that Dr. Thomas had told them that he had not received any confidential
information from Ricoh. *See* Ex. C at 28:15–29:16. This allegation, however, is unfounded.

    Defendants' counsel told Judge Sleet that they had inquired into whether Dr. Thomas had
received anything confidential from Ricoh or talked to Ricoh about case strategy. *See* Ex. D at 14:14 –
16:3. The Defendants have described that these questions were asked in the July 23rd telephone
conference. *See* Summary of July 23 conversation contained in August 5 letter from Mr. Kelley in Ex.
E. Dr. Thomas's testimony was perfectly consistent with this account. He testified that Defendants'
counsel had specifically asked whether he had received confidential information and he had responded

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                    -8-
NOTICE OF MOTION AND MOTION RE
RESTRICTIONS ON THOMAS DEPOSITION

that the information he had received was a collection of public, non-confidential documents. *See* Ex. A at 70:18–71:15, 72:11–73:7, 75:8–75:25; Ex. B at 51-52. Defendants' counsel assumed that, if Dr. Thomas believed that he had received information about case strategy, he would have so stated in response to Defendants' counsel's question of whether he had received any confidential information from Ricoh. There was no opportunity for Defendants' counsel to confirm this fact or make any follow-up inquiry since Judge Sleet ordered at the July 30 hearing that Defendants' counsel should have no further contact with Dr. Thomas until the matter was resolved. Dr. Thomas did testify that he had never told Defendants' counsel that he believed that he had received "confidential information" in any of his conversations with Ricoh. *See* Ex. A at 76:9-12. If Dr. Thomas did believe that he had received information relating to Ricoh's case strategy – a question that is not answered in the testimony elicited from Dr. Thomas by Ricoh – he never told Defendants' counsel that he had received such information. Far from being inconsistent, therefore, Dr. Thomas's testimony corroborates what Defendants' counsel told the Delaware court.[8]

Despite Ricoh's assertions, Defendants' counsel did not suggest to Judge Sleet that Dr. Thomas had never discussed the merits of Ricoh's patent with Ricoh – what Defendants' counsel argued was that the possibility that Dr. Thomas had expressed opinions about prior art to Ricoh's counsel did not, in itself, create a conflict of interest that would disqualify Dr. Thomas from serving as a consultant to Defendants. *See* Ex. D at 19:16 – 20:2.

### C. There Is No Basis To Suppress Dr. Thomas' Testimony Regarding Prior Art Logic Synthesis Systems.

Dr. Thomas has first hand knowledge of DAA and, because of his specialization in the area of logic synthesis, he is also aware of the capabilities of other contemporaneous logic synthesis systems and has knowledge about what concepts were commonly understood to specialists in this area at the time of the Ricoh patent filing. Dr. Thomas' knowledge in this area predates his communications with

---

[8] Dr. Thomas did testify that he had "confidential" communications with Ricoh, but explained that he regarded the identification of any materials received from Ricoh as confidential, regardless of whether the materials received were public or not. Dr. Thomas did not disclose to Defendants' counsel the identification of the materials he received from Ricoh. *See* Ex. A at 75:8-25.

1  Ricoh, and it is, therefore, discoverable. Dr. Thomas himself testified, as noted above, that the
2  information he conveyed to Ricoh regarding logic synthesis systems was identical in content to what
3  he freely discussed in his classroom. *See* Ex. A at 35:2-8. Even if Dr. Thomas' dealings with Ricoh
4  were sufficiently substantial to mean that he ought not to consult for defendants, his testimony
5  regarding prior art logic synthesis systems is still relevant and may still be discovered by Defendants.
6  *See Wang Laboratories, Inc. v. CFR Associates, Inc.*, 125 F.R.D. 10, 13-14 (D. Mass. 1989) (although
7  prior relationship with one side disqualified an individual from serving as an expert to the other side,
8  he could still be called to testify regarding relevant factual issues).

## IV.    CONCLUSION

Defendants request that the Court authorize Dr. Thomas to provide oral testimony in connection with this matter. While Defendants' past conduct demonstrates that they have been extremely careful not to probe into matters regarding the specifics of Dr. Thomas' communications with Ricoh, the Court might provide Ricoh some assurances that its confidences will be respected by explicitly ordering Defendants not to inquire into the substance of Dr. Thomas' communications with Ricoh.

Dated: December 2, 2003

Respectfully submitted,

HOWREY SIMON ARNOLD & WHITE, LLP

By: /s/
Teresa M. Corbin
Christopher Kelley
Thomas Mavrakakis
Erik K. Moller

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC.

1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, California 94025
   Telephone:  (650) 463-8100
5  Facsimile:  (650) 463-8400

6  Attorneys for Defendants AEROFLEX INC., et al.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12 RICOH COMPANY LTD.,              ) Case No. C03-04669 MJJ
                                    )
13         Plaintiff,               ) **[PROPOSED] ORDER GRANTING**
                                    ) **DEFENDANTS' MOTION REQUESTING**
14                                  ) **COURT ORDER LIFTING RESTRICTIONS**
                                    ) **IMPOSED BY DELAWARE COURT ON**
15    v.                            ) **DEPOSITION OF DR. DONALD THOMAS.**
                                    )
16                                  ) Date:    January 6, 2004
                                    ) Time:    9:30 a.m.
17 AEROFLEX, INC., ET AL.,          ) Ctrm:    11, 19th Floor
                                    ) Judge:   Hon. Martin J. Jenkins
18         Defendants.              )
                                    )
19 _____  )

20

[line numbers 20–28 blank]

HOWREY
SIMON
ARNOLD &
WHITE

Case No.  C03-04669 MJJ
[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION RE THOMAS DEPO

1  This matter came before the Court on January 6, 2004 on motion by defendants Aeroflex
2  Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd.
3  ("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"),
4  and Matrox Tech, Inc. ("Matrox Tech") seeking an order from this Court authorizing them to take the
5  deposition of Dr. Donald Thomas.
6  After consideration of the papers filed in support of the motion, any papers filed in opposition,
7  and any oral argument of counsel:
8
9  IT IS ORDERED, ADJUDGED AND DECREED that:
10  1.    Defendants may take the deposition of Dr. Donald Thomas.
11
12
13  Dated: _____, 2003            _____
                                               The Honorable Martin J. Jenkins
14                                             United States District Court Judge

Case No. C03-04669 MJJ                     -2-
[[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION RE THOMAS DEPO

HOWREY
SIMON
ARNOLD &
WHITE