Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICOH COMPANY, LTD., | **Case No.  CV 03-04669 MJJ** |
| Plaintiff, | **DISCOVERY MOTION** |
| vs. | **DECLARATION OF JONATHAN WEISSGLASS IN SUPPORT OF PLAINTIFF RICOH'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| AEROFLEX INCORPORATED, et al., | |
| Defendants. | **Date:  February 10, 2004**<br>**Time: 9:30 a.m.**<br>**Courtroom:  11** |

1    I, Jonathan Weissglass, hereby declare as follows:

2        1.    I am an attorney at law licensed to practice in the State of California and am a partner in

3    the law firm of Altshuler, Berzon, Nussbaum, Rubin & Demain, attorneys for the Plaintiff Ricoh

4    Company, Ltd. ("Ricoh").

5        2.    Attached hereto as Exhibit 1 is a true and correct copy of Defendants' Initial Disclosure

6    Statement.

7        3.    Attached hereto as Exhibit 2 is a true and correct copy of Ricoh's Second Set of

8    Document Requests to All Defendants.

9        4.    Attached hereto as Exhibit 3 is a true and correct copy of a Defendant Aeroflex Inc.'s

10   Responses to Ricoh's Second Set of Document Requests to All Defendants.

11       5.    Attached hereto as Exhibit 4 is a true and correct copy of Defendant AMI Semiconductor,

12   Inc.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

13       6.    Attached hereto as Exhibit 5 is a true and correct copy of Defendant Matrox Tech, Inc.'s

14   Responses to Ricoh's Second Set of Document Requests to All Defendants.

15       7.    Attached hereto as Exhibit 6 is a true and correct copy of Defendant Matrox Electronic

16   Systems Ltd.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

17       8.    Attached hereto as Exhibit 7 is a true and correct copy of Defendant Matrox Graphics

18   Inc.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

19       9.    Attached hereto as Exhibit 8 is a true and correct copy of Defendant Matrox International

20   Corp.'s Responses to Ricoh's Second Set of Document Requests to All Defendants.

21       10.   Attached hereto as Exhibit 9 is a true and correct copy of a Letter dated 7/9/03 from E.

22   Meilman to E. Moller.

23       11.   Attached hereto as Exhibit 10 is a true and correct copy of a Letter dated 7/10/03 from E.

24   Moller to E. Meilman.

25

26       12.   Attached hereto as Exhibit 11 is a true and correct copy of the Transcript of the 8/28/03

27   Hearing.

28

13.    Attached hereto as Exhibit 12 is a true and correct copy of a Letter dated 8/28/03 from G. Hoffman to T. Corbin.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed in San Francisco, California on January 6, 2004.

/s/  Jonathan Weissglass

Jonathan Weissglass

J. WEISSGLASS DECLARATION IN SUPPORT OF RICOH'S MOTION TO COMPEL PRODUCTION OF INITIAL DISCLOSURE DOCUMENTS

EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RECEIVED

JUN 0 2 2003

Robert W. Whetzel

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP., and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' INITIAL DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendants Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics, Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech, Inc. ("Matrox Tech") (Matrox, Matrox Graphics, Matrox Int'l, and Matrox Tech are collectively referred to as "the Matrox entities") (Aeroflex, AMIS and the Matrox entities are collectively referred to as "Defendants"), hereby make the following Initial Disclosures. These disclosures are based on information reasonably available to Defendants at the present time. Defendants' investigation of the facts of this case is ongoing. Therefore, Defendants reserve the right to supplement these disclosures when and if additional information becomes available.

Defendants' disclosures are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose,

in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these disclosures. All of the following disclosures are made subject to the above objections and qualifications.

### A.    Individuals with Discoverable Information

Pursuant to Fed. R. Civ. P.26(a)(1)(A), Defendants list the following individuals who are likely to have discoverable information relevant to the disputed facts in this action. In disclosing the individuals whom are employees, consultants or former employees of Defendants, Defendants do not authorize any effort by plaintiff Ricoh Company, Ltd., ("Ricoh") to contact individuals associated with any of the Defendants in connection with this lawsuit, except through appropriate counsel.

| Name and Address | Subject Matter |
|---|---|
| **Aeroflex** | |
| Peter Milliken<br>Director, Semi-Custom Products & Services<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| John Reinert<br>Director, Program Management<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| Vern Schnathorst<br>Design Manager, Standard Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |

| | |
|---|---|
| Brandon Coco<br>Principal ASIC Engineer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| James Webster<br>Product Design Engineer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| Anthony Jordan<br>Director, Standard Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| David Kerwin<br>Director, Mixed-Signal Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| Richard Bruder<br>Chief Financial Officer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Financial |

<u>AMIS</u>

| | |
|---|---|
| Jon Stoner<br>Chief Technology Officer<br>AMI Semiconductor, Inc.<br>2300 Buckskin Road<br>Pocatello, ID 83201 | Design and development of AMIS' ASIC products |
| Bob Kirk<br>Director, Applications Engineering-Digital ASICs<br>AMI Semiconductor, Inc.<br>P.O. Box 967<br>22960 Vantage Pointe Dr., Ste A<br>Twain Harte, CA 95383 | Design and development of AMIS' ASIC products |

Matrox entities

Erik Boisvert                                   Design and development of the Matrox
Senior Engineer                                 entities' ASIC products
Matrox Electronic Systems Ltd.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

David Chiappini                                 Design and development of the Matrox
ASIC Project Director                           entities' ASIC products
Matrox Graphics Inc.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Ed Dwyer                                        Design and development of the Matrox
Executive Vice-President                        entities' ASIC products
Matrox Graphics Inc.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Andres Desbiens                                 Financial
Corporate Controller
Matrox Electronic Systems Ltd.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Other Individuals

To the extent Ricoh is advancing a claim construction that would read on the

Defendants' logic design or logic synthesis practices, such a claim construction would be

anticipated by a multitude of prior art logic synthesis systems and prior art logic design

practices. Persons with knowledge of such prior art include Aart de Geus, CEO of

Synopsys, Inc. ("Synopsys"), Mountain View and Sunnyvale, California, and David

Gregory, William Cohen, and Karen Bartlett, all previously associated with Synopsys.

Messers. de Geus, Gregory, and Cohen, and Ms. Bartlett all have knowledge of the prior

"Socrates" logic synthesis system; Paul Drongowski of Compaq Corporation, address

-4-

unknown, who has knowledge of the prior art "Gdl" synthesis system; John Darringer, address unknown, who has knowledge of the prior art "LSS" logic synthesis system; and Kurt Keutzer, Department of Electrical Engineering and Computer Sciences, University of California at Berkeley, who has knowledge about the prior art "Dagon" synthesis system. Other prior art logic synthesis systems are believed to be relevant and will be identified as defendants obtain more information about these systems.

In addition, Defendants believe that a number of additional individuals are likely to have personal knowledge about prior art relating to logic synthesis systems and logic design practices, including individuals at Cadence Design Systems, Inc., San Jose, California, Monterey Design Systems, Sunnyvale, California, Magma Design Automation, Cupertino, California, Get2Chip, Inc., San Jose, California, Incentia Design Systems, Inc., Santa Clara, California, Stanford University, Stanford California, University of California at Berkeley, Berkeley, California, University of Southern California, Los Angeles, California, and Carnegie-Mellon University, Pittsburgh, Pennsylvania.

Defendants additionally believe that a number of present or former employees of Ricoh, International Chip Corporation and Knowledge Based Silicon are likely to have information about the scope of the subject matter of the claims of U.S. patent number 4,922,432 (the "'432 patent") and about Defendant's laches and equitable estoppel defenses, including at least Hideaki Kobayashi, address unknown, Masahiro Shindo, address unknown, and James P. Davis, Department of Computer Science and Engineering, University of South Carolina, Columbia, South Carolina.

**B.    Documents**

Defendants identify the following categories of documents and tangible things in the possession, custody or control of Defendants located at, among other places, their principal places of business that are relevant to the disputed facts in this action.

1.    Product design and development materials

2.    Marketing and promotional materials

3.    Sales and accounting statements

4.    Correspondence

5.    Reports

6.    Presentations

7.    Publications

8.    Electronic files

Defendants are in the process of providing the documents described in Items 1 through 8 above to their counsel.

Defendants reserve the right to supplement these disclosures should new information become available.

**C.    Computation of Damages**

Defendants seek attorneys' fees and costs.  Although the total amount of Defendants' fees and costs are unknown at this time, Defendants reserve the right to supplement this Disclosure as discovery proceeds and additional information becomes available.

**D.    Insurance Policies**

There are no insurance policies referred to in Fed. R. Civ. P. 26(a)(1)(D) that Defendants are aware of at this time.

Dated: May 30, 2003                      By: _____

                                         Teresa M. Corbin
                                         Christopher L. Kelley
                                         Erik K. Moller
                                         HOWREY SIMON ARNOLD &
                                         WHITE, LLP
                                         301 Ravenswwod Ave.
                                         Menlo Park, CA  94025
                                         Telephone:  (650)463-8100

Attorneys for Defendants/
Counterclaimants AEROFLEX
INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD.,
MATROX GRAPHICS INC.,
MATROX INTERNATIONAL CORP.
and MATROX TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Initial Disclosure Statement of Intervenor Synopsys, Inc. was served this 20th day of May, 2003 on the following First Class U.S. Mail:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Gayle L. Jacob

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on this 2nd day of June, 2003, a true and correct copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel, Esq.
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899
(302) 651-7700

**VIA FEDERAL EXPRESS**

Gary M. Hoffman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526
(202) 828-2228

**VIA FEDERAL EXPRESS**

Edward A. Meilman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 896-5471

Francis DiGiovanni

257809

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY LTD., | ) | |
| | ) | |
| Plaintiff | ) | Civil Case No. 03-103-GMS |
| | ) | |
| v. | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., MATROX | ) | |
| GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SECOND SET OF DOCUMENT
## REQUESTS TO ALL DEFENDANTS

**PLEASE TAKE NOTICE** that plaintiff demands, pursuant to Rule 34 of the Federal

Rules of Civil Procedure, that the defendants produce documents pursuant to the following

document requests on the 30th day after service of these requests.

## DEFINITIONS AND INSTRUCTIONS

(1)   **Communication.**   The term "communication" means the transmittal of

information (in the form of facts, ideas, inquiries or otherwise).

(2) **Document.** The term "document" is defined to be synonymous in meaning and

equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including,

without limitation, electronic or computerized data or data compilations. A draft or non-identical

copy is a separate document within the meaning of this term.

(3) **Identify (with respect to persons).** When referring to a person, "identify"

means to give, to the extent known, the person's full name, present or last known address, and

when referring to a natural person, additionally, the present or last known place of employment.

1

Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In any response where more than one individual is identified, identify which three individuals have the most knowledge or information concerning the subject and among those three individuals, identify the individual having the most knowledge and the individual having the least knowledge concerning the subject.

(4) **Identify (with respect to documents).** When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5) **Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, partners, corporate parent, subsidiaries or affiliates. Where a discovery request does not request a response limited to a specific named defendant, the request shall be construed as seeking knowledge and information concerning all of the defendants named in the caption of this discovery request.

(6) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) **All/Each.** The terms "all" and "each" shall be construed as all and each.

(9) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

2

(10) **Number**. The use of the singular form of any word includes the plural and vice versa.

(11) **Privilege**. Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

(a) Identify the nature of the privilege (including but not limited to work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(b) Provide the following information:

(1) For documents: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and (v) identify any other person to whom the document was displayed or to whom any of its contents were revealed;

(2) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; (iii) the general subject matter of the communication and (iv) identify any other person to whom any aspect of the communication was revealed.

3

(12) **Destroyed Documents**.  Where a document has been destroyed or alleged to have been destroyed, state the date thereof and the reason for its destruction, identify each person having knowledge of its destruction, identify each person responsible for its destruction, provide the information set forth in paragraph (11)(b)(1) above and describe the content of the document to the extent possible.

(13) **Patent-in-suit**.  As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

(14) **ASIC**.  As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise denoted in defendant's communications as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

(15) **ASIC PRODUCT**.  The term "ASIC Product" refers to any integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(16) **ASIC Method**.  As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes which have been used by, on behalf of, or otherwise at the direction of defendant on or after May 1, 1990 (unless another date is specifically identified) in the computer-aided design of any ASIC Product (as defined above) designed, developed, manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

4

(17)  **Limitations**.  Each discovery request shall be construed independently and no discovery request shall limit the scope of any other discovery request.

(18)  **Supplementation**.  Each defendant is reminded of the continuing duty to supplement discovery responses set forth in rule 26(e) of the Federal Rules of Civil Procedure.

(19)  **Design**.  The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

## DOCUMENT REQUEST

<u>Document Request No. 1:</u>    Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, Delaware 19899
(302) 651-7700
    Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &  OSHINSKY LLP
1177 Avenue of the America
New York, New York  10036
(212) 896-5471
(212) 997-9880

Dated:  July 2, 2003

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that true and correct copies of Plaintiff's Second Set of

Document Requests were served on July 2, 2003 on counsel of record in the manner indicated:

**VIA HAND DELIVERY**
Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1220 Market Street
P. O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL
EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL
EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
1177 Avenue of the America
New York, New York  10036
(212) 896-5471

Dated:  July 2, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July 2003, true and correct copies of the foregoing

were caused to be served on counsel of record at the following addresses as indicated:

**BY HAND DELIVERY:**
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz, LLP
1220 Market Street
P.O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorneys for AMI Semiconductor, Inc.


Steven J. Fineman (#4025)

**EXHIBIT 3**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP. and MATROX TECH, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     **Civil Action No. 03-103-GMS** |

## DEFENDANT AEROFLEX INCORPORATED'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Aeroflex Incorporated ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.      Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that has no relevance to Defendant's ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce relevant, non-privileged documents in response to this document request.

Dated: August 1, 2003 By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT AEROFLEX INCORPORATED'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526


_____
Gayle L. Jacob

**EXHIBIT 4**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., ) | **Civil Action No. 03-103-GMS** |
| Plaintiff, ) | |
| v. ) | |
| AEROFLEX INCORPORATED, AMI ) SEMICONDUCTOR, INC., MATROX ) ELECTRONIC SYSTEMS LTD., MATROX ) GRAPHICS INC., MATROX ) INTERNATIONAL CORP. and MATROX ) TECH, INC., ) | |
| Defendants. ) | |

## DEFENDANT AMI SEMICONDUCTOR, INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant AMI

Semiconductor, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s

("Ricoh") Second Set of Document Requests. These responses are based on information

reasonably available to Defendant at the present time. Defendant reserves the right to

supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good

faith search for responsive documents as required under the Federal Rules and Local Rules.

However, Defendant and its attorneys have not yet completed discovery or preparation for trial,

nor have they concluded their analyses of the information gathered to date by the parties. These

responses, therefore, are based on information presently available to and reviewed by Defendant

and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any

basis permitted by law to the use of any such information, for any purpose, in whole or in part, in

any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.    Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

Defendant will produce relevant, non-privileged documents in response to this document request.

Dated: August 1, 2003

By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT AMI SEMICONDUCTOR, INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526


_____
Gayle L. Jacob

**EXHIBIT 5**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AEROFLEX INCORPORATED, AMI | ) |
| SEMICONDUCTOR, INC., MATROX | ) |
| ELECTRONIC SYSTEMS LTD., MATROX | ) |
| GRAPHICS INC., MATROX | ) |
| INTERNATIONAL CORP. and MATROX | ) |
| TECH, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 03-103-GMS

## DEFENDANT MATROX TECH, INC. RESPONSES TO
## PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Tech, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.      Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

<u>Document Request No. 1:</u>

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

<u>Response to Document Request No. 1:</u>

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production.  Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit.  Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests.  Defendant further objects to this document

- 2 -

request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated: August 1, 2003

By: _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX TECH, INC.
RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS
was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC 20037-1526



Gayle L. Jacob

**EXHIBIT 6**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC., | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Civil Action No. 03-103-GMS

## DEFENDANT MATROX ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Electronic Systems Ltd. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.       Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.   Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this document request as unduly burdensome and on the basis that it seeks an overly broad discovery of Defendant's operations that has no relevance to the Defendant's accused ASIC Products or Methods.  Defendant designs and manufactures a large number of products and employs a large number of people.  Plaintiff has not mentioned if it conducted a reasonable pre-filing investigation to tailor its discovery.

Also, Plaintiff has not identified its theory of infringement or the specific design step(s) or activities that are relevant to its allegations of infringement.  Defendant further objects to this document request because it is redundant to Plaintiff's previous document requests.  Defendant further objects to this document request because the requested documents are at the Defendant's

facilities in Canada, where the Defendant designs the accused ASICs and other electronic systems and devices. Designing of a product in Canada cannot cause infringement of a United States patent under any provision of 35 U.S.C. § 271.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated: August 1, 2003                By: _____

                                     Francis DiGiovanni (#3189)
                                     CONNOLLY BOVE LODGE & HUTZ LLP
                                     1220 Market Street, 10th Floor
                                     Wilmington, DE 19899-2207
                                     (302) 658-9141

                                     Terry M. Corbin
                                     Christopher L. Kelley
                                     Erik K. Moller
                                     HOWREY SIMON ARNOLD & WHITE, LLP
                                     301 Ravenswood Avenue
                                     Menlo Park, CA 94025
                                     (650) 463-8100 (Telephone)
                                     (650) 463-8400 (Facsimile)

                                     Attorneys for Defendants
                                     AEROFLEX INCORPORATED, AMI
                                     SEMICONDUCTOR, INC., MATROX
                                     ELECTRONIC SYSTEMS, LTD., MATROX
                                     GRAPHICS INC., MATROX
                                     INTERNATIONAL CORP. and MATROX
                                     TECH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX ELECTRONIC SYSTEMS LTD.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526


_____
Gayle L. Jacob

**EXHIBIT 7**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 03-103-GMS |
| | ) |
| v. | ) |
| | ) |
| AEROFLEX INCORPORATED, AMI | ) |
| SEMICONDUCTOR, INC., MATROX | ) |
| ELECTRONIC SYSTEMS LTD., MATROX | ) |
| GRAPHICS INC., MATROX | ) |
| INTERNATIONAL CORP. and MATROX | ) |
| TECH, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox Graphics, Inc. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.    Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.    Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Document Request No. 1:

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Response to Document Request No. 1:

Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests. Defendant further objects to this document

request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement. Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated:  August 1, 2003                    By: _____
                                          Francis DiGiovanni (#3189)
                                          CONNOLLY BOVE LODGE & HUTZ LLP
                                          1220 Market Street, 10th Floor
                                          Wilmington, DE  19899-2207
                                          (302) 658-9141

                                          Terry M. Corbin
                                          Christopher L. Kelley
                                          Erik K. Moller
                                          HOWREY SIMON ARNOLD & WHITE, LLP
                                          301 Ravenswood Avenue
                                          Menlo Park, CA  94025
                                          (650) 463-8100 (Telephone)
                                          (650) 463-8400 (Facsimile)

                                          Attorneys for Defendants
                                          AEROFLEX INCORPORATED, AMI
                                          SEMICONDUCTOR, INC., MATROX
                                          ELECTRONIC SYSTEMS, LTD., MATROX
                                          GRAPHICS INC., MATROX
                                          INTERNATIONAL CORP. and MATROX
                                          TECH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX GRAPHICS INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526


Gayle L. Jacob

EXHIBIT 8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AEROFLEX INCORPORATED, AMI<br>SEMICONDUCTOR, INC., MATROX<br>ELECTRONIC SYSTEMS LTD., MATROX<br>GRAPHICS INC., MATROX<br>INTERNATIONAL CORP. and MATROX<br>TECH, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 03-103-GMS |

## DEFENDANT MATROX INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Matrox International Corp. ("Defendant") hereby responds to Plaintiff Ricoh Company, Ltd.'s ("Ricoh") Second Set of Document Requests. These responses are based on information reasonably available to Defendant at the present time. Defendant reserves the right to supplement these responses when, and if, additional information becomes available.

In responding to these Requests, Defendant will make the reasonable, diligent, and good faith search for responsive documents as required under the Federal Rules and Local Rules. However, Defendant and its attorneys have not yet completed discovery or preparation for trial, nor have they concluded their analyses of the information gathered to date by the parties. These responses, therefore, are based on information presently available to and reviewed by Defendant and its attorneys.

These responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any

basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

## OBJECTIONS

1.     Defendant incorporates by reference its general and specific objections to Ricoh's First Set of Document Requests.  Defendant incorporates by reference its specific objections to the definitions and instructions of Ricoh's First Set of Document Requests.

## <u>DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS</u>

<u>Document Request No. 1:</u>

Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

<u>Response to Document Request No. 1:</u>

Defendant incorporates by reference its General and Specific Objections to Ricoh's First Set of Document Requests. Defendant further objects to this document request as unduly burdensome and seeking discovery of information not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this document request as unduly burdensome and on the basis that it seeks detailed discovery regarding operations of Defendant that have no relevance to Defendant's ASIC Products or Methods. Defendant designs and manufactures a large number of products and employs a large number of personnel involved in production. Plaintiff has not identified any theory of infringement or which specific design step(s) or activities are relevant to its allegations of infringement, or what activities Plaintiff considered during the reasonable pre-filing investigation, if any, that it conducted prior to filing the present lawsuit. Defendant further objects to this document request on the grounds that it is redundant of Plaintiff's other document requests. Defendant further objects to this document

request on the grounds that its production is performed at Defendant's facilities in Canada and is therefore not relevant to Plaintiff's allegations of infringement.  Design of ASICs or other electronic systems and devices done in Canada could not constitute infringement, under any provision of 35 U.S.C. § 271, of a United States patent.

Subject to and without waiving the foregoing general and specific objections, Defendant responds as follows:

In light of the foregoing objections, Defendant will not produce documents in response to this document request.

Dated:  August 1, 2003                    By:  _____

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
1220 Market Street, 10th Floor
Wilmington, DE  19899-2207
(302) 658-9141

Terry M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025
(650) 463-8100 (Telephone)
(650) 463-8400 (Facsimile)

Attorneys for Defendants
AEROFLEX INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS INC., MATROX
INTERNATIONAL CORP. and MATROX
TECH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFEDANT MATROX INTERNATIONAL CORP.'S RESPONSES TO PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS was served this 1st day of August, 2003 on the following via Federal Express:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714


Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street NW
Washington, DC  20037-1526


_____
Gayle L. Jacob

EXHIBIT 9

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

1177 Avenue of the Americas • New York, New York 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
Writer's Direct Dial: (212) 896-5471
E-Mail Address: MeilmanE@dsmo.com

July 9, 2003

**VIA FACSIMILE No. 650-463-8400**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434

      Re:    DSMO File:  R2180.0100
             Ricoh v. Aeroflex et al.

Dear Erik:

      The purpose this letter is to acknowledge your telefax of July 8, 2003 in which you state that Plaintiff's Initial Disclosure documents would be responsive to your documents requests.  We understand that you are asking us to provide copies of documents which we agree are producible when we respond to Defendants' First Set of Document Requests (due July 21, 2003) rather than making them available for inspection and copying in Washington, D.C.  We will let you know when they are ready for production, which will be sometime this month but after July 21, 2003, we will arrange for a copy company to pick them up and make copies of the documents.  We will send you the name of the copy company so that you can arrange for them to directly bill your firm.

      The documents listed in the Defendants' Initial Disclosure are similarly responsive to the Plaintiff's discovery requests.  We will accept copies of those documents provided that the originals are maintained available for inspection, if necessary.  Since the Defendants' response to those document requests has already been made, those documents should already be on their way to us.  Would you please confirm that they have been sent to us.

      Very truly yours,

      Edward A. Meilman

EAM/mgs

cc:  Gary Hoffman, Esq.
      Kenneth Brothers, Esq.

bcc:  Solomon Seyoum

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
www.legalinnovators.com

74232 v1; 1L@001!.DOC

EXHIBIT 10



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

July 10, 2003

*Via Facsimile and Regular U.S. Mail*

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC  20037-1526

Dear Ed:

    This letter is in response to your correspondence of July 9, 2003.

    First, the defendants are in the process of collecting documents responsive to Ricoh's first set of document requests, and will be producing documents as indicated in their written responses to those requests in due course.

    Second, thank you for your agreement to have copies made of the materials identified in your initial disclosure.  In order to minimize bookkeeping, may we propose that the parties agree to bear their own costs for the routine production of documents, including copying costs.  If there are unusual or extraordinary costs we can discuss alternative arrangements.  We are willing to apply the same rule in the Synopsys case in California.  Let us know if you will agree to this arrangement.

                     Very Truly Yours,

                     Erik K. Moller

EKM/gj

BRUSSELS     CHICAGO     HOUSTON     IRVINE     LONDON     LOS ANGELES     MENLO PARK     SAN FRANCISCO .     WASHINGTON, DC

EXHIBIT 11

Page 1

```
1          IN THE UNITED STATES DISTRICT COURT
2          IN AND FOR THE DISTRICT OF DELAWARE
3                        - - -
4   RICOH COMPANY, LTD.,          :   Civil Action
5             Plaintiff,          :
6         v.                      :
7   AEROFLEX INCORPORATED, AMI    :
    SEMICONDUCTOR, INC.,          :
8   MATROX ELECTRONIC SYSTEMS     :
    LTD., MATROX INC., GRAPHICS   :
9   MATROX INTERNATIONAL CORP.,   :
    and MATROX TECH, INC.,        :
10                                :
            Defendants.           :   No. 03-103-GMS
11                        - - -
12                  Wilmington, Delaware
13              Thursday, August 28, 2003
                     11:00 a.m.
14               Telephone Conference
15                        - - -
16  BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
17  APPEARANCES:
18      ROBERT W. WHETZEL, ESQ., and
        STEVEN J. FINEMAN, ESQ.
19      Richards, Layton & Finger
                 -and-
20      GARY M. HOFFMAN, ESQ.,
        EDWARD A. MEILMAN, ESQ., and
21      KENNETH W. BROTHERS, ESQ.
        Dickstein Shapiro Morin & Oshinsky LLP
22      (Washington, D.C.)
23                   Counsel for Plaintiff
24
25
```

Page 2

```
1   APPEARANCES CONTINUED:
2       FRANCIS DiGIOVANNI, ESQ.
        Connolly Bove Lodge & Hutz LLP
3                -and-
        TERESA M. CORBIN, ESQ.,
4       CHRISTOPHER KELLEY, ESQ., and
        ERIC OLIVER, ESQ.
5       Howrey Simon Arnold & White, LLP
        (Menlo Park, California)
6
                     Counsel for Defendants
7                        - - -
8
9
10          THE COURT:  Good morning, counsel.
11          MR. WHETZEL:  Good morning, Your Honor.  Bob
12  Whetzel from Richards Layton for plaintiff Ricoh.  With me is
13  my colleague here at Richards Layton Steven Fineman.  Also on
14  the call for Ricoh are Messrs. Gary Hoffman, Ed Meilman and
15  Ken Brothers, my co-counsel.  I suspect Mr. Hoffman will be
16  our principal spokesperson this morning.
17          THE COURT:  Good morning, all.
18          For defendants.
19          MR. DiGIOVANNI:  Frank DiGiovanni from Connolly
20  Bove.  Also on the line from Howrey Simon in California are
21  Teresa Corbin and Chris Kelley and Eric Oliver.
22          THE COURT:  Who is going to handle the argument
23  today?
24          MR. DiGIOVANNI:  I will be arguing the first of
25  the agenda items, and I believe Mr. Kelley will be arguing
```

Page 3

```
1   the remainder.
2           MR. HOFFMAN:  Your Honor, on behalf of Ricoh, I
3   Brothers will be arguing the first item.  I will be handling
4   Items 2, 3, 6 and 8.  And Mr. Meilman will be handling items
5   5 and 7.
6           THE COURT:  Okay.  I will try to keep that record
7   in mind.
8           Let's start with Item 1.
9           MR. BROTHERS:  Your Honor, on Item 1, there is a
10  difference of opinion between the parties with respect to the
11  obligations of the order that the Court entered on July
12  31st --
13          MR. DiGIOVANNI:  Your Honor, I don't mean to
14  interrupt.  I don't do that.  But we are the ones, the
15  defendants are the ones --
16          THE COURT:  Are you the movant on that one?
17          MR. DiGIOVANNI:  Yes, we are.
18          THE COURT:  Let's start with the movant.
19          MR. BROTHERS:  I am sorry.  Both parties are
20  seeking relief, just to be clear.
21          THE COURT:  So both of you, you each view
22  yourselves as movants?
23          MR. BROTHERS:  Yes, Your Honor.
24          MR. DiGIOVANNI:  Yes, Your Honor.
25          On behalf of defendants, we did place the call
```

Page 4

```
1   and initiated the conference.  We consider ourselves primary
2   movants on this issue.
3           MR. BROTHERS:  Your Honor, we can both have our
4   say.
5           THE COURT:  Mr. Brothers, continue.
6           MR. BROTHERS:  Thank you.
7           The order of July 31st, the second paragraph
8   requires the defendants and their counsel to disclose all
9   communications with or relating to Dr. Thomas and to produce
10  all documents sent to, prepared by, or received from Dr.
11  Thomas.  And then it continues, Any documents withheld on the
12  basis of attorney-client privilege or work product doctrine
13  should be submitted to the Court for an in camera inspection
14  and defendants shall provide plaintiffs with a detailed
15  privilege log.
16          We received part of those documents.  We received
17  the e-mails and letters between the Howrey firm and Dr.
18  Thomas.  But defendants and their counsel have refused to
19  produce anything else, namely, any internal communications on
20  an in camera basis to the Court and to give a privilege log
21  to the other side.  We believe that is clearly required by
22  the order.
23          The history of this gives some basis for our
24  concern.
25          Dr. Thomas was deposed on August 14th.  The
```

## Page 5

1 witness contradicted the representations of Mr. Kelley during
2 the hearing on the 30th on multiple points, which gives us
3 concern as to what the complete story is.
4         For example, you will recall that the Howrey firm
5 served Dr. Thomas with a subpoena in late June but never
6 provided that to counsel for plaintiffs or filed any notices
7 with the Court.  And although Mr. Kelley said during the
8 hearing that Dr. Thomas had called them and said he wasn't
9 working for Ricoh, in fact, what these documents that were
10 produced and Dr. Thomas' testimony show is that Dr. Thomas
11 specifically told the Howrey firm that he was under contract,
12 a consulting contract, with counsel for Ricoh, that Dr.
13 Thomas specifically asked Howrey if they had given the
14 subpoena to counsel for Ricoh, and Howrey led him to believe
15 that the subpoena had been given and that the names of
16 experts had been disclosed in the litigation, and that
17 counsel for Ricoh had not named Dr. Thomas as an expert, so
18 Dr. Thomas assumed that we didn't want him as an expert,
19 which wasn't the case.  And then the Howrey firm said,
20 according to Dr. Thomas' testimony, if you sever your
21 contract with Ricoh, then we can hire you and we can pay
22 you.  And that's what Dr. Thomas did.
23         A second inconsistency was that Mr. Kelley said
24 very explicitly during the hearing that before Dr. Thomas was
25 hired, they asked him if he had received any confidential

## Page 6

1 information or discussed case strategy or other types of
2 information with Ricoh, and that Dr. Thomas had said, no, he
3 hadn't.
4         That is simply not the case.
5         Dr. Thomas was retained.  The retention letter
6 was sent on July 17.  He signed it on July 21st.  The first
7 time any such communications of that nature came up was after
8 we found out about it and objected, and then suddenly there
9 was a flurry of telephone calls and e-mails between the
10 Howrey firm and Dr. Thomas saying, what confidential
11 information did you have?  Tell us about it.  And there was a
12 phone conference on the 23rd of July and followup e-mails.
13         Dr. Thomas testified at his deposition that there
14 was no question that he had received confidential information
15 from counsel for Ricoh.  And he identified a couple of
16 categories of that.
17         During this flurry of information, after counsel
18 for Ricoh had objected, Dr. Thomas had described the
19 categories of this confidential information.
20         Now, Howrey refuses to produce those internal
21 e-mails.  We had requested them even prior to the hearing,
22 and the Howrey firm understood we were looking for them.
23 There is a reference by Mr. Kelley in the transcript that, I
24 think it's on Page 14 or so, that he understood we were
25 looking for that information.

## Page 7

1         After all of this, the defendants say, well,
2 maybe we are not going to use Dr. Thomas as an expert after
3 all, but we still want to go forward and take his deposition
4 on the very subjects which were the subject matter on his
5 consulting with Ricoh.
6         They obviously believe that Dr. Thomas is going
7 to give them favorable opinions.  Dr. Thomas testified that
8 as a result of his consulting with Ricoh he had formed
9 opinions.  What is the basis for their expectation?
10         We need to go forward and try and resolve this.
11 We think the sole basis is that Dr. Thomas has given Howrey
12 some basis to believe that the testimony he is going to give,
13 the opinion testimony that they are seeking, is going to be
14 favorable, and that was developed solely as a result of his
15 confidential consulting with counsel for Ricoh.
16         The issue before the Court not only is the
17 interpretation of Paragraph 2 of the July 31st order.  The
18 Court is also aware that we are to file followup letters that
19 will relate to the disqualification of Thomas and any other
20 remedies that might be available.  We think it advisable that
21 the Court is provided with this information so it has the
22 full picture of what the appropriate remedy should be.
23         THE COURT: Okay.  Mr. DiGiovanni.
24         MR. DiGIOVANNI: First of all, there is no
25 contradiction between what Mr. Kelley represented on the July

## Page 8

1 30th teleconference and Dr. Thomas' deposition.  Dr. Thomas
2 was very clear that he was asked by the Howrey Simon
3 attorney, the one single attorney that he talked to for the
4 five-minute period he actually talked to him, do you have any
5 confidential information?  And if so, what type of
6 information is it?  And Dr. Thomas responded two days later
7 in an e-mail, just listing three short types of information
8 he had:  patents, publications, and financial information.
9 None of it was confidential.
10         And all of those e-mails, that e-mail, and there
11 were about six or seven other e-mails, have been produced.
12 And those are the entire universe of documents that went back
13 and forth between Howrey Simon and Dr. Thomas.
14         If you go back to the teleconference on July
15 30th, the request that was made by Mr. Hoffman was that, you
16 ordered that the defendants be required to disclose all the
17 communications that they have had with Dr. Thomas, and
18 produce all the documents to us that have gone back and
19 forth.  The Court subsequently ordered Ricoh's counsel to
20 prepare an order outlining the requests that you have made
21 and I will sign it.
22         But what happened later that day or maybe it was
23 the next day, July 31st, counsel submitted an order that
24 included an additional phrase, some additional language.  Your
25 Honor, which actually went beyond what they were supposed to

## Page 9

1  submit. So that became this July 31st order.
2      The language of the order --
3      THE COURT: Is that the sentence that says any
4  documents withheld on the basis of attorney-client --
5      MR. DiGIOVANNI: No, Your Honor.
6      THE COURT: Which language is it?
7      MR. DiGIOVANNI: In the same paragraph, Paragraph
8  2, the first sentence, it says, No later than August 6, 2003
9  defendants and their counsel are ordered to, right where it
10  says disclose, it says disclose all communications with or
11  relating to Dr. Thomas. That clause was brand-new. That was
12  not part of what Your Honor ordered on that teleconference,
13  this disclose all communications with or relating to Dr.
14  Thomas. The second clause of that, ordered to produce all
15  documents sent to, prepared by or received from Dr. Thomas,
16  that's what we talked about on the teleconference. That's
17  what we have done. We have produced every single piece of
18  paper, all e-mails that were sent back and forth between
19  counsel and Dr. Thomas. It didn't amount to much. It was
20  only about six or seven e-mails.
21      We also gave them a cover letter to those
22  e-mails. It described the communications, and it also
23  described the type of internal communications that we had
24  amongst attorneys, between attorney and clients. We noted of
25  course those were privileged, that those weren't required

## Page 10

1  under the production portion of Paragraph 2, because
2  Paragraph 2 says, when it talks about producing documents, it
3  says, produce all documents sent to, prepared by or received
4  from. Then it goes on to talk about documents, any documents
5  withheld, et cetera, et cetera. So we didn't withhold any
6  documents on the basis of privilege. So there was nothing to
7  put on a privilege log. There was nothing to produce in
8  camera.
9      The issue is what does this mean, disclose all
10  communications with or relating to Dr. Thomas? And what
11  counsel for Ricoh is saying is that means that all documents
12  relating to Dr. Thomas had to be produced. That is
13  completely inconsistent with the second phrase, where it
14  talks about the exact scope of production of documents. Our
15  reading of it was, we disclosed in our cover letter precisely
16  what we were required to produce, precisely what kind of
17  communications went on.
18      Of course, we didn't produce them. The order
19  doesn't require it. It would never make sense to produce
20  privileged documents, even in camera. An in camera review is
21  often done to determine if there is a privilege, not to
22  actually review some privileged documents to find a basis for
23  a claim. But in any event, the order doesn't call for it,
24  before you even getting into the law regarding in camera
25  review.

## Page 11

1      It is also important, Your Honor, that once we
2  received the declaration of Christopher Monti (phonetic),
3  this is the declaration that Mr. Hoffman talked about on the
4  July 30th conference, once we received that, which, by the
5  way, was one week ago, we had to wait until one week ago to
6  get it, once we took the deposition of Dr. Thomas to find out
7  if, indeed, he received confidential information, once we had
8  those two pieces of information, two days later we said,
9  okay, we are not going to retain Dr. Thomas as an expert.
10  And we are not a hundred-percent convinced that he did
11  receive confidential information.
12      But we told them, all right, we are not going to
13  use him as an expert, fully expecting that would end
14  everything. But they said, no, they want to try to
15  disqualify counsel even though there isn't a shred of
16  information, shred of evidence anywhere stating that Dr
17  Thomas provided to counsel for defendants any sort of
18  confidential information. In fact, Dr. Thomas,
19  unequivocally, testified that he had one conversation with
20  attorneys for defendants for five minutes. And here is his
21  quote. He says, I didn't share any information with him --
22  this is talking about the one attorney -- about confidential
23  material.
24      That is it.
25      THE COURT: Okay. Mr. Brothers, Mr. DiGiovanni

## Page 12

1  asserts that that clause that he has identified in Paragraph
2  2, all communications with or relating to, goes beyond the
3  letter and spirit of the discussion and subsequent order
4  entered by the Court orally on July 30th.
5      I don't have the transcript in front of me. I
6  don't have total recall. I don't really wish to engage in an
7  extended debate as to what was intended. But Mr.
8  DiGiovanni's reflections do seem to comport with my
9  recollection of that conversation. Go ahead.
10      MR. BROTHERS: Yes. I do have the copy of the
11  transcript in front of me. On Page 9 it references, Line 17
12  through 22, this aspect of the request. And I will read that
13  quote. And this relates to the second paragraph. Quote.
14  That the defendants be required to disclose all
15  communications that they have had with Dr. Thomas and produce
16  all the documents to us that have gone back and forth. If
17  they feel that any documents are privileged or work product,
18  then they can be submitted in camera. But we should get a
19  log so we can sort that out.
20      Prior to that, Mr. Hoffman had noted, on Page 8,
21  we didn't know the details of what had been discussed, and
22  then later on, Mr. Kelley acknowledged that we were seeking
23  the nature of their communications with Dr. Thomas.
24      The issue here is twofold. First, it is not only
25  the communications back and forth between Dr. Thomas and

1  counsel for the defendants. But second, the issue is what
2  did the Howrey firm know and when did it know it with respect
3  to the confidential information that Dr. Thomas had obtained
4  from counsel for Ricoh.
5        There are inconsistencies between Dr. Thomas'
6  testimony and what Mr. Kelley was representing.
7        Now, we ought to be very cautious here. We have
8  not sought to disqualify the Howrey firm. What we are trying
9  to do is get information so that an appropriate determination
10  can be made. What Mr. DiGiovanni has said is, well, we
11  thought by dropping Dr. Thomas that would be the end of it.
12  But they still want to go ahead and take his deposition on
13  the very topics that Mr. Thomas had provided his confidential
14  consulting to counsel for Ricoh. And they just want to sweep
15  under the carpet these inconsistencies and hope that the
16  whole issue will go away.
17        At this point, we don't think that that is
18  appropriate. We think it is appropriate, an appropriate
19  inquiry can be made, but before that can happen, all of the
20  factual information needs to be collected.
21        Prior to our even having the conference with Your
22  Honor on the 30th, we had sent a letter to the Howrey firm,
23  saying, this is what we want. So they knew that we were
24  looking for not only the communications with Dr. Thomas, but
25  the internal communications on an in camera basis if the

1  privilege was not going to be waived, so that the Court could
2  make this determination, because ultimately, that may be the
3  critical issue, the determination of what is in the order and
4  our interpretation.
5        THE COURT: Counsel, let me just ask. The
6  determination being whether the documents at issue are
7  privileged or not.
8        MR. BROTHERS: I am sorry. The determination
9  would be twofold. First, whether the documents would be
10  privileged. But second, if the documents reflect that in
11  fact Howrey had received confidential information from Dr.
12  Thomas, as we believe is likely, based on their continued
13  pursuit of his deposition, so that they can get his opinions,
14  then an appropriate determination should be made.
15        It is important to note that Howrey recognized at
16  the outset that Dr. Thomas was consulting for counsel for
17  Ricoh --
18        THE COURT: Let me interrupt again. So that
19  appropriate determination being whether the Howrey firm
20  should be disqualified or not. Is that what you mean?
21        MR. BROTHERS: That is a decision that we may
22  well ask the Court to make. We are not asking it at this
23  time. We don't know what those documents may show. And we
24  may not ever see those actual documents. But we think that
25  it may be appropriate for the Court to see what is in there

1  so it can make an appropriate determination.
2        We want to be very careful. We are not at this
3  point saying the Howrey firm must be disqualified, because we
4  don't have all the facts from the Howrey side. We have it
5  from Dr. Thomas' side. But we don't have all of the
6  information.
7        THE COURT: Now, let me ask this: Do I
8  understand correctly that Dr. Thomas is more or less out of
9  this litigation at this point?
10        MR. BROTHERS: Counsel for defendants have
11  verbally informed us that they do not intend to retain him as
12  an expert. However, they have said that they intend to go
13  forward and take his deposition, which will include, they
14  say, the opinions that he developed as a result of his
15  consulting for Ricoh.
16        MR. DiGIOVANNI: Your Honor, that is not
17  accurate, with all due deference to Mr. Brothers. We never
18  said we were going to inquire as to any opinion in a
19  third-party deposition of Dr. Thomas, of any opinions he
20  formed while working with Ricoh, which he did for 12 or 14
21  hours. We never said that.
22        We will take his deposition, as we would any
23  other third party. His assignment was very important at the
24  time this invention was being developed. There is no way
25  that Ricoh can lock him up, in other words, put a cage around

1  him so we can't even get to him in this litigation. He is
2  still a fact witness. Ricoh may have talked to 15 or 20
3  witnesses and hired them for 12 hours. That doesn't mean
4  they can lock them up and prevent them from being part of
5  this litigation. We are entitled to take his deposition as a
6  third party. We will not inquire into conversations between
7  Dr. Thomas and Ricoh. We will not do that. We know we
8  can't, and we wouldn't, anyway.
9        THE COURT: Mr. Brothers, what do you say to
10  that?
11        MR. BROTHERS: Well, there are three things in
12  response, Your Honor. First, on the 28th of July, the Howrey
13  firm sent Dr. Thomas an e-mail, saying if the Court rules
14  that we can't use you as a consulting expert, we are going to
15  take your deposition on the things that we have been talking
16  about. And Dr. Thomas testified, when I asked him about
17  that, he said, that looks just like the things that I was
18  consulting with Ricoh about. And it does. And in the
19  communications that we have had with counsel for the
20  defendant, they have said we are precluded from asking Dr.
21  Thomas about those issues.
22        It seems to be a bit of a moving target, based on
23  what Mr. DiGiovanni is telling me today. But the facts
24  that Dr. Thomas had in-depth consultations with counsel for
25  Ricoh, and he testified he formed opinions as a result of

Page 17

1  that. That opinion evidence, because they are going to ask
2  him to compare the patent to the prior art, that's
3  information that is all flowing directly from his consulting
4  work. As a result of the conduct of counsel for defendants,
5  Dr. Thomas has become a tainted witness. And it will be very
6  difficult to sort out what is tainted and what is not
7  tainted.
8       MS. CORBIN: Your Honor, I am the lead counsel in
9  this case for defendants.
10      If I could clarify the situation. The concern we
11  have about what we see as the problem with the order, the
12  language that Mr. DiGiovanni culled out, which was disclosure
13  of all communications with, and it's particularly the "or
14  relating to Dr. Thomas" part which gets to Howrey's internal
15  work product and communications with its client, because the
16  fact remains that Dr. Thomas developed one of the major and
17  key pieces of what we believe is invalidating prior art to
18  this patent, that was the genesis in the first place of
19  serving him with a third-party subpoena, to get the testimony
20  necessary to identify all the aspects of that particular
21  prior art and the timing of its development and so on.
22      Going back to the order, this is our concern.
23  The "or relating to" aspect would require us to provide in
24  camera for the Court, which if the Court really wants to see
25  it, we would do that, but it would require us to gather up

Page 18

1  all the information and internal documentation we have about
2  that particular prior art and the fact that, as we learned,
3  Dr. Thomas was probably the most relevant witness who
4  developed that prior art, and would be the most relevant
5  person from whom to get the information as to the timing and
6  the particular aspects of that technology.
7       I do believe that those underlying facts cannot
8  be -- we are still entitled to discover those. The fact that
9  they hired him for 12 hours of consulting work can't shield
10 what is a major piece of prior art and take that prior art
11 essentially out of the case.
12      THE COURT: I agree with that.
13      MR. HOFFMAN: Your Honor, I am lead counsel for
14 Ricoh. If I could respond, since Ms. Corbin has?
15      THE COURT: Go ahead.
16      MR. HOFFMAN: I would appreciate the Court's
17 indulgence.
18      First of all, on the issue of what the scope is
19 and the timing, that is easily dealt with just by saying that
20 it is a document, internal communications regarding the
21 retention of Dr. Thomas and also putting on a date that
22 starts with the first contact with Dr. Thomas.
23      Let me go to the more significant issue here.
24 Howrey & Simon and the defendants here knew from
25 day one, once they contacted Dr. Thomas, that he was already

Page 19

1  consulting for Ricoh. There is an e-mail where they said to
2  Dr. Thomas, there appears to be a conflict and consequently
3  we cannot use you.
4       Subsequently, they decided to change their mind
5  and send him a consulting agreement, encourage him to break
6  his agreement, terminate his agreement with Ricoh, and to
7  send him a consulting agreement, which he signed. After he
8  signed it, and after we complained, they went back and asked
9  him about the confidential information and whether or not he
10 got confidential information from Ricoh.
11      We didn't create this problem. Howrey & Simon
12 had a simple thing that they could have done if they chose
13 to. That is, once he indicated, Dr. Thomas said, hey, I am
14 consulting for Ricoh: Thank you very much, nice talking to
15 you, have a good day, goodbye. They chose not to.
16      They chose to go forward with this. And they
17 chose to do it until we found out about the subpoena, which
18 was only after they engaged him, not beforehand, contrary to
19 what they led him to believe, and only after they engaged him
20 already did we complain and did they finally do the checking.
21      They created the problem. We didn't create
22 this. What we are trying to do is to seek the information
23 and to place the information before the Court so that
24 appropriate relief, whatever that may be, can be fashioned.
25 As Mr. Brothers indicated, we are not seeking

Page 20

1  disqualification today. I don't know that we will ever seek
2  disqualification. There may be and I hope there would be
3  other relief less than that that would be appropriate here.
4       But the first thing we need to do is to find out
5  how deep the poison runs. There is clearly a problem, one of
6  their creation. We are just trying to sort it out so that we
7  can seek from the Court appropriate relief.
8       These documents that we are indicating that they
9  should list on a privilege log and send to the Court are not
10 coming to us at this point. These are not documents we are
11 saying at this point -- eventually, we may get there, once we
12 see what is on the log.
13      THE COURT: Let me ask this. Mr. Hoffman: The
14 communications relating to, is it your position that those
15 communications may reveal, I think the words tainted witness
16 were used before, that is, they may impact in some way upon
17 this potential witness' credibility as that credibility or
18 his testimony pertains to the merits of the case?
19      MR. HOFFMAN: It may relate to that. It may
20 relate to the issue of what is the appropriate relief. It
21 may relate to the issue of the fruits of the poisonous tree,
22 as the cliche goes. There is an overall issue as to what
23 should be the appropriate relief that is fashioned here.
24      THE COURT: Right now, I don't have a motion
25 before me asking for relief in that regard. I think what you

CondenseIt™                                                    **August 28, 2003**

**Page 21**

1  are suggesting is how -- it has been discussed earlier
2  whether the Howrey firm should be disqualified or not.
3  Should that be my principal concern at this point? I think
4  it was Mr. Brothers who may have used the words tainted
5  witness. I think you are entitled to challenge this witness'
6  credibility before the finder of fact, as that credibility
7  pertains to his opinions regarding the merits of whatever it
8  is he is going to be testifying regarding the actual
9  substance of this litigation. Isn't the retention or the
10  disqualification of the Howrey firm, at least at this
11  juncture, an ancillary issue?
12        MR. HOFFMAN: It is an ancillary issue at this
13  point. But part of the other issues, Your Honor, in trying
14  to fashion relief, is, there is other forms of potential
15  relief. And we haven't sorted out what we are going to ask
16  for yet ourselves. But, for example, we may ask the Court to
17  say, listen, Howrey & Simon knew that this witness had
18  confidential information. They shouldn't be allowed to do
19  through the back door -- obtain his opinions that he formed
20  as a result of consulting with us. He should just be
21  someone, because of the problem that they created, should
22  just be off everyone's list, period. There is other
23  witnesses familiar with the prior art. He is not the only
24  one.
25        That is number one. It may be that there is

**Page 22**

1  other sanctions. It may be that the individuals who got
2  certain information on Howrey & Simon should not be involved
3  in the case, there should be a Chinese Wall around them.
4  That is another possibility. It does not disqualify the
5  firm. There may be a possibility that the whole firm should
6  be disqualified.
7        Right now, all we are looking for at this time is
8  a list of those communications on a privilege log.
9        MS. CORBIN: Your Honor --
10        THE COURT: Don't interrupt, counsel, please.
11        MS. CORBIN: I am sorry.
12        MR. HOFFMAN: Most people quite often provide a
13  list of privileged documents, anyway. Normally, once the
14  litigation starts, you don't continue. But this is a special
15  situation. And we are asking that the Court -- the way we
16  believe the order read, we ask that the Court require the
17  Howrey & Simon firm and defendants to provide a list of the
18  privileged documents. We also ask that the limited number of
19  documents -- I can't imagine there is many in this
20  category -- be provided to the Court, so that when the Court
21  has the issues laid before it, we can ask for what relief we
22  think is appropriate and the Court can fashion relief that it
23  believes is appropriate.
24        THE COURT: MS. Corbin, what is the extent of the
25  potential production at issue here?

**Page 23**

1        MS. CORBIN: I wouldn't be able to address that.
2  I wouldn't have personal knowledge at this point.
3        THE COURT: Is there someone who can give the
4  Court that information?
5        MR. KELLEY: I can give you an estimate. I think
6  there is a handful of e-mails.
7        THE COURT: Let's produce them for the Court.
8        MS. CORBIN: Your Honor, my point is -- I don't
9  know whether it is apparent to the Court or not -- we seem to
10  be somewhat making points to cross-purposes here.
11        We did produce all of the exchange of e-mail and
12  any written documentation of an exchange between Howrey and
13  Dr. Thomas to the other side. And as well, Dr. Thomas'
14  deposition was taken. The testimony and those documents show
15  that no confidential information, if Dr. Thomas has any, was
16  ever communicated to Howrey & Simon. And I just want to make
17  clear, because I haven't heard, and I don't believe it's
18  Ricoh's position, that the contrary facts are the case. If
19  so, they haven't stated that.
20        THE COURT: I think they have stated that. Maybe
21  I misunderstood.
22        MS. CORBIN: That is why I wanted to clarify.
23        THE COURT: Let's clarify that.
24        MS. CORBIN: I think what they are complaining
25  about is that he had confidential information and we knew at

**Page 24**

1  some point, he had mentioned to us that he had consulted for
2  this short time with them and we proceeded anyway.
3        THE COURT: Let's get clarification on that. Mr.
4  Brothers.
5        MR. BROTHERS: Yes. Your Honor, we believe.
6  based on the inconsistencies between what Mr. Kelley said
7  during the hearing and Mr. Thomas' testimony, as well as the
8  intent of defendants to continue to pursue Dr. Thomas'
9  testimony, leads us to believe that something more than
10  innocent communications occurred. We don't know what those
11  are and we don't know the extent to them. We know that there
12  was at least one phone call in which the questions were
13  asked.
14        THE COURT: So in other words, Mr. Brothers, it
15  is at least your position that it may have been the case
16  that -- and I don't want to put words in your mouth, but for
17  purposes of clarifying the record and answering Ms. Corbin's
18  question -- is it your assertion that there is the
19  possibility that they may have known of the confidential
20  relationship and proceeded anyway?
21        MR. BROTHERS: Well, certainly, as I understand
22  it, everybody agrees they knew of the confidential
23  relationship. They elected to proceed anyway.
24        THE COURT: And that in fact confidential
25  information had been received by Dr. Thomas?

**Page 25**

1    MR. BROTHERS: Dr. Thomas has testified that in
2  fact confidential information was received.
3    MS. CORBIN: Was received, not transmitted to
4  Howrey Simon.
5    THE COURT: I am sorry. I should have gone that
6  additional step.
7    Is it your position, Mr. Brothers, that it was
8  transmitted?
9    MR. BROTHERS: We believe that there is an
10  inference that supports that. But we don't have the internal
11  Howrey documents that would presumably reflect on that, and
12  Dr. Thomas said he could not recall with specificity the
13  contents of his telephone conversation.
14    THE COURT: I thought, Ms. Corbin, I understood
15  counsel to take the position they have just articulated.
16    MS. CORBIN: My confusion is, Your Honor, they
17  have now taken a deposition and they have all the documents.
18  And they still say they have this inference. But they don't
19  have any statements that he made or any evidence from the
20  document exchange that any confidential information was
21  actually transmitted.
22    THE COURT: What is the basis for drawing the
23  inference, Mr. Brothers? That is what is being questioned
24  here.
25    MR. BROTHERS: There are three specific pieces of

**Page 26**

1  evidence, Your Honor. First is the fact that the questions
2  were asked during the telephone conversation what
3  confidential information was there, and there was the inquiry
4  following our complaint, and then there was a followup e-mail
5  to that saying -- and I read it as kind of a self-serving or
6  "let's protect ourselves" e-mail -- saying, we talked about
7  this in the phone call and I want you just to give me a
8  general list of the documents that were talked about.
9    Dr. Thomas didn't testify specifically, he
10  couldn't remember the specifics of the phone conversation.
11  But based on their, Howrey's continued pursuit of Dr. Thomas
12  and the e-mail following this exchange, saying we want to
13  take your deposition on in essence the same things that you
14  consulted with for counsel for plaintiff, that leads us to
15  believe that there is going to be favorable testimony coming
16  out of that. And what is the basis for that? We think that
17  there is only one answer to that. They have got some idea
18  from Dr. Thomas as a result of his consulting with Ricoh
19  about what those opinions were going to be. And that is the
20  confidential information.
21    In any event, Your Honor has ordered the Howrey
22  firm to produce those handful of internal documents. I would
23  ask that, because the order of July 31st provides that by
24  August 31st, we may file a two-page letter, I would just ask
25  that that be postponed until 10 days after the submission of

**Page 27**

1  the privilege log and internal documents.
2    THE COURT: That is an acceptable process. We
3  will follow that recommendation.
4    Ms. Corbin and Mr. DiGiovanni, are you clear as
5  to what your responsibilities are?
6    MR. DiGIOVANNI: Your Honor, actually, I am
7  somewhat confused with regard to the scope of production.
8  The only documents -- we described these few letters to
9  Ricoh -- the only documents that we have other than the
10  documents that went back and forth to Dr. Thomas, which were
11  all produced, are documents among the attorneys, the Howrey
12  Simon attorneys, there was some e-mail correspondence,
13  including myself, regarding Dr. Thomas and these issues
14  regarding Dr. Thomas. So every single e-mail communication
15  or other communication has at least as a recipient or the
16  author an attorney. So there is no doubt that all these
17  documents are privileged.
18    THE COURT: Sure.
19    MR. DiGIOVANNI: It sounds like they are trying
20  to break the privilege. However, there is no such exception
21  to the privilege that would allow this to break. For
22  example, in an instance where you have the crime/fraud
23  exception, the U.S. Supreme Court and the Third Circuit have
24  said there has to be at least a prima facie case established
25  before that can even be broken. There has to be a reasonable

**Page 28**

1  basis to even inquire into these privileged documents for
2  even in camera review.
3    It is our position Ricoh has not even come close
4  to establishing that, especially because we have taken the
5  deposition of Dr. Thomas and he said, quote, "I didn't share
6  any information with him -- the one attorney he talked to --
7  about confidential material. So we are somewhat confused as
8  to what the possible inquiry can be, because this is
9  privileged information.
10    THE COURT: I understand what it is. I know the
11  crime/fraud exception, counsel.
12    Mr. Brothers, do you have a position on the
13  crime/fraud exception? Do you want to say something about
14  that?
15    MR. HOFFMAN: Your Honor, if I can just briefly
16  respond. First of all, to return to one of the points in
17  history because it lays the foundation for this. There was a
18  representation to the Court that Dr. Thomas had told the
19  Howrey people that he received no confidential information
20  from Ricoh.
21    THE COURT: I remember that.
22    MR. HOFFMAN: In fact, the Court made a comment
23  about relying on Dr. Thomas' legal opinion when that was
24  indicated. Dr. Thomas, during his deposition, though,
25  testified that he did receive confidential information from

## Page 29

1  Ricoh, obviously, inconsistent with the representations.
2  There is a number of representations that have been made to
3  the Court that are inconsistent -- I am sorry,
4  representations to the Court that are inconsistent with the
5  documents we have obtained to date and also Dr. Thomas'
6  testimony.
7        Your Honor, I think that the whole issue of
8  making certain representations to the Court that they know
9  are inconsistent and these documents that we are asking be
10  turned over to the Court may further our belief, support our
11  belief, does create an issue of potential fraud upon the
12  Court.
13        THE COURT: I think it does. The Court is going
14  to order the production of the July 30 transcript for its
15  inspection at the same time that it reviews the documents
16  that I have just ordered be produced.
17        MR. KELLEY: I want to raise one point.
18        THE COURT: We are done with this point.
19        MS. CORBIN: So I can understand the scope...
20        THE COURT: Let's make sure we understand the
21  scope.
22        MS. CORBIN: You would like every internal
23  document in Howrey that makes reference to Dr. Thomas.
24        THE COURT: Yes. As I understand it, we are
25  talking about a handful of documents.

## Page 30

1        UNIDENTIFIED SPEAKER: Your Honor, is there a
2  time cutoff for this?
3        THE COURT: Ms. Corbin, is that correct?
4        MS. CORBIN: I can't make any personal
5  representation to that. There may be documents that address
6  that particular piece of prior art.
7        THE COURT: I think it was Mr. Kelley who
8  indicated it would be a relatively few number of documents.
9  Is that correct, Mr. Kelley?
10        MR. KELLEY: Yes, Your Honor.
11        MR. DiGIOVANNI: Your Honor, I am not sure about
12  the time cutoff, because I believe Mr. Hoffman had stated he
13  was interested in the internal documents regarding the
14  retention of Dr. Thomas.
15        MR. HOFFMAN: Your Honor, if I can just respond,
16  I can simplify things by proposing a time cutoff. I believe
17  the subpoena was sent out to Dr. Thomas early July --
18        UNIDENTIFIED SPEAKER: Late June.
19        MR. HOFFMAN: -- late June, from whatever that
20  date of that subpoena is going forward, coming to the
21  present.
22        THE COURT: Is that understood on the other
23  side?
24        MS. CORBIN: Yes, thank you, Your Honor.
25        MR. DiGIOVANNI: Your Honor, if we are talking

## Page 31

1  about documents relating to Dr. Thomas through today, this
2  would include the e-mails leading up to this teleconference
3  regarding strategy.
4        MR. HOFFMAN: I apologize, Your Honor.
5        THE COURT: We don't need that. Through the date
6  of the July 30th telephone conference with the Court.
7        Are we now clear on time parameters?
8        UNIDENTIFIED SPEAKER: It would be June 26th,
9  2003, to July 30th, 2003.
10        THE COURT: Ms. Corbin, do you understand the
11  time, and Mr. DiGiovanni, do you understand the time
12  parameters?
13        MS. CORBIN: It would capture our communications
14  with each other in preparation for that call.
15        THE COURT: Well, I don't want that, either.
16  That is not the intent of the Court, to include that,
17  either. Let's be a little more specific. Mr. Hoffman.
18        MR. HOFFMAN: Your Honor, it would be with
19  respect to the issue whether or not to retain Dr. Thomas,
20  what Dr. Thomas discussed with them, what was communicated --
21  in other words, internal discussions about what were the
22  communications with Dr. Thomas, whether or not they should or
23  should not retain him. If it will simplify things, Your
24  Honor, nor that we not capture their internal communications
25  regarding preparing for the telephone conference with the

## Page 32

1  Court, why don't we drop it back a few days prior -- Your
2  Honor, we are not looking for things relating to the strategy
3  in preparing for the telephone conference.
4        MR. BROTHERS: I was trying to make clear that
5  the phone conference was on July 30th and recapping that
6  phone conference, then there were additional e-mails to and
7  from Dr. Thomas up through the date of the hearing. So,
8  obviously, to the extent that an e-mail was sent to or
9  received from Dr. Thomas and forwarded to others with the
10  comments about substance and Dr. Thomas' retention and about
11  what was said, then I think all of those are appropriate to
12  include.
13        THE COURT: I agree.
14        MS. CORBIN: So, Your Honor, are you saying
15  through the date of the deposition? I missed what whoever
16  was speaking last just mentioned.
17        MR. BROTHERS: I believe the subpoena was issued
18  on June 25th or 26th. And the hearing was on July 30th, in
19  which the Court said no further communications with Dr.
20  Thomas. So it would be that 34-day period.
21        MS. CORBIN: Excluding any internal
22  communications from Howrey in preparation for that conference
23  call with the Court.
24        THE COURT: Correct.
25        MS. CORBIN: I have that in mind now. Your

## Page 33

1  Honor.  Thank you.
2        THE COURT:  Okay.  Great.
3        MR. HOFFMAN:  Your Honor, I presume you want to
4  proceed in order?
5        THE COURT:  Yes, sir.
6        MR. HOFFMAN:  Yes, sir.  The second topic is a
7  request of Ricoh.  We served the subpoena that was issued out
8  of Delaware, out of this Court, on Synopsys.  Synopsys is not
9  a party to the litigation.  However, Ms. Corbin have
10  previously indicated to the Court back at the time of the
11  scheduling conference that their position is Synopsys is a
12  real party in interest here.
13        We served the subpoena for documents.  Synopsys
14  has objected to every part of that subpoena, to all the
15  categories.  To date, they have produced as far as anything
16  other than some prior art, they have produced approximately I
17  think it's less than 100 pages of documents.
18        What we are trying to discover in general from
19  Synopsys is information about the software, the systems that
20  they have provided to the defendants.  As the Court may
21  recall, and it's also set forth in defendants' motion to
22  dismiss, part of the issue here regarding the defendants'
23  activities relating to their utilization of Design Compiler.
24  There is also another program called Behavioral Compiler,
25  which may also play a part here.

## Page 34

1        What we indicate, in fact, they have asked us for
2  our basics, some of our infringement positions, and we have
3  set forth a basic explanation of why we think they infringe.
4  It is very general at this point, granted.  But it does in
5  that indicate that part of it involves the use of Design
6  Compiler.  Synopsys has indicated that they are willing to
7  give us some non-confidential, publicly available documents
8  on Design Compiler and Behavioral Compiler, but nothing
9  confidential.
10        We have obviously pushed for more.  We want the
11  confidential documents on both products.  And also we want to
12  know what other products did they provide to the defendants,
13  because there are other products that may come into play
14  here.
15        Synopsys has raised a number of objections.  The
16  first objection they have raised is that the documents
17  should not have to be produced twice, because that would be
18  duplication, and consequently, they will produce them in the
19  California action and not here.
20        And I start with that one, Your Honor, because in
21  essence during the scheduling conference, Ms. Corbin sought a
22  stay of discovery in this action.  And the Court
23  appropriately indicated that, no, discovery was going to go
24  forward.  What Synopsys is doing here and the defendants are
25  doing here in essence is saying that, no, discovery is not

## Page 35

1  going to go forward.  We are only going to produce the
2  documents in California.
3        We agree, they don't have to be produced twice.
4  But there is no reason not to produce them here.
5        They have also objected on the basis that the
6  documents are confidential.  Well, Your Honor, there is a
7  protective order.  Howrey & Simon, who represents both
8  Synopsys and the defendants, was involved in negotiating that
9  protective order.  They were involved in working out the
10  details of it.  Clearly, they can be produced underneath the
11  protective order.
12        Next, Your Honor, something I had not mentioned
13  Synopsys has not objected on any type of basis that there is
14  no jurisdiction of this Court over this issue, over the
15  subpoena.  So it is appropriately here, the subpoena.
16        The only issue is what subject matter, what
17  documents do they need to produce.  They have also complained
18  or objected that we haven't explained our patent infringement
19  theory.  This also comes up with the objections that have
20  been raised.  Mr. Meilman will get into that later on when we
21  address that topic.
22        We have indicated to them, in fact, they have
23  stated that the issue of infringement relates to the
24  utilization of Design Compiler.  We are fully aware of that.
25  So for them to tell the Court, we don't -- to object on the

## Page 36

1  basis we don't understand us what you are charging with
2  infringement at the same time they are telling the Court
3  that, oh, what's being charged with infringement is
4  utilization of Design Compiler is simply disingenuous.
5        They have also objected, indicated that the
6  documents can be obtained from the defendants and we would be
7  better off obtaining it directly from the defendants since
8  they are parties to the litigation.
9        Well, first of all, Your Honor, not all the
10  documents can be.  But more importantly here, the defendants
11  in turn, turn around and say, through the same attorneys,
12  Your Honor, saying that, well, we can't provide you the
13  documents because it's the confidential information of
14  Synopsys.  Well, Your Honor, obviously, the information can
15  be provided.  It can be provided underneath the protective
16  order.
17        We next have an objection that the documents,
18  some of the documents are in the public record and can be
19  obtainable from other sources.  Well, to say, well, some of
20  the documents I have are publicly available and you can
21  obtain them, well, who knows what documents they are?  If
22  they gave us a list, here is the dates of the documents, here
23  is where you can obtain them, fine.  But if they have the
24  documents, whether they are publicly available from other
25  sources or not, they should still be obligated to provide

## Page 37

1  them.

2      They also object that apparently some of the

3  documents are confidential information of third parties,

4  unidentified third parties.  We have asked them to identify

5  them, these allegedly third parties.  They have refused to do

6  that.

7      In essence, what we are getting, what appears to

8  us, Your Honor, is a stonewalling of discovery, a decision to

9  say that basically we are just not going to provide discovery

10  until the Court requires us to.  That's the way it looks.  Or

11  until the case the case is in California, we are not going to

12  give you discovery.  We are not going to provide it in the

13  Delaware action.

14      THE COURT:  Okay.  Who is going to handle this?

15      MR. KELLEY:  Your Honor, I am.

16      Mr. Hoffman just recited several issues that

17  relate to objections that were recorded in our responses to

18  the interrogatories.  But it doesn't address the real issue

19  here, which is the breadth -- I said interrogatories, I meant

20  document requests -- which is the breadth of the document

21  requests.  If you look at these -- am I talking over

22  someone?

23      THE COURT:  No.

24      MR. KELLEY:  They have asked for -- I will go to

25  some specific language in a minute.  They have asked for

## Page 38

1  every engineering document relating to any product produced

2  by Synopsys.  Now, Synopsys is a third party, may be required

3  to produce some documents in this litigation.  But the basis

4  for that production has to be that there is a need to get

5  this information from that third party and that the evidence

6  is directly related to a real critical issue in the case that

7  can't be attained from some other source.

8      It's not proper for them to submit document

9  requests that ask us for every engineering document relating

10  to every product that Synopsys has produced.  That is the

11  real issue here.  Not about the nature of our objections,

12  about whether a document is confidential or not.  If they are

13  willing to focus their document requests on the real critical

14  issues, the key part of the Synopsys product that they think

15  is relevant to their theory of infringement, which, as Mr.

16  Hoffman just admitted, they haven't really spelled out in any

17  kind of detail, then that would be a legitimate basis for a

18  document request.

19      Let's cut to some of the text from the document

20  requests.

21      The order that we would ask the Court to issue is

22  a protective order relating to Document Requests 2 through

23  5.  Let me just tell you, read to you a little bit, and I

24  won't do this for a bit here, because it will become

25  tedious, but let me just read to you from No. 5.  It says.

## Page 39

1  Produce all documents concerning all hardware, software

2  libraries, core databases for use in ASIC design systems, and

3  then goes on and on, about including technical reference

4  manuals, technical bulletins, user manuals, installation

5  manuals, training manuals, sourcecodes, tutorials, et cetera

6  et cetera.

7      The real issue here is that these are just not

8  crafted as the kind of discovery that one might reasonably

9  expect one could get from a third party to a case.  They are

10  not limited in any manner to the products at issue.  They are

11  not limited in any manner to the key parts of the products

12  that they are going to contend infringe.

13      The only thing that they have identified in their

14  interrogatory answers to date as being the basis of their

15  infringement allegations is two steps, two steps that are

16  performed by the defendants in this case.  The first is

17  providing input to Design Compiler, and the second is using

18  Design Compiler to take the library cells and create some

19  output that will be used to produce an output for (inaudible)

20  ASIC a chip.  That is all they have identified.

21      If they are willing to restrict their document

22  requests to specific things relating to those steps and

23  relating to the product that they say defendants are using in

24  an infringing manner, then we would have a basis to produce

25  documents.  They aren't entitled to a fishing expedition of

## Page 40

1  every engineering documents in Synopsys' possession.

2      And I would go on to state, Your Honor, there are

3  a number of documents, document requests, that we have

4  produced documents, agreed to produce documents in response

5  to.  This is not an exercise in stonewalling.  And we have

6  given them some manuals that describe how, what kind of

7  inputs Design Compiler can accept, and describe exactly the

8  steps involved or the state, describe that Design Compiler is

9  used to select library cells in order to produce an output

10  for ASIC design.

11      THE COURT:  You have described, counsel, some

12  parameters.  Let's see if they are acceptable to counsel for

13  Ricoh.

14      MR. HOFFMAN:  Your Honor, first of all, the

15  documents that they have produced is less than 100 pages.

16      THE COURT:  I don't want to go over that.  What I

17  am interested in knowing is how you react to the objection

18  which Mr. Kelley says is really at essence here, that is the

19  scope, that your request is overly broad.

20      MR. HOFFMAN:  Your Honor, what we have indicated

21  to them is that -- and then I would like to go to what is

22  actually the Request No. 5, because it was not properly read.

23      THE COURT:  I don't want to do that.  What I want

24  to get to is an agreement.  I am really not interested in

25  batting this ping-pong ball back and forth across this

## Page 41

1  table. I want to get to an agreement rather quickly.
2      MR. HOFFMAN: Yes. Your Honor, what we have
3  indicated is we will agree to limit our request to No. 1,
4  Design Compiler documents, Behavioral Compiler documents.
5  And they have agreed -- that is just the starting point, and
6  I will go on from there. But they have agreed to produce
7  documents relating to those products, but only the
8  non-confidential documents.
9      THE COURT: Well, let's talk about that then.
10  Insofar as, Mr. Kelley, counsel has now defined what I hope
11  you will agree is a proper scope, what about the production
12  of confidential information pursuant to the terms of your
13  protective order?
14      MR. KELLEY: Is that a question for me, Your
15  Honor?
16      THE COURT: Yes, sir.
17      MR. KELLEY: The reason that we mentioned
18  confidentiality in the objection is that as a third party
19  confidentiality is one of the considerations that is
20  mentioned in the case law about weighing that burden on the
21  third party versus the need in the case.
22      THE COURT: We are trying to reduce the burden.
23  I do understand your complaint regarding the burden.
24      MR. KELLEY: I apologize. The next point, what
25  they have identified as being the basis of infringement,

## Page 42

1  namely, that the user provide certain inputs to Design
2  Compiler and that that Design Compiler takes those inputs and
3  selects library cells to produce the output, that they can
4  get from public documentation. There really is no need to go
5  into our sourcecode describing exactly in great detail how
6  those functions are performed or into the internal
7  engineering documents describing every aspect of that. If
8  that is what they need from us, they have already got that.
9  And I will correct Mr. Hoffman. We have already produced
10  several hundred pages of manuals.
11      THE COURT: Let's just deal with this discrete
12  issue, this discrete range of documents, Mr. Hoffman. Do you
13  agree that there are alternate sources?
14      MR. HOFFMAN: No, there are not, Your Honor. The
15  information is going to be in the confidential documents. It
16  is going to be in the sourcecode. It is going to be in the
17  other information that comes out of Synopsys or comes out of
18  the defendants.
19      There is many other parts of this claim, such as
20  discussions of expert systems, discussions or rules. Some of
21  those are going to be parts of the (inaudible) of Design
22  Compiler or Behavioral Compiler.
23      So consequently, just inputting information, yes,
24  that is part of the process here, there is no question that
25  is part of the process. But then it's how the system

## Page 43

1  operates is another part of the process, and some of that is
2  not fully available. The details that we want for trial to
3  prove our case, obviously, we have enough information to
4  bring the case and to allege, quite appropriately allege.
5  that information and that operation is present. But we
6  are entitled to further information to further establish and
7  prove our case.
8      Synopsys, they keep on saying they are a third
9  party. Yet at other times they keep on saying they are the
10  real party in interest and they are the true party here.
11      THE COURT: I don't hear any objection to the
12  relevance, that it's not discoverable. It's a question of
13  sourcing, where you can get it from, whether you can get it
14  from alternate sources and how to protect it.
15      MR. HOFFMAN: There is a protective order and we
16  cannot get this from --
17      THE COURT: What I am getting at is, it seems to
18  me, counsel, if you remove for a moment -- and I know this is
19  difficult to do -- your adversarial hats and think more in
20  the spirit of cooperation, because there is no apparent
21  disagreement as to the relevance of this information, the
22  discoverability of this information, then you could probably
23  come to a point of agreement as to how it should be
24  produced. Is that just beyond your capability? Or what are
25  we talking about here?

## Page 44

1      MS. CORBIN: Your Honor, I think that now they
2  have identified Design Compiler, Behavioral Compiler --
3  Design Compiler alone, just for point of reference for the
4  Court, is the largest product at Synopsys, accounts for more
5  than 20 percent of its revenue. They still want all
6  engineering documents relating to Design Compiler. We still
7  have a huge problem with respect to overbreadth.
8      THE COURT: I can understand why you would have a
9  problem with that. And it seems to me the plaintiff should
10  be able to narrow that request somewhat.
11      MR. HOFFMAN: Your Honor, if Synopsys is willing
12  to give us the confidential information, they are willing to
13  give us the sourcecode limited to the time of the scope of
14  documents, going back to 1996, so we are not talking about
15  everything that is there, all documents that they have ever
16  had, we are willing to work with them in trying to work out
17  some other limitations. But to say, well, tell us the
18  details of exactly which parts of Design Compiler you are
19  alleging to infringe and give us a detailed claim chart so
20  that then we can decide whether or not we will give you
21  anything is putting the cart before the horse. What they are
22  asking is prove your case and then we will decide if we will
23  give you discovery.
24      THE COURT: Obviously, you don't have to do that.
25      MS. CORBIN: Your Honor, the sourcecode, since it

Page 45

1 has been mentioned twice now, is of particular import, I
2 think, because that is the most sensitive information about a
3 particular product, it contains a lot of information. If
4 what they need is an understanding of the inputs that these
5 particular customers input to Design Compiler when they use
6 it, there are other ways to get to that information besides
7 having the sourcecode, which is the most sensitive
8 information in the company, regarding their key product.
9     THE COURT: Well, inevitably, counsel, in all of
10 these cases, and you know that from your vast experience in
11 this area, there is always information, oftentimes
12 extraordinarily sensitive information like this that is at
13 issue and that needs to be shared in order for the litigation
14 to proceed forward. That is why we have protective orders.
15 That is why there is a body of law that has grown up around
16 this issue. But it is incumbent upon counsel to recognize
17 the need to cooperate, and if necessary, to craft new
18 language that will enable this type of information to be
19 shared at appropriate levels. If it is for attorneys' eyes
20 only -- I think you understand where I am going with this.
21     If there is truly an alternate source that will
22 enable the plaintiff to prosecute its claims in a timely
23 fashion from which it can receive this information, I would
24 be interested in knowing and having the discussion right now
25 as to what that source is and whether it is acceptable to the

Page 46

1 plaintiff.
2     MS. CORBIN: Can you address that, please, Chris
3 Kelley?
4     MR. KELLEY: Yes, absolutely. That is where I
5 was intending to go.
6     Your Honor, the issue here is that -- of course,
7 they have stated to this Court -- and I don't want to get
8 into the motion to stay or transfer -- but they have stated
9 that their beef is not with Synopsys. That it's by
10 defendants that are infringing. They are now suggesting that
11 Synopsys is a third party and as a party to this case has the
12 same obligations in discovery.
13     If you look at the way the interrogatory is
14 drafted, they identify the two things that would have some
15 connection with the user, namely, putting some stuff in at
16 the top of the process and getting something out at the
17 bottom. And they didn't mention anything about all the other
18 the stuff, which of course I think they are going to argue
19 are all internal to Design Compiler.
20     Their theory of infringement really is these
21 defendants use Design Compiler. If that is the case, which
22 they haven't come flat out and stated today, they should have
23 sued Synopsys. Instead, they elected to sue Synopsys'
24 customers. Now they are trying to back-door, attack
25 Synopsis' product by getting this very broad discovery.

Page 47

1     I think the progression here is, to the extent
2 they really believe their case of infringement rests on
3 something the defendants are doing and there is some
4 peripheral material that is in the exclusive possession of
5 Synopsys, that is the kind of discovery they should get. But
6 what I think we are going to find out when we actually have
7 this meeting -- and I think that's the proper way to proceed
8 is for the proper parties to get together and work out
9 exactly what they need and what we can give them, how we can
10 get them the information they need. I think what we are
11 going to find is everything they need relating exclusively to
12 stuff done by Design Compiler, nothing to what these two
13 defendants here are doing except using Design Compiler,
14 providing the regular inputs that Design Compiler normally
15 takes in and at the end of the process say thank you very
16 much for the output, I am going to take this off to go make
17 the chip.
18     THE COURT: It is not necessary for you to
19 respond, Mr. Hoffman. The Court has instructed the parties
20 to get together and discuss this matter. If you are still at
21 an impasse after that discussion, obviously, we will have to
22 revisit this.
23     Let's go on to No. 3.
24     MR. HOFFMAN: No. 3, Your Honor --
25     MR. KELLEY: Your Honor, I think this is our

Page 48

1 item.
2     THE COURT: Yes.
3     MR. KELLEY: This is a relatively simple matter.
4 On the patent at issue, there are two inventors, Mr.
5 Kobayashi and Mr. Shindo. Ricoh has already agreed to make
6 Mr. Kobayashi available for deposition in Japan. That is
7 going forward.
8     At a fairly early point during discovery, we
9 asked them whether they were representing Shindo. I am not
10 going to get this exactly right. They said, no. We will see
11 if they will work with us. Give us your subpoena and we will
12 see if he will accept it, not formally, accept service, but
13 he will respond to it.
14     We haven't yet received from them a commitment
15 any final word as to, one, whether Mr. Shindo will accept
16 this -- will cooperate in discovery, and two, whether they
17 intend to use him during trial, appear as a witness.
18     Both Mr. Shindo and Mr. Kobayashi, to our
19 knowledge, live in Japan. We have asked them if they would
20 bring Mr. Shindo to the United States. They have said, no,
21 you have to go to Japan to take his deposition if you want to
22 take his deposition. That's assuming of course that he at
23 some point determines to cooperate.
24     The problem we are facing, given the close of
25 discovery in January, the facilities for deposition, which I

### Page 49

1  assume everyone on the phone is familiar with, depositions in
2  Japan must takes place either at the embassy or one of the
3  consulates. The Tokyo Embassy is already completely booked.
4  There is a little opportunity, some space in the Osaka
5  Consulate, which, to our understanding, that is actually
6  where Mr. Shindo lives, is Osaka.
7       What we would like from the Court is some
8  deadline as to when they actually have to have a final word
9  as to whether Mr. Shindo is going to cooperate or not. Then
10 either to make him available in Japan in accordance -- with
11 one of the windows of opportunity that we have, at the Osaka
12 Embassy, or bring him to the United States for deposition
13 here.
14      THE COURT: Okay.
15      MR. KELLEY: We can depose him in advance of
16 trial.
17      THE COURT: Can we get an answer to the question,
18 counsel?
19      MR. HOFFMAN: Yes. Mr. Shindo, who is a third
20 party, we don't represent him, we have attempted to contact
21 him through numerous ways. He does not respond to any of our
22 requests to see if he would be willing to accept the
23 subpoena.
24      We have asked him to sit for a deposition and
25 produce documents. He does not respond. He is so far, by

### Page 50

1  lack of response, at least implicitly is indicating he is not
2  going to cooperate. He has been gone from Ricoh over ten
3  years now. It is our belief that he is not going to
4  cooperate. Obviously, if he is not going to cooperate, he is
5  not going to show up at trial or anything else.
6       Both plaintiff and the defendants had listed Mr.
7  Shindo as someone who might have information. He is one of
8  the inventors. I presume he has some information. But no
9  one can force him as a third party to cooperate or to appear
10 for a deposition. We have been unsuccessful in doing that.
11 Consequently, we can't produce him.
12      With Dr. Kobayashi, he lives in Japan. He is
13 also not employed by Ricoh. We asked him. He came back and
14 said, yes, he would be willing to voluntarily appear. And
15 that deposition is set up in September, late September.
16      THE COURT: Mr. Kelley, what would you have
17 counsel do in this situation?
18      MR. KELLEY: I understand the difficult situation
19 he is in. This is the first time I heard he hadn't
20 responded. What I guess I would like is a drop-dead date, if
21 you will forgive the phrase, by which we will know he is
22 either going to cooperate by this date or there is not going
23 to be an opportunity for him to appear at trial. It seems to
24 me that should be sometime before the close of discovery, not
25 the final day of discovery.

### Page 51

1  MR. HOFFMAN: That is fine, Your Honor. We would
2  be willing to do that by the end of the year.
3       THE COURT: The drop-dead date is the end of
4  discovery.
5       MR. KELLEY: The complicating factor is if he is
6  going to be deposed in Japan.
7       THE COURT: No. I understand. Obviously, there
8  are challenges that would have to be overcome. For instance,
9  on the last day of discovery, you get word that he is
10 available, the Court will be flexible, perhaps, in all
11 likelihood, and permit the parties an additional period of
12 time in which to complete his deposition. But we can
13 certainly deal with that at the time. At least theoretically
14 the drop-dead date is the last day of discovery.
15      MR. HOFFMAN: We have asked the defendants to
16 produce all documents -- let me read it to you, a single
17 document request in this regard: Produce all documents and
18 tangible things identified in Section B, Items 1 through 8,
19 of defendants' initial disclosure dated and served on or
20 about May 30, 2003.
21      This is where they listed the documents that they
22 are going to rely upon in support of their case. We asked
23 them to produce the documents. Part of the response is,
24 defendants further object to this request as unduly
25 burdensome in seeking discovery of information not reasonably

### Page 52

1  calculated to lead to the discovery of admissible evidence.
2  Defendants further object to this document request as unduly
3  burdensome and on the basis that it seeks detailed discovery
4  regarding operations of defendants that has no relevance to
5  defendants' ASIC products or methods.
6       Your Honor, these are the documents that they
7  listed, the categories of documents they listed in their
8  initial disclosure.
9       The purpose of the initial disclosure, obviously,
10 is either done over the documents, list the categories so the
11 other side can go ahead and request them. We requested
12 them. They came back and have said, no, they are not
13 relevant. We tried to work it out with them. The response
14 was, and this is from Mr. Mower (phonetic), defendants
15 identified eight categories of documents that were likely to
16 be relevant in this dispute. Defendants did not suggest, as
17 your letter implies, that any documents that go into that
18 that fell into these categories were relevant.
19      Well, Your Honor, if they listed them, you only
20 list what you think is relevant. If it is relevant, we are
21 entitled to them. If they didn't list any -- if the
22 documents they listed are not relevant, then why did they
23 list them in their initial disclosure?
24      THE COURT: I agree. What is the defendants'
25 response to this?

## Page 53

1   MR. KELLEY: Your Honor, the categories that are
2   identified are relatively generic phrases. Product design,
3   development materials, marketing, promotional materials.
4   Sales and accounting statements. You get the gist. Sort of
5   generic classifications of documents.
6       When we prepared this, this is in the initial
7   disclosure statement, we did not have any idea what their
8   theory of infringement was. All we had was the complaint,
9   which doesn't provide any detail other than you infringe. We
10  did note what our invalidity arguments were going to be and
11  we started collecting that information as quickly as
12  possible. In fact, we have produced the thousands of
13  documents that plaintiffs sometimes refer to in their papers
14  are all prior art articles that we have produced. So we have
15  produced the materials we knew about in describing these
16  categories at that time. We immediately started producing
17  that stuff.
18      Since then, we have agreed to go ahead and get
19  the materials relating to -- and here's where the parties
20  have had some negotiation in the past few days leading up
21  though this call, not ultimately successful but some
22  narrowing of the differences -- we have agreed to produce, to
23  go get documents relating to ASIC products which were
24  developed in a process where there was some logic synthesis.
25  Logic synthesis is the kind of operation performed by Design

## Page 54

1   Compiler and other product.
2       And we wanted to further restrict the documents
3   to documents that had some bearing on the use of, the steps
4   which they have identified in their interrogatory, providing
5   input to the logic synthesis to Design Compiler and using
6   Design Compiler to map library cells to produce an output
7   file.
8       They have agreed that their document requests,
9   which asks for every information, all documents about every
10  ASIC, should properly, they have agreed to narrow their
11  request, just in the last few days, to ASIC, whether there
12  was some logic synthesis, i.e., having something to do with
13  the process that is described in that patent. So then the
14  remaining difference, really, in the document requests is
15  whether they get every document that the defendants have on
16  that ASIC or if they get the documents that are relevant to
17  the claimed process.
18      THE COURT: I have to say, this is the first time
19  that I have ever had to deal with an issue involving
20  production related to initial disclosures. I find it
21  extraordinary. Counsel --
22      MS. CORBIN: Your Honor, I think that the problem
23  was that the initial disclosure was inartfully drafted.
24      THE COURT: Perhaps. But what you need --
25      MS. CORBIN: The problem may be, there was a

## Page 55

1   subset of documents.
2       THE COURT: Ms. Corbin, I am going to talk over
3   you. You can't talk over me. I know we are on this bridge
4   line and sometimes we talk over one another, and that's okay.
5       But you are going to have to go back and finish
6   your conversation about this, counsel. I am not going to
7   spend any more time on this.
8       Let's move on to No. 5.
9       MR. MEILMAN: Your Honor, actually, you have
10  heard part of the discussion on the document requests.
11  Actually, the interrogatory, No. 7, they are also related.
12      THE COURT: Let's talk about them both then.
13      MR. MEILMAN: Right after the Rule 16 conference
14  in May, we served these document requests and interrogatories
15  on defendants about a month later. And as Mr. Kelley
16  indicated, we have been trying to resolve our differences
17  ever since. We have gotten some information in documents.
18  But it's been dribbled in piece by piece.
19      As Mr. Kelley has told you, that they keep
20  objecting on the grounds that we haven't told them our
21  infringement theory. In essence, what they are doing is they
22  want us to give them our Markman construction before they
23  decide what they are going to give us. That's something that
24  was raised during the Rule 16 conference, and the Court
25  refused to push the Markman conference before any discovery.

## Page 56

1       As Mr. Kelley indicated, we have narrowed the
2   definition of what we want, well, the patent in suit is
3   directed to a computer aided design process for making
4   application specific integrated circuits, what has been
5   referred to in this conference call as an ASIC.
6       We have asked them, we have narrowed our request
7   to processes for making ASICs by a computer-aided design
8   process using logic synthesis, development of those
9   processes, what equipment they have used, and any literature
10  they have had about that.
11      Last Friday, they have told us they will provide
12  us details about their current process (inaudible)
13  development. As to two of the three defendants, they have a
14  plant in the U.S. But as Mr. Kelley indicated, they want to
15  restrict that to Design Compiler because we indicated we knew
16  they used Design Compiler in at least some of their
17  processes.
18      Yesterday, they backtracked, as far as I
19  understand it, and said we will give you only details as to
20  some of these substeps in the process.
21      They have told us that one of the defendants,
22  Matrox Tech, did design work in Florida, but we will be
23  getting no information about that because it closed its plant
24  in 2000 and those records don't seem to be located.
25      Then there is an issue on questions of responses

## Page 57

1  by the Matrox defendants done in Canada. We have been told
2  that there are additional process steps those defendants
3  carry out which makes the foreign production provisions of
4  Title 35 U.S.C. 271(g) inapplicable. As you may guess, the
5  minute they said that to us, we said, What are those steps?
6  And we have been refused disclosure on that.
7        Yesterday I got a call from Mr. -- I got a letter
8  from Mr. Kelley indicating that if we want, they will make
9  people available with knowledge about their design work for
10  deposition, but we are not going to get any interrogatory or
11  document request.
12       Basically, on the definition of the products --
13  the processes that we wish to have disclosure on, we believe
14  that limiting that to the computer-aided design process with
15  logic synthesis is narrow enough to give us the discovery we
16  want. We know as to some processes the defendants use Design
17  Compiler. What we don't know is whether they have any other
18  products that they have gotten from other suppliers.
19       We have asked them, do you have those? And
20  produce the documents. We have asked both in general and
21  specifically as to one of their -- one of the companies we
22  know provides equipment called Cadence. And basically, we
23  are told we are not going to get an answer. As to other
24  things, when they don't have any documents or it has not been
25  applicable, we have been told that. But as to the generally,

## Page 58

1  are you using somebody else's equipment, are you using
2  Cadence's equipment, we are getting no answer at all.
3        I think that's basically -- that whole approach
4  filters down to everything that is in dispute pretty much on
5  the interrogatories and document requests. As Mr. Kelley
6  said, it is a question of what we are entitled to as far as
7  breadth goes.
8        THE COURT: Okay.
9        MR. MEILMAN: It may very well be there are no
10  other alternate products that the defendants are using. But
11  I think we are entitled to know that.
12       THE COURT: Okay. Let's hear from the other
13  side.
14       MR. KELLEY: Your Honor, let me talk about the
15  271(g) issue in a minute. Let me deal with the document
16  requests first.
17       The fight that we have been having over the last,
18  it's been about three or four weeks the parties have been
19  discussing this in earnest, is these document requests. Once
20  again, let me just read this: Produce all documents -- I am
21  reading from No. 5, Document Request No. 5: Produce all
22  documents concerning the conception, design, development,
23  manufacture, or sale of each of the defendants' ASIC
24  products. Then it goes on and gives some examples sort of
25  thing.

## Page 59

1        There are several. The ones we have objected to
2  and said these are too broad are that kind of thing. They
3  haven't (inaudible) with all products and anything having to
4  do with the design of that product.
5        Now, Mr. Meilman just said that, he said CAD
6  process. As far as I know, that is the first time I have
7  heard them say, what we really need is stuff about the CAD
8  process. Although I am not sure whether he meant -- well,
9  the thing that is relevant here is logic synthesis. It's not
10  the specification, the engineering specification describing
11  what the product was going to do that was formulated back
12  when people were kicking around ideas about what a good
13  product for the company would be. So that's what we have
14  been fighting about now.
15       Ricoh just a few days ago said we will limit the
16  products, as I mentioned, we will limit the products to those
17  products that use logic synthesis.
18       Now, I think the remaining issue is whether the
19  scope of these document requests should be restricted to
20  documents describing the use of logic synthesis or relating
21  to logic synthesis for those products, and not anything
22  having to do with the specification of the product,
23  engineering, planning meetings, memos about how, we have got
24  bugs, our design isn't working, because none of that has
25  anything to do with the claim.

## Page 60

1        THE COURT: Is that an acceptable limitation,
2  Ricoh?
3        MR. HOFFMAN: Your Honor, what we are looking
4  for, as Mr. Meilman, I thought, had indicated, is the
5  documents that relate to the process for manufacturing these
6  ASICs in the designing of the ASICs using systems that have
7  logic synthesis in them. We are not looking for things
8  relating to debugging of the ASICs themselves. We are not
9  looking for things on other types of -- there is some
10  categories -- and I would have to go back to exactly what Mr.
11  Kelley said -- other things that were pre the designing of
12  these ASICs using the particular types of processes that are
13  involved in the claims and in the patent here of ASIC
14  designing processes using logic synthesis.
15       That is what we are looking for. We have told
16  them that. To date, they have produced less than a thousand
17  pages of documents.
18       THE COURT: Is that a different way of saying
19  that you are in agreement with the limitation that has just
20  been proposed? Or are you broadening?
21       MR. HOFFMAN: No. I think we are in general
22  agreement of some of the things. Mr. Kelley rattled off a
23  number of things.
24       THE COURT: So did you. So, counsel, my question
25  to you is, now having heard one another speak, and speaking

## Page 61

1  to one another through me, do you think that you can put a
2  finer point on these requests and resolve the objections?
3  Because the Court has now invested an hour and a half of its
4  time on matters, quite frankly, in a manner in which it quite
5  frankly believes could have been better invested.
6       Are we at a point in this discussion as to Items
7  5 and 7 where counsel can be released to your own devices and
8  work it out?
9       MR. KELLEY: I believe.
10      MR. HOFFMAN: I believe, also, Your Honor.
11      If I can just ask one question, because I think
12  it may help in advancing a number of these things that we are
13  trying to work out. We would hope that, and would like a
14  commitment from counsel for the defendants and for Synopsys
15  to work out all these matters, to work diligently over the
16  next week, between now and the end of next week to work out
17  all these matters, so we can get these documents.
18      THE COURT: So ordered, yes.
19      MR. HOFFMAN: And also that the defendants will
20  not object and tell us we can't give it to you, these
21  documents, because it is the confidential information of
22  Synopsys.
23      THE COURT: You have to work through your
24  protective order.
25      MR. HOFFMAN: We will be underneath the

## Page 62

1  protective order, the documents.
2       THE COURT: I think that's a given, counsel.
3       MR. HOFFMAN: Thank you, Your Honor. I
4  appreciate it.
5       THE COURT: Okay.
6       MR. MEILMAN: Your Honor, Mr. Kelley was about to
7  start raising some material on the Matrox people in Canada.
8  I don't want to get that swept under the rug.
9       MR. HOFFMAN: Your Honor, that also probably ties
10  in with Topic No. 8 that they have raised.
11      THE COURT: Topic No. 8 is a non-starter for the
12  Court. I am not going to grant permission to file a letter
13  in support of the seeking of permission to file summary
14  judgment at this time, no.
15      MR. HOFFMAN: I presume we are also entitled then
16  to get discovery out of the people in Canada.
17      THE COURT: I don't see why not.
18      MR. KELLEY: Can I address that issue briefly?
19      THE COURT: Yes.
20      MR. KELLEY: They are seeking discovery -- this
21  claim relates to the logic synthesis process. What they want
22  is the discovery of logic synthesis work done in Canada.
23      THE COURT: Counsel, you are breaking up on us.
24      MR. KELLEY: It seems to me, I know we don't want
25  to get into the issue of whether they are going to prevail on

## Page 63

1  their 271(g) theory. But that's unusual, to try to apply a
2  U.S. patent to seek discovery on work done outside the United
3  States, on things done outside the United States is very
4  unusual.
5       THE COURT: What is the thinking there, Ricoh?
6       MR. HOFFMAN: Your Honor, if a process of
7  manufacturing a product is carried on outside the United
8  States where that process would infringe a process patent
9  inside the United States, then there is a basis for
10  allegation of infringement, the charge of infringement, just
11  boiling it down to a summary format.
12      The Bayer case they are relying upon is talking
13  about something entirely different. It was talking about
14  strictly -- and I have part of the claim here -- a need for
15  determining whether a substance is an inhibitor or
16  activator.
17      That is not what we are talking about here. We
18  are not talking about a method of determining whether or
19  not -- determination of whether a piece of information is in
20  one category or another. We are talking about part of a
21  manufacturing process, and 271 clearly covers that situation,
22  where the products do flow into the United States, that there
23  is infringement of that process patent.
24      This is a manufacturing process. So it's our
25  position we are entitled to it.

## Page 64

1       THE COURT: Does counsel disagree with counsel's
2  statement regarding the current state of the law?
3       MR. KELLEY: Yes, Your Honor. The Bayer case
4  makes it absolutely clear that the manufacturing process,
5  this is the exact question addressed by the Federal Circuit,
6  the manufacturing process, in order to fall within 271(g),
7  the claimed process has to be one using manufacturing the
8  device, the actual physical things that are going to be
9  imported.
10      MR. HOFFMAN: This is all part of the
11  manufacturing process, Your Honor. And what they are trying
12  to do is say, well, since we disagree and we think that we
13  are entitled to summary judgment, we are not going to give
14  you discovery. And we are entitled to that discovery and to
15  show that it is part of the manufacturing process for
16  manufacturing the products that then flow into the United
17  States.
18      THE COURT: Mr. Kelley.
19      MR. KELLEY: Your Honor, if I may finish my
20  point. The case makes it absolutely clear that there has to
21  be a physical good produced under this process. What their
22  claim process produces is a -- a net list, that is then used
23  to produce -- it is sent off to a foundry that actually
24  produces the devices. It is not used in the process of
25  manufacturing the goods. The Federal Circuit decision make

## Page 65

1  it quite clear that the process set out has to talk about the
2  actual process, the mechanical physical process of creating
3  the thing that is going to be imported.
4      THE COURT: Let's see if your opponent agrees
5  with that statement. Do you agree that the case stands for
6  that proposition, counsel?
7      MR. HOFFMAN: No, I don't, Your Honor. The case
8  stands for the proposition -- that is why I read a portion --
9  it stands for the proposition that when all that is
10  determined by the process is a piece of information that is
11  never used in the manufacturing operation, has nothing to
12  do with manufacturing a product, it is just determining
13  information, that that is not covered by 271.
14      What we have here in this case is one or a series
15  of the steps, the initial steps in designing a product that
16  is -- as part of the manufacturing operation, design and
17  operation, the manufacturing of a product that is imported
18  into the United States. That is very different. That is not
19  what the Bayer case is dealing with.
20      THE COURT: Counsel for Matrox.
21      MR. KELLEY: If I am correct about this, then we
22  don't have to have half of the discovery in this case, and if
23  Mr. Meilman is correct, then we do. What I propose is we
24  brief this question because we are having lawyer argument.
25      THE COURT: What I am going to do first is read

## Page 66

1  Bayer. That might be of some assistance to this issue. Let
2  me take a look. If I feel I need further elucidation on this
3  subject, I will let you further address it in some fashion,
4  whether it be in the form of some limited briefing or further
5  discussion, I don't know exactly at this point. But we will
6  defer No. 8 while the Court takes an opportunity to read the
7  case.
8      MR. HOFFMAN: In the interim, Your Honor, if we
9  can begin to sort out discovery issues with the defendants,
10  with Matrox on this issue, so at least we can resolve the
11  scope and other issues so we can begin to get discovery from
12  them.
13      MR. KELLEY: We are in fact going forward with
14  discovery. We are in the process of collecting that
15  information about where we do our design work and the general
16  design flow stuff. I am not sure what more he wanted. He
17  wanted the same sort of discovery for Matrox that we had for
18  the other defendants.
19      MR. HOFFMAN: Yes, Your Honor.
20      MR. KELLEY: It seems to me it will take -- I
21  understand the Court has a busy schedule. But he seems to be
22  asking that we do this very discovery that I am suggesting
23  could be avoided.
24      THE COURT: I think that is correct. What I am
25  going to order is. as far as the Matrox defendants are

## Page 67

1  concerned, we are going to defer engaging that process. Mr.
2  Hoffman, for a brief period of time, while I take a look at
3  the case, if necessary, get the benefit of further thoughts
4  from counsel.
5      Let's deal with No. 6. Have we dealt with No.
6  6?
7      MR. MEILMAN: Your Honor, just, we use the term
8  Matrox defendants. One of the Matrox defendants was Matrox
9  Tech, which had a plant and was doing work in Florida. I
10  take it that as far as their objections as to activity in
11  Canada, Your Honor's order does not apply to Matrox Tech.
12      THE COURT: Are we in agreement with that?
13      MR. KELLEY: Yes, Your Honor. We are in the
14  process of collecting those documents for that work like we
15  are doing for every other -- the other non-Matrox defendants.
16      THE COURT: Then we are in agreement, counsel.
17      MR. MEILMAN: Thank you, Your Honor.
18      MR. HOFFMAN: Your Honor, since it may help avoid
19  a future dispute or arguments, Mr. Kelley has indicated they
20  are collecting documents. Does he have a date by which he
21  believes they will be produced?
22      THE COURT: Mr. Kelley?
23      MR. KELLEY: We are doing a rolling production.
24  We are getting stuff as quickly as we can get it. We
25  produced documents just a few days ago.

## Page 68

1      MR. HOFFMAN: Will we have all of them produced
2  by mid-September, Mr. Kelley?
3      MR. KELLEY: I would hope so.
4      THE COURT: No. 6, what do we have left with
5  regard to No. 6?
6      MR. KELLEY: We would like to take that off.
7      THE COURT: That is fine with the Court,
8  counsel. You don't need to explain.
9      Counsel, I will take a look at the Bayer case.
10  You will hear from me one way or the other shortly.
11      (Counsel say "thank you.")
12      THE COURT: Take care.
13      (Teleconference concluded at 12:40 p.m.)
14          - - -
15  Reporter: Kevin Maurer
16
17
18
19
20
21
22
23
24
25

CondenseIt™                                                           -and - cage

**-and** [2] 1:19      2:3
**00** [1]    1:13
**03-103-GMS** [1]
1:10
**1** [4]     3:8      3:9
41:3    51:18
**10** [1]    26:25
**100** [2]  33:17    40:15
**11** [1]    1:13
**12** [4]   15:20    16:3
18:9    68:13
**14** [2]   6:24     15:20
**14th** [1] 4:25
**15** [1]   16:2
**16** [2]   55:13    55:24
**17** [2]   6:6      12:11
**1996** [1] 44:14
**2** [7]    3:4      7:17
9:8     10:1     10:2
12:2    38:22
**20** [2]   16:2     44:5
**2000** [1] 56:24
**2003** [5] 1:13     9:8
31:9    31:9     51:20
**21st** [1] 6:6
**22** [1]   12:12
**23rd** [1] 6:12
**25th** [1] 32:18
**26th** [2] 31:8     32:18
**271** [6]  57:4     58:15
63:1    63:21    64:6
65:13
**28** [1]   1:13
**28th** [1] 16:12
**3** [3]    3:4      47:23
47:24
**30** [2]   29:14    51:20
**30th** [10] 5:2     8:1
8:15    11:4     12:4
13:22   31:6     31:9
32:5    32:18
**31st** [7] 3:12     4:7
7:17    8:23     9:1
26:23   26:24
**34-day** [1]         32:20
**35** [1]   57:4
**40** [1]   68:13
**5** [8]    3:5      38:23
38:25   40:22    55:8
58:21   58:21    61:7
**6** [6]    3:4      9:8
67:5    67:6     68:4
68:5
**7** [3]    3:5      55:11
61:7
**8** [6]    3:4      12:20
51:18   62:10    62:11
66:6
**9** [2]    12:11
**a.m** [1]  12:11
**able** [2] 23:1     44:10
**absolutely** [3]    46:4
64:4    64:24
**accept** [5]        40:7

**48:12     48:12    48:15
49:22
**acceptable** [4]    27:2
40:12   45:25    60:1
**accordance** [1]   49:10
**according** [1]    5:20
**accounting** [1]   53:4
**accounts** [1]     44:4
**accurate** [1]     15:17
**acknowledged** [1]
12:22
**action** [4]        1:4
34:19   34:22    37:13
**activator** [1]    63:16
**activities** [1]   33:23
**activity** [1]     67:10
**actual** [4]        14:24
21:8    64:8     65:2
**additional** [6]    8:24
8:24    25:6     32:6
51:11   57:2
**address** [7]       23:1
30:5    35:21    37:18
46:2    62:18    66:3
**addressed** [1]    64:5
**admissible** [1]   52:1
**admitted** [1]     38:16
**advance** [1]      49:15
**advancing** [1]    61:12
**adversarial** [1]  43:19
**advisable** [1]    7:20
**AEROFLEX** [1]
1:7
**again** [2]         14:18
58:20
**agenda** [1]       2:25
**ago** [4]   11:5     11:5
59:15   67:25
**agree** [8] 18:12   32:13
35:3    41:3     41:11
41:12   52:24    65:5
54:10
**agreed** [8]        40:4
41:5    41:6     48:5
53:18   53:22    54:8
**agreement** [11]   19:5
19:6    19:6     19:7
40:24   41:1     43:23
60:19   60:22    67:12
67:16
**agrees** [2]        24:22
65:4
**ahead** [5]         12:9
13:12   18:15    52:11
53:18
**aided** [1]        56:3
**allegation** [1]   63:10
**allegations** [1]  39:15
**allege** [1]       43:4
43:4
**allegedly** [1]    37:5
**alleging** [1]     44:19
**allow** [1]        27:21
**allowed** [1]      21:18

**alone** [1]         44:3
**alternate** [4]    42:13
43:14   45:21    58:10
**always** [1]       45:11
**AMI** [1]   1:7
**among** [1]        27:11
**amongst** [1]      9:24
**amount** [1]       9:19
**ancillary** [1]    21:11
**answer** [4]        26:17
49:17   57:23    58:2
**answering** [1]    24:17
**answers** [1]      39:14
**anyway** [5]        16:8
22:13   24:2     24:20
24:23
**apologize** [2]    31:4
41:24
**apparent** [2]     23:9
43:20
**appear** [4]        48:17
50:9    50:14    50:23
**APPEARANCES** [2]
1:17    2:1
**applicable** [1]   57:25
**application** [1]  56:4
**apply** [1]        63:1
67:11
**appreciate** [2]   18:16
62:4
**approach** [1]     58:3
**appropriate** [18]
7:22    13:9     13:18
13:18   13:18    14:14
14:19   14:25    15:1
19:24   20:3     20:7
20:20   20:23    22:22
22:23   32:11    45:19
**appropriately** [1]
34:23   35:15    43:4
**area** [1]  45:11
**argue** [1]        46:18
**arguing** [3]      2:24
2:25    3:3
**argument** [2]     2:22
65:24
**arguments** [2]    53:10
67:19
**Arnold** [1]       2:5
**art** [11]  17:2    17:17
17:21   18:2     18:4
18:10   18:10    21:23
30:6    33:16    53:14
**articles** [1]     53:14
**articulated** [1]  25:15
**ASIC** [1]  39:2
39:20   40:10    52:5
52:3    54:10    54:11
54:16   56:5     58:23
60:13
**ASICs** [5]         56:7
60:6    60:6     60:8
60:12
**asks** [1]  54:9

**aspect** [3]        12:12
17:23   42:7
**aspects** [1]      17:20
18:6
**assertion** [1]    24:18
**asserts** [1]      12:1
**assignment** [1]   15:23
**assistance** [1]   66:1
**assume** [1]       49:1
**assumed** [1]      5:18
**assuming** [1]     48:22
**attack** [1]       46:24
**attained** [1]     38:7
**attempted** [1]    49:20
**attorney** [6]     8:3
8:3     9:24     11:22
27:16   28:6
**attorney-client** [2]
4:12    9:4
**attorneys** [5]    9:24
11:20   27:11    27:12
36:11
**attorneys'** [1]   45:19
**August** [2]        1:13
4:25    9:8      26:24
**author** [1]       27:16
**available** [9]    7:20
34:7    36:20    36:24
43:2    48:6     49:10
51:10   57:9
**avoid** [1]        67:18
**avoided** [1]      66:23
**aware** [2]        7:18
35:24
**away** [1] 13:16
**B** [1]     51:18
**back-door** [1]    46:24
**backtracked** [1] 56:18
**ball** [1]  40:25
**based** [4]         14:12
16:22   24:6     26:11
**basic** [1] 34:3
**basics** [1]       34:2
**basis** [23]        4:12
4:20    4:23     7:9
7:11    7:12     9:4
10:6    10:22    13:25
25:22   26:16    28:1
35:5    35:13    36:1
38:3    38:17    39:14
39:24   41:25    52:3
63:9
**batting** [1]      40:25
**Bayer** [5]         46:9
64:3    65:19    66:1
68:9
**bearing** [1]      54:3
**became** [1]       9:1
**become** [2]       17:5
38:24
**beef** [1]  46:9
**beforehand** [1]   19:18
**begin** [1]        66:9
66:11

**behalf** [2]        3:2
3:25
**Behavioral** [5]   43:24
34:8    41:4     42:22
44:2
**belief** [3]        29:10
29:11   50:3
**believes** [1]     22:23
61:5    67:21
**benefit** [1]      67:3
**better** [2]        36:7
61:5
**between** [13]     3:10
4:17    6:9      7:25
8:13    9:18     9:24
12:25   13:5     16:6
23:12   24:6     61:8
**beyond** [3]        3:25
4:8     13:24
**bit** [2]   16:22    38:23
**Bob** [1]   2:11
**body** [2] 45:15
**boiling** [1]      63:11
**booked** [1]       49:3
**bottom** [1]       16:17
**Bove** [2] 2:2      2:20
**brand-new** [1]    9:11
**breadth** [2]      37:19
37:20   58:7
**break** [3]         19:5
27:20   27:21
**breaking** [1]     62:23
**bridge** [1]       55:3
**brief** [2] 65:24   67:2
**briefing** [1]     66:4
**briefly** [2]      38:15
62:18
**bring** [3] 43:4    48:20
49:12
**broad** [3]         40:19
46:25   59:2
**broadening** [1]  60:20
**broken** [1]       37:25
**Brothers** [31]    12:1
2:15    3:13     3:19
3:19    3:23     4:5
4:5     4:6      12:10
12:10   14:8     14:21
15:10   15:17    16:9
16:11   19:25    21:4
24:4    24:5     24:14
24:21   25:1     25:7
25:9    25:23    25:25
28:12   32:4     32:17
**bugs** [1]  59:24
**bulletins** [1]    39:4
**burden** [3]       41:20
41:22   41:23
**burdensome** [2]   51:25
52:3
**busy** [1]  66:21
**CAD** [2] 59:5      59:7
**Cadence** [1]      31:2
**Cadence's** [1]    58:2
**cage** [1]  15:25

calculated [1]        52:1
California [5]        2:5
2:20    34:19    35:2
37:11
calls [1]  6:9
camera [10]          4:13
4:20    10:8    10:20
10:20  10:24  12:18
13:25  17:24  28:2
Canada [5]           57:1
62:7   62:16  62:22
67:11
cannot [3]           18:7
19:3   43:16
capability [1]       43:24
capture [2]          31:13
31:24
care [1]  68:12
careful [1]          15:2
carpet [1]           13:15
carried [1]          63:7
carry [1] 57:3
cart [1]  44:21
case [36] 5:19       6:1
6:4    17:9   18:11
20:18  22:3   23:18
24:15  27:24  37:11
37:11  38:6   39:9
39:16  41:20  41:21
43:3   43:4   43:7
44:22  46:11  46:21
47:2   51:22  63:12
64:3   64:20  65:5
65:7   65:14  65:19
65:22  66:7   67:3
68:9
cases [1]45:10
categories [10]      6:16
6:19   33:15  52:7
52:10  52:15  52:18
53:1   53:16  60:10
category [2]         22:20
63:20
cautious [1]         13:7
cells [4] 39:18      40:9
42:3   54:6
certain [3]          22:2
29:8   42:1
certainly [2]        24:21
51:13
cetera [4]           10:5
10:5   39:5   39:6
challenge [1]        21:5
challenges [1]       51:8
change [1]           19:4
charge [1]           63:10
charged [1]          36:3
charging [1]         36:1
chart [1] 44:19
checking [1]         19:20
Chinese [1]          22:3
chip [2] 39:20       47:17
chose [4]            19:12
19:15  19:16  19:17
Chris [2]            2:21

46:2
Christopher [2] 2:4
11:2
Circuit [3]          27:23
64:5   64:25
circuits [1]         56:4
Civil [1] 1:4
claim [7]            10:23
42:19  44:19  59:25
62:21  63:14  64:22
claimed [2]          54:17
64:7
claims [2]           45:22
60:13
clarification [1]
24:3
clarify [3]          17:10
23:22  23:23
clarifying [1]       24:17
classifications [1]
53:5
clause [3]           9:11
9:14   12:1
clear [9] 3:20       8:2
23:17  27:4   31:7
32:4   64:4   64:20
65:1
clearly [4]          4:21
20:5   35:10  63:21
cliche [1]           20:22
client [1]           17:15
clients [1]          9:24
close [3] 28:3       48:24
50:24
closed [1]           56:23
co-counsel [1]       2:15
colleague [1]        2:13
collected [1]        13:20
collecting [4]       53:11
66:14  67:14  67:20
coming [1]           20:10
26:15  30:20
comment [1]          28:22
comments [1]         32:10
commitment [2]
48:14  61:14
communicated [1]
23:16  31:20
communication [1]
27:14  27:15
communications [29]
4:9    4:19   6:7
8:17   9:10   9:13
9:22   9:23   10:10
10:17  12:2   12:15
12:23  12:25  13:24
13:25  16:19  17:13
17:15  18:20  20:14
20:15  22:8   24:10
31:13  31:22  31:24
32:19  32:22
companies [1]        57:21
company [1]          1:4
45:8   59:13
compare [1]          17:2

Compiler [34]        33:23
33:24  34:6   34:8
34:24  35:24  36:4
39:17  39:18  40:7
40:8   41:4   41:4
42:2   42:2   42:22
42:22  44:2   44:3
44:3   44:6   44:18
45:5   46:19  46:21
47:12  47:13  47:14
54:1   54:5   54:6
56:15  56:16  57:17
complain [1]         19:20
complained [2]       19:8
35:17
complaining [1]
23:24
complaint [1]        26:4
41:23  53:8
complete [2]         5:3
51:12
completely [2]       10:13
49:3
complicating [1]
51:5
comport [1]          12:8
computer [1]         56:3
computer-aided [1]
56:7   57:14
conception [1]       58:22
concern [5]          4:24
5:3    17:10  17:22
21:3
concerned [1]        67:1
concerning [2]       39:1
58:22
concluded [1]        68:13
conduct [1]          17:4
conference [17] 1:14
4:1    6:12   11:4
13:21  31:6   31:25
32:3   32:5   32:6
32:22  33:11  34:21
55:13  55:24  55:25
56:5
confidential [39]
5:25   6:10   6:14
6:19   7:15   8:5
8:9    11:7   11:11
11:18  11:22  13:3
13:13  14:11  19:9
19:10  21:18  23:15
23:25  24:19  24:22
24:24  25:2   25:20
26:3   26:20  28:7
28:19  28:25  34:9
34:11  35:6   36:13
37:3   38:12  41:12
42:15  44:12  61:21
confidentiality [2]
41:18  41:19
conflict [1]         19:2
confused [2]         27:7
28:7
confusion [1]        25:16
connection [1]       46:15
Connolly [2]         2:2
2:19

consequently [4]
19:2   34:18  42:23
50:11
consider [1]         4:1
considerations [2]
41:19
construction [1]
55:22
Consulate [1]        49:5
consulates [1]       49:3
consultations [1]
16:24
consulted [1]        24:1
26:14
consulting [17]  5:12
7:5    7:8    7:15
13:14  14:16  15:15
16:14  16:18  17:3
18:9   19:1   19:5
19:7   19:14  21:20
26:18
contact [2]          18:22
49:20
contacted [1]        18:25
contains [1]         45:3
contend [1]          39:12
contents [1]         25:13
continue [3]         4:5
22:14  24:8
continued [3]        2:1
14:12  26:11
continues [1]        4:11
contract [3]         5:11
5:12   5:21
contradicted [1]
5:1
contradiction [1]
7:25
contrary [1]         19:18
23:18
conversation [6]
11:19  12:9   25:13
26:2   26:10  55:6
conversations [1]
16:6
convinced [1]        11:10
cooperate [9]        45:17
48:16  48:23  49:9
50:2   50:4   50:4
50:9   50:22
cooperation [1] 43:20
copy [1] 12:10
Corbin [33]          2:3
2:21   17:8   18:14
22:9   22:11  22:24
23:1   23:8   23:22
23:24  25:3   25:14
25:16  27:4   29:19
29:22  30:3   30:4
30:24  31:10  31:13
32:14  32:21  32:25
33:9   34:21  44:1
44:25  46:2   54:22
54:25  55:2
Corbin's [1]         24:17
core [1] 39:2

consequently [4]
CORP [1]             1:9
correct [7]          30:3
30:9   32:24  42:9
65:21  65:23  66:24
correctly [1]        15:8
correspondence [1]
27:12
counsel [57]         1:23
2:6    2:10   4:8
4:18   5:6    5:12
5:14   5:17   6:15
6:17   7:15   8:19
8:23   9:9    9:19
10:11  11:15  11:17
13:1   13:4   13:14
14:5   14:16  15:10
16:19  16:24  17:4
17:8   18:13  22:10
25:15  26:14  38:11
40:11  40:12  41:10
43:18  45:9   45:16
49:18  50:17  54:21
55:6   60:24  61:7
61:14  62:2   62:23
64:1   65:6   65:20
67:4   67:16  68:8
68:9   68:11
counsel's [1]        64:1
couple [1]           6:15
course [5]           9:25
10:18  46:6   46:18
48:22
Court [164]          1:1
2:10   2:17   2:22
3:6    3:11   3:16
3:18   3:21   4:5
4:13   4:20   5:7
7:16   7:18   7:21
7:23   8:19   9:3
9:6    11:25  12:4
14:1   14:5   14:18
14:22  14:25  15:7
16:9   16:13  17:24
17:24  18:12  18:15
19:23  20:7   20:9
20:13  20:24  21:16
22:10  22:15  22:16
22:20  22:20  22:22
22:24  23:3   23:4
23:7   23:7   23:9
23:20  23:23  24:3
24:14  24:24  25:5
25:14  25:22  27:2
27:18  27:23  28:10
28:18  28:21  28:22
29:3   29:4   29:8
29:10  29:12  29:13
29:13  29:18  29:20
29:24  30:3   30:7
30:22  31:5   31:6
31:10  31:15  31:16
32:1   32:13  32:22
32:23  32:24  33:2
33:5   33:8   33:10
33:20  34:22  35:14
35:25  36:2   37:10
37:14  37:23  38:21
40:11  40:16  40:23
41:9   41:16  41:22
42:11  43:11  43:17
44:4   44:8   44:21
45:9   46:7   47:18

47:19    48:2    49:7
49:14    49:17    50:16
51:3    51:7    51:10
52:24    54:18    54:24
55:2    55:12    55:24
58:8    58:12    60:1
60:18    60:24    61:3
61:18    61:23    62:2
62:5    62:11    62:12
62:17    62:19    62:23
63:5    64:1    64:18
65:4    65:20    65:25
66:6    66:21    66:24
67:12    67:16    67:22
68:4    68:7    68:7
68:12

**Court's** [1]    18:16

**cover** [2]    9:21
10:15

**covered** [1]    65:13

**covers** [1]    63:21

**craft** [1] 45:17

**crafted** [1]    39:8

**create** [4]    19:11
19:21    29:11    39:18

**created** [1]    19:21
21:21

**creating** [1]    65:2

**creation** [1]    20:6

**credibility** [4]    20:17
20:17    21:6    21:6

**crime/fraud** [3] 27:22
28:11    28:13

**critical** [3]    14:3
38:6    38:13

**cross-purposes** [1]
23:10

**culled** [1]    17:12

**current** [2]    56:12
64:2

**customers** [2]    45:5
46:24

**cut** [1]    38:19

**cutoff** [3]    30:2

**D.C** [1]    1:22

**databases** [1]    39:2

**date** [14] 18:21    29:5
30:20    31:5    32:7
32:15    33:15    39:14
50:20    50:22    51:3
51:14    60:16    67:20

**dated** [1]    51:19

**dates** [1] 36:22

**days** [8] 8:6    11:8
26:25    32:1    53:20
54:11    59:15    67:25

**deadline** [1]    49:8

**deal** [5]    42:1    51:13
54:19    58:15    67:5

**dealing** [1]    65:19

**dealt** [2] 18:19    67:5

**debate** [1]    12:7

**debugging** [1]    60:8

**decide** [1]    44:20
44:22    55:23

**decided** [1]    19:4

**decision** [3]    14:21
37:8    64:25

**declaration** [2] 11:2
11:3

**deep** [1] 20:5

**defendant** [1]    16:20

**defendants** [58] 1:10
2:6    2:18    3:15
3:25    4:8    4:14
4:18    7:1    8:16
9:9    11:17    11:20
12:14    13:1    15:10
17:4    17:9    18:24
22:17    24:8    33:20
34:12    34:24    35:8
36:6    36:7    36:10
39:16    39:23    42:18
46:10    46:21    47:3
47:13    50:6    51:15
51:24    52:2    52:4
52:14    52:16    54:15
55:15    56:13    56:21
57:1    57:2    57:16
58:10    61:14    61:19
66:9    66:18    66:25
67:8    67:8    67:15

**defendants'** [6] 33:21
33:22    51:19    52:5
52:24    58:23

**defer** [2] 66:6    67:1

**deference** [1]    15:17

**defined** [1]    41:10

**definition** [2]    56:2
57:12

**Delaware** [4]    1:2
1:12    33:8    37:13

**depose** [1]    49:15

**deposed** [2]    4:25
51:6

**deposition** [27]    6:13
7:3    8:1    11:6
13:12    14:13    15:13
15:19    15:22    16:5
16:15    23:14    25:17
26:13    28:5    28:24
32:15    48:6    48:21
48:22    48:25    49:12
49:24    50:10    50:15
51:12    57:10

**depositions** [1] 49:1

**describe** [2]    40:6
40:7    40:8

**described** [6]    6:18
9:22    9:23    27:8
40:11    54:13

**describing** [2] 42:5
42:7    53:15    59:10
59:20

**design** [43]    33:23
34:5    34:8    35:24
36:4    39:2    39:17
39:18    40:7    40:8
40:10    41:4    42:1
42:2    42:21    44:2
44:3    44:6    44:18
45:5    46:19    46:21
47:12    47:13    47:14
53:2    53:25    54:5

54:6    56:3    56:7
56:15    56:16    56:22
57:9    57:14    59:24
58:22    59:4    59:24
65:16    66:15    66:16

**designing** [4]    60:6
60:11    60:14    65:15

**detail** [1]    38:17
42:5    53:9

**detailed** [1]    4:14
44:19    52:3

**details** [6]    12:21
35:10    43:2    44:18
56:12    56:19

**determination** [9]
13:9    14:2    14:3
14:6    14:8    14:24
14:19    15:1    63:19

**determine** [1]    62:20
62:22    63:2
64:14    64:14    65:22
66:9    66:11    66:14
66:17    66:22

**determined** [1]    65:10

**determines** [1]    48:23

**determining** [3] 63:15
63:18    65:12

**developed** [6]    7:14
15:14    15:24    17:16
18:4    53:24

**development** [5]
17:21    53:3    56:8
56:13    58:22

**device** [1]    64:8

**devices** [2]    61:7
64:24

**different** [3]    60:18
63:13    65:18

**difficult** [3]    17:6
43:19    50:18

**DiGiovanni** [22]
2:2    2:19    2:19
2:24    3:13    3:17
3:24    7:23    7:24
9:5    9:7    11:25
13:10    15:16    16:23
17:12    27:4    27:6
27:19    30:11    30:25
31:11

**DiGiovanni's** [1]
12:8

**diligently** [1]    61:15

**directed** [1]    56:3

**directly** [1]    17:3
36:7    38:6

**disagree** [1]    64:1
64:12

**disagreement** [1]
43:21

**disclose** [7]    4:8
8:16    9:10    9:10
9:13    10:9    12:14

**disclosed** [2]    5:16
10:15

**disclosure** [9]    17:12
51:19    52:8    52:9

52:23    53:7    54:23
57:6    57:13

**disclosures** [1] 54:20

**discover** [1]    18:8
33:18

**discoverability** [1]
43:22

**discoverable** [1]
43:12

**discovery** [36]    34:22
34:23    34:25    37:8
37:9    37:12    39:8
44:23    46:12    46:25
47:3    48:8    48:16
48:25    50:24    50:25
51:4    51:9    51:14
51:25    52:1    52:3
55:25    57:15    62:16
62:20    62:22    63:2
64:14    64:14    65:22
66:9    66:11    66:14
66:17    66:22

**discrete** [2]    41:7
42:12

**discuss** [1]    47:20

**discussed** [4]    6:1
12:21    21:1    31:20

**discussing** [1]    58:19

**discussion** [6]    12:3
45:24    47:5    55:10
61:6    66:5

**discussions** [3] 31:21
42:20    42:20

**disingenuous** [1]
36:4

**dismiss** [1]    33:22

**dispute** [3]    52:16
58:4    67:19

**disqualification** [4]
7:19    20:1    20:2
21:10

**disqualified** [4] 14:20
15:3    21:2    22:6

**disqualify** [3]    11:15
13:8    22:4

**DISTRICT** [2]    1:1
1:2

**doctrine** [1]    4:12

**document** [28]    18:20
25:20    29:23    37:20
37:20    38:1    38:9
38:9    38:12    38:13
38:18    38:19    38:22
39:21    40:3    51:17
52:2    54:8    54:11
54:15    55:10    55:14
57:11    58:5    58:15
58:19    58:21    59:19

**documentation** [3]
18:1    23:12    42:4

**documents** [118]
4:10    4:11    4:16
5:9    8:12    8:18
9:4    9:15    10:2
10:3    10:4    10:4
10:6    10:11    10:14
10:20    10:22    12:16
12:17    14:6    14:9

14:10    14:23    14:24
20:8    20:10    22:13
22:18    22:19    23:14
25:11    25:17    26:8
26:22    27:1    27:8
27:9    27:10    27:11
27:17    28:1    29:5
29:9    29:15    29:25
30:5    30:8    30:13
31:1    33:13    33:17
34:7    34:11    34:16
35:2    35:6    35:17
36:6    36:10    36:13
36:17    36:18    36:20
36:21    36:22    36:24
37:3    38:3    39:1
39:25    40:1    40:15
40:4    40:4    40:15
41:4    41:4    41:7
41:8    42:7    42:12
42:15    44:6    44:14
44:15    49:25    51:16
51:17    51:21    51:23
52:6    52:7    52:10
52:15    52:17    52:22
53:5    53:13    53:23
54:2    54:3    54:9
54:16    55:1    55:17
57:20    57:24    58:20
58:22    59:20    60:5
60:17    61:17    61:21
62:1    67:14    67:20
67:25

**doesn't** [5]    10:19
10:23    16:3    37:18
53:9

**done** [10]    9:17
10:21    19:12    29:18
47:12    52:10    57:1
62:22    63:2    63:3

**door** [1]    21:19

**doubt** [1]    27:16

**down** [2]    58:4
63:11

**Dr** [94]    4:9    4:10
4:17    4:25    5:10
5:8    5:10    5:10
5:12    5:17    5:18
5:20    5:22    5:24
6:2    6:5    6:10
6:13    6:18    7:1
7:6    7:7    7:11
8:2    8:3    8:6
8:1    8:1    8:0
8:13    8:17    9:11
9:13    9:15    9:17
10:10    10:12    10:16
11:9    11:16    11:18
12:15    12:23    12:25
13:3    13:5    13:11
13:24    14:11    14:16
15:5    15:8    15:19
16:7    16:13    16:16
16:20    16:24    17:5
17:14    17:16    18:3
18:21    18:22    18:25
19:2    19:13    23:13
23:13    23:15    24:8
24:25    25:1    25:12
26:9    26:11    26:18
27:16    27:13    27:14
28:5    28:18    28:23
28:24    29:5    29:23

CondenseIt™

drafted - Hoffman

30:14    30:17    31:1
31:19    31:20    31:22
32:7    32:9    32:10
32:19    50:12

**drafted** [2]    46:14
54:23

**drawing** [1]    25:22

**dribbled** [1]    55:18

**drop** [1] 32:1

**drop-dead** [3]    50:20
51:3    51:14

**dropping** [1]    13:11

**due** [1]    15:17

**duplication** [1] 34:18

**during** [11]    5:1
5:7    5:24    6:17
24:7    26:2    28:24
34:21    48:8    48:17
55:24

**e-mail** [11]    8:7
8:10    16:13    19:1
23:11    26:4    26:6
26:12    27:12    27:14
32:8

**e-mails** [12]    4:17
6:9    6:12    6:21
8:10    8:11    9:18
9:20    9:22    23:6
31:2    32:6

**early** [2] 30:17    48:8

**earnest** [1]    58:19

**easily** [1]    18:19

**Ed** [1]    2:14

**EDWARD** [1]    1:20

**eight** [1] 52:15

**either** [6]    31:15
31:17    49:2    49:10
50:22    52:10

**elected** [1]    24:23
46:23

**ELECTRONIC** [1]
1:8

**elucidation** [1] 66:2

**embassy** [3]    49:2
49:3    49:12

**employed** [1]    50:13

**enable** [2]    45:18
45:22

**encourage** [1]    19:5

**end** [6]    11:13    13:11
47:15    51:2    51:3
61:16

**engage** [1]    12:6

**engaged** [2]    19:18
19:19

**engaging** [1]    67:1

**engineering** [7] 38:1
38:9    40:1    42:7
44:6    59:10    59:23

**entered** [2]    3:11
12:4

**entire** [1]    8:12

**entirely** [1]    63:13

**entitled** [12]    16:5
18:8    21:5    39:25

43:6    52:21    58:6
58:11    62:15    63:25
64:13    64:14

**equipment** [4]    56:9
57:22    58:1    58:2

Eric [2]    2:4    2:21

**especially** [1]    28:4

**ESQ** [9]    1:18    1:18
1:20    1:20    1:21
2:2    2:3    2:4
2:4

**essence** [6]    26:13
34:21    34:25    37:7
40:18    55:21

**essentially** [1]    18:11

**establish** [1]    43:6

**established** [1] 27:24

**establishing** [1] 28:4

**estimate** [1]    23:5

**et** [4]    10:5    10:5
39:5    39:6

**event** [2]    10:23
26:21

**eventually** [1]    20:11

**everybody** [1]    24:22

**everyone's** [1]    21:22

**evidence** [6]    11:16
17:1    25:19    26:1
38:5    52:1

**exact** [2] 10:14    64:5

**exactly** [7]    40:7
42:5    44:18    47:9
48:10    60:10    66:5

**example** [5]    5:4
21:16    27:22

**examples** [1]    58:24

**except** [1]    47:13

**exception** [4]    27:20
27:23    28:11    28:13

**exchange** [4]    23:11
23:12    25:20    26:12

Excluding [1]    32:21

**exclusive** [1]    47:4

**exclusively** [1] 47:11

**exercise** [1]    40:5

**expect** [1]    39:9

**expectation** [1] 7:9

**expecting** [1]    11:13

**expedition** [1] 39:25

**experience** [1]    45:10

**expert** [8]    5:17
5:18    7:2    11:9
11:13    15:12    16:14
42:20

**experts** [1]    5:16

**explain** [1]    68:8

**explained** [1]    35:18

**explanation** [1] 34:3

**explicitly** [1]    5:24

**extended** [1]    12:7

**extent** [4]    22:24
24:11    32:8    47:1

**extraordinarily** [1]
45:12

**extraordinary** [1]
54:21

**eyes** [1]    45:19

**facie** [1] 27:24

**facilities** [1]    48:25

**facing** [1]    48:24

**fact** [17]    5:9    11:18
14:11    16:2    16:23
17:16    18:2    18:8
21:6    24:24    25:2
26:1    28:22    34:1
35:22    53:12    66:13

**factor** [1]    51:5

**facts** [2] 15:4    18:7
23:18

**factual** [1]    13:20

**fairly** [1]    48:8

**fall** [1]    64:6

**familiar** [2]    21:23
49:1

**far** [7]    33:15    49:25
56:18    58:6    59:6
66:25    67:10

**fashion** [4]    21:14
22:22    45:23    66:3

**fashioned** [1]    19:24
20:23

**favorable** [3]    7:7
7:14    26:15

**Federal** [2]    64:5
64:25

**fell** [1]    52:18

**few** [7]    27:8    30:8
32:1    53:20    54:11
59:15    67:25

**fight** [1] 58:17

**fighting** [1]    59:14

**file** [5]    7:18    26:24
54:7    62:12    62:13

**filed** [1] 5:6

**filters** [1]    58:4

**final** [2] 48:15    49:8
50:25

**finally** [1]    19:20

**financial** [1]    8:8

**finder** [1]    21:6

**fine** [3]    36:23    51:1
68:7

**Fineman** [2]    1:18
2:13

**finer** [1] 61:2

**Finger** [1]    1:19

**finish** [2]    55:5
64:19

**firm** [18] 4:17    5:4
5:11    5:19    6:10
6:22    13:2    13:8
13:22    14:19    15:3
16:13    21:2    21:10
22:5    22:5    22:17
26:22

**first** [23] 2:24    3:3
6:6    7:24    9:8
12:24    14:9    16:12
17:18    18:18    18:22

20:4    26:1    28:16
34:16    36:9    39:16
40:14    54:9    54:18
58:16    59:6    65:25

**fishing** [1]    39:25

**five** [1]    11:20

**five-minute** [1] 8:4

**flat** [1]    46:22

**flexible** [1]    51:10

**Florida** [2]    56:22
67:9

**flow** [3] 63:22    64:16
66:16

**flowing** [1]    17:3

**flurry** [2]    6:9
6:17

**focus** [1]    38:13

**follow** [1]    27:3

**following** [1]    26:4
26:12

**followup** [3]    6:12
7:18    26:4

**force** [1] 50:9

**foreign** [1]    57:3

**forgive** [1]    50:21

**form** [1] 66:4

**formally** [1]    48:12

**format** [1]    63:11

**formed** [4]    7:8
15:20    16:25    21:19

**forms** [1]    21:14

**formulated** [1] 59:11

**forth** [9] 8:13    8:19
9:18    12:16    12:25
27:10    33:21    34:3
40:25

**forward** [10]    7:3
7:10    15:13    19:16
30:20    34:24    35:1
45:14    48:7    66:13

**forwarded** [1]    32:9

**found** [2]    6:8
19:17

**foundation** [1] 28:17

**foundry** [1]    64:23

**four** [1]    58:18

**FRANCIS** [1]    2:2

**Frank** [1]    2:19

**frankly** [2]    61:4
61:5

**fraud** [1]    29:11

**Friday** [1]    56:11

**front** [2] 12:5    12:11

**fruits** [1]    20:21

**full** [1]    7:22

**fully** [3] 11:13    35:24
43:2

**functions** [1]    42:6

**future** [1]    67:19

**g** [4]    57:4    58:15
63:1    64:6

**Gary** [2] 1:20    2:14

**gather** [1]    17:25

**general** [6]    26:8
33:18    34:4    57:20
60:21    66:15

**generally** [1]    57:25

**generic** [1]    53:2
53:5

**genesis** [1]    17:18

**gist** [1]    53:4

**given** [6]    9:13
5:15    7:11    40:6
48:24    62:2

**goes** [6] 10:4    12:2
20:22    39:3    58:7
58:24

**gone** [4] 8:18    12:16
25:5    50:2

**good** [6] 2:10    2:11
2:17    19:15    59:12
64:21

**goodbye** [1]    19:15

**goods** [1]    64:25

**grant** [1] 62:12

**granted** [1]    34:4

**GRAPHICS** [1] 1:8

**great** [2] 33:2    42:5

**GREGORY** [1] 1:16

**grounds** [1]    55:20

**grown** [1]    45:15

**guess** [2]    50:20
57:4

**half** [2]    61:3    65:22

**handful** [1]    23:6
26:22    29:25

**handle** [2]    5:22
37:14

**handling** [2]    3:5
3:4

**hardware** [1]    39:1

**hats** [1]    43:19

**hear** [3]    43:11    58:12
68:10

**heard** [5]    13:17
50:19    55:10    59:7
60:25

**hearing** [7]    5:5
5:8    5:24    62:1
24:7    32:7    32:18

**help** [2]    61:12    67:18

**hey** [1]    19:13

**hire** [1]    5:21

**hired** [3] 5:25    6:3
18:9

**history** [2]    1:23
28:17

**Hoffman** [54]    1:20
2:14    2:15    8:9
8:15    11:3    12:20
18:13    18:16    20:13
20:19    21:12    22:12
28:15    28:22    30:12
30:15    30:19    31:4
33:6    37:16    38:16
40:14    40:20    41:2
42:9    42:12    42:19
43:15    44:11    47:19

CondenseIt™      Honor - lawyer

47:24   49:19   51:1
51:15   60:3    60:21
61:10   61:19   61:25
62:3    62:9    62:15
63:6    64:10   65:7
66:8    66:19   67:2
67:18   68:1

**Honor** [82]        2:11
3:2     3:9     3:13
3:23    3:24    4:3
8:25    9:5     9:12
11:1    13:22   15:16
16:12   17:8    18:13
21:13   22:9    23:8
24:5    25:16   26:1
26:21   27:6    28:15
29:7    30:1    30:10
30:11   30:15   30:24
30:25   31:4    31:18
31:24   32:2    32:14
33:1    33:3    34:20
35:6    35:12   36:9
36:12   36:14   37:8
37:15   40:2    40:14
40:20   41:2    41:15
42:14   44:1    44:11
44:25   46:6    47:24
47:25   51:1    52:6
52:19   53:1    54:22
55:9    58:14   60:3
61:10   62:3    62:6
62:9    63:6    64:3
64:11   64:19   65:7
66:8    66:19   67:7
67:13   67:17   67:18
**Honor's** [1]       67:11
**HONORABLE** [1]
1:16
**hope** [5] 13:15    20:2
41:10   61:13   68:3
**horse** [1]         44:21
**hour** [1] 61:3
**hours** [3]         15:21
16:3    18:9
**Howrey** [40]       2:5
2:20    4:17    5:4
5:11    5:13    5:14
5:19    6:10    6:20
6:22    7:11    8:2
8:13    13:2    13:8
13:22   14:11   14:15
14:19   15:3    15:4
16:12   18:24   19:11
21:2    21:10   21:17
22:2    22:17   23:12
23:16   25:4    25:11
26:21   27:11   28:19
29:23   32:22   67:3
**Howrey's** [2]      17:14
26:11
**huge** [1] 44:7
**hundred** [1]       42:10
**hundred-percent** [1]
11:10
**Hutz** [1] 2:2
**i.e** [1] 54:12
**idea** [2] 26:17   53:7
**ideas** [1] 59:12
**identified** [10]   6:15
12:1    39:13   39:20

41:25   44:2    51:18
52:15   53:2    54:4
**identify** [3]      17:20
37:4    46:14
**imagine** [1]       22:19
**immediately** [1]
53:16
**impact** [1]        20:16
**impasse** [1]       47:21
**implicitly** [1]    50:1
**implies** [1]       52:17
**import** [1]        45:1
**important** [3]     11:1
14:15   15:23
**importantly** [1] 36:10
**imported** [3]      64:9
65:3    65:17
**in-depth** [1]      16:24
**inapplicable** [1]
57:4
**inartfully** [1]    54:23
**inaudible** [4]     39:19
42:21   56:12   59:3
**INC** [3]  1:7     1:8
1:9
**include** [4]       15:13
31:2    31:16   32:12
**included** [1]      8:24
**including** [2]     27:13
39:3
**inconsistencies** [3]
13:5    13:15   24:6
**inconsistency** [1]
5:23
**inconsistent** [5]
10:13   29:1    29:3
29:4    29:9
**INCORPORATED** [1]
1:7
**incumbent** [1] 45:16
**indeed** [1]        11:7
**indicate** [2]      34:1
34:5
**indicated** [17]    19:13
19:25   28:24   30:8
33:10   34:6    34:23
35:22   36:5    40:20
41:3    55:16   56:1
56:14   56:15   60:4
67:19
**indicating** [1]    20:8
50:1    57:8
**individuals** [1]   22:1
**indulgence** [1]    18:17
**inevitably** [1]    45:9
**inference** [1]     25:10
25:18   25:23
**information** [80]
6:1     6:2     6:11
6:14    6:17    6:19
6:25    7:21    8:5
8:6     8:7     8:8
11:7    11:8    11:11
11:16   11:18   11:21
13:3    13:9    13:20
14:11   15:6    17:3

18:1    18:5    19:9
19:10   19:22   19:23
21:18   22:2    23:4
23:15   23:25   24:25
25:2    25:20   26:3
26:20   28:6    28:9
28:19   28:25   33:19
36:13   36:14   37:3
38:5    41:12   42:15
42:17   42:23   43:3
43:5    43:6    43:21
43:22   44:12   45:2
45:3    45:6    45:8
45:11   45:12   45:18
45:23   47:10   50:7
50:8    51:25   53:11
54:9    55:17   56:23
61:21   63:19   65:10
65:13   66:15
**informed** [1]      15:11
**infringe** [2]      34:3
39:12   44:10   45:1
63:8
**infringement** [15]
34:2    35:18   35:23
36:2    36:3    38:15
39:15   41:25   46:20
47:2    53:8    55:21
63:10   63:10   63:23
**infringing** [2]    39:24
46:10
**inhibitor** [1]     63:15
**initial** [8]       51:19
52:8    52:9    52:23
53:6    54:20   54:23
65:15
**initiated** [1]     4:1
**innocent** [1]      24:10
**input** [3] 39:17   45:5
54:5
**inputs** [5]        40:7
42:1    42:2    45:4
47:14
**inputting** [1]     42:23
**inquire** [1]       15:18
16:6    28:1
**inquiry** [3]       13:19
26:3    28:8
**inside** [1]        63:9
**Insofar** [1]       41:10
**inspection** [2]    4:13
29:15
**installation** [1]  39:4
**instance** [2]      27:22
51:8
**Instead** [1]       46:23
**instructed** [1]    47:19
**integrated** [1]    56:4
**intend** [3]        15:11
15:12   48:17
**intended** [1]      12:7
**intending** [1]     46:5
**intent** [2]        24:8
31:16
**interest** [2]      33:12
43:10
**interested** [4]    30:13

40:17   40:24   45:24
**interim** [1]       66:8
**internal** [17]     4:19
6:20    9:23    13:25
17:14   18:1    18:20
25:10   26:22   27:1
29:22   30:13   31:21
31:24   32:21   42:6
46:19
**INTERNATIONAL**
[1]     1:9
**interpretation** [2]
7:17    14:4
**interrogatories** [4]
37:18   37:19   55:14
58:5
**interrogatory** [5]
39:14   46:13   54:4
55:11   57:10
**interrupt** [3]     3:14
14:18   22:10
**invalidating** [1]
17:17
**invalidity** [1]    53:10
**invention** [1]     15:24
**inventors** [1]     48:4
50:8
**invested** [2]      61:3
61:5
**involved** [5]      22:2
35:8    35:9    40:8
60:13
**involves** [1]      34:5
**involving** [1]     54:19
**issue** [42]        4:2
7:16    10:9    12:24
13:1    13:16   14:3
14:6    18:18   18:23
20:20   20:21   20:22
21:11   21:12   22:25
29:7    29:11   31:19
33:22   35:14   35:16
35:23   37:18   38:6
38:11   38:21   39:7
39:10   42:12   45:13
45:16   46:6    48:4
54:19   56:25   58:15
59:18   62:18   62:25
66:1    66:10
**issued** [2]        32:17
33:7
**issues** [8]        16:21
21:13   22:21   27:13
37:16   38:14   66:9
66:11
**item** [4] 3:3      3:8
3:9     48:1
**items** [2]         2:25
3:4     3:4     51:18
61:6
**J** [1]     1:18
**January** [1]       48:25
**Japan** [7]         48:6
48:19   48:21   49:2
49:10   50:12   51:6
**judgment** [2]      62:14
63:13
**July** [20] 3:11   4:7

6:6     6:6     6:12
7:17    7:25    8:14
8:23    9:1     11:4
12:4    16:12   26:23
29:14   30:17   31:6
31:9    32:5    32:18
**juncture** [1]      21:11
**June** [5] 5:5      30:18
30:19   31:8    63:18
**jurisdiction** [1]  35:14
**keep** [4] 3:6      43:8
43:9    55:19
**Kelley** [59]       2:4
2:21    2:25    5:1
5:7     5:23    6:23
7:25    12:22   13:6
23:5    24:6    29:17
30:7    30:9    30:10
37:15   37:24   40:18
41:10   41:14   41:17
41:24   46:3    46:4
47:25   48:3    49:15
50:16   50:18   51:5
53:1    55:15   55:19
56:1    56:14   57:8
58:5    58:14   60:11
60:22   61:9    62:6
62:18   62:20   62:24
64:3    64:18   64:19
65:21   66:13   66:20
67:13   67:19   67:22
67:23   68:2    68:3
68:6
**Ken** [1]   2:15
**KENNETH** [1]       1:21
**Kevin** [1]         68:15
**key** [4]  17:17   38:14
39:11   45:8
**kicking** [1]       59:12
**kind** [8] 10:16   26:5
38:17   39:8    40:6
47:5    53:25   59:2
**knew** [7]          13:23
18:24   21:17   23:25
24:22   53:15   56:15
**knowing** [2]       40:17
45:24
**knowledge** [3]     23:2
48:19   57:9
**known** [1]         24:19
**knows** [1]         36:21
**Kobayashi** [4]     48:6
48:6    48:18   50:12
**lack** [1]  50:1
**laid** [1]  52:17
**language** [6]      38:4
9:2     9:6     37:12
37:25   45:18
**largest** [1]       44:4
**last** [6]  32:16   51:1
51:14   54:11   56:11
58:17
**late** [4]  5:5     30:18
30:19   50:15
**law** [4]  10:24   41:20
45:15   64:2
**lawyer** [1]        65:24

CondenseIt™

**lays** [1] 28:17
**Layton** [2] 1:19
  2:12  2:13
**lead** [3] 17:8  18:13
  52:1
**leading** [2] 31:2
  53:20
**leads** [2] 24:9  26:14
**learned** [1] 18:2
**least** [1] 21:10  24:12
  24:15  27:15  27:24
  50:1  51:13  56:16
  66:10
**led** [2] 5:14  19:19
**left** [1] 68:4
**legal** [1] 28:23
**legitimate** [1] 38:17
**less** [5] 15:8  20:3
  33:17  40:15  60:16
**letter** [9] 6:5  9:21
  10:15  12:3  13:22
  26:24  52:17  57:7
  62:12
**letters** [3] 4:17
  7:18  27:8
**levels** [1] 45:19
**libraries** [1] 39:2
**library** [4] 39:18
  40:9  42:3  54:6
**likelihood** [1] 51:11
**likely** [2] 14:12
  52:15
**limit** [3] 41:3  59:15
  59:16
**limitation** [2] 60:1
  60:19
**limitations** [1] 44:17
**limited** [5] 22:18
  39:10  39:11  44:13
  66:4
**limiting** [1] 57:14
**line** [3] 2:20  12:11
  55:4
**list** [12] 20:9  21:22
  22:8  22:13  22:17
  26:8  36:22  52:10
  52:20  52:21  52:23
  64:22
**listed** [6] 50:6
  51:21  52:7  52:7
  52:19  52:22
**listen** [1] 21:17
**listing** [1] 8:7
**literature** [1] 56:9
**litigation** [10] 5:16
  15:9  16:1  16:5
  21:9  22:14  33:9
  36:8  38:3  45:13
**live** [1] 48:19
**lives** [2] 49:6  50:12
**LLP** [3] 1:21  2:2
  2:5
**located** [1] 56:24
**lock** [2] 15:25  16:4
**Lodge** [1] 2:2

**log** [8] 4:15  4:20
  10:7  12:19  20:9
  20:12  22:8  27:1
**logic** [14] 53:24
  53:25  54:5  54:12
  56:8  57:15  59:9
  59:17  59:20  59:21
  60:7  60:14  62:21
  62:22
**look** [5] 37:21  46:13
  66:2  67:2  68:9
**looking** [9] 6:22
  6:25  13:24  22:7
  32:2  60:3  60:7
  60:9  60:15
**looks** [1] 16:17
  37:10
**LTD** [1] 1:4  1:8
**M** [3] 1:16  1:20
  2:3
**major** [2] 17:16
  18:10
**makes** [5] 29:23
  57:3  64:4  64:20
  64:25
**manner** [4] 39:10
  39:11  39:24  61:4
**manuals** [6] 39:4
  39:4  39:5  39:5
  40:6  42:10
**manufacture** [1]
  58:23
**manufacturing** [15]
  60:5  63:7  63:21
  63:24  64:4  64:6
  64:7  64:11  64:15
  64:16  64:25  65:11
  65:12  65:16  65:17
**map** [1] 54:6
**marketing** [1] 53:3
**Markman** [2] 55:22
  55:25
**material** [4] 11:23
  28:7  47:4  62:7
**materials** [4] 53:3
  53:3  53:15  53:19
**Matrox** [15] 1:8
  1:8  1:9  1:9
  56:22  57:1  62:7
  65:20  66:10  66:17
  66:25  67:8  67:8
  67:8  67:11
**matter** [4] 7:4
  35:16  47:20  48:3
**matters** [3] 61:4
  61:15  61:17
**Maurer** [1] 68:15
**may** [36] 14:2  14:21
  14:23  14:24  14:25
  16:2  19:24  20:2
  20:11  20:15  20:16
  20:19  20:19  20:21
  21:4  21:16  21:25
  22:1  22:5  24:15
  24:19  26:24  29:10
  30:5  33:20  33:25
  34:13  38:2  51:20
  54:25  55:14  57:4

58:9  61:12  64:19
  67:18
**mean** [4] 3:13  10:9
  14:20  16:3
**means** [1] 10:11
**meant** [2] 37:19
  59:8
**mechanical** [1] 65:2
**meeting** [1] 47:7
**meetings** [1] 54:10
**Meilman** [13] 1:20
  2:14  3:4  35:20
  55:9  55:13  58:9
  59:5  60:4  62:6
  65:23  67:7  67:17
**memos** [1] 59:23
**Menlo** [1] 2:5
**mention** [1] 46:17
**mentioned** [7] 24:1
  32:16  35:12  41:17
  41:20  45:1  59:16
**merits** [2] 20:18
  21:7
**Messrs** [1] 2:14
**method** [1] 63:18
**methods** [1] 52:5
**mid-September** [1]
  68:2
**might** [4] 7:20
  39:8  50:7  66:1
**mind** [3] 3:7  19:4
  32:25
**minute** [1] 37:25
  57:5  58:15
**minutes** [1] 11:20
**missed** [1] 32:15
**misunderstood** [1]
  23:21
**moment** [1] 43:18
**month** [1] 55:15
**Monti** [1] 11:2
**Morin** [1] 1:21
**morning** [4] 2:10
  2:11  2:16  2:17
**most** [5] 18:3  18:4
  22:12  45:2  45:7
**motion** [1] 20:24
  33:21  46:8
**mouth** [1] 24:16
**movant** [1] 3:16
  3:18
**movants** [2] 3:22
  4:2
**move** [1] 55:8
**moving** [1] 16:22
**Mower** [1] 52:14
**Ms** [32] 17:12
  22:9  22:11  22:24
  23:1  23:8  23:22
  23:24  24:17  25:3
  25:14  25:16  27:4
  29:19  29:22  30:3
  30:4  30:24  31:10
  31:13  32:14  32:21
  32:25  33:9  34:21

44:1  44:25  46:2
  54:22  54:25  55:2
**multiple** [1] 5:2
**must** [2] 15:3  49:2
**named** [1] 5:17
**namely** [3] 4:19
  42:1  46:15
**names** [1] 5:15
**narrow** [3] 44:10
  54:10  57:15
**narrowed** [1] 56:1
  56:6
**narrowing** [1] 53:22
**nature** [3] 6:7
  12:23  38:11
**necessary** [4] 17:20
  45:17  47:18  67:3
**need** [18] 7:10
  20:4  31:5  35:17
  38:4  41:21  42:4
  42:8  45:4  45:17
  47:9  47:17  47:11
  54:24  59:7  63:14
  66:2  68:8
**needs** [2] 13:20
  45:13
**negotiating** [1] 35:8
**negotiation** [1] 53:20
**net** [1] 64:22
**never** [2] 5:5
  10:19  15:17  15:21
  65:11
**new** [1] 45:17
**next** [6] 8:23  35:12
  36:17  41:24  61:16
  61:16
**nice** [1] 19:14
**non-confidential** [2]
  34:7  41:8
**non-Matrox** [1] 67:15
**non-starter** [1] 62:11
**none** [2] 8:9  59:24
**nor** [1] 31:24
**normally** [2] 22:13
  47:14
**note** [2] 14:15  53:10
**noted** [1] 9:24
  12:20
**nothing** [5] 10:6
  10:7  34:8  47:12
  65:11
**notices** [1] 5:6
**now** [22] 6:20  13:7
  15:7  20:24  22:7
  25:17  31:7  32:25
  38:2  41:10  44:1
  45:1  45:24  46:10
  46:24  50:3  59:5
  59:14  59:18  60:25
  61:3  61:16
**number** [8] 21:25
  22:18  29:2  30:8
  34:15  40:3  60:23
  61:12
**numerous** [1] 49:21
**object** [5] 35:25

37:2  51:24  52:2
  61:20
**objected** [8] 6:8
  6:18  33:14  35:5
  35:13  35:18  36:5
  59:1
**objecting** [1] 35:20
**objection** [5] 34:16
  36:17  40:17  41:18
  43:11
**objections** [6] 34:16
  35:19  37:17  38:11
  61:2  67:10
**obligated** [1] 36:25
**obligations** [2] 3:11
  46:12
**obtain** [3] 21:19
  36:21  36:23
**obtainable** [1] 36:19
**obtained** [1] 13:3
  29:5  36:6
**obtaining** [1] 36:7
**obviously** [11] 7:6
  29:1  32:8  34:10
  36:14  43:3  44:24
  47:21  50:4  51:7
  52:9
**occurred** [1] 24:10
**off** [6] 21:22  36:7
  47:16  60:22  64:23
  68:6
**often** [2] 10:21  22:12
**oftentimes** [1] 45:11
**Oliver** [1] 2:4
  2:21
**once** [9] 11:1  11:4
  11:6  11:7  18:25
  19:13  20:11  22:13
  58:19
**one** [37] 3:6  3:6
  11:5  11:5  11:19
  11:22  17:16  18:25
  20:5  21:24  21:25
  24:12  26:17  28:6
  28:16  29:17  34:20
  39:8  39:9  41:19
  48:15  49:2  49:11
  50:7  50:9  55:4
  56:21  57:21  57:21
  60:25  61:1  61:11
  63:20  64:7  65:14
  67:8  68:10
**ones** [3] 3:14  3:15
  59:1
**operates** [1] 43:1
**operation** [5] 13:5
  53:25  65:11  65:16
  65:17
**operations** [1] 52:4
**opinion** [5] 3:10
  7:13  15:18  17:1
  28:23
**opinions** [9] 5:7
  7:9  14:13  5:14
  15:19  16:25  31:7
  21:19  26:19
**opponent** [1] 25:4

CondenseIt™

opportunity - raised

**opportunity** [4] 49:4
49:11   50:23   66:6

**orally** [1]           12:4

**order** [33]           3:11
4:7     4:22    7:17
8:20    8:23    9:1
9:2     10:18   10:23
12:3    14:3    17:11
17:22   12:16   26:23
29:14   33:4    35:7
35:9    35:11   36:16
38:21   38:22   40:9
41:13   43:15   45:13
61:24   62:1    64:6
66:25   67:11

**ordered** [8]          8:16
8:19    9:9     9:12
9:14    26:21   29:16
61:18

**orders** [1]           45:14

**Osaka** [3]            49:4
49:6    49:11

**Oshinsky** [1]         1:21

**ought** [1]            13:7

**ourselves** [4]        4:1
21:16   26:6

**outlining** [1]        8:20

**output** [6]           39:19
39:19   40:9    42:3
47:16   54:6

**outset** [1]           14:16

**outside** [3]          63:2
63:3    63:7

**overall** [1]          20:22

**overbreadth** [1] 44:7

**overcome** [1]         51:8

**overly** [1]           40:19

**own** [1]   61:7

**p.m** [1]   68:13

**Page** [3]  6:24    12:11
12:20

**pages** [4]            33:17
40:15   42:10   60:17

**paper** [1]            9:18

**papers** [1]           53:13

**paragraph** [8]        4:7
7:17    9:7     9:7
10:1    10:2    12:1
12:13

**parameters** [3]  31:7
31:12   40:12

**Park** [1]  2:5

**part** [20] 4:16    9:12
16:4    17:14   21:13
33:14   33:22   33:25
34:5    38:14   42:24
42:25   43:1    51:23
55:10   63:14   63:20
64:10   64:15   65:16

**particular** [8]  17:20
18:2    18:6    30:6
45:1    45:3    45:5
60:12

**particularly** [1] 17:13

**parties** [11]         3:10
3:19    36:8    37:3
37:4    37:5    47:8

47:19   51:11   53:19
58:18

**parts** [4] 39:11      42:19
42:21   44:18

**party** [16]           15:23
16:6    33:9    33:12
38:2    38:5    39:9
41:18   41:21   43:9
43:10   43:10   46:11
46:11   49:20   50:9

**past** [1]  53:20

**patent** [10]          17:2
17:18   35:18   48:4
54:13   56:2    60:13
63:2    63:8    63:23

**patents** [1]          8:8

**pay** [1]   5:21

**people** [6]           22:12
28:19   57:9    59:12
62:7    62:16

**percent** [1]          44:5

**performed** [3]        39:16
42:6    53:25

**perhaps** [2]          51:10
54:24

**period** [5]           8:4
21:22   32:20   51:11
67:2

**peripheral** [1]   47:4

**permission** [2]   62:12
62:13

**permit** [1]           51:11

**person** [1]           18:5

**personal** [2]         23:2
30:4

**pertains** [2]         20:18
21:7

**phone** [7]            6:12
24:12   26:7    26:10
32:5    32:6    49:1

**phonetic** [1]         11:2
52:14

**phrase** [3]           8:24
10:13   50:21

**phrases** [1]          53:2

**physical** [3]         64:8
64:21   65:2

**picture** [1]          7:22

**piece** [7] 9:17       18:10
30:6    55:18   55:18
63:19   65:10

**pieces** [3]           11:8
17:17   25:25

**ping-pong** [1]    40:25

**place** [4] 3:25       17:18
19:23   49:2

**plaintiff** [8]        1:5
1:23    2:12    26:14
44:9    45:22   46:1
50:6

**plaintiffs** [1]   4:14
5:6     53:13

**planning** [1]         59:23

**plant** [3] 56:14      56:23
67:9

**play** [2]  33:25      34:13

**point** [23]           13:17
15:3    15:9    20:10
20:11   21:3    21:13
23:2    23:8    24:1
29:17   29:18   34:4
41:5    41:24   43:23
44:3    48:8    48:23
61:2    61:6    64:20
66:5

**points** [3]           5:2
23:10   28:16

**poison** [1]           20:5

**poisonous** [1]        10:1

**portion** [1]          10:1
65:8

**position** [9]         20:14
23:18   24:15   25:7
25:15   28:3    28:12
33:11   63:25

**positions** [1]        34:2

**possession** [2]   40:1
47:4

**possibility** [3]  22:4
22:5    24:19

**possible** [1]         28:8
53:12

**postponed** [1]    26:25

**potential** [4]        20:17
21:14   22:25   29:11

**pre** [1]   60:11

**precisely** [2]        10:15
10:16

**precluded** [1]    16:20

**preparation** [2] 31:14
32:22

**prepare** [1]          8:20

**prepared** [4]         4:10
9:15    10:3    53:6

**preparing** [1]    31:25
32:3

**present** [2]          30:21
43:5

**presumably** [1] 25:11

**presume** [1]          33:3
50:8    62:15

**pretty** [1]           58:4

**prevail** [1]          62:25

**prevent** [1]          16:4

**previously** [1]   33:10

**prima** [1]            27:24

**primary** [1]          4:1

**principal** [2]        2:16
21:3

**privilege** [12]       4:12
4:15    4:20    10:6
10:7    10:21   14:1
20:9    22:8    27:1
27:20   27:21

**privileged** [1]   9:25
10:20   10:22   12:17
14:7    14:10   22:13
22:18   27:17   28:1
28:9

**problem** [10]         17:11
19:11   19:21   20:5
21:21   44:7    44:9

48:24   54:22   54:25

**proceed** [1]          24:23
33:4    45:14   47:7

**proceeded** [2]    24:2
24:20

**process** [40]         27:2
42:24   42:25   43:1
46:16   47:15   53:24
54:13   54:17   56:3
56:8    56:12   56:20
57:2    57:14   59:6
59:8    60:5    62:21
63:6    63:8    63:10
63:21   63:23   63:24
64:4    64:6    64:7
64:11   64:16   64:21
64:22   64:24   65:1
65:2    65:2    65:10
66:14   67:1    67:14

**processes** [7]        56:7
56:9    56:17   57:13
57:16   60:12   60:14

**produce** [37]         4:9
4:19    6:20    8:18
9:14    10:3    10:7
10:16   10:18   10:19
12:15   23:7    23:11
26:22   34:18   35:1
35:4    35:17   38:3
39:1    39:19   39:24
40:4    40:9    41:6
42:3    49:25   51:3
51:16   51:17   51:23
53:22   54:6    57:20
58:20   58:21   64:23

**produced** [25]        5:10
8:11    9:17    10:12
27:11   29:16   33:15
33:16   34:17   35:3
35:10   38:1    38:10
40:4    40:15   42:9
43:24   53:12   53:14
53:15   60:16   64:21
67:21   67:25   68:1

**produces** [1]         64:22
64:24

**producing** [1]    10:2
53:16

**product** [21]         4:12
12:17   17:15   38:1
38:10   38:14   39:23
39:11   41:7    45:8
44:4    45:3    45:8
46:25   53:2    54:1
59:4    59:11   59:13
59:22   63:7    65:12
65:15   65:17

**production** [10] 10:1
10:14   22:25   27:7
29:14   38:4    41:11
54:20   57:3    67:23

**products** [19]        34:11
34:12   34:13   39:10
39:11   41:7    52:5
53:23   57:12   57:18
58:10   58:24   59:3
59:16   59:16   59:17
59:21   63:22   64:16

**program** [1]          33:24

**progression** [1] 47:1

**promotional** [1]
53:3

**proper** [4]           38:8
41:11   47:7    47:8

**properly** [2]         40:22
54:10

**propose** [1]          65:23

**proposed** [1]         60:20

**proposing** [1]    30:16

**proposition** [3] 65:6
65:8    65:9

**prosecute** [1]    45:22

**protect** [1]          26:6
43:14

**protective** [10] 35:7
35:9    35:11   36:15
38:22   41:13   43:15
45:14   61:24   62:1

**prove** [1]            43:3
43:7    44:22

**provide** [1]          4:14
17:23   22:12   22:17
34:12   36:12   36:25
37:9    37:12   42:1
53:9    56:11

**provided** [8]         5:6
7:21    11:17   13:13
22:20   33:20   36:15
36:15

**provides** [1]         26:23
57:22

**providing** [1]    39:17
47:14   54:4

**provisions** [1]   57:3

**public** [2]           36:18
42:4

**publications** [1]
8:8

**publicly** [3]         34:7
36:20   36:24

**purpose** [1]          32:9

**purposes** [1]         34:17

**pursuant** [1]         41:12

**pursue** [1]           24:8

**pursuit** [1]          44:13
26:11

**push** [1]  55:25

**pushed** [1]           34:10

**put** [4]   10:7       55:25
24:16   61:1

**putting** [1]          58:21
44:21   46:15

**questioned** [1]   25:23

**questions** [3]    34:12
26:1    56:25

**quickly** [3]          41:1
53:11   67:24

**quite** [5] 22:12      13:4
61:4    61:4    65:1

**quote** [4]            1:21
12:13   12:13   28:5

**raise** [1]            29:17

**raised** [5]           34:15
34:16   35:20   55:24
62:10

**raising** [1]            62:7
**range** [1]             42:12
**rather** [1]            41:1
**rattled** [1]           60:22
**react** [1] 40:17
**read** [11] 12:12      22:16
26:5    38:23    38:25
40:22   51:16    58:20
65:8    65:25    66:6
**reading** [2]          10:15
58:21
**real** [7]   33:12   37:18
38:6    38:13    38:13
39:7    43:10
**really** [10]           12:6
17:24   38:16    40:18
40:24   42:4    46:20
47:2    54:14    59:7
**reason** [2]           35:4
41:17
**reasonable** [1]       27:25
**reasonably** [1]       39:8
51:25
**recapping** [1]        32:5
**receive** [3]          11:11
28:25   45:23
**received** [17]        4:10
4:16    4:16    5:25
6:14    9:15    10:3
11:2    11:4    11:7
14:11   24:25    25:2
25:3    28:19    32:9
48:14
**recipient** [1]        27:15
**recited** [1]          37:16
**recognize** [1]        45:16
**recognized** [1]       14:15
**recollection** [1] 12:9
**recommendation** [1]
27:3
**record** [2]           24:17
36:18
**recorded** [1]         37:17
**records** [1]          56:24
**reduce** [1]           41:22
**refer** [1] 53:13
**reference** [4]        6:23
29:23   39:3    44:3
**references** [1]       12:11
**referred** [1]         56:5
**reflect** [2]          14:10
25:11
**reflections** [1]      12:8
**refused** [4]          4:18
37:5    55:25    57:6
**refuses** [1]          6:20
**regard** [4]           20:25
27:7    51:17    68:5
**regarding** [14]       10:24
18:20   21:7    21:8
27:13   27:14    30:13
31:3    31:25    33:22
41:23   45:8    52:4
64:2
**regular** [1]          47:14

**relate** [6]           7:19
20:19   20:20    20:21
37:17   60:5
**related** [3]          38:6
54:20   55:11
**relates** [2]          12:13
35:23   62:21
**relating** [24]        4:9
9:11    9:13    10:10
10:12   12:2    17:14
17:23   20:14    31:1
32:2    33:23    38:1
38:9    38:22    39:22
39:23   41:7    44:6
47:11   53:19    53:23
59:20   60:8
**relationship** [2] 24:20
24:23
**relatively** [3]       30:8
48:3    53:2
**released** [1]         61:7
**relevance** [3]        43:12
43:21   52:4
**relevant** [11]        18:3
18:4    38:15    52:13
52:16   52:18    52:20
52:20   52:22    54:16
59:9
**relief** [11]          3:20
19:24   20:3    20:7
20:20   20:23    20:25
21:14   21:15    22:21
22:22
**rely** [1] 51:22
**relying** [2]          28:23
63:12
**remainder** [1]        3:1
**remaining** [2]        54:14
59:18
**remains** [1]          17:16
**remedies** [1]         7:20
**remedy** [1]           7:22
**remember** [2]         26:10
28:21
**remove** [1]           43:18
**Reporter** [1]         68:15
**represent** [1]        49:20
**representation** [2]
28:18   30:5
**representations** [5]
5:1    29:1    29:2
29:4    29:8
**represented** [1] 7:25
**representing** [2]
13:6    48:9
**represents** [1]       35:7
**request** [16]         8:15
12:12   33:7    38:18
40:19   40:22    41:3
44:10   51:17    51:24
52:2    52:11    54:11
56:6    57:11    58:21
**requested** [2]        6:21
52:11
**requests** [19]        8:20
37:20   37:21    38:9
38:13   38:20    38:22

**39:22   40:3    49:22
54:8    54:14    55:10
55:14   58:5    58:16
58:19   59:19    61:2
**require** [4]          10:19
17:23   17:25    22:16
**required** [5]         4:21
8:16    9:25    12:14
38:2
**requires** [1]         4:8
37:10
**resolve** [1]          7:10
55:16   61:2    66:10
**respect** [4]          3:10
13:2    31:19    44:7
**respond** [7]          18:14
28:16   30:15    47:19
48:13   49:21    49:25
**responded** [2]        8:6
50:20
**response** [6]         16:12
40:4    50:1    51:23
52:13   52:25
**responses** [2]        37:17
56:25
**responsibilities** [1]
27:5
**restrict** [1]         39:21
54:2    56:15
**restricted** [1]       59:19
**rests** [1] 47:2
**result** [7]           7:8
7:14    15:14    16:25
17:4    21:20    26:18
**retain** [1]           11:9
15:11   31:19    31:23
**retained** [1]         6:5
**retention** [2]        6:5
18:21   21:9    30:14
**return** [1]           28:16
**reveal** [1]           20:15
**revenue** [1]          44:5
**review** [4]           10:20
10:22   10:25    28:2
**reviews** [1]          29:15
**revisit** [1]          47:22
**Richards** [3]         1:19
2:12    2:13
**Ricoh** [44]           1:4
2:12    2:14    3:2
5:9    5:12    5:14
5:17    5:21    6:2
6:15    6:18    7:5
7:8    7:15    10:11
13:4    13:14    14:17
15:15   15:20    15:25
16:2    16:7    16:18
16:25   18:14    19:1
19:6    19:10    19:14
26:18   27:9    28:3
28:20   29:1    33:7
40:13   48:5    50:2
50:13   59:15    60:2
63:5
**Ricoh's** [2]          8:19
23:18

**right** [7] 9:9        11:12
20:24   27:7    45:24
48:10   55:13
**ROBERT** [1]          1:18
**rolling** [1]          67:23
**roster** [1]           3:6
**rug** [1]  62:8
**Rule** [2] 55:13      55:24
**rules** [2] 16:13     42:20
**runs** [1] 20:5
**sale** [1] 58:23
**Sales** [1] 53:4
**sanctions** [1]        22:1
**says** [9]  9:3        9:8
9:10    9:10    10:2
10:3    11:21    38:25
40:18
**schedule** [1]         66:21
**scheduling** [2]       33:11
34:21
**scope** [10]           10:14
18:18   27:7    29:19
29:21   40:19    41:11
44:13   59:19    66:11
**second** [9]           4:7
5:23    9:14    10:13
12:13   13:1    14:10
33:6    39:17
**Section** [1]          51:18
**see** [11]  14:24     14:25
17:11   17:24    20:12
40:12   48:10    48:12
49:22   62:17    65:4
**seek** [4]  19:22     20:1
20:7    63:2
**seeking** [7]          3:20
7:13    12:22    19:25
51:25   62:13    62:20
**seeks** [1]            52:3
**seem** [3] 12:8        23:9
56:24
**select** [1]           40:9
**selects** [1]          42:3
**self-serving** [1] 26:5
**SEMICONDUCTOR**
[1]    1:7
**send** [3] 19:5       19:7
20:9
**sense** [1]            10:19
**sensitive** [3]        45:2
45:7    45:12
**sent** [10] 4:10      6:6
9:15    9:18    10:3
13:22   16:13    30:17
32:8    64:23
**sentence** [2]         9:3
9:8
**September** [2]        50:15
50:15
**series** [1]           65:14
**served** [5]           5:5
33:7    33:13    51:19
55:14
**service** [1]          48:12
**serving** [1]          17:19

**set** [4]    33:21    34:3
50:15   65:1
**seven** [2]            8:11
9:20
**sever** [1] 5:20
**several** [3]          37:16
42:10   59:1
**shall** [1] 4:14
**Shapiro** [1]          1:21
**share** [2] 11:21     28:5
**shared** [2]           45:13
45:19
**shield** [1]           18:9
**Shindo** [9]           48:5
48:9    48:15    48:18
48:20   49:6    49:9
49:19   50:7
**short** [2] 8:7       34:2
**shortly** [1]          68:10
**show** [5] 5:10       14:23
23:14   50:5    64:15
**shred** [2]            41:15
11:16
**side** [7]  4:21      45:4
15:5    23:13    30:23
52:11   58:13
**sign** [1]  8:21
**signed** [2]           6:6
19:7    19:8
**significant** [1]      18:23
**Simon** [13]           2:5
2:20    8:2    8:11
18:24   19:11    21:17
22:2    22:17    23:16
25:4    27:12    35:7
**simple** [2]           49:12
48:3
**simplify** [2]         30:16
31:23
**simply** [2]           6:4
36:4
**single** [4]           3:5
9:17    27:14    51:16
**sit** [1]  49:24
**situation** [5]        37:10
22:15   50:17    50:18
63:21
**six** [2]  8:11        9:20
**SLEET** [1]            1:16
**software** [2]         33:19
39:1
**sole** [1] 7:11
**solely** [1]           5:14
**someone** [4]          21:21
23:3    37:22    50:7
**sometime** [1]         50:24
**sometimes** [2]        33:13
55:4
**somewhat** [4]         23:10
27:7    28:7    44:10
**sorry** [5] 3:19      14:8
22:11   25:5    29:3
**sort** [8]  11:17     2:19
17:6    20:6    33:4
58:24   66:9    66:17

sorted [1]          21:15
sought [2]          13:8
    34:21
sounds [1]          27:19
source [3]          38:7
    45:21   45:25
sourcecode [5]      42:5
    42:16   44:13   44:25
    45:7
sourcecodes [1] 39:5
sources [4]         36:19
    36:25   42:13   43:14
sourcing [1]        43:13
space [1]           49:4
speak [1]           60:25
SPEAKER [3]         30:1
    30:18   31:8
speaking [2]        32:16
    60:25
special [1]         22:14
specific [5]        25:25
    31:17   37:25   39:22
    56:4
specifically [4] 5:11
    5:13   26:9   57:21
specification [3]
    59:10   59:10   59:22
specificity [1] 25:12
specifics [1]       26:10
spelled [1]         38:16
spend [1]           55:7
spirit [1]          12:3
    43:20
spokesperson [1]
    2:16
stands [3]          65:5
    65:8   65:9
start [4]  3:8       3:18
    34:20   62:7
started [2]         53:11
    53:16
starting [1]        41:5
starts [2]          18:22
    22:14
state [3] 40:2      40:8
    64:2
statement [3]       53:7
    64:2   65:5
statements [2]      25:19
    53:4
States [10]         1:1
    48:20   49:12   63:3
    63:3   63:8   63:9
    63:22   64:17   65:18
stating [1]         11:16
stay [1]  34:22     46:8
step [1]  25:6
steps [9] 39:15     39:15
    39:22   40:8   54:3
    57:2   57:5   65:15
    65:15
Steven [2]          1:18
    2:13
still [9]  7:3      13:12
    16:2   18:8   25:18

36:25   44:5    44:6
47:20
stonewalling [2]
    37:8   40:5
story [1] 5:3
strategy [3]        6:1
    31:3   32:2
strictly [1]        63:14
stuff [7] 46:15   46:18
    47:12   53:17   59:7
    66:16   67:24
subject [3]         7:4
    35:16   66:3
subjects [1]        7:4
submission [1] 26:25
submit [2]          9:1
    38:8
submitted [3]       4:13
    8:23   12:18
subpoena [15]       5:5
    5:14   5:15   17:19
    19:17   30:17   30:20
    32:17   33:7   33:13
    33:14   35:15   35:15
    48:11   49:23
subsequent [1]  12:3
subsequently [2]
    8:19   19:4
subset [1]          55:1
substance [3]       21:9
    32:10   63:15
substeps [1]        56:20
successful [1]  53:21
such [3]  6:7       27:20
    42:19
suddenly [1]        6:8
sue [1]   46:23
sued [1]  46:23
suggest [1]         52:16
suggesting [1]  21:1
    46:10   66:22
suit [1]  56:2
summary [3]         62:13
    63:11   64:13
suppliers [1]       57:18
support [3]         29:10
    51:22   62:13
supports [5]        25:10
supposed [2]        8:25
    10:16
Supreme [1]         27:23
suspect [1]         2:15
sweep [1]           13:14
swept [1]           62:8
Synopsis' [1]   46:25
Synopsys [25]       33:8
    33:8   33:11   33:13
    33:19   34:6   34:15
    34:24   35:8   35:15
    36:14   38:2   38:2
    38:10   38:14   42:17
    43:8   44:4   44:11
    46:9   46:11   46:23
    47:5   61:14   61:22
Synopsys' [1]   40:1

46:23
synthesis [14]      53:24
    53:25   54:5   54:12
    56:8   57:15   59:9
    59:17   59:20   59:21
    60:7   60:14   62:21
    62:22
system [1]          42:25
systems [5]         1:8
    33:19   39:2   42:20
    60:6
table [1] 41:1
tainted [5]         17:5
    17:6   17:7   20:15
    21:4
takes [4] 42:2      47:15
    49:2   66:6
talks [1] 10:2      10:14
tangible [1]        51:18
target [1]          16:22
Tech [4] 1:9        56:22
    67:9   67:11
technical [2]       39:3
    39:4
technology [1]  18:6
tedious [1]         38:25
teleconference [6]
    8:1   8:14   9:12
    9:16   31:2   68:13
telephone [7]       1:14
    6:9   25:13   26:2
    31:6   31:25   32:3
telling [2]         16:23
    36:2
ten [1]   50:2
Teresa [2]          2:3
    2:21
term [1]  67:7
terminate [1]       19:6
terms [1]           41:12
testified [7]       6:13
    7:7   11:19   16:16
    16:25   25:1   28:25
testify [1]         26:9
testifying [1]  21:8
testimony [12]      5:10
    5:20   7:2   7:13
    13:6   17:19   20:18
    23:14   24:7   24:9
    26:15   29:6   49:4
text [1]  38:19
thank [8]           4:6
    19:14   30:24   33:1
    47:15   62:3   67:17
    68:11
themselves [1]  60:8
theoretically [1]
    51:13
theory [6]          35:19
    38:15   46:20   53:8
    55:21   63:1
thinking [1]        63:5
third [15]          15:23
    16:6   27:23   37:3
    37:4   37:5   38:2
    38:5   39:9   41:18

41:21   43:8    46:11
49:19   50:9
third-party [1] 15:19
    17:19
Thomas [85]         4:9
    4:11   4:18   4:25
    5:5   5:8   5:10
    5:13   5:17   5:18
    5:22   5:24   6:2
    6:5   6:10   6:13
    6:18   7:2   7:6
    7:7   7:11   7:19
    8:1   8:6   8:13
    8:17   9:11   9:14
    9:15   9:19   10:6
    10:12   11:6   11:9
    11:17   11:18   12:15
    12:23   12:25   13:3
    13:11   13:13   13:24
    14:12   14:16   15:8
    15:19   16:7   16:13
    16:16   16:21   16:24
    17:5   17:14   17:16
    18:3   18:21   18:22
    18:25   19:2   23:4
    23:13   23:15   24:25
    25:1   25:12   26:9
    26:11   26:18   27:10
    27:13   27:14   28:5
    28:18   28:24   29:23
    30:14   30:17   31:1
    31:19   31:20   31:22
    32:7   32:9   32:20
Thomas' [11]        5:10
    5:20   8:1   13:5
    15:5   23:13   24:7
    24:8   28:23   29:5
    32:10
thought [3]         13:11
    25:14   60:4
thoughts [1]        67:3
thousand [1]        60:16
thousands [1]       53:12
three [5] 8:7       16:11
    25:25   56:13   58:18
through [2]         12:12
    21:19   31:1   31:5
    32:7   32:15   36:11
    38:22   49:21   51:18
    61:1   61:23
Thursday [1]        1:13
ties [1]  62:9
timely [1]          45:22
times [1]           43:9
timing [1]          17:21
    18:5   18:19
Title [1] 57:4
today [5]           2:23
    16:23   20:1   31:1
    46:22
together [2]        47:8
    47:20
Tokyo [1]           49:3
too [1]   59:2
took [1]  46:16
top [1]   46:16
topic [4] 33:6      35:21
    62:10   62:11

topics [1]          43 13
total [1] 12:6
training [1]        39:5
transcript [4]      6:23
    12:5   12:11   29:14
transfer [1]        46:8
transmitted [3] 25:3
    25:8   25:21
tree [1]  20:21
trial [3] 43:2      48:17
    49:16   50:5   50:23
tried [1] 52:13
true [1]  43:10
truly [1] 45:21
try [4]   3:6       7:10
    11:14   63:1
trying [13]         43:8
    19:22   20:6   21:13
    27:19   32:4   33:18
    41:22   44:16   46:24
    55:16   61:13   64:11
turn [2]  36:11   36:11
turned [1]          29:10
tutorials [1]       39:5
twice [3]           34:17
    35:3   45:1
two [10]  8:6       11:8
    11:8   39:15   39:15
    46:14   47:12   48:4
    48:16   56:13
two-page [1]        26:24
twofold [2]         12:24
    14:9
type [4]  8:5       9:23
    35:13   45:18
types [4]           6:1
    8:7   60:9   60:12
U.S [3]   27:23     56:14
    63:2
U.S.C [1]           57:4
U.S.D.C.J [1]       2:10
ultimately [2]   4:2
    53:21
under [5]           3:11
    10:1   13:15   62:8
    64:21
underlying [1]  18:7
underneath [3]   35:10
    36:15   61:25
understand [16]  5:8
    24:21   28:10   29:19
    29:20   29:24   31:10
    31:11   36:1   41:23
    44:8   45:20   50:18
    51:7   56:19   64:11
understood [4]   6:22
    6:24   25:14   30:22
unduly [1]          51:24
    52:2
unequivocally [1]
    11:19
unidentified [4]
    30:1   30:18   31:8
    37:4
United [10]

universe - yourselves

| | | | |
|---|---|---|---|
| 48:20 | 49:12 | 63:2 | |
| 63:3 | 63:7 | 63:9 | |
| 63:22 | 64:16 | 65:18 | |
| **universe** [1] | | 8:12 | |
| **unsuccessful** [1] | | | |
| 50:10 | | | |
| **unusual** [2] | | 63:1 | |
| 63:4 | | | |
| **up** [12] | 6:7 | 15:25 | |
| 16:4 | 17:25 | 31:2 | |
| 32:7 | 35:19 | 45:15 | |
| 50:5 | 50:15 | 53:20 | |
| 62:23 | | | |
| **used** [9] | 20:16 | 21:4 | |
| 39:19 | 40:9 | 56:9 | |
| 56:16 | 64:22 | 64:24 | |
| 65:11 | | | |
| **user** [3] | 39:4 | 42:1 | |
| 46:15 | | | |
| **using** [12] | | 39:17 | |
| 39:23 | 47:13 | 54:5 | |
| 56:8 | 58:1 | 58:1 | |
| 58:10 | 60:6 | 60:12 | |
| 60:14 | 64:7 | | |
| **utilization** [3] | | 33:23 | |
| 35:24 | 36:4 | | |
| **v** [1] | | 1:6 | |
| **vast** [1] | 45:10 | | |
| **verbally** [1] | | 15:11 | |
| **versus** [1] | | 41:21 | |
| **view** [1] | 3:21 | | |
| **voluntarily** [1] | | 50:14 | |
| **W** [2] | 1:18 | 1:21 | |
| **wait** [1] | 11:5 | | |
| **waived** [1] | | 14:1 | |
| **Wall** [1] | 22:3 | | |
| **wants** [1] | | 17:24 | |
| **Washington** [1] | 1:22 | | |
| **ways** [2] | 45:6 | 49:21 | |
| **week** [4] | 11:5 | 11:5 | |
| 61:16 | 61:16 | | |
| **weeks** [1] | | 58:18 | |
| **weighing** [1] | | 41:20 | |
| **Whetzel** [3] | | 1:18 | |
| 2:11 | 2:12 | | |
| **White** [1] | | 2:5 | |
| **whole** [4] | | 13:16 | |
| 22:5 | 29:7 | 58:3 | |
| **willing** [9] | | 34:6 | |
| 38:13 | 39:21 | 44:11 | |
| 44:12 | 44:16 | 49:22 | |
| 50:14 | 51:2 | | |
| **Wilmington** [1] | 1:12 | | |
| **windows** [1] | | 49:11 | |
| **wish** [2] | 12:6 | 57:13 | |
| **withheld** [3] | | 4:11 | |
| 9:4 | 10:5 | | |
| **withhold** [1] | | 10:5 | |
| **within** [1] | | 64:6 | |
| **witness** [8] | | 5:1 | |
| 16:2 | 17:5 | 18:3 | |
| 20:15 | 21:5 | 21:17 | |
| 48:17 | | | |
| **witness'** [2] | | 20:17 | |
| 21:5 | | | |

| | | | |
|---|---|---|---|
| **witnesses** [2] | | 16:3 | |
| 21:23 | | | |
| **word** [3] | 48:15 | 49:8 | |
| 51:9 | | | |
| **words** [6] | | 15:25 | |
| 20:15 | 21:4 | 24:14 | |
| 24:16 | 31:21 | | |
| **written** [1] | | 23:12 | |
| **year** [1] | 51:2 | | |
| **years** [1] | 50:3 | | |
| **Yesterday** [2] | | 56:18 | |
| 57:7 | | | |
| **yet** [3] | 21:16 | 43:9 | |
| 48:14 | | | |
| **yourselves** [1] | 3:22 | | |

**EXHIBIT 12**

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 828-2228*
*E-Mail Address: HoffmanG@dsmo.com*

August 28, 2003

<u>BY FACSIMILE</u>

Theresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA  94025

Re:          <u>Ricoh Company, Ltd. v. Aeroflex et al.</u>

Dear Terry:

  I write to follow up on two of the discovery issues that were discussed at today's hearing.  You represented that defendants' initial disclosures were "inartfully drafted" and "vague."  We, therefore, request that you  submit a revised initial disclosure that  complies with Rule 26(a) and produce all of the documents described therein.

  With respect to defendants' responses to Ricoh's document requests and Synopsys' response to Ricoh's subpoena, now that those categories have been narrowed and the Court has directed document discovery, including the production of confidential documents, to proceed, please identify before the end of next week the documents that will be produced and make such production by no later than mid-September.  To the extent that defendants or Synopsys are refusing to produce and responsive documents, please  identify them to us before the end of next week so we can (as Judge Sleet said), "finish our conversation."

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.legalinnovators.com*



1658475 v1; ZJ_R01!.DOC

Theresa M. Corbin, Esq.
August 28, 2003
Page 2

      We look forward to your prompt response so we can resolve all of these issues by September 5, as directed by the Court.

                        Very truly yours,

                        Gary M. Hoffman

cc:    Edward Meilman, Esq. (via facsimile)
       Christopher M. Kelley, Esq. (via facsmilie)
       Frank DiGionani, Esq. (via facsimile)
       Robert Whetzel, Esq. (via facsimile)