1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, California  94025
   Telephone:  (650) 463-8100
5  Facsimile:  (650) 463-8400

6  Attorneys for Defendants AEROFLEX INCORPORATED, AMI
   SEMICONDUCTOR, INC. MATROX ELECTRONIC
7  SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX
   INTERNATIONAL CORP. and MATROX TECH, INC.

8

9

10                UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13  RICOH COMPANY, LTD.,                    )  Case No. CO3-04669 MJJ
                                            )
14            Plaintiff,                     )  **DECLARATION OF ERIK K. MOLLER IN**
                                            )  **SUPPORT OF DEFENDANTS'**
15       vs.                                )  **OPPOSITION TO RICOH'S MOTION TO**
                                            )  **COMPEL INITIAL DISCLOSURE**
16  AEROFLEX INCORPORATED, AMI               )  **DOCUMENTS**
    SEMICONDUCTOR, INC., MATROX              )
17  ELECTRONIC SYSTEMS, LTD., MATROX         )  Date:   February 10, 2004
    GRAPHICS INC., MATROX                    )  Time:   9:30 a.m.
18  INTERNATIONAL CORP. and MATROX           )  Ctrm:   11
    TECH, INC.,                              )
19                                           )
              Defendants.                    )
20  _____ )

21        I, Erik K. Moller, hereby declare as follows:

22        1.     I am an attorney at law, licensed to practice in the state of California and an associate at

23  the law firm of Howrey Simon Arnold & White, LLP ("Howrey"), attorney of record for defendants

24  Aeroflex, Inc., AMI Semiconductor, Inc., Matrox Electronic Systems, Ltd., Matrox Graphics, Inc.,

25  Matrox International Corp., and Matrox Tech, Inc. (collectively "Defendants") in this litigation.  The

26  matters set forth in this declaration are based upon my personal knowledge, except where otherwise

27  indicated, and if called as a witness, I could and would testify competently thereto.

28

HOWREY
SIMON
ARNOLD &
WHITE

CASE NO.  CO3-04669 MJJ                          -1-
Declaration of Erik K. Moller ISO Opposition to
Ricoh's Motion to Compel Initial Disclosure Documents

1    2.    Attached as Exhibit A is a true and correct copy of pages 45-60, from the transcript of

2    the August 28, 2003 teleconference between Judge Sleet and counsel for the parties in this action.

3    3.    Attached as Exhibit B is a true and correct copy of a letter dated September 8, 2003,

4    from Mr. Kelley, counsel for Defendants, to Mr. Meilman, counsel for Plaintiff.

5    4.    Attached as Exhibit C is a true and correct copy of a letter dated August 27, 2003, from

6    Mr. Kelley, counsel for Defendants, to Mr. Meilman, counsel for Plaintiff.

7    5.    Attached as Exhibit D is a true and correct copy of a letter dated September 11, 2003,

8    from Mr. Kelley, counsel for Defendants, to Mr. Meilman, counsel for Plaintiff.

9    I declare under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct to the best of my knowledge.  Executed on January 20, 2004, at Menlo

11   Park, California.

12

13                                                    /s/ Erik K. Moller
                                                      Erik K. Moller

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOWREY
SIMON
ARNOLD &
WHITE**

CASE NO.  CO3-04669 MJJ                                          -2-
Declaration of Erik K. Moller ISO Opposition to
Ricoh's Motion to Compel Initial Disclosure Documents

1                  IN THE UNITED STATES DISTRICT COURT

2                  IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4    RICOH COMPANY, LTD.,              :        Civil Action
                                       :
5                 Plaintiff,           :
                                       :
6          v.                          :
                                       :
7    AEROFLEX INCORPORATED, AMI        :
     SEMICONDUCTOR, INC.,              :
8    MATROX ELECTRONIC SYSTEMS         :
     LTD., MATROX INC., GRAPHICS       :
9    MATROX INTERNATIONAL CORP.,       :
     and MATROX TECH, INC.,            :
10                Defendants.          :        No. 03-103-GMS

11                             - - -

12                        Wilmington, Delaware
13                      Thursday, August 28, 2003
                              11:00 a.m.
14                        Telephone Conference

15                             - - -

16   BEFORE:   HONORABLE GREGORY M. SLEET, U.S.D.C.J.

17   APPEARANCES:

18           ROBERT W. WHETZEL, ESQ., and
             STEVEN J. FINEMAN, ESQ.
19           Richards, Layton & Finger
                    -and-
20           GARY M. HOFFMAN, ESQ.,
             EDWARD A. MEILMAN, ESQ., and
21           KENNETH W. BROTHERS, ESQ.
             Dickstein Shapiro Morin & Oshinsky LLP
22           (Washington, D.C.)

23                          Counsel for Plaintiff

24

25

1    APPEARANCES CONTINUED:

2            FRANCIS DiGIOVANNI, ESQ.
             Connolly Bove Lodge & Hutz LLP
3                     -and-
             TERESA M. CORBIN, ESQ.,
4            CHRISTOPHER KELLEY, ESQ., and
             ERIC OLIVER, ESQ.
5            Howrey Simon Arnold & White, LLP
             (Menlo Park, California)
6
                         Counsel for Defendants
7
                         - - -
8

9

10           THE COURT:  Good morning, counsel.

11           MR. WHETZEL:  Good morning, Your Honor.  Bob

12   Whetzel from Richards Layton for plaintiff Ricoh.  With me is

13   my colleague here at Richards Layton Steven Fineman.  Also on

14   the call for Ricoh are Messrs. Gary Hoffman, Ed Meilman and

15   Ken Brothers, my co-counsel.  I suspect Mr. Hoffman will be

16   our principal spokesperson this morning.

17           THE COURT:  Good morning, all.

18           For defendants.

19           MR. DiGIOVANNI:  Frank DiGiovanni from Connolly

20   Bove.  Also on the line from Howrey Simon in California are

21   Teresa Corbin and Chris Kelley and Eric Oliver.

22           THE COURT:  Who is going to handle the argument

23   today?

24           MR. DiGIOVANNI:  I will be arguing the first of

25   the agenda items, and I believe Mr. Kelley will be arguing

1   has been mentioned twice now, is of particular import, I

2   think, because that is the most sensitive information about a

3   particular product, it contains a lot of information.  If

4   what they need is an understanding of the inputs that these

5   particular customers input to Design Compiler when they use

6   it, there are other ways to get to that information besides

7   having the sourcecode, which is the most sensitive

8   information in the company, regarding their key product.

9          THE COURT:  Well, inevitably, counsel, in all of

10   these cases, and you know that from your vast experience in

11   this area, there is always information, oftentimes

12   extraordinarily sensitive information like this that is at

13   issue and that needs to be shared in order for the litigation

14   to proceed forward.  That is why we have protective orders.

15   That is why there is a body of law that has grown up around

16   this issue.  But it is incumbent upon counsel to recognize

17   the need to cooperate, and if necessary, to craft new

18   language that will enable this type of information to be

19   shared at appropriate levels.  If it is for attorneys' eyes

20   only -- I think you understand where I am going with this.

21          If there is truly an alternate source that will

22   enable the plaintiff to prosecute its claims in a timely

23   fashion from which it can receive this information, I would

24   be interested in knowing and having the discussion right now

25   as to what that source is and whether it is acceptable to the

1    plaintiff.

2             MS. CORBIN:  Can you address that, please, Chris

3    Kelley?

4             MR. KELLEY:  Yes, absolutely.  That is where I

5    was intending to go.

6             Your Honor, the issue here is that -- of course,

7    they have stated to this Court -- and I don't want to get

8    into the motion to stay or transfer -- but they have stated

9    that their beef is not with Synopsys.  That it's by

10   defendants that are infringing.  They are now suggesting that

11   Synopsys is a third party and as a party to this case has the

12   same obligations in discovery.

13            If you look at the way the interrogatory is

14   drafted, they identify the two things that would have some

15   connection with the user, namely, putting some stuff in at

16   the top of the process and getting something out at the

17   bottom.  And they didn't mention anything about all the other

18   the stuff, which of course I think they are going to argue

19   are all internal to Design Compiler.

20            Their theory of infringement really is these

21   defendants use Design Compiler.  If that is the case, which

22   they haven't come flat out and stated today, they should have

23   sued Synopsys.  Instead, they elected to sue Synopsys'

24   customers.  Now they are trying to back-door, attack

25   Synopsis' product by getting this very broad discovery.

1          I think the progression here is, to the extent

2     they really believe their case of infringement rests on

3     something the defendants are doing and there is some

4     peripheral material that is in the exclusive possession of

5     Synopsys, that is the kind of discovery they should get.  But

6     what I think we are going to find out when we actually have

7     this meeting -- and I think that's the proper way to proceed,

8     is for the proper parties to get together and work out

9     exactly what they need and what we can give them, how we can

10    get them the information they need.  I think what we are

11    going to find is everything they need relating exclusively to

12    stuff done by Design Compiler, nothing to what these two

13    defendants here are doing except using Design Compiler,

14    providing the regular inputs that Design Compiler normally

15    takes in and at the end of the process say thank you very

16    much for the output, I am going to take this off to go make

17    the chip.

18          THE COURT:  It is not necessary for you to

19    respond, Mr. Hoffman.  The Court has instructed the parties

20    to get together and discuss this matter.  If you are still at

21    an impasse after that discussion, obviously, we will have to

22    revisit this.

23          Let's go on to No. 3.

24          MR. HOFFMAN:  No. 3, Your Honor --

25          MR. KELLEY:  Your Honor, I think this is our

1    item.

2              THE COURT:  Yes.

3              MR. KELLEY:  This is a relatively simple matter.

4    On the patent at issue, there are two inventors, Mr.

5    Kobayashi and Mr. Shindo.  Ricoh has already agreed to make

6    Mr. Kobayashi available for deposition in Japan.  That is

7    going forward.

8              At a fairly early point during discovery, we

9    asked them whether they were representing Shindo.  I am not

10   going to get this exactly right.  They said, no.  We will see

11   if they will work with us.  Give us your subpoena and we will

12   see if he will accept it, not formally, accept service, but

13   he will respond to it.

14             We haven't yet received from them a commitment,

15   any final word as to, one, whether Mr. Shindo will accept

16   this -- will cooperate in discovery, and two, whether they

17   intend to use him during trial, appear as a witness.

18             Both Mr. Shindo and Mr. Kobayashi, to our

19   knowledge, live in Japan.  We have asked them if they would

20   bring Mr. Shindo to the United States.  They have said, no,

21   you have to go to Japan to take his deposition if you want to

22   take his deposition.  That's assuming of course that he at

23   some point determines to cooperate.

24             The problem we are facing, given the close of

25   discovery in January, the facilities for deposition, which [

1   assume everyone on the phone is familiar with, depositions in
2   Japan must takes place either at the embassy or one of the
3   consulates.  The Tokyo Embassy is already completely booked.
4   There is a little opportunity, some space in the Osaka
5   Consulate, which, to our understanding, that is actually
6   where Mr. Shindo lives, is Osaka.
7           What we would like from the Court is some
8   deadline as to when they actually have to have a final word
9   as to whether Mr. Shindo is going to cooperate or not.  Then
10  either to make him available in Japan in accordance -- with
11  one of the windows of opportunity that we have, at the Osaka
12  Embassy, or bring him to the United States for deposition
13  here.
14          THE COURT:  Okay.
15          MR. KELLEY:  We can depose him in advance of
16  trial.
17          THE COURT:  Can we get an answer to the question,
18  counsel?
19          MR. HOFFMAN:  Yes.  Mr. Shindo, who is a third
20  party, we don't represent him, we have attempted to contact
21  him through numerous ways.  He does not respond to any of our
22  requests to see if he would be willing to accept the
23  subpoena.
24          We have asked him to sit for a deposition and
25  produce documents.  He does not respond.  He is so far, by

1    lack of response, at least implicitly is indicating he is not

2    going to cooperate.  He has been gone from Ricoh over ten

3    years now.  It is our belief that he is not going to

4    cooperate.  Obviously, if he is not going to cooperate, he is

5    not going to show up at trial or anything else.

6            Both plaintiff and the defendants had listed Mr

7    Shindo as someone who might have information.  He is one of

8    the inventors.  I presume he has some information.  But no

9    one can force him as a third party to cooperate or to appear

10   for a deposition.  We have been unsuccessful in doing that.

11   Consequently, we can't produce him.

12           With Dr. Kobayashi, he lives in Japan.  He is

13   also not employed by Ricoh.  We asked him.  He came back and

14   said, yes, he would be willing to voluntarily appear.  And

15   that deposition is set up in September, late September.

16           THE COURT:  Mr. Kelley, what would you have

17   counsel do in this situation?

18           MR. KELLEY:  I understand the difficult situation

19   he is in.  This is the first time I heard he hadn't

20   responded.  What I guess I would like is a drop-dead date, if

21   you will forgive the phrase, by which we will know he is

22   either going to cooperate by this date or there is not going

23   to be an opportunity for him to appear at trial.  It seems to

24   me that should be sometime before the close of discovery, not

25   the final day of discovery.

1          MR. HOFFMAN:  That is fine, Your Honor.  We would

2   be willing to do that by the end of the year.

3          THE COURT:  The drop-dead date is the end of

4   discovery.

5          MR. KELLEY:  The complicating factor is if he is

6   going to be deposed in Japan.

7          THE COURT:  No.  I understand.  Obviously, there

8   are challenges that would have to be overcome.  For instance,

9   on the last day of discovery, you get word that he is

10  available, the Court will be flexible, perhaps, in all

11  likelihood, and permit the parties an additional period of

12  time in which to complete his deposition.  But we can

13  certainly deal with that at the time.  At least theoretically

14  the drop-dead date is the last day of discovery.

15         MR. HOFFMAN:  We have asked the defendants to

16  produce all documents -- let me read it to you, a single

17  document request in this regard:  Produce all documents and

18  tangible things identified in Section B, Items 1 through 8,

19  of defendants' initial disclosure dated and served on or

20  about May 30, 2003.

21         This is where they listed the documents that they

22  are going to rely upon in support of their case.  We asked

23  them to produce the documents.  Part of the response is,

24  defendants further object to this request as unduly

25  burdensome in seeking discovery of information not reasonably

1    calculated to lead to the discovery of admissible evidence.

2    Defendants further object to this document request as unduly

3    burdensome and on the basis that it seeks detailed discovery

4    regarding operations of defendants that has no relevance to

5    defendants' ASIC products or methods.

6            Your Honor, these are the documents that they

7    listed, the categories of documents they listed in their

8    initial disclosure.

9            The purpose of the initial disclosure, obviously,

10    is either done over the documents, list the categories so the

11    other side can go ahead and request them.  We requested

12    them.  They came back and have said, no, they are not

13    relevant.  We tried to work it out with them.  The response

14    was, and this is from Mr. Mower (phonetic), defendants

15    identified eight categories of documents that were likely to

16    be relevant to this dispute.  Defendants did not suggest, as

17    your letter implies, that any documents that go into that

18    that fell into these categories were relevant.

19            Well, Your Honor, if they listed them, you only

20    list what you think is relevant.  If it is relevant, we are

21    entitled to them.  If they didn't list any -- if the

22    documents they listed are not relevant, then why did they

23    list them in their initial disclosure?

24            THE COURT:  I agree.  What is the defendants'

25    response to this?

1        MR. KELLEY:  Your Honor, the categories that are

2   identified are relatively generic phrases.  Product design,

3   development materials, marketing, promotional materials.

4   Sales and accounting statements.  You get the gist.  Sort of

5   generic classifications of documents.

6        When we prepared this, this is in the initial

7   disclosure statement, we did not have any idea what their

8   theory of infringement was.  All we had was the complaint,

9   which doesn't provide any detail other than you infringe.  We

10  did note what our invalidity arguments were going to be and

11  we started collecting that information as quickly as

12  possible.  In fact, we have produced the thousands of

13  documents that plaintiffs sometimes refer to in their papers

14  are all prior art articles that we have produced.  So we have

15  produced the materials we knew about in describing these

16  categories at that time.  We immediately started producing

17  that stuff.

18        Since then, we have agreed to go ahead and get

19  the materials relating to -- and here's where the parties

20  have had some negotiation in the past few days leading up

21  though this call, not ultimately successful but some

22  narrowing of the differences -- we have agreed to produce, to

23  go get documents relating to ASIC products which were

24  developed in a process where there was some logic synthesis.

25  Logic synthesis is the kind of operation performed by Design

1    Compiler and other product.

2              And we wanted to further restrict the documents

3    to documents that had some bearing on the use of, the steps

4    which they have identified in their interrogatory, providing

5    input to the logic synthesis to Design Compiler and using

6    Design Compiler to map library cells to produce an output

7    file.

8              They have agreed that their document requests,

9    which asks for every information, all documents about every

10   ASIC, should properly, they have agreed to narrow their

11   request, just in the last few days, to ASIC, whether there

12   was some logic synthesis, i.e., having something to do with

13   the process that is described in their patent.  So then the

14   remaining difference, really, in the document requests is

15   whether they get every document that the defendants have on

16   that ASIC or if they get the documents that are relevant to

17   the claimed process.

18             THE COURT:  I have to say, this is the first time

19   that I have ever had to deal with an issue involving

20   production related to initial disclosures.  I find it

21   extraordinary.  Counsel --

22             MS. CORBIN:  Your Honor, I think that the problem

23   was that the initial disclosure was inartfully drafted.

24             THE COURT:  Perhaps.  But what you need --

25             MS. CORBIN:  The problem may be, there was a

1    subset of documents.

2            THE COURT:  Ms. Corbin, I am going to talk over

3    you.  You can't talk over me.  I know we are on this bridge

4    line and sometimes we talk over one another, and that's okay.

5            But you are going to have to go back and finish

6    your conversation about this, counsel.  I am not going to

7    spend any more time on this.

8            Let's move on to No. 5.

9            MR. MEILMAN:  Your Honor, actually, you have

10   heard part of the discussion on the document requests.

11   Actually, the interrogatory, No. 7, they are also related.

12           THE COURT:  Let's talk about them both then.

13           MR. MEILMAN:  Right after the Rule 16 conference

14   in May, we served these document requests and interrogatories

15   on defendants about a month later.  And as Mr. Kelley

16   indicated, we have been trying to resolve our differences

17   ever since.  We have gotten some information in documents.

18   But it's been dribbled in piece by piece.

19           As Mr. Kelley has told you, that they keep

20   objecting on the grounds that we haven't told them our

21   infringement theory.  In essence, what they are doing is they

22   want us to give them our Markman construction before they

23   decide what they are going to give us.  That's something that

24   was raised during the Rule 16 conference, and the Court

25   refused to push the Markman conference before any discovery.

1          As Mr. Kelley indicated, we have narrowed the

2     definition of what we want, well, the patent in suit is

3     directed to a computer aided design process for making

4     application specific integrated circuits, what has been

5     referred to in this conference call as an ASIC.

6          We have asked them, we have narrowed our request

7     to processes for making ASICs by a computer-aided design

8     process using logic synthesis, development of those

9     processes, what equipment they have used, and any literature

10    they have had about that.

11         Last Friday, they have told us they will provide

12    us details about their current process (inaudible)

13    development.  As to two of the three defendants, they have a

14    plant in the U.S.  But as Mr. Kelley indicated, they want to

15    restrict that to Design Compiler because we indicated we knew

16    they used Design Compiler in at least some of their

17    processes.

18         Yesterday, they backtracked, as far as I

19    understand it, and said we will give you only details as to

20    some of these substeps in the process.

21         They have told us that one of the defendants,

22    Matrox Tech, did design work in Florida, but we will be

23    getting no information about that because it closed its plant

24    in 2000 and those records don't seem to be located.

25         Then there is an issue on questions of responses

1    by the Matrox defendants done in Canada.  We have been told

2    that there are additional process steps those defendants

3    carry out which makes the foreign production provisions of

4    Title 35 U.S.C. 271(g) inapplicable.  As you may guess, the

5    minute they said that to us, we said, What are those steps?

6    And we have been refused disclosure on that.

7              Yesterday I got a call from Mr. -- I got a letter

8    from Mr. Kelley indicating that if we want, they will make

9    people available with knowledge about their design work for

10    deposition, but we are not going to get any interrogatory or

11    document request.

12              Basically, on the definition of the products --

13    the processes that we wish to have disclosure on, we believe

14    that limiting that to the computer-aided design process with

15    logic synthesis is narrow enough to give us the discovery we

16    want.  We know as to some processes the defendants use Design

17    Compiler.  What we don't know is whether they have any other

18    products that they have gotten from other suppliers.

19              We have asked them, do you have those?  And

20    produce the documents.  We have asked both in general and

21    specifically as to one of their -- one of the companies we

22    know provides equipment called Cadence.  And basically, we

23    are told we are not going to get an answer.  As to other

24    things, when they don't have any documents or it has not been

25    applicable, we have been told that.  But as to the generally,

1  are you using somebody else's equipment, are you using

2  Cadence's equipment, we are getting no answer at all.

3          I think that's basically -- that whole approach

4  filters down to everything that is in dispute pretty much on

5  the interrogatories and document requests.  As Mr. Kelley

6  said, it is a question of what we are entitled to as far as

7  breadth goes.

8          THE COURT:  Okay.

9          MR. MEILMAN:  It may very well be there are no

10 other alternate products that the defendants are using.  But

11 I think we are entitled to know that.

12         THE COURT:  Okay.  Let's hear from the other

13 side.

14         MR. KELLEY:  Your Honor, let me talk about the

15 271(g) issue in a minute.  Let me deal with the document

16 requests first.

17         The fight that we have been having over the last,

18 it's been about three or four weeks the parties have been

19 discussing this in earnest, is these document requests.  Once

20 again, let me just read this:  Produce all documents -- I am

21 reading from No. 5, Document Request No. 5:  Produce all

22 documents concerning the conception, design, development,

23 manufacture, or sale of each of the defendants' ASIC

24 products.  Then it goes on and gives some examples sort of

25 thing.

1          There are several.  The ones we have objected to

2    and said these are too broad are that kind of thing.  They

3    haven't (inaudible) with all products and anything having to

4    do with the design of that product.

5          Now, Mr. Meilman just said that, he said CAD

6    process.  As far as I know, that is the first time I have

7    heard them say, what we really need is stuff about the CAD

8    process.  Although I am not sure whether he meant -- well,

9    the thing that is relevant here is logic synthesis.  It's not

10   the specification, the engineering specification describing

11   what the product was going to do that was formulated back

12   when people were kicking around ideas about what a good

13   product for the company would be.  So that's what we have

14   been fighting about now.

15         Ricoh just a few days ago said we will limit the

16   products, as I mentioned, we will limit the products to those

17   products that use logic synthesis.

18         Now, I think the remaining issue is whether the

19   scope of these document requests should be restricted to

20   documents describing the use of logic synthesis or relating

21   to logic synthesis for those products, and not anything

22   having to do with the specification of the product,

23   engineering, planning meetings, memos about how, we have got

24   bugs, our design isn't working, because none of that has

25   anything to do with the claim.

1    THE COURT:  Is that an acceptable limitation,

2    Ricoh?

3    MR. HOFFMAN:  Your Honor, what we are looking

4    for, as Mr. Meilman, I thought, had indicated, is the

5    documents that relate to the process for manufacturing these

6    ASICs in the designing of the ASICs using systems that have

7    logic synthesis in them.  We are not looking for things

8    relating to debugging of the ASICs themselves.  We are not

9    looking for things on other types of -- there is some

10   categories -- and I would have to go back to exactly what Mr.

11   Kelley said -- other things that were pre the designing of

12   these ASICs using the particular types of processes that are

13   involved in the claims and in the patent here of ASIC

14   designing processes using logic synthesis.

15        That is what we are looking for.  We have told

16   them that.  To date, they have produced less than a thousand

17   pages of documents.

18        THE COURT:  Is that a different way of saying

19   that you are in agreement with the limitation that has just

20   been proposed?  Or are you broadening?

21        MR. HOFFMAN:  No.  I think we are in general

22   agreement of some of the things.  Mr. Kelley rattled off a

23   number of things.

24        THE COURT:  So did you.  So, counsel, my question

25   to you is, now having heard one another speak, and speaking



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

CHRISTOPHER L. KELLEY
PARTNER
650.463.8113
kelleyc@howrey.com

September 8, 2003

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:    *Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.*
       Civil Action No. 03-103-GMS

Dear Ed:

I have your letter to me of August 28.

During the telephone conference with Judge Sleet, we proposed several bounds on the sweeping discovery that Ricoh has originally submitted. The parties indicated to the Court that compromise on discovery appeared possible based on those limiting bounds. The conference confirmed the course of action that we had undertaken prior to the conference when we had determined to begin collecting the following types of materials from AMI, Aeroflex and from the Matrox defendants regarding the operations of Matrox Tech:

> *for those ASICs for which a defendant's design process included a computer-assisted logic synthesis step, documents relating to computer-assisted logic synthesis operations*

Defendants will also produce documents identifying those ASICs whose design did include a computer-assisted logic synthesis step.

Based on the content of the discussion before Judge Sleet and your letter of August 28, I am not aware of any disagreement between the parties as to the appropriate scope of the discovery that defendants will provide. Your letter, however, cryptically states that I "expressed reservations to the Judge" about certain discovery. We did make objection to Ricoh's document requests as drafted, but Ricoh itself did not attempt at the hearing to defend its document requests as drafted. If you were intending to raise some other issue, please be more specific about the nature of the dispute.

Very truly yours,

Christopher L. Kelley

CLK:gg

BRUSSELS    CHICAGO    HOUSTON    IRVINE    LONDON    LOS ANGELES    MENLO PARK    SAN FRANCISCO    WASHINGTON, DC



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

## FACSIMILE COVER SHEET

---

**DATE:** September 8, 2003

**TO:**

| | |
|---|---|
| **NAME:** | Edward A. Meilman, Esq. |
| **COMPANY:** | Dickstein Shapiro Morin & Oshinsky LLP |
| **FAX NUMBER:** (212) 997-9880 | **PHONE NUMBER:** (212) 835-1400 |
| **CITY:** | New York |

**FROM:**

| | |
|---|---|
| **NAME:** | Christopher L. Kelley, Esq. |
| **DIRECT DIAL NUMBER:** (650) 463-8113 | **USER ID:** 5172 |

**NUMBER OF PAGES, INCLUDING COVER:** 2     **CHARGE NUMBER:** 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL     ☐ OVERNIGHT DELIVERY     ☐ HAND DELIVERY     ☐ OTHER: _____

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Re:  Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.

PLEASE SEE CORRESPONDENCE DATED SEPTEMBER 8 , 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

\* \* \* COMMUNICATION RESULT REPORT ( SEP. 8.2003  5:36PM ) \* \* \*

                                                                    TTI
TRANSMITTED/STORED SEP. 8. 2003  5:34PM
FILE MODE        OPTION              ADDRESS                    RESULT      PAGE
-----------------------------------------------------------------------------------
4112 MEMORY TX                       2#324#912129979880            OK         2/2

---------------------------------------------------------------------------------------
    REASON FOR ERROR
    E-1) HANG UP OR LINE FAIL                      E-2) BUSY
    E-3) NO ANSWER                                 E-4) NO FACSIMILE CONNECTION



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

**FACSIMILE COVER SHEET**

*DATE:*   September 8, 2003

*TO:*     *NAME:*              Edward A. Meilman, Esq.

          *COMPANY:*           Dickstein Shapiro Morin & Oshinsky LLP

          *FAX NUMBER*         (212) 997-9880          *PHONE NUMBER:*   (212) 835-1400

          *CITY:*              New York

*FROM:*   *NAME:*              Christopher L. Kelley, Esq.

          *DIRECT DIAL NUMBER:*   (650) 463-8113        *USER ID:*   5172

*NUMBER OF PAGES, INCLUDING COVER:*   2          *CHARGE NUMBER:*   06816.0060.000000

☒ *ORIGINAL WILL FOLLOW VIA:*

   ☒ *REGULAR MAIL*      ☐ *OVERNIGHT DELIVERY*      ☐ *HAND DELIVERY*      ☐ *OTHER:*

☐ *ORIGINAL WILL NOT FOLLOW*

*SUPPLEMENTAL MESSAGE:*

Re: Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.

PLEASE SEE CORRESPONDENCE DATED SEPTEMBER 8 , 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

**CHRISTOPHER L. KELLEY**
PARTNER
650.463.8113
kelleyc@howrey.com

August 27, 2003

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:    *Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.*
       Civil Action No. 03-103-GMS

Dear Ed:

I have your letter to Erik Moller of August 26. Your proposal appears similar to what the defendants agreed to do in a letter I sent you on the 26th, so I believe there is a possible compromise in sight.

Your letter proposes redefining "ASIC Product" to include only those ASICs on which logic synthesis operations were performed. This is a good first step to focusing your request on materials that are relevant to this case. The other necessary restriction is that the design materials requested must be relevant to the operations that Ricoh is accusing, as identified in your response to defendants' interrogatory number 1. These are: "input to Design Compiler of flowcharts or hardware description languages that describe behavioral aspects of an ASIC under design," and use of Design Compiler "to synthesize the hardware cells to be implemented in the desired ASIC." Documentation relating to other aspects of the design is irrelevant to this case. As I noted in my letter of yesterday, defendants have independently undertaken to produce engineering materials relevant to Ricoh's allegations of infringement, as outlined in its interrogatory answer.

With regard to the Matrox defendants, materials relating to design work done in Canada cannot be relevant to this litigation, regardless of whether any kind of logic synthesis was done or not. The recent Federal Circuit decision in Bayer v. Housey Pharmaceuticals, confirms what was already evident from the statute: that 35 U.S.C. 271(g) applies only where a patented process is used directly in the manufacture of a product that is later imported in the United States. Ricoh does not need extensive design documentation in order to determine the veracity of the Matrox defendants' contention that, but for the Florida facilities of Matrix Tech that were closed in 2002, Matrox performs no ASIC design work in the United States. We are in the process of obtaining and producing documents sufficient to show the location of its engineering facilities and employees. If Ricoh wishes, the Matrox defendants can then make person(s) with knowledge of the nature and location of Matrox' design work available for deposition.



Edward A. Meilman
August 27, 2003
Page 2

     With regard to your interrogatory 7, most of the denials in the answers and many of the facts identified in the counterclaims relate to non-infringement of the Kobayashi patent and its invalidity. These are matters which have been investigated by counsel working for defendants and not facts that were known independently of this litigation. Prior to filing of this litigation none of the defendants was aware of the Kobayashi patent. Defendants will identify experts and offer expert testimony on these issues in accordance with the schedule adopted by the Court. To the extent that there are other specific factual issues within the possession of persons known to defendants, defendants will revise their interrogatory answers to identify such persons.

          Very truly yours,

          *Christopher Kelley /gg*

          Christopher L. Kelley

CLK:gg



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

---

**DATE:** August 27, 2003

**TO:** **NAME:** Edward A. Meilman, Esq.

**COMPANY:** Dickstein Shapiro Morin & Oshinsky LLP

**FAX NUMBER** (212) 997-9880    **PHONE NUMBER:** (212) 835-1400

**CITY:** New York

**FROM:** **NAME:** Christopher L. Kelley, Esq.

**DIRECT DIAL NUMBER:** (650) 463-8113    **USER ID:** 5172

**NUMBER OF PAGES, _INCLUDING_ COVER:** 3    **CHARGE NUMBER:** 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

  ☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER: _____

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Re:  Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.

PLEASE SEE CORRESPONDENCE DATED AUGUST 27, 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

x x x COMMUNICATION RESULT REPORT ( AUG. 27. 2003 11:13AM ) x x x

TTI

| TRANSMITTED/STORED AUG. 27. 2003 11:11AM | | | | |
|---|---|---|---|---|
| FILE MODE | OPTION | ADDRESS | RESULT | PAGE |
| 4063 MEMORY TX | | 2#690#912129979880 | OK | 3/3 |

---

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL                        E-2) BUSY
E-3) NO ANSWER                                   E-4) NO FACSIMILE CONNECTION



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:**  August 27, 2003

**TO:**   NAME:    Edward A. Meilman, Esq.

COMPANY:  Dickstein Shapiro Morin & Oshinsky LLP

FAX NUMBER:  (212) 997-9880        PHONE NUMBER:  (212) 835-1400

CITY:  New York

**FROM:**  NAME:  Christopher L. Kelley, Esq.

DIRECT DIAL NUMBER:  (650) 463-8113        USER ID:  5172

NUMBER OF PAGES, INCLUDING COVER:  3        CHARGE NUMBER:  06816.0060.000000

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER:

☐ ORIGINAL WILL NOT FOLLOW

SUPPLEMENTAL MESSAGE:

Re: Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.

PLEASE SEE CORRESPONDENCE DATED AUGUST 27, 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.



301 Ravenswood Avenue
Menlo Park, CA 94025-3434
Phone 650.463.8100
Fax 650.463.8400
A Limited Liability Partnership

**Christopher L. Kelley**
Partner
650.463.8113
kelleyc@howrey.com

September 11, 2003

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:     *Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.*
        Civil Action No. 03-103-GMS

Dear Mr. Meilman:

        I have your letter of September 10, relating to the bounds of document production discovery from the "Delaware" Defendants.

        Your contention that Defendants are "backsliding" is demonstrably false. The bounds that I describe in my letter of September 8 are the same as those set out in my letter to you of August 27. In a responsive letter of the same date you told me that these bounds were unacceptable and that you would raise the issue with the Court. In our hearing before the Court, I argued that discovery should be limited along the same lines proposed in my letter and Judge Sleet appeared to be of the view that this was an appropriate basis for compromise between the parties. Furthermore, Ricoh told the Court then that compromise on that basis was acceptable. See Hearing Tr. at 59-61. Your letter seems to indicate that Ricoh is withdrawing from that position.

        As to the Matrox defendants, I refer you to my letter of August 27. We are gathering the documents sufficient to show the location of Matrox engineering facilities and employees and will produce these when they are available. Your statement that we have "asserted that there are subsequent process steps which materially change the product" is false. Our position, set out in my letter of August 27 and in our argument to the Court in Delaware, is that 271(g) applies only when a patented process is used <u>directly</u> in the manufacture of a product that is later imported into the United States. As the <u>Housey</u> case indicates, it is not enough that the claimed process generates information that later leads to the manufacture of an imported good. The processes in



Edward A. Meilman
September 11, 2003
Page 2

claims 13 and 18 of the '432 patent generate "a netlist," not a manufactured ASIC.  Discovery concerning all of the various steps taken by Matrox to convert a netlist into an ASIC is irrelevant and unnecessary.

Very truly yours,

*Christopher L. Kelley/gg*

Christopher L. Kelley

CLK:gg
cc:    Gary M. Hoffman



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

*DATE:*  September 11, 2003

*TO:*

1. *NAME:*  Edward A. Meilman      *COMPANY:*  Dickstein Shapiro, et al.
   *CITY:*  New York, NY      *FAX #:*  (212) 997-9880      *PHONE #:*  (212) 835-1400

2. *NAME:*  Gary M. Hoffman      *COMPANY:*  Dickstein Shapiro, et al.
   *CITY:*  Washington, DC      *FAX #:*  (202) 887-0689      *PHONE #:*  (202) 785-9700

3. *NAME:*  _____      *COMPANY:*  _____
   *CITY:*  _____      *FAX #:*  _____      *PHONE #:*  _____

4. *NAME:*  _____      *COMPANY:*  _____
   *CITY:*  _____      *FAX #:*  _____      *PHONE #:*  _____

5. *NAME:*  _____      *COMPANY:*  _____
   *CITY:*  _____      *FAX #:*  _____      *PHONE #:*  _____

*FROM:*  *NAME:*  Christopher L. Kelley, Esq.

*DIRECT DIAL NUMBER:*  (650) 463-8113      *USER ID:*  5172

*NUMBER OF PAGES, INCLUDING COVER:*  3      *CHARGE NUMBER:*  06816.0060.000000

☒ *ORIGINAL WILL FOLLOW VIA:*

☒ *REGULAR MAIL*    ☐ *OVERNIGHT DELIVERY*    ☐ *HAND DELIVERY*    ☐ *OTHER:*  _____

☐ *ORIGINAL WILL NOT FOLLOW*

*SUPPLEMENTAL MESSAGE:*

PLEASE SEE ATTACHED CORRESPONDENCE DATED SEPTEMBER 11, 2003

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

```
*  *  *  COMMUNICATION RESULT REPORT ( SEP. 11. 2003  9:51AM )  *  *  *
                                                                    TTI
TRANSMITTED/STORED  SEP. 11. 2003  9:50AM
FILE MODE           OPTION              ADDRESS               RESULT    PAGE
-------------------------------------------------------------------------------
4130 MEMORY TX                          2#836#912129979880    OK        3/3

-------------------------------------------------------------------------------
REASON FOR ERROR
   E-1) HANG UP OR LINE FAIL                   E-2) BUSY
   E-3) NO ANSWER                              E-4) NO FACSIMILE CONNECTION
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

### FACSIMILE COVER SHEET

**DATE:** September 11, 2003

**TO:**

| | | | | |
|---|---|---|---|---|
| 1. | **NAME:** Edward A. Meilman | **COMPANY:** Dickstein Shapiro, et al. | | |
| | **CITY:** New York, NY | **FAX #:** (212) 997-9880 | **PHONE #:** (212) 835-1400 | |
| 2. | **NAME:** Gary M. Hoffman | **COMPANY:** Dickstein Shapiro, et al. | | |
| | **CITY:** Washington, DC | **FAX #:** (202) 887-0689 | **PHONE #:** (202) 785-9700 | |
| 3. | **NAME:** | **COMPANY:** | | |
| | **CITY:** | **FAX #:** | **PHONE #:** | |
| 4. | **NAME:** | **COMPANY:** | | |
| | **CITY:** | **FAX #:** | **PHONE #:** | |
| 5. | **NAME:** | **COMPANY:** | | |
| | **CITY:** | **FAX #:** | **PHONE #:** | |

**FROM:**  **NAME:** Christopher L. Kelley, Esq.

**DIRECT DIAL NUMBER:** (650) 463-8113         **USER ID:** 5172

**NUMBER OF PAGES, INCLUDING COVER:** 3         **CHARGE NUMBER:** 06816.0060.000000

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL      ☐ OVERNIGHT DELIVERY      ☐ HAND DELIVERY      ☐ OTHER:

☐ ORIGINAL WILL NOT FOLLOW

**SUPPLEMENTAL MESSAGE:**

PLEASE SEE ATTACHED CORRESPONDENCE DATED SEPTEMBER 11, 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

```
                 *  *  *  COMMUNICATION RESULT REPORT ( SEP.11.2003  9:54AM )  *  *  *
                                                                                    TTI
TRANSMITTED/STORED  SEP.11.2003  9:53AM
FILE MODE          OPTION              ADDRESS                    RESULT      PAGE
------------------------------------------------------------------------------------
4131 MEMORY TX                         2#836#912028870689         OK          3/3
```

```
REASON FOR ERROR
   E-1) HANG UP OR LINE FAIL              E-2) BUSY
   E-3) NO ANSWER                         E-4) NO FACSIMILE CONNECTION
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** September 11, 2003

**TO:**

| | | | | |
|---|---|---|---|---|
| 1. | NAME: Edward A. Mellman | | COMPANY: Dickstein Shapiro, et al. | |
| | CITY: New York, NY | FAX #: (212) 997-9880 | PHONE #: (212) 835-1400 | |
| 2. | NAME: Gary M. Hoffman | | COMPANY: Dickstein Shapiro, et al. | |
| | CITY: Washington, DC | FAX #: (202) 887-0689 | PHONE #: (202) 785-9700 | |
| 3. | NAME: | | COMPANY: | |
| | CITY: | FAX #: | PHONE #: | |
| 4. | NAME: | | COMPANY: | |
| | CITY: | FAX #: | PHONE #: | |
| 5. | NAME: | | COMPANY: | |
| | CITY: | FAX #: | PHONE #: | |

**FROM:** NAME: Christopher L. Kelley, Esq.

DIRECT DIAL NUMBER: (650) 463-8113      USER ID: 5172

NUMBER OF PAGES, INCLUDING COVER: 3      CHARGE NUMBER: 06816.0060.000000

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER:

☐ ORIGINAL WILL NOT FOLLOW

**SUPPLEMENTAL MESSAGE:**

PLEASE SEE ATTACHED CORRESPONDENCE DATED SEPTEMBER 11, 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.