Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RICOH COMPANY, LTD., | **Case No.  CV 03-04669 MJJ** |
| Plaintiff, | **DISCOVERY MATTER** |
| vs. | **DECLARATION OF MICHAEL A. WEINSTEIN IN SUPPORT OF RICOH'S REPLY TO ASIC DEFENDANTS' OPPOSITION TO RICOH'S MOTION TO COMPEL PRODUCTION OF INITIAL DISCLOSURE DOCUMENTS** |
| AEROFLEX INCORPORATED, et al., | |
| Defendants. | |

I, Michael A. Weinstein, hereby declare as follows:

1.    I am an attorney at law licensed to practice in the District of Columbia and licensed to

practice *pro hac vice* in the State of California and am an associate in the law firm of Dickstein Shapiro

1  Morin and Oshinsky, LLP, attorneys for the Plaintiff Ricoh Company, Ltd. ("Ricoh").  The matters set

2  forth in this declaration are based upon my personal knowledge and, except where otherwise indicated,

3  and if called as a witness, I could and would testify competently thereto.

4        2.    Attached hereto as Exhibit 1 is a true and correct copy of Defendants' Revised Initial

5  Disclosure Statement, filed January 20, 2004.

6        3.    Attached hereto as Exhibit 2 is a true and correct copy of  Defendants' Motion to Stay,

7  filed November 7, 2003.

8        4.    Attached hereto as Exhibit 3 is a true and correct copy of a letter from C. Kelley to E.

9  Meilman, dated November 11, 2003.

10        5.    Attached hereto as Exhibit 4 is a true and correct copy of a letter from E. Meilman to E.

11  Moller, dated November 11, 2003.

12        6.    Attached hereto as Exhibit 5 is a true and correct copy of Defendants' Initial Disclosure

13  Statement, filed May 30, 2003.

14        7.    Attached hereto as Exhibit 6 is a true and correct copy of Ricoh's Motion for Sanctions,

15  filed December 2, 2003.

16        8.    Attached hereto as Exhibit 7 is a true and correct copy of a letter from E. Meilman to E.

17  Moller, dated January 22, 2004.

18        9.    Attached hereto as Exhibit 8 is a true and correct copy of Plaintiff's Second Set of

19  Document Requests, filed July 2, 2003.

20        10.    Attached hereto as Exhibit 9 is a true and correct copy of a letter from G. Hoffman to T.

21  Corbin, dated August 28, 2003.

22        11.    Attached hereto as Exhibit 10 is a true and correct copy of a letter from E. Meilman to E.

23  Moller, dated December 19, 2003.

24        12.    Attached hereto as Exhibit 11 is a true and correct copy of a letter from E. Moller to E.

25  Meilman, dated December 23, 2003.

26        13.    Attached hereto as Exhibit 12 is a true and correct copy of a letter from E. Meilman to E.

27  Moller, dated December 23, 2003.

28

14.    Attached hereto as Exhibit 13 is a true and correct copy of a letter from E. Moller to E. Meilman, dated December 24, 2003.

15.    Attached hereto as Exhibit 14 is a true and correct copy of a letter from E. Meilman to E. Moller, dated December 29, 2003.

16.    Attached hereto as Exhibit 15 is a true and correct copy of a letter from E. Moller to E. Meilman, dated December 30, 2003.

17.    Attached hereto as Exhibit 16 is a true and correct copy of a letter from E. Moller to E. Meilman, dated January 5, 2004.

18.    Attached hereto as Exhibit 17 is a true and correct copy of the Declaration of Edward Meilman in Support of Ricoh's Objections to Defendants' Motion to Continue Ricoh's Discovery Motions, and Response to Motion to Shorten Time for Hearing on Motion to Stay, filed November 17, 2003.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed in Washington, DC on January 27, 2004.

_/s/_____

Michael A. Weinstein

DECL. OF MICHAEL WEINSTEIN IN SUPPORT OF RICOH'S REPLY TO ASIC DEFENDANTS' OPPOSITION TO RICOH'S MOTION TO COMPEL PRODUCTION OF INITIAL DISCLOSURE DOCUMENTS

1 Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
2 Thomas C. Mavrakakis (SBN 177927)
Erik K. Moller (SBN 147674)
3 HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
4 Menlo Park, California 94025
Telephone: (650) 463-8100
5 Facsimile: (650) 463-8400

6 Attorneys for Defendants AEROFLEX
INCORPORATED, et al.
7

8

9               UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12 RICOH COMPANY, LTD                    ) Case No. C03-04669 MJJ
                                         )
13            Plaintiff,                  ) **DEFENDANTS' REVISED INITIAL**
                                         ) **DISCLOSURE STATEMENT**
14       vs.                              )
                                         )
15 AEROFLEX INCORPORATED, AMI             )
   SEMICONDUCTOR, INC., MATROX            )
16 ELECTRONIC SYSTEMS, LTD.,              )
   MATROX GRAPHICS, INC., MATROX          )
17 INTERNATIONAL CORP., and MATROX        )
   TECH, INC.,                            )
18                                        )
            Defendants.                   )
19 _____    )

20        Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendants Aeroflex Incorporated

21 ("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), Matrox Electronic Systems Ltd. ("Matrox"),

22 Matrox Graphics, Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox

23 Tech, Inc. ("Matrox Tech") (Matrox, Matrox Graphics, Matrox Int'l, and Matrox Tech are collectively

24 referred to as "the Matrox entities") (Aeroflex, AMIS and the Matrox entities are collectively referred

25 to as "Defendants"), hereby make the following Initial Disclosures. These disclosures are based on

26 information reasonably available to Defendants at the present time. Defendants' investigation of the

27 facts of this case is ongoing. Therefore, Defendants reserve the right to supplement these disclosures

28 when and if additional information becomes available.

HOWREY
SIMON
ARNOLD &
WHITE

DEFENDAQNTS' REVISED INITIAL
DISCLOSURE STATEMENT
CASE NO. CV 03-04669 MJJ

1    Defendants' disclosures are made without waiving, in any way: (1) the right to object on any

2    basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any

3    subsequent proceeding in this action or any other action; and (2) the right to object on any basis

4    permitted by law to any other discovery request or proceeding involving or relating to the subject

5    matter of these disclosures. All of the following disclosures are made subject to the above objections

6    and qualifications.

7    **A.    Individuals with Discoverable Information**

8    Pursuant to Fed. R. Civ. P. 26(a)(1)(A), Defendants list the following individuals who are likely

9    to have discoverable information relevant to the disputed facts in this action. In disclosing the

10    individuals whom are employees, consultants or former employees of Defendants, Defendants do not

11    authorize any effort by plaintiff Ricoh Company, Ltd., ("Ricoh") to contact individuals associated with

12    any of the Defendants in connection with this lawsuit, except through appropriate counsel.

13    <u>Name and Address</u>                                    <u>Subject Matter</u>

14    <u>Aeroflex</u>

15    Peter Milliken                                     Design and development of Aeroflex' ASIC
      Director, Semi-Custom Products & Services          products
16    Aeroflex UTMC Microelectronic Systems, Inc.
      4350 Centennial Blvd.
17    Colorado Springs, CO  80907

18    John Reinert                                       Design and development of Aeroflex' ASIC
      Director, Program Management                       products
19    Aeroflex UTMC Microelectronic Systems, Inc.
      4350 Centennial Blvd.
20    Colorado Springs, CO  80907

21    Vern Schnathorst                                   Design and development of Aeroflex' ASIC
      Design Manager, Standard Products                  products
22    Aeroflex UTMC Microelectronic Systems, Inc.
      4350 Centennial Blvd.
23    Colorado Springs, CO  80907

24    Brandon Coco
      Principal ASIC Engineer
25    Aeroflex UTMC Microelectronic Systems, Inc.
      4350 Centennial Blvd.
26    Colorado Springs, CO  80907

27

28

HOWREY
SIMON
ARNOLD &
WHITE

DEFENDAQNTS' REVISED INITIAL
DISCLOSURE STATEMENT
CASE NO. CV 03-04669 MJJ

-2-

| | |
|---|---|
| 1  James Webster | Design and development of Aeroflex' ASIC |
|    Product Design Engineer | products |
| 2  Aeroflex UTMC Microelectronic Systems, Inc. | |
|    4350 Centennial Blvd. | |
| 3  Colorado Springs, CO  80907 | |
| | |
| 4  Anthony Jordan | Design and development of Aeroflex' ASIC |
|    Director, Standard Products | products |
| 5  Aeroflex UTMC Microelectronic Systems, Inc. | |
|    4350 Centennial Blvd. | |
| 6  Colorado Springs, CO  80907 | |
| | |
| 7  David Kerwin | Design and development of Aeroflex' ASIC |
|    Director, Mixed-Signal Products | products |
| 8  Aeroflex UTMC Microelectronic Systems, Inc. | |
|    4350 Centennial Blvd. | |
| 9  Colorado Springs, CO  80907 | |
| | |
| 10  Richard Bruder | Financial |
|     Chief Financial Officer | |
| 11  Aeroflex UTMC Microelectronic Systems, Inc. | |
|     4350 Centennial Blvd. | |
| 12  Colorado Springs, CO  80907 | |
| | |
| 13  AMIS | |
| | |
| 14  Jon Stoner | Design and development of AMIS' ASIC |
|     Chief Technology Officer | products |
| 15  AMI Semiconductor, Inc. | |
|     2300 Buckskin Road | |
| 16  Pocatello, ID  83201 | |
| | |
| 17  Bob Kirk | Design and development of AMIS' ASIC |
|     Director, Applications Engineering-Digital | products |
| 18  ASICs | |
|     AMI Semiconductor, Inc. | |
| 19  P.O. Box 967 | |
|     22960 Vantage Pointe Dr., Ste A | |
| 20  Twain Harte, CA  95383 | |
| | |
| 21  Matrox entities | |
| | |
| 22  Erik Boisvert | Design and development of the Matrox |
|     Senior Engineer | entities' ASIC products |
| 23  Matrox Electronic Systems Ltd. | |
|     1055, boul. St-Régis | |
| 24  Dorval (Québec), | |
|     Canada H9P 2T4 | |
| 25  | |
|     David Chiappini | Design and development of the Matrox |
| 26  ASIC Project Director | entities' ASIC products |
|     Matrox Graphics Inc. | |
| 27  1055, boul. St-Régis | |
|     Dorval (Québec), | |
| 28  Canada H9P 2T4 | |

HOWREY
SIMON
ARNOLD &
WHITE

DEFENDANTS' REVISED INITIAL
DISCLOSURE STATEMENT
CASE NO. CV 03-04669 MJJ

1   Ed Dwyer                                    Design and development of the Matrox
    Executive Vice-President                    entities' ASIC products
2   Matrox Graphics Inc.
    1055, boul. St-Régis
3   Dorval (Québec),
    Canada H9P 2T4
4
    Andres Desbiens                             Financial
5   Corporate Controller
    Matrox Electronic Systems Ltd.
6   1055, boul. St-Régis
    Dorval (Québec),
7   Canada H9P 2T4

8   Other Individuals

9          To the extent Ricoh is advancing a claim construction that would read on the Defendants' logic

10  design or logic synthesis practices, such a claim construction would be anticipated by a multitude of

11  prior art logic synthesis systems and prior art logic design practices.  Persons with knowledge of such

12  prior art include Aart de Geus, CEO of Synopsys, Inc. ("Synopsys"), Mountain View and Sunnyvale,

13  California, and David Gregory, William Cohen, and Karen Bartlett, all previously associated with

14  Synopsys.  Messers. de Geus, Gregory, and Cohen, and Ms. Bartlett all have knowledge of the prior

15  "Socrates" logic synthesis system; Paul Drongowski of Compaq Corporation, address unknown, who

16  has knowledge of the prior art "Gdl" synthesis system; John Darringer, address unknown, who has

17  knowledge of the prior art "LSS" logic synthesis system; Kurt Keutzer, Department of Electrical

18  Engineering and Computer Sciences, University of California at Berkeley, who has knowledge about

19  the prior art "Dagon" synthesis system; Donald Thomas, Department of Computer Science at Carnegie

20  Mellon University, who has knowledge of the prior art Design Automation Assistant (DAA) system;

21  and Thaddeus Kowalski, who has knowledge of the DAA system and is serving as a consultant for

22  Synopsys in connection with the related *Synopsys v. Ricoh* litigation.  Other prior art logic synthesis

23  systems are believed to be relevant and will be identified as defendants obtain more information about

24  these systems.

25         In addition, Defendants believe that a number of additional individuals are likely to have

26  personal knowledge about prior art relating to logic synthesis systems and logic design practices,

27  including individuals at Cadence Design Systems, Inc., San Jose, California, Monterey Design

28  Systems, Sunnyvale, California, Magma Design Automation, Cupertino, California, Get2Chip, Inc.,

DEFENDAQNTS' REVISED INITIAL
DISCLOSURE STATEMENT
CASE NO. CV 03-04669 MJJ

1  San Jose, California, Incentia Design Systems, Inc., Santa Clara, California, Stanford University,

2  Stanford California, University of California at Berkeley, Berkeley, California, University of Southern

3  California, Los Angeles, California, and Carnegie-Mellon University, Pittsburgh, Pennsylvania.

4      Defendants additionally believe that a number of present or former employees of Ricoh,

5  International Chip Corporation and Knowledge Based Silicon are likely to have information about the

6  scope of the subject matter of the claims of U.S. patent number 4,922,432 (the "'432 patent") and

7  about Defendant's laches and equitable estoppel defenses, including at least Hideaki Kobayashi,

8  address unknown, Masahiro Shindo, address unknown, and James P. Davis, Department of Computer

9  Science and Engineering, University of South Carolina, Columbia, South Carolina.

10  **B.**    **Documents**

11      Defendants identify the following categories of documents and tangible things in their

12  possession, custody and control as being relevant to the disputed facts in this action:

13      1)  Publications, presentations, reports and electronic files relating to prior art logic synthesis

14         systems.

15      2)  Product design and development materials relating to prior art logic synthesis products.

16      3)  Product design and development materials, and publications describing the operation of

17         Synopsys Design Compiler software.

18      4)  Sales and accounting statements, correspondence and electronic files relating to revenues to

19         defendants resulting from use of logic synthesis.

20      5)  Correspondence, accounting statements, and electronic files relating to the locations where

21         Matrox's ASIC design work is performed.

22      Classes 1) and 2) relate to defendants' claims regarding the invalidity of the '432 patent.  Class

23  3) relates to defendants' claims regarding non-infringement.  Class 4) relates to the question of

24  potential damages.  Class 5) relates to non-infringement claims raised by some of the Matrox

25  defendants.

26      Defendants have produced a large number of documents in classes 1 and 2.  *See* DEF000001-

27  10757, DEF011381-11819, DEF015791-18618, DEF018839-20462.  Defendants have, likewise,

28  produced a large number of documents responsive to class 3.  *See* DEF020463-22762.  Documents

HOWREY
SIMON
ARNOLD &
WHITE
DEFENDAQNTS' REVISED INITIAL
DISCLOSURE STATEMENT
CASE NO. CV 03-04669 MJJ

1  relating to damages (class 4) have not yet been produced.  Defendants are proposing that discovery on

2  matters relating to damages be suspended until questions of claim construction and validity have been

3  addressed.  Defendants have also produced documents in category 5.  *See* DEF023603-23645.

4  　　　　Defendants reserve the right to supplement these disclosures should new information become

5  available.

6  　　**C.    Computation of Damages**

7  　　　　Defendants seek attorneys' fees and costs.  Although the total amount of Defendants' fees and

8  costs are unknown at this time, Defendants reserve the right to supplement this Disclosure as discovery

9  proceeds and additional information becomes available.

10  　　**D.    Insurance Policies**

11  　　　　There are no insurance policies referred to in Fed. R. Civ. P. 26(a)(1)(D) that Defendants are

12  aware of at this time.

13  　　　　　　　　　　　　　　　　　　HOWREY SIMON ARNOLD & WHITE, LLP

14

15  Dated:  January 20, 2004　　　　　　By: _____

16  　　　　　　　　　　　　　　　　　　Erik K. Moller

17  　　　　　　　　　　　　　　　　　　Attorneys for Defendants/ Counterclaimants
　　　　　　　　　　　　　　　　　　AEROFLEX INCORPORATED, AMI
18  　　　　　　　　　　　　　　　　　　SEMICONDUCTOR, INC., MATROX
　　　　　　　　　　　　　　　　　　ELECTRONIC SYSTEMS, LTD., MATROX
19  　　　　　　　　　　　　　　　　　　GRAPHICS INC., MATROX INTERNATIONAL
　　　　　　　　　　　　　　　　　　CORP. and MATROX TECH, INC.

20

21

22

23

24

25

26

27

28

DEFENDAQNTS' REVISED INITIAL
DISCLOSURE STATEMENT
CASE NO. CV 03-04669 MJJ

## CERTIFICATE OF SERVICE

I am employed in the City and County of San Mateo, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over 18 years of age and am not a party to this action. My business address is 301 Ravenswood Avenue, Menlo Park, CA 94025.

On January 20, 2004, a true copy of

**DEFENDANTS' REVISED INITIAL DISCLOSURE STATEMENT**

was served on the following:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714                Facsimile (212) 896-5471

Jeffrey Demain, Esq.
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108                Facsimile (415) 362-8064

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L. Street N.W.
Washington, DC 20037-1526             Facsimile (202) 887-0689

☒       (BY U.S. MAIL – CCP § 1013a(1)) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Menlo Park, California.

☒       (BY FACSIMILE – CCP § 1013(e)) I am personally and readily familiar with the business practice of Howrey Simon Arnold & White, LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐       (PERSONAL SERVICE) I caused each such envelope to be delivered by hand to the offices of each party at the address listed above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 20, 2004 at Menlo Park, CA.

_____
Glenda L. Guthart

-7-

HOWREY
SIMON
ARNOLD &
WHITE
DEFENDAQNTS' REVISED INITIAL
DISCLOSURE STATEMENT
CASE NO. CV 03-04669 MJJ

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Defendants AEROFLEX INC., et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| RICOH COMPANY LTD., <br><br> Plaintiff, <br><br> v. <br><br> AEROFLEX INC., ET AL., <br><br> Defendants. | ) Case No. CV 03-04669 MJJ <br> ) <br> ) **NOTICE OF MOTION AND MOTION TO** <br> ) **STAY RICOH'S CUSTOMER SUIT AND** <br> ) **MEMORANDUM OF POINTS AND** <br> ) **AUTHORITIES IN SUPPORT THEREOF** <br> ) <br> ) Date:     December 16, 2003 <br> ) Time:     9:30 a.m. <br> ) Place:    Courtroom 11, 19th Floor <br> ) <br> ) |

Case No. CV 03-04669 MJJ
MOTION TO STAY
P:\8001425

HOWREY
SIMON
ARNOLD &
WHITE

1        **NOTICE OF MOTION AND RELIEF REQUESTED**

2        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on December 12, 2003, at 9:00 A.M., or as soon thereafter as

4    counsel may be heard in Courtroom 7 of the above-entitled Court, defendants Aeroflex Incorporated

5    ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox

6    Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech,

7    Inc. ("Matrox Tech") (collectively "Delaware defendants") will seek an order from this Court staying

8    plaintiff Ricoh Company, Ltd.'s ("Ricoh") patent infringement action against these customers of

9    Synopsys, Inc. ("Synopsys"). The Delaware defendants' motion is based on the following

10   memorandum of points and authorities, the Declaration of Erik K. Moller ("Moller Decl.") and

11   exhibits thereto, all pleadings and papers in the Court's file, the arguments of counsel, and any

12   additional evidence this Court may consider at the time of the hearing.

13       The Delaware defendants seek an order from this Court staying the customer suit brought by

14   Ricoh, which is based solely on its claim that the Delaware defendants' use of Synopsys's Design

15   Compiler? software infringes claims 13-20 of United States Patent No. 4,922,432 (the "'432 patent"),

16   pending the resolution of Synopsys's action before this Court which seeks a declaratory judgment that

17   the '432 patent is invalid and not infringed by the use of Synopsys's Design Compiler? software.

18       **MEMORANDUM OF POINTS AND AUTHORITIES**

19   **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

20       Earlier this year, Ricoh brought the instant patent infringement action in the U.S. District Court

21   for the District of Delaware. Ricoh's action accuses six of Synopsys's customers (the Delaware

22   defendants) of infringing Ricoh's '432 patent based on their use of Synopsys's Design Compiler?

23   software. Although Synopsys was not named in that action, Synopsys and its Design Compiler?

24   software have always been the real targets of Ricoh's action against these Synopsys customers.

25       Subsequently, Synopsys brought an action in this Court seeking a declaratory judgment that

26   both the '432 patent and the related United States Patent No. 5,197,016 (the "'016 patent") are invalid

27   and not infringed by the use of Synopsys's Design Compiler? software. Synopsys filed this

28

**HOWREY**
**SIMON**          Case No. CV 03-04669 MJJ
**ARNOLD &**       MOTION TO STAY
**WHITE**

1    declaratory judgment action to, among other things, prevent additional customers from being preyed

2    upon by Ricoh.

3        A little more than a month ago, the Delaware court agreed with the Delaware defendants that

4    Ricoh's infringement action against them was essentially one between Ricoh and Synopsys that would

5    best be litigated in the Northern District of California. *See* Memorandum and Order dated August 29,

6    2003 at 5 (Moller Decl., Exh. A) ("[T]he court concludes that Ricoh's infringement claims against the

7    defendants are fundamentally claims against the ordinary use of Synopsys's Design Compiler."").

8    Significantly, the Delaware court found that "the California court's determination regarding

9    infringement and validity of the '432 patent will efficiently dispose of the infringement issues

10   regarding Synopsys's customers in this case." *See id.* Based on these conclusions, the Delaware court

11   decided to transfer Ricoh's infringement action to this district.

12       Importantly, Ricoh has never identified *any* action taken by any of the Delaware defendants

13   beyond the ordinary use of Synopsys's Design Compiler® software as an act that infringes the '432

14   patent.

15       The Delaware defendants now seek an order from this Court staying this action against

16   Synopsys's customers for the precise reasons that the Delaware Court transferred this action from the

17   Delaware district court; this case is one between Synopsys and Ricoh, and the central issues in this

18   action will be most efficiently litigated between Synopsys and Ricoh in Synopsys' declaratory

19   judgment action, and without the Delaware defendants.

20   **II.    STATEMENT OF ISSUES TO BE DECIDED**

21       *Whether this Court should stay the "customer suit" brought by Ricoh for infringement of its*

22   *'432 patent against Synopsys's customers (the Delaware defendants) pending the outcome of*

23   *Synopsys's action seeking a declaratory judgment that the '432 patent and the related '016 patent are*

24   *invalid and the use of Synopsys's Design Compiler® software does not infringe those patents?*

25       Federal Circuit precedent requires that a manufacturer's declaratory judgment suit should be

26   given preference over a patentee's suit against the manufacturer's customers when those customers are

27   being sued for their ordinary use of the manufacturer's products. This means that if the prosecution of

28   the manufacturer's declaratory judgment action advances the major issues (such as patent infringement

HOWREY
SIMON
ARNOLD &
WHITE
Case No. CV 03-04669 MJJ
MOTION TO STAY

1  and patent validity) present in the "customer suit" then the district court may stay that suit pending the

2  outcome of the manufacturer's declaratory judgment action. Such a stay is warranted even where there

3  are additional issues in the suit against the customers.

4        Here the Delaware court has already concluded that Synopsys's declaratory judgment action is

5  entitled to preference over Ricoh's infringement action against Synopsys's customers when it

6  transferred that customer suit to this district. The Delaware court found that Ricoh's infringement

7  action was fundamentally one "against the ordinary use of Synopsys's Design Compiler" and that this

8  Court's "determination regarding infringement and validity of the '432 patent will efficiently dispose

9  of the infringement issues regarding Synopsys's customers in this case." Similarly, this Court has also

10  found that Ricoh's claims against Synopsys's customers "are necessarily allegations against the

11  primary use of the Design Compiler itself."

12        Based on these conclusions, staying Ricoh's customer suit would unquestionably avoid

13  unnecessary and duplicative litigation as well as the prejudice to these customer defendants by such

14  litigation. Equally apparent is the lack of any prejudice to Ricoh from a stay since the threshold issues

15  of validity and infringement in the declaratory judgment action are precisely the same as those in

16  Ricoh's customer suit. Accordingly, if Ricoh prevails in the declaratory judgment action it has

17  advanced its case on those issues whereas if Synopsys prevails in the declaratory judgment action the

18  customer suit is moot. Given the above findings already made by this Court and the Delaware Court,

19  this Court must now decide whether to exercise its discretion and stay Ricoh's infringement action

20  against these Synopsys customers pending the outcome of Synopsys's declaratory judgment action.

21  **III.    STATEMENT OF RELEVANT FACTS**

22        In its January 23, 2003 complaint, Ricoh accused each of the Delaware defendants of infringing

23  Ricoh's '432 patent. However, Ricoh's infringement action targets the ordinary use of Synopsys's

24  Design Compiler? software. This is demonstrated by the discovery received from Ricoh in this

25  action, the admissions by Ricoh, and the letters sent by Ricoh to other Synopsys customers.

26        First, Ricoh's Rule 30(b)(6) designee regarding its pre-filing investigation for this action, Mr.

27  Ishijima, testified that the decision to sue each of the defendants was based on information regarding

28  the operation of Synopsys's Design Compiler? software and the fact that each of the customer

1   defendants were using that software to design integrated circuits. *See* Moller Decl., Exh. B at 47:8-

2   53:1. According to Mr. Ishijima, Ricoh only knew that the Delaware defendants used the Design

3   Compiler? software and did not even consider the specifics of how any of the defendants were using

4   the Design Compiler? software or whether any of them were using any other software or taking any

5   additional steps when designing their integrated circuits. *See id.* Ricoh's decision to bring its

6   infringement action against these six Synopsys customers, therefore, was based solely on their ordinary

7   use of the Design Compiler? software. Thus, the specifics of each of these customers design efforts

8   are simply not material to the infringement question in this case.

9         Second, Ricoh's responses to each of the Delaware defendants' interrogatories also

10  demonstrate that it is the use of Synopsys's Design Compiler software? that is at issue in Ricoh's

11  infringement action against these Synopsys customers. *See* Moller Decl., Exh. C. These

12  interrogatories sought the particular acts forming Ricoh's basis for its infringement action against each

13  of these defendants. *See id.* at 5-8. Ricoh's response, for each of the Delaware defendants, was

14  identical and relied entirely on their ordinary use of the Design Compiler? software:

15        "Ricoh asserts that [defendant] infringes at least claim 13 of the '432 patent based, *inter alia* on
          the use by [defendant] of Synopsys's Design Compiler for the design of ASIC products. Such
16        use, for example, involves the input to Design Compiler of flowcharts or hardware description
          languages that describe behavioral aspects of an ASIC under design. Design Compiler is then
17        used to draw on its technology, symbol, DesignWare, and/or other libraries to synthesize the
          hardware cells to be implemented in the desired ASIC as needed to perform the functions
18        described by a given input description."

19  *Id.* at 6.

20  Ricoh has also admitted to defendant, AMI, that it charged AMI with infringing the '432 patent simply

21  because it uses Synopsys's Design Compiler? software. *See* Moller Decl., Exh. D. Again, this was

22  the only basis identified by Ricoh. *See id.*

23        Not only does the discovery provided by Ricoh and its admissions demonstrate that its

24  infringement action is based on the ordinary use of Synopsys's Design Compiler? software, but the

25  letters sent by Ricoh to other Synopsys customers leads to the same conclusion—Ricoh's infringement

26  claim is focused exclusively on the customer's ordinary use of Synopsys's Design Compiler?

27  software. *See* Moller Decl., Exh. E:

28        "We are writing to you on behalf of Ricoh Company Ltd. because we are aware that your
          company is involved with the design of custom ICs that include application specific designed



Case No. CV 03-04669 MJJ                                    -5-
MOTION TO STAY

1    circuitry. We understand that in designing these circuits, you use a computer-aided design
     system obtained from Synopsys, including Design Compiler."

3    *Id.*

4    Recently, on August 29, 2003, Judge Sleet of the United States District Court for the District of

5    Delaware entered an order transferring the Delaware litigation to the Northern District of California.

6    (*See* Moller Decl., Exh. A at 5). Not surprisingly, Judge Sleet's decision was based on, among other

7    things, his conclusion "that Ricoh's infringement claims against the [Delaware] defendants are

8    fundamentally against the ordinary use of Synopsys's Design Compiler." *See id.*

9    Just a few weeks ago, this Court also concluded, in denying Ricoh's motion to dismiss

10   Synopsys's declaratory action, that Ricoh's "claims against [Synopsys's] customers are necessarily

11   allegations against the primary use of Design Compiler itself." Moller Decl., Exh. F at 9:14-15.

12   Thus, as both this Court and the Delaware court have recognized, Ricoh has never identified

13   anything other than the ordinary use of Synopsys's Design Compiler? software as a basis for claiming

14   infringement of its '432 patent. There is no question that Ricoh's '432 patent infringement action

15   targets the ordinary use of Synopsys's Design Compiler® software.

16   **IV.    ARGUMENT**

17   **A.    The Legal Standard for Granting Stays**

18   "[T]he power to stay proceedings is incidental to the power inherent in every court to control

19   the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

20   for litigants." *Landis v. North American Co.*, 229 U.S. 248, 254 (1936):

21       A trial court may with propriety, find it efficient for its own docket and the fairest course for
         the parties to enter a stay of an action before it, pending resolution of independent proceedings
22       which bear upon the case. This rule applies whether the separate proceedings are judicial,
         administrative, arbitral in character, and does not require that the issues in such proceedings are
23       necessarily controlling of the action before the courts. In such cases the court may order a stay
         of the action pursuant to its power to control its docket and calendar and to provide for a just
24       determination of the cases pending before it.

25   *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864-65 (9th Cir.), *cert. denied*, 444 U.S.

26   827 (1979) (citations omitted).

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
MOTION TO STAY

-6-

1    The Ninth Circuit has recognized that the following competing interests should guide the

2    district court's decision of whether to exercise its discretion and grant a stay of a pending action. *See*

3    *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir 1962); *see also Cohen v. Carreon*, 94 F. Supp. 112,

4    115 (D. Or. 2000):

5    > the possible damage which may result from the granting of a stay, the hardship or inequity
   > which a party may suffer in being required to go forward, and the orderly course of justice
6    > measured in terms of the simplifying or complicating of issues, proof, and questions of law
   > which could be expected from a stay.

7    *Accord, Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("When considering a

8    motion to stay, the district court should consider three factors: (1) potential prejudice to the non-

9    moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the

10   judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact

11   consolidated.").

12   As demonstrated below, the competing interests identified by the Ninth Circuit will generally

13   weigh heavily in favor of staying a patent infringement action brought by a patentee against a

14   manufacturer's customers—i.e., a "customer suit"—pending the resolution of the manufacturer's

15   declaratory judgment action based on that same patent.

16   **B.    Customer Suits Should Be Stayed Pending The Resolution Of The Manufacturer's
17        Declaratory Judgment Action On The Same Patent**

18   The Federal Circuit has determined that "litigation against or brought by the manufacturer of

19   infringing goods takes precedence over a suit by the patent owner against customers of the

20   manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This preference is

21   based on "the recognition that, in reality, the manufacturer is the true defendant in the customer suit

22   [since] a manufacturer must protect its customers, either as a matter of contract, or good business, or in

23   order to avoid an adverse ruling against its products." *Id.* (quoting *Codex Corp. v. Milgo Electronic*

24   *Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)). It is, therefore, within a district court's discretion to stay

25   a patent infringement customer suit when there is a suit by the manufacturer that will resolve the major

26   issues such as patent infringement and patent validity in that customer suit. *See Katz*, 909 F.2d at

27   1464; *Refac International, Ltd., v. IBM*, 790 F.2d 79, 81, *aff'd on reconsideration in relevant part by*

28

**HOWREY
SIMON
ARNOLD &
WHITE**

Case No. CV 03-04669 MJJ
MOTION TO STAY

1   798 F.2d 459 (Fed. Cir. 1986) (affirming stay of customer suit in favor of suit against manufacturer);

2   *Whelen Technologies, Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715 (N.D. Ill. 1990) (staying customer

3   suit pending outcome of manufacturer's suit); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842

4   (W.D. Pa. 1988) (same).

5        In *Katz*, the Federal Circuit affirmed the district court's stay of a customer suit based on the

6   manufacturer's representation that the resolution of the major issues such as patent infringement and

7   patent validity in its own action would resolve these issues as to its customers. *See Katz*, 909 F.2d at

8   1464. The Federal Circuit recognized that the prosecution of the stayed action against the customers

9   would be advanced if the patentee is successful against the manufacturer and may well be mooted if

10   the patentee is unsuccessful. *See id.* The Federal Circuit, however. was not at all concerned by the

11   fact that there may be additional issues involving the defendants in the stayed action. *See id.*

12     **C.**     **Ricoh's Customer Suit Should Be Stayed Pending The Resolution of Synopsys's**

13           **Declaratory Judgment Action**

14        Here, the Delaware court has already determined that Ricoh's action against the Delaware

15   defendants is a customer suit and that this Court's "determination regarding infringement and validity

16   of the '432 patent will efficiently dispose of the infringement issues regarding Synopsys's customers in

17   this case." Moller Decl., Exh. A at 5. These conclusions were based on that court's finding that

18   "Ricoh's infringement claims are fundamentally claims against the ordinary use of Synopsys's Design

19   Compiler." *Id.* Similarly, this Court has also found that Ricoh's "claims against [Synopsys's]

20   customers are necessarily allegations against the primary use of Design Compiler itself." Moller Decl.,

21   Exh. F at 9:14-15. Such findings are also evident from Ricoh's own statements in its pleadings, in

22   discovery, in court, and to the defendants. *See e.g.,* Moller Decl., Exh. C at 6.

23        Like the suit against the manufacturer in *Katz*, therefore, Synopsys's declaratory judgment

24   action is entitled to preference over Ricoh's action against the Delaware defendants. Specifically,

25   Synopsys's declaratory judgment action's resolution of the common questions of whether the '432

26   patent is valid and infringed by the use of Synopsys's Design Compiler? software will advance

27   Ricoh's infringement action if Ricoh is successful or will completely render that action against

28   Synopsys's customers moot if Ricoh is unsuccessful. The Delaware court recognized this when it

HOWREY
SIMON
ARNOLD &
WHITE   Case No. CV 03-04669 MJJ
MOTION TO STAY       -8-

1    decided to transfer Ricoh's infringement action to this district. *See* Moller Decl., Exh. A at 5.

2    Therefore, Ricoh's customer suit should be stayed pending the outcome of Synopsys's declaratory

3    judgment action.

4          For these same reasons, granting the instant motion to stay will not result in any prejudice to

5    Ricoh. Ricoh will have every opportunity to litigate issues central to both actions in Synopsys's

6    declaratory judgment action. Again, the Delaware court recognized this when it concluded that "based

7    on the outcome of the [declaratory judgment case], either Synopsys will prevail and use of the Design

8    Compiler? software will be determined to be non-infringing, or Ricoh will prevail, and Synopsys will

9    be forced to pay damages or license the patent." *Id*. Moreover, the Delaware defendants have all

10   agreed to be bound by the outcome of Synopsys's declaratory judgment action against Ricoh on issues

11   relating to Synopsys's Design Compiler® software, including whether the ordinary use of Design

12   Compiler® infringes the '432 patent and invalidity. *See* Moller Decl., ¶ 8. Thus, the requested stay

13   will not harm Ricoh.

14         Moreover, the Delaware defendants have already been forced to respond to a total of 11

15   interrogatories, 42 document requests, 20 requests for admissions, and 6 deposition notices to date.

16   *See* Moller Decl., ¶ 9. Ricoh will certainly continue seeking discovery in this action, thus, subjecting

17   the Delaware defendants to additional burdens and expense. All of this will also no doubt require

18   additional efforts by the Court and these six defendant customers and is completely unnecessary since

19   Synopsys's declaratory judgment action will likely render this action against Synopsys's customers'

20   moot. Thus, staying Ricoh's customer suit will certainly relieve all of the customer defendants of the

21   unwarranted hardship of defending against it.

22         Finally. staying Ricoh' action against the Delaware defendants will also yield significant

23   economies and efficiencies for the Court and avoid unnecessary hardship on these six customer

24   defendants. Specifically, as demonstrated by the evidence and the Delaware court's findings, the

25   Delaware defendants are superfluous to the determination of the central issues of validity and

26   infringement and add only unnecessary complexity to the present dispute between Ricoh and the true

27   defendant—Synopsys.

28

1  **V.    CONCLUSION**

2      Both this Court and the Delaware court have determined that Ricoh's infringement action is

3  essentially against the ordinary use of Synopsys's Design Compiler? software by its customers.  The

4  Delaware court has also determined that Synopsys's declaratory judgment action is entitled to

5  preference since this Court's determination will either advance or dispose of Ricoh's infringement

6  action.  Staying Ricoh's customer suit will avoid duplicative litigation and the prejudice to these

7  customer defendants, and will in no way prejudice Ricoh.  Moreover, staying the customer suit will

8  result in efficiencies for the Court as well.  For all the foregoing reasons, therefore, Ricoh's action

9  against the Delaware defendants should be stayed pending the resolution of Synopsys's declaratory

10 judgment action.

11 Dated:  November 7, 2003                    Respectfully submitted,

12                                             HOWREY SIMON ARNOLD & WHITE, LLP

13

14                                             By:    /s/ _____

15                                                    Thomas C. Mavrakakis
                                                      Attorneys for Defendants
16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                          -10-
MOTION TO STAY

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                         NORTHERN DISTRICT OF CALIFORNIA

7                             SAN FRANCISCO DIVISION

8  RICOH COMPANY LTD.,                    )  Case No. CV 03-04669 MJJ
                                          )
9              Plaintiffs,                )  **[PROPOSED] ORDER GRANTING**
                                          )  **DEFENDANTS' MOTION TO STAY**
10     vs.                                )  **RICOH'S CUSTOMER SUIT**
                                          )
11 AEROFLEX, INC., ET AL.,                )  Date:    December 16, 2003
                                          )  Time:    9:30 a.m.
12             Defendants.                )  Ctrm:    Courtroom 11, 19th Floor
                                          )

13

14        This matter came before the Court on December 12, 2003 on motion by defendants Aeroflex

15 Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd.

16 ("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"),

17 and Matrox Tech, Inc. ("Matrox Tech") (collectively "Delaware defendants") seeking an order staying

18 plaintiff Ricoh Company, Ltd.'s ("Ricoh") patent infringement action against these customers of

19 Synopsys, Inc. ("Synopsys").

20        After consideration of the papers filed in support of the motion, any papers filed in opposition,

21 and any oral argument of counsel, the Court finds that:

22        1.    This action is fundamentally one alleging that the Delaware defendants' ordinary use of

23 Synopsys' Design Compiler® infringes Ricoh's U.S. Patent No. 4,922,432, and Ricoh's claims against

24 Synopsys' customers are necessarily allegations against the use of Design Compiler®.

25        2.    Synopsys has brought a declaratory judgment action against Ricoh in this Court seeking

26 a declaration that both the '432 patent and the related United States Patent No. 5,197,016 ("the '016

27 patent) are invalid and not infringed by the use of Synopsys' Design Compiler? software. *See*

28 *Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. CV 03-02289 MJJ.

HOWREY
SIMON
ARNOLD &
WHITE
Case No. CV 03-04669 MJJ
[PROPOSED] ORDER GRANTING DEFENDANTS'
MOTION TO STAY RICOH'S CUSTOMER SUIT

1   3.  Federal Circuit precedent requires that a manufacturer's declaratory judgment suit

2 should be given preference over a patentee's suit against the manufacturer's customers when those

3 customers are being sued for their ordinary use of the manufacturer's products. *See Katz v. Lear*

4 *Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

5   4.  Both this Court and the United Stated District Court for the District of Delaware have

6 found that Synopsys's declaratory judgment action should take precedence over Ricoh's patent

7 infringement action against Synopsys's customers. *See* Exhibit E and F to Declaration of Erik K.

8 Moller In Support of Motion to Stay Ricoh's Customer Suit.

9   5.  A stay of this action would avoid unnecessary and duplicative litigation and limit any

10 prejudice to the Delaware defendants resulting from this unnecessary litigation.

11   6.  Furthermore, a stay of this action would not lead to any prejudice to Ricoh since the

12 threshold issues of validity and infringement in the declaratory judgment action are precisely the same

13 as those in Ricoh's customer suit.

14   THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that this action is stayed

15 pending the resolution of *Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. CV 03-02289 MJJ,

16 currently before this Court.

17 Dated: _____, 2003   _____

18             Hon. Martin J. Jenkins
               Judge, United States District Court

19

20 Submitted November 7, 2003 by: Howrey Simon Arnold & White. LLP

21

22 By: _____

23    Erik K. Moller
    301 Ravenswood Avenue

24    Menlo Park, CA 94025
    Telephone: (650) 463-8100

25    Facsimile: (650) 463-8400

26    Attorneys for Defendants

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ     -2-
[PROPOSED] ORDER GRANTING DEFENDANTS'
MOTION TO STAY RICOH'S CUSTOMER SUIT



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

CHRISTOPHER L. KELLEY
PARTNER
650.463.8113
kelleyc@howrey.com

November 11, 2003

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

      Re:   *Ricoh Company, Ltd. v. Aeroflex, Inc. et al.*
           <u>Case No CV 03-04669 MJJ</u>

Dear Edward:

    This letter is in response to your correspondence of November 11, 2003, regarding our request for an expedited briefing schedule for the Defendants' motion to stay.

    We initially proposed that the parties stipulate to an expedited briefing schedule on Friday, November 7, but had no response from Ricoh. Instead Ricoh today filed three motions to compel (with 600 pages of exhibits) on discovery that is largely peripheral to the real issues in the underlying dispute between Ricoh and Synopsys. If the Court grants the Defendants' motions for stay, Ricoh's discovery requests will be moot. We believe, therefore, that it would be more efficient for the parties and the Court to first resolve the question of whether a stay should be granted before turning to specific discovery disputes.

    Your letter imposes impossible conditions on our proposal to shorten time. The Defendants have no control over the Court's calendar and cannot guarantee that a Case Management Conference date would be available. The fact that the Court set the date in February 2004 suggests that this is the first available date. Furthermore, your proposal that Judge Jenkins hear your discovery motions is at odds with Judge Jenkins's standing order, which provides that all discovery disputes are to be directed to a magistrate judge for hearing.

    Your counter-proposal is, therefore, unacceptable. Please let us know by the close of business on Wednesday, November 12, 2003, if Ricoh is amenable to the briefing schedule that we proposed in our November 7, letter.

                Very truly yours,

                Christopher L. Kelley

BRUSSELS   CHICAGO   HOUSTON   IRVINE   LONDON   LOS ANGELES   MENLO PARK   SAN FRANCISCO   WASHINGTON, DC

D I C K S T E I N   S H A P I R O   M O R I N   & O s H I N S K Y   L L P

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*

*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

November 11, 2003

<u>**Via Facsimile: 650-463-8400**</u>
<u>**Confirmation By Mail**</u>

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
750 Bering Drive
Houston, TX  77057-2198

> Re:   *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
>        Civil Action No. 03-103-GMS
>        Our Ref.:  R2180.0171

Dear Erik:

Your letter dated October 20, 2003 (but sent November 7, 2003) totally mischaracterizes the Aeroflex defendants' and Synopsys' unilateral refusal to provide any discovery, first on the grounds that the Aeroflex defendants planned to move for a stay in the future and more recently on the grounds that they have now moved, as a "dispute" between the parties.

Since it is clear that the Aeroflex defendants and Synopsys will continue the unilateral refusal to provide discovery, early intervention by the Court is appropriate. That intervention should involve not only the motion to stay, but also the Case Management Conference and our motion to compel discovery. If the court will agree to any early hearing on the motions and set a Case Management Conference in December, we will join in a stipulation to that effect. Considering all the time you took to prepare and serve the motion for a stay and the fact that November 11 is a federal holiday, we believe the reply brief filing date should be set five calendar days before the hearing with the opposition briefs one week before the reply brief date.

Very truly yours,

Edward A. Meilman

EAM/hc
cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.
       Jeffrey Demain, Esq.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

RECEIVED

JUN 0 2 2003

Robert W. Whetzel

| | | |
|---|---|---|
| RICOH COMPANY, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP., and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' INITIAL DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendants Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics, Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech, Inc. ("Matrox Tech") (Matrox, Matrox Graphics, Matrox Int'l, and Matrox Tech are collectively referred to as "the Matrox entities") (Aeroflex, AMIS and the Matrox entities are collectively referred to as "Defendants"), hereby make the following Initial Disclosures. These disclosures are based on information reasonably available to Defendants at the present time. Defendants' investigation of the facts of this case is ongoing. Therefore, Defendants reserve the right to supplement these disclosures when and if additional information becomes available.

Defendants' disclosures are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose,

-1-

in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these disclosures. All of the following disclosures are made subject to the above objections and qualifications.

A.    **Individuals with Discoverable Information**

Pursuant to Fed. R. Civ. P.26(a)(1)(A), Defendants list the following individuals who are likely to have discoverable information relevant to the disputed facts in this action. In disclosing the individuals whom are employees, consultants or former employees of Defendants, Defendants do not authorize any effort by plaintiff Ricoh Company, Ltd., ("Ricoh") to contact individuals associated with any of the Defendants in connection with this lawsuit, except through appropriate counsel.

| <u>Name and Address</u> | <u>Subject Matter</u> |
|---|---|
| <u>Aeroflex</u> | |
| Peter Milliken<br>Director, Semi-Custom Products & Services<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| John Reinert<br>Director, Program Management<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| Vern Schnathorst<br>Design Manager, Standard Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |

| | |
|---|---|
| Brandon Coco<br>Principal ASIC Engineer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| James Webster<br>Product Design Engineer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| Anthony Jordan<br>Director, Standard Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| David Kerwin<br>Director, Mixed-Signal Products<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Design and development of Aeroflex' ASIC products |
| Richard Bruder<br>Chief Financial Officer<br>Aeroflex UTMC Microelectronic Systems, Inc.<br>4350 Centennial Blvd.<br>Colorado Springs, CO 80907 | Financial |

AMIS

| | |
|---|---|
| Jon Stoner<br>Chief Technology Officer<br>AMI Semiconductor, Inc.<br>2300 Buckskin Road<br>Pocatello, ID 83201 | Design and development of AMIS' ASIC products |
| Bob Kirk<br>Director, Applications Engineering-Digital ASICs<br>AMI Semiconductor, Inc.<br>P.O. Box 967<br>22960 Vantage Pointe Dr., Ste A<br>Twain Harte, CA 95383 | Design and development of AMIS' ASIC products |

-3-

<u>Matrox entities</u>

Erik Boisvert                                    Design and development of the Matrox
Senior Engineer                                  entities' ASIC products
Matrox Electronic Systems Ltd.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

David Chiappini                                  Design and development of the Matrox
ASIC Project Director                            entities' ASIC products
Matrox Graphics Inc.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Ed Dwyer                                         Design and development of the Matrox
Executive Vice-President                         entities' ASIC products
Matrox Graphics Inc.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

Andres Desbiens                                  Financial
Corporate Controller
Matrox Electronic Systems Ltd.
1055, boul. St-Régis
Dorval (Québec),
Canada H9P 2T4

<u>Other Individuals</u>

        To the extent Ricoh is advancing a claim construction that would read on the

Defendants' logic design or logic synthesis practices, such a claim construction would be

anticipated by a multitude of prior art logic synthesis systems and prior art logic design

practices. Persons with knowledge of such prior art include Aart de Geus, CEO of

Synopsys, Inc. ("Synopsys"), Mountain View and Sunnyvale, California, and David

Gregory, William Cohen, and Karen Bartlett, all previously associated with Synopsys.

Messers. de Geus, Gregory, and Cohen, and Ms. Bartlett all have knowledge of the prior

"Socrates" logic synthesis system; Paul Drongowski of Compaq Corporation, address

unknown, who has knowledge of the prior art "Gdl" synthesis system; John Darringer, address unknown, who has knowledge of the prior art "LSS" logic synthesis system; and Kurt Keutzer, Department of Electrical Engineering and Computer Sciences, University of California at Berkeley, who has knowledge about the prior art "Dagon" synthesis system. Other prior art logic synthesis systems are believed to be relevant and will be identified as defendants obtain more information about these systems.

In addition, Defendants believe that a number of additional individuals are likely to have personal knowledge about prior art relating to logic synthesis systems and logic design practices, including individuals at Cadence Design Systems, Inc., San Jose, California, Monterey Design Systems, Sunnyvale, California, Magma Design Automation, Cupertino, California, Get2Chip, Inc., San Jose, California, Incentia Design Systems, Inc., Santa Clara, California, Stanford University, Stanford California, University of California at Berkeley, Berkeley, California, University of Southern California, Los Angeles, California, and Carnegie-Mellon University, Pittsburgh, Pennsylvania.

Defendants additionally believe that a number of present or former employees of Ricoh, International Chip Corporation and Knowledge Based Silicon are likely to have information about the scope of the subject matter of the claims of U.S. patent number 4,922,432 (the "'432 patent") and about Defendant's laches and equitable estoppel defenses, including at least Hideaki Kobayashi, address unknown, Masahiro Shindo, address unknown, and James P. Davis, Department of Computer Science and Engineering, University of South Carolina, Columbia, South Carolina.

**B.    Documents**

Defendants identify the following categories of documents and tangible things in the possession, custody or control of Defendants located at, among other places, their principal places of business that are relevant to the disputed facts in this action.

-5-

1.      Product design and development materials

2.      Marketing and promotional materials

3.      Sales and accounting statements

4.      Correspondence

5.      Reports

6.      Presentations

7.      Publications

8.      Electronic files

Defendants are in the process of providing the documents described in Items 1 through 8 above to their counsel.

Defendants reserve the right to supplement these disclosures should new information become available.

**C.    Computation of Damages**

Defendants seek attorneys' fees and costs. Although the total amount of Defendants' fees and costs are unknown at this time, Defendants reserve the right to supplement this Disclosure as discovery proceeds and additional information becomes available.

**D.    Insurance Policies**

There are no insurance policies referred to in Fed. R. Civ. P. 26(a)(1)(D) that Defendants are aware of at this time.

Dated: May 30, 2003                    By:  _____
                                            Teresa M. Corbin
                                            Christopher L. Kelley
                                            Erik K. Moller
                                            HOWREY SIMON ARNOLD &
                                            WHITE, LLP
                                            301 Ravenswwood Ave.
                                            Menlo Park, CA 94025
                                            Telephone: (650)463-8100

-6-

Attorneys for Defendants/
Counterclaimants AEROFLEX
INCORPORATED, AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD.,
MATROX GRAPHICS INC.,
MATROX INTERNATIONAL CORP.
and MATROX TECH, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Initial Disclosure Statement of Intervenor Synopsys, Inc. was served this 20th day of May, 2003 on the following First Class U.S. Mail:

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Gayle L. Jacob

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RECEIVED

JUN 0 2 2003

Robert W. Whetzel

| | |
|---|---|
| RICOH COMPANY, LTD., ) | |
| ) | |
| Plaintiff, ) | C. A. No 03-103 GMS |
| ) | |
| ) | |
| AEROFLEX INCORPORATED, ET AL, ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF SERVICE

The undersigned hereby certifies that on May 30, 2003, copies of Defendants' Initial

Disclosure Statement were served upon the following counsel of record:

Via First Class Mail
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, New York 10036-2714

Via First Class Mail
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

The undersigned further certifies that on June 2, 2003, copies of Defendants' Initial

Disclosure Statement were served upon the following counsel of record in the manner indicated:

Via Hand Delivery
Robert W. Whetzel
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19801

<u>Via Federal Express</u>
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, New York 10036-2714

<u>Via Federal Express</u>
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

CONNOLLY BOVE LODGE & HUTZ LLP

_____
Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
1220 Market Street
P.O. Box 2207
Wilmington, DE  19899-2207
(302) 658-9141

*Attorney for Defendants*

Of Counsel:

Teresa M. Corbin
Christopher L. Kelley
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
Telephone: (650) 463-8100

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on this 2nd day of June, 2003, a true and correct copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**VIA HAND DELIVERY**

Robert W. Whetzel, Esq.
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899
(302) 651-7700

**VIA FEDERAL EXPRESS**

Gary M. Hoffman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526
(202) 828-2228

**VIA FEDERAL EXPRESS**

Edward A. Meilman, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue of the Americas
New York, New York  10036
(212) 896-5471

Francis DiGiovanni

257809

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RICOH COMPANY, LTD., <br><br> Defendant. | CASE NO. C-03-2289-MJJ <br><br> CASE NO. C-03-4669-MJJ |
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AEROFLEX INCORPORATED, et al., <br><br> Defendants | **RICOH'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AND SUPPORTING BRIEF** <br><br> Date:  **January 6, 2004** <br> Time:  **9:30 a.m.** <br> Courtroom:  **11** |

## **TABLE OF CONTENTS**

BACKGROUND FACTS ............................................................................................................ 2

    A.   Ricoh's Consulting Relationship With Dr. Thomas ............................. 2

    B.   Howrey's Initial Contacts With Dr. Thomas And Their
        Conclusion That Retaining Him Would Be A Conflict Of
        Interest............................................................................................ 3

    C.   Howrey's Undisclosed Subpoena To And Retention Of Dr.
        Thomas............................................................................................ 4

    D.   Ricoh's Objection And Howrey's Belated "Investigation"
        Of Whether There Was A Conflict Of Interest................................. 7

    E.   Howrey's Representations During The July 30 Hearing
        And The Court-Ordered Investigation ........................................... 9

    F.   The August 28 Hearing And The Disregard Of The Court's
        Orders............................................................................................ 11

ARGUMENT ....................................................................................................................... 12

   I.     THE ASIC DEFENDANTS, SYNOPSYS AND HOWREY
        KNOWINGLY INDUCED DR. THOMAS TO SWITCH SIDES ................. 12

   II.    MISREPRESENTATIONS TO THE COURT................................................ 15

   III.   SYNOPSYS, THE ASIC DEFENDANTS AND HOWREY
        REFUSED TO COMPLY WITH JUDGE SLEET'S ORDERS ..................... 17

   IV.   SYNOPSYS AND THE ASIC DEFENDANTS SHOULD NOT
        BENEFIT FROM THEIR WRONGFUL CONDUCT ................................. 18

   V.    SANCTIONS ARE REQUIRED .................................................................... 19

      A.   Because Dr. Thomas Is A Tainted Witness, His Testimony
          Should Not Be Taken Or Admitted ............................................... 19

      B.   Ricoh Should Receive Its Fees and Expenses................................. 22

      C.   This Court Should Impose Sanctions Upon The Howrey
          Attorneys Responsible For the Improper Conduct .......................... 23

CONCLUSION..................................................................................................................... 24

**TABLE OF AUTHORITIES**

**CASES**

*Actel Corp. v. Quicklogic Corp.*, 1996 U.S. Dist. LEXIS 11815 (N.D. Cal. 1996) ....21, 23

*Advanced Cardiovascular System v. Medtronic, Inc.*, 47 U.S.P.Q. 2d (BNA) 1536
    (N.D. Cal. 1998)................................................................................................20

*Biocore Medical Tech., Inc., v. Khasrowshahi*, 181 F.R.D. 660 (D. Kan. 1998).............13

*Campbell Ind. v. M/V Gemini*, 619 F.2d 24 (9th. Cir. 1980) .............................................13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..................................................................20

*In Re Complex Asbestos Litigation*, 232 Cal. App. 3d 572..........................................21, 23

*Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575 (D.N.J. 1994)..........................18, 20, 21

*English Feedlot Inc. v. Norden Laboratories, Inc.*, 833 F. Supp. 1498
    (D. Colo. 1993) ...............................................................................................20

*Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996)..........................................13, 21

*Hansen v. Umtech Indus.*, 1996 Lexis 10949 (D. Del. 1996) ......................................19

*MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F. Supp. 712
    (D. Conn. 1991) ..............................................................................................21

*Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271 (S.D. Ohio 1988)......................20

*Rohn v. United States*, 2002 U.S. Dist. LEXIS 19122 (E.D. Cal. 2002) ....................20, 21

*Shadow Traffic* Network *v. Superior Court*, 24 Cal. App. 4th 1067
    (Cal. App. 1994) .......................................................................................21, 23

*Space Systems/Loral v. Martin Marietta Corp.*, 1995 U.S. Dist. LEXIS 22305
    (N.D. Cal. Nov. 14, 1995).................................................................................20

*Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080 (C.D. Cal. 2001)................................20

*Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050 (E.D. Cal. 1998)............................22, 23

*Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246 (E.D. Va. 1991) ..........................20

*Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858 (Fed. Cir. 1993) ..................................20

*Williams. v. Trans World Airlines, Inc.*, 588 F. Supp. 1037 (E.D. Mo. 1984) .................21

1
2
## STATUTES AND RULES

3    28 U.S.C. § 1927....................................................................................................................22
4    Fed. R. Civ. P. 26(b)(4)........................................................................................................17
5    Fed. R. Civ. P. 30(b)(1)........................................................................................................17
6    Fed. R. Civ. P. 45(b)(1)........................................................................................................17

7
## MISCELLANEOUS

8    2 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* § 3.4:402 (2d ed.
9        Supp. 1994)......................................................................................................................13

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>NOTICE OF MOTION AND RELIEF REQUESTED</u>**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 6, 2004, at 9:30 a.m. in Courtroom 11 of the above-referenced court plaintiff and declaratory judgment defendant Ricoh Company, Ltd. ("Ricoh"), will and hereby does move the Court for sanctions against declaratory judgment plaintiff Synopsys, Inc. ("Synopsys") in Case No. C-03-2289-MJJ; accused infringement defendants Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox Int'l. Corp. ("Matrox Int'l.") and Matrox Tech Inc. ("Matrox Tech") (collectively the "ASIC defendants") in Case No. C-03-4669-MJJ; and counsel for the foregoing parties in both cases, Howrey, Simon, Arnold & White ("Howrey"). This motion is based upon the intentional actions of Synopsys, the ASIC defendants and Howrey to wrongfully induce Ricoh's consulting expert, Dr. Thomas, to break his agreement with Ricoh, switch sides to become a consulting expert to Synopsys, misrepresent the relevant facts to Judge Sleet of the District of Delaware, then fail to comply with the Court's order with respect to the Court's investigation of the apparent fraud on the Court.

Ricoh bases this motion upon the following Memorandum of Points and Authorities, the supporting declarations and evidence, all pleadings on file in these cases, and such argument as may be heard by this Court. A proposed order is submitted herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Ricoh takes no pleasure in bringing this motion for sanctions. It would rather litigate the merits, but the alternative is to ignore the fact that Synopsys and the ASIC defendants have repeatedly violated the applicable rules when they persuaded one of Ricoh's experts who had received considerable Ricoh confidential information and attorney work product to switch sides, and then misrepresented the facts to the Court. The case law makes clear that such conduct will not be tolerated, and sanctions can include

1  the preclusion of the expert and the reimbursement of Ricoh's fees and costs. Ricoh defers to the

2  judgment of this Court with respect to the appropriate sanction as to the individuals involved.

3       Because the resolution of this motion is necessarily fact-dependent, half of this brief is dedicated

4  to recounting the facts relating to Ricoh's retention of Dr. Thomas, the circumstances behind his

5  switching sides to become a consultant for Synopsys at Howrey's behest, the representations to the

6  Delaware District Court, and the Court-ordered investigation into a potential fraud on the court.

7  **BACKGROUND FACTS**

8  **A.    Ricoh's Consulting Relationship With Dr. Thomas**

9       In May 2002, counsel for Ricoh contacted Dr. Thomas to inquire about his interest and

10  availability to consult with respect to Ricoh's investigation of potential infringement of the '432 patent.

11  (Ex. 1, Monsey Decl. ¶ 2.)[1] Dr. Thomas agreed to consult for Ricoh. (*Id.*) On May 29, 2002, Ricoh's

12  counsel sent to Dr. Thomas a confidentiality agreement which Dr. Thomas signed and returned the same

13  day. That agreement (Ex. 2) provided in relevant part:

14

15      I therefore agree that any information received by me during the discussions and/or consulting
    services concerning the affairs of Ricoh, including but not limited to patent and trade secret

16      information, system testing or experimentation conducted by Ricoh, and/or information
    concerning infringement investigations conducted by Ricoh, will be held by me in confidence

17      and will not be revealed to any other persons, firms or organizations. I realize that in the course
    of these discussions, DSMO may provide me with materials containing information of the type

18      described above. All information and materials provided to me will be held by me in confidence
    and will not be revealed to any other persons, firms or organizations. At the termination of either

19      our discussions and/or any subsequent consulting services, I agree to return all such materials
    and all copies thereof to DSMO.

20

21       In the next month, Ricoh's counsel sent hundreds of pages of documents to Dr. Thomas and

22  sought his evaluation. (Ex. 1, Monsey Decl. ¶¶ 3-5.) In June of 2002, Dr. Thomas sent Ricoh's counsel

23  a number of substantive e-mails containing his opinions regarding those documents and with respect to

24  the '432 patent. As set forth in greater detail in the attached declaration of Ricoh attorney Christopher

25  Monsey (Ex. 1), Dr. Thomas assisted Ricoh's counsel during its pre-litigation analysis of the '432

26  _____

27  [1] All exhibits cited herein are attached to the declaration of Kenneth W. Brothers, filed

28  contemporaneously with this motion.

Case Nos. C-03-2289-MJJ and C-03-4669-MJJ    Page - 2 -
RICOH'S MOTION FOR SANCTIONS

1   Patent. Between May 2002 and July 2003, Ricoh's counsel had multiple discussions with Dr. Thomas

2   regarding the interpretation, validity and infringement of the '432 Patent. Dr. Thomas studied and

3   commented on a large volume of documents, some of which he selected and some of which were

4   provided to him by counsel. He actively discussed the issues of defendants' liability under the '432

5   Patent. Dr. Thomas analyzed and discussed with Ricoh's counsel the strategies of Ricoh's case. Dr.

6   Thomas and Ricoh's counsel exchanged multiple substantive emails and had at least six lengthy phone

7   conversations where the parties discussed and formulated Ricoh's litigation strategy, claim

8   interpretation, and responses to affirmative defenses of non-infringement and invalidity that someone

9   might attempt to raise. Dr. Thomas billed and was paid for his consultations. Through these

10  confidential discussions, Dr. Thomas became well-informed of the heart of Ricoh's case strategy.

11

12  (Ex. 1, Monsey Decl. ¶¶ 5-15.)[2]

13         On June 27, 2002, Dr. Thomas submitted an invoice for $2436.83 in time and expenses for his

14  consulting work on the '432 patent. (Ex. 1, Monsey Decl. ¶ 17.) Ricoh authorized Dr. Thomas to

15  perform further consulting work relating to the '432 patent. (*Id.* ¶ 16.) For the rest of 2002, Ricoh's

16  counsel regularly communicated with Dr. Thomas with respect to the '432 patent. (*Id.* ¶ 15-19; 21-22.)

17  In January 2003, Ricoh sued the ASIC defendants.

18      **B.    Howrey's Initial Contacts With Dr. Thomas And Their Conclusion That Retaining**

19              **Him Would Be A Conflict Of Interest**

20         On March 31, 2003, Dr. Thomas received an email from Howrey attorney Louis Campbell

21  requesting him to consult for Synopsys. (Ex. 3, PTH000005.) Dr. Thomas responded the next day

22  indicating "I am interested, but I'm quite busy today." (Ex. 4, Thomas Dep. Tr. at 25; Ex. 5,

23  PTH000007.) Mr. Campbell sent a follow-up email to Dr. Thomas on April 3, again inquiring about

24  availability to serve as an expert. (Ex. 4, Thomas Dep. Tr. at 26; Ex. 6, PTH000009.) The next day, Dr.

25

26  _____

27  [2] If so requested by the Court, Ricoh is prepared to submit for in-camera review the large volume of
    documents provided to, received from and analyzed by Dr. Thomas, as well as a more specific
28  description of the work product that Dr. Thomas helped to generate.

1    Thomas responded that had already been retained by Ricoh's counsel to consult on the subject. (Ex. 4,

2    Thomas Dep. Tr. at 27-29; Ex. 7, PTH000011.)[3]  In response, Mr. Campbell sent an email to Dr.

3    Thomas stating:

4         Thank you for your interest in this matter, but Dickstein, Shapiro, Morin and Oshinsky is indeed
5         the counsel for the opposing side in this matter. ***This means that there is most likely a conflict if
          we would talk to you in detail about this matter. So, unfortunately, it appears that we cannot
6         go forward,*** but I thank you very much for your interest, and if things change or we happen to
          run into this technology in an unrelated matter, I will get back in touch with you.  However, one
7         thing you can do for us is to let us know about anyone else who is knowledgeable about this
          technology or its development, whether or not they were contemporaneously involved with its
8         development.

9    (Ex. 8, PTH000017, emphasis added; Ex. 4, Thomas Dep. Tr. at 32-33.)[4]  Ricoh learned about these

10   communications in August of 2003.

11        **C.    Howrey's Undisclosed Subpoena To And Retention Of Dr. Thomas**

12        On June 25, 2003, the ASIC defendants issued a subpoena for documents and a deposition of Dr.

13   Thomas (Ex. 9), but failed to serve Ricoh or to file a proof of service with the court.[5]  Dr. Thomas was

14   served on June 26, and he later testified that he assumed that notice had been provided to Ricoh, with

15   whom he was still under contract. (Ex. 4, Thomas Dep. Tr. at 40.)

16        On July 2, 2003, Dr. Thomas sent an email to Howrey attorney Campbell asking about

17
18   reimbursement. (Ex. 10, PTH000024.)  Mr. Campbell replied:

19        If you are no longer a consultant for Ricoh and Ricoh will not serve as your counsel during the
20        deposition nor work with you prior to the deposition, we may be willing to pay for your costs for
          copying documents and time spent at the deposition.  If you are no longer working with Ricoh,

21   _____

22   [3] The same day, April 4, 2003, Dr. Thomas informed Ricoh's counsel that he did not want to be a
23   testifying expert in this action, but could continue acting as a non-testifying expert. (Ex. 1, Monsey
     Decl. ¶ 19.)

24   [4] Despite knowing Dr. Thomas was a Ricoh expert, Mr. Campbell continued his correspondence with
25   Dr. Thomas about the pending litigation.  See Ex. 11 (six emails between April 10 and May 6, 2003).

26   [5] The failure to serve Ricoh was said to be "a screw-up" and appropriate steps were said to have been
     taken to ensure it would not happen again. (Ex. 12, 7/30/03 Tr. at 12.)  Since then, there has been a
27   failure to timely serve Ricoh with two other third party subpoenas, justified by a "practice . . . to provide
     opposing counsel with notice of process after service is successfully completed." (Ex. 13, Kelley
28   9/17/03 letter to Hoffman.)

please send us an estimate of the costs associated with the discovery we have requested. On the other hand, if you are still in a consulting relationship with Ricoh, you should contact Ricoh about covering your costs.

(Ex. 14, PTH000025.) Dr. Thomas responded:

> I have not been contacted by Ricoh (Dickstein, Shapiro …) for consulting since last summer. I spoke with them briefly on the phone this March, when you sent your original email to me. I told them I wouldn't be an expert witness for them during trial. They have not offered to serve as my counsel during the deposition, and *I assume that they know you subpoenaed me for documentation and deposition*. Have they listed me as a consultant?"

(Ex. 15, PTH000026; Ex. 4, Thomas Dep. Tr. 16-17, emphasis added.) Mr. Campbell's response did not address Dr. Thomas's assumption. Instead, even though the time for disclosing experts was more than seven months in the future, Mr. Campbell replied:

> I take it from your email that you do not believe yourself to be in an ongoing consulting relationship with Ricoh. *They have not listed you as a consultant in this case.* If my assumption is correct, please send us an estimate of your costs."

(Ex. 16, PTH000027, emphasis added; Ex. 4, Thomas Dep. Tr. at 17.) In response to Mr. Campbell's July 7 email, Dr. Thomas wrote:

> That's right, I don't see an ongoing relationship at this point. Let me explain that I was hired early last summer for ten hours of work. That was later extended by another ten. The second ten was never fully charged out. Also, the contract was never terminated either. But I've heard nothing from them since last summer, except for when I told them I wouldn't be a witness for them. I'll send them a note officially terminating that agreement.

(Ex. 17, PTH000028; Ex. 4, Thomas Dep. Tr. at 48.) Dr. Thomas has testified that he understood Mr. Campbell's statement that "they have not listed you as a consultant in this case," to mean "that this case is proceeding and I'm not listed. I'm not employed by anybody specifically for this case." (Ex. 4, Thomas Dep. Tr. at 19.) He assumed that, based on Mr. Campbell's answer to his question regarding listings of experts, that lists of consultants had been exchanged and that those lists did not identify him as a consultant for any party. (*Id.*) He did not think about why Mr. Campbell did not answer his question of whether the Howrey firm had advised Ricoh's counsel of the subpoena because he "was more surprised by the fact that I was not listed as a consultant in this case, and that overrode any other thoughts about this, why wasn't I." (*Id.* at 17-18.)

Mr. Campbell instructed Dr. Thomas to terminate his consulting contract with Ricoh before sending a cost estimate for his work on this case to Howrey. (Ex. 4, Thomas Dep. Tr. at 49; Ex. 18, PTH000033.)[6] Mr. Campbell sent Dr. Thomas an e-mail stating: "If you would be willing, we would be interested in pursuing a consulting relationship with you," and an e-mail expressing "enthusiasm" of the prospect of retaining him. (Ex. 19, PTH000042.) On July 10, 2003, Dr. Thomas confirmed that he had terminated his relationship with Ricoh and said, "I think I can be of great help to the defense." (Ex. 19, PTH000042; Ex. 4, Thomas Dep. Tr. at 51-53.) Mr. Campbell responded, "Great! Let me know when you get back from your vacation and we will get started." (Ex. 20, PTH000043.) Special arrangements were made to get the retainer agreement to Dr. Thomas at his vacation destination. (Ex. 4, Thomas Dep. Tr. at 56; Ex. 21, PTH000044-48.)

The Howrey-Thomas retainer agreement was on behalf of Synopsys, and not the ASIC defendants, even though the Delaware case was in the middle of discovery, while the Synopsys declaratory judgment complaint had just been filed. The Synopsys retainer agreement addressed confidentiality and the likelihood that Dr. Thomas had received confidential Ricoh information and had already formed opinions as a result of his Ricoh work:

> It is understood and agreed that your work under this agreement is for us and is done at our direction as attorneys in aid of litigation, and that all activities performed by you under this agreement, including, but not limited to, all communications, whether written or oral, between you and any attorney or other employee of the firm, or between you and any Synopsys employee or agent, are confidential and privileged matters which *you will maintain in confidence and secrecy and not reveal to any other person or use for any purpose* other than in connection with this case, except as authorized by us or required by law. You will promptly inform us of any contact or communication regarding this case from any other person, including, but not limited to attorneys or representative of Ricoh. . . .

> You agree that during the time you are acting as our consultant on behalf of Synopsys, Inc. you will not act as a consultant for, or on behalf of, Ricoh or any Ricoh affiliate (more than 25% owned or controlled by Ricoh) and will agree not to give expert testimony adverse to Synopsys, Inc. *We understand that you have consulted for Ricoh's counsel regarding design synthesis technology of the 1980s. We will not ask you disclose what information or opinions you*

---

[6] On July 8, Dr. Thomas sent an email to Rich's counsel terminating his agreement with Ricoh and its counsel. He did not disclose that he had communicated substantively with or agreed to consult for counsel for defendants. (Ex. 1, Monsey Decl. ¶ 24.)

***supplied to Ricoh's counsel and you should not reveal any Ricoh confidential information that may have been supplied to you.***

(Ex. 21, PTH000047, emphasis added.)  On July 21, 2003, Dr. Thomas sent his signed retainer agreement back to Howrey.  (Ex. 4, Thomas Dep. Tr. at 64.)

Critically, there is no evidence that, before Howrey retained Dr. Thomas, the attorneys did any investigation whatsoever into whether Dr. Thomas had access to any confidential information from Ricoh or its attorneys.  At a July 30, 2003 hearing – only nine days after Dr. Thomas was retained – Howrey attorney Chris Kelley admitted that Howrey's knowledge of Ricoh's relationship with Dr. Thomas, standing alone, presented at least the potential for the appearance of a conflict of interest:

> Yes, I was aware that we were certainly aware there was a possibility that he might have a conflict of interest, but he [Dr. Thomas] had indicated that he had not received any such information that would create a conflict.  If that's true, we wanted to get into that consulting relationship.

(Ex. 12, 7/30/03 Tr. at 15.)  Mr. Kelley further represented that, prior to retaining Dr. Thomas, Howrey had conducted an investigation to determine whether Dr. Thomas had received anything confidential from Ricoh, or whether he had received anything about case strategy, and that Dr. Thomas assured Howrey that he had not.  (*Id.* at 14-15.)  As shown below, however, the undisputed record shows that Howrey conducted no such investigation before Dr. Thomas was retained.

**D.    Ricoh's Objection And Howrey's Belated "Investigation" Of Whether There Was A Conflict Of Interest**

On July 22, 2003, Howrey provided, for the first time, notice that it had subpoenaed Dr. Thomas for a deposition on July 31; that Dr. Thomas has been retained by Howrey; and that the deposition would not go forward.  (Ex. 22.)[7]  Counsel for Ricoh immediately faxed objection letters to Dr. Thomas and Howrey.  (Ex. 23.)

---

[7] The letter is misdated as July 17, but as reflected on the fax cover sheet, it was not transmitted until July 22.

1    Dr. Thomas has testified that only after Ricoh objected was he ever asked by Howrey about

2    whether or not he had received Ricoh confidential information. (Ex. 4, Thomas Dep. Tr. at 71-74.) On

3    July 23, Dr. Thomas had a telephone conversation with Louis Campbell (who was on a speakerphone

4    but did not identify any other Howrey attorneys present) in which Mr. Campbell asked whether Dr.

5    Thomas received confidential information from Ricoh, and to characterize his communications with

6    Ricoh's counsel for Howrey.[8]  Although Dr. Thomas does not recall his exact response during the

7    conference call, he has testified that there was no question that he had received a considerable amount of

8    confidential information from Ricoh during conversations with Ricoh's counsel. (Ex. 4, Thomas Dep.

9    Tr. at 75-77.) Dr. Thomas also stated that, as a result of his consultancy for Ricoh, he had formed

10   opinions regarding Synopsys and the subject matter of the '432 patent prior to his retention by Synopsys

11   on July 21, 2003. (Ex. 4, Thomas Dep. Tr. at 61-62.)

12

13        Ricoh sought to assess the impact of defendants' actions relative to Dr. Thomas.  On July 23,

14   Ricoh's counsel requested that defendants and their attorneys agree to the following: 1) immediately

15   disclose all communications with or relating to Dr. Thomas, and produce all documents sent to or

16   received from Dr. Thomas, with no withholding of documents on the basis of the work-product doctrine;

17   2) produce Dr. Thomas for a deposition regarding all communications with defendants, their attorneys or

18   Synopsys regarding the '432 patent; and 3) stipulate that the Thomas deposition shall not be used for

19   any purpose other than determining what remedies, if any, should apply as a result of Howrey's

20   communications with Dr. Thomas. (Ex. 24.) Synopsys' counsel (Mr. Kelley) responded by

21   acknowledging that Synopsys retained Dr. Thomas with full knowledge of his prior retention by Ricoh

22   and its counsel, but refused to comply with Ricoh's requests. (Ex. 25.) Instead, Mr. Kelley promised to

23   "refrain from consulting with Dr. Thomas for a period of two weeks" so Ricoh could "seek judicial

24

25

26

———————————————

27   [8] After the conference call, Mr. Campbell sent an email stating: "I just thought of a clarification about
     your review of the pdfs you received.  I only want to know if they were published.  It is important you
28   do not tell me any specifics about these pdfs such as title, author, dates, etc." (Ex. 26, PTH000051.)

resolution of this dispute." (*Id.*) Ricoh immediately sought the intervention of the Delaware District Court, and a hearing was scheduled for July 30.

Meanwhile, on July 28, Mr. Campbell told Dr. Thomas his deposition had been cancelled. He observed that Ricoh had asserted a conflict of interest, and added:

> If the court rules that you cannot consult with defendants, we will reschedule the deposition for a date of mutual convenience. At that deposition, we will seek testimony regarding the character of prior art logic synthesis systems and their relevance to the validity of Ricoh's patents.

(Ex. 28, PTH000055.) As noted above, Dr. Thomas had participated in a number of discussions with Ricoh on these very issues, including a June 17, 2002 conversation that discussed claim interpretation, patent validity in view of the confidential documents disclosed, and his interpretation of the '432 patent. (Ex. 1, Monsey Decl. ¶ 5-15.)

**E.    Howrey's Representations During The July 30 Hearing And The Court-Ordered Investigation**

On July 30, 2003, nine days after the retention of Dr. Thomas by Synopsys, Judge Sleet of the Delaware District Court held a hearing in response to Ricoh's emergency motion. Counsel for Ricoh summarized the history of Ricoh's consulting efforts with Dr. Thomas and offered to provide a detailed declaration documenting how Dr. Thomas had become privy to a Ricoh's work product, litigation strategy, and core analyses of the merits. (Ex. 12, 7/30/03 Tr. at 5-10.)

Mr. Kelley conceded that Howrey had long been aware that Dr. Thomas was a consultant to Ricoh. (*Id.* at 12.) The Court asked Mr. Kelley if Howrey's knowledge of Ricoh's relationship with Dr. Thomas, without more, presented at least the potential for the appearance of a conflict. (*Id.* at 14.) Mr. Kelley replied: "Yes, I was aware that we were certainly aware there was a possibility that he might have a conflict of interest, but he had indicated that he had not received any such information that would create a conflict. It that's true, we wanted to get into that consulting relationship." (*Id.* at 15.)

Mr. Kelley told Judge Sleet that Howrey had inquired of Dr. Thomas if he had received anything confidential from Ricoh or received anything about case strategy, and, according to Mr. Kelley, Dr. Thomas said he had not. (*Id.* at 14-15.) Dr. Thomas has testified that prior to signing the retainer

1   agreement, he did not discuss in any way whether or not he had received Ricoh confidential information

2   with Howrey. (Ex. 4, Thomas Dep. Tr. at 62-63.) Dr. Thomas also said that Howrey counsel did not ask

3   him whether or not he had formed any opinions with respect to the matters related to his consulting on

4   behalf of Ricoh. (*Id.* at 31.) Five days after the hearing, Mr. Kelley wrote that Dr. Thomas had said that

5   he did not know whether or not he had received confidential information from Ricoh. (Ex. 27, Kelley

6   8/5/03 letter to Hoffman.) Less than two weeks after that, Dr. Thomas testified that he had in fact

7   received Ricoh confidential information. (Ex. 4, Thomas Dep. Tr. at 75-77.)

8          During the July 30 hearing, however, Judge Sleet accepted Mr. Kelley's representation that,

9   prior to his retention, Howrey had inquired of Dr. Thomas whether he had received Ricoh confidential

10  information, and the Court focused on whether relying on Dr. Thomas' view of whether he received

11  confidential information was sufficient:

12

13          The Court:  Well, that's his legal opinion?
            Mr. Kelley:  It's not his legal opinion.  We have to walk a little carefully.  I didn't say please tell
14          us what you received so we can make an independent evaluation, but what we did say is, if you
            get anything that's confidential, any kind of confidential information, did you folks talk about
15          case strategy?
            The Court:  Well, that may be in the eye of the beholder, Mr. Kelley, Yes, no, maybe?
16          Mr. Kelley:  Certainly . . . .
17

18  (Ex. 12, 7/30/03 Tr. at 15-16.) At the Court's request, counsel for Ricoh summarized the declaration of

19  Mr. Monsey detailing the communications with Dr. Thomas. (*Id.* at 17-19.) Judge Sleet asked, "Mr.

20  Kelley, given the description of the declaration, if it exists, and I have no reason to believe that Mr.

21  Hoffman is being any less than candid as an officer of this Court and I'm sure you don't question his

22  candor, would that [be] satisfactory, based upon the research you've done, the prima facia burden that he

23  carries?" (*Id.* at 19.) Not satisfied with the first and second responses (*id.* at 20), Judge Sleet said,

24          The Court:  You're going all around Robin Hood's barn, Mr. Kelley.  Based upon the description
            of the affidavit, does it at least satisfy the – cross the prima facia threshold that would warrant
25          the Court ordering the taking of a deposition or some further processes?  That's all I'm trying to
            get you to talk about? . . . I don't want to hear from anyone else; I want to hear from Mr. Kelley.
26          Mr. Kelley:  All I heard was they sent him something on such and such date and it depends on
            what that something is.
27

28

The Court:  All right.  If you are going to be disingenuous with the Court in your response, I have a simple answer for that. Mr. Hoffman, prepare an order outlining the request that you have just made and I will sign it. Fax it over.

(Ex. 12, 7/30/03 Tr. at 20-21.)  The next day, the Court entered the following order:

"1.  Pending further Order of this Court, neither defendants nor their counsel shall have any communication with Dr. Thomas regarding the merits of this case or the patent in suit unless counsel for plaintiff is present or consents in writing.

2.  No later than August 6, 2003, Defendants and their counsel are ordered to disclose all communications with or relating to Dr. Thomas and to produce all documents sent to, prepared by, or received from Dr. Thomas.  Any documents withheld on the basis of the attorney-client privilege or the work-product doctrine should be produced to the Court for an in camera inspection, and Defendants *shall provide Plaintiff with a detailed privilege log.*

3.  No later than August 18, 2003, Dr. Thomas shall sit for a deposition limited to all communications with defendants, their attorneys or Synopsys regarding the '432 patent, with that deposition to not be used for any purpose other than in connection with resolution of issues relating to the retention of Dr. Thomas.

(Ex. 30, emphasis added.)[9]  To date, no privilege log has ever been served.

Dr. Thomas was deposed on August 14, 2003.  (Ex. 4.)  On August 25, the ASIC defendants orally offered to drop Dr. Thomas as a consulting expert (Brothers Decl. ¶ 37), but insisted that they were still entitled to depose Dr. Thomas on "the character of prior art logic synthesis systems and their relevance to the validity of Ricoh's patents."  (Ex. 28, PTH000055.)

**F.    The August 28 Hearing And The Disregard Of The Court's Orders**

On August 28, Judge Sleet held another hearing to consider what further action was appropriate with respect to Dr. Thomas.  It was noted that no privilege log had ever been produced, and no documents had been filed in camera, as required by the July 31 order.  Considering a summary of the inconsistencies between Howrey's representations and Dr. Thomas' testimony, Judge Sleet found that the evidence raised the possibility of fraud on the court and ordered the filing of the transcript of the July 30 hearing and the in camera review of all relevant internal Howrey documents, and that a privilege log

---

[9] Howrey sent Dr. Thomas the order by regular mail on August 3.  Dr. Thomas received it on August 8.  (Ex. 4, Thomas Dep. Tr. at 5-6.)  In the interim, Dr. Thomas continued to email case-related information to Howrey.  (Ex. 32, PTH000057.)

1  of those documents be served upon Ricoh, so the Court could determine whether a fraud on the court did

2  in fact occur.  (Ex. 31, 8/28/03 Tr. at 27-29.)

3      Two months later, Synopsys and the ASIC defendants submitted the documents to this Court, but

4  have not complied with Judge Sleet's order with respect to the privilege log.  After still another

5  unsuccessful meet and confer (Brothers Decl. ¶ 38), this motion followed.

6                              **ARGUMENT**

7  **I.    THE ASIC DEFENDANTS, SYNOPSYS AND HOWREY KNOWINGLY INDUCED**

8  **      DR. THOMAS TO SWITCH SIDES**

9      There is no dispute that the Howrey firm – counsel for both Synopsys and the ASIC defendants

10 – persuaded Dr. Thomas to switch sides.  When it first approached Dr. Thomas to retain him on behalf

11 of Synopsys, Howrey was explicitly placed on notice that Dr. Thomas was under contract to consult for

12 Ricoh and its counsel.  On April 4, 2003, Dr. Thomas informed the Howrey firm that he had been

13 retained by Ricoh's counsel to consult on the '432 patent (Ex. 7, PTH000011), and the Howrey firm

14 acknowledged that this fact precluded any further communications with Dr. Thomas:

15

16     Dickstein, Shapiro, Morin and Oshinsky is indeed the counsel for the opposing side in this
       matter.  This means that there is most likely a conflict if we would talk to you in detail about this
17     matter.  So, unfortunately, it appears that we cannot go forward, but I thank you very much for
       your interest, and if things change or we happen to run into this technology in an unrelated
18     matter, I will get back in touch with you.

19 (Ex. 8, PTH000017.)  The matter should have ended there.[10]  But it did not.  Over the next three months,

20 counsel for Synopsys and the ASIC defendants committed seven crucial errors of judgment that induced

21 Dr. Thomas to terminate his consulting agreement with Ricoh and switch sides, then intentionally

22 misrepresented the facts to Ricoh and the Court.

23     **Error 1:  Continued communications with Dr. Thomas.**  On April 8, Howrey acknowledged

24 that it would be a conflict of interest to continue discussing the case with Dr. Thomas.  (Ex. 8.)

25

26 _____

27 [10] Howrey fully appreciated that opposing counsel should not contact the other side's retained experts.
   For example, when Howrey engaged another expert, Dr. Kowalski, they instructed Ricoh's counsel to
28 refrain from any communication with Dr. Kowalski.  (Ex. 33.)

1   Nevertheless, over the next few weeks, Mr. Campbell continued to communicate with Dr. Thomas on

2   the subject matter of his consulting work for Ricoh, in connection with an ongoing lawsuit, eventually

3   exchanging a half-dozen e-mails. (Ex. 10.) These communications were improper. *See, e.g., Campbell*

4   *Ind. v. M/V Gemini*, 619 F.2d 24, 27 (9th. Cir. 1980) (sanctioning counsel for ex parte communications

5   with opposing party's expert); *Erickson v. Newmar Corp.*, 87 F.3d 298, 301-02 (9th Cir. 1996) (holding

6   that ex parte communications with the opposing side's expert violated Fed. R. Civ. P. 26(b)(4) and

7   ethical rules); 2 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* § 3.4:402 (2d ed.

8   Supp. 1994) ("Since existing rules of civil procedure carefully provide for limited and controlled

9   discovery of an opposing party's expert witnesses, all other forms of contact are impliedly prohibited.").

10  **Error 2: Failure to serve Ricoh's counsel with a copy of the Thomas subpoena or notice of**

11  **deposition.** Howrey told the Court that the failure to serve Ricoh with a copy of the subpoena served

12  upon Dr. Thomas was a "screw-up." (Ex. 12, 7/30/03 Tr. at 12.) In fact, Mr. Kelley's practice was to

13  refrain from serving opposing counsel with a notice of subpoena until after service had been completed:

14  "Our practice is to provide opposing counsel with notice of process after service is successfully

15  completed." (Ex. 13, Kelley 9/17/03 letter to Hoffman.) Thus, the decision to not serve Ricoh at the

16  same time the subpoena was delivered to the process server was intentional. Howrey's practice to

17  refrain from timely serving subpoenas violates Fed. R. Civ. P. 45(b)(1). *Biocore Medical Tech., Inc., v.*

18  *Khasrowshahi*, 181 F.R.D. 660, 667 (D. Kan. 1998) (holding that the failure to give opposing counsel

19  notice of a subpoena prior to service violates Rule 45).

20      As for the failure to serve Ricoh's counsel with either a notice of the subpoena or a notice of the

21  July 30 deposition as required by Fed. R. Civ. P. 30(b)(1) after Dr. Thomas was served on June 26, no

22  explanation of the "screw up" has ever been provided. Mr. Kelley told the Delaware court on July 30

23  that he had taken steps to ensure that the "screw up" was never repeated, yet less than a month later

24  Howrey failed to timely serve two additional subpoenas in this case.[11]

25

26  _____

27  [11] On August 29, 2003, Howrey caused two subpoenas to be served upon third parties. (Ex. 34.)
    Howrey did not serve timely Ricoh's counsel with copies of the subpoenas. (Ex. 35, Hoffman 9/8/03
28  letter to Kelley; Brothers Decl. ¶ 35.)

1    **Error 3:  Howrey's misleading Dr. Thomas to believe that Ricoh was not relying upon Dr.**

2    **Thomas as an expert.**  Dr. Thomas inquired of Mr. Campbell whether Howrey had disclosed to Ricoh's

3    counsel the fact of the subpoena.  Mr. Campbell avoided the question, but instead said that Ricoh had

4    not listed him as an expert.  Of course, neither side had disclosed any experts, because under the

5    scheduling order, expert discovery was not to commence until 2004.  Thus, Mr. Campbell misled

6    Dr. Thomas into believing that Ricoh had dropped him as an expert.  Dr. Thomas testified that he "was

7    more surprised by the fact that I was not listed as a consultant in this case, and that overrode any other

8    thoughts about this, why wasn't I." (Ex. 4, Thomas Dep. Tr. at 17-18.)  Mr. Campbell's misleading

9    response is a violation of the duty of candor owed by every attorney practicing in California.

10    **Error 4:  Howrey instructed Dr. Thomas to terminate his consulting agreement with Ricoh.**

11    Dr. Thomas asked for compensation for his time in preparing for his deposition and for the copy costs

12    for producing the documents responsive to the ASIC defendants' subpoena.  Attorney Campbell said

13    that Dr. Thomas would have to terminate his consulting agreement with Ricoh before financial matters

14    could be discussed, so Dr. Thomas did so.  Mr. Campbell providing legal advice to Dr. Thomas was not

15    in Dr. Thomas' best interests, and is another violation of the Professional Rules.

16    **Error 5:  Howrey failed to inquire whether there was a conflict of interest before retaining**

17    **Dr. Thomas.**  At no time before Dr. Thomas signed the retainer agreement with Synopsys did anyone

18    from Howrey ever make any inquiries to determine whether there was a conflict of interest.  (Ex. 4,

19    Thomas Dep. Tr. at 71-74.)  This inexplicable failure to inquire cannot be justified, especially since

20    Howrey had recognized three months earlier that it would be a conflict of interest for Howrey to talk to

21    Dr. Thomas.  (Ex. 8.)  The conflict was recognized in the Synopsys retainer agreement, which made

22    specific reference to his prior consulting from Ricoh and the likelihood of having received Ricoh

23    confidential information and having formed opinions for Ricoh.  (Ex. 36.)  The record reflects, however,

24    that rather than "walk a little carefully" as Mr. Kelley told Judge Sleet (7/30/03 Tr. at 15), Howrey

25    rushed in (in the words of Mr. Campbell) with "enthusiasm." (Ex. 20, PTH000043.)

26    **Error 6:  Howrey's post-retention "investigation" of whether Dr. Thomas had a conflict of**

27    **interest was both inadequate and led to the disclosure of Ricoh's work product.**  On July 22,

28

Howrey disclosed to Ricoh that Synopsys had retained Dr. Thomas and was canceling his (previously undisclosed) July 30 deposition. (Ex. 22.) Ricoh immediately objected to any communications between Dr. Thomas and the ASIC defendants, Synopsys or their counsel. (Ex. 23.) Although Howrey publicly responded with defiance, privately it initiated an investigation to determine whether Dr. Thomas had received any confidential information from Ricoh or its counsel. On July 23, Dr. Thomas had a telephone conference with Mr. Campbell where Dr. Thomas was questioned about what he had done for Ricoh. (Ex. 4, Thomas Dep. Tr. at 70-74.) Subsequently, Mr. Kelley stated that Dr. Thomas could not say during that July 23 call whether or not he had received confidential information from Ricoh (Ex. 29, 8/5/03 Kelley letter to Hoffman), despite Mr. Kelley's representation to the contrary five days earlier. (Ex. 12, 7/30/03 Tr. at 14-15.) At his deposition, Dr. Thomas was adamant in his conclusion that he had, if fact, received Ricoh confidential information. (Ex. 4, Thomas Dep. Tr. at 71-74.)

  **Error 7:  The continuing insistence by Synopsys and Howrey that, one way or the other, it will depose Dr. Thomas on the subject of his consulting for Ricoh.**  On July 28, Mr. Campbell told Dr. Thomas that "If the court rules that you cannot consult with defendants, we will reschedule the deposition for a date of mutual convenience . . . [and] seek testimony regarding the character of prior art logic synthesis systems and their relevance to the validity of Ricoh's patents." (Ex. 28, PTH000055.) Even as it dropped him as an expert in late August, Howrey never backed away from its intent to depose Dr. Thomas as a fact witness on the very issues on which Dr. Thomas had been providing confidential consulting to counsel for Ricoh. (Brothers Decl. ¶ 37.)

## II. MISREPRESENTATIONS TO THE COURT

  These seven errors are serious, and by themselves justify serious remedies (discussed below) such as precluding Dr. Thomas from consulting for any party, ensuring his tainted testimony does not benefit Synopsys or the ASIC defendants, compensating Ricoh for its time and expenses, and evaluating whether the Howrey attorneys should be disqualified.  But the improper conduct did not stop there. After the fact of Dr. Thomas' switching sides became known, the Howrey attorneys attempted to conceal their errors from the court.

**Misrepresentation No. 1:** On July 30, 2003, the Delaware District Court held a hearing in response to Ricoh's emergency motion. During the hearing, Mr. Kelley conceded that Howrey had long been aware that Dr. Thomas was a consultant to Ricoh. (Ex. 12, 7/30/03 Tr. at 12.) The Court asked Mr. Kelley to explain why Howrey's knowledge of Ricoh's relationship with Dr. Thomas, without more, did not present at least the potential for the appearance of a conflict. (*Id.* at 14.) Mr. Kelley conceded that at least the appearance of a conflict existed, but said that, before Synopsys retained Dr. Thomas, Howrey had inquired of Dr. Thomas if he had received anything confidential from Ricoh and whether he received anything about case strategy. (*Id.* at 14-15.) Mr. Kelley stated that Dr. Thomas "assured us that he had not." (*Id.*) Mr. Kelley insisted that this inquiry took place *before* Synopsys retained Dr. Thomas: "Yes, I was aware that we were certainly aware there was a possibility that he might have a conflict of interest, but he had indicated that he had not received any such information that would create a conflict. It that's true, we wanted to get into that consulting relationship." (*Id.* at 15.)

This representation was false. Prior to Synopsys retaining Dr. Thomas, Howrey ***never*** inquired with respect to whether there would be a conflict of interest if Dr. Thomas were to switch sides. Dr. Thomas unequivocally testified that, prior to his signing of his retainer agreement with Howrey, he did not discuss in any way whether or not he had received Ricoh confidential information with counsel from Howrey. (Ex. 4, Thomas Dep. Tr. 62-63.)

**Misrepresentation No. 2:** A second misrepresentation was made to the court when counsel for Synopsys and the ASIC defendants insisted that Dr. Thomas never received confidential information from Ricoh. On July 30, Mr. Kelley insisted that Dr. Thomas had said that he never received confidential information from Ricoh. (Ex. 12, 7/30/03 Tr. at 14-15.) In fact, Dr. Thomas had never said any such thing. Five days after making his misrepresentation to the Court, Mr. Kelley admitted that Dr. Thomas had said that he did not know whether or not he had received confidential information. (Ex. 29, Kelley 8/5/03 letter to Hoffman.) At his deposition, Dr. Thomas unequivocally testified that he had indeed received confidential information from Ricoh:

> "Mr. Brothers:  Is there any doubt in your mind, Dr. Thomas, that as a result of your consulting relationship with Ricoh, you received confidential information from Ricoh's counsel?
> A:  I feel that the fact that they were bringing these articles to my attention was confidential.
> Q:  And the fact and content of your conversations with Ricoh's counsel, were those also confidential?
> A:  Yes.

(Ex. 4, Thomas Dep. Tr. at 76-77.)  Nevertheless, counsel for Synopsys and the ASIC defendants later insisted that

> There is no contradiction between what Mr. Kelly represented on the July 30th teleconference and Dr. Thomas' deposition.  Dr. Thomas was very clear that he was asked by the Howrey Simon attorney ... do you have any confidential information?  And if so, what type of information is it?  And Dr. Thomas responded two days later in an email, just listing three short types of information he had: patents, publications and financial information.

(Ex. 31, 8/28/03 Tr. at 7-8.)  Both of these representations were and are misleading.  Contrary to Mr. Kelley's representation, no one ever asked Dr. Thomas whether he had confidential information prior to his retention.  The Howrey attorneys assumed that he had such information, because their retainer letter made specific reference to such confidential information.  Only after Ricoh's objection was any real inquiry made, and the response virtually ensured the disclosure of confidential information.  Indeed, Dr. Thomas' characterization of the documents he received – which included unpublished documents – was an unauthorized disclosure.

## III.   SYNOPSYS, THE ASIC DEFENDANTS AND HOWREY REFUSED TO COMPLY WITH JUDGE SLEET'S ORDERS

On two separate occasions, Judge Sleet has ordered the ASIC defendants, Synopsys and Howrey to produce a privilege log of documents.  On July 31, the Delaware court ordered:

> No later than August 6, 2003, Defendants and their counsel are ordered to disclose all communications with or relating to Dr. Thomas and to produce all documents sent to, prepared by, or received from Dr. Thomas.  Any documents withheld on the basis of the attorney-client privilege or the work-product doctrine should be produced to the Court for an in camera inspection, and ***Defendants shall provide Plaintiff with a detailed privilege log***.

(Ex. 30, emphasis added.)  No privilege log was ever served.  At another hearing on August 28, Judge Sleet rejected the argument of Synopsys, the ASIC defendants, and Howrey that the July 31 order did not require the preparation of a privilege log or the in camera inspection of privileged documents.  The

1    Court ordered the in camera submission of the privileged documents, and further ordered a privilege log
2    to be prepared and served upon opposing counsel. (Ex. 31, 8/28/03 Tr. at 26-32.)

3          More than two months after the documents were to be lodged with the court, Synopsys and the
4    ASIC defendants finally submitted the documents to this Court for an in camera inspection, along with a
5    self-serving attempt to deflect their many errors and misrepresentations. However, they have still failed
6    to comply with Judge Sleet's twice-repeated order to serve a privilege log upon opposing counsel. No
7    explanation has ever been provided for this willful and repeated contempt of the Court's orders.

8    **IV.   SYNOPSYS AND THE ASIC DEFENDANTS SHOULD NOT BENEFIT FROM THEIR**
9    **WRONGFUL CONDUCT**

10          After the numerous errors and misrepresentations by Synopsys and the ASIC defendants, and of
11   no fault of Ricoh and its counsel, the parties are in the following positions: Ricoh has been deprived of
12   a consulting expert, and has spent thousand of dollars in attorney time to investigate, protest, prepare for
13   and participate in multiple hearings, depose Dr. Thomas, and prepare a number of briefs. So far, the
14   ASIC defendants and Synopsys have successfully deprived Ricoh of its consulting expert and have
15   received unauthorized insights to Ricoh's litigation strategy and work product, but have suffered no
16   adverse consequences. Indeed, Synopsys and the ASIC defendants are still insisting that they have the
17   right to depose Dr. Thomas and obtain his expert opinions on the very issues that he was consulting for
18   Ricoh. Unless this Court take decisive action, there will be no deterrent to this wrongful conduct.

19          In a case substantially similar to this case, Judge Kugler of the District of New Jersey surveyed
20   the law with respect to disqualification of an expert who had switched sides, as well as sanctions upon
21   the attorneys to preserve the integrity of the judicial system. *Cordy v. Sherwin-Williams Co.*, 156 F.R.D.
22   575 (D.N.J. 1994). There, an expert was retained by plaintiff's counsel, was paid a $3000 retainer, was
23   provided a number of documents, and provided an oral opinion. The expert then returned the retainer
24   fee, switched sides and started consulting for defendant Sherwin-Williams. The district court conducted
25   an evidentiary hearing and examined documents in camera, and concluded that both the expert and the
26   attorneys should be disqualified. The court's statement of the governing rules is especially pertinent:

27          In disqualification situations, any doubt is to be resolved in favor of disqualification. *Hull v.*
             *Celanese Corporation*, 513 F.2d 568, 571 (2d. Cir. 1975); *Liu v. Real Estate Inv. Group, Inc.*,
28          771 F. Supp. 83, 86 (S.D.N.Y. 1991) . . . . It is clear why this presumption arises that confidences

passed to the attorney. There is an inherent difficulty in determining, at some later time, whether it happened. Self-serving affidavits of counsel and others are not helpful because of their "undeniable interest in preserving any tactical advantage they may have garnered." *MMR/Wallace*, 764 F. Supp. at 726-27. Moreover, a non-lawyer would be more likely to reveal confidential information because he or she might not be as sensitive to the need to safeguard the information as would an attorney. *Williams. v. Trans World Airlines, Inc.*, 588 F. Supp. 1037, 1043 (E.D. Mo. 1984); *MMR/Wallace*, 764 F. Supp. at 727.

Applying these principles to this matter yields a clear case for disqualification. The Court realizes that defendant Sherwin-Williams has an interest in being represented by Davis and Penders. Nevertheless, the fairness and integrity of the judicial process and Plaintiff's interest in a trial free from the risk that confidential information has been unfairly used against him must also be considered and outweighs Defendant's interest. *Williams*, 588 F. Supp. at 1046. The preservation of public trust is paramount. *Hull*, 513 F.2d at 572.

Here, the expert Green did receive confidential information from Brown & Connery. He was privy to their trial strategy. Although he and defense counsel deny that he ever divulged it to his new employer, their protestations are unavailing. To believe Green did not and will not remember and ultimately use that information, even "subliminally," *see Michelson, supra*, defies common sense and human nature. Defense counsel did nothing to discover the real nature of the relationship between Green and Brown & Connery. Whether they chose to ignore warning signs or actually encouraged Green's misconduct need not be decided. Defense counsel's conduct was wanting.

Plaintiff has met the burden of proving that "sufficient doubt exists as to the propriety of representation" of defendant Sherwin-Williams, by Penders and Davis. *Kaselaan*, 144 F.R.D. at 238. This is a clear case for disqualification. Plaintiff's interest in a trial free from the risk that confidential information will be used against him and the public's interest in the integrity of the judicial process itself demand it. It is not sufficient simply to disqualify the expert to deter such conduct in the future. Counsel must also understand they are at some risk should they encourage (or fail to discourage) this kind of behavior.

Accordingly, Penders and Davis must be disqualified. In addition to their disqualification as Defendant's counsel, this Court also concludes that their firm, Marshall, Dennehey, Warner, Coleman & Goggin, must also be disqualified.

*Id.* at 584. As discussed in greater detail below, sanctions are appropriate to ensure that the ASIC defendants and Synopsys do not benefit from their wrongful conduct with respect to Dr. Thomas.

**V.    SANCTIONS ARE REQUIRED**

> **A.    Because Dr. Thomas Is A Tainted Witness, His Testimony Should Not Be Taken Or Admitted**

There is a well-established body of law setting forth the analytical framework of what to do when an expert switches sides. In fashioning his orders, Judge Sleet followed *Hansen v. Umtech Indus.*, 1996 Westlaw 622557 (D. Del. 1996) (Ex. 36), where the court reviewed the case law and concluded:

Courts have fashioned a two-part inquiry used to determine whether disqualification is necessary: First, was it objectively reasonable for the first party who claims to have retained the consultant to conclude that a confidential relationship existed? Second, was any confidential or privileged information disclosed by the first party to the consultant?

*Id.* at 5 (citing *Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271, 278 (S.D. Ohio 1988); *Wang Labs., Inc. v. Toshiba Corp.,* 762 F. Supp. 1246, 1248 (E.D. Va. 1991)). The rule in the Ninth Circuit is no different. *See Advanced Cardiovascular Sys. v. Medtronic, Inc.,* 47 U.S.P.Q.2d (BNA) 1536 (N.D. Cal. 1998); *Stencel v. Fairchild Corp.,* 174 F. Supp. 2d 1080 (C.D. Cal. 2001); *Space Systems/Loral v. Martin Marietta Corp.,* 1995 U.S. Dist. LEXIS 22305 (N.D. Cal. Nov. 14, 1995) (Ex. 37).

Both elements of the "expert side-switching test" are satisfied here: Ricoh's counsel requested and obtained a written confidentiality agreement from Dr. Thomas, and then explored alternative theories that go to the heart of Ricoh's litigation strategy. (Ex. 1, Monsey Decl. ¶¶ 5-15.) Through both written and oral communications, Ricoh's counsel disclosed confidential information to Dr. Thomas, and Dr. Thomas admitted as much. (Ex. 4, Thomas Dep. Tr. at 74-77.)

"A federal district court has the inherent power to disqualify experts." *Cordy v. Sherwin-Williams Co.,* 156 F.R.D. 575, 579 (D.N.J. 1994); *see English Feedlot Inc. v. Norden Labs., Inc.,* 833 F. Supp. 1498, 1501 (D. Colo. 1993). "To be sure, no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained by the adverse party pursuant to the earlier retention. This is a clear case for disqualification." *Wang Labs., Inc. v. Toshiba Corp.,* 762 F. Supp. 1246, 1248 (E.D. VA. 1991).[12]

In *Rohn v. United States,* 2002 U.S. Dist. LEXIS 19122 (E.D. Cal. 2002) (Ex. 38), the court stated that federal courts have inherent powers to manage their own proceedings and control the conduct of persons appearing before them. *Id.* at 2, citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). By invoking the inherent power to punish bad faith conduct that threatens the integrity of the judicial process, a court must exercise discretion in fashioning appropriate sanctions. *Id.* "District judges have

---

[12] In *Wang,* an attorney for the plaintiff contacted an expert and disclosed confidential information, but the expert formed opinions contrary to Howrey's client and was subsequently hired by the other side. The district court disqualified the expert. 762 F. Supp. at 1248. The attorney for the plaintiff was a partner with the Howrey firm. *See Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858 (Fed. Cir. 1993).

1 | an arsenal of sanctions they can impose for unethical behavior" including monetary sanctions, contempt,

2 | and disqualification of counsel. *Rohn*, at 3, citing *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir.

3 | 1996).

4 | Courts in California and across the country hold that there is a presumption that an expert or

5 | employee who has worked for one side, then switches sides, has disclosed confidential information.

6 | *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067 (Cal. App. 1994); *Actel Corp. v.*

7 | *Quicklogic Corp.*, 1996 U.S. Dist. LEXIS 11815 (N.D. Cal. 1996) (Ex. 39); *In Re Complex Asbestos*

8 | *Litigation*, 232 Cal. App. 3d 572; 283 Cal. Rptr. 732 at 739-40 (Cal. App. 1st Dist. 1991); *Cordy*, 156

9 | F.R.D. at 584; *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.*, 764 F. Supp. 712, 727 (D. Conn.

10 | 1991); *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037, 1043 (E.D. Mo. 1984). Here,

11 | however, the Court need not rely solely upon the presumption, because Dr. Thomas in fact conveyed

12 | Ricoh confidential information to Howrey, in at least three ways: First, he disclosed the nature of the

13 | prior art that Ricoh's counsel had asked him to review. These disclosures took place both during the

14 | July 23 telephone call and in his July 24 email. Second, the disclosure that Dr. Thomas had requested of

15 | Ricoh's counsel to not be a testifying expert was confidential, but Dr. Thomas revealed that even before

16 | he was retained by Howrey.[13] Third, the ASIC defendants have tacitly admitted that Dr. Thomas

17 | disclosed some of his opinions and conclusions, because in their October 30, 2003 submission, they

18 | attempted to substantively characterize his work for Ricoh as being adverse to Ricoh.

19 | Indeed, "this is a clear case for disqualification." Dr. Thomas was retained by Ricoh, reviewed

20 | numerous confidential documents and engaged in at least a half-dozen conferences in which he helped

21 | Ricoh's counsel explore theories, investigate the strengths and weaknesses of the patent-in-suit, develop

22 | a claim interpretation, and analyze possible affirmative defenses. Dr. Thomas admits that he formed

23 | opinions as a result of his work with Ricoh, and that he received Ricoh confidential information. After

24 | all of this effort, he was persuaded to change sides in an underhanded fashion by Synopsys' counsel who

25 |

26 | ────────────────

27 | [13] In April 2003, Dr. Thomas agreed to continue to consult for Ricoh as a non-testifying consultant.

28 | This agreement was in force until Dr. Thomas terminated his agreement on July 10, 2003. Even then, his confidentiality obligations survived the termination of his agreement.

1  failed to conduct an appropriate investigation, then refused to admit it. There is no doubt that Dr.

2  Thomas should be precluded from consulting with or testifying for Synopsys or the ASIC defendants.

3        The issue is not mooted by the verbal offer by defendants to no longer use Dr. Thomas as a

4  testifying expert. Synopsys and the ASIC defendants still intend to depose Dr. Thomas to seek his

5  opinions on "the character of prior art logic synthesis systems and their relevance to the validity of

6  Ricoh's patents." This is not the testimony of a fact witness, but is in fact the very expert testimony that

7  Dr. Thomas should be precluded from offering under any circumstances. The "character of prior art

8  logic synthesis systems" necessarily involves expert analysis of the prior art (which is what Ricoh had

9  retained Dr. Thomas to do), form opinions on the "character" of that prior art (which is also what Dr.

10  Thomas did for Ricoh), then opine regarding the "relevance to the validity of Ricoh's patents" (which is

11  exactly what Dr. Thomas did for Ricoh). Synopsys and the ASIC defendants should not be able to

12  obtain the expert opinion testimony of Dr. Thomas indirectly when they are precluded by their own

13  misconduct from getting it directly.

14  **B.  Ricoh Should Receive Its Fees and Expenses**

15        The conduct by Synopsys and the ASIC defendants have caused considerable expense to

16  Ricoh.[14] There have already been two hearings on the matter. Ricoh's counsel traveled to Pittsburg to

17  take the deposition of Dr. Thomas on August 14. Considerable time has been spent preparing this and

18  other briefs. All of these fees and expenses were incurred because Howrey attorneys acted either in bad

19  faith or with reckless disregard of their duties under the discovery rules, ethics requirements as well as

20  their obligation of candor to the tribunal.

21        In *Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1054 (E.D. Cal. 1998), Judge Wanger

22  disqualified counsel due to a conflict of interest, then sanctioned the disqualified attorneys more then

23  $21,817.22 for fees and expanses of opposing counsel. The court held that the statutory basis for

24  awarding sanctions is found at 28 U.S.C. § 1927 ("any attorney … who so multiplies the proceedings in

25

26

_____

27  [14] When Ricoh learned of, and objected to, Synopsys' retention of Dr. Thomas, the Howrey firm insisted
that Ricoh needed to raise the matter with the Court. During the July 30 hearing, the Howrey firm

28  continued to refuse to back off of its position, thereby forcing Ricoh to pursue the matter.

1  any case unreasonably and vexatiously may be required by the court to satisfy personally the excess

2  costs, expenses and attorneys' fees reasonable incurred because of such conduct"), as well as the court's

3  inherent authority. *Terrebonne* at 1055-56 (citing cases). The court also held that sanctions can be

4  appropriately based on reckless conduct alone. *Id.* The court concluded that counsel's conduct was

5  either reckless or in bad faith, and that a monetary sanction was appropriate.

6        A similar award is in order here. As set forth in the attached declaration of Ken Brothers,

7  Ricoh's attorneys spent at least $42,613 in time and expenses directly related to Howrey's improper

8  conduct relating to Dr. Thomas. (Brothers Decl. ¶ 39.) These fees are reasonable, especially when

9  compared with Howrey's billing rates. (*Id.* ¶¶ 39-40.)

10       **C.    This Court Should Impose Sanctions Upon The Howrey Attorneys Responsible For
             the Improper Conduct**

12       There can be no doubt that Howrey attorneys committed serious errors of judgment in

13  connection with retention of Dr. Thomas, as set forth in detail above in section II, coupled with two

14  misrepresentations to the Court, and willfully disobeyed a court order. Under California law, the entire

15  Howrey firm could be disqualified from any further representation of Synopsys and the ASIC

16  defendants. *See Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067 (Cal. App. 1994)

17  (disqualifying law firm that retained experts who had consulted with but not been retained by the other

18  side); *Actel Corp. v. Quicklogic Corp.,* 1996 U.S. Dist LEXIS 11815 (N.D. Cal. 1996) (disqualifying

19  attorney for obtaining confidential information from other side); *In Re Complex Asbestos Litigation*, 232

20  Cal. App. 3d 572; 283 Cal. Rptr. 732 at 739-40 (Cal. App. 1st Dist. 1991) (summarizing of California

21  law on motions for disqualification; holding that law firm is disqualified for hiring non-lawyer employee

22  from opposing counsel).

23       Under the facts here, this Court could elect to disqualify the entire Howrey firm from

24  representing the ASIC defendants and Synopsys. The Court may also elect to disqualify the two

25  attorneys directly involved – Louis Campbell and Christopher Kelley. Ricoh defers to the Court's

26  judgment with respect to the appropriate sanction.

27

28

1

# CONCLUSION

2   Based upon the improper conduct of Synopsys, the ASIC defendants and the Howrey firm,

3   Dr. Thomas should be disqualified, Ricoh should receive its fees and expenses associated with this

4   matter, and the Court should impose appropriate sanctions on the Howrey firm.

5   Dated: December 2, 2003                        Respectfully submitted,

6                                                  Ricoh Company, Ltd.

7

8                                                  By: _____Ken Brothers_____

9                                                  Jeffrey B. Demain, State Bar No. 126715
                                                   Jonathan Weissglass, State Bar No. 185008
10                                                 ALTSHULER, BERZON, NUSSBAUM,
                                                       RUBIN & DEMAIN
11                                                 177 Post Street, Suite 300
                                                   San Francisco, California  94108
12                                                 Phone:  (415) 421-7151
                                                   Fax:  (415) 362-8064
13

14                                                 Gary M. Hoffman
                                                   Ken Brothers
15                                                 Eric Oliver
                                                   DICKSTEIN SHAPIRO MORIN &
16                                                     OSHINSKY  LLP
                                                   2101 L Street NW
17                                                 Washington, D.C.  20037-1526
                                                   Telephone: (202) 785-9700
18                                                 Facsimile: (202) 887-0689

19
                                                   Edward A. Meilman
20                                                 DICKSTEIN SHAPIRO MORIN &
                                                       OSHINSKY  LLP
21                                                 1177 Avenue of the Americas
                                                   New York, New York  10036
22                                                 Telephone:  (212) 896-5471
                                                   Facsimile:  (212) 997-9880
23

24                                                 Attorneys for Ricoh Company, Ltd.

25

26

27

28

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

January 22, 2004

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025

Re:    Synopsys v. *Ricoh Company, Ltd.*,
        Civil Action No. 03-02289 MJJ
        Your Ref.: 06816.0060.000000
        Our Ref.: R2180.0171

Dear Erik:

        In answer to your letter of January 20, 2004 concerning certain Matrox defendants, we will proceed with the deposition on February 3, 2004 subject to:

        full and complete responses to all of our discovery requests to all of the Matrox companies (including the actual documents) no later than January 28, 2004, and

        the deposition topics will include: all interactions between the various Matrox companies relating to ASICs, all computer aided design processes involving logic synthesis for an ASIC which have been practiced or utilized by any of the Matrox companies (as opposed to being limited to "ASICs designed by" those companies); the interaction and relationship of any such design processes with the entirety of the process of manufacturing the ASICs produced, designed or sold by any Matrox entity; and all topics addressed in the papers submitted in support of the motion for summary judgment.

        As you will appreciate, the discovery which the Matrox companies provides before the deposition must be coextensive with the foregoing. It appears that the disclosure to date has been much more limited.

        With regard to the Supplemental Answers to Interrogatories, Interrogatory 7 asks for an identification of people and documents by Answer paragraph by paragraph format. The objection on the grounds that this exceeded the permissible number of interrogatories is clearly not valid since this is a single question asking for several bits of information relating to the same topic (the Answer). See California Practice Guide, Federal Civil Procedure Before Trial, Section 11:1689. We expect that information no later than January 26, 2004.

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*www.DicksteinShapiro.com*

Christopher L. Kelley, Esq.
January 22, 2004
Page 2

With regard to any response to document requests where it was indicated that documents would be produced under Rule 33, please identify the documents produced (by Bates number) by each individual Matrox entity which are associated with each individual document requests, no later than January 26, 2004.  While Rule 33 allows you to produce documents in response to a document requests, it does not permit you to both produce documents from all of the defendants without identifying which document came from which defendants and without identifying the document request to which the document is responsive.  You will recall that this is not the first time we have complained about your not separating documents by defendant.

As you know, Judge Jenkins indicated that he wanted all Rule 56(f) issues resolved before he would consider the summary judgment motion.  Failure to timely provide the supplementation just identified will obviously leave a need for additional Rule 56(f) discovery and delay consideration of the summary judgment motion.

The short period of time between when the deposition will be held and when our brief in response to the summary judgment motion would be due makes it highly likely that the return date of the motion will need to be pushed back further.  We will have a better feel for how much additional time may be necessary after the deposition.

Please advise us of the name of the witness(es) who will be produced.

Finally, would you please confirm that the verifications of the supplemental responses will be received shortly.

Very truly yours,

Edward A. Meilman

EAM/hc/mgs

cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.
       Jeffrey Demain, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY LTD., | ) | |
| | ) | |
| Plaintiff | ) | Civil Case No. 03-103-GMS |
| | ) | |
| v. | ) | |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., MATROX | ) | |
| GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SECOND SET OF DOCUMENT
## REQUESTS TO ALL DEFENDANTS

**PLEASE TAKE NOTICE** that plaintiff demands, pursuant to Rule 34 of the Federal

Rules of Civil Procedure, that the defendants produce documents pursuant to the following

document requests on the 30th day after service of these requests.

## DEFINITIONS AND INSTRUCTIONS

(1)    **Communication**.    The term "communication" means the transmittal of

information (in the form of facts, ideas, inquiries or otherwise).

(2)    **Document**.    The term "document" is defined to be synonymous in meaning and

equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including,

without limitation, electronic or computerized data or data compilations.    A draft or non-identical

copy is a separate document within the meaning of this term.

(3)    **Identify (with respect to persons)**.    When referring to a person, "identify"

means to give, to the extent known, the person's full name, present or last known address, and

when referring to a natural person, additionally, the present or last known place of employment.

1

Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In any response where more than one individual is identified, identify which three individuals have the most knowledge or information concerning the subject and among those three individuals, identify the individual having the most knowledge and the individual having the least knowledge concerning the subject.

(4) **Identify (with respect to documents)**. When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5) **Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, agents, partners, corporate parent, subsidiaries or affiliates. Where a discovery request does not request a response limited to a specific named defendant, the request shall be construed as seeking knowledge and information concerning all of the defendants named in the caption of this discovery request.

(6) **Person**. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7) **Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) **All/Each**. The terms "all" and "each" shall be construed as all and each.

(9) **And/Or**. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope.

2

(10) **Number**. The use of the singular form of any word includes the plural and vice versa.

(11) **Privilege**. Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

(a) Identify the nature of the privilege (including but not limited to work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(b) Provide the following information:

(1) For documents: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and (v) identify any other person to whom the document was displayed or to whom any of its contents were revealed;

(2) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; (iii) the general subject matter of the communication and (iv) identify any other person to whom any aspect of the communication was revealed.

3

(12) **Destroyed Documents**. Where a document has been destroyed or alleged to have been destroyed, state the date thereof and the reason for its destruction, identify each person having knowledge of its destruction, identify each person responsible for its destruction, provide the information set forth in paragraph (11)(b)(1) above and describe the content of the document to the extent possible.

(13) **Patent-in-suit**. As used herein, "patent-in-suit" or "'432 patent" refers to United States Letters Patent Number 4,922,432.

(14) **ASIC**. As used herein, "ASIC" refers to any integrated circuit that is designed for a specific application, including but not limited to integrated circuits that are referred to or otherwise denoted in defendant's communications as an "application specific integrated circuit" or "ASIC," and other integrated circuits designed to perform a desired function in a specific application, but not including standard, general purpose integrated circuits such as microprocessors and memory chips.

(15) **ASIC PRODUCT**. The term "ASIC Product" refers to any integrated circuit product or item that is designed for a specific application, and/or a product or item that includes such an integrated circuit product that is manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

(16) **ASIC Method**. As used herein, "ASIC Method" refers to any and all steps or other activities making up or otherwise contributing to methods and/or processes which have been used by, on behalf of, or otherwise at the direction of defendant on or after May 1, 1990 (unless another date is specifically identified) in the computer-aided design of any ASIC Product (as defined above) designed, developed, manufactured, sold, offered for sale, imported, or distributed by, on behalf of, or otherwise at the direction of defendant.

4

(17) **Limitations.** Each discovery request shall be construed independently and no discovery request shall limit the scope of any other discovery request.

(18) **Supplementation.** Each defendant is reminded of the continuing duty to supplement discovery responses set forth in rule 26(e) of the Federal Rules of Civil Procedure.

(19) **Design.** The term "design" as used herein refers to any and all acts of creation, development, translation, formulation, transformation, synthesis, or other realization of desired integrated circuit functionality in an ASIC (as defined above).

## DOCUMENT REQUEST

<u>Document Request No. 1:</u>    Produce all documents and tangible things identified in Section B (Items 1 through 8) of Defendants' Initial Disclosure Statement dated and served on or about May 30, 2003.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &  OSHINSKY LLP
1177 Avenue of the America
New York, New York 10036
(212) 896-5471
(212) 997-9880

Dated: July 2, 2003

5

RLF1-2620061-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP. and | ) | |
| MATROX TECH, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that true and correct copies of Plaintiff's Second Set of

Document Requests were served on July 2, 2003 on counsel of record in the manner indicated:

**VIA HAND DELIVERY**
Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1220 Market Street
P. O. Box 2207
Wilmington, Delaware 19899
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorney for AMI Semiconductor, Inc.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Plaintiff

OF COUNSEL:
Gary M. Hoffman
Eric Oliver
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
(202) 828-2228

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
  OSHINSKY LLP
1177 Avenue of the America
New York, New York 10036
(212) 896-5471

Dated: July 2, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July 2003, true and correct copies of the foregoing

were caused to be served on counsel of record at the following addresses as indicated:

**BY HAND DELIVERY:**
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz, LLP
1220 Market Street
P.O. Box 2207
Wilmington, Delaware  19899
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Attorneys for Defendants

**VIA FACSIMILE AND FEDERAL EXPRESS**
Alan H. MacPherson, Esq.
MacPherson Kwok Chen & Heid LLP
2001 Gateway Place
Suite 195E
San Jose, California 95014
Attorneys for AMI Semiconductor, Inc.

Steven J. Fineman (#4025)

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 828-2228
E-Mail Address: HoffmanG@dsmo.com

August 28, 2003

BY FACSIMILE

Theresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA 94025

Re:        <u>Ricoh Company, Ltd. v. Aeroflex et al.</u>

Dear Terry:

        I write to follow up on two of the discovery issues that were discussed at today's hearing.  You represented that defendants' initial disclosures were "inartfully drafted" and "vague."  We, therefore, request that you  submit a revised initial disclosure that  complies with Rule 26(a) and produce all of the documents described therein.

        With respect to defendants' responses to Ricoh's document requests and Synopsys' response to Ricoh's subpoena, now that those categories have been narrowed and the Court has directed document discovery, including the production of confidential documents, to proceed, please identify before the end of next week the documents that will be produced and make such production by no later than mid-September.  To the extent that defendants or Synopsys are refusing to produce and responsive documents, please  identify them to us before the end of next week so we can (as Judge Sleet said), "finish our conversation."

1177 Avenue of the Americas • New York, New York 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
www.legalinnovators.com



Theresa M. Corbin, Esq.
August 28, 2003
Page 2


      We look forward to your prompt response so we can resolve all of these issues by September 5, as directed by the Court.

                 Very truly yours,

                 Gary M. Hoffman

cc:   Edward Meilman, Esq. (via facsimile)
       Christopher M. Kelley, Esq. (via facsmilie)
       Frank DiGionani, Esq. (via facsimile)
       Robert Whetzel, Esq. (via facsimile)

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

December 19, 2003

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434

> Re:    Synopsys v. *Ricoh Company, Ltd.*,
>         Civil Action No. 03-02289 MJJ
>         Your Ref.: 06816.0060.000000
>         Our Ref.:  R2180.0171

Dear Erik:

In answer to your letter of December 18, 2003, we will proceed with Ms. Hanford's deposition on January 26 and 27, 2004.

On a related matter, it is necessary to postpone Mr. Bershaders deposition to January 28 or 29, 2004.  Please let us know if you intend to proceed then.

Finally, we would like to hold a meet and confer concerning all of the discovery request next Tuesday or Wednesday.  Please let us know if you are available.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:    Gary Hoffman, Esq.
        Kenneth Brothers, Esq.
        Jeffrey Demain, Esq.



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

December 23, 2003


**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714


Re:    *Synopsys, Inc. v. Ricoh Company, Ltd.*, (Case No. C 03-2289 MJJ)
       *Ricoh Co. Ltd. v. Aeroflex, Inc. et al.* (Case No. C 03-04669 MJJ)

Dear Ed:

        This letter is in response to your letter of December 19, 2003 concerning a meet and
confer today or tomorrow relating to Ricoh's three motions to compel.

        As the Customer defendants and Synopsys already have indicated, they are willing to
provide discovery consistent with the Court's comments at oral argument on the motion to stay
that it views discovery related to claim construction as being the scope of discovery appropriate
prior to its claim construction ruling. Therefore, in addition to the discovery already provided to
Ricoh, in the *Ricoh v. Aeroflex* matter, the Customer defendants are willing to produce discovery
relating to the computer-assisted logic synthesis operations performed by the Customer
defendants for those ASICs for which the Customer defendants' design processes include a
computer-assisted logic synthesis step. *See* letter from Mr. Kelley to Mr. Meilman, 9/8/03. This
is the appropriate scope of discovery from the Customer defendants at this point in the litigation.
Documents within this scope of discovery, should any exist, would be responsive to at least
Document Request Nos. 3-5, 8, 11, and 16. Other document requests seeking documents relating
to, for example, the sales of the Customer defendants' products (Document Request Nos. 14, 15,
and 17-19) are irrelevant to claim construction. Interrogatories within this scope of discovery
include at least Interrogatory Nos. 2 (with respect to the identification of products only), 3, 4
(with respect to the identification of individuals involved with the design of the Customer
defendants' products), and 5. Again, other interrogatories relating to, for example, the sales and
marketing of the Customer defendants' products (for example Interrogatory Nos. 7 and 8) are
irrelevant to claim construction.

        Similarly, again based on the Court's statements and in addition to discovery already
provided by it to Ricoh in the *Synopsys v. Ricoh* action, Synopsys is willing to provide discovery

AMSTERDAM    BRUSSELS    CHICAGO    HOUSTON    IRVINE    LONDON    LOS ANGELES    MENLO PARK    SAN FRANCISCO    WASHINGTON, DC

DEC. 23. 2003  9:44AM                                            NO. 4647   P. 3

**HOWREY**
ATTORNEYS AT LAW

Mr. Edward A. Meilman
December 23, 2003
Page 2

related to the technical characteristics and operation of its products that serve as the basis for Ricoh's patent infringement allegations against the Synopsys' customers. These are: Design Compiler and related products used with Design Compiler (HDL Compiler and DesignWare Foundation). Documents within this scope of production, should any exist, would be responsive to Request for Production Nos. 2-5. Other requests seeking documents relating to, for example, the sales or marketing of Synopsys' products (Request for Production Nos. 1 or 6-10) are irrelevant to claim construction.

The Customer defendants and Synopsys intend to supplement their written responses to Ricoh's document requests, interrogatories, and deposition notice accordingly.

Given this, we believe that a meet and confer is premature in light of the Customer defendants' and Synopsys' forthcoming supplementations and document production. The fact that Ricoh's request is premature is also evident from Ricoh's inability to specifically identify a single issue for which a meet and confer is necessary. We believe that it is more appropriate to tentatively schedule any meet and confer regarding the Customer defendants' and Synopsys' discovery responses to the week of January 5, 2004, and after Ricoh has specifically identified in writing the issues, if any, regarding which it seeks to meet and confer.

Very truly yours,

Erik K. Moller

EKM:gj

cc:    Gary M. Hoffman
       Jeffrey B. Demain

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

December 23, 2003

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434

Re:  *Synopsys v. Ricoh Company, Ltd.,*
     *Ricoh v. Aeroflex*
     Your Ref.:  06816.0060.000000
     Our Ref.:  R2180.0171

Dear Erik:

There have already been a number of meet and confer conferences and letters concerning Ricoh's motions to compel.  As we understand your letter of December 23, 2003, Synopsys and the Aeroflex defendants are prepared to provide all requested discovery now except for the discovery relating to marketing and sales.  We agree to defer discovery on marketing and sales for the present. As a result of this limitation, the following request can be deferred:

    Document request to Aeroflex et al. Nos. 1, 27, 35, 38 and 40,
    Interrogatories to Aeroflex et al. Nos. 6, 8, and 9;
    Subpoena to Synopsys Category Nos. 1, 6, 7, 9 and 10.

Aeroflex et al. also indicates that they wish to limit discovery to those Synopsys products which they received.  That limitation is acceptable provided we are given a full and complete list of those products no later than next Monday, December 29, 2003. As you are aware, we have asked for that list several times.  During my last telephone conversation with Mr. Kelley and yourself, Chris Kelley indicated he finally had that list but he was too busy with other things to send it to me.  He never has sent it to me.

90584 v1; 1XW801!.DOC

Erik K. Moller, Esq.
December 23, 2003
Page 2

Synopsys has proposed the identical limitation with respect to its products. That is unacceptable. Synopsys' Complaint avers that none of its products, without limitation, infringe. During that last telephone conversation, Chris Kelley noted Synopsys might want to amend its Complaint but it has not done so.

Synopsys' discovery requests to Ricoh are of the same scope with respect to the products. Ricoh's discovery requests, however, are more narrow and are limited to computer assisted design involving logic synthesis. Any product or process falling within Ricoh's definition is within the proper scope of the discovery and we will insist on discovery of that scope. At a minimum this includes information about Design Compiler and the Design Compiler family of products and related products which include, at least, DC Expert, DC Expert Plus, DC Ultra, DC Shell, Knowledge Consultant, Behavioral Compiler, Module Compiler, Design Ware Library/Design Ware Foundation Library, Co-Centric System C Compiler, Physical Compiler, Chip Architect, Astro, Astro-Rail, Astro-Xtalk, Encore, the HDL Compiler family of products (including VHDL compiler and HDL compiler for Veralog and HDL compiler), and Design Analyzer.

Please let me know by noon (California time) tomorrow, December 24, 2003 whether you agree or disagree to provide discovery as just outlined. Should you disagree, we should hold a meet and confer next Monday, December 29, 2003 and we propose holding it at 11:00 a.m. California time. Absent your agreement with the above, we will assume there is still a dispute between the parties on the scope of discovery.

I am also in receipt of Synopsys response to Ricoh's first set of interrogatories. Synopsys attempt to limit the products about which it will provide discovery to those set forth in the response to interrogatory No. 1 is unacceptable for the reasons just stated. If Synopsys will not provide discovery concerning all of its computer aided design products involving logic synthesis products and processes, then this matter should also be added to the meet and confer topics so that we can move concerning the first interrogatory responses at the same time we re-notice the motions to compel in the event that we need to do so.

Also on the subject of meet and confer, I have written twice about the protective order and received no response. If Synopsys is not going to respond or is

Erik K. Moller, Esq.
December 23, 2003
Page 3

going to refuse our latest proposal, then we must address that matter at the meet and confer next Monday so that we can bring the matter on before the Court.

Finally, the document responses that Synopsys and the Aeroflex defendants have answered to date indicate that technical documents will be produced about their products and processes, at least to some extent. As of the moment, essentially no such documents have been produced. We need a firm commitment and the date by which we will receive those documents. If you can not give me a firm date in response to this letter, then that matter should also be added to the meet and confer topics.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.
       Jeffrey Demain, Esq.



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

December 24, 2003

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:    *Synopsys, Inc. v. Ricoh Company, Ltd.*, (Case No. C 03-02289 MJJ)
       *Ricoh Co. Ltd. v. Aeroflex, Inc. et al.* (Case No. C 03-04669 MJJ)

Dear Ed:

        This letter is in response to your letter of December 23, 2003 regarding the Customer defendants' and Synopsys' commitment to produce discovery consistent with the Court's statements regarding the appropriate scope of discovery.

        Since Ricoh was present at the oral argument on the motion to stay, it must also appreciate the Court's position that the scope of discovery allowed before claim construction is limited to discovery directed to claim construction. *See also* Order dated December 18, 2003 at 1:18-20. ("The Court hereby orders the parties to meet and confer regarding this issue, *particularly in light of my comments regarding the scope of discovery* made at the hearing on December 2, 2003."). We take your letter as understanding and agreeing that the Customer defendants, in addition to the discovery already provided to Ricoh, in the *Ricoh v. Aeroflex* matter, will produce discovery relating to the computer-assisted logic synthesis operations performed by the Customer defendants for those ASICs for which the Customer defendants' design processes include a computer-assisted logic synthesis step in response to those of Ricoh's document requests and interrogatories that call for such discovery.

        We are puzzled, however, by your assertion that Document Request Nos. 1 (corporate structure), 27 (document retention policies), 35 (indemnification agreements), 38 (laches defense), and 40 (first knowledge of the patent-in-suit) seek discovery related to sales and marketing and can therefore be deferred, when you are silent regarding other document requests that are unquestionably directed to the Customer defendants' sales and marketing efforts, for example, Document Request Nos. 17 ("Produce all document concerning the sale by defendants of each ASIC Product produced by an ASIC Method.") and 18 ("Produce all documents



Mr. Edward A. Meilman
December 24, 2003
Page 2

concerning the marketing by or for defendant of each ASIC Product produced by an ASIC Method."). We would appreciate it if you could explain your reasoning.

The Customer defendants will supplement their written responses and produce discovery consistent with those responses promptly. This discovery will include identification of the Synopsys logic synthesis products licensed to the Customer defendants. However, as you must understand with the end of the year holidays upon us, your December 29, 2003 deadline is unacceptable. The Customer defendants will supplement their written responses to Ricoh's document requests and interrogatories, and begin production of documents consistent with those responses by January 9, 2004. We will be available to meet and confer if you have any additional issues after reviewing the Customer defendants supplemented discovery responses.

With respect to Synopsys, your only stated disagreement is the identity of the relevant products at issue. Synopsys intends to amend its complaint in the *Synopsys, Inc. v. Ricoh Company, Ltd.* matter to narrow the products at issue. *See* letter from Mr. Kelley to Mr. Meilman dated December 24, 2003. You identify a number of products in your letter which you characterize as being in the "Design Compiler family of products" or "related" to Design Compiler. Your list of so-called "Design Compiler related" products appears to include every Synopsys logic synthesis product. Your list also includes software that has no connection to logic synthesis or use of Design Compiler other than that these products have something to do with ASIC design. Your list, for example, includes "Co-Centric System C," which is neither a logic synthesis system nor related to Design Compiler products. Likewise, the "Behavioral Compiler" product is not "Design Compiler related." Ricoh has not accused Behavioral Compiler or CoCentric System C Compiler of infringing its patents, nor identified any customers that Ricoh contends are infringing its patents based on use of these products. Until and unless Ricoh makes such allegations, there is no basis for discovery regarding these products, since Synopsys is willing to exclude them from the declaratory judgment relief that it seeks.

If Ricoh believes that the list of products proposed in Mr. Kelley's December 24 letter is too narrow, we are available to meet and confer and attempt to broaden the list to include products that have a legitimate relationship to the substance of the case. We propose that the proper procedure is for Ricoh to prepare a list of products that it believes have some relevance to the allegations of infringement that it made against Synopsys' customers. We can then arrange a meet and confer to see if the parties can come to mutual agreement about which products are suitable subject matter for this litigation, or at least narrow the scope of the dispute. That meet and confer cannot happen, however, this week or the next, because we will require technical input from Synopsys regarding the nature of the products identified in Ricoh's list, and Synopsys is currently in a two-week plant shutdown that extends through next week.

In addition, as stated in my letter of yesterday on this subject, Synopsys also intends to supplement its written responses to Ricoh's *subpoena duces tecum* in this matter by January 9,



Mr. Edward A. Meilman
December 24, 2003
Page 3

2004, consistent with the Court's statement regarding the appropriate scope of discovery prior to claim construction. Again, we will be available to meet and confer after Synopsys has supplemented its responses.

Your letter also raises the issue of provisions for ensuring the security of Synopsys' source code. This issue was addressed in Mr. Kelley's letter of December 23.

If Ricoh does bring a motion on discovery related matters, it should do so "in accordance with the Local Rules and this Court's Standing Order." Order dated December 18, 2003 at 1:20-21. Your prior motions have not been in compliance with the Court's Standing Order, and we request that you review that order before you file any additional discovery motions.

Lastly, Ricoh still has failed to identify any single discovery issue for which a meet and confer is necessary. Failing such identification, Ricoh's request is premature and it is more appropriate to schedule any meet and confer regarding the Customer defendants' and Synopsys' discovery responses only after the Customer defendants and Synopsys have amended their discovery responses and served them on Ricoh.

Very truly yours,

Erik Moller
sc

Erik K. Moller

EKM:gg
cc:    Gary M. Hoffman
        Jeffrey B. Demain

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*

*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

December 29, 2003

**BY FACSIMILE AND U.S. MAIL**

Erik K. Moller, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025-3434

　　　　Re:　*Synopsys v. Ricoh*
　　　　　　*Ricoh v. Aeroflex et al*
　　　　　　Your Ref.:  06816.0060.000000
　　　　　　Our Ref.:  R2180.0171

Dear Mr. Moller:

　　　　In answer to your letter of December 24, 2003, we have revised the document request to Aeroflex et al. categories which can be deferred.  They are now numbers 17, 18, 35, 38 and 40.

　　　　In my last letter, I indicated we needed a firm commitment and a date by which we will receive the documents that Synopsys and the Aeroflex defendants indicated would be produced; these documents were originally requested 6 months ago.  As to the Aeroflex et al. defendants, your reply only states that you will "begin" production by the 9th of January.  You fail to state the date by which we will have received all of those documents.  As to Synopsys, you only say that Synopsys "intends" to supplement its written response to the subpoena by the 9th of January without any indication even as to when production will begin, much less be complete.  We still need a firm commitment and a date we will received these documents.

　　　　With regard to Synopsys, we have already provided you with a list of products that have "some relevance to the allegations of infringement".  Your reply, which asks Ricoh to prepare the very same list, makes no sense unless it is simply a delaying tactic; we recall that many months ago, Synopsys indicated to us that it had no intent to produce documents relating to any of its products or the activities of the Aeroflex defendants unless order to do so by the Court.  We have given you a list and you have rejected it.  Accordingly, the meet and confer requirements have been satisfied.  If you wish to have a telephonic meet and confer, we need to have the full and complete list of the products that the Aeroflex defendants received (which Mr. Kelley has had for quite some time now but refuses to provide) in our hands no later than this Friday, January 2, 2004 and we will be available for a telephonic meet and confer on the following Monday, January 5, 2004.  We will not agree to putting off

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*www.legalinnovators.com*

Erik K. Moller, Esq.
December 29, 2003
Page 2

holding another meet and confer for several weeks in order to keep the disagreement off the Court docket.

Finally, we have reached the point, after numerous meet and confer exchanges, at which the protective order issue must be raised with the Court. We consider the meet and confer requirement of the Court to have been satisfied. If you disagree, we will be available for a telephonic meet and confer on January 5, 2004. Once again, we will not allow you to avoid having this matter raised the next time we are in Court by asserting that any Ricoh request is premature and there should be a meet and confer at some time which is unidentified but will be far into the future.

If you wish to hold a telephonic meet and confer on Monday, please advise me what time you intend to call us.

Yours very truly,

Edward A. Meilman

EAM/hc

cc:    Gary Hoffman, Esq.
       Kenneth Brothers, Esq.
       Jeffrey Demain, Esq.



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

December 30, 2003


**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714


Re:    *Synopsys, Inc. v. Ricoh Company, Ltd.*, (Case No. C 03-02289 MJJ)
       *Ricoh Co. Ltd. v. Aeroflex, Inc. et al.* (Case No. C 03-04669 MJJ)

Dear Ed:

       This letter is in response to your letter of December 29, 2003 regarding various discovery-related matters. We will address Ricoh's issues in order.

       First, your letter indicates that Ricoh's only issue with respect to the Customer defendants is your demand for a date by which Ricoh will have received "all" of the documents described in my letter of December 24, 2003. As I am sure you know, document collection requires the coordination of numerous schedules and the cooperation of numerous individuals, and, especially given that the end of the year holidays are upon us when many of the people we need to contact are on vacation, precision is difficult to achieve. That being said, we anticipate that we will be able to substantially complete the agreed upon production by January 30, 2004.

       Next, your letter indicates that Ricoh has two concerns with respect to Synopsys' discovery obligations. You state that Ricoh requires "a firm commitment and a date we will received [sic] these documents." For the reasons outlined above, and subject to the same constraints, Synopsys anticipates being able to substantially complete the agreed upon production by February 13, 2004.

       You also indicate that Synopsys is failing its discovery obligations with respect to an identification of the Synopsys logic synthesis products licensed to the Customer defendants. We are confused by your request, and believe that you conflate two separate, but related, issues; the identity of the Synopsys logic synthesis products at issue in the two matters *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.* and *Synopsys, Inc. v. Ricoh Company, Ltd.* We believe that my letter of December 24, 2003 and Mr. Kelley's letter of the same date regarding amending the complaint in the *Synopsys, Inc. v. Ricoh Company, Ltd.* matter consistently simplify this issue by in effect



Mr. Edward A. Meilman
December 30, 2003
Page 2

proposing that the scope of Synopsys logic synthesis products at issue in the two matters are identical; i.e., Synopsys logic synthesis products licensed to the Customer defendants. In my letter of December 24, 2003, the Customer defendants indicated that they would supplement their written responses and begin document production, including the identification of the Synopsys logic synthesis products licensed to the Customer defendants, by January 9, 2004. Mr. Kelly has proposed similarly amending the declaratory judgment complaint. We believe that the Customer defendants' supplemental written responses and document production and Synopsys' amended complaint completely address this issue, and that meeting and conferring prior to Ricoh's receipt of the supplemental responses is completely premature. In addition, Synopsys in fact produced documents directed to this issue on December 29, 2003. It is more appropriate to schedule any meet and confer regarding the Customer defendants' and Synopsys' discovery responses only after the Customer defendants and Synopsys have amended their discovery responses and served them on Ricoh. Furthermore, as I indicated in my letter, because of Synopsys' plant shutdown, we simply cannot meet and confer meaningfully regarding this issue until after January 9, 2004.

Last, your letter raises the issue of the provisions for ensuring the security of Synopsys' source code, apparently rejecting without comment the proposal put forth in Mr. Kelley's letter to you of December 23. If you did not receive that letter, please let me know. We are available to meet and confer regarding this issue on Wednesday, January 7, 2004.

Very truly yours,

Erik K. Moller

EKM:gj

cc:    Gary M. Hoffman
       Jeffrey B. Demain



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

January 5, 2004

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY  10036-2714

Re:     *Synopsys, Inc. v. Ricoh Company, Ltd.*,  (Case No. C 03-02289 MJJ)
        *Ricoh Co. Ltd. v. Aeroflex, Inc. et al.* (Case No. C 03-04669 MJJ)

Dear Ed:

        This letter is in response to your letter of today regarding two discovery-related issues.

        First, with respect to your first issue, we have already provided you with a list of Synopsys products licensed to Aeroflex, Inc., AMI Semiconductor, Inc., Matrox Electronic Systems Ltd., Matrox Graphics Inc., Matrox Int'l, Inc., and Matrox Tech, Inc. and refer you to documents Bates numbered SP005398 through SP005431.

        Second, with respect to the nature of the protection necessary for the production of the source code for Synopsys' Design Compiler in this action, we have offered a reasonable compromise between the parties' positions.  We take it from your letter that you insist on your position, and reject our compromise without comment.  Absent any reconsideration on your part to reach a compromise, we do not see that a telephonic meet and confer will be productive regarding this issue.  If there are other outstanding discovery issues that you believe are unresolved, or if you wish to discuss this issue further, please identify the issues to be discussed and we will arrange a meet and confer on those issues promptly.

                                            Very truly yours,

                                            Erik K. Moller

EKM:gj

cc:     Gary M. Hoffman
        Jeffrey B. Demain

AMSTERDAM   BRUSSELS   CHICAGO   HOUSTON   IRVINE   LONDON   LOS ANGELES   MENLO PARK   SAN FRANCISCO   WASHINGTON, DC

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>AEROFLEX INCORPORATED, et al.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. CV -4669-MJJ**<br><br>**DECLARATION OF EDWARD A. MEILMAN IN SUPPORT OF RICOH'S OBJECTIONS TO DEFENDANTS' MOTION TO CONTINUE RICOH'S DISCOVERY MOTIONS, AND RESPONSE TO MOTION TO SHORTEN TIME FOR HEARING ON MOTION TO STAY**<br><br>**Date:  Not Set**<br>**Time: Not Set**<br>**Courtroom:  11** |

Edward A. Meilman declares as follows:

1.    I am an attorney at law licensed to practice in the State of New York and admitted in this case *pro hac vice*, and am a partner in the law firm of Dickstein Shapiro Morin & Oshinsky, LLP, attorneys for plaintiff Ricoh Company, Ltd. The matters set forth in this declaration are based on my personal knowledge, except where indicated, and if called as a witness, I could and would testify competently thereto.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the May 30, 2003 Scheduling Order in the above captioned action.

3.    Attached hereto as Exhibit 2 is a true and correct copy of the June 12, 2003 motion to stay filed by the defendants in the above captioned action.

4.    There have been a number of "meet and confer" held between counsel for the parties relating to Ricoh's discovery requests which are the subject of the current motion to compel and which have been outstanding for more than six (6) months. Some of those occurred before the two (2) hour conference held by United States District Court Judge Sleet of the District of Delaware (where this action was pending prior to its transfer here) on August 28, 2003, as required by the local rules of that court. At that hearing, Judge Sleet ordered that the parties consult and resolve their differences concerning the discovery no later than September 5, 2003 and produce documents by mid-September. Attached hereto as Exhibit 3 is a true and correct copy of pages 60-61 of the hearing transcript.

5.    Subsequent to Judge Sleet's August 28, 2003 direction, I had no less than three (3) telephone conferences with defendants' counsel relating to the discovery disputes and sent no less than four (4) letters to defendants' counsel relating to the discovery dispute. Attached hereto as Exhibit 4 are true and correct copies my letters of August 28, 2003, September 10, 2003, and September 12, 2003. The discovery dispute remains unresolved today and I respectfully submit that the efforts made to resolve it without court intervention satisfy the meet and confer requirements of this Court.

6.    Ricoh noticed Rule 30(b)(6) depositions of each of the defendants. On the eve of those depositions, counsel for the defendants stated they had not identified the personnel to produce witnesses

1  to testify, would do so in the future and cancelled the depositions.  After three additional weeks of

2  silence, I sent a reminder on October 23, 2003, a true copy of which is attached hereto as Exhibit 5, but

3  received no response from defendants on this topic.  Finally, at a conference between counsel on

4  November 13, 2003, defendants stated they would not determine who should testify on their behalf until

5  after this Court ruled on their motion to stay.  Attached hereto as Exhibit 6 is a true copy of a letter I

6  received on November 13, 2003 confirming that statement on page 2.

7         I declare under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Signed at New York, NY on November 17, 2003.

9

10

11         Edward A. Meilman

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF EDWARD A. MEILMAN IN SUPPORT OF RICOH'S OBJECTIONS TO DEFENDANTS' MOTION TO CONTINUE RICOH'S
DISCOVERY MOTIONS, AND RESPONSE TO MOTION TO SHORTEN TIME FOR HEARING ON MOTION TO STAY