Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| RICOH COMPANY, LTD., | ) CASE NO. C-03-4669-MJJ (EMC) |
|  | ) |
| Plaintiff, | ) **DECLARATION OF MICHAEL WEINSTEIN** |
|  | ) **IN SUPPORT OF RICOH'S OPPOSITION** |
| vs. | ) **TO DEFENDANTS' MOTION ON THE** |
|  | ) **PLEADINGS PURSUANT TO RULE 12(c)** |
| AEROFLEX ET AL, | ) |
|  | ) **Date:  March 16, 2004** |
| Defendants. | ) **Time:  9:30 a.m.** |
|  | ) **Courtroom:  11** |

Michael A. Weinstein declares as follows:

1.  My name is Michael A. Weinstein, an attorney with the law firm of Dickstein, Shapiro, Morin & Oshinsky, LLP, counsel for Ricoh Company, Ltd. ("Ricoh").  I am over the age of 21 and am competent to make this declaration.  Based on my personal knowledge and information, I hereby declare to all the facts in this declaration

2.  Attached hereto as Ex. 1 is a true and correct copy of *OKI Electronic Industry Co., Ltd. v. LG Semicon Co., Ltd.*, 1998 U.S. Dist. LEXIS 22507 (N.D. Cal. 1998).

3.  Attached hereto as Ex. 2 is a true and correct copy of Defendants' June 12, 2003 Memorandum in Support of Defendants' Motion to Stay  or, in the Alternative, Transfer Venue.

4.  Attached hereto as Ex. 3 is a true and correct copy of Defendants' November 7, 2003 Motion to Stay Ricoh's Customer Suit and Memorandum of Points and Authorities in Support Thereof.

5.  Attached hereto as Ex. 4 is a true and correct copy of the Declaration of Ed Dwyer in Support of Matrox Electronic Systems, Ltd. and Matrox Graphics Inc.'s Motion for Summary Judgment of Non-infringement.

6.  Attached hereto as Ex. 5 is a true and correct copy of the Deposition of Edward Dwyer.

7.  Attached hereto as Ex. 6 is a true and correct copy of Ricoh's Answers to Defendant Aeroflex Inc.'s First Set of Interrogatories (1-11).

8.  Attached hereto as Ex. 7 is a true and correct copy of Ricoh's Memorandum in Opposition to Defendants' Motion to Stay, or in the Alternative, Transfer Venue, dated July 15, 2003.

9.  Attached hereto as Ex. 8 is a true and correct copy of Ricoh's Opposition to Defendants' Motion to Stay, dated November 25, 2003.

10.  Attached hereto as Ex. 9 is a true and correct copy of the Declaration of Takamatsu Yamada, dated February 6, 2004.

11.  Attached hereto as Ex. 10 is a true and correct copy of the Declaration of Dr. V. Thomas Rhyne, dated February 24, 2004.

12.  Attached hereto as Ex. 11 is a true and correct copy of Ricoh's Amended Complaint in the present case.

13.  Attached hereto as Ex. 12 is a true and correct copy of *Shamrock Technologies, Inc. v. Precision Micron Powder, Inc.*, 1991 U.S. Dist. LEXIS 13142 (E.D.N.Y. 1994).

14.  Attached hereto as Ex. 13 is a true and correct copy of the Complaint in the present case.

15.  Attached hereto as Ex. 14 is a true and correct copy of Notice of Withdrawal of Matrox Electronic Systems Ltd. and Matrox Graphics Inc.'s Motion for Summary Judgment of Non-infringement, dated February 10, 2004.

16.  Discovery yet to be meaningfully produced includes the identification of who is performing the logic synthesis on the defendants' products.  This information is important to enable whether the defendants, or someone on their behalf, are using logic synthesis software that is covered by the '432 patent.

17.  Discovery yet to be meaningfully produced includes the identification of what logic synthesis products are being used by the defendants, or someone on their behalf.  This information is important to enable whether the defendants, or someone on their behalf, are using logic synthesis software that is covered by the '432 patent.

18.  Discovery yet to be meaningfully produced includes the source code for the programs used by the defendants in performing the logic synthesis process that are accusing of infringing the '432 patent.  This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

19.  Discovery yet to be meaningfully produced includes detailed manuals explaining defendants, or someone on their behalf, production operation relating to the process of using the logic synthesis software.  This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

20.  Discovery yet to be meaningfully produced includes internal guides and procedure manuals for manufacturing the defendants' ASICs when using logic synthesis systems.  This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

21.  Discovery yet to be meaningfully produced includes the identification of products and libraries the defendants, or someone on their behalf, use in performing the logic synthesis processes.  This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

22.  Discovery yet to be meaningfully produced includes the identification of where defendants, or someone on their behalf, perform the logic synthesis process. This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

23.  Discovery yet to be meaningfully produced includes the identification of which companies and where the remaining portions of the manufacturing of the defendants' ASICs is done.  This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

24.  Discovery yet to be meaningfully produced includes the identification of all of the ASIC products that have been designed by or for the Defendants, using the logic synthesis systems.  This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

25.  Discovery yet to be meaningfully produced includes documents showing the operation flow and connection between the logic synthesis and the use of the output in the subsequent steps in the manufacturing process of the Defendants' ASICs.  This information is important to enable whether the defendants, or someone on their behalf, are performing a process that infringes the '432 patent.

26.  Discovery yet to be meaningfully produced includes the activities of the defendants in carrying out and/or directing the steps of the manufacture of the chips from initial input into the design portion of the operation through the final output of the completed ASIC.  This information is important to enable whether the defendants, or someone on their behalf, are performing process that infringes the '432 patent.

27.  The information sought in the above paragraphs 16-26 is believed to exist.

28.  The information sought in the paragraphs 16-26 is important and essential to determine and enable whether the defendants, or someone on their behalf, are infringing the '432 patent.

29.  Ricoh has served on each of the defendants several discovery requests seeking the information relating to the above paragraphs 16-26.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Signed at Washington, D.C. on February 24, 2004.

/s    Michael A. Weinstein
Michael A. Weinstein

**OKI ELECTRIC INDUSTRY CO., LTD., Plaintiff, v. LG SEMICON CO., LTD. and LG SEMICON AMERICA, INC., Defendants.**

**CIVIL NO. 97-20310 SW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*1998 U.S. Dist. LEXIS 22507*

**February 25, 1998, Decided**
**February 25, 1998, Filed; March 6, 1998, Entered in Civil Docket**

**DISPOSITION:** [*1] Defendants' motion to dismiss Plaintiff's First Amended Complaint or in alternative, motion for more definite statement (docket number 48) DENIED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For OKI ELECTRIC INDUSTRY CO., LTD., Plaintiff: Matthew T. Powers, Matthew D. Powers, Jared Bobrow, Elizabeth H. Rader, Emily S. Lau, Janice V. Mock, Weil Gotshal & Manges LLP, Menlo Park, CA.

For LG SEMICON CO., LTD., LG SEMICON AMERICA, defendants: Daniel J. Bergeson, Richard J. Gray, Bergeson Eliopoulos & Grady LLP, San Jose, CA.

For LG SEMICON CO., LTD., defendant: William E. Wallace, III, Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON AMERICA, defendant: Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON AMERICA, Counter-claimant: Daniel J. Bergeson, Richard J. Gray, Bergeson Eliopoulos & Grady LLP, San Jose, CA.

For LG SEMICON AMERICA, Counter-claimant: Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON CO., LTD., Counter-claimant: William E. Wallace, III, Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON AMERICA, Counter-claimant: Anthony C. Roth, Morgan Lewis & Bockius, Washington, DC.

For [*2] OKI ELECTRIC INDUSTRY CO., LTD., Counter-defendant: Matthew T. Powers, Matthew D. Powers, Jared Bobrow, Elizabeth H. Rader, Weil Gotshal & Manges LLP, Menlo Park, CA.

For OKI AMERICA, INC., Counter-defendant: David C. Radulescu, Weil Gotshal & Manges LLP, Menlo Park, CA.

**JUDGES:** SPENCER WILLIAMS, United States District Judge.

**OPINIONBY:** SPENCER WILLIAMS

**OPINION:**

ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

Plaintiff OKI Electric Industry Co., Ltd. ("OKI") initiated this action against Defendants LG Semicon Co., Ltd. ("LG Semicon") and LG Semicon America, Inc. ("LG Semicon America") on April 2, 1997, alleging direct, contributory, and inducement infringement of five patents. In response to OKI's complaint, LG Semicon

and LG Semicon America brought a motion to dismiss or, in the alternative, a motion for a more definite statement. In lieu of opposing that motion, OKI filed and served a First Amended Complaint on July 30, 1997, which alleged direct and inducement infringement of the same five patents as the original complaint. LG Semicon and LG Semicon America now bring this motion to dismiss Plaintiff's [*3] First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, or in the alternative, a motion for a more definite statement pursuant to *Federal Rule of Civil Procedure 12(e)*. For the reasons set forth below, the Court hereby DENIES Defendants' motion.

### BACKGROUND

OKI, a Japanese corporation, owns all rights, interests, and legal title to five U.S. patents: No. *4,603,059* ("the *'059* patent"), No. *4,777,732* ("the *'732* patent"), No. *4,962,413* ("the *'413* patent"), No. *5,075,745* ("the *'745* patent"), and No. *5,280,453* ("the *'453* patent"). LG Semicon is a Korean corporation and LG Semicon America is a California corporation.

OKI's First Amended Complaint ("FAC") states five claims, each corresponding to one of the patents in suit. Within each claim, OKI uses separate paragraphs for allegations concerning each Defendant. It also uses separate paragraphs to allege direct infringement and inducement infringement. That is, a separate paragraph alleges each of the following: direct infringement against LG Semicon, inducement infringement against LG Semicon, direct infringement against LG Semicon America, and inducement [*4] infringement against LG Semicon America.

### LEGAL STANDARD

#### A. Motion to Dismiss under Rule 12(b)(6)

A complaint should only be dismissed under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* where it appears beyond doubt that no set of facts could support plaintiff's claim for relief. *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99,* (1957); *Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987),* cert. denied, *484 U.S. 944,* (1987). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).*

In reviewing a motion under Rule 12(b)(6), all allegations of material fact are taken as true and must be construed in the light most favorable to the non-moving party. *Durning, 815 F.2d at 1267.* As the moving parties, LG Semicon and LG Semicon America bear the burden of showing that there is no set of facts under which plaintiffs could be entitled to relief on the allegations of their complaint. [*5] *Conley, 355 U.S. at 47.*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a).* In addition, "each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." *Fed. R. Civ. P. 10(b).*

#### B. Motion for a More Definite Statement under Rule 12(e)

*Federal Rule of Civil Procedure 12(e)* provides that:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not observed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

### DISCUSSION

LG Semicon and [*6] LG Semicon America move the Court to dismiss OKI's FAC by arguing that it: (1) fails to set forth in separate counts OKI's direct and inducement infringement claims against each Defendant; (2) it fails to specify particular facts to support its infringement claims and instead refers vaguely and generically to nearly all of Defendants' product line; and (3) it fails to allege that any of the infringing devices are sold in or imported into the United States. Defendants move the Court, in the alternative, for a more definite statement.

#### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

**1. OKI's FAC Need Not Set Forth in Separate Counts OKI's Direct Infringement and Inducement Infringement Claims Against Each Defendant**

Defendants first argue that because OKI's FAC does not set forth separate causes of action in separate counts, it fails to meet the pleading standards required by this

and other courts. In support of their argument, Defendants rely principally on *Gen-Probe Inc. v. Amoco Corp., 926 F. Supp. 948 (S.D.Cal. 1988)*. The district court there held that the complaint set forth its claims "in a confusingly conclusory manner, accusing each of five defendants [*7] of three very different causes of action on two different patents, all in one conclusory sentence, without adequately specifying the grounds for plaintiff's belief that any of these entities have infringed." *Id. at 960.* To remedy this lack of organization, the court dismissed most of the plaintiff's claims with leave to amend, and required plaintiff to limit each count of the amended complaint to one cause of action. *Id. at 962.*

Defendants also look to this Court's opinion in *Schlafly v. Public Key Partners, 1994 WL 669858* (N.D.Cal. Nov. 22, 1994) for support of their argument that each count of a complaint must be limited to a single cause of action. In Schlafly, the Court held that the "disjointed and confusing" complaint was "a hodgepodge of allegations to which no defendant could reasonably frame a responsive pleading." Id. at *2. To remedy the confusion caused by that complaint, the Court granted the defendant's motion for a more definite statement and required the plaintiff to individually list each cause of action. Id. Notably, the Court did not require separate counts for each cause of action. Neither the Gen-Probe [*8] nor the Schlafly case establishes a general rule that plaintiffs are required to plead each claim in their complaints in a separate count. Rather, in each case the court was addressing particular organizational deficiencies of the respective pleadings.

In contrast to those cases, here OKI has organized its claims by patent, by type of infringement, and by defendant. While it is true that each count contains more than one claim, separate paragraphs make clear the different legal theories upon which OKI relies and the separate defendants against which those theories are asserted. The organization is "simple, concise, and direct." *Fed. R. Civ. P. 8(e).* Separate counts are only required "whenever a separation facilitates the clear presentation of the matters set forth." *Fed. R. Civ. P. 10(b).* Here, OKI's chosen organization is sufficiently clear to obviate the need to require organization of each claim into a separate count.

## 2. OKI's FAC Adequately Alleges Facts in Support of its Infringement Claims

Defendants next argue that OKI's FAC fails to meet the pleading standards by not providing adequate notice of particular facts in support of its claims. An example of the allegations [*9] that Defendants assert are defective is as follows: "Defendant LG America has infringed and is infringing the '059 patent in violation of *35 U.S.C. § 271,* by making, importing, offering for sale, selling, and/or using devices that embody the patented methods, including 4 megabit and higher density DRAMs." Specifically, Defendants argue that this allegation refers vaguely and generically to nearly all of Defendants' product line. Therefore, they claim, they are unable to frame a responsive pleading.

Form 16 of the Appendix of Forms to the Federal Rules of Civil Procedure sets forth an illustrative complaint for infringement of a patent. See Introductory Statement to Appendix of Forms. Form 16 states a claim for patent infringement in four paragraphs, followed by a demand for relief. The first paragraph alleges jurisdiction. The second paragraph alleges ownership of the patent at issue. The third paragraph alleges that the defendant has been and still is infringing the patent by "making, selling, and using electric motors embodying the patented invention." The fourth paragraph alleges notice of the patent on all products manufactured and sold by the patent [*10] owner under the patent and written notice to the defendant of the alleged infringement. These four paragraphs "are sufficient under the [Federal] rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." *Fed. R. Civ. P. 84.*

The phrase "devices that embody the patented methods" from OKI's allegation is substantially similar to the phrase "electric motors embodying the patented invention" found in Form 16. The similarity between the two allegations makes it clear that OKI's FAC is sufficient under the Rules. Indeed, OKI's FAC exemplifies the simplicity and brevity of statement that the Rules contemplate. See *Fed. R. Civ. P. 84.*

Further support for the Court's determination that OKI's FAC meets the pleading standards is found in the Northern District's Local Rules. Civil Local Rule 16-7 provides that 45 days after filing a pleading alleging patent infringement, the party alleging infringement must serve on all parties an "Initial Disclosure of Asserted Claims." This initial disclosure must contain each claim of each patent in suit that is allegedly infringed along with as specific an identification as possible of each accused apparatus, [*11] product, device, process, method, act or other instrumentality. Civil L. R. 16-7(b). This local rule recognizes that notice pleading does not require such specificity and that discovery disclosures are the proper context for such detailed information.

## 3. OKI's FAC Does Not Need to Explicitly Allege That Any Accused Devices Are Imported or Sold in the United States

Defendants further argue that OKI's FAC should be dismissed because it fails to allege that any of the accused devices are imported or sold in the United States. Defendants assert that as a result, OKI's FAC fails

1998 U.S. Dist. LEXIS 22507, *

to plead an essential element of its infringement claims under *35 U.S.C. § § 271* (a) and (g).

In support of their argument, Defendants rely on *Pfizer Inc. v. Aceto Corp., 853 F. Supp. 104 (S.D.N.Y. 1994).* In that case it was "undisputed that [the defendant] does not itself import the [allegedly infringing product] into the United States." *Id. at 105.* The court there did not allow the plaintiff to extend the reach of § 271(g) to foreign manufacturers whose infringing acts do not occur within the United States. Id.

In contrast to that case, [*12] here OKI has alleged in its FAC that the Defendants "import[], offer[] for sale, and/or sell[] [allegedly infringing products] in the United States." Indeed, four paragraphs of the FAC specify that Defendants infringe OKI's patents in the United States. Therefore, the FAC sufficiently states a claim under § § 271(a) and (g).

Even if OKI's FAC did not allege that Defendants' products infringed in the United States, it would still be sufficient. No allegation that infringing devices were made, used, or sold in, or imported into the United States is contained in Form 16, and yet the Form is "sufficient under the rules." *Fed. R. Civ. P. 84.* Form 16 thus makes it clear that an explicit allegation of infringement in the United States is not necessary.

**B. Motion for a More Definite Statement Pursuant to Rule 12(e)**

Defendants argue that OKI should be required to amend its FAC to provide a more definite statement of its claims against Defendants. As explained above, the simplicity and brevity of notice pleading is typified in OKI's FAC, as contemplated by the Federal Rules of Civil Procedure. No more specificity is required in a patent case at the pleading stage.

In support [*13] of their motion for a more definite statement, Defendants have cited several cases involving the imposition of Rule 11 sanctions on plaintiffs who have failed to thoroughly investigate claims before bringing them in court. See, e.g., *Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990); Judin v. United States, 110 F.3d 780 (Fed. Cir. 1997); Refac International Ltd. v. Hitachi Ltd., 1991 U.S. Dist. LEXIS 15890, 19 U.S.P.Q.2D (BNA) 1855 (C.D.Cal. 1991).* Such cases are inapposite to the present action in that they properly address the question of unwarranted and frivolous legal contentions in the context of a Rule 11 motion for sanctions. Defendants here have not brought a motion for sanctions and the Court does not find on its own initiative any conduct that appears to warrant an order to show cause why sanctions should not be imposed. See *Fed. R. Civ. P. 11(c)(1)(B).* If the facts later show that OKI failed to investigate its claims before bringing its FAC, Defendants may bring a motion for Rule 11 sanctions.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's [*14] First Amended Complaint, or in the alternative, motion for a more definite statement (docket number 48) is DENIED.

IT IS SO ORDERED.

DATED: 2/25/98

SPENCER WILLIAMS

United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **RICOH COMPANY LTD.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No. 03-0103-GMS** |
| ) | |
| **AEROFLEX, INC., ET AL.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO STAY OR, IN THE ALTERNATIVE, TRANSFER VENUE

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
Telephone: (302) 888-6316

Teresa M. Corbin
Christopher L. Kelley
Matthew E. Hocker
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
Telephone: (650) 463-8100

COUNSEL FOR DEFENDANTS

Dated: June 12, 2003

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.     SUMMARY OF ARGUMENT ........................................................................ 1

        A.      The Court Should Stay The Present Action ........................................ 2

        B.      The Court Should Transfer The Present Action to the
                Northern District of California for Consolidation with the
                Synopsys Case.................................................................................... 3

III.    FACTUAL BACKGROUND ........................................................................... 6

IV.     ARGUMENT................................................................................................... 9

        A.      As a suit against Synopsys' customers, this litigation should
                be stayed pending the outcome of the California *Synopsys*
                case.................................................................................................. 10

        B.      Since "forum shopping" alone motivated Ricoh's selection
                of Delaware, this litigation should be stayed pending the
                outcome of the California Synopsys case. ......................................... 13

        C.      If not stayed, this litigation should be transferred to the
                Northern District of California pursuant to 28 U.S.C. §
                1404................................................................................................ 13

                1.      Ricoh could have brought this litigation in the
                        Northern District of California................................................... 15

                2.      The balance of convenience factors strongly favors
                        transfer to the Northern District of California. ......................... 15

V.      CONCLUSION............................................................................................. 20

TABLE OF AUTHORITIES

<u>Cases</u>

*Affymetrix, Inc. v. Synteni, Inc.,*
28 F. Supp. 2d 192 (D. Del. 1998. ............................................................... 14, 15, 17, 19

*Allergan, Inc. v. Alcon Labs., Inc.,*
2003 U.S. Dist. LEXIS 2564
(D. Del. Feb. 25, 2003) (C.A. No. 02-1682-GMS) ........................................ 15

*AT&T Corp. v. Public Serv. Enters. Of Pa., Inc.,*
2000 U.S. Dist. LEXIS 4649 (E.D. Pa. 2000) (C.A. No. 99-4975) ............................. 11

*ATSPI, Inc. v. Sharper Image, Inc.,*
677 F. Supp. 842 (W.D. Pa. 1988) ................................................................... 12

*Crawford v. West Jersey Health Sys.,*
847 F. Supp. 1232 (D.N.J. 1994) ................................................................... 11

*Crosley Corp. v. Hazeltine Corp.,*
122 F.2d 925 (3d Cir. 1941),
*cert. denied*, 315 U.S. 813, 86 L. Ed. 1211, 62 S. Ct. 798 (1942) ............................. 11

*E.E.O.C. v. University of Pennsylvania,*
850 F.2d 969 (3d Cir. 1988),
*aff'd*, 493 U.S. 182 (1990) ................................................................... 10, 11

*GPAC, Inc. v. D.W.W. Enters., Inc.,*
144 F.R.D. 60 (D.N.J. 1992) ................................................................... 11

*IKOS Systems, Inc. v. Cadence Design Systems, Inc.,*
2002 U.S. Dist. LEXIS 20574,
(D. Del. 2002 (C.A. No. 02-1335-GMS) ........................................ 5, 15, 19

*Intel Corp. v. ULSI Corp.,*
995 F.2d 1566 (Fed. Cir. 1993) ................................................................... 12

*Jumara v. State Farm Insurance Co.,*
55 F.3d 873 (3rd Cir. 1995) ................................................................... 14, 15, 16

*Kahn v. General Motors Corp.,*
889 F.2d 1078 (Fed. Cir. 1989) ........................................................ 3, 11, 13

*Katz v. Lear Siegler, Inc.,*
909 F.2d 1459 (Fed. Cir. 1990) ........................................................ 3, 11

*Landis v. North American Co.,*
229 U.S. 248 (1936) ................................................................... 10

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,*
77 F. Supp. 2d 505 (D. Del. 1999) ........................................................ 16, 17, 19

*Panavision Int'l, L.P. v. Toeppen,*
141 F.3d 1316 (9th Cir. 1998) ................................................................... 15

*Refac International, Ltd., v. IBM,*
   790 F.2d 79, *aff'd on reconsideration in relevant part by* 798 F.2d 459 (Fed. Cir. 1986)
   ................................................................................................................... 12

*Remington Rand Corporation v. Business Systems, Inc.,*
   830 F.2d 1274 (3d Cir. 1987) ...................................................................... 10

*Whelen Technologies, Inc. v. Mill Specialties, Inc.,*
   741 F. Supp. 715 (N.D. Ill. 1990) ............................................................... 12

*William Gluckin & Co. v. International Playtex Corp.,*
   407 F.2d 177 (2d Cir. 1969) ........................................................................ 11

<u>Statutes</u>

28 U.S.C. § 1391 .............................................................................................. 15

28 U.S.C. § 1400 .............................................................................................. 15

28 U.S.C. § 1404 .......................................................................................... passim

## I.    NATURE AND STAGE OF PROCEEDINGS

On January 21, 2003, Ricoh Company Ltd. ("Ricoh") filed this patent infringement suit against Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech, Inc. ("Matrox Tech") (collectively "Defendants").  Ricoh alleges that each of the Defendants infringes its U.S. Patent No. 4,922,432 (the "'432 patent") by "using, offering to sell, and/or by selling and/or importing into the United States application specific integrated circuits designed by or using information generated by, the process" described in the '432 patent.

The Defendants hereby move the Court to stay this action or, in the alternative, to transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404.

## II.    SUMMARY OF ARGUMENT

In this litigation, Ricoh, a company with virtually no connection with Delaware, has sued six companies, also with virtually no connection with Delaware, for patent infringement involving complex logic synthesis technology.  It cannot be disputed that Ricoh has brought this suit in a district in which:

1.    none of the parties has its principal place of business;

2.    none of the inventors reside;

3.    none of the inventions were made.

4.    no potential witness for any party resides;

5.    neither party maintains a facility;

6.    no documents of the parties are maintained in the regular course of business;

1

7.    no research, development or manufacturing of the accused products has ever taken place; and

8.    none of the relevant third-party testimony or documents related to prior art exists.

Furthermore, Synopsys, Inc. ("Synopsys"), the real target in this patent infringement litigation, has filed suit in the more appropriate forum of the Northern District of California seeking declaratory judgment that the '432 patent is invalid and its Synopsys' Design Compiler product does not infringe the '432 patent ("Synopsys case"). Because resolution of the Synopsys case will resolve all issues in this litigation, and because the Northern District of California is a more convenient forum for litigation of the relevant issues in the present case, this action should be stayed pending the resolution of the Synopsys case.

In the alternative, the Court should transfer this action to the Northern District of California for consolidation with the Synopsys case because of (1) the grave injustice that would result in forcing Defendants to litigate in a forum where numerous third-party witnesses necessary to their defense are not subject to the subpoena power of the court and (2) the substantial savings of judicial and party resources that would result.

## A.    The Court Should Stay The Present Action

Although Synopsys is not named as a defendant in the present case, it is the real target of Ricoh's patent infringement allegations.    Ricoh has indicated, in several different statements made by its counsel, that its infringement allegations are based on Defendants' use of Synopsys' Design Compiler software as part of their engineering processes.    In a declaratory judgment action filed May 15, 2003 in the Northern District of California, Synopsys has sought a determination that Design Compiler does not, in

2

fact, infringe the patent that is the basis of Ricoh's suit here in Delaware.[1] *See* Ex. A. to Declaration of Erik K. Moller ("Moller Decl.").[2] Synopsys' declaratory judgment action will inevitably resolve the dispute between Ricoh and Synopsys' customers: either Synopsys will prevail and use of Design Compiler will be determined to be non-infringing or Ricoh will prevail and Synopsys will be forced to pay damages or take a license to the Ricoh patent, in which case Synopsys' customers will be immunized from liability under the doctrine of "patent exhaustion."

Litigation against or brought by a manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This is especially true where, as here, plaintiff's choice of venue was dictated by forum shopping in a blatant attempt to select a venue where critical third party witnesses for the defense are not subject to the subpoena power of the Court in plaintiff's selected forum. *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). Defendants, therefore, request that the current action be stayed, pending resolution of the underlying patent dispute in the Northern District.

### B. The Court Should Transfer The Present Action to the Northern District of California for Consolidation with the Synopsys Case.

In the alternative, Defendants request that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404 for consolidation with the

---

[1] Defendants originally intended to file this motion soon after filing the complaint in the Synopsys case. However, filing this motion was delayed by Ricoh's counsel's refusal to accept service of process of the summons and complaint in the Synopsys case and by Ricoh's officers avoidance of acceptance of service. *See* Moller Decl. at ¶¶3-4.

[2] Referenced exhibits are attached to the Moller Decl. unless otherwise indicated.

Synopsys case. Ricoh could have brought this case in the Northern District, and the dispute between Ricoh and Synopsys is more closely tied to events and persons in California than it is to Delaware. No acts of infringement are alleged to have taken place in Delaware. None of the parties or relevant third party witnesses has a substantial presence in Delaware. Numerous third parties critical to Defendants' case and their defenses of noninfringement, invalidity and equitable estoppel are resident in the Northern District of California and are outside the subpoena power of this Court.

California's interest in the suit arises from the fact that Synopsys and Knowledge Based Silicon Corporation ("KBSC"), a former assignee of the '432 patent, have an earlier history of dealings that took place in California. Synopsys' complaint contends that KBSC, an assignee of the Kobayashi patents, originally approached Synopsys to demand that it license these patents in 1991 during the annual meeting of the Design Automation Conference in San Francisco, California. When Synopsys declined to take a license, KBSC abandoned their efforts for twelve years, and instead pursued cooperative contractual relationships with Synopsys. Synopsys intends to argue, based on these facts, that Ricoh is equitably estopped from seeking to enforce the Kobayashi patents against Synopsys or licensed users of its software. *See* Ex. A at ¶¶10-11, 25-29.[3]

Furthermore, California is a more convenient jurisdiction for this litigation. The Electronic Design Automation ("EDA") industry grew up in the Northern District of California and is now, in effect, resident there. Synopsys and its most significant competitors, including Cadence Design Systems and Monterey Design Systems, are all headquartered in the Northern District and maintain their principal engineering facilities

---

[3] Defendants intend to seek leave of court to amend their first amended answer to plead the defense of inequitable conduct.

there.  The University of California at Berkeley and Stanford University are pre-eminent centers of research on design synthesis issues and have many of the authorities in the field on their faculty.  This unique concentration of the EDA industry within the Northern District of California was previously recognized by this Court in its decision in *IKOS Systems, Inc. v. Cadence Design Systems, Inc.*, where the Court relied on the fact that the industry was "located in the Silicon Valley" as part of the basis for a transfer to the Northern District.  *See IKOS Systems, Inc. v. Cadence Design Systems, Inc.*, C.A. No. 02-1335-GMS, 2002 U.S. Dist. LEXIS 20574, at *5 (D. Del. Oct 21, 2002 (Ex. G).

The only connection Defendants have to Ricoh's allegations of patent infringement against Design Compiler is the fact that some of the Defendants use Design Compiler in their business.  The detailed factual questions about the operation of Synopsys' Design Compiler raised by Ricoh's patent infringement allegations can only be answered by Synopsys and not by Defendants in this case, who possess no substantive information about the operation of Design Compiler.  *See* Declaration of Julie McManus at ¶7 ("McManus Decl.").  Given that Ricoh's allegations against Defendants will inevitably be resolved by the action brought directly by Synopsys in the Northern District of California, and that most, if not all, of the witnesses necessary to the defense of this case reside in the Northern District of California and are outside the subpoena power of this court, Defendants respectfully submit that it is appropriate for the Court to stay the present proceeding until Ricoh's patent infringement allegations can be litigated to resolution in the Northern District of California.  If the Court is unwilling to stay the present case, Defendants request that this matter be transferred, pursuant to 28 U.S.C. § 1404 to the Northern District of California so that it can be joined or otherwise coordinated with Synopsys' declaratory judgment action.

III.    **FACTUAL BACKGROUND**

The facts of this action clearly establish that Delaware has only a passing interest in this matter, and that the most convenient forum for this litigation is in the United States District Court for the Northern District of California.

This case is a patent infringement action involving the technology involved in the design of application specific integrated circuits (ASICs). ASICs are microelectronic devices that electronics manufacturers design for a specific function, for example for use in graphics and telecommunications devices. As ASICs have become more complicated, their design has become more difficult.

Importantly, neither the parties nor any of the relevant third parties have a substantial presence in Delaware. None of the Defendants have a substantial presence in Delaware. Aeroflex Incorporated ("Aeroflex") is a high technology company that designs, develops, manufactures and markets a diverse range of microelectronic, and test and measurement products for use in communication systems, networks and automatic test systems. Aeroflex has its principal place of business in Plainview, New York. *See* Declaration of Charles Badlato at ¶2 ("Badlato Decl."). AMI Semiconductor, Inc. ("AMIS") is a high technology company that designs, develops, and manufactures a broad range of integrated circuit (IC) products for a number of end-uses including automotive, medical, industrial, communications, computing, defense and consumer products. AMIS has its principal place of business in Pocatello, Idaho. *See* Declaration of Jon Stoner at ¶2 ("Stoner Decl."). The Matrox defendants are high technology companies that design software and hardware solutions in the fields of graphics, video editing, image processing and new business media. Matrox Electronic Systems Ltd. ("Matrox") and Matrox Graphics, Inc. ("Matrox Graphics") have their principal places of business in Dorval,

Quebec, Canada. Matrox International, Inc. ("Matrox Int'l") has its principal place of business in Plattsburg, New York. Matrox Tech, Inc. ("Matrox Tech") has its principal place of business in Boca Raton, Florida. *See* Declaration of André Desbiens at ¶¶2-4 ("Desbiens Decl.").

Plaintiff does not have a substantial presence in Delaware. Ricoh is a high technology corporation that manufactures digital office equipment, including color and black & white digital copiers, printers, facsimile machines, scanners, and digital cameras. Ricoh has its principal place of business in Tokyo, Japan. On information and belief, the technologies described in the '432 patent were developed in South Carolina. While it does not appear to have any facilities in Delaware, Ricoh has six subsidiaries in California, including three within the Northern District of California, Ricoh Innovations, Inc. in Menlo Park, Ricoh Corporation Office Solutions and Systems Development Group in San Jose, Ricoh Silicon Valley, Inc. in Cupertino. *See* Moller Decl. at ¶¶5-6.

Finally, none of the relevant third parties necessary to the defendant's case are within the subpoena powers of this Court. Ricoh filed this suit on January 21, 2003 alleging that each of the Defendants infringes the '432 patent. The precise nature of the Defendants' infringing actions is not described in the complaint. However, in correspondence, Ricoh implies that the Defendants' infringing activities are their use of Synopsys' computer-aided design systems:

> We are writing to you on behalf of Ricoh Company Ltd. because we are aware that your company is involved with the design of custom ICs that include application specific designed circuitry. We understand that in designing these circuits, you use a computer-aided design system obtained from *Synopsys, including Design Compiler.*
>
> As you may know, Ricoh owns two of the basic patents directed to computer-aided design processes. These are U.S. Patent Nos. 4,922,432 and 5,197,016. They cover significant advances in computer-aided design

7

processes for designing custom designed ICs for specific applications directly from architecture independent functional specifications for the integrated circuit.

Moller Decl., Ex. D (emphasis added).

Ricoh's allegations in its complaint and correspondence clearly implicate individuals at Synopsys who are involved with the design of Synopsys' computer-aided design products. Third party Synopsys is a designer and manufacturer of high-level design automation solutions for the design of integrated circuits, systems on a chip (SoCs) and electronic systems. Synopsys sells its products to semiconductor, computer, communications, consumer electronics and aerospace companies, including all of the Defendants. *See* McManus Decl. at ¶2. Synopsys has its principal place of business in Mountain View, California. *See id.* at ¶3. As with the parties to this action, Synopsys does not have a substantial presence in Delaware. *See id.* at ¶4. Synopsys' engineering staff, whose knowledge of Design Compiler will be essential to resolution of this case, are located in Northern California. *See id.* at ¶¶5-6.

Synopsys' employees and former employees with critical information regarding the development of Design Compiler and the '432 patent assignee's earlier efforts to license the patent-in-suit to Synopsys, and the abandonment of those efforts, are located in the Northern District of California. First, representatives of Knowledge Based Silicon Corporation ("KBS"), an assignee of the '432 patent met with Synopsys employees in 1991 urging Synopsys to take a license to the Kobayashi patents. Synopsys did not take a license, and KBS abandoned its efforts. *See id.* at ¶8; Moller Decl. at ¶10. This testimony is necessary to Defendants' equitable estoppel defense. Second, David Gregory, a former employee of Synopsys and currently the CEO of ReShape, Inc. in

Mountain View, California, is a primary architect of Design Compiler and has valuable testimony regarding the operation of that product. *See* McManus Decl. at ¶¶9-10.

In addition, on information and belief, the inventors of the patent in suit do not reside in Delaware. The inventors on the '432 patent are Hideaki Kobayashi and Masahiro Shindo. The Defendants believe that both inventors currently reside in Japan and do not work for Ricoh, and are therefore outside the subpoena power of this Court. Dr. Hideaki Kobayashi, who is named as one of the inventors on the patent at issue in the present case, currently serves as Chairman of Knowledge Edge, K.K., which runs a training program for Japanese engineers out of offices in Mountain View, California, within the Northern District. *See* Moller Decl. at ¶9.

Furthermore, many of the witnesses knowledgeable about prior art to the '432 patent are outside the subpoena power of this Court. It is well known that the electronic design automation industry, the relevant industry to the patent in suit, is based in the Silicon Valley in California. Therefore, in addition to witnesses at Synopsys, the Defendants anticipate requiring testimony from many individuals who reside in northern California and outside the subpoena power of this Court. Many individuals who developed the early logic synthesis systems that will be relevant in this case are located in the Northern District of California. *See* Moller Decl. at ¶11.

## IV.  ARGUMENT

This patent infringement litigation was brought by Ricoh against three groups of companies without any relationship to each other.[4] The only common thread among these companies is that Ricoh alleges that they all use Synopsys software to design ASICs. As

---

[4] The Matrox defendants are related companies, but have no relationship with Aeroflex or AMI.

such, the Defendants are merely proxies for Synopsys, the real party in interest. Because Synopsys has filed its own action against Ricoh in the Northern District of California for declaratory judgment on the patent-in-suit here, all issues in this case will be definitively resolved by the California Synopsys case. Therefore, this case should to be stayed pending the outcome of the Synopsys case. In the event this case is not stayed, it should be transferred to the Northern District of California, which is a more convenient forum.

### A.    As a suit against Synopsys' customers, this litigation should be stayed pending the outcome of the California *Synopsys* case

It has long been clear that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 229 U.S. 248, 254 (1936). The Third Circuit has noted that "as a general principle, duplicative litigation in the federal court system is to be avoided." *Remington Rand Corporation v. Business Systems, Inc.*, 830 F.2d 1274, 1276 (3d Cir. 1987). Where proceedings are pending in another district court on the same issues, there is no question that judicial economy would be served through use of a stay.

The purpose of the rule is to conserve judicial resources, avoid piecemeal litigation, eliminate the risk of inconsistent adjudications, and "to promote comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971-72 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). As long ago as sixty years ago, the Third Circuit warned against duplicative litigation and pointed out its pitfalls with language that rings true today:

> The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of

> judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issue and the same parties.

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941), *cert. denied*, 315 U.S. 813, 86 L. Ed. 1211, 62 S. Ct. 798 (1942). Courts in the Third Circuit and the district courts within this Circuit have stayed cases under various circumstances to avoid the waste, delay, and potential inconsistent outcomes that would result from concurrent litigation. *See, e.g., E.E.O.C.*, 850 F.2d at 971-2; *Remington Rand Corporation*, 830 F.2d at 1276; *AT&T Corp. v. Public Serv. Enters. of Pa., Inc.*, C.A. No. 99-4975, 2000 U.S. Dist. LEXIS 4649, at *16 (E.D. Pa. Apr. 12, 2000) (Ex. I) ("Staying the instant action avoids a potentially gross waste of judicial resources" when pending appeal of related case may render action moot.); *Crawford v. West Jersey Health Sys.*, 847 F. Supp. 1232, 1243 (D.N.J. 1994) (staying entire litigation pending arbitration of certain counts to conserve judicial resources); *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992) ("[A] stay [pending reexamination of the patent-in-suit] would surely conserve the time and resources of the court as well as the parties.").

When two suits are pending regarding the same patents, "[t]he general rule . . . is that 'as a principle of sound judicial *Kahn* administration, the first suit should have priority, absent special circumstances.'" 889 F.2d at 1081 (Fed. Cir. 1989), quoting *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). One of these "special circumstances" is the "customer suit" exception, "whereby litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz*, 909 F.2d at 1464. This preference for litigation involving the manufacturer of an accused product "is

based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Kahn*, 889 F.2d at 1081. For this reason, courts will stay a first-filed customer suit when a later-filed manufacturer suit will resolve the issues presented by the customer suit. *See Refac International, Ltd., v. IBM*, 790 F.2d 79, 81, *aff'd on reconsideration in relevant part by* 798 F.2d 459 (Fed. Cir. 1986) (affirming stay of suit against customers while suit proceeds against manufacturer); *Whelen Technologies, Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715 (N.D. Ill. 1990) (staying customer suit pending outcome of second-filed manufacturer suit); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842 (W.D. Pa. 1988) (same).

It cannot be disputed that this litigation is a customer suit that should be stayed in favor of the California Synopsys case. Ricoh has informed at least one defendant that Ricoh's allegations of infringement here are based solely on the Defendants' use of Synopsys' Design Compiler. *See* Declaration of Alan MacPherson at ¶¶2-4. Synopsys has brought a case in the Northern District of California against Ricoh for a declaration of non-infringement of the '432 patent and of invalidity of that patent. *See* Ex. A. The California Court's determination regarding infringement and validity of the '432 patent will essentially dispose of the infringement issues regarding Synopsys' customers in this case. Either Synopsys will prevail and use of Design Compiler will be determined to be non-infringing or Ricoh will prevail and Synopsys will be forced to pay damages or take a license to the Ricoh patent, in which case Synopsys' customers will be immunized from liability under the doctrine of "patent exhaustion." *See Intel Corp. v. ULSI Corp.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("The law is well settled that an authorized sale of a

patented product places the product beyond the reach of the patent.") (*citing Bloomer v. Millinger*, 68 U.S. (1 Wall.) 340, 350-51 (1864)).

**B.    Since "forum shopping" alone motivated Ricoh's selection of Delaware, this litigation should be stayed pending the outcome of the California Synopsys case.**

Another "special circumstance" constituting an exception to the first to file doctrine is "where forum shopping alone motivated the choice of sites for the suit . . . ." *Kahn*, 889 F.2d at 1081. Here, all of the circumstantial evidence indicates that forum shopping was a primary if not sole motivating factor for Ricoh's selecting the District of Delaware and avoiding the Northern District of California. No acts of infringement are alleged to have taken place in Delaware and none of the parties maintains any facilities in Delaware. None of the party witnesses or party documents are found in Delaware. Ricoh is based in Tokyo, Japan and the East Coast is therefore less convenient than other possible jurisdictions on the West Coast, including the Northern District of California. Most importantly, despite the fact that Ricoh's infringement allegations are based upon Defendants' use of Synopsys' Design Compiler, Ricoh picked a jurisdiction where none of the relevant Synopsys witnesses reside. As stated below, none of the other third party witnesses, whose testimony is necessary to prove Defendants' noninfringement, invalidity and equitable estoppel defenses, are subject to the subpoena power of this Court.

Given these facts, it is appropriate for the Court to stay this action, filed against Synopsys' customers, in favor of the action filed by Synopsys.

**C.    If not stayed, this litigation should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404.**

If this litigation is not stayed it ought to be transferred to the Northern District of California where it can be consolidated or coordinated with Synopsys' declaratory

13

judgment case. Title 28 of the U.S. Code, § 1404 (a) permits transfers of cases "[f]or the convenience of parties and witnesses [and] in the interests of justice." The present dispute is integrally tied to events and persons in California. Present and former Synopsys engineers, the only persons familiar with the design of the software product that Ricoh accuses of infringement, live and work in the Bay Area. Synopsys' equitable estoppel defense arises from historical events that took place in California. The Synopsys employees that attended the negotiations that give rise to the equitable estoppel defense are resident in the Northern District of California. Additionally, because the Electronic Design Automation industry of which Synopsys is a part is so tightly focused in the San Francisco Bay Area, the witnesses most familiar with the relevant prior art are also resident in the Northern District of California. The convenience to the parties and third party witnesses both suggest that the Northern District of California is a more suitable venue for resolution of the underlying patent dispute.

A case should be transferred transfer when the original matter could have been brought in the district to which the case is transferred, and where, after considering all relevant public and private factors, "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3rd Cir. 1995). This Court has held that some of the private factors identified in *Jumara* significantly duplicate the provisions of Section 1404 (a) and, therefore, should not be given much weight to avoid the risk of double-counting. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197 (D. Del. 1998. The remaining factors all weigh in favor of transfer to the Northern District.

### 1.    Ricoh could have brought this litigation in the Northern District of California

In a patent case, venue is proper "where the defendant resides." 28 U.S.C. § 1400(a). "For purposes of venue ... , a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction..." 28 U.S.C. § 1391(c). Jurisdiction in the Northern District of California under California's long-arm statute reaches to the extent allowed by the Due Process Clause, and is coextensive with the jurisdiction of the Delaware court in this action. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Furthermore, all the Defendants have stated that, should this action proceed, litigation would be more convenient in the Northern District of California than in the District of Delaware. *See* Badlato Decl. at ¶4; Stoner Decl. at ¶4; Desbiens Decl. at ¶6. Ricoh could, therefore, have brought this case against the Defendants in the Northern District of California.

### 2.    The balance of convenience factors strongly favors transfer to the Northern District of California.

This Court has formulated a "balance of convenience" test based upon the *Jumara* factors to determine whether transfer is appropriate. *See Affymetrix*, 28 F. Supp. 2d at 208-209. Among the factors considered are the connection between Delaware and the action; the physical locations of the parties and their financial position; the convenience and availability of witnesses; the location of records and other documents; and the relative congestion of the dockets in Delaware and the proposed transferee court. *Id.* at 197-208; *see also Allergan, Inc. v. Alcon Labs., Inc.*, C.A. No. 02-1682-GMS, 2003 U.S. Dist. LEXIS 2564, at *5 (D. Del. Feb. 25, 2003) (Ex. 4); *IKOS Systems*, 2002 U.S. Dist. LEXIS 20574 at *4-*6. To prevail, Defendants have the burden of showing that the

balance of these factors strongly favors transfer. *See Jumara*, 55 F.3d at 879; *Affymetrix*, 28 F. Supp. 2d at 200. Here, all the relevant factors favor transfer.

### a)    Delaware has a minimal interest in this case

No acts of infringement are alleged to have taken place in Delaware, and none of the parties maintain facilities in Delaware. *See* Badlato Decl. at ¶3; Stoner Decl. at ¶3; Desbiens Decl. at ¶4. In fact, the only relationship between this case and Delaware is that three of the Defendants are incorporated in Delaware, which only serves to give this Court personal jurisdiction over those Defendants. While not completely irrelevant, the Defendants' state of incorporation is "certainly not dispositive" for purposes of establishing the most convenient place to try this lawsuit. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 509 n.6 (D. Del. 1999).

### b)    No party is physically present in Delaware, and the parties can litigate equally well in California

Neither Ricoh nor any defendant maintains its principal place of business nor, indeed, any facility, in Delaware. Aeroflex is located in Plainview, New York, on Long Island. *See* Badlato Decl. at ¶2. AMI is located in Idaho. *See* Stoner Decl. at ¶2. The Matrox defendants are located in Quebec, upstate New York, and Florida. See Desbiens Decl. at ¶¶2-4. Ricoh is located in Japan. It has no apparent facilities in Delaware, but does maintain six subsidiaries in California, including three within the Northern District of California, Ricoh Innovations, Inc. in Menlo Park, Ricoh Corporation Office Solutions and Systems Development Group in San Jose, Ricoh Silicon Valley, Inc. in Cupertino. *See* Moller Decl. at ¶5. Although no defendant is headquartered in California, all consider California to be a more convenient forum than Delaware. *See* Badlato Decl. at ¶4; Stoner Decl. at ¶4; Desbiens Decl. at ¶6. Finally, California is approximately 3,000

16

miles closer to Japan than Delaware, suggesting that it might be a more convenient forum were either of the inventors on the Ricoh patent to agree to appear in this litigation. *See* Moller Decl. at ¶9 (both inventors on the Ricoh patent appear to be located in Japan). A transfer to the Northern District would also reduce expenses since Defendants are represented by attorneys located in Northern California, and the "added expense of local Delaware counsel would be avoided if this case is transferred."[5] *See Mentor*, 77 F. Supp. 2d at 510 n.7. This factor weighs in favor of transfer.

### c)   Crucial third-party fact witnesses reside in California, beyond the subpoena power of this Court

This Court has noted that "[f]act witnesses who possess first-hand knowledge of the events giving rise to the lawsuit . . . have traditionally weighed quite heavily in the 'balance of convenience' analysis." *Affymetrix*, 28 F. Supp. 2d at 203. The major fact questions in this case will require testimony from Synopsys personnel located in the Northern District. Defendants will need to obtain testimony from Synopsys personnel about the internal structure of Design Compiler in order to defend themselves against Ricoh's patent infringement allegations. In support of its equitable estoppel defense, Defendants will also want to introduce testimony from present and/or former Synopsys employees regarding the 1991 meeting between KBS and Synopsys. *See* McManus Decl. at ¶8.

Furthermore, many of the key individuals who participated in the design of early logic synthesis systems and are therefore knowledgeable about the relevant prior art are located in the Bay Area. Some of the well-known prior art systems that are likely to be

---

[5] Plaintiff is represented by attorneys located in Washington, DC, and would require local counsel in either venue.

relevant to this case include: the Cathedral system, the Socrates system, and the Yorktown Silicon Compiler. *See* Moller Decl. at ¶11. For example, a principal engineer involved with the design and development of the Cathedral system, Dr. Jan Rabaey, is currently on the faculty of the University of California at Berkeley. *See id.* In addition, David Gregory, a former Synopsys employee and currently CEO of ReShape, Inc. in Mountain View, California, was a principal architect of the Socrates system for the synthesis and optimization of logic circuit design. His Ph.D dissertation concerned aspects of the Socrates system. *See id.*; McManus Decl. at ¶¶9-10. Aart de Geus, now an executive with Synopsys, was also involved with the development of the Socrates synthesis system. Last, the principals involved in development of the Yorktown Silicon Compiler included Drs. Robert Brayton, Raul Camposano and Giovanni De Micheli. Dr. Brayton is on the faculty at the University of California at Berkeley, Dr. Camposano is an executive at Synopsys and Dr. De Micheli is on the faculty at Stanford University. *See* Moller Decl. at ¶11. All of these persons, with their extensive knowledge of prior art systems, are resident in the Northern District of California.

In addition, many of the individuals with the greatest familiarity with the Electronic Design Automation industry in general, and with logic synthesis in particular, are located in the Northern District. The significant players in the logic synthesis industry are Synopsys, Cadence Design Systems, Inc. ("Cadence"), Monterey Design Systems ("Monterey"), Magma Design Automation ("Magma"), Get2Chip, Inc. (recently acquired by Cadence) ("Get2Chip"), and Incentia Design Systems, Inc. ("Incentia"). Synopsys is headquartered, and has its principal engineering facilities, in Mountain View and Sunnyvale, California, Cadence and Get2Chip are located in San Jose, California, Monterey is located in Sunnyvale, Magma is located in Cupertino, California, and

Incentia has its principal place of business in Santa Clara, California.  *See* McManus
Decl. at ¶¶3, 12.  All of these locations are within a few miles of each other in the
Northern District of California.

The fact that all of the significant competitors in the logic synthesis arena and
many, perhaps most, of the experts in this area are clustered in the Northern District
reflects the accuracy of this Court's observation in the *IKOS Systems* decision that the
Electronic Design Automation industry is, in effect, "resident" in the Northern District of
California.  *See IKOS Systems*, 2002 U.S. Dist. LEXIS 20574, at *5.  The fact that
Defendants' case is so heavily reliant on factual evidence that will have to be obtained
from third parties in another judicial district is a strong factor weighing in favor of
transfer.

Importantly, all of these witnesses vital to the Defendants' defense in this action
are outside the subpoena power of this Court.  The Defendants would therefore be greatly
prejudiced if this action were to go forward in Delaware.

By contrast, no known witnesses for either party reside within Delaware.  Because
there are no critical witnesses located in this District, and there are critical witnesses
located within the Northern District of California, this factor weighs strongly in favor of
transfer. *See Affymetrix*, 28 F. Supp. 2d at 203-205; *Mentor*, 77 F. Supp. 2d at 510-512

### d)    No relevant documents are present in Delaware, while many are present in California

This Court has noted that the weight of this factor has decreased in recent years.
*See Affymetrix*, 28 F. Supp. 2d at 205.  Nevertheless, Defendants are aware of no
documents relevant to this case in Delaware, whereas Synopsys presumably has many
documents relevant to this case.  This factor weighs in favor of transfer.

19

It is clear that this case would more conveniently proceed and the interests of justice would be better served by a transfer to the Northern District of California.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay the present litigation pending the outcome of the Synopsys case pending in the Northern District of California, or, alternatively, transfer this case to the Northern District of California for consolidation with the Synopsys case.

Dated: June 12, 2003

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899-2207
Telephone: (302) 888-6316

Teresa M. Corbin
Christopher L. Kelley
Matthew E. Hocker
Erik K. Moller
HOWREY SIMON ARNOLD & WHITE LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
Telephone: (650) 463-8100

COUNSEL FOR DEFENDANTS

270783v1

20

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on the 12th day of June, 2003, a true and correct

copy of the foregoing was caused to be served on the attorneys of record at the following addresses:

**<u>VIA HAND DELIVERY</u>**

Robert W. Whetzel
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19899

**<u>FEDERAL EXPRESS</u>**
Gary M. Hoffman
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526

**<u>VIA FEDERAL EXPRESS</u>**
Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, N.Y. 10036-2714

_____
Francis DiGiovanni (#3189)

265624

1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   HOWREY SIMON ARNOLD & WHITE, LLP
3  301 Ravenswood Avenue
   Menlo Park, California 94025
4  Telephone:  (650) 463-8100
   Facsimile:  (650) 463-8400
5
6  Attorneys for Defendants AEROFLEX INC., et al.

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12                                    )  Case No. CV 03-04669 MJJ
                                      )
13  RICOH COMPANY LTD.,               )  **NOTICE OF MOTION AND MOTION TO**
                                      )  **STAY RICOH'S CUSTOMER SUIT AND**
14          Plaintiff,                )  **MEMORANDUM OF POINTS AND**
                                      )  **AUTHORITIES IN SUPPORT THEREOF**
15      v.                            )
                                      )  Date:        December 16, 2003
16  AEROFLEX INC., ET AL.,            )  Time:        9:30 a.m.
                                      )  Place:       Courtroom 11, 19th Floor
17          Defendants.               )
    _____    )

18

19

20

21

22

23

24

25

26

27

28

Case No.  CV 03-04669 MJJ
MOTION TO STAY
P:\8001425

1    **NOTICE OF MOTION AND RELIEF REQUESTED**

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on December 12, 2003, at 9:00 A.M., or as soon thereafter as

4    counsel may be heard in Courtroom 7 of the above-entitled Court, defendants Aeroflex Incorporated

5    ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox

6    Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), and Matrox Tech,

7    Inc. ("Matrox Tech") (collectively "Delaware defendants") will seek an order from this Court staying

8    plaintiff Ricoh Company, Ltd.'s ("Ricoh") patent infringement action against these customers of

9    Synopsys, Inc. ("Synopsys"). The Delaware defendants' motion is based on the following

10   memorandum of points and authorities, the Declaration of Erik K. Moller ("Moller Decl.") and

11   exhibits thereto, all pleadings and papers in the Court's file, the arguments of counsel, and any

12   additional evidence this Court may consider at the time of the hearing.

13   The Delaware defendants seek an order from this Court staying the customer suit brought by

14   Ricoh, which is based solely on its claim that the Delaware defendants' use of Synopsys's Design

15   Compiler? software infringes claims 13-20 of United States Patent No. 4,922,432 (the "'432 patent"),

16   pending the resolution of Synopsys's action before this Court which seeks a declaratory judgment that

17   the '432 patent is invalid and not infringed by the use of Synopsys's Design Compiler? software.

18   **MEMORANDUM OF POINTS AND AUTHORITIES**

19   **I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

20   Earlier this year, Ricoh brought the instant patent infringement action in the U.S. District Court

21   for the District of Delaware. Ricoh's action accuses six of Synopsys's customers (the Delaware

22   defendants) of infringing Ricoh's '432 patent based on their use of Synopsys's Design Compiler?

23   software. Although Synopsys was not named in that action, Synopsys and its Design Compiler?

24   software have always been the real targets of Ricoh's action against these Synopsys customers.

25   Subsequently, Synopsys brought an action in this Court seeking a declaratory judgment that

26   both the '432 patent and the related United States Patent No. 5,197,016 (the "'016 patent") are invalid

27   and not infringed by the use of Synopsys's Design Compiler? software. Synopsys filed this

28

HOWREY
SIMON
ARNOLD &
WHITE
Case No. CV 03-04669 MJJ                    -2-
MOTION TO STAY

1 declaratory judgment action to, among other things, prevent additional customers from being preyed

2 upon by Ricoh.

3      A little more than a month ago, the Delaware court agreed with the Delaware defendants that

4 Ricoh's infringement action against them was essentially one between Ricoh and Synopsys that would

5 best be litigated in the Northern District of California. *See* Memorandum and Order dated August 29,

6 2003 at 5 (Moller Decl., Exh. A) ("[T]he court concludes that Ricoh's infringement claims against the

7 defendants are fundamentally claims against the ordinary use of Synopsys's Design Compiler.").

8 Significantly, the Delaware court found that "the California court's determination regarding

9 infringement and validity of the '432 patent will efficiently dispose of the infringement issues

10 regarding Synopsys's customers in this case." *See id.* Based on these conclusions, the Delaware court

11 decided to transfer Ricoh's infringement action to this district.

12      Importantly, Ricoh has never identified *any* action taken by any of the Delaware defendants

13 beyond the ordinary use of Synopsys's Design Compiler® software as an act that infringes the '432

14 patent.

15      The Delaware defendants now seek an order from this Court staying this action against

16 Synopsys's customers for the precise reasons that the Delaware Court transferred this action from the

17 Delaware district court; this case is one between Synopsys and Ricoh, and the central issues in this

18 action will be most efficiently litigated between Synopsys and Ricoh in Synopsyss' declaratory

19 judgment action, and without the Delaware defendants.

20 **II.    STATEMENT OF ISSUES TO BE DECIDED**

21      *Whether this Court should stay the "customer suit" brought by Ricoh for infringement of its*

22 *'432 patent against Synopsys's customers (the Delaware defendants) pending the outcome of*

23 *Synopsys's action seeking a declaratory judgment that the '432 patent and the related '016 patent are*

24 *invalid and the use of Synopsys's Design Compiler? software does not infringe those patents?*

25      Federal Circuit precedent requires that a manufacturer's declaratory judgment suit should be

26 given preference over a patentee's suit against the manufacturer's customers when those customers are

27 being sued for their ordinary use of the manufacturer's products. This means that if the prosecution of

28 the manufacturer's declaratory judgment action advances the major issues (such as patent infringement

1    and patent validity) present in the "customer suit" then the district court may stay that suit pending the

2    outcome of the manufacturer's declaratory judgment action. Such a stay is warranted even where there

3    are additional issues in the suit against the customers.

4         Here the Delaware court has already concluded that Synopsys's declaratory judgment action is

5    entitled to preference over Ricoh's infringement action against Synopsys's customers when it

6    transferred that customer suit to this district. The Delaware court found that Ricoh's infringement

7    action was fundamentally one "against the ordinary use of Synopsys's Design Compiler" and that this

8    Court's "determination regarding infringement and validity of the '432 patent will efficiently dispose

9    of the infringement issues regarding Synopsys's customers in this case." Similarly, this Court has also

10   found that Ricoh's claims against Synopsys's customers "are necessarily allegations against the

11   primary use of the Design Compiler itself."

12        Based on these conclusions, staying Ricoh's customer suit would unquestionably avoid

13   unnecessary and duplicative litigation as well as the prejudice to these customer defendants by such

14   litigation. Equally apparent is the lack of any prejudice to Ricoh from a stay since the threshold issues

15   of validity and infringement in the declaratory judgment action are precisely the same as those in

16   Ricoh's customer suit. Accordingly, if Ricoh prevails in the declaratory judgment action it has

17   advanced its case on those issues whereas if Synopsys prevails in the declaratory judgment action the

18   customer suit is moot. Given the above findings already made by this Court and the Delaware Court,

19   this Court must now decide whether to exercise its discretion and stay Ricoh's infringement action

20   against these Synopsys customers pending the outcome of Synopsys's declaratory judgment action.

21   **III.    STATEMENT OF RELEVANT FACTS**

22        In its January 23, 2003 complaint, Ricoh accused each of the Delaware defendants of infringing

23   Ricoh's '432 patent. However, Ricoh's infringement action targets the ordinary use of Synopsys's

24   Design Compiler? software. This is demonstrated by the discovery received from Ricoh in this

25   action, the admissions by Ricoh, and the letters sent by Ricoh to other Synopsys customers.

26        First, Ricoh's Rule 30(b)(6) designee regarding its pre-filing investigation for this action, Mr.

27   Ishijima, testified that the decision to sue each of the defendants was based on information regarding

28   the operation of Synopsys's Design Compiler? software and the fact that each of the customer

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                    -4-
MOTION TO STAY

1 | defendants were using that software to design integrated circuits. *See* Moller Decl., Exh. B at 47:8-

2 | 53:1. According to Mr. Ishijima, Ricoh only knew that the Delaware defendants used the Design

3 | Compiler? software and did not even consider the specifics of how any of the defendants were using

4 | the Design Compiler? software or whether any of them were using any other software or taking any

5 | additional steps when designing their integrated circuits. *See id.* Ricoh's decision to bring its

6 | infringement action against these six Synopsys customers, therefore, was based solely on their ordinary

7 | use of the Design Compiler? software. Thus, the specifics of each of these customers design efforts

8 | are simply not material to the infringement question in this case.

9 | Second, Ricoh's responses to each of the Delaware defendants' interrogatories also

10 | demonstrate that it is the use of Synopsys's Design Compiler software? that is at issue in Ricoh's

11 | infringement action against these Synopsys customers. *See* Moller Decl., Exh. C. These

12 | interrogatories sought the particular acts forming Ricoh's basis for its infringement action against each

13 | of these defendants. *See id.* at 5-8. Ricoh's response, for each of the Delaware defendants, was

14 | identical and relied entirely on their ordinary use of the Design Compiler? software:

15 |
16 |
17 |
18 | "Ricoh asserts that [defendant] infringes at least claim 13 of the '432 patent based, *inter alia* on the use by [defendant] of Synopsys's Design Compiler for the design of ASIC products. Such use, for example, involves the input to Design Compiler of flowcharts or hardware description languages that describe behavioral aspects of an ASIC under design. Design Compiler is then used to draw on its technology, symbol, DesignWare, and/or other libraries to synthesize the hardware cells to be implemented in the desired ASIC as needed to perform the functions described by a given input description."

19 | *Id.* at 6.

20 | Ricoh has also admitted to defendant, AMI, that it charged AMI with infringing the '432 patent simply

21 | because it uses Synopsys's Design Compiler? software. *See* Moller Decl., Exh. D. Again, this was

22 | the only basis identified by Ricoh. *See id.*

23 | Not only does the discovery provided by Ricoh and its admissions demonstrate that its

24 | infringement action is based on the ordinary use of Synopsys's Design Compiler? software, but the

25 | letters sent by Ricoh to other Synopsys customers leads to the same conclusion—Ricoh's infringement

26 | claim is focused exclusively on the customer's ordinary use of Synopsys's Design Compiler?

27 | software. *See* Moller Decl., Exh. E:

28 | "We are writing to you on behalf of Ricoh Company Ltd. because we are aware that your company is involved with the design of custom ICs that include application specific designed

1     circuitry. We understand that in designing these circuits, you use a computer-aided design
2     system obtained from Synopsys, including Design Compiler."

3  *Id.*

4     Recently, on August 29, 2003, Judge Sleet of the United States District Court for the District of

5  Delaware entered an order transferring the Delaware litigation to the Northern District of California.

6  (*See* Moller Decl., Exh. A at 5). Not surprisingly, Judge Sleet's decision was based on, among other

7  things, his conclusion "that Ricoh's infringement claims against the [Delaware] defendants are

8  fundamentally against the ordinary use of Synopsys's Design Compiler." *See id.*

9     Just a few weeks ago, this Court also concluded, in denying Ricoh's motion to dismiss

10  Synopsys's declaratory action, that Ricoh's "claims against [Synopsys's] customers are necessarily

11  allegations against the primary use of Design Compiler itself." Moller Decl., Exh. F at 9:14-15.

12     Thus, as both this Court and the Delaware court have recognized, Ricoh has never identified

13  anything other than the ordinary use of Synopsys's Design Compiler?  software as a basis for claiming

14  infringement of its '432 patent. There is no question that Ricoh's '432 patent infringement action

15  targets the ordinary use of Synopsys's Design Compiler® software.

16  **IV.    ARGUMENT**

17     **A.    The Legal Standard for Granting Stays**

18     "[T]he power to stay proceedings is incidental to the power inherent in every court to control

19  the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

20  for litigants." *Landis v. North American Co.*, 229 U.S. 248, 254 (1936):

21     A trial court may with propriety, find it efficient for its own docket and the fairest course for
       the parties to enter a stay of an action before it, pending resolution of independent proceedings
22     which bear upon the case. This rule applies whether the separate proceedings are judicial,
       administrative, arbitral in character, and does not require that the issues in such proceedings are
23     necessarily controlling of the action before the courts. In such cases the court may order a stay
       of the action pursuant to its power to control its docket and calendar and to provide for a just
24     determination of the cases pending before it.

25  *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864-65 (9th Cir.), *cert. denied*, 444 U.S.

26  827 (1979) (citations omitted).

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ         -6-
MOTION TO STAY

1    The Ninth Circuit has recognized that the following competing interests should guide the

2    district court's decision of whether to exercise its discretion and grant a stay of a pending action.  *See*

3    *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir 1962); *see also Cohen v. Carreon*, 94 F. Supp. 112,

4    115 (D. Or. 2000):

> the possible damage which may result from the granting of a stay, the hardship or inequity
> which a party may suffer in being required to go forward, and the orderly course of justice
> measured in terms of the simplifying or complicating of issues, proof, and questions of law
> which could be expected from a stay.

*Accord, Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("When considering a

motion to stay, the district court should consider three factors: (1) potential prejudice to the non-

moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the

judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact

consolidated.").

As demonstrated below, the competing interests identified by the Ninth Circuit will generally

weigh heavily in favor of staying a patent infringement action brought by a patentee against a

manufacturer's customers—i.e., a "customer suit"—pending the resolution of the manufacturer's

declaratory judgment action based on that same patent.

**B.    Customer Suits Should Be Stayed Pending The Resolution Of The Manufacturer's
Declaratory Judgment Action On The Same Patent**

The Federal Circuit has determined that "litigation against or brought by the manufacturer of

infringing goods takes precedence over a suit by the patent owner against customers of the

manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  This preference is

based on "the recognition that, in reality, the manufacturer is the true defendant in the customer suit

[since] a manufacturer must protect its customers, either as a matter of contract, or good business, or in

order to avoid an adverse ruling against its products." *Id.* (quoting *Codex Corp. v. Milgo Electronic

Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)).  It is, therefore, within a district court's discretion to stay

a patent infringement customer suit when there is a suit by the manufacturer that will resolve the major

issues such as patent infringement and patent validity in that customer suit. *See Katz,* 909 F.2d at

1464; *Refac International, Ltd., v. IBM*, 790 F.2d 79, 81, *aff'd on reconsideration in relevant part by*

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
MOTION TO STAY

-7-

1   798 F.2d 459 (Fed. Cir. 1986) (affirming stay of customer suit in favor of suit against manufacturer);

2   *Whelen Technologies, Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715 (N.D. Ill. 1990) (staying customer

3   suit pending outcome of manufacturer's suit); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842

4   (W.D. Pa. 1988) (same).

5          In *Katz*, the Federal Circuit affirmed the district court's stay of a customer suit based on the

6   manufacturer's representation that the resolution of the major issues such as patent infringement and

7   patent validity in its own action would resolve these issues as to its customers. *See Katz*, 909 F.2d at

8   1464. The Federal Circuit recognized that the prosecution of the stayed action against the customers

9   would be advanced if the patentee is successful against the manufacturer and may well be mooted if

10  the patentee is unsuccessful. *See id*. The Federal Circuit, however, was not at all concerned by the

11  fact that there may be additional issues involving the defendants in the stayed action. *See id*.

12  **C.    Ricoh's Customer Suit Should Be Stayed Pending The Resolution of Synopsys's**
        **Declaratory Judgment Action**

13

14         Here, the Delaware court has already determined that Ricoh's action against the Delaware

15  defendants is a customer suit and that this Court's "determination regarding infringement and validity

16  of the '432 patent will efficiently dispose of the infringement issues regarding Synopsys's customers in

17  this case." Moller Decl., Exh. A at 5. These conclusions were based on that court's finding that

18  "Ricoh's infringement claims are fundamentally claims against the ordinary use of Synopsys's Design

19  Compiler." *Id*. Similarly, this Court has also found that Ricoh's "claims against [Synopsys's]

20  customers are necessarily allegations against the primary use of Design Compiler itself." Moller Decl.,

21  Exh. F at 9:14-15. Such findings are also evident from Ricoh's own statements in its pleadings, in

22  discovery, in court, and to the defendants. *See e.g.,* Moller Decl., Exh. C at 6.

23         Like the suit against the manufacturer in *Katz*, therefore, Synopsys's declaratory judgment

24  action is entitled to preference over Ricoh's action against the Delaware defendants. Specifically,

25  Synopsys's declaratory judgment action's resolution of the common questions of whether the '432

26  patent is valid and infringed by the use of Synopsys's Design Compiler? software will advance

27  Ricoh's infringement action if Ricoh is successful or will completely render that action against

28  Synopsys's customers moot if Ricoh is unsuccessful. The Delaware court recognized this when it

1  decided to transfer Ricoh's infringement action to this district. *See* Moller Decl., Exh. A at 5.

2  Therefore, Ricoh's customer suit should be stayed pending the outcome of Synopsys's declaratory

3  judgment action.

4       For these same reasons, granting the instant motion to stay will not result in any prejudice to

5  Ricoh. Ricoh will have every opportunity to litigate issues central to both actions in Synopsys's

6  declaratory judgment action. Again, the Delaware court recognized this when it concluded that "based

7  on the outcome of the [declaratory judgment case], either Synopsys will prevail and use of the Design

8  Compiler? software will be determined to be non-infringing, or Ricoh will prevail, and Synopsys will

9  be forced to pay damages or license the patent." *Id*. Moreover, the Delaware defendants have all

10  agreed to be bound by the outcome of Synopsys's declaratory judgment action against Ricoh on issues

11  relating to Synopsys's Design Compiler® software, including whether the ordinary use of Design

12  Compiler® infringes the '432 patent and invalidity. *See* Moller Decl., ¶ 8. Thus, the requested stay

13  will not harm Ricoh.

14       Moreover, the Delaware defendants have already been forced to respond to a total of 11

15  interrogatories, 42 document requests, 20 requests for admissions, and 6 deposition notices to date.

16  *See* Moller Decl., ¶ 9. Ricoh will certainly continue seeking discovery in this action, thus, subjecting

17  the Delaware defendants to additional burdens and expense. All of this will also no doubt require

18  additional efforts by the Court and these six defendant customers and is completely unnecessary since

19  Synopsys's declaratory judgment action will likely render this action against Synopsys's customers'

20  moot. Thus, staying Ricoh's customer suit will certainly relieve all of the customer defendants of the

21  unwarranted hardship of defending against it.

22       Finally, staying Ricoh' action against the Delaware defendants will also yield significant

23  economies and efficiencies for the Court and avoid unnecessary hardship on these six customer

24  defendants. Specifically, as demonstrated by the evidence and the Delaware court's findings, the

25  Delaware defendants are superfluous to the determination of the central issues of validity and

26  infringement and add only unnecessary complexity to the present dispute between Ricoh and the true

27  defendant—Synopsys.

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ
MOTION TO STAY

-9-

1    **V.    CONCLUSION**

2         Both this Court and the Delaware court have determined that Ricoh's infringement action is

3    essentially against the ordinary use of Synopsys's Design Compiler?  software by its customers.  The

4    Delaware court has also determined that Synopsys's declaratory judgment action is entitled to

5    preference since this Court's determination will either advance or dispose of Ricoh's infringement

6    action.  Staying Ricoh's customer suit will avoid duplicative litigation and the prejudice to these

7    customer defendants, and will in no way prejudice Ricoh.  Moreover, staying the customer suit will

8    result in efficiencies for the Court as well.  For all the foregoing reasons, therefore, Ricoh's action

9    against the Delaware defendants should be stayed pending the resolution of Synopsys's declaratory

10   judgment action.

11   Dated:  November 7, 2003                      Respectfully submitted,

12                                                 HOWREY SIMON ARNOLD & WHITE, LLP

13

14

15                                                 By:    /s/
                                                         Thomas C. Mavrakakis
16                                                       Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No. CV 03-04669 MJJ                          -10-
MOTION TO STAY

1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Erik K. Moller (SBN 147674)
   HOWREY SIMON ARNOLD & WHITE, LLP
3  301 Ravenswood Avenue
   Menlo Park, California 94025
4  Telephone:  (650) 463-8100
   Facsimile:   (650) 463-8400
5
   Attorneys for Defendants
6  MATROX ELECTRONIC SYSTEMS LTD. and
   MATROX GRAPHICS INC.
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  RICOH COMPANY, LTD.,                    ) Case No.
                                            )
13            Plaintiff,                     ) DECLARATION OF ED DWYER IN
                                            ) SUPPORT OF MATROX ELECTRONIC
14      vs.                                  ) SYSTEMS, LTD. AND MATROX
                                            ) GRAPHICS INC.'S MOTION FOR
15  AEROFLEX INCORPORATED, AMI               ) SUMMARY JUDGMENT OF
    SEMICONDUCTOR, INC., MATROX              ) NONINFRINGEMENT
16  ELECTRONIC SYSTEMS LTD., MATROX          )
    GRAPHICS INC., MATROX                    )
17  INTERNATIONAL CORP., and MATROX          ) Date:    December __, 2003
    TECH, INC.,                              ) Time:    9:30 a.m.
18                                           ) Ctrm:    11, 19th Floor
              Defendants.                    ) Hon. Martin J. Jenkins
19  _____ )

20

21      I, Ed Dwyer, declare as follows:

22      1.     I am the Vice-President of Matrox International Corporation.  I have been an employee

23  of Matrox Electronic Systems Ltd ("Matrox Electronic") from 1978 until 1994 and of Matrox Graphics

24  Inc. ("Matrox Graphics") from 1994 until 2003, and I am familiar with the Canadian Matrox entities'

25  operations and facilities from 1978 to the present.  I make this Declaration of my personal knowledge,

26  and if called as a witness, I could and would testify competently to the statements contained herein.

27

28

HOWREY
SIMON
ARNOLD &
WHITE
Case No.
DWYER DECL IN SUPPORT OF MATROX ELECTRONICS AND
MATROX GRAPHICS' MOTION FOR SUMMARY JUDGMENT

1    2.    Engineers at Matrox Electronic and Matrox Graphics design new application specific

2   integrated circuits (ASICs). The process of designing ASICs includes many steps. The design of the

3   circuit includes the steps of:

4           i)      identification of functions to be performed by the new ASIC and preparation of
                    design specifications identifying those functions;
5           ii)     design of circuitry to perform the functions described in the specification;
            iii)    verification of the functionality of the circuit design;
6           iv)     generating the design information known as physical layout using software for
                    placement and routing of the components and their interconnections;
7           v)      verification of the physical layout with the software processes used for timing
8                   characterization, design rule checking, etc.

9    3.    Once the designs have been completed and verified, Matrox arranges with third party

10  semiconductor fabrication companies, or foundries. These foundries perform the following steps in the

11  process of creating ASICs:

12          vi)     preparation of mask data from the physical layout information to generate a set
                    of instructions used by electron beam equipment to make photomasks (a process
13                  referred to as "fracturing");
14          vii)    fabrication of semiconductor wafers using the photomasks; and
            viii)   dicing and verification of the resultant semiconductor circuits.
15

16   4.    Typically fabrication of semiconductor wafers includes the use of up to 25 photomasks

17  and hundreds of process steps in the manufacture of the semiconductor wafers. Matrox Electronic and

18  Matrox Graphics have used United Microelectronics Corp. (UMC), NEC and Toshiba. The

19  semiconductor foundries used by these companies are located either in Japan or Taiwan.

20   5.    Design Compiler is logic synthesis software used in the design of integrated circuits.

21  When logic synthesis software is used it makes up part of the circuit design task (step ii, above).

22  Design Compiler is not used in the manufacturing process of either the photomasks or the chips

23  themselves.

24   6.    Both Matrox Electronic and Matrox Graphics are Canadian corporations with their

25  principal places of business in Dorval, Quebec. Matrox Electronic is an industry leader in digital video

26  production hardware and Image processing hardware and software, and Matrox Graphics is a highly

27  acclaimed manufacturer of graphics cards for use with LCD video displays.

28

HOWREY
SIMON
ARNOLD &
WHITE
Case No.                                                    -2-
DWYER DECL IN SUPPORT OF MATROX ELECTRONICS AND
MATROX GRAPHICS' MOTION FOR SUMMARY JUDGMENT

1      7.    Matrox Electronic and Matrox Graphics are involved in the design of integrated

2 circuits, for which process they employ logic synthesis tools, such as Synopsys' Design Compiler. All

3 of the engineers and other technical personnel employed by Matrox Graphics and Matrox Electronic

4 who used those logic synthesis tools to perform design work are employed in Canada and have

5 performed, and continue to perform the entirety of the companies' design work within Canada. None

6 of these companies' design work is performed in the United States.

7      I declare under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct. This declaration was executed in Dorval, Quebec, Canada on November

9 13, 2003.

10

                              Ed Dwyer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No.                     -3-
DWYER DECL IN SUPPORT OF MATROX ELECTRONICS AND
MATROX GRAPHICS' MOTION FOR SUMMARY JUDGMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| RICOH COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-103-GMS |
| | ) | |
| AEROFLEX INCORPORATED, AMI | ) | |
| SEMICONDUCTOR, INC., MATROX | ) | |
| ELECTRONIC SYSTEMS LTD., | ) | |
| MATROX GRAPHICS INC., MATROX | ) | |
| INTERNATIONAL CORP., and | ) | |
| MATROX TECH, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY, OR IN THE ALTERNATIVE, TRANSFER VENUE**

OF COUNSEL:

Gary M. Hoffman
Edward A. Meilman
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037-1526
Phone: (202) 785-9700
Fax: (202) 887-0689

Date: July 15, 2003

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

ATTORNEYS FOR PLAINTIFF
    RICOH COMPANY, LTD.

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDING ................................................... 2

III.  SUMMARY OF ARGUMENT .............................................................................. 2

IV.   STATEMENT OF FACTS ..................................................................................... 4

V.    ARGUMENT ......................................................................................................... 5

    A.   This Action Should Not Be Stayed Or Transferred To California
        Because There Is No Justiciable Case Or Controversy Between RCL
        and Synopsys Anywhere ................................................................................. 5

        1.   Synopsys Never Had An Objective Basis For A Declaratory
            Judgment Action ................................................................................. 7

        2.   RCL has not created a reasonable apprehension that it will initiate
            a suit against Synopsys because RCL has not and will not sue
            Synopsys for infringement as to any claim of the '432 Patent ..................... 8

        3.   There is no justiciable controversy because Synopsys has no valid
            interest in this declaratory judgment suit, as Synopsys's interests
            are merely economic ........................................................................... 10

    B.   This Case Cannot Be Stayed Or Transferred Because The Parties Are
        Not Amenable to The Jurisdiction of California Courts. ................................. 12

    C.   Private Interests Weigh Heavily in Favor of Maintaining the Present
        Action in Delaware. ...................................................................................... 14

        1.   RCL's Choice of Forum Is Entitled to Deference And Should Not
            Be Upset. ............................................................................................ 14

            i.    Defendants Are Located In Or Near Delaware. ............................. 15

            ii.   No Party Witnesses Are Located In The Northern District Of
                California. ...................................................................................... 16

            iii.  The Convenience of Non-Party Witnesses Is Not a Relevant
                Factor in the Present Action. .......................................................... 16

RLF1-2624259-1

2.    Relevant Documents May Be Transported to Delaware............................................18

D.    Public Interests Weigh Heavily in Favor of Maintaining the Present
Action in Delaware..............................................................................................................18

1.    The Present Action Will Benefit From the Speed, Expense And
Efficiency of Trial In Delaware. ................................................................................. 18

2.    There Are No Local Interests Or Public Policies That Would Be
Better Served By Trial in Northern California Than In Delaware.............................. 19

3.    The Delaware Action Was Filed Months Earlier Than The
California Action. ......................................................................................................... 19

VI.    CONCLUSION...................................................................................................................... 20

RLF1-2624259-1

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Insurance Co. v. Haworth,*
300 U.S. 227 (1937)................................................................................6

*Aralac, Inc. v. Hat Corp. of America,*
166 F.2d 286 (3d Cir. 1948)..............................................10, 11, 12

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,*
846 F.2d 731 (Fed. Cir. 1988)..............................................7, 8, 10

*Bayer Bioscience, N.V. v. Monsanto Company,* 2003 WL 1565864
(D. Del. March 25, 2003)...................................................................19

*Bering Diagnostics GmbH, et al. v. Biosite Diagnostics, Inc.,*
1998 WL 24354 (D. Del. 1998)......................................................15

*BP Chemicals Ltd. v. Union Carbide Corp.*
4 F.3d 975 (Fed. Cir. 1993)...........................................................6, 7

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
821 F. Supp. 962 (D. Del. 1993)...................................................15

*Dow Chemical Co. v. Viskase Corp.,*
892 F. Supp. 991 (N.D.Ill. 1995).................................................12

*Environ Products, Inc. v. Total Containment, Inc.,*
1996 WL 184468 (E.D.Pa. 1996) .................................12, 13, 14

*Genentech v. Eli Lilly & Co.,*
998 F.2d 931 (Fed.Cir.1993).........................................................19

*Indium Corp. of America v. Semi-Alloys, Inc.,*
781 F.2d 879 (Fed. Cir. 1985).........................................................7

*Intellectual Property Development v. TCI Cablevision of California, Inc.,*
248 F.3d 1333 (Fed. Cir. 2001)..................................................9, 10

*Jumara v. State Farm Insurance Co.,*
55 F.3d 873 (3d Cir. 1995)........................................................14, 18

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,*
312 U.S. 270 (1941)...........................................................................6

*McLouth Steel Corp. v. Jewell Coal & Coke Co.*,
    432 F. Supp. 10 (E.D. Tenn. 1976)...................................................................12

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
    57 F.3d 1051 (Fed. Cir. 1995)...............................................................7, 8, 10

*Shell Oil Co. v. Amoco Corp.*,
    970 F.2d 885 (Fed. Cir 1992)...................................................................6, 7, 8

*Sherwood Medical Co. v. IVAC Medical Systems, Inc.*,
    1996 WL 700261 (D. Del. 1996)...................................................................16

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)...........................................................................14

*Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc.*,
    655 F.2d 938 (9th Cir. 1981) ..........................................................................6

*Stratos Lightwave, Inc. v. E20 Communications, Inc.*,
    2002 WL 500920 (D. Del. 2002) ...................................................................14

*Super Sack Manufacturing Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054 (Fed. Cir. 1995).................................................................9, 10

*TRW, Inc. v. Ellipse Corp.*,
    495 F.2d 314 (7th Cir. 1974) .........................................................................10

*Walker Process Equipment Co. v. FMC Corp*,
    356 F.2d 449 (7th Cir. 1966) ...................................................................10, 11

*Waste Distillation Tech., Inc. v. Pan American Resources, Inc.*,
    775 F. Supp. 759 (D. Del. 1991)...................................................................14

## STATUTES

28 U.S.C. 1404(a) ..............................................................................3, 12, 14

I.       **INTRODUCTION**

Plaintiff Ricoh Company, Limited ("RCL") has sued defendants – Aeroflex, Inc.

("Aeroflex"), AMI Semiconductor, Inc. ("AMIS"), and several entities comprising the Matrox Tech

group – for designing and manufacturing computer chips using the steps recited in the process

claims of RCL's United States Letter Patent No., 4,922,432 (the '432 Patent). In the process of their

infringement, each defendant uses software supplied by a third party company named Synopsys.

RCL has never accused Synopsys itself of infringing the '432 Patent.

Non-party Synopsys has assumed control of the defense of this case. Synopsys' attorneys

have filed all papers on behalf of each of the defendants; have attended the Rule 16 conference; and

have taken and responded to discovery. Despite this extensive involvement, however, Synopsys has

never attempted to become a party, and has freely admitted it has never been threatened by RCL.

Nevertheless, after several months of litigating this case, Synopsys filed a declaratory judgment

action in the Northern District of California. RCL has moved to dismiss that action on three

independent bases: *first*, that there is no case or controversy between RCL and Synopsys, since RCL

has not and will not sue Synopsys for infringement of the '432 Patent; *second*, that RCL is not

amenable to jurisdiction in the Northern District of California; and *third,* that the California action

violates the first-to-file rule.

Acting through the defendants in the instant case, this Court is now being asked to stay

this case in favor of the much later-filed California case in which there is neither a justicable

controversy nor personal jurisdiction over RCL. Alternatively, counsel for Synopsys and defendants

ask this Court to transfer this action to California in order to be combined with the much later-filed,

non-justicable California case even though this case could not have been brought there in the first

instance. The motion by defendants and Synopsys is nothing more, and nothing less, than a

belated attempt to forum shop and stall.

1

## II.  NATURE AND STAGE OF THE PROCEEDING

This action was begun on January 21, 2003.  A Rule 16 scheduling conference was held on May 16, 2003, which established a pretrial and trial schedule.  The parties filed their initial disclosures on May 30, 2003, and have served a large volume of interrogatories, document requests and requests for admission.  RCL's production of documents is underway.  Defendants have demanded a Rule 30(b)(6) deposition of RCL, which will be held on July 15, 2003.  The parties also have served subpoenas upon third parties for documents and the defendants are already proceeding with depositions.

Almost 4 months after this case began, on May 15, 2003, Synopsys filed a declaratory judgment action in California relating to the patent-in-suit (the '432 Patent) and another RCL patent (the '016 Patent), and on June 5, 2003, served  RCL in New Jersey.  RCL has moved to dismiss that action for lack of case or controversy and absence of subject matter jurisdiction.

On June 12, 2003, defendants in this action (who are also represented by Synopsys' California counsel) moved to stay this litigation or, in the alternative, to transfer it to the Northern District of California.  The parties have agreed that RCL's answering brief is due on July 15.

## III.  SUMMARY OF ARGUMENT

1.  This should not be deferred on the basis of a California case which is transparently defective.  It is fatally flawed because there is no justiciable case or controversy between RCL and Synopsys.  RCL has neither sued nor threatened to sue Synopsys on either the '432 or '016 Patent with respect to any past or current products of or activity by Synopsys.  Although RCL has sued certain customers of Synopys alleging that their manufacture of computer chips directly infringes the process claims of RCL's '432 Patent, RCL has not and will not assert any such claims against Synopsys.  No declaratory judgment action by Synopys can resolve RCL's direct infringement claims against these defendants.  RCL expects the California court to dismiss the Synopsys declaratory judgment action based upon the absence of a case or controversy between RCL and Synopys.  It

2

would be inappropriate to stay or transfer this case because the California case is going to be dismissed.

2. Defendants' motion is based upon the faulty premise that this action could have been brought in the Northern District of California. Pursuant to 28 U.S.C. 1404(a), a civil action is eligible for transfer only to a district "where it might have been brought." Neither any of the defendants (and counterclaim plaintiffs) nor plaintiff (and counterclaim defendant) RCL are amenable to personal jurisdiction in the Northern District of California. RCL has no presence in California. None of the defendants are incorporated in California, nor do they have any of their headquarters in California. None of the parties have purposefully availed themselves of jurisdiction in the Northern District of California, and absent that, neither RCL's complaint nor the counterclaims of the defendants could have been filed in the Northern District of California. As a result, this case should not be transferred there.

3. Private interests do not favor a transfer of venue. RCL has chosen this forum for legitimate, rational concerns and thus its choice in forum is entitled to deference. Most of the defendants are incorporated in Delaware and have their principal places of business located in the Eastern half of the continent. None of defendants' initial disclosures identify any party witnesses in the Northern District of California. The purported convenience of non-party witnesses in California (and the inconvenience of California to other non-party witnesses in South Carolina and Pennsylvania) does not weigh in favor of a transfer. Documents will be collected from multiple jurisdictions, including Delaware, New York, South Carolina, Florida, Colorado, Idaho, Canada and Japan, so this is no basis to transfer this action.

4. Public interests do not favor a transfer of venue. This Court has already expended considerable time on this matter. This Court is knowledgeable regarding the allegations and substantive law. Keeping the case in this District will afford a more expeditious disposition and

ensure more judicial pretrial involvement. A trial in Delaware would better serve the public interests of speed and lower cost, in addition to alleviating court administrative difficulties due to court congestion.

## IV.     STATEMENT OF FACTS

RCL is a Japanese corporation headquartered in Tokyo. (Ex. A, declaration of Kenji Takiguchi ¶ 2.) RCL is not incorporated in California. (*Id.* ¶ 3.) RCL is not registered to do business in California. (*Id.* ¶ 4.) RCL has no offices in California. (*Id.* ¶ 5.) RCL has no designated agent in California. (*Id.* ¶ 6.) RCL does not make any products in California. (*Id.* ¶ 7.) RCL has not purposefully availed itself to jurisdiction in California. (*Id.* ¶ 8.) RCL has not consented to the jurisdiction of the District Court of the Northern District of California for any action regarding the '432 Patent. (*Id.* ¶ 11.)

None of the defendants are incorporated in California. None of the defendants have their headquarters located in California, and none of their affidavits in support of their motion identify any business location in that state. The places of incorporation and headquarters of the defendants are in or closer to Delaware than to California. Aeroflex is a Delaware corporation with its principal place of business in Plainview, New York. (D.I. 16, Aeroflex 3/12/03 Answer and Counterclaims ¶ 55.) AMIS is a Delaware corporation with its principal place of business in Pocatello, Idaho. (D.I. 41, AMIS 4/10/03 Amended Answer and Counterclaims ¶ 55.) Matrox Tech, Inc. ("Matrox Tech") is incorporated in Delaware with its principal place of business in Boca Raton, Florida. (D.I. 40, Matrox Tech 4/9/03 Amended Answer and Counterclaims ¶ 55.) Matrox International, Inc. ("Matrox Int'l") is a New York corporation with its principal place of business in Plattsburg, New York. (D.I. 39, Matrox Int'l 4/9/03 Amended Answer and Counterclaims ¶ 55.) Matrox Electronics Systems Ltd. ("Matrox ESL") and Matrox Graphics Inc. ("Matrox Graphics") are Canadian corporations with their principal places of business in Dorval, Quebec. (D.I. 37, Matrox ESL 4/9/03

4

Amended Answer and Counterclaims ¶ 55; D.I. 38, Matrox Graphics 4/9/03 Amended Answer and Counterclaims ¶ 55.)

Prior to this litigation, RCL has not had any communications with Synopsys, in California or elsewhere, relating to the '432 or United States Patent No. 5,197,016 (the '016 Patent). RCL has neither sued nor threatened to sue Synopsys on either the '432 or '016 Patent. (Takiguchi decl. ¶ 9.) RCL has not and will not assert any such claims against Synopsys. (*Id.*) RCL unconditionally agrees not to sue Synopsys for infringement as to any claim of the '432 Patent and the '016 Patent based upon the products currently manufactured, sold, and used by Synopsys. (*Id.* ¶ 10.)

## V.      ARGUMENT

### A.      This Action Should Not Be Stayed Or Transferred To California Because There Is No Justiciable Case Or Controversy Between RCL and Synopsys Anywhere

The objective of defendants' motion is to combine this action with the recent declaratory judgment action filed by Synopsys. (All of the defendants are now represented by Synopsys' counsel.) Synopsys obviously hopes to delay RCL's substantive charges of direct infringement of the '432 Patent by redefining the dispute to seek an advisory opinion of whether Synopsys' manufacturing and licensing of its software (without any actual chip manufacturing) infringes the '432 Patent. Synopsys' strategy is doomed, however, because RCL never has and never will make such a claim.

RCL's infringement claims against these defendants are claims of direct patent infringement based upon the fact the defendants are using a process that infringes the '432 Patent. Synopsys does not do what these defendants have done to infringe the '432 Patent  The dispute is between RCL and the defendants, not RCL and Synopsys.

5

Neither Synopsys nor these defendants may use a declaratory judgment action as a means to circumvent the central dispute of direct patent infringement and try instead to obtain an advisory opinion with respect to Synopsys which has not been and will not be accused of infringement. Rather, declaratory judgments may only be employed where there is an actual justiciable controversy which is ripe for adjudication. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (distinguishing justiciable controversies from mere hypothetical situations); *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942-43 (9th Cir. 1981) (defining actual controversy). There is no singular test delineating the boundary between abstract hypothetical questions and actual controversies; each case must be determined by considering the alleged facts and circumstances. *See Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In examining the facts and circumstances, a court must determine whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 273.

Where, as here, the patent owner has not sued and has committed not to sue, there can be no "substantial controversy" between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Section A2, *infra* at pp. 8-10.

In cases in which a party seeks a declaration of invalidity or non-infringement of a patent, that party must demonstrate both an activity which could constitute infringement, or concrete steps which the declaratory plaintiff has taken with the intent to infringe, and an explicit action by the patent holder creating a reasonable apprehension that the declaratory plaintiff will face infringement. *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993) (setting forth a two prong test for determining justiciability in patent litigation); *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir 1992) (the declaratory judgment plaintiff carries the burden of establishing reasonable apprehension that it will be sued). The court determines the existence of an activity constituting

6

infringement by examining the actions of the alleged infringer, while it looks to the actions of the patent holder in determining the existence of a reasonable apprehension that the patent holder will initiate an infringement action. *BP*, 4 F.3d at 978-79 ("The element of threat or reasonable apprehension of suit turns on the conduct of the patentee, while the infringement element depends on the conduct of the asserted infringer.").

### 1.    Synopsys Never Had An Objective Basis For A Declaratory Judgment Action

A subjective assessment that a declaratory plaintiff is subject to suit by the patent holder does not create a reasonable apprehension sufficient for a justiciable controversy. *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (a "subjective apprehension" of suit does not create a justiciable controversy). Rather, the determination as to whether a reasonable apprehension exists requires an objective evaluation of the patent holder's actions. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995) ("The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer."). Where, as here, there has been no explicit threat of litigation, the court must consider the circumstances in their entirety. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992)("We must look for any express charges of infringement, and if none, then to the 'totality of the circumstances.'") (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)). In evaluating those circumstances, initiation of licensing agreements alone, without a threat of infringement litigation, do not create a reasonable apprehension of litigation. *Phillips Plastics Corp.*, 57 F.3d at 1054 ("a patentee's attempt to conduct license negotiations is a commercial activity.  [Defendant's] activity was not a threat of suit, and did not create a justiciable controversy").

In *Phillips Plastics*, Kato Hatsujou Kabushiki Kaisha did not create a reasonable apprehension that it would initiate suit against Phillips Plastics for infringing upon its patent because

7

it did not threaten Phillips Plastics implicitly or explicitly with suit. *Id.* Kato Hatsujou Kabushiki Kaisha merely stated that Phillips Plastics or Illinois Tool Works, the business to which Phillips Plastics sold its fastener business and which Phillips Plastics agreed to indemnify in patent infringement suits, needed a license in order to make certain fasteners. *Id.* Similarly, RCL has not threatened Synopsys with suit; RCL has merely offered Synopsys's customers a non-exclusive license. In its correspondence to Synopsys's customers, RCL has not claimed that Synopsys is infringing upon RCL's patent and has therefore not created a reasonable apprehension that it will initiate infringement litigation against Synopsys.

Conversely, in *Arrowhead,* 846 F.2d at 731, a reasonable apprehension of litigation existed where the following three situations arose: the president of the patent holding company sent letters to the declaratory plaintiff's customers stating that the declaratory plaintiff was not licensed to use the patent holder's product and that any use would be a direct patent infringement, the patent holding company warned the declaratory plaintiff that it was willing to protect its patent rights through patent infringement litigation, and in another patent infringement action the patent holder submitted a proposal that the court find the declaratory plaintiff an infringer. *Id.* at 733, 736-37.

RCL has not engaged in any of the activities which created a reasonable apprehension of a suit in *Arrowhead.* RCL has not alleged that Synopsys infringes upon the patents which RCL holds. RCL has never proposed to a court that it determine that Synopsys has infringed upon its patent. Thus, Synopsys never had an objective basis that it has been or will be accused by RCL of infringing the '432 Patent.

### 2. RCL has not created a reasonable apprehension that it will initiate a suit against Synopsys because RCL has not and will not sue Synopsys for infringement as to any claim of the '432 Patent

There is no question that RCL has not sued or threatened to sue Synopsys regarding the '432 Patent (or the '016 Patent). Although RCL is currently pursuing infringement claims against

manufacturers of computer chips using the process disclosed in the '432 Patent, RCL will not assert those claims against Synopsys. As manifested in the attached declaration of Kenji Takiguchi, RCL has unconditionally agreed not to sue Synopsys for infringement as to any claim of the '432 Patent and the '016 Patent based upon the products currently manufactured, sold, and used by Synopsys. (Ex. A, Takiguchi decl. ¶¶ 9-10.)

Where a statement of non-liability estops a patentee from asserting liability against a declaratory plaintiff for infringement, the declaratory plaintiff maintains no reasonable apprehension that it will face an infringement suit from the patentee and therefore divests the court of a justiciable controversy required for jurisdiction to consider declaratory judgment claims. The legal effect of RCL's promise not to sue estops it from asserting liability against Synopsys in connection with any products that Synopsys made, sold, or used on or before the date on which the promise was made. *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995) (determining that a patentee's promise not to sue, in statement of counsel and motion papers and briefs, estops the patentee from suing from past acts of patent infringement and renders declaratory plaintiff's claim non-justiciable). "This estoppel, in turn, removes from the field any controversy sufficiently actual to confer jurisdiction over [a] case." *Id. Accord Intellectual Property Development v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1338-41 (Fed. Cir. 2001) (statement of non-liability attached to the motion to dismiss stating that the counterclaimant had no liability on the relevant patent, and that plaintiff would not sue counterclaimants for patent infringement, meant that there was no case or controversy). RCL's unconditional agreement not to sue removes any current or future apprehension by Synopsys that it will face claims of infringement regarding the patents-in-suit. It completely eliminates any actual case or controversy between Synopsys and RCL.

These identical representations have been filed in the California action. Under the *Super Sack* and *IPD* precedent, the California action should be dismissed. As a result, it makes no sense for this Court either to stay this action in favor of the soon to disappear California action, or to transfer the case to the Northern District of California for combination with the dismissible California action.

### 3. There is no justiciable controversy because Synopsys has no valid interest in this declaratory judgment suit, as Synopsys's interests are merely economic

In order for a declaratory plaintiff's actions to constitute an infringement, he must have a valid interest requiring the protection of a declaratory judgment. *Arrowhead*, 846 F.2d at 736. An economic interest alone is not enough to create a valid interest. *Aralac, Inc. v. Hat Corp. of America*, 166 F.2d 286, 295 (3d Cir. 1948). In the absence of a claim that the declaratory plaintiff infringed upon the patentee's patent, an economic interest is not sufficient to justify a justiciable controversy. *Walker Process Equip. Co. v. FMC Corp*, 356 F.2d 449, 452 (7th Cir. 1966). An economic interest is asserted where a declaratory plaintiff claims that a patent holder's assertions of violations of his patent negatively impact the plaintiff's sales, thereby causing the declaratory plaintiff to suffer from financial loss. *See Aralac*, 166 F.2d at 289-90.

Where suits are pending against the declaratory plaintiff's customers and those suits allege that these customers are using the declaratory plaintiff's product in a way which violates the patentee's patent, then a justiciable controversy may not exist. *See id.* at 286. There is no justiciable controversy where a patentee has not charged that a product which the declaratory plaintiff produces infringes his patent and merely charges that the process in which it is used infringes upon his patent. *See id.* at 293. ("[Plaintiff] has no right to demand that others be allowed to practice the patented process in violation of the patent monopoly in order that it might have a market for its [product]."); *see also TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 319 (7th Cir. 1974)("Where…the charge of patent

infringement is asserted against the use of a product by a particular customer, no independent charges of patent infringement unrelated to the litigation are implied."); *Walker Process Equip. Co. v. FMC Corp*, 356 F.2d 449, 452 (7th Cir. 1966) (asserting that even though the declaratory plaintiff's product required no alteration before being utilized in an infringing manner, as long as the patent owner did not charge the declaratory plaintiff with infringement and only claimed infringement by the customers of the declaratory plaintiff because they used the product to perform a process covered by the patent holder's patent, there was no justiciable controversy).

In *Aralac*, Aralac sold casein fibers to customers and the Hat Corporation, the patent holder, notified Aralac's customers that its patent covered use of casein fiber in manufacturing hats and that unauthorized use of the fiber's would infringe upon Hat Corporation's patents. *Aralac*, 166 F.2d at 289. Additionally, Hat Corporation charged one of Aralac's largest customers with infringement, thereby prompting this customer to obtain a license from Hat Company. *Id.* While stating that proof by a vendor that it sells products which makes its customers vulnerable to an infringement claim by a patent holder creates a justiciable controversy sufficient for a declaratory judgment action, the court held that there was no justiciable controversy under these facts because Hat Corporation never alleged that the declaratory plaintiff's product itself infringed upon its patent. *Id.* at 292-93 ("[T]here has never been a charge of infringement made by defendant ... as to the sale or purchase of casein fiber or against casein fiber as such, but ... that the purchasers of plaintiff's fibers were, by using the process encompassed by defendant's patents, performing an act of infringement.").

Just as the declaratory plaintiff in *Aralac* did not prove the existence of a valid interest, Synopsys has not demonstrated that it has an interest sufficient to constitute a justiciable controversy. RCL never claimed that Synopsys itself infringes upon RCL's patents; rather, RCL is claiming that Synopsys's customers are using Synopsys's product in a way which infringes upon

RCL's patents.  Like the declaratory plaintiff in *Aralac*, Synopsys has no interest in this litigation beyond an economic one.

Declaratory relief is not available to a declaratory plaintiff who may stand to lose business, but has not alleged that it has any *legal* interest.  *Dow Chemical Co. v. Viskase Corp.*, 892 F.Supp. 991, 997 (N.D.Ill. 1995) (determining that patentee's threat of infringement suit against manufacturer's customers based on customers' alleged production of infringing product does not create actual controversy).  The claim of commercial injury alone does not constitute a valid interest on the part of Synopsys in a declaratory judgment suit.

**B.**    **This Case Cannot Be Stayed Or Transferred Because The Parties Are Not Amenable to The Jurisdiction of California Courts.**

Defendants' motion to stay or, in the alternative, to transfer, is based upon the premise that this action could (and should) have been brought in the Northern District of California.  This premise is wrong because the parties are not amenable to the personal jurisdiction of California courts.

28 U.S.C. § 1404 (a) states that "a district court may transfer any civil action to any other district or division where it might have been brought."  It is the burden of the movant to prove that the new venue is a venue in which the claims could have been brought originally.  *Environ Prods., Inc. v. Total Containment, Inc.*, 1996 WL 184468 (E.D.Pa. 1996) (denying motion to transfer venue because counterclaim plaintiffs did not meet burden of proving that new venue was a venue in which they could have brought originally their counterclaims).  The movants in this court have failed to discharge their burden.

A place where the action "might have been brought," in the language of 28 U.S.C. § 1404 (a), is a district having subject matter jurisdiction over the parties, where the parties are amenable to service of process, and where venue is proper as decided by federal venue statutes.  *McLouth Steel*

*Corp. v. Jewell Coal & Coke Co.*, 432 F. Supp. 10 (E.D. Tenn. 1976) (defining the language of 28 U.S.C. § 1404).

The present action could not have originally been brought in the Northern District of California, because none of the parties are subject to the personal jurisdiction of that Court. There is no evidence that the Northern District of California would have jurisdiction over any of the defendants. None of the defendants are incorporated in California. None of the defendants have their headquarters located in California. The places of incorporation and headquarters of all of the defendants are closer to Delaware than to California. Aeroflex, AMIS and Matrox Tech all are incorporated in Delaware. The other Matrox entities are incorporated in New York and Quebec, and have their principal places of business in Florida, New York, and Quebec. They have not identified any basis for personal jurisdiction in California.[1] Therefore, the Northern District of California would not have been a proper venue for RCL to originally bring suit.

All defendants have asserted counterclaims against RCL. Those counterclaims could not have been brought in the Northern District of California, because there is no independent basis for that court to assert jurisdiction over RCL. RCL is a Japanese corporation headquartered in Tokyo. (Ex. A, Takiguchi decl. ¶ 2.) RCL is not incorporated in California. (*Id.* ¶ 3.) RCL is not registered to do business in California. (*Id.* ¶ 4.) RCL has no offices in California. (*Id.* ¶ 5.) RCL has no designated agent in California. (*Id.* ¶ 6.) RCL does not make any products in California. (*Id.* ¶ 7.) RCL has not purposefully availed itself or consented to jurisdiction in California. (*Id.* ¶¶ 8, 11.) This case is no different than *Environ Prods., Inc. v. Total Containment, Inc.*, 1996 WL 184468 (E.D.Pa. 1996), which denied the motion to transfer because the defendants and counter-plaintiffs

---

[1]    Defendants' assertion that they each will acquiesce to the jurisdiction of the Northern District of California is irrelevant because it fails to satisfy the personal jurisdiction requirements for a § 1404(a) transfer.

did not meet their burden of proving that the new venue was a venue in which they could have brought originally their counterclaims. The same result is required here.

### C. Private Interests Weigh Heavily in Favor of Maintaining the Present Action in Delaware.

The Third Circuit has instructed that, when reviewing a motion to transfer under 28 U.S.C. § 1404(a), district courts must consider, among other things, private, and public interests. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id.* at 883; *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). It is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, 2002 WL 500920 (D. Del. 2002).

The *Jumara* court ruled that private interests include: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses (only to the extent that the witnesses may actually be unavailable for trial in one of the fora); and the location of books and records (only limited to the extent that the files cannot be produced at the alternative forum). 55 F.3d at 879. A review of each of these factors shows that the relevant private interests weigh strongly in favor of denying a transfer of venue.

### 1. RCL's Choice of Forum Is Entitled to Deference And Should Not Be Upset.

Unless defendants can show the balance of convenience strongly favors transfer, deference is owed to RCL's choice of forum. This deference is particularly appropriate when the plaintiffs have chosen their forum because of "legitimate, rational concerns." *Waste Distillation*

14

*Tech., Inc. v. Pan American Resources, Inc.* 775 F. Supp. 759, 764 (D. Del. 1991). RCL had

legitimate and rational reasons for choosing the District of Delaware as its forum.

### i.    Defendants Are Located In Or Near Delaware.

While RCL is not incorporated in California or Delaware (making neither state more

appropriate in the selection of forum based on plaintiff's incorporation alone), RCL did take into

consideration the Defendants' incorporation. Aeroflex, AMIS and Matrox Tech are incorporated in

Delaware. Where a defendant has chosen Delaware as its legal home and has received the benefits

of Delaware incorporation, it should not now complain that another corporation has decided to sue it

in Delaware. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F.Supp. 962, 965 (D.

Del. 1993). Since Aeroflex, AMIS and Matrox Tech are incorporated in Delaware, they should

expect to be sued here.

Although the other Matrox entities are not incorporated in Delaware, they are

incorporated in New York and Quebec, and they have their principal places of business in Florida,

New York, and Quebec, all of which are in closer proximity to the District of Delaware than the

Northern District of California. RCL considered Delaware to be a central location between Quebec,

New York and Florida, for defendants' key personnel to attend trial. In *Bering Diagnostics GmbH,*

*et al. v. Biosite Diagnostics, Inc.*, 1998 WL 24354 (D. Del. 1998), the Court held that, where

Delaware represents a good compromise in location for the plaintiff, the convenience of the parties

does not strongly weigh in favor of transferring venues. *Id.* at 5 (although defendant's key personnel

is located on the West Coast, an East Coast venue is a good compromise where relevant plaintiff

parties are located on the West Coast and in Europe). In the present case, RCL is not incorporated in

the United States, however, the defendants are either incorporated in Delaware, or their principal

places of business are reasonably close to Delaware. Therefore, the convenience of the parties as

indicated by their relative physical and financial condition would be best served in Delaware.

ii.    **No Party Witnesses Are Located In The Northern District Of California.**

Defendants have not named *any* party witnesses who are located in the Northern District of California. In defendants' May 30, 2003 initial disclosure (attached as Ex. B), Aeroflex named eight party witnesses, all located in Colorado. AMIS named two witnesses, one in Idaho and the other in the Eastern District of California. The Matrox entities collectively identified four witnesses, all located in Dorval, Quebec. The scattered location of these witnesses provides no reason to transfer this case to a district where none of them reside. The fact is that all of these corporate witnesses are within the control of defendants and may be made available at trial if defendants so desire.

iii.    **The Convenience of Non-Party Witnesses Is Not a Relevant Factor in the Present Action.**

With respect to non-party witnesses, defendants' initial disclosure named a number of non-party witnesses, but did not provide addresses for any of them. Defendants admitted that they did not know the addresses of many of those witnesses. For others, defendants generally claimed that they may be located in Northern California, Southern California, Pennsylvania, and South Carolina. (Ex. B, at 4-5). The convenience of these non-party witnesses is not a relevant factor in the present case for three reasons: defendants have not declared with certainty that the witnesses will be unavailable; defendants have not specified the relevance of the witnesses' testimonies in their case; and the witnesses may appear by video deposition at trial.

First, defendants have not adequately specified that the non-party witnesses will not be available for trial. When evaluating the potential absence of a witness due to lack of compulsory process, what is important is "the Court's impression of the nature of prospective testimony to be given by the witness," such as, *inter alia*, "is a witness employed by a party and therefore available in any fora, and like considerations." *Sherwood Medical Co. v. IVAC Medical Systems, Inc.*, 1996 WL 700261, *4 (D. Del. 1996). For example, the identified Dr. Camposano is an executive at

16

Synopsys.  While Synopsis is not a party to the present case and Synopsys has not and will not be sued for infringement of the '432 Patent, it finds itself as an interested non-party, as evidenced by the suit it filed in the Northern District of California seeking declaratory judgment that the '432 Patent is invalid and the fact that it is effectively controlling this suit.  Given Synopsys' interest in adjudication regarding the '432 Patent, it is not conceivable that the defendants would be unable to procure attendance of Dr. Camposano for trial.  Dr. Gregory is a former Synopsys employee, and defendants have not asserted that he has refused to speak with them regarding his research at Synopsys.  Defendants' assertion that two university professors declined to assist the defendants in their litigation is also not conclusive of their unavailability; it just means that the defendants must employ other means to procure their information.

Second, defendants have not specified the witnesses' importance to their case.  Defendants' initial disclosure names several persons alleged to have knowledge of prior art logic synthesis systems and design practices that are "believed to be relevant."  However, defendants have not explained the essential or relevant nature of such knowledge, nor is the "relevant knowledge" likely to be limited or unique to these individuals.  Indeed, defendants' disclosure says that some of these individuals are located on the East Coast, so it cannot be said that all non-party witnesses are located in northern California.

Third, if the defendants choose to take the testimony of prior art expert witnesses who may not attend trial rather than those available on the East Coast, the defendants' witnesses may appear by video deposition.  As mentioned above, there were individuals listed in the defendants' initial disclosure statement who reside in the Southern District of California, Pennsylvania and South Carolina, and hence are also outside of the trial subpoena power of the District Court of the Northern District of California.  A transfer of venue to the Northern District of California would not cure their potential presence at trial.

17

### 2.    Relevant Documents May Be Transported to Delaware.

None of the relevant books and records identified by any of the defendants are located in the Northern District of California.  Instead, defendants' initial disclosure identifies a wide range of categories of documents and claims that they are located in defendants' "principal places of business" – e.g., New York, Quebec, Florida, and possibly in Colorado and Idaho.  No party had identified any relevant documents of any party that are located in the Northern District of California.  This factor also weighs against transfer.

In any event, wherever the documents are located, they may easily be copied or imaged and transported to the offices of the parties' counsel and, eventually, to Delaware.  Copying and transport of documents is so routine that, even if there were documents in California, this factor is largely irrelevant.

### D.    Public Interests Weigh Heavily in Favor of Maintaining the Present Action in Delaware.

None of the public interests weigh in favor of transfer.  Public interests are also noted by the *Jumara* court to include: the enforceability of the judgment; practical considerations regarding the ease, speed, or expense of trial; the administrative difficulty due to court congestion; the local interest in deciding local controversies in the home forum; the public policies of the two fora; and the trial judge's familiarity with the applicable state law in diversity cases. *Jumara*, at 879-80.  In addition, this action is the first filed, and transferring it to California makes no sense.

### 1.    The Present Action Will Benefit From the Speed, Expense And Efficiency of Trial In Delaware.

Although enforceability of the judgment is no different in Delaware than in the Northern District of California, practical considerations are vastly different between the two jurisdictions.  This Court has already expended considerable time in establishing a pretrial and trial schedule and protective order.  This Court is acquainted with the substantive allegations and is skilled in applying

patent law. The District Court of Delaware is able to provide more judicial pretrial involvement than the Northern District of California.[2] There is little doubt that keeping the case in Delaware better serves the public interest of trial efficiency and alleviating court congestion.

### 2. There Are No Local Interests Or Public Policies That Would Be Better Served By Trial in Northern California Than In Delaware.

With regard to local interests and public policies, "[p]atent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy." *Stratos* at *2. Similarly, as this is a patent infringement case, a trial judge's familiarity with the applicable state law has no bearing on the outcome of this case. As such, public interests weigh in favor of maintaining this action in Delaware.

### 3. The Delaware Action Was Filed Months Earlier Than The California Action.

Defendants' motion violates the "first-to-file" rule:

> Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id* at 937.

*Bayer Bioscience, N.V. v. Monsanto Company,* 2003 WL 1565864 (D. Del. March 25, 2003) (Sleet, J.) Both the Delaware case and the California case involve the same patent and the same claims. The earlier filed case is in this Court. This case has been pending for seven months. A discovery plan is in place. Boxes of documents have been exchanged. Stacks of written discovery have been served. Depositions are proceeding. A trial date has been scheduled. Application of the first to file rule requires the refusal of motions to transfer (like the one presently pending) to a jurisdiction that

---

[2]    Synopsys filed its declaratory judgment action in the San Jose division of the Northern District of California. That division is so busy, however, that on July 9, 2003, the case was *sua sponte* transferred to the San Francisco division.

has no connection to or jurisdiction over any of the parties; especially when this Court has the earlier

filed case and everything is proceeding smoothly.

**VI.      CONCLUSION**

      For all the foregoing reasons, defendants' motion to stay or transfer should be denied.

Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

OF COUNSEL:

DICKSTEIN SHAPIRO MORIN
  & OSHINSKY LLP
Gary M. Hoffman
Edward A. Meilman
Kenneth W. Brothers
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

ATTORNEYS FOR PLAINTIFF
  RICOH COMPANY, LTD.

Date: July 15, 2003

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | CASE NO. C-03-4669-MJJ |
| Plaintiff, | **RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| vs. | **Date:  December 9, 2003** |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC., MATROX INTERNATIONAL CORP., AND MATROX TECH, INC., | **Time: 9:30 a.m.**<br>**Courtroom:  11** |
| Defendants. | |

# **TABLE OF CONTENTS**

SUMMARY ................................................................................................................1

BACKGROUND .........................................................................................................2

    A.    Ricoh's Infringement Claims Are Against The ASIC
            Defendants ............................................................................................3

    B.    Synopsys Is Not The "Real Target" of Ricoh ....................................5

          1.    The Ishijima Deposition Supports Ricoh's Infringement
                Theory .......................................................................................5

          2.    Ricoh's Interrogatory Responses Support Its
                Infringement Theory ..................................................................6

ARGUMENT ..............................................................................................................6

   I.    THE MOTION TO STAY SHOULD BE DENIED BECAUSE IT
         HAS ALREADY BEEN MADE AND REJECTED ................................6

  II.    ASIC DEFENDANTS HAVE NOT DEMONSTRATED THAT A
         STAY IS NECESSARY OR APPROPRIATE .......................................8

 III.    THE DECLARATORY JUDGMENT ACTION WILL NOT
         RESOLVE ALL ISSUES ....................................................................10

    A.    A Decision In The Synopsys Declaratory Judgment Action
            Will Not Remove All Issues As To The ASIC Defendants ...............10

    B.    Even If Infringement Was At Issue In The Synopsys Action,
            There Will Still Be Outstanding Issues As To The ASIC
            Defendants' Infringement ................................................................12

    C.    If Synopsys Is Unsuccessful In The Declaratory Judgment
            Action, There Will Still Be Outstanding Issues As To Damages ....12

 IV.    CONSOLIDATION WILL PROMOTE JUDICIAL EFFICIENCY .......13

    A.    All Issues As To Synopsys And The ASIC Defendants Could
            Be Resolved In One Proceeding .......................................................13

    B.    Consolidation Would Conserve Judicial Resources And
            Balance The Conveniences ...............................................................14

  V.    THE CUSTOMER SUIT CASE LAW SUPPORTS
         CONSOLIDATION .............................................................................14

    A.    The Customer Suit Exception Does Not Support A Stay When
            A Customer Is A Direct Infringer Of A Process Patent ..................15

1

        B.    Defendants' Reliance On Product Patent Cases That Granted
              Stays Is Inapposite ........................................................................... 16

CONCLUSION .................................................................................................... 18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.P.T. Inc. v. Quad Environmental Technologies Corp., Inc.*, 698 F. Supp. 718
   (N.D. Ill. 1988)...................................................................................15, 18

*ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842 (W.D. Pa. 1988) ......................17

*American Academy of Science v. Novell*, 1992 U.S. Dist. LEXIS 20145, 24 U.S.P.Q. 2d
   (BNA) 1386 (N.D. Cal. 1992) ...................................................................15

*Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (U.S. Dist. DE. 1986)....................13

*Ciba Geigy Corp. v. Minnesota Mining & Manufacturing*, 439 F. Supp. 625 (D.R.I. 1977)........15

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir. 1977) ...................................10, 16

*Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) ...........................................8, 10, 13

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) ....................................................11, 17

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952)...................17

*Landis et al. v. North American Co.*, 299 U.S. 248 (1936).......................................................8

*Mitsubishi Electric Corp. v. IMS Technology, Inc.*, 1996 U.S. Dist. LEXIS 12239
   (N.D. Ill. 1996)........................................................................................12

*Refac International, Ltd. v. IBM*, 790 F.2d 79 (Fed. Cir. 1986) ....................................................17

*Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997)........................................8

*Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298 (U.S. Dist. DE. 1981) .......................13

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805
   (N.D. Cal. 1989)......................................................................................13

*Whelan Technologies, Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715
   (N.D. Ill. 1990)........................................................................................17

*Williams Gold Refining Co. v. Semi-Alloys, Inc.*, 198 U.S.P.Q. (BNA) 100 (W.D.N.Y.
   1978)....................................................................................................15

*Zemel Brothers v. Dewey Electronics Corp.*, 218 U.S.P.Q. (BNA) 722
   (N.D.N.Y. 1982) ......................................................................................16

1

## FEDERAL STATUTES

2

Fed. R. Civ. P. 42(a) .................................................................................................13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

1

### SUMMARY

2    Less than six months ago these defendants – the accused direct infringers of Ricoh's '432

3    patent – moved the Delaware Court to stay this case, but that motion was rejected.  Instead, the Court

4    granted defendants' alternative motion to transfer the case to this Court for consolidation with the

5    pending *Synopsys v. Ricoh* declaratory judgment action.  Defendants have now filed a second motion to

6    stay, even though nothing has changed since their identical motion was denied three months ago.

7    Instead of staying the only action that has any claims of patent infringement, this Court should

8    consolidate the two actions.  Accompanying this opposition is a cross-motion to consolidate the two

9    cases, with Ricoh as the plaintiff.  The ASIC defendants have agreed that this cross-motion may also be

10   considered during the hearing scheduled for December 9.

11

12    This brief provides five reasons why defendants' motion to stay this case should be denied,

13   and Ricoh's cross-motion to consolidate the two cases, should be granted.  *First,* this question has

14   already been decided.  The Delaware Court rejected an identical motion to stay, and instead granted

15   defendants' alternative motion to transfer and consolidate.  Defendants have not articulated any reasons

16   to support their argument that have not already been considered and found to be unpersuasive.

17    *Second,* defendants have not satisfied the criteria necessary for granting of a stay.  The

18   prejudice to the non-moving party, Ricoh, would be great, because it would prevent a trial on the central

19   issue of whether Ricoh's '432 patent is being infringed.  There is no inconvenience to the defendants if a

20   stay is not granted, both because they will be involved in the Synopsys action anyway, and because

21   Synopsys is indemnifying them.  Consolidating the two actions would conserve judicial resources, as a

22   consolidated trial would only add two trial days instead of at least ten extra days if both cases must be

23   tried.

24

25    *Third,* granting a stay would be futile, because Synopsys' declaratory judgment case would

26   not resolve all of the issues as to the defendants.  Ricoh's direct infringement claims against defendants

27   would survive even if Synopsys was found to not infringe, because in addition to using Design

28   Compiler, the ASIC defendants take additional independent actions that infringe the process claims of

1   Ricoh's '432 patent. These outstanding issues of direct infringement and damages against the ASIC

2   defendants cannot be addressed during the Synopsys declaratory judgment action and would require a

3   second full proceeding.

4           *Fourth,* consolidation would resolve all issues for all involved, and is a more efficient way to

5   resolve both cases. All parties agree that common questions of law and fact exist as to both the

6   Synopsys action and the action against the ASIC defendants. These common issues can and should be

7   litigated in one proceeding. Consolidation would balance the conveniences and conserve judicial

8   resources because duplicative discovery and trials on the common issues would be avoided.

9           *Fifth,* because the claims of the patent-in-suit at issue in this litigation are process patent

10  claims instead of product patent claims, the product "customer suit" line of cases cited by defendants do

11  not apply. Defendants cite no process patent cases where a stay was granted. The process patent cases

12  show that stays are inappropriate because the customer is the direct infringer and the manufacturer is at

13  most a contributory infringer. Those cases consistently hold that the two cases should be consolidated,

14  and the same is required here.

15

16                                      **BACKGROUND**

17          In January 2003, Ricoh sued the six defendants identified in the caption in the District of

18  Delaware for infringing upon the computer chip design process described in U.S. Patent No. 4,922,432

19  (the '432 patent). The patent-in-suit has claims directed to a computer-aided design process for making

20  an application specific integrated circuit (ASIC), as well as other claims not at issue here. The six

21  defendants are all designers and manufacturers of ASIC computer chips, and are collectively referred to

22  herein as "the ASIC defendants."

23          The ASIC defendants moved the Delaware Court to stay that action on June 12, 2003.

24  (Brothers Decl. Ex. 1.) At the same time, the ASIC defendants made an alternative motion to transfer

25  the case to this Court so that it could be consolidated with a later filed declaratory judgment action

26  brought by Synopsys. The Delaware Court did not grant the ASIC defendants' motion to stay. Instead,

27  it granted the alternative motion to transfer the case to this Court for consolidation.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.    Ricoh's Infringement Claims Are Against The ASIC Defendants**

Although the ASIC defendants use a Synopsys product called Design Compiler during their infringement, Ricoh contends that the ASIC defendants are *direct infringers* of the '432 patent because they, and not Synopsys, actually perform each step of the recited process at issue in the course of designing and manufacturing the ASIC chips.  Infringing actions are taken by the ASIC defendants alone and not by Synopsys or its Design Compiler, such as describing, for a proposed ASIC, a series of architecture independent actions and conditions.  (Brothers Decl. Ex. 2, '432 patent, claim 13, clause 4.) Likewise, it is each ASIC defendant (and not Synopsys) that creates and stores a set of definitions of architecture independent actions and conditions.  (*Id.* clause 2.)  The ASIC designer defendants (and not Synopsys) also perform the act of storing, upon loading, the relevant libraries that contain data representing hardware cells.  (*Id.* clause 3.)

By contrast, Ricoh has *never* contended that Synopsys or its Design Compiler product, by itself, infringes the process claims at issue in the '432 patent.  Indeed, Ricoh has stated that it will not sue Synopsys for infringing the '432 patent based upon Synopsys' current or past actions.  Ricoh is able to make this representation because Design Compiler, by itself, does not infringe the process claims of the '432 patent.  It is true that each of the ASIC defendants' infringement involves the use of Design Compiler, but it does not end there.  Design Compiler can be used in such a way that the user, when incorporating other steps of the design process, does not infringe certain claims of the '432 patent, or Design Compiler can be used in such a way that does infringe the '432 patent, depending on other actions done only by the ASIC designer.  The decision of whether a manufacturer uses Design Compiler in such a way that infringes the '432 patent is not up to Synopsys, but up to the individual manufacturer.[1]  The ASIC defendants have elected to carry out a design process that does infringe the process claims of the '432 patent.

---

[1] Defendants may also use other products from other suppliers or even Synopsys during their infringing ASIC design process.  As of the date of this brief, the ASIC defendants have refused to answer discovery inquiries that would reveal which products they use in designing the ASIC chips.  That refusal is part of the pending discovery motion which the Court deferred until the current motion is decided.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The only claims of the '432 patent which Ricoh has asserted are infringed in this litigation describe a *process* that requires independent steps performed by each of the ASIC defendants. Hence, discovery from the ASIC defendants regarding their activities will be needed and will constitute an important part of any trial relating to infringement issues.

As the Court is aware, Synopsys has taken over the defense of the ASIC defendants. But even Synopsys has conceded that the ASIC defendants (and not Synopsys or its Design Compiler software) perform the ASIC design and manufacture steps. (D.I. 26, Synopsys Opposition to Motion to Dismiss or in the Alternative, Stay or Transfer Venue ("Syn. Calif. Opp. Br.") at 2-3). Without the conduct of the ASIC defendants, there is no direct infringement claim. Ricoh is pursuing the direct infringers, which is its right.

The moving papers of the ASIC defendants state: "The Delaware defendants agree to be bound by the outcome of Synopsys's declaratory judgment action against Ricoh on issues relating to Synopsys's Design Compiler software *including whether the ordinary use of Design Compiler infringes the '432 patent and invalidity*." (Moller Decl. ¶ 8.) This representation is either a sham or an admission that the cases must be consolidated, however, because *there is no infringement claim in the Synopsys declaratory judgment action*. The only infringement claims are in this action. Regardless of whether Synopsys proves non-infringement in its declaratory judgment action, Ricoh will still need to go forward with its action against the ASIC defendants to prove that their independent activities infringe the process claims of the '432 patent. Because the ASIC defendants are the direct infringers, Ricoh's statutory right to damages is a reasonable royalty based upon the sale of the ASIC chips that were designed using the process described in the '432 patent. Ricoh's damages are not based upon the sales of the Design Compiler software by Synopsys. The only way that the ASIC defendants can be bound by a finding of whether their use of Design Compiler and their additional actions infringe the '432 patent is to consolidate the two actions.

**B.    Synopsys Is Not The "Real Target" of Ricoh**

Both the ASIC defendants and Synopsys insist that Synopsys is the "real target" of Ricoh's patent infringement allegations.  This is simply not the case.  Ricoh has repeatedly stated that it will not assert an infringement claim against Synopsys on the '432 patent based upon any other past or current Synopsys product such as Design Compiler.  In response to Synopsys' declaratory judgment complaint, Ricoh has *not* asserted a counterclaim for infringement.  The issue raised by Ricoh's complaint is not whether Design Compiler infringes the '432 patent, it is whether the ASIC defendants' process of designing ASIC chips infringes the '432 patent.

To support their argument that Synopsys is the "real target", the ASIC defendants have misrepresented and misconstrued both the testimony of Mr. Ishijima and Ricoh's responses to ASIC defendants' First Set of Interrogatories.  We address each in turn.

**1.    The Ishijima Deposition Supports Ricoh's Infringement Theory**

Mr. Ishijima was a Ricoh Rule 30(b)(6) witness who was deposed by the ASIC defendants in July 2003.  In response to questions well outside the scope of the notice, Mr. Ishijima testified that Ricoh's contention that the ASIC defendants infringe certain of the '432 patent process claims is based on those defendants' own actions.  He stated that, beyond Synopsys materials, Ricoh considered third-party articles, the ASIC defendants' own materials, information from technical experts, and expert opinions in order to evaluate each ASIC defendant's infringement.  (*See, e.g.,* D.I. 34, Ricoh's 8/5/03 reply brief in support of its motion to dismiss, Ex. B Ishijima Tr. at 61-62.)  Mr. Ishijima also stated that persons in the Ricoh legal department were involved in a study of the relationship between the patent and ASIC defendants' products.  (*See id.* at 80-81.)  Mr. Ishijima never testified that Synopsys is the "real target" of Ricoh's infringement claims, as the ASIC defendant imply.  Instead, his testimony explained Ricoh's evaluation that each of the ASIC defendants used every step of the process disclosed in the '432 Patent.[2]

---

[2] For a more detailed rebuttal to the ASIC defendants' misrepresentations regarding Mr. Ishijima, see

## 2.   Ricoh's Interrogatory Responses Support Its Infringement Theory

The ASIC defendants attempt to cherry-pick from sections of Ricoh's interrogatory responses to imply that Ricoh's claims are only against the "ordinary use" Design Compiler.  A review of Ricoh's complete interrogatory responses make clear that it is the ASIC defendants, and not Synopsys, who perform all of the steps of the process at issue.  For example, ASIC defendants, and not Synopsys, perform the process steps described in claim 13 of the '432 patent of "describing for a proposed application specific integrated circuit a series of architecture independent actions and conditions" and of "specifying for each described action and condition of the series one of said stored definitions which corresponds to the desired action or condition to be performed."  (Brothers Decl. Ex. 2, '432 patent, claim 13, clauses 4 and 5).  Ricoh's interrogatory responses explain that the accused ASIC design process includes inputting the behavioral aspects of the target ASIC which is performed by or on behalf of each of the ASIC defendants, not Synopsys.  (Moller Decl. Ex. C, Plaintiff's Answers to Aeroflex Incorporated's First Set of Interrogatories ("Ricoh Interrog. Resp.") at No. 1.)  Indeed, Synopsys has conceded that the ASIC defendants input the ASIC design requirements.  (D.I. 26, Syn. Calif. Opp. Br. at 2-3.)  This is a critical fact on which there is no apparent disagreement, and which effectively forecloses the ASIC defendants' argument that Ricoh's claims against them are only on the "ordinary use" of Design Compiler.

## ARGUMENT

## I.   THE MOTION TO STAY SHOULD BE DENIED BECAUSE IT HAS ALREADY BEEN MADE AND REJECTED

These very defendants have already unsuccessfully sought to stay this action, and are precluded from renewing the motion, especially in the absence of any new basis for so moving.  Five months after Ricoh initiated this action, the ASIC defendants moved the Delaware Court to stay that action. (Brothers Decl. Ex. 1.)  That motion made the exact same arguments – in some instances, word-for-word – that the same defendants are pressing in their present motion.  At the same time, the ASIC

D.I. 34, Ricoh's 8/5/03 reply brief in support of its motion to dismiss.

CASE NO. CV -4669-MJJ   Page 6

RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

1   defendants made an alternative motion to transfer the case to this Court so that it could be consolidated

2   with a later filed declaratory judgment action brought by Synopsys.  The defendants argued that the

3   Delaware Court should transfer the action to the Northern District of California *for consolidation with*

4   *the Synopsys case*.  Following are excerpts from the ASIC defendants' initial brief:

> B.  The Court Should Transfer The Present Action to the Northern District of
>     California *for Consolidation with the Synopsys Case.*
>
> In the alternative, Defendants request that the Court transfer this case to the Northern
> District of California pursuant to 28 U.S.C. § 1404 *for consolidation with the Synopsys*
> *case.*... If the Court is unwilling to stay the present case, Defendants request that this
> matter be transferred, pursuant to 28 U.S.C. § 1404 to the Northern District of California
> so *that it can be joined or otherwise coordinated with Synopsys' declaratory judgment*
> *action...*

Brothers Decl. Ex. 1, Memorandum In Support Of Defendants' Motion To Stay Or, In The Alternative,

Transfer Venue, at 3-5 (June 12, 2003) (emphasis added).  Defendants reiterated their request:

> C.  If not stayed, this litigation should be transferred to the Northern District of
>     California pursuant to 28 U.S.C. § 1404.
>
> If this litigation is not stayed it ought to be transferred to the Northern District of
> California *where it can be consolidated or coordinated with Synopsys' declaratory*
> *judgment case.*...

*Id.* at 13-14 (emphasis added).  The brief ended as follows:

> V.  CONCLUSION
>
> For the foregoing reasons, Defendants respectfully request that this Court stay the present
> litigation pending the outcome of the Synopsys case pending in the Northern District of
> California, or, alternatively, transfer this case to the Northern District of California *for*
> *consolidation with the Synopsys case.*

*Id.* at 20 (emphasis added).

    The Delaware Court did not grant the ASIC defendants' motion to stay the case.  Instead,

it granted the alternative motion to transfer the case to this Court, where the two cases could be

consolidated.  The rejection of the identical motion to stay should preclude the ASIC defendants from

making the exact same motion again.  There are no new facts or any other reason to justify a renewed

motion or a suspension of discovery based upon that renewed motion.  Instead, the two cases should be

consolidated, which is exactly what the ASIC defendants sought.

## II. ASIC DEFENDANTS HAVE NOT DEMONSTRATED THAT A STAY IS NECESSARY OR APPROPRIATE

The ASIC defendants argued in their first motion for a stay that if a stay was not granted, a transfer was necessary for the convenience of the parties. The Delaware Court refused to grant a stay, and addressed defendants' concerns regarding convenience to the parties by transferring the case to the Northern District of California. (Moller Decl., Ex. A). Nothing has changed since then. Defendants cite no new facts to meet the requirement of a stay.

Although a decision to stay is in the discretion of the Court, an "abuse of discretion resides in any 'stay of indefinite duration in the absence of a pressing need.'" *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989), quoting *Landis et al. v. North American Co.*, 299 U.S. 248, 255 (1936). No such "pressing need" has been identified. This Court should deny defendants' motion to stay and instead consolidate the two actions because the case has already been transferred, the defendants have already made a motion to stay that was not granted in Delaware and defendants have not demonstrated that a stay is necessary or appropriate in this case to balance the conveniences or increase judicial economy.

"When considering a motion to stay, the district Court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). The *Rivers* test shows that a stay is inappropriate. If a stay were granted, the prejudice to Ricoh is great. The movant must show "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay will for which he prays will work damage to some one else." *Landis et al. v. North American Co.*, 299 U.S. 248, 255 (1936). Ricoh already has been delayed in seeking redress for its claims due to the transfer of the case from the District of Delaware to the Northern District of California. Ricoh's litigation against the ASIC defendants was set for trial in October 2004 with fact discovery cut off in January 2004. Any stay effectively diminishes Ricoh's rights to an injunction and delays its ability to obtain damages.

1    A stay would do nothing to help resolve Ricoh's claims against the ASIC defendants, but

2    quite to the contrary, would delay its resolution. As discussed below, if Synopsys' declaratory judgment

3    is resolved in Ricoh's favor, Ricoh will still have to litigate its claims against the ASIC defendants,

4    because the ASIC defendants have not agreed that, in the event that Ricoh prevails, the Court should

5    enter an injunction precluding them from selling any ASIC products designed utilizing any process

6    alleged by Ricoh to be infringing any of the process claims of the '432 patent. Further, the ASIC

7    manufacturers have not agreed that if Synopsys fails to prove non-infringement of all of the process

8    claims of the '432 patent by any type of use of any of the Synopsys' products, that judgment should be

9    entered against them. Even if Synopsys prevails, Ricoh will still be able to proceed against the ASIC

10   defendants, because the issue is not whether Design Compiler standing alone does or does not infringe

11   the '432 patent in every instance, but whether the ASIC defendants take additional actions that result in

12   practicing the process of the '432 patent. In other words, one of the infringement issues is whether the

13   ASIC defendants infringe the '432 patent by starting with Design Compiler, then describing, for a

14   proposed ASIC, a series of architecture independent actions and conditions. (Brothers Decl. Ex. 2, '432

15   patent, claim 13, clause 4.) Another infringement issue is whether each ASIC defendant (and not

16   Synopsys) creates and stores a set of definitions of architecture independent actions and conditions. (*Id.*

17   clause 2.) Another infringement issue is whether the ASIC designer defendant (and not Synopsys) also

18   performs the act of storing upon loading the relevant libraries that contain data representing hardware

19   cells. (*Id.* clause 3.) Thus, it is possible that Synopsys could "win" on its declaratory judgment claim,

20   but this Court would still have to reactivate this case to consider whether the ASIC defendants infringe

21   and damages (considerations which could hardly be characterized as saving judicial resources).

22    By contrast, there is no hardship or inequity to ASIC defendants in consolidation and

23   their continuing to litigate the case, for four reasons. First, they have already agreed that, if the case was

24   transferred from Delaware to this Court, it should be consolidated. Second, by granting the motion to

25   transfer, the Court already has addressed the bases of the renewed motion to stay. Third, Synopsys is

26   fully indemnifying the ASIC defendants as to the costs of the litigation, so their costs of defense are

27   non-existent. Fourth, if the action were stayed, ASIC defendants would still have to eventually litigate

28   any issues that are not resolved by the Synopsys action, including infringement and damages.

1    Judicial resources would be saved if the two actions, *Ricoh v. Aeroflex et. al.* and

2  *Synopsys v. Ricoh*, are consolidated as was previously proposed by the ASIC defendants. If the *Aeroflex*

3  action is stayed, then this Court will still have to resolve issues unique to the ASIC defendants, no matter

4  what the outcome of Synopsys' declaratory judgment action regarding infringement and damages.

5  Because the actions taken only by the ASIC defendants raise infringement and damages issues that are

6  different between the ASIC defendants' case and the Synopsys case, there could be continued litigation,

7  even after a determination in the Synopsys case.

8    In addition, the balance of conveniences weighs toward consolidation rather than a stay

9  of the action against the ASIC defendants. In many cases addressing the "customer suit" exception to

10  the first filed suit priority, the Court is deciding whether to transfer or stay an action in favor of a

11  manufacturer's home forum. *See e.g., Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir.

12  1977). The ASIC defendants have already transferred this case to Synopsys' home forum and therefore

13  the balance of convenience should now weigh more heavily in favor of Ricoh.

## III.    THE DECLARATORY JUDGMENT ACTION WILL NOT RESOLVE ALL ISSUES

### A.    A Decision In The Synopsys Declaratory Judgment Action Will Not Remove All Issues As To The ASIC Defendants

17    In *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989), the Federal

18  Circuit held that a lower Court's grant of a stay under the customer suit exception was an abuse of

19  discretion where the later filed suit would not have resolved all issues with the customers. The *Kahn*

20  Court differentiated cases where the customer suit exception was not applicable to those where it was

21  applicable because in those cases where it applied, all issues would be resolved in one proceeding,

22  including liability for damages, infringement against customers and validity. *Id.* at 1081. However, in

23  cases where the customer suit exception was not applicable, these issues would not be resolved in one

24  proceeding. Likewise, a decision in the Synopsys declaratory judgment action will not resolve all issues

25  as to the ASIC defendants.

26    ASIC defendants rely on *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) for

27  the proposition that a "manufacturer's representation that the resolution of the major issues such as

28  patent infringement and patent validity in its own action would resolve these issues as to its customers."

1    (Def. Mot. at 3, citing *Katz*, 909 F.2d at 1464). The ASIC defendants include a statement from counsel

2    purporting to be bound by any Synopsys decision "on issues relating to Synopsys's Design Compiler

3    software, including whether the ordinary use of Design Compiler infringes the '432 patent and

4    invalidity." This statement, to the extent it has any effect at all, since it is not a statement from any

5    defendant, is virtually meaningless. The issue of infringement is nowhere to be found in the Synopsys

6    declaratory judgment action. Ricoh has made no infringement claim against Synopsys. Because

7    infringement by the ASIC defendants is a separate issue from the Synopsys action, the outcome of the

8    Synopsys action will not address infringement by the ASIC defendants. In addition, the disparity in

9    damages between Synopsys and the ASIC defendants is not addressed by this statement.[3]

10           The fact that there are different issues in the two cases is also illustrated by Synopsys's

11   statement that the issue of comparing the Synopsys product with the '432 patent is "irrelevant." See

12   Brothers Decl. Ex. 3, Synopsys Responses to Plaintiff's Deposition Subpoena. Synopsys claims that

13   "Synopsys's declaratory judgment action has priority as the venue for addressing any issues regarding

14   this relationship, or lack thereof, between Synopsys products and Ricoh's patents. Those issues are not

15   pending in this case. The identification of technical documentation for Synopsys software products is

16   therefore irrelevant to this case." *Id.*, Response to Deposition Topic 11. Thus, Synopsys is effectively

17   admitting that the issues in the suit against the ASIC defendants are different from those in the Synopsys

18   action. This is contrary to the ASIC defendants' motion to stay which asserts that all issues as to the

19   ASIC defendants will be resolved in the Synopsys action.

20

21

22

23   _____

24   [3] ASIC defendants claim (Def. Mot. at 9) that all issues will be resolved by a decision in the Synopsys
     action. It follows then, using this logic, that in order for one case to resolve all issues, the ASIC
25   defendants would have to stipulate that if they use Design Compiler for any purpose, they infringe
     regardless of whatever else they do, and that an injunction and/or damages are automatic. Until and
26   unless both the ASIC defendants and Ricoh agree on the form and content of such a stipulation, there is
     no way for all issues to be resolved through one decision in the Synopsys case. The defendants' current
27   statement – to the extent it has any effect at all, since it is not a statement from any defendant -- is
     virtually meaningless. Therefore, a stay would not resolve all issues, as the ASIC defendants contend,
28   but consolidation will.

**B.    Even If Infringement Was At Issue In The Synopsys Action, There Will Still Be Outstanding Issues As To The ASIC Defendants' Infringement**

Infringement is not at issue in the declaratory judgment action. Ricoh has not alleged that Synopsys is an infringer. By contrast, Ricoh accuses the ASIC defendants of infringement. One of the key issues of Ricoh's case is whether the ASIC defendants use of Design Compiler, with additional input by those defendants, infringes the process disclosed in the '432 patent. Regardless of the outcome of Synopsys' declaratory judgment action, the ASIC defendants' infringing processes in designing ASICs, part of which includes the use of the Design Compiler in a certain manner, would still have to be litigated. Therefore, all issues would not be resolved through the declaratory judgment action.

Even if Synopsys was found to be non-infringing, the ASIC defendants could be found to be infringing. In this case, Ricoh contends that the steps taken by the defendants using the Design Compiler infringe the process claims of the '432 patent. Even if Synopsys's manufacture of the Design Compiler does not itself infringe, the ASIC defendants' use of Design Compiler along with other steps taken by them is alleged to infringe the process claims at issue of Ricoh's patent, thereby necessitating another proceeding. Therefore, even if Synopsys does not infringe the '432 patent, defendants could still infringe the '432 patent and all issues would not be resolved in the Synopsys proceeding alone. *See, e.g., Mitsubishi Electric Corp. v. IMS Technology, Inc.*, 1996 U.S. Dist. LEXIS 12239 at *9 (N.D. Ill. 1996) (Brothers Decl., Ex. 4) (stay or injunction denied where damages sought for infringement of both apparatus and method claims).

**C.    If Synopsys Is Unsuccessful In The Declaratory Judgment Action, There Will Still Be Outstanding Issues As To Damages**

Since Ricoh is not asserting any claim of infringement against Synopsys, there is no issue of damages with respect to Synopsys. Further, the hypothetical measure of damages against Synopsys would be very different from the actual measure of damages against the ASIC defendants. Typically the measure of damages for practicing a process is based on the end product (here a chip) and not on some piece of equipment used in the process. Synopsys does not make chips and therefore any damages against it must, of necessity, be based on something else. By contrast, the measure of damages against the ASIC defendants is based on their actual production of each chip. An award based on potential

1    royalty loss would be on the defendants' production of chips, not software.  Where the obligation of

2    damages of the manufacturer versus the customer involve different parameters, an action solely against

3    the manufacturer cannot resolve all damage issues against the customers.  *Kahn*, supra at 1081-1082.  A

4    determination of damages on products manufactured by the defendants using the '432 process would

5    necessitate a second proceeding.  The ASIC defendants' statement that they agree to be bound by the

6    Synopsys action "including whether the ordinary use of Design Compiler infringes the '432 patent and

7    invalidity" does not address this inconsistency between the potential damages and therefore cannot

8    resolve all the issues regarding damages.

9    **IV.    CONSOLIDATION WILL PROMOTE JUDICIAL EFFICIENCY**

10           **A.    All Issues As To Synopsys And The ASIC Defendants Could Be Resolved In One
                      Proceeding**

11

12                  As discussed above, all issues cannot be resolved if the ASIC defendants' action is

13   stayed.  Those issues particular to the ASIC defendants, including infringement and damages, would

14   necessitate a second trial.  A second trial would not be needed if both cases are handled together.  Fed.

15   R. Civ. P. 42(a) states that consolidation may be proper when "actions involving a common question of

16   law or fact are pending before the court."  A court must balance "the savings of time and effort gained

17   from consolidation against the inconvenience, delay or expense that might result from simultaneous

18   disposition of separate actions."  *Cedars-Sinai Medical Center v. Revlon, Inc.* 111 F.R.D. 24, 32 (U.S.

19   Dist. DE. 1986), citing *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298, 1309 (U.S. Dist. DE.

20   1981).  The Northern District of California follows the same test.  *See, e.g., Southwest Marine, Inc. v.

21   Triple A Machine Shop, Inc.,* 720 F.Supp. 805, 807 (N.D. Cal. 1989).

22                  Here, common questions of law and fact exist as to both actions which favor a

23   consolidation.  Common issues of fact exist with respect to the '432 patent, the patent history and claim

24   construction.  All parties agree that the ASIC defendants use Design Compiler, although there is a sharp

25   disagreement with respect to what actions constitute infringement.  Resolving those issues will require

26   discovery from both the ASIC defendants and Synopsys.  The complex and technical aspects of the

27   activities of the ASIC defendants, including their particular use of the Design Compiler, should properly

28

1  be resolved in a single proceeding. Resolving those common issues as to one party will not dispose of

2  all issues as to all parties.

3          Consolidation of the related cases would resolve all issues in a single proceeding without

4  need for further litigation. Ricoh has estimated that a trial of the consolidated matter will take only two

5  extra days. There is no question that consolidation is far more efficient than a stay for both the Court

6  and the parties. Inconvenience is a non-issue since the case has been transferred to a more favorable

7  forum for the defendants and Synopsys. There is more danger of delay of resolution of the relevant

8  issues or increased expense if a stay is granted. The savings of time and effort incurred through a

9  consolidation greatly outweighs any minimal inconvenience, delay or expense. The balance should not

10  be further tipped toward the ASIC defendants by granting their motion to stay. Judicial resources would

11  be conserved by consolidating these two actions because resources would not have to be duplicated for

12  separate trials.

13    **B.    Consolidation Would Conserve Judicial Resources And Balance The Conveniences**

14          A stay would cause more discovery disputes as the ASIC defendants would resist Rule 45

15  subpoenas and motions for Court intervention would be needed. Although the ASIC defendants contend

16  that the real dispute is with Synopsys, which has taken over their defense, when Ricoh has discovery

17  from Synopsys (particularly as to how its product works), Synopsys relies on the fact that it is a third

18  party to attempt to limit discovery in this action. Given this demonstrated litigation tactic, the same

19  tactic can be expected in the Synopsys case where these defendants are presently a third party, and thus

20  a stay will only prolong the litigation. Consolidation would avoid that result.

21  **V.    THE CUSTOMER SUIT CASE LAW SUPPORTS CONSOLIDATION**

22          Ricoh acknowledges that, in ordering the case transferred to this Court, the Delaware District

23  Court accepted the ASIC defendants' assertion that Ricoh's lawsuit fell within the customer suit

24  exception. The case law is clear, however, that if the customer suit exception relates to a process patent

25  (as opposed to a product patent), no stay is appropriate. *A.P.T. Inc. v. Quad Environmental*

26  *Technologies Corp., Inc.*, 698 F.Supp. 718, 720-721 (N.D. Ill. 1988). Indeed, the Delaware Court tacitly

27

28

1  acknowledged this rule of law because it refused to stay the *Ricoh v. Aeroflex* case and instead

2  transferred it to this Court.

3      **A.    The Customer Suit Exception Does Not Support A Stay When A Customer Is A
4             Direct Infringer Of A Process Patent**

5              A motion to stay based on the customer suit exception should be denied where the patent-

6  in-suit is a process patent that the customer is directly infringing.  Indeed, in these circumstances, the

7  two actions should be consolidated and the first-filed suit should maintain priority.  For example, in

8  *A.P.T. Inc. v. Quad Environmental Tech. Corp.*, 698 F. Supp. 718 (N.D. Ill. 1988), the Court found a

9  declaratory judgment plaintiff was not entitled to an injunction against the defendant's first filed

10  infringement suit against plaintiff's customers because the patent was a process patent.  The facts of

11  *A.P.T.* are similar to the present case.  In *A.P.T.*, Quad (like Ricoh) first filed an infringement action for

12  its process patent against customers of A.P.T. that purchased a product from A.P.T. (as the defendants

13  here have done from Synopsys).  The customers (like the ASIC defendants) were the alleged direct

14  infringers for using the patented process in conjunction with A.P.T.'s product.  A.P.T. sought to stay

15  Quad's suit against the A.P.T. customers, and the Court refused.  The Court held that because the patent

16  at issue was a process patent where the customers are allegedly direct infringers, Quad had a particular

17  interest in suing the customers and that no stay should be granted.  *Id.* at 722.  The Court further stated

18  that A.P.T., the manufacturer, could only be liable for contributory infringement or inducement.  *Id. See*

19  *also Williams Gold Refining Co. v. Semi-Alloys, Inc.*, 198 U.S.P.Q. (BNA) 100 (W.D.N.Y. 1978)

20  (denying motion to stay first-filed actions against customer claiming infringement of a method patent

21  because such actions were not against "mere customers"); *Ciba Geigy Corp. v. Minnesota Mining &*

22  *Mfg.*, 439 F. Supp. 625 (D.R.I. 1977) (customer exception unavailable in suit based upon a combination

23  patent).

24              This Court, in *American Academy of Science v. Novell,* 1992 U.S. Dist. LEXIS 20145, 24

25  U.S.P.Q. 2d (BNA) 1386 (N.D. Cal. 1992)  (Brothers Decl., Ex. 5), followed the *A.P.T.* Court in finding

26  that where the patentee has a particular interest in bringing suit against the customer, the customer suit

27  should not be stayed.  There, the Court found that, like Synopsys here, the manufacturer could only be

28

1    liable for contributory infringement or inducement and where only the customer is alleged to be the

2    direct infringer, no stay should be granted. *Id.*

3            Likewise, in *Zemel Bros. v. Dewey Electronics Corp.*, 218 U.S.P.Q. (BNA) 722

4    (N.D.N.Y. 1982) (attached as Brothers Decl., Ex. 6), the Court held that a process infringement action

5    against customers should not be stayed. The facts in *Zemel* are also similar to the present case. Dewey

6    sued customers of Zemel who had purchased snow making equipment from Zemel. *Zemel* at *2.

7    Dewey contended, in addition to product claims, that the customers had infringed Dewey's process

8    claims through their snowmaking process using Zemel's product. *Id.* at *3. Zemel, the declaratory

9    judgment plaintiff, attempted to enjoin Dewey's suits against its customers under the customer suit

10    exception. *Id.* at *4-5. The Court in Zemel found that Dewey's claims against the customer defendants

11    would not be able to be properly addressed in Zemel's declaratory judgment action because only the

12    customers could be found liable of direct infringement of the snow making process of Dewey's patent.

13    *Id.* at *5-6. Zemel could only be found liable for contributory infringement at most and therefore the

14    direct infringers were necessary parties and the customer suits could not be stayed. *Id.*[4]

15        **B.**      **Defendants' Reliance On Product Patent Cases That Granted Stays Is Inapposite**

16            The ASIC defendants have cited no cases where a stay was granted to "customers" using

17    process patents. The "customer exception" cases cited by ASIC defendants (Def. Mot. at 7-8) are

18    inapposite because they involve an infringing *product* made by a manufacturer who passed it through to

19    the customer, and where the patentee elected to sue the customers using the product for infringement

20    rather than the manufacturer. *See, e.g., Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1463-64 (Fed. Cir.

21    1990) (customer was a distributor of manufacturer's infringing goods); *Whelan Technologies, Inc. v.*

23

---

24    [4] Some circumstances, such as damages, also allow the patentee a special interest in suing a customer.

25    *Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d 735 (First Cir. 1977). In *Codex*, the Court acknowledged that "[t]here may be situations, due to the prospects of recovery of damages or other

26    reasons, in which the patentee has a special interest in proceeding against a customer himself, rather than solely as a shadow of the manufacturer, and therefore less weight should be given to the manufacturer's

27    forum." *Id.* at 738n.6. This acknowledgement is dead on with the present case. In the present case, infringement liability and the proper basis for damages lie with the parties that actually perform the

28    process – the ASIC defendants. Ricoh submits that its special interest in pursuing claims against the infringing parties is consistent with *Codex*.

1   *Mill Specialties, Inc.*, 741 F. Supp. 715, 716 (N.D. Ill. 1990) (defendant was merely a reseller of

2   manufacturer's goods); *ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842 (W.D. Pa. 1988)

3   (defendants were resellers of product imported by third party).[5]

4        In particular, defendants' reliance on *Katz* is misplaced. *Katz* relates to a product patent, not

5   a process patent. As discussed above, in cases where a process patent is infringed, the customer is the

6   direct infringer and the patentee has a special interest in bringing suit against them, making a stay

7   inappropriate. In addition, in a process patent suit, the manufacturer will at most be liable for

8   contributory infringement/inducement, so a stay of the action against the direct infringers is not granted.

9

10       In *Katz*, the manufacturer parties (Lear Siegler/Smith & Wesson) represented to the Court

11  that their customers' issues would be resolved through a decision in the manufacturers' case. 909 F.2d

12  at 1464. The *Katz* Court relied on this representation that all issues would be resolved in one proceeding

13  and deferred to the lower Court's discretion on that issue. *Id*. The Court in *Katz* framed the question as

14  one of "whether the issues and parties are such that the disposition of one case would be dispositive of

15  the other." *Id*. at 1463, citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952). As

16  discussed above, that disposition of the Synopsys case would not be dispositive of the ASIC defendants

17  case.

18       The customer suit exception is not applicable to every situation where a declaratory judgment

19  action and an infringement suit are proceeding simultaneously. As discussed above, in the cases cited

20  by the defendants, the Courts in their discretion applied the customer suit exception where a *product*

21  patent was infringed or where a manufacturer was precluded from suit in its home forum. Neither

22  circumstance is present here. The patent-in-suit is a process patent and at the request of the ASIC

23  defendants the case has now been transferred to the manufacturer's home forum.

24

25

26

27

28  [5] Defendants also cited *Refac International, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986). The opinion
    does not state whether the patent-in-suit was a process or product patent. In addition, unlike the ASIC
    defendants here, the *Refac* customer defendants explicitly agreed to be bound by "any injunction".

1    A further point of distinction from the product cases is the fact that the ASIC defendants have

2  not agreed to be bound by any infringement judgment or an injunction.  To the contrary, the ASIC

3  defendants have only agreed to be bound by the "outcome" of the declaratory judgment action (whatever

4  that means).  Following the authority of *A.P.T.* and *American Academy of Science* line of cases, this

5  Court should reject the motion to stay as inconsistent with the case law and instead consolidate the two

6  cases for discovery and trial.

7
                                    **CONCLUSION**
8
         The ASIC defendants, in their first motion to stay in the Delaware Court, stated that if the
9
   Delaware Court would not stay its proceeding, it should be transferred to the Northern District of
10
   California "so that it can be joined or otherwise coordinated with Synopsys' declaratory judgment
11
   action."  Now is the time to honor this request.
12

13  Dated: November 25, 2003              Respectfully submitted,

14                                        Ricoh Company, Ltd.

15
                                         By: _____Kenneth Brothers_____
16
   Jeffrey B. Demain, State Bar No. 126715    Gary M. Hoffman
17  Jonathan Weissglass, State Bar No. 185008  Ken Brothers
   Altshuler, Berzon, Nussbaum,               Eric Oliver
18     Rubin & Demain                         DICKSTEIN SHAPIRO MORIN &
   177 Post Street, Suite 300                     OSHINSKY  LLP
19  San Francisco, California  94108          2101 L Street NW
                                             Washington, D.C.  20037-1526
20  Phone: (415) 421-7151                     Telephone: (202) 785-9700
   Fax:  (415) 362-8064                       Facsimile: (202) 887-0689
21

22                                        Edward A. Meilman
                                         DICKSTEIN SHAPIRO MORIN &
23                                           OSHINSKY  LLP
                                         1177 Avenue of the Americas
24                                        New York, New York  10036
                                         Telephone:  (212) 896-5471
25                                        Facsimile:  (212) 997-9880
26

27                                        Attorneys for Ricoh Company, Ltd.

28

1   Gary M. Hoffman (*Pro Hac Vice*)
    Kenneth W. Brothers(*Pro Hac Vice*)
2   DICKSTEIN SHAPIRO MORIN
      & OSHINSKY, LLP
3   2101 L Street, NW
    Washington, DC  20037-1526
4   Phone (202) 785-9700
    Fax (202) 887-0689

5   Edward A. Meilman (*Pro Hac Vice*)
6   DICKSTEIN SHAPIRO MORIN
      & OSHINSKY, LLP
7   1177 Avenue of the Americas
    New York, New York  10036-2714
8   Phone (212) 835-1400
    Fax (212) 997-9880

9   Jeffrey B. Demain, State Bar No. 126715
    Jonathan Weissglass, State Bar No. 185008
10  ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
    177 Post Street, Suite 300
11  San Francisco, California  94108
    Phone  (415) 421-7151
12  Fax (415) 362-8064

13  Attorneys for Ricoh Company, Ltd.

14

15              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
16                  SAN FRANCISCO DIVISION

17

18  RICOH COMPANY, LTD,                    ) Case No. C03-4669 (Judge Jenkins)

19                                         )

20            Plaintiff,                    )

21                                         )

22       vs.                               ) DECLARATION OF

23                                         ) TAKAMITSU YAMADA

24                                         )

25  AEROFLEX, INC. ET AL.                  )

26            Defendants.                   )

27

28

                    CASE NOS. C-03-4669 MJJ

                DECLARATION OF TAKAMITSU YAMADA

1

2    Takamitsu Yamada declares as follows:

3        1.    My name is Takamitsu Yamada, and I am an Assistant Manager of Ricoh

4    Company, Ltd ("Ricoh"). I am over the age of 21 and am competent to make this

5    declaration. Based on my personal knowledge and information, I hereby declare to all

6    the facts in this declaration.

7        2.    As an Assistant Manager, I am responsible for managing steps involved in the

8    manufacture of Application Specification Integrated Circuits ("ASICs"). The specific

9    steps that I am involved in and aware of begin with the development of written

10   specifications describing such ASICs and extend through to the production of a netlist of

11   hardware cells (and the interconnection requirements therefore) which perform the

12   intended functions of the manufactured ASIC, the creation of mask works from the

13   netlist, and the fabrication of the ASIC using the mask works.

14       3.    In my experience, a typical process used to manufacture an ASIC begins with the

15   creation of a written specification describing the desired functions to be performed by

16   the ASIC. Ricoh, for example, has written specifications for ASICs that Ricoh intends

17   to sell to others. From the written specifications, circuit components (referred to as

18   "hardware cells") and the interconnection requirements therefore are synthesized. The

19   circuit components are selected so as to perform the functions and adhere to any

20   limitations (referred to as "constraints") set forth in the written specifications.

21       4.    As part of the ASIC manufacturing process, the synthesized hardware cells can

22   then be optimized to produce a more efficient ASIC design. A verification step may

23   also be performed on the ASIC design to verify that this optimized design performs the

24   same functions as the pre-optimized design. The selected hardware cells, including any

25

26                           CASE NOS. C-03-4669 MJJ Page 1

27                       DECLARATION OF TAKAMITSU YAMADA

28

optimized hardware cells, and the manner in which these cells are interconnected are provided in a netlist.  Among the tools that Ricoh utilizes in carrying out this portion of the manufacturing process is the Synopsys Design Compiler Family of tools, HDL Compiler tools, VHDL Compiler tools, and the DesignWare/Building Block IP Family.

    5.    As the ASIC manufacturing process continues, the netlist is placed and routed.  In other words, the netlist is fed into the next manufacturing tool for the layout (or placement) of the netlist hardware cells, one relative to another, in the ASIC.  The paths of the interconnection requirements between these netlist cells are routed (e.g., the paths that the hardware cell interconnection requirements follow from one hardware cell to another is determined).

    6.    The inputted netlist, as placed and routed, is used in the next step in the manufacturing process to build a three-dimensional representation (referred to as a "mask").  In a further step in the manufacturing process, a prototype of the ASIC is fabricated according to the mask and tested.  Once acceptable, the mask is utilized in the subsequent fabrication steps of the process of manufacturing the ASIC.


    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Signed at Kanagawa, Japan on February 6, 2004.


*Takamitsu Yamada*
Takamitsu Yamada

1   Gary M. Hoffman (*Pro Hac Vice*)
    Kenneth W. Brothers (*Pro Hac Vice*)
    DICKSTEIN SHAPIRO MORIN
2     & OSHINSKY, LLP
    2101 L Street, NW
3   Washington, DC  20037-1526
    Phone (202) 785-9700
4   Fax (202) 887-0689

5   Edward A. Meilman (*Pro Hac Vice*)
    DICKSTEIN SHAPIRO MORIN
6     & OSHINSKY, LLP
    1177 Avenue of the Americas
7   New York, New York  10036-2714
    Phone (212) 835-1400
8   Fax (212) 997-9880

9   Jeffrey B. Demain, State Bar No. 126715
    Jonathan Weissglass, State Bar No. 185008
10  ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
    177 Post Street, Suite 300
11  San Francisco, California  94108
    Phone  (415) 421-7151
12  Fax (415) 362-8064

13  Attorneys for Ricoh Company, Ltd.

14

15                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
16                    SAN FRANCISCO DIVISION

17

18  RICOH COMPANY, LTD,                  )   Case No. C03-4669 (Judge Jenkins)

19                                       )

20          Plaintiff,                   )

21                                       )

22      vs.                              )   DECLARATION OF

23                                       )   DR. V. THOMAS RHYNE

24                                       )

25  AEROFLEX, INC. ET AL.                )

26          Defendants.                  )

27

28

DR. V. THOMAS RHYNE declares as follows:

1.    I have been retained by Ricoh Company, Ltd. ("Ricoh") as a technical expert in the above-styled litigation.  I am over the age of 21 and am competent to make this declaration.  Based on my personal knowledge and information, I hereby declare to all the facts in this declaration.

2.    I have studied, taught, and practiced electrical engineering for over forty years.  I hold degrees from Mississippi State University (BSEE with Honors, 1962), the University of Virginia (MEE, 1964), and the Georgia Institute of Technology (Ph.D. in EE, 1967).  I have been a registered Professional Engineer in the State of Texas since 1969.  I am also a Registered Patent Agent.

3.    I taught electrical engineering, computer engineering, computer architecture, and computer science at the undergraduate and graduate levels full-time at Texas A&M University from 1967 to 1983 and part-time at the University of Texas from 1983 to 1990.  My twenty-plus years of industrial experience includes work for the Electric Power Research Institute, Texas Instruments, Control Data Corporation, NASA, Texas Digital Systems, Inc. (a company I co-founded to produce microprocessor-based computer peripherals in 1976), the Microelectronics and Computer Technology Corporation (MCC), and Motorola, Inc.

4.    I have extensive experience with computer technology and computer networking, including design, teaching, and use experience with a variety of computer systems, computer networks, and networking components.  I have participated in the design of several computer systems and microprocessors, and have designed systems that made use of those devices as control elements.  I am an experienced programmer in a variety

of programming languages as well as assembly-level language on a number of different computers and microprocessors. I have also chaired and otherwise participated in a number IEEE and ISO/IEC standards committees.

5.    While at MCC, between 1983 and 1995, I was intimately involved in computer aided design (CAD) for large, complex integrated circuits and the use of expert systems technology in that area of application as well as other areas of application.

6.    My experience and qualifications have been recognized by the Texas Society of Professional Engineers (Young Engineer of the Year in Texas, 1973), the American Society for Engineering Education (Terman Awardee as the "Outstanding Young Electrical Engineering Educator in the U.S.," 1980), the Institute of Electrical and Electronics Engineers (IEEE Fellow, 1990), and the Accreditation Board for Engineering and Technology (ABET Fellow, 1992). I am the author of thirty technical papers, have presented papers at thirty-seven conferences, and have authored an award winning textbook adopted at over thirty-five U.S. and international universities.

7.    I have extensive experience with the accreditation of engineering and computer science programs in the U.S. and abroad, an activity which has provided me an excellent opportunity to become and remain familiar with the program curricula, faculties, and graduates from a large number of U.S. and international colleges and universities. I represented the IEEE for five years on the Engineering Accreditation Commission, and for six years on the Board of Directors of the Accreditation Board for Engineering and Technology (ABET). I also was appointed by the National Research Council to chair the Panel of Assessment for the Electronics and Electrical Engineering Laboratory of the

U.S. National Institute of Standards and technology.  I served on that Panel for seven years.

8.   I retired from full-time work in 1997, although I have worked part-time as a consulting engineer for the past thirty years, including work in the field of application-specific system design.

9.   I have reviewed U.S. Patent No. 4,922,432 ("the '432 patent") and believe that it describes and claims an integral portion of the manufacturing process utilized in the semiconductor industry for the manufacture of application specific integrated circuit (ASIC) products.

10.  From my own design work, and my experience and knowledge of the work of others in the field, I believe the following process steps are an essential part of the manufacture of ASIC products:

    A.  Describing a series of functions that are to be performed by the desired ASIC product to be manufactured.

    B.  Performing logic synthesis to identify the logic blocks needed to achieve the desired functionality.

    C.  Selecting the circuit components in a desired technology that are to be used to implement the synthesized logic blocks.

    D.  Producing a description of the circuit components as well as their respective connections in the form of a netlist.

    E.  Creating from the netlist a layout of the circuit components (and their interconnections) that fits within the area of the silicon die to be used for the ASIC product.

    F.  Formulating as mask data a complete representation of the integrated circuit

1    for fabrication on the silicon die.

2          G. Using the mask data to create the set of multiple masks required for producing

3    the circuit layout on the silicon die to form the ASIC product.

4       11. Based on my personal knowledge and experience in the semiconductor industry, I

5    believe that the process described and claimed in the '432 patent would be considered in

6    the industry to be an essential portion of the synthesis-based manufacture of an ASIC

7    product.

8

9    I declare under penalty of perjury under the laws of the United States of America that the

10   foregoing is true and correct.  Signed at Austin, TX on February 24, 2004.

11

12

13   _V. Thomas Rhyne_

14   V. Thomas Rhyne, Ph.D., P.E., R.P.A.

Gary M. Hoffman, *admitted pro hac vice*
Kenneth W. Brothers, *admitted pro hac vice*
DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman, *admitted pro hac vice*
DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Phone: (212) 835-1400
Fax: (212) 992-9880

Jeffrey B. Demain (SBN 126715)
Jonathan Weissglass (SBN 185008)
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Attorneys for Plaintiff Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | ) Case No. C03-04669 MJJ |
| Plaintiff, | ) **AMENDED COMPLAINT** |
| vs. | ) |
| AEROFLEX INC., | ) |
| AMI SEMICONDUCTOR, INC. | ) |
| MATROX ELECTRONIC SYSTEMS, LTD. | ) |
| MATROX GRAPHICS, INC. | ) |
| MATROX INTERNATIONAL, INC. | ) |
| MATROX TECH, INC. | ) |
| AEROFLEX UTMC | ) |
| Defendants. | ) |
| | ) |

1729704 v1: 112NC011.DOC

## AMENDED COMPLAINT

Plaintiff Ricoh Company, Ltd. ("Ricoh") for its Complaint against Defendants Aeroflex Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd. ("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox Int'l"), ~~and~~ Matrox Tech, Inc. ("Matrox Tech"), and Aeroflex UTMC ("UTMC"), alleges as follows:

1729704 v1: 112NC01I.DOC

**PARTIES**

1.    Plaintiff Ricoh is a corporation organized under the laws of Japan and maintains its principal place of business at 3-6 1-chome, Nakamagome, Tokyo, Japan.

2.    Upon information and belief, Defendant Aeroflex is a corporation organized under the laws of the State of Delaware, and maintains its principal place of business at 35 S. Service Road, Plainview, NY, 11803, and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in Delaware. Aeroflex is doing business in this jurisdiction and/or has committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of this Court for this action.

3.    Upon information and belief, Defendant AMI is a corporation organized under the laws of the State of Delaware, and maintains its principal place of business at 2300 Buckskin Road, Pocatello, ID 83201, and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in Delaware. AMI is doing business in this jurisdiction and/or has committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of this Court for this action.

4.    Upon information and belief, Defendant Matrox is a corporation organized under the laws of Quebec, Canada, maintains its principal place of business at 1055 Boul St-Regis, Dorval, Quebec H9P 2T4 Canada and. Matrox is doing business in Delaware this jurisdiction and/or has committed the acts complained of in Delaware this jurisdiction, and has consented to the jurisdiction of this Court for this action.

1729704 v1; 112NC01!.DOC

5.    Upon information and belief, Defendant Matrox Graphics is a corporation organized under the laws of Quebec, Canada, maintains its principal place of business at 1055 Boul St-Regis, Dorval, Quebec H9P 2T4 Canada ~~and.~~  Matrox Graphics is doing business in ~~Delaware~~this jurisdiction and/or has committed the acts complained of in ~~Delaware~~this jurisdiction, and has consented to the jurisdiction of this Court for this action.

6.    Upon information and belief, Defendant Matrox Int'l is a corporation organized under the laws of New York, maintains its principal place of business at 625 State Rt 3, Unit B, Plattsburgh, NY 12901~~, and.~~  Matrox Int'l is doing business in ~~Delaware~~this jurisdiction and/or has committed the acts complained of in ~~Delaware~~this jurisdiction, and has consented to the jurisdiction of this Court for this action.

7.    Upon information and belief, Defendant Matrox Tech is a corporation organized under the laws of the State of Delaware, maintains its principal place of business at 1075 Broken Sound Parkway, NW, Boca Raton, FL  33487-3524 ~~and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE  19801 as its registered agent in Delaware.~~  Matrox Tech is doing business in this jurisdiction and/or has committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of this Court for this action.

~~7.~~8.    Upon information and belief, Defendant UTMC is a wholly-owned subsidiary of Defendant Aeroflex, is also known as Aeroflex Microelectronic Solutions, Aeroflex UTMC Microelectronic Solutions and Aeroflex Colorado Springs, formerly known as United Technologies Microelectronics Center ("UTMC"), is a corporation organized under the laws

of the State of Delaware and maintains a place of business at 1575 Garden of the Gods Road,

Colorado Springs, CO, 80907.  UTMC is doing business in this jurisdiction and/or has

committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of

this Court for this action.

## JURISDICTION

8.9.    This action arises under the patent laws of the United States, Title 35, United States

Code, and more particularly under 35 U.S.C. §§ 271 et. seq.

9.10.    This Court has subject matter jurisdiction over this patent infringement action under

the Judicial Code of the United States, 28 U.S.C. §§ 1338(a) and 1331.

10.11.  This Court has personal jurisdiction over the Defendants because Defendants are

present and/or doing business in Delawarethis jurisdiction either directly or through their

agents, or alternatively, are incorporated in Delaware.have consented to the jurisdiction of this

Court.

## VENUE

11.12.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that Defendants

resideregularly transact business in this judicial district and/or -a substantial part of the

events or omissions giving rise to the claim occurred in this judicial district and/or are found

in this judicial district and/or are aliens.

## FACTUAL BACKGROUND

1729704 v1; 112NC01!.DOC

12.13. On May 1, 1990, the U.S. Patent and Trademark Office ("USPTO") duly and legally issued United States Letters Patent No. 4,922,432 (the " '432 Patent") in the names of Hideaki Kobayashi and Masahiro Shindo for their invention titled "Knowledge Based Method and Apparatus for Designing Integrated Circuits using Functional Specifications."   A copy of the '432 Patent is attached hereto as Exhibit 1.

13.14. By assignment, Ricoh is the owner of the entire right, title, and interest in the '432 Patent and has the sole right to sue and recover for infringement thereof.

14.15. The '432 Patent describes, inter alia, a method for designing an application specific integrated circuit.  By using the invention of the '432 Patent, one can define functional architecture independent specifications for an integrated circuit and translate functional architecture independent specifications into the detailed information needed for directly producing the integrated circuit.

## PATENT INFRINGEMENT

## COUNT 1

15.16. Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 1415 hereof.

16.17. Upon information and belief, Aeroflex has been and is now infringing the '432 Patent by using, offering to sellutilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits designed made with the use and/or by or using information

1729704 v1: 112NC01!.DOC

~~generated by,~~ the process of ~~one~~ or more of claims 13-~~20~~17 of the '432 Patent, either literally or under the doctrine of equivalents.

~~17.~~18.  Upon information and belief, Aeroflex will continue to infringe the '432 Patent unless enjoined by this Court.

~~18.~~19.  As a consequence of Aeroflex's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Aeroflex is enjoined by this Court from committing further acts of infringement.

~~19.~~20.  Upon information and belief, Aeroflex's infringement of the '432 Patent is willful.

~~20.~~21.  Ricoh is entitled to recover damages adequate to compensate for Aeroflex's infringement.

## COUNT 2

~~21.~~22.  Ricoh repeats and realleges the allegations set forth in paragraphs 1 through ~~14~~15 hereof.

~~22.~~23.  Upon information and belief, AMI has been and is now infringing the '432 Patent by ~~using, offering to sell~~utilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits ~~designed~~made with the use and/or by ~~or using information generated by,~~ the process of one or more of claims 13-~~20~~17 of the '432 Patent, either literally or under the doctrine of equivalents.

23.24. Upon information and belief, AMI will continue to infringe the '432 Patent unless enjoined by this Court.——

24.25. As a consequence of AMI's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless AMI is enjoined by this Court from committing further acts of infringement.

25.26. Upon information and belief, AMI's infringement of the '432 Patent is willful.

26.27. Ricoh is entitled to recover damages adequate to compensate for AMI's infringement.

## COUNT 3

27.28. Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 1415 hereof.

28.29. Upon information and belief, Matrox has been and is now infringing the '432 Patent by using, offering to sellutilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits designed made with the use and/or by or using information generated by, the process of one or more of claims 13-2017 of the '432 Patent, either literally or under the doctrine of equivalents.

29.30. Upon information and belief, Matrox will continue to infringe the '432 Patent unless enjoined by this Court.

30.31. As a consequence of Matrox's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in

1729704 v1: 112NC01!.DOC

the future unless Matrox is enjoined by this Court from committing further acts of infringement.

31.32. Upon information and belief, Matrox's infringement of the '432 Patent is willful.

32.33. Ricoh is entitled to recover damages adequate to compensate for Matrox's infringement.

## COUNT 4

33.34. Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 1415 hereof.

34.35. Upon information and belief, Matrox Graphics has been and is now infringing the '432 Patent by using, offering to sellutilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits designed made with the use and/or by or using information generated by, the process of one or more of claims 13-2017 of the '432 Patent, either literally or under the doctrine of equivalents.

35.36. Upon information and belief, Matrox Graphics will continue to infringe the '432 Patent unless enjoined by this Court.

36.37. As a consequence of Matrox Graphics' infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Matrox Graphics is enjoined by this Court from committing further acts of infringement.

37.38.  Upon information and belief, Matrox Graphics' infringement of the '432 Patent is willful.

28.39.  Ricoh is entitled to recover damages adequate to compensate for Matrox Graphics' infringement.

### COUNT 5

39.40.  Ricoh repeats and realleges the allegations set forth in paragraphs 1 through ~~14~~15 hereof.

40.41.  Upon information and belief, Matrox Int'l has been and is now infringing the '432 Patent by ~~using, offering to sell~~utilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits ~~designed~~made with the use and/or by ~~or using information generated by,~~ the process of one or more of claims 13-~~20~~17 of the '432 Patent, either literally or under the doctrine of equivalents.

41.42.  Upon information and belief, Matrox Int'l will continue to infringe the '432 Patent unless enjoined by this Court.

42.43.  As a consequence of Matrox Int'l's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Matrox Int'l is enjoined by this Court from committing further acts of infringement.

43.44.  Upon information and belief, Matrox Int'l's infringement of the '432 Patent is willful.

44.45.  Ricoh is entitled to recover damages adequate to compensate for Matrox Int'l's infringement.

### COUNT 6

45.46.  Ricoh repeats and realleges the allegations set forth in paragraphs 1 through ~~14~~15 hereof.

46.47.  Upon information and belief, Matrox Tech has been and is now infringing the '432 Patent by ~~using, offering to sell~~utilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits ~~designed~~made with the use and/or by ~~or using information generated by,~~ the process of one or more of claims 13-~~20~~17 of the '432 Patent, either literally or under the doctrine of equivalents.

47.48.  Upon information and belief, Matrox Tech will continue to infringe the '432 Patent unless enjoined by this Court.

48.49.  As a consequence of Matrox Tech's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Matrox Tech is enjoined by this Court from committing further acts of infringement.

49.50.  Upon information and belief, Matrox Tech's infringement of the '432 Patent is willful.

50.51.  Ricoh is entitled to recover damages adequate to compensate for Matrox Tech's infringement.

1729704 v1: 112NC01!.DOC

## COUNT 7

52.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 15 hereof.

53.    Upon information and belief, UTMC has been and is now infringing the '432 Patent by utilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits made with the use and/or by the process of one or more of claims 13-17 of the '432 Patent, either literally or under the doctrine of equivalents.

54.    Upon information and belief, UTMC will continue to infringe the '432 Patent unless enjoined by this Court.

55.    As a consequence of UTMC's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless UTMC is enjoined by this Court from committing further acts of infringement.

56.    Upon information and belief, UTMC's infringement of the '432 Patent is willful.

57.    Ricoh is entitled to recover damages adequate to compensate for UTMC's infringement.

### PRAYER FOR RELIEF

WHEREFORE, Ricoh prays for entry of judgment:

A.  that Aeroflex has infringed the '432 Patent;

1729704 v1: 112NC01!.DOC

B.  that Aeroflex, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Aeroflex, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

C.  that Aeroflex account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

D.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Aeroflex's infringement of the '432 Patent;

E.  that AMI has infringed the '432 Patent;

F.  that AMI, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with AMI, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

G.  that AMI account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

H.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of AMI's infringement of the '432 Patent;

I.  that Matrox has infringed the '432 Patent;

J.  that Matrox, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

1729704 v1; 112NC01!.DOC

K.  that Matrox account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

L.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox's infringement of the '432 Patent;

M.  that Matrox Graphics has infringed the '432 Patent;

N.  that Matrox Graphics, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox Graphics, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

O.  that Matrox Graphics account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

P.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox Graphics' infringement of the '432 Patent;

Q.  that Matrox Int'l has infringed the '432 Patent;

R.  that Matrox Int'l, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox Int'l, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

S.  that Matrox Int'l account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

T.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox Int'l's infringement of the '432 Patent;

U.  that Matrox Tech has infringed the '432 Patent;

V.  that Matrox Tech, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox Tech, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

W.  that Matrox Tech account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

X.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox Tech's infringement of the '432 Patent;

Y.  that costs be awarded to Ricoh; and

Z.  that Ricoh be granted such other and further relief as the Court may deem just and proper under the current circumstances.

1729704 v1; 112NC01!.DOC

AA.   that UTMC has infringed the '432 Patent;

BB. that UTMC, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with UTMC, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

CC.   that UTMC account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285; and

DD.   that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of UTMC's infringement of the '432 Patent.

Ricoh Company, Ltd.

By: _____
Jeffrey B. Demain (SBN 126715)
Jonathan Weissglass (SBN 185008)
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Gary M. Hoffman
Edward Meilman
Eric Oliver
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN &
OSHINSKY LLP
2101 L Street NW
Washington, D.C. 20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Counsel for Plaintiff,
Ricoh Company.

1729704 v1; 112NC01!.DOC

LEXSEE 1991 US DIST LEXIS 13142

**SHAMROCK TECHNOLOGIES, INC., Plaintiff, v. PRECISION MICRON POWDERS, INC., Defendant**

**CV No. 91-0869**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*1991 U.S. Dist. LEXIS 13142; 20 U.S.P.Q.2D (BNA) 1797*

**August 8, 1991**

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** [*1]

BRUMBAUGH, GRAVES, DONOHUE & RAYMOND, ESQS., Attorneys for Plaintiff, New York, New York, James J. Maune, Esq., Of Counsel, Louis S. Sorell, Esq., of Counsel.

KANE, DALSIMER, SULLIVAN, KURUCZ, LEVY, EISELE and RICHARD, ESQS., Attorneys for Defendant, New York, New York, John Kurucz, Esq., Of Counsel, William H. Dippert, Esq., Of Counsel.

**JUDGES:**

Jacob Mishler, United States District Judge.

**OPINIONBY:**

MISHLER

**OPINION:**

Memorandum of Decision and Order

Defendant, Precision Micron Powders, Inc. ("PMP"), moves to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to *Fed. R. Civ. P. 12(b)(6)*.

*BACKGROUND*

Plaintiff, Shamrock Technologies, Inc ("Shamrock"), brings this action for patent infringement against PMP pursuant to *35 U.S.C. § § 271*(g) and 281, and for unfair competition/misappropriation of trade secrets. n1

n1 At oral argument the court granted Shamrock leave to amend the complaint to correct a typographical error in paragraph 15 to properly allege jurisdiction over the unfair competition/misappropriation of trade secrets claim pursuant to *28 U.S.C. § 1338*(b).

[*2]

In a related action before this court, CV 88-1681, Shamrock sued Medical sterilization, Inc. ("MSI") and Robert S. Luniewski ("Luniewski") for infringement of its patents to the apparatus (the "'005 patent") and process (the "'192 patent") used by Shamrock to process high molecular weight, flowable solid polytetraflouroethylene ("processed PTFE"), which is used inter alia in formulations for printing inks. Luniewski, a co-inventor of the patents, had assigned his rights in the patents to his employer Shamrock and subsequently terminated his employment with Shamrock to become vice president in charge of operations at MSI.

In a memorandum of decision and order dated August 8, 1989 (CV 88-1681), the court granted Shamrock's motion for summary judgment holding that

Case 5:03-cv-04669-JW    Document 113-11    Filed 02/24/2004    Page 2 of 3

Page 2

1991 U.S. Dist. LEXIS 13142, *; 20 U.S.P.Q.2D (BNA) 1797

the patents are valid and enforceable, and that MSI and Luniewski's process infringes the claims of the patents. The court entered a partial judgment dated August 24, 1989, and the judgment was affirmed by the United States Court of Appeals for the Federal Circuit. *Shamrock Tech., Inc. v. Medical Sterilization, Inc., 903 F.2d 789 (Fed. Cir. 1990)*. n2

n2 Discovery on the issue of damages is currently pending in that action.

[*3]

Shamrock commenced this action (CV 91-0869) against PMP asserting that PMP has been and is infringing the process patent by having sold and continuing to sell processed PTFE. It alleges that PMP was incorporated by Luniewski in 1987 and from its inception has brokered and/or marketed processed PTFE. (Complaint para. 10). Luniewski is President of PMP and owns a 50.5% interest therein. (Id.) PMP allegedly purchases raw PTFE, pays MSI to process the PTFE, and then sells the processed PTFE. (Id. para. 11-12). PMP moves to dismiss the complaint arguing that Shamrock has failed to state a claim for patent infringement under *35 U.S.C. § 271*(g).

*DISCUSSION*

In considering a motion to dismiss for failure to state a claim pursuant to *Fed. R. Civ. P. 12(b)(6)*, the court deems as true the facts alleged in the complaint and views them in the light most favorable to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236-37, 94 S. Ct. 1683, 1686 (1974); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991)*. The complaint must stand unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which [*4] would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); Dahlberg v. Becker, 748 F.2d 85, 88 (2d Cir. 1984)*, cert. denied, *470 U.S. 1084, 105 S. Ct. 1845 (1985)*.

PMP contends that according to the legislative history of *35 U.S.C. § 271*(g) (added to the Patent Act in 1988), section 271(g) was enacted to create a cause of action against manufacturers and importers of infringing goods but not against domestic sellers of infringing goods like PMP. The plain language of the statute, however, clearly states that whoever without authority sells within the United States a product made by a patented process shall be liable as an infringer. Section 271(g) provides in relevant part:

Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, sale, or use of the product occurs during the term of such process patent. In an action for infringement of a process patent, no remedy may be granted for infringement on account [*5] of the noncommercial use or retail sale of a product unless there is no adequate remedy under this title for infringement on account of the importation or other use or sale of that product. . . . n3

We need not examine the legislative history of section 271(g) because where, as here, the terms of a statute are unambiguous, judicial inquiry is complete except in "rare and exceptional circumstances." *Demarest v. Manspeaker, U.S. , 111 S. Ct. 599, 604 (1991); Burlington N. R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 429, 461, 107 S. Ct. 1855, 1860 (1987)*. n4

n3 Although the second sentence of section 271(g) provides for the exclusion of "retail sellers" of products, PMP has not established that its sales of processed PTFE qualify PMP as a "retail seller". At this early stage of the litigation there has been no discovery revealing to whom PMP sells its processed PTFE. Furthermore, the only known customers for PMP's processed PTFE are commercial purchasers who use the product to manufacture printing inks.

n4 Moreover, were the terms of the statute unclear, the legislative history actually supports the application of section 271(g) to domestic sellers of infringing goods as well as manufacturers and importers of such goods. See H.R. Rep. No. 60, 100th Cong., 1st Sess., at 3 (1987) (stating that the purpose of section 271(g) is to provide "meaningful protection to owners of patented processes" because prior to its enactment there was "no remedy against parties who use or sell the product, regardless where it is made"); S. Rep. No. 83, 100th Cong., 1st Sess. 46 (1987) (Section 271(g) "was crafted to apply equally to the use or sale of a product made by a process patented in this country whether the product was made (and the process used) in this country or in a foreign country"); H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 1085-86 (1988), reprinted in 1988 U.S.C.C.A.N. 2118-19 (stating that both the House and Senate bills provide that "using, selling, or importing a product made in violation of a U.S. process patent is an act of patent infringement") (emphasis added). But Cf. S. Rep. No. 83, 100th Cong., 1st Sess. 46 (1987) (stating that the inclusion of domestic process patent infringement

Case 5:03-cv-04669-JW    Document 113-11    Filed 02/24/2004    Page 3 of 3

Page 3

1991 U.S. Dist. LEXIS 13142, *; 20 U.S.P.Q.2D (BNA) 1797

in the bill is a formality to conform section 271(g) to the General Agreement on Tariff and Trade ("GATT")).

[*6]

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

PMP also submits that Shamrock's claim is barred by virtue of the "Grandfather Clause" enacted as section 9006(b) of Public law 100-418 which provides in pertinent part:

(b) Exceptions.--The amendments made by this subtitle shall not abridge or affect the right of any person or any successor in business of such person to continue to use, sell, or import any specific product already in substantial and continuous sale or use by such person in the United States on January 1, 1988, or for which substantial preparation by such person for such sale or use was made before such date, to the extent equitable for the protection of commercial investments made or business commenced in the United States before such date.

Act of Aug. 23, 1988, Pub. L. No. 100-418, Title IX, Subtitle A, § 9006(b), 102 Stat. 1566 (1988). PMP contends that it is immune from liability for selling the infringing PTFE product because its sales were made prior to January 1, 1988 (the "Grandfather Date"). However, the Grandfather Clause applies only "to the extent equitable for the protection of commercial investments made or business [*7] commenced in the United States before such date." PMP has not shown that, in order to protect its commercial investments made or business commenced in the United States before the Grandfather Date, it is "equitable" for PMP to continue sales of the infringing goods or to preclude Shamrock's recovery for damages from past sales.

*ORDER*

Defendant PMP's motion to dismiss the complaint is denied, and it is

SO ORDERED.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICOH COMPANY, LTD. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AEROFLEX INCORPORATED, AMI | ) |
| SEMICONDUCTOR, INC., MATROX | )   C.A. No. _____ |
| ELECTRONIC SYSTEMS LTD., | ) |
| MATROX GRAPHICS INC., MATROX | ) |
| INTERNATIONAL CORP. and MATROX | ) |
| TECH, INC., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Ricoh Company, Ltd. ("Ricoh") for its Complaint against Defendants Aeroflex

Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd.

("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox

Int'l"), and Matrox Tech, Inc. ("Matrox Tech"), alleges as follows:

## PARTIES

1.    Plaintiff Ricoh is a corporation organized under the laws of Japan and maintains

its principal place of business at 3-6 1-chome, Nakamagome, Tokyo, Japan.

2.    Upon information and belief, Defendant Aeroflex is a corporation organized

under the laws of the State of Delaware, maintains its principal place of business at 35 S. Service

Road, Plainview, NY, 11803, and has appointed The Corporation Trust Company, Corporation

Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in Delaware.

3.    Upon information and belief, Defendant AMI is a corporation organized under the

laws of the State of Delaware, maintains its principal place of business at 2300 Buckskin Road,

Pocatello, ID 83201, and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in Delaware.

4.     Upon information and belief, Defendant Matrox is a corporation organized under the laws of Quebec, Canada, maintains its principal place of business at 1055 Boul St-Regis, Dorval, Quebec H9P 2T4 Canada and is doing business in Delaware and/or has committed the acts complained of in Delaware.

5.     Upon information and belief, Defendant Matrox Graphics is a corporation organized under the laws of Quebec, Canada, maintains its principal place of business at 1055 Boul St-Regis, Dorval, Quebec H9P 2T4 Canada and is doing business in Delaware and/or has committed the acts complained of in Delaware.

6.     Upon information and belief, Defendant Matrox Int'l is a corporation organized under the laws of New York, maintains its principal place of business at 625 State Rt 3, Unit B, Plattsburgh, NY 12901, and is doing business in Delaware and/or has committed the acts complained of in Delaware.

7.     Upon information and belief, Defendant Matrox Tech is a corporation organized under the laws of the State of Delaware, maintains its principal place of business at 1075 Broken Sound Parkway, NW, Boca Raton, FL 33487-3524 and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in Delaware.

## JURISDICTION

8.     This action arises under the patent laws of the United States, Title 35, United States Code, and more particularly under 35 U.S.C. §§ 271 et. seq.

9.      This Court has subject matter jurisdiction over this patent infringement action under the Judicial Code of the United States, 28 U.S.C. §§ 1338(a) and 1331.

10.     This Court has personal jurisdiction over the Defendants because Defendants are present and/or doing business in Delaware either directly or through their agents, or alternatively, are incorporated in Delaware.

## VENUE

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that Defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and/or are found in this judicial district and/or are aliens.

## FACTUAL BACKGROUND

12.     On May 1, 1990, the U.S. Patent and Trademark Office ("USPTO") duly and legally issued United States Letters Patent No. 4,922,432 (the " '432 Patent") in the names of Hideaki Kobayashi and Masahiro Shindo for their invention titled "Knowledge Based Method and Apparatus for Designing Integrated Circuits using Functional Specifications." A copy of the '432 Patent is attached hereto as Exhibit 1.

13.     By assignment, Ricoh is the owner of the entire right, title, and interest in the '432 Patent and has the sole right to sue and recover for infringement thereof.

14.     The '432 Patent describes, inter alia, a method for designing an application specific integrated circuit. By using the invention of the '432 Patent, one can define functional architecture independent specifications for an integrated circuit and translate functional architecture independent specifications into the detailed information needed for directly producing the integrated circuit.

## PATENT INFRINGEMENT

### COUNT 1

15.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 14 hereof.

16.    Upon information and belief, Aeroflex has been and is now infringing the '432 Patent by using, offering to sell, and/or by selling and/or importing into the United States application specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 Patent, either literally or under the doctrine of equivalents.

17.    Upon information and belief, Aeroflex will continue to infringe the '432 Patent unless enjoined by this Court.

18.    As a consequence of Aeroflex's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Aeroflex is enjoined by this Court from committing further acts of infringement.

19.    Upon information and belief, Aeroflex's infringement of the '432 Patent is willful.

20.    Ricoh is entitled to recover damages adequate to compensate for Aeroflex's infringement.

### COUNT 2

21.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 14 hereof.

22.    Upon information and belief, AMI has been and is now infringing the '432 Patent by using, offering to sell, and/or by selling and/or importing into the United States application

specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 Patent, either literally or under the doctrine of equivalents.

23.    Upon information and belief, AMI will continue to infringe the '432 Patent unless enjoined by this Court.

24.    As a consequence of AMI's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless AMI is enjoined by this Court from committing further acts of infringement.

25.    Upon information and belief, AMI's infringement of the '432 Patent is willful.

26.    Ricoh is entitled to recover damages adequate to compensate for AMI's infringement.

## **COUNT 3**

27.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 14 hereof.

28.    Upon information and belief, Matrox has been and is now infringing the '432 Patent by using, offering to sell, and/or by selling and/or importing into the United States application specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 Patent, either literally or under the doctrine of equivalents.

29.    Upon information and belief, Matrox will continue to infringe the '432 Patent unless enjoined by this Court.

30.    As a consequence of Matrox's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts

RLF1-2551133-1

in the future unless Matrox is enjoined by this Court from committing further acts of infringement.

31.    Upon information and belief, Matrox's infringement of the '432 Patent is willful.

32.    Ricoh is entitled to recover damages adequate to compensate for Matrox's infringement.

## COUNT 4

33.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 14 hereof.

34.    Upon information and belief, Matrox Graphics has been and is now infringing the '432 Patent by using, offering to sell, and/or by selling and/or importing into the United States application specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 Patent, either literally or under the doctrine of equivalents.

35.    Upon information and belief, Matrox Graphics will continue to infringe the '432 Patent unless enjoined by this Court.

36.    As a consequence of Matrox Graphics' infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Matrox Graphics is enjoined by this Court from committing further acts of infringement.

37.    Upon information and belief, Matrox Graphics' infringement of the '432 Patent is willful.

38.    Ricoh is entitled to recover damages adequate to compensate for Matrox Graphics' infringement.

-6-

## COUNT 5

39.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 14 hereof.

40.    Upon information and belief, Matrox Int'l has been and is now infringing the '432 Patent by using, offering to sell, and/or by selling and/or importing into the United States application specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 Patent, either literally or under the doctrine of equivalents.

41.    Upon information and belief, Matrox Int'l will continue to infringe the '432 Patent unless enjoined by this Court.

42.    As a consequence of Matrox Int'l's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Matrox Int'l is enjoined by this Court from committing further acts of infringement.

43.    Upon information and belief, Matrox Int'l's infringement of the '432 Patent is willful.

44.    Ricoh is entitled to recover damages adequate to compensate for Matrox Int'l's infringement.

## COUNT 6

45.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 14 hereof.

46.    Upon information and belief, Matrox Tech has been and is now infringing the '432 Patent by using, offering to sell, and/or by selling and/or importing into the United States

-7-

application specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 Patent, either literally or under the doctrine of equivalents.

47.     Upon information and belief, Matrox Tech will continue to infringe the '432 Patent unless enjoined by this Court.

48.     As a consequence of Matrox Tech's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless Matrox Tech is enjoined by this Court from committing further acts of infringement.

49.     Upon information and belief, Matrox Tech's infringement of the '432 Patent is willful.

50.     Ricoh is entitled to recover damages adequate to compensate for Matrox Tech's infringement.

## PRAYER FOR RELIEF

WHEREFORE, Ricoh prays for entry of judgment:

A.     that Aeroflex has infringed the '432 Patent;

B.     that Aeroflex, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Aeroflex, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

C.     that Aeroflex account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

D.     that Ricoh be granted pre-judgment and post-judgment interest on the damages

caused to it by reason of Aeroflex's infringement of the '432 Patent;

E.     that AMI has infringed the '432 Patent;

F.     that AMI, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with AMI, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

G.     that AMI account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

H.     that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of AMI's infringement of the '432 Patent;

I.     that Matrox has infringed the '432 Patent;

J.     that Matrox, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

K.     that Matrox account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

L.     that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox's infringement of the '432 Patent;

M.     that Matrox Graphics has infringed the '432 Patent;

N.     that Matrox Graphics, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox Graphics, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

O.     that Matrox Graphics account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

P.     that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox Graphics' infringement of the '432 Patent;

Q.     that Matrox Int'l has infringed the '432 Patent;

R.     that Matrox Int'l, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox Int'l, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

S.     that Matrox Int'l account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

T.     that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox Int'l's infringement of the '432 Patent;

U.     that Matrox Tech has infringed the '432 Patent;

V.     that Matrox Tech, its agents, employees, representatives, successors, and assigns and those acting, or purporting to act, in privity or in concert with Matrox Tech, be preliminarily and permanently enjoined from further infringement of the '432 Patent;

W.     that Matrox Tech account for and pay to Ricoh all damages under 35 U.S.C. § 284, including enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees pursuant to 35 U.S.C. § 285;

X.     that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Matrox Tech's infringement of the '432 Patent;

Y.    that costs be awarded to Ricoh; and

Z.    that Ricoh be granted such other and further relief as the Court may deem just and

proper under the current circumstances.

*Robert W. Whetzel*    by *St. / dm* (4025)
_____
Robert W. Whetzel (#2288)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
Post Office Box 551
Wilmington, Delaware  19899
(302) 651-7700
Attorneys for Plaintiff

**OF COUNSEL**:
Gary M. Hoffman
Edward A. Meilman
Eric Oliver
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526
(202) 785-9700

Dated:  January 21, 2003

-11-

1   Teresa M. Corbin (SBN 132360)
    Christopher Kelley (SBN 166608)
2   Thomas Mavrakakis (SBN 177927)
    HOWREY SIMON ARNOLD & WHITE, LLP
3   301 Ravenswood Avenue
    Menlo Park, California 94025
4   Telephone: (650) 463-8100
    Facsimile: (650) 463-8400
5

6   Attorneys for Defendants
    MATROX ELECTRONIC SYSTEMS LTD. and
    MATROX GRAPHICS INC.

7                   UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                     SAN FRANCISCO DIVISION

| | |
|---|---|
| 10  RICOH COMPANY, LTD., | )  Case No. CV 03-04669 MJJ |
| 11          Plaintiff, | ) **NOTICE OF WITHDRAWAL OF MATROX** |
| | ) **ELECTRONIC SYSTEMS LTD. AND** |
| 12     vs. | ) **MATROX GRAPHICS INC.'S MOTION** |
| | ) **FOR SUMMARY JUDGMENT OF** |
| 13  AEROFLEX INCORPORATED, AMI | ) **NONINFRINGEMENT** |
|     SEMICONDUCTOR, INC., MATROX | ) |
| 14  ELECTRONIC SYSTEMS, LTD., MATROX | ) |
|     GRAPHICS INC., MATROX | )  Date:   March 2, 2004 |
| 15  INTERNATIONAL CORP., and MATROX | )  Time:   9:30 a.m. |
|     TECH, INC., | )  Ctrm:  11, 19th Floor |
| 16 | )  Judge:  Hon. Martin J. Jenkins |
|     Defendants. | ) |
| 17 | ) |

18

19        Matrox Electronic Systems, Ltd. ("Matrox Electronics") and Matrox Graphics Inc. ("Matrox

20  Graphics") hereby notify the Court that they wit hdraw their motion seeking a judgment of the Court

21  that neither party infringes claims 13 -20 of United States Patent No. 4,922,432 (the "'432 Patent")

22  under 35 U.S.C. § 271(g) filed December 2, 2003 and currently pending for hearing on March 2, 2004.

23        In light of the Court's statements at the December 9, 2003 hearing on the Defendants' Motion

24  to Stay the present action, Matrox Electronics and Matrox Graphics provided Ricoh with discovery

25  directed to whether Matrox Electroncis's or Matrox Graphics's have any ASIC design operations in the

26  United States, the sole factual issue presented by the summary judgment motion. This discovery

27  included documents directed to this subject and a Rule 30(b)(6) witness to testify on this topic.

28

    Case No. C03-04669 MJJ           -1-
HOWREY
SIMON
ARNOLD &
WHITE
    NOTICE OF WITHDRAWAL OF MOTION FOR
    SUMMARY JUDGMENT FOR NONINFRINGEMENT

1   However, despite their efforts to provide Ricoh Company, Ltd. ("Ricoh") with discovery reasonably

2   necessary and sufficient to decide the narrow factual question presented in the motion regarding the

3   location of each company's design operations, it became apparent to Matrox Electronics a nd Matrox

4   Graphics that Ricoh would oppose the motion under Rule 56(f) regardless of the discovery that they

5   provided.

6       Instead of burdening themselves or the Court with this pointless exercise, and in light of the

7   Defendants Motion for Judgment on the Plea dings, Matrox Electronics and Matrox Graphics herby

8   withdraw their motion for summary judgment.

9

10  Dated: February 10, 2004                    Respectfully submitted,

11                                              HOWREY SIMON ARNOLD & WHITE, LLP

12

13
                                                By:  /s/ Thomas Mavrakakis
14                                                   Teresa M. Corbin
                                                     Attorneys for Defendants
15                                                   MATROX ELECTRONIC SYSTEMS
                                                     LTD. and MATROX GRAPHICS INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  C03-04669 MJJ                         -2-
NOTICE OF WITHDRAWAL OF MOTION FOR
SUMMARY JUDGMENT FOR NONINFRINGEMENT