Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
Erik K. Moller (SBN 147674)
HOWREY SIMON ARNOLD & WHITE, LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Defendants
AEROFLEX, INC., et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | Case No. CV 03-04669 MJJ (EMC) |
| Plaintiff, | **DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | |
| AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., and MATROX TECH, INC., | Date: March 16, 2004<br>Time: 9:30 a.m.<br>Ctrm: 11<br>Judge: Hon. Martin J. Jenkins |
| Defendants. | |

DEFENDANTS' REPLY TO OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. CV 03-04669 MJJ (EMC)
8010054

HOWREY
SIMON
ARNOLD &
WHITE

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

    A. Defendants' Rule 12(c) Motion Presents Purely Legal Issues For The Court ........................................................................................................... 2

        1. Whether The Processes Claimed In The '432 Patent Are Encompassed By Section 271(g) Is A Question Of Law For The Court ................................................................................................ 2

        2. Defendants' Motion Properly Relies On The Pleadings Only ............................................................................................................. 3

        3. Ricoh's Request For A Rule 56(f) Continuance Is Merit Less .............................................................................................................. 4

    B. The '432 Patent's ASIC Design Processes Are Not Steps In ASIC Manufacture .......................................................................................................... 4

        1. The '432 Patent Claims Are Directed To ASIC Design Processes ..................................................................................................... 4

        2. Section 271(g) Does Not Encompass Design Processes ....................... 6

        3. Ricoh's Declarations Actually Support The Defendants' Motion ........................................................................................................ 9

    C. The Legal Insufficiency Of Ricoh's Section 271(g) Infringement Claim Cannot Be Cured By Adding A Section 271(a) Claim .................................. 11

        1. Ricoh's Proposed Amendment Does Not Render The Present Motion Moot ............................................................................... 11

        2. Ricoh's Complaint Does Not Allege A Claim Under Section 271(a) ............................................................................................ 12

        3. Defendants Have Never Acknowledged That Ricoh's Complaint Has A Section 271(a) Claim ............................................... 14

III. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Allen v. City of Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990) ................................................................................................ 11

*Amoco Oil Co. v. United States*,
    234 F.3d 1374 (Fed. Cir. 2000) .............................................................................................. 3

*Bayer AG v. Housey Pharms., Inc.*,
    340 F. 3d 1367 (Fed. Cir. 2003) ........................................................................ 2, 3, 6, 7, 8, 9

*Bio-Technology General Corp. v. Genentech, Inc.*
    80 F.3d 1553 (Fed. Cir. 1996) ................................................................................................ 8

*Bonin v. Calderon*,
    59 F.3d 815 (9th Cir. 1995) .................................................................................................. 11

*Carmen v. San Francisco Unified School Dist.*,
    982 F.Supp. 1396 (N.D. Cal. 1997) ..................................................................................... 12

*EMI Group North Am., Inc. v. Intel Corp.*,
    157 F.3d 887 (Fed. Cir. 1998) ................................................................................................ 3

*Ferguson Beauregard v. Mega Systems*,
    350 F.3d 1327 (Fed. Cir. 2003) .............................................................................................. 4

*Kraft Foods, Inc. v. International Trading Co.*,
    203 F.3d 1362 (Fed. Cir. 2000) .............................................................................................. 3

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) .................................................................................................. 3

*Oki Electric Industry Co., Inc. v. LG Semicon Co., Ltd.*,
    1998 U.S. Dist. LEXIS 22507 (N.D. Cal. Mar. 6,1998) ...................................................... 14

*Qwest Communications Corp. v. City of Berkeley*,
    208 F.R.D. 288 (N.D. Cal. 2002) ........................................................................................... 4

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) .............................................................................................. 4

**STATUTES**

35 U.S.C. § 271(a) ........................................................................................ 2, 9, 11, 12, 13, 14, 15

35 U.S.C. § 271(g) ........................................................................ 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15

**RULES**

Fed. R. Civ. P. 10(b) ................................................................................................... 2, 12, 13

I.   **INTRODUCTION**

The Defendants' motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, presents purely legal issues for the Court.  The Court must decide whether the processes claimed in the '432 patent's claims are processes <u>legally</u> encompassed by 35 U.S.C. § 271(g).  Because the legal scope of the '432 patent's claimed processes and the legal scope of the processes encompassed by Section 271(g) are both issues of law for the Court, Ricoh's desperate attempts to delay this Court's determination of the legal sufficiency of its Section 271(g) infringement claim should be rejected out-of-hand.

Aside from the fact that this Court should address the legal sufficiency of Ricoh's infringement claim now, the Court of Appeals for the Federal Circuit has already resolved one of the two legal issues that the Court is faced with here.  Specifically, the Federal Circuit has already determined that Section 271(g) does not encompass "predicate" processes that merely "identify the product to be manufactured"—i.e., design processes.  The Federal Circuit interpreted the word "made" to be limited to "manufactured" and specifically rejected a definition that encompasses activities other than manufacturing such as designing.  In light of this decision, which excludes design processes from the legal scope of Section 271(g), this Court need only address a single legal issue to resolve the Defendants' Rule 12(c) motion—i.e., whether the patented processes of the '432 patent are for <u>designing</u> ASICs as opposed to <u>manufacturing</u> ASICs.

Tellingly, Ricoh's opposition and the supporting declarations fail to deny that the patented processes at issue here are for <u>designing</u> ASICs.  They all also fail to assert that the claimed processes in the '432 patent are processes <u>directly</u> used for manufacturing ASICs.  This is not surprising.  No reasonable person could make any such assertions given the '432 patent's description and the explicit language used in process claims 13-20 of that patent.

Instead, Ricoh argues, contrary to the Federal Circuit's recent decision, that "designing" is necessary, required, and/or integral for "making" ASICs.  While it may be true that designing is a necessary "predicate" to making ASICs, the design processes of the '432 patent are certainly not actual "steps in the manufacture" of the ASICs as required for liability under Section 271(g).  In interpreting that section, the Federal Circuit determined that "made" meant "manufactured" only, and specifically

1  rejected the following definition for "make": "form as a result of calculation or <u>design</u>." *See Bayer AG*
2  *v. Housey Pharms., Inc.*, 340 F. 3d 1367, 1372-73 (Fed. Cir. 2003) (emphasis added).

Despite the legal insufficiency of Ricoh's Section 271(g) infringement claim, Ricoh desperately seeks to continue burdening and harassing the Defendants with this legally flawed claim by attempting to delay the resolution of this purely legal issue. Specifically, aside from its failed attempt to continue the instant motion, Ricoh's opposition makes the following arguments, which are <u>without</u> <u>merit</u> and <u>irrelevant</u> to the present motion: 1) Ricoh's Complaint alleges a claim under 35 U.S.C. § 271(a); 2) the Parties have acknowledged that Ricoh's Complaint alleges a claim under Section 271(a); 3) Ricoh believes that "ASIC <u>design</u> is directly connected to ASIC manufacture"; 4) Ricoh's expert believes that ASIC <u>design</u> "is an integral step in ASIC manufacturing"; 5) Defendants have presented no evidence to support summary judgment; 6) Defendants' Rule 12(c) motion is "fact-based" and should be continued pursuant to Rule 56(f); and 7) Defendants' motion is mooted by Ricoh's proposed amended complaint.

As demonstrated below, the above arguments by Ricoh should be rejected for at least the following reasons: 1) the legal insufficiency of Ricoh's Section 271(g) infringement claim cannot be cured by improperly mixing that claim with a claim under Section 271(a) in contravention of Fed. R. Civ. P. 10(b); 2) determining whether the patented processes of the '432 patent can legally state an infringement claim under Section 271(g) is a question of law and simply cannot raise an issue of fact; and 3) the ASIC design processes of the '432 patent are "predicate" processes and not processes that actually constitute steps in the manufacture of ASICs as required for stating an infringement claim pursuant to Section 271(g). The Defendants' motion for judgment on the pleadings should, therefore, be granted since the '432 patent's design processes, as a matter of law, simply do not support a legally sufficient infringement claim under Section 271(g).

II.  **ARGUMENT**

    A.    **Defendants' Rule 12(c) Motion Presents Purely Legal Issues For The Court**

          1.    **Whether The Processes Claimed In The '432 Patent Are Encompassed By Section 271(g) Is A Question Of Law For The Court**

1   It is well settled that statutory interpretation is an issue of law for the Court. *See Amoco Oil*
2   *Co. v. United States*, 234 F.3d 1374, 1377 (Fed. Cir. 2000) ("[W]e have repeatedly stated that issues of
3   statutory interpretation are questions of law."); *see also Housey*, 340 F.3d at 1370-71. The question of
4   what is meant by the language in 35 U.S.C. § 271(g) "made by a process patented in the United
5   States," therefore, is an issue of law that simply cannot raise any issue of fact.

6   It is also well settled that the interpretation of the claims of a United States patent is an issue of
7   law for the Court. *See, e.g., Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir.
8   1995); *see also Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000)
9   ("Claim construction is a question of law decided by the court."). The claims set forth the legal scope
10  of the invention described in United States patents. To prove patent infringement, a patent owner is
11  required to establish for at least one of the patent claims that each and every claim limitation is met by
12  the accused device or process. *See, e.g., EMI Group North Am., Inc. v. Intel Corp.*, 157 F.3d 887, 896
13  (Fed. Cir. 1998) ("For infringement of a process invention, all of the claimed steps of the process must
14  be performed."). Thus, it is the legal scope of the '432 patent's process claims 13-20 that determines
15  whether a legally sufficient infringement claim under Section 271(g) can be alleged. For these
16  reasons, the question of whether the processes <u>claimed</u> in the '432 patent are processes encompassed
17  by Section 271(g) is purely a question of law for the Court.

18  ## 2. **Defendants' Motion Properly Relies On The Pleadings Only**

19  There is no dispute that Ricoh's Complaint alleges a Section 271(g) infringement claim against
20  all of the Defendants by stating that the ASICs were "designed by" the patented processes of claims
21  13-20 in the '432 patent. The pertinent portion of Section 271(g) provides: "<u>made by</u> a process
22  patented in the United States." 35 U.S.C. § 271(g) (emphasis added). The Federal Circuit has
23  interpreted that language as encompassing only processes that actually constitute steps in the
24  manufacture of the product and not predicate processes such as processes that merely identify the
25  product to be manufactured—i.e., design processes. Thus, Ricoh's Section 271(g) infringement
26  claim—as drafted—only alleges that the ASICs are "designed by" the patented processes in the '432
27  patent and therefore, fails to state a claim upon which relief may be granted. Based solely on Ricoh's
28  Complaint, therefore, the Defendants are entitled to judgment, as a matter of law, on that claim.

There is also no dispute that the '432 patent is a central part of Ricoh's infringement allegations and therefore, may be considered in the procedural context of a Rule 12(c) motion for judgment on the pleadings. *See, e.g., Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). As shown below, the description in the '432 patent and the explicit language in process claims 13-20 demonstrate that Ricoh can only allege "designed by" for the process claims of the '432 patent. Ricoh simply cannot and has not alleged in its opposition that the processes of the '432 patent are <u>directly</u> used to manufacture ASICs as required under Section 271(g). Therefore, it is not possible for Ricoh to allege a claim for relief for the '432 patent under that section. Thus, amending the complaint to replace "designed by" with "made by" is not supported by the '432 patent claims and therefore, any such proposed amendment would be futile.

### 3. **Ricoh's Request For A Rule 56(f) Continuance Is Merit Less**

In support of its claim that there is no evidence to support Defendants' Rule 12(c) motion and that the present motion must be continued pursuant to Rule 56(f), Ricoh relies solely on its assertion that: "What the defendants do and how they do it is still an outstanding area of factual dispute." Ricoh is dead wrong.

<u>First</u>, what the Defendants do and how they do it has no bearing on the interpretation of Section 271(g) by the Court. Not even Ricoh can dispute that. <u>Second</u>, the legal scope of the <u>claimed</u> processes of the '432 patent is an issue for the Court and cannot raise an issue of fact. <u>Third</u>, not only are the Defendants' alleged infringing activities irrelevant to the legal determination by the Court of the '432 patent's process claims' legal scope here but it is legal error for the Court to consider those activities in making that legal determination. *See Ferguson Beauregard v. Mega Systems*, 350 F.3d 1327, 1340 (Fed. Cir. 2003) ("The district court's [claim construction] was in error because it was influenced by the structure and function of the accused device."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985). For these reasons, Ricoh's request for a Rule 56(f) continuance and its argument that there are no facts to support the Defendants' Rule 12(c) motion lack merit and should be rejected.

### B. **The '432 Patent's ASIC Design Processes Are Not Steps In ASIC Manufacture**

#### 1. **The '432 Patent Claims Are Directed To ASIC Design Processes**

1    Without directing the Court to any one of the '432 patent's process claims 13-20 or anything in
2 the '432 patent's description to support its assertion, Ricoh baldly states that: "The end product of the
3 patented process under the claims here can be the ASIC itself." But a quick glance at the '432 patent
4 claims reveals that each and every one of the process claims 13-20 explicitly states that the process is a
5 "design process for designing an application specific integrated circuit" (an "ASIC"). (Col. 16, lines
6 34-35, 66; Col. 17, lines 1, 4, 8, 11-12; Col. 18, lines 15, 22[1]). Besides this clear statement that these
7 processes are for designing ASICs, the last process step in all of these design process claims in the
8 '432 patent also demonstrates that their end product is design information or data—not an ASIC. (Col.
9 16, lines 61-65; Claim 14 at Col. 16, lines 66-68).

10   Ricoh also claims: "That the 'masks'…are the product of the process described in claim 14 of
11 the '432 patent." Again even a quick glance at claim 14 reveals that only "mask data" is generated as a
12 result of performing the process of claim 14—not the masks themselves. (Col. 16, lines 66-68). Not
13 only does claim 14 not encompass the manufacturing of masks but the '432 patent provides no
14 description regarding the processes for manufacturing the masks. In fact the '432 patent's only
15 description regarding the generation of even "mask data" is that it is generated from the "netlist" using
16 well-known processes. (*See, e.g.*, Col. 2, lines 45-49). Thus, the design information generated by the
17 processes of claims 13-20 merely identifies the ASIC to be manufactured and as Ricoh, its manager,
18 and its expert all admit this design information—at best—can only be used to make masks—not
19 manufacture ASICs.

20   Next, Ricoh argues that the use of the term "comprising" in claim 13 somehow transforms
21 Ricoh's claimed "design process for designing an application specific integrated circuit" into one that
22 manufactures them. This is absurd. The use of the word "comprising" only means that an accused
23 process may include other steps and still infringe the claim. It does not mean that the legal scope of
24 such a claim encompasses hundreds of steps neither described nor enabled by the patent's description.

---

[1] All patent references are to the '432 patent.

1  Here the use of "comprising" does not change the fact that the '432 patent only claims and
2  describes ASIC design processes. The '432 patent does not claim or even purport to describe any of
3  the numerous non-trivial processes performed to manufacture the masks never mind the numerous
4  subsequent processes that actually use those masks to manufacture ASICs. Ricoh's assertion that the
5  use of the word "comprising" broadens the legal scope of the '432 patent's claims to encompass
6  literally hundreds of steps never even alluded to in the '432 patent, therefore, is merit less.

7  Besides mischaracterizing the process claims 13-20 and their legal scope, Ricoh also argues
8  that "the process described in the '432 patent is not merely 'information' or 'data.'" But, as
9  demonstrated by the next few lines in Ricoh's own opposition and the '432 patent itself, the
10 description in the '432 patent demonstrates that the design process described in the '432 patent merely
11 generate design information—i.e., "netlists" and "mask data." The '432 patent describes a "netlist" as
12 a "<u>list</u> of hardware cells and their interconnection requirements" (*see e.g.*, Col. 2, lines 43-45) and the
13 "mask data" generated from that "netlist" as "the detailed chip level geometrical <u>information</u>." (*See*
14 *e.g.*, Col. 2, lines 45-49). Thus, Ricoh's claim that the "netlist" and the "mask <u>data</u>" that can be
15 generated from it are not "data" or "information" is contradicted by the '432 patent's claims and
16 description, and is simply not credible.

17 As predicted in the Defendants' opening brief, Ricoh also argues that the '432 patent's
18 processes for generating "netlists" and "mask data" are required, integral and/or necessary for making
19 ASICs. But that does not mean that these processes are directly used to manufacture—i.e., steps in the
20 manufacture of ASICs as Section 271(g) requires.

21 As demonstrated below, the Federal Circuit has recently held that "made by" in Section 271(g)
22 requires that "the process must be used <u>directly</u> in the manufacture of the product, and not merely as a
23 predicate process to identify the product to be manufactured." *Housey*, 340 F. 3d at 1378 (emphasis
24 added). Here the processes of claims 13-20, like the process in *Housey*, "are not steps in the
25 manufacture" of ASICs but instead are merely "predicate processes" that generate data identifying the
26 product to be made. *See id.* at 1377. Ricoh's attempts to limit and mischaracterize the thrust of that
27 Federal Circuit decision should be rejected outright.

28     **2.**    **Section 271(g) Does Not Encompass Design Processes**

1     Ricoh attempts to distinguish the *Housey* decision based solely on the differences between the claimed process there and the '432 patent's processes at issue here. Because these differences pointed to by Ricoh do not change the Federal Circuit's interpretation of Section 271(g) as a matter of law, they cannot alter the fact that it is not possible for the processes of claims 13-20 in the '432 patent to state a claim for relief under Section 271(g) based on that interpretation by the Federal Circuit. Besides this, the distinctions pointed to by Ricoh between the claimed processes in *Housey* and those in the present action are simply not material to the Federal Circuit's decision. Therefore, both the interpretation of Section 271(g) in the *Housey* decision and the application of that interpretation to the claims at issue there support the Defendants' Rule 12(c) motion.

    In *Housey*, the Federal Circuit held, in affirming a Rule 12(b)(6) dismissal, that "for a product to have been 'made by a process patented in the United States' [under Section 271(g)] it must have been a physical article that was 'manufactured'" (*see id.*) and that the process must be one that is "used <u>directly</u> in the manufacture of the product." *Id.* at 1378 (emphasis added). The Federal Circuit also held that Section 271(g) does not encompass "predicate" processes that merely "identify the product to be manufactured"—i.e., design processes. Ricoh's opposition cannot and does not dispute these holdings.

    What Ricoh fails to acknowledge is that the Federal Circuit in limiting the definition of "made" to mean "manufactured," specifically rejected other definitions for the present tense of "made" (i.e., "make") that "broadly encompassed activities in addition to manufacturing"—e.g., "form as a result of calculation or <u>design</u>." *See id.* at 1371-73. The Federal Circuit, therefore, certainly considered and flatly rejected the notion that "made" encompassed "design" when it limited the definition of "made" in Section 271(g) to mean "manufactured." Thus, when the Federal Circuit interpreted Section 271(g) to exclude "predicate" processes that merely "identify the product to be manufactured" it was specifically excluding design processes like the processes of claims 13-20 here.

    As explained above and in the Defendants' opening brief, the processes of claims 13-20 in the '432 patent are design processes that merely identify the product to be manufactured. Specifically, a "netlist" is data in the form of a list that identifies the hardware elements and their required interconnections and "mask data" identifies the "the detailed chip level geometrical <u>information</u>."

HOWREY
SIMON
ARNOLD &
WHITE

DEFENDANTS' REPLY TO OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. CV 03-04669 MJJ (EMC)

7

Under the Federal Circuit's interpretation of Section 271(g), therefore, the Defendants' motion should be granted.

Aside from the fact that the Federal Circuit's interpretation of Section 271(g) excluded the design processes at issue here, the Federal Circuit's application of that interpretation to the claims at issue in *Housey* also supports the Defendants' motion. There are no material differences between the process there and the ones at issue here with respect to applying Section 271(g). Here the process claims 13 and 15-20 in the '432 patent are for identifying a list of hardware elements and their required interconnections (i.e., the netlist) that are to perform the specific function of the particular ASIC. Claim 14 has the additional step of identifying the geometrical information, which provides the physical layout level description of the topological characteristics of the integrated circuit, using the information identified in the netlist of claim 13. (Col. 1, lines 38-44; Col. 2, lines 44-49; Abstract at lines 19-23). Thus, these processes identify data or information about <u>what</u> needs to be made—i.e., the netlist and mask data—in order to make the ASIC having the specified function.

Similarly, the process at issue in *Housey*, is used to identify the effect different agents have on a suspect protein. A suspect protein is one that has been discovered to have a link to a disease. Thus, the process there identifies <u>what</u> agent(s) need to be made for the drug having a particular function—i.e., to treat the particular disease linked to the suspect protein. This process like any predicate process is necessary, required, and integral, to making the drug. The drug cannot be made without first identifying <u>what</u> agent will have the desired effect on the suspect protein linked to the disease. Both the processes here and the one in *Housey*, therefore, identify the information of <u>what</u> needs to be made to perform a particular function. Here the function is one for a specified ASIC and there it was a drug for treating a particular disease.

Equally misplaced is Ricoh's reliance on the Federal Circuit's decision in *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996). Unlike the present action, that decision involved a process "used directly in the manufacture" of the product. *Id*. at 1561. Specifically, as pointed out in the *Housey* decision, the process in *Bio-Technology* was not for identifying what it is that should be made but instead, was for actually making the plasmid used to make the protein. Here the processes of claims 13-20 are <u>not</u> even for making the masks, which are in

HOWREY
SIMON
ARNOLD &
WHITE

DEFENDANTS' REPLY TO OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. CV 03-04669 MJJ (EMC)

8

turn used in the manufacturing processes for making ASICs. Instead, they merely identify information about what needs to be made, which is—at best—used by the processes that make masks. Thus, the *Bio-Technology* decision does not support Ricoh's Section 271(g) infringement claim.

The Federal Circuit's bright-line limitation on the processes encompassed by Section 271(g), as described in *Housey*, is necessary to avoid giving extraterritorial effect to that section. Before the United States Congress enacted Section 271(g), a process patented in the United States could only be infringed by performing the steps of that process in the United States. The enactment of section 271(g) represents a limited exception to the requirement that the process steps be performed <u>in the United States</u>. This section provides an infringement remedy for only certain processes patented in the United States but practiced outside the United States—i.e., processes "used <u>directly</u> in the manufacture" of a physical article and then only when that physical article so made is used, sold, offered for sale in the United States, or imported into the United States. Section 271(g), therefore, provides additional relief for a limited subset of processes patented in the United States and certainly was not meant to effectively eliminate the phrase "within the United States" in Section 271(a) for all processes. Thus, the Federal Circuit's *Housey* decision's limiting of Section 271(g), as Congress intended, to processes that constitute actual steps in manufacturing a physical article is consistent with not giving the United States patent laws extraterritorial effect.

### 3. **Ricoh's Declarations Actually Support The Defendants' Motion**

<u>First</u>, what Ricoh's declarations fail to say not only highlights the weakness of its opposition to the Defendants' motion for judgment on the pleadings but they also actually support granting that motion. Neither Ricoh's manager, Mr. Yamada, nor its expert, Dr. Rhyne, state in their declaration that claims 13-20's patented processes are processes "used <u>directly</u> in the manufacture" of ASICs or any other physical article. Why? They simply cannot make such a statement under oath.

In fact, neither of these declarations contain any analysis whatsoever about the legal scope of the language used in process claims 13-20 of the '432 patent. The only relevant statements in either of these declarations about the '432 patent are the following two carefully worded and conclusory assertions, provided without any analysis, in Dr. Rhyne's declaration: 1) "I have reviewed …the '432 patent and <u>believe</u> that it describes and claims an <u>integral</u> portion of the manufacturing process utilized

HOWREY
SIMON
ARNOLD &
WHITE

DEFENDANTS' REPLY TO OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. CV 03-04669 MJJ (EMC)

9

in the semiconductor industry for the manufacture of …ASIC products" and 2) "I <u>believe</u> that the process described and claimed in the '432 patent <u>would be considered in the industry</u> to be an <u>essential</u> portion of the synthesis-based manufacture of an ASIC product." (emphasis added).[2]

Dr. Rhyne's carefully worded claims that he "believes" that the design process of the '432 patent "would be considered in the industry" to be "essential" and "integral" for the manufacturing of an ASIC falls far short of what is required by Section 271(g)—i.e., that the patent processes of claims 13-20 are processes "used <u>directly</u> in the manufacture" of an ASIC. It is also readily apparent why Dr. Rhyne provides no analysis to support his conclusion, does not specify the particular claim language or any other portion of the '432 patent he is relying on to support his conclusion, and fails to simply state that the patent processes of claims 13-20 are processes used <u>directly</u> in the manufacture of an ASIC. He cannot do so under oath. Thus, what the declarations filed to support Ricoh's opposition fail to say is an implicit admission by Ricoh that process claims 13-20 are not processes directly used in the manufacture of ASICs and that, by itself, warrants granting Defendants' motion.

<u>Second</u>, the declarations filed by Ricoh, while not necessary to decide the instant motion, nonetheless support it. Both Mr. Yamada and Dr. Rhyne (and consequently Ricoh) admit that the "netlist" is used to generate the "mask data" that is used to make the masks. It is these masks that are actually used to "manufacture" the ASICs. Again the statements made in these declarations are carefully worded to avoid using the word "manufacture" and instead use words such as "fabricate" and "producing." This does not change the substance of their admissions. Thus, the admissions by Mr. Yamada and Dr. Rhyne also support the instant Rule 12(c) motion of Defendants.

Ricoh also mischaracterizes the testimony of Mr. Dwyer, the corporate witness for Matrox Electronic Systems Ltd. ("Matrox Electronics") and Matrox Graphics Inc. ("Matrox Graphics"). Contrary to the assertions in Ricoh's opposition, at his deposition, Mr. Dwyer testified that design

---

[2] Not surprisingly, although Defendants' counsel immediately requested the depositions of the two declarants relied on in Ricoh's opposition so that they could explore these carefully crafted statements, Ricoh has refused to provide Mr. Yamada for deposition until after April 22, 2004, and has to date failed to provide any date for the deposition of Dr. Rhyne. Absent any opportunity by the Defendants for cross-examination prior to the March 16, 2004 hearing, these statements should be accorded the appropriate weight in the Court's resolution of the instant motion.

processes such as logic synthesis are not used directly in manufacturing ASICs. Besides, at his deposition, Mr. Dwyer never opined regarding the legal scope of the design processes of the '432 patent at issue here. Consequently, Ricoh's assertions regarding his testimony are not only wrong but they are completely irrelevant to the issue before the Court here.[3]

C. **The Legal Insufficiency Of Ricoh's Section 271(g) Infringement Claim Cannot Be Cured By Adding A Section 271(a) Claim**

1. **Ricoh's Proposed Amendment Does Not Render The Present Motion Moot**

Ricoh's motion for leave to amend its complaint and the Defendants' Motion for Judgment on the Pleadings address distinct and separable issues. In its motion for leave to amend, Ricoh will ask for leave to amend its complaint to allege infringement under Section 271(a). Defendants' Motion for Judgment on the Pleadings seeks a determination that Ricoh cannot, as a matter of law, sustain allegations of infringement under Section 271(g).

Although the Defendants will separately respond to Ricoh's motion to amend in accordance with the briefing schedule for that motion, the Defendants note here that Ricoh's request for leave to amend to add a new Section 271(a) claim should be denied. The Ninth Circuit has made clear that "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally" leave to amend should be denied. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Allen v. City of Beverly Hills,* 911 F.2d 367, 374 (9th Cir. 1990) ("[A] district court does not 'abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts but only "new theories" and "provided no satisfactory explanation for his failure to fully develop his contentions originally."'") (citations omitted). Here Ricoh seeks to amend to add a new legal theory based on Section 271(a) without providing any explanation to the Court as to why it failed to allege infringement under that section in

---

[3] Ricoh also mischaracterizes his deposition testimony in an attempt to claim that Mr. Dwyer made a false statement in his declaration filed in support of the Canadian Matrox defendants' summary judgment motion. Aside from being irrelevant to the instant motion, it is simply not true. Mr. Dwyer's testimony at his deposition is consistent with the statements made in that declaration. *See* Exhibit 5 to the Declaration of Michael Weinstein in Support of Ricoh's Opposition at 119:23-120:1; 121:12-14.

1  its original complaint. Thus, Ricoh's request for leave to add a claim under Section 271(a) should be
2  denied.

3         Similarly, Ricoh's efforts to re-word its claim under Section 271(g) in its proposed amendment
4  should also be rejected. Specifically, as pointed out in the instant Rule 12(c) motion, there is no legal
5  basis for alleging an infringement claim for the patented processes of the '432 patent under Section
6  271(g). Thus, Ricoh's attempt to do so should not only be denied as futile but as a bad faith attempt to
7  burden and prejudice the Defendants with this legally insufficient claim.

8         Even if the Court allows Ricoh to add a Section 271(a) cause of action, the Court can still grant
9  judgment on the pleadings under Rule 12(c) as to a particular cause of action alleged by Ricoh. *See*
10 *Carmen v. San Francisco Unified School Dist.*, 982 F.Supp. 1396, 1401 (N.D. Cal. 1997). The fact
11 that Ricoh proposes to ignore Rule 10(b) of the Federal Rules of Civil procedure and to mix the
12 allegation of infringement under Section 271(a) into the wording making an allegation of infringement
13 under Section 271(g) does not alter the fact that these are separate and independent grounds for
14 asserting infringement, and that the Defendants can seek to have these grounds independently stricken
15 under Rule 12(c). The substance governs what is pled by Ricoh's allegations—not the form of its
16 pleading.

17        **2.    Ricoh's Complaint Does Not Allege A Claim Under Section 271(a)**

18     Ricoh claims that the infringement allegations in its Complaint, without its proposed
19 amendment, "closely follows the language of § 271(a)" and "is also sufficient to capture the essence of
20 § 271(g)." As demonstrated in the chart below, this is not true.

21 ///
22 ///
23 ///
24 ///

| Ricoh's Infringement Allegations | 35 U.S.C. § 271(g) and (a) |
|---|---|
| **Original Complaint** | **Section 271(g)** |
| Upon information and belief, [the defendant] has been and is now infringing the '432 patent by **using**, **offering to sell**, and/or by **selling** and/or **importing** into the United States <u>application specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 patent</u>, either literally or under the doctrine of equivalents. | Whoever without authority **imports** into the United States or **offers to sell**, **sells**, or **uses** within the United States <u>a product which is made by a process patented in the United States</u> shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent. |
| **Proposed Amended Complaint** | **Section 271(a)** |
| Upon information and belief, [the defendant] has been and is now infringing the '432 patent by <u>utilizing in the United States the process of one or more of claims 13-17 of the '432 patent as part of the process of manufacturing application integrated circuits</u>, and/or by selling, offering to sell and/or importing into the United States application specific integrated circuits <u>made with the use and/or by</u> the process of one or more of claims 13-17 of the '432 patent, either literally or under the doctrine of equivalents. | Whoever without authority makes, <u>uses</u>, offers to sell, or sells any patented invention, <u>within the United States</u> or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.  35 U.S.C. § 271(a). |

As this chart illustrates, Ricoh's original complaint fails to allege that the Defendants infringe the '432 patent by using the patented process in the United States. Instead, Ricoh's allegations track the language in Section 271(g): "using…application specific integrated circuits designed by or using information generated by, the process of one or more of claims 13-20 of the '432 patent."

Ricoh's proposed amended complaint, which was drafted in response to the instant motion, also demonstrates that its original complaint failed to allege a claim under Section 271(a). Specifically, although it violates the prohibition in Rule 10(b) requiring that "[e]ach claim founded upon a separate transaction or occurrence … shall be stated in a separate count," Ricoh's proposed infringement allegation clearly adds for the first time an allegation under Section 271(a) that was simply not there before.

The other interesting change in this new infringement allegation to note is the replacement of the phrase "designed by or using information generated by" in the original complaint with the phrase "made with the use and/or by." This carefully crafted replacement phrase also demonstrates that Ricoh

1  has no basis for alleging that ASICs are "made by" the process claims 13-17. Specifically, there is no
2  reason to add the alternative "made with the use" if the processes of claims 13-17 could support an
3  allegation of "made by" as required by Section 271(g). Why do Ricoh's attorneys avoid alleging
4  "made by"—by itself and without the alternative? The answer is Rule 11 of the Federal Rules of Civil
5  Procedure.

6  Equally misplaced is Ricoh's reliance on Rule 8(a)(2), Rule 84, Form 16, and the *Oki* decision.
7  The *Oki* decision, Rule 8(a)(2), Rule 84, and Form 16 are all inapposite to the present motion before
8  the Court here. In *Oki*, the district court merely determined that the pleading at issue contained an
9  allegation that the defendants infringed in the United States and that specific allegations "that
10 infringing devices were made, used, sold in, or imported into the United States" were not necessary.
11 *Oki Electric Industry Co., Inc. v. LG Semicon Co., Ltd.*, 1998 U.S. Dist. LEXIS 22507, at *12 (N.D.
12 Cal. Mar. 6, 1998). Moreover, Ricoh's allegation is nothing like the one contained in Form 16.
13 Nothing in Rule 8(a)(2), Rule 84, Form 16, or the *Oki* decision, therefore, supports Ricoh's assertion
14 that its Complaint contains a Section 271(a) claim. Ricoh cannot rely on any of the above or any other
15 Rules, Forms, or decisions to <u>add</u> a Section 271(a) claim that is simply not there.

### 3. **Defendants Have Never Acknowledged That Ricoh's Complaint Has A Section 271(a) Claim**

18 Ricoh wrongly asserts that the Defendants "have repeatedly acknowledged that Ricoh's
19 Complaint includes claims under both 35 U.S.C. § 271(a) and (g)." Besides being completely
20 irrelevant to the instant motion, this is simply not true. The Defendants' argument that Ricoh accuses
21 them of patent infringement because of their use of Synopsys' Design Compiler product was always
22 premised on an understanding that Ricoh's allegations were directed to Section 271(g).

23 First, nothing in the Defendants' statements necessarily implicates Section 271(a). While it is
24 true that the Defendants understood the basis of Ricoh's patent infringement allegations to be the use
25 of Design Compiler in their logic synthesis operations, the use of Design Compiler to perform the steps
26 of a method patent are directed to Section 271(g). This is especially true in light of the language of
27 Ricoh's complaint that the allegedly infringing activity is "using, offering to sell, and/or by selling
28 and/or importing into the United States application specific integrated circuits" made using the method

HOWREY
SIMON
ARNOLD &
WHITE

DEFENDANTS' REPLY TO OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. CV 03-04669 MJJ (EMC)

14

1  described in one of the claims of the '432 patent. (*See* Complaint at ¶¶16, 22, 28, 34, 40, and 46). As
2  shown in the Defendants' moving papers, this allegation tracks the language of Section 271(g) almost
3  verbatim. The Defendants' comments regarding their use of Design Compiler is not an
4  acknowledgement that Ricoh's complaint alleges patent infringement under two very different factual
5  scenarios and legal theories.

6  Similarly, Ricoh's argument that Matrox Electronics' and Matrox Graphics' summary
7  judgment of non-infringement shows that the complaint asserts patent infringement under both 35
8  U.S.C. §§ 271 (a) and (g) is wrong. There, Matrox Electronics and Matrox Graphics explicitly stated
9  they were seeking a judgment that they "do not infringe claims 13-20 of United States Patent No.
10 4,922,432 under 35 U.S.C. § 271(g)." (*See* Motion for Summary Judgment of Noninfringement filed
11 by Matrox Electronic Systems Ltd. and Matrox Graphics Inc., Docket No. 61 at 2:6-8). In fact, they
12 pointed out that Ricoh's complaint could only support a patent infringement allegation under Section
13 271(g). (*See id.* at 11:22-12:2). In support of its argument, Ricoh implies an argument that Matrox
14 Electronics and Matrox Graphics could not be sued under Section 271(a). However, Matrox
15 Electronics' and Matrox Graphics' motion *never* discussed Section 271(a) in the motion, which was
16 solely directed to the lack of any basis for infringement under Section 271(g). In short, the Defendants
17 have not "acknowledged" that Ricoh's complaint alleges infringement under both 35 U.S.C. §§271(a)
18 and (g).

### III. CONCLUSION

20 For all of the foregoing reasons and those set forth in the Defendants' opening brief, the
21 Defendants' motion for judgment on the pleadings on Ricoh's Section 271(g) infringement claim
22 should be granted.

23 Dated:  March 2, 2004                      Respectfully submitted,

24                                            HOWREY SIMON ARNOLD & WHITE, LLP

26                                            By:  /s/Thomas C. Mavrakakis
27                                                 Thomas C. Mavrakakis
                                                   Attorneys for Defendants
28                                                 AEROFLEX INCORPORATED, et al.