1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, California 94025
   Telephone: (650) 463-8100
5  Facsimile: (650) 463-8400

6  Attorneys for Defendants AEROFLEX
   INCORPORATED, et al.
7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12  RICOH COMPANY, LTD                    ) Case No. CV 03-4669 MJJ (EMC)
                                          )
13         Plaintiff,                     ) **DECLARATION OF ERIK MOLLER IN**
                                          ) **SUPPORT OF DEFENDANTS'**
14     vs.                                ) **OPPOSITION TO MOTION FOR LEAVE**
                                          ) **TO FILE AMENDED COMPLAINT**
15  AEROFLEX INCORPORATED, AMI            )
    SEMICONDUCTOR, INC., MATROX           ) **Date:        March 16, 2004**
16  ELECTRONIC SYSTEMS, LTD.,             ) **Time:        9:30 a.m.**
    MATROX GRAPHICS, INC., MATROX         ) **Courtroom: 11**
17  INTERNATIONAL CORP., and MATROX       )
    TECH, INC.,                           )
18                                        )
           Defendants.                    )
19  _____       )

20

21         I, Erik K. Moller, hereby declare as follows:

22         1.     I am an attorney at law licensed to practice in the State of California and an associate of

23  the law firm of Howrey Simon Arnold & White, LLP, attorneys for defendants Aeroflex, Inc., AMI

24  Semiconductor, Inc., Matrox Electronic Systems, Ltd., Matrox Graphics Inc., Matrox International

25  Corp., and Matrox Tech, Inc.  The matters set forth in this declaration are based upon my personal

26  knowledge, except where otherwise indicated, and if called as a witness, I could and would testify

27  competently thereto.

28

1   2.  Attached hereto as Exhibit A is a true and correct copy of correspondence from Edward

2 A. Meilman to Christopher L. Kelley dated February 12, 2004.

3   3.  Attached hereto as Exhibit B is a true and correct copy of correspondence from

4 Christopher L. Kelley to Edward A. Meilman dated February 17, 2004.

5   4.  Attached hereto as Exhibit C is a true and correct copy of this Court's Order Denying

6 Defendants' Motion to Stay and Denying Plaintiff's Motion for Consolidation dated December 11,

7 2003.

8   5.  Attached hereto as Exhibit D is a true and correct copy of the transcript from this

9 Court's hearing on the Defendants' Motion to Stay and Ricoh's Motion to Consolidate held on

10 December 9, 2003.

11   6.  Attached hereto as Exhibit E is a true and correct copy of correspondence from Kenneth

12 W. Brothers to Christopher L. Kelley dated March 5, 2004.

13   7.  Attached hereto as Exhibit F is a true and correct copy of correspondence from

14 Christopher L. Kelley to Edward A. Meilman dated August 27, 2003.

15   8.  Attached hereto as Exhibit G is a true and correct copy of correspondence from Edward

16 A. Meilman to Christopher L. Kelley dated September 12, 2003.

17   9.  Attached hereto as Exhibit H is a true and correct copy of the Memorandum and Order

18 of the district court for the United States District Court for the District of Delaware dated August 29,

19 2003.

20   I declare under penalty of perjury under the laws of the United States of America that the

21 foregoing is true and correct.  This declaration was executed in Menlo Park, California on March 9,

22 2004.

23

24            /s/ Erik K. Moller
              Erik K. Moller

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

DECL. OF MOLLER ISO DEFENDANTS' OPP TO MOT
FOR LEAVE TO FILE AMENDED COMPLAINT
CASE NO. CV 03-4669 MJJ (EMC)

-2-

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*

*Writer's Direct Dial: (212) 896-5471*
*E-Mail Address: MeilmanE@dsmo.com*

February 12, 2004

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025

Re:   *Ricoh v. Aeroflex*
      Your Ref.:  06816.0060.000000
      Our Ref.:  R2180.0171

Dear Mr. Kelley:

Ricoh intends to amend its Complaint to add Aeroflex UTMC as a defendant. The purpose of this letter is to seek your consent to the filing of the Amended Complaint, essentially using the same stipulation that you used to amend the answers. We also want to know whether you will accept service on behalf of Aeroflex UTMC and stipulate that that Aeroflex answer is also the answer of Aeroflex UTMC.

I enclose a draft amended complaint in redline form to show you the changes we have made. The essential differences between the enclosure and the original complaint are that Aeroflex UTMC has been added, the references to Delaware have been removed and replaced with generic jurisdictional allegations, together with the fact that the defendants have consented to the jurisdiction of the California Court, and the claims alleged to be infringed have been identified as numbers 13-17.

In addition, we have taken the occasion to modify the infringement paragraph with respect to each defendant.. While we firmly believe that the original allegation was more than sufficient but even under your view of the allegation, this change eliminates the basis for your Rule 12(c) motion. We therefore ask you to withdraw that motion.

Please let me know by noon (EST) on Monday, February 16, 2004 whether you will consent to the amended complaint, and separately, to withdraw your Rule 12(c) motion.

In the event that you decide not to withdraw your Rule 12(c) motion, we want to put you on notice that we presently intend to advise the Court that we consider your motion to be frivolous in that it deliberately misinterprets the infringement

Christopher L. Kelley, Esq.
February 12, 2004
Page 2

allegation in the original complaint and, in addition, necessarily will include a Rule
56(f) response despite Judge Jenkins direction not to cause such a response.

Very truly yours,

Edward A. Meilman

EAM/hc

cc:   Gary Hoffman, Esq.
      Kenneth Brothers, Esq.
      Jeffrey Demain, Esq.

Gary M. Hoffman, *admitted pro hac vice*
Kenneth W. Brothers, *admitted pro hac vice*
DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526
Telephone:  (202) 785-9700
Facsimile:  (202) 887-0689

Edward A. Meilman, *admitted pro hac vice*
DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone: (212) 835-1400
Fax: (212) 992-9880

Jeffrey B. Demain (SBN 126715)
Jonathan Weissglass (SBN 185008)
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone: (415) 421-7151
Fax: (415) 362-8064

Attorneys for Plaintiff Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | ) Case No. C03-04669 MJJ |
| | ) |
| Plaintiff, | ) **AMENDED COMPLAINT** |
| | ) |
| vs. | ) |
| | ) |
| AEROFLEX INC., | ) |
| AMI SEMICONDUCTOR, INC. | ) |
| MATROX ELECTRONIC SYSTEMS, LTD. | ) |
| MATROX GRAPHICS, INC. | ) |
| MATROX INTERNATIONAL, INC. | ) |
| MATROX TECH, INC. | ) |
| AEROFLEX UTMC | ) |
| | ) |
| Defendants. | ) |
| | ) |

1

## AMENDED COMPLAINT

2

    Plaintiff Ricoh Company, Ltd. ("Ricoh") for its Complaint against Defendants Aeroflex

3

4

Incorporated ("Aeroflex"), AMI Semiconductor, Inc. ("AMI"), Matrox Electronic Systems Ltd.

5

("Matrox"), Matrox Graphics Inc. ("Matrox Graphics"), Matrox International Corp. ("Matrox

6

Int'l"), ~~and~~ Matrox Tech, Inc. ("Matrox Tech"), and Aeroflex UTMC ("UTMC"), alleges as

7

8

follows:

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PARTIES

1.    Plaintiff Ricoh is a corporation organized under the laws of Japan and maintains its principal place of business at 3-6 1-chome, Nakamagome, Tokyo, Japan.

2.    Upon information and belief, Defendant Aeroflex is a corporation organized under the laws of the State of Delaware, <u>and</u> maintains its principal place of business at 35 S. Service Road, Plainview, NY, 11803~~, and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in Delaware~~. <u>Aeroflex is doing business in this jurisdiction and/or has committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of this Court for this action.</u>

3.    Upon information and belief, Defendant AMI is a corporation organized under the laws of the State of Delaware, <u>and</u> maintains its principal place of business at 2300 Buckskin Road, Pocatello, ID 83201~~, and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in Delaware~~. <u>AMI is doing business in this jurisdiction and/or has committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of this Court for this action.</u>

4.    Upon information and belief, Defendant Matrox is a corporation organized under the laws of Quebec, Canada, maintains its principal place of business at 1055 Boul St-Regis, Dorval, Quebec H9P 2T4 Canada ~~and~~. <u>Matrox</u> is doing business in ~~Delaware~~<u>this jurisdiction</u> and/or has committed the acts complained of in ~~Delaware~~<u>this jurisdiction, and has consented to the jurisdiction of this Court for this action.</u>

1729704 v1; 112NC01!.DOC

5.     Upon information and belief, Defendant Matrox Graphics is a corporation organized under the laws of Quebec, Canada, maintains its principal place of business at 1055 Boul St-Regis, Dorval, Quebec H9P 2T4 Canada ~~and~~. Matrox Graphics is doing business in ~~Delaware~~this jurisdiction and/or has committed the acts complained of in ~~Delaware~~this jurisdiction, and has consented to the jurisdiction of this Court for this action.

6.     Upon information and belief, Defendant Matrox Int'l is a corporation organized under the laws of New York, maintains its principal place of business at 625 State Rt 3, Unit B, Plattsburgh, NY 12901~~, and~~. Matrox Int'l is doing business in ~~Delaware~~this jurisdiction and/or has committed the acts complained of in ~~Delaware~~this jurisdiction, and has consented to the jurisdiction of this Court for this action.

7.     Upon information and belief, Defendant Matrox Tech is a corporation organized under the laws of the State of Delaware, maintains its principal place of business at 1075 Broken Sound Parkway, NW, Boca Raton, FL  33487-3524 ~~and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE  19801 as its registered agent in Delaware~~. Matrox Tech is doing business in this jurisdiction and/or has committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of this Court for this action.

~~7.~~8.     Upon information and belief, Defendant UTMC is a wholly-owned subsidiary of Defendant Aeroflex, is also known as Aeroflex Microelectronic Solutions, Aeroflex UTMC Microelectronic Solutions and Aeroflex Colorado Springs, formerly known as United Technologies Microelectronics Center ("UTMC"), is a corporation organized under the laws

of the State of Delaware and maintains a place of business at 1575 Garden of the Gods Road,

Colorado Springs, CO, 80907.  UTMC is doing business in this jurisdiction and/or has

committed the acts complained of in this jurisdiction, and has consented to the jurisdiction of

this Court for this action.

## JURISDICTION

8.9.    This  action arises under the patent laws of the United States, Title 35, United States

Code, and more particularly under 35 U.S.C. §§ 271 et. seq.

9.10.   This Court has subject matter jurisdiction over this patent infringement action under

the Judicial Code of the United States, 28 U.S.C. §§ 1338(a) and 1331.

10.11.  This Court has personal jurisdiction over the Defendants because Defendants are

present and/or doing business in ~~Delaware~~this jurisdiction either directly or through their

agents, or alternatively, ~~are incorporated in Delaware.~~have consented to the jurisdiction of this

Court.

## VENUE

11.12.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that Defendants

~~reside~~regularly transact business in this judicial district and/or ~~a~~ substantial part of the

events or omissions giving rise to the claim occurred in this judicial district and/or are found

in this judicial district and/or are aliens.

## FACTUAL BACKGROUND

12.13.  On May 1, 1990, the U.S. Patent and Trademark Office ("USPTO") duly and legally

issued United States Letters Patent No. 4,922,432 (the " '432 Patent") in the names of Hideaki

Kobayashi and Masahiro Shindo for their invention titled "Knowledge Based Method and

Apparatus for Designing Integrated Circuits using Functional Specifications."    A copy of the

'432 Patent is attached hereto as Exhibit 1.

13.14.  By assignment, Ricoh is the owner of the entire right, title, and interest in the '432

Patent and has the sole right to sue and recover for infringement thereof.

14.15.  The '432 Patent describes, inter alia, a method for designing an application specific

integrated circuit.  By using the invention of the '432 Patent, one can define functional

architecture independent specifications for an integrated circuit and translate functional

architecture independent specifications into the detailed information needed for directly

producing the integrated circuit.

## PATENT INFRINGEMENT

## COUNT 1

15.16.  Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 1415

hereof.

16.17.  Upon information and belief, Aeroflex has been and is now infringing the '432 Patent

by using, offering to sellutilizing in the United States the process of one or more of claims 13-

17 of the '432 Patent as part of the process of manufacturing application specific integrated

circuits, and/or by selling, offering to sell and/or importing into the United States, application

specific integrated circuits designed made with the use and/or by or using information

1   ~~generated by,~~ the process of one or more of claims 13-~~2017~~ of the '432 Patent, either literally

2   or under the doctrine of equivalents.

3   ~~17.~~18.  Upon information and belief, Aeroflex will continue to infringe the '432 Patent unless

4

5   enjoined by this Court.

6   ~~18.~~19.  As a consequence of Aeroflex's infringement, Ricoh has been irreparably damaged to

7
    an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts
8
9   in the future unless Aeroflex is enjoined by this Court from committing further acts of

10  infringement.

11
    ~~19.~~20.  Upon information and belief, Aeroflex's infringement of the '432 Patent is willful.
12

13  ~~20.~~21.  Ricoh is entitled to recover damages adequate to compensate for Aeroflex's

14  infringement.

15
                                         **COUNT 2**
16

17  ~~21.~~22.  Ricoh repeats and realleges the allegations set forth in paragraphs 1 through ~~14~~15

18  hereof.

19
    ~~22.~~23.  Upon information and belief, AMI has been and is now infringing the '432 Patent by
20

21  ~~using, offering to sell~~utilizing in the United States the process of one or more of claims 13-17

22  of the '432 Patent as part of the process of manufacturing application specific integrated

23
    circuits, and/or by selling, offering to sell and/or importing into the United States, application
24

25  specific integrated circuits ~~designed~~made with the use and/or by ~~or using information~~

26
    ~~generated by,~~ the process of one or more of claims 13-~~2017~~ of the '432 Patent, either literally
27

28  or under the doctrine of equivalents.

1  23.24.  Upon information and belief, AMI will continue to infringe the '432 Patent unless

2  enjoined by this Court.——

3  24.25.  As a consequence of AMI's infringement, Ricoh has been irreparably damaged to an

4

5  extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in

6  the future unless AMI is enjoined by this Court from committing further acts of infringement.

7

8  25.26.  Upon information and belief, AMI's infringement of the '432 Patent is willful.

9  26.27.  Ricoh is entitled to recover damages adequate to compensate for AMI's infringement.

10                                            **COUNT 3**

11  27.28.  Ricoh repeats and realleges the allegations set forth in paragraphs 1 through ~~14~~15

12

13  hereof.

14  28.29.  Upon information and belief, Matrox has been and is now infringing the '432 Patent by

15  ~~using, offering to sell~~utilizing in the United States the process of one or more of claims 13-17

16

17  of the '432 Patent as part of the process of manufacturing application specific integrated

18  circuits, and/or by selling, offering to sell and/or importing into the United States, application

19  specific integrated circuits ~~designed~~ made with the use and/or by ~~or using information~~

20

21  ~~generated by,~~ the process of one or more of claims 13-~~20~~17 of the '432 Patent, either literally

22  or under the doctrine of equivalents.

23

24  29.30.  Upon information and belief, Matrox will continue to infringe the '432 Patent unless

25  enjoined by this Court.

26  30.31.  As a consequence of Matrox's infringement, Ricoh has been irreparably damaged to an

27

28  extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in

1729704 v1; 112NC01!.DOC

the future unless Matrox is enjoined by this Court from committing further acts of

infringement.

~~31.~~32.  Upon information and belief, Matrox's infringement of the '432 Patent is willful.

~~32.~~33.  Ricoh is entitled to recover damages adequate to compensate for Matrox's

infringement.

### COUNT 4

~~33.~~34.  Ricoh repeats and realleges the allegations set forth in paragraphs 1 through ~~14~~15

hereof.

~~34.~~35.  Upon information and belief, Matrox Graphics has been and is now infringing the '432

Patent by ~~using, offering to sell~~utilizing in the United States the process of one or more of

claims 13-17 of the '432 Patent as part of the process of manufacturing application specific

integrated circuits, and/or by selling, offering to sell and/or importing into the United States,

application specific integrated circuits ~~designed~~ made with the use and/or by ~~or using~~

~~information generated by,~~ the process of one or more of claims 13-~~20~~17 of the '432 Patent,

either literally or under the doctrine of equivalents.

~~35.~~36.  Upon information and belief, Matrox Graphics will continue to infringe the '432 Patent

unless enjoined by this Court.

~~36.~~37.  As a consequence of Matrox Graphics' infringement, Ricoh has been irreparably

damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged

by such acts in the future unless Matrox Graphics is enjoined by this Court from committing

further acts of infringement.

37.38. Upon information and belief, Matrox Graphics' infringement of the '432 Patent is

willful.

28.39. Ricoh is entitled to recover damages adequate to compensate for Matrox Graphics'

infringement.

### COUNT 5

39.40. Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 1415

hereof.

40.41. Upon information and belief, Matrox Int'l has been and is now infringing the '432

Patent by using, offering to sellutilizing in the United States the process of one or more of

claims 13-17 of the '432 Patent as part of the process of manufacturing application specific

integrated circuits, and/or by selling, offering to sell and/or importing into the United States,

application specific integrated circuits designed made with the use and/or by or using

information generated by, the process of one or more of claims 13-2017 of the '432 Patent,

either literally or under the doctrine of equivalents.

41.42. Upon information and belief, Matrox Int'l will continue to infringe the '432 Patent

unless enjoined by this Court.

42.43. As a consequence of Matrox Int'l's infringement, Ricoh has been irreparably damaged

to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such

acts in the future unless Matrox Int'l is enjoined by this Court from committing further acts of

infringement.

43.44. Upon information and belief, Matrox Int'l's infringement of the '432 Patent is willful.

44.45. Ricoh is entitled to recover damages adequate to compensate for Matrox Int'l's

infringement.

## COUNT 6

45.46. Ricoh repeats and realleges the allegations set forth in paragraphs 1 through ~~14~~15

hereof.

46.47. Upon information and belief, Matrox Tech has been and is now infringing the '432

Patent by ~~using, offering to sell~~utilizing in the United States the process of one or more of

claims 13-17 of the '432 Patent as part of the process of manufacturing application specific

integrated circuits, and/or by selling, offering to sell and/or importing into the United States,

application specific integrated circuits ~~designed~~made with the use and/or by ~~or using~~

~~information generated by,~~ the process of one or more of claims 13-~~20~~17 of the '432 Patent,

either literally or under the doctrine of equivalents.

47.48. Upon information and belief, Matrox Tech will continue to infringe the '432 Patent

unless enjoined by this Court.

48.49. As a consequence of Matrox Tech's infringement, Ricoh has been irreparably damaged

to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such

acts in the future unless Matrox Tech is enjoined by this Court from committing further acts

of infringement.

49.50. Upon information and belief, Matrox Tech's infringement of the '432 Patent is willful.

50.51. Ricoh is entitled to recover damages adequate to compensate for Matrox Tech's

infringement.

## COUNT 7

52.    Ricoh repeats and realleges the allegations set forth in paragraphs 1 through 15 hereof.

53.    Upon information and belief, UTMC has been and is now infringing the '432 Patent by utilizing in the United States the process of one or more of claims 13-17 of the '432 Patent as part of the process of manufacturing application specific integrated circuits, and/or by selling, offering to sell and/or importing into the United States, application specific integrated circuits made with the use and/or by the process of one or more of claims 13-17 of the '432 Patent, either literally or under the doctrine of equivalents.

54.    Upon information and belief, UTMC will continue to infringe the '432 Patent unless enjoined by this Court.

55.    As a consequence of UTMC's infringement, Ricoh has been irreparably damaged to an extent not yet determined, and Ricoh will continue to be irreparably damaged by such acts in the future unless UTMC is enjoined by this Court from committing further acts of infringement.

56.    Upon information and belief, UTMC's infringement of the '432 Patent is willful.

57.    Ricoh is entitled to recover damages adequate to compensate for UTMC's infringement.

## PRAYER FOR RELIEF

WHEREFORE, Ricoh prays for entry of judgment:

A.    that Aeroflex has infringed the '432 Patent;

B.  that Aeroflex, its agents, employees, representatives, successors, and assigns and those

acting, or purporting to act, in privity or in concert with Aeroflex, be preliminarily and

permanently enjoined from further infringement of the '432 Patent;

C.  that Aeroflex account for and pay to Ricoh all damages under 35 U.S.C. § 284, including

enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees

pursuant to 35 U.S.C. § 285;

D.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to

it by reason of Aeroflex's infringement of the '432 Patent;

E.  that AMI has infringed the '432 Patent;

F.  that AMI, its agents, employees, representatives, successors, and assigns and those acting,

or purporting to act, in privity or in concert with AMI, be preliminarily and permanently

enjoined from further infringement of the '432 Patent;

G.  that AMI account for and pay to Ricoh all damages under 35 U.S.C. § 284, including

enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees

pursuant to 35 U.S.C. § 285;

H.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to

it by reason of AMI's infringement of the '432 Patent;

I.   that Matrox has infringed the '432 Patent;

J.   that Matrox, its agents, employees, representatives, successors, and assigns and those

acting, or purporting to act, in privity or in concert with Matrox, be preliminarily and

permanently enjoined from further infringement of the '432 Patent;

K.  that Matrox account for and pay to Ricoh all damages under 35 U.S.C. § 284, including

enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees

pursuant to 35 U.S.C. § 285;

L.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to

it by reason of Matrox's infringement of the '432 Patent;

M.  that Matrox Graphics has infringed the '432 Patent;

N.  that Matrox Graphics, its agents, employees, representatives, successors, and assigns and

those acting, or purporting to act, in privity or in concert with Matrox Graphics, be

preliminarily and permanently enjoined from further infringement of the '432 Patent;

O.  that Matrox Graphics account for and pay to Ricoh all damages under 35 U.S.C. § 284,

including enhanced damages, caused by the infringement of the '432 Patent, and attorneys'

fees pursuant to 35 U.S.C. § 285;

P.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to

it by reason of Matrox Graphics' infringement of the '432 Patent;

Q.  that Matrox Int'l has infringed the '432 Patent;

R.  that Matrox Int'l, its agents, employees, representatives, successors, and assigns and those

acting, or purporting to act, in privity or in concert with Matrox Int'l, be preliminarily and

permanently enjoined from further infringement of the '432 Patent;

S.  that Matrox Int'l account for and pay to Ricoh all damages under 35 U.S.C. § 284,

including enhanced damages, caused by the infringement of the '432 Patent, and attorneys'

fees pursuant to 35 U.S.C. § 285;

T.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to

it by reason of Matrox Int'l's infringement of the '432 Patent;

U.  that Matrox Tech has infringed the '432 Patent;

V.  that Matrox Tech, its agents, employees, representatives, successors, and assigns and

those acting, or purporting to act, in privity or in concert with Matrox Tech, be preliminarily

and permanently enjoined from further infringement of the '432 Patent;

W.  that Matrox Tech account for and pay to Ricoh all damages under 35 U.S.C. § 284,

including enhanced damages, caused by the infringement of the '432 Patent, and attorneys'

fees pursuant to 35 U.S.C. § 285;

X.  that Ricoh be granted pre-judgment and post-judgment interest on the damages caused to

it by reason of Matrox Tech's infringement of the '432 Patent;

Y.  that costs be awarded to Ricoh; and

Z.  that Ricoh be granted such other and further relief as the Court may deem just and proper

under the current circumstances.

AA.    that UTMC has infringed the '432 Patent;

BB. that UTMC, its agents, employees, representatives, successors, and assigns and those

acting, or purporting to act, in privity or in concert with UTMC, be preliminarily and

permanently enjoined from further infringement of the '432 Patent;

CC.    that UTMC account for and pay to Ricoh all damages under 35 U.S.C. § 284, including

enhanced damages, caused by the infringement of the '432 Patent, and attorneys' fees

pursuant to 35 U.S.C. § 285; and

DD.    that Ricoh be granted pre-judgment and post-judgment interest on the damages

caused to it by reason of UTMC's infringement of the '432 Patent.

Ricoh Company, Ltd.

By: _____
Jeffrey B. Demain (SBN 126715)
Jonathan Weissglass (SBN 185008)
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone:  (415) 421-7151
Fax:  (415) 362-8064

Gary M. Hoffman
Edward Meilman
Eric Oliver
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN &
OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Counsel for Plaintiff,
Ricoh Company.

1729704 v1; 112NC01!.DOC



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

CHRISTOPHER L. KELLEY
PARTNER
650.463.8113
kelleyc@howrey.com

February 17, 2004

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:     *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.*
          Case No. CV 03-04669 MJJ (MCC)

Dear Ed:

I have your letter to me dated February 12.

We are unable to stipulate to your amendment. For the reasons set out in our Motion on the Pleadings, Ricoh cannot make out an allegation under 35 U.S.C. section 271(g) in the present case. Your proposed amended complaint does nothing to correct this problem. Since the proposed amended complaint still contains the same infringement allegations under section 271(g) we cannot agree to your amendment.

In addition, Ricoh has provided no explanation as to why it delayed so long before seeking to add infringement allegations under provisions of section 271 other than subdivision (g). The Defendants made Ricoh aware of the problem that it faced in asserting infringement under 271(g) no later than last August. Without some explanation as to why amendment is appropriate or necessary at this late date, the Defendants cannot support your request to amend.

Finally, your proposed amendment seeks to add an entity that you identify as "Aeroflex UTMC." There is no existing corporate entity with that name that can be sued or served with process. Furthermore, there is no need to add a separate entity to get at activities conducted at Aeroflex's facility in Colorado Springs acquired from United Technologies (UTMC). That entity was acquired by Aeroflex and is now a subsidiary of Defendant Aeroflex, Inc.

Very truly yours,

Christopher L. Kelley

CLK:gg

cc:     Gary M. Hoffman



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:**  February 17, 2004

**TO:**

1. **NAME:** Edward A. Meilman     **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** New York, NY     **FAX #:** (212) 997-9880     **PHONE #:** (212) 835-1400

2. **NAME:** Gary M. Hoffman     **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** Washington, DC     **FAX #:** (202) 887-0689     **PHONE #:** (202) 785-9700

3. **NAME:**     **COMPANY:**
   **CITY:**     **FAX #:**     **PHONE #:**

4. **NAME:**     **COMPANY:**
   **CITY:**     **FAX #:**     **PHONE #:**

5. **NAME:**     **COMPANY:**
   **CITY:**     **FAX #:**     **PHONE #:**

**FROM:**     **NAME:**  Christopher L. Kelley

**DIRECT DIAL NUMBER:** (650) 463-8113     **USER ID:** 5172

**NUMBER OF PAGES, INCLUDING COVER:** 2     **CHARGE NUMBER:** 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL     ☐ OVERNIGHT DELIVERY     ☐ HAND DELIVERY     ☐ OTHER:

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Re:  Ricoh v. Aeroflex, et al.

PLEASE SEE ATTACHED CORRESPONDENCE DATED FEBRUARY 17, 2004

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

```
x   x   x   COMMUNICATION RESULT REPORT ( FEB. 17. 2004  5:45PM ) x   x   x

                                                         FAX HEADER 1:
                                                         FAX HEADER 2:

TRANSMITTED/STORED : FEB. 17. 2004  5:43PM
FILE MODE          OPTION              ADDRESS                    RESULT    PAGE
-------------------------------------------------------------------------------------
0751 MEMORY TX                     G3  :  DICKSTEIN SHAPIRO        OK        2/2



----------------------------------------------------------------------------------
REASON FOR ERROR
E-1) HANG UP OR LINE FAIL              E-2) BUSY
E-3) NO ANSWER                         E-4) NO FACSIMILE CONNECTION
E-5) MAIL SIZE OVER
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 ● FAX: 650.463.8400

**FACSIMILE COVER SHEET**

DATE: __February 17, 2004__

TO:
1. NAME: __Edward A. Mellman__     COMPANY: __Dickstein Shapiro, et al.__
   CITY: __New York, NY__   FAX #: __(212) 997-9880__   PHONE #: __(212) 835-1400__

2. NAME: __Gary M. Hoffman__     COMPANY: __Dickstein Shapiro, et al.__
   CITY: __Washington, DC__   FAX #: __(202) 887-0689__   PHONE #: __(202) 785-9700__

3. NAME: _____     COMPANY: _____
   CITY: _____   FAX #: _____   PHONE #: _____

4. NAME: _____     COMPANY: _____
   CITY: _____   FAX #: _____   PHONE #: _____

5. NAME: _____     COMPANY: _____
   CITY: _____   FAX #: _____   PHONE #: _____

FROM:  NAME: __Christopher L. Kelley__

DIRECT DIAL NUMBER: __(650) 463-8113__     USER ID: __5172__

NUMBER OF PAGES, INCLUDING COVER: __2__     CHARGE NUMBER: __06816.0060.000000__

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER: _____

☐ ORIGINAL WILL NOT FOLLOW

SUPPLEMENTAL MESSAGE:

Re: Ricoh v. Aeroflex, et al.

PLEASE SEE ATTACHED CORRESPONDENCE DATED FEBRUARY 17, 2004

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

```
*  *  *   COMMUNICATION RESULT REPORT ( FEB. 18. 2004  9:41AM )  *  *  *
```

FAX HEADER 1:
FAX HEADER 2:

```
TRANSMITTED/STORED : FEB. 18. 2004  9:39AM
FILE MODE      OPTION              ADDRESS                    RESULT    PAGE
--------------------------------------------------------------------------------
0758 MEMORY TX                     G3   :Dickstein Shapiro DC   OK        2/2
```

```
--------------------------------------------------------------------------------
REASON FOR ERROR
E-1) HANG UP OR LINE FAIL              E-2) BUSY
E-3) NO ANSWER                         E-4) NO FACSIMILE CONNECTION
E-5) MAIL SIZE OVER
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • Fax: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** February 17, 2004

**TO:**

1. **NAME:** Edward A. Mellman  **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** New York, NY  **FAX #:** (212) 997-9880  **PHONE #:** (212) 835-1400

2. **NAME:** Gary M. Hoffman  **COMPANY:** Dickstein Shapiro, et al.
   **CITY:** Washington, DC  **FAX #:** (202) 887-0689  **PHONE #:** (202) 785-9700

3. **NAME:** _____  **COMPANY:** _____
   **CITY:** _____  **FAX #:** _____  **PHONE #:** _____

4. **NAME:** _____  **COMPANY:** _____
   **CITY:** _____  **FAX #:** _____  **PHONE #:** _____

5. **NAME:** _____  **COMPANY:** _____
   **CITY:** _____  **FAX #:** _____  **PHONE #:** _____

**FROM:**  **NAME:** Christopher L. Kelley

**DIRECT DIAL NUMBER:** (650) 463-8113  **USER ID:** 5172

**NUMBER OF PAGES, INCLUDING COVER:** 2  **CHARGE NUMBER:** 06816.0060.000000

☒ **ORIGINAL WILL FOLLOW VIA:**

☒ REGULAR MAIL  ☐ OVERNIGHT DELIVERY  ☐ HAND DELIVERY  ☐ OTHER: _____

☐ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

Re:  Ricoh v. Aeroflex, et al.

PLEASE SEE ATTACHED CORRESPONDENCE DATED FEBRUARY 17, 2004

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

FILED    E-filing

DEC 1 1 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICOH COMPANY, LTD.,

       Plaintiff,

v.

AEROFLEX INC., et al.,

       Defendants.

No.  C 03-4669 MJJ

**ORDER <u>DENYING</u> DEFENDANTS'
MOTION FOR STAY AND <u>DENYING</u>
PLAINTIFF'S MOTION FOR
CONSOLIDATION**

Having read and considered the briefing and oral argument with respect to Defendants'

motion to stay this action pending the outcome in the related case of *Synopsis v. Ricoh*, 03-2289-

MJJ, the Court hereby **DENIES** Defendants' motion.  As expressed by the Court at oral argument,

the Court finds that there is an inadequate basis to conclude that the overlap in infringement issues in

the two cases is so substantial as to render the case within the customer suit exception to the first-to-

file rule.  Rather, on the limited record before the Court it appears Ricoh has a "separate interest" in

litigating against Defendants in the first-filed action.  *See, e.g., American Academy of Science v.*

*Novell, Inc.*, 24 U.S.P.Q.2d 1386, *7 (N.D. Cal. 1992); *A.P.T., Inc. v. Quad Environmental*

*Technologies Corp.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988).  Accordingly, it would be inappropriate

///

///

///

United States District Court

For the Northern District of California

1  to stay the case at this time. *See Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal.

2  1997) (discussing factors court considers in deciding whether to grant stay).

3       Likewise, Plaintiff's motion to consolidate is **DENIED** as premature.

4

5  **IT IS SO ORDERED.**

6

7  Dated: December 11, 2003

8       MARTIN J. JENKINS
        UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1  Pages 1-36

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4          BEFORE THE HONORABLE MARTIN J. JENKINS, JUDGE

5  RICOH COMPANY, LTD.,

6                    Plaintiff,

7  vs                              Case No. C-03-4669 MJJ

8  AEROFLEX INCORPORATED, AMI
   SEMICONDUCTOR, INC., MATROX
9  ELECTRONIC SYSTEMS, LTD.,
   MATROX GRAPHICS, INC., MATROX
10 INTERNATIONAL CORP., and
   MATROX TECH, INC.,

11

                    Defendants.
12                                      /

13

               REPORTER'S TRANSCRIPT OF PROCEEDINGS
14

            TUESDAY, DECEMBER 9, 2003 - 10:13 A.M.
15

16 APPEARANCES:

17 For the Plaintiff:      DICKSTEIN, SHAPIRO MORIN & OSHINKSY
                           2101 L Street NW
18                         Washington, DC 20037-1526
                           202 429-2184
19                         BY:  KENNETH W. BROTHERS
                                Attorney at Law
20

              - appearances continued next page -
21

22 Reported by:           JEANNE BISHOP, California CSR 2421
                          450 Golden Gate Avenue, 16-6780
23                        San Francisco, California 94102
                          415 487-1754
24       (Proceedings recorded by mechanical stenography,
   transcript produced by realtime computer translation.)
25

2

```
 1  APPEARANCES:

 2  For the Plaintiff:      ALTSHULER, BERZON, NUSSBAUM,
                            RUBIN & DEMAIN
 3                          177 Post Street, Suite 300
                            San Francisco, California 94108
 4                          415 421-7151
                            BY:  JONATHAN WEISSGLASS
 5                               Attorney at Law

 6
    For the Defendant:      HOWREY SIMON ARNOLD & WHITE
 7                          301 Ravenswood Avenue
                            Menlo Park, California 94025-3434
 8                          650 463-8100
                            BY:  THOMAS C. MAVRAKAKIS
 9                               ERIK K. MOLLER
                                 Attorneys at Law
10

11

12  Also present:           ERIK OLIVER
                            Senior IP Counsel
13                          TED W. CHAN
                            Senior Director, IP
14                          Synopsys, Incorporated
                            700 East Middlefield Road
15                          Mountain View, California 94043

16

17

18

19

20

21

22

23

24

25
```

3

| 1 | TUESDAY, DECEMBER 9, 2003 | 10:13 A.M. |

1    TUESDAY, DECEMBER 9, 2003             10:13 A.M.

2                     PROCEEDINGS

3         THE CLERK:  Civil matter No. 03-4669, Ricoh Company

4   versus Aeroflex, Incorporated.

5         Please state your appearance.

6         MR. MAVRAKAKIS:  Good morning, Your Honor.

7         Tom Mavrakakis on behalf of the defendants.  With

8   me, I have Erik Moller.

9         And also in the courtroom are Erik Oliver and Ted

10  Chan from Synopsys.

11        MR. BROTHERS:  Good morning.

12        Ken Brothers with Dickstein, Shapiro, Morin &

13  Oshinsky.

14        With me is John Weissglass --

15        THE COURT:  You can continue.  Go ahead.

16        MR. BROTHERS:  With me is John Weissglass of the

17  Altshuler Berzon firm.

18        THE COURT:  Okay.  The motion that the Court has

19  before it was the initially -- Synopsys's motion for a stay

20  and the rejoinder -- that was also a motion -- I believe

21  that's right -- is that right?

22        MR. MAVRAKAKIS:  Actually, it's the defendant's

23  motion to --

24        THE COURT:  Excuse me.  The defendant.

25        MR. MAVRAKAKIS:  Aeroflex.

4

1              THE COURT:  -- Aeroflex.  Sorry --

2              And then there's a motion to consolidate that came

3    in the context of the briefing on this question.

4              Let me tell you why I brought you in.

5              There are some shifting sands here that don't make

6    good sense to me, to be quite honest with you.

7              I should start by saying that I'm -- I'm -- I'm

8    concerned about what really are the operative underlying

9    facts that support the action against the -- I'll say

10   Aeroflex defendants and how those are -- notwithstanding the

11   fact that it involves at least Claim 13 -- claims of

12   process -- how those are distinctly different than what may

13   give rise to a -- the infringement issues that are involved

14   in the Synopsys/Ricoh action.

15             There is a dispute in this record as to whether

16   there is an infringement claim involved in this action.

17             It seems to me that there is, that they do allege

18   and seek a declaration of non-infringement and patent

19   invalidity.

20             Now, I don't know what facts embolden that request

21   for injunctive relief.

22             But I disagree -- I don't think that I can read and

23   do read cases like ATP versus QuadComm (phonetic) to set

24   forth a general proposition with respect to patents that

25   claim a process -- it strikes me that that's not the

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

5

1    brightline rule that I would derive from those cases.

2            Looking at the issue in total fashion from the

3    first-to-file rule to the exceptions that get postulated, it

4    strikes me that that's the context in which I read these

5    cases.  And that reads on then the standards that obtain to

6    request for a stay and whether or not the Court should

7    exercise its inherent discretion to grant a stay.

8            And so, it does strike me -- we could talk a little

9    bit about -- a lot about whether or not these defendants

10   agree to be bound by any judgment that would be made in the

11   Synopsys/Ricoh action with respect to any and all ways that

12   there might be infringement derived from the Design Compiler

13   here.

14           But it strikes me that where the rubber really meets

15   the road is, how different are the two actions?  What is in

16   play factually with respect to the liability question?

17           The Court can always tier in the issues of damages

18   at a certain point, but what economies of scale are there

19   really in a way that is non-prejudicial?  What economies of

20   scale would there be in staying the one action versus the

21   other?

22           And that strikes me that puts us right on what's

23   going to be litigated in those two actions.

24           And that's not clear to me at all.  That's why --

25   that's the point I made about the shifting sands concerns,

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

6

1    because it's not clear to me what the interface is between

2    the actions that are taken by the ASIC defendants relative to

3    the use of the Design Compiler and how that's different than

4    the allegations of infringement that involve Synopsys.

5         MR. BROTHERS:  Your Honor, if I could respond?

6         The issue with respect to -- first, let me address

7    in general the legal standards that I think there should be

8    some consensus.

9         Now, both sides have cited the Rivers versus Disney

10   three-part test for granting a stay, but as Your Honor noted,

11   there is the patent overlay.

12        And I think the standards as set for forth in the

13   Kahn case clearly articulate the Federal Circuit's rule with

14   respect to stays.

15        Our point in citing the process patent cases was to

16   point out that this case -- this claim, involves in Claim 13,

17   a process patent.

18        And the defendants have not cited any cases which

19   involve a process patent where a stay has been granted, and

20   that's because in the use of process patents it is the entity

21   who is actually performing the process at issue that is the

22   direct infringer.

23        For example, in --

24        THE COURT:  But that's clear to me upon reading the

25   cases.  I -- look -- that the rights extend only to the

7

1  process and not the patent is the point that you make from --

2  from those cases.

3        But it strikes me that theoretically --

4  theoretically, if, in fact, factually in terms of how the

5  patent is infringed, if there is no distinction between the

6  two, why wouldn't it then be the rule that the exception

7  could apply?

8        MR. BROTHERS:  Well, the issue is, are there claims

9  of infringement in the Synopsys versus Ricoh action?

10        The short answer is, no.

11        There is a claim of non-infringement.  Now, the

12  Synopsys complaint, paragraph 18, states, "There are no

13  Synopsys products whatsoever that infringe the '432 patent."

14        In order to have a hearing on non-infringement as

15  pled, every Synopsys product will need to be compared to the

16  '432 patent.

17        By contrast, Ricoh's claims against the ASIC

18  defendants put at issue their specific use of a process which

19  includes the use of Design Compiler, but as stated in

20  Claim 13, there are additional steps --

21        THE COURT:  What -- what are they?

22        MR. BROTHERS:  Well, how much time do we have?

23        I can give you some examples.

24        For example, in Clause 2 of Claim 13 it recites a

25  set of definitions of an architecture-independent action and

8

1    condition to be used.  And the infringing element is when the

2    ASIC designers and not Synopsys select what's called a

3    "synthetic operator," which is a form of, we contend, an

4    architecture-independent action and condition, those

5    synthetic operators can be outside products.  They can be

6    products that are made by Synopsys separate from Design

7    Compiler, such as the HDL compiler family of products.

8           There's the VHDL compiler.  There is the HDL

9    compiler for Verilog.

10          THE COURT:  What does it do?  Does it allow the

11   software program to -- once that synthetic operator selector

12   is chosen to then -- then design an integrated circuit?  What

13   does it actually do?

14          MR. BROTHERS:  Let me contrast it.  It is a process

15   by which the input descriptions -- the description of what

16   the ASIC is ultimately going to do -- how those

17   specifications are established.

18          Now, Design Compiler can accept other types of

19   inputs that are not architecture-independent actions and

20   conditions.

21          For example, there's something called a "netlist."

22          A netlist we do not believe is an

23   architecture-independent action and condition.

24          THE COURT:  So, is that -- is that the category

25   of -- of selection or action that in -- when utilized with

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

9

1   Design Compiler constitutes -- or reads on the process claim

2   that you assert --

3         MR. BROTHERS:  Oh, it is -- oh, it is when --

4         THE COURT:  Are there others?

5         MR. BROTHERS:  Well, I -- I'm sorry --

6         THE COURT:  Are there other --

7         MR. BROTHERS:  Well, let --

8         THE COURT:  -- independent architectural --

9   independent actors that can also suffice to -- when utilized

10  and selected by the ASIC defendants also work with Design

11  Compiler to constitute infringement?

12        MR. BROTHERS:  Well, it -- to be certain this is

13  going to turn ultimately on the Markman construction of what

14  architecture-independent action and condition comprises.

15        We believe that a netlist does not constitute

16  something that falls within Claim 2 of the patent.

17        There are others.

18        For example, something called a "structure RTL,"

19  which is a Register Transfer Level.

20        We do not believe that that is an

21  architecture-independent action and condition.

22        So, if the ASIC defendants elected to use either a

23  netlist or structural RTL in their design of what goes into

24  these ASICs, they are not violating the patent.

25        They are using Design Compiler, but because they,

1    the ASIC defendants --

2            THE COURT:  Well, let me just stop right there.

3            MR. BROTHERS:  Sure.

4            THE COURT:  Let me -- let me have a sense of -- of

5    how you view the non-infringement action and what may be in

6    play there.

7            MR. MAVRAKAKIS:  Sure.  The non-infringement

8    declaratory judgment action, Your Honor, was based on the

9    suit that was brought in Delaware and the letters that were

10   sent to Synopsys's customers here in California.

11           And if you look at those letters, and what's at

12   issue in the Delaware action, what we have here is a claim

13   for non-infringement of its logic synthesis products.

14           Now, if you go to the web site you'll see that there

15   are only a few.

16           But clearly, in the context of looking at the

17   letters and the controversy before this Court, the only thing

18   implicated is Design Compiler and the products that are used

19   with it.

20           Now, my colleague here mentioned HDL

21           THE COURT:  He disputes that in part based on a

22   construction that he is hoping to obtain from the Court with

23   respect to the elements of the -- of the patent.

24           MR. MAVRAKAKIS:  Well, let me just explain that, the

25   technical part, for you -- for you a little bit.


JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1        HDL compiler gets sold with Design Compiler.  It's a

2    necessary part of Design Compiler.  Really, what he's saying

3    is that there are four potential inputs to Design Compiler,

4    and three of them can infringe.

5        Well, if the fourth input cannot be capable of

6    infringing, then the issue is resolved.

7        I mean, the customers don't get the source code.

8    They can't change the capabilities of the Design Compiler.

9        Either it's capable of infringing or it's not

10   capable of infringing.  Additional steps are not going to

11   make it infringing.

12       And if you look here at the record, we asked these

13   questions, Your Honor --

14       THE COURT:  Yeah.  I -- I read that.

15       MR. MAVRAKAKIS:  Okay.

16       THE COURT:  That's part of the shifting sands.

17   Really, what it comes down to, is understanding the

18   technology.

19       MR. MAVRAKAKIS:  I was just going to address those

20   specific process steps, and specifically, in their

21   interrogatory response, they say, those process steps are

22   performed by the defendants using Design Compiler.

23       And that's Moller Exhibit C.

24       MR. BROTHERS:  Your Honor, there's no question that

25   Design Compiler is -- provides the framework for the -- what

1    we contend are the independent actions by the ASIC defendants

2    in infringing.

3             It is similar to --

4             THE COURT:  Are you -- are you -- would you be

5    precluded now -- that's a very broad term, because it strikes

6    me that there -- there will be issues of discovery --

7    obtaining some backdrop as to how these

8    architectural-independent actors are selected, that then will

9    come into play to determine post-claims construction whether

10   or not there is infringement or not.

11            Why isn't that all viable if it's -- with respect to

12   the -- as a matter of liability and invalidity, why isn't

13   that all viable in the Synopsys/Ricoh action?

14            MR. BROTHERS:  There are three reasons, Your Honor.

15            First, because the ASIC defendants cannot be held

16   liable for infringement in a D.J. action.

17            All of the same issues are going to be in play.  As

18   Your Honor has pointed out, there will be discovery of the

19   ASIC defendants in the D.J. action, because, as pled by

20   Synopsys, all of their products -- it's not limited, as

21   counsel has stated in paragraph 18 -- it's -- all of their

22   products are placed at issue.

23            Now, they may seek to narrow that at some point.

24            Whereas, by contrast, we have claims against six

25   specific ASIC defendants.  And the issue will be much

1  narrower and much tighter focus on what these six ASIC

2  defendants do, as opposed to any potential use.

3          THE COURT:  But there is overlap.

4          MR. BROTHERS:  Sorry?

5          THE COURT:  There is overlap, right?

6          MR. BROTHERS:  Oh, there is -- sure.  There is

7  overlap, which is why we contend that the issues ought -- the

8  two cases should be joined for consolidation.

9          Your Honor saw that when the ASIC defendants moved

10  for a stay in Delaware, or in the alternative for a transfer,

11  they repeatedly said, "If the Delaware court doesn't stay it,

12  transfer it here for consolidation."  And that's what we

13  think the logical process should be.

14          I should note that in Delaware the parties

15  identified a trial to take ten trial days.

16          In the proposed case management order here, the

17  Synopsys case, the parties agreed on eight trial days.  So,

18  there's a two-day difference.  And we think since there is

19  substantial overlap, that two-day difference is attributable

20  to damages.

21          There is -- since there's going to be discovery of

22  the ASIC defendants in the declaratory judgment action, it

23  makes sense to proceed with consolidated action in which

24  Ricoh presents its claims of infringement, and then the

25  defendants proceed with either their claims of

1    non-infringement or trying to invalidate the patent.

2         THE COURT:  Let me ask you, do the ASIC defendants

3    have a -- since it looks to me like -- in terms of

4    representations of one of half -- it's both, do the ASIC

5    defendants have a different view of the claims construction

6    issues than Synopsys, so that, for instance, if this Court

7    issues a claim construction order -- if it were to grant your

8    motion for a stay, would it then -- because it's not going to

9    completely resolve the liability questions; there are still

10   some issues that may have to be resolved -- particularly with

11   respect to -- to the damages, and there may even be

12   infringement issues that have to be resolved -- would the

13   ASIC defendants be standing before this Court saying that

14   this Court needs to conduct claims construction anew?

15        MR. MAVRAKAKIS:  No, because the ASIC defendants

16   have said that they are willing to be bound -- and they will

17   be judicially estopped.  They are represented by the same

18   counsel.

19        They don't add anything to the process that this

20   Court's going to go through under the local rules, all the

21   way up through claim construction, and at that point both the

22   ASIC defendants and Synopsys think that this case is going to

23   be ripe for summary judgment on the issues of infringement

24   and validity, if not both.

25        Now, so, of course, the -- being willing to -- when

1  we get to the end of the Synopsys declaratory judgment

2  action, should you stay the case against these defendants,

3  defendants will be bound by the validity determination,

4  because they are represented by the same counsel which -- we

5  are going to bring up the same prior art, Your Honor.  We are

6  going to file the same invalidity contentions on behalf of

7  the ASIC defendants and Synopsys.

8          That's why the ASIC defendants in considering

9  whether they were going to agree to be bound, they had to

10  think about it, and before I could make that statement in my

11  brief I had to -- you know, to discuss it with my clients and

12  make them understand that they are giving up something.  They

13  are not -- they wouldn't be parties to this Synopsys action,

14  but really, they are just giving up that argument that they

15  won't be bound, because they are not parties, and they are

16  willing to bound by the validity issues.

17          So, if Ricoh prevails on validity, then they will be

18  bound by this determination.

19          If Synopsys prevails, obviously the case is over

20  under the Supreme Court's decision in --

21          THE COURT:  But it might --

22          MR. MAVRAKAKIS:  -- on infringement, if the Court

23  determines that --

24          THE COURT:  -- not be.  What if there -- what if

25  there are independent architectural design selections that

1   are not in play -- not in play in the Synopsys/Ricoh suit?

2   Then the Court would have to deal with those; wouldn't it?

3           MR. MAVRAKAKIS:  Well, Your Honor --

4           THE COURT:  I am not saying that it's not an economy

5   of scale savings if I stay the action.  I am just saying,

6   isn't that a fact?

7           MR. MAVRAKAKIS:  It depends on --

8           THE COURT:  We are talking about the situation now

9   where the patent has been held valid or not, or that hasn't

10  been proved to be invalid, and that the ordinary use of

11  Design Compiler does not infringe, right?

12          If that infringement is based on some of the steps

13  that he is not pointing out -- in other words, some of the

14  steps four, five and six, or I think five and six -- if

15  Design Compiler is incapable of performing those steps, it

16  doesn't matter what the additional acts are.  There won't be

17  any infringement.

18          Now, is there some small possibility that with

19  respect to the input portion that the defendants use some

20  other software that may -- you know, create an additional

21  infringement issue?  Yes.

22          But if you narrow it down, you see here it's -- it's

23  a very slim possibility.  And are you willing to make

24  discovery of -- give discovery by the ASIC defendants, even

25  if the Court stayed this action in the Ricoh versus Synopsys

1  action?

2        MR. MAVRAKAKIS:  Well, I was going to address that

3  issue.

4        I think that Synopsys has a whole applications

5  group, and the issue here with respect to the -- to these

6  defendants is the ordinary use of Synopsys's Design Compiler.

7        And they don't have any basis for saying that there

8  is anything else.  There's none in the deposition that we

9  took of Mr. Ishijima.  There's none in their interrogatory

10  responses.  So, we are really talking about a fishing

11  expedition.  And the threshold issue --

12        THE COURT:  Well, now you are arguing your discovery

13  motion.

14        MR. MAVRAKAKIS:  Hmm?

15        THE COURT:  Now you are arguing your discovery

16  motion.

17        MR. MAVRAKAKIS:  Right.  And when -- what I -- what

18  I -- and I don't want to get off on a tangent here, Your

19  Honor.  But what I'm saying, really the threshold issue is

20  whether Design Compiler can infringe.

21        And for most of the case -- most of the iterations

22  of possibilities here, that's going to resolve the case.

23        Now, if the ordinary use of Design Compiler is found

24  to infringe -- I mean, this is 20 percent of Synopsys's

25  revenue -- they are not going to let their customers hang out

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1  to dry.  They are going to have to find some resolution with

2  Kieko (phonetic).

3           THE COURT:  That's your licensing --

4           MR. MAVRAKAKIS:  Right.

5           THE COURT:  -- component?

6           MR. BROTHERS:  Your Honor, I smile, because when --

7  my -- my -- my friend here says that the issue is whether

8  Design Compiler infringes, that's the issue in this case,

9  that's the issue that Ricoh is alleging against the ASIC

10 defendants.

11          And under -- under Ricoh's theory, each of the

12 steps -- each of the claims is set forth in Claim 3 at

13 significant points.  We believe that those are independent

14 actions.

15          Now, I gave you an example of Claim 2.  I can give

16 you more examples from -- Claims 3, there was reference to

17 whether the specific compiler, the VEL compiler, was shipped

18 with Design Compiler.

19          It is shipped; but again, it is the option of the

20 defendants, the ASIC defendants.

21          THE COURT:  So, you don't disagree, though.  Those

22 products go in tandem.

23          MR. BROTHERS:  Well, sure.  They are both Synopsys

24 products.  I -- I understand that.  Let me give you an

25 example with respect to Claim 3, which is storing data,

1 designing a set of available integrated circuit hardware

2 sales for performing -- performing actions in additions

3 stored.

4          There is the option to store this.  Libraries can be

5 used.  They can have the choice to use Synopsys's libraries

6 or they can use libraries that are made and produced by third

7 parties.  For example, the foundries, the -- the places that

8 actually make these computer chips, frequently have their

9 own libraries.

10          And from the information -- limited information --

11 because we have been stonewalled on discovery by the ASIC

12 defendants -- the limited information we have, we believe

13 these foundries make these libraries readily available.

14          In fact, we have information that some of the ASIC

15 defendants -- I believe it's AMIS -- has created its

16 own libraries and then provides them to Synopsys for

17 distribution to other customers of Synopsys.

18          But they are -- my point is that there are a number

19 of  libraries that can be used that are not specific to

20 Design Compiler, some of which may, may not, be -- constitute

21 infringement; others which may.

22          Now, we don't -- we haven't been able to get access

23 to any of that information, as the Court has seen in the

24 discovery motions.

25          My underlying point, however, is --

1          THE COURT:  It moves us -- you know, it moves us

2    off, I think, the more central point, which is, as you filed

3    this action how you envision infringement occurring.  And

4    that strikes me that it's more consistent with the universe

5    of -- of products -- some of which are mailed or used in

6    tandem, some of which may -- not all of which implicate a

7    process for use with the Design Compiler --

8          MR. BROTHERS:  That process --

9          THE COURT:  -- and --

10         MR. BROTHERS:  -- Focuses on --

11         THE COURT:  -- and some of which may not actually

12   infringe.

13         MR. BROTHERS:  That's right.

14         And that's -- the process has to focus in on what

15   the ASIC defendants do.

16         It is theoretically possible in the declaratory

17   judgment action to have a declaratory judgment finding that

18   there are some uses of Design Compiler that do not infringe

19   the '432 patent.

20         And there are some uses of Design Compiler that do

21   infringe the '432 patent.

22         THE COURT:  That's going to take us a long way

23   toward discerning the liability of the ASIC defendants; isn't

24   it?

25         MR. BROTHERS:  No.  Because the -- the question of

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1   whether the ASIC defendants infringe the '432 patent turn on

2   what they specifically do.

3          I can stand here right now and tell you there are

4   uses of Design Compiler that do not infringe the '432 patent,

5   and there are those that we believe do.

6          Now, I -- I am prepared to address the ASIC

7   defendants' contentions of what was said or not said at the

8   Ishijima deposition and what was not --

9          THE COURT:  I don't think that resolves it.  One of

10  the things -- to be quite candid -- that I was thinking about

11  last night as I read through this is that some of this is a

12  question of what discovery may disclose.

13         MR. BROTHERS:  That's right.

14         THE COURT:  And I have real concerns, to be quite

15  honest with you, with -- with making a determination that

16  would stay the action at this juncture without knowing that

17  and being able to -- in my view, read on discovery on the

18  issues of -- of -- of prejudice and -- and hardship.

19         Those factors in the context of the cases that --

20  that talk about -- and make a distinction on those facts with

21  respect to process patents.

22         I don't read the cases as -- as broadly as you do.

23         I do think it's a fairly fact-specific

24  determination.

25         But quite candidly, I don't know that I really

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

22

1    comprehend the burgeoning factual scenarios that may occur

2    sufficiently to make that determination at this juncture.

3         My inclination is to deny the motion.

4         You do have a discovery issue that I know that

5    Synopsys believes that there may be some real -- it may be

6    very burdensome to comply with, amongst other objections that

7    you have.

8         But it strikes me that -- that the better way to

9    deal with this is -- is for me to keep those issues,

10   streamline this, make that determination -- I can deal with

11   that scope issue as a matter of discovery, see where we are

12   with respect to setting up the claims constructions issues;

13   which you -- you'll -- you'll discern that I actually allow

14   discovery pretty much solely related to claims construction,

15   and then broader discovery on the back end once you know how

16   I actually have interpreted the elements of the claim.

17        That strikes me as probably a better point at which

18   to -- notwithstanding what -- what the Judge did in Delaware

19   or what I said here, I don't know that those issues have --

20   in either the motion to dismiss that you put before me or in

21   the motion to transfer are dispositively decided.

22        So, it strikes me that that may be a better way to

23   deal with the question.  And it may be at that juncture, once

24   I have settled some of the issues in claims construction, to

25   see exactly where we are.


JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1          A stay may not make much sense then; consolidation

2    may make good sense then.

3          It may be that I can see my way through the issues

4    with respect to the liability of the ASIC defendants at that

5    juncture where it doesn't make sense now.

6          Let's brief up the motion for summary judgment.

7    Discovery has put into play what is really going to be at

8    issue from the Court's resolution of that motion.

9          You can look through to see potentially what the

10   liability of the ASIC defendants might be in the case, and it

11   will resolve based on some economy of scale, even though both

12   actions have proceeded parallel.

13         MR. MAVRAKAKIS:  I have a question, Your Honor.

14         Just so I understand what -- what Your Honor's

15   saying how would proceed; are you saying that we would

16   proceed with limited discovery just to get up to the claim

17   construction?

18         THE COURT:  I normally just allow discovery on

19   claims construction issues.

20         MR. MAVRAKAKIS:  Because really, that's -- that's --

21   that's our hardship here because --

22         THE COURT:  I know that.  That's why I spoke to

23   that.

24         MR. MAVRAKAKIS:  Right.

25         So, I mean, if -- if the ASIC defendants are not

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1  going to have to participate in the broad overreaching

2  discovery that we don't believe is necessary --

3         THE COURT:  Well, I don't know that.  I don't know

4  that, because I'm -- my inclination is not to stay this

5  action, but it -- it is to have a view toward discovery that

6  focuses on claim construction.

7         You tell me that's a hardship.

8         Now, you know, I can't weigh -- until I actually get

9  in and see what you're talking about --

10         MR. MAVRAKAKIS:  But --

11         THE COURT:  -- I've gotten a view -- they want to

12  conduct some pretty broad-based discovery with respect to

13  choices that are made and mechanisms utilized.

14         MR. MAVRAKAKIS:  Could I try and explain why I don't

15  think that's at all necessary in this action, Your Honor?

16         Again, and this -- this tells you why this case is

17  very different from the process cases they are relying on.

18         Here, we have source code that is used on a

19  computer -- on computers to perform the method.

20         So, yes, there are input -- obviously, inputs need

21  to be given to the process.  But the process and the

22  capabilities of the software and whether it performs those

23  steps is set in stone in the source code.

24         THE COURT:  Umm-hmm.

25         MR. MAVRAKAKIS:  -- in other words, so, --

1           THE COURT:  Which is confidential --

2           MR. MAVRAKAKIS:  Right.  Highly confidential.  It's

3    the crown jewels of the company.

4           Synopsys is a software company.  And its source code

5    is its most important asset.

6           Now -- so, if that source code -- if the process

7    that --

8           THE COURT:  Is it triggered by the input?  Does the

9    operation of the source code relative to the input --

10   ultimately relates in -- results in -- in what the Design

11   Compiler helps to design?  That is, the ultimate, I suspect,

12   integrated circuit, whatever it does, is that triggered by

13   the input?

14          Is it affected by the input?

15          MR. MAVRAKAKIS:  No.  Synopsys's Design Compiler,

16   for instance, can accept four types of input.  And if all

17   four types of those inputs cannot be considered, you know,

18   actions and conditions as recited by the claim, then the

19   defendants then -- then the ASIC defendants don't infringe.

20          And again --

21          THE COURT:  As -- from -- from that point to the use

22   of -- I think you said by other foundries that have other

23   design input selections that can be utilized --

24          MR. MAVRAKAKIS:  Well, that's the data from which

25   the -- the process draws from in order to make the design.


JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1          Now, if -- the data is not used --

2          THE COURT:  But that's the -- the -- does the

3     discovery fight on the discovery motion -- isn't it -- isn't

4     that the fight in the discovery motion?

5          MR. MAVRAKAKIS:  Well, the -- the particular

6     discovery on that motion, I'm not sure.

7          THE COURT:  Well, ultimate --

8          MR. MAVRAKAKIS:  Ultimately.

9          THE COURT:  -- that's where the hardship will come

10    from.

11         MR. MAVRAKAKIS:  Right.  That's the hardship, in

12    having to do all this discovery, which really doesn't matter,

13    because in the end, source code -- Synopsys's source code

14    sets the process for how those foundry databases, in a sense,

15    are used.

16         THE COURT:  And absent the provision of that

17    discovery, you wouldn't be making a motion for a stay, right?

18         MR. MAVRAKAKIS:  You mean, the discovery on the

19    specifics of what the ASIC defendants do?  Yes.  The hardship

20    that I'm relying here -- on here is for -- the ASIC

21    defendants is the fact that they have to participate in a

22    case with broad discovery, and they don't add anything to it.

23         Synopsys and Ricoh can go through the local rules,

24    same counsel as ASIC defendants, and after claim construction

25    is done this, case will be ripe for summary judgment motions

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1    on both the issues of infringement and validity.

2          And then, in the very small possibility that there

3    is some other act that defendants might make can be relevant,

4    that could be tried at that time.

5          That's a very small possibility.

6          And the reason for it, if I take you through -- you

7    know, if you go through the flow chart, could get there,

8    first you have to find the patent's valid.  Then you have to

9    find that Design Compiler doesn't infringe or a reason for

10   which these additional steps can bring it into infringement.

11         Now, if you find Design Compiler's ordinary use

12   doesn't infringe because of some of the steps that they can't

13   change, then that's the end of the case.

14         Now, if you find that Design Compiler infringes in

15   its ordinary use, then Synopsys is going to have to make some

16   deal with Ricoh.

17         In any case, these defendants will be saved the

18   hardship of going through discovery.

19         Now, my colleague here says that, "Well, it doesn't

20   matter, if Synopsys is paying the bill."

21         But it does matter.  These are small companies.

22         And we believe that's why they were sued.

23         These companies will be disrupted.  They'll have to

24   produce documents.  They'll have to respond to

25   interrogatories, which requires their time, you know, very --

1  of executives and their in-house counsel.  They'll he have to

2  provide -- you know --

3       THE COURT:  I --

4       MR. MAVRAKAKIS:  -- people for deposition.

5       THE COURT:  Okay.

6       MR. BROTHERS:  Your Honor --

7       THE COURT:  Last point.

8       MR. BROTHERS:  Okay.

9       THE COURT:  I am going to rule.

10       MR. BROTHERS:  We have to re-argue -- counsel has

11  just reargued the reasons why there should be a stay.

12       Your questions with respect to source code, though,

13  seem to me to focus on the infringement allegations here.

14  The source code is the parameters of what the Design Compiler

15  does.

16       The patent does not allege -- the '432 patent,

17  Ricoh's allegations, does not allege that the source code

18  standing alone fringes the '432 patent.

19       It requires the independent inputs.

20       Now, the -- the argument that how this case --

21       THE COURT:  And he argues that the independent

22  inputs are, in some respects, a function of the relationship

23  to the source code itself; and there may be some other

24  independent selections that could be found to be

25  non-infringing and some that may be found to be infringing.

1      But the resolution of those issues in the

2   Synopsys/Ricoh case will take us a great way toward

3   discerning whether or not there needs to be some independent

4   litigation on ones that have not been construed and

5   determined as a matter of Rule 56 in Synopsys/Ricoh action.

6      MR. BROTHERS:  As defendants have conceded -- this

7   is on, I think, page 7 of their reply brief, there will be a

8   trial on infringement -- with -- in this action if the stay

9   is granted.

10      What these defendants are trying to do is turn the

11   process on its head and say, "Well, let's just have -- a

12   trial on the affirmative defense of invalidity first, and

13   then this general issue as to -- there is just possible

14   infringing use of Design Compiler, when, as we've already

15   discussed, there may be; there may not be."

16      I would reference Your Honor to American Academy of

17   Sciences versus Novell, case of out of this district in 1992;

18   similar case; a software in which input was being provided by

19   the banks.  And it was consented that that input constituted

20   infringement, and Novell, the maker of the software, said,

21   "No, you ought to stay that part of the case and transfer it

22   over to Utah where there's declaratory action judgment

23   proceeding."

24      And the Court said, "No.  It should stay here,

25   because the direct infringement claims are against Bank of

30

1    America and the other banks" -- banks that were at issue.

2           Here, we have both cases consolidated in the same

3    court, and it seems to me --

4           THE COURT:  Yeah.  Both cases existing in the same

5    court.

6           MR. BROTHERS:  Sure.  Sure.

7           THE COURT:  You haven't --

8           MR. BROTHERS:  I'm sorry.

9           -- both cases existing in the same court.  You have

10   our motion for consolidation.

11          Your Honor --

12          THE COURT:  Well --

13          MR. BROTHERS:  -- made a couple of references -- if

14   I can just ask for clarification.

15          When Your Honor was saying you were inclined to deny

16   the stay motion to streamline discovery, there is currently

17   scheduled, I think, the case management conference for

18   February 10th.  We have asked to move that up.  Counsel

19   has informed us that they are available the first two weeks

20   of January.  We'd like to get going and get that streamlined

21   and established.  We have motions scheduled already for -- I

22   believe, it's January 6th.

23          THE COURT:  What is this -- I'll give you five more

24   minutes.

25          What is this motion for summary judgment that you

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1  filed?  What --

2      MR. MAVRAKAKIS:  I can -- I can address that, Your

3  Honor.

4      And this -- just points out that -- you know, we

5  have six separate entities here.

6      There are two Matrox entities that only -- and --

7  and we would have filed a motion to dismiss as a matter of

8  law, but a recent case came out -- case came out from the

9  Federal Circuit which says information is not a product, and

10 a process has to be -- a process has to be one of

11 manufacture.

12     And this patent is clearly not either of those.  And

13 these two Matrox defendants use Design Compiler in Canada.

14     So, as a matter of law, there is -- you know, they

15 don't want to be in this case anymore.  And they join in the

16 motion to stay.  If it doesn't -- if it is granted, or if it

17 gets granted.  They just don't see any reason there needs to

18 be a patent infringement litigation pending against them,

19 since the law, as the Federal Circuit has made clear, said

20 they shouldn't be in it.

21     MR. BROTHERS:  On the motion for summary judgment,

22 it was accompanied by a declaration from one of the corporate

23 representatives of these two Canadian companies that was on

24 the very issues that we had sought discovery on and have

25 received none.

JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1          It is a very fact-intensive question as to what it

2    is they do, where it is they do it.  There's an entity that

3    they have in the United States --

4          THE COURT:  So, you are seeking a Rule 56 (f)

5    continuance to get that discovery?

6          MR. BROTHERS:  We have not yet, but we will if -- if

7    required.  We will file a Rule 56.

8          THE COURT:  Well, I am going to tell you -- don't

9    bring me a Rule 56 motion that has request for discovery

10   where the discovery would be relevant to the issue you want

11   me to stay as a matter of law.  I am not hearing it.  So, you

12   better get together on that.

13         MR. BROTHERS:  I --

14         MR. MAVRAKAKIS:  I think, Your Honor, that really

15   there was a declaration just to give the Court the context --

16         THE COURT:  Well, I don't want to argue the motion.

17   I want to know -- so early in the life of the case, I

18   wondered what it was about.

19         MR. MAVRAKAKIS:  It's because -- it's because the

20   patent -- the patent is dealing with a process that -- where

21   you get information.  There's no dispute about that.  You get

22   a plan on how to make a chip --

23         THE COURT:  Right.

24         MR. MAVRAKAKIS:  That's not a process for making the

25   chip.  And under the Halsey (phonetic) case in the Fed

1   Circuit as a matter of law they don't have any case against

2   these defendants because they practice Design Compiler in

3   Canada.  I mean, you know -- so, they want to take the

4   deposition of the guy to ask him if it's true in his

5   declaration that all the processes are performed in Canada.

6   I mean --

7           THE COURT:  I don't know.  I mean --

8           MR. MAVRAKAKIS:  Yeah.

9           THE COURT:  That's why judges don't get ahead of the

10  lawyers on questions like that.

11          MR. MAVRAKAKIS:  But there's no need for --

12          THE COURT:  Gives you a reasonable amount of

13  discovery in the case so that no one walks in here and says,

14  "You know, Judge, there is this dangling participle out

15  there.  If we got the discovery, it would be relevant to the

16  question you have."

17          MR. MAVRAKAKIS:  We could show that that 56 (f)

18  motion does not rise to the requirements in the Ninth

19  Circuit.

20          MR. BROTHERS:  Your Honor, we'll confer and see --

21          THE COURT:  Meet and confer on it before, and send

22  me a letter that -- by the -- what's the third Friday in

23  December?

24          MR. BROTHERS:  Well, our Rule 56 (f) response would

25  be due next Tuesday, I believe.

34

1          THE COURT:  Well, send me a letter that -- you need

2    to meet and confer before then.

3          If the motion is going to go forward, just is send

4    me a letter that you met and conferred on it and why it is

5    you believe that that motion needs to go forward.

6          And I'll evaluate it and tell you whether or not the

7    motion is going to go forward.  And I will also look to see

8    if I can get you in earlier than January.

9          And, you know, I've told you what my inclination is,

10   but I'll take a look at that.  I haven't read through the

11   patent as well myself.  Let me take a look at the patent

12   itself, too, before I ultimately resolve the question on the

13   stay motion.

14         I would not be inclined to consolidate at this time

15   for the very same reasons I articulated.  I don't know enough

16   about the case to make that determination at this juncture.

17   I will decide the stay issue.

18         MR. BROTHERS:  Would it be appropriate to defer the

19   resolution of the pending summary judgment motion of these

20   two defendants until Your Honor decides whether or not if the

21   case is --

22         THE COURT:  No.  I want you -- because it's not

23   going to change -- it's not going to change the issue that

24   you dispute.

25         I want you to get on that and resolve that.


JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

35

1          MR. BROTHERS:  Thank you, Your Honor.

2          THE COURT:  All right.  Matter submitted.

3          MR. MAVRAKAKIS:  Thank you.

4          THE COURT:  Okay.  Thank you.

5          (The proceedings were concluded at 10:55 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

1           R E P O R T E R ' S     C E R T I F I C A T E

2

3               I, JEANNE BISHOP, the undersigned, duly authorized

4    to report and transcribe proceedings in the United States

5    District Court pursuant to Title 28, Section 753 of the

6    Federal Civil Judicial Procedure and Rules do hereby certify:

7               That I am a Certified Shorthand Reporter in the

8    State of California, Certificate No. 2421;

9               That I attended the proceedings at the time and

10   place stated herein;

11              That pursuant to my duties as such, said proceedings

12   were reported by me and transcribed with computer-aided

13   translation into typewriting;

14              That the foregoing transcript, Pages 1-36, is a

15   full, complete, and true record of said proceedings.

16   Date:  December 23, 2003    _____
                                 JEANNE BISHOP
17                               California CSR No. 2421

18

19

20

21

22

23

24

25


JEANNE BISHOP, OFFICIAL COURT REPORTER, USDC 415 487-1754

1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 147674)
   Erik K. Moller (SBN 177927)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, CA  94025
   Telephone:  (650) 463-8100
5  Facsimile:   (650) 463-8400

6  Attorneys for Defendants AEROFLEX INCORPORATED, AMI
   SEMICONDUCTOR, INC., MATROX ELECTRONIC
7  SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX
   INTERNATIONAL CORP. and MATROX TECH, INC.

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  RICOH COMPANY, LTD.,                 )  Case No. CV 03-04669 MJJ(EMC)
                                         )
13          Plaintiffs,                  )  **MANUAL FILING NOTIFICATION**
                                         )
14     v.                                )  **RE EXHIBIT E TO DECLARATION OF**
                                         )  **ERIK K. MOLLER IN SUPPORT OF**
15  AEROFLEX INCORPORATED, AMI           )  **DEFENDANTS' OPPOSITION TO MOTION**
    SEMICONDUCTOR, INC., MATROX          )  **FOR LEAVE TO FILE AMENDED**
16  ELECTRONIC SYSTESM, LTD., MATROX     )  **COMPLAINT**
    GRAPHICS, INC., MATROX               )
17  INTERNATIONAL CORP., and MATROX      )
    TECH, INC.,                          )
18                                       )
            Defendants.                  )
19  _____  )

20

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

Case No.  CV 03-04669 MJJ(EMC)
Manual Filing Notification

# MANUAL FILING NOTIFICATION

Regarding:  *Exhibit E to Declaration of Erik K. Moller in Support of Defendants' Opposition to Motion for Leave to File Amended Complaint*

This filing is in paper or physical form only, and is being maintained in the case file in the Clerk's office.

If you are a participant in this case, this filing will be served in hard-copy shortly.

For information on retrieving this filing directly from the court, please see the court's main web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

This filing was not efiled for the following reason(s):

____ Voluminous Document (PDF file size larger than the efiling system allows)

____ Unable to Scan Documents

____ Physical Object (description): _____

_____

____ Non Graphical/Textual Computer File (audio, video, etc.) on CD or other media

_X_ Item Under Seal

____ Conformance with the Judicial Conference Privacy Policy (General Order 53).

____ Other (description): _____

Dated:  March 9, 2004                    Respectfully submitted,

HOWREY SIMON ARNOLD & WHITE, LLP


By:  /s/ Erik K. Moller _____
    Erik K. Moller
    Attorneys for Defendants
    AEROFLEX INCORPORATED, AMI
    SEMICONDUCTOR, INC., MATROX
    ELECTRONIC SYSTEMS, LTD.,
    MATROX GRAPHICS INC., MATROX
    INTERNATIONAL COPR. and
    MATROX TECH, INC.

HOWREY
SIMON
ARNOLD &
WHITE

Case No.  CV 03-04669 MJJ(EMC)
Manual Filing Notification



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

CHRISTOPHER L. KELLEY
PARTNER
650.463.8113
kelleyc@howrey.com

August 27, 2003

## VIA FACSIMILE AND U.S. MAIL

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:    *Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.*
       Civil Action No. 03-103-GMS

Dear Ed:

I have your letter to Erik Moller of August 26. Your proposal appears similar to what the defendants agreed to do in a letter I sent you on the 26th, so I believe there is a possible compromise in sight.

Your letter proposes redefining "ASIC Product" to include only those ASICs on which logic synthesis operations were performed. This is a good first step to focusing your request on materials that are relevant to this case. The other necessary restriction is that the design materials requested must be relevant to the operations that Ricoh is accusing, as identified in your response to defendants' interrogatory number 1. These are: "input to Design Compiler of flowcharts or hardware description languages that describe behavioral aspects of an ASIC under design," and use of Design Compiler "to synthesize the hardware cells to be implemented in the desired ASIC." Documentation relating to other aspects of the design is irrelevant to this case. As I noted in my letter of yesterday, defendants have independently undertaken to produce engineering materials relevant to Ricoh's allegations of infringement, as outlined in its interrogatory answer.

With regard to the Matrox defendants, materials relating to design work done in Canada cannot be relevant to this litigation, regardless of whether any kind of logic synthesis was done or not. The recent Federal Circuit decision in Bayer v. Housey Pharmaceuticals, confirms what was already evident from the statute: that 35 U.S.C. 271(g) applies only where a patented process is used directly in the manufacture of a product that is later imported in the United States. Ricoh does not need extensive design documentation in order to determine the veracity of the Matrox defendants' contention that, but for the Florida facilities of Matrix Tech that were closed in 2002, Matrox performs no ASIC design work in the United States. We are in the process of obtaining and producing documents sufficient to show the location of its engineering facilities and employees. If Ricoh wishes, the Matrox defendants can then make person(s) with knowledge of the nature and location of Matrox' design work available for deposition.



Edward A. Meilman
August 27, 2003
Page 2

     With regard to your interrogatory 7, most of the denials in the answers and many of the facts identified in the counterclaims relate to non-infringement of the Kobayashi patent and its invalidity.  These are matters which have been investigated by counsel working for defendants and not facts that were known independently of this litigation.  Prior to filing of this litigation none of the defendants was aware of the Kobayashi patent.  Defendants will identify experts and offer expert testimony on these issues in accordance with the schedule adopted by the Court.  To the extent that there are other specific factual issues within the possession of persons known to defendants, defendants will revise their interrogatory answers to identify such persons.

                 Very truly yours,

                 Christopher L. Kelley

CLK:gg



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.8100 • FAX: 650.463.8400

## FACSIMILE COVER SHEET

**DATE:** August 27, 2003

**TO:**

**NAME:** Edward A. Meilman, Esq.

**COMPANY:** Dickstein Shapiro Morin & Oshinsky LLP

**FAX NUMBER** (212) 997-9880          **PHONE NUMBER:** (212) 835-1400

**CITY:** New York

**FROM:**

**NAME:** Christopher L. Kelley, Esq.

**DIRECT DIAL NUMBER:** (650) 463-8113          **USER ID:** 5172

**NUMBER OF PAGES, INCLUDING COVER:** 3          **CHARGE NUMBER:** 06816.0060.000000

☒ ORIGINAL WILL FOLLOW VIA:

☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER: _____

☐ ORIGINAL WILL NOT FOLLOW

**SUPPLEMENTAL MESSAGE:**

Re: Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.

PLEASE SEE CORRESPONDENCE DATED AUGUST 27, 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

```
x   x   x   COMMUNICATION RESULT REPORT ( AUG. 27. 2003 11:13AM ) x  x  x
                                                              TTI
```

```
TRANSMITTED/STORED AUG. 27. 2003 11:11AM
FILE MODE        OPTION              ADDRESS                  RESULT      PAGE
--------------------------------------------------------------------------------
4063 MEMORY TX                       2#690#9:2129979880       OK          3/3
```

```
-------------------------------------------------------------------------
        REASON FOR ERROR   OR LINE FAIL                E-2) BUSY
        E-1) HANG UP OR LINE FAIL               E-4) NO FACSIMILE CONNECTION
        E-3) NO ANSWER
```



301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE: 650.463.6100 ● Fax: 650.463.6400

## FACSIMILE COVER SHEET

**DATE:** August 27, 2003

**TO:**
**NAME:** Edward A. Meilman, Esq.
**COMPANY:** Dickstein Shapiro Morin & Oshinsky LLP
**FAX NUMBER:** (212) 997-9880    **PHONE NUMBER:** (212) 835-1400
**CITY:** New York

**FROM:**
**NAME:** Christopher L. Kelley, Esq.
**DIRECT DIAL NUMBER:** (650) 463-8113    **USER ID:** 5172
**NUMBER OF PAGES, _INCLUDING_ COVER:** 3    **CHARGE NUMBER:** 06816.0060.000000

☒ ORIGINAL WILL FOLLOW VIA:
    ☒ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER:

☐ ORIGINAL WILL NOT FOLLOW

**SUPPLEMENTAL MESSAGE:**
Re: Ricoh Company, Ltd. v. Aeroflex Incorporated, et al.

PLEASE SEE CORRESPONDENCE DATED AUGUST 27, 2003

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

# DICKSTEIN  SHAPIRO  MORIN  &  OSHINSKY LLP

1177 Avenue of the Americas • New York, New York 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
Writer's Direct Dial: (212) 896-5471
E-Mail Address: MellmanE@dsmo.com

September 12, 2003

**BY FACSIMILE AND U.S. MAIL**
**(650) 463-8400**

Christopher L. Kelley, Esq.
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025

    Re:   *Ricoh Company, Ltd., v. Aeroflex Incorporated, et al.*
           Del. Civil Action No. 03–103–GMS
           Our Ref.: R2180.0171

Dear Mr. Kelley:

    The assertion in your letter of September 11, 2003 that Judge Sleet viewed your position as the appropriate basis for compromise is wrong. During the conference with the Court, you stated your position and we stated ours, namely that what we were looking for was information relating to the process of manufacturing ASICs using systems that have logic synthesis in them (Tr. at 60). Judge Sleet then asked "are we at a point in this discussion as to items 5 and 7 where counsel can be released to your own devices and work it out?", to which both sides said yes (Tr. at 61). Since the Judge had ordered that the matter be resolved by September 5, 2003 (*Id.*), I reiterated our position by letter on August 28, 2003 and asked you to set forth any further proposal for limitation within the time limit set by Judge Sleet. At no time has Ricoh withdraw from any position it took at the hearing.

    Since you did not reply to my August 28, 2003 letter within the time set by the Court, you have waived any such further limitation on the scope of discovery. Nevertheless, my letter of September 10, 2003 further refines the scope of the discovery to which we are entitled, even though you were not entitled to such refinement. Proper responses to interrogatories and production of documents are required now.

    We disagree with your position about the applicability of 271(g). Beyond that disagreement, you are also wrong when you assert that my "statement that we [Howrey] have 'asserted there are subsequent processes that materially change the product' is false". I call your attention to the letter from your firm of August 21, 2003. The last sentence on the second page reads

        "Substantial subsequent processes are necessary that materially change the computer code netlist into the ASIC chip that the Matrox defendants eventually sell in the United States."

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
www.legalinteractors.com

80590 v1; 1Q8M01!.DOC

Christopher L. Kelly, Esq.
September 12, 2003
Page 2


     Knowledge Edge, Inc. further objects to the noticed deposition date of October 16, 2003 and the place of deposition in that the only person who is most qualified, knowledgeable and competent to testify as to the matters set forth in Attachment B, is Dr. Kobayashi, who, as you know well, does not reside in the United States.

                          Very truly yours,

                          Edward A. Meilman

EAM/bf

cc:   Gary Hoffman, Esq.
      Kenneth Brothers, Esq.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICOH COMPANY, LTD,                 )
                                    )
          Plaintiff,                )
                                    )
     v.                             )          Civil Action No.  03-103 GMS
                                    )
AEROFLEX INCORPORATED, AMI          )
SEMICONDUCTOR, INC., MATROX         )
ELECTRONIC SYSTEMS, LTD.,           )
MATROX GRAPHICS, INC., MATROX       )
INTERNATIONAL CORP., and MATROX )
TECH, INC.,                         )
                                    )
          Defendants.               )

```
   FILED

  AUG 2 9 200█

 U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

## MEMORANDUM AND ORDER

### I.    INTRODUCTION

On January 21, 2003, the plaintiff, Ricoh Company, Ltd. ("Ricoh") filed the above-captioned

patent infringement action against the above-named defendants.  In its complaint, Ricoh alleges that

each of the defendants infringes its U.S. Patent No. 4,992,432 ("the '432" patent) by "using,

offering to sell, and/or by selling and/or importing into the United States application specific

integrated circuits designed by or using information generated by, the process" described in the '432

patent.

Presently before the court is the defendants' motion to stay this action, or, in the alternative,

to transfer this action to the United States District Court for the Northen District of California

pursuant to 28 U.S.C. § 1404.  For the following reasons, the court will grant the defendants' motion

to transfer.

### II.    BACKGROUND

This case is a patent infringement action involving technology related to the design of

application-specific integrated circuits ("ASICS").   ASICS are microelectronic devices that electronics manufacturers design for a specific function, for example, for use in graphics and telecommunications devices.

The defendant Aeroflex Incorporated ("Aeroflex") is a high technology company that designs, develops, manufactures, and markets a diverse range of microelectronics. Its principle place of business is in Plain View, New York. AMI Semiconductor, Inc. ("AMI") is a high technology company that designs, develops, and manufactures a broad range of integrated circuit products for a number of end-uses. Its principle place of business is in Idaho. The Matrox defendants are high technology companies that design software and hardware solutions in the fields of graphics, video editing, image processing, and new business media. The Matrox defendants' principle places of business are in Canada, New York, and Florida.

Ricoh is a high technology corporation that manufactures digital office equipment.   Its principle place of business is in Japan. While the record does not reflect that Ricoh has any facilities in Delaware, it has six subsidiaries in California, including three within the Northern District of California.

Third-party Synopsys, Inc. ("Synopsys") is a designer and manufacturer of high-level design automation solutions for the design of integrated circuits and electronic systems. Synopsys sells its products, including the Design Compiler at issue in the present case, to semiconductor, computer, communications, consumer electronics, and aerospace companies, including each of the defendants. Its principle place of business is in California.

On July 9, 2002, Synopsys filed a declaratory judgment action against Ricoh in the Northern District of California. Through that action, Synopsys seeks a declaration of non-infringement and

2

invalidity of the '432 patent.

## III.    DISCUSSION

Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest

of justice," the court may transfer a civil action "to any other district . . . where it might have been

brought." 28 U.S.C. § 1404(a). It is the movants' burden to establish the need for transfer, and 'the

plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co.*, 55 F.3d

873, 879 (3d Cir. 1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the

litigation would more conveniently proceed and the interest of justice be better served by transfer

to a different forum.' *Id.*. This inquiry requires "a multi-factor balancing test" embracing not only

the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but

all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private

interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose

elsewhere; and the location of books and record, to the extent that they could not be produced in the

alternative forum.[1] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the

judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the

relative administrative difficulty in the two fora resulting from court congestion; the local interest

in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80

(citations omitted).

---

[1] The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998).

In the present case, Ricoh disputes that this action could have been brought in the Northern District of California due to a lack of personal jurisdiction over the defendants. While it is not this court's province to determine another court's jurisdiction, and it therefore expresses no opinion on this subject, the court will, however, note the following. The defendants assert that they have each registered to do business with the California Secretary of State or have solicited and made allegedly infringing sales in California. Additionally, as the defendants themselves have stated that litigating this action in California would be more convenient and preferable to them, it does not appear that a California court's exercise of personal jurisdiction over them would offend the minimum requirements inherent in the concept of fair play and substantial justice.

Ricoh next contends that it would be improper to transfer this action to California because the Delaware action is first-filed. While the court does not dispute that this action is first-filed, it concludes that an exception to this rule controls the present inquiry. Under Federal Circuit precedence, a manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This rule, known as the "customer suit exception," recognizes that it is more efficient for the dispute to be settled directly between the parties in interest. *See Whelan Tech., Inc. v. Mill Specialities, Inc.*, 741 F. Supp. 715, 716 (N.D. Ill. 1990) (noting that the manufacturer is presumed to have a greater interest in defending its actions against charges of patent infringement.) It also acknowledges that a patentee's election to sue customers, rather than the manufacturer itself, is often based on a desire to intimidate smaller businesses. *See Kahn v. General Motors, Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).

4

In the present case, the court concludes that Ricoh's infringement claims against the defendants are fundamentally claims against the ordinary use of Synopsys' Design Compiler. Thus, the California court's determination regarding infringement and validity of the '432 patent will efficiently dispose of the infringement issues regarding Synopsys' customers in this case. It is clear that, based on the outcome of the California case, either Synopsys will prevail and use of the Design Compiler will be determined to be non-infringing, or Ricoh will prevail, and Synopsis will be forced to pay damages or license the patent. In the latter situation, Synopsys' customers would then be immunized from liability. *See Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). For these reasons, the court finds that the first-filed rule does not control the present inquiry.

Upon consideration of the remaining Section 1404 transfer factors, the court concludes that the balance of convenience tips heavily in favor of transfer. In reaching this conclusion, the court relied on the following considerations, among others: (1) no party maintains any facilities, personnel, or documents in Delaware; (2) no acts of alleged infringement have taken place in Delaware; (3) no relevant third-party witnesses, including Synopsys, reside in Delaware;[2] (4) both the present case and the case in the Northern District of California are in the relatively early stages of litigation; (5) the relevant industry, the electronic design automation industry, is located in the Northern District of California; and (6) any disparity in court congestion, to the extent there is any, is not so great as to weigh against transfer due to the action currently pending in the Northern District. Thus, the court finds that the public and private interests are sufficient to tip the balance

---

[2]Although Ricoh predicts that Synopsys will cooperate with whatever discovery of it is required in the present action, even though it is not a party, the court finds such an assertion suspect at best.

5

of convenience strongly in favor of transfer.[3]

**IV.    CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    The Defendants' Motion to Transfer (D.I. 67) is GRANTED.

2.    Ricoh's Request for Leave to File a Sur-Reply (D.I. 122) is DENIED.

3.    The above-captioned case is hereby TRANSFERRED to the United States District

Court for the Northern District of California.

Dated: August 29, 2003

UNITED STATES DISTRICT JUDGE

---

[3]As a result of the court's decision to transfer this case, it will not decide the Section 271(g) discovery dispute presently pending before it.