Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD, | Case No. CV-03-4669 MJJ (EMC) |
| Plaintiff, | RICOH'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE RICOH'S DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS |
| vs. | |
| AEROFLEX ET AL, | |
| Defendants. | Date:  May 4, 2004 Time:  9:30 a.m. Courtroom:  11 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

In their motion to strike, defendants attempt to turn Ricoh's preliminary infringement contentions into a forum for litigation of the substantive issues. This is contrary to the purpose of infringement contentions and further prolongs the discovery phase of this litigation, when the purpose of the Patent Local Rules is to *streamline* discovery in patent infringement cases. Although Ricoh tried to address the defendants' complaints (s*ee* Brothers Decl. Exh. 1, E. Oliver letter of March 12, 2004 to T. Mavrakakis), defendants elected to file another motion instead of complying with this Court's admonition to reduce their motions practice.

Defendants' motion to strike should be denied for two principal reasons. First, Ricoh's preliminary infringement contentions are sufficient under the Patent Local Rules. Defendants cite no relevant cases to support their requested relief of striking Ricoh's preliminary infringement charts. Therefore, defendants' motion to strike is an unproductive use of this Court's resources and time.

Second, the defendants are attempting to recast Ricoh's process claims as product claims. The defendants' motion to strike is just one of defendants' many attempts to mold Ricoh's allegations of infringement of the '432 patent's process claims into product claims. Apparently, defendants believe that if they put forth this erroneous theory enough times, it will replace Ricoh's actual contentions and give rise to yet another motion to stay this litigation in favor of Synopsys' declaratory judgment action. Ricoh has advanced an infringement charge only with respect to claims 13-17 of the '432 patent. Claims 13-17 are not directed to any software *product*, but rather are directed to *a process* that is being carried out by the defendants. Ricoh's preliminary infringement contentions fully explain on a step-by-step basis how the defendants actually infringe the process described in claims 13-17. As explained below, defendants' position is inconsistent with the applicable facts and law and should be rejected.

# ARGUMENT

## I.   The Patent Local Rules

### A.     Background and Purpose

The Patent Local Rules (Patent L.R.) were enacted to streamline patent infringement discovery proceedings.  *Network Caching Technology, LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881 at *13 (N.D. Cal. 2003) (D.I. 139, Weinstein 3/30/04 Decl. Exh. D) (hereinafter "*Network Caching 2003*").  This court, in *Network Caching 2003*, stated that Patent L.R. 3-1 requires disclosure of preliminary infringement theories that are "as specific as possible," but that the preliminary infringement contentions ("PICs") "are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process."  *Id.* at *13-14.  Contrary to this stated purpose, defendants' motion to strike repeatedly attempts to litigate the substantive issues underlying the PICs.

The court in *Network Caching 2003* stated that "[p]atent L.R. 3-1 does not require [Network Caching Technology] to produce evidence of infringement or to set forth ironclad and irrefutable claim constructions."  *Id.* at *12.  Consistent with *Network Caching 2003*, Ricoh has set forth specific theories of infringement and is fully compliant with Patent L.R. 3-1.  During the hearing of April 6, 2004, this Court observed that "those local patent rules are meant to be fluid, and they are meant to cause you folks to come together with some deadlines that are triggered in the local patent rules.  And amendments are also allowed to those contentions."  (Brothers Decl. Exh. 2, 4/6/04 Tr. at p. 36, lines 5-8).  Ricoh has complied with the letter and spirit of the Patent Local Rules.

### B.     Ricoh's PICs are in compliance with the Patent Local Rules.

#### 1.   *Ricoh has met the requirements of Patent L.R. 3-1(a)*

Defendants argue that Ricoh has not met the requirements of Patent L.R. 3-1(a), which requires an identification of each claim alleged to be infringed.  A review of Ricoh's claim charts reveals that defendants' contention is wrong.  Ricoh's claim charts expressly set forth the specific claims,

namely claims 13-17,  that Ricoh is asserting in this litigation.  Ricoh has complied with Patent L.R. 3-1(a).[1]

### 2. Ricoh has met the requirements of Patent L.R. 3-1(b)

Ricoh's disclosure of asserted claims and preliminary infringement contentions also meet the requirements of Patent L.R. 3-1(b), which states that the disclosure shall identify, "[s]eparately for each asserted claim, each. . . process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware."  Patent L.R. 3-1(b) goes on to state the manner in which such identification should be made.  Specifically, Patent L.R. 3-1(b) states that the identification of the accused process:

> [M]ust be as specific as possible… Each method or process must be identified name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process.

For each defendant, Ricoh's claim charts expressly identify each of the process steps in each of the claims asserted to be infringed (claims 13-17), and describe the corresponding step the given defendant uses of the accused process ("Accused Instrumentality").  Pursuant to Patent L.R. 3-1(b), Ricoh specifically set forth the acts and the software tools that the defendant uses to perform steps in the claimed processes.  As described in detail at section 3, *infra*, Ricoh's PICs provide the disclosure required by Patent L.R. 3-1(b) with specificity.[2]

---

[1]  Patent L.R. 3-1(a) does not require that such disclosure be made separate from the claim charts. Ricoh's claim charts set forth each asserted claim, element by element, and comply with Patent L.R. 3-1.

[2]  Defendants' argument that Ricoh has not identified model or version numbers of the purportedly accused software misses the mark and misrepresents the basis of Ricoh's claim of infringement.  The claims involved are process claims and it is the processes being used by the defendants and not the sale of the software that creates the infringing activity.  Ricoh has identified the process and "product, device, or apparatus which, when used . . . results in the practice of the claimed method or process" to the extent presently known, and has thus met the requirements of Patent L.R. 3-1(b).

1

### 3. Ricoh has met the requirements of Patent L.R. 3-1(c)

Patent L. R. 3-1(c) requires that Ricoh provide claim charts which identify where each element of each asserted claim is found within the Accused Instrumentality.[3]  Ricoh's disclosure of asserted claims and preliminary infringement contentions also meet this requirement.  Specifically, for each element of asserted claims 13-17, Ricoh's PICs set forth the infringing steps taken by each defendant in performance of such element.[4]

While defendants accuse Ricoh's PICs of merely repeating the words of the claims, even a quick review of the PICs shows that the accusation is false.  The following excerpts are from the Aeroflex chart at claim 13, clauses 2 and 4, and are illustrative of the level of detail that Ricoh has provided in its disclosures to each defendant for each asserted claim element.  These excerpts reveal that for each asserted claim element, Ricoh described not only the specific infringing steps that the defendant performs, but also ways in which the infringing steps are performed, including the software tools used to perform the step.

| CLAIM LANGUAGE (Claim 13, clause 2) | INFRINGEMENT ANALYSIS |
|---|---|
| storing a set of definitions of architecture independent actions and conditions | The act of storing at least one of the following meets the claimed limitations of "a set of definitions of architecture independent actions and conditions": HDL operators, synthetic operators or other definitions including "functions" or "Always blocks," which are implementations for functional descriptions or statements.  (*See, e.g., Aeroflex UTMC EDA Tool Support table* (RCL008943-8944) (listing Synopsys library support as including VHDL Compiler and HDL Compiler); *HDL Compiler for Verilog Reference Manual v. 2000.05, May 2000* at 5-3 to 5-37, (RCL004581-4615).  Such storing may occur, for example, when a synthetic operator is installed in a synthetic library (such as when a new synthetic operator is added to a synthetic library through DesignWare Developer).  (*See, e.g., DesignWare Developer's Guide* |

---

[3] Patent L.R., 3-1(c) states:  "a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s) or material(s) in the Accused Instrumentality that performs the claimed function".

[4] Moreover, although not required by Patent L.R. 3-1(c), Ricoh's claim charts include examples of supporting evidence, including Bates number citations.

| CLAIM LANGUAGE (Claim 13, clause 2) | INFRINGEMENT ANALYSIS |
|---|---|
| | (RCL009449-9622) at Ch. 4, pp. 61-64).<br><br>Storing a set of definitions of architecture independent actions and conditions may also occur upon installing the Design Compiler Family, DesignWare IP Family and HDL Compiler Family components into a system memory in a user's computer system.<br><br>HDL operators, functional descriptions, and functional statements describe desired functions to be included in a designed ASIC, but not the physical makeup or layout. A desired function can be stated in the syntax referred to in Synopsys documentation as "functions" (which are always combinational logic) or "Always blocks" (which can be either combinational or sequential logic).  (*See, e.g., HDL Compiler for Verilog v. 2000.05 May 2000* at 2-4, RCL004524; *DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch. 1, pp. 19-20 (noting some HDL operators are built into the language, like +, -, and *, and further noting that user-defined subprograms (functions and procedures) are also considered HDL operators)).<br><br>Synthetic operators resemble generic logic to perform functions corresponding to desired actions and conditions.  (*See, e.g., HDL Compiler for Verilog v. 2000.05 May 2000* at 10-13, RCL004835; *DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1, pp.15-16, 17-20 (at Figs. 2 & 4 and at discussion noting that DesignWare Building Block IP implement many of the built-in HDL operators including +, -, *, <, >, <=, >=, /, and operations defined by *if* and *case* statements; each operator has a definition written in HDL, and each definition contains a simulatable specification for the operator behavior, and optionally a *map_to_operator* pragma that links the HDL operator to an equivalent synthetic operator); *DesignWare Developer's Guide* (RCL009449-9622) at Ch. 1 p. 17 (describing HDL operators and noting each operator that is not built into the VHDL or Verilog language has a definition written in HDL, and that each definition contains a simulatable specification for the operator behavior, and for DesignWare, a *map_to_operator* pragma that links the HDL operator to an equivalent synthetic operator)).<br><br>Synopsys "functions," such as function declarations and function statements, are used to describe desired combinational logic in functional rather than structural terms.  (*See, e.g., HDL Compiler for Verilog Reference Manual v. 2000.05, May 2000* at 5-3 to 5-31, RCL004581-4609).  "Functions" may include a variety of function statements, such as for example procedural assignments, RTL assignments, Begin . . . end blocks, If . . . else blocks, Conditional assignments, and Case statements.  (*See, e.g., Id.* at 5-9, RCL004587 (listing examples of function statements, 8-2 – 8-3, RCL004752-4753 (stating that Verilog descriptions are mapped to logic by creation of blocks of combinatorial circuits and storage elements, and further that a statement or operator in a Verilog function can represent a block of combinational logic or a latch or register)). |

| CLAIM LANGUAGE<br><br>(Claim 13, clause 2) | INFRINGEMENT ANALYSIS |
|---|---|
|  | "Always Blocks" are used to describe combinational logic, as well as sequential logic using functional descriptions. (*See, e.g.*, *HDL Compiler for Verilog Reference Manual v. 2000.05, May 2000* at 5-33 to 5-37, RCL004611-4615). |

*See* D.I. 153, Moller Decl. Exh. G, Aeroflex PIC at pp. 3-5. Likewise, the infringement analysis for claim 13, clause 4, does not merely parrot back the claim language, but explains in detail how Aeroflex infringes the claimed process:

| CLAIM LANGUAGE<br><br>Claim 13, Clause 4 | INFRINGEMENT ANALYSIS |
|---|---|
| storing in an expert system knowledge base a set of rules for selecting hardware cells to perform the actions and conditions; | The Synopsys Design Tools include a set of rules stored in one or more knowledge bases for use in selecting hardware cells to perform actions and conditions; the act of selecting may include optimization of selected hardware cells. Aeroflex loads (i.e., "stores") the Synopsys Design Tools, including such knowledge bases, into a computer system or workstation memory. (*See, e.g.*, *RBO Runtime* by Vasant Ramabadran & DC R&D team (SP00685-715) *(*describing transformations and tricks used in connection with ABO during optimization); *Overview of SOT/SDN* by Vasant Ramabadran & DC R&D team (SP00487-526) (describing SOT as a large set of simple structural transforms (tricks) to the netlist); *DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch. 1, pp. 19-20 (stating that synthetic operators are bound to synthetic modules, and further that implementation directives link synthetic modules to implementations in the design library); *Id.* at Ch. 2, p. 26 (stating that when synthetic operators and modules are processed during a compile command, the operators, bindings, modules, and implementations of the designated library are used); *DesignWare Developer's Guide* (RCL009449-9622) at Ch. 1 p. 16 (describing links that connect a user's design to the Synopsys synthesis environment and stating that the DesignWare Building Block IP components go through a series of transformations, and stating that the DesignWare developer sets up the links required for the chain of transformations by writing a synthetic library description); *Ray Weiss, Designers moving toward high-level logic representation via logic synthesis; Logic synthesis edging up design hierarchy, Electronic Engineering Times* (Feb. 6, 1989) (RCL 8307-8318) (describing Synyopsys' Design Compiler as a rule-based system that supports rule-based parameterized synthesizers, and describing Synopsys' Knowledge Consultant)). |

*See id.* at pp. 7-8.

Ricoh followed this same pattern of disclosure throughout its infringement contentions. Defendants' suggestion that Ricoh's PICs are not sufficiently detailed and that Ricoh is somehow masking its infringing position, is untenable.

Remarkably, defendants also argue that Ricoh must provide a separate PIC for each purportedly accused product. Not only is defendants' position at odds with both the nature of this case and basic tenants of patent law, but it borders on disingenuous. Although the defendants use software tools provided by Synopsys in the course of performing some of the steps in the infringing process, Ricoh has never alleged that these software tools themselves infringe the claims.[5] It is the infringing process that is the Accused Instrumentality. The Patent Local Rules make clear that the "Accused Instrumentality" can be a process. *See* Patent L.R. 3-1(b) (stating "[s]eparately for each accused . . . *process*, method, act, or other instrumentality ("Accused Instrumentality")"). Ricoh has repeatedly made clear to defendants that Ricoh's infringement allegations are based on defendants' process of designing ASICs. Nevertheless, defendants have consistently and completely ignored the fundamental fact that this is a process claim litigation.

Notably, defendants fail to cite any cases in support of their demand for separate claim charts for each named software tool, with good reason. By asking for separate claim charts for each software tool used to perform a step in the accused process, defendants are effectively asking this Court to find that this is a software product infringement case and to conclude that a process claim cannot be infringed if different software tools are used to perform different steps of the claimed process. This is at odds with basic patent law and with Patent L.R. 3-1(b). A process claim is infringed by the performance of all the steps recited in the claim. *See, e.g., Joy Technologies v. Flakt, Inc.* 6 F.3d 770, 775 (Fed. Cir. 1993).

---

[5] Defendants' misleading argument that it is each separate software product being accused of infringement is merely part of their misguided repeated attempts to try to argue for a stay of this litigation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In order to suit their litigation strategies, defendants are trying to force-fit Ricoh's process claim allegations in to product claim allegations. Their attempts to do so, are inconsistent with the applicable facts and law, and should be rejected by this Court.

Based on a footnote to the claim charts, defendants also argue that they do not know which software tools are being accused. No tool is being charged by Ricoh as an infringement. The purpose of this footnote was to put defendants on notice that Ricoh believes other software tools are also capable of being used by the defendants as they perform the infringing process. (*See, e.g.,* D.I. 153, Moller Decl. Exh. G, Aeroflex PIC at p. 2). Ricoh has alleged that certain software tools are used by defendants when they perform parts of the accused processes. But, it is the processes that are the Accused Instrumentalities. Ricoh does not allege that the software tools are themselves Accused Instrumentalities.

The fact that Ricoh put defendants on notice of other software tools that can be used in an infringing manner does not alter Ricoh's infringement position as set forth in the PICs. Defendants' implications to the contrary should be rejected for at least the following reasons:

- For each defendant, Ricoh's PICs specifically disclose software tools that the defendant has admitted to using in the course of their performance of the asserted processes.

- Each of Ricoh's PICs makes clear that Ricoh's infringement position does not rely on the use of the other software tools that Ricoh believes to be capable of use in an infringing process, but that the given defendant has not admitted to using. Rather, the body of the PICs cite products known to be used by the given defendant. Patent L.R. 3-1(b) only requires identification of products to the extent currently known.

- Ricoh put defendants on notice of such other software tools because, although to date defendants have not revealed whether they use such other software tools, Ricoh believes such tools (in addition to those tools that defendants admit to using) can perform steps in the accused processes specified in Ricoh's infringement analysis. The fact that Ricoh provided defendants with such notice should not be a basis for striking Ricoh's PICs.

Thus, Ricoh's PICs fully comply with Patent L.R. 3-1(c).

### 4. Ricoh has met the requirements of Patent L.R. 3-1(d)

Patent L. R. 3-1(d) requires that the disclosure of asserted claims and preliminary infringement contentions include disclosure of "[w]hether each element of each asserted claim is

claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."  For each element of claims 13-17, Ricoh's PICs disclose that Ricoh contends the element is present literally, or at least under the doctrine of equivalents.  Specifically, for each element of each of the asserted claims Ricoh expressly stated the following: "[t]his claim element is thus met literally (or at least under the doctrine of equivalents)."  *See, e.g.,*  D.I. 153, Moller Decl. Exh. G, Aeroflex Infringement Chart at pp. 13-15.  Nothing precludes Ricoh from proceeding under both theories.

### 5.  *Ricoh has met the requirements of Patent L.R. 3-1(f)*

With respect to Patent L.R. 3-1(f),[6] Ricoh identified the following instrumentalities solely to preserve the right to rely (for any purpose) on such instrumentalities: the early implementations and variations of the KBSC system; and Ricoh's use of Synopsys products such as Design Compiler (or variation, e.g., DC Ultra, DC Expert, DC Expert Plus, etc.), DFT Compiler, Prime Time, HDL Compiler for Verilog, Astro, Astro-Rail, and Astro-Xtalk.  (Brothers Decl. Exh. 1, E. Oliver letter of March 12, 2004 to T. Mavrakakis).

Although defendants argue that Ricoh must have good cause to amend its preliminary infringement contentions pursuant to Patent L.R. 3-7, and therefore Ricoh has waived its right to rely on the instrumentalities set forth in Mr. Oliver's March 12 letter (*see* Def. Mot. at p. 14), defendants are incorrect.  Ricoh's disclosure of asserted claims and preliminary infringement contentions were served upon defendants well before the time required under the Patent L.R.  In fact, Patent L.R. 3-1 requires that such disclosure be served no later "than 10 days *after* the Initial Case Management Conference."  Ricoh, however, served its disclosures before the Case Management Conference was even held.  Ricoh 3-1(f) disclosures not only were timely, but do not prejudice defendants.  Moreover, as this Court has indicated, amendments to disclosures under the Patent L.R. are allowed, and the parties should operate

---

[6] Patent L.R. 3-1(e) is not applicable to Ricoh's disclosure of asserted claims and preliminary infringement contentions.

1   in a cooperative manner.  Defendants' position at odds with this approach and should be rejected by this

2   Court.  Ricoh has met its burden under Patent L.R. 3-1(f).

3       **C.      Defendants' case citations do not compel a different result**

4           The cases cited by defendants do nothing to support their specious claims that Ricoh's

5   preliminary infringement contentions are inadequate.  First, the defendants cite *Intertrust Techs. Corp. v.*

6   *Microsoft Corp*. to maintain that the purpose of the Patent Local Rules is to "articulate with specificity

7   the claims and theory of a plaintiff's infringement claims."  *Intertrust Techs. Corp. v. Microsoft Corp*.,

8   2003 U.S. Dist. LEXIS 22736 at *6 (N.D. Cal. 2003) (Brothers Decl. Exh. 3).  But *Intertrust* was a

9   product patent infringement litigation where the plaintiff had already amended its infringement charts

10  five times previously and where the defendants were  asking the court to force the plaintiff to amend

11  again because the plaintiff had not described the allegedly infringing *products* or versions which

12  violated the asserted *product* patent claims.  The court ordered the plaintiff to amend its disclosure.  In

13  contrast, as shown above, Ricoh has articulated its claims and theory of infringement of its *process*

14  patent claims with specificity and identified any products "which, when used, allegedly results in the

15  practice of the claimed method or process."  (Patent L.R. 3-1(b)).

16          The defendants also cite *Intertrust* and Patent L. R. 3-1(c) for their unsupported proposition that

17  a process patent infringement chart must identify "specifically where each element of each allegedly

18  infringed claim is found within each accused software product" (Def. Mot. at 11), even when, as here,

19  the Accused Instrumentality is a process patent and there is no "accused software product".  *Intertrust*

20  does not support this erroneous and unsubstantiated proposition, nor does Patent L.R. 3-1(c).

21  Defendants appear to have formulated this theory out of whole cloth and offer no case law or legal

22  authority that would support their premise.

23          Similarly, the defendants cite *Hewlett-Packard v. EMC Corp*., in an effort to bolster their

24  flawed theory that Ricoh's disclosure must address each product separately.  *Hewlett-Packard Co. v.*

25  *EMC Corp*., 2003 U.S. Dist. LEXIS 22742 *3 (N.D. Cal. 2003) (Brothers Decl. Exh. 4).  However,

1    *Hewlett-Packard* also relates to a product infringement allegation. *Hewlett-Packard* merely stands for

2    the proposition that where the asserted claims are product patent claims, then each accused product

3    (which is such case is the Accused Instrumentality) must be separately applied to the claims it allegedly

4    infringes.

5            The present case, however, is a process infringement case, and *Hewlett-Packard* is

6    inapposite. Neither the Patent Local Rules nor the *Hewlett-Packard* case instruct that products used in

7    the performance of steps in an accused process have to be separately addressed as though each product

8    was itself the accused instrumentality.[7] The cases cited by defendants are directed to product claim

9    cases and do not apply on the instant facts. Pursuant to Patent L.R. 3-1(b) the accused process is the

10   Accused Instrumentality. Although, as part of identifying the accused process, products used in the

11   course of performing steps in such accused process need to be identified, Patent L.R 3-1 does not state

12   that a separate chart is needed for each product so identified. Rather, the chart required by Patent L.R.

13   3-1 is one identifying the Accused Instrumentality, which in a process claim case is the accused process.

14   Here, Ricoh has identified each Accused Instrumentality (i.e., the process performed) and has identified

15   where each element of each claim is found in the Accused Instrumentality. Ricoh's identification of

16   each accused process includes identification of products used in the performance of steps in the accused

17   process. Patent L.R. 3-1 does not require separate charts for each product used as part of performing the

18   accused process.

19           Finally, the defendants cite *Network Caching 2002* as support for their untenable assertion

20   that Ricoh has simply mimicked the claim language to fulfill its obligations. *Network Caching Tech.,*

21   *LLC v. Novell, Inc.*, 2002 U.S. Dist. LEXIS 26098 (N.D. Cal. 2002) (Def. Mot. at 11). To the contrary,

22   and as is plainly outlined above and in the infringement charts themselves, Ricoh has more than

23   sufficiently fulfilled its obligations to outline its infringement contentions regarding the subject process

24

25

26

27   _____

28   [7] As shown throughout this brief, the "Accused Instrumentalities" are the processes performed by the defendants, not the various products used to perform steps in these processes.

1   claims of this litigation.  Contrary to the defendants' wishes, this is still a case where the Accused
2   Instrumentality is a process, not a product.  Patent L.R. 3-1(c) again relates to Accused Instrumentalities,
3   not products used that allegedly result in the practice of the Accused Instrumentality (here, a process or
4   method.)  Ricoh has plainly outlined its infringement contentions relating to the process claims
5   (Accused Instrumentality) of the '432 patent.
6   **II.    Defendants' Position is Completely Inconsistent with the Applicable Law**
7
8           **A.    Defendants are frustrating the purpose underlying the Patent L.R. by attempting to
                    recast Ricoh's claims**
9
10                  By their repeated attempts to recast Ricoh's process claims in this litigation into product
11  claims, the defendants are actually frustrating the purpose underlying to the Patent Local Rules, which is
12  to streamline discovery in patent infringement cases.  Defendants' continual posturing only prolongs the
13  discovery phase of this case and ultimately the litigation itself.
14          **1.   Ricoh has alleged infringement of process claims in this litigation, not product
                   claims**
15
16                  Ricoh's infringement theories of this case are based on claims 13-17 of the '432 patent.  It is
17  undisputed that these claims relate to a process, not a product.  Claim 13 states in its preamble, "A
18  computer-aided design *process* for designing an application specific integrated circuit which will
19  perform a desired function comprising…."  Defendants' motion, however, relies on the remarkable
20  theory that Ricoh's *process* claims must be construed as *product* claims.  (*See, e.g.*, Def. Mot. at 9).  The
21  Patent Local Rules expressly permit a process claim, however, and Ricoh's preliminary infringement
22  contentions comply with the rules.
23          **2.   A process claim is infringed by the performance of the steps recited in the claim**
24                  The defendants have yet to provide any support for this theory, but continually assert it,
25  wasting this court and Ricoh's time.  The fact remains that a process claim is infringed by the
26  performance of all the steps recited in the claim.  *See, e.g., Joy Technologies v. Flakt, Inc.*  6 F.3d 770,
27  775 (Fed. Cir. 1993).  Defendants have provided no case law or other precedent to the contrary.
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.    **Defendants' allegation that Ricoh has not done a proper pre-filing investigation is spurious and wrong**

Defendants insinuate that Ricoh has not done a proper pre-filing investigation by not doing reverse engineering or its equivalent, citing *Network Caching 2002* for this assertion.  (Def. Mot. at 13). Not only is no Rule 11 motion presented, as there is no basis for one, but defendants fail to acknowledge that the *Network Caching 2002* court observed that the location of individual software routines is not obtainable by reverse engineering and need not be identified in the preliminary infringement contentions.  *Id*. at *19-20.  Also, that the only way to pinpoint a specific routine is to analyze the source code, which is solely in the defendant's possession and therefore is the "quintessential case" allowing amendment of Preliminary Infringement Contentions.  *Id*.  The source code has yet to be disclosed in the instant litigation.

Further, this court in the later *Network Caching 2003* decision, stated "[t]he question of whether [Network Caching] conducted 'reverse engineering or its equivalent' is not synonymous with whether it has complied with Patent L.R 3-1, which, as discussed, requires a party only to set forth specific theories of infringement."  *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *14-15 (N.D. Cal. 2003).  The *Network Caching 2003* court found that the plaintiff's third revised Preliminary Infringement Contentions were sufficient under Patent L.R. 3-1 because Network Caching Tech. had remedied the deficiencies cited by the *Network Caching 2002* court which included "vague discussions of the claims terms" and lack of information beyond the claim language itself.  The third revised PICs satisfied Patent L.R. 3-1 by "setting forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves."  *Id*.  The *Network Caching 2003* court also noted that the defendants' objections to the PICs related to substantive issues such as validity or defendant's belief that the plaintiff would not be able to provide evidence of infringement at trial.  *Id*.

Defendants' position that Ricoh has not met its obligations for a reasonable basis for infringement is inconsistent with the facts and the applicable case law.  Ricoh has previously made clear

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that it conducted a good faith infringement analysis and, as such, has met the requirements of Rule 11.

*See, e.g., Q-Pharma, Inc. v. The Andrew Jergens Company*, 2004 U.S. App. LEXIS 4380 (Fed. Cir. Mar.

8, 2004) (Brothers Decl. Exh. 5) (applying Ninth Circuit law and noting that a Rule 11 violation does

not exist merely because the accused disagrees with the patentee's infringement analysis, and further

finding that "an infringement analysis can simply consist of a good faith, informed comparison of the

claims of a patent against the accused subject matter").  Ricoh has met its burden here.

**III.    Ricoh properly designated parties and documents in its Preliminary Infringement Contentions**

**A.    Ricoh properly designated the parties**

Defendants argue that Ricoh improperly combined Aeroflex, Inc. and Aeroflex UTMC in to

a single claim chart.  (Def. Mot. at 7-8).  Contrary to their current argument, defendants counsel

previously stated by letter dated February 17, 2004 to Ricoh's counsel, that:

> Furthermore, there is no need to add a separate entity to get at activities conducted at
> Aeroflex's facility at Colorado Springs acquired from United Technologies.  That entity was
> acquired by Aeroflex and is now a subsidiary of Defendant Aeroflex, Inc.

(Brothers Decl. Exh. 6, Kelly 2/17/04 letter).  Notwithstanding that Aeroflex, Inc has acquired Aeroflex

UTMC, defendants now argue to this Court that Ricoh improperly combined the Aeroflex companies in

a single chart.  Defendants' position is disingenuous and should be rejected.[8]

Defendants also argue that the claim charts directed to each Matrox entities improperly

combined parties.  Again this argument is disingenuous.  Ricoh's claim charts refer to the respective

Matrox entities as acting "separately or in conjunction with one another."  This disclosure is sufficient,

particularly given that the deposition of Ed Dwyer, the Matrox 30(b)(6) designee, reveals that the

delineation between the Matrox entities is decidedly murky and that U.S. Matrox entities perform ASIC

design services for Canadian Matrox entities.  (*See, e.g.,* D.I. 117, Weinstein Decl. Exh. 5. Dwyer Dep.

---

[8] Defendants later acquiesced to the addition of Aeroflex UTMC (also known as Aeroflex Colorado).
Aeroflex UTMC was not a party when Ricoh served its charts, however.  Aeroflex UTMC was served
with Ricoh's Amended Complaint on April 12, 2004.

at p. 47 (Witness Dwyer stating that "Matrox Tech during that time period provided design services to both Matrox Electronic Systems and Matrox Graphics."))  It is not clear where one Matrox entity ends and another begins, or which entities are parents,  subsidiaries or siblings.  Despite this uncertainty, Ricoh still provided separate claim charts with sufficient information under Patent L.R. 3-1 to put all the Matrox entities on notice of Ricoh's infringement theories.

> **B.**     **Ricoh is not precluded from relying on documents evidencing its conception, reduction to practice, design and development of '432 patent's claimed invention created before its application date**

With respect to Patent L.R. 3-2, Ricoh has no documents in category (a); has already produced documents in category (b) (production Nos. RCL002667 through RCL002693); and has already produced the file history of the '432 patent (production Nos. RCL000001 through RCL000265) required of category (c).  (Brothers Decl. Exh. 1, E. Oliver 3/12/04 letter to T. Mavrakakis.)  Thus, Ricoh is not precluded on relying on those documents.

## CONCLUSION

Defendants' motion to strike Ricoh's disclosure of asserted claims and preliminary infringement contentions should be denied, and defendants should be admonished to avoid their excessive motions practice.

1

2    Dated: April 13, 2004                    Ricoh Company, Ltd.

3                                             By:____/s/ Kenneth W. Brothers_____

4                                             Jeffrey B. Demain, State Bar No. 126715
                                              Jonathan Weissglass, State Bar No. 185008
5                                             Altshuler, Berzon, Nussbaum, Rubin & Demain
                                              177 Post Street, Suite 300
6                                             San Francisco, California  94108
                                              Phone:  (415) 421-7151
7                                             Fax:  (415) 362-8064

8
                                              Gary M. Hoffman
9                                             Ken Brothers
                                              Eric Oliver
10                                            DICKSTEIN SHAPIRO MORIN &
                                                  OSHINSKY  LLP
11                                            2101 L Street NW
                                              Washington, D.C.  20037-1526
12                                            Telephone: (202) 785-9700
                                              Facsimile: (202) 887-0689
13
14                                            Edward A. Meilman
                                              DICKSTEIN SHAPIRO MORIN &
15                                                OSHINSKY  LLP
                                              1177 Avenue of the Americas
16                                            New York, New York  10036
                                              Telephone:  (212) 896-5471
17                                            Facsimile:  (212) 997-9880

18
                                              Attorneys for Ricoh Company, Ltd.
19

20

21

22

23

24

25

26

27

28