1   Gary M. Hoffman (*Pro Hac Vice*)
    Kenneth W. Brothers(*Pro Hac Vice*)
2   DICKSTEIN SHAPIRO MORIN
      & OSHINSKY, LLP
3   2101 L Street, NW
    Washington, DC  20037-1526
4   Phone (202) 785-9700
    Fax (202) 887-0689
5
    Edward A. Meilman (*Pro Hac Vice*)
6   DICKSTEIN SHAPIRO MORIN
      & OSHINSKY, LLP
7   1177 Avenue of the Americas
    New York, New York  10036-2714
8   Phone (212) 835-1400
    Fax (212) 997-9880
9
    Jeffrey B. Demain, State Bar No. 126715
10  Jonathan Weissglass, State Bar No. 185008
    ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
11  177 Post Street, Suite 300
    San Francisco, California  94108
12  Phone  (415) 421-7151
    Fax (415) 362-8064
13
14  Attorneys for Ricoh Company, Ltd.

15              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
16               SAN FRANCISCO DIVISION

17

18                                          )  CASE NO. C-03-4669-MJJ (EMC)
    RICOH COMPANY, LTD.,                     )
19                                          )
                    Plaintiff,               )  DECLARATION OF KENNETH W.
20                                          )  BROTHERS IN SUPPORT OF RICOH'S
          vs.                                )  OPPOSITION TO DEFENDANTS' MOTION
21                                          )  TO STRIKE RICOH'S DISCLOSURE OF
    AEROFLEX INCORPORATED, et al.,           )  ASSERTED CLAIMS AND PRELIMINARY
22                                          )  INFRINGEMENT CONTENTIONS
                    Defendants               )
23                                          )  Date: May 4, 2004
                                             )  Time: 9:30 a.m.
24                                          )  Courtroom:  11
                                             )
25

26

27

28

1

2    Kenneth W. Brothers declares as follows:

3        1.    I am an attorney at law licensed to practice in the State of Colorado and the District of

4    Columbia and admitted in this case *pro hac vice*, and am a partner in the law firm of Dickstein Shapiro

5    Morin & Oshinsky, LLP, attorneys for Ricoh Company, Ltd.  The matters set forth in this declaration

6    are based upon my personal knowledge and, except where otherwise indicated, and if called as a

7    witness, I could and would testify competently thereto.

8        2.    Attached hereto as Exhibit 1 is a true and correct copy of a letter from E. Oliver to T.

9    Mavrakakis, dated March 12, 2004.

10       3.    Attached hereto as Exhibit 2 is a true and correct copy of the April 6, 2004 Hearing

11   before Judge Jenkins transcript, page 36.

12       4.    Attached hereto as Exhibit 3 is a true and correct copy of *Intertrust Techs. Corp. v.

13   Microsoft Corp.*, 2003 U.S. Dist. LEXIS 22736 (N.D. Cal. 2003).

14       5.    Attached hereto as Exhibit 4 is a true and correct copy of *Hewlett-Packard Co. v. EMC

15   Corp.*, 2003 U.S. Dist. LEXIS 22742 (N.D. Cal. 2003).

16       6.    Attached hereto as Exhibit 5 is a true and correct copy of *Q-Pharma, Inc. v. The Andrew

17   Jergens Company*, 2004 U.S. App. LEXIS 4380 (Fed. Cir. Mar. 8, 2004).

18       7.    Attached hereto as Exhibit 6 is a true and correct copy of a letter from C. Kelley to E.

19   Meilman, dated February 17, 2004.

20       I declare under penalty of perjury under the laws of the United States of America that the

21   foregoing is true and correct.  Signed at Washington, D.C. on April 13, 2004.

22

23                    /s/ Kenneth W. Brothers

24                    Kenneth W. Brothers

25

26

27

28

D I C K S T E I N   S H A P I R O   M O R I N   &   O S H I N S K Y   L L P

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

*Writer's Direct Dial: (202) 861-9185*
*E-Mail Address: OliverE@dsmo.com*

March 12, 2004

**VIA FACSIMILE AND FEDEX**
        **1-650-463-8400**

Thomas C. Mavrakakis, Esq.
Howrey Simon Arnold & White
301 Ravenswood Avenue
Menlo Park, CA 94025-3434

Re:    <u>Ricoh v. Aeroflex et al.</u>

Dear Thomas:

We have reviewed your letter of March 4, 8 and 10, 2004. Although we do not agree with the various allegations you have raised, in order to avoid unnecessary controversy, we have reviewed and addressed your allegations regarding certain deficiencies in Ricoh's Preliminary Infringement Claim Charts as follows.

With respect to Patent Local Rule (PLR) 3-1(a), we believe that the original claim charts are in compliance. Nevertheless, we enclose revised claim charts separately identifying the different defendants, particularly the Matrox entities. We are willing to reset the effective date of disclosures to the date of this letter, if you find it necessary.

With respect to PLR 3-1(b), no change is necessary in the claim charts. As you will see upon reviewing the charts, the required identification of an "Accused Instrumentality" under the rule is met by the identification in the charts of the process carried out by the ASIC defendants, including the use of various software components identified in the charts.

With respect to PLR 3-1(c), the original claim charts had already set forth for each defendant the Accused Instrumentality, as noted above. Certainly, with the addition of the new claim charts separately identifying the Matrox entities, this objection has been rendered moot.

With respect to PLR 3-1(d), the original claim charts, together with the new Matrox claim charts, more than suffice to overcome your objection.

With respect to PLR 3-1(f), Ricoh identifies the following instrumentalities solely to preserve the right to rely (for any purpose) on such instrumentalities: the early implementations and variations of the KBSC system; and Ricoh's use of Synopsys products such as Design Compiler (or variation, e.g., DC Ultra, DC Expert, DC Expert

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

Thomas C. Mavrakakis, Esq.
March 12, 2004
Page 2

Plus, etc.), DFT Compiler, Prime Time, HDL Compiler for Verilog, Astro, Astro-Rail, and Astro-Xtalk.

With respect to PLR 3-2, Ricoh has no documents in category (a); Ricoh has already produced documents in category (b) (see production Nos. RCL002667 through RCL002693); and Ricoh has already produced the file history of the '432 patent (see production Nos. RCL000001 through RCL000265) required of category (c).

With respect to your letter of March 10th, Ricoh has met the claim chart disclosure requirements of PLR 3-1. Ricoh's preliminary claim charts set forth its theories of infringement with sufficient specificity. See Network Caching Technology, LLC v. Novel, Inc., 2003 U.S. Dist. Lexis 9881, *12-13 (N.D. Cal. 2003) (stating that "a party may comply with Patent LR 3-1 by setting forth particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement beyond that which is provided by the mere language of the patents themselves").

Ricoh objects to the ASIC Defendants' attempt to turn the preliminary claim charts into a forum for litigation of the substantive issues. Such tactics are contrary to the Northern District of California's stated purpose of claim charts under PLR 3-1. Id. (finding that PLR 3-1 does not require the patentee produce evidence of infringement or ironclad and irrefutable claim constructions; the preliminary infringement contentions are not meant to be a forum for litigation of the substantive issues).

To the extent the ASIC Defendants take the position that Ricoh has not met its obligations under Fed. R. Civ. P. 11, this position is inconsistent with the present facts and the applicable case law. Ricoh has previously made clear that it conducted a good faith infringement analysis and, as such, has met the requirements of Rule 11 that you appear to complain about. See Q-Pharma, Inc. v. The Andrew Jergens Company, No. 03-1184, (Fed. Cir. Mar. 8, 2004) (applying Ninth Circuit law and noting that a Rule 11 violation does not exist merely because the accused disagrees with the patentee's infringement analysis, and further finding that "an infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter"). Ricoh has met its burden here.

With respect to the response to interrogatories served in the Synopsys, Inc. v. Ricoh Co., Ltd. litigation (" Synopsys litigation"), which issue was also raised in your letter of March 4, 2004,[1] we note that the Synopsys litigation is a separate case that has not been consolidated with the Ricoh Co., Ltd. v. Aeroflex et al. litigation ("Ricoh litigation"). As such, the disclosure of the Preliminary Infringement Charts in the Ricoh litigation does not obligate us to supplement our responses to interrogatories served in the Synopsys litigation. Nevertheless, we will review the issue and supplement our responses if appropriate.

---

[1] We note that you had failed to timely object to our position on the issue as previously set forth in the letters from Edward Meilman on December 17th and 19th, 2003.

Thomas C. Mavrakakis, Esq.
March 12, 2004
Page 3

      We believe that we have addressed all outstanding issues raised in your letters of March 4, 8 and 10, 2004.  To the extent there are any other issues that have not been specifically addressed herein, we do <u>not</u> acquiesce to or otherwise agree with your position and recommend that you identify such remaining issues immediately so that they can be addressed at this time.

      We are more than willing to schedule a meet and confer consistent with Judge Chen's directives on a mutually agreeable date and time in order to resolve any outstanding issues.

Very truly yours,

Eric Oliver

EO/cdl
Enclosures

PAGES 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARTIN J. JENKINS, JUDGE

```
RICOH COMPANY,            )
                          )
          PLAINTIFF,      )
                          )
   VS.                    )        NO. C03-4669 MJJ
                          )
AEROFLEX, ET AL.,         )
                          )
          DEFENDANT.      )
_____)
```

SAN FRANCISCO, CALIFORNIA
TUESDAY, APRIL 6, 2004

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:


FOR PLAINTIFF:             DICKSTEIN SHAPIRO MORIN & OSHINSKY
                           2101 L STREET NW
                           WASHINGTON, DC  20037-1526
                   BY:     **GARY M. HOFFMAN, ESQ.**


                           ALTSHULER, BERZON, NUSSBAUM
                           RUBIN & DEMAIN
                           177 POST STREET, SUITE 300
                           SAN FRANCISCO, CALIFORNIA  94108
                   BY:     **JEFFREY B. DEMAIN, ESQ.**


FOR DEFENDANT:             HOWREY SIMON ARNOLD & WHITE
                           301 RAVENSWOOD AVENUE
                           MENLO PARK, CALIFORNIA  94025
                   BY:     **THOMAS C. MAVRAKAKIS, ESQ.**
                           **TERESA CORBIN, ESQ.**


*REPORTED BY:*             **SAHAR MCVICKAR, RPR - OFFICIAL REPORTER**
                           **UNITED STATES DISTRICT COURT**
                           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**


(COMPUTERIZED TRANSCRIPTION BY ECLIPSE)

1    ASSISTANCE.  I DON'T KNOW THAT I'M GOING TO RESOLVE THAT ISSUE

2    IN A MOTIONS CONTEXT.  I THINK WHAT IS GOING TO END UP

3    HAPPENING IS I'M GOING TO GIVE YOU A CALL BACK ON THE PHONE,

4    AND WE'LL WALK THROUGH IT.

5         THOSE LOCAL PATENT RULES ARE MEANT TO BE FLUID, AND

6    THEY ARE MEANT TO CAUSE YOU FOLKS TO COME TOGETHER WITH SOME

7    DEADLINES THAT ARE TRIGGERED IN THE LOCAL PATENT RULES.  AND

8    AMENDMENTS ARE ALSO ALLOWED TO THOSE CONTENTIONS.

9         SO TO DRAW A LINE IN THE SAND AND FILE A MOTION AND

10   SAY, "I HAVEN'T READ IT, SO I'M NOT GOING TO PREJUDGE IT," TO

11   SEEK COURT INTERVENTION AND TIME ON A MOTIONS CALENDAR FOR

12   SOMETHING THAT SHOULD BE ABLE TO WORKED OUT IS A CONCERN TO ME.

13        THE DISCOVERY ISSUES ARE DIFFERENT.

14        MR. HOFFMAN:  YOUR HONOR, I BELIEVE OUR OPPOSITION

15   TO THEIR MOTION TO STRIKE OUR PRELIMINARY INFRINGEMENT

16   CONTENTIONS IS --

17        THE COURT:  INFRINGEMENT, THAT IS WHAT I MEAN.

18        MR. HOFFMAN:  SHOULD WE GO AHEAD AND FILE THE

19   RESPONSE TO THAT?

20        THE COURT:  WELL, LET ME TAKE A -- YEAH, FILE THE

21   RESPONSE TO IT.

22        MR. HOFFMAN:  OKAY.

23        THE COURT:  I'LL TRY TO TAKE A LOOK AT THEM TOWARD

24   TO END OF THE WEEK AND SEE IF I CAN GET YOU FOLKS ON THE PHONE

25   AND TALK A LITTLE BIT ABOUT WHERE THE RUBBER MEETS THE ROAD ON

1 of 21 DOCUMENTS

**INTERTRUST TECHNOLOGIES CORP., Plaintiff, v. MICROSOFT CORPORATION, Defendant.**

**No. C 01-1640 SBA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2003 U.S. Dist. LEXIS 22736*

**November 26, 2003, Decided**
**December 1, 2003, Filed**

**PRIOR HISTORY:** *Intertrust Techs. Corp. v. Microsoft Corp., 275 F. Supp. 2d 1031, 2003 U.S. Dist. LEXIS 19117 (N.D. Cal., 2003)*

**DISPOSITION:** [*1] Microsoft's Motion to strike GRANTED IN PART.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For Intertrust Technologies Corporation, PLAINTIFF: John W Keker, Keker & Van Nest LLP, San Francisco, CA USA. Stephen E Taylor, Taylor & Co Law Offices, Alameda, CA USA. Henry C Bunsow, Keker & Van Nest LLP, San Francisco, CA USA. Henry C Lebowitz, Pennie & edmonds LLP, New York, NY USA. John J Lauter, Pennie & Edmonds LLP, New York, NY USA. Jon B Streeter, Keker & Van Nest LLP, San Francisco, CA USA. Michael J Lyons, Pennie & Edmonds LLP, Palo Alto, CA USA. Michael H Page, Keker & Van Nest, San Francisco, CA USA. Ragesh K Tangri, Keker & Van Nest LLP, San Francisco, CA USA.

For Microsoft Corporation, DEFENDANT: Eric L Wesenberg, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA. Sam Citron O'Rourke, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA USA. Heidi L Keefe, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA. James E Geringer, Klarquist Sparkman Campbell Leigh & Whin, Portland, OR USA. John D Vandenberg, Klarquist Sparkman Campbell Leigh & Win, Portland, OR USA. Mark R Weinstein, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA. Steven Alexander, Klarquist Sparkman Campbell Leigh & Whin, Portland, OR USA. William [*2] L Anthony, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA.

For MacRovision Corporation, INTERESTED PARTY: Bruce A Wessel, Irell & Manella LLP, Los Angeles, CA USA.

For Intertrust Technologies Corporation, CROSS-DEFENDANT: Stephen E Taylor, Taylor & Co Law Offices, Alameda, CA USA. John J Lauter, Pennie & Edmonds LLP, New York, NY USA. Michael J Lyons, Pennie & Edmonds LLP, Palo Alto, CA USA.

For Microsoft Corporation, COUNTER-CLAIMANT: Kristin L Cleveland, Klarquist Sparkman LLP, Portland, OR USA.

For Intertrust Technologies Corporation, COUNTER-DEFENDANT: John J Lauter, Pennie & Edmonds LLP, New York, NY USA. Michael J Lyons, Pennie & Edmonds LLP, Palo Alto, CA USA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

**OPINIONBY:** SAUNDRA BROWN ARMSTRONG

**OPINION:**

ORDER GRANTING IN PART DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PATENT LOCAL RULE 3-1 AND 3-2 DISCLOSURES AND TO STAY MICROSOFT'S PATENT LOCAL RULE 3-3 AND 3-4 INVALIDITY CONTENTIONS

This matter comes before the Court on Microsoft Corporation's ("Microsoft") Motion to Strike Plaintiff's Patent Local *Rule 3-1 and 3-2* Disclosures And To Stay Microsoft's Patent Local *Rule 3-3 and 3-4* Invalidity Contentions [*3] (the "Motion"). Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS IN PART Microsoft's Motion.

## BACKGROUND

Unsurprisingly, this a contentious patent suit brought by InterTrust Technologies Corporation ("InterTrust") against Microsoft. InterTrust alleges that many of Microsoft's software products employ a security module that infringes upon the patents InterTrust owns for security modules. InterTrust alleges 150 claims from 11 patents.

The Patent Local Rules require a plaintiff to disclose its patent claims, the defendant's products that allegedly infringe the patent claims, and how they do so (the "Disclosures"). Over the past two years, during the course of this case, InterTrust has amended its Disclosures five times already. Microsoft has moved the Court to order InterTrust to amend them a sixth.

## LEGAL STANDARD

Patent Local *Rule 3-1* (the "Disclosure Rule") sets forth the requirements for disclosing asserted claims and preliminary infringement contentions. This rule takes the place of "a series of interrogatories [*4] that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Technology, LLC v. Novell, Inc., 2002 U.S. Dist. LEXIS 26098, at *12 (N.D.Cal. 2002).* It is designed to "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Atmel Corp. v. Information Storage Devices, Inc., 1998 U.S. Dist. LEXIS 17564, at *7 (N.D.Cal. 1998).* Under the Disclosure Rule, a party claiming patent infringement must disclose:

(a) Each claim of each patent in suit that is allegedly infringed by each opposing party;

(b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the [*5] claimed method or process;

(c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by *35 U.S.C. § 112(6)*, the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

Patent Local *Rule 3-1*.

## DISCUSSION

Microsoft contends that InterTrust has violated the Disclosure Rule because: (1) InterTrust describes Microsoft's products by their function rather than their name (Patent Local *Rule 3-1(a)-(b)*); (2) InterTrust fails to identify the specific versions of the accused Microsoft products (Patent Local *Rule 3-1(a)-(b)*); and (3) InterTrust fails to disclose how the accused Microsoft products allegedly practice the elements of InterTrust's asserted patent claims (Patent Local *Rule 3-1(c)*).

## A. Patent Local Rule 3-1(a)-(b)

InterTrust has identified Microsoft's allegedly infringing software by their function, rather than the product name. It has also failed to name the version number of the software program that allegedly infringes (e.g. Microsoft [*6] Windows 2.0, Microsoft Windows 2.1). The overriding principle of the Patent Local Rules is that they are designed make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims.

InterTrust's Disclosures do not comport with the spirit of the Patent Local Rules. InterTrust asserts that past, present and as yet unmade future versions of Microsoft's products do and will infringe its patents. Microsoft, however, cannot be expected to defend against claims of infringement for products that it has not produced yet. Nor can Microsoft be expected to guess which versions of its products InterTrust believes to have software modules that infringe its software patents. InterTrust argues that requiring it to name the product and version number is the equivalent of a patentee identifying an infringing car radio, and an automobile manufacturer arguing that the Patent Local Rules require identification, not of the radio, but of every automobile

in which the radio is found. InterTrust's analogy, however, oversimplifies the issue. A radio is a radio whether it is placed in a GM Truck or a Geo Metro. [*7] Software and computer processes are not a discreet device, like a car radio.

## B. Patent Local Rule 3-1(c) and Microsoft's Appendix A

Local *Rule 3-1(c)* requires that a plaintiff explain how each allegedly infringing product meets each element of the plaintiff's asserted patent claim. This requires that "a plaintiff compare an accused product to its patents on a claim by claim element by element basis for at least one of [] defendant's products." *Network Caching Technology, LLC v. Novell, Inc., 2002 U.S. Dist. LEXIS 26098, 2002 WL 32126128, at *5 (N.D.Cal. 2002).* In Network Caching, the plaintiff based its infringement claims on Defendant's white paper and marketing collateral. It did not reverse engineer the Defendant's software. The court observed that *FRCP 11* requires that a plaintiff make a reasonable inquiry into the applicable facts and law before filing a document, such as Patent Local *Rule 3-1* Disclosures. *2002 U.S. Dist. LEXIS 26098, [WL] at *4.* At the Patent Local *Rule 3-1* Disclosure stage, a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required. *2002 U.S. Dist. LEXIS 26098, [WL] at *5.*

Microsoft has created a chart, Appendix [*8] A of Microsoft's Reply, that sets forth what it perceives as deficiencies in InterTrust's claims. Some of these deficiencies do appear, as InterTrust describes them, "nit picky." The purpose of Patent Local *Rule 3-1*, however, is in fact to be nit picky, to require a plaintiff to crystalize its theory of the case and patent claims. Accordingly, InterTrust must amend the deficiencies listed in Microsoft's Appendix A.

## C. Patent Local Rule 3-1(c) As It Applies to *Section 112(6)* Patent Claims

Local *Rule 3-1(c)* also requires that a plaintiff explain how each allegedly infringing product meets each element of claims governed *35 U.S.C. Section 112(6). Section 112(6)* states "an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof..." Simplified, this statute provides that under certain circumstances, a claim can recite a function without indicating the structure, material or act that performs that function.

This type of claim covers the structures, materials or acts (and equivalents) set forth in the patent that

correspond to that [*9] function. As such, claim elements that recite means-plus-function language do not encompass all "means" to perform a recited function and may not be as broad as the plain language may convey to the reader. Means-plus-function claim language is traditionally used by a claims drafter using the "means for [performing a function]" format. The use of this language triggers a presumption that the claim falls under *Section 112(6)*, whereas the lack of such language triggers the opposite presumption. *Personalized Media Communications, LLC v. International Trade Commission, 161 F.3d 696 (Fed.Cir. 1998).* If such means-plus-function claims are asserted, then under Patent Local *Rule 3-1(c)*, a party must disclose the identity of the structure(s), act(s), or material(s) in the allegedly infringing product that performs the claimed function.

InterTrust states that it has not yet asserted means-plus-function claims and, thus, is not obligated to make *3-1(c)* disclosures regarding them. It suggests that the Patent Local Rules should be understood as not requiring *Section 112(6)* disclosures at this stage of the proceedings. Specifically, 45 days after disclosures are made under Patent [*10] *Rule 3-1*, the parties are supposed to submit preliminary invalidity contentions under Patent *Rule 3-3*. Ten days after the *Rule 3-3* documents are exchanged, Patent Local *Rule 4-1(a)* provides that the parties will exchange a list of claim terms, phrases, or clauses which a party contends should be governed by *Section 112(6)*. If the exchange of documents under Patent Local *Rule 3-1* takes place before a party is even obligated to state which of its claims are governed by *Section 112(6)*, then how can Patent Local *Rule 3-1* possibly obligate a party to disclose *Section 112(6)* claims before it has to, or is even ready to do so? The Court agrees that *Section 112(6)* claims do not need to be disclosed at the Patent Local *Rule 3-1* disclosure stage.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Microsoft's Motion.

IT IS HEREBY ORDERED THAT **no later than thirty (30) days from the date this Order is filed,** Intertrust shall file an amended Disclosure that cures those deficiencies identified in Microsoft's Appendix A, and shall list the product and version number of the allegedly infringing Microsoft software. This order does not apply to *Section 112(6)* means-plus-function [*11] claims.

IT IS FURTHER ORDERED THAT Microsoft's Patent Local *Rule 3-3 and 3-4* contentions are stayed until 45 days after InterTrust files its amended Disclosure.

2003 U.S. Dist. LEXIS 22736, *

IT IS SO ORDERED.                           SAUNDRA BROWN ARMSTRONG

Dated: November 26, 2003                    United States District Judge

11 of 55 DOCUMENTS

**HEWLETT-PACKARD COMPANY, et al., Plaintiffs, v. EMC CORPORATION, Defendant.**

**Case No.: C 02-04709 JF (PVT)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

*2003 U.S. Dist. LEXIS 22742*

**July 9, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to strike granted.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For Hewlett-Packard Company, PLAINTIFF: Robert T Haslam, Heller, Ehrman, White & McAuliffe LLP, Menlo Park, CA USA. Chris Landgraff, Barlitt Beck Herman Palenchar & Scott, Chicago, IL USA. Mark E Ferguson, Barlitt Beck Herman Palenchar & Scott, Chicago, IL USA. Amy Kathleen Van Zant, Heller Ehrman White & McAuliffe LLP, Menlo Park, CA USA. Michael K Plimack, Heller, Ehrman, White & McAuliffe LLP, San Francisco, CA USA.

For EMC Corporation, DEFENDANT: Stephen N Adams, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA. Chris R Ottenweller, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA. Lisa C Ward, Orrick Herrington & Sutcliffe LLP, Irvine, CA USA. Mark R Weinstein, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA. Todd Michael Briggs, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA USA.

For EMC Corporation, COUNTER-DEFENDANT: Mark R Weinstein, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA USA.

**JUDGES:** PATRICIA V. TRUMBULL, United States Magistrate Judge.

**OPINIONBY:** PATRICIA V. TRUMBULL

**OPINION:**

**ORDER GRANTING MOTION TO STRIKE PLAINTIFFS' AMENDED INITIAL DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS**

On [*2] May 20, 2003, the parties appeared before Chief Magistrate Judge Patricia V. Trumbull (pursuant to the referral of this motion to Judge Trumbull by Judge Fogel) for hearing on Defendant's Motion to Strike Plaintiffs' Amended Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions. n1 Based on the briefs and arguments submitted,

IT IS HEREBY ORDERED that Defendant's motion is GRANTED.

n1 The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

*Patent Local Rule 3-1* states that a patentee's initial disclosure *shall* contain, in relevant part:

"(b) Separately, for each asserted claim, each accused apparatus, product, device, process, method, act or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified [*3] by name,

2003 U.S. Dist. LEXIS 22742, *

if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

(c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by *35 U.S.C. § 112*(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

Plaintiffs' disclosure fails to meet these requirements. The disclosure must address each product (or other accused instrumentality) separately. The disclosure must also identify where each element of each claim is found within each product (or other accused instrumentality).

Plaintiffs' reliance on *Hoffman-La Roche, Inc. v. Invamed Inc., 213 F.3d 1359 (Fed.Cir. 2000)*, is misplaced. In *Hoffman-La Roche,* the Plaintiff alleged in its complaint that it was not possible to determine whether the Defendant's process infringed the subject patent without first obtaining information from the Defendant. In the present case, Plaintiffs have alleged that one or more of [*4] Defendant's products do infringe the claims of seven patents. This allegation was *not* made on information and belief. The court thus assumes that, unlike the situation in *Hoffman-La Roche,* Plaintiffs do know how at least one of Defendant's products infringes at least one of the patents.

To the extent Plaintiffs, for whatever reason, do not yet know where an element of a claim is found within a particular product, they should so state in their initial disclosure. The ramifications of any such lack of knowledge, if any, may then be subject to appropriate motion work.

IT IS FURTHER ORDERED that Defendant's motion to phase the Markman hearing is taken under submission pending filing of the parties Joint Claim Construction and Prehearing Statement.

IT IS FURTHER ORDERED that the parties shall meet and confer regarding the schedule in this case. No later than July 15, 2003, the parties shall file a Joint Scheduling Statement, setting forth their joint or respective scheduling proposals starting with a deadline for Plaintiffs to serve their second amended initial disclosures, and proceeding up through the Markman hearing. After reviewing the parties proposals, the court will issue [*5] a revised scheduling order.

Dated: 7/9/03

PATRICIA V. TRUMBULL

United States Magistrate Judge

LEXSEE

**Q-PHARMA, INC., Plaintiff-Appellee, v. THE ANDREW JERGENS COMPANY, Defendant-Appellant.**

**03-1184**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

*2004 U.S. App. LEXIS 4380*

**March 8, 2004, Decided**

**PRIOR HISTORY:** [*1] Appealed from: United States District Court for the Western District of Washington. Judge Marsha J. Pechman.

**DISPOSITION:** Affirmed.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** Stuart R. Dunwoody, Davis Wright Tremaine LLP, of Seattle, Washington, argued for plaintiff-appellee. With him on the brief was William R. Sherman.

Steven B. Kelber, Piper Rudnick, LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were Jerold I. Schneider and Raymond Millien.

**JUDGES:** Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

**OPINIONBY:** LOURIE

**OPINION:** LOURIE, Circuit Judge.

The Andrew Jergens Company appeals from the decision of the United States District Court for the Western District of Washington denying its motion for Rule 11 sanctions against Q-Pharma, Inc. Q-Pharma, Inc. v. Andrew Jergens Corp., No. C01-1312P (W.D. Wash. Sept. 10, 2002) ("Rule 11 Order"). Jergens also appeals from the district court's decision denying attorney fees under *35 U.S.C. § 285* and granting summary judgment to Q-Pharma on Jergens' antitrust counterclaim. Q-Pharma, Inc. v. Andrew Jergens Corp., No. C01-1312P (W.D. Wash. Nov. 18, 2002) ("Attorney Fee Order"). For the [*2] reasons stated below, we affirm.

BACKGROUND

Q-Pharma owns U.S. Patent *4,654,373*, which is directed to a method for therapeutically treating damaged tissue by topically administering a composition containing Coenzyme Q[10] ("CoQ[10]"). The sole independent claim of the *'373* patent reads as follows:

> A method of therapeutically treating impaired or damaged tissue in humans and animals which comprises topically administering to such tissue a composition comprising as the principal active ingredient a therapeutically effective amount of Coenzyme Q[10] (2,3-dimethoxy-5-methyl-6-decaprenyl-benzoquinone) in admixture with a pharmaceutically acceptable carrier.

*'373* patent, col. 8, ll. 21-27 (emphases added). Dependent claims 2 and 3 recite methods in which the compositions administered contain 0.1-10% CoQ[10] by weight and 0.0001-0.1% CoQ[10] by weight, respectively. Id., col. 8, ll. 28-33.

Jergens markets and sells a product known as Curel (R) Age Defying Therapeutic Moisturizing Lotion with Coenzyme Q[10] (the "Curel (R) CoQ[10] lotion"). In its advertising, Jergens states that its age-defying lotion, "which now contains the natural power of Q10, [*3] helps reveal visibly healthier skin." Jergens' advertising for that product also claims that CoQ[10] "defends against the signs of aging to keep skin looking younger, smoother and more vital"; "helps support our skin's natural ability to restore itself, reducing visible signs of aging"; and "helps to restore skin's natural elasticity." In addition, the label on the Curel (R) CoQ[10] lotion

prominently displays the term "Q[10]" and touts the benefits of CoQ[10], in marked contrast to the labels on Jergens' other therapeutic moisturizing lotions, which do not contain CoQ[10].

In August 2001, Q-Pharma filed suit against Jergens in the United States District Court for the Western District of Washington, alleging that Jergens' sale of the Curel (R) CoQ[10] lotion infringed the '373 patent. Jergens counterclaimed for declaratory judgments of noninfringement, invalidity, and unenforceability of the '373 patent and for damages for violation of the antitrust laws. During the course of discovery, Q-Pharma repeatedly demanded from Jergens information regarding the contents of the Curel (R) CoQ[10] lotion. Jergens refused to comply with those requests but, in response to Q-Pharma's [*4] motion to compel, filed a motion for summary judgment of noninfringement in which it revealed that the accused product contained no more than 0.00005% CoQ[10] by weight. Upon learning that information, Q-Pharma elected to abandon its suit. In May 2002, Q-Pharma sought a voluntary dismissal with prejudice and agreed not to sue Jergens in the future for infringement due to the sale of the Curel (R) CoQ[10] lotion. The court subsequently dismissed with prejudice Q-Pharma's infringement claim and Jergens' noninfringement, invalidity, and unenforceability counterclaims, leaving only Jergens' antitrust counterclaim unresolved.

In September 2002, the district court denied Jergens' motion for sanctions against Q-Pharma under *Rule 11 of the Federal Rules of Civil Procedure* ("Rule 11"). The court first found that Q-Pharma had made a sufficient pre-filing inquiry to determine whether the accused product infringed. Specifically, the court noted that, although Q-Pharma did not conduct a chemical analysis of Jergens' Curel (R) CoQ[10] lotion before filing suit, its attorneys performed a claim construction analysis and then relied on Jergens' advertising [*5] statements, which suggested that the Curel (R) CoQ[10] lotion contained a "therapeutically effective amount" of CoQ[10]. Rule 11 Order, slip op. at 4. Moreover, the court rejected Jergens' argument that Q-Pharma was on notice of the patent's invalidity prior to filing suit, finding that, although the patent's validity had been challenged in the past, several companies had taken licenses under the patent. Id. at 5. Finally, the court found that Jergens' Rule 11 motion was untimely under Rule 11's "safe harbor" provision, *Fed. R. Civ. P. 11(c)(1)(A)*, because it was filed after Q-Pharma had voluntarily withdrawn its claim and therefore provided Q-Pharma with no opportunity to cure the challenged conduct. Rule 11 Order, slip op. at 5-6.

In November 2002, the district court denied Jergens' motion for attorney fees under *35 U.S.C. § 285*, finding

that Jergens had failed to prove by clear and convincing evidence that the case was exceptional. More particularly, the court determined that Q-Pharma's pre-filing infringement investigation, while not ideal, did not rise to the level of bad faith litigation or gross [*6] negligence required for an award of attorney fees under *§ 285*. Attorney Fee Order, slip op. at 9. The court also found that, because it had successfully licensed the '373 patent to more than ten companies, Q-Pharma had reason to believe that its patent was valid when it filed suit. Id. at 10-11. The court thus determined that the case was not exceptional and declined to award attorney fees.

In the same order, the district court also granted summary judgment to Q-Pharma on Jergens' antitrust counterclaim on the ground that Q-Pharma did not violate the antitrust laws by enforcing its patent. Applying the test set forth in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993)*, the court determined that Q-Pharma's infringement lawsuit was not a mere "sham" to cover an attempt to interfere with Jergens' business relationships. Attorney Fee Order, slip op. at 11-12. Rather, the court determined as a matter of law that Q-Pharma's decision to proceed with the lawsuit was not "objectively baseless" in light of Q-Pharma's reasonable interpretation of the claim language and prosecution history as well [*7] as Jergens' advertising touting the therapeutic effects of CoQ[10] in the accused product. Id. at 13. In addition, the court denied Jergens' motion for a continuance under *Federal Rule of Civil Procedure 56(f)* ("Rule 56(f)"), noting that more discovery would only lead to evidence of Q-Pharma's subjective intent, which became moot once the court found that Q-Pharma's actions were not objectively baseless, and therefore would not preclude summary judgment. Id. at 15. Finally, the court denied Jergens' motion for reconsideration of the court's refusal to compel Q-Pharma to produce attorney-client privileged documents, finding that Q-Pharma had not waived privilege and that the privileged information was not "vital to [Jergens'] defense." Id. at 15-16. Having thus granted summary judgment to Q-Pharma and denied Jergens' discovery-related motions, the court dismissed Jergens' antitrust counterclaim.

Jergens timely appealed to this court. We have jurisdiction pursuant to *28 U.S.C. § 1295(a)(1)*.

DISCUSSION

In deciding issues not unique to our exclusive jurisdiction, we apply the law of the regional circuit [*8] in which the district court sits. See *Midwest Indus., Inc. v. Karavan Trailers Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999)* (en banc in relevant part). We therefore apply the law of the Ninth Circuit to the question of sanctions

under *Rule 11.* See *Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1072 (Fed. Cir. 2002).* The Ninth Circuit defines a frivolous claim or pleading for Rule 11 purposes as one that is "legally or factually 'baseless' from an objective perspective . . . [and made without] a reasonable and competent inquiry." *Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002)* (citation omitted); see also *Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990)* (en banc). We review a district court's denial of sanctions under *Rule 11* for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990).*

We apply Federal Circuit law to the issue of attorney fees in patent infringement cases. *Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1343 (Fed. Cir. 2001).* We review a denial of attorney fees under *35 U.S.C. § 285* [*9] for an abuse of discretion; however, we review the factual determination whether a case is exceptional under *§ 285* for clear error. *Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003).*

When reviewing a district court's judgment involving federal antitrust law, we generally apply the law of the regional circuit in which the district court sits. *Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1067 (Fed. Cir. 1998)* (en banc in relevant part). However, "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law." *Id. at 1068.* Under Federal Circuit law, we review a district court's grant of summary judgment de novo, reapplying the same standard used by the district court. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998).* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material [*10] fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).*

We look to regional circuit "procedural law for precedential guidance concerning practice under *Rule 56(f).*" *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc., 249 F.3d 1341, 1355 n.4 (Fed. Cir. 2001).* The Ninth Circuit reviews a district court's decision not to permit additional discovery under *Rule 56(f)* for an abuse of discretion. *Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994).*

A. Rule 11

On appeal, Jergens first challenges the district court's denial of its motion for sanctions. Jergens' primary argument on this point is that Q-Pharma's investigation prior to filing suit was inadequate under *Rule 11.* More specifically, Jergens contends that Q-Pharma's pre-filing claim construction, if any, was frivolous; that Q-Pharma's reliance on Jergens' advertising alone did [*11] not amount to a reasonable effort to determine whether the accused product satisfied the claim limitations, especially given that Q-Pharma could have easily performed a chemical analysis of the accused product; and that Q-Pharma should have known that the *'373* patent was invalid prior to filing suit. Jergens next argues that its refusal to disclose the contents of the accused product during litigation was irrelevant to the adequacy of Q-Pharma's pre-filing investigation and that the district court's reliance on such behavior was improper. Finally, Jergens maintains that its motion for sanctions was timely. On this point, Jergens contends that only during discovery did it learn of Q-Pharma's failure to conduct a reasonable pre-filing investigation and that, even though Q-Pharma had withdrawn its claim for infringement, Q-Pharma still could have cured its omission by amending its answer to the antitrust counterclaim.

Q-Pharma responds that the district court acted within its discretion in denying Jergens' motion for sanctions. Q-Pharma argues that it satisfied the requirements of *Rule 11* because its attorney conducted a nonfrivolous claim construction analysis prior to filing suit; [*12] its claim of infringement was factually supported by Jergens' advertising and labeling statements regarding the accused product; and its belief in the validity of the *'373* patent was supported, among other reasons, by the fact that several companies took licenses to the patent. Q-Pharma also maintains that the district court acted within its discretion in evaluating Jergens' dilatory litigation tactics. Lastly, Q-Pharma argues that Jergens' motion for sanctions was untimely because it was filed after Q-Pharma had moved to voluntarily dismiss its infringement claim, thereby depriving Q-Pharma of an opportunity to cure under Rule 11's "safe harbor" provision.

We agree with Q-Pharma that the district court did not abuse its discretion in denying Jergens' motion for sanctions. *Rule 11(b)* requires an attorney to conduct a reasonable inquiry into the law and facts before filing a pleading in a court and to certify that the claims contained therein are not frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. *Rule 11(c)* then permits a district court to impose sanctions on a party and its attorneys for violation of *subdivision (b).* In the context [*13] of patent infringement actions, we have interpreted *Rule 11*

to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement. See *Antonious, 275 F.3d at 1072*; *View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000)*; *Judin v. United States, 110 F.3d 780, 784 (Fed. Cir. 1997)*; *S. Bravo Sys., Inc. v. Containment Techs. Corp., 96 F.3d 1372, 1375 (Fed. Cir. 1996)*.

Jergens' challenge to the reasonableness of Q-Pharma's pre-filing inquiry under Rule 11 proceeds on several grounds. Jergens first claims that there is no evidence that Q-Pharma's attorneys interpreted any of the claims of the *'373* patent prior to filing suit. However, the declaration of Bruce Kaser, one of Q-Pharma's attorneys, flatly rebuts that argument. In his declaration Mr. Kaser stated that he, along with a patent attorney colleague, interpreted and analyzed the *'373* patent before Q-Pharma filed suit against Jergens. Kaser further declared that, although he did not remember preparing a claim chart, he did review the patent's [*14] claims, written description, and prosecution history and interpret the individual claim terms. In any event, a claim chart is not a requirement of a pre-filing infringement analysis, as the owner, inventor, and/or drafter of a patent ought to have a clear idea of what the patent covers without the formality of a claim chart. The district court's finding that Q-Pharma conducted a claim interpretation analysis prior to filing suit is therefore supported by the record.

Jergens asserts that any pre-filing claim interpretation performed by Q-Pharma's attorneys was frivolous. We disagree. Claim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language. In this case, however, it is not for us to determine whether Q-Pharma's pre-filing interpretation of the asserted claims was correct, but only whether it was frivolous. See *Antonious, 275 F.3d at 1073*. We conclude that it was not, for Q-Pharma's claim interpretation, while broad, followed the standard canons of claim construction and was reasonably supported by the intrinsic record. According to Kaser's declaration, Q-Pharma interpreted [*15] the "principal active ingredient" limitation of claim 1 to read on "any effective therapeutic use of CoQ[10] in a skin lotion -- even where that lotion might contain other ingredients that would moisturize skin" and interpreted the term "therapeutically effective amount" to mean "an amount sufficient to have therapeutic benefit." Q-Pharma further read claim 1 to require no specified minimum amount of CoQ[10] because, unlike the dependent claims, claim 1 includes no such limitation. Those interpretations comport with the plain meaning of the claim language and do not appear to be inconsistent with the patent's written

description and prosecution history. Indeed, we reject Jergens' contention that the patent's written description defines the term "therapeutically effective amount," which is found in the independent claim, as requiring 0.1% to 10% CoQ[10]. Even though the written description discloses percentage ranges of CoQ[10] in its preferred embodiments (which are recited in the dependent claims), nothing in the written description mandates Jergens' limited interpretation of the disputed claim language. Thus, in light of the patent's claims, written description, and prosecution [*16] history, as well as Kaser's declaration, we cannot say that Q-Pharma's pre-filing claim interpretation was baseless and made without a reasonable and competent inquiry. We therefore conclude that Q-Pharma's interpretation of the asserted claims prior to filing suit was not frivolous.

Jergens' next contention is that Q-Pharma's pre-filing infringement analysis was inadequate in that it relied solely on Jergens' advertising statements and did not include a chemical analysis of the accused product. While it is true that Q-Pharma could have conducted a more thorough investigation before filing suit, we conclude that its pre-filing infringement analysis was supported by a sufficient evidentiary basis. Q-Pharma acquired a sample of the Curel (R) CoQ[10] lotion and reviewed its advertising and labeling, which listed the product's ingredients and repeatedly touted the therapeutic effects of CoQ[10]. Q-Pharma concluded, however, that chemical analyses identifying the actual percentage of CoQ[10] in the accused product would not likely have changed its infringement analysis. Given Q-Pharma's nonfrivolous interpretation of claim 1 as requiring no specified minimum amount of CoQ[10] and [*17] Jergens' forthright assertions regarding the therapeutic effects of CoQ[10] in the accused product, we conclude that it was reasonable for Q-Pharma to believe that the accused product contained a "therapeutically effective amount" of CoQ[10] as the "principal active ingredient."

Jergens argues nonetheless that our case law requires the imposition of sanctions in this case. First, Jergens asserts that our decision in *View Engineering, Inc. v. Robotic Vision Systems, Inc., 208 F.3d 981 (Fed. Cir. 2000)*, makes clear that reliance on advertising as a basis for filing an infringement suit is not sufficient under *Rule 11*. We disagree with that characterization of View Engineering. In that case, we affirmed the district court's award of Rule 11 sanctions because the patentee's reliance on the accused infringer's advertising statements alone did not provide an adequate factual basis to support the patentee's infringement counterclaim. Importantly, we held that sanctions were warranted because the patentee had not performed any claim construction analysis or an infringement analysis prior to filing its

2004 U.S. App. LEXIS 4380, *

counterclaim for infringement. *Id. at 985.* In [*18] fact, we emphasized that "the presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under *Rule 11.*" *Id. at 986.* In the present case, Q-Pharma did not file suit based solely on Jergens' advertising; critically, it also relied on its own comparison of the asserted claims with the accused product.

Second, Jergens relies on our decision in *Judin v. United States, 110 F.3d 780 (Fed. Cir. 1997),* in which we observed that the patentee could have purchased an accused device relatively inexpensively compared with the cost of litigation, to argue that Q-Pharma should have performed inexpensive chemical tests to determine infringement. Judin, however, is easily distinguishable from the present case: In Judin, we concluded that the district court abused its discretion in not awarding sanctions because the patentee had not attempted to obtain a sample of the accused product and had not compared the accused device with the patent claims prior to filing suit. *Id. at 784.* Here, in contrast, Q-Pharma did obtain a sample of the Curel (R) CoQ[10] [*19] lotion and compared that product with the asserted claims of the *'373* patent. Again, our case law makes clear that the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis. *View Eng'g, 208 F.3d at 986;* see also *Antonious, 275 F.3d at 1073-74; Judin, 110 F.3d at 784; S. Bravo Sys., 96 F.3d at 1375.* And an infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter. Because Q-Pharma obtained a sample of the accused product, reviewed Jergens' statements made in the advertising and labeling of the accused product, and, most importantly, compared the claims of the patent with the accused product, we conclude that its claim of infringement was supported by a sufficient factual basis.

Jergens also argues that Q-Pharma's infringement suit was frivolous because Q-Pharma should have known that the *'373* patent was invalid prior to filing suit. We conclude that it was not, for Q-Pharma reasonably believed its patent to be valid in light of the statutory presumption of validity, [*20] *35 U.S.C. § 282 (2000),* as well as the licenses that several companies took under the patent. The two (or four) n1 letters from accused infringers questioning the validity of the *'373* patent do not negate Q-Pharma's legal and factual bases for believing the patent to be valid. We therefore cannot say that Q-Pharma's expectation of the *'373* patent's validity was frivolous.

n1 The parties dispute the precise number of letters questioning the *'373* patent's validity. Whether the number is two or four, however, does not affect our analysis.

Jergens finally argues that the district court improperly relied on its refusal to disclose the contents of the accused product during litigation. However, we do not read the district court's decision as relying on Jergens' conduct during litigation in its assessment of Q-Pharma's pre-filing investigation. Rather, the district court simply stated that, if sanctions were appropriate, they could only be imposed for Jergens' costs and fees up to the point when [*21] the first set of interrogatories issued, reasoning that Jergens could not withhold crucial information during discovery and then complain that Q-Pharma delayed the litigation. Rule 11 Order, slip op. at 5. In any event, the court's denial of Jergens' motion for sanctions is fully supported by the court's findings relating to the reasonableness of Q-Pharma's pre-filing inquiry. See id. at 4-5.

In sum, we conclude that the district court did not abuse its discretion in holding that Q-Pharma's filing of suit against Jergens for infringement of the *'373* patent was sufficient to withstand scrutiny under *Rule 11.* n2 Accordingly, we affirm the district court's denial of Jergens' motion for sanctions.

n2 Having determined that the district court did not abuse its discretion in refusing to award sanctions to Jergens, we find it unnecessary to address the timeliness of Jergens' motion for sanctions.

**B. Attorney Fees**

Jergens next argues that the district court abused its discretion in denying its motion [*22] for attorney fees. Jergens maintains that the court erred in finding this case not to be exceptional under *35 U.S.C. § 285* because, as argued above, Q-Pharma should have known that its infringement suit was baseless and that the *'373* patent was invalid when it filed suit. Jergens further asserts that this case is exceptional because Q-Pharma changed its theory of infringement only after Jergens filed a motion for summary judgment of noninfringement and because Q-Pharma threatened Jergens' parent company with an action before the Federal Trade Commission ("FTC") in an attempt to gain leverage in the litigation.

Q-Pharma responds that the district court acted within its discretion in denying Jergens' motion for attorney fees under *§ 285.* Q-Pharma argues that the

court did not clearly err in finding this case not to be exceptional because Jergens did not show by clear and convincing evidence that Q-Pharma was grossly negligent in its beliefs of infringement and validity. Q-Pharma further asserts that Jergens failed to show that Q-Pharma's decision to withdraw its claim of infringement was made in bad faith and that Q-Pharma threatened to "blackmail" Jergens by [*23] suggesting that the differences between Jergens' packaging claims and Jergens' admissions in this litigation raised false advertising issues.

We agree with Q-Pharma that the district court did not clearly err in finding this case not to be exceptional. *Section 285* provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." *35 U.S.C. § 285 (2000)*. Exceptional cases include those involving "'inequitable conduct before the [Patent and Trademark Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" *Forest Labs., 339 F.3d at 1329* (citation omitted). For the reasons discussed above, we conclude that Q-Pharma reasonably believed that the *'373* patent was valid and infringed when it filed suit and that its claim of infringement was therefore neither frivolous nor unjustified. Moreover, we discern no evidence of bad faith on the part of Q-Pharma during litigation. Q-Pharma explains its decision to withdraw its claim of infringement as based on its determination that further pursuit of the lawsuit would not have been worth the [*24] investment required to prove infringement, and, in any event, we fail to see how a changed legal theory that leads to the voluntary dismissal of a lawsuit can amount to bad faith litigation. Jergens' contention that Q-Pharma harassed Q-Pharma's parent company by threatening an action before the FTC, even if it were relevant, is not supported by the record. We therefore conclude that it was not clearly erroneous for the district court to find that this case was not exceptional. Accordingly, we affirm the district court's denial of Jergens' motion for attorney fees.

C. Antitrust Counterclaim

Finally, Jergens challenges the district court's summary judgment dismissal of its antitrust counterclaim. On the merits of Q-Pharma's antitrust immunity defense, Jergens argues that Q-Pharma's infringement claim was "objectively baseless" because a reasonable litigant would not have, among other things, failed to create a claim chart, failed to perform chemical analyses, relied solely on a competitor's advertising, and ignored letters suggesting the asserted patent's invalidity. Jergens also asserts that the court improperly precluded it from conducting discovery under *Rule 56(f)*, arguing [*25] that it needed discovery relating to the

declarations of Q-Pharma president Janice Hess and attorney Bruce Kaser in order to oppose Q-Pharma's motion for summary judgment.

Q-Pharma responds that the district court properly granted summary judgment dismissing Jergens' antitrust counterclaim. Q-Pharma argues that its infringement lawsuit was not "objectively baseless" because it had probable cause to believe that the *'373* patent was valid and infringed. Q-Pharma also maintains that the court did not abuse its discretion in denying Jergens' request for additional discovery under *Rule 56(f)* because Jergens sought to discover privileged documents that were relevant only to Q-Pharma's subjective intent and therefore would not have prevented summary judgment.

We agree with Q-Pharma that the district court did not err in dismissing Jergens' antitrust counterclaim. A patent owner who brings a suit for infringement, without more, is generally exempt from the antitrust laws for that action; however, the patent owner may be subject to antitrust liability for the anti-competitive effects of that suit if the accused infringer proves either of two conditions. *In re Indep. Serv. Orgs. Antitrust Litig., 203 F.3d 1322, 1326 (Fed. Cir. 2000)*; [*26] *Nobelpharma, 141 F.3d at 1068*. First, the accused infringer may show that the asserted patent was obtained through knowing and willful fraud. *Nobelpharma, 141 F.3d at 1068* (citing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 177, 15 L. Ed. 2d 247, 86 S. Ct. 347 (1965))*. Alternatively, the accused infringer may show that the infringement suit was "'a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Id.* (quoting *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961))*.

Here, Jergens makes no claim that Q-Pharma obtained the *'373* patent through fraud. We therefore consider only whether Q-Pharma's infringement suit falls within the "sham" exception to antitrust immunity. In Professional Real Estate Investors, the Supreme Court outlined the following two-part definition of "sham" litigation:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude [*27] that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the

2004 U.S. App. LEXIS 4380, *

litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor," *Noerr, [365 U.S.] at 144* (emphasis added), through the "use [of] the governmental process--as opposed to the outcome of that process--as an anticompetitive weapon," [*City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380, 113 L. Ed. 2d 382, 111 S. Ct. 1344 (1991)* (emphasis in original)].

*508 U.S. at 60-61* (second alteration in original) (footnote omitted). For many of the reasons discussed above in our analysis of the district court's denial of Rule 11 sanctions, we agree with Q-Pharma that its claim of infringement was not "so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Id. at 62.* In [*28] other words, a reasonable litigant could--based on the *'373 patent*, its prosecution history, and Jergens' advertising and labeling statements touting the therapeutic effects of the Curel (R) CoQ[10] lotion--expect to prevail on a claim alleging infringement. After all, Jergens itself advertised its product as containing CoQ[10] to restore the qualities of healthy skin. We therefore conclude that the district court did not err in finding as a matter of law that Q-Pharma's infringement claim was not "objectively baseless."

Nor did the district court abuse its discretion in denying Jergens' request for further discovery under *Rule 56(f)*. n3 Under Ninth Circuit law, such an abuse of discretion occurs only if the movant diligently pursued its previous discovery opportunities and can show how allowing additional discovery would have precluded summary judgment. *Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996); Qualls, 22 F.3d at 844.* As the district court correctly concluded, Jergens' proposed discovery would only have been relevant to Q-Pharma's subjective motivation and therefore would not have altered the court's determination--based [*29] on the patent, its prosecution history, and Jergens'

advertising and labeling statements made in regard to the accused product--that Q-Pharma's infringement claim was not "objectively baseless." Accordingly, we conclude that the court did not abuse its discretion in denying Jergens' *Rule 56(f)* motion on the basis that further discovery would not have precluded summary judgment. See *Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 888 (9th Cir. 1996)* (affirming a district court's denial of a *Rule 56(f)* motion because the moving party failed to show that the requested discovery would have precluded summary judgment).

n3 *Rule 56(f)* provides: "Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." *Fed. R. Civ. P. 56(f).*

[*30]

Thus, because we find no error in the district court's determination that Q-Pharma's infringement claim was not "objectively baseless" and no abuse of discretion in the court's denial of additional discovery on the antitrust issue, we affirm the court's dismissal of Jergens' antitrust counterclaim.

CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying Jergens' motion for Rule 11 sanctions. We also conclude that the court did not clearly err in finding this case not to be exceptional under *§ 285* or abuse its discretion in denying Jergens' motion for attorney fees. We lastly conclude that the court did not err in dismissing Jergens' antitrust counterclaim on summary judgment. Accordingly, the decisions of the district court are

AFFIRMED.

FEB. 17. 2004  5:44PM                                              NO. 9751    P. 2

 **HOWREY** LLP
ATTORNEYS AT LAW

301 RAVENSWOOD AVENUE
MENLO PARK, CA 94025-3434
PHONE 650.463.8100
FAX 650.463.8400
A LIMITED LIABILITY PARTNERSHIP

**CHRISTOPHER L. KELLEY**
PARTNER
650.463.8113
kelleyc@howrey.com

February 17, 2004

**VIA FACSIMILE AND U.S. MAIL**

Edward A. Meilman
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Re:    *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.*
       Case No. CV 03-04669 MJJ (MCC)

Dear Ed:

I have your letter to me dated February 12.

We are unable to stipulate to your amendment. For the reasons set out in our Motion on the Pleadings, Ricoh cannot make out an allegation under 35 U.S.C. section 271(g) in the present case. Your proposed amended complaint does nothing to correct this problem. Since the proposed amended complaint still contains the same infringement allegations under section 271(g) we cannot agree to your amendment.

In addition, Ricoh has provided no explanation as to why it delayed so long before seeking to add infringement allegations under provisions of section 271 other than subdivision (g). The Defendants made Ricoh aware of the problem that it faced in asserting infringement under 271(g) no later than last August. Without some explanation as to why amendment is appropriate or necessary at this late date, the Defendants cannot support your request to amend.

Finally, your proposed amendment seeks to add an entity that you identify as "Aeroflex UTMC." There is no existing corporate entity with that name that can be sued or served with process. Furthermore, there is no need to add a separate entity to get at activities conducted at Aeroflex's facility in Colorado Springs acquired from United Technologies (UTMC). That entity was acquired by Aeroflex and is now a subsidiary of Defendant Aeroflex, Inc.

Very truly yours,

Christopher L. Kelley

CLK:gg

cc:    Gary M. Hoffman

AMSTERDAM    BRUSSELS    CHICAGO    HOUSTON    IRVINE    LONDON    LOS ANGELES    MENLO PARK    SAN FRANCISCO    WASHINGTON, DC