1  Teresa M. Corbin (SBN 132360)
   Christopher Kelley (SBN 166608)
2  Thomas C. Mavrakakis (SBN 177927)
   Erik K. Moller (SBN 147674)
3  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
4  Menlo Park, CA  94025
   Telephone:  (650) 463-8100
5  Facsimile:   (650) 463-8400

6  Attorneys for Defendants AEROFLEX INCORPORATED, AMI
   SEMICONDUCTOR, INC., MATROX ELECTRONIC
7  SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX
   INTERNATIONAL CORP. and MATROX TECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| RICOH COMPANY, LTD., | ) Case No. CV 03-04669 MJJ (EMC) |
|---|---|
| Plaintiffs, | ) **DEFENDANTS' REPLY BRIEF IN** |
| | ) **SUPPORT OF ITS MOTION TO STRIKE** |
| v. | ) **RICOH'S DISCLOSURE OF ASSERTED** |
| | ) **CLAIMS AND PRELIMINARY** |
| AEROFLEX INCORPORATED, AMI | ) **INFRINGEMENT CONTENTIONS** |
| SEMICONDUCTOR, INC., MATROX | ) |
| ELECTRONIC SYSTESM, LTD., MATROX | ) |
| GRAPHICS, INC., MATROX | ) **Date:  May 4, 2004** |
| INTERNATIONAL CORP., and MATROX | ) **Time:  9:30 a.m.** |
| TECH, INC., | ) **Courtroom: 11** |
| | ) |
| Defendants. | ) **Judge Jenkins** |
| | ) |

Case No.  CV 03-04669 MJJ(EMC)
Defendants' Reply Brief ISO Motion to Strike

DM_US\8018613.v1

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. The Accused Instrumentalities Are Synopsys' Software Products ........ 3

a. Patent L.R. 3-1 Recognizes That A Process Claim's Accused Instrumentality Can Be A Product ........ 3

b. The Federal Circuit Has Recognized That A Computer Process Claim's Accused Instrumentality Can Be A Software Product ........ 4

c. The '432 Patent And Its Claim Language Demonstrate That The Accused Instrumentalities Here Are Software Products ........ 5

d. Ricoh's Own Contentions Demonstrate That Accused Instrumentalities Here Are Synopsys' Software Products ........ 6

II. Ricoh's Contentions Are Crafted To Thwart The purpose Of The Patent Local Rules ........ 8

a. Ricoh Has Not Complied With Patent Local Rule 3-1 Subsections (a) and (b) ........ 8

b. Ricoh Has Not Complied With Patent Local Rule 3-1 Subsections (c) and (d) ........ 9

c. Ricoh Has Not Complied With Patent Local Rule 3-1 Subsection (f) ........ 12

III. Defendants Have Been Prejudiced By Ricoh's Violation Of These Rules ........ 13

IV. The Applicable Decisions Support Defendants' Motion ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**CASES**

*EMI Group North Am., Inc. v. Intel Corp.*
    157 F.3d 887 (Fed. Cir. 1998) ............................................................................................... 4

*Hewlett-Packard Co. v. EMC Corp.*
    2003 U.S. Dist. LEXIS 22742 ............................................................................................ 14

*Hilgraeve Corp. v. Symantec*
    265 F.3d 1336 (Fed. Cir. 2001) ............................................................................................. 5

*Intertrust Technologies Corp. v. Microsoft Corp.*
    2003 U.S. Dist. LEXIS 22736 ............................................................................................ 14

*Joy Technologies v. Flakt, Inc.*
    6 F.3d 770 (Fed. Cir. 1993) ............................................................................................... 4, 5

*Network Caching Technology, LLC v. Novell, Inc.*
    2002 U.S. Dist. 26098 ........................................................................................................ 15

**RULES**

Patent Local Rule 3-1 ....................................................................................................... 3, 12, 13, 14

Patent Local Rule 3-1(a) ................................................................................................................ 8, 14

Patent Local Rule 3-1(b) ............................................................................................................. passim

Patent Local Rule 3-1(c) ............................................................................................................. passim

Patent Local Rule 3-1(d) ....................................................................................................... 2, 4, 6, 8

Patent Local Rule 3-1(f) ..................................................................................................................... 12

Patent Local Rule 3-3 ................................................................................................................. 12, 13

Patent Local Rule 3-7 ............................................................................................................................ 3

Patent Local Rule 4 ............................................................................................................................. 13

Patent Local Rule 4-1 ......................................................................................................................... 13

Patent Local Rule 4-2 ......................................................................................................................... 13

-ii-
Case No.  CV 03-04669 MJJ(EMC)
Defendants' Reply Brief ISO Motion to Strike

HOWREY
SIMON
ARNOLD &
WHITE

DM_US\8018613.v1

# INTRODUCTION

Ricoh's opposition acknowledges that the purpose of the Patent Local Rules is to streamline discovery. But Ricoh's opposition fails to address the inadequacies in its infringement contentions that thwart that very purpose. The Patent Local Rules can only streamline discovery if Ricoh clearly and unambiguously sets forth its contentions in the manner contemplated by those rules. Instead, as demonstrated in Defendants opening brief, Ricoh's infringement contentions are crafted to create ambiguity and to facilitate its ability to change its position later to suit its needs. Ricoh's opposition has not shown otherwise.

Instead, Ricoh bases it opposition on mischaracterizations of the Defendants' motion to strike. Ricoh's assertion that: "Defendants motion, however, relies on the remarkable theory that Ricoh's *process* claims must be construed as *product* claims" is one example of Ricoh's misleading arguments. (Opposition at 12). As Ricoh is well aware, the issue the Court needs to resolve is whether the "Accused Instrumentalities" alleged in this case are Synopsys' software products. There is no dispute that claims 13-17 are process claims.

Here Ricoh's own infringement contentions demonstrate that Synopsys' software products are the alleged Accused Instrumentalities in this matter. According to those contentions, process claim 13 is allegedly practiced by the Defendants': 1) installing or loading Synopsys' software products on computer systems; 2) using those software products; and, 3) running or executing those software products on computer systems. (*See e.g*, Ex. G at 1-12).[1] The claim language and the specification also demonstrate that the claimed process is a "computer-aided design process"—i.e., the steps are practiced via software programs that have been installed or loaded on a computer system. (*See e.g.*, Ex. A at Claim 13). In fact, the '432 patent does not even describe anything other than software programs for practicing claims 13-17. (*See e.g.*, Ex. A at 4:49-58). Ricoh's argument that the Accused

---

[1] Absent any contrary indication, all references to Exhibits refer to exhibits attached to the Declaration of Erik K. Moller in Support of Defendants' Motion to Strike Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions.

1  Instrumentalities are not or cannot be software products, therefore, ignores its own infringement
2  contentions and its own patent.

3        Ricoh not only ignores the facts, but Ricoh's argument also ignores the law.  Patent Local Rule
4  3-1(b) explicitly contemplates that the Accused Instrumentality for patented methods or processes can
5  be—as is the case here—a product, device, or apparatus.  Patent L.R. 3-1(b) provides that: "Each
6  method or process must be identified by name, if known, or by any product, device, or apparatus which,
7  when used, allegedly results in the practice of the claimed method or process."  That the Accused
8  Instrumentality for a process claim can be a product is also consistent with the plain and ordinary
9  meaning of the term "instrumentality."

10        Aside from that the fact that this rule contemplates that products may be the Accused
11  Instrumentality for process claims, the Federal Circuit decision relied on by Ricoh in its opposition as
12  well as other Federal Circuit decisions also recognize that an accused instrumentality can be and often
13  is the product that enables the practice of the claimed method or process.  Thus, Ricoh's argument that
14  the Synopsys software products are not the Accused Instrumentalities in this action is contrary to
15  applicable law as well.

16        Because the Accused Instrumentalities here are alleged to be Synopsys' software products,
17  Ricoh was required to identify each of those products as specifically as possible.  Patent L.R. 3-1(b).
18  Ricoh has not done so.  This failure, by itself, not only renders Ricoh's contentions inadequate under
19  subsection (b) of Rule 3-1 but Ricoh has also failed to provide a chart for each Accused Instrumentality
20  as required by subsections (c) and (d) as well.

21        Ricoh also wrongly claims that the case law does not support Defendants' motion.  The
22  Defendants seek to strike Ricoh's inadequate contentions and have Ricoh unambiguously articulate its
23  infringement positions as required by the rules so that they will not be further prejudiced in providing
24  their local rule disclosures and in their preparation for the claim construction hearing in this matter.
25  The cases cited by the Defendants support such relief.

26        Unfortunately, the Defendants' preparation of their preliminary invalidity contentions has
27  already been prejudiced since those disclosures are due in less than one week.  Given this prejudice, it
28

Case No.  CV 03-04669 MJJ(EMC)  
Defendants' Reply Brief ISO Motion to Strike  
-2-

HOWREY SIMON ARNOLD & WHITE  
DM_US\8018613.v1

is certainly reasonable to also require Ricoh to make a showing of good cause for any amendments the Court deems it needs to make to comply with the Patent Local Rule 3-1. Patent L.R. 3-7.

## ARGUMENT

### I. The Accused Instrumentalities Are Synopsys' Software Products

#### a. Patent L.R. 3-1 Recognizes That A Process Claim's Accused Instrumentality Can Be A Product

Ricoh's argument that Synopsys' software products are not the alleged Accused Instrumentalities is contrary to the facts and the applicable law. Ricoh itself admits that Patent L.R. 3-1(b) explicitly requires identifying the "products used in the course performing the steps" of the claimed process of the '432 patent. (Opposition at 12:11-14). But at the same time Ricoh argues that Patent L.R. 3-1 "does not state that a separate chart needed for each product so identified." (*Id.*). Ricoh's argument contradicts the explicit language of Patent L.R. 3-1.

The first sentence of subsection (b) sets forth what this subsection requires from Ricoh—i.e., to identify for each of the Defendants each Accused Instrumentality for each asserted claim. Patent L.R. 3-1(b). The last sentence in this subsection describes how the Accused Instrumentalities are identified for process and method claims. *Id*. ("Each method or **process** must be identified by name, if known, **or by any product, device, or apparatus** which, when used, allegedly results in the practice of the claimed method or process.") (emphasis added).

This last sentence demonstrates that "product[s], device[s], apparatus[es]" may constitute the Accused Instrumentalities for the patented process or method claim. *Id*. Patent L.R. 3-1(b) is directed to the identification required for Accused Instrumentalities and therefore, would not require the identification of products for a claimed process unless such products were the Accused Instrumentalities for that process claim. *Id*.

This interpretation is also consistent with the ordinary dictionary definitions for the related terms "instrumentality," "instrumental," and "instrument." The relevant definitions for "instrument," "instrumental," and "instrumentality" are: "a means whereby something is achieved, performed, or

furthered," "serving as a means, agent or tool," and "means," respectively. (Reply Ex. 1).[2] Here the Synopsys' software products are certainly alleged by Ricoh to be the accused means or tool whereby the claimed process is allegedly achieved, performed, or furthered—i.e., the Accused Instrumentality. No reasonable person would argue otherwise based on Ricoh's own statements to date.

Thus, under Patent L.R. 3-1(b) Synopsys' software products are the Accused Instrumentalities that were required to be identified and Ricoh was required to comply with Patent L.R. 3-1(c) and (d) for <u>each</u> product that it was required to identify under subsection (b).

### b. The Federal Circuit Has Recognized That A Computer Process Claim's Accused Instrumentality Can Be A Software Product

Ricoh's opposition cites to the Federal Circuit's decision in *Joy Technologies v. Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993), for the proposition that "a process claim is infringed by the performance of all the steps recited in the claim." (Opposition at 12). While it is true that for infringement of a process invention all the claimed steps must be performed, this neither addresses nor resolves the issue before the Court. *See, e.g., EMI Group North Am., Inc. v. Intel Corp.*, 157 F.3d 887, 896 (Fed. Cir. 1998) ("For infringement of a process invention, all of the claimed steps of the process must be performed."). Here the issue is whether Synopsys' software products are alleged to be the Accused Instrumentalities—i.e., the accused means or tool whereby the claimed process is allegedly achieved, performed, or furthered.

Not only does the *Joy Technologies* decision not support Ricoh's argument, but also the accused instrumentality at issue for the method claim there was an "industrial plant." 6 F.3d at 775. The Federal Circuit held that there could be no inducement to infringe for the sale of an industrial plant where that plant could not be used within the remaining term of the patent. *Id*. The reason for this is that liability for inducement or contributory infringement of a method claim based on the sale of the industrial plant was "dependent upon the existence of direct infringement." *Id*. at 774. Because this

---

[2] All references to Reply Exhibits refer to exhibits attached to the Declaration of Thomas C. Mavrakakis in Support of Defendants' Reply Brief in Support of its Motion to Strike Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions.

Case No. CV 03-04669 MJJ(EMC)
Defendants' Reply Brief ISO Motion to Strike

-4-

HOWREY
SIMON
ARNOLD &
WHITE

DM_US\8018613.v1

1  decision recognizes that the accused instrumentality for the method claim was an industrial plant, it
2  actually supports Defendants' argument and not Ricoh's.

3        Aside from the Federal Circuit's recognition in the *Joy Technologies* decision that the accused
4  instrumentality for process claims may be a product, other Federal Circuit decisions have recognized
5  that software products are the accused instrumentalities where the claimed process allegedly infringed
6  is practiced via software executing on computers. *See e.g.*, *Hilgraeve Corp. v. Symantec*, 265 F.3d
7  1336, 1342 n. 2 (Fed. Cir. 2001) (operation of software product by users directly infringes method
8  claims and sale of software product by software company induces customers to infringe method
9  claims). This is true regardless of whether the action is brought against customers using the software
10 product or the company that licensed or sold that software to that customer. *Id*. In either case, the
11 question of infringement for the process claim is determined based on whether the normal operation of
12 the <u>accused software product</u> is capable of infringing. *Id*. at 1342-3.

13       The *Symantec* decision involved two method claims. The word "computer" appeared in the
14 preamble of both claims. 265 F.3d at 1339. The Federal Circuit recognized that the patent related to
15 software and that the question of infringement had to be determined by the normal operation of the
16 defendants' software products. *Id*. Specifically, the Federal Circuit held that tests of the accused
17 software conducted by the defendants' expert were inconclusive on the infringement issue since those
18 test were not conducted under normal operating conditions. *Id*. at 1344. The Federal Circuit reversed
19 the district court's grant of summary judgment of non-infringement based on those tests. *Id*.

20
21       **c.    The '432 Patent And Its Claim Language Demonstrate That The Accused Instrumentalities Here Are Software Products**

22       Here the '432 patent's claims explicitly set forth that they are "computer-aided design
23 process[es] for designing." (Ex. at A at Claims 13-17). The '432 patent describes only one system for
24 practicing the alleged invention of claims 13-17. (*Id*. at 2:50-63, 4:49-58). The primary elements or
25 modules of this single embodiment described in the '432 patent are all "software programs." (*Id*. at
26 2:50-63, 4:49-58, 5:49-58, 6:66-67, 7:6-7, 7:61-62, 8:21-23, 8:34-37, 8:58-60). Given the express
27 language in claims 13-17 and the fact that the only description in the '432 patent to support those
28

claims are software programs, it is hard to imagine how Ricoh can argue that Synopsys' software products are not the Accused Instrumentalities in this matter.

### d. **Ricoh's Own Contentions Demonstrate That Accused Instrumentalities Here Are Synopsys' Software Products**

Not only is Ricoh's argument belied by in its own patent, but Ricoh's infringement contentions themselves also demonstrate that the Accused Instrumentalities in this matter are Synopsys' software products. Ricoh just refuses to comply with Patent L.R. 3-1(b), (c), and (d) for each Accused Instrumentality. Because there are no substantive differences between Ricoh's charts, the argument below focuses on one of the "revised" charts provided by Ricoh but is certainly applicable to all of Ricoh's revised charts.

The chart below demonstrates that Ricoh's infringement contentions are based on the alleged loading, installing, storing, using, and the performing of the "Synopsys Design tools, including the Design Compiler Family of products, the HDL Compiler Family, and other components." As pointed out in the opening brief, through these vaguely defined terms and their accompanying footnotes Ricoh seeks to accuse numerous Synopsys' software products without providing a claim chart for each as required by Patent L.R. 3-1(c). Ricoh's argument that the Synopsys' software products are not the Accused Instrumentalities is nothing more than a feeble attempt to justify its failure to comply with Patent L.R. 3-1(c) and (d) for each of the software products listed in those footnotes.

| Claim 13 of the '432 Patent | Relevant Portion of Ricoh's Revised Infringement Contentions |
|---|---|
| **Element 1.** A computer-aided design process for designing an application specific integrated which will perform a desired function comprising | "Aeroflex **uses** Synopsys Design tools, including the Design Compiler Family of products, the HDL Compiler Family, and other components to perform computer-aided design of a proposed ASIC having a desired function." (*See e.g.*, Ex. G at  ) (footnotes omitted) (emphasis added). |
| **Element 2.** storing a set of definitions of architecture independent actions and conditions; | "Storing a set of definitions of architecture independent actions and conditions may also occur upon **installing** the Design Compiler Family, DesignWare IP Family and HDL Compiler Family components into a system memory in a user's computer system." (*See e.g.*, Ex. G at  ) (emphasis added). |
| **Element 3.** storing data describing a set of available integrated circuit hardware cells for performing the actions and conditions defined in the stored set; | "The ASIC designer **loads ("stores")** technology libraries…and other libraries that may contain IP from the DesignWare IP Family (such as the Design Compiler Basic Library, DesignWare Foundation library, DesignWare Expert Libraries, etc.) that store data representing architectural components (e.g., "hardware cells") that are |

| | | |
|---|---|---|
| | | used to perform actions and conditions by the stored synthetic operators." (*See e.g.*, Ex. G at  ) (emphasis added). |
| **Element 4.** | storing in an expert system knowledge base a set of rules for selecting hardware cells to perform the actions and conditions; | "The Synopsys Design Tools include a set of rules stored in one or more knowledge bases for use in selecting hardware cells to perform actions and conditions…. Aeroflex **loads (i.e., "stores")** the Synopsys Design Tools, including such knowledge bases, into a computer system or workstation memory. (*See e.g.*, Ex. G at  ) (emphasis added). |
| **Element 5.** | describing for a proposed application specific integrated circuit a series of architecture independent actions and conditions; | "The ASIC designer inputs architecture independent descriptions…in a variety of formats, including HDLs such as Verilog and VHDL …. (See eg., HDL Compiler for Verilog …)."<br><br>"Aeroflex…**uses** the Design Compiler graphical user interface (GUI) Known as Design Analyzer or Design Vision to input graphical design descriptions." (*See e.g.*, Ex. G at) (emphasis added). |
| **Element 6.** | specifying for each described action and condition of the series one of said stored definitions which corresponds to the desired action or condition to be performed; and | "For a desired action and condition described, a definition corresponding to such action or condition is mapped (or "specified"). (*See e.g.*, Ex. G at ) (emphasis added). |
| **Element 7.** | selecting from said stored data for each of the specified definitions a corresponding integrated circuit hardware cell for performing the desired function of the application specific integrated circuit, said step of selecting a hardware cell comprising applying to the specified definition of the action or condition to be performed, a set of cell selection rules stored in said expert system knowledge base and generating for the selected integrated circuit hardware cells, a netlist defining the hardware cells which are needed to perform the desired function of the integrated circuit and the interconnection requirements therefor. | "Based on the specified definition (e.g., "mult_tc_op") of the desired action or condition to be performed by the proposed ASIC, the Synopsys Design Tools **perform** implementation selection of hardware cells that perform the desired function of the ASIC." (*See e.g.*, Ex. G at) (emphasis added). |

This chart demonstrates that the Synopsys' software products are what Ricoh contends is the means by which the Defendants allegedly infringe process claim 13. First, Ricoh contends that elements 2, 3, and 4 are met via installing or loading Synopsys' software products on computer systems. (*See e.g*, Exh. G at 3-8). Second, Ricoh contends that elements 1 and 5 are met via the use of those software products. (*See e.g*, Exh. G at 1-2, 8-9)[3]. Third, Ricoh's contention is that element 7 is performed by those products. (*See e.g*, Exh. G at 10-12). Consequently, Ricoh's argument that the

---

[3] Although Ricoh contends that "storing the definitions" in element 2 is met by installing Synopsys' software, Ricoh's contentions fail to provide any indication of how the "specifying…said definitions" is done or what does the "specifying…said definitions" required by element 6. (See e.g., Ex G. at 9-10).

Case No. CV 03-04669 MJJ(EMC)
Defendants' Reply Brief ISO Motion to Strike
-7-
HOWREY
SIMON
ARNOLD &
WHITE
DM_US\8018613.v1

Synopsys' software products are not the alleged Accused Instrumentalities is contrary to its own contentions and should be rejected.

## II. Ricoh's Contentions Are Crafted To Thwart The purpose Of The Patent Local Rules

### a. Ricoh Has Not Complied With Patent Local Rule 3-1 Subsections (a) and (b)

Contrary to the arguments in its opposition, Ricoh has not complied with even the simple requirements of subsections (a) and (b) of Patent L.R. 3-1. Ricoh's failure to comply with these subsections represents an effort on its part to avoid taking clear and unambiguous positions so that it can preserve its ability to change them later.

Ricoh could have complied with these subsections by simply providing a statement similar to the following illustrative (and fictitious) example for each of the Defendants:

> **Patent L.R. 3-1(a):** Ricoh contends that Matrox Electronics is infringing claims 13 and 15 of the '432 patent.
>
> **Patent L.R. 3-1(b):** Ricoh contends that Accused Instrumentalities for Matrox Electronics are: **Claim 13:** 1) DC Ultra, version X.X and VHDL Compiler, version X.X; and, 2) DC Expert, version X.X.; **Claim 15:** DC Expert, version X.X.

Providing a simple clear statement as illustrated above would leave no room for interpretation as to what claims Ricoh contends are allegedly infringed by each Defendant and for each of those claims what Ricoh contends are the Accused Instrumentalities for each Defendant.

But Ricoh does not wish to unambiguously identify the asserted claims against each of the Defendants or the Accused Instrumentalities for each claim asserted against each of the Defendants. Why? First, Ricoh has no basis for claiming some of the Defendants infringe—e.g., Matrox International. Second, Ricoh would prefer to preserve its ability to accuse the numerous Synopsys software products in the footnotes of its contentions without having to comply with the requirements of Patent L.R. 3-1(c) and (d). The Court has to question Ricoh's motives when it has burdened the Defendants, this Court, and wasted its own time and money by refusing to provide simple, clear, and concise statements that comply with these two subsections. As illustrated above, there is certainly no burden to Ricoh in doing so.

### b. **Ricoh Has Not Complied With Patent Local Rule 3-1 Subsections (c) and (d)**

Ricoh has not complied with either of subsections (c) and (d) simply because Ricoh refuses to provide a chart for each Accused Instrumentality—i.e., each allegedly accused Synopsys' software product.

Aside from Ricoh's refusal to provide a chart for each accused Synopsys' software product, the substance provided in the single chart Ricoh does provide for each Defendant does not comply with Patent L.R. 3-1(c). The inadequacies with Ricoh's chart are set forth in the attachments to Defendants opening brief. (Attachments 1-3).[4] Ricoh's opposition does not even attempt to specifically address those inadequacies.

Instead, Ricoh merely sets forth elements 2 and 4 of the chart it provided for Aeroflex and claims that it "explains in detail how Aeroflex infringes." (Opposition at 6:7-8). And, that Ricoh has "followed this same pattern of disclosure throughout its infringement contentions." (Opposition at 7:1). But, as demonstrated below and in their opening brief, Ricoh's contentions—in fact—do not explain how the use of the Synopsys' software products by Aeroflex or any of the other Defendants meet elements 2 and 4 of claim 13 or any of the other elements of claims 13-17.

For example, element 4 of claim 13 provides:

> storing in an expert system knowledge base a set of rules for selecting hardware cells to perform the actions and conditions (Ex. A).

Ricoh's contention, in relevant part, provides:

> The Synopsys Design Tools include <u>a set of rules stored</u> in one or more <u>knowledge bases for use in selecting hardware cells to perform actions and conditions</u>; the act of selecting may include optimization of selected hardware cells. Aeroflex loads (i.e., "stores") the Synopsys Design Tools, including such knowledge bases, into a computer system or workstation memory. (*See e.g.*, Ex. G at 7-8) (emphasis added).

Ricoh's contention simply parrots the claim language and provides no explanation of what in the Synopsys' software products when used by the Defendants meets this element. Ricoh does not even identify the particular Synopsys' software product that allegedly meets this element. Ricoh simply

---

[4] All references to attachments refer to the attachments to Defendants' Motion to Strike Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions.

1  asserts that the "Synopsys Design Tools" include the claim language for this element and that Aeroflex
2  stores the "Synopsys Design Tools."  Contrary to the arguments in its opposition, therefore, Ricoh's
3  contentions certainly do not "explain in detail how Aeroflex infrnges."

4  The remainder of Ricoh's disclosure for this element also fails to map or link any alleged
5  capability in Synopsys' software products to the claim language in this element.  Specifically, Ricoh
6  merely paraphrases selectively from Synopsys' software product documents and a third-party article
7  about a 15-year-old version of one Synopsys product. (Ex. G at 7-8).  These statements appear to be
8  cited by Ricoh to support its conclusory claim that the "Synopsys Design Tools include <u>a set of rules
9  stored</u> in one or more <u>knowledge bases for use in selecting hardware cells to perform actions and
10 conditions.</u>"  But nothing in this contention by Ricoh including these paraphrased statements <u>explains</u>
11 what constitutes the "expert system", "the knowledge base", or the "set of rules for selecting hardware
12 cells" in any of the accused software products.

13 Equally inadequate is Ricoh's contention for element 2 of claim 13, which provides:

14 
15 storing a set of definitions of architecture independent actions and
conditions (Ex. A).

16 Ricoh's contention, in relevant part, provides:

17 The act of storing <u>at least one of the following meets</u> the claimed
limitations of "a set of definitions of architecture independent actions
18 and conditions:" HDL operators, synthetic operators <u>or other definitions
including</u> "functions" or "always blocks," which are implementations for
19 functional descriptions of statements.…<u>Storing a set of definitions of
architecture independent actions and conditions may</u> also occur upon
20 installing the Design Compiler Family, DesignWare IP Family and HDL
Compiler Family components into a system memory in a user's
21 computer system. (*See e.g.*, Ex. G at 3-5) (emphasis added).

22 The first problem with this contention is that Ricoh attempts to avoid taking any position as to what
23 meets this claim element.  Specifically, Ricoh cannot state that "at least one of the following" meets
24 this element.  Ricoh must take a position and explain which of the listed alternatives (e.g., HDL
25 operators, synthetic operators, functions, or always blocks)[5] it contends meet this limitation and which

26

27 [5] The use of the phrase "or other definitions including" is also improper.  If there are other things that
Ricoh contends meet this limitation it was required to set them forth.
28

Case No.  CV 03-04669 MJJ(EMC)                                    -10-
Defendants' Reply Brief ISO Motion to Strike
HOWREY
SIMON
ARNOLD &
WHITE      DM_US\8018613.v1

1  do not. Ricoh has not done so and the Defendants should not be left guessing as to what Ricoh
2  contends meets this element.

3  Next, as with element 4, Ricoh again mimics the claim language and asserts that it <u>may also</u> be
4  met by installing "Design Compiler Family, DesignWare IP Family and HDL Compiler Family
5  components." As explained above, this cannot be sufficient to comply with Patent L.R. 3-1(c).

6  The remainder of Ricoh's disclosure again fails to map or link any alleged capability in
7  Synopsys' software products allegedly used by Aeroflex (or any other Defendant) to the claim
8  language in this element. Specifically, Ricoh does not explain what constitutes an architecture
9  independent "action", "condition", or the "set of definitions" for them. Ricoh's contention for this
10 element simply raises more questions about what meets this element than it answers.

11 Thus, even the elements 2 and 4 of claim 13, which were relied on by Ricoh in its opposition to
12 illustrate its compliance, demonstrate that Ricoh has not complied with Patent L.R. 3-1(c). The Court
13 should order Ricoh to amend its contentions to address these inadequacies as well as the inadequacies
14 set forth in the Defendants opening brief.

15 Aside from not complying with Patent L.R. 3-1(c), Ricoh also fails in its opposition to provide
16 its factual basis for believing that any Synopsys' software product that the Defendants' use has "an
17 expert system knowledge base" and "a set of rules for selecting hardware cells." The Defendants'
18 pointed out in their opening brief that Ricoh's infringement contentions demonstrate that Ricoh lacks a
19 factual basis for alleging that element 4 and element 7 are met by Defendants.

20 Instead of pointing to something other than the outdated publication in its revised contentions
21 to show that it has some factual basis for believing these elements are met, Ricoh again makes
22 misleading arguments in its opposition. Specifically, Ricoh claims that the "location of individual
23 software routines is not obtainable from reverse engineering" and the "only way to pinpoint a specific
24 routine" is to analyze the source code, which "has yet to be disclosed."

25 But the Defendants do not argue that Ricoh must now pinpoint the location of any software
26 routines in its infringement contentions. Defendants seek to have Ricoh simply identify the facts
27 supporting its basis for believing that the software products used by the Defendants meet this element
28

or state in its contentions that it does not know. *See Hewlett-Packard Co. v. EMC Corp.*, 2003 U.S. Dist. LEXIS 22742 at * 4 (N.D. Ca. July 9, 2003) (patent owner that does not yet know where element is found in accused product should so state in its infringement contentions).

In short, Ricoh either has no factual basis for believing these two elements are met by Defendants or it is withholding it. In either case, Ricoh has not met the requirements of Patent L.R. 3-1(c).

### c. Ricoh Has Not Complied With Patent Local Rule 3-1 Subsection (f)

Subsection (f) required Ricoh to, separately for each claim, identify any instrumentality that reflects or incorporates that particular claim. Patent L.R. 3-1(f). Initially, Ricoh provided no disclosure under this subsection on March 5, 2004. Subsequently, without any explanation as to why it originally provided no disclosure, Ricoh provided some disclosure but failed to comply with the "separately for each claim" requirement. Ricoh continues to refuse to comply with that requirement and it opposition does not even address this inadequacy.

Instead, Ricoh misleadingly argues that its disclosure was timely. Patent L.R. 3-1 provides that Ricoh's infringement contentions are due "[n]ot later than 10 days after the Initial Case Management Conference." Ricoh chose to file its disclosure early. But what Ricoh's opposition fails to acknowledge is that its early filing forces the Defendants to serve their responsive disclosures under Patent L.R. 3-3 earlier as well—i.e., "[n]ot later than 45 days after service upon it of" Ricoh's infringement contentions.[6] Patent L.R. 3-3. Thus, Ricoh seeks to prejudice and has prejudiced the Defendants by forcing them to provide their responsive disclosures under Patent L.R. 3-3 without the benefit of adequate infringement contentions.

---

[6] Ricoh's first disclosure under Patent L.R. 3-1(f) was in its "revised charts" served on March 12, 2004. Because Ricoh appears to agree that Defendants disclosures will not be due until 45 days after this date on April 26, 2004, the Defendants are basing their inadequacy arguments in this motion on the "revised charts." This does not mean that the Defendants were not prejudiced by the time, effort, and money for reviewing Ricoh's original charts served on March 5, 2004. Because of this, Ricoh should be required to at least provide an explanation as to why its original chart made no disclosure under Patent L.R. 3-1(f).

### III. Defendants Have Been Prejudiced By Ricoh's Violation Of These Rules

Patent L.R. 3-1 requires patent owners, like Ricoh, to provide each accused infringer with, among other things, the identification of: 1) each claim allegedly infringed; 2) each accused means by which each claim is allegedly infringed; 3) how and what within each accused means meets each element in each claim; and, 4) whether each element in each claim is met literally or under the doctrine of equivalents for each accused means. Patent L.R. 3-1. This information is critical to the accused infringer's responsive disclosures, which are required to provide its positions on invalidity of those same claims within 45 days. Patent L.R. 3-3.

For example, Ricoh's position as to how and what within each of the accused Synopsys' software products meets each claim element provides the Defendants' with important insight into how broadly or narrowly Ricoh reads the limitations in those claims. Such information is crucial for the Defendants in formulating their invalidity positions, focusing their prior art searches, and deciding which prior art to rely on in this case.

Here Ricoh has not provided adequate disclosures and the Defendants responsive invalidity contentions are due in less than one week. Thus, the Defendants have already been prejudiced by Ricoh's inadequate disclosures. But the prejudice to the Defendants will not end when they serve their preliminary invalidity contentions next week. It will continue.

Specifically, within 10 days after they serve their invalidity contentions the Defendants must begin providing the claim construction disclosures required by Patent L.R. 4 without the benefit of adequate infringement contentions from Ricoh. First, the Defendants will have to identify the claim terms they believe are in dispute and require construction by the Court without Ricoh's position as to how the claim language is met by Synopsys' accused software products. *See* Patent L.R. 4-1. Second, shortly after identifying the terms to be construed, the Defendants will be required to propose constructions and identify evidence to support those constructions again without the benefit of Ricoh's infringement positions. See Patent L.R. 4-2. This prejudice to the Defendants will persist through the remaining claim construction disclosures, the claim construction briefing, and the actual claim

1  construction hearing.  In short, there is no support for Ricoh's claim that there is no prejudice to the
2  Defendants.[7]

3  **IV.    The Applicable Decisions Support Defendants' Motion**

4  Ricoh's attempts to distinguish the cases relied on by the Defendants are misplaced.  These
5  decisions support the Defendants motion.

6  First, as demonstrated above, Synopsys' software products are the alleged Accused
7  Instrumentalities in this matter.  Therefore, Ricoh's argument that *Intertrust Technologies Corp. v.*
8  *Microsoft Corp.,* decision is inapplicable because "there is no 'accused software product'" should be
9  rejected.  2003 U.S. Dist. LEXIS 22736.

10  Here, like the patent owner in *Intertrust*, Ricoh improperly seeks to have the Defendants guess
11  at what the accused software products under patent L.R. 3-1(a) and (b).  *Id.* at *6.  Ricoh also does not
12  "explain how each allegedly infringing product meets each element of the plaintiff's asserted patent
13  claim."  *Id.* at *6.  Thus, this decision certainly supports the instant motion by Defendants.

14  Similarly, Ricoh's attempt to distinguish the *Hewlett-Packard Co. v. EMC Corp.,* decision also
15  lacks merit.  2003 U.S. Dist. LEXIS 22742.  In *Hewlett-Packard*, the court granted the defendants
16  motion to strike the patent owner's preliminary infringement contentions because the disclosure did
17  not comply.  *Id.* at *3.

18  Like the instant case, the accused instrumentalities there were products.  Interestingly, the
19  decision does not set forth any of the claims at issue or even whether they are product or process
20  claims.  Why? The requirements for complying with Patent L.R. 3-1 simply do not depend on whether
21  the claims are process or apparatus claims.  In either case, the disclosure: 1) "must address each
22  product (or other accused instrumentality) separately; and, 2) "must also identify where each element
23  of each claim is found within each product (or other accused instrumentality)."  *Id.* at *3.  Ricoh has
24  not complied with either of these two requirements and Ricoh's argument that this decision is
25  inapplicable because the asserted claims here are process claims is completely misplaced.

---

[7] This prejudice cannot be addressed by simply continuing to push the schedule provided by the Patent Local Rules.  Such delay also prejudices the Defendants since after the Court's claim construction ruling they will be seeking to dispose of the instant case via summary judgment motions.

1  Finally, Ricoh asserts that "Network Caching" does not support Defendants motion because it
2  has "outlined its infringement contentions regarding the subject process claims" and not mimicked the
3  claim language. *Network Caching Technology, LLC v. Novell, Inc.*, 2002 U.S. Dist. 26098.  First,
4  Ricoh was required to provide and explain the details of how the Defendants' use of Synopsys'
5  software products infringe and not simply "outline its infringement contentions."  Second, as
6  demonstrated above and in the opening brief, Ricoh has not mapped or linked the claim language for
7  the particular elements to the accused software products. *Id.* at 18.

8  One example is Ricoh's contention for element 4 above.  For this element, Ricoh simply
9  repeats back the claim language and then lists paraphrased statements from Synopsys' documentation
10  and an outdated article from a third-party.  Ricoh does not map or link any of the paraphrased
11  statements to any of the language in element 4—e.g., expert system, knowledge base, set of rules for
12  selecting hardware cells, etc.  This failure by Ricoh to specifically map or link the language in the
13  elements to the accused software products appears throughout Ricoh's infringement contentions and
14  leaves Defendants guessing as to what Ricoh believes meets those elements.  (*See* Attachments 1-3).
15  This does not comply with Patent L.R. 3-1(c).  *Id.* at 18.

## CONCLUSION

For all of the foregoing reasons and those in the Defendants' opening brief, Defendants' motion to strike Ricoh's infringement contentions should be granted.

Dated: April 20, 2004                      Respectfully submitted,

                                           HOWREY SIMON ARNOLD & WHITE, LLP


                                           By:  /s/ Thomas C. Mavrakakis
                                                Thomas C. Mavrakakis
                                                Attorneys for Defendants
                                                AEROFLEX INCORPORATED,
                                                AMI SEMICONDUCTOR, INC.,
                                                MATROX ELECTRONIC
                                                SYSTEMS, LTD., MATROX
                                                GRAPHICS INC., MATROX
                                                INTERNATIONAL CORP. and
                                                MATROX TECH, INC.