Gary M. Hoffman, *admitted pro hac vice*
Kenneth W. Brothers, *admitted pro hac vice*
DICKSTEIN SHAPIRO MORIN &
OSHINSKY, LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman, *admitted pro hac vice*
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Phone: (212) 835-1400
Fax: (212) 992-9880

Jeffrey B. Demain (SBN 126715)
Jonathan *Weissglass* (SBN 185008)
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & *DEMAIN*
177 Post *Street*, Suite 300
San Francisco, California 94108
Phone: (415) 421-7151
Fax: (415) 362-8064

*Attorneys* for Ricoh Company, Ltd.

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
Thomas C. Mavrakakis (SBN 177927)
HOWREY SIMON ARNOLD & WHITE,
LLP
301 Ravenswood Avenue
Menlo Park, California 94025
Telephone: (650) 463-8100
Facsimile: (650) 463-8400

Attorneys for Synopsys, Inc. and
      Aeroflex Incorporated et al.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>            Plaintiff,<br><br>    vs.<br><br>RICOH COMPANY, LTD.,<br><br>            Defendant.<br><br>RICOH COMPANY, LTD.,<br><br>            Plaintiff,<br><br>    vs.<br><br>AEROFLEX INCORPORATED, et al.,<br><br>            Defendants | **CASE NO. C-03-2289-MJJ**<br><br>**CASE NO. C-03-4669-MJJ**<br><br>**DISCOVERY MATTER**<br><br>**JOINT REPORT TO THE COURT REGARDING POSSIBLE THOMAS DEPOSITION PURSUANT TO MARCH 25, 2004 ORDER**<br><br>**Date: None**<br>**Time: None**<br>**Courtroom:**<br><br>**Judge: Magistrate Judge Chen** |

The parties have been unable to agree with respect to any process to be followed with respect to Dr. Thomas' potential deposition. Following are statements from the ASIC defendants and Synopsys (collectively "defendants"), and Ricoh.

**A.    Defendants' Statement**

**1.    Defendants' Proposal**

Defendants propose a two-phase process. In the first phase, Defendants would identify what factual questions they wish to put to Dr. Thomas. In the second phase, some appropriate fact gathering technique would be used to determine whether Dr. Thomas is, in fact, likely to have unique information on the topics identified by Defendants.

Defendants believe that as a preliminary matter before any court-initiated investigation into what persons other than Dr. Thomas may or may not know is begun, the Defendants themselves need to evaluate what factual questions they might wish to put to Dr. Thomas, and then whether this information can be had from other consultants working for the Defendants. Defendants propose, therefore, that the necessary first-phase of the inquiry is for them to prepare a document describing in detail exactly what factual questions they wish to put to Dr. Thomas. Defendants propose to prepare that document by June 11.

This document will provide a necessary framework for any subsequent investigation, whether conducted by a hired neutral consultant or by some other means, into whether Dr. Thomas has unique possession of relevant factual information. That investigation can only be made with some understanding of what relevant factual information Defendants wish to obtain from Dr. Thomas. In addition, the detailed proposal from the Defendants' will hopefully also put an end to Ricoh's continued assertion, repeated several times in Ricoh's portion of this paper, that the Defendants are seeking to question Dr. Thomas about his work for Ricoh.

Defendants' had proposed to allow Ricoh until June 25 to prepare a paper responding to the identification of topics made by the Defendants. However, Ricoh has rejected the Defendants' approach without compromise, and continues its campaign of using Dr. Thomas as a tool to obtain improper discovery on the Defendants' testifying and non-testifying experts.

1    The second phase of the investigation will be an investigation to determine whether

2  the factual information identified in the Defendants' deposition proposal can be obtained from

3  some other source.  It is, however, premature to fix a particular method for conducting this

4  investigation until the Defendants have determined exactly what information they wish to obtain

5  from Dr. Thomas.

6    Defendants have very substantial concerns with the proposal that the parties retain a

7  neutral investigator to interview all individuals who might have information overlapping with

8  Dr. Thomas' knowledge.  Such an investigation would be costly and, to the extent that this

9  investigator was questioning consultants working with the Defendants in this case, would invade

10  the working relationship between the Defendants' counsel and their consultants.  If, therefore,

11  such an investigation were to proceed, Defendants want to ensure that it is narrowly focused and

12  limited only to those matters on which Defendants wish to depose Dr. Thomas.

13    In order to avoid the problems with the neutral investigator approach, Defendants

14  intend to craft a list of proposed deposition topics sufficiently narrow that some less intrusive

15  and expensive means can be found for determining whether Dr. Thomas' testimony on those

16  subjects should be allowed.

17  ## 2.    Defendants' Response To Ricoh's Proposal

18    There is no basis for Ricoh's proposal that Defendants be given only ten days to

19  determine what discovery they need from Dr. Thomas, and then put together a presentation as to

20  why that discovery ought to be allowed.  The Defendants, not Ricoh, are propounding this

21  discovery from Dr. Thomas, and they should be permitted to seek this discovery as part of the

22  orderly development of their case during fact discovery, not forced into a premature position.

23  Ricoh is no way harmed by Defendants' request that they be given until June 11 to prepare a

24  complete list of factual issues they wish to put to Dr. Thomas.  Ricoh's 10-day restriction is

25  completely gratuitous restriction and was proposed for the transparent purpose of preventing

26  Defendants from making a careful review of what particular factual points they need from Dr.

27  Thomas and assembling what evidence they have that Dr. Thomas' knowledge on those factual

28

1  points is unique.

2        Likewise, there is no basis for Ricoh's proposal that the Court order the Defendants to

3  present declarations from consultants working with the defense. The Defendants, not Ricoh,

4  must decide what evidence they have that will best demonstrate the proposition that Dr. Thomas

5  is likely to have unique information on the factual matters of interest to the Defendants.

6  Furthermore, to the extent that these consultants are working in a consulting, non-testifying

7  capacity, the Court plainly believes that it is difficult to separate their role as factual witnesses

8  from their capacity as consultants. In fact, this appears to have been the rationale for the Court's

9  proposal that an investigation into who had what relevant knowledge might be conducted on a

10  confidential basis by a neutral third party.

11        **3.    Ricoh's Unwarranted and Unjustified Attacks On Defendants.**

12        Ricoh's paper, as usual, contains several unfounded attacks on Defendants and their

13  counsel.

14        Ricoh asserts that Defendants bear responsibility for the failure of the parties to reach

15  agreement on a procedure. Ricoh concedes, however, that the Defendants' counsel made a

16  proposal regarding the procedure on April 12. *See* Ex. 4. As Ricoh further describes,

17  Defendants' counsel conferred with Ricoh's counsel on this issue on April 13 and again on April

18  21. Mr. Brothers' recounting of those meet and confer conversations is incomplete, one-sided

19  and, therefore, inaccurate. Regardless, Ricoh's paper fails to demonstrate that Defendants did

20  not meet and confer in good faith. The real problem for Ricoh is that Defendants did not

21  capitulate and adopt Ricoh's proposal.

22        Ricoh's assertion that Defendants intend to seek testimony regarding Dr. Thomas'

23  work for Ricoh is also not accurate. The fact that Ricoh continues to make this assertion

24  demonstrates exactly why a necessary first step to determining whether Dr. Thomas can be

25  deposed is for Defendants to prepare a document identifying in detail exactly what information

26  they wish to obtain from Dr. Thomas.

27        Ricoh makes a great deal of the fact that Mr. Kelley's letter of April 12 includes the

28

1    phrase "the invalidity of Ricoh's patents or the proper construction of terms found within that

2    patent." Ricoh is, however, making very selective quotation. The April 12 letter proposed to

3    produce information identifying why Defendants believed that Dr. Thomas was "likely to have

4    useful information bearing on the invalidity of the Ricoh's patents or the proper construction of

5    the terms found within that patent." *See id*. The "invalidity of Ricoh's patents" and "the proper

6    construction of terms" were introduced only to identify the ultimate issues in the case that Dr.

7    Thomas' factual testimony might be relevant to. It is utterly unremarkable that factual testimony

8    from a technical witness might have bearing on these two issues. What other possible relevance

9    could Dr. Thomas' testimony have? In any event, Defendants can offer the Court the assurance

10   that they do not intend to ask for Dr. Thomas' opinions on any subject, including the validity of

11   the patent or construction of the claims.

      **B.**    **Ricoh's Statement**

          **1.**    **The March 24 Hearing and Court Order**

15         At the hearing on March 24, 2004, the Court ordered Synopsys and the ASIC

16   defendants to explain why Dr. Thomas' knowledge of historical events and prior art was unique

17   or superior to the knowledge of defendants' consultants, which includes Dr. Thomas' protégé,

18   Dr. Kowalski, or third parties. Initially, the court made clear that any deposition of Dr. Thomas

19   would not get "into anything about the conclusions or opinions about the validity of '432, or any

20   of those matters":

22           The Court: . . . [T]here is no issue with respect to Dr. Thomas appearing
             as an expert for either side, but the desire of the – shall we say defendants
23           – to have him give what has been referred to as orthodox testimony, as I
             understand it, on the more limited point that relates to his invention, as
             informs the prior art question, <u>and not to applying and getting into</u>
24           <u>anything about the conclusions or opinions about the validity of '432, or</u>
             <u>any of those matters. That, seems to me squarely the question here.</u>

Brothers Decl. Ex. 1, 3/24/2004 Tr. at 4, ll. 14-22 (emphasis added).

27         After nearly an hour of argument, the Court ordered the parties to meet and confer to

1    see if they could agree on a process that would determine whether Dr. Thomas' deposition was

2    warranted. In response to counsel's questions, the Court clarified the scope of the inquiry as

3    follows:

> Mr. Brothers: As I understand it, the inquiry should be principally focused upon identifying the areas of information that Dr. Thomas may have, that are either unique to him or, as you said, on a sliding scale, perhaps identifying others that may have that information; but Dr. Thomas may have more information.
>
> The Court: Unique or superior, is one way to phrase it, I suppose. All right, why do not we see if this helps unlock this dispute, and if not – Mr. Brothers?
>
> Mr. Brothers: Just to follow-up, one clarification: the flip side being that, to the extent that there is information that others – whether Dr. Kowalski or others – are equal to, or they have superior information, that would no longer be on the table, for even a proposed scope of deposition; it would be focusing solely on then unique, or superior to?
>
> The Court: Yes. Defendants may not agree with that view, but that is my view: That without some kind of showing of why Dr. Thomas offers, if not unique, certainly superior, knowledge on particular subjects, I just do not see – to me there is enough of a risk here that I just do not think it is warranted – and it does seem to me there should be some showing, and exactly what that showing is, I am not sure at this point. I would have to look at case law, if push came to shove, a little more carefully but, certainly, if it were the case that he knew nothing more than Dr. Kowalski, and perhaps others know exactly everything he did, I just do not see the need at that point, all right?

Brothers Decl. Ex. 1, 3/24/2004 Tr. at 45, l. 8 – 46, l. 10.

During the hearing, defendants' counsel Teresa Corbin repeatedly agreed that she would produce a declaration from Dr. Kowalski:

> We would be happy to prepare a declaration, and Dr. Kowalski may be able to speak to what he thinks is the overlap of knowledge between himself and Dr. Thomas.

*Id.* at 40, ll. 6-10; see also *id.* at 36: "[Ms.] Corbin: Are you suggesting [Dr. Kowalski] provide a declaration as to these facts? The Court: Yes. [Ms.] Corbin: We could certainly do that." Ms. Corbin also agreed to using a Special Master. *Id.* at 42.

On March 25, 2004, this Court ordered the parties to meet and confer and file a joint report by April 23:

The Court recommended that the parties come up with an approach to determine whether Dr. Thomas had unique or superior knowledge concerning certain subjects compared, *e.g.*, to Dr. Kowalski and other experts identified by Aeroflex. The Court proposed several different approaches, including a declaration from Dr. Kowalski stating those topics/subjects on which Aeroflex seeks testimony that he believed Dr. Thomas to have unique or superior knowledge about or a deposition of Dr. Thomas limited to the issue of the scope of his knowledge. The approach that the parties indicated would be most efficient and effective was that of having a third party (*e.g.*, stipulated to and/or appointed as a special master under Rule 53) who would speak to Dr. Thomas, Dr. Kowalski, and/or others. That third party would then prepare a report for this Court identifying those areas where Dr. Thomas appears to have unique or superior knowledge. It was further suggested that, if the report indicates a deposition is warranted because of Dr. Thomas's unique or superior knowledge, a referee might be stipulated to or appointed to preside over the deposition to ensure that confidential information obtained by Dr. Thomas in the course of his consultation with Ricoh would not be disclosed. The Court ordered the parties to report back within **thirty days** as to whether they were able to agree on such a process and if so what that process would entail and a timeline therefore.

Brothers Decl. Ex. 2, 3/25/2004 Order at 2, ll 8-22.

### 2.    The attempts to meet and confer

On March 30, 2004, counsel for Ricoh wrote Ms. Corbin:

In light of Judge Chen's order of March 25, 2004, with respect to Dr. Thomas, and the parties' obligation to jointly report to the court within 30 days, Ricoh believes that the ASIC defendants and Synopsys must promptly identify to Ricoh all experts with whom the ASIC defendants and Synopsys is consulting (regardless of whether those experts have been designated as testifying experts). This information is needed to fully evaluate your need to depose Dr. Thomas in light of the judge's comments. Ricoh also believes that the ASIC defendants and Synopsys should identify at least five potential special master candidates who can conduct the evaluation referenced by the Court. Ricoh will advise you whether it consents to any of those five candidates, and if not, Ricoh will propose its own candidates. . . . We are available to meet and confer with you at a mutually agreeable time to discuss the parties' compliance with the court's order.

Brothers Decl. Ex. 3, Brothers 3/30/04 letter to Corbin.

There was no response to this letter, or to a follow-up email to defendants' counsel Christopher Kelley on April 6. Instead, on April 12, in a single paragraph, Mr. Kelley proposed that the parties defer any action on the Thomas issue until June 11, when defendants may (or may not) submit a unspecified document stating their views on why they should depose Dr.

1  Thomas "on the invalidity of Ricoh's patents or the proper construction of terms found within

2  that patent." Brothers Decl. Ex. 4, Kelley 4/12/04 letter to Brothers.

3          At a meet and confer on April 13, counsel for defendants stated that under no

4  circumstances would defendants identify their consulting experts or commit to provide a

5  declaration from Dr. Kowalski, nor would they agree to the selection of a special master.

6  Ricoh's counsel explained that defendants' proposal ignored the Court's direction during the

7  March 24 hearing that, prior to any deposition of Dr. Thomas, Synopsys and the ASIC

8  defendants must make a showing of how Dr. Thomas' testimony is unique or superior to that of

9  any other witnesses.  Ricoh explained that the proposal does not explain what type of showing

10 that Synopsys or the ASIC defendants might make, such as declarations or other evidence, and

11 leaves unresolved how Ricoh would be able to challenge any such showing.  Ricoh also objected

12 that defendant's proposed deposition of Dr. Thomas was on subject matters other than the

13 "historical prior art", the sole justification at the March 24 hearing for the deposition, and instead

14 proposes questioning Dr. Thomas on his work for Ricoh in analyzing the '432 patent, which was

15 the entire focus of Ricoh's opposition.  Brothers Decl. Ex. 5, Brothers 4/19/04 letter to Kelley.

16         During the April 13 meet and confer, Ricoh's counsel requested additional

17 explanation of Mr. Kelley's April 12 proposal, but received none.  Defendants' counsel stated

18 that under no circumstances would he disclose the experts with whom the ASIC defendants or

19 Synopsys are consulting.  He refused to indicate whether, under the proposal, the ASIC

20 defendants or Synopsys would provide any type of identification of the areas of information that

21 their consultants do not have knowledge but where Dr. Thomas does have knowledge.  He

22 refused to acknowledge that the ASIC defendants and Synopsys had the burden of showing why

23 Dr. Thomas' deposition was necessary.  He also refused to acknowledge Ricoh's March 30 letter

24 to Ms. Corbin.  (*Id.*)  Although defendants contend that this conversation constituted an adequate

25

26

27

28

1  meet and confer, Ricoh does not agree.[1]

2        Ricoh's position is that the burden under the Court's order remains upon the ASIC

3  defendants and Synopsys to show why Dr. Thomas' deposition is necessary, and why those

4  parties cannot obtain the same information from their own consultants or other fact witnesses.

5  Ricoh believes that any proposal they advance cannot ignore the Court's order with respect to a

6  special master or other neutral evaluator, and must take into consideration Ricoh's concerns that

7  any deposition of Dr. Thomas will inevitably lead to the disclosure of Ricoh's work product.

8  (*Id.*)

9        At another meet and confer on April 21, defendants' counsel declined to address any

10  of Ricoh's concerns and proposals, and instead stated that they would submit their April 12

11  proposal to the Court.  (Brothers Decl. ¶ 2.)  On 12:54 p.m. on April 23, Ricoh's counsel

12  received for the first time defendant's proposal (set forth above), which is different from the one-

13  paragraph proposal of April 12.  (*Id.* ¶ 3.)

14          3.     **Ricoh's proposal**

15

16          a.     **Defendants' motion to depose Dr. Thomas should be denied**

17        Defendants' refusal to meaningfully comply with the Court's March 25 order, and

18  their retreat from the commitments they made during the March 24 hearing, justifies an outright

19  denial of their motion for leave to lift the Delaware Court's Order of July 31, 2003, and for

20  permission to take a limited deposition of Dr. Thomas.

21        Defendants have intended to depose Dr. Thomas since July 2003, when Mr. Campbell

22  told him that

23          If the court rules that you cannot consult with defendants, we will reschedule the

24          deposition for a date of mutual convenience.  At that deposition, we will seek testimony

25

26    [1] Although defendants claim that this factual recitation is 'one-sided" and "misleading", they

27  have not disputed the substance of the meet and confer or attempted to explain why this
  description is inaccurate.

28

regarding the character of prior art logic synthesis systems and their relevance to the validity of Ricoh's patents.

When defendants sought to overturn the Order of July 31, 2003 prohibiting them from deposing or otherwise communicating with Dr. Thomas, the only evidence they cited to support their request was that Dr. Thomas had assisted his graduate students in preparing two papers, one of which was co-authored by Dr. Kowalski, one of defendants' current experts.  During the March 24 hearing, defendants conceded that they had not made any effort to determine the areas of overlap between information known by Dr. Kowalski and Dr. Thomas.  It now appears that, despite seeking Dr. Thomas' deposition for nine months, defendants contend that they should "not forced into a premature position." (*supra* at p. 3.)  On the one hand, defendants demand the right to depose Dr. Thomas because he allegedly had unique knowledge about certain facts, but now the defendants say that much more time is needed to make "a careful review of what particular factual points they need from Dr. Thomas and assembling what evidence they have that Dr. Thomas' knowledge on those factual points is unique."  Why they did not do that sometime during the very long period of time that has elapsed is never explained.  The better solution is to deny defendants' motion, because they have not justified their request, and are not prepared to justify it now in spite of their prior repeated representations to the Court.

**b.    Defendants should promptly justify their request to depose Dr. Thomas**

Alternatively, this Court should order that, within 10 days, defendants submit (1) declarations from their consultants and counsel specifically identifying the areas of unique or superior historical knowledge that Dr. Thomas possesses and why defendants are unable to obtain that information from any other source; and (2) the names of five different special masters to examine the facts and supervise any deposition.  Ricoh would have a right to respond within 30 days,[2] and a final determination made thereafter.

---

[2] Defendants' proposal that Ricoh respond in 14 days is unreasonable, especially when defendants refuse to state what kind of showing they will attempt to make.

1    Defendants make no explanation of why more time is needed. They do not say that

2  any of their experts have been or are unavailable. They do not say that they have been able to

3  identify any articles or other information that only Dr. Thomas would know. Instead, they have

4  stated that they will not provide declarations from their own experts or otherwise explain how

5  they will attempt to justify their request. Defendants claim (*supra* at p. 4) that they do not want

6  to provide declarations from their consulting experts because "to the extent that these consultants

7  are working in a consulting, non-testifying capacity, the Court plainly believes that it is difficult

8  to separate their role as factual witnesses from their capacity as consultants." The irony! This is

9  the exact reason why Ricoh is objecting to Dr. Thomas' deposition! Now that they are being

10  hoisted on their own petard, defendants are trying to avoid the very problem that is created by

11  their request, and they are unable to do so! The fact that defendants refuse to disclose the

12  identity of their consulting experts or provide declarations from them – because they believe that

13  such actions will require them to disclose their work product – is a compelling reason why they

14  should be required to either fish or cut bait. Delaying the issue will not solve it.

15    What is even clearer to Ricoh, however, is that defendants do not intend to limit their

16  questioning of Dr. Thomas to purely areas of historical fact. Before the March 24 hearing,

17  defendants said they would seek Dr. Thomas' "testimony regarding the character of prior art

18  logic synthesis systems and their relevance to the validity of Ricoh's patents." During the

19  hearing, this Court clearly put those topics off limits. Brothers Decl. Ex. 1, 3/24/04 Tr. at 4, 45.

20  After the March 24 hearing, however, defendants propose to depose Dr. Thomas on topics

21  seeking information bearing "on the invalidity of Ricoh's patents or the proper construction of

22  terms found within that patent." It should be recognized that *Dr. Thomas never examined*

23  *"Ricoh's patents" prior to his consulting work for Ricoh.* All of his opinions with respect to the

24  validity (or invalidity) of "Ricoh's patents or the proper construction of terms found within that

25  patent" necessarily requires the disclosure of Ricoh's work product and the substance Ricoh's

26  consulting with a non-testifying expert.

27    Ricoh maintains that there is no reasonable way that Dr. Thomas can be deposed in

28

1   such a way that would not lead to the inevitable disclosure of Ricoh's work product. Defendants

2   in opposing providing declarations from their consultants agree as to the legitimacy of this

3   problem. Defendants' transparent attempt to elicit the substance of Ricoh's consulting with Dr.

4   Thomas should be rejected by this Court.

5

6   Dated: April 23, 2004                              Dated: April 23, 2004

7

8   DICKSTEIN SHAPIRO MORIN &                    HOWREY SIMON ARNOLD & WHITE, LLP
        OSHINSKY LLP

9   By: Kenneth W. Brothers                           By: Erik Moller_____
10  Gary M. Hoffman                                   Teresa M. Corbin (SBN 132360)
    Kenneth W. Brothers                               Christopher Kelley (SBN 166608)
11  DICKSTEIN SHAPIRO MORIN &                    Thomas C. Mavrakakis (SBN 177927)
        OSHINSKY  LLP                                 HOWREY SIMON ARNOLD & WHITE, LLP
12  2101 L Street NW                                  301 Ravenswood Avenue
    Washington, D.C.  20037-1526                      Menlo Park, California  94025
13  Telephone: (202) 785-9700                         Telephone:  (650) 463-8100
    Facsimile: (202) 887-0689                         Facsimile:  (650) 463-8400
14
                                                      Attorneys for Synopsys, Inc. and
15  Edward A. Meilman                                     Aeroflex Incorporated et al.
    DICKSTEIN SHAPIRO MORIN &
16      OSHINSKY  LLP
    1177 Avenue of the Americas
17  New York, New York  10036
    Telephone:  (212) 896-5471
18  Facsimile:  (212) 997-9880

19
    Jeffrey B. Demain, State Bar No. 126715
20  Jonathan Weissglass, State Bar No. 185008
    ALTSHULER, BERZON, NUSSBAUM,
21      RUBIN & DEMAIN
    177 Post Street, Suite 300
22  San Francisco, California  94108
    Phone: (415) 421-7151
23  Fax: (415) 362-8064

24  Attorneys for Ricoh Company, Ltd.

25

26

27

28