```
 1  Gary M. Hoffman (Pro Hac Vice)
    Kenneth W. Brothers (Pro Hac Vice)
 2  Eric Oliver (Pro Hac Vice)
    DeAnna Allen (Pro Hac Vice)
 3  DICKSTEIN SHAPIRO MORIN
      & OSHINSKY LLP
 4  2101 L Street NW
    Washington, DC  20037-1526
 5  Telephone:  (202) 785-9700
    Facsimile:  (202) 887-0689
 6
    Edward A. Meilman (Pro Hac Vice)
 7  DICKSTEIN SHAPIRO MORIN
      & OSHINSKY LLP
 8  1177 Avenue of the Americas
    New York, New York  10036-2714
 9  Telephone:  (212) 835-1400
    Facsimile:  (212) 997-9880
10
    Jeffrey B. Demain, State Bar No. 126715
11  Jonathan Weissglass, State Bar No. 185008
    ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
12  177 Post Street, Suite 300
    San Francisco, California  94108
13  Telephone:  (415) 421-7151
    Facsimile:  (415) 362-8064
14
    Attorneys for Ricoh Company, Ltd.
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AEROFLEX INCORPORATED, et al., <br><br> Defendants. | **CASE NO. C-03-4669-MJJ (EMC)** <br> **CASE NO. C-03-2289-MJJ (EMC)** |
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RICOH COMPANY, LTD., <br><br> Defendant. | **RICOH'S OPPOSITION TO SYNOPSYS AND DEFENDANTS' MOTION REQUESTING EQUAL PRESENTATION TIME AT TUTORIAL** <br><br> Date:  To Be Determined <br> Time:  To Be Determined <br> Courtroom:  11 <br> Judge:  Martin J. Jenkins |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................................2

     A.   The Court's Markman Practice Includes A Neutral Tutorial
          Presented By The Patentee/Plaintiff ........................................................................2

     B.   Ricoh's Repeated Attempts To Negotiate The Content Of The
          Tutorial Presentation Were Rejected By Defendants ..............................................3

     C.   Defendants Seek To Interject Extrinsic Evidence Into The Markman
          Proceedings ..............................................................................................................4

     D.   Defendants Have Never Sought To Have A Meet And Confer About
          Their Motion ............................................................................................................4

III. ARGUMENT .......................................................................................................................5

     A.   Defendants' Motion Is Merely Another Attempt To Undermine The
          Court's Markman Practice .......................................................................................5

     B.   Defendants Refused To Negotiate The Content Of The Tutorial ...........................6

     C.   Defendants' Motion Is Premature Under The Court's Rules...................................6

     D.   Dr. Soderman's Presentation Is Properly Rooted In The Patent
          Specification ............................................................................................................6

     E.   The Proper Portions Of Defendant's Proposed Presentation Are
          Already Covered By Dr. Soderman's Tutorial ......................................................10

IV.  CONCLUSION..................................................................................................................12

I. **INTRODUCTION**

Synopsys and Defendants' (collectively, "Defendants") motion for equal tutorial time is nothing more than a thinly-veiled attempt to circumvent two key directives by this Court. First, this Court has repeatedly stated that the Markman tutorial is to be a non-adversarial presentation by Ricoh, as the patentee/plaintiff, of how the invention of the patent in suit works. Second, this Court has ordered that extrinsic evidence will not be considered at this stage of the Markman proceedings. Contrary to this Court's practice, Defendants not only intend to use their proposed "tutorial" to expose the Court to a large volume of extrinsic evidence, but have explicitly admitted that they want two "adversarial" tutorials. Defendants' proposal is also unnecessary, especially because Ricoh has incorporated into its tutorial virtually all of Defendants' suggestions that do not violate the Court's directives.

In the past month, the parties have exchanged information about what will be presented at the tutorial. On September 20, Ricoh provided Defendants with a very detailed, seven-page, point-by-point draft outline of the tutorial presentation by its expert, Dr. Donald Soderman. (Pl. Ex. 1, Allen 9/20/04 letter; Pl. Ex. 2, Pl. Draft Tutorial Outline.) The Soderman presentation complies with the Court's directives, and is extensively annotated with citations to the patent specification. In contrast, Defendants provided a bare bones list of bulleted points that relies on extrinsic evidence and their claim construction theories, without any cites to the patent.

Fully aware that Dr. Soderman's outline is based on the teachings of the '432 patent, Defendants have refused to make any effort to cooperate with Ricoh in negotiating any changes in the content of the tutorial. Notably, prior to filing their motion, Defendants refused at least twice to identify those parts of Ricoh's tutorial plan that they now allege are not proper subject matter for the tutorial. Defendants also refused to identify the portions of Dr. Soderman's presentation to which Defendants have no objection. Cooperation by Defendants in providing such information might eliminate much of the current controversy and at a minimum would avoid requiring the Court to hear the same information twice. Thus, Ricoh has repeatedly offered to exchange this type of information with Defendants, but to

1  no avail.

2  Defendants clearly have no desire to cooperate with Ricoh in developing a tutorial presentation that follows the Court's longstanding Markman procedures. They instead are angling for a way to introduce extrinsic evidence and claim construction argument notwithstanding the Court's directive to the contrary.

Defendants also have failed to follow the Court's motion practice procedures. While there have been discussions about other aspects of the tutorial, Defendants never sought to have a meet and confer about their equal time request.

## II.  FACTUAL BACKGROUND

### A.  The Court's Markman Practice Includes A Neutral Tutorial Presented By The Patentee/Plaintiff

During its July 14, 2004 hearing on Markman procedures, the Court expressly stated its longstanding practice for Markman tutorials. Among other things, the Court made clear that the Markman tutorial was a non-adversarial, patentee/plaintiff presentation:

> [N]ormally, what I ask for, and this has worked for seven years, is that the patent at issue, the patent that is allegedly infringed, that you provide a tutorial just explaining how the product works. That's all. No other augmentation, no reference to accused products, nothing of that nature. It's a very plaintiff presentation.
>
> . . . .
>
> MR. MAVRAKAKIS: . . . . So would that mean that we would split time and each side would have --
>
> THE COURT: Why is there a need to split time? You see, here's the issue: it's not adversarial.
>
> MR. MAVRAKAKIS: Okay.

(Def. Ex. A, 7/14/04 Tr. at 3-4.) The Court also made clear that the purpose of the tutorial "is not to create issues." (*Id.* at 4.)

**B.  Ricoh's Repeated Attempts To Negotiate The Content Of The Tutorial Presentation Were Rejected By Defendants**

On September 20, 2004, the parties exchanged proposed outlines of the tutorial content. As previously agreed, Ricoh provided a detailed outline that included supporting citations to the '432 patent specification. (Pl. Ex. 1, Allen 9/20/04 letter; Pl. Ex. 2, Pl. Draft Tutorial Outline.) Ricoh's proposal was a comprehensive seven-page outline provided by its expert, Dr. Soderman, which included general background information and an explanation of how, as set forth in (and with citations to) the patent specification, the '432 patented invention works. (*See* Pl. Ex. 2, Pl. Draft Tutorial Outline.) Care had been taken to make the presentation neutral and to eliminate matters which might be construed as claim construction arguments. Defendants provided a two-page, skeletal bullet-point list with no supporting citations. (Pl. Ex. 3, Def. Draft Tutorial Outline.)

This Court had indicated that the parties should cooperate with regard to the Markman tutorial. Ricoh repeatedly proposed that the parties exchange a detailed list of the points in the other party's outline that: were acceptable; were negotiable (e.g., would be acceptable with revision); and were not acceptable. (*See, e.g.*, Pl. Ex. 4, Hoffman 10/1/04 letter at 2.) Defendants have never responded to the proposal to cooperate.

Without identifying any legitimate objections they had to Ricoh's tutorial proposal, Defendants demanded absolute veto power over the content of the presentation. (See *Id.*; Pl. Ex. 5, Mavrakakis 10/1/04 letter.) Notwithstanding Defendants refusal to cooperate, their non-controversial proposals have been incorporated into the Soderman presentation. (*See* Pl. Ex. 9, Allen 10/13/04 letter and attached outline.)

The parties did attempt to mutually select an expert to make the presentation. Although Ricoh expressly disagreed that a mutually selected expert was either required by the Court,[1] needed,[2] or

---

[1] (*See* Def. Ex. A, 7/14/04 Tr. at 3 ("It's a very plaintiff presentation.").)

[2] Consistent with the Court's longstanding practice, a neutral tutorial presentation of what the '432 patent teaches can be made by the patentee's expert. (Def. Ex. A, 7/14/04 Tr. at 2-4.)

could be found,[3] Ricoh did make an attempt to find such an expert. (*Id.*) While each party was to propose four potential experts, Ricoh was unable to identify a person that met all of the parties' criteria. Defendants ultimately only managed to identify and propose two possible candidates. However, investigation of these two candidates revealed that neither was "neutral" in that one had previously been contacted by Ricoh in connection with providing consultation in the present litigation, and the other directly benefits from research and development funding provided by Synopsys. (Pl. Ex. 4, Hoffman 10/1/04 letter at 2.)

### C. Defendants Seek To Interject Extrinsic Evidence Into The Markman Proceedings

Defendants' proposed tutorial, like all of their Markman filings, relies heavily on extrinsic evidence. Defendants' portion of the Joint Preliminary Claim Construction is replete with extrinsic evidence that is provided through the declaration of their expert, Dr. Kowalski, and that is woven throughout their claim construction contentions. (*See generally* Pl. Ex. 6, Joint Claim Construction And Prehearing Statement and Ex. A thereto (at Col. 3, Def. Claim Construction) (relying on and citing extensively to extrinsic evidence).) Defendants' proposed tutorial outline is rife with both the claim construction theories and the extrinsic evidence that Defendants had previously included as part of their claim construction filings, notwithstanding the Court's statements that it did not want to receive extrinsic evidence in the tutorial. (*See id.*; Pl. Ex. 3, Def. Draft Tutorial Outline; *see generally* Pl. Ex. 7, Def. Responsive Claim Construction Brief (re-filed).)

### D. Defendants Have Never Sought To Have A Meet And Confer About Their Motion

There have been extensive interactions between the parties about the process of preparing for the tutorial as well as its content. After announcing that there is no "need for any further meet and

---

[3] Ricoh expressed concern that a "neutral" expert would be difficult to find in light of the parties' extensive contacts with potential experts in connection with this litigation, and in connection with other matters (such as where a potential expert either benefits from research and development funding provided by one of the parties, or has engaged in a business relationship with a party). (Def. Ex. P, Hoffman 8/24/04 letter at 2; Def. Ex. AA, Hoffman 9/27/04 letter at 1-2.)

confer" about the tutorial content, Defendants stated that they would file a motion seeking an order to have equal time. (Pl. Ex. 5, Mavrakakis 10/1/04 letter.) They never sought to discuss the equal time proposal with Ricoh.

### III.   ARGUMENT

#### A.   Defendants' Motion Is Merely Another Attempt To Undermine The Court's Markman Practice

Rather than cooperate with Ricoh to fashion a presentation properly based on the teachings of the '432 patent, as the Court contemplated as part of its Markman practice, and having otherwise failed to engineer a way to control the tutorial presentation, Defendants now demand equal presentation time. Following the pattern established in Defendant's portion of the Joint Claim Construction and Prehearing Statement (*see generally* Pl. Ex. 6), and in their Responsive Claim Construction Brief (re-filed) (*see generally* Pl. Ex. 7), Defendants' current motion is just one in a series of efforts to undermine the Court's proscription against claim construction arguments at the tutorial and against extrinsic evidence in the Markman proceedings generally.

The Court has already questioned Defendants' purported need for "equal presentation time." (*See* Def. Ex. A, 7/14/04 Tr. at 3-4 ("THE COURT: Why is there a need to split time? You see, here's the issue: it's not adversarial. MR. MAVRAKAKIS: Okay.").) Defendants' motion would unnecessarily force the Court to sit through two separate presentations so that Defendants can improperly put forward extrinsic evidence and claim construction positions at the Markman tutorial. Defendants' eleventh hour motion is no more than an end-run around the Court's stated directives about the Markman tutorial.[4]

---

[4] Defendants' disregard for the Court's procedures is legion. Despite the Court's express statement that the tutorial proceedings are not recorded (Def. Ex. A, 7/14/04 Tr. at 3), Defendants demand the proceedings be on the record (Def. Br. at 1 n.1). Additionally, even though the Court has directed that extrinsic evidence will not be considered at this stage of the proceedings, and may in fact not be required at all, Defendants suggest that Ricoh should be penalized for complying with the Court's directives while Defendants should be rewarded for ignoring the Court's directive. Specifically, the Court plainly stated that it was not going to receive expert testimony at this time; however, if it decided to receive

### B. Defendants Refused To Negotiate The Content Of The Tutorial

Defendants have rejected Ricoh's many attempts to negotiate the content to the tutorial. Instead, Defendants, by their motion, seek to create an adversarial proceeding in which Defendants can improperly bolster their claim construction positions through extrinsic evidence presented by their expert.

Notably, Defendants have refused both (i) to work with Ricoh to incorporate information that Defendants think is missing from Dr. Soderman's presentation, and (ii) to identify any points in Dr. Soderman's presentation that are neither general background nor based on the '432 specification. (Pl. Ex. 4, Hoffman 10/1/04 letter at 2 (noting Defendants' failure to respond to Ricoh's offer to exchange markups of the tutorial outlines).) Defendants' silence on this issue only highlights the impropriety of their motion.

### C. Defendants' Motion Is Premature Under The Court's Rules

This Court's rules require a meet and confer before making a motion. In this instance, Defendants never raised their proposal to share the tutorial time equally before they presented the Court with the current motion. (*See supra* Section II.D.) The motion should be denied on this ground alone.

### D. Dr. Soderman's Presentation Is Properly Rooted In The Patent Specification

Defendants argue that the tutorial outline provided by Ricoh mirrors Ricoh's claim construction. (Def. Br. at 5-7.) Ricoh freely acknowledges that its claim construction positions are grounded upon the patent, the specification, and other intrinsic evidence, and also acknowledges that the Soderman presentation addresses the technology at issue in the patent. Defendants' complaint that there is a congruence between the Soderman presentation and the basis for Ricoh's claim construction is no

---

such evidence, it would do so in a way that was fair to both sides and that Ricoh would have an opportunity to respond if the Court decided to receive such testimony. (Def. Ex. A, 7/14/04 Tr. at 11-13.) In doing so, the Court stated its awareness of the local rules. (*Id.* at 9.) Nevertheless, Defendants now argue that Ricoh has not complied with the Patent Local Rules, and thus waived its right to expert testimony at the claim construction hearing. (Def. Br. at 2 n.3 (arguing waiver).) Defendants' contention should be rejected as inconsistent with the Court's express statements, not to mention general principles of fairness.

surprise, as both are grounded upon the same patent. The Soderman presentation, however, is carefully limited to background information and the '432 patent specification. Defendants' complaint reveals a fundamental weakness in Defendants' case theories as well as their desire to ignore the intrinsic evidence and instead resort to extrinsic evidence. Because the Soderman tutorial explains how the patented invention works and is rooted in the teachings of the '432 specification, rather than the patent's claims, it is consistent with what the Court said it wanted in the tutorial.

Defendants provide a chart purporting to set forth "bias" because of commonalities between certain terms in Ricoh's proposed claim construction and Dr. Soderman's tutorial presentation. (Def. Br. at 5-6.) Even putting aside the fact that Defendants refused to share these assertions with Ricoh before making their motion, this chart utterly fails to address the critical issue of whether Dr. Soderman's presentation is rooted in the teachings of the '432 patent's specification. Contrary to Defendants' assertions, Dr. Soderman's tutorial is proper and consistent with the Court's directive. (Def. Ex. A, 7/14/04 Tr. at 3-5.)

The following chart shows how the "representative examples" that Defendants complain of in their chart at pages 6 to 7 of their motion are actually based on the teachings of the '432 specification. It is important to note that while the following chart captures each of the points objected to in Defendants' motion, it amounts to less than twenty-five percent of the content of Dr. Soderman's September 20, 2004 tutorial outline. In short, Defendants managed to come up with objections to only a fraction of the points in Dr. Soderman's outline, and even these objections are not valid for, as shown by the chart below, each of the points objected to is supported by the '432 patent specification.

| TUTORIAL DESCRIPTION | EXAMPLE SUPPORTING CITATIONS |
|---|---|
| The manufacturing process is made up of two parts: design and production. | Pl. Ex. 8, '432 Patent, Col. 2, ll. 15-20 ("Thus, the present invention . . . opens the possibility for the design and production of ASICs by designers, engineers and technicians who may not possess the specialized expert knowledge of a highly skilled VLSI design engineer."). |
| A designer prepares a description (known as a "specification") of the | Id. at Col. 1, l. 63 – Col. 2, l. 20 ("There is only a small number of VLSI designers who possess the highly |

| TUTORIAL DESCRIPTION | EXAMPLE SUPPORTING CITATIONS |
|---|---|
| function or behavior of the ASIC (or portion) that is to be produced. . . . In accordance with the patented process, the designer need not be familiar with the hardware components or other structure that is to be included in the ASIC. Thus, the input description or specification does <u>not</u> have to specify the structure or architectural components that are to be included in the ASIC to be produced. | specialized skills needed to create structural level integrated circuit hardware descriptions. . . . In accordance with the present invention a CAD (computer-aided design) system and method is provided which enables a user to define the functional requirements for a desired target integrated circuit, using an easily understood architecture independent functional level representation, and which generates therefrom the detailed information needed for directly producing an . . . ASIC . . . to carry out those specific functions. Thus, the present invention . . . opens the possibility for the design and production of ASICs by designers, engineers and technicians who may not possess the specialized expert knowledge of a highly skilled VLSI design engineer.").<br><br>*Id.* at Col. 2, ll. 27-34 ("From the flowchart (or other functional specifications), the system and method of the present invention translates the architecture independent functional specifications into an architecture specific structural level definition of an integrated circuit, which can be used directly to produce the ASIC."). |
| The description of architecture independent functions are made up of the operations or "actions" to be performed by (or within) the ASIC and the "conditions" under which such actions are to be performed. The architecture independent specifications do not specify or imply the specific structure to be designed. | *Id.*<br><br>*See also* Col. 6, ll. 5-14 (describing example actions and conditions -- "with reference to FIG. 5, wherein a "first Action (Action 1) involves moving the value of variable VAL1 to register A [and wherein the] second action comprises moving the value of variable VAL2 to register B. Condition 1 comprises comparing the values in registers A and B. Action 3 comprises adding the values of registers A and B and storing the result in register C."). |
| The hardware components to be used in the design of the ASIC to be produced are referred to as "hardware cells." The hardware cells are basic circuit components (e.g., logic gates, transistors, etc.) that have been previously designed by VLSI engineers, having various functional and technical specifications. | *Id.* at Col. 5, ll. 15-20 ("Rather than generating every required hardware cell from scratch, the system draws upon a cell library 34 of previously designed, tested and proven hardware cells of various types and of various functional capabilities with a given type."). |
| The patented process uses a storehouse or database of knowledge (known as a "knowledge base") to serve as a base for reference in | *Id.* at Col. 5, ll. 6-25 ("The knowledge base 35 contains ASIC design expert knowledge . . . . Using a rule based expert system with a knowledge base 35 extracted from expert ASIC designers, the KBSC system selects from the |

| TUTORIAL DESCRIPTION | EXAMPLE SUPPORTING CITATIONS |
|---|---|
| designing an ASIC. In particular, in accordance with the '432 patent, the knowledge held by experts in VLSI design is obtained and stored in the knowledge base. | cell library 34 the optimum cell for carrying out the desired function."). |
| "Rules" are prescribed guides or accepted procedures. In the context of the '432 patent, the rules are used to apply the expert knowledge from VLSI designers to automatically design an ASIC. | *Id.* at Col. 11, ll. 1-14 (providing a table showing an If-Then rule format).<br><br>*Id.* at Col. 2, ll. 27-34 ("From the flowchart (or other functional specifications), the system and method of the present invention translates the architecture independent functional specifications into an architecture specific structural level definition of an integrated circuit . . . .").<br><br>*Id.* at Col. 2, ll. 50-63 ("The preferred embodiment of the system and method of the present invention . . . is referred to as [KBSC]. . . . The KBSC utilizes a knowledge based extracted from expert ASIC designers with a high level of expertise in VLSI design to generate from the flowchart a netlist which describes the selected hardware cells and their interconnection requirements."). |
| A listing of the hardware cells as selected are listed, together with a listing of the connections between such cells, in what is known as a netlist. The netlist is transformed into a layout of hardware cells that is used to produce the mask data that is directly used for the production of the desired ASIC. | *Id.* at Col. 2, ll. 42-49 ("The list of hardware cells and their interconnection requirements may be represented in the form of a netlist. From the netlist it is possible using either known manual techniques or existing VLSI CAD layout systems to generate the detailed chip level geometrical information (e.g., mask data) required to produce the particular application specific integrated circuit in chip form."). |
| The process also involves the generation of signal lines carrying data signals (known as "data paths"). | *Id.* at Col. 2, ll. 39-40 ("The system also generates data paths among the selected hardware cells.").<br><br>*Id.* at Col. 6, ll. 28-54 (describing an example of data paths to connecting a comparator to registers). |
| The process further involves the generation of control signals (known as "control paths") between the hardware cells. | *Id.* at Col. 2, ll. 36-44 (describing the generation of a controller and control paths). |

As indicated in the preceding chart, Dr. Soderman's presentation is based on the intrinsic evidence, and does not bias Defendants. Ricoh submits that Defendants' motion should be denied on

this basis alone.

### E. The Proper Portions Of Defendant's Proposed Presentation Are Already Covered By Dr. Soderman's Tutorial

Although Ricoh refuses to incorporate the portions of Defendants' outline that are either extrinsic evidence or backdoor attempts to construe the claims,[5] it had no objection to incorporating in its tutorial proposal those portions of Defendants' proposal that are proper subject matter for the tutorial. In an effort to resolve these issues, Ricoh proposed a mutual exchange of tutorial revisions. For its part, Ricoh offered to identify: (i) the non-adversarial portions of Defendants' proposed outline that Dr. Soderman's tutorial outline either already covered or could be modified to cover; and (ii) the portions of Defendants' proposed outline that Ricoh was willing to modify to present in a non-adversarial manner. Defendants have refused to even attempt to cooperate in this effort and instead have simply ignored Ricoh's proposal.

Notwithstanding Defendants' repeated rejection of Ricoh's offer to mutually exchange a list of revisions to the parties' respective proposed outlines, Ricoh has evaluated Defendants' proposal. Set forth below is a list of points based on Defendants' outline that Ricoh believes can be stated in a non-adversarial format, and are appropriate for inclusion in the tutorial. But as shown in the column on the right, these points were already addressed in Dr. Soderman's September 20, 2004 outline[6]:

---

[5] In this motion, Defendants seek sufficient time to present a tutorial based on either largely extrinsic evidence that lacks support in the specification or claims construction that seeks to read specific examples and preferred embodiments disclosed in the '432 patent's specification as claim limitations. As just one example, Defendants seek to have the tutorial discuss the details of what constitutes an "expert" system even though that is a contested issue for Markman determination. (Pl. Ex. 3, Def. Draft Tutorial Outline at 1-2 (including extrinsic evidence attempting to distinguish "algorithmic" systems, and extrinsic evidence regarding a purported required number of rules).) The extent to which the Court may ever wish to consider such submissions is not an issue for the tutorial.

[6] Defendants also desire to present a video created (copyright 2002) well after the time of the patent and that contains extensive irrelevant material. The relevant information covered by the video, however, is incorporated into Ricoh's presentation.

| Points From Defendants' Tutorial Outline In Non-Adversarial Format | Already Incorporated In Ricoh's Presentation |
|---|---|
| '432 patent's invention is directed to a computer-aided design system and method for designing application specific integrated circuits, which are commonly known by the acronym ASIC; | [*See* Pl. Ex. 2, Pl. Draft Tutorial Outline at II.A, V.A.1.] |
| There are two types of integrated circuits "application specific" and "general purpose"; | [*See id.* at II.A, B.] |
| The '432 patent is directed to using computers to design ASICs as opposed to standard general purpose integrated circuits; | [*See id.* at II.A, B, D.] |
| The '432 patent is not directed to designing microprocessors, memory chips, or other general purpose chips; | [*See id.* at II.B.] |
| FIG. 2[7] shows a preferred embodiment that generates a netlist using a flowchart input; | [*See id.* at V.B.5.d.] |
| FIG. 2 also shows that other computer-aided design software tools may be used to generate mask data from a netlist; | [*See id.* at V.B.5.e.] |
| FIG. 5 "is an example flowchart defining a sequence of functional operations to be performed by an integrated circuit"; [*See* Pl. Ex. 8, '432 patent at Col. 3, ll. 13-15]. | [*See id.* at V.B.1.b.] |
| The '432 patent has a goal of eliminating the need for using highly skilled VLSI designers to design ASICs; | [*See id.* at V.A.2.] |
| One example computer-aided design tool needed for generating mask data is known as "placing," which enables a designer to plan the location of the circuit blocks in the design; | [*See id.* at IV.C – we call it "layout."] |
| FIG. 1c pictorially illustrates mask data; | [*See id.* at IV.C.] |
| TABLE 1 in the '432 patent shows examples of actions and conditions and of definitions of actions and conditions. Actions and conditions may be described in the input, including in an input in the form of a flowchart, and may be mapped to stored definitions of actions and | [*See id.* at V.B.3.a-c (actions & conditions mapped to definitions (e.g., macros), examples of which are listed in Table 1).] |

---

[7] Ricoh believes that references to example Figures disclosed in the patent are appropriate if made in the non-adversarial format like that stated herein. Dr. Soderman has included such references in his presentation. (*See* Pl. Ex. 9, Allen 10/13/04 letter and attached outline at 4, 6-7).

| Points From Defendants' Tutorial Outline In Non-Adversarial Format | Already Incorporated In Ricoh's Presentation |
|---|---|
| conditions; | |
| The '432 patent discloses an embodiment using IF-THEN rules having both an antecedent (IF) and a consequent (THEN) portion; | [See id. at V.B.2.b.] |
| Describing the desired operations of the ASIC is the first step performed using the claimed process; | [See id. at V.B.5.a.] |
| The example rules in the '432 patent show data paths may be generated; | [See id. at V.B.5.f-g.] |
| Mask data consists of shapes that represent the various layers that form the devices and interconnections of the ASIC design; | [See id. at IV.C; see also id. at V.B.5.e.] |
| The mask data is the information that is used for generating the photomasks that are used in the production process for the ASIC; | [See id. at IV.C (describing mask data); id. at IV.D.1-4 (describing mask data/mask levels as used in the production of ASICs).] |

There is simply no reason that the Court needs to sit through the same presentation twice. The fact that Dr. Soderman already has incorporated the portions of Defendants' proposed outline listed above is another reason Defendants' motion should be denied.

## IV.    CONCLUSION

Dr. Soderman's tutorial is supported by the teachings of the '432 patent, and does not bias the Court or Defendants. Defendants' proposed tutorial is improper claim construction based on extrinsic evidence. Defendants' motion seeks an adversarial tutorial designed both to unnecessarily create issues that are more properly reserved for the Markman hearing, and to improperly interject extrinsic evidence into the tutorial. Furthermore, Ricoh has already incorporated the portions of Defendants' proposal[8] that are directed to how the invention works as described in the '432 patent.

---

[8] See supra chart at III.E.

| | | |
|---|---|---|
| 1 | Defendants' motion should be denied. | |
| 2 | | |
| 3 | Dated: October 13, 2004 | Ricoh Company, Ltd. |
| 4 | | By: ___/s/ Gary Hoffman_____ |
| | | Gary M. Hoffman (*Pro Hac Vice*) |
| 5 | | Kenneth W. Brothers (*Pro Hac Vice*) |
| 6 | | Eric Oliver (*Pro Hac Vice*) |
| | | DeAnna Allen (*Pro Hac Vice*) |
| 7 | | DICKSTEIN SHAPIRO MORIN |
| | | & OSHINSKY LLP |
| 8 | | 2101 L Street NW |
| | | Washington, D.C. 20037-1526 |
| 9 | | Telephone: (202) 785-9700 |
| 10 | | Facsimile: (202) 887-0689 |
| 11 | | Edward A. Meilman (*Pro Hac Vice*) |
| | | DICKSTEIN SHAPIRO MORIN |
| 12 | | & OSHINSKY LLP |
| 13 | | 1177 Avenue of the Americas |
| | | New York, New York 10036-2714 |
| 14 | | Telephone: (212) 896-5471 |
| | | Facsimile: (212) 997-9880 |
| 15 | | |
| 16 | | Jeffrey B. Demain, State Bar No. 126715 |
| | | Jonathan Weissglass, State Bar No. 185008 |
| 17 | | ALTSHULER, BERZON, NUSSBAUM, |
| | | RUBIN & DEMAIN |
| 18 | | 177 Post Street, Suite 300 |
| | | San Francisco, California 94108 |
| 19 | | Telephone: (415) 421-7151 |
| | | Facsimile: (415) 362-8064 |
| 20 | | |
| 21 | | Attorneys for Ricoh Company, Ltd. |