UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>RICOH CO., LTD.,<br><br>            Defendant.<br>_____/<br>RICOH CO., LTD.,<br><br>            Plaintiff,<br><br>      v.<br><br>AEROFLEX, et al.,<br><br>            Defendants.<br>_____/ | No. C-03-2289 MJJ (EMC)<br>No. C-03-4669 MJJ (EMC)<br><br>**ORDER RE PARTIES' JOINT LETTER**<br>**OF SEPTEMBER 16, 2005** |

On September 12, 2005, the parties met and conferred as required by the Court's order of September 8, 2005. *See* Docket No. 333 (order, filed on 9/8/05). Thereafter, the parties filed a joint letter on September 16, 2005, asking the Court to resolve two remaining discovery disputes. Having considered the joint letter, the Court hereby orders as follows.

A.   <u>Documents Relating to the Design of ASICs</u>

Ricoh asks the Court to compel Defendants[1] to produce e-mails and other internal documents related to their design of the ASICs at issue. As a preliminary matter, the Court takes notes of

---

[1] For convenience, the Court uses the term "Defendants" to refer to the Customer Defendants and Synopsys collectively.

Defendants' assertion that "they have already agreed to produce all of the actual inputs, outputs, and relevant libraries for each of the 85 ASICs at issue, as well as to search for relevant e-mails." Joint letter of 9/16/05, at 4. Therefore, at least part of this discovery dispute seems to have been resolved.

According to Defendants, "[t]he only issue that actually remains is whether the Customer Defendants will search for and produce electronic and hard copy documents and e-mails from each person identified in the deliberative process that goes into planning what ultimately became each of the 85 commercial ASICs that Ricoh . . . claims are at issue in this case." *Id.* Because Ricoh does not expressly dispute this characterization of the documents, the Court shall proceed with this understanding of the documents. In other words, the issue here is whether Defendants should be compelled to produce documents, both electronic and hard copy, related to the deliberative process that precedes the formulation of an actual specification for a given ASIC.

Defendants contend that the production of such documents should not be compelled: "Since only the *actual* inputs, libraries and outputs of the chip produced can bear on the infringement question, the requested information is completely irrelevant." *Id.* (emphasis added). The Court cannot conclude with certainty that this information is completely irrelevant. Although the issue of infringement may ultimately turn on actual inputs, libraries, and outputs, the deliberative process that comes beforehand may still be illuminating with respect to the infringement question -- *e.g.*, indicating how a chip was intended to function, providing context, etc. Moreover, Ricoh makes a point that Defendants do not address, namely, that the inputs that Defendants have agreed to produce are simply computer code and not "speaking" documents. *See id.* at 3. While the computer code may be the subject of interpretation and analysis via expert testimony, the documents sought could provide additional evidence that might aid in that interpretation. In short, it is not unusual in a patent case to have discovery not only of the accused product (or process) but also of preliminary, peripheral, and collateral evidence, particularly that which is only a step removed from the accused product (or process).

Defendants argue that, even if the documents sought are deemed relevant, the burden of the discovery outweighs the benefit. Defendants note first that there are 85 ASICs at issue "designed at some point since 1997." *Id.* at 5. They then assert that they will have to contact dozens of

employees to collect the documents. *See id.* (noting that, for the Matrox defendants alone, more than 40 employees were interviewed to collect the input and output information and that "at least this many employees would have to be interviewed again . . . to begin to collect the additional information"). In spite of the Court's warning to the parties on September 12 that any claim of burden would have to be supported by specific evidence such as a declaration, Defendants did not provide any such evidence, stating that they did not have adequate time to prepare and submit declarations. *See id.* at 5 n.3 (also asking for a brief extension to submit declarations "[i]f the Court is inclined to grant Ricoh's request to compel").

The Court does not find Defendants' claim of burden to be so great such that Ricoh should be precluded from obtaining *any* of the documents sought. Balancing the benefit and burden of discovery, the Court concludes that at least some documents should be produced. The Court therefore orders the parties to meet and confer to determine how the document production could be facilitated to ease the burden on each Defendant. For instance, the parties could agree that, for each Defendant, a certain number of custodians most likely to have the type of documents sought should be identified and their files searched for responsive documents. While this may not yield 100 percent of all responsive documents, it could yield the most important ones while confining the search to a discrete number of custodians.

The parties shall meet and confer and agree upon the search and production procedure. If an agreement cannot be reached, the parties shall submit their respective proposals to the Court in a joint letter no later than **September 30, 2005**. The joint letter shall not exceed five single-spaced pages.

B.  Supplemental Responses to Interrogatories

Ricoh also moves the Court to compel Defendants to supplement their responses to certain numbered interrogatories, more specifically, Interrogatories Nos. 1-5 and 7-10. According to Ricoh, counting discrete subparts, the numbered interrogatories actually constitute 22 interrogatories.

1.  Number of Interrogatories

As a preliminary matter, the Court takes note of the parties' dispute over how many interrogatories Ricoh was permitted to ask each Defendant. Ricoh contends that it is entitled to 50

interrogatories because it served its interrogatories and Defendants provided initial responses while the case was still pending in federal court in Delaware (*i.e.*, before its transfer to this District). *See* D. Del. L.R. 26.1(b) ("Unless otherwise ordered by the Court, there shall be no limitation upon the permissible number of document requests, requests for admission, or depositions, but no party shall propound more than 50 interrogatories to any other party."). Defendants argue that Ricoh should be limited to 25 interrogatories, the presumptive limit provided under Federal Rule of Civil Procedure 33(a). *See* Fed. R. Civ. P. 33(a) ("Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts . . . .").

Given that the interrogatories *and* initial responses were both served while the case was pending in the District of Delaware, the Court concludes that Ricoh is entitled to 50 interrogatories. This number is not excessive in any event given that this is a complex case involving a number of different chips. *Cf.* Fed. R. Civ. P. 33(a) (providing that court may give leave to a party to propound more than 25 interrogatories "to the extent consistent with the principles of Rule 26(b)(2)").

    2.    <u>Number of Subparts</u>

Defendants argue that, even if Ricoh is entitled to 50 interrogatories, it "exceed[ed] that limit in its first several interrogatories." Joint letter of 9/16/05, at 12. Ricoh contends otherwise and also argues that, in any event, Defendants have waived any objection based on the number of interrogatories.

The Court rejects Ricoh's argument that Defendants have waived any objection based on the number of interrogatories. As pointed out by Defendants, in their general objections, which are incorporated by reference into the specific objections, Defendants argued that the interrogatories were compound and contained unrelated subparts in violation of Rule 33(a).

As for how many subparts are actually at issue with the 10 numbered interrogatories, the Court finds as follows:

    a.    <u>Interrogatory No. 1</u>

Interrogatory No. 1 asks Defendants to "[d]escribe the organizational structure of defendant, including but not limited to those groups, divisions, teams and other organizations having any

involvement in defendant's ASIC Method at any time, and identify all individuals who can testify about such organization."

Interrogatory No. 1 constitutes two interrogatories, asking for (1) a description of facts and (2) an identification of witnesses. *Cf. Willingham v. Ashcroft*, 226 F.R.D. 57, 60 (D.D.C. 2005) (concluding that a demand for information and a demand for documents pertaining to that event are "two distinct demands because knowing that an event occurred is entirely different from learning about the documents that evidence it occurred"); *Kendall v. GES Exposition Servs.*, 174 F.R.D. 684, 686 (D. Nev. 1997) (stating that interrogatory that asked for description of qualifications and description of documents in which qualifications articulated constituted two interrogatories).

b.   Interrogatory No. 2

Interrogatory No. 2 asks Defendants to

> [i]dentify each and every ASIC Product designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of defendant, and separately identify for each product any and all order numbers, product numbers, trade names, trade designations, trademarks, common names, model numbers, version numbers, internal code or project names, catalog numbers, and any other designations used by defendant (whether or not known to third parties) in connection with that product, including indicating whether the manufacture, offer for sale, or importation of that product is presently continuing, and if not, indicating the date of termination thereof.

The Court rejects Defendants' argument that Interrogatory No. 2 has at least two discrete subparts simply because it asks Defendants to "identify" certain information and then "separately identify" other information. The latter information is subsumed within and/or necessarily related to the former. *See Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (stating that interrogatory subparts are to be counted as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question); *see also* 7-33 Moore's Fed. Prac. - - Civ. § 33.30[2] ("A party is permitted to ask a general question about a particular kind of communication and then request the time, place, persons present, and contents of each communication without violating the subparts rule.").

However, Interrogatory No. 2 does constitute multiple interrogatories because it asks for information about *each* ASIC product. That is, absent a demonstration that the products are directly

1  related (*e.g.*, different versions of the same product), the interrogatory consists of discrete subparts
2  for each ASIC product.[2] *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475
3  (N.D. Cal. 2004) (rejecting argument that interrogatory that asked about 26 different accused
4  products did not have 26 discrete subparts).

        c.      Interrogatory No. 3

Interrogatory No. 3 provides as follows: "Separately for each product identified in answer to Interrogatory No. 2, describe with specificity and particularity all of the steps or other activities making up the ASIC Method used to design that product, including the date(s) such steps or other activity occurred, and where such step or activity is not performed by defendant, identify the person performing such step or activity."

As above, the Court rejects Defendants' argument that Interrogatory No. 3 has at least four discrete subparts simply because it asks Defendants to "separately" identify information. However, as above, Interrogatory No. 3 does constitute multiple interrogatories because it asks for information about *each* ASIC product.

        d.      Interrogatory No. 4

Interrogatory No. 4 provides as follows: "Separately for each product identified in answer to Interrogatory No. 2, identify each individual (including their job title and description) involved in any way (including but not limited to managerial responsibility) in research and development, design, manufacturing, testing, sales, or marketing of, or in the decision to design, develop, or manufacture that product, and describe their activity concerning such involvement."

Interrogatory No. 4 constitutes multiple interrogatories because it asks for information about *each* ASIC product.

        e.      Interrogatory No. 5

Interrogatory No. 5 asks Defendants to identify -- for each product identified in answer to Interrogatory No. 2 -- "each individual (including their job title and description) who participated in

---

[2] According to Defendants, even if the ASIC products are limited to those identified in the Customer Defendants' declarations, each Customer Defendants identified between 4 and 37 (or more) products. *See* Joint letter of 9/16/05, at 12.

any way in performing an ASIC Method for that product, and describe all of the acts of each individual that contributed to performing the ASIC Method for that product."

Interrogatory No. 5 constitutes multiple interrogatories because it asks for information about *each* ASIC product.

      f.      <u>Interrogatory No. 7[3]</u>

Interrogatory No. 7 asks Defendants to identify -- for each of the paragraphs of the response to the complaint -- "all individuals having knowledge or information concerning the contents of such paragraph and identify the documents on which such response is based."

Interrogatory No. 7 constitutes multiple interrogatories for two reasons. First, a single interrogatory that asks for information with respect to each paragraph in a complaint or answer should be considered multiple interrogatories. *See Bujnicki v. Am. Paving & Excavating, Inc.*, No. 99-CV-0646S(Sr), 2004 U.S. Dist. LEXIS 8869, at *24 (W.D.N.Y. Feb. 25, 2004) (indicating that interrogatory that asked for factual basis of each of defendant's twelve affirmative defenses would contain discrete subparts). Second, a single interrogatory that asks the responding party to describe both facts and documents should generally be considered two interrogatories. *See Willingham v. Ashcroft*, 226 F.R.D. 57, 60 (D.D.C. 2005) (concluding that a demand for information and a demand for documents pertaining to that event are "two distinct demands because knowing that an event occurred is entirely different from learning about the documents that evidence it occurred"); *Kendall v. GES Exposition Servs.*, 174 F.R.D. 684, 686 (D. Nev. 1997) (stating that interrogatory that asked for description of qualifications and description of documents in which qualifications articulated constituted two interrogatories).

      g.      <u>Interrogatory No. 8</u>

In Interrogatory No. 8, Ricoh asks Defendants to identify -- for each product identified in answer to Interrogatory No. 2 -- "each individual who can testify about defendant's marketing

---

[3] The Court acknowledges that, in the joint letter, Ricoh has proposed a narrowed version of Interrogatory No. 7 as well as Interrogatory No. 10. Whether Ricoh can select which interrogatories or subparts should be answered is addressed below.

activities, including but not limited to market research, product testing, business planning, sales, advertising, and production for that product."

Interrogatory No. 8 constitutes multiple interrogatories because it asks for information about *each* ASIC product.

### h. Interrogatory No. 9

Interrogatory No. 9 asks Defendants to "[d]escribe defendant's procedures, facilities and policies for generating, maintaining, retaining and destroying records and the types of data processing and storage systems maintained by defendant, and identify all documents relating to or referring to such procedures, policies and systems and all persons having knowledge thereof."

Interrogatory No. 9 constitutes three interrogatories because it asks for (1) facts, (2) documents, and (3) witnesses.

### I. Interrogatory No. 10

Interrogatory No. 10 states: "In the event that any request for admission is denied in whole or in part, identify the request by number and set forth in detail each and every reason of the denial, including the identity of the documents upon which such denial is based."

Interrogatory No. 10 constitutes multiple interrogatories for two reasons. First, a single interrogatory that asks the responding party to provide information supporting the denial of *each* request for admission in a set should be construed as multiple interrogatories. *See Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. 1998) ("[A]n interrogatory that asks the responding party to state [1] facts, [2] identify witnesses, or [3] identify documents supporting the denial of each request for admission contained in a set of requests for admissions usually should be construed as containing a subpart for each request for admission contained in the set."). Second, a single interrogatory that asks the responding party to describe both facts and documents should generally be considered two interrogatories.

### 3. First 50 Interrogatories

Finally, Ricoh argues that it should be allowed to identify *which* 50 interrogatories out of the set propounded on each Defendant should be supplemented. The Court acknowledges Ricoh's concern that Defendants should not be allowed to dictate unilaterally which interrogatories should be

answered because "permitting the responding party to answer certain interrogatories and then object that the total number of interrogatories exceeds the limit essentially would be allowing the party to determine for itself what information to reveal." Moore's § 3.30[1] (citing *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104 (W.D.N.C. 1993)).  However, "[j]ust as the respondent is not allowed to choose which supernumerary interrogatories to answer, a proponent of interrogatories cannot circumvent a violation of the numerical limit by voluntarily withdrawing selected supernumerary interrogatories." Moore's § 3.30[1] (adding that " interrogatories to which objections have been made count toward the numerical limit and the propounding party may not, in an attempt to circumvent the numerical limits, 'withdraw' interrogatories for which the respondent served objections").

While the Court would be within its discretion to require only the first 50 interrogatories to be answered, *see* Moore's § 3.30[1] ("[T]he better rule is to require the responding party to answer the first 25 interrogatories, and object to the remainder."), given the complexity of the case and the importance of reaching the merits on the most critical issues, the Court will allow Ricoh to designate the 50 interrogatories to be answered/supplemented by each Defendant. Ricoh shall do so by **September 30, 2005**. Defendants shall have 20 days from the service thereof to provide supplemental responses.

IT IS SO ORDERED.

Dated: September 22, 2005

EDWARD M. CHEN
United States Magistrate Judge

9