Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY LLP
2101 L Street, NW
Washington, DC  20037-1526
Telephone:  (202) 785-9700
Facsimile:  (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Telephone:  (212) 835-1400
Facsimile:  (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br><br> v. <br><br> AEROFLEX ET AL., <br><br> Defendants. | Case No. CV-03-4669-MJJ (EMC) <br><br> **RICOH'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR ORDER COMPELLING REMOVAL OF REFERENCES TO PRIVILEGED MATERIAL AND RETURN OF INADVERTENTLY PRODUCED PRIVILEGED MATERIAL** |

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................................ii

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      The Fink Email And Its Relationship To The Sanctions Motion ............... 2

        B.      The Rest Of The Story Behind The *Ex Parte* Motion ............................... 4

III.    ARGUMENT ....................................................................................................... 7

        A.      The Law Of Privilege............................................................................... 7

        B.      The Fink Email Is Not Privileged ............................................................ 8

                1.      An Attorney's Transmission Of An Order Is Not Privileged ........ 8

                2.      The Email Contains Factual Information Not Subject To A Privilege Claim.......................................................................... 8

                3.      Evidence of a Fraud on the Court is not Privileged........................ 9

        C.      Even If The Fink Email Was Privileged, The Privilege Has Been Waived10

IV.     CONCLUSION .................................................................................................. 10

1

## I.      INTRODUCTION

2

Aeroflex's *ex parte* motion asks this Court to decide the issue presented in Ricoh's

3
motion for sanctions:  whether the Aeroflex Defendants and their counsel have engaged in a fraud

4
upon the Court by their conscious disregard of Judge Jenkins' explicit instructions during the July

5
14, 2005 Case Management Conference to research, prepare and serve within one month detailed

6
declarations that would define the scope of discovery and trial.  The allegedly privileged document is

7
dated July 15, 2005 – the day after the CMC – and illustrates how Defendants never intended to

8
comply with the Court's Order.  Ricoh only learned of the fraud months later.  These facts are laid

9
out in Ricoh's Motion for Sanctions.  If the Court finds that Defendants deliberately engaged in a

10
pattern to misrepresented the number and identification of ASICs at issue (and it is indisputable that

11
Defendants have failed to disclose all of the ASICs as required by Judge Jenkins), then any claim to

12
privilege fails.  To resolve the questions of privilege, then, the Court must also resolve the basis for

13
the sanctions motion.  Aeroflex apparently is hoping that, if it succeeds in getting the allegedly

14
privileged email prematurely removed, then at least part of  the direct evidence of its willful

15
noncompliance will be re-cloaked in privilege, and all this Court will be left to do is make inferences

16
from circumstantial evidence.

17
There is also a question of whether the entire email is properly the subject of a privilege

18
claim.  The email – attached as Exhibit 1 to the declaration in support of the sanctions motion – is

19
five pages long and, after the first email exchange with Ms. Fink, contains several other subsequent

20
exchanges between and among engineers at Aeroflex on the identification of certain design libraries,

21
whether certain ASICs were synthesized using the various Synopsys products identified by the

22
parties, and the names of persons who were involved in working on those ASICs.  This information

23
is all relevant, and *none of it is privileged* because is it neither attorney work product or

24
communications between attorney and client – instead, it is communications between Aeroflex

25
employees about how certain chips were made, and who worked on them.  That the discussion may

26
have been triggered by an inquiry from attorney does not mean that all subsequent internal

27

28

communications about factual matters are cloaked by the privilege. *In re: Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (no privilege for internal factual discussions). Indeed, Aeroflex's corporate designees were allowed by their counsel to testify about the same facts that are referenced in the allegedly privileged email. Thus, even if any privilege was not already abrogated by the fraudulent conduct, any such privilege was waived during the depositions when Aeroflex's counsel allowed their witnesses to answer questions on the subject matter of the emails.

The other emails that Aeroflex has demanded be returned fall into the same category. Most appear to start with the incriminating email from Ms. Fink, and are followed by a string of internal communications identifying who worked on a particular project, or when or how the ASIC was created, or what technical library was used. If the Court requests it, Ricoh will submit them for inspection, but the underlying issue is the same as the specific email at issue. Either the Fink email is not privileged, for example because it is evidence of a fraud on the Court, or the privilege has been waived, or the assertion of privilege will be sustained. The other internal communications should never have been swept under the privilege rug, however.

To accommodate the Howrey firm's partners retreat in the Cayman Islands, the parties had agreed to reschedule the sanctions motion to April 4 (Defendants have noticed another motion in this case for April 4). Now that Judge Jenkins has referred Ricoh's sanctions motion to this Court for decision, the hearing has been rescheduled to April 19. Ricoh suggests that this *ex parte* motion be combined with the merits of the sanctions motion, and heard either on April 4, when all counsel will be in town, or on April 19, when the merits of the sanctions motion will be addressed.

## II.    FACTUAL BACKGROUND

As much as Aeroflex would like to separate it, the issue of whether the Fink email is privileged is inextricably interwoven with the merits of Ricoh's sanctions motion. A brief summary of that motion follows, along with some corrections to the events recounted in the *ex parte* motion.

### A.    The Fink Email And Its Relationship To The Sanctions Motion

At the July 14 CMC, Judge Jenkins explicitly instructed that the Aeroflex Defendants had

to submit sworn declarations identifying *all* of the Defendants' commercial ASICs designed using the identified Synopsys products, to identify all of the technical libraries that each Defendant had used in conjunction with any of the Synopsys products, and to identify *all* of the ASIC chips that each Defendant had designed using those Synopsys products.  During the CMC, counsel for the Aeroflex Defendants and Synopsys opined that it would be difficult to get a corporate officer to swear to the accuracy of such declarations.  Judge Jenkins, however, explicitly warned counsel that those declarations were to be sworn under the penalty of perjury, and that if the declarations were incomplete or misleading, sanctions would follow.[1]

There is no question that, instead of conducting a comprehensive review of their technical libraries and ASIC chips, Aeroflex and the other Defendants only conducted a limited survey of their libraries and ASICs.  The Fink declaration is strong evidence that the Defendants intentionally limited their search for and collection of data, but it is not the only evidence.  As set forth in the sanctions motion, each of the Defendants have been forced to revise on multiple occasions their respective declarations, increasing the total number of ASICs from about 60 to more than 200.  Aeroflex's corporate designees identified additional relevant ASICs that were not included on any of its declarations.  Remarkably, just days ago, Aeroflex submitted still another product declaration (its fourth), and still managed to omit relevant products that had been identified by its designees! (Brothers Dec. ¶ 2).  Ricoh's motion also explains (at p. 7) how a designee for another Defendant (AMI Semiconductor) admitted that there were additional ASICs that he wanted to list on his declaration, but was forbidden by Ms. Fink from doing so.

There is no serious question that the initial declarations, submitted under oath and under threat of sanctions from Judge Jenkins, were woefully incomplete.  Ricoh's sanctions motion shows how, instead of running to Court with complaints, Ricoh patiently and repeatedly negotiated to get the most complete version of the declarations, and all of the subsequent discovery that was driven by

---

[1] All of the ASIC Defendants have repeatedly changed these declarations.  Aeroflex has issued four versions of the declarations, and they are still incomplete.  The ASIC Defendants also delayed for as long as three (3) months in serving one of these declarations and two (2) months on another.  *See* Ricoh's motion for sanctions. at pp. 8, 14.

those declarations.  It was only when the Aeroflex and AMI Rule 30(b)(6) depositions commenced in January and February 2006 that Ricoh discovered how incomplete and misleading the declarations really were.  The Fink email confirmed that this was not an inadvertent error, but part of a pattern of willful deception.

### B.    The Rest Of The Story Behind The *Ex Parte* Motion

Aeroflex's papers have several inaccuracies.  For example:

**The slow pace of Defendants' document production.**  At the CMC conference, Synopsys and the Aeroflex Defendants represented that they need about six weeks to produce the bulk of their documents, or in other words by the end of August.  Judge Jenkins established a pretrial schedule on July 22, 2005 based upon that prediction.  (D.I. 242).  By late August, however, virtually no documents had been produced, and Defendants eventually committed that their document would be substantially complete by October 7, 2005.  They missed that date, too, forcing the parties to stipulate to a new pretrial and trial schedule, which was entered on November 22, 2005.  (D.I. 279).  Defendants thereafter continued to produce documents, and in fact, they have not yet completed their production of documents, and refuse to say when their document production will be substantially complete.  (Brothers Dec. ¶ 3).

From time to time between December 2005 and the present, Defendants have produced large volumes of emails in electronic form.  Ricoh believes that the Fink email at issue was produced in either December 2005 or January 2006.  It did not come to the attention of Ricoh's attorneys until some time thereafter, and only after Ricoh suspected that Aeroflex and the other Defendants had engaged in a scheme to conceal technical libraries and ASICs from disclosure.  (Brothers Dec. ¶ 4).  The Fink email explains why the library declarations, and the subsequent product declarations, were so wrong.  The Fink email appeared –and still appears – to confirm Ricoh's suspicions that this was more than a simple misunderstanding of Judge Jenkins' explicit instructions, as Aeroflex now claims in its motion.

**Defendants' inconsistent positions regarding the return of privileged documents.**

Aeroflex glosses over the fact that, for nearly two years in this litigation, it and the rest of the Defendants took the position that they would not return privileged documents inadvertently produced by Ricoh unless Ricoh first produced a detailed declaration explaining why the documents were privileged.  (Brothers Dec. Ex. 1, Moller May 18, 2004 Ltr. to Brothers).  In October 2005, Defendants produced privileged documents and later requested their return.  (Brothers Dec. Ex. 2, Fink October 17, 2005 Ltr. to Brothers).  Much to the Defendants' irritation, Ricoh requested a detailed declaration explaining why the documents were privileged, holding them to the same standards they had imposed upon Ricoh.  (Brothers Dec. Ex. 3, Hoffman October 21, 2005 Ltr. to Fink).  Only then did Defendants concede that under paragraph 21(b) of the Protective Order, no such detailed declaration would be required.  (Brothers Dec. Ex. 4, De Mory October 24, 2005 Ltr. to Hoffman; *Id.* Ex. 5,  Hoffman October 25, 2005 Ltr. to De Mory).  Defendants' citation to Mr. Hoffman's letter of November 1, 2005 (DeMory Dec., Ex. 6) thus refers to *Defendants'* repudiation of their long-standing insistence of a detailed declaration under Paragraph 21(b) of the Protective Order.

**Ricoh has presented the privilege issue to the Court, consistent with the Protective Order.**  Ricoh's position has been, and continues to be, that allegedly privileged documents inadvertently produced should either be promptly returned upon request, or the issue should be immediately presented to the Court.  This position is consistent with the Protective Order:

> (b) In the event that any privileged attorney-client or work product documents or things are inadvertently produced for inspection and/or provided, the disclosing party shall identify such documents or things within five (5) days of when it discovers that the privileged materials were inadvertently produced for inspection and/or provided, and either (1) copies shall not be provided, or (2) if copies have already been provided, all copies in the receiving party's possession shall be promptly returned (and not relied upon) by the receiving party.  *Nothing in this paragraph shall prevent the receiving party from contending that the identified materials are not privileged, that the material was not inadvertently produced, or that privilege was waived for reasons other than the mere inadvertent production of the material.*  (emphasis added).

By the time that Aeroflex had requested the return of the allegedly privileged document, Ricoh already had presented the issue to the Court.  Ricoh's action thus was and is consistent with the last

sentence of paragraph 21(b), which by its "nothing in this paragraph shall prevent" provision expressly permits Ricoh to present the issue to the Court. The allegedly privileged document has been submitted to the Court in a sealed pleading. The question of privilege is coterminous with the issue in the sanctions motion. Ricoh's submission of the document is not only consistent with the Protective Order, but was required by its counsel's obligation to zealously represent their client's interest, and to prevent a fraud upon the Court.

**Aeroflex misquotes the email footer.** Aeroflex misquotes the language of the Fink email, contending that it contains "a very clear 'attorney-client privileged' footer." No such language exists in the email. The email string does contain a footer which reads "This email and any attachment contain information from the law firm of Howrey LLP, which *may* be confidential and/or privileged," but for Aeroflex to claim that this boilerplate, conditional statement constitutes an invocation of privilege (and by extension invoking privilege on virtually every email sent through the firm) is not plausible. Nevertheless, Ricoh suspected that the Defendants would try to divert the Court's attention away from the merits, so Ricoh's motion included, in footnote 2, an explanation of why the document was not privileged, and why any potential privilege had been waived.

**Aeroflex distorts the record regarding privilege logs.** Aeroflex also presents an incomplete background with respect to the exchange of privilege logs. Throughout this litigation, Ricoh has sought to establish the terms and conditions for the exchange of privilege logs. This issue was actually presented in the April 23, 2004 discovery plans submitted by each party (D.I. 117, at 3-4; D.I. 118, at 5-6), but the Court's discovery stay two weeks later put all such discussions on hold. After the claim construction was issued, Ricoh again raised the issue of privilege logs in the June 8, 2005 CMC statement (D.I. 234, at p. 30), but Defendants ignored the issue, and also rebuffed Ricoh's attempts to raise the issue for the rest of 2005. Only in the past few weeks have the parties agreed in principle to exchange privilege logs, although Defendants have yet to identify a date. (Brothers Dec. ¶ 5). Contrary to Aeroflex's characterization of the January 17, 2006 letter from Mr. Brothers (DeMory Dec. Ex. 7), that letter does not reference privilege logs, but instead refers to the

promised resumption of a deposition (which has yet to be scheduled).  The letter draws a clear

distinction between discovery of post-litigation facts relating to the '432 patent (such as the

identification of the relevant libraries or ASICs), for which no privilege would be claimed, and

privileged communications in which the privilege would be asserted.  Most if not all of the Fink

email appears to fall into the former category, for it discusses objective facts relating to the

identification of the libraries and ASICs at issue.

## III.    ARGUMENT

### A.    The Law Of Privilege

Attorney-client privilege only protects communications that "rest on confidential

information obtained from the client" and not merely "when an attorney conveys to his client facts

acquired from other persons or sources."  *In re: Sealed Case*, 737 F.2d 94, 99 (D.C. Cir.

1984)(quoting *Brinton v. Dept. of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).  Even if a document is

privileged, the privilege may be waived "if the privilege holder fails to pursue all reasonable means

of preserving the confidentiality of the privileged matter."  *United States v. De La Jara*, 973 F2d

746, 750 (9th Cir. 1992); *see also Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 183 (N.D.

Cal. 1990) (privilege was waived because of failure to claim privilege for six weeks following

disclosure and failure to take reasonable precautions against disclosure).

Neither of the two cases cited by Aeroflex are applicable to the facts at issue here.  *State

Compensation Ins. Fund v. WPS, Inc.,* 70 Cal. App. 4th 644, 648 (Cal. Ct. App. 1999), related to an

extreme case in which documents were clearly marked as "Attorney-Client

Communication/Attorney Work Product," followed by "Do Not Circulate or Duplicate."  These

clearly marked documents were then passed on to an expert witness who forwarded them along to a

firm that was adverse to the producing party in another matter.  *Id*. at 648-9.  This is not the case

here, where no such definitive identification of the materials exist.  The closest thing to such a

statement is the equivocal footer, but even that footer cannot salvage a privilege which is otherwise

waived, which, as shown below, is the case here.

1
2
3
4
5
6
7
8
9

*U.S. v. Derr,* 1993 U.S. Dist. LEXIS 11414, *3-4 (N.D. Cal. 1993), likewise does not apply.  There, the Defendant "made substantial efforts to prevent the disclosure of privileged documents."  *Id.*  In contrast, the record in this case reflects Defendants' sloppy disclosure procedures that have resulted in multiple delays.  In some cases, entire production batches later have been recalled by Defendant's counsel in order to perform costly and time consuming post hoc privilege review.  For example, a production of email to an outside vendor was delayed for weeks while Defendants' counsel had the vendor manually extricate privileged material from the production, delaying availability of email for some deponents until after their scheduled depositions.  (Brothers Dec. ¶ 6).

10

### B.     The Fink Email Is Not Privileged

11

#### 1.     An Attorney's Transmission Of An Order Is Not Privileged

12
13
14
15
16
17
18
19
20

"When an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged."  *In re: Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (quoting *Brinton v. Dept. of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).  Here, the email at issue simply relays the courts instructions, albeit incorrectly, to the client.  There is no basis for concluding that the contents of the email "rest[] on confidential information obtained from the client."  To the contrary, this email is simply instructing the client of the content of the CMC order.  "It remains the claimant's burden . . . to present to the court sufficient facts to establish the privilege."  *Id.*  Aeroflex has filed to meet that burden here.

21

#### 2.     The Email Contains Factual Information Not Subject To A Privilege Claim

22
23
24
25
26

The email consists of a discussion between and among Aeroflex engineers that is purely factual information that is not subject to a proper privilege claim.  The identification of technical libraries, ASICs, and who worked on those projects, are in no way protected from discovery.  The fact that the discussion may have been triggered by an email from an attorney does not change this fact.  *In re: Sealed Case*, 737 F.2d at 99 ("The privilege applies only if . . . the communication

27
28

relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance on some legal proceeding and not (d) for the purpose of committing a crime or tort"). Here, the email identifies certain technical libraries and products, identifies who was involved on those projects, and other factual information that is not subject to a proper claim of privilege. Ironically, less than a month ago, defendants asserted that "technical information communicated to an attorney for completing a patent application" and "relevant underlying facts, data or information" in communications between the inventor and the prosecuting attorney of the '432 patent are not privileged. (Brothers Dec. Ex. 6, De Mory February 21, 2006 Ltr. to Brothers). Although the law with respect to prosecution history is controlled by Federal Circuit precedent is not directly applicable here, the fact that Defendants have demanded Ricoh produce all "relevant underlying facts, data or information" while simultaneously refusing to disclose "relevant underlying facts, data or information" shows that Defendants' arguments are manufactured.

### 3.    Evidence of a Fraud on the Court is not Privileged.

A document evidencing an ongoing fraud on the Court is not protected by attorney-client or work product privilege, even if it would otherwise qualify as privileged. *Gutter v. E.I. DuPont de Nemours*, 124 F. Supp. 1291, 1316-17 (S.D. Fla. 2000) (Plaintiff "established a prima facie case that DuPont had intentionally committed discovery fraud upon the court and that the crime/fraud exception should be applied to vitiate DuPont's claim of attorney-client and work product privilege."); *see also Cunningham v. Connecticut Mutual Life Ins* 845 F.Supp. 1403 (S.D.Ca. 1994) (privilege did not apply under the crime-fraud exception and was waived in any case because it was not properly asserted). In *Gutter*, defendant DuPont "engaged in fraud and intentional misconduct which abused the judicial process" by improperly asserting work product privilege regarding documents which included "evidence of SU contamination that DuPont had in its possession and that the district court had ordered it to produce." 124 F. Supp. at 1296-97. Here, the email in question is a specific instruction to the client to omit from its sworn declarations products that are clearly

covered by the Court's CMC order.  This represents a direct violation of the Court's instructions and is a naked attempt to avoid discovery of relevant products and mislead the Court.

### C.    Even If The Fink Email Was Privileged, The Privilege Has Been Waived

When Ricoh filed its motion for sanctions, it noted that the email in question was voluntarily produced by Aeroflex in part to explain how the various Aeroflex libraries were selected. Defendants do not dispute that they voluntarily produced the email, but now claim it was inadvertently produced.  The content of the email, however, directly relates to the identification of the technical libraries and ASICs at issue, reasonably leading Ricoh to conclude that the production was part of Aeroflex's far larger response to Ricoh's requests.

Tellingly, Aeroflex's corporate designees testified about the facts contained in the email, as set forth in Ricoh's sanctions motion at p. 9-11.  Even assuming the substance of the email concerning the identification of libraries and ASICs was privileged, the failure to protect that privilege at deposition is a failure to "preserv[e] the confidentiality of the [allegedly] privileged matter." *United States v. De La Jara*, 973 F.2d 746, 750 (9th Cir. 1992).  Thus, any claim of privilege was waived both by the voluntary production of the document, and because it reflects a possible fraud upon the Court.  *See, e.g., Gutter*, 124 F. Supp. at 1316-17; *Bud Antle*, 131 F.R.D. at 183-184.[2]

## IV.    CONCLUSION

For the reasons set forth above, Ricoh respectfully requests that the Court deny the *ex parte* motion, or alternatively set the matter for hearing on the same date as the hearing on Ricoh's motion for sanctions, on April 19, 2006.

---

[2] The crime-fraud exception is an exception to the existence of privilege but has occasionally been treated also as a waiver of privilege; this is a distinction without a difference.  Communications in furtherance of a fraud on the court are not protected by privilege.  *Id.*

Dated: March 8, 2006

Ricoh Company, Ltd.

By: /s/ Kenneth W. Brothers

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demai
177 Post Street, Suite 300
San Francisco, California  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064

Gary M. Hoffman
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN &
    OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
    OSHINSKY LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Attorneys for Ricoh Company, Ltd.

1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,

               Plaintiff,

    vs.

AEROFLEX INCORPORATED, et al.,

          Defendants

**CASE NO. C-03-4669-MJJ (EMC)**

**[PROPOSED] ORDER DENYING
DEFENDANTS' *EX PARTE* APPLICATION
FOR ORDER COMPELLING REMOVAL OF
REFERENCES TO PRIVILEGED
MATERIAL AND RETURN OF
INADVERTENTLY PRODUCED
PRIVILEGED MATERIAL**

11

12

13

14

15

     Upon consideration of Defendants' *Ex Parte* Application for Order Compelling Removal of
References to Privileged Material and Return of Inadvertently Produced Privileged Material, and
supporting evidence, Plaintiff's Opposition, and supporting evidence, and any reply and additional
argument, and having conducted a hearing on the motions, and the Court being fully advised of the
premises, Defendants' *Ex Parte* Application is HEREBY DENIED.

16

17

18

19

20

     IT IS SO ORDERED.

21

22

Dated: _____

23

24

25

26

27

28

_____
MAGISTRATE JUDGE EDWARD M. CHEN

DICKSTEIN
SHAPIRO
MORIN &
OSHINSKY
LLP

DSMDB.2045558.1