Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California  94105
Telephone:  (415) 848-4900
Facsimile:  (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC.
and for Defendants AEROFLEX INCORPORATED,
AEROFLEX COLORADO SPRINGS, INC., AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD.,
MATROX GRAPHICS, INC.,
MATROX INTERNATIONAL CORP.,
 and MATROX TECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>    Plaintiff,<br><br>    vs.<br><br>AEROFLEX INCORPORATED, et al.,<br><br>    Defendants. | Case No.  C03-04669 MJJ (EMC)<br><br>**DEFENDANT'S REPLY TO RICOH'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR ORDER COMPELLING REMOVAL OF REFERENCES TO PRIVILEGED MATERIAL AND RETURN OF INADVERTENTLY PRODUCED PRIVILEGED MATERIAL** |

**I.     INTRODUCTION**

In its Motion for Sanctions, Ricoh relied on an e-mail it clearly knew and acknowledged was privileged, but claimed that the privilege was waived intentionally, or by inadvertence, or due to an alleged fraud.  Confronted with its express agreement to return privileged documents without question, the terms of the Stipulated Protective Order, and the ethical obligations it had under California law, Ricoh now, for the first time, says the e-mail is not privileged, but even if it is, the privilege has been waived through "voluntary" production, inadvertence or fraud.  None of Ricoh's various vacillating theories can carry the day.  The e-mail is privileged, *i.e.*, the e-mail communicates litigation counsel's thoughts and mental impressions to her client for purposes of rendering legal advice.  No privileges were waived.  Ricoh had a duty to inform Aeroflex that it had the privileged e-mail.  And, most

HOWREY LLP

Case No.  C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)
DEFT'S REPLY TO OPP TO *EX PARTE* APP FOR ORDER
COMPELLING REMOVAL OF PRIVILEGED MATERIALS

significantly, there was no fraud! The e-mail, and others like it that Ricoh is improperly holding, should be returned.

In addition, Ricoh's attempts to conflate the sanctions motion and e-mail issue should be squarely rejected. The Court's cursory review of the e-mail will reveal to the Court that the e-mail ***on its face fails in fact to support its contentions of willful disobedience of a court order.*** Thus, even if there is otherwise merit to Ricoh's sanctions motion, which Aeroflex adamantly disputes, the e-mail itself makes clear that it was not drafted in furtherance of any alleged discovery abuse. Moreover, it was wholly inappropriate for Ricoh to rely on the e-mail in the manner in which it did without honoring its ethical obligations under California law, and then, notwithstanding its breach of its ethical obligations and violation of the spirit, if not the letter of the Stipulated Protective Order, accusing counsel of fraud to justify its abuse of process. The crime-fraud exception is not applied *ex post facto* to justify counsel's improper review of and reliance on obviously inadvertently produced privileged documents. This is a serious matter that the Court can and should decide this issue now.

## II.    ARGUMENT

### A.    There Is No Evidence Of Fraud

The majority of Ricoh's opposition is premised on the notion that there was some fraud perpetrated on the Court. Ricoh is flat wrong. Ricoh boldly claims in its opposition that the e-mail "is a specific instruction to the client to omit" products from its declarations. Such exaggeration truly causes one to wonder if Ricoh is referring to the same e-mail cited in its motion. The e-mail says nothing of the sort.

Quite to the contrary, Ms. Fink's thoughts and mental impressions arising from the July 13, 2005 Case Management Conference recorded in the e-mail and communicated to her client reflect a totally different sentiment with which the Court agreed: it was unclear what Ricoh wanted.[1] Indeed, although conveniently omitted from its opposition and sanctions motion, as a result of Ricoh's meandering and lack of specificity at the July 13, 2005 CMC, the Court ordered Ricoh to provide a list

---

[1] Without revealing the content of the e-mail, the Court will clearly see that Ms. Fink's e-mail clearly evidences this confusion.

HOWREY LLP

Case No.  C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)
DEFT'S REPLY TO OPP TO *EX PARTE* APP FOR ORDER
COMPELLING REMOVAL OF PRIVILEGED MATERIALS

-2-

1  of the libraries it was interested in by July 18, 2005 – *three day after* Ms. Fink's e-mail.  Declaration of
2  Denise M. De Mory in Support of Defendants Reply to Plaintiffs Opposition to Defendants Ex Parte
3  Application ("De Mory Decl. in Support of Reply"), Exh. 1; Exh. 2.

4        In accordance with the Court's directive, Ricoh provided its list of libraries in which it was
5  interested on July 18.  *Id*., Exh. 2.  Until the list was provided, however, it would have been reasonable
6  to expect that nothing would have happened, and that Aeroflex was under no obligation to take any
7  action until Ricoh provided workable definitions of what it libraries it considered relevant on July 18,
8  2005.  The fact that Ms. Fink communicated with her clients before the list was received on July 18
9  with a clear intent to investigate anything that might be at issue, even though she was not sure what
10 would be at issue, is a sign of good faith, not bad – and certainly does not evidence a fraud.[2]

11       Even if Ms. Fink had mistakenly understood Ricoh's desires at the case management
12 conference, and incorrectly communicated them to her clients, there still is no evidence of fraud.
13 Even in its sanctions motion, Ricoh does not come forward with a scintilla of evidence that any
14 libraries used with Design Compiler during the damages period to produce commercial chips were
15 omitted from the Aeroflex declaration.  Like its claims with regard to the allegedly missing products –
16 its allegations with regard to the library declarations are based on pure conjecture about what could or
17 should have been included.  And, finally, and quite ironically, the original library declaration served in
18 July of 2005 includes libraries that fall into the category that Ms. Fink supposedly instructed Aeroflex
19 not to include.  There is nothing to this alleged fraud, or, as the lack of merit of this fraud theory
20 reveals, the sanctions motion.[3]

---

[2] Indeed, it is Ricoh who is acting in bad faith for making such allegations.  Even if Ms. Fink misunderstood Ricoh's interests at the hearing, there is zero evidence that such a misunderstanding resulting in Aeroflex taking any action contrary to any Court order.

[3] Ricoh makes a bunch of accusations about Aeroflex's corporate designees admitting that additional relevant ASICs were omitted from the product declarations.  These accusations, as will be explained in opposition to the sanctions motion, are also false.  In particular, as evidenced by contemporaneous documents submitted to the Court including the August 30, 2005 joint letter, Ricoh expressly indicated that what was to be disclosed in the product declarations were commercial products synthesized by Aeroflex (or the other Customer Defendants) using Design Compiler during the damages period. The allegedly omitted products were either not commercial, not synthesized using Design Compiler, not synthesized by Aeroflex, or not synthesized during the damages period.  What is worse: the Aeroflex witnesses told Ricoh this during the deposition and it has recklessly decided to ignore those facts in favor of filing its sanctions motion.

**HOWREY LLP**

Moreover, Ricoh turns the entire notion of the crime-fraud exception on its head. Before the crime-fraud exception is applied in the context of *compelling testimony or the production of documents*, the moving party must first make a *prima facie* showing. *See, e.g., US v. Bagley,* 204 F.R.C. 170, 187 (C.D. Cal. 2001). That showing, of course, is generally made without reliance on the testimony or documents sought to be compelled. *Id.* A party doesn't first get to take ethically questionable steps, and then say: my conduct was ok because my adversary is committing a fraud. The "crime-fraud" exception is no excuse for Ricoh's conduct, even if it applied, which is does not!

### B. The Entire E-mail is Privileged And The Privilege Was Not Waived

Ricoh next claims that the e-mail is not privileged. This, of course, is contrary to its assertions in the sanctions motion, but in any event is wrong. The entirety of the e-mail chain containing Ms. Fink's e-mail is attorney-client privileged and work-product privileged. Ms. Fink's original communication is to her client, and reflects her thoughts and mental impression, for purposes of gathering information relating to the litigation. In fact, in part, it seeks to gather information that she indicates will be for internal purposes only – *i.e.*, to formulate an appropriate defense. There is no question that this e-mail is entitled to both the attorney-client and work product privileges prohibiting production. *See Segerstrom v. U.S.*, 201 U.S. Dist. LEXIS 2949 at *11-*15 (N.D. Cal. Feb. 6, 1001) (holding privileges apply to documents containing non-privileged facts).

Indeed, Ricoh does not legitimately dispute this,[4] but instead claims instead that the factual information contained in the e-mail is not subject to privilege. It is Aeroflex's position that the entire string is privileged. It reflects communications from the client to counsel for purposes of rendering legal advice and contains thoughts and mental impressions. *See id*. It is no different than if Ms. Fink had come back from the CMC, told the client personally what she thought in a conference room, and started to gather information. The entire communication would be privileged even though Ricoh might

---

[4] The information Ms. Fink provided on July 15, 2005 to Aeroflex were not facts gathered from other persons or sources, but rather reflected her thoughts and impressions of what transpired at the CMC. Ricoh's reliance upon a single quoted statement contained in *In re: Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) is not controlling. *In re Sealed* did not deal with documents, but instead with compelling testimony. Moreover, the Court found that two conversations where facts were furnished in the context of seeking legal advice that the communications were privileged notwithstanding the discussion of presumably non-privileged facts.

HOWREY LLP

Case No. C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)
DEFT'S REPLY TO OPP TO *EX PARTE* APP FOR ORDER
COMPELLING REMOVAL OF PRIVILEGED MATERIALS

-4-

ultimately be able to learn some of the facts from that were also revealed in the context of the protected attorney-client communication.

Ricoh contends, however, that Aeroflex's counsel has taken a contrary position. Regrettably, like the Fink e-mail, Ricoh also mischaracterizes the letter on which it relies. In the letter, counsel indicates that while the **"*documents*"** may be privileged, the "facts, data, and information" contained therein are not. Accordingly, the letter at issue requested supplementation of various interrogatory responses, including responses regarding conception, reduction to practice, etc., that called for the underlying facts, data, and information that might be contained in privileged documents. Indeed, the letter at issue only requested non-privileged documents, factual information contained therein to the extent it was responsive to interrogatories, and a privilege log. That is perfectly consistent with the position taken herein.

Finally, there was no waiver. The fact that some "facts" contained in the e-mail were discovered does not amount to a waiver of the privilege as to the entire e-mail string, or make the document containing the facts subject to discovery. In addition, the production was not intentional. Ricoh makes a semantic argument regarding the production being "voluntary." Aeroflex's position, however, is clear. It was inadvertently produced, and the Protective Order mandates its return.

### C. None Of Ricoh's Other Miscellaneous Facts Or Arguments Are Determinative, Relevant Or Accurate

Apparently because its well of substantive points ran dry, Ricoh's opposition resorted to nitpicking of alleged inaccuracies in Aeroflex's *ex parte* application such as the document production timeline, prior issues related to privileged documents, Ricoh's right to make claims that the e-mail is not privileged, and amazingly issues regarding the e-mail footer and privilege logs. Although Aeroflex believes these issues are at best tertiary to the issue that this Court must decide, if not wholly irrelevant, a few points of clarification are in order.

Ricoh is correct that Mr. Brothers' letter to Ms. De Mory dated January 17, 2006 does not reference privilege logs specifically, BUT Aeroflex did not rely on it to support this its argument regarding privilege logs. Rather, Aeroflex referenced Mr. Brothers' letter as evidence of Ricoh's understanding that Synopsys (and implicitly the other Customer Defendants) would assert privilege in

HOWREY LLP

Case No. C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)
DEFT'S REPLY TO OPP TO *EX PARTE* APP FOR ORDER
COMPELLING REMOVAL OF PRIVILEGED MATERIALS

-5-

1  regard to any communications occurring after January 20, 2003, the day the suit was filed. Ricoh does
2  not dispute its full understanding of Aeroflex's position on communications that were privileged, and it
3  directly undercuts any claim that it did not know Aeroflex would claim the communication as
4  privileged.

5  In addition, although Ricoh tries to cast aspersions regarding the timing of when privilege logs
6  will be provided, it does not dispute the critical and determinative fact: the parties did expressly agree
7  not to log any post-filing communications with clients. This is yet another fact evidencing that Ricoh
8  had to have known that the e-mail would be claimed as privileged.

9  With regard to Ricoh's claims of delay in discovery and production, as will be discussed in the
10 opposition to the sanctions motion, the primary documents the Customer Defendants committed
11 provide by October 7, were the inputs, outputs, and libraries for the ASICs. Indeed, as the Court is
12 well aware, the parties were still briefing discovery disputes regarding the scope of production through
13 the end of September. Issues concerning the massive volume of e-mails Ricoh repeatedly asserted
14 were necessary and relevant to its case were still ongoing in mid-November. *Id.*, Exh. 8. The
15 indisputable fact is that the Customer Defendants and Synopsys produced a remarkable number of
16 pages of documents in a short time period notwithstanding Ricoh's ever-greater claims of entitlement
17 to and the alleged necessity of receiving more. [5]

18 Ricoh's mischaracterization of the Protective Order is likewise troubling. The Protective Order
19 governs this issue, and Ricoh explicitly agreed to abide by it. De Mory Decl. in Support of Ex Parte
20 Application, Exh. 6. The e-mail and other documents should be returned in accordance with the terms
21 of the Order. And, Ricoh is only permitted to challenge on grounds <u>other</u> <u>than</u> "inadvertence," which it
22 obviously ignores. Even though Ricoh could assert other grounds for waiver, it is an amazing
23 distortion to suggest that either party would have contemplated that the way to do it was to put a

---

[5] Although the Stipulated Protective Order requires immediate return of inadvertently produced privileged documents, Synopsys and the Customer Defendants also took extensive precautions to prevent inadvertent production as explained the opening brief. Ricoh does not dispute these facts, but instead says that because in one instance – that did not relate to production of Aeroflex documents – documents had to be called back from a vendor for additional review. This, however, just evidences Synopsys' and the Customer Defendants' additional efforts to safeguard against inadvertent production – not conduct that should result in waiver.

**HOWREY LLP**

Case No. C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)          -6-
DEFT'S REPLY TO OPP TO *EX PARTE* APP FOR ORDER
COMPELLING REMOVAL OF PRIVILEGED MATERIALS

1  privileged e-mail at issue in a filed motion!

2      Ricoh also neglects to explain adequately its failure to abide by the standard set forth in *State
3  Compensation Ins. Fund v. WPS* requiring return of inadvertently produced attorney-client privileged
4  documents.  70 Cal. App. 4th 644 (Cal. Ct. App. 1999).  Indeed, Ricoh's attempt to distinguish the
5  facts is entirely disingenuous.  Ricoh says the documents at issue there were "clearly" marked
6  attorney-client communication/work product followed by do not circulate or duplicate.  Here, the e-
7  mail at issue is a communication from litigation counsel in this case to its clients, and is <u>clearly</u> marked
8  with the following footer:

> This e-mail and any attachments contain information from the law firm of Howrey LLP, which may be confidential and/or privileged.  The information is intended to be for the use of the individual or entity named on this e-mail.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this e-mail is prohibited.  If you receive this e-mail in error, please notify us by reply e-mail immediately so that we can arrange for the retrieval of the original documents at no cost to you.

13  De Mory Decl., ¶ 4.  Ricoh disingenuously claims that this footer was ambiguous.  The Court must
14  ask, however, was there any actual ambiguity or confusion on Ricoh's part?  The answer is quite
15  obviously "no" as its original assertion of waiver makes clear.  If *State Compensation Ins. Fund v.*
16  *WPS* wasn't clear enough to Ricoh, then there is a plethora of additional cases reaching the same
17  holding, and that mandate return here.  *See, e.g., US v. Bagley,* 204 F.R.C. 170, 187 (C.D. Cal. 2001)
18  (discussing cases regarding obligations upon discovering inadvertently produced documents).  Ricoh
19  cannot credibly say on the one hand that it believed Aeroflex waived privilege intentionally or by
20  committing a fraud, and then on the other say it was confused about whether the document was
21  privileged.  Ricoh had an obligation to notify Aeroflex of the production of the e-mail.  It not only
22  neglected to do so, but relied on it in violation of the spirit, if not the letter, of the Stipulated Protective
23  Order based on trumped up and wholly disingenuous charges of fraud.  The e-mail and other
24  documents should immediately be returned.

25  \\\\\
26  \\\\\
27  \\\\\
28  \\\\\

**HOWREY LLP**

Case No.  C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)      -7-
DEFT'S REPLY TO OPP TO *EX PARTE* APP FOR ORDER
COMPELLING REMOVAL OF PRIVILEGED MATERIALS

### III. CONCLUSION

For the foregoing reasons, Aeroflex's motion should be granted.

Dated: March 13, 2006

Respectfully submitted,

HOWREY LLP

By: */s/Denise M. De Mory*
Denise M. De Mory
Attorneys for Plaintiff
SYNOPSYS, INC. and for Defendants
AEROFLEX INCORPORATED, AEROFLEX
COLORADO SPRINGS, INC., AMI
SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS, INC., MATROX
INTERNATIONAL CORP., and MATROX
TECH, INC.

HOWREY LLP

Case No. C03-04669 MJJ (EMC)/C03-02289 MJJ (EMC)
DEFT'S REPLY TO OPP TO *EX PARTE* APP FOR ORDER
COMPELLING REMOVAL OF PRIVILEGED MATERIALS

-8-