Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY, LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Plaintiff And Declaratory
Judgment Defendant Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICOH COMPANY, LTD., | **CASE NO. CV 03-4669-MJJ (EMC)** |
| Plaintiff, | |
| vs. | **CASE NO. CV-03-2289- MJJ (EMC)** |
| AEROFLEX INC., et al., | **RICOH'S BRIEF IN OPPOSITION TO** |
| Defendants. | **SYNOPSYS' THIRD MOTION TO STAY** |
| | |
| SYNOPSYS, INC., | |
| Plaintiff, | |
| vs. | |
| RICOH COMPANY, LTD., | |
| Defendant. | |

# TABLE OF CONTENTS

**<u>Page No.</u>**

I.      INTRODUCTION ...................................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................................4

        A.  Fact Discovery Is Nearly Complete And Trial Is Scheduled  For November 2006 .................4

        B.  The Reexamination Requests Are Based Upon Long-Known Art ............................................6

        C.  The PTO's Reexamination Procedure Is Slow .......................................................................7

III.    ARGUMENT .........................................................................................................................9

        A.  Staying the Present Litigation Will Not Simplify the Issues in Question...............................10

            1.  The Request for Reexamination Will Not Streamline the Issues Before This Court .........10

                a)      It Is Highly Unlikely That the PTO Will Invalidate the Claims Request .............10

                        (i)     Synopsys Is Trying To Conceal Its Involvement In The Reexamination
                                To Avoid Being Accused Of Taking Inconsistent Positions ....................11

                b)      This Court Is Much More Likely Than the PTO to Provide Complete
                        Resolution of Invalidity Issues...............................................................................12

        B.  Discovery Is Nearly Complete and a Trial Date Has Been Set in This Litigation .................13

            1.  Fact Discovery Is Almost Completed and Are Proceeding with Trial Preparation..........14

            2.  Synopsys has Known of the Alleged Prior Art Cited in Synopsys' Request for
                Reexamination for Years .......................................................................................................15

        C.  Whether a Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to the
            Non-Moving Party .................................................................................................................16

IV.     CONCLUSION....................................................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 1994 WL 121673
(S.D.N.Y. 1994)..................................................................................14

*Amazon.com, Inc. v. BarnesAndNoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001)...........11

*Amphenol T&M Antennas, Inc. v. Centurion International, Inc.*, 2001 U.S.Dist. LEXIS
13795 (N.D. Ill., 2001)..................................................................................18

*C. Gladish v. Tyco Toys, Inc.*, 1993 WL 625509(E.D. Cal
Sept. 15, 1993) ...........................................................10, 11, 12, 15, 17, 18

*Emhart Indus., Inc. v. Sankyo Mfg. Co.,* 1987 WL 6314 (N.D. Ill. 1987)........................17

*Enprotech v. Autotech Corp.*, 15 U.S.P.Q.2d (BNA) 1319 (N.D. Ill. 1990) .........13, 14, 15

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ....................................................9

*Freeman v. Minn. Mining and Manufacturing Co.*, 661 F.Supp. 886 (D.Del. 1987)........17

*Gioello Enterprises Ltd.*, 2001 WL 126350 (D. Del. 2001) ...............................................17

*Grayling Industries v. GPAC*, 19 U.S.P.Q.2d (BNA) 1872 (N.D. Ga 1991) ...................16

*Landis v. North American Co.*, 299 U.S. 248 (1936)...........................................................9

*Lectrolarm v. Vicon,* Slip Op. 03-2330, (W.D. Tn. Sept. 8, 2005)...................................10

*Marlow Industries, Inc. v. Igloo Products Corp.*, 2002 WL 485698 (N.D. Tex.
March 28, 2002)........................................................................................12

*Middleton v. Minnesota Mining and Manufacturing Co.*, 2004
U.S.Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004)......................................16

*Output Technology Corp. v. Dataproducts Corp.*, 1991 U.S.Dist. LEXIS 20168
(W.D. Wash. Nov. 25, 1991) ....................................................................15, 18

*Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*, 1998 WL 1037920
(M.D.N.C. Dec. 17, 1998) .......................................................................15, 16, 17

*Starlight Associates v. Berkey-Colotran, Inc.*, 201 U.S.P.Q. (BNA) 307
(S.D.N.Y. 1978)........................................................................................13

*Toro Co. v. L. R. Nelson Corp.*, 1984 WL 1244 (C.D. Ill. July 25, 1984)........................13

DSMDB.2055707.3

*Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404 (W.D.N.Y. 1999)..9, 10, 12, 13, 14, 16, 17

## FEDERAL STATUTES

35 U.S.C. § 252............................................................................................................3, 9

35 U.S.C. § 316.................................................................................................................9

35 U.S.C. § 286.................................................................................................................3

35 U.S.C. § 305.................................................................................................................8

37 C.F.R. §1.510..............................................................................................................7

37 C.F.R. §1.552............................................................................................................12

## MISCELLANEOUS

Wayne O. Stacy, *Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination,* 66 GEO.WASH.L.REV. 172, 183.....9


MPEP § 2283 ....................................................................................................................4

MPEP § 2244 ................................................................................................................8, 13

MPEP § 2254 ....................................................................................................................8

MPEP § 2246 ....................................................................................................................8

MPEP § 2286 ..................................................................................................................14

1

## I.    INTRODUCTION

2

Synopsys and the Aeroflex defendants (collectively "Synopsys") were placed on notice of

3

Ricoh's '432 patent on January 21, 2003, more than three years ago.  The Aeroflex defendants

4

immediately counterclaimed seeking a declaratory judgment that the '432 patent was invalid under

5

alleged prior art, and in May 2003 Synopsys filed a separate declaratory judgment action also

6

contending that alleged prior art invalidated the '432 patent.  In July 2003, Synopsys produced the very

7

alleged prior art on which they now rely to form the basis of two reexamination requests.  Thus, they

8

have known for more than two and one-half years about the alleged prior art that they are only now

9

claiming should serve as a basis for delaying the litigation.

10

Synopsys caused the filing of not one but two requests for reexamination within the past two

11

months, based on the alleged prior art that they knew about for years.[1]  Consistent with the threats of

12

Synopsys' CEO to Ricoh's Senior Management, since the beginning of this litigation Synopsys has

13

employed scorched-earth litigation tactics, tried and failed to stay this case on two prior occasions,

14

caused two separate litigations to exist with more than 800 docket entries consisting of more than 1900

15

different pleadings and exhibits, participated in a comprehensive claim construction hearing and detailed

16

claim construction decision, and so willfully manipulated the evidence as to give rise to a motion for

17

sanctions for violating orders of Judge Jenkins, all following dozens of discovery motions, the

18

production of millions of pages of documents, and over three hundred hours of depositions.

19

Nothing has prevented Synopsys from filing for reexamination at the start of this litigation,

20

or at the latest in the Summer of 2003, when it produced the alleged prior art to Ricoh that was the basis

21

of its request.  Now, on the eve of the close of fact discovery and with trial just a few months away, it

22

has renewed its motion for a stay.  Synopsys made the tactical decision to wait until very late in the

23

litigation process and now seeks a reward for doing so.  Synopsys' renewed motion to stay is nothing

24

25

26

27

[1]  The requests for reexamination were submitted by patent attorneys in Washington D.C. who have conceded that they were acting on behalf of Synopsys.

28

DSMDB.2055707.3

1    more than a transparent attempt to gain a tactical advantage unfairly by further multiplying the forums

2    and delaying resolution of this litigation, which was originally set for trial on October 12, 2004.

3           In deciding whether to stay a proceeding pending the outcome of a patent reexamination, the

4    Court should consider three factors: 1) whether a stay would simplify the issues in question and trial of

5    the case; 2) whether discovery is complete and whether a trial date has been set; and 3) whether a stay

6    would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  Because all

7    three factors weigh against Synopsys, the Court should deny this third motion to stay these proceedings.

8           Contrary to Synopsys' assertions of a swift resolution, Patent and Trademark Office ("PTO")

9    reexaminations currently can take several years.  Aside from granting the first reexamination request,

10   which was little more than a formality given that more than 95% of these requests are granted, the PTO

11   has not taken any substantive action, and is not likely to issue its first action on the merits for a year or

12   longer.  Based upon our firm's personal experience in several reexamination proceedings, as well as

13   PTO statistics, the PTO moves at a glacial pace in reexamination proceedings.[2]  The PTO is likely to

14   take years to complete the reexamination proceedings here, after which an adverse ruling, if any, can be

15   appealed first within the PTO and then potentially to the Federal Circuit, which can take years more.

16          Synopsys' requests for reexamination will not resolve all of the issues pending before the

17   Court.  The PTO has not questioned the validity of any of the claims of the '432 patent, and based on

18   PTO statistics, there is a 90% chance that neither reexamination will result in the cancellation of all

19   claims of the '432 patent that are at issue in this litigation.  Indeed, it is *three times more likely* that all of

20   the claims will be confirmed, untouched, than all of the claims will be cancelled.  The movants

21   reluctantly have conceded that reexamination will not address the merits of Ricoh's infringement claims,

22   since it is limited only to some, but not all, issues of validity that are now before the Court.

23

24   _____

25   [2] In one recent reexamination proceeding, after granting the request, over one year later the PTO finally acted on the merits
     of the patent, allowing all of the original claims.  (Hoffman Dec. ¶ 2.)  In two other proceedings, while the PTO has
     informally indicated that all of the original claims will be allowed, we have been waiting for official action for two years

26   since the requests were filed.  (Hoffman Dec. ¶ 3.)  In Reexamination Serial No. 90/006,632, an accused infringer filed a
     reexamination request on May 13, 2003 which was granted on August 8, 2003, yet the first examiner's action on the merits

27   was not issued until one year later on August 5, 2004; that proceeding is still pending today as the third anniversary of its
     filing rapidly approaches.  (Hoffman Dec. ¶ 4.)

28

1    Reexamination likewise will not address other invalidity defenses, which virtually guarantees a trial.

2    Simply put, reexamination will not simplify the issues in this litigation or result in a more efficient use

3    of judicial and litigant resources, especially after so much time has already passed.

4              Synopsys' erroneously implies (at p. 1)  that if the claims are modified at all during

5    reexamination, the damage period automatically resets.  Synopsys makes this statement without citation

6    of any authority and contrary to the express language of 35 U.S.C. § 286, which provides that the statute

7    of limitations is measured from the date the complaint is filed.  This is simply incorrect.  Synopsys' later

8    statement (at p. 1) that Ricoh only will be able to claim damages from the date of the issuance of the

9    reexamination certificate, again without citation of any authority, is also misleading and contrary to the

10   language of 35 U.S.C. § 252 (establishing the effect of a reissue) and § 316 (applying § 252 to

11   reexamination).  Section 252 establishes that "if . . . claims are substantially identical" or if there is "a

12   valid claim of the reissued patent which was in the original patent," the damages period will not be

13   affected for that claim.  Therefore, there must be substantive amendment of *all five claims* of the '432

14   patent at issue in this litigation before there can be any effect on the damages period.  The best PTO

15   reexamination data available only tracks "claim changes" and does not make any evaluation as to

16   substance or scope of those changes – it is impossible to make even an educated guess as to the

17   likelihood of a substantive amendment to even *one* of the '432 patent claims.  Synopsys' overreaching

18   argument is an attempt to let the damages tail wag the infringement dog.

19             Synopsys' arguments may have been more compelling had they not opted to seek

20   reexamination using a straw man as requestor and had they not, recognizing the lack of merit of their

21   first filing, already submitted a second reexamination request.  Synopsys seeks to avoid the

22   consequences of any rejection of their contentions, and just to make sure the point is not missed, have

23   explicitly told the PTO that any decision it may make adverse to Synopsys is not relevant to the

24   proceedings before this Court.  Fink Dec. Ex. 1 at 9-10; Ex. 3 at 9-10.  By causing two requests to be

25   submitted, Synopsys has also forced a delay in any consideration on the merits by the PTO, because the

26   second request must now be merged with the first before the PTO can address the merits of the requests.

27

28

DSMDB.2055707.3

*See* MPEP § 2283 ("If a second request for reexamination is filed where a first certificate will issue for the first reexamination [i.e., ending the process] later that 3 months from the filing of the second request, the proceeding normally will be merged.").

The speculative benefits that might be realized by granting Synopsys' motion to stay pale in comparison to the significant costs.  A stay would unduly prejudice Ricoh by delaying resolution of this matter after the parties nearly have completed discovery and have invested millions of dollars in trial preparation.  Contrary to Synopsys' assertions that reexaminations take *months*, the reality is that reexaminations routinely take over *two years*, if not more.  Synopsys apparently has devised a strategy to indefinitely prevent Ricoh from being compensated for damages due to the infringing activities of the Aeroflex defendants.  A stay would be tantamount to a free pass to continue infringing Ricoh's patent with impunity.

## II.    FACTUAL BACKGROUND

Although the Court is familiar with the parties and facts of this litigation, Ricoh provides the following additional background facts relevant to the Court's consideration of this motion.

### A.    Fact Discovery Is Nearly Complete And Trial Is Scheduled For November 2006

In January 2003, Ricoh sued three groups of ASIC manufacturers in Delaware (collectively, "the Aeroflex defendants"), where most were incorporated.  By March 2003, Synopsys had agreed to indemnify all of the Aeroflex defendants and assumed control of the litigation.  (Hoffman Dec. ¶ 5.)  The Aeroflex defendants filed their answers and declaratory judgment counterclaims in March 2003 and submitted initial disclosures in May 2003.  On May 30, 2003, the Delaware Court set trial for October 12, 2004.  (Hoffman Dec., Ex. 1, May 30, 2003 Scheduling Order.)  Although those defendants resisted infringement discovery, they noticed and took the Rule 30(b)(6) deposition of Ricoh in June 2003, and started producing a wide range of alleged prior art during the summer of 2003.  (Hoffman Dec. ¶ 6.)

Meanwhile, Synopsys filed a Declaratory Judgment Complaint in May 2003 in this Court, and tried to stay Ricoh's infringement action.  In June 2003, Synopsys, acting through the guise of the Aeroflex defendants, filed a motion to stay, or in the alternative, to transfer venue of the Delaware

1   action.  The motion to stay was denied, but the Delaware court transferred the case to this Court in

2   October 2003.  Synopsys (through the Aeroflex defendants) renewed its motion to stay before this

3   Court, which was promptly denied by this Court.  D.I. 73.  Thus, Synopsys has already twice tried (and

4   failed) to stay this litigation.[3]

5            For a year between May 2003 and May 2004, the parties engaged in a wide range of

6   discovery, exchanging more than a dozen sets of written discovery, producing a large volume of

7   documents, and deposing twelve witnesses.  (Hoffman Dec. ¶ 7.)  In May 2004, this Court ordered the

8   parties to focus on claim construction and to defer all other discovery.  After the submission of

9   comprehensive briefs, a tutorial and several hearings, the Court issued its claim construction in April

10  2005.  Following two case management conferences in June and July 2005, full merits discovery

11  resumed, based upon the sworn declarations of representatives from the Aeroflex defendants identifying

12  the technical libraries and ASIC products at issue.[4]  Since that time, the parties have produced millions

13  of pages of documents; served 18 additional sets of written discovery requests, and deposed 22 more

14  witnesses.  Thus, from inception to the present, the parties have served 5 sets of requests for admission

15  consisting of 700 separate requests, 11 sets of document requests including 243 individual requests and

16  resulting in the production of between eight and ten million pages of documents, 25 sets of

17  interrogatories consisting of hundreds of interrogatories (including subparts), taken the depositions of 41

18  individuals for more than 300 hours, and filled three separate dockets with more than 800 entries and

19  tens of thousands of pages of submissions. In addition, the parties have scheduled or requested an

20  additional 8 depositions, including a second trip to Japan (at the insistence of Synopsys) in mid-April.

21

22

23

24  [3] Synopsys also has repeatedly tried to dismiss portions of the case, variously filing motions under Rule 12 or 56.  None have succeeded; the motions have either been withdrawn after briefing, or rejected by this Court.

25  [4] As set forth in Ricoh's February 21, 2006 motion for sanctions (D.I. 366), the Aeroflex defendants, whose defense Synopsys is providing, have violated this Court's instructions to conduct a comprehensive review of their respective products

26  and provide a complete disclosure in their declarations.  Instead, they repeatedly have amended their declarations and admitted during depositions that many relevant products have yet to be disclosed.  In fact, they have suggested that, based

27  upon their failure to comply with the Court's order to fully disclose all of the ASIC products, discovery and trial should be extended for many more months.  (Hoffman Dec., Ex. 2, De Mory February 21, 2006 Ltr. to Brothers.)

28

1
2
3
4
5
6
7
8
9

In short, fact discovery, which closes on May 30, is nearly complete, and trial is scheduled for November 2006. Ricoh's final infringement contentions are due on March 24, two weeks before the hearing on this motion, and Synopsys' final invalidity contentions are due April 24. In addition, pursuant to Judge Spero's instructions, the parties are scheduled to have a face-to-face meeting to discuss settlement on May 11, and Judge Spero will hold a settlement conference on June 6. The parties have invested substantial time and effort in engaging experts and preparing them to generate the infringement, invalidity, and damages reports that soon will be exchanged. The initial October 2004 trial date has repeatedly been delayed, and is now firmly set for November 27, 2006. Ricoh estimates that all of the parties have spent over $15 million litigating this case. (Hoffman Dec. ¶ 8.)

10
11

**B.    The Reexamination Requests Are Based Upon Long-Known Art**

12
13
14
15
16

Synopsys' first request for reexamination is based on a 1984 PhD thesis by Thaddeus Kowalski, and a 1985 article by Kowalski and others. Dr. Kowalski has acted as a consultant to Synopsys, and was retained as an expert for Synopsys in the summer of 2003. The two articles cited in the reexamination request were first produced in this litigation by Synopsys on July 11, 2003. (Hoffman Dec. ¶ 9.) Synopsys has been aware of this art for years.

17
18
19
20
21
22
23
24
25

Synopsys claims (at p. 3), without any supporting evidence, that the inventors of the '432 patent knew about these two articles but did not disclose them – in other words, the inventors deliberately engaged in inequitable conduct on the part of the inventors. This statement goes beyond mere inaccuracy; it is an outright falsehood. Synopsys' only cited authority in support of this statement is its own request for reexamination, which provides no evidence to support this assertion. Synopsys has had ample opportunity to take discovery on this issue; it deposed the inventors in May 2004. (Hoffman Dec. ¶ 10.) Nevertheless, even if the '432 inventors did have prior knowledge of the alleged prior art, however, it would not be enough to accuse the inventors of inequitable conduct, because there was no obligation to disclose it.

26
27
28

Synopsys' second request for reexamination relies on two related articles by Mitchell, Steinberg and Shulman entitled, "A Knowledge-Based Approach to Design," which describe an

1    experimental system developed at Rutgers University, known as "VEXED" (an acronym for "Vlsi

2    EXpert EDitor").[5]  Synopsys produced at least one article describing this very prior art system on July

3    11, 2003.  (Hoffman Dec. ¶ 11.)  There is no question that Synopsys has long known about this system.

4           Although Synopsys has alleged since early 2003 that the '432 patent is invalid based upon

5    the very prior art that is cited as the basis for their reexamination request to the PTO, disclosing the art

6    to Ricoh in July 2003.  Synopsys waited for *three years* before filing its first request for reexamination

7    on January 17, 2006.[6]  Synopsys could have filed its request when the Aeroflex defendants were first

8    served with the complaint over three years ago on January 21, 2003.  37 C.F.R. §1.510 (2004) ("any

9    person may, *at any time* during the period of enforceability of a patent, file a request for an *ex parte*

10   reexamination by the Office").[7]  Instead, Synopsys decided to litigate this case for over three years,

11   during which time they sought two stays of this litigation.  Synopsys required this Court to establish a

12   pretrial schedule, prepare for, conduct, and consider the parties' claims construction positions, resolve

13   numerous discovery disputes, and set the November 2006 trial date.  (Hoffman Dec. ¶ 13.)  Synopsys

14   has offered no explanation for their delay.

15           **C.     The PTO's Reexamination Procedure Is Slow**

16           *Ex parte* reexamination begins with the submission of a request for reexamination to the

17   PTO, by either the inventor or by a third party, identifying prior art, generally limited to printed

18

19

20   _____

21   [5] The VEXED system is not an automated CAD-design system.  It is an interactive presentation tool that assists a user in
     manually designing a circuit.  The VEXED system does not anticipate the '432 patent for several reasons.  For example, it
22   does not utilize any "macros" as used in the "storing a set of definitions of architecture independent actions and conditions"
     step and the "specifying" step.  Nor does the VEXED system disclose the use of a library of "hardware cells" (i.e., data
23   describing technology-specific circuit components with their geometric data).  Thus, at the very least the VEXED system
     does not meet the steps of "storing data describing . . . hardware cells"; "storing . . . a set of rules for selecting hardware
     cells"; "applying . . . a set of cell selection rules"; nor "generating . . . a netlist defining hardware cells."
24   [6] The first request for reexamination – dated January 17, 2006 – was filed by a patent law firm in Washington D.C.
     Although neither that request nor Synopsys' motion disclose who ultimately was responsible for (and paid for) that filing,
25   during a telephone conference that Ricoh's counsel had with the attorney who signed the request, that attorney effectively
     acknowledged that it had been filed at the behest of Synopsys.  (Hoffman Dec. ¶ 12.)  The second request for reexamination –
26   dated February 22, 2006 – likewise was filed by the same firm, also at the behest of Synopsys.  *Id.*
     [7] The ASIC Defendants' first pleading in the present litigation was made in March  2003 and alleged invalidity of the '432
27   patent. E.g., D.I. 13, Aeroflex's Answer to Compl. & Counterclaim.  Both the ASIC Defendants and Synopsys have
     maintained throughout this litigation that the '432 patent claims are invalid.

28           RICOH'S BRIEF IN OPPOSITION TO SYNOPSYS' THIRD MOTION TO STAY
                        Case No. CV-03-4669-MJJ (EMC) Page 7

publication, that "raises a substantial question of patentability."  MPEP § 2244.  If the alleged prior art was not previously considered by the PTO, the request is typically granted *pro forma*; usually a request will only be denied if the printed publication does not qualify as statutory prior art, or if the art had been previously considered during the original prosecution of the patent.  When a third party request is granted, the patent owner may file a statement and the requestor is permitted to reply; only then does examiner look at case on merits.  MPEP § 2254; 35 U.S.C. § 305.

Thus, in January and February 2006, Synopsys (acting through its straw man) submitted two separate requests for reexamination, identifying prior art that was not cited in the prosecution history, but that Synopsys had produced or disclosed in July 2003.  As it does in more than 95% of such requests, the PTO granted the request.  Synopsys claims (at p. 3) that, by granting the request for reexam, the PTO has already suggested that the '432 patent may be invalid.  This is untrue.  The PTO's examiner's guide, the Manual of Patent Examination and Procedure ("MPEP") § 2246 instructs the examiner to "not decide, and no statement should be made as to, whether the claims are rejected over the patents and printed publications" in the decision on the initial request for reexamination.  (Hoffman Dec., Ex. 3; MPEP § 2246.)  Virtually any competent patent attorney can get a reexamination request granted – all one needs to do is identify a piece of alleged prior art that was not cited in the prosecution history and advance some reason it purportedly relates to the patent.  The PTO has granted more than 95% of requests in the past four years; the only ones it denies are typically requests that are technically deficient or fail to cite new art.  (Hoffman Dec., Ex. 4 USPTO Performance and Accountability Report for Fiscal Year 2005 at 131; Ex. 5, *Ex Parte* Reexamination Filing Data – March 21, 2004 at 2.)

Reexaminations at the PTO move slowly.  Based upon PTO statistics, reexaminations take an average of 21.4 months from the point in time the reexamination was requested to termination.  (Hoffman Dec., Ex. 5 at 2.)  Since 1981, when the PTO was first authorized to conduct reexaminations, through March 2004, only 483 of the 4853 total *ex parte* reexamination certificates issued had all of the claims cancelled; confirmation of actionable patents were issued in all of the other cases.  *Id*.  In fact, more than one in four (26%) reexamination certificates result in all of the claims being confirmed, with

1    no changes whatsoever[8].  Where, as here, a third party is the requestor the odds of all claims being

2    confirmed improve to 30%.  *Id.*[9]

3            The PTO has recently established a new reexamination unit in the hope of streamlining the

4    reexamination process, but there is no indication that there has been any improvement in pendency of

5    reexamination requests.  Synopsys' exhibit in support of its proposition that the new unit will reduce the

6    time of reexaminations (Fink Dec. Ex. 7) is a forward-looking PTO press release.  Based upon our

7    firm's personal experience with reexaminations, we have seen no increase in speed in processing

8    reexaminations.  In fact, because the PTO has such a backlog of reexaminations, and because it works

9    on the oldest requests first, it is highly likely that there will be no action on the two Synopsys requests

10   for more than a year.  (Hoffman Dec. ¶ 14.)

11   **III.    ARGUMENT**

12           The decision to stay a case is wholly within the Court's discretion.  *Ethicon, Inc. v. Quigg*,

13   849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  The

14   parties agree that there are three factors that the Court should consider in evaluating a motion to stay a

15   patent case based upon a request for reexamination by the PTO: 1) "whether a stay will simplify the

16   issues in question and trial of the case"; 2) "whether discovery is complete and whether a trial date has

17   been set"; and 3) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the

18   non-moving party."  *Xerox Corp. v. 3Com Corp.,* 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).  In *Xerox*,

19   the court denied a motion to stay since the case had been pending for nearly two years, the discovery

20

21

22   [8] Synopsys' claim that less than 25% of reexaminations emerge from reexamination unchanged is based on old data from 1992 and 2000.  *See* Fink Dec.Dec. Ex. 5 & 6.  More recent data from 2004 shows the number of patents which are

23   "confirmed" at 26% and rising, with a 30% confirmation rate when the request is initiated by a third party.  (Hoffman Dec., Ex. 5).

24   [9] The reported percentage of reexamination certificates with "claim changes" (58% for reexaminations requested by a third party, such as this case) by itself is not a helpful statistic.  For example, simply amending a valid dependent claim in independent form (a common patent prosecution practice) would be considered a "claim change" by the PTO, yet the

25   amendment would not affect the enforcement of that claim in this litigation because it would remain "substantially identical" to the original claim.  35 U.S.C. § 252, 316.  Historically, there is only a one in eight chance that a reexamination will result

26   in the elimination of all triable issues before the Court.  Wayne O. Stacy, *Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination,* 66 GEO. WASH. L. REV. 172, 183 (Nov. 1997).

27   When looking only at reexaminations requested by a third party, the odds that all claims will be eliminated is only one in ten. (Hoffman Dec., Ex. 5.)

28

1    deadline was two months away, substantial time and resources had already been invested into the

2    litigation, and there was evidence that the movant's request for a stay had some dilatory tactical motive

3    behind it. *Id.* at 407-08.  Another judge recently summarized the law regarding stays based upon

4    reexaminations and concluded:  "When a petition for reexamination is filed after a trial date has been

5    set, extensive discovery has been conducted, and the reexamination does not involve newly discovered

6    prior art, courts uniformly refuse to stay the case pending reexamination." *Lectrolarm v. Vicon*, Slip Op.

7    03-2330 (W.D. Tn. Sept. 8, 2005), at p. 8, Hoffman Dec., Ex. 6.  Applying these factors yields the same

8    result here.

### A.    Staying the Present Litigation Will Not Simplify the Issues in Question

A stay of this litigation would not simplify the issues before the Court.  As shown below, the
PTO is three times more likely to "confirm" the claims of the '432 patent than it is to cancel all of the
claims of the '432 patent.  Indeed, Synopsys' own exhibits demonstrate that the PTO rarely cancels all
of the claims of a patent in reexamination.  After completing a lengthy, time consuming reexamination
process, the parties would land right back before the Court for continued discovery and trial because the
Synopsys has chosen not to ask the PTO to evaluate all of the prior art it proffers to this Court, and, most
importantly, the PTO cannot decide the issues of liability and damages.  Only this Court can provide
complete resolution of all of the issues.

### 1.    The Request for Reexamination Will Not Streamline the Issues Before This Court

#### a)    It Is Highly Unlikely That the PTO Will Invalidate the Claims Request

In its motion to stay (at p. 3) Synopsys argues that the PTO could find all the '432 patent
claims invalid.  While this is a theoretical possibility, this assertion is unsupported by the statistics of the
PTO's past actions, and ignores all of the other relevant considerations.  Invalidation of all of the claims
by the PTO is extremely unlikely, as has been implicitly recognized in case law.  In *C. Gladish v. Tyco
Toys, Inc.,* 1993 WL 625509, at *2 (E.D. Cal Sept. 15, 1993), the court denied a motion to stay pending
reexamination and concluded that, although there was a remote possibility that all claims would be

1    canceled, the parties were far more likely to end up right back in court to resolve invalidity as well as

2    infringement and fees.  *Id.*  The court's reasoning in *Gladish* is supported by the PTO's reexamination

3    statistics which indicate that 90% of reexaminations do not result in invalidating all of the claims.

4    (Hoffman Dec., Ex. 5 at 2.)

5           Canceling all of the relevant claims is the *only* way that reexamination can lead to  the

6    termination of this case.  Based on the available statistics, however, it is much more likely that

7    reexamination would *not* result in cancellation of the '432 patent.  Independent commentators have

8    analyzed the impact of reexaminations on related litigation, and have concluded that there is "less than a

9    one in eight chance" that reexamination will eliminate all triable issues from a litigation.  Stacy, 66 Geo.

10    Wash. L. Rev. at 183.  Synopsys' own documents confirm that, where a third party seeks reexamination,

11    it is far more likely that all of the claims will be "confirmed," rather than cancelled, meaning that no

12    changes of any sort are made to the patent at issue.  (Fink Dec. Ex. 5, 6.)

13           **(i)**    **Synopsys Is Trying To Conceal Its Involvement In The**

14                    **Reexamination To Avoid Being Accused Of Taking Inconsistent Positions**

15           Synopsys is using a proxy to advance its arguments before the PTO so it has plausible

16    deniability before this Court.  Synopsys needs that deniability because it wants to use one set of

17    arguments for this Court and another inconsistent set for the reexamination request.  The reexamination

18    request uses a claim construction different from the positions Synopsys presented to this Court during

19    the Markman proceedings and different from the Court's claim construction.  *See, e.g.*, Fink Dec. Ex. 1

20    at 10; *cf.* Claim Construction Order, D.I. 296 at 20-21.  Synopsys is well aware of the weaknesses of its

21    invalidity positions and its non-infringement positions.  A "patent may not, like a 'nose of wax,' be

22    twisted one way" to avoid infringement and another to find anticipation.  *Amazon.com, Inc. v.*

23    *BarnesAndNoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed. Cir. 2001).  Before the PTO, Synopsys is

24    attempting to twist the claims in one direction like a piece of wax to construe the patent claims broadly

25    in order to encompass the cited prior art.  In contrast, Synopsys has been trying to twist the claims in a

26    different direction before this Court to try to avoid infringement.  Such tactics are inconsistent with the

27

28

1    purpose of reexamination.  *See* 37 CFR §1.552(b) (claims cannot be broadened in scope during

2    reexamination); *Marlow Industries, Inc. v. Igloo Products Corp.,* 2002 WL 485698, at *2 (N.D. Tex.

3    March 28, 2002) (reexamination cannot be used to broaden claims beyond scope determined by district

4    court).

5            It is telling that Synopsys felt a need to try to hide their involvement in the request for

6    reexamination behind a straw man requestor so that they could avoid the consequences of any adverse

7    ruling by the PTO.  Coupled with their need to file a second reexamination request, in apparent

8    recognition that the first request will eventually be decided in favor of the patent, these circumstances

9    clearly reveal this motion for what it is – a stall to keep these cases on the Court's docket for years.

10   Such tactics are consistent with the repeated threats Synopsys made to Ricoh to delay the litigation.

11           **b)**      **This Court Is Much More Likely Than the PTO to Provide Complete**
                        **Resolution of Invalidity Issues**

12           Contrary to Synopsys' contentions, reexamination is unlikely to narrow the issues before this

13   Court; it is much more likely that a stay pending reexamination will add complexity to this litigation.

14   Any reexamination is limited to only the alleged prior art patent and publication references submitted to

15   the PTO.  *See, e.g.,* MPEP § 2244.  In contrast, Synopsys has raised before the Court a wide range of

16   invalidity allegations in addition to these patents and publications, such as the alleged sale and public

17   use of these references and other alleged prior art systems.  *See, e.g.,* Hoffman Dec., Ex. 7,

18   Supplemental Preliminary Invalidity Contentions of Synopsys and the Customer Defendants.  Likewise,

19   reexamination will not address other pending issues, such as infringement, fees, or damages.  Because

20   the invalidity issues pending before this Court are broader and more comprehensive than those presented

21   to the PTO in the request for reexamination, this Court is the *only* forum in which *all* of the questions

22   regarding the '432 patent can be resolved.

23           Other courts have denied motions to stay in comparable scenarios.  *See e.g., Xerox,* 69

24   F.Supp.2d at 406 ("In determining whether to stay litigation pending reexamination by the PTO, courts

25   generally consider . . . whether a stay will simplify the issues in question and trial of the case"); *Gladish*,

26   1993 WL 625509 at *2 (refusing to grant a stay pending reexamination where it would not serve

1   Congress' intent of simplifying the issues and reducing the complexity of the trial because the

2   reexamination involved narrower scope of prior art than the litigation, and thus would not resolve all the

3   issues to be litigated); *Enprotech v. Autotech Corp.,* 15 U.S.PQ.2d (BNA) 1319, 1320 (N.D. Ill. 1990)

4   (refusing to grant motion to stay and finding that numerous factors weighed in favor of the court's

5   decision to deny motion to stay including "that the reexamination will not resolve everything . . . .");

6   Stacy, *supra*, at 183 ("reexamination is still likely to leave a court with triable issues . . ."). *Cf. Starlight*

7   *Associates v. Berkey-Colotran, Inc.,* 201 U.S.P.Q. (BNA) 307, 308 (S.D.N.Y. 1978) (stay pending the

8   outcome of a reissue application denied because PTO decision "would be relevant to only some of the

9   issues" in the case and "in all likelihood this lawsuit would continue").[10]  Moreover, once this Court

10   rules, the PTO will immediately terminate the reexamination because this court will have evaluated the

11   same prior art.  MPEP § 2286 ("Where the reexamination proceeding is currently pending and the court

12   decision issues, or the Office becomes aware of a court decision relating to a pending reexamination

13   proceeding, the order to reexamine is reviewed to see if a substantial new question of patentability is still

14   present. If no substantial new question of patentability is still present, the order to reexamine is vacated

15   by the TC Director and reexamination is concluded.").

16          Synopsys should not be allowed to bring the present proceedings to a halt while they pursue

17   their eleventh-hour attempt to explore revised litigation positions in a non-judicial forum.

18          **B.      Discovery Is Nearly Complete and a Trial Date Has Been Set in This Litigation**

19          In deciding whether to grant a stay, the *Xerox* court considered "whether discovery is

20   complete and whether a trial date has been set."  69 F. Supp. 2d at 406-07.  The *Xerox* court ultimately

21   refused to grant the stay based in part on the facts that the case had been pending for almost two years

22   and the parties had engaged in substantial discovery.  *Id.* at 407.  Similarly, the *Enprotech* court found

23   that the "most compelling" reason for denying a stay was the fact that "discovery here is almost

24   completed and the case is set for trial."  15 U.S.P.Q.2d at 1320.

25

26   _____

27   [10] *See also Toro Co. v. L. R. Nelson Corp.,* 1984 WL 1244, at *2 (C.D. Ill. July 25, 1984) (denying motion where "stay order would accomplish little, other than the delay of disposition").

28          RICOH'S BRIEF IN OPPOSITION TO SYNOPSYS' THIRD MOTION TO STAY
           Case No. CV-03-4669-MJJ (EMC) Page 13

As in *Xerox* and *Enprotech*, discovery in the present case is nearly complete and the case is set for trial in only *seven months*. This case has progressed considerably since Ricoh initially filed its complaint more than three years ago. Discovery is nearly completed; fact discovery ends in May. The Court has set this case for trial in November of this year. Although Synopsys could have filed its reexamination request at the outset of this litigation, Synopsys chose to wait until the case was being finally prepared for trial to file its request and the instant motion. In view of the advanced stage of these proceedings and Synopsys' willful delay in filing its motion, the Court should deny the motion and allow Ricoh its day in court.

### 1. Fact Discovery Is Almost Completed and Are Proceeding with Trial Preparation

Fact discovery period ends in May. The final discovery issues are being resolved now. The Court has engaged in lengthy claims construction proceedings and issued a detailed claim construction ruling, held multiple hearings and ruled on multiple motions. The parties' experts are actively preparing their reports on the issues of infringement, invalidity and damages. Dispositive motion practice is scheduled to begin shortly, and trial is rapidly approaching. Notwithstanding all of this, Synopsys argue that the requests for reexamination and motion to stay are timely because there remains additional work to be done in preparation for trial. They do not even try to explain why they waited until this late hour. Synopsys seems to believe that a court should *always* issue a stay under almost any circumstances, even right up until the day of trial.

Other courts in similar circumstances have rejected Synopsys' arguments, recognizing that whatever benefits might be gained from the reexamination process are so uncertain and speculative that they rarely justify delaying resolution of an action late in the process as trial nears. *See, e.g., Xerox,* 69 F. Supp. at 405-406 (denial of stay requested more than eighteen months after litigation began and just a few months before the discovery completion date); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.,* 1994 WL 121673, at *3 (S.D.N.Y. 1994) ("[I]n a case such as this, in which multiple opinions have been issued, discovery is well under way and no prejudice to either party is likely to ensue, there is simply no justification for further delay in the action"); *Output Technology Corp. v. Dataproducts Corp.,* 1991

1   U.S. Dist LEXIS 20168, at *7 (W.D. Wash. Nov. 25, 1991) ("[A] stay is not justified here where

2   discovery is well underway and scheduled for completion [within four months], and where a trial is

3   scheduled [within nine months]"); *Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.,* 1998 WL

4   1037920, at *2 (M.D.N.C. Dec. 17, 1998) (denying stay requested after discovery closed, a trial date had

5   been set and a Markman hearing had been scheduled); *Gladish,* 1993 WL 625509 at *3 (same);

6   *Enprotech,* 15 U.S.PQ.2d at 1320 (finding that the "[m]ost compelling" reason for denying stay "is the

7   fact that discovery here is almost completed and the case is set for trial").

8           **2.     Synopsys has Known of the Alleged Prior Art Cited in Synopsys' Request for Reexamination for Years**

9          Unlike the cases cited by Synopsys, in which the cited art was *newly discovered*, the alleged

10  prior art references relied upon by Synopsys in their reexamination request have been known to the

11  requesting party for at least *three years*.  Courts have denied stays because of even a short delay between

12  discovery of the prior art and filing the reexamination request.  *See, e.g., Remington,* 1998 WL 1037920

13  at *1 (denying motion to stay pending reexamination where defendant knew of prior art *three months*

14  before filing request for reexamination); *Gladish*, 1993 WL 625509 at *3 (denying motion to stay

15  pending reexamination where plaintiff knew of prior art references for *eighteen months* but waited to file

16  a request for reexamination until after the litigation had progressed almost a year).  Recently, another

17  federal judge succinctly denied a motion to stay in a ruling that is equally applicable here:

18        "The request for reexamination appears to be motivated more by a desire for tactical

19        delay than a belief that the prior art cited in the reexamination request is invalidating.
          If the Defendants had truly believed that this prior art invalidates some or all of the []

20        Patent's claims, it seems likely that the Defendants would have requested
          reexamination one and a half years ago [at the start of the litigation], before spending

21        millions of dollars on litigation.  Further, reexamination only deals with invalidity
          from printed prior art.  Unless all claims were invalidated, a result that has a one-in-

22        ten probability, this court would still need to deal with issues concerning other types
          of prior art, liability and damages."

23  *Lectrolarm v. Vicon*, Slip Op. 03-2336 MaA, at p. 8 (W.D. Tn. Sept. 8, 2005) (Hoffman Dec., Ex. 6.)

24         Synopsys' reliance on the cases it cites is misplaced.  A careful review of these cases reveals

25  that these cases related to *newly discovered* prior art references that were the subject of a request for

26  reexamination.  *See, e.g., Grayling Industries v. GPAC*, 19 U.S.P.Q.2d (BNA) 1872, 1874 (N.D. Ga

DSMDB.2055707.3

1  1991) (reexamination request was timely because "the prior art on which the request is based was

2  uncovered during discovery"); *Middleton v. Minnesota Mining and Manufacturing Co.*, 2004 U.S. Dist.

3  LEXIS 16812, at *14-15 (S.D. Iowa Aug. 24, 2004) (the issue of validity was pending a short time

4  relative to pendency of entire case and usual amount of time was taken to develop the issue in litigation).

5        Here, by contrast, Synopsys' request for reexamination relies on publications that they have

6  known about for three years.  This is simply too much of a delay.  In *Remington*, 1998 WL 1037920 at

7  *1, a stay was denied because the defendant had known of the prior art only three months before filing

8  its request for reexamination; here, Synopsys has known of the purported relevance of the reexamination

9  art to the '432 patent since at least the summer of 2003.  Why the delay?  Synopsys cannot justify its

10 delay, because it has no good explanation.

11       Having been rebuffed in its previous attempts to stay this litigation, Synopsys is now

12 attempting to present a last ditch effort to forestall this Court's final resolution of the issues.  Had

13 Synopsys filed its request for reexamination earlier in the case, it could have saved the Court substantial

14 time and resources and saved the parties millions of dollars.  Synopsys' dilatory strategy should not be

15 rewarded by this Court.

16    **C.    Whether a Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage
           to the Non-Moving Party**

17

18       The final *Xerox* factor is "whether a stay would unduly prejudice or present a clear tactical

19 disadvantage to the non-moving party."  69 F. Supp. 2d at 406-07 (denying stay).  As in *Xerox*, granting

20 Synopsys' motion to stay would unduly prejudice Ricoh in light of the "substantial time and expense it

21 has already invested in discovery and trial preparation in this action." *See id.* at 408.

22       Synopsys' request is merely the latest tactical move in the Synopsys' delaying strategy.  Its

23 argument that the reexamination request will expedite resolution of this case is disingenuous; with the

24 current trial date of November 2006, the parties are preparing to resolve all of the issues in the case,

25 including infringement, damages and all invalidity arguments, in a matter of *months.*  Granting

26 Synopsys' motion to stay would delay this action for what could be several *years*, which would require

27 new infringement and damages discovery at the very least, at massive additional cost to all parties.

28

1    That Synopsys' request was made merely to delay these proceedings is, in and of itself,

2    sufficient basis on which to deny the motion. "To allow [the defendant] to now [after protracted

3    expensive discovery and trial preparation] use the reexamination process to get this case stayed would

4    be to allow a defendant to use the reexamination as a mere dilatory tactic." *Xerox*, 69 F. Supp. 2d at

5    407, quoting *Freeman v. Minn. Mining and Manufacturing Co.,* 661 F.Supp. 886, 888 (D.Del. 1987);

6    *see Remington*, 1998 WL 1037920, *3 ("Generally, courts are reluctant to stay proceedings where a

7    party is using the reexamination process merely as a dilatory tactic."); *Gladish*, 1993 WL 625509, *3

8    (stay denied where plaintiff knew of prior art references for eighteen months but waited to request

9    reexamination until "after the litigation has progressed almost a year").

10    Synopsys contends that because Ricoh is seeking monetary damages, a stay will not

11    prejudice Ricoh. Synopsys acknowledges, however, that Ricoh has also sought injunctive relief in this

12    matter.Synopsys argues that because the patent expires in 2008, this should not matter, but not only does

13    this argument reward Synopsys' attempts to stall, but this position is undermined by Synopsys' own

14    cited case law. In *Emhart Indus., Inc. v. Sankyo Mfg. Co.,* 1987 WL 6314, *2 (N.D. Ill. 1987), a stay

15    was granted because "plaintiff has never sought injunctive relief" – not the case here. Likewise,

16    Synopsys' reliance on *Gioello Enterprises Ltd.*, 2001 WL 126350, *2 (D. Del. 2001), where a stay was

17    granted because plaintiff was not "selling or actively licensing goods related to" the patent, is

18    inapplicable, because Ricoh has granted multiple licenses to the '432 patent. (Hoffman Dec. ¶ 15.)

19    Permitting violation of a patent for any period of time, however short it may be, is contrary to

20    the exclusivity right to which a patent is entitled. Synopsys also ignores the valid business interest

21    Ricoh has in asserting its exclusivity rights under patent laws. *See, e.g., Amphenol T&M Antennas, Inc.*

22    *v. Centurion Int'l, Inc.,* 2001 U.S. Dist. LEXIS 13795, *7 (N.D. Ill., 2001) (denying stay because "ATM

23    will suffer great harm as Centurion infringes ATM's patent throughout the stay period."); *Output*, 1991

24    U.S. Dist LEXIS 20168, *7 (stay denied where "Plaintiff . . . contends that as a small business it will be

25    injured by . . . competition if the trial is delayed"). Such prejudice will be equally felt by Ricoh, and

26    weighs in favor of a denying the motion to stay.

27

28

Ricoh already has spent significant time and millions of dollars enforcing its patent in this litigation. Much of the fact discovery obtained to date would need to be updated if a two year stay were granted at this advanced stage. Staying this case would unnecessarily deprive Ricoh of the ability to obtain "the just, speedy and inexpensive determination of every action" contemplated by Rule 1 of the Federal Rules of Civil Procedure.

Because reexamination proceedings routinely last nearly two years, granting Synopsys' motion would result in a lengthy delay of these proceedings. After such delay, the parties are likely to be right back before the Court to litigate the many remaining issues that will can not be resolved in the PTO proceedings. *See Gladish*, 1993 WL 625509 at *2 (rejecting stay where "[a]fter the reexamination, the parties would be right back in this court"). In contrast, denying Synopsys' motion and proceeding to trial as prepared and planned for would assure resolution of all issues in a matter of months. All three elements of the *Xerox* test, applied to the fact of the present case, weigh heavily in favor of denying the motion to stay.

## IV.  CONCLUSION

More than three years into this litigation, near the close of discovery, after the Court has invested substantial time and after the parties have invested millions of dollars, Synopsys' motion seeks to halt these proceedings for what could be several years. Because Synopsys willfully delayed in filing the request for reexamination, because that request is ill-founded and unlikely to succeed on its merits, and because Ricoh would be unduly prejudiced if this motion were granted, Ricoh respectfully requests that the motion to stay be denied.

Dated: March 14, 2006                    Respectfully submitted,

Ricoh Company, Ltd.

By: /s/ Kenneth W. Brothers

Gary M. Hoffman
Kenneth W. Brothers
Eric Oliver

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DICKSTEIN SHAPIRO MORIN &
   OSHINSKY  LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY  LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, California  94108
Phone:  (415) 421-7151
Fax:  (415) 362-8064

Attorneys for Ricoh Company, Ltd.

DSMDB.2055707.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

RICOH COMPANY, LTD.,                    )
                          Plaintiff,    )    **CASE NO. CV 03-4669-MJJ (EMC)**
                                        )
            vs.                         )    **CASE NO. CV-03-2289- MJJ (EMC)**
                                        )
AEROFLEX INC., et al.,                  )    **[PROPOSED] ORDER DENYING SYNOPSYS'**
                                        )    **THIRD MOTION TO STAY**
                          Defendants.   )
                                        )
_____)
                                        )
SYNOPSYS, INC.,                         )
                          Plaintiff,    )
                                        )
vs.                                     )
                                        )
RICOH COMPANY, LTD.,                    )
                                        )
                          Defendant.    )

        Upon consideration of Synopsys's Third Motion to Stay, and supporting evidence, Ricoh's

Opposition, and supporting evidence, and any reply and additional argument, and having conducted a

hearing on the motions, and the Court being fully advised of the premises, Synopsys's Third Motion to

Stay is HEREBY DENIED.

        IT IS SO ORDERED.

Dated: _____          _____
                                        THE HONORABLE JUDGE MARTIN J. JENKINS
                                        UNITED STATES DISTRICT COURT JUDGE

DICKSTEIN
SHAPIRO
MORIN &
OSHINSKY
LLP    DSMDB.2057028.1