1  Teresa M. Corbin (SBN 132360)
   Denise M. De Mory (SBN 168076)
2  Jaclyn C. Fink (SBN 217913)
   HOWREY LLP
3  525 Market Street, Suite 3600
   San Francisco, California  94105
4  Telephone:  (415) 848-4900
   Facsimile:  (415) 848-4999
5
   Attorneys for Plaintiff SYNOPSYS and
6  Defendants AEROFLEX INCORPORATED,
   AEROFLEX COLORADO SPRINGS, INC.,
7  AMI SEMICONDUCTOR, INC., MATROX
   ELECTRONIC SYSTEMS, LTD., MATROX
8  GRAPHICS INC., MATROX
   INTERNATIONAL CORP., and MATROX
9  TECH, INC.

10                   UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13  RICOH COMPANY, LTD.,                    Case No. C03-4669 MJJ (EMC)

14             Plaintiff,                   **DECLARATION OF DENISE M. DE MORY
                                            IN SUPPORT OF DEFENDANTS'**
15      vs.                                 **OPPOSITION TO RICOH'S MOTION FOR
                                            SANCTIONS FOR DEFENDANTS'**
16  AEROFLEX INCORPORATED, AMI              **VIOLATION OF JUDGE JENKINS' CMC
    SEMICONDUCTOR, INC., MATROX             ORDER REGARDING IDENTIFICATION**
17  ELECTRONIC SYSTEMS LTD., MATROX         **OF PRODUCTS AT ISSUE**
    GRAPHICS INC., MATROX
18  INTERNATIONAL CORP., MATROX TECH,       Magistrate Judge:    Hon. Edward M. Chen
    INC., AND AEROFLEX COLORADO
19  SPRINGS, INC.,

20             Defendants.

21

22

23

24

25

26

27

28

1    I, Denise M. De Mory, declare as follows:

2    1.    I am a partner at the law firm of Howrey LLP, counsel for the Customer Defendants in

3    this action.  The following declaration is based on my personal knowledge.  If called upon to testify, I

4    could and would competently testify to the matters set forth below.

5    2.    Attached hereto as Exhibit 1 is a true and correct copy a February 7, 2006 letter from

6    met to Ken Brothers.

7    3.    Attached hereto as Exhibit 2 is a true and correct copy of the June 8, 2005 Joint Case

8    Management Conference Statement without exhibits.

9    4.    Attached hereto as Exhibit 3 is a true and correct copy a July 18, 2005 letter from

10    Deanna Allen to Terry Corbin.

11    5.    Attached hereto as Exhibit 4 is a true and correct copy a Joint letter to Judge Chen dated

12    August 30, 2005 without exhibits.

13    6.    Attached hereto as Exhibit 5 is a true and correct excerpts of a transcript of a recorded

14    meet and confer that occurred on September 12, 2005.

15    7.    Attached hereto as Exhibit 6 is a true and correct copy of a January 24, 2006 letter from

16    me to Ken Brothers.

17    8.    Attached hereto as Exhibit 7 is a true and correct copy a January 25, 2006 letter from

18    Ken Brothers to me.

19    9.    Attached hereto as Exhibit 8 is a true and correct copy a February 3, 2006 letter from

20    me to Ken Brothers.

21    10.    On January 25, 2006, I participated in a lengthy meet and confer call with Ken Brothers

22    in which I pointed out the problems with Ricoh's conjecture with what was allegedly missing from the

23    Ricoh product declarations.  With the exception of the legitimate dispute about whether or not the

24    JW02 is a "commercial product" or a "prototype," I informed Mr. Brothers that based on our

25    investigation no products were missing.  I also informed Mr. Brothers that the later part of the

26    transcript, after he left the Milliken deposition, evidenced that his accusations were wrong.  I pointed

27    Mr. Brothers to the pages at the end of the transcript that discussed why various Short Form products

28    were not included in the product declaration.  I also reiterated Ms. Fink's previous explanation to Mr.

HOWREY LLP

Case No.  C03-4669 MJJ (EMC)                              1
DECL OF DE MORY ISO DEFTS' OPP MTN FOR SANCTIONS
FOR DEFTS' VIOL. OF CMC ORDER RE ID OF PRODS AT ISSUE

1  Brothers that the only error in the Coco declaration was that the reason for removal was recorded

2  incorrectly in four instances.  Attached hereto as Exhibit 8 is a true and correct copy of a letter from

3  me to Mr. Brothers explaining these details, as well as others, as to why Ricoh's sanctions threats were

4  unfounded.

5         11.    Attached hereto as Exhibit 9 is a true and correct of a February 21, 2006 letter from me

6  to Ken Brothers.

7         Executed this 14th day of March, 2006, at San Francisco, California.

8

9                         /s/*Denise M. De Mory*

                          Denise M. De Mory

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  C03-4669 MJJ (EMC)
DE MORY DECL. ISO REPLY TO OPP TO EX PARTE APPLICATION FOR
ORDER COMPELLING REMOVAL OF REFERENCES TO PRIVILEGED
MATERIAL

-2-



525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

**Denise M. De Mory**
Partner
**T** 415.848.4983
**F** 415.848.4999
demoryd@howrey.com
File 06816.0060.000000

February 7, 2006


**VIA PDF**


Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037-1526

>      Re:    *Synopsys v. Ricoh Company, Ltd.*,
>             **Case No. C03-2289 MJJ (EMC)**
>             *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.*,
>             **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

       We have learned that there are some additional products that might need to be added to the Smith Product Declaration, and for which we may need to produce additional documents. AMI acquired some or all of the assets of an entity called Flextronics Semiconductor last fall, and AMI may now be selling chips that were synthesized by Flextronics Semiconductor prior to the asset acquisition. We are still investigating if, and to what extent, this implicates any chips AMI currently sells.

       In addition, AMI also offers for sale and sells in the United States chips synthesized by related non-party entities in Europe. Again, we are still investigating if and to what extent this requires supplementation and additional production.

       Please note that by this letter I do not intend to characterize the full details of either the acquisition or the relationships between entities. In addition, AMI reserves all rights to assert that it should have no liability with regard to either the sales of chips synthesized by Flextronics Semiconductor prior to the asset acquisition, or any liability with regard to chips synthesized by other non-party entities in Europe.

       I assume that you will still want to take Mr. Smith's deposition later this week, but wanted to advise you of these facts in advance of the deposition. If you wish to reschedule the Smith deposition, please let us know. In addition, if you agree that chips synthesized by either

AMSTERDAM  BRUSSELS  CHICAGO  HOUSTON  IRVINE  LONDON
LOS ANGELES  MENLO PARK  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  WASHINGTON, DC

DM_US\8310667.v1

Kenneth W. Brothers, Esq.
February 7, 2006
Page 2

Flextronics Semiconductor prior to the asset acquisition, or that chips synthesized by other non-party entities in Europe, are outside the scope of your claims, please let us know immediately so that we can avoid what could potentially be an expensive investigation and production.

Very truly yours,

Denise M. De Mory

DMD:plk

cc:     Gary Hoffman, Esq. (via e-mail only)
        Edward Meilman, Esq. (via e-mail only)
        Eric Oliver, Esq. (via e-mail only)
        DeAnna Allen, Esq. (via e-mail only)
        Michael Weinstein, Esq. (via e-mail only)
        Seymour Seyoum (via e-mail only)

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
Eric Oliver (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
2101 L Street, NW
Washington, DC  20037-1526
Phone (202) 785-9700
Fax (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY, LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Phone (212) 835-1400
Fax (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN
& DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

Teresa M. Corbin (SBN 132360)
Christopher Kelley (SBN 166608)
HOWREY LLP
301 Ravenswood Avenue
Menlo Park, California  94025
Telephone:  (650) 463-8100
Facsimile:  (650) 463-8400

Attorneys for ASIC Defendants and Synopsys, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| RICOH COMPANY, LTD, <br> Plaintiff, <br> vs. <br> AEROFLEX ET AL., <br> Defendants <br><br> SYNOPSYS, INC., <br> Plaintiff, <br> vs. <br> RICOH COMPANY, LTD., <br> Defendant. | ) Case No. C- 03-04669 MJJ (EMC) <br> ) Case No. C-03-02289 MJJ (EMC) <br> ) <br> ) <br> ) <br> ) COMBINED JOINT CASE <br> ) MANAGEMENT CONFERENCE <br> ) STATEMENT AND PROPOSED ORDER <br> ) <br> ) <br> ) Date:       June 14, 2005 <br> ) Time:       2:00 p.m. <br> ) Courtroom:  11 <br> ) |

1

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

Pursuant to FRCP 26(f) and L.R. 16-9, Ricoh Company, Ltd. and Aeroflex, Inc. et al. in Case No. C-03-04669, and Synopsys, Inc. and Ricoh Company, Ltd. in Case No. C-03-02289, jointly and collectively submit this Joint Case Management Conference Statement and Proposed Order.

## DESCRIPTION OF THE CASE

**1. A brief description of the events underlying the action:**

### a. Ricoh's Description

The Court is already acquainted with the events underlying this action, as set forth in this Court's order of September 22, 2003, the Case Management Conference Statement and Proposed Order, dated April 26, 2004, and the Claim Construction issued by the Court on April 7, 2005.

**Ricoh's claims against the ASIC Defendants.** In January 2003, Ricoh Company, Ltd.("Ricoh") sued several designers and manufacturers of computer chips in the District of Delaware (C.A. No. 03-103-GMS) for patent infringement, alleging that those Defendants, Aeroflex, Inc. et al (hereinafter the "ASIC Defendants"), were using the steps recited in the process claims of Ricoh's 4,922,432 patent ("'432 patent"). The '432 patent describes a highly advanced technical process used in designing and producing certain types of computer chips called ASICs. In carrying out their infringement of the patented process, the ASIC Defendants use software supplied by Synopsys, Inc. ("Synopsys"), and perhaps other suppliers, as part of their process in producing ASICs that they sell. Ricoh has never accused Synopsys itself of infringing the '432 patent and has stated that it will not bring any action for infringement of the '432 patent against Synopsys with respect to Synopsys' past or current software products. Further information about the infringing activities of the ASIC Defendants has been set out in Ricoh's preliminary infringement contentions, served on March 12, 2004.

Contrary to the ASIC Defendants' representations, the activities that infringe certain of the process claims of the '432 patent involve more than the "ordinary use" of a Synopsys product named Design Compiler. Indeed, the ASIC Defendants refuse to represent (even in the absence of discovery) in this submission that they have not changed that which Synopsys calls the "ordinary use" of Design Compiler, and thus effectively are telling the Court that they are not doing what Synopsys calls "ordinary use". Ricoh is seeking in its Complaint damages based upon the ASIC Defendants' revenue derived from their use of the patented process, including the sale of the ASICs made utilizing this

2

process. The ASIC Defendants are obligated to defend against Ricoh's infringement claims without limitation to particular equipment they may employ when so acting. On August 29, 2003, the Delaware court granted the ASIC Defendants' motion to transfer that action to this Court. On December 11, 2003, this Court denied the ASIC Defendants motion to stay, finding that "Ricoh has a 'separate interest' in litigating against Defendants in the first-filed action."

Resorting to hyperbole, Synopsys and the ASIC defendants claim that they are "totally in the dark" as to the issues in this case. Ricoh's Amended Preliminary Infringement Contentions, which were prepared consistent with the guidelines articulated by Magistrate Judge Chen regarding both the infringement and invalidity contentions, demonstrate explicitly how Ricoh is reading each ASIC Defendants' usage of Synopsys products in the design and production of ASICs. With respect to the "storing in an expert system knowledge base" limitation, for example, the Amended Preliminary Infringement Contention (PIC) states: "This element is met when the ASIC Designer stores, installs or loads HDL Compiler, Design Compiler, and Synthesis Libraries in computer memory of a computer system." The "expert system knowledge base" referenced in the claim element is therefore found in the HDL Compiler, Design Compiler, and Synthesis Library components of the Synopsys products. Even if it were somehow required to do so to prove infringement, it is only because of Synopsys' own deficiencies in the relevant discovery that Ricoh cannot further pinpoint which module(s) in these components contains the "expert system knowledge base."

Regarding the limitation "applying to the specified definition of the action or condition to be performed, a set of cell selection rules," the PICs specifically identify:

> both HDL Compiler and Design Compiler as they are used in conjunction with the Synthesis Libraries, cell selection rules are applied to the synthetic operators ("specified definitions of the action[s] or conditions[s]") to perform the selection of the implementations ("selection of hardware cells") that perform the desired functions of the proposed ASIC.

This passage clearly identifies the manner in which Ricoh is reading the claim limitation on the ASIC Defendants' use of Synopsys products. To the extent that Ricoh was unable to further define the precise module or subcomponent that may be responsible for performing this claim limitation is a

3

direct result of the failure by Synopsys and the ASIC Defendants to adequately produce the relevant discovery.[1]

**The Declaratory Judgment Action.**  Although Synopsys chose not to try to intervene in the Delaware case, it had indemnified the ASIC Defendants; Synopsys' attorneys assumed control of the defense and have filed multiple declaratory judgment counterclaims against Ricoh.  After months of litigating the Delaware case, Synopsys filed a declaratory judgment action in this Court with respect to the '432 patent and another patent (the 5,197,016 patent ("016 patent")) that Ricoh did not assert in the Delaware case.  Ricoh has never accused Synopsys itself of infringing the '432 patent or the '016 patent and has issued a written commitment that it will not bring any action for infringement of the '432 patent or the '016 patent against Synopsys with respect to Synopsys' past or current software products.  Ricoh has advised others of the availability of a license under the '016 patent but has not threatened anyone with infringement of that patent.  On September 22, 2003, this Court denied Ricoh's motion to dismiss Synopsys' declaratory judgment action.

**Discovery in late 2003 and early 2004.**  In late 2003 and early 2004, this case was marked by constant bickering between counsel and multiple delays.  For example, when Ricoh moved to amend its complaint in early 2004, the motion was opposed by the ASIC Defendants, even though they admitted there was no prejudice in the amendment.  At an April 6, 2004 hearing on the ASIC Defendants' opposition to Ricoh's motion to amend the complaint, this Court expressed its frustration at counsel for the ASIC Defendants for continually delaying the proceedings:

> It struck me from day one in this case, and I don't know what is going on, motions to strike, invalidity contentions, I mean, it's just ridiculous.  And it's not the way this case is going to get litigated.  And I'm going to tell you now . . . I don't have the resources, and no one else around here does, to deal with a case where you want to take it upon yourself to not discuss matters that you can resolve without the Court's intervention.

(April 6, 2004 Tr. at 3.)

---

[1] Amazingly, the ASIC Defendants also fault Ricoh with not issuing a Preliminary Infringement Contention applicable to software about which the ASIC Defendants have refused, and continue to refuse, to reveal whether or not they use.

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

Pursuant to the instructions of Magistrate Judge Chen, on April 23, 2004, the parties submitted their respective discovery plans detailing how each side believed discovery should proceed. Ricoh's discovery plan (attached as Exhibit 1) detailed a wide range of areas where the ASIC Defendants and Synopsys had refused to participate in discovery. For example:

- The ASIC Defendants and Synopsys have not produced all of the documents identified in their initial disclosures.

- The ASIC Defendants and Synopsys have not produced the source code for all of the software identified in Ricoh's preliminary infringement charts.

- Although the ASIC Defendants and Synopsys agreed to produce all documents (other than e-mails) by April 30, 2004, they did not do so, and have produced no documents since May 4, 2004. There remains pending a large volume of documents that have never been produced by Synopsys and the ASIC Defendants.

- The ASIC Defendants and Synopsys have objected to a wide range of Ricoh's discovery requests, for example, refusing to produce documents regarding all of the processes and products that Ricoh contends infringe the '432 patent or disclosing the process they actually practice.

- The ASIC Defendants have refused to produce many documents that include source code, inputs, cell libraries and related documentation that is vital to Ricoh's infringement claims.

**The discovery stay.** During the May 4, 2004 Case Management Conference, this Court stated that there should be a stay of discovery related to the merits (e.g., infringement and invalidity). On May 13, 2004, Magistrate Judge Chen issued an Order reaffirming the stay of all discovery not related to claim construction. Consequently, the dates for all actions in this case, other than those related to the Markman process, were suspended pending the Court's claim construction ruling.

The parties nonetheless proceeded with certain depositions in Japan during the discovery stay, and Synopsys permitted Ricoh's experts to have periodic access to some of Synopsys' source code during the discovery stay. Synopsys does not deny withholding access to the source code of many of the products (e.g., Module Compiler, Physical Compiler, etc.) at issue in this case, and it produced only the

source code for its Design Compiler product (and its corresponding user interface and compiler components). Synopsys unilaterally decided what it considered to be the "Synopsys Logic Synthesis Product" that would be produced. (See footnote 5). Synopsys has produced a single modified version of the Synopsys Logic Synthesis Product even though up a dozen or more versions have been used by the ASIC Defendants to infringe the '432 patent. Ricoh has explicitly placed at issue many other products beyond Synopsys' unilateral product definition; however, Synopsys refuses to permit Ricoh access to that source code or other documentation.

Synopsys has made discovery of its Design Compiler source code difficult by refusing to turn over the source code in the manner in which it was kept and insisting it be examined only at inconvenient Synopsys locations under the constant monitoring of Synopsys personnel and under the strict procedures limiting availability and access, using "custom software" Synopsys wrote for that purpose.[2] While Synopsys several times mentions that it made the code "available" for 34 or 46 weeks, it fails to reveal that the source code had over 21 million lines of code that incorporated tens of thousands of source files, many of which were not humanly readable. Months into Ricoh's review, Synopsys admitted that of the tens of thousands of source code files provided, many were for products not at issue in the case and thus irrelevant. Synopsys initially required Ricoh to use a workstation computer that was at least five orders of magnitude slower than an ordinary personal computer. That workstation suffered multiple outages, each requiring the scheduling of a service call with an off-site Synopsys technician with attendant losses in inspection time. The workstation ultimately experienced a catastrophic failure and it took several months for Ricoh to convince Synopsys to permit Ricoh to buy a higher speed computer workstation for use in connection with code inspection after Synopsys decided to change the inspection site from Maryland to California.

---

[2] Synopsys has only now admitted that it has not provided a typical environment in which the source code would operate. Instead, it created, at its own expense and initiative, custom software for Ricoh's experts to use when accessing the code, when in fact, the source code must have been initially accessible in its native environment. This new and unique software has not worked, which explains some of the problems detailed in the main text that Ricoh encountered. Likewise, Ricoh has not been using Design Compiler for 17 years – indeed, Design Compiler has not existed in its present form for even a fraction of that time – and Ricoh's use of Design Compiler as a customer is no substitute for a proper inspection of the closely-guarded source code by experts.

There has been virtually no merits discovery for more than 13 months.

**The Markman briefing, hearing and claim construction ruling.**  Between March and August 2004, the parties exchanged claim constructions and filed Markman briefs.  Between October 2004 and January 2005, the Court conducted several hearings related to claim construction.  On April 7, 2005, the Court issued its Order construing the claims.

**Stipulation narrowing the claims at issue.**  During the stay period, in June and July 2004, the parties negotiated and the Court entered a Stipulated Order that had the effect of dismissing all claims and counterclaims except those relating Ricoh's allegations that the ASIC Defendants infringe claims 13-17 of the '432 patent.  All other claims relating to the '432 patent, and all issues relating to the '016 patent, were dismissed by Court Order in the *Ricoh v. Aeroflex* litigation on July 8, 2004.  A similar stipulation and order was entered in the *Synopsys v. Ricoh* litigation on July 7, 2004, making those two cases congruent with respect to the patent claims at issue.

**Consolidation vs. stay and/or bifurcation.**  A threshold issue is whether the earlier-filed *Ricoh v. Aeroflex* infringement action should be consolidated with the later-filed *Synopsys v. Ricoh* declaratory judgment action.  There are no patent infringement claims or counterclaims in the declaratory judgment action.  The declaratory judgment claims in the *Synopsys v. Ricoh* litigation are identical in scope and language to the declaratory judgment counterclaims in this litigation.  Ricoh believes that consolidation is appropriate, with Ricoh, the first filer and patent owner, as the plaintiff.

Synopsys and the ASIC Defendants claim that they will consent to consolidation if Ricoh blindly waives any right to proceed with its infringement claims based upon how the ASIC Defendants input specifications into Design Compiler.  In a stunning admission of how little their attorneys know about their own client's business, counsel for the ASIC Defendants write (at p. 13) that "it is most probable that the customer defendants use the same forms of input to Design Compiler that the vast majority of Synopsys' customers use–Verilog and VHDL . . . ."  The fact that the attorneys for the ASIC Defendants do not know what kinds of inputs their clients use, while simultaneously conditioning their consent for consolidation upon an uninformed demand for a stipulation to that effect, is stunning.  It would most irresponsible for Ricoh to even consider such an informed request.

Thus, Synopsys and the ASIC Defendants effectively oppose consolidation and refuse to participate in setting a schedule for discovery on Ricoh's infringement claims. Synopsys and the ASIC Defendants instead propose breaking up the dispute before this Court into tiny segments, each of which to be handled as if it were a separate case: a trial on their affirmative defenses first, then a trial on the infringement merits, then separate damages trials.[3] The ASIC Defendants claim that they will be bound by a validity ruling but leave unresolved all other issues <u>including Ricoh's infringement claims and all damage issues</u>. Thus, the ASIC defendants want to narrowly define the accused products and then try only their affirmative defenses while ignoring the merits. With respect to the narrow scope of the products, there are two fundamental problems: first, they do not want to try all of the products that Ricoh has accused of infringement. Second, of their self-defined Synopsys Logic Synthesis Product that there were at least 12 major revisions of the Design Compiler source code during the infringement period before the first-filed case began, but the ASIC defendants propose limiting the possibility of infringement to only one, the "2003.12 source code release," which they have arbitrarily chosen from the releases after the first-filed case was begun and even though Synopsys has produced manuals which related to a different release (2002.05; see footnote 19 infra).[4] Synopsys and the ASIC Defendants also propose bifurcating damages with respect to each of the seven defendants, implying that multiple additional trials will become necessary. Ricoh opposes such bifurcation as unnecessary and wasteful of this Court's resources. While there may be separate calculations for each group of defendants, as there are in any multiple defendant action, Ricoh believes that the Court should approach damages in a consistent manner regardless of the identity of the defendant under consideration.

Synopsys and the ASIC Defendants also announce their intention to renew the stay motion, which has already been denied by both the Delaware court and this Court. In December 2003, this Court

---

[3] It seems incongruous that the ASIC defendants would oppose consolidation and propose that the cases be bifurcated in that the ASIC defendants could find themselves liable beyond any indemnification provisions provided by Synopsys. The ASIC defendants, however, have ceded complete control of this litigation, so it appears their separate interests are not being independently addressed.

[4] Therefore, Synopsys desire to resolve Ricoh's infringement claim by selecting one particular version of one self-designated product, Design Compiler, without regard to any other version of Design Compiler or any product beyond Design Compiler.

8

ruled that "Ricoh has a 'separate interest' in litigating against the [ASIC] Defendants in the first-filed action."  The ASIC Defendants do not identify why that "separate interest" finding is no longer applicable.  As shown below, the ASIC defendants have refused to respond to discovery regarding their infringing activities.  They refuse to represent (even in the absence of discovery) in this submission that they have not changed that which Synopsys calls the "ordinary use" of Design Compiler, and have conceded that they have done so.  Thus, the ASIC Defendants effectively have told this Court that the case against them will continue even should Synopsys prevail, ending its obligation to defend them (see footnote 5 infra) and leaving the ASIC Defendants to their own devices.

Synopsys and the ASIC Defendants propose the stay of Ricoh's infringement action begun in January 2003 remain in effect until a decision is rendered sometime after their proposed May 2006 trial against Synopsys in the second-filed case, at which time discovery could begin again, resulting in a trial in, perhaps 2008 (assuming that there are no issues that are sought to be appealed).   There is no valid reason for a stay.[5]  Ricoh, in its first filed action, is entitled to have a resolution to its outstanding conflict with the ASIC defendants within a reasonable time.

Finally, Synopsys and the ASIC Defendants claim that they want to file an additional summary judgment motions, even though both sides agree that the deadline should be after close of fact discovery.  For example, they claim an intent to renew a prior motion for partial summary judgment that some, but not all, of the ASIC Defendants had filed under 35 U.S.C. 271(g).  When that earlier 271(g) motion was made, Ricoh asked for discovery pursuant to Fed.R.Civ.P. 56(f) since the ASIC Defendants had mostly refused to produce discovery designed to reveal what they actually did.  An extremely limited deposition of a Matrox defendant revealed that contrary to representations found in Matrox declarations, activities had been conducted within the United States.  After that discovery, the ASIC Defendants hastily withdrew their pending motion for partial summary judgment.  Ricoh disagrees with the statement by Synopsys and the ASIC Defendants that any attempt to renew that motion will be

---

[5] The argument proffered by Synopsys' and the ASIC defendants to litigate the Synopsys DJ action first and then, and only then, commence the ASIC defendant litigation is unreasonable and akin to a defendant in a patent infringement action arguing that the action should be litigated element by element, where litigation one element does not commence until the litigation has been completed on a prior element.

1    limited to expert issues; instead, Ricoh will require additional discovery on the "proximate relationship"

2    between the '432 patented invention and the ASICs produced by the ASIC Defendants. That

3    relationship is best seen in claim 14 of the '432 patent. This Court noted (at footnote 4, page 8 of the

4    Markman Order) that at least a portion of the invention (i.e., generation of mask data) was required to

5    produce an integrated circuit and was a distinct process apart from the design steps (as recited in claim

6    13) that culminated in the generation of a netlist. This fact shows that the claimed process, at least as

7    recited in claim 14, is in a "proximate relationship" to the production of ASICs. While the ASIC

8    Defendants would like to assert that there is no relationship between the '432 patent and the manufacture

9    of ASICs, Ricoh maintains that neither the patent, nor the claim construction, nor the facts, support the

10   defendants' argument. In any event, even with this proposed partial summary judgment motion, the

11   ASIC Defendants effectively concede that the case against them would still continue.

12          The dispositive motion cut off proposed by the parties is rapidly approaching (both are

13   during the first quarter of next year). There is no good reason to consider permit piecemeal motions of a

14   dispositive nature before that time.

15          **Final infringement contentions.** Ricoh understood the Court's May 2004 discovery stay to

16   suspend all obligations imposed by the court's scheduling orders and the local rules until a new schedule

17   was established after the claim construction ruling was issued. After the claim construction ruling was

18   issued on April 7, 2005, lead counsel for the parties spoke by telephone on April 21, 2005, and Ricoh's

19   counsel understood the parties to agree that all dates and obligations were suspended until a new

20   schedule was established. Since merits discovery had been stayed at that time for about 11 months (now

21   about 13 months), and because the ASIC Defendants and Synopsys have not provided all of the

22   documents and source code for the products identified in Ricoh's preliminary infringement charts, Ricoh

23   believes that it should obtain discovery and have time to analyze it prior to the submission of its final

24   infringement contentions. If the ASIC defendants and Synopsys had not withheld discovery and if

25   discovery had not been stayed, then Ricoh would have obtained discovery needed for it to proceed with

26   presenting its final infringement contentions.

27          On May 31, 2005, however, counsel for the ASIC Defendants and Synopsys served what

28   purported to be the final invalidity contentions of Synopsys and the ASIC Defendants, with a footnote

10

asserting that Ricoh did not timely present its final infringement contentions "and its opportunity to do so has passed."[6]  This position by the ASIC Defendants and Synopsys came as a surprise to Ricoh, because it is inconsistent with the suspension of all due dates other than those relating to the Markman process, inconsistent with the agreement between counsel that new dates for presenting such charts needed to be set in the schedule, and because counsel for the ASIC Defendants and Synopsys never informed Ricoh of their apparent belief to the contrary, either before or after the purported date for the final infringement contentions.  In a telephone conference on June 2, 2005, counsel for the ASIC Defendants and Synopsys maintained their position but said that they would consider extending the time for Ricoh to submit its final infringement contentions to 30 days after the CMC hearing.  As noted above, however, Ricoh has been denied discovery on most of the products and source code identified in Ricoh's preliminary infringement contentions and the ASIC Defendants and Synopsys continue to withhold documents because of the stay of discovery and suspension of the due dates for the past 13 months.  Ricoh should have a fair opportunity to receive and analyze such discovery prior to the submission of its final infringement contentions.  Therefore, Synopsys' and the ASIC defendants' proposal of Ricoh's submission of the contentions 30 days after the CMC is inappropriate.  If discovery is limited or not permitted until after such contentions are filed, as suggested, it will inevitably lead to unnecessarily burdening the Court with numerous vigorously contested motions to amend the contentions.  Ricoh believes it is more appropriate to provide the final infringement contentions in accordance with the time schedule noted below.

**b.  Description of Synopsys and the ASIC Defendants**

Although this case has been pending for more than two years, the Court has issued its claim construction ruling, and three of Ricoh's experts have had 46 weeks of access to the source code for the Synopsys Logic Synthesis Product[7] (although they have only utilized 34 weeks), Synopsys and the

---

[6] Counsel for Ricoh did not receive any communication from the counsel for Synopsys and the ASIC defendants inquiring whether Ricoh intentionally failed to provide the final infringement contentions.

[7]  The "Synopsys Logic Synthesis Product" is defined in Paragraph 18 of Synopsys' Amended Complaint For Declaratory Judgment as "Design Compiler® software, HDL Compiler™ for Verilog, VHDL Compiler® and DesignWare Foundation libraries . . ."

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

customer defendants are still totally in the dark with respect to how Ricoh reads any of the elements of the claims at issue on the Synopsys Logic Synthesis Product.[8] For example, Ricoh has never articulated in its Amended Preliminary Infringement Contentions, or elsewhere, where it finds an "expert system," "knowledge base" or a "set of cell selection rules" in the Synopsys Logic Synthesis Product.[9] As a result, Synopsys still finds itself in the compromised commercial position of not being able to clear the cloud over its most important product and to quickly establish that the ordinary use of the Synopsys Logic Synthesis Product does not infringe Ricoh's '432 patent.

Once Synopsys establishes that the ordinary use of its product does not infringe the '432 patent it will be relieved of any indemnity obligation to its customers and will be free of the cloud over its business.[10] If Ricoh fails to show that all of the non-input related claim elements[11] are present in the Synopsys Logic Synthesis Product, the customers would also be in a position to have their case

---

[8] Despite the fact that the Court entered a stay of discovery, in the interests of disposing of this case as soon as possible, Synopsys has made its source code for the Synopsys Logic Synthesis Products available to Ricoh's experts for 46 weeks. Synopsys did not merely turn over the source code in the manner in which it was kept, which it was entitled to do, but instead, at its own expense, wrote custom software for the source code produced to ensure that Ricoh's experts would be able to compile it. It took the equivalent of one full time engineer over 30 days to get the system up and running. In addition to the source code and custom software listed above, which is all Synopsys committed to provide, Synopsys also produced the source code for Presto, Physical Compiler, and Module Compiler, as well as the standard target technology libraries, link libraries, and symbol libraries. Therefore, all subsequent use of the term "Synopsys Logic Synthesis Product" in this statement will also include these items. Thus, even if the Court deems it appropriate to include these other Synopsys products in the customer suit, Ricoh has had nearly a year of access to the source code for these products as well. Recently, Ricoh requested that they be permitted to increase the number of experts with access to the source code from three to five and Synopsys readily agreed that they could do so. In addition to the source code, Synopsys produced the product manuals for the Synopsys Logic Synthesis Product.

[9] The descriptions provided in Ricoh's section of this Statement simply serve to demonstrate the inadequacy and vagueness of Ricoh's position. Ricoh simply repeatedly points at the grouping of the HDL Compiler, Design Compiler, and Synthesis Library components as fulfilling each claim element. These generalized contentions do not satisfy Ricoh's burden of showing where each claim element is found in the accused instrumentality.

[10] The Synopsys Logic Synthesis Product accepts only certain types of input. If the ordinary use of the Synopsys Logic Synthesis Product, including those specific input types, do not infringe, Synopsys is relieved of its indemnity obligations to its customers.

[11] Non-input related claim elements include for example: "expert system," "knowledge base," and the "selecting" step.

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

dismissed because the only accused instrumentality requires use of the Synopsys Logic Synthesis Product. In other words, Ricoh vaguely alleges that it is the customer defendants' input together with the Synopsys Logic Synthesis Product that infringes its '432 Patent claims. Since Ricoh must show that each element of its asserted claims are infringed, it is indisputable that if the non-input claim elements are not found in the Synopsys Logic Synthesis Product, then the customer defendants do not infringe regardless of the nature of their input.

Ricoh vaguely alleges that there are activities by the customer defendants that involve more than the "ordinary use" of Design Compiler. In fact, Ricoh incredibly states that the customer defendants have conceded that they are not doing what Synopsys calls "ordinary use." It is telling that Ricoh does not point to **anything** to support this completely false assertion, because there is simply no support for it either in the record or in fact. In fact, it is most probable that the customer defendants use the same forms of input to Design Compiler that the vast majority of Synopsys' customers use–Verilog and VHDL–and they may be willing to stipulate to that fact if Ricoh will identify those inputs as the ones that it believes infringe the '432 patent. If Ricoh is saying that the customer defendants' input of Verilog or VHDL infringes the '432 patent, then that is the "ordinary use" of Design Compiler, and trial of the Declaratory Judgment case should resolve both cases.

If Ricoh truly alleges that there is some other activity that the customer defendants do that involves more than the "ordinary use" of Design Compiler, neither Synopsys nor the customer defendants can adequately respond to this allegation since Ricoh has provided no specifics as to this "more than ordinary use." More than two years into this case, it is time for Ricoh to provide detailed contentions of what it believes the customer defendants do that infringes the '432 patent. If there actually is "more than ordinary use" of Design Compiler by the customer defendants that Ricoh can articulate, Synopsys and the customer defendants believe that the customer suit should be stayed pending the outcome of the Declaratory Judgment trial. Synopsys' Declaratory Judgment suit should proceed to trial with all due haste. Synopsys has set forth a time frame for the trial of the Declaratory Judgment case. The Customer Defendants have already agreed and reiterate here that they will be bound by any adjudication respecting the validity of the patents as well as any finding that the ordinary use of the Synopsys Logic Synthesis Product infringes the '432 patent. The trial of the declaratory

13

judgment case will therefore, either eliminate the need for a trial of the Customer case at all, or substantially narrow the issues for trial.[12]

Synopsys and the Customer Defendants identify below several key issues that they believe must be addressed in order to provide a proper framework for determining 1) whether the customer case should be stayed, 2) and if not stayed, whether the cases should be consolidated, 3) whether damages issues should be bifurcated, and 4) the proper scope of discovery in either case.

**Claim Construction Ruling.**  The Customer Defendants would like to renew their summary judgment motion of noninfringement of the '432 Patent under 35 U.S.C. Section 271(g).  In its claim construction ruling, the Court determined that the "computer aided design process" described in Claim 13 of the '432 Patent "does not include a manufacturing process for ASICs."  Resolution of this issue will narrow the issues in the case, eliminate parties, narrow the relevant discovery and enhance the potential for settlement which is frustrated at this moment by the parties' differing positions on whether the relevant economic measure for damages is the revenue on ASIC sales or merely software licensing fees.

Contrary to Ricoh's suggestion, the 271(g) motion will **not** require voluminous additional discovery from the customer defendants on the "proximate relationship" between the '432 patented invention and the ASICs produced.  All that will be required is expert opinion.  Ricoh is simply attempting to conduct yet another fishing expedition to collect damages-related information from the customer defendants.

If the Section 271(g) claims are eliminated from the case, the foreign defendants can move to be dismissed from the case and relevant discovery will exclude, among other things, any manufacturing processes, any design processes not taking place in the United States, and discovery related to the ASIC products themselves (except perhaps as it relates to damages, which relevance is also disputed by Synopsys and the Customer Defendants).

---

[12] With guidance from the Court, the customer defendants are willing to provide limited discovery sufficient to show the types of input they have used in connection with the Synopsys Logic Synthesis Product in designing ASICs.

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

1     **Final Infringement Contentions.** Ricoh has not served any Final Infringement Contentions.

2 Since the date provided for serving such final contentions has passed, pursuant to the Local Rules, Ricoh

3 would now be foreclosed from revising its infringement contentions absent a showing of good cause and

4 an order of the Court. Synopsys and the Customer Defendants served timely Final Invalidity

5 Contentions on May 31, 2005.

6      Ricoh asserts that it understood the Court's stay of discovery to include a suspension of

7 the parties' Local Rules obligations. This was never Synopsys' or the Customer Defendants'

8 understanding. There is no Court order or other statement of the Court at any hearing, of which

9 Synopsys and the Customer Defendants are aware, and Ricoh has pointed to none, that indicates a

10 suspension of the Local Rules requirements was contemplated. Moreover, Ricoh has blatantly

11 mischaracterized the conversation between counsel on April 21, 2005. Not only was there no agreement

12 that dates for presenting final contentions were suspended and needed to be set in the schedule, that

13 issue was never discussed at all. Rather, there was a query and a confirmation that the stay entered by

14 the Court was continuing until the status conference. The entire purpose of the call was to determine

15 whether the parties should jointly request that a status conference be scheduled. Ricoh's counsel never

16 raised the Local Rules or the final contentions at all and never informed Synopsys' counsel that Ricoh

17 understood the Local Rules obligations to be suspended as part of the stay. Ricoh's counsel certainly

18 never asked Synopsys' and the Customer Defendants' counsel to agree to suspend the Local Rules

19 obligations and, in any event, that is not something that Synopsys' and the Customer Defendants'

20 counsel understands can be done by agreement of the parties without approval from the Court.

21      Synopsys and the Customer Defendants have been prejudiced by Ricoh's failure to

22 provide adequate infringement contentions because it is those contentions which should provide the

23 framework within which the Court considers the issues of stay, consolidation and the scope of discovery

24 and their absence has had the effect of delaying the case yet again. Given that Ricoh has represented

25 that it was its belief that the Local Rules obligations were suspended, Synopsys and the Customer

26 Defendants urge the Court to set a deadline for the submission of Ricoh's Final Infringement

27 contentions as early as possible but in no event later than 30 days from the date of the Status

28

15

Conference.[13] Synopsys and the Customer Defendants should then have an additional 20 days to provide their Final Invalidity Contentions.[14] The court should set another status conference as soon as possible after submission of the parties' final contentions to address the schedule and other issues herein.[15] Once the Final Contentions are submitted, neither side should be able to amend absent a showing of good cause and order of the Court.

Synopsys requests that the court provide guidance with respect to the detail required for the final contentions. Ricoh's Preliminary Infringement Contentions were utterly inadequate. Defendants were forced to file a motion to seek more detailed infringement contentions. At two separate hearings on May 27 and June 16, 2004, and by order dated June 17, 2005, Judge Chen made clear that the amended preliminary infringement contentions were to include as much information as Ricoh currently knew about its infringement contentions, that they needed to provide information specific to each defendant on a product by product basis and that there needed to be an identification of where in each accused product they found each element of the asserted claims. Ricoh's last amended Preliminary Infringement Contentions did not provide that information. For example, Ricoh's Amended Preliminary Contentions did not specify what in the accused products constitutes:

- the "expert system knowledge base,"
- the "set of rules for selecting," or
- "architecture independent actions and conditions."

Rather, Ricoh stated identical contentions for each defendant stating "[defendant] infringes claim 13 by performing a process . . . in which [it] describes input specifications (using User Interfaces) and synthesizes such specifications using the combination of Design Compiler, HDL Compiler, and the Synthesis Libraries."

---

[13] The Local Rules provided Ricoh with 30 days after the claim construction ruling to submit its final contentions.

[14] The Local Rules provide the alleged infringer 50 days after the claim construction to submit its final contentions.

[15] The stay entered by the Court should remain in place until the final contentions of the parties are submitted and the Court holds the next status conference.

16

Ricoh is a Synopsys customer and has used the Design Compiler Product for approximately 17 years, so it should be very familiar with its functions, features and the types of input it will accept. Now, having the benefit of the Court's claim construction ruling, 34 weeks of access to the source code for the Synopsys Logic Synthesis Product, and many more weeks than that to review the product manuals, Ricoh's Final Infringement Contentions should set forth with specificity where it is alleging each element of each asserted claim is met in the accused products or combination of products, and specifically how it is reading the non-input claim elements on the Synopsys Logic Synthesis Product source code.

Synopsys and the Customer Defendants know that the Synopsys Logic Synthesis Product does not include the required elements. They believe the case is ripe for bringing summary judgment motions with respect to some of these terms as soon as possible to achieve an early disposition of this case. Synopsys would like to discuss at the status conference whether the Court will entertain summary judgment motions at this juncture.

**The Customer Defendants' Case Should Be Limited to Synopsys' Logic Synthesis Software.**
In Ricoh's portion of this statement entitled "Ricoh's claims against the ASIC Defendants," it twice makes reference to the fact that it believes this case is potentially about logic synthesis software provided by suppliers other than Synopsys. Ricoh states "In carrying out their infringement of the patented process, the ASIC Defendants use software supplied by Synopsys, *and perhaps other suppliers,* as part of their process in producing ASICs that they sell." Ricoh also states that "The ASIC Defendants are obligated to defend against Ricoh's infringement claims *without limitation to particular equipment they may employ* when so acting."

Synopsys and the Customer Defendants request that the Court limit the discovery and the issues to be tried in this case to the Customer Defendants' use of Synopsys' products. In other words, all non-input claim elements must be met by Synopsys' products, not the logic synthesis products of any of its competitors. At the outset of the case, when the Customer Defendants asked on what basis they had been sued, they were told that they were sued because they used Synopsys' Design Compiler product. Ricoh's Preliminary Infringement Contentions reference Synopsys' products only. It appears from discovery taken prior to the stay, that Ricoh's pre-filing "analysis" was limited to a review of the

capabilities of the Synopsys Design Compiler product and evidence that Ricoh believed indicated that each of the defendants utilize Design Compiler. No analysis of competing software tools was done, and there is no basis for the suggestion in Ricoh's description of the case that its scope ought to be expanded to include other software products beyond the Synopsys Logic Synthesis Product. The case has been pending for more than two years, the claim construction is in place, and all the parties have indicated that they do not intend to join any additional parties. Since the customers would not have source code for any logic synthesis software they use, and no other logic synthesis software suppliers are parties to this case, the discovery in this case and the issues to be tried should be limited to design in connection with the Synopsys Logic Synthesis Product.

**Source Code Production and Proposed Stipulations re Same.** Contrary to Ricoh's suggestion that there has been virtually no merits discovery for more than 13 months, Synopsys has made its source code (and custom software to ensure Ricoh's experts could compile the code) available now for over 46 weeks.[16] This produced source code includes each and every item requested by Ricoh herein: Design Compiler, HDL Compiler for Verilog, VHDL Compiler, Design Ware Foundation libraries (also known as Design Compiler Basic Library, DesignWare Building Block IP, and synthetic libraries), Presto, Physical Compiler, and Module Compiler.[17] In addition, Synopsys provided the standard target technology libraries, link libraries, and symbol libraries that are provided to customers, who usually replace them with their own.[18] Synopsys provided the source code for the Physical Compiler and Module Compiler which allowed Ricoh to review these products. During the source code discovery to

---

[16] Ricoh complains that it has only had "periodic access" to the source code. Yet, other than the time when a new machine had to be purchased and configured because of an unexpected system failure (which occurred on August 26, 2004, the day before the intial review period was due to expire, with Synopsys offering to procure an upgraded machine on August 31, 2004 – 5 days later, not the "several months" Ricoh has concocted), Ricoh has had continuous access to the source code for more than a year. However, Ricoh has not done **any** review of the source code since March 4, 2005, and does not plan to recommence its review until July 11, 2005, because of the purported unavailability of its expert.

[17] Synopsys does not have a product called Design Ware Expert Libraries, and therefore did not provide it.

[18] Design libraries may be created automatically during an intermediate step as part of the input process. Therefore, Synopsys has no such libraries to provide, though Ricoh can generate them if it wishes.

18

date, Ricoh never requested a license key to run the Physical Compiler or Module Compiler products included with the production and one was not originally provided. Synopsys is willing to install license keys for those products—additionally Synopsys can install sample scripts and physical libraries not normally shipped to customers to aid in running Physical Compiler—prior to Ricoh's recommencement of its source code review on July 11, 2005.

Synopsys made two versions of the code available: 1) the earliest version of the code that it had in its possession (version 2.0 from the period around 1990 or 1991) and the most recent version of the code that it had at the time it began the production (version 2003.12). Synopsys provided Ricoh with a printer and 5000 sheets of paper so that it could print any portions of the code it wished. Synopsys also indicated that it would provide the history on any particular portions or modules of the code that Ricoh requested. Ricoh made no such requests. Furthermore, Synopsys offered to answer any questions that Ricoh had about the code, if they provided them in writing. Ricoh did not submit any such questions. In addition to the source code, Synopsys has also produced the product User Manuals.[19]

Ricoh asserts herein that Synopsys has not provided all of the source code for the products identified in its preliminary infringement charts. It is unclear what Ricoh means by "all of the source code." If Ricoh is not referring to the source code for the products that Synopsys has already provided, as addressed above, perhaps Ricoh is referring to the different releases of the software. Since 1997,[20] on average there have been at least two major releases of the Synopsys Logic Synthesis Product per year and several more minor releases. At a minimum, there were at least 18 major releases of the Synopsys Logic Synthesis Product during the potential damage period. Since it takes approximately 30 days on the part of a full time equivalent engineer to provide each buildable version of the software, it is not practicable or reasonable to expect that Synopsys will produce source code for every major release of the product from 1997 to the present. It is also unimaginable how long the trial would take or the

---

[19] In order to comply with Ricoh's request, Synopsys produced the 2002.05 version of the User Manuals, which were the current manuals at the time of production. During the meet and confer regarding this Joint Statement, Synopsys' counsel agreed to produce the 2003.12 version of the manuals as well.

[20] This assumes that Ricoh can claim damages for 6 years prior to the filing of its suit against the Customer Defendants in February 2003.

19

verdict forms would have to be if Ricoh is required to prove infringement of every major release of the Synopsys Logic Synthesis Product, let alone if the minor releases are also considered. In order to narrow the issues for trial and the scope of discovery, Synopsys and the Customer Defendants propose that they enter a stipulation that the infringement liability for the entire damage period be based upon the 2003.12 source code release.[21]

**Synopsys Supports Consolidation of the Liability Cases if Ricoh Agrees that its Infringement Allegations are Based Upon Verilog or VHDL Input and No Third Party Products are Included.** The customer defendants are willing to investigate entering into a stipulation that they provide input to Design Compiler in the form of Verilog or VHDL descriptions, as do the vast majority of Synopsys' customers, if Ricoh will agree that this is the form of input it believes infringes the '432 patent, and will also agree that it will not pursue any infringement theories that include a non-Synopsys synthesis software (i.e., any third party software that performs similar or the same functions to Design Compiler). In that case, Synopsys supports consolidation of the liability phase of the cases, with the much simplified discovery it would entail.[22] However, if Ricoh continues to allege that the customer defendants do more than the "ordinary use" of Design Compiler or that infringement may be based upon the use of software other than Design Compiler, Synopsys is opposed to consolidation. Synopsys wants and is entitled to the earliest possible adjudication of whether the ordinary use of the Synopsys Logic Synthesis Product infringes. If it does not, Synopsys will be free of the cloud confronting its business, free of its indemnity obligations to the Customer Defendants and to all of its customers with respect to infringement allegations by Ricoh. To the extent any issues remain, Synopsys will withdraw from its involvement in and control of the Customer Defendants suit.

Although there is identity of the patent claims at issue in the two suits, they may not be

---

[21] Synopsys acknowledges that the oldest version of the source code produced (version 2.0) has segments that no longer exist in the source code and did not exist in the 2003.12 release version. That is why Synopsys communicated that it would provide the history with respect to specific segments or modules of the code at Ricoh's request, but no such requests have been made.

[22] Synopsys and the customer defendants believe that the liability phase of the cases could be consolidated under these circumstances. However, as discussed in more detail below, Synopsys and the customer defendants suggest that the trial is bifurcated into separate liability and damages phases.

20

coextensive in a number of other respects.  First, although it has never identified anything other than the ordinary use of Design Compiler, in its description of the case, Ricoh contends "the activities that infringe certain of the process claims of the '432 patent involve more than the 'ordinary use' of a Synopsys product called Design Compiler."  Second, as stated above, as of yet, it is not clear that the Customer Defendants' case is limited to the Synopsys product as opposed to including also logic synthesis products of its competitors.  Third, given the ambiguities of Ricoh's preliminary infringement contentions it is theoretically possible that Ricoh is focused on something that the Customer Defendants do in providing input, for example using an additional software product or graphical user interface, that would translate a flowchart into an RTL specification that could then be input into Design Compiler.[23]

If the Court consolidates the two cases, Synopsys believes that the Court should bifurcate the issues of liability and damages.[24]  While the question of liability does involve some issues that are common to each of the defendants in Ricoh's case against the customers, and to the declaratory judgment Synopsys seeks, the question of damages is complicated, does not involve Synopsys, and should be reserved for a separate trial.  The question of damages is complicated and particular to each of the Defendants, and, will require specific inquiry into each product alleged to have been designed using the infringing process.  Ricoh contends that it is entitled to a portion of the revenue stream from each such product.  The Customer Defendants expect to contend that the ASIC products designed using the allegedly infringing process could have been designed using non-infringing alternative techniques and that Ricoh's recovery must, therefore, be limited to the difference in cost of the two design techniques.  Proving or disproving each of these damages theories will require delving into the particulars of each design alleged to have been produced by the infringing method, and will be quite time consuming.

---

[23] This last point would be obviated if Ricoh would unambiguously state that its infringement theory is related to the input of Verilog or VHDL descriptions by the Customer Defendants to Design Compiler.

[24] The Customer Defendants request that with the exception of limited discovery sufficient to show the types of input the customers have used in conjunction with Synopsys' product when designing ASICs, the damages discovery should be stayed.

21

**2. Principal factual and legal issues in dispute.**

### a. Ricoh's Description

*Ricoh's statement of disputed factual issues:*

a.      Whether the ASIC Defendants, or someone on their behalf, practice the process disclosed in the '432 patent.

b.      Whether the ASIC Defendants infringe the '432 patent.

c.      The amount of damages to be awarded to Ricoh.

d.      Whether the ASIC Defendants acted willfully in infringing the '432 patent.

*Ricoh's statement of disputed legal issues:*

e.      Whether ASIC Defendants can prove by clear and convincing evidence that the '432 patent is not valid.

f.      Whether the ASIC Defendants can prove their affirmative defenses of estoppel and laches that would preclude Ricoh from enforcing its '432 patent against them, or limit Ricoh's right to damages.

### b. Description of Synopsys and the ASIC Defendants

Defendants agree that the issues identified in b – f are presented in this case. Additional factual issues are in dispute:

g.      Whether the '432 patent is invalid.

h.      Whether Ricoh is barred, under a theory of laches or estoppel, from enforcing its '432 patent against some or all of the allegedly infringing activities.

i.      Whether the actions that Ricoh identifies as the basis of its infringement allegations are anything other than ordinary steps involved in use of the Synopsys Logic Synthesis Product, and whether that ordinary use of the Synopsys Logic synthesis Product infringes the '432 patent.

j.      Whether this action should be stayed pending resolution of the *Synopsys, Inc. v. Ricoh Company, Ltd.* Declaratory Judgment action.

Additionally, the following legal issue is presented in this case:

k.      Whether the design activities claimed in the asserted method claims of Ricoh's '432 patent can serve as the basis of an allegation of infringement under 35 U.S.C. § 271(g).

**3. The other factual issues which remain unresolved:**

    **a. Ricoh's Description**

Ricoh believes that the principal issues are set forth above in Ricoh's description.

    **b. Description of Synopsys and the ASIC Defendants**

Synopsys and the Customer Defendants believe that there are none.

    **4. Parties which have not been served:**

None.

On April 6, 2004, this Court granted Ricoh's motion to amend its Complaint to, *inter alia*, add as a party Aeroflex Colorado, and counsel for Aeroflex agreed to accept service for all Defendants on April 12, 2004. The Amended Complaint was filed and served on April 12, 2004.

    **5. The additional parties which the parties intend to join and the intended time frame for such joinder:**

None.

    **6. The following parties consent to assignment of this case to the United States Magistrate Judge for trial:**

Neither party consents to assignment to a Magistrate Judge for trial.

**ALTERNATIVE DISPUTE RESOLUTION**

    **7. The parties have not filed a Stipulation and Proposed Order Selecting an ADR process and the ADR process to which the parties jointly (or separately) request referral:**

    **a. Ricoh's Position**

During the pendency of this litigation, Ricoh and Synopsys have occasionally discussed settlement of Ricoh's infringement claims against the ASIC Defendants, but the ASIC Defendants have not engaged in any negotiations with Ricoh. As noted above, in July 2004, all of the parties were able to enter into a stipulation to narrow the scope of Synopsys' declaratory judgment claims to be congruent with Ricoh's theory that the ASIC Defendants are infringing claims 13-17 of the '432 patent. Ricoh has invited the ASIC Defendants to negotiate with respect to a license, but the ASIC Defendants have refused. Ricoh is willing to enter into ADR with the ASIC Defendants. Ricoh is also willing to have

Synopsys participate in such an ADR. Ricoh believes that conducting an ADR at this time may be fruitful since the Court recently has issued its claim construction ruling. Ricoh would prefer either having a settlement conference with the Court (Judge Jenkins), or if the Court is unavailable, then a mediation by a knowledgeable patent attorney, who also may be qualified to serve as an early neutral evaluator.

### b.  Description of Synopsys and the ASIC Defendants

The Customer Defendants do not believe that there is any purpose to settlement negotiations between them and Ricoh. Settlement of this case is most likely if there is a global settlement negotiated between Ricoh and Synopsys. Synopsys disputes the fact as stated by Ricoh that "the parties have occasionally discussed settlement, but have not engaged in negotiations." To the contrary, at Synopsys' urging there have been a total of four settlement meetings between Synopsys and Ricoh, three in Tokyo and one in San Francisco. The second meeting resulted in the significant narrowing of the case and amended pleadings that took place in July 2004. At the third and fourth meetings, Synopsys made specific cash and non-cash offers of settlement, but the parties were unable to agree. Following the receipt of the Court's claim construction ruling, by letter dated April 24, 2005, Synopsys made another offer of settlement, which was rejected by Ricoh in a letter dated May 2, 2005. Ricoh's response made it obvious that the parties are still at an impasse.

Until Ricoh provides its Final Infringement Contentions and details at a minimum how it is reading the non-input claim elements of its asserted claims on the Synopsys Logic Synthesis Product source code, the Customer Defendants and Synopsys do not believe that an ADR procedure will be productive. Once such contentions have been provided, Synopsys and the Customer Defendants request referral to the Court's ENE ADR process, preferably with a knowledgeable patent attorney.

### DISCLOSURES

**8.  The parties certify that they have made the following disclosures:**

### a.  Ricoh's Position

In May 2003, Ricoh served its initial disclosures in the Delaware action and produced documents identified therein.

The ASIC Defendants also served an initial disclosure in May 2003, later admitted that the disclosure was "inartfully drafted," and after Ricoh filed a motion to compel, the ASIC Defendants belatedly amended their disclosure in January 2004. The ASIC Defendants have refused to adequately identify many of the individuals in the disclosure, and Ricoh has been unable to locate or contact approximately ten of the individuals listed.

With respect to document production, Ricoh believes that the ASIC Defendants have still not produced all of the documents identified by the categories of their initial disclosures.

### b. Position of Synopsys and the ASIC Defendants

The Defendants served an initial disclosure statement on May 30, 2003, and an amended version of their initial disclosure statement on January 20, 2004. Defendants have produced documents described in their amended initial disclosure statement, including prior art that they believe demonstrates the invalidity of the patent and manuals describing Synopsys' Design Compiler product that demonstrate that Design Compiler does not practice Ricoh's patents.

### DISCOVERY

**9. The parties have presented the following discovery plans:**

On March 24, 2004, Magistrate Judge Chen ordered that parties to submit a discovery plan by no later than April 23, 2004. A copy of Ricoh's discovery plan is attached as Exhibit 1, and a copy of the Defendants' discovery plan is attached as Exhibit 2. These discovery plans summarize the discovery disputes immediately before the stay of discovery on May 4, 2004.

### a. Ricoh's Position. [25]

In 2003, Synopsys threatened Ricoh that, if Ricoh continued to press its patent claims against the ASIC Defendants, Synopsys would order its counsel (who also represent the ASIC Defendants) to fight on every issue and make the litigation as expensive as possible. Synopsys specifically stated that it would not produce evidence until ordered to do so by the Court. Before discovery was stayed in May

---

[25] Ricoh's comments do not address the responsiveness of Aeroflex Colorado Springs as it was added shortly before the discovery stay went into effect.

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

2004, Synopsys followed through on that threat. The Court's irritation at such tactics was noted during the hearing on April 6, 2004.

Attempting to manage the refusal by Synopsys and the ASIC Defendants to participate in discovery, in April 2004, Magistrate Judge Chen required that the parties submit a discovery plan. Each of the parties submitted their discovery plans on April 23, 2004, and they are attached as Exhibits 1 and 2. During the June 2, 2005 conference between counsel, Ricoh attempted to discuss and resolve these discovery issues, but counsel for the ASIC Defendants and Synopsys declined to discuss any of these discovery issues. Thus, the ASIC Defendants and Synopsys are still refusing to comply with their obligations and provide discovery (document, source code, etc.) and to make matters worse, propose an abnormally early October 2005 fact discovery cut-off date. Ricoh believes that a prompt resolution of these discovery issues is essential to meeting the aggressive discovery schedule proposed by the parties.

**Areas of agreement.** As set forth in the discovery plan submitted by Synopsys and the ASIC Defendants on April 23, 2004 (and attached as Exhibit 2), the parties had substantial areas of agreement regarding the production of documents and a process for scheduling depositions. The Court should use those areas of agreement as a starting point. Ricoh requests that Synopsys and the ASIC Defendants immediately complete their production of documents by June 30, 2005, and proceed with depositions on Ricoh's long-standing Rule 30(b)(6) notices in August through November.

Ricoh's proposed schedule is based upon the assumption that discovery will be cooperative. The Court should strongly advise counsel that it will not tolerate the prolonged delays, gamesmanship and incessant motions practice that marked the first stage of discovery.

**Areas of disagreement.** Although Synopsys and the ASIC Defendants concede that discovery should be reopened, at least on a limited basis (*see, e.g.,* footnote 12), it opposes a general reopening of discovery on the merits. Ricoh believes that the Court should reject out of hand the efforts of Synopsys and the ASIC Defendants to impose a series of additional stays on discovery, and should instead put this case on a path for trial on all issues.

With respect to the difference in the parties' April 2004 discovery plans, the following is a summary of Ricoh's understanding of the discovery disputes as they were frozen in time in May 2004:

Case Nos. C-03-04669 MJJ (EMC) and C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

**(i)**     **Production of Documents**

**(a) General Production of Documents**

The parties had agreed in principle that all non-privileged documents (other than e-mails) required to be produced pursuant to Rule 26(a) or responsive to document requests should be produced by no later than April 30, 2004.

There are no disputed issues with respect to the scope of Ricoh's document production.

The ASIC Defendants and Synopsys failed to produce all of their documents by April 30, 2004.  The documents that they have refused to produce generally fall into the following categories, each of which have been the subject of numerous letters and meet and confer sessions:

(1) Documents in the possession of ASIC Defendants Matrox Graphics and Matrox Electronics relating to the design and manufacture of ASICs.  These had defendants contended that they should not be obligated to produce such documents unless and until the Court denied their Rule 12(c) motion for judgment on the pleadings, which the Court denied by Order on April 22, 2004.  Nevertheless, at a meet and confer on April 23, 2004, counsel for the ASIC Defendants refused to commit to withdraw this objection and produce the relevant and responsive documents that they are withholding.  No further justification for the withholding of these documents has ever been identified.

(2) Synopsys and the ASIC Defendants have limited the scope of their document production to what they call "Design Compiler products."  Ricoh's preliminary infringement contentions specifically name additional Synopsys software products that Ricoh contends the ASIC Defendants employ while those defendants practice the process described in the '432 patent.  Ricoh contends that Synopsys and the ASIC Defendants should provide discovery with respect to all of the products listed in Ricoh's preliminary infringement contentions, but Synopsys and the ASIC Defendants have refused.[26]

---

[26] Synopsys has made similar objections and limitations in its interrogatory responses.  Ricoh believes that the resolution of this issue as it relates to the document production should be equally applicable to the interrogatory responses.  The afternoon this CMC was to be filed, Synopsys advised Ricoh that Synopsys may be willing to provide Ricoh access to the "keys" to some but not all of the additional products at issue.  Although Synopsys has not identified which versions or the other limitations to this offer, the fact that the offer was made after more than a year and a half after Ricoh first requested this code, shows some progress.  It also illustrates why additional discovery is needed, because Synopsys and the ASIC Defendants have yet to produce the underlying manuals, user documents, design

27

The differences are set forth in the following table:

| Ricoh Contention re Products at Issue | Synopsys Contention re Products at Issue |
|---|---|
| Design Compiler[27] | Design Compiler |
| HDL Compiler for Verilog | HDL Compiler for Verilog |
| VHDL Compiler | VHDL Compiler |
| Design Ware Foundation libraries | Design Ware Foundation libraries |
| Presto | |
| Physical Compiler | |
| Module Compiler | |
| Design Compiler Basic Library[28] | |
| DesignWare Expert Libraries | |
| DesignWare Building Block IP | |
| target technology libraries | |
| Design libraries | |
| link libraries | |
| symbol libraries | |
| synthetic libraries | |

(3) The ASIC Defendants have refused to provide documents with respect to any RTL inputs (see earlier question), logic synthesis methods or products other than the Synopsys Design Compiler products. Ricoh contends that it has placed at issue the ASIC Defendants' infringement of the '432 patent without limiting the infringement claim to the use of Design Compiler.

(4) The ASIC Defendants have not identified the ASICs they have actually designed and manufactured using either Synopsys products or otherwise. At one point in early 2004, they said that there were 63 separate ASICs that allegedly were designed and manufactured with Synopsys' Design Compiler products; however, only a few of those ASICs have been actually identified to Ricoh. Ricoh suspects that the number has increased in the past year.

(5) The ASIC Defendants' objections to the discovery requests are unreasonable. For example, they object to the definitions of the terms "ASIC Design," "ASIC Product", and "ASIC Method" as vague, overly broad, unduly burdensome and not reasonably calculated to lead to the

---

documents and the details of the actual use by the ASIC Defendants .

[27] This term includes all variations of Design Compiler, including DC Ultra, DC Ultra Opt, DC Expert, DC Expert Plus, and DC Pro.

[28] This component is also known as the "Standard Library."

28

discovery of admissible information, and incorporate the objection by reference into every response they make.  However, counsel for all parties had agreed that the terms "ASIC Design," "ASIC Product", and "ASIC Method" were limited to methods and products made by a process involving computer assisted design with logic synthesis.  The ASIC Defendants have said that their production of documents are "subject to" these objections, without disclosing whether they are actually withholding documents based upon these and other objections.

(6) The parties cannot agree on when discovery with respect to sales and damages should commence.  Ricoh requests that the ASIC Defendants produce the requested sales and financial documents by July 15, 2005.

(7) Aeroflex has produced a number of CD's that Ricoh cannot read or access.

### (b) Production of Synopsys' source code

Synopsys has produced some of its source code for occasional periods at a secure Synopsys facility.  However, Synopsys has refused to produce the source code for all of the products listed in Ricoh's preliminary infringement contentions and alleged by Ricoh as being employed by the ASIC Defendants in carrying out the infringing process.  As noted in footnote 26, the afternoon this CMC was to be filed, Synopsys proposed to provide Ricoh with the "keys" to have access to additional source code.  Until Ricoh's experts are able to determine the versions of that code and actually evaluate it, Ricoh cannot determine the scope of this offer.  However, there are still additional version of code that Synopsys and the ASIC Defendants have never produced.  In addition, Ricoh requested, and on June 3, 2005, Synopsys agreed, that the number of experts permitted to review Synopsys' source code be increased from three to five.

### (c) Production of documents pursuant to Rule 33(d)

As of May 2004, the parties were at an impasse with respect to the ASIC Defendants' production of documents pursuant to Fed. R. Civ. P. 33(d).  On May 30, 2003, Ricoh served 10 interrogatories upon the ASIC Defendants.  In response, the ASIC Defendants objected but often generally promised to produce documents pursuant to Rule 33(d).  However, none of the ASIC Defendants specifically identified those documents by either title or bates number, and Ricoh believes that in most instances no responsive documents have been produced.

29

**(d) Production of emails**

The parties had agreed that production of e-mails should be completed by no later than May 31, 2004, but no emails were ever produced. Ricoh believes that these documents should be produced by no later than July 15, 2005. There may be unresolved issues with respect to other forms of electronic discovery.

**(e) Production of privilege logs**

In 2004, the parties were at an impasse with respect to the date for production of privilege logs. Ricoh proposes that privilege logs be exchanged by July 15, 2005.

In April 2004, the parties were also at an impasse with respect to Ricoh's proposal that communications between Ricoh and its trial counsel not be logged. Ricoh believes that there is no purpose in providing a log of those communications, which relate both to Ricoh's pre-filing investigation as well as its preparation and filing of the complaint. In 2004, Synopsys and the ASIC Defendants insisted that all pre-filing communications between Ricoh and its trial counsel be logged. Ricoh believes that there remains an outstanding issue with respect to communications between Synopsys and the ASIC defendants, which have not been produced or logged.

**(f) Resolution of document discovery issues**

The parties were unable to agree on a schedule or a process for resolving their document discovery disputes. Ricoh proposes that, consistent with Magistrate Judge Chen's directives, the parties work together, with the Court's assistance as appropriate, to resolve all objections with respect to documents that the parties are seeking pursuant to the currently outstanding discovery requests, by no later than June 30, 2005, and produce by July 15, 2005 all documents that have been the subject of objections but that have not specifically been ordered by the Court not to be produced.

**(ii)     Responses to Requests for Admission**

Ricoh has responded to all outstanding requests for admissions, and Ricoh is not aware of any outstanding issues with respect to its responses.

In 2004, the parties were at an impasse, however, with respect to the ASIC Defendants' responses. For example:

(1) The ASIC Defendants have objected to and limited their responses to many of the

requests. Some of the requests include objections over issues that that have been resolved. For example, requests 9-19 related to whether the ASIC Defendants performs certain actions relating to chip design. The ASIC Defendants have objected to the term "ASIC method as being incomprehensible…so broad as to be meaningless" in the objections to these requests. This objection is made even though the parties had previously come to an understanding regarding certain terms, including the term "ASIC method."

(2) The ASIC Defendants have objected to Requests 9-19 as calling for a claim interpretation and a question of law, when in fact it calls for a question of fact. For example, Request No. 17 seeks an admission of whether the "Defendant performs an ASIC Method that includes generating from a netlist mask data required to produce an integrated circuit having a desired function." No substantive responses have been provided.

(3) Some of the Matrox defendants should amend their responses to Request No. 20, which asks whether "The Court has personal jurisdiction over defendant." Matrox Tech has denied that the court (at the time of the response, a Delaware District Court presided over this case) had personal jurisdiction. However by their own admission, Matrox Tech is a company organized under the laws of Delaware. All defendants acceded the personal jurisdiction of this Court as part of the desire to have this case transferred from Delaware to California. Therefore, if true, the Matrox defendants should supplement their response to Request 20 and remove this lingering issue.

### (iii)     Rule 30(b)(6) depositions

#### (a) Rule 30(b)(6) discovery of Ricoh

There are no outstanding issues with respect to Ricoh's Rule 30(b)(6) witnesses. Ricoh has responded to every Rule 30(b)(6) deposition notice from either Synopsys or the ASIC Defendants. On July 15, 2003, Ricoh produced a corporate witness in response to the ASIC Defendants' Rule 30(b)(6) notice. During the week of May 30, 2004, Ricoh produced additional corporate designees for depositions in Japan.

#### (b) Ricoh's Rule 30(b)(6) notices to the ASIC Defendants

The parties were at an impasse with respect to scheduling and taking the corporate depositions of the ASIC Defendants pursuant to Ricoh's September 25, 2003 Rule 30(b)(6) notices. The

31

ASIC Defendants have stated that they may produce twenty (20) or more different corporate designees in response to Ricoh's long-pending Rule 30(b)(6) notices. Ricoh requests that all Rule 30(b)(6) depositions of the ASIC Defendants be completed within three months of the completion of their document production, so follow-up individual depositions may be completed in time for the expert reports.

During the hearing on March 24, 2004, Magistrate Judge Chen instructed the parties to identify actual deposition dates "at least by category if not by witness." The burden is on the ASIC Defendants to identify those dates. They refused to do so.

In particular, on September 25, 2003, Ricoh served identical Rule 30(b)(6) notices upon each of the ASIC Defendants as parties in the *Ricoh v. Aeroflex* litigation. None of the ASIC Defendants ever have proffered *any* dates for *any* of the 30(b)(6) topics.

Ricoh proposes that the ASIC Defendants identify by June 30, 2005 the names of all corporate witnesses, and that the parties cooperate in scheduling the depositions of those witnesses starting in August, after the document production has been accomplished, with completion of the depositions in October. Requiring the ASIC Defendants to identify witnesses, topics and deposition dates is consistent with this Court's instructions during the March 24, 2004 hearing and this Court's Standing Order, and is the most effective way to schedule and complete these corporate depositions.

### (c) Ricoh's Rule 30(b)(6) notices to Synopsys

Ricoh has pending a Rule 30(b)(6) deposition notice to Synopsys that has yet to be scheduled. The parties agree that document discovery should be resolved prior to going forward with depositions.

### (iv) Fact Depositions

In addition to taking Rule 30(b)(6) depositions, Synopsys and the ASIC Defendants have already taken several other depositions, including Dr. James Davis, Mr. Brian Bershader, Dr. Tom Rhyne, Mr. Yamada, and Dr. Kobayashi. Some of these witnesses also were corporate designees of Ricoh.

Ricoh proposes that the parties cooperate in scheduling other fact depositions starting in August (after document production is completed) to the end of fact discovery at locations that are convenient for the witnesses and mutually agreeable to the parties.

### (v)   Total Deposition Time

With respect to the number of hours for deposition, counsel for all of the parties had agreed before the ASIC Defendants case was transferred from Delaware, that each side would have 240 hours of deposition testimony from fact witnesses.  Ricoh has to take depositions of seven ASIC Defendants plus Synopsys, while they have only one opposing party to depose.  Ricoh believes that such a modification of the Federal Rules of Civil Procedure is useful here, and there is no reason to deviate from this prior agreement of counsel. There is no question that additional deposition time is needed; since this agreement was established, the ASIC Defendants have identified over thirty (30) people who have relevant factual information in their initial disclosure; another party has been added (Aeroflex Colorado Springs, Inc.); and the ASIC Defendants have indicated that they may produce as many as twenty (20) corporate witnesses in response to Ricoh's Rule 30(b)(6) deposition notice to each defendant. Despite the additional party and many witnesses, Ricoh is willing to abide by the prior agreement of counsel.

With respect to Synopsys' proposal that depositions needing translations "should be treated as 30 minutes against this time limit," Ricoh notes that, in Delaware, the 240 hours of total deposition time was arrived at as a compromise.  Then, as now, counsel for Synopsys was proposing 160 hours of total deposition time per side, but also that each hour of depositions of non-English speaking witnesses be counted as only 30 minutes against the total.  Ricoh pointed out that this proposal would effectively give the other side almost double the amount of deposition time as Ricoh, as most of Ricoh's witnesses are native Japanese speakers.  Rather than adopting the 30 minute proposal, the 240 hour figure was accepted as a compromise.  Ricoh does not agree that the depositions of non-English speaking witnesses should effectively last two days each as a matter of right, but, as the parties have agreed with respect to any witness, Ricoh willing to consider requests for more than a full deposition day of non-English speaking witnesses on a case-by-case basis.

**b. Position of Synopsys and the ASIC Defendants**

Ricoh's description of the case and its discovery statement above include multiple unjustified and inaccurate assertions that Synopsys and the Customer Defendants have refused to participate in discovery which Synopsys and the Customer Defendants dispute but will not address here. The fact is that Synopsys and the Customer defendants see Ricoh as wanting to engage in a wide-ranging fishing expedition at their expense all without ever defining in any meaningful sense what this case is about. Synopsys and the Customer Defendants are looking to the Court to assist the parties in framing the case and thereby defining the relevant discovery before discovery is reopened so that the discovery process can move forward in a reasonable and expeditious manner. As stated above, given the Court's claim construction ruling and depending upon the Court's view of some of the issues presented herein, Synopsys and the Customer Defendants do not believe that discovery regarding manufacturing processes, any design processes not taking place in the United States, any discovery related to design using logic synthesis software other than that of Synopsys, and discovery related to the ASICs products themselves (except perhaps as it relates to damages, which relevance is also disputed by Synopsys and the Customer Defendants) is relevant. Once the parties have provided their final contentions and the Court has provided guidance with respect to the issues raised herein, the parties should exchange revised discovery plans.

In addition, the Defendants believe that a modification of the deposition time is appropriate in this matter, and believe that a total of 160 hours of deposition time is ample modification from the limits on deposition testimony set in the Federal Rules of Civil Procedure to obtain the discovery necessary in this litigation. Also, because many of Ricoh's witnesses will likely require a translator, each hour of deposition testimony requiring translation should be treated as 30 minutes against this time limit. Furthermore, since the parties have stipulated that testimony taken in this action will be admissible in *Synopsys, Inc. v. Ricoh Company, Ltd.*, Case No. CV 03-02289 MJJ (EMC), and vice versa, the total time for deposition testimony in the two actions combined should not exceed this limit. The Defendants are not advocating that the Court give Synopsys 160 hours and grant them an additional 160 hours.

### PROPOSED SCHEDULE

**10. A proposed schedule is provided below**

#### a. Ricoh's Position

Ricoh asserted an infringement claim with respect to the '432 patent, and agrees that it should be treated as the party claiming infringement of that patent. In July 2004, the parties harmonized the matters in dispute in the two cases, so the declaratory judgment counterclaims in *Ricoh v. Synopsys* are identical in scope with the declaratory judgment claims in *Synopsys v. Ricoh*. The two actions should be consolidated and Ricoh should be treated as the plaintiff.

Because all discovery has been stayed by the Court and will remain stayed until this Court lifts the stay, Ricoh submits that the calculation of dates under the Patent Local Rules based on the date of the Claim Construction Ruling ("CCR") is not appropriate. The Patent Local Rules contemplate that all fact discovery will proceed during the claim construction process but in this case, the Court directed that discovery should be "focused" on claim construction issues in December 2003, and in May 2004, the Court imposed an absolute discovery stay on all issues of liability and damages. Absent such a stay, Ricoh would have had the benefit of at least 13 months of discovery to this point.

Ricoh's proposed schedule allots six months for merits discovery prior to the exchange of final infringement contentions and expert reports. This is an aggressive schedule that depends upon Synopsys and the ASIC Defendants cooperatively engaging in discovery, and avoiding the type of conduct condemned by the Court on April 6, 2004. The proposed schedule obligates the ASIC Defendants and Synopsys to promptly produce all documents that should have been produced pursuant to the May 2003 initial disclosures (suitably updated), as well as all documents responsive to Ricoh's discovery requests, and then establishes subsequent dates based upon that date. The dates proposed below are based on the latter proposal and assume the stay will be lifted the day after the June 14, 2005 status hearing and that the ASIC Defendants and Synopsys produce all initial disclosure documents, documents responsive to Ricoh's discovery requests, and the source code for the identified products by the end of June, 2005.

Synopsys and the ASIC Defendants proposed schedule reinforces their inappropriate insistence that Synopsys's later filed declaratory judgment action should somehow take priority over Ricoh's first filed patent infringement action. This prejudice inculcates every aspect of their proposal, and illuminates their desire to litigate incrementally each of the substantive patent infringement issues. Synopsys' schedule also reinforces its attempt to exclusively and impermissively focus the litigation to matters that Synopsys want to litigate, which are only a biased subset of issues in Ricoh's infringement lawsuit.

Disregarding Ricoh's interest in resolving both the patent infringement and declaratory lawsuits, Synopsys has provided a schedule for resolution of its declaratory judgment lawsuit, but has not provided a similar schedule for the ASIC defendants in the patent infringement lawsuit. Instead, Synopsys desires to waste the Court's resources by first attempting to resolve a limited number of the pending issues of the patent infringement suit. Then when the first "segment" of the lawsuit is completed, Synopsys and the ASIC defendants urge that the Court and parties repeat the case scheduling process by submitting new discovery plans and holding an additional case management conference. Not only does this perpetually delay Ricoh's infringement claims, but this attempt to piecemeal the issues is intended to prevent Ricoh from ever obtaining an injunction against the actual infringers. The ASIC defendants do not even provide a proposed case management schedule, but instead suggest that any schedule is dependant upon the resolution of the later filed declaratory judgment lawsuit and want guidance from the court and how to proceed. The suggestion that Synopsys has the supreme privilege of the earliest possible adjudication is inconsistent with the first rule of the Federal Rules of Civil Procedure to "secure a just, speedy and inexpensive determination of every action."

Synopsys has indicated is agreeable to a shortened discover period (until October 2005), but has not agreed to provide *any* of the requested discovery by that date. Throughout this litigation, Synopsys has unilaterally defined what information it will provide (which is narrower than the issues in Ricoh's lawsuit). Of the information that Synopsys has agreed to produce, it has done so at its own pace and response information is still outstanding. Now, Synopsys seeks an accelerated case management schedule which will mostly likely result in Ricoh not receiving all of the information it is rightfully

1    entitled to receive during the discovery time period with a reasonable time to analyze the information

2    and have the opportunity to follow up on an issue that arise from the information.

### b.  Position of Synopsys and the ASIC Defendants

4        If the customer suit is not limited to Verilog and VHDL inputs, Synopsys and the Customer

5    Defendants seek a stay of the action against the Customer Defendants to allow the underlying dispute to

6    be resolved in the *Synopsys, Inc. v. Ricoh Company*, *Ltd*. declaratory judgment action.  As stated above,

7    once Synopsys establishes that the ordinary use of the Synopsys Logic Synthesis Product does not

8    infringe the '432 patent, the case against the Customer Defendants should be resolved as well.  Since

9    Ricoh must show that each element of its asserted claims are infringed, it is indisputable that if the non-

10   input claim elements are not found in the Synopsys Logic Synthesis Product, then the customer

11   defendants do not infringe regardless of the nature of their input.

12       Synopsys has set forth a time frame for the trial of the Declaratory Judgment case alone or the

13   consolidated liability trial based upon VHDL and Verilog inputs.  If the customer case is not so limited

14   and the request for a stay is denied, Defendants believe that trial of the suit against the Customer

15   Defendants should be bifurcated, into separate trials on liability and damages (which would include the

16   question of whether infringement was willful or not) for the reasons stated above.  Synopsys also

17   opposes consolidation of the cases.  Synopsys and the Customer Defendants do not believe they can

18   submit a schedule for the Customer Defendants' case at this time since any such schedule is dependent

19   upon the resolution of the many issues presented herein.  If Ricoh is permitted the unreasonable, wide-

20   ranging discovery it seeks, Ricoh's proposed discovery cut-off is unworkable as there will be at least

21   three months of document discovery before depositions start and will 240 hours of depositions for each

22   side, seventy days of deposition thereafter.  Once the parties submit their final contentions and new

23   discovery plans, the Court should hold another status conference and the parties could provide their

24   scheduling proposals then based on the guidance provided by the Court on June 14.

25

26

27

28

Case Nos. C-03-04669 MJJ (EMC) and  C-03-02289 MJJ (EMC)
Combined Joint Case Management Conference Statement and Proposed Order
DM_US\8213634.v1

### c. The Parties' Proposed Schedules

| Event | Ricoh's Proposed Dates | Synopsys' Proposed Dates |
|---|---|---|
| Claim Construction Ruling ("CCR") | April 7, 2005 | April 7, 2005 |
| Reopening of discovery | June 15, 2005 | -- |
| ASIC Defendants and Synopsys produce all initial disclosure documents, documents responsive to Ricoh's discovery requests and source code for the identified products | June 30, 2005 | -- |
| Deadline to disclose reliance upon opinion of counsel and produce related documents | June 30, 2005 | -- |
| Final Infringement Contentions | December 15, 2005 | -- |
| Final Invalidity Contentions | January 13, 2006 | -- |
| Fact discovery cut-off | January 20, 2006 | October 7, 2005 |
| Submission of expert reports by party with the burden of proof | January 20, 2006 | -- |
| Submission of responsive expert reports | February 17, 2006 | November 4, 2005 |
| Rebuttal Expert Reports | March 10, 2006 | December 2, 2005 |
| Expert discovery cut-off | March 24, 2006 | December 21, 2005 |
| Dispositive motion cut-off | March 31, 2006 | January 17, 2006 |
| Dispositive Motions Oppositions Due | April 17, 2006 | January 31, 2006 |
| Dispositive Motions Replies Due | April 24, 2006 | February 7, 2006 |
| Dispositive motion hearing date | To be set by the Court on or after May 8, 2006 | February 21, 2006 |
| File motions in limine | April 14, 2006 | March 7, 2006 |
| File oppositions to motions in limine | May 5, 2006 | March 21, 2006 |
| File Joint Proposed Final Pre-trial Order | May 26, 2006 | April 7, 2006 |
| Pre-trial Conference | To be scheduled by Court | April 17, 2006 |
| Trial Date | June 2006 | May 1, 2006 |

## CLAIM CONSTRUCTION HEARING

The Court issued its ruling on April 7, 2005.

## TRIAL

**11. The parties request a trial date as follows**

### a. Ricoh's Position

Ricoh has proposed that trial begin June 2006.

### b. Position of Synopsys and the ASIC Defendants

Synopsys proposes that trial of its declaratory judgment action begin on May 1, 2006.

**12. The parties expect that the trial will last for the following number of days**

        **a.  Ricoh's Position**

Ten trial days.

        **b.  Position of Synopsys and the ASIC Defendants**

Synopsys believes that its declaratory judgment action can be tried in eight trial days.

Synopsys and the Customer Defendants believe that, if the Customer Defendant action is not stayed, and the action is consolidated with the Synopsys case, the questions of liability, including infringement and validity, should be tried first. This trial could be completed in approximately twelve days. If liability is established, a separate trial can be scheduled to determine damages. Defendants believe that such a trial would require approximately two weeks.


Dated:  June 8, 2005               DICKSTEIN SHAPIRO MORIN & OSHINSKY



By:   /s/ Gary M. Hoffman
        Gary M. Hoffman
        Kenneth W. Brothers
        Edward A. Meilman
        Eric Oliver

        Attorneys for Ricoh Company, Ltd.



Dated: June 8, 2005               HOWREY LLP



By:   /s/ Teresa M. Corbin
        Teresa M. Corbin
        Christopher Kelley
        Attorneys for Plaintiff Synopsys and ASIC
        Defendants

# CASE MANAGEMENT ORDER

The Case Management Statement and Proposed Order is hereby adopted by the Court as the

Case Management Order for the case and the parties are ordered to comply with this order.  In addition

the Court orders:

Dated: _____                    _____
                                                            HON. MARTIN J. JENKINS

# D I C K S T E I N  S H A P I R O  M O R I N  *&*  O S H I N S K Y  L L P

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 572-2656*
*E-Mail Address: AllenD@dsmo.com*

July 18, 2005

<u>BY FACSIMILE AND U.S. MAIL</u>

Teresa M. Corbin, Esq.
Howrey Simon Arnold & White LLP
301 Ravenswood Ave.
Menlo Park, CA 94025

Re:    <u>Ricoh v. Aeroflex et al.</u>

Dear Terry:

   In accordance with Judge Jenkins' directive provided at the July 13, 2005 Case Management Conference, we provide (i) the following list of the types of libraries we are seeking to have fully identified in the list to be provided by each ASIC Defendant and (ii) citations showing examples of Synopsys documents using the library nomenclature that Ricoh has used.

- Target libraries and technology libraries (*see, e.g.,* SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59911-14; SP60165-60461 Introduction & Overview, Chip Synthesis (2003) at SP60241-242)

- Symbol libraries (*see, e.g.,* SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59934)

- Link libraries (*see, e.g.,* SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59916-59919, SP59923); *DesignWare IP Family Quick Reference Guide* (RCL008947-9306) at p. 28)

- Basic library (*see, e.g., DesignWare IP Family Quick Reference Guide* (RCL008947-9306) at p. 27)

- DesignWare Foundation and Building Block IP libraries (*see, e.g., DesignWare Building Block IP User Guide* (RCL009357-9448); *DesignWare IP Family Quick Reference Guide* (RCL008947-9306) at pp. 27-28)

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

DSMDB.1955642.1

Teresa M. Corbin, Esq.
July 18, 2005
Page 2


- Synthetic libraries (*see, e.g., DesignWare Developer's Guide* (RCL009449-9622) at Ch. 4, pp. 61-64; *DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1 pp. 17-20)

- Design libraries (*see, e.g., DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1 pp. 17-18, 20); *DesignWare Developer's Guide* (RCL009449-9622) at 23-24, 146)

- Any libraries used by or made by (or behalf of) an ASIC Defendant as a replacement or substitute for any of the above libraries (*see, e.g.,* the comments of the ASIC Defendants in the CMC at Page 18, lines 17-19)


    Ricoh understands that other libraries are used by the ASIC Defendants in the Synopsys synthesis flow for the tools and libraries at issue (see p. 28 of the Case Management Statement for Ricoh's list of tools and libraries at issue). For example, Synopsys has stated there are design libraries created during synthesis and Ricoh seeks discovery from the ASIC Defendants' for such design libraries (*see* Case Management Statement p. 18 (Synopsys' discussion of design libraries)).[1]

    Additionally, it is Ricoh's understanding that to the extent there are additional libraries that are not included in the foregoing list of libraries, but that are used by the tools at issue (e.g., any separate libraries of GTECH cells[2]), then such other libraries (including source code and documentation) have been produced as part of the currently on-going source code production. However, if Ricoh's understanding is incorrect, then Ricoh also seeks a list of such libraries (e.g., GTECH libraries).

---

[1] Note that while Synopsys has used the term "design library" to refer to a library generated during synthesis, Ricoh has used the term "design library" to mean the DesignWare design library that Synopsys documentation describes as housing DesignWare implementations. (*See, e.g., DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1 pp. 17-18, 20; *DesignWare Developer's Guide* (RCL009449-9622) at 23-24, 146). It appears to Ricoh that the parties may be using the same term (i.e., design library) to describe two different kinds of libraries. As indicated herein, Ricoh seeks discovery of both kinds of libraries.

[2] *See*, e.g., SP60165-60461 Introduction & Overview, Chip Synthesis (2003) at SP60214 (describing GTECH db); SP59888-60164 Chip Synthesis Workshop – Lab Guide (© 2003) at SP59898 (describing GTECH components).

Teresa M. Corbin, Esq.
July 18, 2005
Page 3


        Ricoh is seeking discovery related to the above list of libraries as provided by
Synopsys, as well as any additions to, modifications to, or substitutions/replacements
for any of the foregoing libraries made by the ASIC Defendants (e.g., such as by use of
DesignWare Developer).[3]

        As directed by Judge Jenkins, by 11 A.M. Pacific Time on Thursday, July 21,
2005, you are to provide us, for each ASIC Defendant, the list of libraries that each
Defendant has used.

                                Sincerely,

                                DeAnna Allen

DA/ncz

cc:    Jonathan Weissglass, Esq.
       Gary Hoffman, Esq.
       Edward Meilman, Esq.

---

[3] The term DesignWare Expert libraries, as Ricoh has used it, is encompassed by the
DesignWare synthetic libraries, DesignWare design libraries, and any other
DesignWare components used by or created by (or on behalf of) the ASIC Defendants.
Thus, to the extent that DesignWare synthetic libraries and DesignWare design libraries
(as well as any modifications, additions, or replacements/substitutions used by or made
by (or on behalf of) the ASIC Defendants to these libraries) are produced, then there is
no need for a separate designation by Ricoh of DesignWare Expert libraries.

# FAX TRANSMISSION

**DICKSTEIN
SHAPIRO
MORIN &
OSHINSKY**
LLP

**DATE:**  July 18, 2005

**CLIENT NO.:**  R2180.0171

**MESSAGE TO:**  Jackie Fink

**COMPANY:**  Howrey Simon Arnold & White

**FAX NUMBER:**  415-848-4999

**PHONE:**

**FROM:**  DeAnna Allen

**PHONE:**  202-572-2656

**PAGES (Including Cover Sheet):**  4     **HARD COPY TO FOLLOW:**  _x_  YES  _____ NO

| SENT BY: | | DATE/TIME: | |
|---|---|---|---|

**MESSAGE:**

2005 JUL 13 AM 9: 12

If your receipt of this transmission is in error, please notify this firm immediately by collect call to our Facsimile Department at 202-861-9106, and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated

1642553 v2; Z7#H021.DOC

August 30, 2005

<u>VIA ELECTRONIC FILING</u>

Honorable Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Ricoh v. Aeroflex, et al., Case No. CV-03-4669 MJJ (EMC)
              Synopsys v. Ricoh, Case No. CV-03-2289 MJJ (EMC)

Dear Judge Chen:

      Pursuant to the Court's Order of August 16, 2005, the parties submit the following report on discovery disputes. For simplicity, "defendants" refers to all of the Aeroflex et al. defendants as well as Synopsys.

      The parties have met and conferred regarding the discovery disputes set forth in Ricoh's letter of July 27, 2005 (D.I. 315, Ex. 5).[1] The meet and confers regarding the Ricoh issues took place on August 22 and 24, 2005, with the participation of Gary Hoffman, Ken Brothers and DeAnna Allen for Ricoh, and Terry Corbin and Jacky Fink for defendants. The meet and confer was by telephone; the August 22 conference lasted approximately 90 minutes, and the August 24 conference lasted approximately 25 minutes.

## I.     <u>INTRODUCTION</u>

      1. Ricoh's Position. Ricoh had hoped that, after a long discovery stay, the issuance of a claim construction, two case management conferences before Judge Jenkins in July 2005, and the near-total revamping of defendants' legal team, the parties could avoid the scorched-earth, fight-every-issue defense strategy that marked this litigation in late 2003 and early 2004.[2] Unfortunately, this does not appear to be the

---

[1] All Docket Index citations are to *Ricoh v. Aeroflex, et al.*, Case No. CV-03-4669. A list of all exhibits to this joint letter follows the signature page.

[2] In a meeting in Japan in August 2003 attended by Gary Hoffman, Synopsys' general counsel, Rex Jackson, told Ricoh that if Ricoh did not dismiss its case, Synopsys and its ASIC defendant indemnities would not produce documents unless ordered by the Court, and would make this litigation extremely expensive. This statement has been brought to the Court's attention on prior occasions. *See, e.g.*, Ricoh's April 23, 2004 Discovery Plan, at p. 1, lines 22-27 (attached as Exh. 1 to D.I. 315). Until now, defendants have never disputed it.

Honorable Edward M. Chen
August 30, 2005
Page 2

case.  Defendants repeatedly have stalled on virtually every discovery issue.[3]  Even in this joint letter, Defendants have insisted on separate statements on all issues – even the issues that Ricoh understood had been resolved – as well the addition of separate introductions.[4]

Defendants' have insisted that their introduction include a statement of what they believe was "resolved" during the July Case Management Conferences.  Defendants' statement is both incomplete (since many additional issues were addressed and resolved), and, with respect to the five issues that defendants identify, inaccurate.  For example, the products at issue are *not* Synopsys products, but are the ASIC chips designed and manufactured by the ASIC defendants.  The ASIC defendants (but not Synopsys) are being accused of infringing the '432 patent by using the process disclosed in claims 13-17, then the output from this process is used to manufacture the chips.[5]  Thus, defendants' repeated characterization of certain Synopsys software as the "products in suit" is simply incorrect.

Following are some of the matters that were discussed and resolved at the CMC:

1.  The processes at issue in this litigation are certain processes used by the ASIC manufacturers for designing the ASICs to be manufactured.  The particular Synopsys tools that are used in carrying out these processes are Design Compiler, HDL Compiler for Verilog, VHDL Compiler, DesignWare Foundation Library, Module Compiler, and Physical Compiler and other software products listed on Page 28 of the Joint CMC report.

---

[3] While many documents have been produced by the defendants, the majority have been alleged prior art documents.

[4] Upon receipt of this Court's August 16 Order , Ricoh requested that the meet and confer occur the same week.  Defendants declined to meet until August 22, and when the meet and confer took place, defendants' counsel stated a need to consult with her client on several issues, causing the meet and confer to be continued to August 24.  As ordered by the Court, Ricoh's counsel had full authority to address all matters on the agenda set by Ricoh's July 27 letter.

[5] Defendants Aeroflex and AMI Semiconductor perform this infringement in the United States, so Ricoh's claims against them are based upon §271(a).  There is a disputed factual issue of where the Matrox entities have performed their infringing activities; to the extent it is all outside of the U.S., Ricoh's claims against them are based upon §271(g), and at trial Ricoh will be required to show that the infringing process is proximately related to the finished ASIC product.  Throughout this joint letter, defendants inappropriately attempt to bootstrap this §271(g) obligation on to all of Ricoh's claims in an attempt limit Ricoh's discovery.

2.  The only ASIC products that Ricoh is accusing of infringement are commercial ASICs manufactured by the ASIC defendants that were using one or more of the software tools listed on Page 28 of the CMC, and not ASICs designed using logic synthesis tools from other companies.  Since the ASIC manufacturers have refused to disclose to Ricoh what if any logic synthesis tools from other companies they utilize, Ricoh has made no allegations about such any use of such tools in this litigation.

3.  The libraries that are relevant to this suit are target technology, synthetic, symbol, link, design, and GTECH libraries for the ASICs products designed using Design Compiler.  Pursuant to Judge Jenkins' Order at the July 13 CMC, on July 21 and August 15 and 16, the ASIC defendants submitted declarations that, according to their counsel, include a full and complete list of all such ASICs, and libraries, from 1997 through the present.

4.  During the CMC, Judge Jenkins proposed to the ASIC defendants that they wait to refile their motion for partial summary judgment under Section 271(g) after the close of discovery when any other motions are filed.  When the ASIC defendants insisted on filing it earlier, the Court granted them permission to refile their motion for partial summary judgment under § 271(g) but only after the deposition of the two declarants submitting affidavits in support were taken.

5.  During the CMC on July 13, the ASIC defendants and Synopsys told the Court that 4  months was a sufficient time for all fact discovery.  Ricoh informed the Court that 4  months was not feasible but that it believed that it was possible to complete fact discovery in 6 months if the defendants and Synopsys provided their documents and supplement interrogatory responses quickly and that they had promised to do so by the end of August at the latest.  The Court then set a 6 months time period for fact discovery.

2.  Customer Defendants' Position.  Synopsys and the Customer Defendants believe it will be helpful for the Magistrate Judge to have a copy of the latest Joint Case Management Conference Statement, and attach it hereto as Exhibit 1.  During the Case Management Conferences, the following issues were resolved:

1.  The Synopsys products at issue in this case are Design Compiler, HDL Compiler for Verilog, VHDL Compiler, DesignWare Foundation Library, Module Compiler, and Physical Compiler (hereinafter "products-in-suit").

2.  Only designs of ASICs that actually went into commercial production will be the subject of discovery in this suit.

Honorable Edward M. Chen
August 30, 2005
Page 4

    3.    The only commercial designs/ASICs that are relevant are those whose front-end design/synthesis (input to netlist) was created using the products-in-suit. Therefore, any designs or chips that were designed using Synopsys' competitors' products are not at issue in this case.

    4.    The libraries that are relevant to this suit are target technology, synthetic, symbol, link, design, and GTECH libraries for the products listed on the Product Declarations.

    5.    The Customer Defendants were granted permission to refile their summary judgment motion re: § 271(g) as soon as the deposition of their two declarants were taken. The Court made it clear that the only discovery necessary or allowed in order to hear that motion were these two depositions.

Synopsys and the Customer Defendants respectfully request a hearing on the issues addressed herein. Ricoh provided Synopsys and the Customer Defendants with their portion of this letter on Thursday at 9:42 A.M. PST and Synopsys and the Customer Defendants provided their responses in less than 36 hours at 8:25 P.M. PST. Ricoh provided another version of the letter with substantial changes, additions and new case law at 10:33 a.m. on Monday. Synopsys and the Customer Defendants provided their revised section in response approximately 5 hours later at 3:56 p.m. Ricoh complains that counsel for the Customer Defendants were not available to meet and confer from August 17-19, 2005. The reason counsel was unavailable on those days was because they were visiting customer sites to collect documents. The meet and confer took place the following Monday upon counsel's return. Synopsys and the Customer Defendants disagree with many of the mischaracterizations in Ricoh's new additions to this letter but cannot address each and every one and file this letter today. Synopsys especially takes issue with the false representation regarding alleged statements by Synopsys' General Counsel found at footnote 2 herein. No such statements were made by Synopsys' General Counsel to Ricoh at any time. While Synopsys and the Customer Defendants have refused to produce certain categories of documents that they believe are irrelevant and not likely to lead to the discovery of admissible evidence and Ricoh's unwillingness to withdraw or narrow such discovery has caused the parties to seek guidance from the Court regarding the proper scope of discovery, Defendants have not "stalled on virtually every discovery issue" as stated by Ricoh. Synopsys and the Customer Defendants have met their discovery obligations and even produced documents during the stay when they had no obligation to do so. To date, approximately 200,000 pages of documents have been produced and two versions of the source code for the products-in-suit has been made available to Ricoh for well over one year, all throughout the stay period.

## II.    <u>RESOLVED DISCOVERY DISPUTES</u>

The parties reached agreement on several discovery disputes. Those agreements are as follows:

Honorable Edward M. Chen
August 30, 2005
Page 5

## A. Identification of design libraries created during synthesis.

1. Ricoh's Position.  In response to an order by Judge Jenkins during the CMC on July 13, on July 21, defendants served declarations that they represented identified certain information, including full identification of the design libraries for all of its commercial ASICs designed using Design Compiler.[6]  Based upon the representations of defendants' counsel on August 22 that the declarations, which as required by Judge Jenkins were submitted under penalty of perjury, accurately describe all of the relevant design libraries, and that defendants will produce all of their existing design libraries (although the timing of that production remains in dispute), at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants.[7]

---

[6] On July 18, 2005, Ricoh's identified for the defendants the types of libraries it was seeking and cited to documents of the defendants for support for these terms.  (Exh 36.)  That definition, in turn, references a March 16, 2005 Synopsys document that Ricoh located deep within Synopsys' web site, entitled "DesignWare Building Block IP User Guide," which defines a design library as follows:  *"The design library contains the actual circuit implementations that perform the functions you call for when you include DesignWare Building Block IP in your design. The DesignWare Building Block IP concepts of synthetic module and implementation closely correspond to the VHDL concepts of entity and architecture. An implementation can be viewed as an architectural realization of a synthetic module. An implementation can be anything from a technology-specific netlist to a synthesizable RTL-level design description"*  (Exh. 37.)  Based upon this definition, a design library is an necessary portion of the infringing logic synthesis process.  All ASIC designs using Design Compiler and DesignWare use such design libraries (which defendants have called synthetic_library implementations).  Ricoh requested, and had understood defendants were going to produce, the design libraries described in the DesignWare documentation, including any alterations, modifications, substitutions for, or additions thereto.  Defendants' response to Ricoh's July 18, 2005 letter indicated that the defendants use other kinds of files that they call design libraries.  For example, Defendants' July 21, 2005 declarations described these files as an intermediate data format that some of the defendants temporarily save.  Defendants repeatedly have referred to such design libraries in submissions to the Court, correspondence between the parties and during the meet and confer conferences.  In short, Ricoh seeks production of all such design libraries; if defendants are not producing them, they should explain why.

[7] In their draft received Monday night, August 29, defendants for the first time took issue with the definition of design libraries that had formed the basis of more than a month of negotiations.  Until the evening of August 29, Ricoh had understood that defendants had agreed to produce all existing design libraries, including: the design libraries described in DesignWare documentation, including in any alterations, modifications, substitutions for, or additions thereto (what the defendants describe as synthetic_library implementations) (*see supra* note 6); and the design libraries that are generated during synthesis and saved by at least some defendants. (*id.*).  Now, however, it appears that defendants unilaterally are attempting to narrow the

Defendants' statement of their "position" on what Ricoh had understood was an agreed-upon issue is both an effort to spin certain issues (e.g., characterizing logic synthesis as "front-end design" and laying the groundwork for attempting to justify their failure to collect documents in June and July), and to inappropriately attempt to argue an issue that remains in dispute – defendants' failure to retain relevant files. See Disputed Issues, Topic G.

2. Customer Defendants' Position. Between the July 13 and July 22 Case Management Conferences ("CMC"), the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis (i.e., front-end design) performed using the products-in-suit, and provided separate Input and Library Declarations on July 21, 2005. Attached as Exhibits 2-11. The Library Declaration included information about design libraries.

During the July 22, 2005 teleconference hearing, the Customer Defendants agreed to provide a list of commercial products for which Design Compiler was used by the named Customer Defendants for logic synthesis, a description of each of these products, and the target technology libraries used. After a significant effort to collect this information, the Product Declarations were provided on August 15 and 16. Attached as Exhibits 12-17.

Synopsys and the Customer Defendants dispute footnotes 6 and 7 in their entirety. Counsel for the parties have wasted substantial time conferring about production of design libraries. From Ricoh's recent revisions to the letter, received today, it is apparent that counsel have been miscommunicating as a result of Ricoh's continued practice of using varied technology to refer to the same items and the use of different terminology from Synopsys. At the CMC, the Court and the parties discussed this issue at length and attempted to reach a common understanding to avoid miscommunications in the future. Synopsys' counsel provided a letter dated July 18, 2005 (Ex. 38) setting forth the terminology used by it and an explanation of the meaning of each term. As can be seen by the letter, Ricoh had used the term design library to refer to at least nine different items, two of which are generally termed "design libraries." Synopsys and the Customer Defendants have already committed to producing the items listed in the chart, with the exception of the "design libraries created during synthesis" (see third row of the chart on page 3) as further delineated below.

With respect to synthetic library implementations addressed by Ricoh in footnote 6, evidence has already been supplied in this case that the Customer Defendants only use Synopsys synthetic libraries and that they do not alter or add to them. As indicated in the July 18, 2005 letter, Synopsys produced the source code for the synthetic libraries—and their respective synthetic library implementation--long ago.

definition, perhaps to protect themselves, because they have failed to retain design libraries (Disputed Issue, Topic G, below).

Honorable Edward M. Chen
August 30, 2005
Page 7

The only remaining issue regarding library data, as far as counsel for Synopsys and the Customer Defendants understands it, relates to intermediate storage formats that are caused to be created by the use of specific commands that not all customers use. Customers do not usually retain such intermediate files on an ongoing basis such as in archived versions of products (because they can be regenerated later when needed from the original inputs). Further, in many cases, the cache directories containing these intermediate files are periodically purged to ensure smooth functioning of the systems. This is analogous to the way that the Internet Explorer browser cache is periodically trimmed in size to prevent it from consuming endless disk space.

The Library Declarations make clear that the only Customer Defendants that use these intermediate files are Matrox Graphics and Matrox Tech (while other Customer Defendants may create them, they do not use them), and only for particularly large chips. While we informed the Customer Defendants of the requirement to retain documents and files relevant to the litigation, we did not believe it was appropriate to require them to modify their design process flow to add the creation (to the extent not used by the customers) or retention of these intermediate files to their scripts. We also do not believe that it is appropriate to require them to create documents that they do not ordinarily create which would grind the ordinary use of their systems to a halt going forward. Any of these intermediate electronic files that exist for the products listed in the Product Declarations will be provided. In addition, since the Customer Defendants will be providing their available inputs and other libraries in electronic format, Ricoh can **create** the exact same files by running the logic synthesis process and, if desired, adding the necessary commands to create and/or save these files. See topic G under Remaining Discovery Disputes.

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, and GTECH libraries for the products listed on the Product Declarations.

**B. A list of the ASIC Defendants' ASIC products and identification of the technology libraries used.**

1. Ricoh's Position. Based upon defendants' representations on August 22 that the declarations they provided on August 15 and 16, which were submitted under penalty of perjury as required by Judge Jenkins, contained a complete and accurate list of all commercial ASICs synthesized using Design Compiler by defendants from February 1997 to the present, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants.

2. Customer Defendants' Position. The Product Declarations provided on August 15 and 16 included information about the target technology libraries or library families used for the logic synthesis of the products listed.

Honorable Edward M. Chen
August 30, 2005
Page 8

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, and GTECH libraries for the products listed on the Product Declarations.

**C.  Production of release notes regarding Synopsys tools at issue.**

1.  Ricoh's Position.  Based upon defendants' representation on August 22 that all such release notes have been produced, at this time Ricoh is not pursuing this matter.  The issue of which versions of Design Compiler were used to produce each of the infringing ASICs is unresolved and is one of the focal points of Ricoh's discovery.  Some discovery of the earlier versions of Design Complier will likely be required; however, this issue can be addressed at a later time.

2.  Customer Defendants' Position.  There have been many different versions of the products-at-issue since February 1997.  Synopsys has provided two different versions of source code, version 2.0 and V-2003.12-SP1, to Ricoh.  Since 1997, on average there have been at least two major releases of the products-in-suit per year and several more minor releases.  At a minimum, there were at least 18 major releases of the products-in-suit during the potential damage period.

It takes approximately 30 days on the part of a full time equivalent engineer to provide each buildable version of the software.  It is not practical or reasonable to expect that Synopsys will produce source code for every release of the product from 1997 to the present.  It is also unimaginable how long the trial would take or the verdict forms would have to be if Ricoh is required to prove infringement of every release of the products-in-suit.

In the interest of facilitating a stipulation on a representative version of the source code in order to streamline discovery, after Ricoh's request at a June 13, 2005 meet and confer, during the stay Synopsys provided all of the release notes that were located after a reasonable search.

**D.  Production of DesignVision and DesignAnalyzer user manuals.**

1.  Ricoh's Position.  DesignVision and DesignAnalyzer are Synopsys tools that the ASIC defendants use to visualize the design of ASICs, and thus are relevant to Ricoh's claims.  Synopsys has committed to produce the user manuals for these products.  Ricoh is deferring for now other questions regarding the scope of Synopsys' document production regarding the Design Compiler family of products until after it reviews such manuals.

2.  Customer Defendants' Position.  During the July 13, 2005 Case Management Conference, Ricoh represented that the only products-at-issue in this case were those listed in the table on page 28 of the Joint Case Management Conference Statement.  DesignVision and DesignAnalyzer are not listed as products-at-issue in this case.  Nonetheless, Synopsys had previously provided the executables for these products and agreed, during an August 24, 2005 meet and confer session, to provide the

user manuals.  Synopsys and the Customer Defendants do not intend to provide any other documents or information regarding these products, as they irrelevant to the issues in this case.

### E.  Production of synthetic library documents.

1.  Ricoh's Position.  Based upon defendants' representations on August 22 that they will produce all relevant synthetic library documents for all of their commercial ASIC products from February 1, 1997 to the present, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants.  Defendants' statement again attempts to justify their failure to collect documents until now, claiming it took "significant time and effort" to collect relevant information.  Counsel for Synopsys and the defendants have a large number of attorneys and staff involved in this litigation and also several of the companies have in-house legal staff.  There is no reason that this information could not have been collected earlier, and no excuse for failing to collect documents at the same time.

2.  Customer Defendants' Position.  Between the July 13 and July 22 Case Management Conferences ("CMC"), the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis performed by the named Customer Defendants using the products-in-suit, and provided separate Input and Library Declarations on July 21, 2005.  The Library Declaration included information about synthetic libraries.

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, design, and GTECH libraries for the products listed on the Product Declarations.

### F.  Production of all source code and license keys.

1.  Ricoh's Position.  Based upon Synopsys' representations that, pursuant to Ricoh's discovery requests and the representations to this Court in early 2004, it has produced all source code and license keys for one version of Design Compiler, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after it determines which version of Design Complier was used in the design of the ASIC products at issue and has obtained certain other discovery.

2.  Customer Defendants' Position.  Even though not obligated to do so, Synopsys produced the object code, source code and license keys for version V2003.12-SP1 of the products-in-suit, as well as for a number of additional products that are not products-in-suit, during the discovery stay period.  Additionally, source code to the 2.0 version of Design Compiler was produced.

Prior to Ricoh's recommencing its source code review on July 11, 2005, two new items were loaded onto the computer, (1) an updated FlexLM license key and (2) a

Physical Compiler customer education module which was available when V-2003.12 of Physical Compiler was released. *See* June 27, 2005 letter from Jaclyn Fink to DeAnna Allen, attached hereto as Exhibit 27.

**G. Details on the 10% of inputs that were unaccounted for in the July 21, 2005 declaration from AMIS regarding inputs.**

1. Ricoh's Position. Based upon defendants' representation in their letter of August 12 that this input was VHDL, this issue is resolved.

2. Customer Defendants' Position. In AMI's July 21, 2005 Input Declaration, they indicated that 90% or more of the source inputs for the digital portions of the commercial ASICs designed by them which utilized Design Compiler for logic synthesis were provided as textual Verilog. At Ricoh's request, AMI verified that any other source inputs for the digital portions of the commercial ASICs designed by them which utilized Design Compiler for logic synthesis were provided as VHDL.

**H. Agreement that defendants will properly identify the source of documents.**

1. Ricoh's Position. Defendants have committed to identify the source of all documents by Bates Numbers corresponding to the producing party, a request Ricoh had first made more than two years ago. For previously produced documents, defendants have agreed to provide a letter that identifies the producing party and corresponding Bates ranges for all documents with Bates prefix "DEF". Defendants also have agreed to not use a "DEF" prefix for future productions, but instead use a Bates prefix that makes evident the specific producing party (e.g., "Aeroflex," "AMI," separate designations for each of the Matrox entities, "Synopsys," etc.).

2. Customer Defendants' Position. Since Ricoh has indicated that it wanted separate identification of documents for the different Customer Defendants, we have made such identification in the document production letters. To the extent that such identification has not yet been made for any documents and is available, we will provide it. Going forward, we will provide a separate Bates prefix for each Customer Defendant.

**I. Agreement regarding electronic service and communications.**

1. Ricoh's Position. The parties have agreed that communications between counsel (including letters and service of documents not filed with the court) will be electronically transmitted via PDF to the other side as instructed in writing. Each party has identified the counsel to be so served and has the right to add to or modify the list in the future. Such service shall be considered via U.S. Mail under the Federal Rules.

2. Customer Defendants' Position. At Ricoh's request, we will send communications between counsel that are not unduly large via PDF to Gary Hoffman, Ken Brothers, Ed Meilman, Eric Oliver, Michael Weinstein, and DeAnna Allen. Ricoh

Honorable Edward M. Chen
August 30, 2005
Page 11

agreed to send such communications via PDF to Terry Corbin and Jacky Fink. Going forward, Synopsys and the Customer Defendants request that all such communications from Ricoh be electronically submitted via PDF to Terry Corbin, Jacky Fink, Bob Laurenson, Elizabeth Fontaine, Tom Crunk, Peter Kasenenko, and Jason Hancock. Since this service will be considered as via U.S. Mail under the Federal Rules, there will be the three days added to the hand service deadlines.

## III.  REMAINING DISCOVERY DISPUTES

The parties were not able to reach agreement on the remaining discovery disputes. Those remaining discovery disputes and the parties' respective positions are provided below.

### A.  Timing of defendants' production of documents.

1.  Ricoh's Position.  In April 2004, defendants had committed to produce all of their relevant responsive documents. (D.I. 315, Ex. 1 & 2.) Defendants failed to meet that deadline; their claim that they complied is wrong since, for example, they simply refused to produce documents relating to their infringement, or marketing, sales and damages. On May 4, 2004, Judge Jenkins stayed merits discovery until after he issued his Markman ruling. After the Court issued its April 7, 2005 claim construction ruling, Ricoh urged defendants to produce all of their documents by June 30, 2005. (D.I. 301.) Defendants' counsel stated in response that she would not be able complete the production of all of her clients' documents until "the end of August." After Judge Jenkins lifted the discovery stay and ordered the immediate commencement of all merits discovery on July 22, 2005, Ricoh reminded defendants of their commitment to produce all documents by the end of August. (D.I. 315, Ex. 5.) Now, however, defendants are refusing to commit to produce all of the documents to which they have not made objections until October 7, 2005 and then only to "try" to meet this October date. (D.I. 318, Ex. 1).[8] Defendants claim (in footnote 14) that they need 6 weeks from the date the stay was actually lifted on July 22, but 6 weeks from July 22 is September 2. During the meet and confers on August 22 and 24, defendants' counsel refused to budge from the October 7 date. These documents should have been collected and ready for production in 2004 with defendants now only needing to update the collection process. Even if the documents were not ready in 2004, defendants should have started

---

[8] While the defendants now complain that various client representatives are on vacation, the scheduling issue is one of their own creation. If the defendants had begun the process in 2004 when they originally committed to do so or even in June 2005 when they again promised to do so then they would not have any scheduling issue at this time. If a problem existed then they should have brought the matter to the Court's attention during the CMC; they were urging the Court to allot only four months for discovery, and knew that Ricoh was relying on defendants' representation that all documents and supplemental interrogatory responses would be provided by the end of August. Based upon defendants' representations, Ricoh urged and the Court scheduled a six month period for fact discovery.

Honorable Edward M. Chen
August 30, 2005
Page 12

this process in April (after the claim construction ruling was issued) or at the latest by the end of May 2005, when Ricoh conferred with counsel for the defendants and discussed the issue again with them.  Any delays in this collection process are the result of defendants' own decisions to delay the process.

The timing of production of documents relates to a large number of the issues set forth in Ricoh's letter of July 27 (D.I. 315 Ex. 5), including Issues 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16.  Rather than reiterate each of those individual issues herein, Ricoh seeks an order compelling defendants to produce all documents by no later than September 2, 2005.

The timing of the production of defendants' documents has a cascading effect upon the rest of the discovery schedule.  When Judge Jenkins issued the pretrial schedule on July 22, 2005 (D.I. 309), the Court specifically provided that, after receiving the August 15 and 16 declarations (Exhibits 12-17), Ricoh would have at least 60 days of discovery prior to serving its final infringement contentions on October 17, 2005.[9]  The Court expressly rejected defendants' request for a discovery stay until after Ricoh served its final infringement contentions.  By refusing to produce their documents until a week before the final infringement contentions are due, defendants have essentially granted themselves the discovery stay that Judge Jenkins rejected.  Ricoh should receive the benefit of the 60 days of discovery contemplated by the pretrial schedule, and asks that the dates be adjusted accordingly.  Defendants had urged Judge Jenkins to set a period of only 4 months for discovery and if they were doing so in good faith they must have been prepared to quickly produce their documents.  Believing that a longer period was necessary and that the defendants would honor their prior commitment to produce all documents by the end of August, Ricoh requested 6 months for fact discovery, which is what the Court set.

Defendants' statement below contains several factual errors, perhaps because (with the exception of Ms. Corbin and possibly Ms. Fink), none of the Howrey attorneys who were involved in this case in 2004 and 2005 are still involved in the case.  With respect to the source code, it was only recently that Synopsys acknowledged that what it had made available to Ricoh's experts was incomplete.  Synopsys also omits to state that it offered and Ricoh accepted a witness for deposition on the source code, then Synopsys revoked the offer and has attempted to block that deposition ever since.  Defendants still are refusing to produce a witness in lieu of written responses to Ricoh's questions (e.g., a Rule 31 deposition), which is inconsistent with the Federal Rules and is unacceptable.  This same argument to avoid a traditional deposition on the topics was made by the defendants during the CMC on July 13 and rejected by Judge Jenkins.

---

[9] Ricoh requested that the defendants agree to a postponement of the due date for Ricoh's Final Infringement Contentions by 60 days so that the due date would be after the defendants have produced all of the documents.  However, the defendants were unwilling to agree to anything more than 28 day postponement.

Defendants also apparently made no effort to collect any emails, and have not disclosed whether they have been retaining their emails or the process by which they intend to search for and produce them.[10] Defendants also launch an irrelevant and erroneous attack regarding Ricoh's preliminary infringement contentions which are not relevant to the issues here; other than noting its disagreement, no response is required.

During the CMC, defendants argued that Ricoh's preliminary infringement contentions were inadequate[11] and that all discovery should be stayed until Ricoh submitted its final infringement contentions. Ricoh explained that discovery was needed before providing the final infringement contentions; Ricoh explained that this discovery included the production of documents and interrogatory responses that the defendants had committed to provide by no later than the end of August and also the deposition of Synopsys under Rule 30(b)(6) on the source code. Defendants' request for a stay of discovery was rejected by Judge Jenkins during the CMC on July 13.

2. Customer Defendants' Position. Contrary to Ricoh's assertions, Synopsys and the Customer Defendants have been diligent toward their discovery obligations.[12] Ricoh's infringement allegations center around Synopsys' logic synthesis products, and Synopsys made the source code for the accused products available on May 10, 2004, first in Maryland and subsequently at its SURF facility in Mountain View, California, and throughout the stay period. Ricoh made very little use of these facilities during the 15 month stay.

Synopsys also provided the documentation for these products during the discovery stay. Though there was no obligation to do so, millions of lines of source code and more than 50,000 pages of documents were produced during the discovery stay, including prior art, Synopsys release notes, and Synopsys product documents. Synopsys also repeatedly offered to respond to written questions under oath regarding the source code, as it believes that given the size of the code (millions of line of code per version of the code) detailed information would be difficult to get by way of deposition testimony. Ricoh declined to take Synopsys up on this offer.

---

[10] During the August 24 meet and confer, defendants obliquely said that they may wish to discuss how they will search for emails, but have proposed nothing substantive. During the August 24 meet and confer, at defendants' request Ricoh's counsel provided some suggestions with respect to the search for emails and other electronic documents. Ricoh expects defendants to timely produce their emails and other electronic documents as required by the Federal Rules pursuant to the dates established by this Court.

[11] While Ricoh disagrees with this attack by the defendants, it is irrelevant to the issues here just as is Ricoh's challenges to the adequacies of the defendants' preliminary invalidity charts and their failure to comply with a prior order of this Court.

[12] Ricoh is blatantly misrepresenting the discovery obligations in effect during the stay. These sorts of misrepresentations and other disputes demonstrate why a court reporter should be allowed at all meet and confer sessions and hearings. See topic H under Remaining Discovery Disputes, below.

Honorable Edward M. Chen
August 30, 2005
Page 14

In addition, the Customer Defendants substantially complied with the April 2004 deadline for production of documents other than e-mail, subject to their objections to the document requests, including the objections related to the § 271(g) matter. A final set of documents was received from AMI after the discovery stay, and was produced on July 6, 2005. There is an outstanding issue related to e-mail collection, which the parties are still discussing.

The May 5, 2004 discovery stay was put into place precisely to minimize unnecessary discovery. The Customer Defendants were in no way obligated to collect documents during this stay. After the claim construction ruling issued, counsel for the parties confirmed with each other that the stay of discovery would remain in effect until lifted by the Court after the Case Management Conference. During a June 13, 2005 meet and confer session, the Customer Defendants **tentatively** agreed to produce documents by the end of August, based upon the assumption that the discovery stay would be lifted at the scheduled June 14 Case Management Conference ("CMC"), which was postponed until July 13, 2005. This offer was based on the fact that counsel believed that it would take six weeks to collect and process documents once the stay was lifted.

During the July 13 and July 22 CMCs, the proper scope of discovery was identified, and the discovery stay was lifted on July 22, 2005. Between these two CMCs, the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis performed, and provided separate Input and Library Declarations on July 21, 2005. Based upon guidance at the July 22 CMC, the Customer Defendants provided Product Declarations on August 15 and 16, which identify the products for which documents will be collected and produced. The first document collection trip then occurred on August 17 and 18 – immediately after the lists of relevant products had been compiled.

The current document collection effort involves traveling to approximately a dozen locations and collecting documents from more than seventy people. This document collection effort is already underway, with trips to two customer locations already completed, and the remainder of the trips scheduled between now and the end of September.[13] This effort involves the collection, review, and production of four main categories of documents.

The first category of documents is supplementation based upon the passage of time. The last document collection occurred shortly before the discovery stay. A supplemental document collection is occurring for documents generated since that time.

---

[13] At Matrox, approximately 50 individuals have been identified as possibly having responsive documents. Many of these individuals had scheduled vacations in late August and early September and were unavailable prior to September 12. Thus, counsel will be collecting documents from the other Customer Defendants in early September and proceed with the Matrox document collection thereafter.

The second category includes logic synthesis-related documents (including inputs, scripts, designs, specifications, target technology libraries, symbol libraries, synthetic libraries, link libraries, design libraries, GTECH libraries, netlists, outputs, and relevant e-mail and memos) for the commercial products designed by the named Customer Defendants using Design Compiler, as listed in the Customer Defendant Product Declarations.

The third category of documents includes Aeroflex Colorado Springs documents. Aeroflex Colorado Springs was added to the case on April 12, 2004, shortly before the May 5 discovery stay. While we believe that the documents provided by Aeroflex Incorporated were actually Aeroflex Colorado Springs documents, we are confirming that there are no other responsive documents from Aeroflex Colorado Springs that were not produced by Aeroflex Incorporated.

The forth category includes documents from the three Canadian Matrox companies. Due to a dispute as to the appropriate scope of discovery from these Canadian companies, who either do no design work at all (in the case of Matrox International), or do their design work in Canada (in the case of Matrox Electronic Systems and Matrox Graphics), documents were not previously collected from these entities. Although we still dispute whether the inclusion of these companies in this suit is appropriate, as addressed in part by our § 271(g) motion, we are going forward with collecting documents from them.

The volume of documents collected for review is likely to be at least several hundred thousand pages. We are making our best efforts to complete the collection and production of these documents by October 7, 2005,[14] and will produce documents on a rolling basis as they are processed. This is hardly a discovery stay, as alleged by Ricoh.

During an August 22, 2005 meet and confer, Ricoh requested an additional **sixty days** to complete their Final Infringement Contentions after the documents are produced, even though the Local Rules only provide for 30 days from the claim construction order, and Ricoh has had access to the Synopsys code since May 10, 2004. In order to ensure that the contentions contain the requisite specificity for each of the Customer Defendant products,[15] we offered on August 24 to extend the deadline for the

---

[14] Using the same six week interval of time (from the lifting of the stay to the production of documents) that was the basis of the tentative end of August date (which was based on the assumption that the stay would be lifted on June 14, 2005), Synopsys' counsel represented it would use best efforts to produce documents by October 7, 2005.

[15] Ricoh's Preliminary Infringement Contentions were utterly inadequate. Defendants were forced to file a motion to seek more detailed infringement contentions. At two separate hearings on May 27 and June 16, 2004, and by order dated June 17, 2004, this Court made clear that the amended preliminary infringement contentions were to include as much information as Ricoh currently knew about its infringement contentions, that they needed to provide information specific to each defendant on a product by product basis, and that there needed to be an identification of where in each

Final Infringement Contentions from October 17, 2005 to November 14, 2005 (with a related extension for the Final Invalidity Contentions from November 7, 2005 to December 14, 2005). We made this offer despite the fact that it is our belief that Judge Jenkins set the date for Final Infringement Contentions based on source code access and not Customer Defendant discovery.

In summary, Synopsys and the Customer Defendants are making their best efforts to collect and process voluminous documents from a significant number of locations and people as quickly as possible – we simply cannot produce documents that we have not yet collected, making Ricoh's request for an order to compel by September 2, 2005 unrealistic. We agree that a four week extension to the Final Infringement Contentions deadline (with a related extension for the Final Invalidity Contentions deadline) is reasonable, in order to ensure the completeness of the Final Infringement Contentions, but believe that any further extension is overreaching, and will impact the rest of the case schedule.

**B. Timing of defendants' supplementation of their initial disclosures or their responses to Ricoh's interrogatories and requests for admission.**

1. Ricoh's Position. Similar to the timing issue for the production of documents, defendants refuse to supplement their initial disclosures or their responses to Ricoh's written discovery requests prior to October 7, 2005. Defendants' delay effectively prevents Ricoh from timely obtaining discovery as contemplated by Judge Jenkins. Ricoh seeks an order compelling defendants to supplement all written discovery responses by no later than September 2, 2005. In addition, on August 11, 2005, Ricoh served a third set of discovery requests upon all defendants, the responses to which are due on September 13. Defendants claim that it is "outrageous and unreasonable" to be required to produce documents thirty days after receipt of a document request. Because defendants have refused (and continue to refuse) to produce large categories of relevant and responsive documents[16] absent an explicit Court Order (e.g., their promised production is "subject to their objections"),

---

accused product they found each element of the asserted claims. Ricoh's last amended Preliminary Infringement Contentions did not provide that information. For example, Ricoh's Amended Preliminary Infringement Contentions did not specify what in the accused products constitutes the "expert system knowledge base," the "set of rules for selecting," or "architecture independent actions and conditions." Rather, Ricoh stated identical contentions for each defendant stating "[defendant] infringes claim 13 by performing a process . . . in which [it] describes input specifications (using User Interfaces) and synthesizes such specifications using the combination of Design Compiler, HDL Compiler, and the Synthesis Libraries." Synopsys thus finds itself, after more than two years of litigation, and more than 46 weeks of access to the source code by Ricoh, still completely in the dark with respect to how Ricoh reads any of the elements of the claims-at-issue on the products-in-suit.

[16] The vast majority of the documents produced to date by the defendants are documents that they allege constitute prior art.

Honorable Edward M. Chen
August 30, 2005
Page 17

defendants should be instructed that their responses are to be substantive, and all responsive documents should be produced simultaneously.

With respect to defendants' initial disclosures, there are many individuals and third parties that have not been properly identified and that Ricoh is unable to locate or contact. Defendants' counsel agreed to timely supplement when information came to the attention of their *clients*; however defendants' counsel refuses to supplement when relevant and responsive information is obtained by *counsel* and not the client. Although defendants claim that "Ricoh's counsel is fully capable of conducting its own investigation," it ignores the fact that Ricoh has already tried, and been unable to contact a large number of persons or entities listed in defendants' initial disclosure. If defendants do not disclose anything more than a name of an individual (with no address or other information) or the name of a company, then the entire purpose of the disclosures is defeated. The Court should compel defendants to supplement their initial disclosures with all relevant and responsive information pursuant to Rule 26(e) by September 2.

Attached as Exhibits 28-30 are defendants' responses to Ricoh's interrogatories, many of which need to be supplemented. With respect to many of these interrogatories, the defendants had objected since at the time in 2004 there had not yet been a Markman decision; the Markman claim construction decision however was rendered in April of this year and Ricoh is still waiting for the supplemental responses now that there is a ruling on claim construction.[17] Rather than argue each interrogatory individually (as defendants have done in their response), Ricoh lists below the individual interrogatories and, to the extent discussion is needed, will be prepared to address them at the hearing.[18] For each interrogatory relying on Fed. R. Civ. P. 33(d), Ricoh requests production of all documents that the 33(d) response relies on.

- Aeroflex's responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7, 8, 10.

- AMIS' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7, 8, 10.

---

[17] During none of the meet and confer conferences in June, July, August 22 or August 24 did the defendants raise the objections they now discuss below (other than as to a few specified topics where they refuse to provide any discovery). The issue discussed here is one of timing so that Ricoh at least quickly gets the responses and the documents that the defendants state they are willing to provide and Ricoh can follow up later as necessary on other issues.

[18] By purporting that "deadlines for supplementation" are "reciprocal to all parties," Defendants apparently are attempting to raise for the first time Ricoh's discovery responses. Defendants have not identified any shortcomings with Ricoh's discovery responses, and there has been no meet and confer on the matter nor even any request by the defendants for a meet and confer conference to be held.

Honorable Edward M. Chen
August 30, 2005
Page 18

- The Matrox entities' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 10.

- Matrox Tech had represented in its responses to Ricoh's Requests for Production of Documents that it has no documents, yet its responses to interrogatories rely heavily on Rule 33(d). Matrox Tech must (i) supplement its responses to Ricoh's requests for documents (and produce all responsive documents) and/or (ii) supplement its responses to interrogatories to remove the 33(d) references and provide full substantive responses.

With respect to Ricoh's request for admissions, defendants' responses should be supplemented to remove objections based on purported ambiguity since they are based on scope of phrases including claim terms have now been construed by the Court, as well as terms that the parties previously agreed to use. See Exh. 31 hereto, 4/29/04 letter between counsel reciting agreements re discovery terms.

The following responses to document requests need to be supplemented

- Aeroflex's responses to Ricoh's First Set of Document Requests Nos. 9, 12, 14-20, 28, 30, 35.

- AMIS' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28, 29, 30, 33, 35, 37.

- Matrox Entities' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28-30, 33, 35, 3).

- Synopsys' responses to Ricoh first set of Document Requests Nos. 2, 14-15, 16-23 and 32.

2. Customer Defendants' Position. This topic includes four separate subtopics that we will address in order. All deadlines for supplementation of initial disclosures, document requests, interrogatories, and requests for admission are understood by Synopsys and the Customer Defendants to be reciprocal to all parties. Synopsys and the Customer Defendants have not received any supplementation by Ricoh, nor any responses to Synopsys' Second Set of Requests for Production, dated July 16, 2004.

Subtopic 1 – Initial disclosures

As we have indicated in several meet and confer sessions to date, we have provided all of the contact information possessed by the Customer Defendants or Synopsys for all individuals and companies referenced in the Initial Disclosures. We have committed to provide contact information for the individuals listed promptly, if Synopsys or the Customer Defendants should come into possession of it. In terms of the companies listed, these were simply an identification of companies that were

involved in the logic synthesis business in the relevant timeframe that might have prior art. We did not have particular contacts at these companies, or particular individuals in mind. We believe that providing contact information for people whom may be identified at these companies through counsel's prior art searches or other work product exceeds the Initial Disclosure obligations. Ricoh's counsel is fully capable of conducting its own investigation.

Subtopic 2 – Interrogatories

The Customer Defendants will supplement their responses to Ricoh's interrogatories as appropriate. In general, many of these responses are related to information that is the subject of the ongoing document collections. We are making best efforts to complete document collection by October 7, 2005, and to supplement the responses at that time, and provide the relevant documents pursuant to Rule 33(d).

Interrogatory numbers 2 through 5, and 8 all deal with product information. The Customer Defendants will provide product information consistent with their Product Declarations. Information relevant to these interrogatories is being collected during current document collection, and the responses will be supplemented after the document collection is complete.

Interrogatory number 7 deals with the response to the complaint. By requiring the Customer Defendants to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has essentially served 100 separate interrogatories and far exceeded the 50 interrogatory limit. Identifying "all persons" having knowledge of the facts set out in Defendant's response to the Complaint is unreasonable and unduly burdensome. In addition, much of the information requested is protected from discovery by the attorney-client privilege and/or the attorney work product doctrine, or is more properly the target of expert discovery. To the extent that this is a contention interrogatory, our investigation and analyses are ongoing, and we reserve the right to supplement at a later date. In addition, to the extent that this interrogatory calls for noninfringement or invalidity contentions, it is entirely premature since Ricoh has yet to produce any meaningful infringement contentions whatsoever,[19] let alone their Final Infringement Contentions., and the Final Infringement Contentions are not yet due Subject to the above objections, to the extent that additional non-privileged information exists, the response will be supplemented.

Interrogatory number 10 deals with the responses to Ricoh's 20 requests for admission. This interrogatory therefore contains impermissible subparts, and by requiring the Customer Defendants to state forth in detail each and every reason of the detail, and the identity of the documents upon which such denial is based, Ricoh has essentially served forty more interrogatories after already exceeding the 50

---

[19] The Amended Preliminary Infringement Contentions Ricoh provided are in violation of this Court's June 17, 2005 order.

Honorable Edward M. Chen
August 30, 2005
Page 20

interrogatory limit through the subparts of interrogatory 7.  Subject to the above objections, to the extent that additional non-privileged information exists, the response will be supplemented.

To the extent that Matrox Tech does not have documents responsive to the interrogatories for which it specified it would provide documents pursuant to Rule 33(d), interrogatory numbers 1 through 5, 8, and 9, it will supplement its response.

Subtopic 3 – Document requests

New document requests

Ricoh's request to have documents responsive to their third set of document requests (served on August 11, 2005) ordered to be produced on the same day as the related objections and responses are due is outrageous and unreasonable.

Previous document requests

Synopsys and the Customer Defendants will supplement their responses to Ricoh's document requests served prior to the discovery stay as appropriate.  In general, many of these responses are related to information that is the subject of the ongoing document collections.  We are making best efforts to complete document collection by October 7, 2005, and to supplement the responses at that time.

Customer Defendant document request numbers 2 through 5 all deal with product information.  The Customer Defendants will provide inputs, scripts, designs, specifications, libraries (target technology, synthetic, symbol, link, design, and GTECH), and netlists for the digital portions of the commercially sold products listed in the Product Declarations, as well as other documents related to logic synthesis of these products.  Subject to the above objections, this response will be supplemented as appropriate.

Customer Defendant document request 8 asks for documents concerning any Synopsys product.  This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit, as identified at the recent Case Management Conferences.  Subject to the above objections, this response will be supplemented as appropriate.

Similarly, Customer Defendant document request 11 asks for documents concerning a list of third party synthesis tools.  This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit, as identified at the recent Case Management Conferences.  Therefore, we will not produce documents for this request.

Customer Defendant document request 10 asks for all documents concerning Synopsys.  This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit, as

Honorable Edward M. Chen
August 30, 2005
Page 21

identified at the recent Case Management Conferences.  Subject to the above objections, this response will be supplemented as appropriate.

Similarly, Customer Defendant document request 13 asks for documents concerning Cadence Design Systems.  This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit.  Therefore, we will not produce documents for this request.

Customer Defendant document request 33 asks for documents concerning all proprietary or third party hardware or software used by, or on behalf or, or at the direction of the Customer Defendant in the practice of an ASIC method.  This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit.  Subject to this objection, we will supplement our response, as appropriate.

Customer Defendant document request 9 asks for documents concerning cost savings as a consequence of licensing or using any Synopsys product.  This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit.  Subject to this objection, we will supplement this response as appropriate.

Similarly, Customer Defendant document request 12 asks for documents concerning cost savings as a consequence of using any of a number of third party products.  This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit.  Therefore, we will not produce documents for this request.

Customer Defendant document request numbers 14, 15, and 17 through 19 all ask for marketing, sales, and profit information related to the Customer Defendants' ASICs.  The information on ASICs is irrelevant to this case, as the result of the method in the relevant claims is design data (either a netlist, in the case of claims 13, and 15-17, or mask data, in the case of claim 14), which is not used directly in the manufacture of an ASIC.  Therefore, we will not produce documents for this request, or supplement our responses.  See discussion of sales and marketing data under topic C below.

Similarly, Customer Defendant document request number 16 asks for manufacturing information related to the Customer Defendants' ASICs.  This information is also irrelevant, for the same reasons specified in the previous paragraph. Therefore, we will not produce documents for this request, or supplement our responses.  This issue was discussed extensively at the Case Management Conference and was address in the Joint Case Management Conference Statement.  The Court agreed to hear the Customer Defendants' § 271(g) summary judgment motion early in part to avoid this discovery.  The claims-at-issue are not related to manufacturing.  See discussion of manufacturing related discovery and § 271(g) discovery below under topic C.

Customer Defendant document request number 28 asks for all pending patent applications concerning any ASIC method. This request is overbroad to the extent it purports to require information outside front-end logic synthesis. In addition, pending patent applications from Synopsys and the Customer Defendants are subject to a heightened relevancy requirement that Ricoh has not met. Therefore, we will not produce documents for this request. See topic D below.

Customer Defendant document request number 29 asks for information related to examinations, tests, or studies with respect to any ASIC method. This request is overbroad to the extent it purports to require information outside front-end logic synthesis, as well as vague and ambiguous. In addition, this request is overbroad to the extent that it calls for data related to logic synthesis designs that were never commercialized, as agreed during the Case Management Conference. We are not sure what data Ricoh seeks, so we are unable to supplement at this time.

Customer Defendant document request number 30 asks for information related to analysis of the patent-in-suit, or of infringement or invalidity thereof. This document requests calls for the production of information covered by the attorney-client privilege or work product doctrine. In addition, to the extent that the Customer Defendants decide to rely upon an opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court. Therefore, we will not produce documents for this request.

Customer Defendant document request number 35 asks for information related to indemnification with respect to the patent-in-suit. We object to the extent this request calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, and calls for a legal conclusion. The licenses containing the indemnity provisions have already been produced. We are not aware of any other non-privileged documents related to this subject.

Customer Defendant document request number 37 asks for all documents relied upon or referred to in preparing the response to the Complaint. This request calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. Therefore, we will not produce documents for this request.

Synopsys document request number 2 asks for document retention policies from the issue date of the patent on May 1, 1990. Synopys has already provided responsive documents, and will produce any other non-privileged responsive documents located after a reasonable search.

Synopsys document request numbers 14 through 16 ask for documents related to relationships or agreements between Synopsys and the Customer Defendants. This request is overbroad to the extent that it calls for information about anything outside the products-in-suit. Subject to this objection, Synopsys has already provided responsive documents, and will produce any other non-privileged responsive documents located after a reasonable search.

Synopsys document request numbers 17 through 22 ask for documents related to the design, capabilities, features, functions, operation, use, programming, implementation, documentation, and training of a list of many Synopsys products. This request is overbroad to the extent that it calls for information about anything outside the products-in-suit. Subject to this objection, Synopsys has already provided responsive documents including source code, product manuals, and release notes regarding the products-in-suit, and will produce any other non-privileged responsive documents located after a reasonable search.

Similarly, Synopsys document request 23 asks for documents related to the capabilities, features, functions, operation, and use of the output of Synopsys' ASIC Design Systems. The term "ASIC Design Systems" is vague and ambiguous. In addition, this request is overbroad to the extent that it calls for information about anything outside the products-in-suit. It is also overbroad to the extent it calls for anything other than the netlists, which are the output of claims 13, and 15 through 17, and which we have already agreed to produce. With respect to the output of claim 14 (mask data), we have agreed to provide a stipulation for each product identified in the Product Declarations, as to whether the named Customer Defendants produced mask data. This stipulation is being offered in lieu of any mask data production, since there are no claim elements to be analyzed for infringement. Claim 14 merely requires that, using the netlist resulting from the process described in claim 13, you produce mask data. To the extent Ricoh believes this topic is relevant to the Customer Defendants' § 271(g) motion, see topic C, subtopic 2, discussion below.

Synopsys document request 32 asks for documents concerning semiconductor product royalty rates. This request is not reasonably related to lead to the discovery of admissible evidence. We will not produce documents for this request. See discussion of Customer Defendants' ASIC marketing and sales discovery below under topic C, subtopic 3.

In summary, Synopsys and the Customer Defendants will supplement their discovery responses as appropriate, once the document collection is complete.

**C. Defendants' refusal to produce relevant and responsive documents.**

1. Ricoh's Position. Defendants have taken the position that there should be no merits discovery whatsoever on a wide range of issues relating to Ricoh's infringement claims until Judge Jenkins rules on a pending motion for partial summary judgment. Judge Jenkins had proposed to the defendants that this motion should be held until after the end of all discovery, but the defendants insisted in filing it earlier; the hearing on this motion is set for November 1. Defendants are refusing to produce documents relating to the proximate relationship between the ASIC defendants' design of ASICs and the manufacture of those ASICs, or any documents regarding marketing and sales of the ASIC chips. On July 13, 2005, Judge Jenkins rejected defendants' request for such a stay of discovery on these topics, and ordered merits discovery on all issues to proceed immediately. For this reason, defendants' current attempt to repeat

this request should be denied and they should be ordered to produce all relevant and responsive documents immediately.

Even if the Court was willing to again consider the basis for defendants' refusal to produce documents, however, it makes no sense. Defendants apparently contend that the resolution of their motion for partial summary judgment may narrow the scope of discovery, because if the motion is granted Ricoh's claims would be limited to §271(a). But §271(a) is the broadest infringement claim, and implicates all of defendants' infringing conduct. All of the defendants have substantial operations in the U.S. Thus, even if the motion was granted, Ricoh would still be entitled to widespread discovery regarding all of the defendants' design, manufacture and sale of ASICs. Under §271(a) and §284, Ricoh is entitled to at least "a reasonable royalty for the use made of the inventions *by the infringer*" – in other words, a royalty on the sales of ASICs received by the ASIC defendants as a result of their use of the patented process.[20] Thus, even if the motion was granted, Ricoh would still be entitled to damages discovery regarding all of the defendants' design, manufacture and sale of ASICs, and the scope of discovery would not be narrowed. This discovery should be produced immediately.[21]

---

[20] *Tec Air v. Denso*, 192 F.3d 1353, 1362 (Fed. Circ. 1999) (holding that when an infringer uses a patented process to create a product, "The entire market value rule is appropriate where both the patented and unpatented components together are 'analogous to components of a single assembly,' 'parts of a complete machine,' or constitute a functional unit' but not where the unpatented components 'have essentially no functional relationship to the patented invention and...may have been sold with the infringing device as a matter of convenience or business advantage.'" quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995)); *see also Schaefer Fan Co., v. J & D Manf.*, 265 F.3d 1282,1290 (Fed. Cir. 2001) (court can assess damages based on the entire functional unit, not just a patented portion); *King Instruments Corp. v. Perego*, 65 F.3d 941,950 (Fed. Cir. 1995) ("As long as the patentee receives a proper economic return of its investment in the acquisition of the patent, the Act does not require that return to come form the sale of the patented products"); *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983) (upholding use of the sales price of a finished unpatented product as the basis for computing damages for infringement of a process for making the product); *Wallace Business Forms, Inc. v. Uarco Inc.*, 1988 U.S. Dist. LEXIS 11191, at *28-29 (N.D. Ill. 1988) (determining a reasonable royalty to be 6% of the revenue the infringer received for sale of products made by a patented process); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 1988 U.S. Dist. LEXIS 15910, at *27 (E.D. Tenn. 1988) ("Where a process or method patent is involved, the damage award may be based upon sales of products, made by the infringing process."), *aff'd in relevant part and vacated in part*, 883 F.2d 1573 (Fed. Cir. 1989), *aff'd*, 948 F.2d 1573 (Fed. Cir. 1991).

[21] During the August 22 meet and confer, defendants argued that Ricoh's measure of damages should be no greater than the ASIC defendants' cost of the Synopsys licenses. Defendants' counsel has confused Synopsys' indemnity obligations to the ASIC defendants with Ricoh's recoverable damages under 35 U.S.C. §284. Defendants have not cited any case saying the reasonable royalty should be based on a cost paid by the infringer to another party. Contrary to *Riles v. Shell Exploration and Production Co.*, 298

Honorable Edward M. Chen
August 30, 2005
Page 25

        Defendants also have refused to produce any documents relating to the
relationship between the design and the ultimate production of the ASICs.  If the motion
under 271(g) is denied, then the issue of proximate relationship between design and
production remains an issue for trial.  Defendants erroneously argue that no additional
discovery should be taken because Ricoh's counsel said that, if required, Ricoh could
respond to the partial summary judgment motion without it.  Ricoh has already responded
to the motion (D.I. 320), but Ricoh's discovery requests are relevant to Ricoh's obligation to
prove at trial the proximate relationship between design and manufacture.  Ricoh asked
defendants to agree that if their motion under Section 271(g) is denied then will they
stipulate that there is a proximate relationship; the defendants refused and instead indicted
that Ricoh must still address the issue at trial.  There is no reason to allow the defendants to
unilaterally impose a stay discovery on this subject, especially since Judge Jenkins refused
to grant them that requested stay during the CMC conferences.  Yet, the defendants refuse
to provide discovery on the topic.

        In their statement of their position below, defendants are essentially seeking
summary judgment precluding Ricoh from pursuing its damages theory, arguing that
"Ricoh cannot collect damages on the sale of ASICs."  While Ricoh of course sharply
disputes this argument, defendants' argument at this stage is inappropriate; the discovery
issue is whether Ricoh's discovery of the relationship between design an manufacturing,
and sale and marketing, is reasonably calculated to lead to admissible evidence – and the
answer is yes.  It is noteworthy that, as reflected in the CMC (D.I. 315, Exh. 3), defendants
argued strenuously for a discovery stay of these topics, and the Court rejected the request
and ordered all discovery to proceed immediately.

        Likewise, defendants are refusing to produce emails and other internal
documents relating to the ASIC Methods used by defendants, including their input
specifications, netlists and mask data.  One of the fact issues that exists in light of the

---

F.3d 1302 (Fed. Cir. 2002) cited by the defendants, there has been no dispute that here
the ASICs that are alleged to be designed by the process of the claims in issue are the
ones for which Ricoh seeks damages based on their sales.  The *Riles* court did not hold,
as defendants argue, that the cost of the finished platform is "completely irrelevant" to
a damages determination, but instead held that the proposed royalty measure must not
include costs of manufacture unrelated to the method.  Indeed, later in the *Riles* opinion,
the Federal Circuit explicitly recognized as proper the defendant's use of the difference
in cost to manufacturer the product using infringing and non-infringing methods as a
basis for calculating damages.  *Id.* at 1313. (recognizing that the cost savings the
Defendants would have realized by using a non-infringing method is relevant to the
damages inquiry).  Defendants cite to *Embrex Inc. v. Service Engineering Corp.*, 216 F.3d
1343, 1349-1350 (Fed. Cir. 2000).  *Embrex* held: "Royalties for infringement are ordinarily
computed based upon *the sales of a patented product or process.*"  This decision actually
supports Ricoh's position since it shows that reasonable royalties must be based on the
sales by the infringer and the ASIC defendants are the only accused infringer in this
litigation.  The decision does not otherwise support defendants' arguments.  Defendants
continue to refuse to provide any discovery as to their costs and sales.

claim construction order is whether the nature of defendants' inputs use a form of RTL that is disclosed in the '432 patent, or whether it is a form of RTL that is described in the prior art Darringer patent. On August 22, defendants stated that they would only produce the inputs themselves, and none of the emails or other internal documents relating to those inputs. Likewise, they are refusing to produce any of the emails or other internal documents relating to the outputs, such as the documents showing the connection between design and manufacturing. These issues are hotly contested, but defendants are simply refusing to collect and produce all of the documents.[22]

     2. Customer Defendants' Position. This topic includes four separate subtopics that we will address in order.

     Subtopic 1 – Discovery regarding manufacturing

     Many of the disputes between the parties center around the relevance of ASIC manufacturing to this case. With the exception of the § 271(g) issues that are addressed below in subtopic 2, manufacturing related documents and information are irrelevant to this case because the claims-at-issue deal with methods of **designing** an ASIC and do not address manufacturing in any way. In fact, in its claim construction ruling, the Court determined that the "computer-aided design process" described in claim 13 of the '432 patent "does not include a manufacturing process for ASICs." Claim Construction Order at 7-8.

     Despite the fact that this information is irrelevant to the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence, Ricoh has propounded numerous discovery requests on this topic. *See*, *e.g.*, Document Request No. 5 to all Customer Defendants ("Produce all documents concerning the conception, design, development, manufacture, or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.").

     Several of the Customer Defendants are foundries. Thus vast amounts of their documents will be related to manufacturing. The Customer Defendants should not be put through the overwhelming burden and expense of collecting and producing these documents given their complete lack of relevance to this case.

     Subtopic 2 – § 271(g) motion

---

[22] Although defendants claim that they did not refuse to produce these documents, during the August 22 and 24 meet and confers, they flatly refused production, and a careful review of their portion of the joint letter reveals no commitment to produce them. They also claim that the parties are continuing to meet and confer regarding a potential stipulation, but at the August 24 meet and confer, they said that no stipulation would be forthcoming. And as noted above in Section A, defendants' obligation to produce emails has never been modified by any meet and confer.

During the July 13, 2005 Case Management Conference, Judge Jenkins asked Gary Hoffman if Ricoh needed any discovery other than the depositions of the declarants in order to oppose our § 271(g) motion.  Mr. Hoffman indicated that Ricoh did not.  The depositions of the declarants have already taken place, and Ricoh has, in fact, already filed its opposition.

Contrary to Ricoh's mischaracterizations, Judge Jenkins agreed to hear this summary judgment motion early, prior to the May hearing date set for dispositive motions, precisely in order to limit the outrageously broad discovery Ricoh seeks (particularly as it relates to the subjects of manufacturing and damages), and that we believe will be made irrelevant based upon our successful motion.[23]  Several of the Matrox entities have either no design facilities at all or design facilities only in Canada, such that they may be eliminated from the suit, or at the very least the products that are designed entirely outside the United States may no longer be relevant.

One issue the Court must determine in ruling on the § 271(g) motion is the relationship between the claimed method, which is directed to one aspect of the design of ASICs, and the accused ASICS themselves.  Specifically, the Court must decide whether the claimed process is used **directly** in the manufacture of ASICs.  If not, the process claims cannot support a § 271(g) claim.

As articulated in our § 271(g) motion and its supporting declarations, the output of the patented processes is a netlist (claims 13 and 15-17) or mask data (claim 14).  Neither a netlist nor mask data can be used to **directly** manufacture an ASIC.  Instead, after many steps, the mask data created from the patented process of claim 14 can be used to generate photomasks.  It is these photomask that are used in the manufacturing process, which also has many steps, to generate ASICs.  Because the output of the patented process is **not** used directly in the manufacture of ASICs, it does **not** have the requisite proximity to the ASIC end product, and cannot support a § 271(g) claim.

In addition, if the § 271(g) motion is successful, discovery into the proximate relationship between the claimed design methods and the accused ASICs will be completely unnecessary.  Therefore, any manufacturing discovery will also be

_____

[23] In fact, Judge Jenkins had indicated that this motion could be put right back onto the motion practice calendar noticed for any date we wanted after the depositions were completed.  No other related discovery was contemplated.  In fact, Judge Jenkins made it clear he would not entertain an F.R.C.P. Rule 56(f) motion in connection with the motion.  Ricoh again mischaracterizes the events by suggesting that a stay was denied. The Court and the Customer Defendants intended that this motion would be heard promptly precisely so that the Customer Defendants would not have to engage in irrelevant discovery.  Unfortunately, when the Customer Defendants renoticed the motion for September 13, 2005, that date was unavailable, and the hearing date for the motion was postponed to November 1, 2005.

Honorable Edward M. Chen
August 30, 2005
Page 28

unnecessary. The Court should not require us to produce manufacturing discovery as it relates to this issue unless the Court denies our § 271(g) motion.

Subtopic 3 – Customer Defendants' ASIC sales and marketing data

Ricoh's argument regarding its entitlement to documents related to the Customer defendants' ASIC marketing and sales data is premised on the notion that it ultimately will be entitled to recover a reasonable royalty on defendants' ASIC sales pursuant to 35 U.S.C. §271(a). Defendant is wrong,[24] and on this basis alone, Defendants' request for this burdensome and highly proprietary discovery should be denied.

Ricoh has asserted only method claims. Damages for infringement of a method or process can only be awarded based on the value of the use of the process. 35 U.C.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the *use made of the invention by the infringer*"); *see also Embrex Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1349-1350 (Fed. Cir. 2000). "Royalties for infringement are ordinarily computed based upon *the sales of a patented product or process*." *Id.* (reversing and remanding damages award for calculation of a reasonable royalty tied to use of the infringing process).[25]

---

[24] In support of its assertion, Ricoh ignores all recent Federal Circuit authority on this issue, and instead cites a 1983 Federal Circuit case and two unreported and nonbinding district court cases. This alone should raise great suspicion about Ricoh's argument. Not surprisingly, Ricoh's cases are inapposite. *Central Soya* is a lost profits case. The Court found that Hormel converted 80% of Central Soya's customers through its use of the patented method and, thus, damages were awarded as a reasonable percentage of the lost business – not as a reasonable royalty. This is not a lost profits case, which would require as a prerequisite that Ricoh be in direct competition with Synopsys in the logic synthesis software market, which it is not. Nor do any ASICs manufactured by Ricoh compete directly with the Customer Defendants' ASICs designed with the products-in-suit. *State Industries* and *Wallace Business Forms* are both cases in which the claimed method directly resulted in the product on which royalties were awarded. Here, an ASIC does not result from use of the claimed method.

[25] Synopsys and the Customer Defendants believe that the entire market value rule cited in Plaintiff's section above has no applicability to this case. That rule applies where an infringing product is a component of another product and the two together are "analogous to components of a single assembly," are "parts of a complete machine," or they "contribute a functional unit." *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538 at 1550. Such is not the case here. The processes of the claims-in-suit result in design data, not a physical product.

Honorable Edward M. Chen
August 30, 2005
Page 29

Indeed, the Federal Circuit recently has reversed a damages award based on the value of the product produced as a result of practicing a method as opposed to the value of the use of the method. In *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302 (Fed. Cir. 2002), the patent at issue was a method of offshore oil installation. A jury found the patent infringed, and awarded damages. The defendant appealed the damages award, and the Federal Circuit reversed the award because there was no evidentiary basis for the award that was linked to the **use** of the infringing method.

In *Riles*, the patentee argued that the award could be supported based on: (1) a reasonably royalty applied to the value of the platform built using the infringing method; (2) a reasonable royalty applied to the value of the petroleum producing using the platform built using the infringing method; and (3) a combination of both. The Federal Circuit rejected all attempts to support the award, finding instead that damages must be tied to the value of the use of the method. *Id.* at 1313 ("Under either theory of patent damages, the market would pay Riles only for his product - a method of anchoring offshore oil rigs without mud mats. Mr. Dry's model does not associate his proposed royalty with the value of the patented method at all, but with the unrelated cost of the entire Spirit platform, which includes much more than the cost of anchoring without mud mats."). The Court found that the Plaintiff's damage theory was based on the incorrect assumption it could collect a reasonable royalty based on the value of the platform built using the infringing method because it could successfully enjoin use of the platform. The Federal Circuit unequivocally rejected this theory, which applies with equal force here.

As discussed above in subtopic 2, the method at issue here is a method for producing a netlist or mask data – steps in the design process (not the manufacturing process) that is far removed from the ultimate production of the ASIC. The result of using Ricoh's patented method (claim 13) is essentially, a list of the cells to be used and their interconnections – like a blueprint. The netlist is not used to manufacture ASICs. Rather, through many steps, the netlist is used to create mask data. This mask data is used in the creation of photomasks, not ASICs. The photomasks are then used in the many other manufacturing steps for the production of ASICs. Notably, Ricoh does not – either here or in its opposition to Defendants § 271(g) motion – assert that practicing the patented method alone results in an ASIC.

In accordance with *Riles* and *Embrex*, Ricoh can accordingly only collect damages on the *value of the use of the patented method*. The patent at issue in *Riles* claimed a "method of anchoring offshore oil rigs without mud mats," the end result of which was an installed oil rig. Notwithstanding this, the Federal Circuit rejected damages theories based on the value of the rig or the production of the rig because the patentee would not be entitled to an injunction as use of the rig. As in *Riles*, Ricoh could not enjoin the use of ASICs, the sale of ASICs, or even the use of the masks. Therefore, Ricoh cannot collect damages on the sale of ASICs.

Because the discovery that Ricoh seeks is irrelevant as a matter of law, Ricoh's request for this discovery should be denied. To the extent that the Court is inclined to permit this discovery, the Customer Defendants request an opportunity to separately

brief this issue on a normal briefing schedule. The Customer Defendants have had less than 48 hours to provide their section of this letter which is addressed to a multitude of issues.

Subtopic 4 – Documents related to ASIC Methods

Contrary to Ricoh's assertion, we did not indicate a blanket refusal to produce email and other documents related to "ASIC Methods" used by the Customer Defendants. Instead, we indicated that the term "ASIC Methods" was overly broad, and that the collection and production of documents would be limited to those that relate specifically to logic synthesis using the products-in-suit. Documents related to back-end design (after the netlist) are irrelevant, since the claims at issue do not require any specifics other than that mask data is generated. As stated above, we are meeting and conferring regarding appropriate stipulations regarding the same. Collecting documents related to Ricoh's broad definition of ASIC methods, including back-end design as well as manufacturing, would be an excessive burden for production of documents that are neither relevant nor likely to lead to discovery of admissible evidence.

We intend to produce relevant email. We are meeting and conferring with Ricoh's counsel regarding search terms that may be utilized in searching for responsive email.

**D. Defendants' refusal to produce or even to identify their patents and patent applications relating to ASICs and logic synthesis.**

1. Ricoh's Position. Ricoh has requested that defendants produce their patents and patent applications worldwide relating to ASICs and logic synthesis. See Exh. 32, Ricoh's 5/30/03 document request to all ASIC defendants, nos. 7 and 28; Exh. 33, Ricoh's 10/23/03 document request to Synopsys, no. 3. These documents are reasonably calculated to lead to discovery of admissible evidence because those patents and patent applications are likely to contain useful statements distinguishing prior art (including the prior art that defendants have identified in their preliminary invalidity contentions); explaining how their ASICs are designed and manufactured; and describing the logic synthesis process that Ricoh contends is infringing. Defendants, however, refuse to produce either the patents or patent applications, or to produce even a list of those patents and applications, let alone an abstract of the patents and applications. Defendants argue that Ricoh should first demonstrate that the patents and applications are relevant; however, it is unduly burdensome (in the case of some of the patents) or impossible (in the case of other patents and most applications) for Ricoh to obtain a complete list of all of the U.S. and foreign patents and applications. Ricoh does not know even every country where the defendants filed for patents. The defendants insist that Ricoh should bear the burden of searching data bases throughout the world in hopes that the records are accurate and complete, that Ricoh picks the right countries, that the patents and applications show the name of the assignee and that the files are publicly available. Ricoh cannot search for patents where the assignment to the defendant is not apparent, and cannot search applications that have not been published.

Honorable Edward M. Chen
August 30, 2005
Page 31

However, all of these files are readily available in defendants' files, all they need to do is open up a file drawer, make a list and produce the copies; obviously the burden on the defendants is minimal at most. These documents are reasonably calculated to lead to discoverable evidence and should be promptly produced.[26] Defendants' concerns regarding confidentiality is satisfied by the stipulated protective order.

2. Customer Defendants' Position. Ricoh is not entitled to obtain the patents and patent applications of the Customer Defendants. Ricoh has propounded an extraordinarily overbroad request for every patent and patent application Synopsys and each of the Customer Defendants has obtained or filed anywhere in the world which deals with ASICs and methods of designing ASICs.

In the first instance, the subject matter of the request is excessively overbroad to the extent it relates to anything other than logic synthesis – the subject matter of the claims at issue. Second, Ricoh is unable to articulate any specific need for this information — rather, it speculates that the documents are "likely to contain useful statements distinguishing prior art. . . ; explaining how their ASICs are designed and manufactured; and describing the logic synthesis process that Ricoh contends is infringing." Given the broad nature of its request, the burden on the Customer Defendants to provide this information, the ability of Ricoh to search the public patent records, and the Congressional policy of protecting the confidentiality of nonpublished patent applications, Ricoh is not entitled to any of this information.

In addition, Ricoh has the burden of obtaining for itself the publicly-available patents and patent applications it seeks. As for publicly-available information, Ricoh claims that the Customer Defendants must provide the requested information because it is unduly burdensome "for Ricoh to obtain a complete list of all of the U.S. and foreign patents and applications [it has requested]." This is simply untrue.

Ricoh is perfectly able to search databases of every single issued patent and published patent application using free search engines provided by patent offices the world over. *See, e.g.*, http://www.uspto.gov/patft/index.html (USPTO);

---

[26] In *Mushroom Associates et al. v. Monterey Mushrooms, Inc., et al.*, 1992 WL 442898, at *2 (N.D. Cal. 1992), the Court ordered production of patents and "all other patent application pertaining to mushroom processing....this court finds that the plaintiff's request satisfied the broad definition of relevance established by the federal rules." The court added that the patent applications are directly relevant to the plaintiff's case for willful infringement. *See also Paper Converting Machine Co. v. Magna-Graphics Corp.*, 207 U.S.P.Q. 1136, 1137 (E.D. Wis. 1980) (compelling discovery of a patent application and file history); *Bott v. Four Star Corp.*, 675 F. Supp. 1069, 1075 (E.D.Mich. 1987) (approving of interrogatory requiring identification of "all other patents and patent applications (worldwide) owned or controlled by the Plaintiff … relating to the subject matter of the Patents"). Even defendants' cited cases agree that discovery of patents and patent applications are relevant; defendants' refusal to provide even a list and abstract of the patents and applications simply reflects their fight every issue mentality.

Honorable Edward M. Chen
August 30, 2005
Page 32

http://patents1.ic.gc.ca/intro-e.html (Canada); https://publications.european-patent-office.org/PublicationServer/search.jsp (Europe); http://www.wipo.int/ipdl/en/ (PCT applications). Moreover, for reasonable fees, Ricoh can pay a service to undertake this search for it. *See, e.g.*, http://www.faxpat.com/productinfoS.html.

Ricoh suggests that the burden on the Customer Defendants is "minimal at most" because "all they need to do is open up a file drawer, make a list, and produce the copies." This is not true. Because of the overbroad and vague nature of the request (all patents "relating to ASICs and logic synthesis") Ricoh wants the Customer Defendants to divine exactly what patents Ricoh seeks. Because Ricoh has multiple, minimally-burdensome ways to locate the exact patents it wishes to locate, it must do so rather than shift the burden of a worldwide search to the Customer Defendants. *See Allen v. Howmedica Leibinger, Inc.*, 190 F.R.D. 518, 525 (D. Tenn. 1999) (refusing to compel discovery where "information similar to that sought by Dr. Allen seems to be publicly available from sources that are more convenient, less burdensome, or less expensive, without subjecting Danek to undue burden. . . .").

Ricoh has not provided any basis for obtaining the confidential patent applications of the Customer Defendants. Ricoh also wishes to obtain non-public patent applications filed by the Customer Defendants and Synopsys which are maintained by the U.S. Patent and Trademark Office in confidence pursuant to 35 U.S.C. § 122. Although the statute is not binding on the courts, *Fischer Imaging Corp. v. Lorad Corp.*, 148 F.R.D. 273, 274 (D. Colo. 1993), courts further the Congressionally-mandated policy of confidentiality by requiring a showing beyond Rule 26 relevance before ordering the disclosure of confidential patent applications. *See, e.g., ICU Medical, Inc. v. B. Braun Medical, Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002) ("In determining whether or not to permit discovery of a pending patent application, the courts have uniformly recognized that a heightened relevancy standard must be applied to patent applications and materials related thereto."). "The Court must weigh the requesting party's interest in materials against the objector's legitimate interest in secrecy." *Id.*

Under this heightened relevancy standard, a confidential patent application is discoverable when: (i) the patent is within the family tree of a patent-in-suit, *see Central Sprinkler Co. v. Grinnell Corp.*, 897 F. Supp. 225, 229 (E.D. Pa. 1995) ("[M]any courts apparently routinely order disclosure of applications stemming from the patents in suit."); or (ii) there is a **specific** showing of **direct** relevance or particularized need, *see Fischer*, 148 F.R.D. at 275 (denying discovery of defendant's patent applications where "[n]o specific showing of direct relevance or particularized need has been made"). Because the Customer Defendants and Synopsys do not have any patents-in-suit, Ricoh must make a specific showing of direct relevance or particularized need in order to obtain the requested patent applications. It has not done so.

Ricoh's sole argument as to why the patent applications are relevant is that they are "likely to contain useful statements distinguishing prior art. . . ; explaining how their ASICs are designed and manufactured; and describing the logic synthesis process

that Ricoh contends is infringing."[27]  Courts have routinely found that such non-specific or speculative arguments are insufficient to satisfy the heightened relevancy standard for patent applications.  For instance, in *Ideal Toy Corp. v. Tyco Industries, Inc.*, 478 F. Supp. 1191 (D. Del. 1979), the defendant claimed that it "needs to search the file wrappers for admissions that could tend to invalidate the remaining patents in suit. . . ." *Id.* at 1195.  The court found that this was "not sufficient to pierce the secrecy inherent in patent proceedings [because] the probative value of such admissions generally does not outweigh the intrusion into matters generally kept secret."  *Id.*  The same result has been reached by other courts where the relevance of the patent applications sought was wholly speculative.[28]  *See, e.g., Fischer*, 148 F.R.D. at 275 (denying production when only presented with "generalized arguments that the patent applications contain information which may be probative on the questions of infringement and validity"); *ICU Medical*, 224 F.R.D. at 462 ("Defendant has not made a sufficient showing to overcome the protection afforded to Plaintiffs pending patent applications.")

Ricoh simply has not explained adequately why the broad range of patent applications it seeks is relevant.  It has therefore failed to overcome the heightened relevancy standard applicable to confidential patent applications.  *Cf. Central Sprinkler*, 897 F. Supp. at 229 (noting that the request the court granted was limited only to

---

[27] It bears noting that Ricoh can obtain a description of how ASICs are designed and manufactured and the logic synthesis process (to the extent it needs such information) more appropriately (and more directly) through deposition testimony or targeted interrogatories.  Claiming that confidential patent applications are required to obtain such information borders on the frivolous.

[28] The cases cited by Ricoh are not to the contrary.  In those cases, the party seeking discovery was either able to provide a specific showing of direct relevance of the requested patent applications (and these patent applications were specifically related to the subject matter of the patent-in-suit), or the requested applications were related to the patents-in-suit.  In *Mushroom Associates*, the plaintiff obtained, through other discovery, evidence that the patent-in-suit had been cited to the defendant during the prosecution of the '110 patent application.  25 U.S.P.Q.2d 1304, 1992 WL 442898 at *2.  The court therefore held that, due to the claim of willful infringement , "[t]he fact that one portion of the '110 prosecution history refers to the 1832 patent makes the '110 prosecution history relevant to this litigation."  *Id.*  In *Paper Converting*, the parties apparently agreed that the application at issue contained "a full description of the allegedly infringing machine. . . ."  207 U.S.P.Q. 1136, 1137.  Therefore, the court found that "the plaintiff has a right to discovery of the patent application because of its direct relevance to the matters at issue in this suit."  Finally, in *Bott*, the court, in the equitable estoppel phase of a patent case, merely noted that an interrogatory propounded in a prior phase of the case "would have disclosed a continuation in the chain of applications. . . ."  675 F. Supp. 1069, 1075.  Because Ricoh has made no specific showing of relevant information in the requested patent applications, unlike the requesting parties in *Mushroom Associates* and *Paper Converting*, nor could it show that it would obtain information on patents in the family tree of the patents-in-suit (as in *Bott*), these cases are inapposite to the present facts.

Honorable Edward M. Chen
August 30, 2005
Page 34

applications related to the patents-in-suit and did not cover "applications concerning sprinkler systems in general or any other broad category").

**E. Defendants' refusal to schedule depositions, or even commit to follow the process that they proposed in April 2004 for deposition discovery.**

1. Ricoh's Position. Deposition discovery will be complex and fast-moving. In September 2003, Ricoh served each of the defendants with detailed Rule 30(b)(6) deposition notices. (Those notices are summarized at the end of Exh. 1 to D.I. 315.) On Aug. 17, 2005, Ricoh issued a supplemental Rule 30(b)(6) Notice to each of the ASIC defendants. Ricoh also has served Rule 30(b)(6) notices to Synopsys. In early 2004, defendants indicated that there may be more than 30 designees in response to those notices. In April 2004, the parties were close to an agreement on the process for scheduling those depositions – the parties' competing proposals are set forth in their respective discovery plans, attached as Exhibits 1 and 2 to D.I. 315. In brief, the parties agreed to schedule and take depositions on a rolling basis so that at any given time there would be between six and nine Rule 30(b)(6) depositions scheduled. The parties' differences centered on the number of depositions that would be scheduled at any given time (Ricoh, of course, wanted more, defendants less) and the amount of time between depositions (defendants wanted up to 40 days; Ricoh wanted them faster). At the August 22 and 24 meet and confers, however, defendants twice refused to even discuss the process for scheduling depositions, and refused to say when they would start offering witnesses for deposition. Only in today's letter have they addressed the scheduling on the merits[29] Ricoh requests that the Court order defendants to comply with the process proposed by Ricoh in the April 2004 discovery plan (D.I. 315, Exh. 1, at pp. 7-9). Since currently there is only 5 months of fact discovery remaining, defendants should begin producing witnesses by no later than September 19, 2005. Ricoh already has identified its preferred priority of witnesses. See Exh. 34 hereto, Brothers 8/24/05 letter to Corbin.

2. Customer Defendants' Position. Synopsys and the Customer Defendants have objected and responded to the 30(b)(6) deposition notices issued prior to the discovery stay, and are currently in the process of identifying witnesses for these topics, as well as determining the availability for these witnesses. Synopsys has provided objections and responses to Ricoh's most recent 30(b)(6) deposition notice on August 26, 2005, and is identifying witnesses and determining their availability for these topics. The Customer Defendants received additional 30(b)(6) deposition notices on August 17,

---

[29] In their responsive portion, defendants have finally adopted a position and say that they will follow their April 23, 2004 proposal. This is some progress; however, because defendants have identified as many as 70 potential witnesses, it does not work. Defendants' proposal, if applied, would forbid having more than six depositions scheduled at any time, and having a 40-day turnaround between depositions effectively guarantees that Ricoh will be only be able to depose, 18 witness at most, or barely two per defendant, and many important witnesses will be missed. For this reason, the Court should adopt Ricoh's proposal, as set forth in its April 23, 2004 discovery plan.

Honorable Edward M. Chen
August 30, 2005
Page 35

2005, and will provide their objections and responses on September 6. They will identify witnesses and determine their availability shortly.

Synopsys and the Customer Defendants agree to use best efforts to utilize the process for scheduling depositions set forth in their April 23, 2003 Discovery Plan, whereby they will designate witnesses and provide proposed dates for deposition on a rolling basis. At any given time, they will have set dates for 6 different witnesses. Within 10 days of completion of a deposition, Synopsys and the Customer Defendants will identify proposed dates for at least one subsequent witness. The dates offered will fall within 40 days of the date of the previously completed deposition.

Synopsys will provide the identity of 30(b)(6) witnesses, and their availability, beginning no later than September 15, 2005. The Customer Defendants will provide the identify of 30(b)(6) witnesses, and their availability, beginning no later than September 15, 2005 for topics 1 through 11 of the original 30(b)(6) notice, which are the topics that Ricoh identified as being highest priority, and that would not require the document collection to be complete. It is our understanding that Ricoh has agreed that no witness deposed prior to the completion of the document collection will be required to testify more than once on a single topic due to later produced documents, and we are providing witnesses on that basis. The Customer Defendants will provide 30(b)(6) witnesses on all other topics beginning after the completion of the document collection.

**F. Defendants' refusal to commit to produce documents in a manner that Ricoh's counsel can access.**

1. Ricoh's Position. Defendants have indicated that they are collecting and will produce a million pages of documents, including some in electronic format, but have refused to identify at this time the necessary hardware and software needed to access the electronic files. Ricoh is concerned that, given the shortened discovery schedule, it will be virtually impossible for Ricoh to timely access and interpret this data. (In early 2004, Aeroflex produced certain electronic files on CD, and it took more than a year for defendants disclose how some of those files could be accessed.) Defendants acknowledge that the files can be printed, and Ricoh is of course prepared to pay for its copy. Ricoh seeks an order instructing defendants to produce all documents in either hard copy, or in electronic format that is readily accessible using widely available programs such as Excel, Access, Adobe or text editors.

2. Customer Defendants' Position. Synopsys and the Customer Defendants are collecting and producing documents as they are kept in the ordinary course of business. The logic synthesis design information is kept electronically, in the format appropriate to the logic synthesis and consequent design tools. To the extent it is even possible to print such files, if Ricoh desires a paper copy of this electronic information, which we anticipate would be quite voluminous, it should bear the costs of printing it.

We believe that the majority of this information is contained in viewable text files, with the rest of the information being in files that are readable by the products-at-issue. Such files may have been created for or by versions of the products-at-issue other

Honorable Edward M. Chen
August 30, 2005
Page 36

than 2003.12, the version on the current source code review machine. Synopsys has indicated that it believes that files from other versions should be able to be read by the 2003.12, perhaps with minor modifications.

   **G. Defendants' failure to preserve relevant documents, and refusal to instruct their clients to preserve those documents going forward.**

   1. Ricoh's Position. A key issue is the logic synthesis process of the ASIC chips. During logic synthesis, the Design Compiler software creates intermediate files called design libraries (and stored as design.db files). Ricoh long has sought the production of those design libraries. See Exh. 32, Ricoh's 5/30/03 document request to all ASIC Defendants, definitions 16-18; requests nos. 4, 5 and 8. In the declarations provided on August 15 and 16, 2005, defendants identified for the first time those design libraries. During the meet and confer process, defendants' counsel disclosed for the first time that most of the ASIC defendants had not been saving those design libraries, but instead were routinely destroying those files. Defendants' counsel further conceded that she had never instructed her clients to retain those files, and refused Ricoh's request to instruct her clients to retain those files going forward. Ricoh seeks an order compelling defendants to immediately cease the destruction of those design libraries and an accounting of the destruction process and why such destruction did not cease upon the filing of this litigation two and a half years ago.[30]

   2. Customer Defendants' Position. Ricoh again mischaracterizes this issue to suggest that the Customer Defendants are actively deleting relevant files. That is just not true.

   First, the intermediate files called design libraries are not stored as design .db files. Design libraries in the sense referred to by Ricoh are intermediate storage formats that are caused to be created by the use of specific commands that not all customers use. Customers do not usually retain such intermediate files on an ongoing basis such as in archived versions of products (because they can be regenerated later when needed from the original inputs). Further, in many cases, the cache directories containing these intermediate files are periodically purged to ensure smooth functioning of the systems.

---

[30] Defendants inconsistently respond that the files were not created, or that they were created but not used, or that they were created and used but not retained, or that a few files were created, used, retained and will be produced. Based upon Synopsys' own documents (quoted in footnote 6), it is clear that all ASIC defendants create and use design libraries, which are relevant discoverable electronic documents within the meaning of the Federal Rules. Even if those files are analogous to cache files, they should have been retained since this action was filed. There is no undue burden associated with retaining these electronic documents – putting them on a CD would have been fast and painless – and although defendants have claimed (without explanation) that Ricoh can accurately recreate these files (an assertion Ricoh does not agree with), defendants have not addressed the evidentiary problems, and cannot justify their failure to comply with their discovery obligations under the rules.

Honorable Edward M. Chen
August 30, 2005
Page 37


This is analogous to the way that the Internet Explorer browser cache is periodically trimmed in size to prevent it from consuming endless disk space.

The Library Declarations make clear that the only Customer Defendants that use these intermediate files are Matrox Graphics and Matrox Tech (while other Customer Defendants may create them, they do not use them), and only for particularly large chips. While we informed the Customer Defendants of the requirement to retain documents and files relevant to the litigation, we did not believe it was appropriate to require them to modify their design process flow to add the creation (to the extent not used by the customers) or retention of these intermediate files to their scripts. We also do not believe that it is appropriate to require them to create documents that they do not ordinarily create or to grind their ordinary use of their systems to a halt going forward. Any of these intermediate electronic files that exist for the products listed in the Product Declarations will be provided. In addition, since the Customer Defendants will be providing their available inputs and other libraries in electronic format, Ricoh can **create** the exact same files by running the logic synthesis process and, if desired, adding the necessary commands to create and/or save these files. See topic G under Remaining Discovery Disputes.

Ricoh's footnote number 30 again reflects the confusion caused by Ricoh's inconsistent terminology usage. The synthetic library implementations referred to by Ricoh are provided to customers by Synopsys and the source code has already been produced. See discussion at II.A.2 above. Thus, contrary to Ricoh's mischaracterization, there has been no document destruction or spoliation of evidence. Moreover, to the extent Ricoh believes design library (in the sense discussed in Exhibit 38 at page 3, third row) files are relevant, Ricoh can recreate them.

**H. Different understandings as to agreements reached, and Ricoh's refusal to allow transcripts.**

1. Customer Defendants' Position. Unfortunately, the parties in this case have a history of different understandings of the agreements reached during meet and confers, as well as in hearings. These discrepancies began more than a year ago. In fact, in a June 22, 2004 letter from Ken Brothers to Tom Mavrakakis attached hereto as Exhibit 18, Mr. Brothers responded to Mr. Mavrakakis' suggestion that all future meet and confer sessions be transcribed by saying that it would be beneficial. This issue was also discussed in a June 24, 2004 letter from Tom Mavrakakis to Ken Brothers, attached hereto as Exhibit 19.

This pattern continues to this day. For instance, there was no court reporter at the July 13, 2005 Case Management Conference ("CMC"). The parties exchanged no less than **five** communications, attached hereto as Exhibits 20 – 24, in attempting to simply summarize the agreements from the CMC, and were still unable to agree.

Another example is related to the Customer Defendant Product Declarations. During the July 22, 2005 teleconference hearing, the Customer Defendants agreed to provide a list of commercial products for which Design Compiler was used by the

named Customer Defendants for logic synthesis, a description of the product, and the libraries used.  After the Product Declarations were provided, Ricoh complained in an August 17, 2005 letter, attached hereto as Exhibit 25, that the Customer Defendants had agreed to produce additional information.  The Customer Defendants reiterated the actual agreement in an August 19, 2005 letter, attached hereto as Exhibit 26.

As these examples demonstrate, the reality of the situation is that without a record the parties are reduced to inefficient "he said" and "she said" disputes.  Having a court reporter transcribe the meet and confers (as well as the hearings) would alleviate this problem.

Synopsys and the Customer Defendants requested to have a court reporter transcribe the August 22, 2005 discovery meet and confer.  Ricoh objected to this request.  The parties have exchanged several emails addressing Ricoh's concerns, including the details of the speaker phones to be used, how parties will identify themselves verbally, going off and on the record for sidebars, and transcripts, on this issue.

2.  Ricoh's Position.  This issue is outside of the scope of the Court's August 16, 2005 Order.  This item was never on the agenda for the meet and confers on August 22 or 24, but was raised by the defendants during the August 24 conference call; Ricoh explained to the defendants what its concerns were and requested certain information.  Hence the issue is still under discussion, and on Friday, August 26, counsel for the defendants sent Ricoh's counsel an email specifically stating this issue would not be raised in this letter to the Court. (Exhibit 35.)  At that time, the defendants provided information that Ricoh had requested and Ricoh is now reviewing the matter.  Ricoh submits that the issue is premature and should not be heard by the Court.

Even if the Court was prepared to consider the issue, and aside from the unseemingly aspects of transcribing all communications between counsel, Ricoh has several concerns.  First, contrary to the representations by the defendants, the speaker phones used by counsel do not permit a court reporter to hear when one party is speaking, then is interrupted by another.  During the August 22 and 24 meet and confers, Ricoh's counsel experienced multiple occasions when their comments were not heard because opposing counsel had interrupted and talked over them.  Because of this technological obstacle, a court reporter would be unable to make a complete record.  Second, there is no agreement of when an ordinary telephone call rises to the level of a transcribed meet and confer.  Ricoh's counsel does not want to be prevented from picking up the phone to clarify a point, then having the call refused because no reporter is present.  Third, the whole matter is unseemingly. Judge Jenkins refused defendants' counsel's request for a reporter at the CMC hearings; Ricoh's counsel suggests that we ought to follow the Court's lead.

Honorable Edward M. Chen
August 30, 2005
Page 39


Sincerely,

/s/ Kenneth W. Brothers                    /s/ Teresa M. Corbin

Gary M. Hoffman                            Teresa M. Corbin
Kenneth W. Brothers                        HOWREY LLP
DICKSTEIN SHAPIRO MORIN                     525 Market Street
  & OSHINSKY, LLP                          Suite 3600
2101 L Street, NW                          San Francisco, CA  94105-2708
Washington, DC  20037-1526                 Phone: (415) 848-4944
Phone (202) 785-9700                       Fax: (415) 848-4999
Fax (202) 887-0689

                                           Attorneys for Defendants
Attorneys for Ricoh

## INDEX TO EXHIBITS TO JOINT LETTER

### Defendants' Exhibits

| Exh. # | Description |
| --- | --- |
| 1 | Joint Case Management Conference Statement, dated June 8, 2005. |
| 2 | Declaration of Robert B. Smith in Support of Defendants' Stipulation to Input Format. |
| 3 | Declaration of Robert B. Smith in Support of Defendants' Stipulation to Design Libraries. |
| 4 | Declaration of Brandon Coco in Support of Defendants' Stipulation to Design Libraries. |
| 5 | Declaration of Brandon Coco in Support of Defendants' Stipulation to Input Format. |
| 6 | Declaration of Eric Boisvert in Support of Defendants' Stipulation to Input Format. |
| 7 | Declaration of Eric Boisvert in Support of Defendants' Stipulation to Design Libraries. |
| 8 | Declaration of David Chiappini in Support of Defendants' Stipulation to Input Format. |
| 9 | Declaration of David Chiappini in Support of Defendants' Stipulation to Design Libraries. |
| 10 | Declaration of David Chiappini in Support of Defendants' Stipulation to Input Format. |
| 11 | Declaration of David Chiappini in Support of Defendants' Stipulation to Design Libraries. |
| 12 | Declaration of Robert B. Smith of AMI in Support of Defendants' Stipulation to Representative Products. |
| 13 | Declaration of Brandon Coco of Aeroflex in Support of Defendants' Stipulation to Representative Products. |
| 14 | Declaration of Eric Boisvert of Matrox Electronic Systems in Support of Defendants' Stipulation to Representative Products. |
| 15 | Declaration of David Chiappini of Matrox Graphics in Support of Defendants' Stipulation to Representative Products. |
| 16 | Declaration of Eric Boisvert for Matrox Tech in Support of Defendants' Stipulation to Representative Products. |
| 17 | Declaration of David Chiappini for Matrox Tech in Support of Defendants' Stipulation to Representative Products. |
| 18 | Letter from Kenneth W. Brothers to Tom Mavrakakis, dated June 22, 2004. |
| 19 | Letter from T. Mavrakakis to Kenneth W. Brothers, dated June 24, 2004. |
| 20 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated July 14, 2005. |
| 21 | E-mail from Gary Hoffman to Teresa M. Corbin, dated July 15, 2005. |
| 22 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated July 18, 2005. |
| 23 | Letter from DeAnna Allen to Jaclyn C. Fink, dated July 19, 2005. |
| 24 | Letter from Jaclyn C. Fink to DeAnna Allen, dated July 20, 2005. |
| 25 | Letter from Gary M. Hoffman to Teresa M. Corbin, dated August 17, 2005. |
| 26 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated August 19, 2005. |
| 27 | Letter from Jaclyn C. Fink to DeAnna Allen, dated June 27, 2005. |
| 38 | Letter from Jaclyn C. Fink to DeAnna Allen dated July 18, 2005 |

### Ricoh's Exhibits

| | |
| --- | --- |
| 28 | AMI Semiconductor, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 29 | Aeroflex Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 30 | Matrox Tech, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 31 | Letter from Edward A. Meilman to Katharine L. Altemus, dated April 29, 2004. |
| 32 | Ricoh's first set of document requests to all Defendants, dated May 30, 2003. |

Honorable Edward M. Chen
August 30, 2005
Page 41


33        Ricoh's first set of document requests to Synopsys, dated October 23, 2003.
34        Letter from Kenneth W. Brothers to Teresa M. Corbin, dated August 24, 2005.
35        E-mail from J. Fink to Gary Hoffman, dated August 25, 2005.
36        Letter from DeAnna Allen to Teresa M. Corbin, dated July 18, 2005
37        Excerpts from Synopsys document titled: "DesignWare Building Block IP User Guide," dated
          March 16, 2005, located at
          http://www.synopsys.com/products/designware/docs/doc/dwf/manuals/dwug.pdf

DSMO 1974803.3

09-12-05 Meet & Confer.txt

1

1
2
3
4                    Synopsys v. Ricoh
5                    Ricoh v. Aeroflex
6
7                    Meet and Confer
8                  September 12, 2005
9
10                      Tape One
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

2

1   Representing Howrey LLP:

Tape 1.TXT

9          MS. CORBIN:  The customer will be able to

10    relate to --

11              (Simultaneous discussion)

12          MR. OLIVER:  Customers will know that and that

13    is what customers will know and quite honestly that is

14    what --

15          MS. ALLEN:  Can they give us a statement

16    saying they don't use anything other than those two?  If

17    that -- then that I think would -- because I know the

18    declarations just don't say that.

19              (Simultaneous discussion)

20          MS. CORBIN:  They do.  They say that it's a

21    compilation (inaudible)

22          MR. OLIVER:  Why -- I think -- why don't we

23    come back to the declarations at the end?

24          MS. ALLEN:  Let's look at them because, I

25    mean, we are of course reading them very cautiously for

41

1     exactly what they say.  We're not implying anything into

2     what they say.

3          MS. CORBIN:  I mean I think it's pretty clear,

4     they created the table which summarizes their use of

5     libraries from 1997 through the present for commercial

6     ASICs in paragraph --

7          MR. OLIVER:  In fact they did highlight for

8     you that depending on the time period in which a design

9     was created, we may have used the subset versions of DW

10    underscore foundation dot SLDB, you know, and they

11    listed out the file names.  So they did list out how

12    they understand the product.

Page 36

Tape 1.TXT

13        MR. BROTHERS:  I understand that what it
14   didn't have is a statement that, We don't use anything
15   else and that this is all -- in other words, this is all
16   we use.
17        MS. ALLEN:  And part -- part of our --
18        MS. CORBIN:  That's semantic I think that they
19   did.  I mean they said this is a summary of the
20   libraries that they use --
21             (Simultaneous discussion)
22        MS. ALLEN:  Well if you --
23        MS. CORBIN:  -- for commercial ASICs.
24        MR. OLIVER:  So the bottom line is you're
25   going to get it if such a thing happens to exist, but --

                                                          42

1    I mean, so is it really worth (inaudible) down on?
2         MS. ALLEN:  I mean, I guess just -- it just --
3         MS. CORBIN:  You know, you're going to get 30
4    (b)(6) and you can ask them, you've got the declaration,
5    frankly we've provided tons of information in these --
6    these declarations that would have taken you forever to
7    get by any other form of discovery and so none of this
8    was obligatory, we did it to try to move things along
9    and get structured and organized so we could be on the
10   same page, so I think you -- I'm telling you this is
11   what we believe this meant when we did it and you're
12   going to have a 30 (b)(6) witness, you can ask them was
13   is this meant to be an entire list and to your knowledge
14   is there anything other than what is listed here.
15        MS. ALLEN:  Let me just step back.  Well, one
                        Page 37

Tape 1.TXT

13    is just to -- just to pop up for one second.  In the
14    letter brief to magistrate Judge Chen, you were talking
15    about -- if we now use the terms we're using today, it
16    seemed like your briefing was directed towards concern
17    that we were, the customer defendants were deleting
18    synthetic library implementations, or no?
19              MS. ALLEN:  Not really, no.
20              MR. OLIVER:  Okay.  Or -- because that was the
21    last change to the letter brought -- suddenly brought
22    the implementation issue forward, so it would be helpful
23    for us to understand -- because there's an issue of
24    understanding what design libraries is, but there's also
25    an issue of what -- what is it that you were concerned

                                                              51

1    about?
2              MR. BROTHERS:  Well, as far as the progression
3    of the letters, we for a long time we're talking about
4    the dot DB file extensions --
5              MR. OLIVER:  Okay.
6              MR. BROTHERS:  -- and then I think in the
7    Friday, I guess it was the 26th, the Friday evening
8    draft that we got, it was told to us that, No, that's
9    not accurate to refer to the dot DB extensions.
10             At least that's what it came home to us
11    saying, Well we've got some real confusion between
12    ourselves with respect to what's going on and then we
13    came back with our draft on Monday and -- and I think
14    there was at least two areas of confusion and -- and
15    with respect to what the design libraries were including

                        Page 45

Tape 1.TXT

16  and then what you were calling the synthetic library
17  implementations.  And -- and those were definitional
18  problems.
19          Stepping back the bigger picture is what were
20  we going to be produced in the course of discovery and
21  our view was anything that was being used by the ASIC
22  defendants and the process of designing the ASIC
23  products at issue, the commercial implementations as
24  been defined in the August 15th and 16th declarations.
25  We wanted that documentation and what I understood Terry

52

1   to be saying was, Well we don't necessarily -- we
2   haven't retained all of that information, those
3   intermediate steps, maybe you can go back and recreate
4   them by recompiling, but No, we haven't been saving it.
5   Maybe a couple of the (inaudible) entities have been
6   saving some of this information and I think that might
7   have been a reference to the synthetic library
8   implementations.
9           MR. OLIVER:  No.  Just so we're clear --
10          MR. BROTHERS:  Okay.
11          MR. OLIVER:  -- it's not -- nothing to do with
12  synthetic libraries.
13          MR. BROTHERS:  Okay.  Well, my bigger picture
14  concern is we want to get all of the process -- all of
15  the design process for the commercial products at issue
16  and if it hasn't been retain we need to know that and if
17  it -- and that's something that we can look -- let me
18  finish please --
19          MS. CORBIN:  Okay.
Page 46

Tape 1.TXT

16    interrupt here for a minute because we will -- to the
17    extent there's anything -- we were made to do these or
18    you know, asked to do these on a very short order, so to
19    the extent that they need be supplemented in any way, we
20    obviously will do that.
21          MR. BROTHERS:  Okay.
22          MS. CORBIN:  And also, because there's a -- I
23    understand there was some confusion -- my understanding
24    -- what we intended to do was to give you anything that
25    had gone into commercial production.  There are actually

                                                          88


1    some elements on there about -- of things that are just
2    in design phase that have not gone into commercial
3    production.  So there was just some confusion about that
4    and how we were defining that with some of the customers
5    so we'll clarify that as well.
6          So not every product in those has actually
7    gone into commercial production.  I know that right now
8    and I don't know which customers it relates to, Jackie's
9    straightening that out as she goes to collect documents.
10          MS. ALLEN:  This is the August -- the August
11    -- declaration --
12          MR. BROTHERS:  The 15th and 16th.
13          MS. CORBIN:  Right.  Right.
14          MS. ALLEN:  Okay.
15          MR. BROTHERS:  We had noted that there were
16    variations in for example, the -- in the libraries that
17    were used with -- that referred to a particular type of
18    chip in (inaudible) that didn't appear in the final
19    version.  And -- and De Anna, you had some examples that
                          Page 78

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

**Denise M. De Mory**
Partner
T 415.843.4983
F 415.843.4999
demoryd@howrey.com
File 06816.0060.000000

January 24, 2006

**VIA PDF & U.S. MAIL**

Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037-1526

   **Re:**  ***Synopsys v. Ricoh Company, Ltd.,***
       **Case No. C03-2289 MJJ (EMC)**
       ***Ricoh Company, Ltd. v. Aeroflex, Inc., et al.,***
       **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

   I write in response to your January 23, 2006 letter that threatens a motion for sanctions. As is typical of the way you frame discovery disputes, your letter lacks adequate specificity for me to respond – or put another way, builds in sufficient ambiguity such that you can later re-frame the dispute to your convenience.

   To avoid any ambiguity, and so that I can figure out what you are talking about and respond, which I will do promptly, please provide the information set forth below.

   With regard to your contention that: "[f]or example, Mr. Milliken admitted that the declarations did not include many application specific integrated circuits that were sold to more than one customer, even though the design of the chip did not change," please:

    1.  Identify the allegedly missing products.

    2.  Identify the testimony in which Mr. Milliken allegedly admitted that the declarations did not contain many application specific integrated circuits.

   With regard to your contention that: "Mr. Kerwin indicated that if an Application Specific Integrated Circuit was sold as a Standard Product by Aeroflex to more than one customer that Aeroflex did not list the product as an ASIC even though it was designed using Design Complier," please:

    1.  Identify any such alleged ASICs that were not listed.

    2.  Identify the testimony in which Mr. Kerwin indicated that the products you describe were allegedly not listed.

AMSTERDAM   BRUSSELS   CHICAGO   HOUSTON   IRVINE   LONDON
LOS ANGELES   MENLO PARK   NORTHERN VIRGINIA   PARIS   SAN FRANCISCO   WASHINGTON, DC

Kenneth W. Brothers, Esq.
January 24, 2006
Page 2

With regard to your contention that: "Mr. Kerwin admitted that the JW02 chip was not listed even though it reused the infringing logic synthesis of the JW01 chip," please:

    1.    Please identify the testimony that supports this contention.

    2.    Please state your basis for claiming that this chip should be included on the product declaration.

With regard to your contention that "Mr. Coco, who signed the declarations, could not explain why many Aeroflex products were not included, or why his later declaration had removed a large number of products," please:

    1.    Please identify what "products were not included".

    2.    Please identify any basis you have for claiming that any particular products were not properly removed from the product declaration.

    3.    Please identify the testimony that supports your contentions.

I will respond after I receive this information which you must already have at your fingertips because your letter indicates that you are already preparing your motion for sanctions, which will, of course, need to be supported by the record.

With regard to your proposal, I can not evaluate it until I have the information set forth above. Your proposal suffers from the same ambiguity as the rest of your letter. In particular, what do you mean by "for infringement purposes, Ricoh shall be entitled to select any one of those ASICs?" What ASICs? The allegedly omitted ASICs? And what will the information about the allegedly omitted ones be binding on. Even assuming that something was omitted – which I do not believe to be the case – you can not legitimately contend that an appropriate sanction would be to ignore the millions of pages of information that we have produced as to the products identified in the declarations as well as the hours and hours of deposition time you had available to you. At a minimum, as to each ASIC identified in the product declarations, you will have to provide detailed contentions on each such ASIC without regard to this alleged dispute.

I suspect that all this blustering is just cover for the fact that you already know that you will not be able to come forward with infringement contentions on all of the ASICs identified in the declarations because: (1) it will be a lot of work; and (2) there are significant problems with your infringement case. This task is obviously being made more daunting by virtue of the fact that you explicitly adopted a strategy of not asking questions in the Aeroflex depositions about products identified, or the millions of pages of documents you had, but rather spent the entire time trying to find documents you did not have, or allegedly missing products. Although you may feel as if you are putting us through the paces now, we do not believe this strategy is particularly productive given that what ultimately matters – as we have said many times before – is the inputs, the source code, and the outputs, which you already have. Thus, Synopsys and the Customer Defendants will resist both any additional delays to the infringement contentions based on this transparent strategy and the sanctions motion you intend to file.

**HOWREY**

Kenneth W. Brothers, Esq.
January 24, 2006
Page 3

    Notwithstanding this, I am prepared to meaningfully address your concerns once you come forward with specific details of what those concerns are.  I look forward to receiving a detailed response, and to having a productive discussion on the issues raised in your letter.

Very truly yours,

Denise M. De Mory

DMD:plk

cc:    Gary Hoffman, Esq. (via e-mail only)
       Edward Meilman, Esq. (via e-mail only)
       Eric Oliver, Esq. (via e-mail only)
       DeAnna Allen, Esq. (via e-mail only)
       Michael Weinstein, Esq. (via e-mail only)
       Seymour Seyoum (via e-mail only)

DICKSTEIN  SHAPIRO  MORIN  &  OSHINSKY  LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689

Writer's Direct Dial: (202) 429-2184
E-Mail Address: BrothersK@dsmo.com

January 25, 2006

**Via PDF**

Denise DeMory, Esq.
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA  94105-2708

          Re:    Ricoh v. Aeroflex, et al.
                 Synopsys v. Ricoh

Dear Denise:

          I am in receipt of your letter of yesterday evening regarding Aeroflex's failure
to disclose all of the ASICs at issue, and the risk that your clients and firm will face a
sanctions motion.   You demand for page line citations is little more than a stalling
tactic.  Your associates who were at the depositions, Ms. Fink and Mr. Crunk, fully
understood and acknowledged the issues.  I assume they have provided you with
detailed reports, and that they or you have reviewed the draft transcripts.  For example,
Mr. Milliken identified a number of ASICs on Ex. 148 that were not on the declaration.
Milliken pp. 39-43. The fact that the Aeroflex declarations were incomplete and
erroneous was so obvious during the Coco deposition that Ms. Fink promised to serve a
revised declaration.  Coco p. 96.  Furthermore, Mr. Coco was unable to answer
questions on products which were removed from the declaration and the reasons for
removal.  Coco pp. 95-96.  During Mr. Kerwin's deposition, he indicated that the JW02
chip reused the Design Compiler logic synthesis of the JW01 chip, however, this
product was not listed on the declaration.  Kerwin p. 123-124.  Mr. Kerwin and Mr.
Milliken both made distinctions between application specific standard products and
application specific integrated circuits, however, the Court did not make this
distinction.  Kerwin pp. 170-181; Milliken pp. 35-36.

          The larger issue, however, is the calculated decision by your clients and your
firm to ignore Judge Jenkins' order that the product and library declarations be
complete and accurate.  All of the declarations appear to be incomplete and willfully
misleading.   This is an issue that is separate and apart from the preparation of the
witnesses, and goes to what Ricoh believes is an improper attempt to avoid discovery
and liability on a large number of products that should have been disclosed.

          With respect to Ricoh's requested relief, your only question relates to point
three:  "for infringement purposes, Ricoh shall be entitled to select one of those ASICs,
and it shall be binding upon Aeroflex for all such ASICs."  Because Aeroflex and its
counsel have willfully concealed a large number of accused ASIC products from
discovery, an appropriate sanction is to permit Ricoh to identify a representative
product as proof of infringement for all of those undisclosed products.  Otherwise,

1177 Avenue of the Americas • New York, NY 10036-2714 • Tel (212) 835-1400 • Fax (212) 997-9880
10866 Wilshire Boulevard • Suite 300 • Los Angeles, CA 90024-4350 • Tel (310) 441-8460 • Fax (310) 441-8470
www.DicksteinShapiro.com

Denise DeMory, Esq.
January 25, 2006
Page 2

Aeroflex would be rewarded for its concealment.  This sanction is consistent with case law.

     I will be prepared to answer any further questions that you may have regarding Ricoh's basis for its sanctions motion and its requested relief in greater detail during this afternoon's meet and confer.   During the meet and confer, please be prepared to address Ricoh's concern that the product declarations from the other ASIC defendants are similarly defective.

Sincerely,

Kenneth W. Brothers

cc:    Howrey distribution list

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

**Denise M. De Mory**
Partner
T 415.848.4983
F 415.848.4999
demoryd@howrey.com
File 06816.0060.000000

February 3, 2006

**VIA PDF & U.S. MAIL**

Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037-1526

> Re:  *Synopsys v. Ricoh Company, Ltd.*,
>      **Case No. C03-2289 MJJ (EMC)**
>      *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.*,
>      **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

I write in response to your letter dated January 26, 2006. The answer is: no.

Your letter is quite disappointing in view of our meet and confer conversation on January 25, 2006. I expected that you would fully investigate the facts, including actually reading the testimony, and present a reasonable solution. You have not done so. Your sanctions threats are totally unfounded, and frankly, we do not believe we are under any obligation to further explain at this point given the access to the Aeroflex deponents that you had and squandered and the lack of any support for your accusations of willfully misleading statements. Nonetheless, I recount some history so that the record is perfectly clear.

You have repeatedly stated in writing and to the Court that the reason that you could not do your infringement contentions is because you have not had adequate discovery, and in particular, depositions of the Customer Defendants. You said this in your Case Management Statement, at the Case Management Conference, and in various letters to Judge Chen. In addition, you also insisted in writing to the Court that you needed millions of pages of documents, including the Customer Designs, the Customer e-mails, and other documents before you could even begin the depositions. Notwithstanding this, the record is indisputably clear that you and other lawyers from your firm used the vast majority of the 30 or so hours the Aeroflex witnesses were available to you on a fishing expedition, and that you did not even use all the time that was available. Indeed, you described the process to me in a previous meet and confer before you even began the depositions as an effort to find "where the bodies were buried."

Consistent with your expressed intentions, very few questions were asked about what Aeroflex actually does. Instead, you spent hours testing whether the declarations were accurate and whether Aeroflex was hiding something or whether documents were not produced. You are free to adopt this strategy and waste your time, but we will not tolerate any complaints about not being able to do your infringement contentions, and will resist any attempt by you to obtain

AMSTERDAM   BRUSSELS   CHICAGO   HOUSTON   IRVINE   LONDON
LOS ANGELES   MENLO PARK   NORTHERN VIRGINIA   PARIS   SAN FRANCISCO   WASHINGTON, DC

DM_US\8309424.v1

**HOWREY**

Kenneth W. Brothers, Esq.
February 3, 2006
Page 2

additional time with these witnesses. It is also notable that once again you did not ask about a single e-mail and asked very few questions about the millions of pages that you insisted be produced.

And, what is worse, even though this deliberate strategy proved unproductive, you still saw fit to accuse Aeroflex and Howrey of making intentionally false statements and of soliciting intentionally false statements. Ken, if there is any sanctionable conduct here it is your unfounded accusations. As set forth in detail below, the transcripts clearly reveal, and you basically admitted on our meet and confer call, that you have no basis for your claims.

As to Milliken, his testimony was accurate and clear. While he did identify some products on the short form as "ASICs," that is where the accuracy of your characterizations ends. You told me that you personally left the deposition with the clear impression he was hiding something – but YOU did not ask him a single follow-up question on these allegedly willfully and deceptively hidden ASICs. If you really had such an impression, it is shocking to me that you inadvertently – or more likely intentionally – did nothing to verify whether or not your "strong impressions" were correct. You didn't ask him when the short form ASICs were designed, or whether or not they were designed using Design Compiler or any other Synopsys tool. Frankly, it seems as if you were predisposed to this conclusion.

When I raised my concern about your lack of follow-up on the call, you said, in essence: well, I am informed (meaning you did not read the transcript before you made your accusations) that Rebecca and Eric inquired about the short form products and Milliken could not remember anything. Well, let's start with that contention: if that was true, then you would have no basis for your "willfully false" allegations, would you? But, what is worse – IT IS NOT TRUE. I am not going to do your work for you, but please take a look at the Milliken deposition starting at around page 275. Except for the Summit products – which would implicate only one ASIC as Milliken explained, he already told you under oath why those products were not listed.

With regard to Coco, the only issue, as you know, is that Coco could not recall why certain products were removed in a declaration that he signed several months ago, and in four instances, the reason for removing the product was improperly characterized. You have already acknowledged that there is nothing else that raised "willfully false" concerns regarding Coco. This inadvertent mischaracterization is hardly "willfully false" and it certainly does not support your accusation that products were omitted.

With regard to Kerwin, we've got the prototype issue. That is it. But, as we discussed, it is of no consequence – in the JW02 prototype Aeroflex merely reused the synthesis from the JW01, as to which you have all the documentation. And, moreover, you have the financials on the JW02, so what exactly is the issue?

As to your complaint about the fact that you could not get the witnesses to agree to definitions of certain terms: so what? They are a government contractor – which you undoubtedly discovered in your pre-filing investigation. They use terms the way they use terms. I've already told you what is self evident from the declaration – the declaration includes all

Kenneth W. Brothers, Esq.
February 3, 2006
Page 3

commercial (meaning manufactured and then sold in more than prototype quantity) ASICs for which all or part of the products were synthesized using Design Complier from 1997 to the present. Whether the witnesses agree on the definitions, or not, you have no basis for saying the declarations are willfully misleading.

Now, let's get to the "touched" issue. You know as well as I do that what was required to be disclosed in the declarations are commercial ASICs that were synthesized using Design Compiler between 1997 and the present, and that is exactly what the declaration discloses. By using the word "touched," you are playing a game, and given your baseless allegations – this is not the time to be escalating this situation with word games. While I have no doubt that I used that word in a purely conversational sense, it is ridiculous for you to now include this in your demands.

In sum, you have zero basis for your demands. If you feel you have the grounds for a sanctions motion, file it. However, you are hereby on notice that we will seek sanctions in the form of all costs for opposing the motion. In addition, we will seek a protective order regarding future Aeroflex depositions. We welcome the opportunity to make Judge Jenkins aware of your tactics.

On another note, I note that you have not sent any follow-up to your letter regarding Aeroflex documents. I am not taking any action on your January 23, 2006 letter relating to the Aeroflex documents until I receive the promised revised request.

Very truly yours,

Denise M. De Mory

DMD:plk

cc:    Gary Hoffman, Esq. (via e-mail only)
       Edward Meilman, Esq. (via e-mail only)
       Eric Oliver, Esq. (via e-mail only)
       DeAnna Allen, Esq. (via e-mail only)
       Michael Weinstein, Esq. (via e-mail only)
       Seymour Seyoum (via e-mail only)

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

**Denise M. De Mory**
Partner
T 415.848.4983
F 415.848.4999
demoryd@howrey.com
File 06816.0060.000000

February 21, 2006

**VIA PDF**

Kenneth W. Brothers, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037-1526

> **Re:** *Synopsys v. Ricoh Company, Ltd.,*
> **Case No. C03-2289 MJJ (EMC)**
> *Ricoh Company, Ltd. v. Aeroflex, Inc., et al.,*
> **Case No. C03-4669 MJJ (EMC)**

Dear Ken:

As you are aware it may be necessary to produce a substantial amount of additional information relating to products, the designs for which were either: (1) synthesized, in whole or in part, by Flextronics prior to AMI's asset purchase relating to Flextronics ("the Flextronics Chips") that AMI now sells in the United States; or (2) synthesized, in whole or in part, by non-US entities related to named party AMI and sold by AMI in the United States ("Non-US AMI Chips"). We are writing to begin to discuss our concerns about doing this additional discovery.

With regard to the Flextronics Chips, our investigation as to these chips – and ultimately discovery as to these chips – is complicated by the fact that this was just an asset purchase. Many of the Flextronics employees did not become AMI employees, and thus, we are having a difficult time tracking down all the facts relating to these chips. In addition, because Flextronics facilities were closed or moved, locating documents is also proving to be quite difficult.

With regard to the Non-US AMI Chips, our preliminary investigation with regard to these chips lead us to believe that trips to many different countries, likely including Belgium, Czech Republic, Israel, Switzerland, Germany, Canada, Bulgaria, and Colorado, are going to be required both to collect documents and information and also for formal discovery.

Investigations and discovery with regard to both the Flextronics Chips and the Non-US AMI Chips is going to be very burdensome and expensive and the reality is that it is going to take time – probably several months. As you know, Synopsys has expended significant financial resources and both Synopsys and the Customer Defendants have already invested substantial time and personnel resources in meeting your discovery demands. Somewhere in the neighborhood of 8,000,000 pages of documents have been produced, we have responded to all of your written discovery and supplemented our responses several time, and have appeared for well

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

**HOWREY**

Kenneth W. Brothers, Esq.
February 21, 2006
Page 2

over 100 hours of deposition. As you likely know from your own expenses, this has cost millions of dollars.

Despite this, to date, we do not have a single meaningful infringement contention. We have only four boxes of documents, and you are outright stonewalling on all of the Synopsys and Customer Defendant discovery served in December. While we will raise all of your abuses with the Court in due course, regardless of whether you agree that they are abuses or not, the objective fact remains that we have given you access to substantial discovery, and you have given us very little.

Not surprisingly, we are quite reticent to embark on further costly discovery, which we quite frankly believe is a fishing expedition, relating to the Flextronics Chips and the Non-US AMI Chips. Moreover, we absolutely can not do this discovery and maintain the same schedule that we have. Given the progress with respect to the 200+ chips that Ricoh claims are the accused products and for which particularized final infringement charts will be required, it is Synopsys and the Customer Defendant's belief that we need to get to end of the road on those 200+ chips.

Balancing all these concerns, we have the following proposal:

1.    We proceed and complete discovery as currently scheduled as to the 200+ chips that are already identified.

2.    We agree to extend the trial date and all other dates that are set after the close of discovery by 120 days. Within 30 days after the currently set close of discovery, AMI will produce product declarations and produce document commensurate in scope with the documents that have been produced in discovery with regard to the other chips for which discovery has been provided.

Please let me know if this general framework is acceptable to you, and then we can work out the specific details. If it is not and if we can not reach some reasonable agreement regarding timing for this additional discovery, we will be forced to seek a protective order.

Very truly yours,

*Denise M. De Mory* /plk

Denise M. De Mory

DMD:plk
cc:    Gary Hoffman, Esq. (via e-mail only)
       Edward Meilman, Esq. (via e-mail only)
       Eric Oliver, Esq. (via e-mail only)
       DeAnna Allen, Esq. (via e-mail only)
       Michael Weinstein, Esq. (via e-mail only)
       Seymour Seyoum (via e-mail only)