Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY LLP
2101 L Street, NW
Washington, DC  20037-1526
Telephone:  (202) 785-9700
Facsimile:  (202) 887-0689

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Telephone:  (212) 835-1400
Facsimile:  (212) 997-9880

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> AEROFLEX ET AL., <br><br> Defendants. | Case No. CV-03-4669-MJJ (EMC) <br><br> **RICOH'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS** <br><br> **Date: April 19, 2006** <br> **Time: 10:30 a.m.** <br> **Courtroom: C** |

# **TABLE OF CONTENTS**

Page No.

I. There Is No Material Factual Dispute Regarding Most Issues ............................... 3

II. Correction Of Defendants' Other Misstatements ...................................................... 7

III. Only Two Issues Must Be Resolved By This Court ............................................. 11

    A. Whether Defendants Have Wrongfully Failed To Disclose ASICs.......... 11

        1. Defendants' Inability to Explain Why ASICs That They Have Sold Are Not "Commercial Products" ................................ 11

        2. AMI's Refusal To Identify And Disclose ASICs That Were Hidden In Subsidiaries ................................................................ 12

    B. What is the Appropriate Sanction ............................................................ 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page No.

*Kloster Speedsteel Ab. v. Stora Kopparabergs Berg Slags Ab.*, 793 F.2d 1565,
   1583 (Fed. Cir. 1986)......................................................................................13, 14

*Milgo Electric Corp. v. United Business Communications, Inc.*, 623 F.2d 645,
   660 (10th Cir. 1980).............................................................................................13

*Swift Chemical Co. v. Usamex Fertilizers, Inc.*, 197 U.S.P.Q. 10, 21 (E.D. La.
   1977) ....................................................................................................................13

*Wright v. Maritime Overseas Corp.*, 96 F.R.D. 686, 687-688 (9th Cir. 1983)....................14

The stark question presented by Ricoh's motion is whether the Defendants should be permitted to get away with the their failure to comply with the Court's order to serve comprehensive declarations in July and August 2005, which (assuming they were accurate) would establish the boundaries for discovery and trial.  There is no dispute over the terms of the Order:  Defendants agree with Ricoh that they were required to submit accurate and complete declarations under the penalty of perjury.  (Opp. at 6, n.4:  "No one disputes that Judge Jenkins directed the declarations to be complete and signed under penalty of perjury").  Defendants do not deny Ricoh's showing, at page 6 of its motion (at p. 6) that Judge Jenkins specifically ordered Defendants that if the declarations were inaccurate, sanctions would follow.  There is no dispute over what the Court said those declarations should contain:  a complete listing of the technical libraries and all ASICs synthesized using Design Complier.  On August 30, 2005, Defendants admitted that "[t]he Product Declarations provided on August 15 and 16 included information about the target technology libraries or library families used for the logic synthesis of the products listed."  (De Mory Dec., Ex. 4, at 7.)  There is no dispute that Defendants' declarations in July and August were neither complete nor comprehensive; after Ricoh raised questions about the accuracy of the declarations, Defendants repeatedly had to supplement them.  There is no dispute that Defendants originally understated the number of accused ASICs by a factor of four or more.  Even today there are still many more chips that have never been disclosed.  These facts are established by Ricoh's motion, they are not disputed and in some instances they are even expressly admitted in Defendants' response.

The only unresolved issues are as follows:

**Have Defendants failed to disclose any ASICs?**  The first issue is whether Defendants have failed to declare a significant number of ASICs that should have been disclosed more than six months ago.  Defendants' two-fold response is deeply disturbing.  They first assert there is no obligation to disclose ASICs that they claim are not commercial products, even though their witnesses could not define what a "commercial product" is, and even thought the Defendants admit receiving revenue from the sales of so called "non-commercial" ASICs.  Second, and even more disturbing, AMI Semiconductor has refused to disclose any ASICs that were synthesized, offered for

1  sale or sold by one or more still-unidentified wholly-owned subsidiaries under AMI's complete
2  direction and control.  This rationalization ignores the express directions of the Court, and is flatly
3  inconsistent with a letter sent immediately after the CMC expecting the declarations to include
4  information "by each such defendant and others acting on their behalf or to whom they subcontract
5  out part of the logic synthesis process)."  (Brothers 3/21/06 Dec., Ex. 2, Hoffman 7/15/05 letter to
6  Corbin.)  Defendants argument ignores the fact that AMI itself acquired the assets at issue, directed
7  the infringing activity, and received the revenue from the sale of the ASICs created by the infringing
8  process.  AMI's argument is also inconsistent with Defendants' prior insistence that subsidiaries
9  need not be separately sued, and mocks the instructions of Judge Jenkins that the boundaries of
10 discovery and trial would be defined by the Defendants' honest and complete disclosure of all
11 relevant ASICs.
12         Defendants acknowledge that they have not provided discovery on the missing ASICs.
13 For example, the remarkable March 14, 2006, declaration of Mr. Smith of AMI refers to ASICs
14 designed using Design Compiler, and for which it has received revenue during the relevant time
15 period (1997 to the present), yet to this day AMI has *never* identified those ASICs or produced the
16 inputs, specifications, code, product packages, related emails, other design documents or any
17 financial information.  AMI claims that the fact that those ASICs may have been synthesized by
18 AMI's subsidiaries as opposed to the ultimate parent should shield it from any sanctions.  But this
19 weak excuse ignores the fact that: AMI acquired the assets in question; AMI decided how they
20 should be organized; AMI ignored any corporate formalities by creating business units that spanned
21 multiple continents and subsidiaries; AMI directed the actions of its subsidiaries; AMI sold and
22 offered for sale the products that are accused of infringement; and AMI received the benefits of that
23 infringement.  Defendants do not dispute that Mr. Smith wanted to disclose these ASICs in an earlier
24 version of his declaration, but was forbidden by the Synopsys attorneys from making the full and
25 complete disclosure under penalty of perjury as ordered by Judge Jenkins.  Likewise, there is no
26 dispute that Aeroflex has never submitted a declaration disclosing its "JW02" ASIC, even though
27 Defendants' opposition brief essentially concedes that it should have been disclosed.
28

**What is the appropriate sanction?**  The second issue that the Court must decide is the appropriate sanction for Defendants' failure to comply with Judge Jenkins' order.  Defendants do no dispute the authority of this Court to regulate its proceedings, and punish parties that have failed to comply with Court orders.  Defendants' non-compliance with Judge Jenkins' instructions have had an enormous consequence upon the pretrial preparations.  Defendants were obligated to fully disclose all of the ASICs in August, promptly produce all of the relevant documents, and engage in timely discovery in order to enable this case to be timely prepared for trial.  They have failed to do so.  One of three things can occur as a result, two of which reward Defendants for their non-compliance:  (1) the undisclosed ASICs are excluded from the case; or (2) discovery  is extended for months and trial is again delayed; or (3) the Court grants Ricoh its requested relief for updated declarations from a senior corporate officer from each Defendant, evidentiary preclusions with respect to those undisclosed ASICs, and immediate financial discovery.

Defendants' conduct has blocked Ricoh from obtaining the required discovery on these missing chips.  All parties agree that the July and August 2005 declarations – assuming they were accurate – were to form the foundation upon which the remaining discovery was to be based, and define the scope of the trial.  As a result of Defendants' failure to comply with this Court's instructions, Defendants have not produced the relevant documents for those missing chips.  Ricoh has no discovery of the process used to design the missing chips, or the sales, or anything else, because Defendants have produced nothing relating to the ASICs that they have not disclosed.

I.     **THERE IS NO MATERIAL FACTUAL DISPUTE REGARDING MOST ISSUES**

**No dispute re Court Order.**  The parties agree that the Court instructions were to set forth *all* of the Defendants' commercial ASICs designed, manufactured, offered for sale or sold using the identified Synopsys products, to identify all of the related technical libraries.  The parties also agree that the Court warned counsel for the Defendants that those declarations were to be sworn under the penalty of perjury, and that if the declarations were incomplete or misleading, sanctions would follow.

CASE NO. CV-03-4669-MJJ (EMC)  Page 3
RICOH'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS
DSMDB.2058706.6

1  **No dispute re schedule.**  Under the current schedule, Ricoh is to serve its final infringement contentions on March 24, 2006; Defendants are to serve their final invalidity contentions on April 24, 2006; fact discovery ends on May 30, 2006.  Trial is set for November 27, 2006.  The parties agree that they cannot maintain the current schedule and still provide complete discovery regarding the ASICs that Defendants have failed to disclose, but Defendants' proposal to further postpone the trial would essentially reward Defendants for their own bad acts.  Trial has already been postponed for more than two years; Ricoh will not agree to any more extensions.

**There is no dispute that Defendants repeatedly have supplemented their declarations.**  As set forth in the exhibits to Ricoh's motion, Defendants repeatedly have supplemented their declarations.  In fact, after Ricoh filed its motion, Defendant Aeroflex served a further supplementation (Brothers 3/21/06 Dec., Ex. 1), but still did not include a chip (JW02) that it essentially has conceded should have been listed.  Brothers 3/21/06 Dec., ¶ 2.

**Three different ASIC declarations from AMI Semiconductor:**  Defendants admit that they have served three versions of the ASIC product declarations from AMI:  the first on August 15, 2005; the second on October 12, 2005; and the third on January 10, 2006.  (Brothers 2/21/06 Dec., Ex. 2, 3 and 4.)

**The AMI declaration is not complete.**  According to the March 14, 2006 declaration of Mr. Smith, there are still other ASICs sold by AMI in the U.S. that were synthesized using Design Compiler since 1997 that have never been disclosed in any declaration.  Defendants do not dispute that, during his deposition, Mr. Smith stated that "the circuits from several of the business units were not included at the direction of counsel," even though he said that those business units each perform ASIC logic synthesis using Design Compiler.  (Brothers 2/21/06 Dec., Ex. 10, at 155-58.)

Judge Jenkins ordered that the ASIC product declarations to disclose the ASICs for which Design Compiler was used to perform logic synthesis and which were synthesized and/or sold in the U.S. by a Defendant.  Judge Jenkins made clear that such logic synthesis includes acts performed by the Defendants, or on their behalf by their subsidiaries or contractors.  Thus, on July 15, 2005 (shortly after the CMC with Judge Jenkins), Gary Hoffman emailed Teresa Corbin and

stated Ricoh's understanding of the information that the Defendants were to provide in their declarations, including:

> Each of the ASIC Defendants will provide declarations/stipulations to Ricoh by 11 AM California time on Thursday, July 21, 2005 indicating each type of input that has been used by each such Defendant *(and others acting on their behalf or to whom they subcontract out part of the logic synthesis process)* and the best approximation of the percentage of sales volume related to each type of input.

Brothers 3/21/06 Dec., Ex. 2, emphasis added.

Logic synthesis acts performed on behalf of, or under subcontract to, the Defendants (including acts performed by AMI business units) are highly relevant to the scope of infringing products and the corresponding damages to which Ricoh is entitled. The Court made clear that the declarations were to be drafted consistent with this fundamental understanding. Defendants now admit that AMI declaration is not consistent with these instructions, and thus is incomplete. Ricoh's proposed remedy of a full and final declaration would resolve this issue.

**AMI's failure to disclose any ASICs from its 2002, 2004 and 2005 acquisitions.** Defendants admit that, hours before Mr. Smith's deposition, Defendants' counsel disclosed for the first time that it had never disclosed any ASICs from its Flextronics acquisition. Remarkably, in its March 14 filing, AMI disclosed that it had two other acquisitions in 2002 and 2004 which included ASICs sold in the U.S. that were synthesized using Design Compiler since 1997, and AMI has *never* identified those ASICs. Brothers 3/21/06 Dec., ¶ 3. An updated declaration is required.

**AMI's Misleading Library Declarations.** AMI does not deny that there have been multiple versions of its library declarations, dated July 21, 2005 and November 3, 2005 (with the latter not served until January 17, 2006) (Brothers 2/21/06 Dec., Ex. 6 & 7.)[1] Likewise, Defendants do not dispute that Mr. Smith testified that, at the instruction of counsel, he did not inquire into which libraries were used for the BIST products, and was forbidden from explaining why changes

---

[1] Defendants make no excuse for their failure to timely serve these declarations. The fact that Ms. De Mory laughingly said she was too busy to serve the declarations for months is no justification for withholding the declarations that were to define the scope of this case.

1  were made in the declarations.  (Brothers 2/21/06 Dec., Ex. 5, Smith Tr. at 188, 197-98.)  All of
2  these libraries should be disclosed after a complete investigation.

3        **Three version of Aeroflex product declarations.**  Defendants admit that they have
4  served three different versions of the declarations from Aeroflex:  the first on August 12, 2005; the
5  second on October 13, 2005; and the third on February 28, 2006.  Brothers 2/21/06 Dec., Ex. 15, 17;
6  Brothers 3/21/06 Dec., Ex. 1.

7        **Defendants' inability to define commercial products.**  Defendants concede that, in the
8  October 12, 2005 Aeroflex product declaration, it removed ASICs previously identified in the
9  August 12, 2005, declaration because the products allegedly were "not  commercial product[s]" or
10  "did not undergo synthesis," even though the prior declaration said that these ASICs were
11  "commercial products" and did undergo synthesis.  (Compare Brothers 2/21/06 Dec., Ex. 10 &12.)
12  The declarant, Brandon Coco, testified in his deposition that he could not explain why those
13  products had been removed, and did not know what was meant by "not commercial product," even
14  though he had signed the declaration under penalty of perjury.  (Brothers 2/21/06 Dec., Ex. 14, Coco
15  Tr. at 95-97.)  This is not an inconsequential issue, as Defendants claim in their opposition brief at
16  pages 11-13, but is further evidence of their failure to comply with Judge Jenkins' instructions.

17        There is no dispute that Aeroflex has received revenue associated with a significant
18  number of ASICs that were not listed on the declaration or that supposedly were not "commercial
19  products."  In its moving papers, Ricoh cited (at pp. 9-12) testimony from all of the Aeroflex
20  designees proving this point, and Aeroflex does not deny it.  Today, Ricoh still does not know the
21  basis for Aeroflex's decision to classify some ASICs for which they have received revenue as "non-
22  commercial products."  Ricoh's proposed remedy would resolve this.

23        **ASIC vs. ASSP.**  Defendants do not dispute that the Court has defined an ASIC as "an
24  integrated circuit chip designed to perform a specific function."  (D.I. 296, Claim Construction Order
25  at 2.)  Nor do they dispute that Aeroflex's corporate designees ignored this definition and instead
26  used a much narrower definition of an ASIC as an application specific integrated circuit designed for
27  a *specific* customer.  (Brothers 2/21/06 Dec., Ex. 15, Kerwin Tr. at 19-21, 177-178; Ex. 16, Milliken
28

1   Tr. at 27-29.)  As a result, Aeroflex did not conduct an adequate investigation into its ASIC standard
2   products, or ASSPs.  Ricoh has been unable to confirm that all of the ASICs, as defined by this
3   Court, listed on Aeroflex's Short Form that were synthesized using Design Compiler have been
4   included on the Aeroflex declarations.  For example, Mr. Milliken could not identify whether Design
5   Compiler was used to synthesize certain ASICs on the Short Form.  (Brothers 2/21/06 Dec., Ex. 16,
6   Milliken Tr. at 286-87.)  It is unclear from the witnesses' testimony whether an adequate
7   investigation of the products made by the Plainview facility was ever conducted.  (Brothers 2/21/06
8   Dec., Ex. 16, Milliken Tr. at 31-32.)  To this day, Ricoh does not know which ASSPs should have
9   been included on the Aeroflex declarations.   This is why a comprehensive investigation and new
10  declaration is an appropriate remedy.

11         **Aeroflex's failure to list the JW02 product.**  Defendants concede (at p. 10) that the
12  JW02 chip should have been listed.  But even though Aeroflex submitted a second declaration in
13  October 2005, and a third after Ricoh filed its motion for sanctions, Aeroflex still inexplicably failed
14  to list the JW02 chip!  Even now, Aeroflex has never provided a declaration listing the JW02 chip,
15  even though it concedes that it should have.  Ricoh's proposed remedy would resolve this.

16         **The multiple Matrox declarations suggest similar problems.**  Multiple Matrox product
17  declarations were served on August 16, 2005 and October 13, 2005.  (Brothers 2/21/06 Dec., Ex. 18,
18  19, 20, 21, 22, 23.)[2]  Ricoh believes that, based upon the problems identified with the Aeroflex and
19  AMI Semiconductor declarations, and given the late stage of discovery, it would be prudent to have
20  the Matrox entities submit full and final declarations.

21  **II.    CORRECTION OF DEFENDANTS' OTHER MISSTATEMENTS**

22         Defendants' opposition brief contains an unfortunate number of misstatements that, while
23  not central to the core issues of the failure to disclose, or the appropriate sanction to be imposed,
24  nonetheless should be pointed out to the Court.

---

[2] Defendants do not dispute that another Matrox library declaration was executed on November 4, 2005, but was not served until February 14, 2006.  (Brothers 2/21/06 Dec., Ex. 28.)

**Ricoh's focus is on proving infringement.**  Defendants attempt to avoid responsibility by asserting that Ricoh is more interested in pursuing discovery disputes than proving the merits of its claims.  This assertion is belied by Ricoh's intense focus on the merits and its preparation for trial.  If Defendants would have identified the relevant ASICs, timely produced the requested evidence, and properly prepared its Rule 30(b)(6) witnesses, then this motion would not be necessary.  Ricoh's proposed remedy is focused upon trying the case as scheduled.

**The Fink email.**  On July 15, 2005, Ms. Fink indicated that "home brew" libraries created using DesignWare Developer or libraries purchased in Synopsys .db format are not at issue in the present case.  (Brothers 2/21/06 Dec., Ex. 1.)  Defendants do not seriously dispute that this statement is wrong.  They instead claim that this statement was based upon a misunderstanding of the Court's instructions at the CMC, but this appears to be little more than a plea for mercy.  The evidence suggests that Ms. Fink was implementing a plan to not disclose information sought by Ricoh and Ordered by the Court.  For example, the CMC statement clearly identifies Ricoh's position that *all* technical libraries should be identified and produced.  (De Mory Dec., Ex. 2, at 28: CMC statement identifying all of the libraries, including those excluded by Ms. Fink.)  Thus, for at least a month *before* the July 2005 case management conference, Defendants knew that Ricoh was seeking all such libraries, and not (as Ms. Fink wrote) excluding "home brew" libraries or libraries obtained from Synopsys.

During the Case Management Conference, Judge Jenkins wanted to know where the parties' principle disputes lay regarding the production of the source code and libraries, including design libraries and target technology libraries.  Ricoh made clear that it was seeking discovery of *all* design libraries.  Ricoh pointed out to the Court how Synopsys' documentation specifically identified design libraries in which users could store synthesis components created using DesignWare Developer.  Thus, Defendants were on explicit notice both before and during the CMC that Ricoh was seeking discovery on all libraries.  Ms. Fink's email is to the contrary.

Consistent with Ricoh's statements during the CMC, on July 18, 2005, Ricoh confirmed to Defendants that it was seeking:

> Design libraries (*see, e.g., DesignWare Building Block IP User Guide* (RCL009357-9448) at Ch 1 pp. 17-18, 20); *DesignWare Developer's Guide* (RCL009449-9622) at 23-24, 146) . . . [and] [a]ny libraries used by or made by (or behalf of) an ASIC Defendant as a replacement or substitute for any of the above libraries (*see, e.g.,* the comments of the ASIC Defendants in the CMC at Page 18, lines 17-19)

(Brothers 3/21/06 Dec., Ex. 3, at 2).  Contrary to Ms. Fink's email, the CMC statement and the discussions at the CMC and Ricoh's July 18 letter make clear that Ricoh was seeking libraries Defendants may have created using DesignWare Developer.  The argument that Defendants' counsel did not understand this is belied by the record.  The most telling fact is that, despite this record, Defendants' counsel was directing her clients *away* from collecting relevant library information.  This, combined with the hopelessly incomplete declarations that were served in July and August, is solid evidence of willful concealment.

**Ricoh quickly suspected the declarations were incomplete.**  Defendants wrongfully claim (at p. 7) that Ricoh "has never taken issue with the stated scope of the Declarations."  To the contrary, as soon as Ricoh received the first set of library declarations in July 2005, Ricoh suspected the Defendants had not made a sufficient disclosure, because the library declarations did not match the ASICs that the Defendants were offering for sale.  For example, Aeroflex's first list of libraries and its publicly available list of ASICs simply did not match – it was selling ASICs of a specific micron width, but it did not disclose the libraries of the micron size used to create those ASICs, and vice-versa.

Ricoh's counsel repeatedly asked Defendants' counsel if their declarations were accurate.  In a letter dated August 17, 2005 Ricoh identified several exemplary deficiencies in the Defendants' declarations.  At least one of the deficiencies included in the letter related to the Aeroflex declarations stating that "a comparison of Aeroflex Colorado's list of products to [the] Declaration of Brandon Coco In Support of Defendants' Stipulation to Design Libraries reveals difference between the technology libraries."  (Brothers 3/21/06 Dec., Ex.4, Hoffman Ltr. at 2.)  On August 16, 2005, this Court instructed the parties to further meet and confer on this and other issues.  (D.I. 319.)  At a meet and confer on August 22, 2005, Defendants' counsel explicitly (but falsely) assured

Ricoh's counsel that Defendants had conducted an exhaustive review of their client's products, and that the July and August declarations were accurate. Based upon that assurance, the parties submitted a joint letter to the Court on August 30, 2005, in which Ricoh stated its reliance upon this representation, which Ricoh now knows to have been false:

> The libraries that are relevant to this suit are target technology, synthetic, symbol, link, design, and GTECH libraries for the ASICs products designed using Design Compiler. Pursuant to Judge Jenkins' Order at the July 13, CMC, on July 21 and August 15 and 16, the ASIC Defendants submitted declarations that, *according to their counsel*, include a full and complete list of all such ASICs, and libraries, from 1997 through the present.

(De Mory 3/14/06 Dec., Ex. 4, at 3, emphasis added.) Defendants misquote this statement (at p. 7) to claim that "Ricoh affirmed that the scope of the Declarations was proper." In fact, this statement reflects the fact that Ricoh had questions about the scope of the declarations, and that Defendants expressly assured Ricoh that the declarations were accurate. As borne out by subsequent events – the multiple replacement declarations, the increase of accused products from 60 to more than 200, the acknowledgement that there are may more ASICs that never have been disclosed – these initial declarations were more than just incomplete. They were wrong, and defendants knew it.

**The late and incomplete disclosure of the missing AMI ASICs.** Defendants also temporally scramble the events surrounding Ricoh's discovery that AMI Semiconductor had failed to disclose the additional ASICs and libraries. Less than 36 hours before the February 9, 2006, deposition of the AMI Semiconductor declarant, Defendants' counsel acknowledged that none of the AMI declarations disclosed any of the Flextronics chips. (De Mory Dec., Ex. 1.) Contrary to the characterization in Defendants opposition papers (at pp. 15-16), that letter did not schedule or request a meet and confer. Instead, Ricoh's counsel sought to meet and confer following the Smith deposition, where Ricoh requested new declarations and a complete production of relevant documents. Defendants assert that the meet and confer was "exclusively" limited to three topics, but the cited support for this statement (De Mory Dec., Ex. 9) makes no such mention of this, and is flatly contradicted by the extensive agenda for those meet and confer sessions. (Brothers 3/21/06 Dec., ¶ 4, Ex. 7, 8.) In fact there were at least two wide-ranging meet and confer sessions between

1  counsel in which this topic was addressed. (Brothers 3/21/06 Dec., ¶ 4.) Ricoh did all it could to
2  address the issue, only to be repeatedly rebuffed by Defendants.

3  Late on February 21, 2005, the same day that Ricoh filed the sanctions motion,
4  Defendants' counsel sent a letter proposing a four month continuation of the discovery schedule,
5  other pretrial dates, and trial in order to investigate and produce documents relating to the missing
6  AMI Semiconductor documents. (De Mory Dec., Ex. 9.) The February 21 letter proposing a four
7  month delay confirmed that Defendants' strategy was to continue to interminably delay this case.[3]
8  Contrary to Defendants' assertion (at p. 16) that this letter was ignored, it was discussed by counsel
9  the next day, and was formally rejected by Ricoh on February 28, 2006: "Ricoh does not agree with
10 any aspect of your proposal that would defer the discovery deadlines and other pretrial or trial
11 dates." (Brothers 3/21/06 Dec., Ex. 5, Brothers Ltr. to De Mory.)

## III. ONLY TWO ISSUES MUST BE RESOLVED BY THIS COURT

### A. Whether Defendants Have Wrongfully Failed To Disclose ASICs

Defendants offer two explanations for not disclosing all of the ASICs. First, they claim that they were under no obligation to disclose ASICs that they claim were not commercial products, even though they earned revenue from them. Second, they claim that they had no obligation to disclose any ASICs that were synthesized by a wholly-owned subsidiary under their complete direction and control. Both arguments are fundamentally inconsistent with the Court's instructions.

#### 1. Defendants' Inability to Explain Why ASICs That They Have Sold Are Not "Commercial Products"

At the CMC, Ricoh made clear that it had no interest in proving infringement for ASICs for which there were no revenue. Ricoh seeks a reasonable royalty on the products created as a

---

[3] Defendants have moved to delay Ricoh's infringement action on four separate occasions: (1) in Delaware in June 2003, where the motion was denied; (2) in this Court in September 2003, where the motion was denied; (3) in the June 2005 CMC statement (De Mory Dec., Ex. 2, at 37) ("Synopsys and the Customer Defendants seek a stay of the action against the Customer Defendants"), where the motion was denied; and (4) on February 28, 2006 (D.I. 370), which Ricoh has opposed (D.I. 382) and, unless the Court issues an order beforehand, is set for argument on April 4.

1  result of the Defendants' use of the process disclosed in claims 13-17 of the '432 patent.

2          As Ricoh explained in its motion (at pp. 9-12), however, each of the Aeroflex witnesses
3  testified that Aeroflex had received revenue associated with at least one ASIC that was not included
4  on the declaration or was removed from the declaration because it was supposedly not a
5  "commercial product." (Brothers 2/21/06 Dec., Ex. 14, Coco Tr. at 95-97; Ex.15, Kerwin Tr. at 104-
6  110, 129-130; Ex. 16, Milliken Tr. at 131-132.) These witnesses were unable to provide the
7  definition of "commercial product" as used to determine the products included in the product
8  declarations. Mr. Coco, who signed the declarations, testified that he did not know what was meant
9  by "not commercial product." (Brothers 2/21/06 Dec., Ex. 14, Coco Tr. at 95-97.) Mr. Milliken
10 could not identify why specific ASIC products were removed from the declarations as "not
11 commercial product" while others remained. (Brothers 2/21/06 Dec., Ex. 16, Milliken Tr. at 51-60,
12 70-79.) Mr. Milliken believed that a substantial number of the products identified on both
13 paragraphs 3 and 4 of the Supplemental Representative Product declaration fell into the category of
14 being products sold for eventual use by the military. *Id*. He was ultimately unable to determine why
15 select products were identified as "not commercial product" and removed while others remained on
16 the list of "commercial products." *Id*.

17         Thus, Aeroflex's witnesses could not define what a "commercial product" was, nor could
18 they explain why Aeroflex received revenue for ASICs that it claimed were not commercial
19 products. Ricoh's questions on this subject were met with vigorous scope objections – more than
20 300 in the one-day Milliken deposition alone. To this day, Ricoh has been unable to find out the
21 standards used to define a "commercial product." As a remedy, defendants should be ordered to
22 amend their declarations and disclose all ASICs synthesized using Design Complier and for which
23 they received any revenue between 1997 and the present.

24         **2.    AMI's Refusal To Identify And Disclose ASICs That Were Hidden In Subsidiaries**
25

26         For the first time, in Defendant's opposition, they have disclosed that, between 2002 and
27 2005, AMI Semiconductor made at least three different asset acquisitions that included ASICs that
28

1   were synthesized using Design Complier.  AMI has not produced the relevant documents regarding

2   those transactions, contrary to the Defendants' implication (at p. 15).  Indeed, prior to the submission

3   of the Smith declaration on March 14, AMI had never disclosed that the 2002 or 2004 acquisitions of

4   assets from STMicroelectronics NV and Dspfactory included relevant ASICs.  (Brothers 3/21/06

5   Dec., ¶ 5.)

6         Defendants admit at page 14 of its brief that AMI has numerous wholly owned

7   subsidiaries that have engaged in synthesis of ASICs that fall squarely within the bounds of the

8   Court's CMC order.  AMI does not deny that it has sold these ASICs, and received the revenue from

9   these products made by the infringing process.  Nor do Defendants deny that Judge Jenkins ordered

10  them to disclose these ASICs.  Nor do Defendants deny that on July 15, 2005 – well before the first

11  declaration was served – Ricoh put Defendants on notice that the declarations should include their

12  subsidiaries and consultants.  (Brothers 3/21/06 Dec., Ex. 2.)

13        A parent corporation can be held liable for a subsidiary's infringement on a showing of

14  an "overlapping business relationship controlled by" the parent, or where the parent corporation

15  "control[s] virtually every phase of the subsidiary's operation."  *Milgo Elec. Corp. v. United*

16  *Business Communications, Inc.*, 623 F.2d 645, 660 (10th Cir. 1980); *Swift Chem. Co. v. Usamex*

17  *Fertilizers, Inc.*, 197 U.S.P.Q. 10, 21 (E.D. La. 1977).  Here, AMI admits that it has business units

18  spreading across corporate lines.  (Smith 3/17/06 Dec., ¶ 7.)  AMI's acquisition of assets that

19  included ASICs made by the infringing process subjected AMI to liability.  *Kloster Speedsteel Ab. v.*

20  *Stora Kopparabergs Berg Slags Ab.*, 793 F.2d 1565, 1583 (Fed. Cir. 1986) (finding liability for "a

21  non-party acquir[ing] assets of a Defendant-infringer").  Since Defendants admit that AMI has

22  created these subsidiaries based upon asset acquisitions, and because Defendants admit that "AMI

23  business units extend across corporate boundaries," AMI is liable for the infringing activities of its

24  subsidiaries.

25        Defendants are estopped from arguing that the corporate veil should shield the named

26  parent from liability for the infringing activity of its subsidiaries.  When Ricoh sought to join

27  Aeroflex Colorado Springs as a party, Defendants stipulated to Ricoh and this Court that it was not

28

1  necessary to treat Aeroflex Colorado Springs as a separate entity because it was a subsidiary.

2  (Brothers 3/21/06 Dec., Ex. 6, Kelley May 3, 2004, Ltr to Meilman) ("As we have noted in previous

3  communications, Aeroflex Colorado Springs, Inc. is a subsidiary of Aeroflex. *It is not necessary to*

4  *deal with Aeroflex and its subsidiaries separately.* Aeroflex will respond on behalf of each of its

5  subsidiaries.").[4] Defendants are now arguing the exact opposite based on nothing more than tactical

6  convenience.[5] This Court must reject Defendants argument that the infringing products of their

7  subsidiaries should be excluded from discovery, contrary to this Court's orders and all of the

8  evidence that those ASICs were to be disclosed under threat of sanctions.

### B.   What is the Appropriate Sanction

Defendants do not dispute the authority of this Court to regulate its proceedings, and to punish parties that have failed to comply with Court Orders. Defendants make virtually no mention of the applicable law. Defendants only argue that the facts do not justify the imposition of the ultimate sanction, as in *Wright v. Maritime Overseas Corp.*, 96 F.R.D. 686, 687-688 (9th Cir. 1983), where the case was dismissed with prejudice due to plaintiff's discovery misconduct. Here, the corresponding ultimate sanction would be a default judgment, but Ricoh is not seeking such a remedy. Defendants do not dispute that "[t]he choice of the appropriate discovery sanction is the responsibility of the trial judge and will not be reversed absent abuse of discretion." *Id*. at 687-88. Nor do Defendants dispute that, under Rule 37(b)(2), this Court has the right to order that "designated facts shall be taken to be established" or "prohibiting that party from introducing designated matters in evidence."

---

[4] A similar attempt to "carry water on both shoulders" was rejected by the Federal Circuit in *Kloster*, where an infringing subsidiary argued "that it cannot be bound because it was not a party, disregarding its resistance to [plaintiff's] motion to join it," at the same time purchasing the parents infringing assets in order to evade an injunction against the parent. 793 F.2d at 1583.

[5] The convoluted corporate structure of Matrox is another reason why Ricoh needs full, complete, and non-evasive declarations, sworn under penalty of perjury. Without final declarations that take each Defendant's complete corporate structure into account, Defendants are given an incentive to hide infringing ASICs in non-party subsidiaries, even when the Defendant parent exercises complete control over those subsidiaries.

1       This is exactly the remedy sought by Ricoh.  Ricoh does not seek more time for discovery, or an extension of the trial date, because those remedies only would reward Defendants and Synopsys for their wrongful conduct.  Defendants' non-compliance with Judge Jenkins' instructions have had an enormous consequence upon Ricoh's pretrial preparations.  Defendants were obligated to fully disclose all of the ASICs in August 2005, to promptly produce all of the relevant documents, and to engage in timely discovery in order to enable this case to be timely prepared for trial.  They have failed to do so.  Granting Defendants' request either to exclude the undisclosed ASICs from the case, or to extend discovery for months and again delay trial, only rewards Defendants for their disobedience.

      As set forth in Ricoh's moving papers, the appropriate remedy for Defendants' conduct is threefold:  updated declarations from a senior corporate officer for each Defendant, evidentiary preclusions with respect to those undisclosed ASICs, and immediate financial discovery.  Monetary sanctions, including an award of Ricoh's attorneys' fees and costs, may also be appropriate.

Dated: March 21, 2006

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, California  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064

Ricoh Company, Ltd.

By: /s/ <u>Kenneth W. Brothers</u>
Gary M. Hoffman
Kenneth W. Brothers
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY LLP
2101 L Street NW
Washington, D.C.  20037-1526
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

Edward A. Meilman
DICKSTEIN SHAPIRO MORIN &
   OSHINSKY LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 896-5471
Facsimile:  (212) 997-9880

Attorneys for Ricoh Company, Ltd.