1  Gary M. Hoffman (*Pro Hac Vice*)
   Kenneth W. Brothers (*Pro Hac Vice*)
2  DICKSTEIN SHAPIRO LLP
   1825 Eye Street, NW
3  Washington, DC 20006-5403
   Telephone: (202) 420-2200
4  Facsimile: (202) 420-2201

5
   Edward A. Meilman (*Pro Hac Vice*)
6  DICKSTEIN SHAPIRO LLP
   1177 Avenue of the Americas
7  New York, NY 10036-2714
   Telephone: (212) 227-6500
8  Facsimile: (212) 227-6501

9  Jeffrey B. Demain, State Bar No. 126715
   Jonathan Weissglass, State Bar No. 185008
10 ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
   177 Post Street, Suite 300
11 San Francisco, California  94108
   Phone  (415) 421-7151
12 Fax (415) 362-8064

13 Attorneys for Ricoh Company, Ltd.

14                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
15                      SAN FRANCISCO DIVISION

16
   _____
17 RICOH COMPANY, LTD.,                     )
                                            )
18              Plaintiff,                   )    **CASE NO. C-03-4669-MJJ (EMC)**
                                            )
19      vs.                                  )
                                            )    **RICOH'S NOTICE OF MOTION AND**
20 AEROFLEX INCORPORATED, et al.,           )    **MOTION FOR SUMMARY JUDGMENT ON**
                                            )    **AEROFLEX'S AFFIRMATIVE DEFENSE OF**
21              Defendants                   )    **"AUTHORIZATION AND CONSENT"**
                                            )
22                                           )    Date:        September 26, 2006
                                            )    Time:        9:30 a.m.
23                                           )    Courtroom:   11, 19th Floor
                                            )    Judge:       Martin J. Jenkins
24 _____ )

25

26

27

28

2131026.02

# TABLE OF CONTENTS

**Page No.**

NOTICE OF MOTION AND RELIEF SOUGHT ...............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION ...........................2

I.    INTRODUCTION .................................................................................................................2

II.   FACTUAL BACKGROUND ................................................................................................3

       A.    Aeroflex's Recent Addition Of The Defense And Its Limitation To Express
             Authorization .........................................................................................................3

       B.    Aeroflex Has Not Produced Evidence Linking All Thirty Accused ASICs To
             Government Contracts ............................................................................................4

       C.    Aeroflex Should Be Limited To Asserting "Authorization And Consent" To The
             Twelve ASICs In The De Mory Key ......................................................................6

       D.    Aeroflex Cannot Prove The Assertions In The De Mory Key Regarding Those
             12 ASICs.................................................................................................................7

       E.    Aeroflex Has Not Produced Evidence That The Government Granted Authorization
             And Consent To Infringe The Processes Taught By The '432 Patent............................7

III.  RICOH IS ENTITLED TO SUMMARY JUDGMENT BECAUSE AEROFLEX HAS
      NOT MET ITS EVIDENTIARY BURDEN TO SUPPORT THE ELEMENTS OF ITS
      AFFIRMATIVE DEFENSE ..................................................................................................9

       A.    Standard Of Review................................................................................................9

       B.    Under 28 U.S.C. § 1498, Authorization And Consent Can Only Be Granted
             By The Government As A Limited Waiver Of Immunity.............................................10

       C.    Two Types Of Authorization And Consent Exist, In Broad And Narrow Form............11

       D.    Under The Standard (Or Narrow) Clause, Authorization And Consent Is Not
             Granted Where Infringement Is Not Required Or Necessary........................................13

       1. Aeroflex Has Provided No Evidence For Either Express Or Implied Authorization And
          Consent Under The Standard, Narrow Clause............................................................14

       2. Aeroflex Has Provided No Evidence That Its Infringing Process Is Required  By, Or
          Necessary For Performance Of Any U.S. Government Contract ...................................16

       3. The Infringing Software Is A Commercial Item Otherwise Outside the Scope of
          Authorization and Consent ...................................................................................17

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page ii

2131026.02

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     E.     Aeroflex Has Not Demonstrated That The Research & Development Clause Applies To Any Aeroflex ASIC Sales ........................................................................18

1. The "Northrop Grumman Document" ..........................................................19

2. The "Boeing Document" ..............................................................................20

3. The "Johns Hopkins Document" ..................................................................20

4. The "NASA Document" ................................................................................20

IV.     CONCLUSION ..............................................................................................21

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page  iii

2131026.02

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bereslavsky v. Esso Standard Oil Co.,

175 F.2d 148 (4th Cir. 1949) ........................................................................................15

Boston Scientific Corp. v. Cordis Corp.

422 F. Supp. 2d 1102 (N.D. Cal. 2006) ..........................................................................9

Carrier Corp. v. United States,

534 F.2d 244 (1976).................................................................................................13, 15

Celotex v. Catrett,

477 U.S. 317 (1986)..............................................................................................9, 10

FDIC v. Giammettei,

34 F.3d 51 (2d Cir. 1994) ...........................................................................................10

Hughes Aircraft Co. v. United States,

209 Ct. Cl. 446 (1976) ................................................................................................15

Larson v. United States,

26 Cl. Ct. 365 (1992) .....................................................................................10, 13, 15

Madey v. Duke,

413 F. Supp. 2d 601 (M.D.N.C. 2006) .................................................12, 13, 14, 15

Parker Beach Restoration, Inc. v. United States,

58 Fed. Cl. 126 (2003) ................................................................................................15

T.W. Electric Service v. Pac. Electric Contractors,

809 F.2d 626 (9th Cir. 1987) .....................................................................................10

## FEDERAL STATUTES & REGULATIONS

48 C.F.R. § 27.201-1......................................................................................................12

48 C.F.R. § 27.201-2........................................................................................................3

48 C.F.R. § 27.201-2(a) .................................................................................................11

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page  iv

2131026.02

48 C.F.R. § 27.201-2(b) ........................................................................................................11

48 C.F.R. § 52.212-4 ............................................................................................................17

48 C.F.R. § 52.227-1 ............................................................................2, 3, 8, 9, 11, 18, 19, 20, 21

48 C.F.R. § 52.227-1(a) ........................................................................................................12

28 U.S.C. § 1498 ..................................................................................................1, 2, 3, 4, 5, 9

Fed. R. Civ. P. 30(b)(6) ........................................................................................4, 5, 7, 8, 16

Fed. R. Civ. P. 56 ................................................................................................................1, 10

Fed. R. Civ. P. 56(c) ..............................................................................................................9

Fed. R. Civ. P. 56(d) ..............................................................................................................9

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page  v

2131026.02

**NOTICE OF MOTION AND RELIEF SOUGHT**

Please take notice that, on September 26, 2006 at 9:30 a.m., before the Honorable Martin J. Jenkins in Courtroom 11, 19th Floor, in the United States District Court, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Ricoh Company, Ltd. ("Ricoh"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rules 56-1 and 56-2, will move for summary judgment on the Sixth Affirmative Defense of Defendants Aeroflex Incorporated and Aeroflex Colorado Springs, Inc. (collectively "Aeroflex").  That affirmative defense is based on 28 U.S.C. § 1498, "Authorization and Consent."  This motion is based on the following Memorandum of Points and Authorities, the accompanying declaration of Rebecca L. Barbisch, the oral arguments of counsel at the hearing on this motion, and all pleadings and matters of record in this action.

The issues to be decided are as follows:

1.  Whether Aeroflex has admissible evidence that the accused ASICs were produced or sold pursuant to a federal Government contract.

2.  Whether Aeroflex has admissible evidence that the use of Aeroflex's infringing process was expressly required by any federal Government contract.

3.  Whether Aeroflex has admissible evidence that the use of Aeroflex's infringing process was impliedly required or necessary to perform any federal Government contract.

4.  Whether Aeroflex has admissible evidence that the research and development form of the "authorization and consent" clause applied to any of the accused ASIC sales.

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page 1

2131026.02

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

## I.    INTRODUCTION

Ricoh owns U.S Patent Number 4,922,432 ("the '432 patent").  The '432 patent claims methods for using a Computer-Aided Design system to design Application Specific Integrated Circuits ("ASICs"), which are integrated circuit chips designed to perform a specific function.  Ricoh asserts the '432 patent has been infringed by the Defendants to this action, including Aeroflex Inc. and its wholly-owned subsidiary, Aeroflex Colorado Springs, Inc. (collectively "Aeroflex").  Aeroflex licenses and uses Synopsys' Design Compiler, which Aeroflex uses (in conjunction with other software and its own design activities) to design ASICs.  Ricoh asserts that when Aeroflex takes actions to design and manufacture ASICs that includes the use of Design Compiler, Aeroflex has infringed the '432 patent.[1]

In April 2006, this Court granted Aeroflex the right to amend their answers to include, *inter alia*, the authorization and consent defense under 28 U.S.C. §1498.  Aeroflex bears the burden of proof on this affirmative defense.  Aeroflex asserts that some of the accused ASICs were sold under subcontracts to companies performing prime U.S. Government contracts.  Aeroflex thus asserts as an affirmative defense to Ricoh's infringement claim that under 28 U.S.C. § 1498 Aeroflex received the Government's "authorization and consent" to infringe Ricoh's '432 patent on the Government's behalf.  Aeroflex asserts that its Government sales of the accused ASICs received express authorization and consent through Government contract clauses governed by 48 C.F.R. § 27.201-2 and § 52.227-1 of the Federal Acquisition Regulations (FAR).[2]

In this motion, Ricoh shows that Aeroflex lacks admissible evidence to prove the required elements of its affirmative defense, and thus summary judgment is appropriate.  This brief shows that, for Aeroflex's design, manufacture and sale to the Government of commercial ASICs, no authorization and consent is granted as a matter of law where (1) the Government has not required Aeroflex to use the

---

[1] The accused Aeroflex ASICs are identified in the Third Supplemental Product Declaration re Additional Aeroflex Commercial ASICS, by Peter Milliken dated May 10, 2006, at ¶ 3.  (Barbisch Ex. 1)

[2] Aeroflex asserts that it does not rely on any form of implied authorization and consent.  (D.I. 430 at 4)

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 2

2131026.02

1  infringing process and (2) Aeroflex's use of the infringing process was not necessary to perform the

2  contract.

3  Aeroflex apparently has mistakenly assumed that, to support its affirmative defense, all it must

4  do is show the *existence* of the standard clause in Government contracts governing its ASIC sales.  This

5  is not the law.  Because Aeroflex has no admissible evidence that the Government *required* use of the

6  infringing process, or that the infringing process was *necessary* to perform any Government contract, it

7  cannot meet its burden of proof at trial.

8  **II.    FACTUAL BACKGROUND**

9  A.    Aeroflex's Recent Addition Of The Defense And Its Limitation To Express
       Authorization

10  On November 8, 2005, the Defendants filed a Motion to Amend/Correct Their Answers and

11  Counterclaims (D.I. 341), which Ricoh opposed (D.I. 346).  Attempting to justify their motion,

12  Defendants (erroneously) stated that "a private party cannot be held liable for infringement of any

13  products used or manufactured by or for the U.S. Government."  (D.I. 341, at 3)  They also wrongly

14  stated that "if the sales were to the United States Government, the sales are immune from damages.  No

15  discovery will change the basic facts."  (Id. at 4)

16  In the Defendants' November 29, 2005 Reply, they stated:

17

18       Ricoh attempts to create the illusion that 28 U.S.C. section 1498 is an intensely factual issue,
         subject to extensive discovery, because "authorization and consent" can be either express, or

19       implied. . . .  [T]he "authorization and consent" provisions at issue here are express
         provisions.  Thus, at this point, for the products that have been identified as subject to

20       government contracts  . . .  the issue is a straightforward apportionment issue, or the
         elimination of damages, in their entirety, for certain chips identified in the Customer

21       Defendants production declarations.

22

23  (D.I. 348, at 5, footnotes omitted).  As shown below, these statements are misleading because when the

24  subcontractor's infringement was not necessary and was not required by the contract, the standard FAR

25  clause (48 C.F.R. § 27.201-2 and § 52.227-1) does not support an authorization and consent defense.

26  The Court granted in part the motion on December 12, 2005, allowing ten days for amendment.

27  (D.I. 352)  The Answers were not filed during that time.  On April 7, 2006, Defendants filed the

28

1   Amended Answers (D.I. 423, 424), and on April 12, 2006, filed a request for leave for the late filing,

2   stating that the failure to file was an oversight.  (D.I. 430)  Although all Defendants submitted Amended

3   Answers, only Aeroflex sought to add the § 1498 defense, because none of the other Defendants had

4   made sales to the government.

5           In connection with its attempt to add the defense in April 2006, Aeroflex stated that "[i]t is

6   Aeroflex's position that because it is not relying on implied 'authorization and consent,' there is no

7   additional discovery that needs to occur."  (D.I. 430 at 4 (emphasis added))  Thus, according to

8   Aeroflex, its defense is limited to "express" authorization and consent.  (Id.)  This is important, because

9   an express defense turns solely on the contract language, and not the conduct of the parties.  Thus, to

10  resolve this motion, the Court need only examine the documents to determine whether there is sufficient

11  evidence to support an express authorization and consent defense.

12          Attempting to justify their failure to timely file in December 2005, and to minimize the prejudice

13  to Ricoh (given that fact discovery was nearly over), Aeroflex's counsel, Ms. De Mory, filed a

14  declaration with the court on April 13, 2006 which provided "a key that links particular Government

15  contracts to particular Aeroflex part numbers and particular purchase orders" in an effort "[t]o simplify

16  any discovery that Ricoh may need to take on the § 1498 defense."  (D.I. 434 at 1, hereinafter the "De

17  Mory Key.")  Ms. De Mory declared that "[t]o the extent Aeroflex is able to locate and produce

18  additional contracts, they will be produced in the same manner with a key linking the purchase order to

19  the products and the contracts."  (Id.)  Counsel further declared that Aeroflex's 30(b)(6) designee, Mr.

20  Milliken, would be prepared to testify about the key and about the underlying documents.  (Id.)

21          On April 24, 2006 the Court permitted Aeroflex to file its Amended Answer and Counterclaims,

22  which stated in the Sixth Affirmative "Authorization and Consent" defense that "Ricoh's claims are

23  barred in whole or in part by operation of 28 U.S.C. § 1498."  (D.I. 445)

24          B.      Aeroflex Has Not Produced Evidence Linking All Thirty Accused ASICs to
                    Government Contracts

25

26          Aeroflex has broadly asserted its "authorization and consent" defense for the 30 Aeroflex ASICs

27  Ricoh has accused of infringement without evidence to support its assertions.  (Barbisch Ex. 1, Aeroflex

28

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 4

2131026.02

1    Product Declaration at ¶ 3)  This section shows that Aeroflex cannot meet its burden of proving

2    "authorization and consent" on an ASIC by ASIC basis.

3        Of the 30 accused ASICs, Aeroflex eventually conceded it could only identify 12 ASICs

4    associated with particular Government contracts and particular purchase orders.  (D.I. 434 at 1, Exhibit

5    1; Barbisch Ex. 1 at ¶ 3).[3]  The De Mory key identified only 12 ASICs.  (D.I. 434 at Exhibit 1)  In

6    Aeroflex's responses to Ricoh's interrogatories, Aeroflex identified only one person – Peter Milliken –

7    as having knowledge of this defense.  (Barbisch Ex. 4 at 5-6.)  Mr. Milliken, Aeroflex's sole 30(b)(6)

8    designee on this topic, was specifically prepared to answer questions about the De Mory Key and the

9    underlying documentation on the 12 ASICs identified in the Key.  (D.I. 434 at 1)  The record shows,

10   however, that Aeroflex, through Mr. Milliken, was unable to explain either the De Mory Key or identify

11   definitively which ASICs were produced to which Government contracts.  (Barbisch Ex. 2, Milliken

12   Dep. at 30, 38 (Milliken testifying that he had never seen the De Mory Key and, in fact, had never seen

13   multiple documents identified in the De Mory Key)).  Mr. Milliken could not identify any ASICs that

14   were missing from the De Mory Key.  (Id. at 36)

15       Aeroflex's corporate designee could not identify which of the 30 accused ASICs were developed

16   or sold under Government contract or subcontract.  (Barbisch Ex. 2, Milliken Dep. at 21-23)  In fact, the

17   corporate designee admitted that at least eight ASICs were not developed or sold pursuant to

18   Government contracts.  (Id. at 22-23)[4]  The designee added that it was possible that six ASICs were

19   potentially developed and sold under Government contract, but said that "we would need to look at the

20   specific purchase orders to ascertain whether there are Government contracts involved.[5]  (Id. at 21-23)

21

22

23   [3] Aeroflex identified documents in its response to Interrogatory No. 38 as responsive to its basis for its "authorization and

24   consent" defense that were produced after the date of the key.  (Barbisch Ex. 4 at 5-6)  Accordingly, Ricoh requested a
     supplement to the De Mory Key.  (Barbisch Ex. 3, Barbisch June 6, 2006 letter to De Mory)  Aeroflex never produced a key

25   in response to this request despite Aeroflex's assertion that it would produce an additional key "[t]o the extent Aeroflex is
     able to locate and produce additional contracts."  (D.I. 434 at 1)

26   [4] These ASICs were identified as  #1 UTCAM-Engine/UT100CE 02 JAA, #2 JW01, #24, JF01A/B, #26 YA04/YA13,
     #27 YB01, #28 DA01, #29 DA02, and #30 JW02.  (Barbisch Ex. 1, Aeroflex Product Declaration at ¶ 3)

27

28   [5] These ASICs were identified as #6 KD12A, #7 KB10A, #8 KB07A, #9 KM01A, #10 KD11A, #11 JD05A.  (Barbisch Ex.
     1, Aeroflex Product Declaration at ¶ 3)

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 5

2131026.02

No purchase orders have been produced by Aeroflex that identify these ASICs as being developed and sold under Government contract.  (Barbisch Ex. 4 at 5-6)  Further, none of these ASICs were identified in the De Mory Key.  (D.I. 434 at Exhibit 1)  Mr. Milliken claimed that sixteen of the accused ASICs were developed and sold under Government contract.[6]  (Barbisch Ex. 2, Milliken Dep. at 21-23)  However, Aeroflex has only identified twelve ASICs in the De Mory key.[7]  While the evidence regarding the 12 ASICs in the De Mory Key is insufficient, as shown below, at this point there is no evidence to support any authorization and consent defense for the 18 other accused ASICs, including the four identified by Mr. Milliken but not in the De Mory Key.  Aeroflex thus has no evidence—let alone admissible evidence – that any of the 18 ASICs not in the De Mory Key were developed or sold pursuant to Government contracts, and thus may even potentially qualify for the authorization and consent defense.

C.     Aeroflex Should Be Limited To Asserting "Authorization And Consent" To The Twelve ASICs In The De Mory Key

Aeroflex has repeatedly asserted it is only relying on express "authorization and consent" found in contracts relating to the accused ASICs.  (D.I. 348 at 5; D.I. 430 at 3)  As Aeroflex has only been able to locate and produce contracts allegedly related to the twelve ASICs identified in the De Mory Key, Aeroflex should be limited to asserting "Authorization and Consent" on those twelve ASICs.  (D.I. 434 at Exhibit 1)

Aeroflex should further be limited to asserting "Authorization and Consent" only on the ASIC sales identified in the De Mory Key purchase orders.  Aeroflex has the burden of proving "authorization and consent" with regard to each purchase order.[8]  For example, the KC01A ASIC is sold to many

---

[6] These ASICs were identified as #3 KD08A, #4 KD15A, #5 KB11A, #12 KD24A, #13 KD26A, #14 KD28A, #15 KD31A, #16 KD32A, #17 KD33A, #18 KD34A, #19 KD35A, #20 KD36A, #21 KD37A, #22 KD38A, #23 KD39A, #25 KC01. (Barbisch Ex. 1, Aeroflex Product Declaration at ¶ 3)

[7] The four ASICs that are not in the De Mory Key but were identified by Mr. Milliken are #3 KD08A, #4 KD15A, #5 KB11A, and #14 KD28A.  (Barbisch Ex. 1, Aeroflex Product Declaration at ¶ 3)

[8] Aeroflex has admitted that "[f]or each specific ASIC, the Customer Defendants must identify all purchase orders for each of the chip sales, identify the applicable contract number, and then either locate or request from the direct contractor a copy of the applicable contract provisions . . . "  (D.I. 348 at 5 n. 7)

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 6

2131026.02

1    customers under many purchase orders.[9]  Aeroflex was only able to identify six purchase orders that

2    allegedly relate to government sales of the KC01.  But even if Aeroflex is not limited to the identified

3    purchase orders, Aeroflex has not produced sufficient evidence to show that each of these sales were to

4    the Government and subject to "authorization and consent" clauses.

5        D.    Aeroflex Cannot Prove The Assertions In The De Mory Key Regarding Those 12 ASICs

6        Despite counsel's assertions that Aeroflex's corporate designee would be prepared to testify as to

7    the De Mory Key, Mr. Milliken was not able to testify about even the most basic facts in the De Mory

8    Key.  Mr. Milliken could not confirm that the Aeroflex Part Number identified in the Key corresponded

9    to the purchase order identified.  (D.I. 434 at 1, Exhibit 1)  For example, Mr. Milliken could not identify

10   any line items containing the KD24A or KD26A ASICs in the purchase orders identified in the De Mory

11   Key.  (Id. at 59-60, 157)  Mr. Milliken was not able to confirm the assertions in the De Mory chart that

12   the purchase orders identified in fact correspond to the contract provisions identified.  (Id. at 49)  Mr.

13   Milliken did not know if there were additional purchase orders for the part numbers listed in the De

14   Mory Key.  (Id. at 32.)  Thus, Aeroflex's sole witness with knowledge, and its Rule 30(b)(6) designee,

15   had no knowledge of the relevant facts.  It thus has no admissible evidence to support the assertions

16   regarding the 12 ASICs in the De Mory Key.

17       E.    Aeroflex Has Not Produced Evidence That the Government Granted Authorization and
             Consent To Infringe The Processes Taught by the '432 Patent

18

19       Aeroflex has no evidence whatsoever that the Government granted "authorization and consent"

20   with regard to infringement of the process taught by the '432 patent.  Aeroflex has no evidence that the

21   Government directed *any* method of synthesis for the accused ASICs.  Aeroflex's corporate designee

22   admitted that generally there was nothing in the contract addressing how to synthesize an ASIC.

23   (Barbisch Ex. 2, Milliken Dep. at 121-122)  He could not identify any requirement that Aeroflex use of

24   Design Compiler.  (Id.)  He could not give an example of a specification that addressed the synthesis of

25   any of the accused ASICs.  (Id.)  For example, in a document that Mr. Milliken identified as the

26

27   [9] Of the 12 ASICs identified in the De Mory Key, only the KC01 is sold to multiple customers.  In order to identify KC01
     sales made pursuant to a Government contract, each individual purchase order would need to be assessed.  (Barbisch Ex. 2,
     Milliken Dep. at 83-85)  The remaining 11 ASICs are each sold to only a single customer.  (Id. at 24)

28

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 7

2131026.02

1  Statement of Work for eight of the twelve ASICs on the De Mory key (KD32A – KD39A), Mr. Milliken

2  could not point to a single line that required Aeroflex to use Design Compiler to synthesize these ASICs.

3  (Id. at 187-190)

4         Aeroflex's responses to discovery requests likewise have no evidence that the accused process

5  was in fact required or necessary for performance of any U.S. Government contract.  For example, none

6  of the documents identified in Aeroflex's response to Ricoh Interrogatory No. 38 (identify all facts and

7  all documents for which Aeroflex bases its Sixth Affirmative Defense (authorization and consent))

8  provide evidence of any *express* requirement of any U.S. Government prime contract requiring the

9  infringing process for any accused ASIC.  (Barbisch Ex. 4 at 5-6)  Further, Aeroflex refused to answer

10  Interrogatories 39, 40, and 41, relating to any communications, directions, suggestions, instructions, or

11  specifications provided by the U.S. Government or a U.S. Government contractor, and alternate methods

12  of complying with the U.S. Government contracts, on the basis that each Interrogatory was, *inter alia*,

13  "irrelevant."  (Id. at 6-9)

14         Aeroflex likewise refused to produce a 30(b)(6) witness for Topics 3d, 3e, 3f, 3i, 3j, and 3k of

15  Ricoh's May 4, 2006 Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), relating to (among other

16  things) communications, directions, suggestions, instructions, or specifications provided by the U.S.

17  Government or a U.S. Government contractor regarding synthesis tools and the methods that would

18  necessarily result from contract compliance, on the basis that each topic was, *inter alia*, "irrelevant to

19  any issue in the case."  (Barbisch Ex. 5, Aeroflex May 15, 2006 Objections and Responses to Ricoh's

20  May 4, 2006 Notice of Deposition at 5-9)  Aeroflex produced no evidence showing express

21  "authorization and consent" under the standard FAR clause within the quotations, purchase orders, and

22  terms and conditions it produced to Ricoh, and refused discovery on topics outside the four corners of

23  the contract as "irrelevant."  Accordingly, Aeroflex has not and can not meet its burden of proof as to

24  the standard FAR clause 52.227-1.

25         Aeroflex has absolutely no evidence that the Government granted "authorization and consent"

26  with regard to infringement of the process taught by the '432 patent.  Aeroflex's corporate designee

27  could not identify any explicit or implicit requirement by the Government and Aeroflex has not

28

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 8

2131026.02

produced any documents that identify any explicit or implicit requirement by the Government. (Barbisch Ex. 2, Milliken Dep. at 69-74, 101-103, 188-192; Barbisch Ex. 4 at 5-6)  Aeroflex refused to produce any evidence regarding its knowledge of Government requirements because it considered the issue "irrelevant."

On these matters, then, the following facts are not in dispute:

1.  The majority of the prime contracts identified by Aeroflex in support of its affirmative defense incorporate the standard FAR authorization and consent clause, 48 C.F.R. § 52.227-1, without its Alternate I.

2.  No provision of any prime contract identified by Aeroflex in support of its affirmative defense expressly requires the use of the accused infringing process.

3.  Aeroflex does not assert implied authorization and consent.

4.  Among the prime contracts identified by Aeroflex in support of its affirmative defense, only one contains the Alternate I form of FAR 52.227-1 — NASA contract no. NAS5-97271 dated October 1, 1997.

5.  Aeroflex has identified a purchase order that it has associated with this NASA prime contract and with the KC01A ASIC, which is a commercial product.

## III.    RICOH IS ENTITLED TO SUMMARY JUDGMENT BECAUSE AEROFLEX HAS NOT MET ITS EVIDENTIARY BURDEN TO SUPPORT THE ELEMENTS OF ITS AFFIRMATIVE DEFENSE

A.    Standard Of Review

Ricoh submits that Aeroflex lacks admissible evidence sufficient to meet their burden of proof on the affirmative defense of authorization and consent.  Summary judgment on an affirmative defense is governed by the same standard which applies to summary judgment of a claim.  Boston Scientific Corp. v. Cordis Corp., 422 F. Supp. 2d 1102, 1106-07 (N.D. Cal. 2006) (patent case order, granting in part plaintiff's motion for summary judgment striking in part affirmative defenses of defendant).  See Fed. R. Civ. P. 56(c),(d); Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).  A party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion.  If the movant meets this initial burden, then the burden shifts to the non-movant to "designate 'specific facts showing that there is a genuine issue for trial.'"  Boston Scientific, 422 F. Supp. 2d at 1107, citing Celotex, 477 U.S. at 324.  It is "this Court's responsibility 'to determine whether the "specific facts" set

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 9

2131026.02

forth by the non-movant, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'"  Id. citing T.W. Elec. Service v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir.1987).

> Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff "may satisfy its Rule 56 burden by showing 'that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.'"  [quoting Celotex, 477 U.S. at 325].  While whatever evidence *there is* to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Celotex, 477 U.S. at 323 [] (emphasis in original).  After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the [defense] necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

FDIC v. Giammettei, 34 F.3d 51, 54-55 (2d Cir. 1994) (citations omitted).

B.    Under 28 U.S.C. § 1498, Authorization And Consent Can Only Be Granted By The Government As A Limited Waiver Of Immunity

28 U.S.C. § 1498 provides that unlicensed use or manufacture of a patented invention by or for the United States may be remedied by an infringement action by the patent owner against the United States in the U.S. Court of Federal Claims.  The statute provides for "authorization and consent" to a contractor, which may be granted only by the Government.[10]  "Authorization and consent" is a statutory waiver of Governmental immunity and must be narrowly construed.  Larson v. United States, 26 Cl. Ct. 365, 369-370 (1992) (citations omitted).  There must be evidence of "explicit acts or extrinsic evidence sufficient to prove the Government's intention to accept liability for a specific act of infringement."  Id.

---

[10] 28 U.S.C. § 1498(a) states (with emphasis added):

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

1   Accordingly, to assert the defense of "authorization and consent" for an accused ASIC, Aeroflex

2   must, as a preliminary matter, demonstrate that each accused ASIC was sold to the United States or a

3   contractor to the United States.  As shown above, Aeroflex has no admissible evidence that each of the

4   30 ASICs were developed for or sold to the United States or a Government contractor (which requires

5   evidence that both the prime contract and Aeroflex subcontract relate to an ASIC).  Aeroflex cannot

6   maintain its assertion of "authorization and consent" for each of these ASICs.  Where Aeroflex cannot

7   meet its initial burden of showing these products were ever sold to the Government, partial summary

8   judgment is appropriate as to these ASICs.  As demonstrated below, however, even where Aeroflex

9   ASICs *were* sold to the Government, Aeroflex has failed to provide evidence supporting critical

10  elements of its Affirmative Defense.

11          C.    Two Types Of Authorization And Consent Exist, In Broad And Narrow Form

12          The Federal Procurement Regulation (FAR) provides for two different types of authorization and

13  consent that may be included in U.S. Government contracts.  The FAR at 48 C.F.R. § 27.201-2(b) and

14  48 C.F.R. § 52.227-1 Alternate I provides for a "broad" authorization and consent clause for use in

15  federal "Research and Development" (R&D) contracts.  This clause, which is only effective when

16  "Alternate I" or "Alt. I" is actually specified with the standard clause, provides authorization and

17  consent "to all use and manufacture of any invention described in and covered by a United States patent

18  in the performance of this contract or any subcontract at any tier."  § 52.227-1 Alternate I.

19          This clause has appeared in only four contractual documents identified by Aeroflex,[11] but as

20  discussed further below, Aeroflex has failed to prove that the clause, where it appears, applied to any of

21  its ASIC sales.

22          In contrast to the R&D clause, in the vast majority of Government contracts, 48 C.F.R. § 27.201-

23  2(a) and 48 C.F.R. § 52.227-1 provide for inclusion of a standard, "narrow" or "limited" authorization

24  and consent clause.  FAR 27.201-2(a) requires use of the narrow clause in all prime contracts (except

25  _____

26  [11]  As discussed further below, Aeroflex has identified a Northrop Grumman webpage listing the broad clause, but which is

27  not a prime contract or subcontract; a Boeing document listing terms and conditions including the broad clause, but which
    has not been proven to apply to any identified Aeroflex ASIC sales; and a Johns Hopkins prime contract and subcontract

28  which incorporate the broad clause, but which have not been proven to apply to any identified Aeroflex ASIC sales.

procurements below the simplified acquisition threshold and contracts performed outside the United States), and FAR 27.201-1 makes it effective to all subcontracts.  Under this standard "narrow" clause, authorization and consent *only* is granted where, in the case of infringement by a process patent, the patented invention is used in methods which "necessarily result" from compliance with specifications in the Government contract, or specific written instructions from the contracting officer:

> The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or (2) used in machinery, tools, or *methods whose use necessarily results from compliance by the Contractor or a subcontractor with* (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance.
>
> § 52.227-1(a) (emphasis added).

Thus, in the case (as here) of a process patent, authorization and consent only is granted where the use of that process "necessarily results" from compliance with the Government contract.  If the infringement was *not* necessary, then the Government has not given its authorization and consent.  It makes no difference to this analysis whether a prime contractor gave specific instructions to a subcontractor, because only the Government can provide authorization and consent.  If the Government did not specifically provide that authorization and consent, a prime contractor cannot do so.  The crucial analysis is on the language in the original Government contract, not the contract between the prime and the subcontractor.[12]

By "choosing the scope of its consent in its selection of the contract language, the Government may control the extent of patent infringement it chooses to authorize, and the corresponding liability it chooses to accept."  Madey v. Duke, 413 F. Supp. 2d 601, 608-10 (M.D.N.C. 2006) (discussing the standard clause as "narrower" or "limited").  Where the Government limits its consent though the narrow or limited clause, "that limited consent operates as a limited waiver of sovereign immunity and should be narrowly construed."  Id.

---

[12]  Aeroflex was never a prime contractor, but only a subcontractor.

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page 12

2131026.02

1
2
3
4
5

Aeroflex has no admissible evidence that the Government specifically provided authorization and consent or accepted liability in any way.  As set forth in Section E of the Factual background, Aeroflex cannot show that any of the contracts required a process that "necessarily results" from compliance with the Government contract.  The contracts are completely silent on which process should be used.  Therefore, Ricoh's motion for summary judgment should be granted.

6
7

D.    Under The Standard (Or Narrow) Clause, Authorization And Consent Is Not Granted Where Infringement Is Not Required Or Necessary

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Unapproved and unnecessary infringement does not receive "authorization and consent" under the standard FAR clause.  Carrier Corp. v. United States, 534 F.2d 244, 247 (1976).  In Carrier, the court found no authorization and consent where noninfringing equipment was generally available and "that use of equipment covered by plaintiff's patent was not required by the contract specifications or within instructions of the contracting officer."  Id. at 248.  Mere inclusion of an authorization and consent clause coupled with a contractor's use of infringing equipment is insufficient evidence to prove Governmental authorization and consent.  Id.  To allow a finding of authorization and consent under these circumstances would place a burden on the Government to "conduct a detailed and time-consuming investigation to determine whether the equipment the contractor selects for his own convenience infringes any outstanding patents."  Id.  Similarly, Aeroflex chose to use the process taught by the '432 patent for its own convenience and was not required to do so by any contract specification or instructions of the contracting officer.  Accordingly, Aeroflex cannot sustain a claim of authorization and consent.  See Larson v. United States, 26 Cl. Ct. 365, 370 (1992) ("Implied government consent to infringement has been found only where particular government specifications required a particular patent infringement.") (citation omitted).  See also Madey, 413 F. Supp. 2d at 608-10, citing Carrier.

23
24
25
26
27

As an affirmative defense, the burden is on Aeroflex to show through admissible evidence, the "existence and extent" of any express or implied Government authorization and consent for each accused ASIC.  Madey, 413 F. Supp. 2d at 608-10.  If Aeroflex is able to meet that burden, it must then establish that its uses of the methods taught in the '432 patent fall within the scope of that consent.  "Thus, when the Government provides the requisite authorization and consent, either express or implied,

28

1   in relation to a Government contract or grant, the issue is 'which uses fall within the scope of the . . .

2   grant and which uses are outside that scope.'"  Id. at 609-610.

3        To sustain this defense in relation to the standard or "narrow" authorization and consent clause,

4   Aeroflex, therefore, must prove that (1) the Government provided "authorization and consent" via the

5   standard clause; and (2) Aeroflex's use of the infringing process fell within the scope of that

6   "authorization and consent" either because it use necessarily resulted *expressly* from (i) specifications or

7   written provisions forming a part of this contract or (ii) specific written instructions given by the

8   Contracting Officer directing the manner of performance; or (3) Aeroflex's use of the infringing process

9   *impliedly* fell within that "authorization and consent" because use of the infringing process was required

10  or necessary to perform the contract.

11       Of the 12 documents identified by Aeroflex as containing contractual provisions relating to

12  Aeroflex's Sixth Affirmative Defense in its response to Interrogatory No. 42, eight contain the standard

13  "limited" authorization and consent clause.  As discussed further below, Aeroflex has provided no

14  evidence that, where its ASICs were sold under a Government contract or subcontract, its use of the

15  infringing process fell within the narrow authorization and consent provided by the standard clause.

16  Aeroflex has provided no evidence that (1) the Government expressly required or approved the use of an

17  infringing process by Aeroflex, and has provided no evidence that (2) the infringing process was

18  impliedly required or necessary to perform the prime contract.  As discussed below, to the extent these

19  required elements are based on an *implied* theory of authorization and consent, Aeroflex has admitted it

20  cannot prove the affirmative defense.

21            1.     Aeroflex Has Provided No Evidence For Either Express Or Implied
                     Authorization And Consent Under The Standard, Narrow Clause

23       Aeroflex has attempted to prove the *existence* of the standard clause in contracts that applied to

24  its ASIC sales.  But by relying on express authorization and consent and the standard FAR clause,

25  Aeroflex must provide evidence that (1) the Government explicitly required or approved the use of the

26  infringing process by Aeroflex.  Aeroflex simply has not done so.  There is no evidence that use of

27  Aeroflex's infringing process "necessarily resulted from" (i) specifications or written provisions forming

28

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 14

2131026.02

1  a part of any Government contract or (ii) specific written instructions given by the Contracting Officer

2  directing the manner of performance of any Government contract.  As such, no express authorization

3  and consent exists under the standard FAR clause for any of the accused ASICs.

4        Although existence of the standard contract clause is necessary for Aeroflex to prove its

5  affirmative defense based on contracts containing that clause, without express instructions requiring use

6  of the infringing process, Aeroflex would need to rely on *implied* authorization and consent to prove its

7  defense.  "The alternative way for the Government to authorize and consent to infringing use of a patent

8  is *implied* authorization and consent, which may be given "by contracting officer instructions, by

9  specifications or drawings which *impliedly sanction and necessitat*e infringement, [or] by post hoc

10  intervention of the Government in pending infringement litigation against individual contractors."

11  Parker Beach Restoration, Inc. v. United States, 58 Fed. Cl. 126, 132 (2003), citing Hughes Aircraft Co.

12  v. United States, 209 Ct. Cl. 446, 534 F.2d 889, 901 (1976) (emphasis added).  See also Larson v.

13  United States, 26 Cl. Ct. 365, 370 (1992).  Implied authorization may be found where the specifications

14  cannot be met without infringing on a patent, and the Government had some knowledge of the

15  infringement.  Larson, 26 Cl. Ct. at 370, citing Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148, 150

16  (4th Cir.1949); Carrier, 534 F.2d at 247-48; Hughes, 534 F.2d at 897-901.  Under this expression of the

17  elements required for implied authorization and consent, Aeroflex has again provided no proof that, in

18  regard to any Government contract, the infringement was required to meet specifications, or that the

19  Government had any knowledge of the infringement.  Implied authorization and consent "will also be

20  found where the government *requires* the private contractor to use or manufacture the allegedly

21  infringing device."  Madey, 413 F. Supp. 2d at 609, citing Hughes Aircraft Co. v. United States, 29 Fed.

22  Cl. 197, 223 (1993).  Likewise, under this test, Aeroflex has provided no proof that the Government

23  *impliedly required* use of the infringing process to meet specifications.  Because Aeroflex has provided

24  no evidence of *express* authorization and consent, it may revert to arguments based on *implied*

25  authorization and consent.  Aeroflex is unable to meet its burden for implied authorization and consent,

26  even if it were asserted.

27

28

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page 15

2131026.02

2.    Aeroflex Has Provided No Evidence That Its Infringing Process Is Required By, Or Necessary For Performance Of Any U.S. Government Contract

As noted above, Aeroflex represented that "it is not relying on implied 'authorization and consent,'" (D.I. 430 at 3-4)  Accordingly, Aeroflex has admitted that, in the absence of an express requirement in specifications provided under a U.S. Government contract, it is not asserting that, and there is no evidence that (1) the U.S. Government *required* the use of the infringing process, or (2) the infringing process was *necessary* to perform any U.S. Government prime contract, *either* of which would constitute *implied* authorization and consent.  According to Aeroflex, no discovery was necessary to determine whether the infringing process was required or necessary for the performance of any Government contract, because Aeroflex does not assert implied authorization and consent.

Even if Aeroflex is not bound by this admission to the Court, however, it has provided no evidence that its process was in fact required or necessary for performance of any U.S. Government contract.  Aeroflex also has provided no evidence of any *express* requirement of any U.S. Government contract requiring the infringing process.  Mr. Milliken, Aeroflex's Rule 30(b)(6) designee on the "authorization and consent" defense and the only person listed as having knowledge regarding "authorization and consent" in response to Ricoh Interrogatory No. 38, testified that the "Government typically defines I want a box and it's up to the subcontractor to find the methodology." (Barbisch Ex. 2, Milliken Dep. at 70)  Mr. Milliken testified that it would be "very irregular" for the Government to flow down a specific "design flow" to the prime or subcontractor.  (Id. at 69-70)  While Mr. Milliken testified that it was possible that an Aeroflex quotation and/or purchase order had a specific or explicit design requirement, he testified that Aeroflex would never know whether a proposal to the Government by a prime contractor included information about the process of synthesizing ASICs, as Aeroflex "would never be engaged or involved in that process." (Id. at 70-71, 73)  Aeroflex has provided absolutely no evidence of even a single prime Government contract that specifies, requires, or even tacitly approves the accused process.

Mr. Milliken further testified that Aeroflex could have synthesized the accused ASICs using alternate synthesis tools including a tool produced by Cadence and a tool produced by Mentor that

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 16

2131026.02

1    Aeroflex owns.[13]  (Id. at 126, 180)  For example, when Mr. Milliken was asked why Aeroflex

2    synthesized the KD24A ASIC using Design Compiler, he replied "[b]ecause it's a tool that Aeroflex has

3    and has developed a certain competency in and we are relatively efficient in its use."  (Id. at 69-70)  Mr.

4    Milliken further testified that there was no reason that Aeroflex could not have used a competitor

5    product to synthesize the KD24A.  Aeroflex has provided no evidence that the infringing process was

6    required or necessary for performance of any Government contract, impliedly or expressly.  Mr.

7    Milliken testified that "I'm selling a service and a capability, not a specific design flow . . . customers

8    are looking for an ASIC . . . that meets certain functional attributes in their environment . . . I offer and

9    tell them I can do it in a couple different ways or one way."  (Id. at 191)  Thus, Aeroflex has no evidence

10   to support this defense.

11            3.       The Infringing Software Is A Commercial Item Otherwise Outside the Scope of
                      Authorization and Consent

12

13            Commercial items do not normally receive authorization and consent by the Government.

14   Because alternatives to commercial items are generally available, the standard "authorization and

15   consent" clause does not normally extend to commercial items.  FAR Part 12 relating to commercial

16   items makes no reference to "authorization and consent."  The FAR contract clause applicable to

17   commercial items, FAR 52.212-4, requires a contractor to indemnify the Government against claims of

18   infringement.[14]

19            At least one of the ASICs from Aeroflex's product declaration, the KC01A, is a "standard

20   product" and was sold commercially, including sales allegedly to the Government.  (Barbisch Ex. 2,

21   Milliken Dep. at 21-22)  The De Mory Key identifies alleged Purchase Orders for the KC01A from

22

23   _____

24   [13] Ricoh has not asserted the '432 patent against any ASICs synthesized by ASIC designers or manufacturers using Mentor
     tools or Cadence tools.

25   [14] "Our conclusion is that the Government has made a good policy decision in leaving a standard "Authorization and
     Consent" clause out of contracts for commercial items.  In doing so, it has done no more than adopt normal commercial

26   practice.  When a company sells a product commercially, the buyer has no convenient way of determining whether that
     product might infringe a patent, and the seller is expected to bear the risk of such infringement."  19 Nash & Cibinic Rep. No.

27   12 ¶ 59 (Dec. 2005).  (The Nash & Cibinic Report is a monthly newsletter on Government Contract legal issues authored by
     Ralph Nash, Professor Emeritus of Law at George Washington University, and a national authority on government contract

28   law.)

1  Orbital Sciences Corporation, Eastman Kodak Company, The Johns Hopkins University Applied

2  Physics Laboratory, Ball Aerospace, and Northrop Grumman.  (D.I. 434 at Exhibit 1)  Any

3  "authorization and consent" clause should be inapplicable to the KC01 because it is a commercial

4  product.  Additionally, the infringing process had already been incorporated into the KC01 at the time of

5  purchase by any Government contractors.  The Government could not have possibly specified the

6  infringing process.  For these reasons, express authorization under the standard, limited FAR

7  authorization and consent clause is impossible.

8          While the other 11 Aeroflex ASICs are not necessarily commercial items, Aeroflex's infringing

9  process is partially performed by a commercial item available as one of several alternatives on the

10  market to private companies.  Aeroflex does not modify its contracting guidelines based on whether a

11  contract is a Government contract.  (Barbisch Ex. 2, Milliken Dep. at 12-13)  Aeroflex does not inquire

12  with regard to a specific contract whether or not an authorization and consent clause will be included at

13  the time of contracting.  (Id. at 18)  Aeroflex utilizes the same infringing process for both commercial

14  and Government ASICs.  It is precisely for these reasons that Aeroflex's commercial infringing process

15  does not fall within the standard authorization and consent clause, just as if a commercial product sold to

16  the Government were at issue.

17          E.      Aeroflex Has Not Demonstrated That The Research & Development Clause Applies To
                    Any Aeroflex ASIC Sales

18          Aeroflex has not met its burden of proof to show that any accused ASIC was developed or sold

19  pursuant to a Government contract that contains the "broad" form of the FAR "authorization and

20  consent" clause, FAR 52.227-1 Alternate I.  Within the documents Aeroflex identified as responsive to

21  Interrogatory No. 38 (identify all documents for which Aeroflex bases its Sixth Affirmative Defense),

22  Ricoh was able to identify four instances of the broader R&D clause pursuant to FAR 52.227-1

23  Alternate I:  (1) the "Northrop Grumman Document" (Barbisch Ex. 6, AF 283572 - 575 at 574); (2) the

24  "Boeing Document" (Barbisch Ex. 9, AF 284314 – 331 at 327); (3) the "NASA Document" (Barbisch

25  Ex. 10, AF 284507 – 573 at 545); and (4) the "Johns Hopkins Document" (Barbisch Ex. 11, AF 283889

26

27

28

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 18

2131026.02

1   – 893 at 891).[15]  This section demonstrates that the mere existence of these clauses is insufficient to

2   prove "authorization and consent" because Aeroflex has no evidence that these documents applied to

3   any sales of any accused ASICs.

4                    1.      The "Northrop Grumman Document"

5          In Defendants' April 12, 2006 Motion, Aeroflex broadly asserted that the terms and conditions

6   found on a page of Northrop Grumman's website for the Advanced Technology Support Program II

7   (ATSPII), the "Northrop Grumman Document," applied to all of Aeroflex's sales to Northrop

8   Grumman.  (D.I. 431 at 3; Barbisch Ex. 6)  There is no admissible evidence to support this assertion.

9   For example, there is no evidence that any purchase order were in any way related to these terms and

10  conditions from the website.  (D.I. 434 at Exhibit 1; Barbisch Ex. 7, AF 283920 – 932)  In addition, the

11  "Northrop Grumman Document" contains both the broad and the narrow authorization and consent

12  clauses.  (Ex. 6 at AF 283574)  FAR 52.227-1 states they are used in the alternate, so both versions

13  cannot apply to a single subcontract.  The "Northrop Grumman Document" also states that "Applicable

14  fill-ins are to be cited on individual Delivery Orders."  (Barbisch Ex. 6 at AF 283572)  This instruction

15  indicates that "Alternate I" would be designated on Delivery Orders only if applicable to that specific

16  Delivery Order.

17         Additionally, when the ATSPII solicitation was announced in the U.S. Government Commerce

18  Business Daily in 1998, it was identified as "Not R&D."  (Barbisch Ex. 8, ATSPII announcement)

19  Alternate I is only used on R&D contracts.  Thus, the evidence shows that any ASICs produced under

20  the "Northrop Grumman Document" are not covered by the broad R&D clause.  Accordingly,

21  Aeroflex's sales to Northrop Grumman have not been granted broad authorization and consent.

22         Finally, Aeroflex has no evidence that any purchase orders that incorporate Alternate I relate

23  either to this contract or to the specific sales of the accused ASICs.  Because there is no evidence that

24

25

26  _____

    [15]  Ricoh has located two contracts produced by Aeroflex that contain Alternate I but not identified by Aeroflex in response
27  to discovery requests.  These are a 1999 Air Force prime contract held by Lockheed Martin, and a 2006 subcontract between
    JHU and the California Institute of Technology.  Aeroflex has not asserted that these contracts are related to any of its ASIC
28  sales and therefore, they cannot support Aeroflex's allegations.

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 19

2131026.02

1  the sales were pursuant to a contract the contained the broad R&D clause, summary judgment is

2  appropriate.

### 2.    The "Boeing Document"

Alternate I appears in a document modifying Boeing Purchase Order Attachment BSS-01, the

"Boeing Document."[16]  (Barbisch Ex. 9)  But Aeroflex has produced no evidence in discovery that

would identify what ASICs, if any, were sold to Boeing under Alternate I.  While Aeroflex identified a

purchase order that referenced both BSS-10 and BSS-01, it has produced no admissible evidence that

Alternate 1 applies to this purchase order because BSS-10 incorporates the standard FAR 52.227-1

clause.  (Barbisch Ex. 12, AF 284350 – 356)  In the absence of evidence that the underlying prime

contract was a federal Research & Development contract, the court must conclude that, as a matter of

law, in accordance with the FAR, the standard clause in BSS-10 applies, and Alternate I found in BSS-

01 does not.

### 3.    The "Johns Hopkins Document"

Aeroflex has produced no evidence in discovery that would identify what ASICs, if any, were

sold to Johns Hopkins under Alternate I found in the "Johns Hopkins Document."  While the De Mory

Key associated these terms and conditions with a Johns Hopkins purchase order, the subcontract

numbers on the purchase order and terms and conditions do not match.  (D.I. 434 at Exhibit 1; Barbisch

Ex. 11 at AF 283889; Barbisch Ex. 13, AF 283882 – 886 at AF 283882)  Further, the terms and

conditions post date the purchase order by fifteen months.  (Barbisch Ex. 13 at AF 283882)  Aeroflex

thus has not met its burden to prove the existence of any purchase order that incorporated Alternate 1

found in the "Johns Hopkins Document."

### 4.    The "NASA Document"

Aeroflex produced a prime contract between Johns Hopkins University and the National

Aeronautics and Space Administration (NASA) which appears to incorporate FAR 52.227-1 Alternate I,

---

[16] The De Mory key identified part of this Bates range as the contract provisions for the KD26A ASIC.  The key omitted the pages that contain the Alternate I clause.

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page 20

2131026.02

"The NASA Document." (Barbisch Ex. 10) Aeroflex did not include this document in the De Mory Key. Ricoh was able to identify one purchase order with Johns Hopkins University Applied Physics Laboratory that referenced the "NASA Document" by prime contract number.[17] (Barbisch Ex. 13 at AF 283882) Aeroflex did not produce the terms and conditions for the subcontract between Aeroflex and Johns Hopkins, so Aeroflex has not proven that Alternate I was included as a provision in the subcontract. (Barbisch Ex. 13) There is no evidence that the purchase order is related to the prime contract in such a manner that the FAR clause would properly apply. Aeroflex has not produced admissible evidence to show that any of its commercial product ASICs were sold under contracts that validly incorporated FAR 52.227-1 Alternate I.

## IV.    CONCLUSION

Aeroflex has provided no evidence that (1) use of the accused infringing process was expressly required by any U.S. Government contract or (2) use of the accused infringing process was impliedly required or necessary for performance of any U.S. Government contract. Aeroflex also has provided no evidence that any of its ASIC sales occurred under any U.S. Government subcontract to which the broad form of the FAR authorization and consent clause properly applied. Accordingly, Ricoh respectfully requests that the Court grant Ricoh summary judgment on Aeroflex's Sixth Affirmative Defense, Authorization and Consent.

---

[17] Although the purchase order references the prime contract, it is not clear that this reference is valid. The prime contract had a performance period of five years. Exhibit 8 at AF 284515. The purchase order was issued outside that timeframe, which would end October 1, 2002.

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page 21

2131026.02

Respectfully submitted,

Dated:  August 18, 2006

RICOH COMPANY, LTD.
By: /s/ Kenneth W. Brothers

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-1526
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Telephone:  (212) 277-6500
Facsimile:  (212) 277-6501
Attorneys for
RICOH COMPANY, LTD.

RICOH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page 22

2131026.02