Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Telephone: (202) 420-2200
Facsimile: (202) 420-22019

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Telephone: (212) 227-6500
Facsimile: (212) 227-6501

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for
RICOH COMPANY, LTD.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| RICOH COMPANY, LTD., | **CASE NO. C-03-4669-MJJ (EMC)** |
| Plaintiff, | **DECLARATION OF REBECCA L.** |
| vs. | **BARBISCH IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON AEROFLEX'S AFFIRMATIVE DEFENSE OF** |
| AEROFLEX INCORPORATED, et al., | **"AUTHORIZATION AND CONSENT"** |
| Defendants |  |

Date:        September 26, 2006
Time:        9:30 a.m.
Courtroom:   11, 19th Floor
Judge:       Martin J. Jenkins

Rebecca L. Barbisch declares as follows:

1.   My name is Rebecca L. Barbisch, an attorney with the law firm of Dickstein Shapiro LLP, counsel for Ricoh Company Limited.  I am over the age of 21 and am competent to make this declaration.  Based on my personal knowledge and information, I hereby declare to all the facts in this declaration

2.   Attached hereto as Ex. 1 is a true and correct copy of the Third Supplemental Product Declaration re Additional Aeroflex Commercial ASICs, by Peter Milliken dated May 10, 2006.

3.   Attached hereto as Ex. 2 is a true and correct copy of the transcript of the deposition of Peter Milliken on June 7, 2006.

4.   Attached hereto as Ex. 3 is a true and correct copy of my June 6, 2006 letter to Denise De Mory.

5.   Attached hereto as Ex. 4 is a true and correct copy of Aeroflex's May 30, 2006 Response to Ricoh's Third Set of Interrogatories.

6.   Attached hereto as Ex. 5 is a true and correct copy of Aeroflex's May 15, 2006 Objections and Responses to Ricoh's May 4, 2006 Notice of Deposition.

7.   Ex. 6 is a true and correct copy of AF 283572 – 575.

8.   Ex. 7 is a true and correct copy of AF 283920 – 932.

9.   Attached hereto as Ex. 8 is a true and correct copy of a Google archived copy of the Commerce Business Daily issue dated December 29, 1998, printed August 4, 2006, referring to the Advanced Technology Support Program II (ATSP2) under the category "Special Studies and Analysis - Not R&D."

10.  Ex. 9 is a true and correct copy of AF 284314 – 331.

11.  Ex. 10 is a true and correct copy of AF 284507 – 573.

12.  Ex. 11 is a true and correct copy of AF 283889 – 893.

13.  Ex. 12 is a true and correct copy of AF 284350 – 356.

14.  Ex. 13 is a true and correct copy of AF 283882 – 886.

DECLARATION OF REBECCA L. BARBISCH IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)

DSMDB-2130591v01

1         I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.  Signed at Washington, D.C. on August 18, 2006.

3

4         August 18, 2006                    /s/ Rebecca L. Barbisch

5                                                        Rebecca L. Barbisch

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF REBECCA L. BARBISCH IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT
ON AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)

DSMDB-2130591v01

# EXHIBIT 1

1  Teresa M. Corbin (SBN 132360)
   Denise M. De Mory (SBN 168076)
2  Jaclyn C. Fink (SBN 217913)
   HOWREY LLP
3  525 Market Street, Suite 3600
   San Francisco, California 94105
4  Telephone:  (415) 848-4900
   Facsimile:  (415) 848-4999
5
   Attorneys for Plaintiff SYNOPSYS, INC.
6  and for Defendants AEROFLEX INCORPORATED,
   AMI SEMICONDUCTOR, INC., MATROX
7  ELECTRONIC SYSTEMS, LTD., MATROX
   GRAPHICS, INC., MATROX INTERNATIONAL
8  CORP., MATROX TECH, INC., and
   AEROFLEX COLORADO SPRINGS, INC.
9
10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14  RICOH COMPANY, LTD.,                    )  Case No. C03-04669 MJJ (EMC)
                                            )
15          Plaintiff,                      )  Case No. C03-2289 MJJ (EMC)
                                            )
16      vs.                                 )  **THIRD SUPPLEMENTAL PRODUCT**
                                            )  **DECLARATION RE ADDITIONAL**
17  AEROFLEX INCORPORATED, AMI              )  **AEROFLEX COMMERCIAL ASICS, BY**
    SEMICONDUCTOR, INC., MATROX             )  **PETER MILLIKEN, PER JUDGE CHEN'S**
    ELECTRONIC SYSTEMS LTD., MATROX         )  **MAY 1, 2006 ORDER MODIFIED IN**
18  GRAPHICS INC., MATROX                   )  **ACCORDANCE WITH JUDGE CHEN'S**
    INTERNATIONAL CORP., MATROX TECH,       )  **MAY 5, 2006 ORDER**
19  INC., AND AEROFLEX COLORADO             )
    SPRINGS, INC.                           )
20                                          )
            Defendants.                     )
21  _____)
    SYNOPSYS, INC.,                         )
22                                          )
            Plaintiff,                      )
23                                          )
        vs.                                 )
24                                          )
    RICOH COMPANY, LTD.,                    )
25                                          )
            Defendant.                      )
26  _____)

27

28

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
THIRD SUPPLEMENTAL AEROFLEX PRODUCT DECL

1    I, Peter Milliken, declare as follows:

2    1.    I am the Director of Semicustom Products and Services for Aeroflex Colorado Springs,

3    Inc ("Aeroflex"), a wholly owned subsidiary of Aeroflex, Inc. I have been an employee of Aeroflex

4    since 1981, and I am familiar with our operations and facilities from January 1997 to the present. I

5    make this Declaration of my personal knowledge obtained through my work on specific projects and

6    my interaction with other Aeroflex employees, and if called as a witness, I could and would testify

7    competently to the statements contained herein.

8    2.    Engineers at our company design, and/or perform turnkey services (including synthesis

9    of customer-supplied designs), for application specific integrated circuits (ASICs). In designing

10    ASICs, or performing turnkey services, our engineers use libraries with Design Compiler® software

11    from Synopsys.

12    3.    Since January 1997, we have used Design Compiler for logic synthesis of the following

13    Commercial Products, using the specified technology libraries. These products are identified pursuant

14    to Judge Chen's May 1, 2006 order, modified by Judge Chen's May 5, 2006 order, resulting from a

15    stipulation between Ricoh and defendants.

| # | PRODUCT | DESCRIPTION | LIBRARY |
|---|---------|-------------|---------|
| 1 | UTCAM-Engine / UT100CE 02 JAA | Database search engine with SSRAM/SDRAM controller | Samsung STD90 0.35um, Samsung library |
| 2 | JW01 | Photo-diode array detector | AMI C5 0.5um, Aeroflex libraries |
| 3 | KD08A | Military program | AMI 0.6um process, Aeroflex libraries |
| 4 | KD15A | Military program | AMI 0.6um process, Aeroflex libraries |
| 5 | KB11A | Military program | AMI 0.6um process, Aeroflex libraries |
| 6 | KD12A | Scientific research module | AMI 0.6um process, Aeroflex libraries |
| 7 | KB10A | Scientific research module | AMI 0.6um process, Aeroflex libraries |
| 8 | KB07A | Space Station monitor | AMI 0.6um process, Aeroflex libraries |
| 9 | KM01A | Scientific research module | AMI 0.6um process, Aeroflex libraries |
| 10 | KD11A | Communications satellite | AMI 0.6um process, Aeroflex libraries |
| 11 | JD05A | Serial communications controller | AMI 0.6um process, Aeroflex libraries |
| 12 | KD24A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 13 | KD26A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 14 | KD28A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 15 | KD31A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 16 | KD32A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 17 | KD33A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 18 | KD34A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 19 | KD35A | Military satellite | AMI 0.6um process, Aeroflex libraries |

| 20 | KD36A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 21 | KD37A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 22 | KD38A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 23 | KD39A | Military satellite | AMI 0.6um process, Aeroflex libraries |
| 24 | JF01A/B | Environmental control | AMI 0.6um process, Aeroflex libraries |
| 25 | KC01A | 80196 Microcontroller | AMI 0.6um process, Aeroflex libraries |
| 26 | YA04 / YA13 | Security chip | MagnaChip HL35EFL 0.35um, EXD library |
| 27 | YB01 | Photo-diode array detector | MagnaChip HL35EFL 0.35um, EXD library |
| 28 | DA01 | Photo-diode array detector | DongbuAnam MS180BB 0.18 um, Artisan library |
| 29 | DA02 | Photo-diode array detector | DongbuAnam MS180BB 0.18um, Artisan library |
| 30 | JW02 | Photo-diode array detector | N/A – hand designed |

This declaration was executed in Colorado Springs, Colorado on May 10, 2006. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Peter C. Milliken_

Peter C. Milliken

1
## PROOF OF SERVICE

2  STATE OF CALIFORNIA                )
                                                        )    ss.:
3  COUNTY OF SAN FRANCISCO    )

4

5          I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 525 Market Street, Suite 3600, San Francisco, California 94105.

6
          On May 10, 2006 I served on the interested parties in said action the within:
7

8  **THIRD SUPPLEMENTAL PRODUCT DECLARATION OF PETER MILLIKEN OF AEROFLEX INC.**

9  by causing said document to be sent by Electronic Mail on May 10, 2006 to the email addresses indicated for the parties listed below and by placing a true copy thereof in a sealed envelope(s)
10  addressed as stated below and causing such envelope(s) to be delivered as follows:

11  Gary M. Hoffman, Esq.                              Jeffrey Demain, Esq.
    HoffmanG@dsmo.com                             jdemain@altshulerberzon.com
12  Dickstein Shapiro Morin & Oshinsky, LLP    Altshuler, Berzon, Nussbaum, Rubin & Demain
    2101 L Street, N.W.                                   177 Post Street, Suite 300
13  Washington, DC 20037-1526                      San Francisco, CA 94108

14  Facsimile No.: (202) 887-0689                   Facsimile No.: (415) 362-8064

15  Edward A. Meilman, Esq.
    MeilmanE@dsmo.com
16  Dickstein Shapiro Morin & Oshinsky, LLP
    1177 Avenue of the Americas
17  New York, NY 10036-2714

18  Facsimile No.:  (212) 896-5471

19  [X]     (OVERNIGHT DELIVERY) on May 11, 2006 by depositing in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivering to a courier or driver
20          authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed
21          as stated above, with fees for overnight delivery paid or provided for and causing such envelope(s) to be delivered by said express service carrier on.
22
          I declare under penalty of perjury that I am employed in the office of a member of the bar of
23  this Court at whose direction the service was made and that the foregoing is true and correct.

24          Executed on May 10, 2006, at San Francisco, California.

25
            Peter L. Kasenenko                                _____
26          (Type or print name)                                        (Signature)

27

28

# EXHIBIT 2

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Case No. CO3-2290 MJJ

SYNOPSYS, INC.,

Plaintiff,

    -v-

RICOH COMPANY, LTD.,

Defendant.

_____/

Case No. CO3-04669 MJJ

RICOH COMPANY, LTD.,

Plaintiff,

    -v-

AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC.,

MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS,

INC., MATROX INTERNATIONAL CORP., AND MATROX TECH,

INC.,

Defendants.

_____/


Reported by:  Jacqueline Kimball, RPR

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 2

1          Pursuant to Notice, the videotape
2   deposition of PETER MILLIKEN was continued on
3   Wednesday, June 7, 2006, commencing at 9:24 a.m.,
4   at the law offices of Dickstein, Shapiro, Morin,
5   2101 L Street, NW, Washington, D.C., before
6   Jacqueline Kimball, a Registered Professional
7   Reporter and Notary Public.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Page 4

1                    INDEX
2   WITNESS NAME: PETER MILLIKEN,
3   VOLUME III
4        EXAMINATION BY MS. BARBISCH          7
5   EXHIBITS:
6   651 - Milliken Declaration          20
7   652 - De Mory Declaration          30
8   653 - Deposition Notice          37
9   654 - Orbital Purchase Order, AF          38
10       283778-793
11  655 - Orbital Terms and Conditions, AF          38
12       283799-810
13  656 - Boeing Purchase Order, AF          56
14       284341-349
15  657 - Boeing Contract Requirements, AF          56
16       284246-249
17  658 - Aeroflex Response to Ricoh's          104
18       Interrogatories
19  659 - Roll-Up of Margins, AF 284822-895          127
20  660 - Boeing Purchase Order, AF          157
21       284350-356
22  661 - Statement of Work, AF 284314-331          157

Page 3

1                 APPEARANCES
2   ON BEHALF OF THE PLAINTIFF and DEFENDANT RICOH
3       COMPANY, LTD.:
4       REBECCA BARBISCH, ESQ.,
5       Dickstein, Shapiro, Morin & Oshinsky
6       2101 L Street NW
7       Washington, D.C.  20037-1526
8   ON BEHALF OF THE DEFENDANTS and PLAINTIFF
9       SYNOPSYS, INC.:
10      TOM P. CRUNK, ESQ.,
11      Howrey
12      2020 Main Street, Suite 1000
13      Irvine, California  92614-8200
14  ON BEHALF OF DEFENDANT AEROFLEX:
15      Y.R. HLADKYJ, ESQ.,
16      4350 Centennial Blvd.
17      Colorado Springs, Colorado  80907
18  ALSO PRESENT:  Michael Hupp, Videographer
19
20
21
22

Page 5

1             INDEX CONTINUED
2   662 - Purchase Order/Contract          181
3       Provisions, AF 284112-120
4   663 - Statement of Work, AF 284121-130          187
5   664 - Ball Purchase Order, AF 283715-717          192
6   665 - Boeing Purchase Order, AF          200
7       284423-430
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

2 (Pages 2 to 5)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 6

1       PROCEEDINGS,
2     THE VIDEOGRAPHER: Today is Wednesday,
3  June 7, 2006. We're on the record at
4  9:24 a.m. This is the videotaped deposition
5  of Peter C. Milliken, taken by Rebecca
6  Barbisch, Esquire, with offices located at
7  2101 L Street, Northwest, Washington, D.C.,
8  20037.
9     The caption of the case is Synopsys,
10  Inc., plaintiff, versus Ricoh Company, Ltd.,
11  defendant, and Ricoh Company, Ltd., versus
12  Aeroflex Incorporated, et al., defendants, in
13  the United States District Court for the
14  Northern District of California, San
15  Francisco division, case number C-03-2289-MJJ
16  and C-03-4669-MJJ.
17     This video is being held in the law
18  offices of Dickstein Shapiro Morin and
19  Oshinsky, LLP, also located at 2101 L Street
20  northwest, Washington, D.C. My name is
21  Michael Hupp, videographer. The court
22  reporter's name is Jaci Kimball in

Page 7

1  association with Corbin and Hook. Would
2  counsel please introduce themselves.
3     MS. BARBISCH: Rebecca Barbisch with
4  Dickstein, Shapiro, Morin & Oshinsky
5  representing Ricoh Company Limited.
6     MR. CRUNK: Tom Crunk, Howrey,
7  representing the customer defendants and
8  Synopsys.
9     MR. HLADKYJ: Y.R. Hladkyj, in-house
10  counsel for Aeroflex Colorado Springs, Inc.
11     PETER MILLIKEN,
12  Called for examination, having been duly sworn to
13  tell the truth, the whole truth and nothing but the
14  truth, testified as follows:
15     EXAMINATION
16  BY MS. BARBISCH:
17   Q. Good morning.
18   A. Good morning.
19     MS. BARBISCH: Counsel, I'm going to ask
20  you to ID for the record the topics that the
21  witness will be covering today.
22     MR. CRUNK: As we discussed before we

Page 8

1  went on the record, I have nothing to add to
2  the designations that have already been made.
3     MS. BARBISCH: I'd like to state for the
4  record that we did not get a specific list of
5  designations until 11:30 last evening. To
6  the best of our knowledge the financial data
7  was not identified until last evening. We
8  will do our best to cover that topic but we
9  reserve the right to recall the witness due
10  to the late notice on the topic.
11     MR. CRUNK: I would will add to the
12  record from the letter that Ms. De Mory sent
13  you that is not clear that's an accurate
14  representation of what happened. And I have
15  nothing to add to that e-mail either.
16  There's apparently a dispute. And as far as
17  we're concerned the depos are over today, so.
18     MS. BARBISCH: Do you have any
19  indication that the financial data was -- do
20  you know of correspondence that stated that
21  financial correspondence was on the table for
22  today before last evening?

Page 9

1     MR. CRUNK: Are you talking to me?
2     MS. BARBISCH: Yes.
3     MR. CRUNK: I have nothing to add to
4  this. We have a dispute. If you want to
5  question the witness go ahead.
6     MS. BARBISCH: Okay.
7  BY MS. BARBISCH:
8   Q. What did you do to prepare for today's
9  deposition?
10     MR. CRUNK: Objection, attorney client
11  privilege, work product privilege.
12     To the extent you can answer without
13  divulging the contents of the conversations
14  you had with your attorneys or work that
15  you've done for your attorneys, you may.
16   A. I cite client/attorney privilege.
17   Q. Did you meet with your attorneys in
18  preparation for today's deposition?
19     MR. CRUNK: Same objections.
20   A. Yes.
21   Q. How long did you meet with your attorneys?
22     MR. CRUNK: Same objection, instruct the

3 (Pages 6 to 9)

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 10

1    witness not to answer.
2    A.  Client/attorney privilege.
3        MS. BARBISCH:  You're saying the length
4    of time he met with his attorneys is
5    privileged?
6        MR. CRUNK:  I've made my objection and
7    my instruction.
8    Q.  How long did you meet with your attorney?
9        MR. CRUNK:  Same objection.  Instruct
10   the witness object to answer.
11   A.  Client/attorney privilege.
12   Q.  We'll come back to this later.  Did you
13   review any documents in preparation for today's
14   deposition?
15       MR. CRUNK:  Same objection.  Instruct
16   the witness not to answer.
17   A.  Client/attorney privilege.
18       MS. BARBISCH:  Mr. Crunk, are you
19   instructing him not to answer whether or not
20   he reviewed any documents?
21       MR. CRUNK:  I made my objections and my
22   instruction.  They stand.

Page 11

1    Q.  Are you refusing to answer the question?
2        MR. CRUNK:  You can answer that
3    question.
4    A.  No.
5    Q.  Did you review any documents in
6    preparation for today's deposition?
7        MR. CRUNK:  Same instruction.  Instruct
8    the witness not to answer.
9    A.  Client/attorney privilege.
10       MS. BARBISCH:  I'm going to object to
11   your objections and we can take this up
12   later.
13   Q.  Does Aeroflex have general contracting
14   guidelines for the development of ASICs?
15       MR. CRUNK:  Objection, vague and
16   ambiguous and outside the scope.
17   A.  I guess I don't understand the question.
18   Q.  Aeroflex does custom ASICs development
19   work, correct?
20       MR. CRUNK:  Objection, vague and
21   ambiguous, outside the scope.
22   A.  Yes.

Page 12

1    Q.  When a potential client approaches
2    Aeroflex for the development of an ASIC does
3    Aeroflex have certain procedures it follows --
4        MR. CRUNK:  Same objections.
5    Q.  -- in negotiating those contracts?
6        MR. CRUNK:  Same objections.
7    A.  I'll say yes.
8    Q.  Are those contracting guidelines, if you
9    will, written anywhere or documented?
10       MR. CRUNK:  Objection, vague and
11   ambiguous, outside the scope.
12   A.  Yes.
13   Q.  Where are those contracting guidelines
14   documented?
15       MR. CRUNK:  Same objections.
16   A.  There is a I guess corporate -- not
17   corporate -- there is a divisional authorization
18   directing certain dollar value negotiation powers
19   given to at the product line management level and
20   at the senior management level.  They're basically
21   broken down by contract value.
22   Q.  Do you know if those guidelines differ at

Page 13

1    all if the contract relates to products for the
2    government?
3        MR. CRUNK:  Objection, vague and
4    ambiguous, outside the scope and irrelevant
5    to the extent we're not talking about the
6    ASICs issue.
7    A.  No.
8    Q.  Just to get some terminology down I think
9    in your previous deposition you said that Aeroflex
10   does not contract directly with the government in
11   a prime contract; is that correct?
12       MR. CRUNK:  Objection, misrepresents
13   prior testimony and outside the scope and
14   vague and ambiguous.
15   A.  That is the general practice.
16   Q.  Would you consider ASICs that are
17   developed for government subcontractors as ASICs
18   for the government?
19       MR. CRUNK:  Objection, vague and
20   ambiguous, outside the scope and irrelevant
21   with respect to the ASICs not at issue.
22   A.  Yes.

4 (Pages 10 to 13)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

Videotaped Deposition of:
Peter Milliken, Vol. III     June 7, 2006

Page 14

1    Q.   So for today's purposes can we refer to
2  those as government ASICs or do you have a
3  proffered them you would like to refer to those
4  as?
5         MR. CRUNK:  Objection, vague and
6     ambiguous, outside the scope.
7    A.   Government ASICs are fine.
8    Q.   Is there a specific person within Aeroflex
9  who negotiates contracts relating to government
10 ASICs?
11        MR. CRUNK:  Same objections and
12    irrelevant.
13   A.   No.
14   Q.   Who within Aeroflex negotiated contracts
15 relating to government ASICs?
16        MR. CRUNK:  Same objection.
17   A.   Depending on the dollar value, the
18 contract value, it may be a regional sales
19 manager, it potentially would be the product line
20 manager and then ultimately it would be the
21 president of, general manager of Aeroflex Colorado
22 Springs.

Page 15

1    Q.   Does Aeroflex, Inc., have any influence in
2  the decision to contract with government
3  subcontractors in government ASICs?
4         MR. CRUNK:  Objection, vague and
5     ambiguous, outside the scope and irrelevant.
6    A.   Repeat the question.
7    Q.   Does Aeroflex, Inc., have any say in the
8  decision to contract with government
9  subcontractors?
10        MR. CRUNK:  Same objection.
11   A.   No, as far as Aeroflex Colorado Springs'
12 business is concerned.
13   Q.   Right.  What determines whether or not
14 there is a purchase order or a contract for a
15 government ASIC?
16        MR. CRUNK:  Objection, outside the
17    scope, vague and ambiguous, irrelevant,
18    assumes facts not in evidence, lacks
19    foundation.
20   A.   That's a broad open question, can you
21 narrow it.
22   Q.   Are certain ASICs purchased or developed

Page 16

1  within a government contract or a government
2  subcontract?
3         MR. CRUNK:  Objection, vague and
4     ambiguous, outside the scope, irrelevant.
5    A.   Certainly.
6    Q.   Are certain ASICs purchased or developed
7  within a prime government contract by the use of a
8  purchase order rather than a subcontract?
9         MR. CRUNK:  Objection, vague and
10    ambiguous, outside the scope and irrelevant.
11   A.   Can be both.
12   Q.   What determines if it's a contract or a
13 purchase order?
14        MR. CRUNK:  Same objection.
15   A.   A subcontractor, they determine how they
16 want to engage business with Aeroflex.
17   Q.   It's not something Aeroflex independently
18 determines based on cost or other factors?
19        MR. CRUNK:  Same objection.
20   A.   We respond to the customer's desires.
21   Q.   Are you familiar with authorization and
22 consent clauses?

Page 17

1         MR. CRUNK:  Objection, vague and
2     ambiguous, outside the scope.
3    A.   Yes.
4    Q.   What is your understanding of an
5  authorization and consent clause?
6         MR. CRUNK:  Same objection, calls for
7     legal conclusion, calls for speculation.
8    A.   Basically under government clause 1498 the
9  consent and -- I don't know the exact phrase --
10 basically the government authorizes the use of the
11 equipment, manufacturing, tools.  Basically the
12 government essentially indemnifies the
13 subcontractor or subcontractees for those
14 resources.
15   Q.   Is the inclusion of the authorization and
16 consent clause at the complete decision of the
17 subcontractor compared to Aeroflex's decision?
18        MR. CRUNK:  Objection, vague and
19    ambiguous, outside the scope, irrelevant,
20    calls for speculation, assumes facts not in
21    evidence.
22   A.   I don't understand the question.

5 (Pages 14 to 17)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342     Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 18

1    Q.  Does Aeroflex inquire with regard to a
2  specific contract whether or not an authorization
3  and consent clause will be included at the time of
4  the contracting?
5        MR. CRUNK:  Objection, vague and
6    ambiguous, outside the scope.
7    A.  No.
8    Q.  To your knowledge has Aeroflex Colorado
9  Springs ever asserted an authorization and consent
10  defense before on a patent infringement action?
11       MR. CRUNK:  Objection, outside the
12    scope, vague and ambiguous, irrelevant, calls
13    for speculation.
14    A.  No.
15    Q.  Were you consulted in preparing the
16  discovery responses relating to this defense?
17       MR. CRUNK:  Objection, vague and
18    ambiguous, outside the scope and
19    attorney/client privilege, work product
20    privilege.
21       To the extent can you answer without
22  divulging communications between you and your

Page 19

1    attorneys or those who work at the direction
2    of your attorneys you the work you did for
3    your attorneys you may answer.
4    A.  Client/attorney privilege.
5    Q.  So the fact if you were consulted or not
6  is a communication with your attorney?
7        MR. CRUNK:  Objection, calls for legal
8    conclusion, irrelevant, outside the scope.
9    Instruct the witness not to answer.  Also
10    attorney/client privilege, work product
11    privilege.
12    A.  Attorney/client privilege.
13    Q.  Is it Aeroflex's position that the
14  authorization and consent clause is required to be
15  in the contract in addition to assert the defense
16  of authorization and consent?
17       MR. CRUNK:  Objection, outside the
18    scope, vague and ambiguous, calls for legal
19    conclusion and also attorney/client privilege
20    work product privilege.  I instruct the
21    witness not to answer.
22    A.  Client/attorney privilege.

Page 20

1    Q.  So Aeroflex's position on authorization
2  and consent is subject to attorney/client
3  privilege; is that what you're saying?
4        MR. CRUNK:  Objection, it's irrelevant,
5    vague and ambiguous, outside the scope, calls
6    for legal conclusion, calls for speculation,
7    attorney/client privilege, work product
8    privilege.  Please quit asking him questions
9    about legal issues and legal questions.  And
10    it misrepresents his prior testimony.
11    A.  Client/attorney privilege.
12       MS. BARBISCH:  I think I have to go off
13    the record.  I'm missing a document.
14       THE VIDEOGRAPHER:  We're off the record
15    at 9:41 a.m.
16    (Off the record.)
17    (Exhibit 651 marked.)
18  BY MS. BARBISCH:
19    Q.  Handing to you what has been marked as 651
20  it's the third supplemental product declaration,
21  Peter Milliken.  Do you recognize this document?
22    A.  I do.

Page 21

1    Q.  Did you create this document?
2        MR. CRUNK:  Objection, attorney/client
3    privilege, work product privilege.
4        To the extent you can extent without
5    divulging communications between your
6    attorneys or the work that you've done at the
7    direction of your attorneys, you may answer.
8    A.  I did.
9    Q.  Are you able to identify the ASICs in
10  Paragraph 3 that were sold under government
11  subcontracts?
12       MR. CRUNK:  Objection, outside the
13    scope, vague and ambiguous.
14    A.  Those items in the description column
15  labeled with the phrase military program or
16  military satellite.  You would also have the 8196
17  microcontroller which is a standard product and
18  you would have to look at each purchase order to
19  determine whether or not it was associated with a
20  government contract because it's a standard
21  product.
22    Q.  So the record is clear you identified the

6 (Pages 18 to 21)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 22

1  military program products which would be 3, 4, 5,
2  the KD08A, KD15A, KB11A; is that correct?
3      A.  Correct.
4      Q.  You identified the military satellite
5  ASICs which would be items 12 through 23, KD24A,
6  26A, 28A, 31A through 39A, and also the 8196
7  microcontroller, item 25, KC01A with the caveat
8  we'd have to look at the individual contracts on
9  the KC01A; is that correct?
10     A.  That's correct.  I would also have to say
11 on items 6 through 11, KD12A, KB10A, KB07A KM01A,
12 KD11A and JD05A we would need to look at the
13 specific purchase orders to ascertain whether
14 there are government contracts involved.
15     Q.  Item number 1 UTCAM is not ever sold under
16 government subcontract; is that correct?
17         MR. CRUNK:  Objection, outside the
18      scope, vague and ambiguous.
19     A.  That is correct.
20     Q.  And the JW01 is never sold under
21 government contract; is that correct?
22         MR. CRUNK:  Same objections, asked and

Page 23

1      answered.
2      A.  That's correct.
3      Q.  Also number 26 the YA04 slash YA13, is
4  that never sold under government contract?
5          MR. CRUNK:  Same objection.
6      A.  Correct.
7      Q.  Twenty-seven, 28, 29 and 30, the YB01,
8  DA01, DA02 and JW02, those are never sold are
9  under government contract; is that also correct?
10         MR. CRUNK:  Same objection.
11     A.  That is correct.
12     Q.  Do you know who the customer is for KD08A?
13         MR. CRUNK:  Objection, outside the
14      scope.
15     Q.  Number 3?
16         MR. CRUNK:  Objection, outside the
17      scope, vague and ambiguous.
18     A.  I can't recall.
19     Q.  If for the KD08A there were sales line
20 items, I believe it was on Exhibit 134, the prior
21 financial sheet that you went over in detail with
22 Mr. Brothers, if there was a purchaser of EMS

Page 24

1  listed, is it a safe assumption that EMS is who
2  the KD08A was sold to?
3          MR. CRUNK:  Objection, outside the
4      scope, vague and ambiguous, irrelevant, calls
5      for speculation.
6      A.  Yes.
7      Q.  For all of the ASICs you identified as
8  being under military contract or potentially under
9  a military contract with the exception of KC01A,
10 were each those ASICs only sold to one company?
11         MR. CRUNK:  Objection, outside the
12      scope, vague and ambiguous.
13     A.  Yes.  Hold on a second, JD05A may have
14 been sold to more than one customer.  Then you
15 have the other problem of divisions or sale of
16 companies have changed names because a division
17 has been sold to another entity.
18     Q.  For example, I believe Kodak's government
19 systems was purchased by ITT; is that correct?
20         MR. CRUNK:  Objection, outside the
21      scope, vague and ambiguous.
22     A.  Correct.

Page 25

1      Q.  And even though it was Kodak who
2  originally contracted for the ASIC, you would
3  continue to sell the ASICs to ITT; is that
4  correct?
5          MR. CRUNK:  Same objections, assumes
6      facts not in evidence.
7      A.  Yes.
8      Q.  When one contractor is consumed by another
9  contractor such as the Kodak/ITT case, does
10 Aeroflex require any evidence that all of the
11 intellectual property was transferred or how does
12 it determine if it will sell to ITT?
13         MR. CRUNK:  Objection, compound, vague
14      and ambiguous, irrelevant, outside the scope,
15      calls for speculation, assumes facts not in
16      evidence.
17     A.  In the case of the Kodak/ITT acquisition
18 we received no official notification of the fact
19 that Kodak had sold that specific division to ITT.
20     Q.  Aeroflex maintains the records of the
21 contracts and purchase order for all of the ASICs
22 that you identified as potential government ASICs?

7 (Pages 22 to 25)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 26

1        MR. CRUNK: Objection, vague and
2    ambiguous, outside the scope, assume facts
3    not in evidence.
4    A.  Yes.
5    Q.  Do you know if all of those contracts and
6  purchase orders were produced in this litigation?
7        MR. CRUNK: Objection, outside the
8    scope, vague and ambiguous, calls for
9    speculation.
10    A.  I don't know.
11    Q.  Who would know?
12        MR. CRUNK: Same objections.
13    A.  I don't know.
14    Q.  Do you know who was responsible for
15  gathering the contract and purchase orders for the
16  ASICs production in this litigation?
17        MR. CRUNK: Objection, vague and
18    ambiguous, outside the scope, assumes facts
19    not in evidence, calls for speculation, work
20    product privilege, attorney/client privilege.
21        To the extent can you answer without
22    divulging the content of communications

Page 27

1    between you and your attorneys or those who
2    work for your attorneys or divulge work that
3    was done at direction of your attorneys you
4    may answer.  Otherwise I instruct you not to.
5    A.  I'd cite client/attorney privilege.
6    Q.  Your attorney just instructed you not to
7  divulge communications or divulge the actual work
8  that was done, so the fact if you know who was
9  responsible doesn't seem to me to fall under
10  either of those two instructions.  So I'm going to
11  ask you again, do you know who was responsible for
12  gathering the contract and purchase order for the
13  ASICs?
14        MR. CRUNK: Same objections. Objection,
15    badgering the witness.  Ask a different
16    question.
17    A.  Client/attorney privilege.
18        MS. BARBISCH:  I object again to your
19    misuse of attorney/client privilege
20    objections and your instructing the witness
21    not to answer.  It's improper.
22        THE WITNESS:  Can we take a break.

Page 28

1        THE VIDEOGRAPHER: We're off the record
2    at 9:52 a.m.
3        (Brief pause in the proceedings.)
4        THE VIDEOGRAPHER: We're back on the
5    record at 10:03 a.m.
6  BY MS. BARBISCH:
7    Q.  So you claimed attorney/client privilege
8  when I asked if you knew who was responsible for
9  the gathering the contract and purchase orders for
10  the ASICs for production in this litigation.  Did
11  your knowledge or lack thereof come from a
12  communication with an attorney?
13        MR. CRUNK:  Objection, misstates the
14    prior testimony, and attorney/client
15    privilege, work product protection.
16        To the extent you can answer without
17    divulging communications with your attorneys
18    or those who work with your attorneys or
19    without divulging work you've done for your
20    attorneys you can, otherwise I instruct you
21    not to answer.
22    A.  Ask your question again.

Page 29

1    Q.  You claimed attorney/client privilege when
2  I asked who was responsible for gathering the
3  contract and purchase orders for the ASICs in
4  production of this litigation.  Did your knowledge
5  of who did this or your lack of knowledge of who
6  did this come from any communication with an
7  attorney?
8        MR. CRUNK:  Same objections.
9    A.  No.
10    Q.  Then I'm going to ask you the question
11  again if you know who gathered the contract and
12  purchase orders for production in this litigation?
13        MR. CRUNK:  Objection, outside the
14    scope, vague and ambiguous, calls for
15    speculation and attorney/client privilege,
16    work product privilege.
17        And to the extent can you answer without
18    divulging communications by you or others
19    with the attorney, Aeroflex's attorneys or
20    the work that was done at the direction of
21    your attorneys or those working for your
22    attorneys you may answer.  Otherwise I

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 30

1    instruct you not to answer.
2    A.  Client/attorney privilege.
3    Q.  So you are not going to answer?
4        MR. CRUNK:  Objection, asked and
5    answered, badgering the witness.
6    A.  Correct.
7        (Exhibit 652 marked.)
8  BY MS. BARBISCH:
9    Q.  Handing you what has been marked as
10  Exhibit 652, this is a supplemental declaration of
11  Denise De Mory in Support of Defendant's Motion
12  for Order Extending Time to Permit Late Filing of
13  Amended Answers.  You have you seen this document
14  before?
15       MR. CRUNK:  Objection, outside the
16    scope, and irrelevant to the topic.
17  A.  No.
18       MS. BARBISCH:  The witness is designated
19    on 1498, isn't he?
20       MR. CRUNK:  You have our designations, I
21    have nothing further to add.
22       MS. BARBISCH:  I'd like to clarify

Page 31

1    though if you don't believe the witness is
2    designated for 1498 because you're objecting
3    to scope and irrelevant to the topic.
4        MR. CRUNK:  I have nothing to add to the
5    designation either on the record or off the
6    record, the discussions we had off the record
7    or on the record.
8    Q.  You testified that you had not seen this
9    document before, were you consulted in the
10  identification of purchase orders as they relate
11  to Aeroflex part numbers at any time?
12       MR. CRUNK:  Objection, outside the
13    scope, vague and ambiguous, irrelevant and
14    attorney/client privilege and work product
15    privilege.
16       To the extent you can answer without
17    disclosing communications between you and
18    others, your attorneys, and without divulging
19    the work that you've done at the direction of
20    your attorneys or those work for your
21    attorneys, then you may answer.
22  A.  Attorney/client privilege.

Page 32

1    Q.  On the last page of this document there is
2    a chart listing Aeroflex part numbers, purchase
3    order, Bates number ranges and contract provision,
4    Bates number ranges.  Is it your understanding
5    these are the only purchase orders for the part
6    numbers listed in the left-hand column?
7        MR. CRUNK:  Objection, outside the
8    scope, vague and ambiguous, irrelevant with
9    respect to topics today, calls for
10    speculation.  He's already said he has not
11    seen the document.  He has no idea what's in
12    it.
13  A.  I don't know.
14  Q.  Has Aeroflex attempted to locate
15  additional contracts that relate to Aeroflex ASICs
16  that were created for the government?
17       MR. CRUNK:  Objection, outside the
18    scope, vague and ambiguous, attorney/client
19    privilege, work product privilege.
20  A.  Attorney/client privilege.
21  Q.  Earlier you testified the KD08A, ASIC
22  number 3 from Paragraph 3 of Exhibit 651 was

Page 33

1    created for the government; is that correct?
2        MR. CRUNK:  Objection, misstates prior
3    testimony.
4    A.  Yes.
5    Q.  And you also testified that Aeroflex
6    maintains purchase order and contracts for the
7    government ASICs it develops; isn't that correct?
8        MR. CRUNK:  Objection, misstates prior
9    testimony.
10  A.  Yes.
11  Q.  Do you believe that there are purchase
12  orders and/or contracts for the KD08A in existence?
13       MR. CRUNK:  Objection, vague and
14    ambiguous, outside the scope, calls for
15    speculation.
16  A.  Yes.
17  Q.  Do you have any understanding of why those
18  contracts and purchase orders were not identified
19  to Ricoh in connection with this litigation?
20       MR. CRUNK:  Objection, outside the
21    scope, vague and ambiguous, attorney/client
22    privilege, work product privilege, calls for

9 (Pages 30 to 33)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 34

1    speculation, assumes facts not in evidence.
2    A.   Attorney/client privilege.
3    Q.   So outside of communications with your
4 attorneys do you have any understanding of why
5 these contracts and purchase orders were not
6 identified to Ricoh in connection with this
7 litigation?
8        MR. CRUNK:  Same objections and
9    misstates prior testimony.
10   A.   Client/attorney privilege.
11   Q.   Even outside of your communications with
12 attorneys you're claiming the privilege?
13       MR. CRUNK:  Same objections, asked and
14   answered.
15   A.   Yes.
16       MS. BARBISCH:  Are you instructing the
17   witness not to answer the question,
18   Mr. Crunk?
19       MR. CRUNK:  The witness may answer to
20   the extent that his answer will not divulge
21   communications, contact communications
22   between him and his attorneys or others and

Page 35

1    their attorneys or divulge the work that was
2    done at the direction of the attorneys or
3    those who work for the attorneys.
4    Q.   So outside of your communications with
5 attorneys or at the direction of attorneys do you
6 have any understanding why contracts and purchase
7 orders were not identified to Ricoh in connection
8 with this litigation?
9        MR. CRUNK:  Same objections.  And to be
10   clear, we're assuming facts not in evidence,
11   calling for speculation, outside the scope,
12   vague and ambiguous and attorney/client work
13   product privilege.  And he's already said he
14   didn't know what was produced.
15   A.   I don't know.
16   Q.   Actually I asked if they were identified
17 because pursuant to Ms.~De Mory's declaration she
18 said they would be identified when they were
19 located.  Reviewing the list of ASICs on the third
20 page of the declaration, this is Exhibit 652, do
21 you believe that the list of Aeroflex part numbers
22 is a complete representation of all of the ASICs

Page 36

1 for which Aeroflex produced ASICs in conjunction
2 with a government subcontract that contained an
3 authorization and consent clause?
4        MR. CRUNK:  Objection, vague and
5    ambiguous, outside the scope,
6    incomprehensible, and attorney/client work
7    product privilege and calls for speculation.
8    A.   I don't know.
9    Q.   Would you consider the KD21A ASIC which
10 has not been declared a government ASIC as we've
11 defined it?
12       MR. CRUNK:  I'm sorry, is there a
13   question?
14   Q.   Would you consider the KD21A ASIC --
15       MR. CRUNK:  I'm sorry, I still don't --
16   Q.   The 21A has not been declared.  Would you
17 consider the KD21A a government ASIC?
18       MR. CRUNK:  Would you consider the KD21A
19   a government ASIC.  Objection, outside the
20   scope, vague and ambiguous, asked and
21   answered.
22   A.   I don't know.

Page 37

1    Q.   Do you have any knowledge of the KD41A?
2        MR. CRUNK:  Objection, outside the
3    scope, vague and ambiguous, irrelevant.
4    A.   Not off the top of my head.
5    Q.   Handing you what has been previously
6 marked as Exhibit 129, is the 2005 Notice of
7 Deposition to Aeroflex.  Have you seen this
8 document before?
9    A.   Yes, I believe I have.
10   Q.   Is it your understanding that you're here
11 today to testify as to topic number 4 with regard
12 to the newly declared ASICs which are ASICs 26
13 through 30 in Paragraph 3 of Exhibit 651?
14   A.   Yes.
15       (Exhibit 653 marked.)
16 BY MS. BARBISCH:
17   Q.   Handing what has been marked as
18 Exhibit 653, have you seen this document before?
19   A.   Yes.
20   Q.   Is it your understanding that you are here
21 today to testify as to topics 1, 2, 3A, B, C, G, H
22 and topics 5 and 6.  Want me to repeat those for

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 38

1    you?
2       A. One, 2, 3A, B, C.
3       Q. G, H and 5 and 6.
4       A. Yes.
5          (Exhibit 654 marked.)
6          (Exhibit 655 marked.)
7    BY MS. BARBISCH:
8       Q. I am handing you what's been marked as
9    Exhibits 654 and 655 which correspond to the first
10   row on the --
11         MR. CRUNK: Excuse me, can I get copies?
12         MS. BARBISCH: Yeah.
13         MR. CRUNK: Thank you.
14      Q. Correspond to the first row on
15   Ms. De Mory's declaration chart KC01A.  Exhibit
16   654 bears Bates number 8 AF 283778 through 793.
17   And Exhibit 655 is AF 283799 through 810.  Have
18   you ever seen either of these documents before?
19      A. No.
20      Q. Looking at the first page of Exhibit 654,
21   are you able to identify any line item that
22   corresponds to the KC01 ASIC?

Page 39

1       A. I am.
2       Q. Which line item would that be?
3       A. It would line had been items 0001 and
4    0002.
5       Q. The first line of both of those line items
6    says 5962R0252301VXC, is that a designation for
7    the KC01 ASIC?
8       A. Yes.
9       Q. Is that designation a constant mapping to
10   the KC01 or is it somehow customer specific?
11         MR. CRUNK: Objection, vague and
12      ambiguous, outside the scope.
13      A. It is what is called a standard
14   microcircuit drawing number.
15      Q. What is a standard microcircuit drawing
16   number?
17      A. It is a drawing that defines QML or
18   qualified manufacturing list products, and
19   basically is a definition of what that product is
20   and its capacity abilities.  And it offers options
21   how that part can be manufactured or produced
22   according to a set of standard military

Page 40

1    requirements.
2       Q. Is that standard microcircuit drawing
3    number the only microcircuit drawing number
4    associated with any version of the KC01?
5          MR. CRUNK: Objection, vague and
6       ambiguous, outside the scope.
7       A. No.
8       Q. Do you know how many standard microcircuit
9    drawing numbers are associated with the KC01?
10         MR. CRUNK: Same objections.
11      A. Not specifically.
12      Q. Do you have idea how many we're talking,
13   five, 10, hundreds?
14         MR. CRUNK: Same objection.
15      A. I would say 10, 15, somewhere in there.
16      Q. Are there any other identifiers in line
17   item 0001 that map this part, this line item to
18   the KC01 ASIC?
19         MR. CRUNK: Objection, outside the
20      scope, vague and ambiguous.
21      A. You would have to go to the specific
22   standard microcircuit drawing.  You have to go to

Page 41

1    the specific microcircuit drawing to ascertain
2    that it's the KC01.
3       Q. How were you able to identify the fact
4    that the 0001 line item is the KC01?
5       A. By the reference to the 8196 in the second
6    line and the microcontroller in the third line.
7       Q. For all purchase orders and/or contracts
8    relating to the KC01 will there be the 8196
9    microcontroller designation?
10         MR. CRUNK: Objection, outside the
11      scope, vague and ambiguous.
12      A. No.
13      Q. In the instances where the 8196
14   microcontroller reference is not there, how would
15   one identify that particular line item with the
16   KC01 ASIC?
17         MR. CRUNK: Same objections, assumes
18      facts not in evidence.
19      A. You would go to the source, the standard
20   microcircuit drawing, look it up.
21      Q. Do you know if this standard microcircuit
22   drawing list was produced in this litigation?

11 (Pages 38 to 41)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 42

1           MR. CRUNK:  Objection, outside the
2      scope, calls for speculation, attorney/client
3      privilege, work product privilege.
4           To the extent can you answer without
5      divulging contents of communication of you or
6      others with their attorneys or not divulging
7      the work that you or others were instructed
8      to do by the attorneys or people that work
9      for the attorneys, then you can answer.
10     A.  I don't know.
11     Q.  Is the standard microcircuit drawing list
12  Aeroflex specific or is it a general public domain
13  information?
14          MR. CRUNK:  Objection, outside the
15     scope, vague and ambiguous.
16     A.  DSCC maintains the master list of standard
17  microcircuit drawings, so it is a public domain
18  environment for people to go access the
19  microcircuit drawings.
20     Q.  Did you say DSCC?
21     A.  DSCC, defense -- I don't remember what
22  the, I don't remember what the acronym is.

Page 43

1           THE VIDEOGRAPHER:  We're off the record
2      at 10:27 a.m.
3           (Off the record.)
4           THE VIDEOGRAPHER:  We're back on the
5      record at 10:28 a.m.
6  BY MS. BARBISCH:
7      Q.  So it is possible there are contracts or
8  purchase orders for the KC01 ASIC where the only
9  identifier of the KC01 ASIC is the standard
10  microcircuit drawing list; is that correct?
11          MR. CRUNK:  Objection.
12     Q.  Or drawing number?
13          MR. CRUNK:  Still objection, outside the
14     scope, vague and ambiguous, calls for
15     speculation, assumes facts not in evidence.
16     A.  Yes.
17     Q.  In order for one to ascertain which ASIC
18  they relate to they would have to go to the DECC?
19     A.  DSCC.
20     Q.  DSCC data base, look at that number and
21  that would identify it as the KC01 within that
22  data base?

Page 44

1           MR. CRUNK:  Objection, outside the
2      scope, vague and ambiguous, mischaracterizes
3      his prior testimony.
4      A.  No.
5      Q.  How would one unfamiliar with the KC01
6  DSCC standard list ascertain that the contracts
7  were in fact in relation to the KC01 ASIC?
8           MR. CRUNK:  Objection, vague and
9      ambiguous, outside the scope, lacks
10     foundation, assumes facts not in evidence.
11     A.  You would go to the DSCC Web site where
12  they have listed the 5962 drawings, and for that
13  specific 5962 you would acquire the 5962 drawing
14  itself and open it up and look inside, it's a
15  document.
16     Q.  The document explicitly states it's a KC01
17  ASIC?
18     A.  I believe that's correct.
19     Q.  Is there any way to tell -- scratch that.
20  Is there any way to identify other than going
21  through this process which sales were for the KC01
22  and relating them back to specific purchase orders

Page 45

1  and/or contracts?
2           MR. CRUNK:  Objection, vague and
3      ambiguous, outside the scope.
4      A.  One could go to an Aeroflex purchase order
5  number or the contract number and there would be a
6  cross reference list to our what we call product
7  identification code, which would cross reference
8  it to a KC01 product identification code.
9      Q.  You stated that line item 0001 and 0002
10  were both for the KC01, do you have any
11  understanding why those would be split out on
12  separate line items?
13          MR. CRUNK:  Objection, outside the
14     scope, vague and ambiguous.
15     A.  Not from the information presented here.
16          MR. CRUNK:  With here, where are you
17     referring to?
18          THE WITNESS:  Document 654.
19          MR. CRUNK:  Page AF 283778?
20          THE WITNESS:  Yes.
21     Q.  It appears there's a DOD priority
22  difference, C8 versus C9, on the last line of the

12 (Pages 42 to 45)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 46

1  line items?
2     A.  I don't see that DOD priority I see
3  C0-C8 -- they're both C8.
4     Q.  Do you know what DOD priority C8 is?
5        MR. CRUNK:  Objection, outside the
6     scope, vague and ambiguous, calls for
7     speculation.
8     A.  The specifics of a C8 I don't know, but I
9  know it's a department of defense priority code
10 for delivery if they should so need to execute
11 that priority over other say, commercial
12 transactions or lower level department of defense
13 priority orders.
14    Q.  Are you able to ascertain who authorized
15 or entered into this purchase order on behalf of
16 Aeroflex?
17       MR. CRUNK:  Objection, assumes facts not
18    in evidence, lacks foundation.
19    A.  No.
20    Q.  Turn your attention to Exhibit 655 which
21 is the Orbital Sciences Corporation purchase order
22 terms and conditions which was identified in

Page 47

1  Ms. De Mory's declaration as being the
2  corresponding contract provisions for this
3  purchase order.  Are you able to identify or
4  explain the process of how a purchase order terms
5  and conditions is incorporated with the specific
6  purchase order?
7        MR. CRUNK:  Can you restate the
8     question, please.
9     Q.  Are you able to identify or explain the
10 process of how this specific purchase order terms
11 and conditions is incorporated with this specific
12 purchase order?
13       MR. CRUNK:  Objection, vague and
14    ambiguous, outside the scope, assumes facts
15    not in evidence, lacks foundation.
16    A.  Possibly.
17    Q.  How would you possibly do that?
18       MR. CRUNK:  Same objection.
19    A.  Basically going through the purchase order
20 there are references and ties to supplemental
21 documents that would then tie it ideally by a time
22 and date and title and a revision to a specific,

Page 48

1  in this case, terms and conditions that were
2  incorporated.
3        MR. CRUNK:  When you say going through
4     the purchase order, which exhibit are you
5     referring to?
6        THE WITNESS:  654.
7        MR. CRUNK:  Thank you.
8     Q.  Are you specifically looking at the second
9  page of that document which is 779 where it says,
10 has a Web site to refer to for the terms and
11 conditions and supplementary provisions?
12       MR. CRUNK:  Same objections.
13    A.  Yes.
14    Q.  You had stated that ideally there would be
15 a time and date and revision to tie the two
16 documents together.  Do you see any such time and
17 date or revision stamp on this document?
18       MR. CRUNK:  Objection, misstates prior
19    testimony, vague and ambiguous.
20    A.  No, but as you mentioned before there is a
21 Web site pointer to an Orbital Sciences
22 Corporation terms and conditions PDF file.

Page 49

1     Q.  Sitting here today you can't confirm that
2  Exhibit 655 is the version that was specifically
3  referred to by this reference in Exhibit 654, can
4  you?
5        MR. CRUNK:  Objection, outside the
6     scope, vague and ambiguous, calls for
7     speculation, lacks foundation, assumes facts
8     not in evidence.
9     A.  No, I can't.
10    Q.  When a customer purchases the KC01 ASIC is
11 the KC01 ASIC sold as a standard off-the-shelf
12 product?
13       MR. CRUNK:  Objection, vague and
14    ambiguous, outside the scope, irrelevant.
15    A.  Yes.
16    Q.  Are there any differences in the KC01 ASIC
17 between the different standard microcircuit
18 drawing lists, the different versions of the KC01
19 that are correlated to those different standard
20 microcircuit drawing lists?
21       MR. CRUNK:  Objection, vague and
22    ambiguous, outside the scope, irrelevant.

13 (Pages 46 to 49)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 50

1    A.  Yes.
2    Q.  What are those differences?
3        MR. CRUNK:  Same objection.
4    A.  You would have manufacturing differences
5    from a quality perspective of a, what we call a Q
6    or V, a class V or class S manufacturing
7    requirement, different type of package that it
8    could be put into, a flatpack or pin grid package
9    and there are different lead finishes in terms of
10   whether we solder dip them or just plain gold
11   leaf.  Or there is also radiation tolerances
12   difference, could be hundred KRads could be
13   nonRadHard or could be a harder base-qualified
14   product.
15   Q.  Does the customer select which version if
16   you will of the KC01 they want to purchase or does
17   Aeroflex determine which KC01 version suits the
18   customer's needs?
19       MR. CRUNK:  Objection, vague and
20       ambiguous, outside the scope, assumes facts
21       not in evidence.
22   A.  Customer may know already what the

Page 51

1    requirements are and they will pick it essentially
2    out of the SMD by looking at the coding numbers to
3    pick one which one it is, or the customer may come
4    to Aeroflex and say I want a part with these
5    particular attributes, tell me which SMD drawing
6    matches those requirements.  We can aid them in
7    that determination.  But ultimately it's the
8    customer who determines what requirements they
9    need to have the part satisfy.
10   Q.  What does -- SMD stands for what?
11   A.  Standard microcircuit drawing.
12   Q.  Does Aeroflex other than using the SMD
13   number, otherwise identify these ASIC with a KC01
14   version number?
15       MR. CRUNK:  Objection, vague and
16       ambiguous, outside the scope, asked and
17       answered.
18   A.  Aeroflex maintains an internal 13-digit
19   product identification code to translate all of
20   those attributes I defined into different 13-digit
21   PICs.
22   Q.  We would need that magic decoder to

Page 52

1    identify which PIC represented which SMD; is that
2    correct?
3        MR. CRUNK:  Objection vague and
4        ambiguous, outside the scope.
5    A.  Yes.
6    Q.  Are all of the KC01 SMD numbers or the
7    KC01s represented by SMD numbers functionally
8    equivalent?
9        MR. CRUNK:  Objection, outside the
10       scope, vague and ambiguous, irrelevant.
11   A.  Functionally identical.
12   Q.  Do you know if the KC01 was originally
13   designed to meet a specific customer's need or was
14   it originally designed as a standard product?
15       MR. CRUNK:  Objection, vague and
16       ambiguous, outside the scope, compound and
17       assumes facts not in evidence.
18   A.  For Aeroflex Colorado Springs it was
19   originally designed to be a standard product.
20   Q.  Was it originally designed to meet a
21   specific customer's need or another party?
22       MR. CRUNK:  Same objections.

Page 53

1    A.  Yes.
2    Q.  Who originally designed the KC01?
3        MR. CRUNK:  Objection, outside the
4        scope, vague and ambiguous, irrelevant.
5    A.  It was not the KC01.  It was what we
6    called the HK48 and it was designed by a company
7    called FirstPass for their own use and
8    consumption.  And the 8196 microcontroller was
9    embedded in that ASIC, it was not a standard
10   product.  It was an application-specific
11   integrated circuit for the particular purpose of
12   sales by FirstPass.
13   Q.  Do you know who FirstPass's customer was
14   that they developed the HK48 for?
15       MR. CRUNK:  Objection, outside the
16       scope, vague and ambiguous, assumes facts not
17       in evidence, calls for speculation.
18   A.  No.
19   Q.  Is it your understanding that
20   authorization and consent causes would be
21   incorporated in the purchase order in general
22   through terms and conditions attached to a

14 (Pages 50 to 53)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 54

1  purchase order?
2         MR. CRUNK:  Objection, vague and
3      ambiguous, outside the scope.
4      A.  Ask the question again.
5         (The reporter read the record as
6         requested.)
7      A.  Yes.
8      Q.  Authorization and consent clauses would
9  not typically be in the purchase order themselves,
10  would they?
11        MR. CRUNK:  Objection, vague and
12      ambiguous, outside the scope.
13      A.  All depends on the customer.
14      Q.  Turn to Exhibit 655, page ending in 806,
15  AF 283806.  Look specifically at line 45.
16      A.  Okay.
17      Q.  Is it your understanding that line 45 in
18  fact represents the authorization and consent with
19  regard to this terms and conditions from Orbital?
20        MR. CRUNK:  Objection, vague and
21      ambiguous, assumes facts not in evidence,
22      lacks foundation and outside the scope.

Page 55

1      A.  Given that they are part of the purchasing
2  supplementary provisions A under Paragraph B on
3  Exhibit 805, the clause incorporated herein by
4  reference had the same force and effect as if they
5  were incorporated and attached in full context.
6  And this is the whole section under which 52.227-1
7  is incorporated.
8      Q.  Is it your understanding that federal
9  acquisition regulation 52.227-1 is the only
10  authorization and consent provision that would be
11  included in a contract or purchase order for a
12  government ASIC?
13        MR. CRUNK:  Objection, outside the
14      scope, vague and ambiguous, calls for
15      speculation, and attorney/client privilege,
16      work product.
17        To the extent you can answer without
18      divulging the content of discussions with
19      your attorneys or others with the attorneys
20      or divulging work that your attorneys has you
21      do, you can answer.
22      A.  I don't know.

Page 56

1      Q.  Are you aware of any other types of
2  authorization and consent clauses that may be
3  included in contracts or purchase orders for
4  government ASICs?
5         MR. CRUNK:  Same objections.
6      A.  I don't know.
7         (Exhibit 656 marked.)
8         (Exhibit 657 marked.)
9  BY MS. BARBISCH:
10      Q.  Handing to you what's been marked as
11  Exhibit 656 and 657 which is a Boeing purchase
12  order and contract provision.  Have you seen these
13  documents before?
14        MR. CRUNK:  Objection, documents speak
15      for themselves, assumes facts not in
16      evidence, lacks foundation.
17      A.  Yes, I have seen the purchase order, I'm
18  not sure I've seen the terms and conditions.
19      Q.  For the record subject 656 Bates number AF
20  284341 through 349 and Exhibit 657 bears Bates
21  numbers AF 284246 through AF 284249.  These
22  documents correspond to the line item on

Page 57

1  Ms. De Mory's chart in Exhibit 652 for the KD24A.
2      A.  Looks like you're missing a page.
3      Q.  I believe that's a typo on the chart.
4      A.  Okay.
5      Q.  I believe the range on the chart should go
6  from 41 through 49.
7      A.  Okay.
8         MR. CRUNK:  So there's no confusion,
9      what's going on with the page numbers with
10      these exhibits?
11        MS. BARBISCH:  I believe Denise's
12      declaration has a few mispage numbering on
13      the KD24A.  I believe it should read 341
14      through 349.  Would you like me to correct
15      all of them now -- or as least as the
16      documents were produced, the one just below
17      that for KD26A I believe should read 350
18      through 356.
19        And under the contract provisions the
20      last KC01 that has two contract provisions,
21      the second line should be 284 through 299.
22      And then below that the KD26A contract

15 (Pages 54 to 57)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 58

1        provisions should read 314 through 331 -- or
2     321.
3           And the KD31A contract provisions should
4     be 279 through 283.  At least as best we can
5     ascertain from the way the documents were
6     produced and be logical groupings.
7        Q.  Looking at Exhibit 656 which is the Boeing
8     purchase order, how are you able or are you able
9     to identify any ASIC that was sold pursuant to
10    this purchase order that was identified in
11    Paragraph 3 of the product declaration?
12          MR. CRUNK:  Objection, vague and
13       ambiguous, outside the scope, assumes facts
14       not in evidence and lacks foundation.
15       A.  On page AF 284342 there is a line item,
16    line item number 1 quantity of 17 units and there
17    is a 5962 drawing number with a slash DSS006.  The
18    first 5962 sequence of numbers identifies a
19    standard microcircuit drawing or it's an SMD that
20    defines an ASIC family or ASIC offering that
21    Aeroflex offers to the general public.  Again, you
22    have to get the magic decoder ring to find out

Page 59

1     what ASIC family we offer.  Then the slash DSS006
2     is what's known as an altered item drawing, AID.
3     You would have to get a copy of the altered item
4     drawing to know exactly which product
5     identification code is manufactured to satisfy
6     that line item.  And that is controlled by, in
7     this case, Boeing Corporation, that --
8        Q.  The AID?
9        A.  The altered item drawing.
10       Q.  Is controlled by Boeing.  That is not
11    public domain information?
12          MR. CRUNK:  Objection, vague and
13       ambiguous, outside the scope.
14       A.  Correct.
15       Q.  Are you able to identify which ASIC line
16    item number 1 represents?
17       A.  Not without going to the AID, the altered
18    item drawing.
19       Q.  So we have no way of knowing today other
20    than looking at Ms. De Mory's chart that this line
21    item number 1 is the KD24A; is that correct?
22          MR. CRUNK:  Objection, vague and

Page 60

1        ambiguous, outside the scope, calls for
2        speculation.
3        A.  Correct.
4        Q.  Why doesn't Aeroflex label the part number
5     on the purchase order such as the internal part
6     number KD24A?
7           MR. CRUNK:  Objection, outside the
8        scope, calls for speculation.
9        A.  This is not an Aeroflex document, this is
10    a Boeing document.  So they are ordering a product
11    according to their requirements and Aeroflex is
12    required to interpret their request and translate
13    it into what we actually manufacture for the
14    customer.  So there is a documentation flow here
15    that describes what we are to build, how we are to
16    build it and specifically what we are to build.
17    And by following the 5962 standard microcircuit
18    drawing and the Boeing-designated altered item
19    drawing we have the exact recipe or menu for how
20    to build and supply an exact device to their
21    requirements.  So it is not our -- it is not us
22    directing the customer what we're going to build,

Page 61

1     it's the customer directing to Aeroflex what we're
2     going to build for them.
3        Q.  At the time a purchase order is entered
4     does Aeroflex necessarily know the final PIC name
5     for the ASIC?
6           MR. CRUNK:  Objection, vague and
7        ambiguous and outside the scope, irrelevant.
8        A.  Can you repeat the question.
9           (The reporter read the record as
10          requested.)
11          MR. CRUNK:  Same objections and assumes
12       facts not in evidence, lacks foundation.
13       A.  No.
14       Q.  And the PIC name is determined later based
15    on, for example, the first letter being the
16    foundry process you will eventually use; is that
17    correct?
18          MR. CRUNK:  Objection, outside the
19       scope, vague and ambiguous and asked and
20       answered.
21       A.  Yes.
22       Q.  Is the SMD created by in this case Boeing

16 (Pages 58 to 61)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 62

1  and given to Aeroflex so Aeroflex can design the
2  ASIC?
3       MR. CRUNK: Objection, outside the
4       scope, vague and ambiguous.
5   A. Aeroflex in this particular case created
6  the basic SMD because we defined the technology
7  and the ASIC offering or family under which this
8  SMD is delivered. The basic SMD that we supply to
9  customers is 5962-04B is the basic SMD of the
10 offering. The 5962 dash, character where the dash
11 is, defined radiation hardness characteristics of
12 the offering. The 04B defines a revision or
13 current SMD of that family. Then the subsequent
14 characters, the 01, 03, VYC defines a particular
15 Gate Array count or number of gates, defines the
16 package type, defines a manufacturing flow and
17 defines lead finish. And again. There's a
18 decoder ring within that SMD 5962-04B that defines
19 what all those character fields mean and how to
20 interpret them. Customers reference that to
21 define exactly what they want to order in terms of
22 the basic package, lead type, lead finish,

Page 63

1  radiation hardness. And then their AID is used to
2  define they want that specific product built to
3  that set of criteria.
4   Q. Does the SMD go to the functionality of
5  the ASIC or does it just go to the physical
6  characteristics of the ASIC?
7       MR. CRUNK: Objection, vague and
8       ambiguous, asked and answered, compound and
9       assumes facts not in evidence.
10  A. Goes to the physical characteristics and
11 the quality in manufacturing requirement. Has no
12 bearing on functionality of the device at all.
13  Q. Does the AID have any bearing on the
14 functionality of the device?
15      MR. CRUNK: Same objections.
16  A. Yes.
17  Q. Is AID a Boeing-specific term or do all
18 government contractors use something similar to an
19 AID?
20      MR. CRUNK: Objection, outside the
21      scope, calls for speculation.
22  A. The AID in this particular case is only

Page 64

1  applicable to that SMD. But it is a term used in
2  lieu of a source control drawing. If you don't
3  have an SMD to which -- the SMD, AID is a
4  methodology by which to simplify customer order,
5  contract engagement, to make it more efficient if
6  the basic building blocks are the same, package
7  types, lead counts, gate counts can be
8  standardized. It makes it easier for customers to
9  walk in and order their specific device. Then
10 they define their specific requirements within the
11 altered item drawing. Whereas if you have to go
12 to a more complex part procurement a customer
13 could essentially combine the SMD and AID and you
14 produce what is called a source control drawing
15 which is kind of a super document, but an SCD
16 which has all the manufacturing and functionality
17 requirements within a single document tends to be
18 more involved, more complex. And we've tried to
19 be more efficient for customers by providing them
20 a boilerplate to work with and makes ordering and
21 engagement with Aeroflex more economic and more
22 efficient.

Page 65

1   Q. Does the AID at all reflect the specific
2  functionality with regard to the RTL input into
3  design compiler for creating, for example, the
4  KD24A ASIC?
5       MR. CRUNK: Objection, outside the
6       scope, vague and ambiguous.
7   A. Depends on the contract requirements
8  engaged with the customer.
9   Q. If the AID does not reflect the specific
10 functionality with regard to the RTL input, how is
11 that RTL input captured in the contracting process
12 or the requirements of that RTL, how are they
13 captured?
14      MR. CRUNK: Objection, vague and
15      ambiguous, outside the scope, asked and
16      answered, compound, assumes facts not in
17      evidence.
18  A. The customer is part of the proposal or
19 quotation process, will submit an RFQ or an RFP
20 defining what inputs or set of requirements they
21 may place on the supplier. We will then in turn
22 reply or respond to those set of requirements with

17 (Pages 62 to 65)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 66

1  a proposal or quote defining how Aeroflex might
2  comply with those requirements or satisfy the
3  requirements.  The customer in turn will either
4  state it in the purchase order or -- I guess
5  basically state in the purchase order what
6  direction they would like to give Aeroflex
7  relative to satisfying their particular
8  requirements.
9    Q.  With the exception of the standard
10  products Aeroflex does not typically write its own
11  RTL; is that correct?
12       MR. CRUNK:  Objection, outside the
13    scope, vague and ambiguous, asked and
14    answered.
15    A.  You've got more than just listed standard
16  products here.  You have ASICs, you have mixed
17  signal ASICs, you have standard products.  You
18  have a mix of different products.
19    Q.  For the mixed signal ASICs does Aeroflex
20  typically write its own RTL?
21       MR. CRUNK:  Objection, outside the
22    scope, vague and ambiguous, asked and

Page 67

1    answered.
2    A.  Purely customer contract set of
3  requirements driven.
4    Q.  Are you able to tell for the KD24A who
5  wrote the RTL that went into the KD24A ASIC?
6       MR. CRUNK:  Objection, outside the
7    scope, vague and ambiguous, assumes facts not
8    in evidence.
9    A.  This particular exhibit, 256 is for
10  production units.  There is no design development
11  requirement under this purchase order.
12    Q.  Do you mean Exhibit 656?
13    A.  656.  This is for delivery of flight
14  units.
15    Q.  But Boeing initially specified the KD24A
16  specifications; is that correct?
17       MR. CRUNK:  Objection, vague and
18    ambiguous, asked and answered, outside the
19    scope, misstates prior testimony and assumes
20    facts not in evidence.
21    A.  It's their design, they own it.
22    Q.  But Aeroflex synthesized the KD24A,

Page 68

1  correct?
2       MR. CRUNK:  Objection, outside the
3    scope, vague and ambiguous.
4    A.  Yes.
5    Q.  So at one point was there a contract or
6  purchase order that defined the requirements of
7  the synthesis of the KD24A?
8    A.  Yes.
9    Q.  Do you know if that was produced in this
10  litigation?
11       MR. CRUNK:  Attorney/client privilege
12    work product privilege.
13       To the extent that you can answer
14    without divulging communications between you
15    or any of the clients and their attorneys or
16    divulge the work you were instructed to by
17    attorneys, you may answer.
18       Also object, this has been asked and
19    answered.
20    A.  Client/attorney privilege.
21    Q.  Did you personally, not at the direction
22  of your attorney, review any contracts in

Page 69

1  preparation for today's deposition?
2       MR. CRUNK:  Objection, attorney/client
3    privilege, work product privilege.
4       You can answer to the extent you can
5    without divulging the contents of any
6    discussions with your attorneys or the
7    clients of their attorneys or divulging the
8    work you were asked to do by attorneys or
9    those who work for attorneys.
10    A.  No.
11    Q.  Do you know for the KD24A who wrote the
12  RTL?
13       MR. CRUNK:  Objection, outside the
14    scope, vague and ambiguous, assumes facts not
15    in evidence.
16    A.  Someone at the Boeing Corporation.
17    Q.  That RTL is provided to Aeroflex for
18  synthesis?
19       MR. CRUNK:  Same objection.
20    A.  Yes.
21    Q.  Why did Aeroflex synthesize the KD24A
22  using design compiler?

18 (Pages 66 to 69)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 70

1    MR. CRUNK: Objection, outside the
2    scope, vague and ambiguous, assumes facts not
3    in evidence, calls for speculation.
4    A.  Because it's a tool that Aeroflex has and
5    has developed a certain competency in and we are
6    relatively efficient in its use.
7    Q.  If Aeroflex was equally competent in using
8    a competitor product of design compiler is there
9    any reason that Aeroflex would not have used a
10   competitor product to synthesize the KD24A?
11   MR. CRUNK: Objection, outside the
12   scope, vague and ambiguous, calls for
13   speculation, it's an incomplete hypothetical.
14   A.  No.
15   Q.  For all of the ASIC on Exhibit 651
16   Paragraph 3 you identified as government ASICs or
17   potentially government ASICs, can you identify any
18   ASICs in which design compiler was required to be
19   used for synthesis?
20   MR. CRUNK: Objection, vague and
21   ambiguous, outside the scope.
22   A.  You would probably have to go to the quote

Page 71

1    and/or the purchase order to determine whether
2    there was a specific or explicit requirement. We
3    may have proposed to the customer the use of
4    design compiler and they may have accepted that
5    proposal.
6    Q.  Independent of proposing to the customer
7    the use of design compiler, can you think of any
8    circumstances in which a customer would require
9    the use of design compiler in the synthesis of the
10   government ASICs?
11   MR. CRUNK: Objection, vague and
12   ambiguous, outside the scope, calls for
13   speculation.
14   A.  I don't know.
15   Q.  Who would know?
16   MR. CRUNK: Same objections.
17   A.  You would probably have to go to the
18   customer themselves and find out if there had been
19   a flowdown requirement that dictated the
20   requirement to use design compiler.
21   Q.  What is a flowdown requirement?
22   A.  Basically that the government would have

Page 72

1    flowed down a specific design flow to the prime or
2    subcontractor to do a certain specific design
3    flow.  However, that is very irregular.
4    Government typically defines I want a box and it's
5    up to the subcontractor to find the methodology.
6    They would in turn ask us through an RFP or
7    request for proposal how would we propose
8    supporting them.  We will send that procedure,
9    approach, set of tool suites up to the customer to
10   say here's our approach.  The customer would roll
11   those costs and that description into their
12   proposal to the government.  The government will
13   typically accept or deny the subcontractor's
14   proposal and either grant them a contract or not.
15   Q.  Are you saying that the government
16   contractor typically comes to you for a proposal
17   before they've been awarded the prime contract?
18   MR. CRUNK: Objection, outside the
19   scope, vague and ambiguous, irrelevant.
20   A.  The subcontractor needs to know what it's
21   going to cost to build it so he better have some
22   sort of idea what it's going to cost before he

Page 73

1    proposes it to the government.
2    Q.  When the subcontractor presents the
3    proposal to the government does that proposal
4    include detailed information about the process
5    synthesizing the ASIC?
6    MR. CRUNK: Objection, outside the
7    scope, vague and ambiguous, irrelevant.
8    A.  Aeroflex would never know that.  We would
9    never be engaged or involved in that process.
10   Q.  So the subcontractor comes to Aeroflex and
11   gets a quotation, correct, in the typical flow?
12   MR. CRUNK: Objection, outside the
13   scope, vague and ambiguous, asked and
14   answered.
15   A.  Yes.
16   Q.  And then the subcontractor is either
17   awarded the contract or not and then they come
18   back to Aeroflex and accept the quotation and
19   execute a contract; is that correct?
20   MR. CRUNK: Objection.  Vague and
21   ambiguous, asked and answered, outside the
22   scope.

19 (Pages 70 to 73)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 74

1    A.  Yes.
2    Q.  Does the or do the quotations that
3  Aeroflex provides to government contractors
4  typically detail the tools used for synthesis?
5         MR. CRUNK:  Objection, outside the
6      scope, vague and ambiguous.
7    A.  I would say we typically identify the
8  design flow that will be used.  Depends on the
9  type of RFQ or proposal we get from the customer
10 as to how much detail and the tool suite that's
11 defined.
12        THE VIDEOGRAPHER:  We're off the record
13     at 11:19 a.m.
14     (Brief pause in the proceedings.)
15        THE VIDEOGRAPHER:  We're back on the
16     record at 11:29 a.m.
17 BY MS. BARBISCH:
18    Q.  So before we broke we were talking about
19 the government subcontractors come to Aeroflex for
20 quote and then at some point later the government
21 contractor will come back to Aeroflex to finalize
22 the agreement.  When that agreement is finalized

Page 75

1  how is the agreement memorialized?
2         MR. CRUNK:  Objection, misstates prior
3      testimony, vague and ambiguous.
4    A.  Can you define memorialize.
5         MR. CRUNK:  And outside the scope.
6    Q.  Recorded.  There's a quotation and then an
7  agreement.  Do they just accept the quotation,
8  what is the process for finalizing that agreement?
9         MR. CRUNK:  Objection, vague and
10     ambiguous, outside the scope, misstates prior
11     testimony.
12    A.  Customer will send the purchase order with
13 an acknowledgement and we acknowledge it and then
14 we put the put the purchase order, the quotation
15 and other supporting documentation into a purchase
16 order file and that starts the process.
17    Q.  And the initial purchase order
18 acknowledges the quotation and specifies which
19 option they're selecting from the quotation; is
20 that correct?
21        MR. CRUNK:  Objection, vague and
22     ambiguous, outside the scope.

Page 76

1    A.  Yes.
2    Q.  You just testified there is a purchase
3  order file, what is a purchase order file?
4    A.  Basically doc -- or gathers the customer's
5  purchase order, our quotation, we do an internal
6  review of those two documents, and run it --
7  review it by the manufacturing organization to
8  make sure they can build it in compliance with the
9  purchase order and the quotation.  And then we
10 enter it into our manufacturing system to record
11 the steps to build the part.
12    Q.  What do you mean by manufacturing system?
13        MR. CRUNK:  Objection, it's vague and
14     ambiguous, outside the scope.
15    A.  We have a, what we call visual
16 manufacturing work in process tracking system.
17    Q.  Do requirements go into this system or is
18 it merely time lines and -- what is in the system?
19        MR. CRUNK:  Objection, compound, vague
20     and ambiguous, outside the scope.
21    A.  The system primarily consists of the line
22 items from the customer's purchase order are

Page 77

1  entered into this system so we track quantities,
2  delivery dates according to the customer's
3  contract, the price.
4    Q.  Does the tracking system have a name?
5         MR. CRUNK:  Objection, vague and
6      ambiguous.
7    A.  Visual manufacturing.
8    Q.  Are specific product requirements stored
9  in the visual manufacturing system?
10        MR. CRUNK:  Objection, vague and
11     ambiguous, outside the scope.
12    Q.  I'll clarify, specific product
13 requirements with regard to RTL or synthesis
14 scripts or design requirements that go to the
15 functionality of the ASIC rather than the physical
16 characteristics?
17        MR. CRUNK:  Objection, outside the
18     scope, vague and ambiguous.
19    A.  No.
20    Q.  Going back to the purchase order file, are
21 supplemental purchases such as the one we've seen
22 for the KD24A stored in that purchase order file?

20 (Pages 74 to 77)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 78

1          MR. CRUNK:  Objection, vague and
2      ambiguous, outside the scope, misstates prior
3      testimony, lacks foundation, assumes facts
4      not in evidence.
5      A.   Original purchase orders start a new PO
6  file.
7      Q.   If a government contractor wants to order
8  additional ASICs that were initially manufactured
9  under a different purchase order they would need
10 to do a second purchase order; is that correct?
11         MR. CRUNK:  Objection, vague and
12     ambiguous, incomplete hypothetical,
13     irrelevant, outside the scope, calls for
14     speculation.
15     A.   I don't know.
16     Q.   How would a government contractor order
17 additional ASICs that weren't covered under the
18 initial purchase order?
19         MR. CRUNK:  Objection, vague and
20     ambiguous, outside the scope.
21     A.   I don't know.
22     Q.   Exhibit 656 is a purchase order for the

Page 79

1  KD24A and you testified this is not the initial
2  purchase order; isn't that correct?
3          MR. CRUNK:  Objection, outside the
4      scope, vague and ambiguous, misstates prior
5      testimony, lacks foundation, assumes facts
6      not in evidence.
7      A.   That's my belief.
8      Q.   Is it your understanding that this
9  purchase order, for example, the KD24A,
10 Exhibit 656, would go into the same purchase order
11 file as all other purchase orders for the KD24A?
12         MR. CRUNK:  Objection, vague and
13     ambiguous, outside the scope, assumes facts
14     not in evidence, lacks foundation.
15     A.   I don't know.
16     Q.   Who would know?
17         MR. CRUNK:  Same objection, calls for
18     speculation.
19     A.   You would have -- I don't know actually.
20     Q.   Are the purchase order files kept in one
21 central location at Aeroflex Colorado Springs?
22         MR. CRUNK:  Objection, vague and

Page 80

1      ambiguous, outside the scope.
2      A.   Yes.
3      Q.   Is there a person who manages that central
4  location?
5          MR. CRUNK:  Same objections.
6      A.   Yes.
7      Q.   Who is that person?
8          MR. CRUNK:  Same objection.
9      A.   Sharon Kent.
10     Q.   What is Sharon Kent's title?
11         MR. CRUNK:  Objection.  Calls for
12     speculation, outside the scope.
13     A.   I don't know.
14     Q.   Do you know if Sharon Kent is authorized
15 to entered into contract with Aeroflex?
16         MR. CRUNK:  Objection, vague and
17     ambiguous, outside the scope, calls for
18     speculation.
19     A.   No, she is not.
20     Q.   Is her role, would you characterize her
21 role as more administrative in nature?
22         MR. CRUNK:  Objection, vague and

Page 81

1      ambiguous, outside the scope, calls for
2      speculation.
3      A.   Yes.
4      Q.   Earlier when you referred to purchase
5  order files, do you know if every purchase order
6  is placed into a purchase order file?
7          MR. CRUNK:  Objection, vague and
8      ambiguous, outside the scope.
9      A.   Yes.
10     Q.   And you are unclear as to whether
11 subsequent purchase orders for the same ASIC are
12 in the same file or a different file; is that
13 correct?
14         MR. CRUNK:  Objection, vague and
15     ambiguous, outside the scope, misstates prior
16     testimony.
17     A.   That is correct.
18     Q.   How are the purchase order files labeled
19 or identified?
20         MR. CRUNK:  Objection, vague and
21     ambiguous, outside the scope, assume facts
22     not in evidence.

21 (Pages 78 to 81)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 82

1    A.   Aeroflex assigns a purchase order number
2  corresponding to a customer purchase order.
3    Q.   Are these files organized by customer?
4        MR. CRUNK:  Objection, vague and
5        ambiguous, outside the scope, calls for
6        speculation.
7    A.   A purchase order number is assigned
8  sequentially to a purchase order.
9    Q.   Are the files kept electronically?
10       MR. CRUNK:  Objection, vague and
11       ambiguous, outside the scope, calls for
12       speculation.
13   A.   Well, I guess the answer is they may be
14  received electronically, but we store them in hard
15  copy.
16   Q.   So I'm getting a picture with a big file
17  room with just a bunch of files in it, is that
18  correct, is that how the room is set up?
19       MR. CRUNK:  Objection, vague and
20       ambiguous, outside the scope, calls for
21       speculation.
22   A.   Yes.

Page 83

1    Q.   Are the files shelved in numerical order
2  by purchase number?
3        MR. CRUNK:  Same objections.
4    A.   No.
5    Q.   How are the files shelfed?
6        MR. CRUNK:  Same objections.
7    A.   By customer name.
8    Q.   So if you wanted to, for example, pull all
9  the Boeing files you would go to the Boeing
10  section and they would be organized there by
11  purchase order number; is that correct?
12       MR. CRUNK:  Objection, vague and
13       ambiguous, outside the scope, misstates prior
14       testimony, calls for speculation.
15   A.   Yes.
16   Q.   For the KC01 you said that we would need
17  to look at the individual customer in order to
18  determine if it was a government ASIC or not in
19  that instance; is that correct?
20       MR. CRUNK:  Objection, misstates prior
21       testimony.
22   A.   Yes.

Page 84

1    Q.   Does that mean that individual customers
2  are designated as government contractors?
3        MR. CRUNK:  Objection, vague and
4        ambiguous.
5    A.   Repeat the question, please.
6    Q.   Does that mean that individual customers
7  are designated as government contractors?
8        MR. CRUNK:  Objection, vague and
9        ambiguous, outside the scope, calls for
10       speculation.
11   A.   No.
12   Q.   So for an individual customer some
13  purchases may be government contract purchases and
14  others may not?
15       MR. CRUNK:  Objection, outside the
16       scope, vague and ambiguous.
17   A.   Yes.
18   Q.   Is it typical for a customer to purchase
19  both under government contracts and under
20  contracts that are not government contracts?
21       MR. CRUNK:  Objection, outside the
22       scope, vague and ambiguous.

Page 85

1    A.   You've ask me to speculate and I don't
2  know.
3    Q.   In order to identify the KC01 sales that
4  were made pursuant to a government contract or
5  subcontract, one would have to look at what
6  document in order to ascertain that information?
7        MR. CRUNK:  Objection, outside the
8        scope, vague and ambiguous, assumes facts not
9        in evidence.
10   A.   You'd need to look at each purchase order
11  from the customer.
12   Q.   If, for example, ITT purchased the KC01
13  under multiple purchase orders would you have to
14  assess each purchase order for designation of
15  government contract?
16       MR. CRUNK:  Objection, vague and
17       ambiguous, outside the scope, assumes facts
18       not in evidence, lacks foundation.
19   A.   Yes.
20   Q.   So to clarify a customer could purchase
21  the KC01 and one purchase order be a government
22  contract purchase order and another contract not

22 (Pages 82 to 85)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 86

1    be a government purchase order; is that correct?
2        MR. CRUNK:  Objection, outside the
3    scope, vague and ambiguous.
4    A.  Yes.
5    Q.  Sitting here today do you know of any
6    customers who have purchased the KC01 under both
7    contracts?
8        MR. CRUNK:  Objection, outside the
9    scope, vague and ambiguous.
10   A.  Not specifically.
11       THE VIDEOGRAPHER:  We're off the record
12   at 11:44 a.m.
13       (Off the record.)
14       THE VIDEOGRAPHER:  We're back on the
15   record at 11:45 a.m.  This is the
16   continuation of Peter C. Milliken, beginning
17   of tape number 2.
18   BY MS. BARBISCH:
19   Q.  You testified that in the purchase order
20   file there would also be an internal review, is
21   that correct, or the record of internal review?
22       MR. CRUNK:  Objection, vague and

Page 87

1    ambiguous, misstates prior testimony.
2    A.  Yes.
3    Q.  What does that internal review consist of?
4        MR. CRUNK:  Objection, outside the
5    scope, vague and ambiguous, calls for
6    speculation.
7    A.  The purchase order file will be routed
8    through quality assurance test and product
9    engineering, production control, package
10   development.  And they will review the purchase
11   order file for relevant facts, issues relative to
12   their ability to support the committed activities
13   and for scheduling resources do we have packages
14   to build the product.
15   Q.  In any of those steps is the development
16   of the RTL assessed?
17       MR. CRUNK:  Objection, vague and
18   ambiguous, outside the scope.
19   A.  No.
20   Q.  In any of those steps is the synthesis of
21   the ASIC assessed?
22       MR. CRUNK:  Objection, vague and

Page 88

1    ambiguous, outside the scope.
2    A.  No.
3    Q.  If Aeroflex is developing the RTL for ASIC
4    in house who assesses that development process for
5    purposes of scheduling?
6        MR. CRUNK:  Objection, outside the
7    scope, vague and ambiguous.
8    A.  Either the product line manager or program
9    manager.
10   Q.  Did you say or program manager?
11   A.  Um-hmm.
12   Q.  Is that assessment done after this
13   internal review?
14       MR. CRUNK:  Objection, outside the
15   scope, vague and ambiguous.
16   A.  No.
17   Q.  When is that assessment done?
18       MR. CRUNK:  Same objections.
19   A.  During the proposal process.
20   Q.  Prior to issuing a quotation does Aeroflex
21   get a written request for proposal or some other
22   written documentation that initiates the quotation

Page 89

1    process?
2        MR. CRUNK:  Objection, outside the
3    scope, vague and ambiguous, assumes facts not
4    in evidence, mischaracterizes prior
5    testimony.
6    A.  Yes.
7    Q.  Does that request for proposal or other
8    written documentation also get stored in the
9    purchase order file?
10       MR. CRUNK:  Same objection.
11   A.  No.
12   Q.  Does that information get stored anywhere?
13       MR. CRUNK:  Objection, outside the
14   scope, vague and ambiguous.
15   A.  I don't know.
16   Q.  Do you know who would know?
17       MR. CRUNK:  Same objections, also
18   speculation.
19   A.  Product client manager, program manager,
20   whoever was involved in the bidding process.
21   Q.  Does Aeroflex have any policies with
22   regard to storing documents relating to the

23 (Pages 86 to 89)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 90

1  bidding process?
2       MR. CRUNK:  Objection, outside the
3    scope, vague and ambiguous.
4  A.  Yes.
5  Q.  What is that policy or policies?
6       MR. CRUNK:  Same objections.
7  A.  Anything having to do with the financial
8  roll-up or analysis of what it was going to take
9  to do the work needs to be stored and validated
10 and contrasted against ultimately what is the
11 final purchase order received from the customer.
12 Q.  Is that the responsibility of the product
13 manager or program manager?
14      MR. CRUNK:  Objection, outside the
15   scope, vague and ambiguous.
16 A.  Yes.
17 Q.  Is there any oversight from the financial
18 department of Aeroflex in this process?
19      MR. CRUNK:  Objection, vague and
20   ambiguous, outside the scope.
21 A.  Yes.
22 Q.  Who is responsible for that oversight?

Page 91

1       MR. CRUNK:  Same objections.
2  A.  Gentleman by the name of Rich Bruder, he
3  is our divisional CFO.
4  Q.  Is that B-R-U-D-E-R?
5  A.  Yes.
6  Q.  Does Rich Bruder report to the Aeroflex,
7  Inc., CFO?
8       MR. CRUNK:  Objection, outside the
9    scope, vague and ambiguous.
10 A.  He has reporting responsibilities to the
11 Aeroflex, Incorporated, CFO, but his direct report
12 is to the general manager and vice president of
13 Aeroflex Colorado Springs.
14 Q.  Do you know the -- or how would you
15 characterize the level of involvement that Rich
16 Bruder has over the financial assessments in the
17 bid price to the actual price of the developed
18 ASIC?
19      MR. CRUNK:  Objection, vague and
20   ambiguous, outside the scope, calls for
21   speculation.
22 A.  Rich provides the basic costs that are

Page 92

1  used in cost pricing data that are used to roll up
2  bid packages, labor rates, overhead rates, those
3  come from finance.  And he certifies that we use
4  the correct, the most current and correct rates in
5  those financial analyses.
6  Q.  Does Aeroflex have a policy on how a
7  product manager or program manager would store the
8  documents received or generated from the bid
9  process?
10      MR. CRUNK:  Objection, outside the
11   scope, vague and ambiguous.
12 A.  Aeroflex has a standard document retention
13 policy that defines what types of documents need
14 to be retained and for how long.
15 Q.  Does the length of retention depend on the
16 type of document?
17      MR. CRUNK:  Objection, outside the
18   scope, vague and ambiguous.
19 A.  Yes.
20 Q.  Do you know for contracting proposal
21 bid-related data, how long that information must
22 be stored?

Page 93

1       MR. CRUNK:  Same objections.
2  A.  Not off the top of my head.
3  Q.  Do you know if the contracting request for
4  proposal and bid related data was produced in
5  connection with this litigation?
6       MR. CRUNK:  Objection, outside the
7    scope, calls for speculation, vague and
8    ambiguous.
9  A.  I don't know.
10 Q.  Is each program manager or project manager
11 allowed to store these files as they wish on their
12 system or is there a standard naming convention
13 for bid proposals and contracting requests?
14      MR. CRUNK:  Objection, outside the
15   scope, vague and ambiguous, compound, and it
16   assumes facts not in evidence.
17 A.  Because there's no contractual or legal
18 requirement tied to the bidding process it's up to
19 the individual to be flexible.  Her only real
20 obligation is to store contractual commitments.
21 Q.  Those contractual commitments would be in
22 the purchase order file, wouldn't they?

24 (Pages 90 to 93)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III      June 7, 2006

Page 94

1    A.  Yes.
2    Q.  If you'll turn your attention to
3  Exhibit 657 which is the customer contractor
4  requirements for the satellite program which was
5  identified on Ms. De Mory's declaration as being
6  the corresponding contract provisions for the
7  KD24A.
8    A.  Um-hmm.
9    Q.  My first question to you is the effective
10  date on the top of this document is 8/22/05 but
11  the purchase order date is 9/15/2004.
12        MR. CRUNK:  Objection, outside the
13    scope, vague and ambiguous, assumes facts not
14    in evidence, lacks foundation.
15        MS. BARBISCH:  I don't think I asked a
16    question yet.
17        MR. CRUNK:  You've been characterizing
18    this document for quite a while.  I want to
19    make it clear we're not necessarily agreeing
20    with the characterization of the document.
21        MS. BARBISCH:  You're not necessarily
22    agreeing with the characterization of the

Page 95

1    document as what?
2        MR. CRUNK:  As what you've been
3    characterizing.
4    Q.  Do you know if there is an earlier version
5  of this document that would have been effective as
6  of the purchase order date?
7        MR. CRUNK:  Objection, outside the
8    scope, vague and ambiguous, assumes facts not
9    in evidence, lacks foundation.
10    A.  I don't know.
11    Q.  On the second page of Exhibit 656 the
12  purchase order ends in Bates number 342 line item
13  number 1, the quality attachments incorporated by
14  reference, reference a contract number which
15  appears to be identical to the contract number on
16  the customer contract requirements.  Do you have
17  any reason to believe that the customer contract
18  requirements for the KD24A are not an earlier or
19  same version of this customer contract requirement
20  document?
21        MR. CRUNK:  Objection, vague and
22    ambiguous, outside the scope, lacks

Page 96

1        foundation and assumes facts not in evidence,
2    compound.
3    A.  I can't speculate on the information I've
4  got, I don't know.
5    Q.  You agree that the -- strike that.  Do you
6  know what the gapfiller satellite program is?
7        MR. CRUNK:  Objection, outside the
8    scope, vague and ambiguous.
9    A.  It is a government satellite program.
10    Q.  Do you know if the KD24A was developed in
11  conjunction with that program?
12        MR. CRUNK:  Same objections.
13    A.  Yes.
14    Q.  Were any other government ASICs from the
15  declaration at Paragraph 3 developed in
16  conjunction with that program?
17        MR. CRUNK:  I'm sorry, which declaration
18    are we looking at?
19        MS. BARBISCH:  Exhibit 651.
20        MR. CRUNK:  What's the question again?
21    Q.  Were any other government ASICs from
22  Mr. Milliken's declaration at Paragraph 3

Page 97

1  developed in conjunction with the gapfiller
2  satellite program?
3        MR. CRUNK:  Objection, vague and
4    ambiguous, outside the scope.
5    A.  Yes.
6    Q.  Can you identify those ASICs?
7        MR. CRUNK:  Same objection.
8    A.  I believe it was the KD24, 25, and 26 but
9  the KD25 never, was never produced.
10    Q.  Do you know why that is?
11        MR. CRUNK:  Objection, outside the
12    scope, vague and ambiguous.
13    A.  Customer decided they didn't need it.
14    Q.  Do you know if the KD24, 25, and 26 were
15  all developed as a result of the same bid process?
16        MR. CRUNK:  Objection, outside the
17    scope, vague and ambiguous, calls for
18    speculation.
19    A.  Yes, they were bid as a package deal.
20    Q.  So sitting here today you can't confirm
21  that Exhibit 657, the customer contracts
22  requirement is in fact the customer contract

25 (Pages 94 to 97)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 98

1    requirement for the KD24A; is that correct?
2         MR. CRUNK: Objection, outside the
3    scope, vague and ambiguous, assumes facts not
4    in evidence, lacks foundation.
5    A.  No.
6         MS. BARBISCH:  Do you want to break for
7    lunch?
8         THE VIDEOGRAPHER:  We're off the record
9    at 12:03 p.m.
10        (Michael Weinstein has joined the
11        deposition.)
12        (Brief pause in the proceedings for
13        lunch.)
14        THE VIDEOGRAPHER:  We're back on the
15    record at 1:14 p.m.
16   BY MS. BARBISCH:
17    Q.  Before we broke we were talking about the
18   contracting process and requests for proposals,
19   when Aeroflex develops the RTL for an ASIC
20   pursuant to a government contract or subcontract,
21   how does Aeroflex receive the specifications for
22   the RTL?

Page 99

1         MR. CRUNK:  Objection, vague and
2         ambiguous, outside the scope, assumes facts
3         not in evidence.
4    A.  I guess I don't understand the question.
5    Q.  Do the government contractors give
6    Aeroflex any design requirements for the ASICs
7    when Aeroflex is developing the RTL in-house?
8         MR. CRUNK:  Objection, outside the
9         scope, vague and ambiguous.
10   A.  You tied that to a government contract
11   versus RTLs.  I guess I don't know the context of
12   your question.
13   Q.  For an ASIC pursuant to a government
14   contract, isn't it true that sometimes Aeroflex
15   will develop RTL in-house?
16        MR. CRUNK:  Objection, vague and
17        ambiguous, outside the scope.
18   A.  To my knowledge we haven't developed the
19   RTL for government contract.
20   Q.  So for all the government ASICs the RTL
21   was provided to Aeroflex?
22        MR. CRUNK:  Objection, outside the scope

Page 100

1         vague and ambiguous, calls for speculation.
2    A.  Yes.
3    Q.  When the government contractor enters into
4    an agreement with Aeroflex how are the
5    requirements for the delivery of that RTL defined?
6         MR. CRUNK:  Objection, vague and
7         ambiguous, outside the scope, asked and
8         answered.
9    A.  In our quotations to the customers we
10   define basically three deliverables, the RTL, the
11   scripts necessary for synthesizing the RTL and a
12   basically I/O pin-list.
13   Q.  Those are three deliverables that the
14   government contractor must deliver to Aeroflex?
15        MR. CRUNK:  Objection, outside the
16        scope, vague and ambiguous.
17   A.  Yes.
18   Q.  In those quotations are those deliverables
19   defined by date?
20        MR. CRUNK:  Objection, outside the
21        scope, vague and ambiguous.
22   A.  No.

Page 101

1    Q.  So Aeroflex defines the deliverables, not
2    the government contractor; is that correct?
3         MR. CRUNK:  Objection, outside the
4         scope, vague and ambiguous.
5    A.  Depends on the contract.
6    Q.  When you say contract do you mean the
7    quote, it depends on the quote or it depends on
8    the contract?
9         MR. CRUNK:  Objection, vague and
10        ambiguous, asked and answered.
11   A.  Depends on the contract.
12   Q.  So there's a contract before the
13   quotation?
14        MR. CRUNK:  Objection, vague and
15        ambiguous, calls for legal conclusion.
16   A.  I may quote one thing and the customer may
17   tell me this is what he's going to give me.
18   Q.  But the quotation will have the three
19   deliverables and then the customer will either
20   agree to that or modify that in the purchase order
21   accepting that quotation; is that correct?
22        MR. CRUNK:  Objection, outside the

26 (Pages 98 to 101)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 102

1    scope, vague and ambiguous.
2    A.  Yes.
3    Q.  For the RTL portion of that deliverable,
4  can you give me an example of what would be stated
5  in the quotation?
6        MR. CRUNK:  Objection, outside the
7    scope, vague and ambiguous.
8    A.  Essentially what I told you which is they
9  would provide an RTL netlist that is
10  synthesizeable to Aeroflex's library, the scripts
11  necessary at least to have a first cut at
12  synthesizing the design and what we call a I/O
13  seed file or package pin-list file that tells how
14  the signals come out to a package.
15    Q.  The quotation is kept at a high level and
16  doesn't go into the detail of the contents of the
17  RTL; is that correct?
18        MR. CRUNK:  Objection, vague and
19    ambiguous, outside the scope.
20    A.  Yes.
21    Q.  Does the government contractor provide the
22  RTL to Aeroflex directly or does a third party

Page 103

1  provide the RTL to Aeroflex?
2        MR. CRUNK:  Objection, outside the
3    scope, vague and ambiguous, assumes facts not
4    in evidence.
5    A.  That would be up to the customer.
6    Q.  If, for example, Boeing had a third party
7  create the RTL and synthesis scripts does Aeroflex
8  interact directly with that third party?
9        MR. CRUNK:  Objection, outside the
10    scope, vague and ambiguous, calls for
11    speculation and incomplete hypothetical.
12    A.  In the case of Boeing, no.
13    Q.  For any of the other government
14  contractors would be possible for Aeroflex to
15  interact directly with that third party?
16        MR. CRUNK:  Same objections.
17    A.  Possible.
18    Q.  Do you know of any ASICs for which
19  Aeroflex worked directly with the third party who
20  wrote the RTL in connection with the government
21  contract?
22        MR. CRUNK:  Objection, outside the

Page 104

1    scope, vague and ambiguous.
2    A.  No.
3    Q.  Do you think it's likely that Aeroflex
4  worked directly with any third parties who wrote
5  RTL or synthesis scripts in conjunction with
6  government contracts?
7        MR. CRUNK:  Objection, vague and
8    ambiguous, outside the scope, calls for
9    speculation.
10    A.  I don't know.
11        (Exhibit 658 marked.)
12  BY MS. BARBISCH:
13    Q.  I'm handing you what has been marked as
14  Exhibit 658.  This is Aeroflex, Inc., Response to
15  Ricoh's Third Set of Interrogatories.  Is your
16  copy Aeroflex Colorado Springs?
17    A.  This say Aeroflex, Inc.
18    Q.  Aeroflex, Inc.'s, responses dated May 30,
19  2006.  Have you ever seen this document before?
20        MR. CRUNK:  Objection, attorney/client
21    privilege and work product.
22        You can answer to the extent you don't

Page 105

1    reveal the contents of discussions with your
2    attorneys or you feel work you've done in
3    conjunction with your attorneys.
4    A.  I don't believe I've seen this final
5  version.
6    Q.  Were you consulted in responding to these
7  interrogatories?
8        MR. CRUNK:  Objection, attorney/client
9    privilege, work product protection.
10        You can answer to the extent you do not
11    disclose the content of your communications
12    with your attorneys or the work your
13    attorneys have asked you to do.
14    A.  Yes.
15    Q.  Turning your attention to response to
16  interrogatory number 38 on page 6.
17    A.  Thirty-eight on page 6?
18    Q.  Yes.
19    A.  Okay, it starts on 5.
20    Q.  Yes, starting on 5 the responses on 6 the
21  interrogatory states, set forth all facts and
22  identify all documents for which Aeroflex bases

27 (Pages 102 to 105)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 106

1   its sixth affirmative defense authorization and
2   consent.
3      A.  Okay.
4      Q.  In its amended answer in counterclaims
5   filed April 7, 2006 including the identification
6   of each individual having relevant information
7   thereof.  Turning to the response to interrogatory
8   you are listed as being knowledgeable about the
9   facts responsive to this request; is that correct?
10         MR. CRUNK:  Objection, the document
11      speaks for itself.
12      A.  Yes.
13      Q.  No one else is listed, does that mean that
14   no one else has relevant information relating to
15   Aeroflex's authorization and consent defense?
16         MR. CRUNK:  Objection, outside the
17      scope, vague and ambiguous, attorney/client
18      privilege, work product privilege.
19         To the extent your answer would reveal
20      the contents of discussions with your
21      attorneys or work that your attorneys have
22      instructed you or others to do, I instruct

Page 107

1      you not to answer.
2      A.  Client/attorney privilege.
3         MR. CRUNK:  Also object to it as calling
4      for a legal conclusion and speculation.
5      Q.  Outside of your conversation with
6   attorneys from the multiple years you have worked
7   at Aeroflex do you have any basis for knowing if
8   anybody else would have knowledge surrounding
9   authorization and consent?
10         MR. CRUNK:  Objection, vague and
11      ambiguous, calls for legal conclusion, calls
12      for speculation.  And again, attorney/client
13      privilege, work product protection.
14         You can answer to the extent you do not
15      reveal the contents of the discussion you or
16      others have had with your attorneys or the
17      attorneys have had you or others do.
18      A.  Client/attorney privilege.
19      Q.  Prior to raising this defense
20   authorization and consent Aeroflex had entered
21   into government contracts containing authorization
22   and consent clauses; isn't that correct?

Page 108

1         MR. CRUNK:  Objection, calls for
2      speculation, outside the scope, vague and
3      ambiguous and calls for legal conclusion.
4      A.  Yes.
5      Q.  Who within Aeroflex would have knowledge
6   of contracts containing authorization and consent
7   clauses other than yourself?
8         MR. CRUNK:  Again, I'll object on it's
9      outside the scope, it's vague and ambiguous
10      and attorney/client privilege, work product
11      protection.
12         To the extent you can answer that
13      without revealing the contents of discussion
14      you or others have had with attorneys on this
15      case or other cases or without revealing work
16      that attorneys have instructed you or others
17      to do on this case or other cases, you may do
18      so.  Otherwise I instruct you not to answer.
19      A.  Client/attorney privilege.
20      Q.  So you have no independent knowledge of
21   government contracts or who would have knowledge
22   of government contracts other than in relation to

Page 109

1   this litigation; is that what you're testifying
2   to?
3         MR. CRUNK:  Objection, vague and
4      ambiguous, outside the scope, compound, calls
5      for speculation, asked and answered.
6      A.  Client/attorney privilege.
7      Q.  You're testifying you had no knowledge
8   before this case began as to government contracts
9   and how they relate to Aeroflex and who was
10   involved in that government contracting process?
11         MR. CRUNK:  Objection, compound, outside
12      the scope, vague and ambiguous, misstates his
13      prior testimony.
14      A.  Ask the question again.
15      Q.  Are you testifying that you had no
16   knowledge before this case began as to government
17   contracts and how they relate to Aeroflex and who
18   was involved in that government contracting
19   process?
20         MR. CRUNK:  Same objections and calls
21      for legal conclusion.
22      A.  No.

28 (Pages 106 to 109)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 110

1    Q.  So before this case began at that time to
2  your knowledge did anyone else at Aeroflex have
3  information relating to government contracts and
4  authorization and consent?
5        MR. CRUNK:  Objection, outside the
6    scope, vague and ambiguous, calls for
7    speculation and again attorney/client
8    privilege, work product protection.
9        To the extent you can answer without
10   revealing the contents of discussion that you
11   or others have had with your attorneys at any
12   time or without revealing the work that
13   attorneys have asked you or others to do at
14   any time, I instruct you not to answer.
15   Otherwise you can answer.
16   A.  Attorney/client privilege.
17   Q.  Didn't you just testify before this case
18  began you did have knowledge as to government
19  contracts and authorization and consent clauses
20  and who else would have information on those
21  topics?
22        MR. CRUNK:  Objection, outside the

Page 111

1    scope, vague and ambiguous, asked and
2    answered.
3    A.  I don't believe that was the question I
4    was asked.
5        MR. CRUNK:  Misstates his prior
6    testimony.
7    Q.  I asked if you were testifying that you
8  had no knowledge before this case began as to
9  government contracts and how they relate to
10  Aeroflex and who was involved in that government
11  contracting process and you said no.  What did you
12  mean by your answer?
13        MR. CRUNK:  Objection, vague and
14   ambiguous, the question was vague, ambiguous,
15   compound, outside the scope, and again
16   attorney/client protection, work product
17   protection.
18        To the extent you can answer without
19   revealing the content of communications that
20   you or others have had with the attorneys at
21   any time, or without revealing the work you
22   or others have been instructed to do by

Page 112

1    attorneys, you can answer.  Otherwise I
2    instruct you not to answer.
3    A.  I answered the question that was asked.
4    Q.  Right now I'm asking you about before this
5  case began, so before there were any attorneys
6  involved in this case, before there was any
7  attorney work product, before there was any
8  attorney/client privilege, at that point do you
9  have any knowledge of anyone else at Aeroflex who
10  has knowledge as to government contracts and their
11  authorization and consent clauses?
12        MR. CRUNK:  Again, objection.  Outside
13   the scope, vague and ambiguous, irrelevant,
14   attorney/client privilege, work product
15   protection.
16        To the extent can you answer without
17   revealing contents of discussions you or
18   others have had with your attorneys at any
19   time or without revealing the work that
20   attorneys have asked you to do at any time
21   you may do so.  Otherwise I instruct you not
22   to answer.

Page 113

1    A.  Attorney/client privilege.
2    Q.  What is your role at Aeroflex?
3        MR. CRUNK:  Objection, outside the
4    scope, vague and ambiguous, asked and
5    answered.
6    A.  I am the product line manager for the
7  semi-custom products and services.
8    Q.  And in your, how long have you been in
9  that position --
10        MR. CRUNK:  Objection.
11   Q.  -- product line manager for the
12  semi-custom products and services?
13        MR. CRUNK:  Objection, asked and
14   answered, outside the scope.
15   A.  Too long.  More than five years but I
16  don't know exactly how many.
17   Q.  In your capacity as product line manager
18  for the semi-custom products and services have you
19  had any oversight on ASICs that were developed
20  pursuant to a government contract?
21        MR. CRUNK:  Objection, outside the
22   scope, vague and ambiguous.

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 114

1    A.  Yes.
2    Q.  Which of the ASICs on your declaration,
3  Exhibit 651, would you characterize as semi-custom
4  products that also fit our definition of
5  government ASICs?
6        MR. CRUNK:  Objection, outside the
7     scope, vague and ambiguous, calls for
8     speculation.
9    A.  I guess items 3, 4, 5, -- 3 through 23 and
10  then number 25.
11    Q.  Is number 25 a semi-custom product?
12        MR. CRUNK:  Objection, outside the
13     scope, vague and ambiguous, asked and
14     answered.
15    A.  It was built on one of my ASIC platforms.
16    Q.  Is that the HK48?
17        MR. CRUNK:  Objection, vague and
18     ambiguous.
19    A.  That was a customer ASIC.
20    Q.  Which ASIC platform was the KC01 built on?
21        MR. CRUNK:  Objection, outside the
22     scope, vague and ambiguous, assumes facts not

Page 115

1     in evidence.
2    A.  The KC platform.
3    Q.  And of the these ASICs you've identified
4  3 through 23 and 25, what is the approximate
5  earliest date of development of those ASICs?
6        MR. CRUNK:  Objection, outside the
7     scope, vague and ambiguous, and calls for
8     speculation and compound.
9    A.  Let's see the earliest, the earliest that
10  could have been developed is 1996, 1997.
11    Q.  Were there ASICs developed for the
12  government before that time?
13        MR. CRUNK:  Objection, irrelevant,
14     outside the scope, vague and ambiguous, calls
15     for speculation.
16    A.  Yes.
17    Q.  Do you have any understanding of when the
18  first or earliest date with which Aeroflex
19  developed an ASIC for the government?
20        MR. CRUNK:  Objection, outside the
21     scope, vague and ambiguous, irrelevant, calls
22     for speculation.

Page 116

1    A.  Well, Aeroflex has been in the business
2  since 1980 -- 1980, so we could have engaged in
3  government contracts as early as 1980.
4    Q.  If you wanted to ascertain facts related
5  to government contracts and these ASICs from the
6  late '90s who would you ask at Aeroflex to
7  determine that information?
8        MR. CRUNK:  Objection, outside the
9     scope, vague and ambiguous and
10     attorney/client privilege, work product
11     protection.
12        To the extent you can answer without
13     revealing discussions between you and your
14     attorneys or without revealing work that was
15     done by you at the request of your attorneys
16     you may answer.
17    A.  I don't understand the question.
18    Q.  If you had a question about the government
19  contract that was entered into in the year 2000,
20  say, who would you go to to ask questions about
21  that contract?
22        MR. CRUNK:  Objection, vague and

Page 117

1     ambiguous, outside the scope, assumes facts
2     not in evidence and again attorney/client
3     privilege, work product protection.
4        To the extent you can answer without
5     revealing the contents of discussions you or
6     others have had with attorneys or the work
7     you or others have done for your attorneys
8     you may answer.
9    A.  We don't engage in things specifically --
10  we don't engage in things based on government
11  contract.  We engage in things based on the ASIC.
12  So if you say a government contract flows down and
13  I engage with the customer, I don't engage with
14  them at a contract concept.  We engage at the
15  ASIC, KC01.  If it's tied to a contract that's how
16  I find out it's tied to a contract.  But I engage
17  with the customers as an ASIC.
18    Q.  So if you were engaging with a customer on
19  the KC01 level would you personally review the
20  contracting provisions?
21        MR. CRUNK:  Objection, outside the
22     scope, vague and ambiguous, incomplete

30 (Pages 114 to 117)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 118

1    hypothetical, assumes facts not in evidence.
2    A.  We would review the customer Ts and Cs.
3    Q.  Meaning terms and conditions?
4    A.  Yes.
5    Q.  When you say we who do you mean by we?
6        MR. CRUNK:  Objection, outside the
7    scope, vague and ambiguous.
8    A.  Myself, legal counsel, quality assurance
9    if there were quality assurance clauses in the
10   terms and conditions.
11   Q.  You testified that you engage with the
12   customer on the ASIC level, correct?
13       MR. CRUNK:  Objection, asked and
14   answered.
15   A.  Correct.
16   Q.  Is there anyone other than yourself who
17   can interact with customers on the ASIC level?
18       MR. CRUNK:  Objection, vague and
19   ambiguous, outside the scope, calls for
20   speculation.
21   A.  Any number of individuals.
22   Q.  Is that true with regard to the review of

Page 119

1    the terms and conditions?
2        MR. CRUNK:  Objection, outside the
3    scope, vague and ambiguous, calls for
4    speculation.
5    A.  I thought I answered that question.
6    Q.  Other than legal counsel and the quality
7    assurance does every contract for a government
8    ASIC go through you to review the terms and
9    conditions?
10       MR. CRUNK:  Objection, misstates prior
11   testimony, assumes facts not in evidence,
12   outside the scope, vague and ambiguous, calls
13   for speculation and also attorney/client
14   privilege, work product protection.
15       To the extent you can answer without
16   revealing contents of discussions you had
17   with your attorneys or without revealing the
18   work that you do at the with request of your
19   attorneys you can answer.
20   A.  For ASICs, yes.
21   Q.  With regard to the government ASICs do the
22   government contractors provide any further

Page 120

1    specifications?
2        MR. CRUNK:  Objection, outside the
3    scope.
4    Q.  Other than the purchase orders?
5        MR. CRUNK:  Objection, outside the
6    scope, vague and ambiguous, assumes facts not
7    in evidence and mischaracterizes prior
8    testimony, calls for speculation.
9    A.  Yes.
10   Q.  What kind of specifics do different
11   contractors provide?
12       MR. CRUNK:  Objection, asked and
13   answered, vague and ambiguous, outside the
14   scope.
15   A.  Q clauses, search and reps, system
16   definition, that's the Ts and Cs.  There's any
17   number of documents that they will cite a
18   reference and submit to us that we have to review.
19   Q.  Do the government contractors ever provide
20   specifications that address the synthesis of the
21   RTL provided by the government contractor or a
22   third party acting on their behalf?

Page 121

1        MR. CRUNK:  Objection, vague and
2    ambiguous, outside the scope, calls for
3    speculation.
4    A.  All depends on the contract.
5    Q.  And when you say contract are you
6    referring to the purchase orders and their
7    attachments?
8        MR. CRUNK:  Objection, outside the
9    scope.
10   A.  Yes.
11   Q.  Sitting here today can you give me an
12   example of a specification that addresses
13   synthesis of the RTL?
14       MR. CRUNK:  Objection, outside the
15   scope, vague and ambiguous, calls for
16   speculation.
17   A.  Not off the top of my head.
18   Q.  Is it common for there to be a
19   specification addressing synthesis of the RTL?
20       MR. CRUNK:  Objection, outside the
21   scope, vague and ambiguous, calls for
22   speculation.

31 (Pages 118 to 121)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

|  | Page 122 |
|---|---|

1    A.  Can you repeat the question.
2    Q.  Is it common for there to be a
3  specification addressing synthesis of the RTL?
4        MR. CRUNK:  Objection, vague and
5    ambiguous, outside the scope, calls for
6    speculation.
7    A.  I guess I don't know what specification of
8  RTL means.
9    Q.  When I say specification addressing the
10  synthesis of the RTL, any sort of specification
11  with design compiler or the version of design
12  compiler used or how would you synthesize the
13  ASIC?
14        MR. CRUNK:  Is there a question pending?
15    Q.  So with that definition is it common for
16  there to be a specification addressing synthesis
17  of the RTL?
18        MR. CRUNK:  Objection, outside the
19    scope, vague and ambiguous, calls for
20    speculation.
21    A.  No.
22    Q.  Would you be surprised if there was a

|  | Page 123 |
|---|---|

1  specification within one of these contracts
2  addressing the process of synthesizing RTL?
3        MR. CRUNK:  Objection, vague and
4    ambiguous, outside the scope, calls for
5    speculation.
6    A.  No.
7    Q.  Does the, do government contractors ever
8  provide direction as to the process of
9  synthesizing the RTL?
10        MR. CRUNK:  Objection, vague and
11    ambiguous, outside the scope, calls for
12    speculation, asked and answered.
13    A.  I guess you have to be more specific.
14    Q.  Other than the potential of design
15  compiler being referenced in the quotation that we
16  talked about earlier, do government contractors
17  ever provide any direction as to the use of the
18  synthesis tool in the development of the ASIC?
19        MR. CRUNK:  Objection, outside the
20    scope, vague and ambiguous, asked and
21    answered and calls for speculation.
22    A.  They may provide as we request the, an

|  | Page 124 |
|---|---|

1  initial set of synthesis scripts that define how
2  we are to perform the synthesis.
3    Q.  Are those synthesis scripts design
4  compiler specific?
5        MR. CRUNK:  Objection, outside the
6    scope, vague and ambiguous, asked and
7    answered, calls for speculation.
8    A.  Depends on the customer.
9    Q.  If the synthesis scripts are design
10  compiler specific are they design compiler
11  specific because you have informed the government
12  contractor that you are using design compiler?
13        MR. CRUNK:  Objection, outside the
14    scope, it's vague and ambiguous, calls for
15    speculation.
16    A.  As part of our quoting process we would
17  identify to them the process by which we would --
18  the tools we have, the tools we would use and the
19  design flow we would intend to use and they can
20  either accept or reject our proposal.
21    Q.  So does the quoting process always
22  identify the tools you would use?

|  | Page 125 |
|---|---|

1        MR. CRUNK:  Objection, asked and
2    answered, vague and ambiguous, outside the
3    scope, calls for speculation.
4    A.  They invariably identify Synopsys tools as
5  the design flow.  Do I name specifically design
6  compiler, I can't say 100 percent of the time.
7    Q.  But the quotations always say that you
8  will use Synopsys tools?
9        MR. CRUNK:  Objection, vague and
10    ambiguous, outside the scope, calls for
11    speculation.
12    A.  There will be reference to Synopsys tools
13  but I don't know that we would explicitly list the
14  Synopsys tools.
15    Q.  And your quotations include these
16  references to Synopsys tools because that's the
17  tool you generally use because you're most
18  familiar with; is that correct?
19        MR. CRUNK:  Objection, outside the
20    scope, vague and ambiguous, asked and
21    answered, calls for speculation.
22    A.  It is the tools that Aeroflex has and

32 (Pages 122 to 125)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 126

1   generally that's communicated to our customers.
2       Q.  Does Aeroflex have also Mentor tools?
3           MR. CRUNK:  Objection, vague and
4       ambiguous.
5       A.  We do.
6       Q.  Are those tools capable of performing
7   logic synthesis --
8           MR. CRUNK:  Objection.
9       Q.  For an ASIC?
10          MR. CRUNK:  Same objection.
11      A.  Yes.
12      Q.  Does Aeroflex also have Cadence tools?
13          MR. CRUNK:  Objection, vague and
14      ambiguous.
15      A.  Yes.
16      Q.  Are those tools capable of performing
17  logic synthesis for an ASIC?
18          MR. CRUNK:  Same objection.
19      A.  No.
20      Q.  When you provide a quotation to the
21  government contractor do you provide the option of
22  using the Mentor tools as well as the Synopsys

Page 127

1   tools?
2           MR. CRUNK:  Objection, vague and
3       ambiguous, outside the scope, calls for
4       speculation and asked and answered.
5       A.  I don't know of any case -- it's been the
6   exception other than the rule.  Customers are
7   typically are Synopsys-industry oriented.  The
8   Mentor is not a common industry tool so it's more
9   the exception.  We don't do it very often.
10      Q.  Is it fair to say your quotations would be
11  higher in price if you use, if you base them on
12  the Mentor tools because Aeroflex overhead would
13  be greater?
14          MR. CRUNK:  Objection, vague and
15      ambiguous, outside the scope, incomplete
16      hypothetical, calls for speculation.
17      A.  Typically no unless there's something
18  really unique the customer asks for.  We would
19  quote them the same.
20          (Exhibit 659 marked.)
21  BY MS. BARBISCH:
22      Q.  I'm handing you what has previously been

Page 128

1   marked as Exhibit 134 and Exhibit 659.
2       A.  Okay.
3       Q.  Have you seen Exhibit 659 before?
4       A.  I have.
5       Q.  What is Exhibit 659?
6       A.  It is a roll-up of the margins for the new
7   list of PICs from declaration Exhibit 651 for the
8   new ASICs, entries 26 through 30 on 651, and the
9   addition of the old ASICs that were items
10  1 through 25 I believe to bring them up to date
11  through --
12      Q.  I think it's on the second page.
13      A.  Should be through, yeah, through
14  April 30th.
15      Q.  For the record Exhibit 659 has Bates
16  number AF 284822 through 895.  I know in your
17  previous deposition you went over Exhibit 134 with
18  both Mr. Brothers and Ms. Pitcher.  I wanted to go
19  over the columns on this spread sheet to make sure
20  everything has either stayed the same or if it
21  hasn't that we identify any differences.
22      A.  659?

Page 129

1       Q.  659, yes.  I guess we'll start with the
2   first two pages which appear to be two columns of
3   the first page of the spread sheet.  This first
4   two pages ends in number 822 and 823.  I believe
5   this is the read me tab of the Excel spread sheet
6   that you produced?
7       A.  Yes.
8           MR. CRUNK:  Objection, assumes facts not
9       in evidence and that's it.
10      A.  Yes.
11          MR. CRUNK:  Lacks foundation.
12      Q.  Before we get into this to your knowledge
13  was a native version of Exhibit 134 the prior
14  spread sheet ever produced to Ricoh in this
15  litigation?
16          MR. CRUNK:  Objection, outside the
17      scope, irrelevant, vague and ambiguous, calls
18      for speculation.
19      A.  I don't know, what do you mean by native?
20      Q.  The original Excel document compared to a
21  TIFF.
22          MR. CRUNK:  Same objection, and

33 (Pages 126 to 129)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 130

1    attorney/client privilege, work product
2    protection.
3        To the extent you can answer without
4    divulging communications with your attorney
5    or without divulging work your attorneys have
6    asked you to do, you may answer.
7    A.   Attorney/client privilege.
8        MS. BARBISCH:  Mr. Crunk, at this time
9    I'd like to call for the production of the
10   native version of Exhibit 134.  I believe
11   we've previously requested it and I don't
12   believe we received it yet.
13   Q.   Turning back to the first page which is
14   822, line item 6 says PIC.
15       MR. CRUNK:  We're back on document --
16   exhibit.
17       MS. BARBISCH:  659, yes.
18       MR. CRUNK:  659, thank you.
19   Q.   And column B which is on the next page
20   list of ASIC PIC on quote, old ASIC, end quote,
21   and, quote, new ASIC, end quote, declaration which
22   I'd like for to you confirm is in fact the third

Page 131

1    page of the document which is 824.
2        MR. CRUNK:  Objection, vague and
3        ambiguous, outside the scope.
4    A.   Yes.
5    Q.   And looking at the third page of the PICs
6    page 824, there are, for example, multiple
7    versions of the DA01.  There's an A, B, C, lines
8    2, 3, and 4.  What is the difference between
9    versions A, B, and C of the DA01?
10       MR. CRUNK:  Objection, assumes facts not
11       in evidence.
12   A.   There would have been minor design
13   modifications to make the part work.
14   Q.   So when the fifth letter of the product
15   changes are the ASICs functionally equivalent or
16   intended to be functionally equivalent other than
17   the minor bug that was fixed?
18       MR. CRUNK:  Objection, vague and
19       ambiguous, outside the scope, calls for
20       speculation, compound.
21   A.   I don't know the details of the design
22   iterations, but they were modified because they

Page 132

1    obviously didn't meet the original design intent.
2    Q.   And the design intent does not change from
3    the A, B to C version; is that correct?
4        MR. CRUNK:  Objection, outside the
5        scope, vague and ambiguous, calls for
6        speculation.
7    A.   Not necessarily.  The customer may change
8    the requirements as we produce the first item and
9    say, oh, maybe it meets the requirements at the
10   time but they change the requirements and they
11   want a subtle change.  May be their fault, may be
12   our fault.
13   Q.   So at what point does that subtle change
14   become a big enough that would change the
15   entire product number or PIC number, PIC
16   identification?
17       MR. CRUNK:  Objection, outside the
18       scope, vague and ambiguous, irrelevant, calls
19       for speculation and assumes facts not in
20       evidence.
21   A.   It would be a basic new specification
22   functional requirements document.

Page 133

1    Q.   So, for example, between line 4 and 5 the
2    DA01 and DA02 there would be a new functional
3    requirements document?
4        MR. CRUNK:  Objection, outside the
5        scope, vague and ambiguous, irrelevant.
6    A.   Yes.
7    Q.   And numbers 38 and 39 the RE01A and RE02A,
8    are those the UTCAM?
9    A.   Yes.
10   Q.   So the next page of Exhibit 659 ends of
11   Bates number 825 and I'd like to confirm with you
12   this is in fact the sales journal all ASICs which
13   was described as sales for old ASICs from
14   September 1, 2005 to April 30, 2006 and sales for
15   new ASICs from inception July 2001 through
16   April 30, 2006?
17   A.   Yes.
18   Q.   Do you know if there are any other
19   documents that show sales for the new ASICs?
20       MR. CRUNK:  Objection, outside the
21       scope, vague and ambiguous, calls for
22       speculation.

34 (Pages 130 to 133)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 134

1    A.  Yes.
2    Q.  What are those documents?
3        MR. CRUNK:  Objection, outside the
4    scope, vague and ambiguous, calls for
5    speculation and assumes facts not in
6    evidence.
7    A.  It would be the actual invoice that went
8    to the customer.
9    Q.  Do you know if any sales for the new ASICs
10   that are not detailed in this report from those
11   dates of July 2001 through April 30, 2006?
12       MR. CRUNK:  Objection, vague and
13   ambiguous.
14   A.  This was the complete if you want to call
15   it dump of our visual manufacturing system
16   covering those specific PICs during -- actually in
17   the case of the new ASICs we picked them from
18   inception to current to the end of April.  And in
19   the case of old ASICs we brought all of the
20   missing records to bring them up to currency up to
21   the April 30 to the last date that Exhibit 134 was
22   produced.

Page 135

1    Q.  And Exhibit 134 covered the old ASICs from
2    1997 through September 1, 2005 then?
3        MR. CRUNK:  Objection, outside the scope
4    and asked and answered.
5    A.  Yes.
6    Q.  The sales journal all ASICs appears to
7    have columns A through M.
8        MR. CRUNK:  Is there a question?
9    Q.  I'd like to go through each column and get
10   your identification of those column headers
11   starting at column A the order ID, what does the
12   order ID represent?
13   A.  That is an Aeroflex order entry number or
14   how we enter it into our system, essentially what
15   we call the PO file number.
16   Q.  That number will correspond to the number
17   on the PO file that's in that room that we
18   discussed earlier?
19       MR. CRUNK:  Objection, vague and
20   ambiguous.
21   A.  Yes.
22   Q.  And column B, the customer PO REF?

Page 136

1    A.  I don't know what that is, I can -- it may
2    be the customer's purchase order reference number
3    but I'm not absolutely positive.
4        MR. CRUNK:  Can we take a break.
5        MS. BARBISCH:  Sure.
6        THE VIDEOGRAPHER:  Going off the record
7    at 2:09 p.m.
8        (Mr. Weinstein leaves the deposition
9    room.)
10       THE VIDEOGRAPHER:  We're back on the
11   record at 2:18 p.m.
12       MR. CRUNK:  I believe one the attorneys
13   has left.  Ms. Barbisch?  Mike has left.
14       MS. BARBISCH:  Yes.
15       MR. CRUNK:  You just want that on the
16   record that Mr. Weinstein has left the
17   deposition?
18       MR. CRUNK:  Yes, has left the building,
19   yes.
20   BY MS. BARBISCH:
21   Q.  I believe we were on customer PO REF and
22   you testified it might be the customer purchase

Page 137

1    order reference number but you're not positive; is
2    that correct?
3    A.  (Nodding head.)
4    Q.  What is customer ID?
5    A.  That is a number assigned to -- it's a
6    number assigned to the customer.
7    Q.  That number is assigned by Aeroflex?
8    A.  It is.
9    Q.  And, I can probably guess on this one but
10   customer name?
11   A.  Is the customer.
12   Q.  Does customer name necessarily identify
13   the division of the customer?
14       MR. CRUNK:  Objection, vague and
15   ambiguous.
16   A.  It might identify a division, it also
17   might identify a mailing address which might be
18   unique.
19   Q.  If a company had multiple divisions that
20   contracted with Aeroflex would each division have
21   a separate customer ID or is that a corporatewide?
22       MR. CRUNK:  Objection, outside the

35 (Pages 134 to 137)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 138

1    scope, vague and ambiguous.
2    A.  They would have their own customer ID
3 number.
4    Q.  Turning to page 826 column E, what is part
5 ID?
6    A.  It's supposed to be basically exactly
7 that, the part identification.  In this case the
8 13-digit PIC or some representation of that
9 product.
10    Q.  And is the part ID the item that we need
11 the magic decoder ring to ascertain the meaning of
12 the rest of those digits after the first five?
13       MR. CRUNK:  Objection, vague and
14       ambiguous.
15    A.  That or the miscellaneous reference where
16 again you'll see many cases a replication of the
17 information in the part ID column.  In this case
18 it looks like part ID both for a service indicator
19 as well as a part ID depending on what the
20 activity is that's engaged.  Little inconsistency
21 there.
22       MS. BARBISCH:  Mr. Crunk, I'm going to

Page 139

1    again request that you provide the
2    afore-referenced magic decoder ring that will
3    help us ascertain what all these items mean.
4    I believe we asked for that a couple times
5    now.
6    Q.  The miscellaneous reference column is
7 what?
8    A.  Basically again the product identification
9 code with some additional information indicating
10 whether it's a product or coordinated by a program
11 manager.  Again, you could use your magic decoder
12 ring to ascertain the PIC being supported.
13    Q.  The magic decoder ring that I don't have.
14 The miscellaneous reference, you mentioned service
15 indicator a moment ago, was that in reference to
16 the miscellaneous reference?
17    A.  No, it's relative to the part ID.  It's
18 both, there is some information contained in both
19 those columns.
20    Q.  What is a service indicator?
21    A.  For example, in row 2 you have NRE under
22 row E or column E, then you have under F

Page 140

1 applicable to the DA01A device.  And in this case
2 additional information contained in there that
3 talks about it being Fab NRE and program manager
4 David Kerwin for determining that that's a Fab in
5 this case, some sort a Fab charge.  It's an NRE
6 line item but associated with the DA01A device.
7    Q.  What does NRE stand for?
8    A.  Nonrecurring engineering.
9    Q.  Column G, the part product code, what does
10 that represent?
11    A.  That identifies the product line to which
12 the line item applies.
13    Q.  Does it MIX represent mixed signal?
14    A.  Yes.
15    Q.  What does ASC represent?
16    A.  ASIC.
17    Q.  Are there any other part product codes to
18 your knowledge?
19       MR. CRUNK:  Objection, vague and
20       ambiguous, calls for speculation.
21    A.  There would be CCA, circuit cart assembly,
22 but none of them are listed here for that and SPO

Page 141

1 for standard products.
2    Q.  Do any of the ASICs listed in your product
3 declaration have a part product code of CCA?
4    A.  Actually there might be associated with
5 the UTCAM engine in the board sales, B-O-A-R-D
6 sales.
7    Q.  Is the UTCAM the only ASIC that's declared
8 in your declaration that is sold on a board?
9       MR. CRUNK:  Objection, outside the
10       scope, vague and ambiguous.
11    A.  Yes, by Aeroflex.
12    Q.  The rest of the ASICs with the exception
13 of the UTCAM that are on your declared product
14 list are all sold as individual ASICs; is that
15 correct?
16       MR. CRUNK:  Objection, asked and
17       answered, outside the scope.
18    A.  Yes.
19    Q.  Column H is the invoice ID, what does that
20 represent?
21    A.  That would be the invoice number issued to
22 the customer.

36 (Pages 138 to 141)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 142

1    Q.  How does the invoice number differ from
2  the order number?
3    A.  A customer may place a purchase order with
4  multiple line items, they may have different
5  delivery dates.  Based on delivery date we would
6  issue an invoice based on the date of that
7  delivery or completion of that line item.  You may
8  have multiple invoice numbers for a given purchase
9  order on a contract.
10    Q.  Column I is the invoice date, what does
11  that represent?
12    A.  Invoice date, date of the invoice.
13    Q.  Does Aeroflex capture anywhere the order
14  date?
15        MR. CRUNK:  Objection, outside the
16    scope.
17    Q.  In the individual manufacturing system or
18  otherwise?
19        MR. CRUNK:  Objection, outside the
20    scope.
21    A.  Yes.
22    Q.  Where is that information captured?

Page 143

1        MR. CRUNK:  Same objection.
2    A.  There is a booking date of the order kept
3  and I believe it's in the visual manufacturing
4  system for when we receive the order.
5    Q.  But it wasn't included on this report?
6    A.  No.
7    Q.  Line J is the -- column J is the shipped
8  quantity, what does that represent?
9    A.  Quantity of units shipped against that
10  invoice number.
11    Q.  And for items such at the nonrecurring
12  engineering do they always have a quantity of one?
13    A.  Again, depends on what the purchase order
14  line item says is the deliverable.  So invariably
15  an NRE would typically be a service.  We would
16  deliver one of that service and that would be the
17  entry.
18    Q.  Turning to the next page which ends in 827
19  we have column K line shipped quantity.  What does
20  line shipped quantity represent?
21    A.  Normally that will match the shipped
22  quantity, but if we for some reason had to ship

Page 144

1  that line item short had you an order for 100
2  pieces and could only deliver 75 it will show
3  quantity shipped of 100 and the line shipped
4  quantity would show some debit or adjustment but
5  typically they're identical.
6    Q.  What does line unit price column L
7  represent?
8    A.  That would be the incremental unit cost or
9  price of the line item.
10    Q.  And is amount in column M multiplication
11  of line K times line L -- or column K times column
12  L?
13    A.  Yes, should be.
14    Q.  Is it possible that it's not?
15        MR. CRUNK:  Objection, vague and
16    ambiguous, calls for speculation.
17    A.  Unlikely.
18    Q.  Would that be erroneous information if
19  they didn't match or is there some other instance
20  you can think of where they would not?
21        MR. CRUNK:  Objection, calls for
22    speculation.

Page 145

1    A.  Software, software bug.
2    Q.  Turn to Bates number AF 284849.
3    A.  Okay.
4    Q.  What is this section of the document?
5    A.  This would correspond to on your initial
6  pages 822823 this would correspond to line item 9
7  the margins FY04 05, 06 for the new ASICs, which
8  is the margins for the new ASICs from FY04 through
9  April 30, 2006.
10    Q.  To your knowledge does this document
11  contain all margins for new products YA04, YA13,
12  YB01, DA01, DA02, JW02 for FY04, 05 and 06 through
13  April 2006?
14        MR. CRUNK:  Objection, vague and
15    ambiguous, calls for speculation, outside the
16    scope and asked and answered.
17    A.  Yes.
18    Q.  Again I'd like to go through the columns
19  on this report.  The first column customer order
20  ID, what does that column represent?
21    A.  That would be the customer order number
22  tied to like our product, our PO file numbering

37 (Pages 142 to 145)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III     June 7, 2006

Page 146

1  system.
2  Q.  Is that the same data as is found on
3  column A of the previous report that just said
4  order ID on page 825?
5  A.  Yes.
6  MR. CRUNK:  Object.
7  Q.  Is column B customer ID the same as column
8  C of the previous report at 825?
9  A.  Yes.
10  Q.  Is column C the customer name the same
11  information that's contained in column D of the
12  previous report that also says customer name?
13  A.  Yes.
14  Q.  What is customer order line no, column D?
15  A.  That would be the customer line item
16  number from their purchase order.
17  Q.  Is part ID column E the same as the part
18  ID column E of the previous report?
19  A.  Yes.
20  Q.  And column F is product code, is that the
21  same product code as column G of the previous
22  report of 826?

Page 147

1  A.  Yes.
2  Q.  I'll clarify that column G of the previous
3  report says part product code not just product
4  code.  Turning now to 851 column G says reference,
5  what is reference?
6  A.  Reference is equivalent to your
7  miscellaneous reference in the previous report.
8  Q.  The next column, sales, what does that
9  represent?
10  A.  Sales is the invoice, the sales quantity
11  for that line item.
12  Q.  Sales represent the invoiced amount or the
13  received amount?
14  A.  Invoiced amount.
15  Q.  The next column is material, what does
16  that represent?
17  A.  That would be the material used to
18  manufacture and deliver the product to that line
19  item.
20  Q.  And the labor?
21  A.  The labor used to manufacture or build the
22  product under that line item.

Page 148

1  Q.  Burden is on the next page 852 column L?
2  A.  That would be the overhead applied to the
3  labor for building or manufacturing that line
4  item.
5  Q.  What do you include in overhead?
6  A.  You would have things like quality
7  assurance as an indirect cost center so that goes
8  into overhead, you'd have depreciation of capital
9  equipment goes into overhead, any software that's
10  used goes into overhead, you'll have other
11  miscellaneous materials, parts that are used
12  across a number of products and their cost would
13  be rolled up into an overhead category.
14  Q.  Column M, service?
15  A.  That would be for typically outside
16  services that were additional costs necessary to
17  manufacture that product.
18  Q.  Can give me an example of an outside
19  service.
20  A.  We may do something like a destructive
21  physical analysis and we use an outside house to
22  actually tear apart our parts finished parts, to

Page 149

1  tell them how good the parts are as part of the
2  cost of delivering the product.
3  Q.  What is total cost?
4  A.  That would be the sum of the material,
5  labor, burden and service columns.
6  Q.  And GPM?
7  A.  Gross profit margin.
8  Q.  How is that calculated?
9  A.  It would be sales minus total costs.
10  Q.  Is GPM percent gross profit margin
11  percent?
12  A.  Yes.
13  Q.  How is GPM percent calculated?
14  A.  Gross profit margin divided by sales.
15  Q.  If you will turn now to page 881 this
16  appears to be a new tab on the spread sheet, do
17  you know what it represents?
18  A.  This is the row 13 from 822 margin for the
19  old ASICs for the balance of September 1, through
20  April 30th for the ASICs that were previously
21  declared.
22  Q.  Do you have any reason to believe that

38 (Pages 146 to 149)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 150

1  there are margins for the old ASICs from
2  September 1, 2005 through April 30, 2006 that are
3  not listed in this report?
4        MR. CRUNK:  Objection, outside the
5     scope, vague and ambiguous, calls for
6     speculation.
7  A.  No.
8  Q.  I think we have gone over most of these
9  columns.  I'd like to confirm with you that if are
10  there any columns we haven't or that have a
11  different meaning here that we can touch on those.
12  A.  In the second, the last --
13        MR. CRUNK:  Objection, vague and
14     ambiguous.  And is there a question pending?
15  Q.  It would be from page 881 through 883,
16  columns A through Q, I'd like to know what
17  commodity code sales are.  Column, I guess that
18  would be H and I.
19  A.  Actually H is commodity code and I is
20  sales.
21  Q.  Thank you.  What is commodity code in
22  column H?

Page 151

1  A.  Within the product line there may be some
2  additional breakouts of characteristics of a unit
3  in the case of like commodity code that says GA,
4  that's a Gate Array.  In the case of the SOC, the
5  interpretation of that will be system on a chip
6  that is under the mixed signal product line or in
7  the case of GA, if you look at product code it's
8  under the ASIC product line.  There may be some
9  additional segregation on a type of application or
10  function.
11  Q.  Are you aware of any commodity goods other
12  than GA and SOC?
13  A.  There's a list of them.  Standard products
14  as a whole break out of memories and transceivers,
15  but under the ASIC product line there would be
16  Gate Array, GA, SC for standard cell, COT for
17  customer own tooling, CFT for customer furnish
18  tooling, for package, LID for lid, I'm not sure
19  what the additional codes are under the mixed
20  signals.  Then again standard products has a list
21  probably 50 or 60 different little breakouts for
22  types of memories and microprocessors and standard

Page 152

1  product breakout they use to help segregate sales.
2  Q.  Do you know what MIC stands for under
3  commodity code in relation to standard products?
4  A.  That would be a microcontroller.
5  Q.  Other than column H commodity code do any
6  of the columns from A through Q have a different
7  meaning than you previously identified in the last
8  two spread sheets?
9        MR. CRUNK:  Objection, vague and
10     ambiguous and the document speaks for
11     themselves.
12  A.  No.
13  Q.  Do you know why the reference column,
14  column G on page 882 has the reference then a dash
15  then it looks like quite often the reference again
16  and sometimes it says deferred?
17  A.  I don't know in this specific case what
18  the deferred reference is in reference to.
19  Q.  You said sales was the -- what did you say
20  sales represented?
21        MR. CRUNK:  Objection, asked and
22     answered.

Page 153

1  A.  The invoiced amount to the customer for
2  that line item.
3  Q.  Why would you invoice a customer a
4  negative amount sometimes?
5  A.  In this particular case with a JW01 there
6  is a -- we bill, we ship in advance of recognizing
7  the revenue.  And there is an agreement between us
8  and the customer as to how they will consume the
9  finished goods inventory we ship to them.  So this
10  is how they handle the recognition and consumption
11  of the inventory we have shipped to them.  So on a
12  given month there may be some in ins, some outs,
13  and these adjustments done on an ongoing basis.
14  Q.  So, for example, line 17 represent that
15  you shipped almost $800,000 worth of JW01 but you
16  have not yet recognized the revenue?
17  A.  That is correct.
18  Q.  Do you know approximately how long it
19  takes to receive revenue from the shipment date?
20        MR. CRUNK:  Objection, vague and
21     ambiguous, assumes facts not in evidence.
22  A.  Anywhere from one week to two months.

39 (Pages 150 to 153)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 154

1    Q.  That's particular with this one customer
2  for the JW01?
3    A.  Yes.
4    Q.  Exhibit 134, does it contain sale data for
5  the new ASIC in any way?
6       MR. CRUNK:  Objection, outside the
7       scope.
8    A.  It does.
9    Q.  I believe you testified last time that 134
10  was also a dump from your system and you didn't
11  filter; is that correct?
12       MR. CRUNK:  Objection, asked and
13       answered.
14    A.  You have to define filtered.
15    Q.  Wasn't filtered based on whether the ASICs
16  were declared or not?
17       MR. CRUNK:  Same objection, and vague
18       and ambiguous.
19    A.  There were more entries in 134 than were
20  on the declaration at the time.
21    Q.  Was there a criteria for including entries
22  in Exhibit 134?

Page 155

1       MR. CRUNK:  Objection, outside the
2       scope, same, attorney/client privilege, work
3       product protection.
4       To the extent can you answer without
5       divulging contents of communications with
6       your attorneys or without divulging work that
7       your attorneys asked you to do, you may
8       answer.  Otherwise I instruct you not to
9       answer.
10    A.  Client/attorney privilege.
11    Q.  I want to clarify with you a few times you
12  answered client/attorney privilege today.  When
13  you say that are you representing the only
14  information you have is attorney/client privileged
15  information and you have no outside information?
16       MR. CRUNK:  Objection, vague and
17       ambiguous and calls for a legal conclusion.
18    A.  I've been directed or asked by my attorney
19  to do certain things that involve these activities
20  and discussions at his direction.  And so all of
21  that information pertaining to it I've been
22  instructed is client/attorney privileged

Page 156

1  discussions.
2    Q.  So when you're answering that way you're
3  answering that way on the basis that there was
4  some direction or communication and you're not
5  just -- because if you didn't know or you didn't
6  have an answer outside of the privilege I just
7  wanted to clarify you weren't just saying
8  attorney/client privilege blank -- as a blanket
9  statement.
10       MR. CRUNK:  Objection, it's asked and
11       answered.  And I think we're getting into
12       badgering him on the attorney/client
13       privileged stuff.  I think the objections
14       have been made and he's answered or not
15       obviously based on his objections so.
16    A.  Where your questions involve work product
17  I answered appropriately.  When I was not directed
18  by work product I gave you an answer.
19    Q.  Okay.  To the extent that Exhibit 134
20  contains sales data for the newly declared ASICs
21  would that sales data be complete for the time
22  period covered by this report?

Page 157

1       MR. CRUNK:  Objection, vague and
2       ambiguous.
3    A.  Yes.
4       (Exhibit 660 marked.)
5       (Exhibit 661 marked.) 661.
6  BY MS. BARBISCH:
7    Q.  I am handing you what have been marked as
8  660 and 661.  660 bears Bates numbers AF 284350 to
9  356.  661 bears Bates number AF 284314 through
10  331.  These documents are identified on
11  Ms. De Mory's declaration Exhibit A as being the
12  purchase order and contract provision as the
13  KD26A.  I'm looking at Exhibit 660, can you
14  identify any line item that represents KD26A?
15       MR. CRUNK:  I'm sorry, can you restate
16       the question.
17    Q.  Can you identify any line item in
18  Exhibit 660 that represents KD26A?
19    A.  Not without going to the BSS010 altered
20  item drawing.
21    Q.  Can you identify any line item that
22  represents the sale of an ASIC?

40 (Pages 154 to 157)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 158

1     MR. CRUNK:  Objection, outside the
2   scope, vague and ambiguous.
3     A.  The 596 line item 1, 5962R04B is the ASIC,
4   SMD, standard number, that's the standard
5   microcircuit drawing.
6     Q.  Do items other than ASICs have SMDs?
7     MR. CRUNK:  Objection, outside the
8   scope, irrelevant.
9     A.  Yes.
10    Q.  What other types of products would have
11  SMDs?
12    MR. CRUNK:  Same objections, calls for
13  speculation.
14    A.  Standard product would have SMD,
15  customers' nuts and bolts can have SMDs.  The
16  government has a set of standards for virtually
17  any product type.
18    Q.  Is there a certain prefix that identifies
19  it as being an ASIC or any other identifier within
20  that entire string that clues you in that that SMD
21  is an ASIC?
22    MR. CRUNK:  Objection, vague and

Page 159

1   ambiguous, outside the scope, asked and
2   answered.
3     A.  The 5962R04B is an Aeroflex-specific
4   standard microcircuit drawing number.  We applied
5   for it, were given approval by DSCC and that's our
6   master reference document.  That's an Aeroflex
7   document of our origin.  If another supplier were
8   to have a similar looking SMD I wouldn't be able
9   to tell you without going to the DSCC Web site who
10  manufactured it or what that product is.
11    Q.  And for any Aeroflex product that has an
12  SMD or -- scratch that, are there Aeroflex, does
13  Aeroflex produce anything other than ASIC and
14  standard products that have SMDs that start with
15  5962R04B?
16    MR. CRUNK:  Objection, outside the
17  scope, vague and ambiguous, compound.
18    A.  I don't know.
19    Q.  Turn to Exhibit 661 are you able to
20  identify Exhibit 661 which is a purchase order
21  attachment BSS-10 as being applicable to the
22  purchase order at Exhibit 660?

Page 160

1     MR. CRUNK:  Objection, assumes facts not
2   in evidence, lacks foundation.
3     A.  As cited in page Bates number ending in
4   350, under I guess following attachment are
5   incorporated herein by this reference and BSS-10
6   is referenced.  And this 661, the lower left-hand
7   corner identifies purchase order attachment
8   BSS-10.
9     Q.  Are you able to identify that the revision
10  10/00 identified on bottom left-hand corner of
11  Exhibit 661 is the revision referred to by the
12  writing at page 350 of the Exhibit 660?
13    MR. CRUNK:  Objection, vague and
14  ambiguous, and lacks foundation and assumes
15  facts not in evidence.
16    A.  It is with the addition it has been
17  amended as noted in the purchase order by
18  attachment 1G dated November 14 of 2000.
19    THE VIDEOGRAPHER:  I need to do a tape
20  change.  We're off the record at 2:59 p.m.
21    (Off the record.)
22    THE VIDEOGRAPHER:  We're back on the

Page 161

1   record at 1:59 p.m., beginning of tape
2   number 3 of Peter C. Milliken.
3   BY MS. BARBISCH:
4     Q.  If you turn to page ending 318 of
5   Exhibit 661 and direct your attention to the
6   bottom right-hand corner where it says 52.227-1
7   authorization and consent.  Let me know when
8   you're ready.
9     A.  Um-hmm.
10    Q.  Do you have an understanding of the
11  modification or clarification that follows the
12  authorization and consent line there?
13    MR. CRUNK:  Objection, vague and
14  ambiguous, and calls for legal conclusion,
15  attorney/client privilege, work product
16  protection.
17    To the extent can you answer without
18  revealing the contents of discussions that
19  you have had with the attorneys or without
20  revealing work that you've formed for your
21  attorneys you may answer.  Otherwise I
22  instruct you not to answer.

41 (Pages 158 to 161)

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 162

1    And I object that the document speaks
2    for itself.
3    A.  I guess basically what they're doing is
4    clarifying their flowdown of the terms and the
5    authorization and consent and its extension down
6    to subcontractors.
7    Q.  Before when we talked about the gapfiller
8    satellite you had said that the KD24, 25, and 26As
9    were all produced pursuant to the same contract;
10   is that correct?
11       MR. CRUNK:  Objection, misstates prior
12       testimony.
13   A.  They were on another purchase order.
14   Q.  What do you mean by they were on another
15   purchase order?
16   A.  The reference that you have I believe
17   was --
18   Q.  656 and 657.
19   A.  656, 656.  If I am correct in the AID
20   interpretation, again, I was not sure exactly
21   which specific ASIC is covered by BSS006.  If that
22   is the KD24, which I can't be positive of until I

Page 163

1    look at the AID, again, we were under contract to
2    support three ASICs of which one is called the
3    wide band gapfiller but they all three service the
4    program called wide band gap.  They all have their
5    classified names or pet names within Boeing.
6    Q.  Were they all created pursuant to the same
7    prime contract, do you know?
8        MR. CRUNK:  Objection, asked and
9        answered.
10   A.  I would have to look at the documents to
11   backtrack what the prime contracts were if they're
12   referenced.
13   Q.  By prime contract we are talking about the
14   original contract with the government, correct?
15   A.  Yes.
16   Q.  Do you know why the terms and conditions
17   on the 26A would be different than the terms and
18   conditions on the 24A?
19       MR. CRUNK:  Objection, outside the
20       scope, vague and ambiguous, irrelevant, calls
21       for speculation and attorney/client
22       privilege, work product.

Page 164

1        To the extent can you answer without
2    divulging the contents of any discussions
3    you've had with any of your attorneys or
4    without divulging the work that you have
5    performed at the instruction of your
6    attorneys you may answer.  Otherwise I
7    instruct you not to answer.
8    A.  I don't know.
9    Q.  In the original purchase order between
10   Boeing and Aeroflex, is it possible that two
11   different terms and conditions, two different sets
12   of terms and conditions were incorporated?
13       MR. CRUNK:  Objection, vague and
14       ambiguous, calls for legal conclusion, calls
15       for speculation.
16   A.  I don't know.
17   Q.  To your recollection in all your years
18   dealing with government contracts and ASICs at
19   Aeroflex, did you ever remember an instance where
20   a purchase order incorporated two different sets
21   of terms and conditions?
22       MR. CRUNK:  Objection, vague and

Page 165

1    ambiguous, outside the scope, irrelevant,
2    calls for speculation, calls for legal
3    conclusion.
4    A.  No.
5    Q.  When you review the purchase orders and
6    their terms and conditions is that something that
7    you would typically take note of if you did see
8    two different terms and conditions attached?
9        MR. CRUNK:  Objection, outside the
10       scope, vague and ambiguous, irrelevant, calls
11       for attorney/client privilege, work product
12       protection, calls for speculation.
13       To the extent can you answer without
14       revealing the contents of discussions you've
15       had with your attorneys or without revealing
16       the work that your attorneys have directed
17       you or asked you to do, you may do so.
18   A.  If such a situation occurred we would seek
19   clarification from the customer as to which Ts and
20   Cs took precedence and into which order those
21   terms and conditions would be applied.
22   Q.  Would that clarification be done in

42 (Pages 162 to 165)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III     June 7, 2006

Page 166

1  writing?
2       MR. CRUNK: Objection, calls for
3    speculation, outside the scope,
4    attorney/client privilege and work product
5    protection.
6       To the extent you can answer without
7    divulging the content of conversations or
8    communications you've had your the attorney
9    or without divulging work the attorneys have
10   asked you to do, you may do so.
11   A.  We would request it to be in writing.
12   Q.  Would that data be stored in the PO file?
13      MR. CRUNK: Objection, calls for
14   speculation, outside the scope.
15   A.  Yes.
16   Q.  When a government contractor approaches
17   Aeroflex for the development of a new ASIC
18   pursuant to a government contract who within
19   Aeroflex would handle that negotiation or request?
20      MR. CRUNK: Objection, vague and
21   ambiguous, outside the scope.
22   A.  I don't understand the question.

Page 167

1    Q.  If a government contractor wants a
2    quotation for an ASIC that will be developed
3    pursuant to a government contract who within
4    Aeroflex would that government contractor talk to
5    about the quotation process and get the quote
6    from?
7       MR. CRUNK: Objection, compound, vague
8    and ambiguous, outside the scope, calls for
9    speculation.
10   A.  It will come through my organization.
11   Q.  Who within your organization would the
12   government contractor negotiate with and discuss
13   the specifics for that quotation?
14      MR. CRUNK: Objection, outside the
15   scope, vague and ambiguous, misstates the
16   prior testimony, assumes facts not in
17   evidence.
18   A.  Are we negotiating or bidding?
19   Q.  Let's start with bidding.
20      MR. CRUNK: Same objection.
21   A.  Okay, the customer will typically contact
22   a regional sales manager to ascertain whether we

Page 168

1    are able or not to service their requirements.
2    Regional sales manager will then contact the
3    factory, i.e., myself or an individual in my
4    organization, Mary Hartwell, to develop once they
5    give us some sort of a written RFP or RFQ to
6    develop a bid package to respond to that RFP or
7    RFQ.
8       We will in turn submit that
9    quotation to the regional sales manager who will
10   then respond to the customer with the quotation or
11   proposal.
12   Q.  Who is Mary Hartwell?
13   A.  She is a business development manager
14   within my organization.
15   Q.  Does the regional sales manager always
16   contact either yourself or Mary Hartwell?
17      MR. CRUNK: Objection, vague and
18   ambiguous, outside the scope, calls for
19   speculation.
20   A.  Yes.
21   Q.  Do you and Mary only communicate with the
22   regional sales manager or do you communicate with

Page 169

1    the customer seeking quotation?
2       MR. CRUNK: Objection, outside the
3    scope, vague and ambiguous, assumes facts not
4    in evidence, compound.
5    A.  Depends on whether it's, what stage the
6    customer is engaged in.  If they're a serious
7    historical contract customer they may through the
8    RSM contact us directly.  If it's somebody who a
9    tire kicker the RSM may act as a filter and we may
10   actually never talk to the customer directly.
11   Q.  For government contracts for ASIC did the
12   RSM or potential government contract for ASICs,
13   does the RSM gather all the information and then
14   pass that on to you or Mary?
15      MR. CRUNK: Objection, vague and
16   ambiguous, outside the scope.
17   A.  Yes.
18   Q.  What is a bid package?
19   A.  The customer would send us an RFP or RFQ.
20   We would then formulate -- we have boilerplate
21   quotation material we would use to simplify our
22   jobs because a lot of ASIC development work is

43 (Pages 166 to 169)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III     June 7, 2006

---

Page 170

1  standard methodologies, and so we would put
2  together an appropriate proposal or quotation and
3  that together with maybe a cover letter that the
4  RSM might put together on top of it, then they
5  would prepare that and that would become the bid
6  package to the customer in response to his RFQ or
7  RFP.
8      Q.  Do you personally save all of this data
9  that you deal with whenever it comes in from the
10 regional sales manager?
11         MR. CRUNK:  Objection, vague and
12     ambiguous, outside of the scope, and
13     irrelevant.
14     A.  Yes.
15     Q.  Do you personally prepare the quotations
16 that go back to the regional sales manager?
17         MR. CRUNK:  Objection, vague and
18     ambiguous, outside the scope, irrelevant,
19     misstates the prior testimony and assumes
20     facts not in evidence.
21     A.  Some of it.
22     Q.  Who else prepares the quotations that go

---

Page 171

1  back to the regional sales manager?
2          MR. CRUNK:  Same objections.
3      A.  Mary Hartwell.
4      Q.  Does anyone else assist in the preparation
5  of those quotations?
6          MR. CRUNK:  Same objection.
7      A.  A customer marketing manager might assist
8  with a previous version of the previous quote but
9  we have the final say on what goes out.
10     Q.  After the quotation goes to the regional
11 sales manager if the government contractor would
12 like Aeroflex to develop this ASIC what is the
13 next step in the process?
14         MR. CRUNK:  Objection, outside the
15     scope, vague and ambiguous, misstates prior
16     testimony and assumes facts not in evidence.
17     A.  They would submit a purchase order or a
18 contract.
19     Q.  Who do they submit the purchase order or
20 contract to?
21         MR. CRUNK:  Objection, outside the
22     scope.

---

Page 172

1      A.  It will come through the regional sales
2  manager or to the customer marketing manager who
3  supports the regional sales manager and be
4  processed by the factory.
5      Q.  Other than preparing the quotation in
6  giving the quotation to the customer does Aeroflex
7  participate in any other negotiation of the
8  contract or the contract terms?
9          MR. CRUNK:  Objection, outside the
10     scope, vague and ambiguous, calls for
11     speculation, calls for legal conclusion.
12     A.  Depending on history with the customer we
13 may have already prenegotiated terms and
14 conditions.  If it's a new customer and they
15 submit a new terms and condition we put those out
16 in a review cycle to review them and determine if
17 there's any exceptions.  And they may actually be
18 included with the bid package or may be identified
19 in the bid package as something that is pending
20 and will be negotiated upon placement of the
21 contract.
22     Q.  If the government contractor has specific

---

Page 173

1  instructions regarding the synthesis of the ASIC
2  how would they provide that information to
3  Aeroflex?
4          MR. CRUNK:  Objection, outside the
5      scope, vague and ambiguous, asked and
6      answered and calls for speculation.
7      A.  They may either include it in a like a
8  line item within the purchase order or they may
9  have subsequent design file information they would
10 provide to us as part of the data deliverables
11 from them that define what the requirements are.
12     Q.  Is that subsequent design file information
13 stored or otherwise maintained by Aeroflex?
14         MR. CRUNK:  Objection, outside the
15     scope, vague and ambiguous.
16     A.  As part of our standard design flow, yes.
17     Q.  Where is that information stored?
18         MR. CRUNK:  Same objection.
19     A.  It would be stored with our archive files
20 of the design activities.
21     Q.  Do you know if those documents were
22 produced in this litigation?

---

44 (Pages 170 to 173)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 174

1        MR. CRUNK:  Objection, outside the
2    scope, vague and ambiguous, attorney/client
3    privileged, work product protection.
4        To the extent you can answer without
5    divulging contents of discussions with your
6    attorneys or without divulging what your
7    attorneys have asked you to do, you may
8    answer.  Otherwise I instruct you not to
9    answer.
10   A.   Client/attorney privilege.
11       MS. BARBISCH:  I am going to, Tom, at
12   this time call for the production of the
13   purchase order files and any documents in the
14   archive files that relate to the government
15   ASICs that go to any communications or
16   instructions, specifications, directions,
17   written provisions or other communications
18   relating to the synthesis of these ASICs.
19   Q.   In any of the government ASICs that we've
20   discussed today has the U.S. government or one of
21   its agencies at all been involved in the design
22   products with Aeroflex?

Page 175

1        MR. CRUNK:  Objection, outside the
2    scope, vague and ambiguous, calls for
3    speculation.
4    A.   I don't know.
5    Q.   Have you personally had any interaction
6    with the government or any of its agencies with
7    regard to the development of any of these ASICs?
8        MR. CRUNK:  Objection, vague and
9    ambiguous, outside the scope, asked and
10   answered.
11   A.   Yes.
12   Q.   How would you characterize that
13   interaction?
14       MR. CRUNK:  Vague and ambiguous, you
15   will calls for speculation, outside the
16   scope.
17   A.   Audit or audit monitoring, tracking,
18   investigative.
19   Q.   Has the U.S. government or any of its
20   agencies audited, monitored, tracked or
21   investigated your use of your design compiler as
22   it relates to any of these ASICs?

Page 176

1        MR. CRUNK:  Objection, outside the
2    scope, vague and ambiguous, calls for
3    speculation.
4    A.   I don't know.
5    Q.   Who would know?
6        MR. CRUNK:  Same objection.
7    A.   We'd have to go and look at each ASIC on a
8    case-by-case basis and see which agency
9    participated.  Some of it we don't see, some of it
10   is at the customer level which isn't visible to
11   us.
12   Q.   Did you say you had to look at each ASIC
13   how would you go look at the ASIC?
14       MR. CRUNK:  Objection, outside the
15   scope, vague and ambiguous.
16   A.   We would go back to the look at the ASIC,
17   what was the design flow.
18       MR. CRUNK:  Mischaracterizes prior
19   testimony.
20   A.   And then I would talk to the ASIC engineer
21   and ask them who was the customer, and then I
22   would talk to the ASIC engineer and ask them the

Page 177

1    question did they have any oversight from a
2    government agency in that activity and which
3    agency was it or did they have any knowledge or
4    visibility to it.  And again depending on which
5    customer program it was we may not have any
6    visibility to it.
7    Q.   Do you know of any other facts or
8    circumstances other than the inclusion of an
9    authorization and consent clause in a government
10   contract that would lead Aeroflex to assert the
11   authorization and consent defense?
12       MR. CRUNK:  Objection, outside the
13   scope, calls for speculation, calls for legal
14   conclusion, and attorney/client privilege and
15   work product protection, and it's compound.
16       To the extent you can answer without
17   divulging contents of discussions with your
18   attorney or without divulging work you've
19   done at the direction of your attorneys you
20   may do so.  Otherwise I instruct you not to
21   answer.
22   A.   I don't know.

Premier Litigation Service Bureau, Inc.
Tel:  877-938-6342    Fax:  866-889-3249

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 178

1    Q.  Earlier you testified that Aeroflex has
2  access to Mentor tools that can also synthesize
3  ASICs.  Are you familiar with any other tools on
4  the market today that can be used to synthesize
5  ASICs?
6        MR. CRUNK:  Objection, outside the
7        scope, vague and ambiguous.
8    A.  Yes.
9    Q.  What are those tools?
10        MR. CRUNK:  Same objections and calls
11        for speculation.
12    A.  Cadence purchased a company called Ambit
13  and has incorporated that into their tool suite.
14  I don't know exactly the name of the tool, but
15  Ambit is a synthesis tool.  A number of the FPGA
16  manufacturers have developed their own synthesis
17  environments for targeting designs to their FPGAs.
18  Those are synthesis tools that produce ASICs.
19        You obviously have Mentor Leonardo,
20  you have Synopsys' design compiler.  I'm sure
21  there a number of smaller third-party kind of home
22  brews out there we would normally not use because

Page 179

1  they don't have any credibility in the
2  marketplace.
3    Q.  The number of FPGA manufacturers that have
4  developed their own tools, are those tools capable
5  of synthesizing the ASICs that Aeroflex has
6  previously synthesized for the government?
7        MR. CRUNK:  Objection, outside the
8        scope, vague and ambiguous, calls for
9        speculation and assumes facts not in
10        evidence.
11    A.  Yes, but not for us.
12    Q.  What do you mean but not for us?
13        MR. CRUNK:  Same objection.
14    A.  Xilinx has a synthesized environment
15  specifically designed for synthesizing RTL into
16  their FPGA family, not Aeroflex ASICs.
17    Q.  Did you say there are tools, FPGA --
18  having trouble reading the record -- FPGA tools to
19  synthesize an ASICs?
20    A.  An FPGA is considered an ASIC.
21    Q.  Those tools could not be used to fulfill
22  the contracts that you had with the government; is

Page 180

1  that correct?
2        MR. CRUNK:  Objection, outside the
3        scope, vague and ambiguous and calls for
4        speculation.
5    A.  That is correct.
6    Q.  The Cadence slash Ambit tool and Mentor's
7  Leonardo could be used to synthesize the ASICs
8  that you used design compiler for the government
9  ASIC?
10        MR. CRUNK:  Objection, incomprehensible.
11    A.  Yes.
12    Q.  You could also use the Cadence Ambit tool
13  or the Mentor Leonardo tool to synthesis the
14  government ASIC; isn't that correct?
15        MR. CRUNK:  Objection, outside the scope
16        vague and ambiguous, calls for speculation.
17    A.  We could.
18    Q.  Can you identify any ASIC from your
19  private declaration, Exhibit 651, where using
20  Mentor's Leonardo would in any way violate your
21  contractual obligations with government
22  contractors?

Page 181

1        MR. CRUNK:  Objection, asked and
2        answered, calls for speculation and the
3        contract documents speak for themselves.
4    A.  Well, if we proposed using the Synopsys
5  tools that support the customer design that would
6  be in violation if they accepted our proposal --
7  it would be in violation to the customer if I were
8  to bait and switch so to speak.
9    Q.  And we would have to go back to the
10  proposals or quotations themselves in order to
11  determine if you in fact proposed using the
12  Synopsys tools; is that correct?
13        MR. CRUNK:  Objection, outside the
14        scope, vague and ambiguous, calls for
15        speculation.
16    A.  Yes.
17        THE VIDEOGRAPHER:  We're off the record
18  at 3:33 p.m.
19        (Off the record.)
20        THE VIDEOGRAPHER:  We're back on the
21  record at 3:47 p.m.
22        (Exhibit 662 marked.)

46 (Pages 178 to 181)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 182

BY MS. BARBISCH:

1  Q. I am handing you what has been marked as
2  Exhibit 662 bearing Bates number AF 284112 through
3  284120. This document was identified in
4  Ms. De Mory's declaration as the purchase order
5  and the contract provisions for the KD32A through
6  the KD39A inclusive. Do you recognize this
7  document?
8  A. I do.
9  Q. Were KD32A through KD39A -- sorry -- the
10 KD32A through KD39A all developed pursuant to the
11 same government contract?
12     MR. CRUNK: Objection, vague and
13     ambiguous.
14 A. Yes.
15 Q. Were you personally involved in the bid
16 process for the KD32A through KD39A ASIC?
17     MR. CRUNK: Objection, vague and
18     ambiguous, assumes facts not in evidence.
19 A. Yes.
20 Q. Do you know if the Exhibit C referenced on
21 the second page ending in 113 would be the

Page 183

1  statement of work for the FPGA to ASIC
2  translations and ASIC fabrication exists somewhere
3  in the document management system at Aeroflex?
4      MR. CRUNK: Objection, calls for
5      speculation.
6  A. Yes.
7  Q. Does the statement of work direct the use
8  of design compiler with regard to those ASICs?
9      MR. CRUNK: Objection, calls for
10     speculation and the document speaks for
11     itself.
12 A. I'd have to see the statement of work to
13 confirm that.
14 Q. Are KD32A through KD39A related ASICs in
15 any way?
16     MR. CRUNK: Objection, vague and
17     ambiguous.
18 A. Since they were contracted under the same
19 purchase order I would say yes.
20 Q. If you would turn to page 118 paragraph
21 10.3, references a number of FAR clauses including
22 52.227-1. What is your understanding of the

Page 184

1  inclusion of 52.227-1?
2      MR. CRUNK: Objection, called for
3      speculation, calls for legal conclusion.
4      Attorney/client privilege, work product
5      protection. To the extent can you answer
6      without divulging the communication with your
7      attorney or the work your attorneys have
8      asked you to do, you can answer.
9          Otherwise instruct you not to answer.
10 A. That is the consent clause government
11 flowdown.
12 Q. Would this be an example of an ASIC or a
13 group of ASICs that were contracted through a
14 contract rather than a purchase order?
15     MR. CRUNK: Objection, vague and
16     ambiguous.
17 A. I guess I don't know that I make a
18 distinction from our perspective, contract and a
19 purchase order are both contractual items.
20 Q. Would there be a corresponding purchase
21 order stating the quantity and line item price for
22 the KD32A through 39A?

Page 185

1  A. I would say yes.
2  Q. Was this contract created as a result of
3  an Eastman Kodak process?
4      MR. CRUNK: Objection, vague and
5      ambiguous, calls for speculation.
6  A. This contract was established to fix the
7  prices of the program.
8  Q. What do you mean by fix the prices of the
9  program?
10 A. Agree on how the program was going -- the
11 ASIC activities were going to be priced as they
12 issued in this case the purchase orders.
13 Q. Why did you need a separate agreement on
14 the pricing rather than just a purchase order
15 stating the price?
16     MR. CRUNK: Objection, vague and
17     ambiguous, outside the scope, assumes facts
18     not in evidence and attorney/client
19     privilege, work product protection.
20         To the extent you can answer without
21     divulging the contents of your discussions
22     with attorneys or without divulging work your

47 (Pages 182 to 185)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 186

1    attorneys have asked you to do, you can
2    answer.
3        A.  At the time of the negotiations the
4    customer was unable to commit to how many designs
5    they released at a time so we gave them the option
6    of one design, two design or three designs or up
7    to four designs at one time.  We gave them a
8    price -- we negotiated a pricing structure
9    depending on how many designs they released at the
10   same time to Aeroflex to recognize economy of
11   scale.
12       Q.  When you say released a design to Aeroflex
13   what does that mean?
14       A.  That could release the RTL netlist they
15   could release just one ASIC design today or they
16   could release two separate designs today, or they
17   could release four designs today, different
18   designs.
19       Q.  I think I'm getting confused by the word
20   release, what do you mean by release?
21       A.  They could deliver an RTL netlist.
22       Q.  In order for Aeroflex to then synthesize?

Page 187

1        A.  To start work.
2        Q.  And does this contract identify which
3    option they chose?
4            MR. CRUNK:  Objection, documents speaks
5        for itself and asked and answered.
6        A.  No, it just identifies the options they
7    had to choose from.
8        Q.  Did you also provide this information in a
9    quotation?
10           MR. CRUNK:  Objection, vague and
11       ambiguous.
12       A.  Yes.
13           (Exhibit 663 marked.)
14   BY MS. BARBISCH:
15       Q.  Handing you what I've marked as
16   Exhibit 663 and Bates number AF 284121 through
17   284130 the title of the document is Statement of
18   Work for the FPGA to ASIC Translations and ASIC
19   Fabrications.  Have you seen this document before?
20       A.  I have.
21       Q.  Do you know if this is the Statement of
22   Work referred to on page 113 of Exhibit 662 at

Page 188

1    Exhibit C?
2        A.  It is referenced as March 4 -- I don't
3    know if that's March 4, 2004 or April 3, 2004,
4    interesting.
5        Q.  Where do you see March?
6        A.  Hold on a second, here it is on section
7    2.1 on the subcontract they have dated 3 April,
8    2004 which matches 3 April 2004, the Statement of
9    Work.
10       Q.  From reviewing Exhibit 663 can you
11   identify anything in this Statement of Work that
12   either explicitly or implicitly requires Aeroflex
13   to use design compiler to synthesize these ASIC?
14           MR. CRUNK:  Objection, vague and
15       ambiguous.  Also calls for a legal
16       conclusion.
17       A.  You asked the question whether it was
18   implicitly or explicitly?
19       Q.  Um-hmm.
20       A.  The only place I would do it on implied is
21   on page Bates number 130 it identifies the
22   deliverable item from us to the customer is

Page 189

1    library and tools under table 3, deliverable item.
2    We currently do not have a Mentor Leonardo
3    license -- or library.  The only library we've
4    been able to provide the customer is a
5    Synopsys-based library for the technology.
6        Q.  Do you see anything else in the document?
7        A.  Yeah, underneath the design to be
8    translated, the specific design, the ability,
9    again the library tie is the design has to be
10   either 5 volts or 3.33-volt I/O and a two and a
11   half volt core voltage.  And again, that's a very
12   specific library that was only developed and
13   supported by a Synopsys representation.
14       Q.  Does and Aeroflex inform its customers,
15   particularly its government contracting customers,
16   of the these library limitations?
17           MR. CRUNK:  Objection, vague and
18       ambiguous, outside the scope, misstates the
19       prior testimony, assumes facts not in
20       evidence.
21       A.  You call it a limitation, I call it a
22   capability.

48 (Pages 186 to 189)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 190

1    Q.  Does Aeroflex inform its customers of this
2  capability?
3        MR. CRUNK:  Same objections.
4    A.  That's what we offered.  It's a library or
5  technology capability.
6    Q.  What I am trying to get at is whether or
7  not from seeing library and tools would a customer
8  know that that meant they were going to get a
9  Synopsys-supported library and tools, so do you or
10  anyone at Aeroflex inform customers that library
11  and tools means or is somewhat related to
12  Synopsys?
13        MR. CRUNK:  Objection, vague and
14    ambiguous, compound, outside the scope, calls
15    for speculation.
16    A.  We may not explicitly state that.
17    Q.  And by stating that each of the designs
18  has either 5 volt or 3.3-volt I/O and 2.5-volt
19  core voltage would Aeroflex explain to the
20  customer that that meant they were getting a
21  Synopsys solution rather than another solution?
22        MR. CRUNK:  Objection, vague and

Page 191

1    ambiguous, outside the scope, calls for
2    speculation.
3    A.  Maybe not explicitly again.  I'm selling a
4  service and a capability, not a specific design
5  flow.
6    Q.  What do you mean when you say specific
7  design flow?
8    A.  Well, customers are looking for an ASIC,
9  that has, that meets certain functional attributes
10  in their environment.  As long as I can support
11  their handout for their design library RTL and
12  produce their functionality, I offer and tell them
13  I can do it in a couple different ways or one way.
14  If they're willing to accept that that will
15  ultimately deliver them their functionality, they
16  are basically happy with what I've proposed
17  provided I deliver.
18    Q.  So do you believe that the customers care
19  more about capability than how you get to that
20  solution?
21        MR. CRUNK:  Objection, vague and
22    ambiguous, outside the scope, and irrelevant.

Page 192

1    A.  They care about both.
2    Q.  Because they care about the design tools
3  that are used or because they care about other
4  factors that get weighed in based on how you get
5  to their solution?
6        MR. CRUNK:  Objection, vague and
7    ambiguous, compound, outside the scope, calls
8    for speculation.
9    A.  Because if I screw up in delivering the
10  product they want to be able to know I have a
11  mechanism to correct my mistakes.
12    Q.  That makes sense.
13        (Exhibit 664 marked.)
14  BY MS. BARBISCH:
15    Q.  Handing what's been marked as Exhibit 664
16  does your end in 715?
17    A.  It goes 715 to 717.
18    Q.  Bates number AF 283715 to 717.  Have you
19  seen this document before?
20    A.  No.
21    Q.  This document was produced to us with a
22  mark on it that says KC01 somewhere around the

Page 193

1  middle of the page.  Is your understanding that
2  the product referred to at line item one is the
3  KC01?
4        MR. CRUNK:  Objection, calls for
5    speculation, and the document speaks for
6    itself.
7    A.  Yes.
8    Q.  Earlier you testified that we would have
9  to look at the specific purchase order in order to
10  determine whether a specific sale of a KC01 was a
11  government sale or not.  Are you able to determine
12  from looking at this purchase order whether this
13  KC01 is a government purchase?
14        MR. CRUNK:  Objection, vague and
15    ambiguous, lacks foundation, assumes facts
16    not in evidence.
17    A.  I cannot.
18    Q.  How would you determine if this specific
19  sale of a KC01 to Ball Aerospace was in fact a
20  government purchase?
21    A.  One would have to go back to the prime
22  contract number, the 0401-0002, that's listed

49 (Pages 190 to 193)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 194

1  under item 1 to determine whether that is a
2  government contract or just a Ball Aerospace or
3  one of their customer's contracts to Ball
4  Aerospace.
5    Q.  How would one trace that prime contract
6  number?
7        MR. CRUNK:  Can we take a break.
8        THE VIDEOGRAPHER:  We're off the record
9    at 4:14 p.m.
10       (Off the record.)
11       THE VIDEOGRAPHER:  We're back on the
12    record at 4:24 p.m.
13 BY MS. BARBISCH:
14   Q.  There was a question posed, how would one
15 trace the prime contract number?
16   A.  This particular case I would have to go
17 back.
18       MR. CRUNK:  Objection, calls for
19    speculation.
20   A.  I would have to go to Ball Aerospace and
21 ask them.  It would not be something in Aeroflex's
22 possession.

Page 195

1    Q.  So as of today Aeroflex could not
2  determine whether or not this was a government
3  ASIC sale or not?
4        MR. CRUNK:  Objection, calls for --
5    outside the scope, vague and ambiguous,
6    misstates prior testimony and attorney/client
7    privilege and work product protection.
8        To the extent you answer without
9    divulging contents of communications with
10    your attorneys you can do so, and to the
11    extent you can answer without divulging work
12    your attorneys have asked you to do, you can
13    do so.
14   A.  I cannot ascertain whether or not it is a
15 government contract.
16   Q.  Is there any other way that can you think
17 of other than going to Ball Aerospace to ascertain
18 if this is a government contract or sale pursuant
19 to a government contract?
20       MR. CRUNK:  Objection, calls for
21    speculation.
22   A.  No.

Page 196

1    Q.  To your knowledge have you personally
2  provided quotations to Ball Aerospace?
3        MR. CRUNK:  Objection, outside the
4    scope.
5    A.  Yes.
6    Q.  Have you provided quotations to Ball
7  Aerospace for the KC01?
8    A.  No that's a standard product.
9    Q.  What is the process for a government
10 contractor who would like to purchase the KC01
11 was?  Want me to start over?
12   A.  Go ahead.
13   Q.  How would a government contractor purchase
14 the KC01?
15   A.  They would contact a regional sales
16 manager who would then working through a contract,
17 a customer marketing manager reference a standard
18 price list for the KC01, it's a standard product
19 so there is an existing standard price list
20 listing all of these different configurations, SMD
21 configurations.  And there is a standard product
22 quotation that the CMM would generate and issue to

Page 197

1  the RSM to give to the customer.
2    Q.  Who has oversight, managerial oversight of
3  the KC01?
4        MR. CRUNK:  Objection, outside the
5    scope, vague and ambiguous.
6    A.  Anthony Jordan, Tony Jordan.
7    Q.  Who does Tony Jordan report to?
8        MR. CRUNK:  Same objections.
9    A.  He reports to the Aeroflex Colorado
10 Springs vice president and general manager, Jerry
11 Reinsma.
12   Q.  What is Tony Jordan's position?
13   A.  He's the director of the standard
14 products.
15   Q.  Did he recently assume that position?
16       MR. CRUNK:  Same objection.
17   A.  No.
18   Q.  In the process of purchasing the KC01 is
19 it standard practice for a CMM or RSM to inquire
20 whether the KC01 is to be used for government
21 purposes or not?
22       MR. CRUNK:  Objection, outside the

50 (Pages 194 to 197)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 198

1    scope, vague and ambiguous.
2    A.  They would typically inquire to find out
3    what its application is, yes.
4    Q.  Are those inquiries memorialized anywhere,
5    are they written down and saved?
6        MR. CRUNK:  Objection, outside the
7        scope.
8    A.  I don't know.
9    Q.  Who would know?
10       MR. CRUNK:  Objection, outside the
11       scope, calls for speculation.
12   A.  The RSM or CMM.
13   Q.  To your knowledge it's not a standard
14   Aeroflex process for handling standard product
15   sales and the pricing or -- it's not a
16   quotation -- the pricing of?
17   A.  There's a standard price.
18       MR. CRUNK:  Excuse me, is there a
19       question pending?
20   Q.  Does Aeroflex have a standard process for
21   recording sales requests for standard products?
22       MR. CRUNK:  Objection, outside the

Page 199

1    scope, vague and ambiguous, calls for
2    speculation.
3    A.  Yes.
4    Q.  Where are those sales requests stored?
5        MR. CRUNK:  Same objection.
6    A.  We maintain a quote log of what is quoted
7    to customers.
8    Q.  Does Aeroflex require the RSM or CMM to
9    maintain additional records other than the quote
10   log?
11       MR. CRUNK:  Objection, outside the
12       scope, vague and ambiguous.
13   A.  I don't know.
14   Q.  Do you know who would know?
15       MR. CRUNK:  Same objection.
16   A.  I would go to the director of marketing
17   and sales.
18   Q.  Who is the director of marketing and
19   sales?
20       MR. CRUNK:  Same objection, asked and
21       answered.
22   A.  Dwight Deem.

Page 200

1        (Exhibit 665 marked.)
2    BY MS. BARBISCH:
3    Q.  I'm handing you what I've marked as
4    Exhibit 665, bearing Bates number AF 284423
5    through 4430, do you recognize this document?
6    A.  Yes.
7    Q.  What is this document?
8    A.  It's a purchase order from Boeing BSS El
9    Segundo, for the purchase of the uplink ASIC, the
10   DIFF I/O ASIC and I think that's it, just those
11   two ASICs.
12   Q.  Where did you find reference to the uplink
13   and the DIFF I/O ASICs?
14   A.  Go to Bates number ending in 425 line item
15   1, talks about quantity 4 has the ASIC SMD listed,
16   AID BSS011 and below is listed to find the uplink
17   ASIC, U-P-L-I-N-K, ASIC.
18   Q.  Do you know which Aeroflex PIC relates to
19   the BSS011 uplink ASIC?
20   A.  No.
21   Q.  Do you know if it relates to a declared
22   ASIC?

Page 201

1        MR. CRUNK:  Objection, vague and
2        ambiguous.
3    A.  I believe it does but I can't tell you
4    exactly which one.
5    Q.  Can you also said the DIFF I/O ASIC, where
6    did you find that information?
7    A.  Ending in Bates number 426 line item
8    number 8, 22 items again our SMD number BSS012 AID
9    and below that is listed the DIFF I/O ASIC.
10   Q.  Do you know whether the BSS012 DIFF I/O
11   ASIC is a declared ASIC?
12       MR. CRUNK:  Objection, vague and
13       ambiguous.
14   A.  Not without interrogating the altered item
15   drawing.
16   Q.  Do you believe it is a declared ASIC?
17       MR. CRUNK:  Objection, irrelevant, calls
18       for speculation, he's already answered the
19       question.
20   A.  I do.
21   Q.  Were these ASICs, the uplink and DIFF I/O
22   related to the earlier Boeing contract we

51 (Pages 198 to 201)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 202

1  discussed?
2        MR. CRUNK:  Objection, vague and
3     ambiguous.
4     Q.  The gapfiller satellite programming ASICs.
5        MR. CRUNK:  Same objections.
6     A.  I believe they are but I don't know
7  specifically.
8     Q.  Were there other ASICs associated with the
9  gapfiller ASICs other than KD24A and KD26A and
10  KD25A?
11        MR. CRUNK:  Objection, misstates prior
12     testimony, vague and ambiguous.
13     A.  The specific, the wide band gapfiller
14  program is a classified government program.  We
15  only know what we know.
16     Q.  For that program did you develop ASICs
17  other than the 24 through 26A?
18        MR. CRUNK:  Objection, vague and
19     ambiguous.
20     A.  I don't know.
21     Q.  From looking at this purchase order
22  Exhibit 665, are you able to tell if this is the

Page 203

1  initial purchase order for these ASICs?
2        MR. CRUNK:  Objection, vague and
3     ambiguous.
4     A.  Given the purchase order number on the
5  first page upper left-hand corner NNB8-8B4975
6  revision zero would imply it is the initial
7  purchase order contract.
8     Q.  Does the revision zero indicate that it is
9  the initial purchase order contract?
10        MR. CRUNK:  Objection, misstates the
11     prior testimony.
12     A.  That would be my belief.
13     Q.  Do subsequent purchases of an ASIC result
14  in a change revision number?
15        MR. CRUNK:  Objection, vague and
16     ambiguous, outside the scope.
17     A.  If a subsequent purchase order is for the
18  same contract, typically customers issue a change
19  order and amend an existing purchase order.
20     Q.  And that would result in a revision
21  change?
22     A.  A change order, yes.

Page 204

1     Q.  If, for example, Boeing a year later after
2  the initial purchase order ordered 10 more of the
3  KD24A, that purchase order, would it have a new
4  purchase order number or a new revision number?
5        MR. CRUNK:  Objection, calls for
6     speculation.
7     A.  Depends if it's for a existing contract or
8  a new contract.  It's customer-directed, not
9  Aeroflex-directed.
10     Q.  When you say the same contract, do you
11  mean relating to the first order than they made?
12  I guess I'm a little confused when you're using
13  the word contract there, can you explain?
14        MR. CRUNK:  Objection, vague and
15     ambiguous, compound.
16     A.  Customer is led a prime contract for
17  certain provisions.  They place a purchase order,
18  work is done, contract may or may not -- purchase
19  order may or may not be closed, completed.
20  Customer may get subsequent follow-on orders from
21  the government, extends the contract, they may
22  come back and order additional units under that

Page 205

1  contract.  I would expect to see a change order
2  revision.  However, it may be that program is
3  completed, closed.  Customer gets a new contract,
4  then we would, my expectation is we would see a
5  new purchase order tied to a different contract.
6     Q.  So earlier when we looked at the two
7  Boeing contracts which were 656 and 660 compared
8  to the current one we looking at which is 665 you
9  identified the two that we addressed earlier 656
10  and 660 as not being the original contract to your
11  knowledge.  How did you make that determination on
12  656?
13        MR. CRUNK:  Objection, lacks foundation,
14     assumes facts not in evidence, misstates
15     prior testimony.
16     A.  The first item you'll see is up in the
17  upper left-hand corner purchase order number
18  revision 3.  You'll also note in the body there is
19  a change from/change to section on the front page.
20  And they talk about change order 1 through change
21  order 2, so they're giving directed changes.  In
22  the case of 660 similar REV 3, change from/change

52 (Pages 202 to 205)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 206

1  to, they are giving directed changes in the body
2  of the purchase order.
3      Q.  Turning your attention back to 665 as you
4  stated revision zero.  In the body where the line
5  number quantity box is there are quite a bit of
6  provisions on page 423 and 424, what is your
7  understanding of the inclusion of these provisions
8  in general?
9          MR. CRUNK:  Objection, calls for
10         speculation, calls for legal conclusion and
11         attorney/client privilege, work product
12         protection.
13             To the extent you can answer without
14         revealing content of discussions with your
15         attorney or revealing work done at the
16         direction of your attorneys you may answer.
17         Otherwise I instruct you not to answer.
18     A.  The basic paragraphs are entries on 423
19  and 424 identify in this case the standard
20  microcircuit drawing we are to manufacture the
21  ASICs 2 and they identify additionally that the
22  altered item drawings they want, i.e., the

Page 207

1  specific products they want built is BSS011 and
2  BSS012.  And as part of that delivery or
3  manufacturing they want additional items as part
4  of that delivery.  In this case they want DPA
5  samples, they want precap source inspection.
6  They're directing, as they say, administrative
7  authority, only the seller -- or buyer's
8  representative may issue a change notice.  Let's
9  see, DPA priority rating -- okay, this is
10 directing us whether defense department priority
11 rating system, how we are to recognize it or
12 administer it.  And they identify whether or not
13 we can ship early to the negotiated schedule
14 called out in this purchase order.
15     Q.  Do you see any indication of the RTL
16 synthesis scripts or design tools in this
17 contract?
18         MR. CRUNK:  Objection, vague and
19         ambiguous.
20     A.  This purchase order is for the procurement
21 of flight units.
22     Q.  What are flight units?

Page 208

1      A.  Actual integrated circuit units to be
2  delivered.  This is reoccurring activity.  This is
3  not a NRE or design-phased purchase order.
4      Q.  These are reordering the uplink ASIC and
5  the DIFF I/O ASIC rather than the initial
6  procurement of those ASICs?
7          MR. CRUNK:  Objection, misstates prior
8          testimony, asked and answered.
9      A.  Yes.
10     Q.  Other than reading through all of the
11 purchase orders for Boeing how would one identify
12 the initial contract that resulted in the
13 procurement of the uplink ASIC?
14     A.  I'm sorry, I...
15     Q.  If you wanted to find the initial purchase
16 of the uplink ASIC including the design and
17 manufacture, how would you find that purchase
18 order?
19         MR. CRUNK:  Objection, assumes facts not
20         in evidence, vague and ambiguous.
21     A.  Actually I would go back to your 134 or
22 659 and look for the references to those specific

Page 209

1  PICs and find the NRE reference line items.  And
2  then tag them back to the purchase order number or
3  the contract number.
4      Q.  And then go pull that purchase order or
5  contract?
6      A.  Correct.
7          MS. BARBISCH:  Can we go off the record.
8          THE VIDEOGRAPHER:  We're off the record
9      at 4:49 p.m.
10         THE VIDEOGRAPHER:  We're back on the
11     record at 4:55 p.m.
12         MS. BARBISCH:  For the record I wanted
13     to state that the May 8 order requires
14     production of native financial data.  So we
15     will await your production of Exhibit 134 in
16     native.  At this time I would like to end for
17     today, but I'm going to hold the deposition
18     open on the basis that we receive late
19     notification of the topics.
20         MR. CRUNK:  Obviously we disagree you
21     received late notification.  You and
22     Ms. De Mory have been debating that issue for

53 (Pages 206 to 209)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 210

1  a few days now I think.
2      Also, I have some questions.  Is this
3  deposition being transmitted outside of this
4  room?
5      MS. BARBISCH:  No.
6      MR. CRUNK:  Is the transcript being
7  transmitted outside of this room?
8      MS. BARBISCH:  No.
9      MR. CRUNK:  Are any other Ricoh
10 attorneys participating in this deposition,
11 or did they participate, other than the one
12 who walked into the room?
13     MS. BARBISCH:  Other than Michael
14 Weinstein being here for an hour or so, no.
15     MR. CRUNK:  Tomorrow we need to find a
16 room where I can get a connection or I get
17 the connection all day because you got it all
18 day today.  Seriously, I need to have an
19 Internet connection.
20     MS. BARBISCH:  I can see what I can do
21 with that.
22     MR. CRUNK:  We need to figure out some

Page 211

1  way to do that.  That's all I have.
2      THE VIDEOGRAPHER:  This concludes the
3  video deposition at 4:57 p.m.
4  (The deposition was concluded at 4:57 p.m.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Page 212

1          ACKNOWLEDGMENT OF DEPONENT
2      I, PETER MILLIKEN, do hereby acknowledge
3  that I have read and examined the foregoing
4  testimony, and the same is a true, correct
5  and complete transcription of the testimony
6  given by me and any corrections appear on the
7  attached Errata sheet signed by me.
8
9
10 _____    _____
11   (DATE)              (SIGNATURE)
12
13
14
15
16
17
18
19
20
21
22

Page 213

1  WASHINGTON
2  DISTRICT OF COLUMBIA
3      I, Jacqueline Kimball, a Notary Public in
4  and for the District of Columbia, do hereby
5  certify that foregoing transcript is a true and
6  correct record of the testimony given; that said
7  testimony was taken by me stenographically and
8  then transcribed from my stenographic notes to the
9  within printed matter by means of
10 computer-assisted transcription in a true and
11 accurate manner.
12     I further certify that I am not of counsel
13 to any of the parties, not an employee of counsel,
14 nor related to any of the parties, nor in any way
15 interested in the outcome of this action.
16     AS WITNESS my hand and Notarial Seal this
17 8th day of June, 2006, in Washington, D.C.
18 _____
19   Jacqueline Kimball, Notary Public
20   My commission expires March 31, 2008
21
22

54 (Pages 210 to 213)

66c21f86-d520-445d-913b-90968b36e1b5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

| | | | | |
|---|---|---|---|---|
| **A** | **add** 8:1,11,15 9:3 | 90:18 91:6,11,13 | 58:15 128:16 | 39:12 40:6,20 |
| **abilities** 39:20 | 30:21 31:4 | 92:6,12 98:19,21 | 145:2 157:8,9 | 41:11 42:15 43:14 |
| **ability** 87:12 189:8 | **addition** 19:15 | 99:6,7,14,21 | 182:3 187:16 | 44:2,9 45:3,14 |
| **able** 21:9 38:21 | 128:9 160:16 | 100:4,14 101:1 | 192:18 200:4 | 46:6 47:14 48:19 |
| 41:3 46:14 47:3,9 | **additional** 32:15 | 102:22 103:1,7,14 | **affirmative** 106:1 | 49:6,14,22 50:20 |
| 58:8,8 59:15 67:4 | 78:8,17 139:9 | 103:19 104:3,14 | **afore-referenced** | 51:16 52:4,10,16 |
| 159:8,19 160:9 | 140:2 148:16 | 104:16,17,18 | 139:2 | 53:4,16 54:3,12 |
| 168:1 189:4 | 151:2,9,19 199:9 | 105:22 107:7,20 | **agencies** 174:21 | 54:21 55:14 58:13 |
| 192:10 193:11 | 204:22 207:3 | 108:5 109:9,17 | 175:6,20 | 59:13 60:1 61:7 |
| 202:22 | **additionally** 206:21 | 110:2 111:10 | **agency** 176:8 177:2 | 61:19 62:4 63:8 |
| **absolutely** 136:3 | **address** 120:20 | 112:9 113:2 | 177:3 | 65:6,15 66:13,22 |
| **accept** 72:13 73:18 | 137:17 | 115:18 116:1,6 | **ago** 139:15 | 67:7,18 68:3 |
| 75:7 124:20 | **addressed** 205:9 | 125:22 126:2,12 | **agree** 96:5 101:20 | 69:14 70:2,12,21 |
| 191:14 | **addresses** 121:12 | 127:12 135:13 | 185:10 | 71:12 72:19 73:7 |
| **accepted** 71:4 | **addressing** 121:19 | 137:7,20 141:11 | **agreeing** 94:19,22 | 73:13,21 74:6 |
| 181:6 | 122:3,9,16 123:2 | 142:13 159:6,11 | **agreement** 74:22 | 75:3,10,22 76:14 |
| **accepting** 101:21 | **adjustment** 144:4 | 159:12,13 164:10 | 74:22 75:1,7,8 | 76:20 77:6,11,18 |
| **access** 42:18 178:2 | **adjustments** | 164:19 166:17,19 | 100:4 153:7 | 78:2,12,20 79:4 |
| **accurate** 8:13 | 153:13 | 167:4 171:12 | 185:13 | 79:13 80:1,17 |
| 213:11 | **administer** 207:12 | 172:6 173:3,13 | **ahead** 9:5 196:12 | 81:1,8,15,21 82:5 |
| **acknowledge** 75:13 | **administrative** | 174:22 177:10 | **aid** 51:6 59:2,8,17 | 82:11,20 83:13 |
| 212:2 | 80:21 207:6 | 178:1 179:5,16 | 63:1,13,17,19,22 | 84:4,9,16,22 85:8 |
| **acknowledgement** | **advance** 153:6 | 183:3 186:10,12 | 64:3,13 65:1,9 | 85:17 86:3,9 87:1 |
| 75:13 | **Aeroflex** 1:15 3:14 | 186:22 188:12 | 162:19 163:1 | 87:5,18 88:1,7,15 |
| **acknowledges** | 4:17 6:12 7:10 | 189:14 190:1,10 | 200:16 201:8 | 89:3,14 90:3,15 |
| 75:18 | 11:13,18 12:2,3 | 190:19 195:1 | **al** 6:12 | 90:20 91:9,20 |
| **ACKNOWLED...** | 13:9 14:8,14,21 | 197:9 198:14,20 | **allowed** 93:11 | 92:11,18 93:8,15 |
| 212:1 | 15:1,7,11 16:16 | 199:8 200:18 | **altered** 59:2,3,9,17 | 94:13 95:8,22 |
| **acquire** 44:13 | 16:17 18:1,8 | **Aeroflex's** 17:17 | 60:18 64:11 | 96:8 97:4,12,17 |
| **acquisition** 25:17 | 25:10,20 31:11 | 19:13 20:1 29:19 | 157:19 201:14 | 98:3 99:2,9,17 |
| 55:9 | 32:2,14,15 33:5 | 102:10 106:15 | 206:22 | 100:1,7,16,21 |
| **acronym** 42:22 | 35:21 36:1 37:7 | 194:21 | **ambiguous** 11:16 | 101:4,10,15 102:1 |
| **act** 169:9 | 42:12 45:4 46:16 | **Aeroflex-directed** | 11:21 12:11 13:4 | 102:7,19 103:3,10 |
| **acting** 120:22 | 50:17 51:4,12,18 | 204:9 | 13:14,20 14:6 | 104:1,8 106:17 |
| **action** 18:10 | 52:18 58:21 60:4 | **Aeroflex-specific** | 15:5,17 16:4,10 | 107:11 108:3,9 |
| 213:15 | 60:9,11 61:1,4 | 159:3 | 17:2,19 18:6,12 | 109:4,12 110:6 |
| **activities** 87:12 | 62:1,1,5 64:21 | **Aerospace** 193:19 | 18:18 19:18 20:5 | 111:1,14,14 |
| 155:19 173:20 | 66:1,6,10,19 | 194:2,4,20 195:17 | 21:13 22:18 23:17 | 112:13 113:4,22 |
| 185:11 | 67:22 69:17,21 | 196:2,7 | 24:4,12,21 25:14 | 114:7,13,18,22 |
| **activity** 138:20 | 70:4,7,9 73:8,10 | **AF** 4:9,11,13,15,19 | 26:2,8,18 29:14 | 115:7,14,21 116:9 |
| 177:2 208:2 | 73:18 74:3,19,21 | 4:20,22 5:3,4,5,6 | 31:13 32:8,18 | 117:1,22 118:7,19 |
| **actual** 27:7 91:17 | 79:21 80:15 82:1 | 38:16,17 45:19 | 33:14,21 35:12 | 119:3,12 120:6,13 |
| 134:7 208:1 | 88:3,20 89:21 | 54:15 56:19,21,21 | 36:5,20 37:3 | 121:2,15,21 122:5 |

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

122:19 123:4,11
123:20 124:6,14
125:2,10,20 126:4
126:14 127:3,15
129:17 131:3,19
132:5,18 133:5,21
134:4,13 135:20
137:15 138:1,14
140:20 141:10
144:16 145:15
150:5,14 152:10
153:21 154:18
155:17 157:2
158:2 159:1,17
160:14 161:14
163:20 164:14
165:1,10 166:21
167:8,15 168:18
169:3,16 170:12
170:18 171:15
172:10 173:5,15
174:2 175:2,9,14
176:2,15 178:7
179:8 180:3,16
181:14 182:14,19
183:17 184:16
185:5,17 187:11
188:15 189:18
190:14 191:1,22
192:7 193:15
195:5 197:5 198:1
199:1,12 201:2,13
202:3,12,19 203:3
203:16 204:15
207:19 208:20
**Ambit** 178:12,15
180:6,12
**amend** 203:19
**amended** 30:13
106:4 160:17
**AMI** 1:15
**amount** 144:10
147:12,13,14

153:1,4
**analyses** 92:5
**analysis** 90:8
148:21
**and/or** 33:12 41:7
45:1 71:1
**answer** 9:12 10:1
10:10,16,19 11:1
11:2,8 18:21 19:3
19:9,21 21:7
26:21 27:4,21
28:16,21 29:17,22
30:1,3 31:16,21
34:17,19,20 42:4
42:9 55:17,21
68:13,17 69:4
82:13 104:22
105:10 106:4,19
107:1,14 108:12
108:18 110:9,14
110:15 111:12,18
112:1,2,16,22
116:12,16 117:4,8
119:15,19 130:3,6
155:4,8,9 156:6
156:18 161:17,21
161:22 164:1,6,7
165:13 166:6
174:4,8,9 177:16
177:21 184:5,8,9
185:20 186:2
195:8,11 206:13
206:16,17
**answered** 23:1 30:5
34:14 36:21 51:17
61:20 63:8 65:16
66:14 67:1,18
68:19 73:14,21
100:8 101:10
109:5 111:2 112:3
113:5,14 114:14
118:14 119:5
120:13 123:12,21

124:7 125:2,21
127:4 135:4
141:17 145:16
152:22 154:13
155:12 156:11,14
156:17 159:2
163:9 173:6
175:10 181:2
187:5 199:21
201:18 208:8
**answering** 156:2,3
**Answers** 30:13
**Anthony** 197:6
**anybody** 107:8
**apart** 148:22
**apparently** 8:16
**appear** 129:2 212:6
**APPEARANCES**
3:1
**appears** 45:21
95:15 135:6
149:16
**applicable** 64:1
140:1 159:21
**application** 151:9
198:3
**application-speci...**
53:10
**applied** 148:2
159:4 165:21
**applies** 140:12
**approach** 72:9,10
**approaches** 12:1
166:16
**appropriate** 170:2
**appropriately**
156:17
**approval** 159:5
**approximate** 115:4
**approximately**
153:18
**April** 106:5 128:14
133:14,16 134:11

134:18,21 145:9
145:13 149:20
150:2 188:3,7,8
**archive** 173:19
174:14
**Array** 62:15 151:4
151:16
**ASC** 140:15
**ascertain** 22:13
41:1 43:17 44:6
46:14 58:5 85:6
116:4 138:11
139:3,12 167:22
195:14,17
**ASIC** 12:2 15:15
25:2 32:21 36:9
36:10,14,17,19
38:22 39:7 40:18
41:16 43:8,9,17
44:7,17 49:10,11
49:16 51:13 53:9
55:12 58:9,20,20
59:1,15 61:5 62:2
62:7 63:5,6 65:4
67:5 70:15 73:5
77:15 81:11 83:18
87:21 88:3 91:18
98:19 99:13
114:15,19,20
115:19 117:11,15
117:17 118:12,17
119:8 122:13
123:18 126:9,17
130:20,20,21
140:16 141:7
151:8,15 154:5
157:22 158:3,19
158:21 159:13
162:21 166:17
167:2 169:11,22
171:12 173:1
176:7,12,13,16,20
176:22 179:20

180:9,14,18
182:17 183:1,2
184:12 185:11
186:15 187:18,18
188:13 191:8
195:3 200:9,10,15
200:17,17,19,22
201:5,9,11,11,16
203:13 208:4,5,13
208:16
**ASICs** 11:14,18
13:6,16,17,21
14:2,7,10,15 15:3
15:22 16:6 21:9
22:5 24:7,10 25:3
25:21,22 26:16
27:13 28:10 29:3
32:15 33:7 35:19
35:22 36:1 37:12
37:12 56:4 66:16
66:17,19 70:16,17
70:18 71:10 78:8
78:17 96:14,21
97:6 99:6,20
103:18 113:19
114:2,5 115:3,5
115:11 116:5
119:20,21 128:8,9
131:15 133:12,13
133:15,19 134:9
134:17,19 135:1,6
141:2,12,14 145:7
145:8 149:19,20
150:1 154:15
156:20 158:6
163:2 164:18
169:12 174:15,18
174:19 175:7,22
178:3,5,18 179:5
179:16,19 180:7
183:8,14 184:13
200:11,13 201:21
202:4,8,9,16

Videotaped Deposition of:
Peter Milliken, Vol. III     June 7, 2006

203:1 206:21
208:6
**asked** 22:22 28:8
29:2 30:4 34:13
35:16 36:20 51:16
61:19 63:8 65:15
66:13,22 67:18
68:18 69:8 73:13
73:21 94:15 100:7
101:10 105:13
109:5 110:13
111:1,4,7 112:3
112:20 113:4,13
114:13 118:13
120:12 123:12,20
124:6 125:1,20
127:4 130:6 135:4
139:4 141:16
145:16 152:21
154:12 155:7,18
156:10 159:1
163:8 165:17
166:10 173:5
174:7 175:9 181:1
184:8 186:1 187:5
188:17 195:12
199:20 208:8
**asking** 20:8 112:4
**asks** 127:18
**assembly** 140:21
**assert** 19:15 177:10
**asserted** 18:9
**assess** 85:14
**assessed** 87:16,21
**assesses** 88:4
**assessment** 88:12
88:17
**assessments** 91:16
**assigned** 82:7
137:5,6,7
**assigns** 82:1
**assist** 171:4,7
**associated** 21:19

40:4,9 140:6
141:4 202:8
**association** 7:1
**assume** 26:2 81:21
197:15
**assumes** 15:18
17:20 25:5,15
26:18 34:1 41:17
43:15 44:10 46:17
47:14 49:7 50:20
52:17 53:16 54:21
56:15 58:13 61:11
63:9 65:16 67:7
67:19 69:14 70:2
78:3 79:5,13 85:8
85:17 89:3 93:16
94:13 95:8 96:1
98:3 99:2 103:3
114:22 117:1
118:1 119:11
120:6 129:8
131:10 132:19
134:5 153:21
160:1,14 167:16
169:3 170:19
171:16 179:9
182:19 185:17
189:19 193:15
205:14 208:19
**assuming** 35:10
**assumption** 24:1
**assurance** 87:8
118:8,9 119:7
148:7
**attached** 53:22
55:5 165:8 212:7
**attachment** 159:21
160:4,7,18
**attachments** 95:13
121:7
**attempted** 32:14
**attention** 46:20
94:2 105:15 161:5

206:3
**attorney** 9:10 10:8
19:6 27:6 28:12
29:7,19 68:22
112:7 130:4
155:18 166:8
177:18 184:7
206:15
**attorneys** 9:14,15
9:17,21 10:4 19:1
19:2,3 21:6,7 27:1
27:2,3 28:17,18
28:20 29:19,21,22
31:18,20,21 34:4
34:12,22 35:1,2,3
35:5,5 42:6,8,9
55:19,19,20 68:15
68:17 69:6,7,8,9
105:2,3,12,13
106:21,21 107:6
107:16,17 108:14
108:16 110:11,13
111:20 112:1,5,18
112:20 116:14,15
117:6,7 119:17,19
130:5 136:12
155:6,7 161:19,21
164:3,6 165:15,16
166:9 174:6,7
177:19 184:7
185:22 186:1
195:10,12 206:16
210:10
**attorney/client**
18:19 19:10,12,19
20:2,7 21:2 26:20
27:19 28:7,14
29:1,15 31:14,22
32:18,20 33:21
34:2 35:12 36:6
42:2 55:15 68:11
69:2 104:20 105:8
106:17 107:12

108:10 110:7,16
111:16 112:8,14
113:1 116:10
117:2 119:13
130:1,7 155:2,14
156:8,12 161:15
163:21 165:11
166:4 174:2
177:14 184:4
185:18 195:6
206:11
**attributes** 51:5,20
191:9
**audit** 175:17,17
**audited** 175:20
**authority** 207:7
**authorization**
12:17 16:21 17:5
17:15 18:2,9
19:14,16 20:1
36:3 53:20 54:8
54:18 55:10 56:2
106:1,15 107:9,20
107:21 108:6
110:4,19 112:11
161:7,12 162:5
177:9,11
**authorized** 46:14
80:14
**authorizes** 17:10
**await** 209:15
**awarded** 72:17
73:17
**aware** 56:1 151:11
**a.m** 2:3 6:4 20:15
28:2,5 43:2,5
74:13,16 86:12,15

─────────────
     **B**
**B** 37:21 38:2 55:2
130:19 131:7,9
132:3 135:22
146:7
**back** 10:12 28:4

43:4 44:22 73:18
74:15,21 77:20
86:14 98:14
130:13,15 136:10
160:22 170:16
171:1 176:16
181:9,20 193:21
194:11,17 204:22
206:3 208:21
209:2,10
**backtrack** 163:11
**badgering** 27:15
30:5 156:12
**bait** 181:8
**balance** 149:19
**Ball** 5:5 193:19
194:2,3,20 195:17
196:2,6
**band** 163:3,4
202:13
**Barbisch** 3:4 4:4
6:6 7:3,3,16,19
8:3,18 9:2,6,7
10:3,18 11:10
20:12,18 27:18
28:6 30:8,18,22
34:16 37:16 38:7
38:12 43:6 56:9
57:11 74:17 86:18
94:15,21 96:19
98:6,16 104:12
127:21 130:8,17
136:5,13,14,20
138:22 157:6
161:3 174:11
182:1 187:14
192:14 194:13
200:2 209:7,12
210:5,8,13,20
**base** 43:20,22
127:11
**based** 16:18 61:14
117:10,11 142:5,6

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 4

154:15 156:15
192:4
**bases** 105:22
**base-qualified**
50:13
**basic** 62:6,8,9,22
64:6 91:22 132:21
206:18
**basically** 12:20
17:8,10,11 39:19
47:19 66:5 71:22
76:4 100:10,12
138:6 139:8 162:3
191:16
**basis** 107:7 153:13
156:3 176:8
209:18
**Bates** 32:3,4 38:16
56:19,20 95:12
128:15 133:11
145:2 157:8,9
160:3 182:3
187:16 188:21
192:18 200:4,14
201:7
**bearing** 63:12,13
182:3 200:4
**bears** 38:16 56:20
157:8,9
**began** 109:8,16
110:1,18 111:8
112:5
**beginning** 86:16
161:1
**behalf** 3:2,8,14
46:15 120:22
**belief** 79:7 203:12
**believe** 23:20 24:18
31:1 33:11 35:21
37:9 44:18 57:3,5
57:11,13,17 95:17
97:8 105:4 111:3
128:10 129:4

130:10,12 136:12
136:21 139:4
143:3 149:22
154:9 162:16
191:18 201:3,16
202:6
**best** 8:6,8 58:4
**better** 72:21
**bid** 91:17 92:2,8
93:4,13 97:15,19
168:6 169:18
170:5 172:18,19
182:16
**bidding** 89:20 90:1
93:18 167:18,19
**bid-related** 92:21
**big** 82:16 132:14
**bill** 153:6
**bit** 206:5
**blank** 156:8
**blanket** 156:8
**blocks** 64:6
**Blvd** 3:16
**board** 141:5,8
**body** 205:18 206:1
206:4
**Boeing** 4:13,15,20
5:6 56:11 58:7
59:7,10 60:10
61:22 67:15 69:16
83:9,9 103:6,12
163:5 164:10
200:8 201:22
204:1 205:7
208:11
**Boeing-designated**
60:18
**Boeing-specific**
63:17
**boilerplate** 64:20
169:20
**bolts** 158:15
**booking** 143:2

**bottom** 160:10
161:6
**box** 72:4 206:5
**break** 27:22 98:6
136:4 151:14
194:7
**breakout** 152:1
**breakouts** 151:2,21
**brews** 178:22
**Brief** 28:3 74:14
98:12
**bring** 128:10
134:20
**broad** 15:20
**broke** 74:18 98:17
**broken** 12:21
**Brothers** 23:22
128:18
**brought** 134:19
**Bruder** 91:2,6,16
**BSS** 200:8
**BSS-10** 159:21
160:5,8
**BSS006** 162:21
**BSS010** 157:19
**BSS011** 200:16,19
207:1
**BSS012** 201:8,10
207:2
**bug** 131:17 145:1
**build** 60:15,16,16
60:20,22 61:2
72:21 76:8,11
87:14 147:21
**building** 64:6
136:18 148:3
**built** 63:2 114:15
114:20 207:1
**bunch** 82:17
**burden** 148:1
149:5
**business** 15:12
16:16 116:1

168:13
**buyer's** 207:7
**B-O-A-R-D** 141:5
**B-R-U-D-E-R** 91:4

---

## C

**C** 6:5 37:21 38:2
86:16 131:7,9
132:3 146:8,10
161:2 182:21
188:1
**Cadence** 126:12
178:12 180:6,12
**calculated** 149:8,13
**California** 1:2 3:13
6:14
**call** 45:6 50:5 76:15
102:12 130:9
134:14 135:15
174:12 189:21,21
**called** 7:12 39:13
53:6,7 64:14
163:2,4 178:12
184:2 207:14
**calling** 35:11 107:3
**calls** 17:6,7,20
18:12 19:7,18
20:5,6 24:4 25:15
26:8,19 29:14
32:9 33:14,22
36:7 42:2 43:14
46:6 49:6 53:17
55:14 60:1,8
63:21 70:3,12
71:12 78:13 79:17
80:11,17 81:1
82:5,11,20 83:14
84:9 87:5 91:20
93:7 97:17 100:1
101:15 103:10
104:8 107:11,11
108:1,3 109:4,20
110:6 114:7 115:7
115:14,21 118:19

119:3,12 120:8
121:2,15,21 122:5
122:19 123:4,11
123:21 124:7,14
125:3,10,21 127:3
127:16 129:17
131:19 132:5,18
133:21 134:4
140:20 144:16,21
145:15 150:5
155:17 158:12
161:14 163:20
164:14,14 165:2,2
165:10,12 166:2
166:13 167:8
168:18 172:10,11
173:6 175:2,15
176:2 177:13,13
178:10 179:8
180:3,16 181:2,14
183:4,9 184:3
185:5 188:15
190:14 191:1
192:7 193:4
194:18 195:4,20
198:11 199:1
201:17 204:5
206:9,10
**capability** 189:22
190:2,5 191:4,19
**capable** 126:6,16
179:4
**capacity** 39:20
113:17
**capital** 148:8
**caption** 6:9
**capture** 142:13
**captured** 65:11,13
142:22
**care** 191:18 192:1,2
192:3
**cart** 140:21
**case** 1:4,11 6:9,15

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 5

25:9,17 48:1 59:7
61:22 62:5 63:22
103:12 108:15,17
109:8,16 110:1,17
111:8 112:5,6
127:5 134:17,19
138:7,17 140:1,5
151:3,4,7 152:17
153:5 185:12
194:16 205:22
206:19 207:4
**cases** 108:15,17
138:16
**case-by-case** 176:8
**category** 148:13
**causes** 53:20
**caveat** 22:7
**CCA** 140:21 141:3
**cell** 151:16
**Centennial** 3:16
**center** 148:7
**central** 79:21 80:3
**certain** 12:3,18
15:22 16:6 70:5
72:2 155:19
158:18 191:9
204:17
**Certainly** 16:5
**certifies** 92:3
**certify** 213:5,12
**CFO** 91:3,7,11
**CFT** 151:17
**change** 132:2,7,10
132:11,13,14,14
160:20 203:14,18
203:21,22 205:1
205:19,20,20,22
207:8
**changed** 24:16
**changes** 131:15
205:21 206:1
**character** 62:10,19
**characteristics**

62:11 63:6,10
77:16 151:2
**characterization**
94:20,22
**characterize** 80:20
91:15 114:3
175:12
**characterizing**
94:17 95:3
**characters** 62:14
**charge** 140:5
**chart** 32:2 38:15
57:1,3,5 59:20
**chip** 151:5
**choose** 187:7
**chose** 187:3
**circuit** 53:11
140:21 208:1
**circumstances** 71:8
177:8
**cite** 9:16 27:5
120:17
**cited** 160:3
**claimed** 28:7 29:1
**claiming** 34:12
**clarification**
161:11 165:19,22
**clarify** 30:22 77:12
85:20 147:2
155:11 156:7
**clarifying** 162:4
**class** 50:6,6
**classified** 163:5
202:14
**clause** 17:5,8,16
18:3 19:14 36:3
55:3 177:9 184:10
**clauses** 16:22 54:8
56:2 107:22 108:7
110:19 112:11
118:9 120:15
183:21
**clear** 8:13 21:22

35:10 94:19
**client** 9:10 12:1
89:19
**clients** 68:15 69:7
**client/attorney**
9:16 10:2,11,17
11:9 19:4,22
20:11 27:5,17
30:2 34:10 68:20
107:2,18 108:19
109:6 155:10,12
155:22 174:10
**closed** 204:19
205:3
**clues** 158:20
**CMM** 196:22
197:19 198:12
199:8
**code** 45:7,8 46:9
51:19 59:5 139:9
140:9 141:3
146:20,21 147:3,4
150:17,19,21
151:3,7 152:3,5
**codes** 140:17
151:19
**coding** 51:2
**Colorado** 3:17,17
7:10 14:21 15:11
18:8 52:18 79:21
91:13 104:16
197:9
**Columbia** 213:2,4
**column** 21:14 32:6
130:19 135:9,10
135:11,22 138:4
138:17 139:6,22
140:9 141:19
142:10 143:7,19
144:6,10,11,11
145:19,20 146:3,7
146:7,10,11,14,17
146:18,20,21

147:2,4,8,15
148:1,14 150:17
150:22 152:5,13
152:14
**columns** 128:19
129:2 135:7
139:19 145:18
149:5 150:9,10,16
**combine** 64:13
**come** 10:12 28:11
29:6 51:3 73:17
74:19,21 92:3
102:14 167:10
172:1 204:22
**comes** 72:16 73:10
170:9
**commencing** 2:3
**commercial** 46:11
**commission** 213:20
**commit** 186:4
**commitments**
93:20,21
**committed** 87:12
**commodity** 150:17
150:19,21 151:3
151:11 152:3,5
**common** 121:18
122:2,15 127:8
**communicate**
168:21,22
**communicated**
126:1
**communication**
19:6 28:12 29:6
42:5 156:4 184:6
**communications**
18:22 21:5 26:22
27:7 28:17 29:18
31:17 34:3,11,21
34:21 35:4 68:14
105:11 111:19
130:4 155:5 166:8

174:15,17 195:9
**companies** 24:16
**company** 1:8,12
3:3 6:10,11 7:5
24:10 53:6 137:19
178:12
**compared** 17:17
129:20 205:7
**competency** 70:5
**competent** 70:7
**competitor** 70:8,10
**compiler** 65:3
69:22 70:8,18
71:4,7,9,20
122:11,12 123:15
124:4,10,10,12
125:6 175:21
178:20 180:8
183:8 188:13
**complete** 17:16
35:22 134:14
156:21 212:5
**completed** 204:19
205:3
**completion** 142:7
**complex** 64:12,18
**compliance** 76:8
**comply** 66:2
**compound** 25:13
52:16 63:8 65:16
76:19 93:15 96:2
109:4,11 111:15
115:8 131:20
159:17 167:7
169:4 177:15
190:14 192:7
204:15
**computer-assisted**
213:10
**concept** 117:14
**concerned** 8:17
15:12
**concluded** 211:4

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

| | | | | |
|---|---|---|---|---|
| **concludes** 211:2 | 177:9,11 184:10 | 13:1,10,11 14:18 | 65:11 92:20 93:3 | **conversations** 9:13 |
| **conclusion** 17:7 | **consider** 13:16 | 15:2,8,14 16:1,7 | 93:13 98:18 | 166:7 |
| 19:8,19 20:6 | 36:9,14,17,18 | 16:12 18:2 19:15 | 109:10,18 111:11 | **coordinated** 139:10 |
| 101:15 107:4,11 | **considered** 179:20 | 21:20 22:21 23:4 | 117:20 189:15 | **copies** 38:11 |
| 108:3 109:21 | **consist** 87:3 | 23:9 24:8,9 26:15 | **contractor** 25:8,9 | **copy** 59:3 82:15 |
| 155:17 161:14 | **consists** 76:21 | 27:12 28:9 29:3 | 72:16 74:21 78:7 | 104:16 |
| 164:14 165:3 | **constant** 39:9 | 29:11 32:3 45:5 | 78:16 94:3 100:3 | **Corbin** 7:1 |
| 172:11 177:14 | **consulted** 18:15 | 47:2 55:11 56:12 | 100:14 101:2 | **core** 189:11 190:19 |
| 184:3 188:16 | 19:5 31:9 105:6 | 57:19,20,22 58:3 | 102:21 120:21 | **corner** 160:7,10 |
| 206:10 | **consume** 153:8 | 64:5 65:7 67:2 | 124:12 126:21 | 161:6 203:5 |
| **condition** 172:15 | **consumed** 25:8 | 68:5 72:14,17 | 166:16 167:1,4,12 | 205:17 |
| **conditions** 4:11 | **consumption** 53:8 | 73:17,19 77:3 | 171:11 172:22 | **CORP** 1:17 |
| 46:22 47:5,11 | 153:10 | 80:15 84:13 85:4 | 196:10,13 | **corporate** 12:16,17 |
| 48:1,11,22 53:22 | **contact** 34:21 | 85:15,22,22 94:6 | **contractors** 63:18 | **corporatewide** |
| 54:19 56:18 118:3 | 167:21 168:2,16 | 95:14,15,16,17,19 | 74:3 84:2,7 99:5 | 137:21 |
| 118:10 119:1,9 | 169:8 196:15 | 97:22 98:20 99:10 | 103:14 119:22 | **Corporation** 46:21 |
| 163:16,18 164:11 | **contain** 145:11 | 99:14,19 101:5,6 | 120:11,19 123:7 | 48:22 59:7 69:16 |
| 164:12,21 165:6,8 | 154:4 | 101:8,11,12 | 123:16 180:22 | **correct** 11:19 13:11 |
| 165:21 172:14 | **contained** 36:2 | 103:21 113:20 | **contracts** 12:5 14:9 | 22:2,3,9,10,16,19 |
| **configurations** | 139:18 140:2 | 116:19,21 117:11 | 14:14 22:8,14 | 22:21 23:2,6,9,11 |
| 196:20,21 | 146:11 | 117:12,14,15,16 | 25:21 26:5 32:15 | 24:19,22 25:4 |
| **confirm** 49:1 97:20 | **containing** 107:21 | 119:7 121:4,5 | 33:6,12,18 34:5 | 30:6 33:1,7 43:10 |
| 130:22 133:11 | 108:6 | 142:9 157:12 | 35:6 41:7 43:7 | 44:18 52:2 57:14 |
| 150:9 183:13 | **contains** 156:20 | 162:9 163:1,7,13 | 44:6 45:1 56:3 | 59:14,21 60:3 |
| **confused** 186:19 | **content** 26:22 | 163:14 166:18 | 68:22 84:19,20,20 | 61:17 66:11 67:16 |
| 204:12 | 55:18 105:11 | 167:3 169:7,12 | 86:7 97:21 104:6 | 68:1 73:11,19 |
| **confusion** 57:8 | 111:19 166:7 | 171:18,20 172:8,8 | 107:21 108:6,21 | 75:20 78:10 79:2 |
| **conjunction** 36:1 | 206:14 | 172:21 177:10 | 108:22 109:8,17 | 81:13,17 82:18 |
| 96:11,16 97:1 | **contents** 9:13 42:5 | 181:3 182:6,12 | 110:3,19 111:9 | 83:11,19 86:1,21 |
| 104:5 105:3 | 69:5 102:16 105:1 | 184:14,18 185:2,6 | 112:10 116:3,5 | 92:4,4 98:1 101:2 |
| **connection** 33:19 | 106:20 107:15 | 187:2 193:22 | 123:1 163:11 | 101:21 102:17 |
| 34:6 35:7 93:5 | 108:13 110:10 | 194:2,5,15 195:15 | 164:18 169:11 | 106:9 107:22 |
| 103:20 210:16,17 | 112:17 117:5 | 195:18,19 196:16 | 179:22 194:3 | 118:12,15 125:18 |
| 210:19 | 119:16 155:5 | 201:22 203:7,9,18 | 205:7 | 132:3 137:2 |
| **consent** 16:22 17:5 | 161:18 164:2 | 204:7,8,10,13,16 | **contractual** 93:17 | 141:15 153:17 |
| 17:9,16 18:3,9 | 165:14 174:5 | 204:18,21 205:1,3 | 93:20,21 180:21 | 154:11 162:10,19 |
| 19:14,16 20:2 | 177:17 185:21 | 205:5,10 207:17 | 184:19 | 163:14 180:1,5,14 |
| 36:3 53:20 54:8 | 195:9 | 208:12 209:3,5 | **contrasted** 90:10 | 181:12 192:11 |
| 54:18 55:10 56:2 | **context** 55:5 99:11 | **contracted** 25:2 | **control** 64:2,14 | 209:6 212:4 213:6 |
| 106:2,15 107:9,20 | **continuation** 86:16 | 137:20 183:18 | 87:9 | **corrections** 212:6 |
| 107:22 108:6 | **continue** 25:3 | 184:13 | **controlled** 59:6,10 | **correlated** 49:19 |
| 110:4,19 112:11 | **continued** 2:2 5:1 | **contracting** 11:13 | **convention** 93:12 | **correspond** 38:9,14 |
| 161:7,12 162:5 | **contract** 4:15 12:21 | 12:8,13 18:4 | **conversation** 107:5 | 56:22 135:16 |

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 7

145:5,6
**correspondence**
  8:20,21
**corresponding**
  47:2 82:2 94:6
  184:20
**corresponds** 38:22
**cost** 16:18 72:21,22
  92:1 144:8 148:7
  148:12 149:2,3
**costs** 72:11 91:22
  148:16 149:9
**COT** 151:16
**counsel** 7:2,10,19
  118:8 119:6
  213:12,13
**count** 62:15
**counterclaims**
  106:4
**counts** 64:7,7
**couple** 139:4
  191:13
**court** 1:1 6:13,21
**cover** 8:8 170:3
**covered** 78:17
  135:1 156:22
  162:21
**covering** 7:21
  134:16
**CO3-04669** 1:11
**CO3-2290** 1:4
**create** 21:1 103:7
**created** 32:16 33:1
  61:22 62:5 163:6
  185:2
**creating** 65:3
**credibility** 179:1
**criteria** 63:3
  154:21
**cross** 45:6,7
**Crunk** 3:10 7:6,6
  7:22 8:11 9:1,3,10
  9:19,22 10:6,9,15

10:18,21 11:2,7
11:15,20 12:4,6
12:10,15 13:3,12
13:19 14:5,11,16
15:4,10,16 16:3,9
16:14,19 17:1,6
17:18 18:5,11,17
19:7,17 20:4 21:2
21:12 22:17,22
23:5,10,13,16
24:3,11,20 25:5
25:13 26:1,7,12
26:17 27:14 28:13
29:8,13 30:4,15
30:20 31:4,12
32:7,17 33:2,8,13
33:20 34:8,13,18
34:19 35:9 36:4
36:12,15,18 37:2
38:11,13 39:11
40:5,10,14,19
41:10,17 42:1,14
43:11,13 44:1,8
45:2,13,16,19
46:5,17 47:7,13
47:18 48:3,7,12
48:18 49:5,13,21
50:3,19 51:15
52:3,9,15,22 53:3
53:15 54:2,11,20
55:13 56:5,14
57:8 58:12 59:12
59:22 60:7 61:6
61:11,18 62:3
63:7,15,20 65:5
65:14 66:12,21
67:6,17 68:2,11
69:2,13,19 70:1
70:11,20 71:11,16
72:18 73:6,12,20
74:5 75:2,5,9,21
76:13,19 77:5,10
77:17 78:1,11,19

79:3,12,17,22
80:5,8,11,16,22
81:7,14,20 82:4
82:10,19 83:3,6
83:12,20 84:3,8
84:15,21 85:7,16
86:2,8,22 87:4,17
87:22 88:6,14,18
89:2,10,13,17
90:2,6,14,19 91:1
91:8,19 92:10,17
93:1,6,14 94:12
94:17 95:2,7,21
96:7,12,17,20
97:3,7,11,16 98:2
99:1,8,16,22
100:6,15,20 101:3
101:9,14,22 102:6
102:18 103:2,9,16
103:22 104:7,20
105:8 106:10,16
107:3,10 108:1,8
109:3,11,20 110:5
110:22 111:5,13
112:12 113:3,10
113:13,21 114:6
114:12,17,21
115:6,13,20 116:8
116:22 117:21
118:6,13,18 119:2
119:10 120:2,5,12
121:1,8,14,20
122:4,14,18 123:3
123:10,19 124:5
124:13 125:1,9,19
126:3,8,10,13,18
127:2,14 129:8,11
129:16,22 130:8
130:15,18 131:2
131:10,18 132:4
132:17 133:4,20
134:3,12 135:3,8
135:19 136:4,12

136:15,18 137:14
137:22 138:13,22
140:19 141:9,16
142:15,19 143:1
144:15,21 145:14
146:6 150:4,13
152:9,21 153:20
154:6,12,17 155:1
155:16 156:10
157:1,15 158:1,7
158:12,22 159:16
160:1,13 161:13
162:11 163:8,19
164:13,22 165:9
166:2,13,20 167:7
167:14,20 168:17
169:2,15 170:11
170:17 171:2,6,14
171:21 172:9
173:4,14,18 174:1
175:1,8,14 176:1
176:6,14,18
177:12 178:6,10
179:7,13 180:2,10
180:15 181:1,13
182:13,18 183:4,9
183:16 184:2,15
185:4,16 187:4,10
188:14 189:17
190:3,13,22
191:21 192:6
193:4,14 194:7,18
195:4,20 196:3
197:4,8,16,22
198:6,10,18,22
199:5,11,15,20
201:1,12,17 202:2
202:5,11,18 203:2
203:10,15 204:5
204:14 205:13
206:9 207:18
208:7,19 209:20
210:6,9,15,22

**Cs** 118:2 120:16
  165:20
**currency** 134:20
**current** 62:13 92:4
  134:18 205:8
**currently** 189:2
**custom** 11:18
**customer** 7:7 23:12
  24:14 39:10 49:10
  50:15,22 51:3,8
  53:13 54:13 60:14
  60:22 61:1 64:4
  64:12 65:8,18
  66:3 67:2 71:3,6,8
  71:18 72:9,10
  74:9 75:12 82:2,3
  83:7,17 84:12,18
  85:11,20 90:11
  94:3 95:16,17,19
  97:13,21,22
  101:16,19 103:5
  114:19 117:13,18
  118:2,12 124:8
  127:18 132:7
  134:8 135:22
  136:21,22 137:4,6
  137:10,11,12,13
  137:21 138:2
  141:22 142:3
  145:19,21 146:7
  146:10,12,14,15
  151:17,17 153:1,3
  153:8 154:1
  165:19 167:21
  168:10 169:1,6,7
  169:10,19 170:6
  171:7 172:2,6,12
  172:14 176:10,21
  177:5 181:5,7
  186:4 188:22
  189:4 190:7,20
  196:17 197:1
  204:16,20 205:3

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 8

**customers** 62:9,20
   64:8,19 84:1,6
   86:6 100:9 117:17
   118:17 126:1
   127:6 158:15
   189:14,15 190:1
   190:10 191:8,18
   199:7 203:18
**customer's** 16:20
   50:18 52:13,21
   76:4,22 77:2
   136:2 194:3
**customer-directed**
   204:8
**cut** 102:11
**cycle** 172:16
**C-03-2289-MJJ**
   6:15
**C-03-4669-MJJ**
   6:16
**C0-C8** 46:3
**C8** 45:22 46:3,4,8
**C9** 45:22

**D**

**D** 146:11,14
**dash** 62:10,10
   152:14
**data** 8:6,19 43:20
   43:22 92:1,21
   93:4 146:2 154:4
   156:20,21 166:12
   170:8 173:10
   209:14
**date** 47:22 48:15,17
   94:10,11 95:6
   100:19 115:5,18
   128:10 134:21
   142:5,6,10,12,12
   142:14 143:2
   153:19 212:11
**dated** 104:18
   160:18 188:7
**dates** 77:2 134:11

142:5
**David** 140:4
**day** 210:17,18
   213:17
**days** 210:1
**DA01** 23:8 131:7,9
   133:2 145:12
**DA01A** 140:1,6
**DA02** 23:8 133:2
   145:12
**De** 4:7 8:12 30:11
   35:17 38:15 47:1
   57:1 59:20 94:5
   157:11 182:5
   209:22
**deal** 97:19 170:9
**dealing** 164:18
**debating** 209:22
**debit** 144:4
**DECC** 43:18
**decided** 97:13
**decision** 15:2,8
   17:16,17
**declaration** 4:6,7
   20:20 30:10 35:17
   35:20 38:15 47:1
   57:12 58:11 94:5
   96:15,17,22 114:2
   128:7 130:21
   141:3,8 154:20
   157:11 180:19
   182:5
**declared** 36:10,16
   37:12 141:7,13
   149:21 154:16
   156:20 200:21
   201:11,16
**decoder** 51:22
   58:22 62:18
   138:11 139:2,11
   139:13
**Deem** 199:22
**defendant** 1:9 3:2

3:14 6:11
**defendants** 1:19
   3:8 6:12 7:7
**Defendant's** 30:11
**defense** 18:10,16
   19:15 42:21 46:9
   46:12 106:1,15
   107:19 177:11
   207:10
**deferred** 152:16,18
**define** 62:21 63:2
   64:10 75:4 100:10
   124:1 154:14
   173:11
**defined** 36:11
   51:20 62:6,11
   68:6 74:11 100:5
   100:19
**defines** 39:17 58:20
   62:12,14,15,16,17
   62:18 72:4 92:13
   101:1
**defining** 65:20 66:1
**definition** 39:19
   114:4 120:16
   122:15
**deliver** 100:14
   143:16 144:2
   147:18 186:21
   191:15,17
**deliverable** 102:3
   143:14 188:22
   189:1
**deliverables** 100:10
   100:13,18 101:1
   101:19 173:10
**delivered** 62:8
   208:2
**delivering** 149:2
   192:9
**delivery** 46:10
   67:13 77:2 100:5
   142:5,5,7 207:2,4

**Denise** 30:11
**Denise's** 57:11
**deny** 72:13
**department** 46:9
   46:12 90:18
   207:10
**depend** 92:15
**depending** 14:17
   138:19 172:12
   177:4 186:9
**depends** 54:13 65:7
   74:8 101:5,7,7,11
   121:4 124:8
   143:13 169:5
   204:7
**DEPONENT** 212:1
**depos** 8:17
**deposition** 2:2 4:8
   6:4 9:9,18 10:14
   11:6 13:9 37:7
   69:1 98:11 128:17
   136:8,17 209:17
   210:3,10 211:3,4
**depreciation** 148:8
**described** 133:13
**describes** 60:15
**description** 21:14
   72:11
**design** 62:1 65:3
   67:10,21 69:22
   70:8,18 71:4,7,9
   71:20 72:1,2 74:8
   77:14 99:6 102:12
   122:11,11 123:14
   124:3,9,10,12,19
   125:5,5 131:12,21
   132:1,2 173:9,12
   173:16,20 174:21
   175:21 176:17
   178:20 180:8
   181:5 183:8 186:6
   186:6,12,15
   188:13 189:7,8,9

191:4,7,11 192:2
   207:16 208:16
**designated** 30:18
   31:2 84:2,7
**designation** 31:5
   39:6,9 41:9 85:14
**designations** 8:2,5
   30:20
**designed** 52:13,14
   52:19,20 53:2,6
   179:15
**designs** 178:17
   186:4,6,7,9,16,17
   186:18 190:17
**design-phased**
   208:3
**desires** 16:20
**destructive** 148:20
**detail** 23:21 74:4
   74:10 102:16
**detailed** 73:4
   134:10
**details** 131:21
**determination** 51:7
   205:11
**determine** 16:15
   21:19 25:12 50:17
   71:1 83:18 116:7
   172:16 181:11
   193:10,11,18
   194:1 195:2
**determined** 61:14
**determines** 15:13
   16:12,18 51:8
**determining** 140:4
**develop** 99:15
   168:4,6 171:12
   202:16
**developed** 13:17
   15:22 16:6 53:14
   70:5 91:17 96:10
   96:15 97:1,15
   99:18 113:19

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

115:10,11,19
167:2 178:16
179:4 182:11
189:12
**developing** 88:3
99:7
**development** 11:14
11:18 12:2 67:10
87:10,15 88:4
115:5 123:18
166:17 168:13
169:22 175:7
**develops** 33:7
98:19
**device** 60:20 63:12
63:14 64:9 140:1
140:6
**Dickstein** 2:4 3:5
6:18 7:4
**dictated** 71:19
**DIFF** 200:10,13
201:5,9,10,21
208:5
**differ** 12:22 142:1
**difference** 45:22
50:12 131:8
**differences** 49:16
50:2,4 128:21
**different** 27:15
49:17,18,19 50:7
50:9 51:20 66:18
78:9 81:12 120:10
142:4 150:11
151:21 152:6
163:17 164:11,11
164:20 165:8
186:17 191:13
196:20 205:5
**digits** 138:12
**dip** 50:10
**direct** 91:11 161:5
183:7
**directed** 155:18

156:17 165:16
205:21 206:1
**directing** 12:18
60:22 61:1 207:6
207:10
**direction** 19:1 21:7
27:3 29:20 31:19
35:2,5 66:6 68:21
123:8,17 155:20
156:4 177:19
206:16
**directions** 174:16
**directly** 13:10
102:22 103:8,15
103:19 104:4
169:8,10
**director** 197:13
199:16,18
**disagree** 209:20
**disclose** 105:11
**disclosing** 31:17
**discovery** 18:16
**discuss** 167:12
**discussed** 7:22
135:18 174:20
202:1
**discussion** 107:15
108:13 110:10
**discussions** 31:6
55:18 69:6 105:1
106:20 112:17
116:13 117:5
119:16 155:20
156:1 161:18
164:2 165:14
174:5 177:17
185:21 206:14
**dispute** 8:16 9:4
**distinction** 184:18
**District** 1:1,2 6:13
6:14 213:2,4
**divided** 149:14
**division** 1:3 6:15

24:16 25:19
137:13,16,20
**divisional** 12:17
91:3
**divisions** 24:15
137:19
**divulge** 27:2,7,7
34:20 35:1 68:16
**divulging** 9:13
18:22 21:5 26:22
28:17,19 29:18
31:18 42:5,6
55:18,20 68:14
69:5,7 130:4,5
155:5,6 164:2,4
166:7,9 174:5,6
177:17,18 184:6
185:21,22 195:9
195:11
**doc** 76:4
**document** 20:13,21
21:1 30:13 31:9
32:1,11 37:8,18
44:15,16 45:18
48:9,17 60:9,10
64:15,17 85:6
92:12,16 94:10,18
94:20 95:1,5,20
104:19 106:10
129:20 130:15
131:1 132:22
133:3 145:4,10
152:10 159:6,7
162:1 182:4,8
183:3,10 187:17
187:19 189:6
192:19,21 193:5
200:5,7
**documentation**
60:14 75:15 88:22
89:8
**documented** 12:9
12:14

**documents** 10:13
10:20 11:5 38:18
47:21 48:16 56:13
56:14,22 57:16
58:5 76:6 89:22
92:8,13 105:22
120:17 133:19
134:2 157:10
163:10 173:21
174:13 181:3
187:4
**DOD** 45:21 46:2,4
**doing** 162:3
**dollar** 12:18 14:17
**domain** 42:12,17
59:11
**DPA** 207:4,9
**drawing** 39:14,15
39:17 40:2,3,9,22
41:1,20,22 42:11
43:10,12 44:13
49:18,20 51:5,11
58:17,19 59:2,4,9
59:18 60:18,19
64:2,11,14 157:20
158:5 159:4
201:15 206:20
**drawings** 42:17,19
44:12 206:22
**driven** 67:3
**DSCC** 42:16,20,21
43:19,20 44:6,11
159:5,9
**DSS006** 58:17 59:1
**due** 8:9
**duly** 7:12
**dump** 134:15
154:10
**Dwight** 199:22
**D.C** 2:5 3:7 6:7,20
213:17

E

**E** 138:4 139:22,22

146:17,18
**earlier** 32:21 81:4
95:4,18 123:16
135:18 178:1
193:8 201:22
205:6,9
**earliest** 115:5,9,9
115:18
**early** 116:3 207:13
**easier** 64:8
**Eastman** 185:3
**economic** 64:21
**economy** 186:10
**effect** 55:4
**effective** 94:9 95:5
**efficient** 64:5,19,22
70:6
**either** 8:15 27:10
31:5 38:18 66:3
72:14 73:16 88:8
101:19 124:20
128:20 168:16
173:7 188:12
189:10 190:18
**El** 200:8
**ELECTRONIC**
1:16
**electronically** 82:9
82:14
**embedded** 53:9
**employee** 213:13
**EMS** 23:22 24:1
**ends** 95:12 129:4
133:10 143:18
**engage** 16:16 117:9
117:10,11,13,13
117:14,16 118:11
**engaged** 65:8 73:9
116:2 138:20
169:6
**engagement** 64:5
64:21
**engaging** 117:18

engine 141:5
engineer 176:20,22
engineering 87:9
  140:8 143:12
enter 76:10 135:14
entered 46:15 61:3
  77:1 80:15 107:20
  116:19
enters 100:3
entire 132:15
  158:20
entity 24:17
entries 128:8
  154:19,21 206:18
entry 135:13
  143:17
environment 42:18
  179:14 191:10
environments
  178:17
equally 70:7
equipment 17:11
  148:9
equivalent 52:8
  131:15,16 147:6
Errata 212:7
erroneous 144:18
ESQ 3:4,10,15
Esquire 6:6
essentially 17:12
  51:1 64:13 102:8
  135:14
established 185:6
et 6:12
evening 8:5,7,22
eventually 61:16
evidence 15:18
  17:21 25:6,10,16
  26:3,19 34:1
  35:10 41:18 43:15
  44:10 46:18 47:15
  49:8 50:21 52:17
  53:17 54:21 56:16

58:14 61:12 63:9
  65:17 67:8,20
  69:15 70:3 78:4
  79:6,14 81:22
  85:9,18 89:4
  93:16 94:14 95:9
  96:1 98:4 99:3
  103:4 115:1 117:2
  118:1 119:11
  120:7 129:9
  131:11 132:20
  134:6 153:21
  160:2,15 167:17
  169:4 170:20
  171:16 179:10
  182:19 185:18
  189:20 193:16
  205:14 208:20
exact 17:9 60:19,20
exactly 59:4 62:21
  113:16 138:6
  162:20 178:14
  201:4
examination 4:4
  7:12,15
examined 212:3
example 24:18
  61:15 65:3 79:9
  83:8 85:12 102:4
  103:6 121:12
  131:6 133:1
  139:21 148:18
  153:14 184:12
  204:1
Excel 129:5,20
exception 24:9 66:9
  127:6,9 141:12
exceptions 172:17
Excuse 38:11
  198:18
execute 46:10
  73:19
exhibit 20:17 23:20

30:7,10 32:22
  35:20 37:6,13,15
  37:18 38:5,6,15
  38:17,20 46:20
  48:4 49:2,3 54:14
  55:3 56:7,8,11,20
  57:1 58:7 67:9,12
  70:15 78:22 79:10
  94:3 95:11 96:19
  97:21 104:11,14
  114:3 127:20
  128:1,1,3,5,7,15
  128:17 129:13
  130:10,16 133:10
  134:21 135:1
  154:4,22 156:19
  157:4,5,11,13,18
  159:19,20,22
  160:11,12 161:5
  180:19 181:22
  182:3,21 187:13
  187:16,22 188:1
  188:10 192:13,15
  200:1,4 202:22
  209:15
exhibits 4:5 38:9
  57:10
existence 33:12
existing 196:19
  203:19 204:7
exists 183:2
expect 205:1
expectation 205:4
expires 213:20
explain 47:4,9
  190:19 204:13
explicit 71:2
explicitly 44:16
  125:13 188:12,18
  190:16 191:3
Extending 30:12
extends 204:21
extension 162:5

extent 9:12 13:5
  18:21 21:4,4
  26:21 28:16 29:17
  31:16 34:20 42:4
  55:17 68:13 69:4
  104:22 105:10
  106:19 107:14
  108:12 110:9
  111:18 112:16
  116:12 117:4
  119:15 130:3
  155:4 156:19
  161:17 164:1
  165:13 166:6
  174:4 177:16
  184:5 185:20
  195:8,11 206:13
e-mail 8:15

F
F 139:22 146:20
Fab 140:3,4,5
fabrication 183:2
Fabrications
  187:19
fact 19:5 25:18
  27:8 41:3 44:7
  54:18 97:22
  130:22 133:12
  181:11 193:19
factors 16:18 192:4
factory 168:3 172:4
facts 15:18 17:20
  25:6,15 26:2,18
  34:1 35:10 41:18
  43:15 44:10 46:17
  47:14 49:7 50:20
  52:17 53:16 54:21
  56:15 58:13 61:12
  63:9 65:16 67:7
  67:20 69:14 70:2
  78:3 79:5,13
  81:21 85:8,17
  87:11 89:3 93:16

94:13 95:8 96:1
  98:3 99:2 103:3
  105:21 106:9
  114:22 116:4
  117:1 118:1
  119:11 120:6
  129:8 131:10
  132:19 134:5
  153:21 160:1,15
  167:16 169:3
  170:20 171:16
  177:7 179:9
  182:19 185:17
  189:19 193:15
  205:14 208:19
fair 127:10
fall 27:9
familiar 16:21
  125:18 178:3
family 58:20 59:1
  62:7,13 179:16
far 8:16 15:11
  183:21
fault 132:11,12
federal 55:8
feel 105:2
fields 62:19
fifth 131:14
figure 210:22
file 48:22 75:16
  76:3,3 77:20,22
  78:6 79:11 81:6
  81:12,12 82:16
  86:20 87:7,11
  89:9 93:22 102:13
  102:13 135:15,17
  145:22 166:12
  173:9,12
filed 106:5
files 79:20 81:5,18
  82:3,9,17 83:1,5,9
  93:11 173:19
  174:13,14

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

**Filing** 30:12
**filter** 154:11 169:9
**filtered** 154:14,15
**final** 61:4 90:11
  105:4 171:9
**finalize** 74:21
**finalized** 74:22
**finalizing** 75:8
**finance** 92:3
**financial** 8:6,19,21
  23:21 90:7,17
  91:16 92:5 209:14
**find** 58:22 71:18
  72:5 117:16 198:2
  200:12,16 201:6
  208:15,17 209:1
  210:15
**fine** 14:7
**finish** 62:17,22
**finished** 148:22
  153:9
**finishes** 50:9
**first** 38:9,14,20
  39:5 58:18 61:15
  94:9 102:11
  115:18 129:2,3,3
  130:13 132:8
  138:12 145:19
  203:5 204:11
  205:16
**FirstPass** 53:7,12
**FirstPass's** 53:13
**fit** 114:4
**five** 40:13 113:15
  138:12
**fix** 185:6,8
**fixed** 131:17
**flatpack** 50:8
**flexible** 93:19
**flight** 67:13 207:21
  207:22
**flow** 60:14 62:16
  72:1,3 73:11 74:8

124:19 125:5
  173:16 176:17
  191:5,7
**flowdown** 71:19,21
  162:4 184:11
**flowed** 72:1
**flows** 117:12
**following** 60:17
  160:4
**follows** 7:14 12:3
  161:11
**follow-on** 204:20
**force** 55:4
**foregoing** 212:3
  213:5
**formed** 161:20
**formulate** 169:20
**forth** 105:21
**found** 146:2
**foundation** 15:19
  44:10 46:18 47:15
  49:7 54:22 56:16
  58:14 61:12 78:3
  79:5,14 85:18
  94:14 95:9 96:1
  98:4 129:11 160:2
  160:14 193:15
  205:13
**foundry** 61:16
**four** 186:7,17
**FPGA** 178:15
  179:3,16,17,18,20
  183:1 187:18
**FPGAs** 178:17
**Francisco** 1:3 6:15
**from/change**
  205:19,22
**front** 205:19
**fulfill** 179:21
**full** 55:5
**function** 151:10
**functional** 132:22
  133:2 191:9

**functionality** 63:4
  63:12,14 64:16
  65:2,10 77:15
  191:12,15
**functionally** 52:7
  52:11 131:15,16
**furnish** 151:17
**further** 30:21
  119:22 213:12
**FY04** 145:7,8,12

———————

**G**

**G** 37:21 38:3 140:9
  146:21 147:2,4
  152:14
**GA** 151:3,7,12,16
**gap** 163:4
**gapfiller** 96:6 97:1
  162:7 163:3 202:4
  202:9,13
**gate** 62:15 64:7
  151:4,16
**gates** 62:15
**gather** 169:13
**gathered** 29:11
**gathering** 26:15
  27:12 28:9 29:2
**gathers** 76:4
**general** 11:13
  13:15 14:21 42:12
  53:21 58:21 91:12
  197:10 206:8
**generally** 125:17
  126:1
**generate** 196:22
**generated** 92:8
**Gentleman** 91:2
**getting** 82:16
  156:11 186:19
  190:20
**give** 66:6 99:5
  101:17 102:4
  121:11 148:18
  168:5 197:1

**given** 12:19 55:1
  62:1 142:8 153:12
  159:5 203:4 212:6
  213:6
**giving** 172:6
  205:21 206:1
**go** 9:5 20:12 40:21
  40:22 41:19 42:18
  43:18 44:11 45:4
  57:5 63:4,5 64:11
  70:22 71:17 76:17
  77:14 79:10 83:9
  102:16 116:20
  119:8 128:18
  135:9 145:18
  170:16,22 174:15
  176:7,13,16 181:9
  193:21 194:16,20
  196:12 199:16
  200:14 208:21
  209:4,7
**goes** 63:10 148:7,9
  148:10 171:9,10
  192:17
**going** 7:19 11:10
  27:10 29:10 30:3
  44:20 47:19 48:3
  57:9 59:17 60:22
  61:2 72:21,22
  77:20 90:8 101:17
  136:6 138:22
  157:19 159:9
  174:11 185:10,11
  190:8 195:17
  209:17
**gold** 50:10
**good** 7:17,18 149:1
**goods** 151:11 153:9
**government** 13:2
  13:10,17,18 14:2
  14:7,9,15 15:2,3,8
  15:15 16:1,1,7
  17:8,10,12 21:10

21:20 22:14,16,21
  23:4,9 24:18
  25:22 32:16 33:1
  33:7 36:2,10,17
  36:19 55:12 56:4
  63:18 70:16,17
  71:10,22 72:4,12
  72:12,15 73:1,3
  74:3,19,20 78:7
  78:16 83:18 84:2
  84:7,13,19,20
  85:4,15,21 86:1
  96:9,14,21 98:20
  99:5,10,13,19,20
  100:3,14 101:2
  102:21 103:13,20
  104:6 107:21
  108:21,22 109:8
  109:10,16,18
  110:3,18 111:9,10
  112:10 113:20
  114:5 115:12,19
  116:3,5,18 117:10
  117:12 119:7,21
  119:22 120:19,21
  123:7,16 124:11
  126:21 158:16
  163:14 164:18
  166:16,18 167:1,3
  167:4,12 169:11
  169:12 171:11
  172:22 174:14,19
  174:20 175:6,19
  177:2,9 179:6,22
  180:8,14,21
  182:12 184:10
  189:15 193:11,13
  193:20 194:2
  195:2,15,18,19
  196:9,13 197:20
  202:14 204:21
**GPM** 149:6,10,13
**grant** 72:14

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 12

**GRAPHICS** 1:16
**greater** 127:13
**grid** 50:8
**gross** 149:7,10,14
**group** 184:13
**groupings** 58:6
**guess** 11:17 12:16
  66:4 82:13 99:4
  99:11 114:9 122:7
  123:13 129:1
  137:9 150:17
  160:4 162:3
  184:17 204:12
**guidelines** 11:14
  12:8,13,22

**H**

**H** 37:21 38:3
  141:19 150:18,19
  150:22 152:5
**half** 189:11
**hand** 213:16
**handing** 20:19 30:9
  37:5,17 38:8
  56:10 104:13
  127:22 157:7
  182:2 187:15
  192:15 200:3
**handle** 153:10
  166:19
**handling** 198:14
**handout** 191:11
**happened** 8:14
**happy** 191:16
**hard** 82:14
**harder** 50:13
**hardness** 62:11
  63:1
**Hartwell** 168:4,12
  168:16 171:3
**head** 37:4 93:2
  121:17 137:3
**headers** 135:10
**held** 6:17

**help** 139:3 152:1
**high** 102:15
**higher** 127:11
**historical** 169:7
**history** 172:12
**HK48** 53:6,14
  114:16
**Hladkyj** 3:15 7:9,9
**hold** 24:13 188:6
  209:17
**home** 178:21
**Hook** 7:1
**hour** 210:14
**house** 88:4 148:21
**Howrey** 3:11 7:6
**hundred** 50:12
**hundreds** 40:13
**Hupp** 3:18 6:21
**hypothetical** 70:13
  78:12 103:11
  118:1 127:16

**I**

**ID** 7:20 135:11,12
  137:4,21 138:2,5
  138:10,17,18,19
  139:17 141:19
  145:20 146:4,7,17
  146:18
**idea** 32:11 40:12
  72:22
**ideally** 47:21 48:14
**identical** 52:11
  95:15 144:5
**identification**
  31:10 45:7,8
  51:19 59:5 106:5
  132:16 135:10
  138:7 139:8
**identified** 8:7 21:22
  22:4 24:7 25:22
  33:18 34:6 35:7
  35:16,18 46:22
  58:10 70:16 81:19

**94:5 115:3 152:7
  157:10 160:10
  172:18 182:4
  205:9
**identifier** 43:9
  158:19
**identifiers** 40:16
**identifies** 58:18
  140:11 158:18
  160:7 187:6
  188:21
**identify** 21:9 38:21
  41:3,15 43:21
  44:20 47:3,9
  51:13 52:1 58:9
  59:15 70:17 74:7
  85:3 97:6 105:22
  124:17,22 125:4
  128:21 137:12,16
  137:17 157:14,17
  157:21 159:20
  160:9 180:18
  187:2 188:11
  206:19,21 207:12
  208:11
**III** 4:3
**implicitly** 188:12
  188:18
**implied** 188:20
**imply** 203:6
**improper** 27:21
**inception** 133:15
  134:18
**include** 73:4
  125:15 148:5
  173:7
**included** 18:3
  55:11 56:3 143:5
  172:18
**including** 106:5
  154:21 183:21
  208:16
**inclusion** 17:15

**177:8 184:1 206:7
**inclusive** 182:7
**incomplete** 70:13
  78:12 103:11
  117:22 127:15
**incomprehensible**
  36:6 180:10
**inconsistency**
  138:20
**incorporated** 1:15
  6:12 47:5,11 48:2
  53:21 55:3,5,7
  91:11 95:13 160:5
  164:12,20 178:13
**incremental** 144:8
**indemnifies** 17:12
**independent** 71:6
  108:20
**independently**
  16:17
**INDEX** 4:1 5:1
**indicate** 203:8
**indicating** 139:9
**indication** 8:19
  207:15
**indicator** 138:18
  139:15,20
**indirect** 148:7
**individual** 22:8
  83:17 84:1,6,12
  93:19 106:6
  141:14 142:17
  168:3
**individuals** 118:21
**industry** 127:8
**influence** 15:1
**inform** 189:14
  190:1,10
**information** 42:13
  45:15 59:11 73:4
  85:6 89:12 92:21
  96:3 106:6,14
  110:3,20 116:7

**138:17 139:9,18
  140:2 142:22
  144:18 146:11
  155:14,15,15,21
  169:13 173:2,9,12
  173:17 187:8
  201:6
**informed** 124:11
**infringement** 18:10
**initial** 75:17 78:18
  79:1 124:1 145:5
  203:1,6,9 204:2
  208:5,12,15
**initially** 67:15 78:8
**initiates** 88:22
**input** 65:2,10,11
**inputs** 65:20
**inquire** 18:1
  197:19 198:2
**inquiries** 198:4
**ins** 153:12
**inside** 44:14
**inspection** 207:5
**instance** 83:19
  144:19 164:19
**instances** 41:13
**instruct** 9:22 10:9
  10:15 11:7 19:9
  19:20 27:4 28:20
  30:1 106:22
  108:18 110:14
  112:2,21 155:8
  161:22 164:7
  174:8 177:20
  184:9 206:17
**instructed** 27:6
  42:7 68:16 106:22
  108:16 111:22
  155:22
**instructing** 10:19
  27:20 34:16
**instruction** 10:7,22
  11:7 164:5

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 13

instructions 27:10
173:1 174:16
integrated 53:11
208:1
intellectual 25:11
intend 124:19
intended 131:16
intent 132:1,2
interact 103:8,15
118:17
interaction 175:5
175:13
interested 213:15
interesting 188:4
internal 51:18 60:5
76:5 86:20,21
87:3 88:13
INTERNATION...
1:17
Internet 210:19
interpret 60:12
62:20
interpretation
151:5 162:20
interrogating
201:14
interrogatories
4:18 104:15 105:7
interrogatory
105:16,21 106:7
introduce 7:2
invariably 125:4
143:14
inventory 153:9,11
investigated 175:21
investigative
175:18
invoice 134:7
141:19,21 142:1,6
142:8,10,12,12
143:10 147:10
153:3
invoiced 147:12,14

153:1
involve 155:19
156:16
involved 22:14
64:18 73:9 89:20
109:10,18 111:10
112:6 174:21
182:16
involvement 91:15
in-house 7:9 99:7
99:15
irregular 72:3
irrelevant 13:4,20
14:12 15:5,17
16:4,10 17:19
18:12 19:8 20:4
24:4 25:14 30:16
31:3,13 32:8 37:3
49:14,22 52:10
53:4 61:7 72:19
73:7 78:13 112:13
115:13,21 129:17
132:18 133:5
158:8 163:20
165:1,10 170:13
170:18 191:22
201:17
Irvine 3:13
issue 13:6,21 142:6
196:22 203:18
207:8 209:22
issued 141:21
185:12
issues 20:9 87:11
issuing 88:20
item 22:7,15 38:21
39:2 40:17,17
41:4,15 45:9
56:22 58:15,16
59:2,3,6,9,16,18
59:21 60:18 64:11
95:12 130:14
132:8 138:10

140:6,12 142:7
143:14 144:1,9
145:6 146:15
147:11,19,22
148:4 153:2
157:14,17,20,21
158:3 173:8
184:21 188:22
189:1 193:2 194:1
200:14 201:7,14
205:16 206:22
items 21:14 22:5,11
23:20 39:3,5
45:12 46:1 76:22
114:9 128:9 139:3
142:4 143:11
158:6 184:19
201:8 207:3 209:1
iterations 131:22
ITT 24:19 25:3,12
25:19 85:12
i.e 168:3 206:22
I/O 100:12 102:12
189:10 190:18
200:10,13 201:5,9
201:10,21 208:5

J
J 143:7,7
Jaci 6:22
Jacqueline 1:22 2:6
213:3,19
JD05A 22:12 24:13
Jerry 197:10
jobs 169:22
joined 98:10
Jordan 197:6,6,7
Jordan's 197:12
journal 133:12
135:6
July 133:15 134:11
June 2:3 6:3 213:17
JW01 22:20 153:5
153:15 154:2

JW02 23:8 145:12

K
K 143:19 144:11,11
KB07A 22:11
KB10A 22:11
KB11A 22:2
KC 115:2
KC01 38:22 39:7
39:10 40:4,9,18
41:2,4,8,16 43:8,9
43:21 44:5,7,16
44:21 45:8,10
49:10,11,16,18
50:16,17 51:13
52:6,12 53:2,5
57:20 83:16 85:3
85:12,21 86:6
114:20 117:15,19
192:22 193:3,10
193:13,19 196:7
196:10,14,18
197:3,18,20
KC01A 22:7,9 24:9
38:15
KC01s 52:7
KD08A 22:2 23:12
23:19 24:2 32:21
33:12
KD11A 22:12
KD12A 22:11
KD15A 22:2
KD21A 36:9,14,17
36:18
KD24 97:8,14
162:8,22
KD24A 22:5 57:1
57:13 59:21 60:6
65:4 67:4,5,15,22
68:7 69:11,21
70:10 77:22 79:1
79:9,11 94:7
95:18 96:10 98:1
202:9 204:3

KD25 97:9
KD25A 202:10
KD26A 57:17,22
157:13,14,18
202:9
KD31A 58:3
KD32A 182:6,10
182:11,17 183:14
184:22
KD39A 182:7,10
182:11,17 183:14
KD41A 37:1
Kent 80:9,14
Kent's 80:10
kept 79:20 82:9
102:15 143:2
Kerwin 140:4
kicker 169:9
Kimball 1:22 2:6
6:22 213:3,19
kind 64:15 120:10
178:21
KM01A 22:11
knew 28:8
know 8:20 12:22
17:9 23:12 26:5
26:10,11,13,14
27:8,11 29:11
32:13 35:14,15
36:8,22 40:8
41:21 42:10 46:4
46:8,9 50:22
52:12 53:13 55:22
56:6 59:4 61:4
68:9 69:11 71:14
71:15 72:20 73:8
78:15,21 79:15,16
79:19 80:13,14
81:5 85:2 86:5
89:15,16,16 91:14
92:20 93:3,9 95:4
95:10 96:4,6,10
97:10,14 99:11

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 14

103:18 104:10
113:16 122:7
125:13 127:5
128:16 129:19
131:21 133:18
134:9 136:1
149:17 150:16
152:2,13,17
153:18 156:5
159:18 161:7
163:7,16 164:8,16
173:21 175:4
176:4,5 177:7,22
178:14 182:21
184:17 187:21
188:3 190:8
192:10 198:8,9
199:13,14,14
200:18,21 201:10
202:6,15,15,20
**knowing** 59:19
107:7
**knowledge** 8:6 18:8
28:11 29:4,5 37:1
99:18 107:8 108:5
108:20,21 109:7
109:16 110:2,18
111:8 112:9,10
129:12 140:18
145:10 177:3
196:1 198:13
205:11
**knowledgeable**
106:8
**known** 59:2
**Kodak** 25:1,19
185:3
**Kodak's** 24:18
**Kodak/ITT** 25:9
25:17
**KRads** 50:12

_____
**L**
**L** 2:5 3:6 6:7,19

144:6,11,12 148:1
**label** 60:4
**labeled** 21:15 81:18
**labor** 92:2 147:20
147:21 148:3
149:5
**lack** 28:11 29:5
**lacks** 15:18 44:9
46:18 47:15 49:7
54:22 56:16 58:14
61:12 78:3 79:5
79:14 85:18 94:14
95:9,22 98:4
129:11 160:2,14
193:15 205:13
**late** 8:10 30:12
116:6 209:18,21
**law** 2:4 6:17
**lead** 50:9 62:17,22
62:22 64:7 177:10
**leaf** 50:11
**leaves** 136:8
**led** 204:16
**left** 136:13,13,16
136:18
**left-hand** 32:6
160:6,10 203:5
205:17
**legal** 17:7 19:7,18
20:6,9,9 93:17
101:15 107:4,11
108:3 109:21
118:8 119:6
155:17 161:14
164:14 165:2
172:11 177:13
184:3 188:15
206:10
**length** 10:3 92:15
**Leonardo** 178:19
180:7,13,20 189:2
**letter** 8:12 61:15
131:14 170:3

**Let's** 115:9 167:19
207:8
**level** 12:19,20
46:12 91:15
102:15 117:19
118:12,17 176:10
**library** 102:10
189:1,3,3,5,9,12
189:16 190:4,7,9
190:10 191:11
**license** 189:3
**lid** 151:18,18
**lieu** 64:2
**limitation** 189:21
**limitations** 189:16
**Limited** 7:5
**line** 12:19 14:19
23:19 38:21 39:2
39:3,5,5 40:16,17
41:4,6,6,15 45:9
45:12,22 46:1
54:15,17 56:22
57:21 58:15,16
59:6,15,20 76:21
88:8 95:12 113:6
113:11,17 130:14
133:1 140:6,11,12
142:4,7 143:7,14
143:19,20 144:1,3
144:6,9,11,11
145:6 146:14,15
147:11,18,22
148:3 151:1,6,8
151:15 153:2,14
157:14,17,21
158:3 161:12
173:8 184:21
193:2 200:14
201:7 206:4 209:1
**lines** 76:18 131:7
**list** 8:4 35:19,21
39:18 41:22 42:11
42:16 43:10 44:6

45:6 125:13 128:7
130:20 141:14
151:13,20 196:18
196:19
**listed** 24:1 32:6
44:12 66:15 106:8
106:13 140:22
141:2 150:3
193:22 200:15,16
201:9
**listing** 32:2 196:20
**lists** 49:18,20
**litigation** 26:6,16
28:10 29:4,12
33:19 34:7 35:8
41:22 68:10 93:5
109:1 129:15
173:22
**little** 138:20 151:21
204:12
**LLP** 6:19
**locate** 32:14
**located** 6:6,19
35:19
**location** 79:21 80:4
**log** 199:6,10
**logic** 126:7,17
**logical** 58:6
**long** 9:21 10:8
92:14,21 113:8,15
153:18 191:10
**look** 21:18 22:8,12
41:20 43:20 44:14
54:15 83:17 85:5
85:10 151:7 163:1
163:10 176:7,12
176:13,16 193:9
208:22
**looked** 205:6
**looking** 38:20 48:8
51:2 58:7 59:20
96:18 131:5
157:13 159:8

191:8 193:12
202:21 205:8
**looks** 57:2 138:18
152:15
**lot** 169:22
**lower** 46:12 160:6
**lunch** 98:7,13

_____
**M**
**M** 135:7 144:10
148:14
**magic** 51:22 58:22
138:11 139:2,11
139:13
**mailing** 137:17
**Main** 3:12
**maintain** 199:6,9
**maintained** 173:13
**maintains** 25:20
33:6 42:16 51:18
**management** 12:19
12:20 183:3
**manager** 14:19,20
14:21 88:8,9,10
89:19,19 90:13,13
91:12 92:7,7
93:10,10 113:6,11
113:17 139:11
140:3 167:22
168:2,9,13,15,22
170:10,16 171:1,7
171:11 172:2,2,3
196:16,17 197:10
**managerial** 197:2
**manages** 80:3
**manner** 213:11
**manufacture** 60:13
147:18,21 148:17
206:20 208:17
**manufactured**
39:21 59:5 78:8
159:10
**manufacturers**
178:16 179:3

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 15

| | | | | |
|---|---|---|---|---|
| **manufacturing** 17:11 39:18 50:4 50:6 62:16 63:11 64:16 76:7,10,12 76:16 77:7,9 134:15 142:17 143:3 148:3 207:3 **map** 40:17 **mapping** 39:9 **March** 188:2,3,5 213:20 **margin** 149:7,10,14 149:18 **margins** 4:19 128:6 145:7,8,11 150:1 **mark** 192:22 **marked** 20:17,19 30:7,9 37:6,15,17 38:5,6,8 56:7,8,10 104:11,13 127:20 128:1 157:4,5,7 181:22 182:2 187:13,15 192:13 192:15 200:1,3 **market** 178:4 **marketing** 171:7 172:2 196:17 199:16,18 **marketplace** 179:2 **Mary** 168:4,12,16 168:21 169:14 171:3 **master** 42:16 159:6 **match** 143:21 144:19 **matches** 51:6 188:8 **material** 147:15,17 149:4 169:21 **materials** 148:11 **MATROX** 1:16,16 1:17,17 **matter** 213:9 **mean** 62:19 67:12 | 76:12 84:1,6 101:6 106:13 111:12 118:5 129:19 139:3 162:14 179:12 185:8 186:13,20 191:6 204:11 **meaning** 118:3 138:11 150:11 152:7 **means** 122:8 190:11 213:9 **meant** 190:8,20 **mechanism** 192:11 **meet** 9:17,21 10:8 52:13,20 132:1 **meets** 132:9 191:9 **memorialize** 75:4 **memorialized** 75:1 198:4 **memories** 151:14 151:22 **mentioned** 48:20 139:14 **Mentor** 126:2,22 127:8,12 178:2,19 180:13 189:2 **Mentor's** 180:6,20 **menu** 60:19 **merely** 76:18 **met** 10:4 **methodologies** 170:1 **methodology** 64:4 72:5 **MIC** 152:2 **Michael** 3:18 6:21 98:10 210:13 **microcircuit** 39:14 39:15 40:2,3,8,22 41:1,20,21 42:11 42:17,19 43:10 49:17,20 51:11 | 58:19 60:17 158:5 159:4 206:20 **microcontroller** 21:17 22:7 41:6,9 41:14 53:8 152:4 **microprocessors** 151:22 **middle** 193:1 **Mike** 136:13 **military** 21:15,16 22:1,4 24:8,9 39:22 **Milliken** 2:2 4:2,6 6:5 7:11 20:21 86:16 161:2 212:2 **Milliken's** 96:22 **minor** 131:12,17 **minus** 149:9 **miscellaneous** 138:15 139:6,14 139:16 147:7 148:11 **mischaracterizes** 44:2 89:4 120:7 176:18 **mispage** 57:12 **misrepresents** 13:12 20:10 **missing** 20:13 57:2 134:20 **misstates** 28:13 33:2,8 34:9 48:18 67:19 75:2,10 78:2 79:4 81:15 83:13,20 87:1 109:12 111:5 119:10 162:11 167:15 170:19 171:15 189:18 195:6 202:11 203:10 205:14 208:7 **mistakes** 192:11 | **misuse** 27:19 **mix** 66:18 140:13 **mixed** 66:16,19 140:13 151:6,19 **MJJ** 1:4,11 **modification** 161:11 **modifications** 131:13 **modified** 131:22 **modify** 101:20 **moment** 139:15 **monitored** 175:20 **monitoring** 175:17 **month** 153:12 **months** 153:22 **Morin** 2:4 3:5 6:18 7:4 **morning** 7:17,18 **Mory** 4:7 8:12 30:11 209:22 **Mory's** 35:17 38:15 47:1 57:1 59:20 94:5 157:11 182:5 **Motion** 30:11 **multiple** 85:13 107:6 131:6 137:19 142:4,8 **multiplication** 144:10 ——————— **N** **name** 4:2 6:20,22 61:4,14 77:4 83:7 91:2 125:5 137:10 137:12 146:10,12 178:14 **names** 24:16 163:5 163:5 **naming** 93:12 **narrow** 15:21 **native** 129:13,19 130:10 209:14,16 **nature** 80:21 | **necessarily** 61:4 94:19,21 132:7 137:12 **necessary** 100:11 102:11 148:16 **need** 22:12 46:10 51:9,22 52:13,21 78:9 83:16 85:10 92:13 97:13 138:10 160:19 185:13 210:15,18 210:22 **needs** 50:18 72:20 90:9 **negative** 153:4 **negotiate** 167:12 **negotiated** 14:14 172:20 186:8 207:13 **negotiates** 14:9 **negotiating** 12:5 167:18 **negotiation** 12:18 166:19 172:7 **negotiations** 186:3 **netlist** 102:9 186:14,21 **never** 22:20 23:4,8 73:8,9 97:9,9 169:10 **new** 78:5 128:6,8 130:21 132:21 133:2,15,19 134:9 134:17 145:7,8,11 149:16 154:5 166:17 172:14,15 204:3,4,8 205:3,5 **newly** 37:12 156:20 **NNB8-8B4975** 203:5 **Nodding** 137:3 **nonRadHard** 50:13 |

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

**nonrecurring**
140:8 143:11
**normally** 143:21
178:22
**Northern** 1:2 6:14
**northwest** 6:7,20
**Notarial** 213:16
**Notary** 2:7 213:3
213:19
**note** 165:7 205:18
**noted** 160:17
**notes** 213:8
**notice** 2:1 4:8 8:10
37:6 207:8
**notification** 25:18
209:19,21
**November** 160:18
**NRE** 139:21 140:3
140:5,7 143:15
208:3 209:1
**number** 6:15 22:15
23:3,15 32:3,4,22
37:11 38:16 39:14
39:16 40:3,3
43:12,20 45:5,5
51:13,14 56:19
58:16,17 59:16,21
60:4,6 62:15 82:1
82:7 83:2,11
86:17 95:12,13,14
95:15 105:16
114:10,11 118:21
120:17 128:16
129:4 132:15,15
133:11 135:13,15
135:16,16 136:2
137:1,5,6,7 138:3
141:21 142:1,2
143:10 145:2,21
146:16 148:12
157:9 158:4 159:4
160:3 161:2
178:15,21 179:3

182:3 183:21
187:16 188:21
192:18 193:22
194:6,15 200:4,14
201:7,8,8 203:4
203:14 204:4,4
205:17 206:5
209:2,3
**numbering** 57:12
145:22
**numbers** 31:11
32:2,6 35:21 40:9
51:2 52:6,7 56:21
57:9 58:18 133:7
142:8 157:8
**numerical** 83:1
**nuts** 158:15
**NW** 2:5 3:6

───────────

**O**

**object** 10:10 11:10
27:18 68:18 107:3
108:8 146:6 162:1
**objecting** 31:2
**objection** 9:10,22
10:6,9,15 11:15
11:20 12:10 13:3
13:12,19 14:5,16
15:4,10,16 16:3,9
16:14,19 17:1,6
17:18 18:5,11,17
19:7,17 20:4 21:2
21:12 22:17 23:5
23:10,13,16 24:3
24:11,20 25:13
26:1,7,17 27:14
28:13 29:13 30:4
30:15 31:12 32:7
32:17 33:2,8,13
33:20 36:4,19
37:2 39:11 40:5
40:14,19 41:10
42:1,14 43:11,13
44:1,8 45:2,13

46:5,17 47:13,18
48:18 49:5,13,21
50:3,19 51:15
52:3,9,15 53:3,15
54:2,11,20 55:13
56:14 58:12 59:12
59:22 60:7 61:6
61:18 62:3 63:7
63:20 65:5,14
66:12,21 67:6,17
68:2 69:2,13,19
70:1,11,20 71:11
72:18 73:6,12,20
74:5 75:2,9,21
76:13,19 77:5,10
77:17 78:1,11,19
79:3,12,17,22
80:8,11,16,22
81:7,14,20 82:4
82:10,19 83:12,20
84:3,8,15,21 85:7
85:16 86:2,8,22
87:4,17,22 88:6
88:14 89:2,10,13
90:2,14,19 91:8
91:19 92:10,17
93:6,14 94:12
95:7,21 96:7 97:3
97:7,11,16 98:2
99:1,8,16,22
100:6,15,20 101:3
101:9,14,22 102:6
102:18 103:2,9,22
104:7,20 105:8
106:10,16 107:10
108:1 109:3,11
110:5,22 111:13
112:12 113:3,10
113:13,21 114:6
114:12,17,21
115:6,13,20 116:8
116:22 117:21
118:6,13,18 119:2

119:10 120:2,5,12
121:1,8,14,20
122:4,18 123:3,10
123:19 124:5,13
125:1,9,19 126:3
126:8,10,13,18
127:2,14 129:8,16
129:22 131:2,10
131:18 132:4,17
133:4,20 134:3,12
135:3,19 137:14
137:22 138:13
140:19 141:9,16
142:15,19 143:1
144:15,21 145:14
150:4,13 152:9,21
153:20 154:6,12
154:17 155:1,16
156:10 157:1
158:1,7,22 159:16
160:1,13 161:13
162:11 163:8,19
164:13,22 165:9
166:2,13,20 167:7
167:14,20 168:17
169:2,15 170:11
170:17 171:6,14
171:21 172:9
173:4,14,18 174:1
175:1,8 176:1,6
176:14 177:12
178:6 179:7,13
180:2,10,15 181:1
181:13 182:13,18
183:4,9,16 184:2
184:15 185:4,16
187:4,10 188:14
189:17 190:13,22
191:21 192:6
193:4,14 194:18
195:4,20 196:3
197:4,16,22 198:6
198:10,22 199:5

199:11,15,20
201:1,12,17 202:2
202:11,18 203:2
203:10,15 204:5
204:14 205:13
206:9 207:18
208:7,19
**objections** 9:19
10:21 11:11 12:4
12:6,15 14:11
22:22 25:5 26:12
27:14,20 29:8
34:8,13 35:9
40:10 41:17 48:12
52:22 56:5 61:11
63:15 71:16 80:5
83:3,6 88:18
89:17 90:6 91:1
93:1 96:12 103:16
109:20 156:13,15
158:12 171:2
178:10 190:3
197:8 202:5
**obligation** 93:20
**obligations** 180:21
**obviously** 132:1
156:15 178:19
209:20
**occurred** 165:18
**offer** 59:1 191:12
**offered** 190:4
**offering** 58:20 62:7
62:10,12
**offers** 39:20 58:21
**offices** 2:4 6:6,18
**official** 25:18
**off-the-shelf** 49:11
**oh** 132:9
**okay** 9:6 54:16 57:4
57:7 105:19 106:3
128:2 145:3
156:19 167:21
207:9

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 17

old 128:9 130:20
  133:13 134:19
  135:1 149:19
  150:1
once 168:4
ongoing 153:13
open 15:20 44:14
  209:18
option 75:19
  126:21 186:5
  187:3
options 39:20
  187:6
Orbital 4:9,11
  46:21 48:21 54:19
order 4:9,13,20 5:5
  5:6 15:14 16:8,13
  21:18 25:21 27:12
  30:12 32:3 33:6
  43:17 45:4 46:15
  46:21 47:3,4,6,10
  47:12,19 48:4
  53:21 54:1,9
  55:11 56:12,17
  58:8,10 60:5 61:3
  62:21 64:4,9 66:4
  66:5 67:11 68:6
  71:1 75:12,14,16
  75:17 76:3,3,5,9
  76:22 77:20,22
  78:7,9,10,16,18
  78:22 79:2,9,10
  79:20 81:5,5,6,18
  82:1,2,7,8 83:1,11
  83:17 85:3,6,10
  85:14,21,22 86:1
  86:19 87:7,11
  89:9 90:11 93:22
  94:11 95:6,12
  101:20 135:11,12
  135:13 136:2
  137:1 142:2,3,9
  142:13 143:2,4,13

144:1 145:19,21
146:4,14,16
157:12 159:20,22
160:7,17 162:13
162:15 164:9,20
165:20 171:17,19
173:8 174:13
181:10 182:5
183:19 184:14,19
184:21 185:14
186:22 193:9,9,12
200:8 202:21
203:1,4,7,9,17,19
203:19,22 204:2,3
204:4,11,17,19,22
205:1,5,17,20,21
206:2 207:14,20
208:3,18 209:2,4
209:13
ordered 204:2
ordering 60:10
  64:20
orders 22:13 26:6
  26:15 28:9 29:3
  29:12 31:10 32:5
  33:12,18 34:5
  35:7 41:7 43:8
  44:22 46:13 56:3
  78:5 79:11 81:11
  85:13 120:4 121:6
  165:5 185:12
  204:20 208:11
Order/Contract
  5:2
organization 76:7
  167:10,11 168:4
  168:14
organized 82:3
  83:10
oriented 127:7
origin 159:7
original 78:5
  129:20 132:1

163:14 164:9
205:10
originally 25:2
  52:12,14,19,20
  53:2
Oshinsky 3:5 6:19
  7:4
outcome 213:15
outs 153:12
outside 11:16,21
  12:11 13:4,13,20
  14:6 15:5,16 16:4
  16:10 17:2,19
  18:6,11,18 19:8
  19:17 20:5 21:12
  22:17 23:13,16
  24:3,11,20 25:14
  26:2,7,18 29:13
  30:15 31:12 32:7
  32:17 33:14,20
  34:3,11 35:4,11
  36:5,19 37:2
  39:12 40:6,19
  41:10 42:1,14
  43:13 44:1,9 45:3
  45:13 46:5 47:14
  49:5,14,22 50:20
  51:16 52:4,9,16
  53:3,15 54:3,12
  54:22 55:13 58:13
  59:13 60:1,7 61:7
  61:18 62:3 63:20
  65:5,5 66:12,21
  67:6,18 68:2
  69:13 70:1,11,21
  71:12 72:18 73:6
  73:12,21 74:5
  75:5,10,22 76:14
  76:20 77:11,17
  78:2,13,20 79:3
  79:13 80:1,12,17
  81:1,8,15,21 82:5
  82:11,20 83:13

84:9,15,21 85:7
85:17 86:2,8 87:4
87:18 88:1,6,14
89:2,13 90:2,14
90:20 91:8,20
92:10,17 93:6,14
94:12 95:7,22
96:7 97:4,11,16
98:2 99:2,8,17,22
100:7,15,20 101:3
101:22 102:6,19
103:2,9,22 104:8
106:16 107:5
108:2,9 109:4,11
110:5,22 111:15
112:12 113:3,14
113:21 114:6,12
114:21 115:6,14
115:20 116:8
117:1,21 118:6,19
119:2,12 120:2,5
120:13 121:2,8,14
121:20 122:5,18
123:4,11,19 124:5
124:13 125:2,10
125:19 127:3,15
129:16 131:3,19
132:4,17 133:4,20
134:3 135:3
137:22 141:9,17
142:15,19 145:15
148:15,18,21
150:4 154:6 155:1
155:15 156:6
158:1,7 159:1,16
163:19 165:1,9
166:3,14,21 167:8
167:14 168:18
169:2,16 170:12
170:18 171:14,21
172:9 173:4,14
174:1 175:1,9,15
176:1,14 177:12

178:6 179:7 180:2
180:15 181:13
185:17 189:18
190:14 191:1,22
192:7 195:5 196:3
197:4,22 198:6,10
198:22 199:11
203:16 210:3,7
overhead 92:2
127:12 148:2,5,8
148:9,10,13
oversight 90:17,22
113:19 177:1
197:2,2

─────────
          P
─────────
P 3:10
package 50:7,8
  62:16,22 64:6
  87:9 97:19 102:13
  102:14 151:18
  168:6 169:18
  170:6 172:18,19
packages 87:13
  92:2
page 32:1 35:20
  38:20 45:19 48:9
  54:14 57:2,9
  58:15 95:11
  105:16,17 128:12
  129:3 130:13,19
  131:1,5,6 133:10
  138:4 143:18
  146:4 148:1
  149:15 150:15
  152:14 160:3,12
  161:4 182:22
  183:20 187:22
  188:21 193:1
  203:5 205:19
  206:6
pages 129:2,4
  145:6
paragraph 21:10

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

32:22 37:13 55:2
58:11 70:16 96:15
96:22 183:20
**paragraphs** 206:18
**part** 31:11 32:2,5
35:21 39:21 40:17
51:4,9 55:1 60:4,5
64:12 65:18 76:11
124:16 131:13
138:4,7,10,17,18
138:19 139:17
140:9,17 141:3
146:17,17 147:3
149:1 173:10,16
207:2,3
**participate** 172:7
210:11
**participated** 176:9
**participating**
210:10
**particular** 41:15
51:5 53:11 62:5
62:14 63:22 66:7
67:9 153:5 154:1
194:16
**particularly** 189:15
**parties** 104:4
213:13,14
**parts** 148:11,22,22
149:1
**party** 52:21 102:22
103:6,8,15,19
120:22
**pass** 169:14
**patent** 18:10
**pause** 28:3 74:14
98:12
**PDF** 48:22
**pending** 122:14
150:14 172:19
198:19
**people** 42:8,18
**percent** 125:6

149:10,11,13
**perform** 124:2
**performed** 164:5
**performing** 126:6
126:16
**period** 156:22
**Permit** 30:12
**person** 14:8 80:3,7
**personally** 68:21
117:19 170:8,15
175:5 182:16
196:1
**perspective** 50:5
184:18
**pertaining** 155:21
**pet** 163:5
**Peter** 2:2 4:2 6:5
7:11 20:21 86:16
161:2 212:2
**phrase** 17:9 21:15
**physical** 63:5,10
77:15 148:21
**PIC** 52:1 61:4,14
130:14,20 132:15
132:15 138:8
139:12 200:18
**pick** 51:1,3
**picked** 134:17
**PICs** 51:21 128:7
131:5 134:16
209:1
**picture** 82:16
**pieces** 144:2
**pin** 50:8
**pin-list** 100:12
102:13
**Pitcher** 128:18
**place** 65:21 142:3
188:20 204:17
**placed** 81:6
**placement** 172:20
**plain** 50:10
**plaintiff** 1:6,13 3:2

3:8 6:10
**platform** 114:20
115:2
**platforms** 114:15
**please** 7:2 20:8
47:8 84:5
**PO** 78:5 135:15,17
135:22 136:21
145:22 166:12
**point** 68:5 74:20
112:8 132:13
**pointer** 48:21
**policies** 89:21 90:5
**policy** 90:5 92:6,13
**portion** 102:3
**posed** 194:14
**position** 19:13 20:1
113:9 197:12,15
**positive** 136:3
137:1 162:22
**possession** 194:22
**possible** 43:7
103:14,17 144:14
164:10
**possibly** 47:16,17
**potential** 12:1
25:22 123:14
169:12
**potentially** 14:19
24:8 70:17
**powers** 12:18
**practice** 13:15
197:19
**precap** 207:5
**precedence** 165:20
**prefix** 158:18
**prenegotiated**
172:13
**preparation** 9:18
10:13 11:6 69:1
171:4
**prepare** 9:8 170:5
170:15

**prepares** 170:22
**preparing** 18:15
172:5
**PRESENT** 3:18
**presented** 45:15
**presents** 73:2
**president** 14:21
91:12 197:10
**previous** 13:9
128:17 146:3,8,12
146:18,21 147:2,7
171:8,8
**previously** 37:5
127:22 130:11
149:20 152:7
179:6
**price** 77:3 91:17,17
127:11 144:6,9
184:21 185:15
186:8 196:18,19
198:17
**priced** 185:11
**prices** 185:7,8
**pricing** 92:1 185:14
186:8 198:15,16
**primarily** 76:21
**prime** 13:11 16:7
72:1,17 163:7,11
163:13 193:21
194:5,15 204:16
**printed** 213:9
**prior** 13:13 20:10
23:20 28:14 33:2
33:8 34:9 44:3
48:18 67:19 75:2
75:10 78:2 79:4
81:15 83:13,20
87:1 88:20 89:4
107:19 109:13
111:5 119:10
120:7 129:13
162:11 167:16
170:19 171:15

176:18 189:19
195:6 202:11
203:11 205:15
208:7
**priority** 45:21 46:2
46:4,9,11,13
207:9,10
**private** 180:19
**privilege** 9:11,11
9:16 10:2,11,17
11:9 18:19,20
19:4,10,11,12,19
19:20,22 20:3,7,8
20:11 21:3,3
26:20,20 27:5,17
27:19 28:7,15
29:1,15,16 30:2
31:14,15,22 32:19
32:19,20 33:22,22
34:2,10,12 35:13
36:7 42:3,3 55:15
68:11,12,20 69:3
69:3 104:21 105:9
106:18,18 107:2
107:13,18 108:10
108:19 109:6
110:8,16 112:8,14
113:1 116:10
117:3 119:14
130:1,7 155:2,10
155:12 156:6,8
161:15 163:22
165:11 166:4
174:10 177:14
184:4 185:19
195:7 206:11
**privileged** 10:5
155:14,22 156:13
174:3
**probably** 70:22
71:17 137:9
151:21
**problem** 24:15

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 19

**procedure** 72:8
**procedures** 12:3
**proceedings** 6:1
28:3 74:14 98:12
**process** 44:21 47:4
47:10 61:16 65:11
65:19 73:4,9 75:8
75:16 76:16 88:4
88:19 89:1,20
90:1,18 92:9
93:18 97:15 98:18
109:10,19 111:11
123:2,8 124:16,17
124:21 167:5
171:13 182:17
185:3 196:9
197:18 198:14,20
**processed** 172:4
**procurement** 64:12
207:20 208:6,13
**produce** 64:14
132:8 159:13
178:18 191:12
**produced** 26:6
35:14 36:1 39:21
41:22 57:16 58:6
68:9 93:4 97:9
129:6,14 134:22
162:9 173:22
192:21
**product** 9:11 12:19
14:19 18:19 19:10
19:20 20:7,20
21:3,17,21 26:20
28:15 29:16 31:14
32:19 33:22 35:13
36:7 39:19 42:3
45:6,8 49:12
50:14 51:19 52:14
52:19 53:10 55:16
58:11 59:4 60:10
63:2 68:12 69:3
70:8,10 77:8,12

87:8,14 88:8
89:19 90:12 92:7
104:21 105:9
106:18 107:13
108:10 110:8
111:16 112:7,14
113:6,11,17
114:11 116:10
117:3 119:14
130:1 131:14
132:15 138:9
139:8,10 140:9,11
140:17 141:2,3,13
145:22 146:20,21
147:3,3,18,22
148:17 149:2
151:1,6,7,8,15
152:1 155:3
156:16,18 158:14
158:17 159:10,11
161:15 163:22
165:11 166:4
174:3 177:15
184:4 185:19
192:10 193:2
195:7 196:8,18,21
198:14 206:11
**production** 26:16
28:10 29:4,12
67:10 87:9 130:9
174:12 209:14,15
**products** 13:1 22:1
39:18 66:10,16,17
66:18 113:7,12,18
114:4 141:1
145:11 148:12
151:13,20 152:3
158:10 159:14
174:22 197:14
198:21 207:1
**Professional** 2:6
**proffered** 14:3
**profit** 149:7,10,14

**program** 21:15
22:1 88:8,10
89:19 90:13 92:7
93:10 94:4 96:6,9
96:11,16 97:2
139:10 140:3
163:4 177:5 185:7
185:9,10 202:14
202:14,16 205:2
**programming**
202:4
**project** 93:10
**property** 25:11
**proposal** 65:18
66:1 71:5 72:7,12
72:14,16 73:3,3
74:9 88:19,21
89:7 92:20 93:4
124:20 168:11
170:2 181:6
**proposals** 93:13
98:18 181:10
**propose** 72:7
**proposed** 71:3
181:4,11 191:16
**proposes** 73:1
**proposing** 71:6
**protection** 28:15
105:9 107:13
108:11 110:8
111:16,17 112:15
116:11 117:3
119:14 130:2
155:3 161:16
165:12 166:5
174:3 177:15
184:5 185:19
195:7 206:12
**provide** 102:9,21
103:1 119:22
120:11,19 123:8
123:17,22 126:20
126:21 139:1

173:2,10 187:8
189:4
**provided** 69:17
99:21 120:21
191:17 196:2,6
**provides** 74:3
91:22
**providing** 64:19
**provision** 32:3
55:10 56:12
157:12
**provisions** 5:3 47:2
48:11 55:2 57:19
57:20 58:1,3 94:6
117:20 174:17
182:6 204:17
206:6,7
**public** 2:7 42:12,17
58:21 59:11 213:3
213:19
**pull** 83:8 209:4
**purchase** 4:9,13,20
5:2,5,6 15:14 16:8
16:13 21:18 22:13
25:21 26:6,15
27:12 28:9 29:3
29:12 31:10 32:2
32:5 33:6,11,18
34:5 35:6 41:7
43:8 44:22 45:4
46:15,21 47:3,4,6
47:10,12,19 48:4
50:16 53:21 54:1
54:9 55:11 56:3
56:11,17 58:8,10
60:5 61:3 66:4,5
67:11 68:6 71:1
75:12,14,15,17
76:2,3,5,9,22
77:20,22 78:5,9
78:10,18,22 79:2
79:9,10,11,20
81:4,5,6,11,18

82:1,2,7,8 83:2,11
84:18 85:10,13,14
85:20,21,22 86:1
86:19 87:7,10
89:9 90:11 93:22
94:11 95:6,12
101:20 120:4
121:6 136:2,22
142:3,8 143:13
146:16 157:12
159:20,22 160:7
160:17 162:13,15
164:9,20 165:5
171:17,19 173:8
174:13 182:5
183:19 184:14,19
184:20 185:12,14
193:9,12,13,20
196:10,13 200:8,9
202:21 203:1,4,7
203:9,17,19 204:2
204:3,4,17,18
205:5,17 206:2
207:14,20 208:3
208:11,15,17
209:2,4
**purchased** 15:22
16:6 24:19 85:12
86:6 178:12
**purchaser** 23:22
**purchases** 49:10
77:21 84:13,13
203:13
**purchasing** 55:1
197:18
**Purely** 67:2
**purpose** 53:11
**purposes** 14:1 88:5
197:21
**pursuant** 2:1 35:17
58:9 85:4 98:20
99:13 113:20
162:9 163:6

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 20

166:18 167:3
182:11 195:18
**put** 50:8 75:14,14
170:1,4 172:15
**p.m** 98:9,15 136:7
136:11 160:20
161:1 181:18,21
194:9,12 209:9,11
211:3,4

---
**Q**
**QML** 39:17
**qualified** 39:18
**quality** 50:5 63:11
87:8 95:13 118:8
118:9 119:6 148:6
**quantities** 77:1
**quantity** 58:16
143:8,9,12,19,20
143:22 144:3,4
147:10 184:21
200:15 206:5
**question** 9:5 11:1,3
11:17 15:6,20
17:22 27:16 28:22
29:10 34:17 36:13
47:8 54:4 61:8
84:5 94:9,16
96:20 99:4,12
109:14 111:3,14
112:3 116:17,18
119:5 122:1,14
135:8 150:14
157:16 166:22
177:1 188:17
194:14 198:19
201:19
**questions** 20:8,9
116:20 156:16
210:2
**quit** 20:8
**quite** 94:18 152:15
206:5
**quotation** 65:19

73:11,18 75:6,7
75:14,18,19 76:5
76:9 88:20,22
101:13,18,21
102:5,15 123:15
126:20 167:2,5,13
168:9,10 169:1,21
170:2 171:10
172:5,6 187:9
196:22 198:16
**quotations** 74:2
100:9,18 125:7,15
127:10 170:15,22
171:5 181:10
196:2,6
**quote** 66:1 70:22
74:20 101:7,7,16
127:19 130:20,20
130:21,21 167:5
171:8 199:6,9
**quoted** 199:6
**quoting** 124:16,21

---
**R**
**radiation** 50:11
62:11 63:1
**raising** 107:19
**range** 57:5
**ranges** 32:3,4
**rates** 92:2,2,4
**rating** 207:9,11
**read** 54:5 57:13,17
58:1 61:9 129:5
212:3
**reading** 179:18
208:10
**ready** 161:8
**real** 93:19
**really** 127:18
**reason** 70:9 95:17
143:22 149:22
**Rebecca** 3:4 6:5 7:3
**recall** 8:9 23:18
**receive** 98:21 143:4

153:19 209:18
**received** 25:18
82:14 90:11 92:8
130:12 147:13
209:21
**recipe** 60:19
**recognition** 153:10
**recognize** 20:21
182:7 186:10
200:5 207:11
**recognized** 153:16
**recognizing** 153:6
**recollection** 164:17
**record** 6:3 7:20 8:1
8:4,12 20:13,14
20:16 21:22 28:1
28:5 31:5,6,6,7
43:1,3,5 54:5
56:19 61:9 74:12
74:16 76:10 86:11
86:13,15,21 98:8
98:15 128:15
136:6,11,16
160:20,21 161:1
179:18 181:17,19
181:21 194:8,10
194:12 209:7,8,11
209:12 213:6
**Recorded** 75:6
**recording** 198:21
**records** 25:20
134:20 199:9
**REF** 135:22 136:21
**refer** 14:1,3 48:10
**reference** 41:5,14
45:6,7 49:3 55:4
62:20 95:14,14
120:18 125:12
136:2 137:1
138:15 139:6,14
139:15,16 147:4,5
147:6,7 152:13,14
152:15,18,18

159:6 160:5
162:16 196:17
200:12 209:1
**referenced** 123:15
160:6 163:12
182:21 188:2
**references** 47:20
125:16 183:21
208:22
**referred** 49:3 81:4
160:11 187:22
193:2
**referring** 45:17
48:5 121:6
**reflect** 65:1,9
**refusing** 11:1
**regard** 18:1 37:11
54:19 65:2,10
77:13 89:22
118:22 119:21
175:7 183:8
**regarding** 173:1
**regional** 14:18
167:22 168:2,9,15
168:22 170:10,16
171:1,10 172:1,3
196:15
**Registered** 2:6
**regulation** 55:9
**Reinsma** 197:11
**reject** 124:20
**relate** 31:10 32:15
43:18 109:9,17
111:9 174:14
**related** 93:4 116:4
183:14 190:11
201:22 213:14
**relates** 13:1 175:22
200:18,21
**relating** 14:9,15
18:16 41:8 44:22
89:22 106:14
110:3 174:18

204:11
**relation** 44:7
108:22 152:3
**relative** 66:7 87:11
139:17
**relatively** 70:6
**release** 186:14,15
186:16,17,20,20
**released** 186:5,9,12
**relevant** 87:11
106:6,14
**remember** 42:21
42:22 164:19
**reoccurring** 208:2
**reordering** 208:4
**repeat** 15:6 37:22
61:8 84:5 122:1
**replication** 138:16
**reply** 65:22
**report** 91:6,11
134:10 143:5
145:19 146:3,8,12
146:18,22 147:3,7
150:3 156:22
197:7
**Reported** 1:22
**reporter** 2:7 54:5
61:9
**reporter's** 6:22
**reporting** 91:10
**reports** 197:9
**represent** 135:12
140:10,13,15
141:20 142:11
143:8,20 144:7
145:20 147:9,12
147:16 153:14
**representation**
8:14 35:22 138:8
189:13
**representative**
207:8
**represented** 52:1,7

152:20
**representing** 7:5,7
  155:13
**represents** 54:18
  59:16 149:17
  157:14,18,22
**reps** 120:15
**request** 60:12 72:7
  88:21 89:7 93:3
  106:9 116:15
  119:18 123:22
  139:1 166:11,19
**requested** 54:6
  61:10 130:11
**requests** 93:13
  98:18 198:21
  199:4
**require** 25:10 71:8
  199:8
**required** 19:14
  60:12 70:18
**requirement** 50:7
  63:11 67:11 71:2
  71:19,20,21 93:18
  95:19 97:22 98:1
**requirements** 4:15
  40:1 51:1,6,8
  60:11,21 64:10,17
  65:7,12,20,22
  66:2,3,8 67:3 68:6
  76:17 77:8,13,14
  94:4 95:16,18
  99:6 100:5 132:8
  132:9,10,22 133:3
  168:1 173:11
**requires** 188:12
  209:13
**reserve** 8:9
**resources** 17:14
  87:13
**respect** 13:21 32:9
**respond** 16:20
  65:22 168:6,10

**responding** 105:6
**response** 4:17
  104:14 105:15
  106:7 170:6
**responses** 18:16
  104:18 105:20
**responsibilities**
  91:10
**responsibility**
  90:12
**responsible** 26:14
  27:9,11 28:8 29:2
  90:22
**responsive** 106:9
**rest** 138:12 141:12
**restate** 47:7 157:15
**result** 97:15 185:2
  203:13,20
**resulted** 208:12
**retained** 92:14
**retention** 92:12,15
**REV** 205:22
**reveal** 105:1
  106:19 107:15
**revealing** 108:13
  108:15 110:10,12
  111:19,21 112:17
  112:19 116:13,14
  117:5 119:16,17
  161:18,20 165:14
  165:15 206:14,15
**revenue** 153:7,16
  153:19
**review** 10:13 11:5
  68:22 76:6,7
  86:20,21 87:3,10
  88:13 117:19
  118:2,22 119:8
  120:18 165:5
  172:16,16
**reviewed** 10:20
**reviewing** 35:19
  188:10

**revision** 47:22
  48:15,17 62:12
  160:9,11 203:6,8
  203:14,20 204:4
  205:2,18 206:4
**RE01A** 133:7
**RE02A** 133:7
**RFP** 65:19 72:6
  168:5,6 169:19
  170:7
**RFQ** 65:19 74:9
  168:5,7 169:19
  170:6
**Rich** 91:2,6,15,22
**Ricoh** 1:8,12 3:2
  6:10,11 7:5 33:19
  34:6 35:7 129:14
  210:9
**Ricoh's** 4:17
  104:15
**right** 8:9 15:13
  112:4
**right-hand** 161:6
**ring** 58:22 62:18
  138:11 139:2,12
  139:13
**role** 80:20,21 113:2
**roll** 72:10 92:1
**rolled** 148:13
**roll-up** 4:19 90:8
  128:6
**room** 82:17,18
  135:17 136:9
  210:4,7,12,16
**routed** 87:7
**row** 38:10,14
  139:21,22 149:18
**RPR** 1:22
**RSM** 169:8,9,12,13
  170:4 197:1,19
  198:12 199:8
**RTL** 65:2,10,11,12
  66:11,20 67:5

69:12,17 77:13
  87:16 88:3 98:19
  98:22 99:7,15,19
  99:20 100:5,10,11
  102:3,9,17,22
  103:1,7,20 104:5
  120:21 121:13,19
  122:3,8,10,17
  123:2,9 179:15
  186:14,21 191:11
  207:15
**RTLs** 99:11
**rule** 127:6
**run** 76:6

---

**S**

**s** 50:6 104:18
**safe** 24:1
**sale** 24:15 154:4
  157:22 193:10,11
  193:19 195:3,18
**sales** 14:18 23:19
  44:21 53:12 85:3
  133:12,13,14,19
  134:9 135:6 141:5
  141:6 147:8,10,10
  147:12 149:9,14
  150:17,20 152:1
  152:19,20 156:20
  156:21 167:22
  168:2,9,15,22
  170:10,16 171:1
  171:11 172:1,3
  196:15 198:15,21
  199:4,17,19
**samples** 207:5
**San** 1:3 6:14
**satellite** 21:16 22:4
  94:4 96:6,9 97:2
  162:8 202:4
**satisfy** 51:9 59:5
  66:2
**satisfying** 66:7
**save** 170:8

**saved** 198:5
**saying** 10:3 20:3
  72:15 156:7
**says** 39:6 48:9
  130:14 143:14
  146:12 147:3,4
  151:3 152:16
  161:6 192:22
**SC** 151:16
**scale** 186:11
**SCD** 64:15
**schedule** 207:13
**scheduling** 87:13
  88:5
**Sciences** 46:21
  48:21
**scope** 11:16,21
  12:11 13:4,13,20
  14:6 15:5,17 16:4
  16:10 17:2,19
  18:6,12,18 19:8
  19:18 20:5 21:13
  22:18 23:14,17
  24:4,12,21 25:14
  26:2,8,18 29:14
  30:16 31:3,13
  32:8,18 33:14,21
  35:11 36:5,20
  37:3 39:12 40:6
  40:20 41:11 42:2
  42:15 43:14 44:2
  44:9 45:3,14 46:6
  47:14 49:6,14,22
  50:20 51:16 52:4
  52:10,16 53:4,16
  54:3,12,22 55:14
  58:13 59:13 60:1
  60:8 61:7,19 62:4
  63:21 65:6,15
  66:13,22 67:7,19
  68:3 69:14 70:2
  70:12,21 71:12
  72:19 73:7,13,22

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

| | | | | |
|---|---|---|---|---|
| 74:6 75:5,10,22 | 172:10 173:5,15 | segregate 152:1 | Sharon 80:9,10,14 | 159:12 196:20 |
| 76:14,20 77:11,18 | 174:2 175:2,9,16 | segregation 151:9 | sheet 23:21 128:19 | 200:15 201:8 |
| 78:2,13,20 79:4 | 176:2,15 177:13 | Segundo 200:9 | 129:3,5,14 149:16 | SMDs 158:6,11,15 |
| 79:13 80:1,12,17 | 178:7 179:8 180:3 | select 50:15 | 212:7 | 159:14 |
| 81:1,8,15,21 82:5 | 180:15 181:14 | selecting 75:19 | sheets 152:8 | SOC 151:4,12 |
| 82:11,20 83:13 | 185:17 189:18 | sell 25:3,12 | shelfed 83:5 | software 145:1,1 |
| 84:9,16,22 85:8 | 190:14 191:1,22 | seller 207:7 | shelved 83:1 | 148:9 |
| 85:17 86:3,9 87:5 | 192:7 195:5 196:4 | selling 191:3 | ship 143:22 153:6,9 | sold 21:10 22:15,20 |
| 87:18 88:1,7,15 | 197:5 198:1,7,11 | SEMICONDUC... | 207:13 | 23:4,8 24:2,10,14 |
| 89:3,14 90:3,15 | 199:1,12 203:16 | 1:15 | shipment 153:19 | 24:17 25:19 49:11 |
| 90:20 91:9,20 | scratch 44:19 | semi-custom 113:7 | shipped 143:7,9,19 | 58:9 141:8,14 |
| 92:11,18 93:7,15 | 159:12 | 113:12,18 114:3 | 143:20,21 144:3,3 | solder 50:10 |
| 94:13 95:8,22 | screw 192:9 | 114:11 | 153:11,15 | solution 190:21,21 |
| 96:8 97:4,12,17 | scripts 77:14 | send 72:8 75:12 | short 144:1 | 191:20 192:5 |
| 98:3 99:2,9,17,22 | 100:11 102:10 | 169:19 | show 133:19 144:2 | somebody 169:8 |
| 100:7,16,21 101:4 | 103:7 104:5 124:1 | senior 12:20 | 144:4 | somewhat 190:11 |
| 102:1,7,19 103:3 | 124:3,9 207:16 | sense 192:12 | signal 66:17,19 | sorry 36:12,15 |
| 103:10 104:1,8 | Seal 213:16 | sent 8:12 | 140:13 151:6 | 96:17 157:15 |
| 106:17 108:2,9 | search 120:15 | separate 45:12 | signals 102:14 | 182:10 208:14 |
| 109:4,12 110:6 | second 24:13 41:5 | 137:21 185:13 | 151:20 | sort 72:22 122:10 |
| 111:1,15 112:13 | 48:8 57:21 78:10 | 186:16 | SIGNATURE | 140:5 168:5 |
| 113:4,14,22 114:7 | 95:11 128:12 | September 133:14 | 212:11 | source 41:19 64:2 |
| 114:13,22 115:7 | 150:12 182:22 | 135:2 149:19 | signed 212:7 | 64:14 207:5 |
| 115:14,21 116:9 | 188:6 | 150:2 | similar 63:18 159:8 | speak 56:14 181:3 |
| 117:1,22 118:7,19 | section 55:6 83:10 | sequence 58:18 | 205:22 | 181:8 |
| 119:3,12 120:3,6 | 145:4 188:6 | sequentially 82:8 | simplify 64:4 | speaks 106:11 |
| 120:14 121:2,9,15 | 205:19 | serious 169:6 | 169:21 | 152:10 162:1 |
| 121:21 122:5,19 | see 46:2,2 48:16 | Seriously 210:18 | single 64:17 | 183:10 187:4 |
| 123:4,11,20 124:6 | 115:9 138:16 | service 138:18 | site 44:11 48:10,21 | 193:5 |
| 124:14 125:3,10 | 165:7 176:8,9 | 139:14,20 143:15 | 159:9 | specific 8:4 14:8 |
| 125:20 127:3,15 | 183:12 188:5 | 143:16 148:14,19 | sitting 49:1 86:5 | 18:2 22:13 25:19 |
| 129:17 131:3,19 | 189:6 205:1,4,16 | 149:5 163:3 168:1 | 97:20 121:11 | 39:10 40:21 41:1 |
| 132:5,18 133:5,21 | 207:9,15 210:20 | 191:4 | situation 165:18 | 42:12 44:13,22 |
| 134:4 135:3 138:1 | seed 102:13 | services 113:7,12 | sixth 106:1 | 47:5,10,11,22 |
| 141:10,17 142:16 | seeing 190:7 | 113:18 148:16 | slash 23:3 58:17 | 52:13,21 63:2 |
| 142:20 145:16 | seek 165:18 | set 39:22 63:3 | 59:1 180:6 | 64:9,10 65:1,9 |
| 150:5 154:7 155:2 | seeking 169:1 | 65:20,22 67:2 | smaller 178:21 | 71:2 72:1,2 77:8 |
| 158:2,8 159:1,17 | seen 30:13 31:8 | 72:9 82:18 104:15 | SMD 51:2,5,10,12 | 77:12 123:13 |
| 163:20 165:1,10 | 32:11 37:7,18 | 105:21 124:1 | 52:1,6,7 58:19 | 124:4,10,11 |
| 166:3,14,21 167:8 | 38:18 56:12,17,18 | 158:16 | 61:22 62:6,8,8,9 | 134:16 152:17 |
| 167:15 168:18 | 77:21 104:19 | sets 164:11,20 | 62:13,18 63:4 | 162:21 172:22 |
| 169:3,16 170:12 | 105:4 128:3 | Shapiro 2:4 3:5 | 64:1,3,3,13 158:4 | 189:8,12 191:4,6 |
| 170:18 171:15,22 | 187:19 192:19 | 6:18 7:4 | 158:14,20 159:8 | 193:9,10,18 |

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 23

| | | | | |
|---|---|---|---|---|
| 202:13 207:1 | 131:20 132:6,19 | 173:16 196:8,17 | **string** 158:20 | **supported** 139:12 |
| 208:22 | 133:22 134:5 | 196:18,19,21 | **structure** 186:8 | 189:13 |
| **specifically** 40:11 | 140:20 144:16,22 | 197:13,19 198:13 | **stuff** 156:13 | **supporting** 72:8 |
| 48:8 49:2 54:15 | 145:15 150:6 | 198:14,17,20,21 | **subcontract** 16:2,8 | 75:15 |
| 60:16 86:10 117:9 | 158:13 163:21 | 206:19 | 22:16 36:2 85:5 | **supports** 172:3 |
| 125:5 179:15 | 164:15 165:2,12 | **standardized** 64:8 | 98:20 188:7 | **supposed** 138:6 |
| 202:7 | 166:3,14 167:9 | **standards** 158:16 | **subcontractees** | **sure** 56:18 76:8 |
| **specification** | 168:19 172:11 | **stands** 51:10 152:2 | 17:13 | 128:19 136:5 |
| 121:12,19 122:3,7 | 173:6 175:3,15 | **start** 78:5 129:1 | **subcontractor** | 151:18 162:20 |
| 122:9,10,16 123:1 | 176:3 177:13 | 159:14 167:19 | 16:15 17:13,17 | 178:20 |
| 132:21 | 178:11 179:9 | 187:1 196:11 | 72:2,5,20 73:2,10 | **surprised** 122:22 |
| **specifications** | 180:4,16 181:2,15 | **starting** 105:20 | 73:16 | **surrounding** 107:8 |
| 67:16 98:21 120:1 | 183:5,10 184:3 | 135:11 | **subcontractors** | **switch** 181:8 |
| 120:20 174:16 | 185:5 190:15 | **starts** 75:16 105:19 | 13:17 15:3,9 | **sworn** 7:12 |
| **specifics** 46:8 | 191:2 192:8 193:5 | **state** 8:3 66:4,5 | 74:19 162:6 | **Synopsys** 1:5 3:9 |
| 120:10 167:13 | 194:19 195:21 | 190:16 209:13 | **subcontractor's** | 6:9 7:8 125:4,8,12 |
| **specified** 67:15 | 198:11 199:2 | **stated** 8:20 45:19 | 72:13 | 125:14,16 126:22 |
| **specifies** 75:18 | 201:18 204:6 | 48:14 102:4 206:4 | **subcontracts** 21:11 | 178:20 181:4,12 |
| **speculate** 85:1 96:3 | 206:10 | **statement** 4:22 5:4 | **subject** 20:2 56:19 | 189:13 190:12,21 |
| **speculation** 17:7,20 | **split** 45:11 | 156:9 183:1,7,12 | **submit** 65:19 | **Synopsys-based** |
| 18:13 20:6 24:5 | **SPO** 140:22 | 187:17,21 188:8 | 120:18 168:8 | 189:5 |
| 25:15 26:9,19 | **spread** 128:19 | 188:11 | 171:17,19 172:15 | **Synopsys-industry** |
| 29:15 32:10 33:15 | 129:3,5,14 149:16 | **states** 1:1 6:13 | **subsequent** 62:13 | 127:7 |
| 34:1 35:11 36:7 | 152:8 | 44:16 105:21 | 81:11 173:9,12 | **Synopsys-suppor...** |
| 42:2 43:15 46:7 | **Springs** 3:17 7:10 | **stating** 184:21 | 203:13,17 204:20 | 190:9 |
| 49:7 53:17 55:15 | 14:22 15:11 18:9 | 185:15 190:17 | **subtle** 132:11,13 | **synthesis** 68:7 |
| 60:2,8 63:21 70:3 | 52:18 79:21 91:13 | **stayed** 128:20 | **suite** 3:12 74:10 | 69:18 70:19 71:9 |
| 70:13 71:13 78:14 | 104:16 197:10 | **stenographic** 213:8 | 178:13 | 74:4 77:13 87:20 |
| 79:18 80:12,18 | **stage** 169:5 | **stenographically** | **suites** 72:9 | 103:7 104:5 |
| 81:2 82:6,12,21 | **stamp** 48:17 | 213:7 | **suits** 50:17 | 120:20 121:13,19 |
| 83:14 84:10 87:6 | **stand** 10:22 140:7 | **step** 171:13 | **sum** 149:4 | 122:3,10,16 |
| 89:18 91:21 93:7 | **standard** 21:17,20 | **steps** 76:11 87:15 | **super** 64:15 | 123:18 124:1,2,3 |
| 97:18 100:1 | 39:13,15,22 40:2 | 87:20 | **supplemental** | 124:9 126:7,17 |
| 103:11 104:9 | 40:8,22 41:19,21 | **store** 82:14 92:7 | 20:20 30:10 47:20 | 173:1 174:18 |
| 107:4,12 108:2 | 42:11,16 43:9 | 93:11,20 | 77:21 | 178:15,16,18 |
| 109:5 110:7 114:8 | 44:6 49:11,17,19 | **stored** 77:8,22 89:8 | **supplementary** | 180:13 207:16 |
| 115:8,15,22 | 51:11 52:14,19 | 89:12 90:9 92:22 | 48:11 55:2 | **synthesize** 69:21 |
| 118:20 119:4,13 | 53:9 58:19 60:17 | 166:12 173:13,17 | **supplier** 65:21 | 70:10 122:12 |
| 120:8 121:3,16,22 | 66:9,15,17 92:12 | 173:19 199:4 | 159:7 | 178:2,4 179:19 |
| 122:6,20 123:5,12 | 93:12 141:1 | **storing** 89:22 | **supply** 60:20 62:8 | 180:7 186:22 |
| 123:21 124:7,15 | 151:13,16,20,22 | **Street** 2:5 3:6,12 | **support** 30:11 | 188:13 |
| 125:3,11,21 127:4 | 152:3 158:4,4,14 | 6:7,19 | 87:12 163:2 181:5 | **synthesizeable** |
| 127:16 129:18 | 159:4,14 170:1 | **strike** 96:5 | 191:10 | 102:10 |

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006
Page 24

**synthesized** 67:22
179:6,14
**synthesizing** 73:5
100:11 102:12
123:2,9 179:5,15
**system** 76:10,12,16
76:17,18,21 77:1
77:4,9 93:12
120:15 134:15
135:14 142:17
143:4 146:1 151:5
154:10 183:3
207:11
**systems** 1:16 24:19

**T**
**tab** 129:5 149:16
**table** 8:21 189:1
**tag** 209:2
**take** 11:11 27:22
90:8 136:4 165:7
194:7
**taken** 6:5 213:7
**takes** 153:19
**talk** 167:4 169:10
176:20,22 205:20
**talked** 123:16
162:7
**talking** 9:1 13:5
40:12 74:18 98:17
163:13
**talks** 140:3 200:15
**tape** 86:17 160:19
161:1
**targeting** 178:17
**tear** 148:22
**TECH** 1:17
**technology** 62:6
189:5 190:5
**tell** 7:13 44:19 51:5
67:4 101:17 149:1
159:9 191:12
201:3 202:22
**tells** 102:13

**tends** 64:17
**term** 63:17 64:1
**terminology** 13:8
**terms** 4:11 46:22
47:4,10 48:1,10
48:22 50:9 53:22
54:19 56:18 62:21
118:3,10 119:1,8
162:4 163:16,17
164:11,12,21
165:6,8,21 172:8
172:13,15
**test** 87:8
**testified** 7:14 31:8
32:21 33:5 76:2
79:1 86:19 118:11
136:22 154:9
178:1 193:8
**testify** 37:11,21
110:17
**testifying** 109:1,7
109:15 111:7
**testimony** 13:13
20:10 28:14 33:3
33:9 34:9 44:3
48:19 67:19 75:3
75:11 78:3 79:5
81:16 83:14,21
87:1 89:5 109:13
111:6 119:11
120:8 162:12
167:16 170:19
171:16 176:19
189:19 195:6
202:12 203:11
205:15 208:8
212:4,5 213:6,7
**thank** 38:13 48:7
130:18 150:21
**thereof** 28:11 106:7
**thing** 101:16
**things** 117:9,10,11
148:6 155:19

**think** 13:8 20:12
71:7 94:15 104:3
128:12 144:20
150:8 156:11,13
186:19 195:16
200:10 210:1
**third** 20:20 35:19
41:6 102:22 103:6
103:8,15,19 104:4
104:15 120:22
130:22 131:5
**third-party** 178:21
**Thirty-eight**
105:17
**thought** 119:5
**three** 100:10,13
101:18 163:2,3
186:6
**tie** 47:21 48:15
189:9
**tied** 93:18 99:10
117:15,16 145:22
205:5
**ties** 47:20
**TIFF** 129:21
**time** 10:4 18:3
30:12 31:11 47:21
48:15,16 61:3
76:18 110:1,12,14
111:21 112:19,20
115:12 125:6
130:8 132:10
154:9,20 156:21
174:12 186:3,5,7
186:10 209:16
**times** 139:4 144:11
144:11 155:11
**tire** 169:9
**title** 47:22 80:10
187:17
**today** 6:2 7:21 8:17
8:22 32:9 37:11
37:21 49:1 59:19

86:5 97:20 121:11
155:12 174:20
178:4 186:15,16
186:17 195:1
209:17 210:18
**today's** 9:8,18
10:13 11:6 14:1
69:1
**told** 102:8
**tolerances** 50:11
**Tom** 3:10 7:6
174:11
**Tomorrow** 210:15
**Tony** 197:6,7,12
**tool** 70:4 72:9
74:10 123:18
125:17 127:8
178:13,14,15
180:6,12,13
**tooling** 151:17,18
**tools** 17:11 74:4
124:18,18,22
125:4,8,12,14,16
125:22 126:2,6,12
126:16,22 127:1
127:12 178:2,3,9
178:18 179:4,4,17
179:18,21 181:5
181:12 189:1
190:7,9,11 192:2
207:16
**top** 37:4 93:2 94:10
121:17 170:4
**topic** 8:8,10 30:16
31:3 37:11
**topics** 7:20 32:9
37:21,22 110:21
209:19
**total** 149:3,9
**touch** 150:11
**trace** 194:5,15
**track** 77:1
**tracked** 175:20

**tracking** 76:16
77:4 175:17
**transactions** 46:12
**transceivers**
151:14
**transcribed** 213:8
**transcript** 210:6
213:5
**transcription** 212:5
213:10
**transferred** 25:11
**translate** 51:19
60:12
**translated** 189:8
**translations** 183:2
187:18
**transmitted** 210:3
210:7
**tried** 64:18
**trouble** 179:18
**true** 99:14 118:22
212:4 213:5,10
**truth** 7:13,13,14
**trying** 190:6
**Ts** 118:2 120:16
165:19
**turn** 46:20 54:14
65:21 66:3 72:6
94:2 145:2 149:15
159:19 161:4
168:8 183:20
**Turning** 105:15
106:7 130:13
138:4 143:18
147:4 206:3
**Twenty-seven** 23:7
**two** 27:10 48:15
57:20 76:6 129:2
129:2,4 152:8
153:22 164:10,11
164:20 165:8
186:6,16 189:10
200:11 205:6,9

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

Page 25

**type** 50:7 62:16,22
74:9 92:16 151:9
158:17
**types** 56:1 64:7
92:13 151:22
158:10
**typical** 73:11 84:18
**typically** 54:9
66:10,20 72:4,13
72:16 74:4,7
127:7,17 143:15
144:5 148:15
165:7 167:21
198:2 203:18
**typo** 57:3

---
**U**

**ultimately** 14:20
51:7 90:10 191:15
**Um-hmm** 88:11
94:8 161:9 188:19
**unable** 186:4
**unclear** 81:10
**underneath** 189:7
**understand** 11:17
17:22 99:4 116:17
166:22
**understanding**
17:4 32:4 33:17
34:4 35:6 37:10
37:20 45:11 53:19
54:17 55:8 79:8
115:17 161:10
183:22 193:1
206:7
**unfamiliar** 44:5
**unique** 127:18
137:18
**unit** 144:6,8 151:2
**United** 1:1 6:13
**units** 58:16 67:10
67:14 143:9
204:22 207:21,22
208:1

**uplink** 200:9,12,16
200:19 201:21
208:4,13,16
**upper** 203:5 205:17
**use** 16:7 17:10 53:7
61:16 63:18 70:6
71:3,7,9,20 92:3
123:17 124:18,19
124:22 125:8,17
127:11 139:11
148:21 152:1
169:21 175:21
178:22 180:12
183:7 188:13
**UTCAM** 22:15
133:8 141:5,7,13
**U-P-L-I-N-K**
200:17
**U.S** 174:20 175:19

---
**V**

**v** 1:7,14 50:6,6
**vague** 11:15,20
12:10 13:3,14,19
14:5 15:4,17 16:3
16:9 17:1,18 18:5
18:12,17 19:18
20:5 21:13 22:18
23:17 24:4,12,21
25:13 26:1,8,17
29:14 31:13 32:8
32:18 33:13,21
35:12 36:4,20
37:3 39:11 40:5
40:20 41:11 42:15
43:14 44:2,8 45:2
45:14 46:6 47:13
48:19 49:6,13,21
50:19 51:15 52:3
52:10,15 53:4,16
54:2,11,20 55:14
58:12 59:12,22
61:6,19 62:4 63:7
65:6,14 66:13,22

67:7,17 68:3
69:14 70:2,12,20
71:11 72:19 73:7
73:13,20 74:6
75:3,9,21 76:13
76:19 77:5,10,18
78:1,11,19 79:4
79:12,22 80:16,22
81:7,14,20 82:4
82:10,19 83:12
84:3,8,16,22 85:8
85:16 86:3,9,22
87:5,17,22 88:7
88:15 89:3,14
90:3,15,19 91:9
91:19 92:11,18
93:7,15 94:13
95:8,21 96:8 97:3
97:12,17 98:3
99:1,9,16 100:1,6
100:16,21 101:4,9
101:14 102:1,7,18
103:3,10 104:1,7
106:17 107:10
108:2,9 109:3,12
110:6 111:1,13,14
112:13 113:4,22
114:7,13,17,22
115:7,14,21 116:9
116:22 117:22
118:7,18 119:3,12
120:6,13 121:1,15
121:21 122:4,19
123:3,10,20 124:6
124:14 125:2,9,20
126:3,13 127:2,14
129:17 131:2,18
132:5,18 133:5,21
134:4,12 135:19
137:14 138:1,13
140:19 141:10
144:15 145:14
150:5,13 152:9

153:20 154:17
155:16 157:1
158:2,22 159:17
160:13 161:13
163:20 164:13,22
165:10 166:20
167:7,15 168:17
169:3,15 170:11
170:17 171:15
172:10 173:5,15
174:2 175:2,8,14
176:2,15 178:7
179:8 180:3,16
181:14 182:13,18
183:16 184:15
185:4,16 187:10
188:14 189:17
190:13,22 191:21
192:6 193:14
195:5 197:5 198:1
199:1,12 201:1,12
202:2,12,18 203:2
203:15 204:14
207:18 208:20
**validated** 90:9
**value** 12:18,21
14:17,18
**version** 40:4 49:2
50:15,17 51:14
95:4,19 105:5
122:11 129:13
130:10 132:3
171:8
**versions** 49:18
131:7,9
**versus** 6:10,11
45:22 99:11
**vice** 91:12 197:10
**video** 6:17 211:3
**videographer** 3:18
6:2,21 20:14 28:1
28:4 43:1,4 74:12
74:15 86:11,14

98:8,14 136:6,10
160:19,22 181:17
181:20 194:8,11
209:8,10 211:2
**videotape** 2:1
**videotaped** 6:4
**violate** 180:20
**violation** 181:6,7
**virtually** 158:16
**visibility** 177:4,6
**visible** 176:10
**visual** 76:15 77:7,9
134:15 143:3
**volt** 189:11 190:18
**voltage** 189:11
190:19
**volts** 189:10
**VOLUME** 4:3
**VYC** 62:14

---
**W**

**walk** 64:9
**walked** 210:12
**want** 9:4 16:16
37:22 50:16 51:4
62:21 63:2 72:4
94:18 98:6 132:11
134:14 136:15
155:11 192:10
196:11 206:22
207:1,3,4,5
**wanted** 83:8 116:4
128:18 156:7
208:15 209:12
**wants** 78:7 167:1
**Washington** 2:5
3:7 6:7,20 213:1
213:17
**wasn't** 143:5
154:15
**way** 44:19,20 58:5
59:19 154:5 156:2
156:3 180:20
183:15 191:13

Videotaped Deposition of:
Peter Milliken, Vol. III    June 7, 2006

195:16 211:1 213:14
**ways** 191:13
**Web** 44:11 48:10 48:21 159:9
**Wednesday** 2:3 6:2
**week** 153:22
**weighed** 192:4
**Weinstein** 98:10 136:8,16 210:14
**went** 8:1 23:21 67:5 128:17 134:7
**weren't** 78:17 156:7
**we'll** 10:12 129:1
**we're** 6:3 8:17 13:5 20:14 28:1,4 35:10 40:12 43:1 43:4 60:22 61:1 74:12,15 86:11,14 94:19 98:8,14 130:15 136:10 156:11 160:20,22 181:17,20 194:8 194:11 209:8,10
**we've** 36:10 64:18 77:21 130:11 174:19 189:3
**wide** 163:3,4 202:13
**willing** 191:14
**wish** 93:11
**witness** 4:2 7:21 8:9 9:5 10:1,10,16 11:8 19:9,21 27:15,20,22 30:5 30:18 31:1 34:17 34:19 45:18,20 48:6 213:16
**word** 186:19 204:13
**work** 4:22 5:4 9:11 9:14 11:19 18:19

19:1,2,10,20 20:7 21:3,6 26:19 27:2 27:2,7 28:15,18 28:19 29:16,20 31:14,19,20 32:19 33:22 35:1,3,12 36:6 42:3,7,8 55:16,20 64:20 68:12,16 69:3,8,9 76:16 90:9 104:21 105:2,9,12 106:18 106:21 107:13 108:10,15 110:8 110:12 111:16,21 112:7,14,19 116:10,14 117:3,6 119:14,18 130:1,5 131:13 155:2,6 156:16,18 161:15 161:20 163:22 164:4 165:11,16 166:4,9 169:22 174:3 177:15,18 183:1,7,12 184:4 184:7 185:19,22 187:1,18,22 188:9 188:11 195:7,11 204:18 206:11,15
**worked** 103:19 104:4 107:6
**working** 29:21 196:16
**worth** 153:15
**wouldn't** 93:22 159:8
**write** 66:10,20
**writing** 160:12 166:1,11
**written** 12:9 88:21 88:22 89:8 168:5 174:17 198:5
**wrote** 67:5 69:11 103:20 104:4

**X**

**Xilinx** 179:14

**Y**

**YA04** 23:3 145:11
**YA13** 23:3 145:11
**YB01** 23:7 145:12
**yeah** 38:12 128:13 189:7
**year** 116:19 204:1
**years** 107:6 113:15 164:17
**Y.R** 3:15 7:9

**Z**

**zero** 203:6,8 206:4

**$**

**$800,000** 153:15

**0**

**0001** 39:3 40:17 41:4 45:9
**0002** 39:4 45:9
**01** 62:14
**03** 62:14
**04B** 62:12
**0401-0002** 193:22
**05** 145:7,12
**06** 145:7,12

**1**

**1** 22:15 37:21 58:16 59:16,21 95:13 128:10 133:14 135:2 149:19 150:2 158:3 194:1 200:15 205:20
**1G** 160:18
**1:14** 98:15
**1:59** 161:1
**10** 40:13,15 204:2
**10.3** 183:21
**10/00** 160:10

**10:03** 28:5
**10:27** 43:2
**10:28** 43:5
**100** 125:6 144:1,3
**1000** 3:12
**104** 4:17
**11** 22:11
**11:19** 74:13
**11:29** 74:16
**11:30** 8:5
**11:44** 86:12
**11:45** 86:15
**113** 182:22 187:22
**118** 183:20
**12** 22:5
**12:03** 98:9
**127** 4:19
**129** 37:6
**13** 149:18
**13-digit** 51:18,20 138:8
**130** 188:21
**134** 23:20 128:1,17 129:13 130:10 134:21 135:1 154:4,9,19,22 156:19 208:21 209:15
**14** 160:18
**1498** 17:8 30:19 31:2
**15** 40:15
**157** 4:20,22
**17** 58:16 153:14
**181** 5:2
**187** 5:4
**192** 5:5
**1980** 116:2,2,3
**1996** 115:10
**1997** 115:10 135:2

**2**

**2** 37:21 38:2 86:17 131:8 139:21

205:21 206:21
**2.1** 188:7
**2.5-volt** 190:18
**2:09** 136:7
**2:18** 136:11
**2:59** 160:20
**20** 4:6
**200** 5:6
**2000** 116:19 160:18
**2001** 133:15 134:11
**20037** 6:8
**20037-1526** 3:7
**2004** 188:3,3,8,8
**2005** 37:6 133:14 135:2 150:2
**2006** 2:3 6:3 104:19 106:5 133:14,16 134:11 145:9,13 150:2 213:17
**2008** 213:20
**2020** 3:12
**21A** 36:16
**2101** 2:5 3:6 6:7,19
**22** 201:8
**23** 22:5 114:9 115:4
**24** 202:17
**24A** 163:18
**25** 22:7 97:8,14 114:10,11 115:4 128:10 162:8
**256** 67:9
**26** 23:3 37:12 97:8 97:14 128:8
**26A** 22:6 163:17 202:17
**26As** 162:8
**279** 58:4
**28** 23:7
**28A** 22:6
**283** 58:4
**283715** 192:18
**283715-717** 5:5
**283778** 38:16 45:19

**283778-793** 4:10
**283799** 38:17
**283799-810** 4:12
**283806** 54:15
**284** 57:21
**284112** 182:3
**284112-120** 5:3
**284120** 182:4
**284121** 187:16
**284121-130** 5:4
**284130** 187:17
**284246** 56:21
**284246-249** 4:16
**284249** 56:21
**284314** 157:9
**284314-331** 4:22
**284341** 56:20
**284341-349** 4:14
**284342** 58:15
**284350** 157:8
**284350-356** 4:21
**284423** 200:4
**284423-430** 5:7
**284822** 128:16
**284822-895** 4:19
**284849** 145:2
**29** 23:7
**299** 57:21

**3**

**3** 21:10 22:1 23:15
  32:22,22 37:13
  58:11 70:16 96:15
  96:22 114:9,9
  115:4 131:8 161:2
  188:3,7,8 189:1
  205:18,22
**3A** 37:21 38:2
**3.3-volt** 190:18
**3.33-volt** 189:10
**3:33** 181:18
**3:47** 181:21
**30** 4:7 23:7 37:13
  104:18 128:8

133:14,16 134:11
  134:21 145:9
  150:2
**30th** 128:14 149:20
**31** 213:20
**31A** 22:6
**314** 58:1
**318** 161:4
**321** 58:2
**331** 58:1 157:10
**341** 57:13
**342** 95:12
**349** 56:20 57:14
**350** 57:17 160:4,12
**356** 57:18 157:9
**37** 4:8
**38** 4:9,11 105:16
  133:7
**39** 133:7
**39A** 22:6 184:22

**4**

**4** 22:1 37:11 114:9
  131:8 133:1 188:2
  188:3 200:15
**4:14** 194:9
**4:24** 194:12
**4:49** 209:9
**4:55** 209:11
**4:57** 211:3,4
**41** 57:6
**423** 206:6,18
**424** 206:6,19
**425** 200:14
**426** 201:7
**4350** 3:16
**4430** 200:5
**45** 54:15,17
**49** 57:6

**5**

**5** 22:1 37:22 38:3
  105:19,20 114:9
  133:1 189:10

190:18
**50** 151:21
**52.227-1** 55:6,9
  161:6 183:22
  184:1
**56** 4:13,15
**596** 158:3
**5962** 44:12,13,13
  58:17,18 60:17
  62:10
**5962R0252301V...**
  39:6
**5962R04B** 158:3
  159:3,15
**5962-04B** 62:9,18

**6**

**6** 22:11 37:22 38:3
  105:16,17,20
  130:14
**60** 151:21
**651** 4:6 20:17,19
  32:22 37:13 70:15
  96:19 114:3 128:7
  128:8 180:19
**652** 4:7 30:7,10
  35:20 57:1
**653** 4:8 37:15,18
**654** 4:9 38:5,9,16
  38:20 45:18 48:6
  49:3
**655** 4:11 38:6,9,17
  46:20 49:2 54:14
**656** 4:13 56:7,11,19
  58:7 67:12,13
  78:22 79:10 95:11
  162:18,19,19
  205:7,9,12
**657** 4:15 56:8,11,20
  94:3 97:21 162:18
**658** 4:17 104:11,14
**659** 4:19 127:20
  128:1,3,5,15,22
  129:1 130:17,18

133:10 208:22
**660** 4:20 157:4,8,8
  157:13,18 159:22
  160:12 205:7,10
  205:22
**661** 4:22 157:5,5,8
  157:9 159:19,20
  160:6,11 161:5
**662** 5:2 181:22
  182:3 187:22
**663** 5:4 187:13,16
  188:10
**664** 5:5 192:13,15
**665** 5:6 200:1,4
  202:22 205:8
  206:3

**7**

**7** 2:3 4:4 6:3 106:5
**715** 192:16,17
**717** 192:17,18
**75** 144:2
**779** 48:9
**793** 38:16

**8**

**8** 38:16 201:8
  209:13
**8th** 213:17
**8/22/05** 94:10
**805** 55:3
**806** 54:14
**80907** 3:17
**810** 38:17
**8196** 21:16 22:6
  41:5,8,13 53:8
**822** 129:4 130:14
  149:18
**822823** 145:6
**823** 129:4
**824** 131:1,6
**825** 133:11 146:4,8
**826** 138:4 146:22
**827** 143:18

**851** 147:4
**852** 148:1
**881** 149:15 150:15
**882** 152:14
**883** 150:15
**895** 128:16

**9**

**9** 145:6
**9/15/2004** 94:11
**9:24** 2:3 6:4
**9:41** 20:15
**9:52** 28:2
**90s** 116:6
**92614-8200** 3:13

# EXHIBIT 3

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*

*Writer's Direct Dial: (202) 572-2750*
*E-Mail Address: BarbischR@dsmo.com*

June 6, 2006

**VIA EMAIL (PDF)**

Denise DeMory, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA 94105

Re:     Synopsys v. Ricoh Company, Ltd.
        Case No. C03-2289 MJJ (EMC)
        Ricoh Company, Ltd. v. Aeroflex, Inc., et al.
        Case No. C03-4669 MJJ (EMC)
        Our Reference: R2180.0171

Dear Denise:

        In your Supplemental Declaration in Support of Defendants' Motion for Order
Extending Time to Permit Late Filing of Amended Answers dated April 13, 2006, you
represented that "to the extent Aeroflex is able to locate and produce additional contracts, they
will be produced in the same manner with a key linking the purchase order to the products and
the contracts." We have not received any such keys to date.

        If you intend to assert Aeroflex's 28 U.S.C. § 1498 defense on any other ASICs,
please immediately identify those ASICs and produce a key linking the purchase order to the
products and the contracts.

        Additionally, we are awaiting a letter from you confirming the Aeroflex deposition
topics for this week's depositions. Please send this information as soon as possible.

                                        Very truly yours,

                                        Rebecca L. Barbisch

RLB

cc:  Howrey distribution list

2096042.01

*1177 Avenue of the Americas • New York, NY 10036-2714 • Tel (212) 835-1400 • Fax (212) 997-9880*
*10866 Wilshire Boulevard • Suite 300 • Los Angeles, CA 90024-4350 • Tel (310) 441-8460 • Fax (310) 441-8470*
*www.DicksteinShapiro.com*

# EXHIBIT 4

1   Teresa M. Corbin (SBN 132360)
    Denise M. De Mory (SBN 168076)
2   Jaclyn C. Fink (SBN 217913)
    HOWREY LLP
3   525 Market Street, Suite 3600
    San Francisco, California 94105
4   Telephone: (415) 848-4900
    Facsimile: (415) 848-4999
5
    Attorneys for Plaintiff SYNOPSYS, INC. and
6   Defendants AEROFLEX INCORPORATED,
    AEROFLEX COLORADO SPRINGS, INC., AMI
7   SEMICONDUCTOR, INC., MATROX
    ELECTRONIC SYSTEMS, LTD., MATROX
8   GRAPHICS, INC., MATROX INTERNATIONAL
    CORP., and MATROX TECH, INC.
9
                        UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11
                          SAN FRANCISCO DIVISION
12
    SYNOPSYS, INC.,                          Case No. C03-2289 MJJ (EMC)
13                                           Case No. C03-4669 MJJ (EMC)
                    Plaintiff,
14                                           **DEFENDANT AEROFLEX, INC.'S**
          vs.                                **RESPONSE TO RICOH'S THIRD SET OF**
15                                           **INTERROGATORIES**
    RICOH COMPANY, LTD.,
16                                           Trial Date:  November 27, 2006
                    Defendant.
17
    ─────────────────────────────
18  RICOH COMPANY, LTD.,

19                  Plaintiff,

20        vs.

21  AEROFLEX INCORPORATED, AEROFLEX
    COLORADO SPRINGS, INC., AMI
22  SEMICONDUCTOR, INC., MATROX
    ELECTRONIC SYSTEMS, LTD., MATROX
23  GRAPHICS, INC., MATROX
    INTERNATIONAL CORP., and MATROX
24  TECH, INC.,

25                  Defendants.

26

27

28

HOWREY LLP

    AEROFLEX, INC.'S RESPONSE TO RICOH'S
    SECOND SET OF INTERROGATORIES
    DM_US\8340361 v.2

1  PROPOUNDING PARTY:    Ricoh Company, Ltd.

2  RESPONDING PARTY:     Aeroflex, Inc.

3  SET NUMBER:           Three (3)

4       Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Aeroflex, Inc. ("Defendant")

5  hereby provides its responses to Ricoh Company, Ltd.'s ("Ricoh") Third Set of Interrogatories. These

6  responses are based on information reasonably available to Defendant at the present time. Defendant

7  reserves the right to supplement these responses when, and if, additional information becomes

8  available.

9       In responding to these Interrogatories, Defendant will make the reasonable, diligent, and good

10 faith search to respond as required under the Federal Rules and Local Rules. However, Defendants

11 and its attorneys have not yet completed preparation for trial or concluded their analyses of the

12 information gathered to date by the parties. These responses, therefore, are based on information

13 presently available to and reviewed by Defendant and its attorneys.

14      These responses are made without waiving, in any way: (1) the right to object on any basis

15 permitted by law to the use of any such information, for any purpose, in whole or in part, in any

16 subsequent proceeding in this action or any other action; and (2) the right to object on any basis

17 permitted by law to any other discovery request or proceeding involving or relating to the subject

18 matter of these responses.

19                              **GENERAL OBJECTIONS**

20      The following general objections should be interpreted to apply to each individual Interrogatory

21 as if set forth in full in response to each individual Request:

22      1.    Defendant objects to Ricoh's Third Set of Interrogatories as well as to the definitions

23 and instructions to the extent that they seek information protected by the attorney-client privilege, the

24 attorney work product immunity or any other privilege or protection afforded by state or federal law.

25      2.    Defendant objects to Ricoh's Third Set of Interrogatories as well as to the definitions

26 and instructions to the extent that they seek information that is subject to any protective order, privacy

27 interest, contractual obligation, non-disclosure agreement, confidentiality agreement or other such

28

1  confidentiality obligation owed to any third party. Without third party permission, Defendant will not

2  provide such information unless required by the Court.

3      3.    Defendant objects to Ricoh's Third Set of Interrogatories as well as to the definitions

4  and instructions to the extent that they seek information that is not relevant to a claim or defense of any

5  party or to the subject matter of this litigation and not reasonably calculated to lead to the discovery of

6  admissible evidence.

7      4.    Defendant objects to Ricoh's Third Set of Interrogatories as overly broad and unduly

8  burdensome to the extent that they seek information beyond what is available from a reasonable search

9  of Defendant's files likely to contain relevant or responsive documents and a reasonable inquiry of

10 Defendant's employees.

11     5.    Defendant objects to Ricoh's Third Set of Interrogatories to the extent that they seek

12 information or the identification of documents that are not within the possession, custody, or control of

13 Defendant, or refers to persons, entities, or events not known to Defendant, subjecting them to

14 unreasonable and undue annoyance, oppression, burden, and expense, and would impose upon them an

15 obligation to discover information or materials from third parties or services who are equally

16 accessible to Ricoh.

17     6.    Defendant objects generally to Ricoh's Third Set of Interrogatories as well as to the

18 definitions and instructions to the extent that they seek information concerning Defendant's products

19 or processes that are not made, used, sold, offered for sale or imported into the United States.

20     7.    Defendant objects to Ricoh's Third Set of Interrogatories as well as to the definitions

21 and instructions to the extent that they seek a legal conclusion.

22     8.    Defendant objects to Ricoh's Third Set of Interrogatories, including its Definitions and

23 Instructions, to the extent that they seek to modify or expand the requirements of the Federal Rules of

24 Civil Procedure and the Local Rules of the Northern District of California and/or other applicable law.

25 Defendant will respond to Ricoh's Third Set of Interrogatories as well as to the definitions and

26 instructions in accordance with the Federal Rules of Civil Procedure, the Local Rules of the Northern

27 District of California and/or other applicable law.

28

HOWREY LLP

AEROFLEX, INC.'S RESPONSE TO RICOH'S          -3-
SECOND SET OF INTERROGATORIES

DM_US\8240261.1

9.    Defendant objects to Ricoh's Third Set of Interrogatories as well as to the definitions and instructions to the extent that they are unreasonably cumulative, redundant, or duplicative of other Interrogatories, or seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive.

10.    Defendant objects to the definition of "Aeroflex" to the extent that it seeks information from individuals or entities over which Defendant has no control or from unauthorized persons purporting to act on Defendant's behalf.  Defendant further objects to the definition of "Aeroflex" to the extent that it purports to include consulting experts who will not be called to testify at trial or to the extent that it purports to include attorneys and therefore, objects to any requests using such definition as seeking information protected by the attorney-client privilege and/or the attorney work product immunity.

11.    Defendant objects to Ricoh's Third Set of Interrogatories as well as to the definitions and instructions to the extent that they include discrete subparts.

### SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    Definition and Instruction ("D&I") (1) of Ricoh's Third Set of Interrogatories to Aeroflex, Inc. incorporates the D&Is of Ricoh's April 17, 2006 Second Set of Interrogatories to Aeroflex, Inc. ("Second Set of Interrogatories"), which incorporates the D&Is of Ricoh's September 30, 2005 Restated First Set of Interrogatories to Aeroflex, Inc. ("Restated First Set of Interrogatories"), which incorporates the D&Is of Ricoh's May 30, 3003 First Set of Interrogatories to All Defendants ("First Set of Interrogatories").  Defendant incorporates its objections to the D&Is in Ricoh's First, Restated First and Second Sets of Interrogatories as stated in Defendant's respective responses.

2.    Defendant objects to the nested incorporation of definitions and instructions as vague and ambiguous and requiring speculation in that it results in different definitions for the same terms, such as for "all," "each," and "Aeroflex, Inc."  Defendant further objects that the nested definitions and instructions are overly broad, unduly burdensome and not calculated to lead to discoverable evidence in that they are not limited to the commercial ASICs at issue, as in, for example D&I (14) of the First Set of Interrogatories (definition of "ASIC").

1    3.    Defendant objects to D&I (2) of the Restated First, Second and Third Sets of

2    Interrogatories in that Aeroflex, Inc. is not a proper defendant and should have been dismissed from

3    this action long ago. Defendant understands the interrogatories to concern only Aeroflex Colorado

4    Springs, Inc. and its present employees and agents, and objects to any other interpretation. Defendant

5    further objects that these D&I's are vague, ambiguous, overly broad, unduly burdensome, not

6    calculated to lead to admissible evidence, and call for speculation and a legal conclusion regarding, for

7    example, "and, where applicable, its officers, directors, employees, agents, independent contractors,

8    partners, corporate parent, subsidiaries."

9    4.    Defendant objects to D&I (6) as vague and ambiguous, overly broad and unduly

10   burdensome, not calculated to lead to admissible evidence, and calling for speculation and a legal

11   conclusion regarding, for example, "where applicable, its agencies, entities, officers, directors,

12   employees, agents and subcontractors." Defendant further objects that D&I (6) is overly broad, unduly

13   burdensome and not calculated to lead to the discovery of admissible evidence in that "U.S.

14   Government" encompasses many more entities than are relevant.

15   5.    Defendant objects to D&I (7), (8) and (9) as vague and ambiguous, requiring a legal

16   conclusion, calling for speculation, overly broad, unduly burdensome and not calculated to lead to the

17   discovery of admissible evidence with respect to "to bring within the scope of discovery all that might

18   otherwise be construed to be outside its scope."

19   6.    Defendant objects to D&I (1) of the First Set of Interrogatories as vague and

20   ambiguous, unduly burdensome, overly broad and calling for speculation, especially with respect to

21   "transmittal" and "otherwise."

22

23   **RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES**

24   **INTERROGATORY NO. 38**:

25   Set forth all facts and identify all documents for which Aeroflex bases its Sixth Affirmative

26   Defense (authorization and consent) in its Amended Answer and Counterclaims filed April 7, 2006,

27   including the identification of each individual having relevant information thereof.

28

HOWREY LLP

AEROFLEX, INC.'S RESPONSE TO RICOH'S    -5-
SECOND SET OF INTERROGATORIES

1    **RESPONSE TO INTERROGATORY NO. 38**:

2          Defendant incorporates by reference its General and Specific Objections.  Defendant objects to

3    this interrogatory as composed of three distinct subparts.  Defendant further objects to this

4    interrogatory as vague and ambiguous, unduly burdensome, overly broad and not calculated to lead to

5    the discovery of admissible evidence, especially with respect to "all facts," "all documents" and "each

6    individual."  Defendant objects to this interrogatory as vague and ambiguous, calling for speculation

7    and calling for a legal conclusion, especially with respect to "identification of each individual having

8    relevant information thereof."  Defendant objects to this interrogatory as seeking information and

9    documents protected by the attorney-client privilege, work product doctrine, common defense doctrine,

10   confidentiality requirements, U.S. laws and regulations including without limit International Traffic In

11   Arms ("ITAR") regulations, and any other applicable privilege, protection or doctrine.

12         Subject to and without waiving the foregoing general and specific objections, Defendant

13   responds as follows.  Peter Milliken is knowledgeable about facts responsive to this request.  Pursuant

14   to Federal Rule of Civil Procedure 33(d), Defendant specifies the following records that have already

15   been produced and are responsive to this request: AF283572 – AF284249; AF284279 – AF284619;

16   AF284985 – AF285660.  Defendant reserves the right to rely upon the documents (and facts contained

17   therein) produced by third parties Los Alamos National Laboratory, Ball Aerospace & Technologies

18   Corp., Boeing Satellite Systems, Inc., Eastman Kodak Company, EMS Technologies, Inc., ITT

19   Industries, Inc., Orbital Sciences Corp., TRAX International Corp., QSS Group, Inc., Northrop

20   Grumman Space Technology International, Inc., and The Johns Hopkins University Applied Physics

21   Laboratory pursuant to subpoenas served upon them in this case by Ricoh.

22

23   **INTERROGATORY NO. 39**:

24         Set forth all facts relating to communications, including, but not limited to directions,

25   suggestions, or instructions that Aeroflex received from the U.S. Government or a U.S. Government

26   contractor relating to methods of developing ASICs, and on which Aeroflex bases its Sixth Affirmative

27   Defense.

28

1  **RESPONSE TO INTERROGATORY NO. 39**:

2       Defendant incorporates by reference its General and Specific Objections.  Defendant further

3  objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and not

4  calculated to lead to the discovery of admissible evidence, especially with respect to "all facts."

5  Defendant objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and

6  calling for speculation, especially with respect to "communications," "directions, suggestions, or

7  instructions," "U.S. Government or U.S. Government contractor," and "methods of developing

8  ASICs."  Defendant objects to this interrogatory as irrelevant and not calculated to lead to the

9  discovery of admissible evidence, especially with respect to "communications ... relating to methods

10 of developing ASICs."  Defendant objects to this interrogatory as irrelevant, unduly burdensome,

11 overly broad and not calculated to lead to admissible evidence in that its premise – Defendant's Sixth

12 Affirmative Defense  depends on communications, directions, suggestion or instructions – is irrelevant.

13 Defendant objects to this interrogatory as seeking information and documents protected by the

14 attorney-client privilege, work product doctrine, common defense doctrine, confidentiality

15 requirements, U.S. laws and regulations including without limit International Traffic In Arms

16 ("ITAR") regulations, and any other applicable privilege, protection or doctrine.

17

18 **INTERROGATORY NO. 40**:

19      Set forth all facts relating to methods, including, but not limited to identification of such

20 methods, whose use necessarily results from compliance by Aeroflex with specifications, written

21 provisions, instructions, directions, suggestions, or other communications provided by the U.S.

22 Government or a U.S. Government contractor to Aeroflex on which Aeroflex bases its Sixth

23 Affirmative Defense.

24 **RESPONSE TO INTERROGATORY NO. 40**:

25      Defendant incorporates by reference its General and Specific Objections.  Defendant further

26 objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and not

27 calculated to lead to the discovery of admissible evidence, especially with respect to "all facts."

28 Defendant objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and

1    calling for speculation, especially with respect to "methods," "compliance," "specifications, written

2    provisions, instructions, directions, suggestions, or other communications," "U.S. Government or U.S.

3    Government contractor." Defendant objects to this interrogatory as irrelevant, unduly burdensome,

4    overly broad and not calculated to lead to admissible evidence in that its premise – Defendant's Sixth

5    Affirmative Defense depends on " methods, whose use necessarily results from compliance by

6    Aeroflex with specifications, written provisions, instructions, directions, suggestions, or other

7    communications" – is irrelevant. Defendant objects to this interrogatory as seeking information and

8    documents protected by the attorney-client privilege, work product doctrine, common defense doctrine,

9    confidentiality requirements, U.S. laws and regulations including without limit International Traffic In

10    Arms ("ITAR") regulations, and any other applicable privilege, protection or doctrine.

11

12    **INTERROGATORY NO. 41**:

13         Set forth all facts relating to methods, including, but not limited to identification of such

14    methods, that Aeroflex could have used to comply with specifications, written provisions, instructions,

15    directions, suggestions, or other communications provided by the U.S. Government contractor to

16    Aeroflex on which Aeroflex bases its Sixth Affirmative Defense, if Aeroflex had all of the

17    commercially available equipment and software necessary to practice such methods at the time of

18    compliance.

19    **RESPONSE TO INTERROGATORY NO. 41:**

20         Defendant incorporates by reference its General and Specific Objections. Defendant further

21    objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and not

22    calculated to lead to the discovery of admissible evidence, especially with respect to "all facts" and "all

23    of the commercially available equipment and software necessary to practice such methods." Defendant

24    objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and calling for

25    speculation, especially with respect to "methods," "could have used to comply with," "specifications,

26    written provisions, instructions, directions, suggestions, or other communications," "U.S. Government

27    or U.S. Government contractor," and "if Aeroflex had all of the commercially available equipment and

28    software necessary to practice such methods at the time of compliance." Defendant objects to this

HOWREY LLP

AEROFLEX, INC.'S RESPONSE TO RICOH'S          -8-
SECOND SET OF INTERROGATORIES

1    interrogatory as irrelevant, unduly burdensome, overly broad and not calculated to lead to admissible

2    evidence in that its premise – Defendant's Sixth Affirmative Defense depends on "methods ... that

3    Aeroflex could have used to comply with specifications, written provisions, instructions, directions,

4    suggestions, or other communications ... if Aeroflex had all of the commercially available equipment

5    and software necessary to practice such methods at the time of compliance" – is irrelevant. Defendant

6    objects to this interrogatory as seeking information and documents protected by the attorney-client

7    privilege, work product doctrine, common defense doctrine, confidentiality requirements, U.S. laws

8    and regulations including without limit International Traffic in Arms ("ITAR") regulations, and any

9    other applicable privilege, protection or doctrine.

10

11    **INTERROGATORY NO. 42**:

12        Identify with specificity all contractual provisions relating to Aeroflex's Sixth Affirmative

13    Defense.

14    **RESPONSE TO INTERROGATORY NO. 42**:

15        Defendant incorporates by reference its General and Specific Objections. Defendant further

16    objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and not

17    calculated to lead to the discovery of admissible evidence, especially with respect to "all contractual

18    provisions" and "relating to." Defendant objects to this interrogatory as vague and ambiguous, and

19    calling for speculation, especially with respect to "identify," "with specificity," "contractual

20    provisions" and "relating to." Defendant objects to this interrogatory as seeking information and

21    documents protected by the attorney-client privilege, work product doctrine, common defense doctrine,

22    confidentiality requirements, and U.S. laws and regulations including without limit International

23    Traffic In Arms ("ITAR") regulations, and any other applicable privilege, protection or doctrine.

24        Subject to and without waiving the foregoing general and specific objections, Defendant

25    responds as follows. Pursuant to Federal Rule of Civil Procedure 33(d), Defendant specifies the

26    following records that have already been produced and are responsive to this request: AF283799-810;

27    AF283814-830; AF283889-893; AF2834112-118; AF284246-249; AF284279-305; AF284314-331;

28    AF284474-619

HOWREY LLP

AEROFLEX, INC.'S RESPONSE TO RICOH'S      -9-
SECOND SET OF INTERROGATORIES

1

2    **INTERROGATORY NO. 43**:

3        Set forth all facts relating to profit calculations or attempts to calculate the profit of any ASIC

4    and any product offered for sale containing that ASIC, including, but not limited to the costs, the

5    calculation formulas, the factors used in calculating cost, the methods of allocating cost between the

6    ASIC and the product offered for sale containing that ASIC (or any component therein), and calculated

7    allocations.

8    **RESPONSE TO INTERROGATORY NO. 43**:

9        Defendant incorporates by reference its General and Specific Objections. Defendant objects to

10   this interrogatory as exceeding the number of allowable interrogatories. Defendant further objects to

11   this interrogatory as vague and ambiguous, unduly burdensome, overly broad and not calculated to

12   lead to the discovery of admissible evidence, especially with respect to "all facts," "relating to," "any

13   ASIC," "any product for sale containing that ASIC," and "(any component therein)." Defendant

14   objects to this interrogatory as vague and ambiguous, unduly burdensome, overly broad and calling for

15   speculation, especially with respect to "profit calculations," "attempts to calculate the profit,"

16   "containing that ASIC," "costs," "calculation formulas," "factors used in calculating cost," "methods

17   of allocating cost between the ASIC and the product offered for sale containing that ASIC (or any

18   component therein)," and "calculated allocations." Defendant objects to this interrogatory as

19   duplicative of information and documents already provided to Ricoh in deposition. Defendant objects

20   to this interrogatory as seeking information and documents protected by the attorney-client privilege,

21   work product doctrine, common defense doctrine, confidentiality requirements, U.S. laws and

22   regulations including without limit International Traffic in Arms ("ITAR") regulations, and any other

23   applicable privilege, protection or doctrine.

24       Subject to and without waiving the foregoing general and specific objections, Defendant

25   responds as follows. Pursuant to Federal Rule of Civil Procedure 33(d), Defendant specifies the

26   following records that have already been produced and are responsive to this request: AF283488 -

27   AF283542; AF 284822 - AF 282895; DEF071266 - DEF 0712426; DEF071427 - DEF 071461; the

28   deposition testimony of Peter Milliken.

1

2   Dated:  May 30, 2006

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

HOWREY LLP

By:
    Denise M. De Mory
    525 Market Street, Suite 3600
    San Francisco, CA 94105
    Attorneys for Synopsys and Aeroflex
    Incorporated, Aeroflex Colorado Springs,
    AMI Semiconductor, Inc., Matrox
    Electronic Systems, Ltd., Matrox Graphics,
    Inc., Matrox International Corp., and
    Matrox Tech, Inc.

AEROFLEX, INC.'S RESPONSE TO RICOH'S
SECOND SET OF INTERROGATORIES

-11-

1

**PROOF OF SERVICE**

2    STATE OF CALIFORNIA            )
                                   )  ss.:
3    SAN FRANCISCO                  )

4

5          I am employed in the San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 525 Market Street, Suite 3600, San Francisco, California 94105-2708.

6

7          On May 30, 2006 I served on the interested parties in said action the within:

8    **DEFENDANT AEROFLEX, INC.'S RESPONSE TO RICOH'S THIRD SET OF INTERROGATORIES**

9    by causing said document to be sent by Electronic Mail on May 30, 2006 to the email addresses indicated for the parties listed below and by placing a true copy thereof in a sealed envelope(s)
10   addressed as stated below and causing such envelope(s) to be delivered as follows:

11   Gary M. Hoffman, Esq.                        Jeffrey Demain, Esq.
     HoffmanG@dsmo.com                            jdemain@altshulerberzon.com
12   Dickstein Shapiro Morin & Oshinsky, LLP      Altshuler, Berzon, Nussbaum, Rubin & Demain
     2101 L Street, N.W.                          177 Post Street, Suite 300
13   Washington, DC 20037-1526                    San Francisco, CA 94108
     Facsimile No.: (202) 887-0689                Facsimile No.: (415) 362-8064
14
     Edward A. Meilman, Esq.
15   MeilmanE@dsmo.com
     Dickstein Shapiro Morin & Oshinsky, LLP
16   1177 Avenue of the Americas
     New York, NY 10036-2714
17   Facsimile No.: (212) 896-5471

18   [X]   (OVERNIGHT DELIVERY) on May 18, 2006 by depositing in a box or other facility regularly
           maintained by Federal Express, an express service carrier, or delivering to a courier or driver
19         authorized by said express service carrier to receive documents, a true copy of the foregoing
           document in sealed envelopes or packages designated by the express service carrier, addressed
20         as stated above, with fees for overnight delivery paid or provided for and causing such
           envelope(s) to be delivered by said express service carrier on.
21
           I declare under penalty of perjury that I am employed in the office of a member of the bar of
22   this Court at whose direction the service was made and that the foregoing is true and correct.

23         Executed on May 30, 2006, at San Francisco, California.

24

25   _____              _____
          Jessika Fabian                          (Signature)
          (Type or print name)

26

27

28

# EXHIBIT 5

1  Teresa M. Corbin (SBN 132360)
   Denise M. De Mory (SBN 168076)
2  Jaclyn C. Fink (SBN 217913)
   HOWREY LLP
3  525 Market Street, Suite 3600
   San Francisco, California 94105
4  Telephone: (415) 848-4900
   Facsimile: (415) 848-4999
5
   Attorneys for Plaintiff SYNOPSYS, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  SYNOPSYS, INC.,                    Case No. C-03-2289 MJJ
                                       Case No. C-03-4669 MJJ
12              Plaintiff,
                                       PATENT INFRINGEMENT ACTION
13        vs.
                                       **AEROFLEX, INCORPORATED'S**
14  RICOH COMPANY, LTD.,               **OBJECTIONS AND RESPONSES TO**
                                       **RICOH'S MAY 4, 2006 NOTICE OF**
15              Defendant.             **DEPOSITION PURSUANT TO FED. R. CIV.**
                                       **P. 30(b)(6)**
16
   RICOH COMPANY, LTD.,
17
                Plaintiff,
18
          vs.
19
   AEROFLEX INCORPORATED, et al.,
20
                Defendant.
21

22        Defendant Aeroflex, Incorporated ("Aeroflex") hereby responds to plaintiff Ricoh Company,

23  Ltd.'s ("Ricoh") 30(b)(6) deposition notice to Aeroflex.

24        This response is made without waiving, in any way: (1) the right to object on any basis

25  permitted by law to the use of any such information, for any purpose, in whole or in part, in any

26  subsequent proceeding in this action or in any other action; and (2) the right to object on any basis

27  permitted by law to any other discovery request or proceeding involving or relating to the subject

28  matter of this response.

HOWREY LLP

Case No. C-03-2289 MJJ/C-03-4669 MJJ
AEROFLEX INC.'S OBJECTIONS TO RICOH'S MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244662.1

1      **GENERAL OBJECTIONS**

2          1.     Aeroflex objects to the date and location noticed for the deposition.  The deposition will

3      be scheduled at a date, time, and location that is convenient for the parties and witnesses.

4          2.     Aeroflex objects to the Notice to the extent that the topics relate to information neither

5      relevant to any cause of action in the action nor reasonably calculated to lead to the discovery of

6      admissible evidence.

7          3.     Aeroflex objects to the Notice to the extent that the topics relate to information that is a

8      matter of public record or is obtainable from some other source that is more convenient, less

9      burdensome, or less expensive.

10         4.     Aeroflex objects to the Notice to the extent that the topics relate to product or software

11     information from conception to the present from any one individual.

12         5.     Aeroflex objects to the Notice to the extent that the topics relate to information

13     protected by: (i) the attorney-client privilege; (ii) the work-product doctrine; (iii) the constitutional

14     right to privacy; or (iv) any other privilege or protection afforded by state or federal law.  Such

15     protected material may include the impressions, conclusions, opinions, legal research, or theories of

16     attorneys, whether or not communicated to their client, and/or any other applicable privilege.  Any

17     inadvertent production of information subject to any such privilege or protection shall not be deemed a

18     waiver of any privilege or protection with respect to such information.  Aeroflex will provide only

19     responsive information that is not subject to any such privilege or protection.

20     **SPECIFIC OBJECTIONS TO DEFINITIONS & INSTRUCTIONS**

21         1.     Aeroflex objects to Ricoh's Definition "c" to the extent that the term "Synopsys, Inc."

22     extends to any person or entity other than present employees and agents of Synopsys, Inc.

23         2.     Aeroflex objects to Ricoh's Definition "d" to the extent that the term "ASIC

24     Defendant/Aeroflex, Inc." extends to any person or entity other than present employees and agents of

25     Aeroflex.

26         3.     Aeroflex objects to Ricoh's Definition "e" on the basis that the term "defendant" is

27     overbroad and seeks to impose on Aeroflex the responsibility to collect information from parties over

28     which it has no direct authority or legal responsibility.  Aeroflex further objects to this definition to the

1   extent that "defendant" refers to any person or entity other than Aeroflex's present employees and

2   agents.

3       4.      Aeroflex objects to Ricoh's Definition "o" on the grounds that the definition of "ASIC

4   Product" is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead

5   to the discovery of admissible evidence. Aeroflex objects to the extent that any deposition topics relate

6   to a definition of ASICs broader than "Commercial ASICs" as defined in the Amended Stipulation Re

7   Supplemental Production in Accordance with Judge Chen's April 20, 2006 Order and the May 8, 2006

8   Order Thereon (hereinafter referred to as "Commercial ASICs"). Aeroflex also objects to Definition

9   "o" to the extent that it characterizes design as part of the manufacturing process. Aeroflex objects to

10  any definition of ASIC Product broader than ASICs whose front-end design (resulting in a netlist) was

11  created using one of the products-in-suit, i.e., Design Compiler, HDL Compiler for Verilog, VHDL

12  Compiler, , and DesignWare Library (hereinafter referred to as "products-in-suit").

13      5.      Aeroflex objects to Ricoh's Definition "p" on the grounds that the definition of "Design

14  Compiler System" is vague and ambiguous regarding its use of "database library" and overly broad,

15  unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in

16  that it refers "to any and all … components … contributing to systems … made available by, or on

17  behalf of, or otherwise at the direction of Synopsys…."

18      6.      Aeroflex objects to Ricoh's Definition "r" on the grounds that "all commercial versions

19  (and variations)" is overly broad and unduly burdensome.

20      7.      Aeroflex objects to Ricoh's Definition "w" on the grounds that "scripts" is vague and

21  ambiguous, overly broad, and unduly burdensome.

22      8.      Aeroflex objects to Ricoh's Definition of "x" on the grounds that "logic synthesis" is

23  overly broad, unduly burdensome, and irrelevant to this case. Aeroflex objects to any definition of

24  "logic synthesis" broader than the creation of front-end design (resulting in a netlist) by any of the

25  products-in-suit.

26      9.      Aeroflex objects to Ricoh's Definition of "y" on the grounds that "logic synthesis tool"

27  is overly broad, unduly burdensome, and irrelevant to this case. Aeroflex objects to any definition of

28  "logic synthesis tool" that is broader than any of the products-in-suit in this case.

HOWREY LLP

Case No.  C-03-2289 MJJ/C-03-4669 MJJ                          -3-
AEROFLEX INC.'S OBJECTIONS TO RICOH'S  MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)

1    **DEFENDANT AEROFLEX'S OBJECTIONS TO SPECIFIC RULE 30(b)(6) DEPOSITION**

2    **TOPICS FROM PLAINTIFF'S DEPOSITION NOTICE**

3    **DEPOSITION TOPIC NO. 1**:

4          Procedures, policies, or guidelines relating to contracting with the U.S. Government or a U.S.

5    Government contractor.

6    **RESPONSE TO DEPOSITION TOPIC NO. 1**:

7          Aeroflex incorporates by reference its General and Specific Objections.  Aeroflex also objects

8    to the extent that Ricoh seeks information protected by the attorney-client privilege or the work

9    product doctrine.  In addition, Aeroflex objects to "procedures," "policies," "guidelines,"

10   "contracting," "U.S. Government," and "U.S. Government contractor" as vague and ambiguous.

11   Furthermore, Aeroflex objects as overly broad, unduly burdensome, not reasonably calculated to lead

12   to the discovery of admissible evidence, and irrelevant to the extent that Ricoh seeks information on

13   products that are not Commercial ASICs.

14         Subject to and without waiving the foregoing general and specific objections, Aeroflex will

15   provide a witness(es) to testify regarding this topic.

16   **DEPOSITION TOPIC NO. 2**:

17         All agreements with the U.S. Government or a U.S. Government contractor relating to circuit

18   products (including, but not limited to, ASIC Products) made, designed, or developed by your or on

19   your behalf since January 21, 1997.

20   **RESPONSE TO DEPOSITION TOPIC NO. 2**:

21         Aeroflex incorporates by reference its General and Specific Objections.  Aeroflex also objects

22   to the extent that Ricoh seeks information protected by the attorney-client privilege or the work

23   product doctrine.  In addition, Aeroflex objects to "agreements," "U.S. Government," "U.S.

24   Government contractor," "circuit products," "made," "designed," and "developed" as vague and

25   ambiguous.  Furthermore, Aeroflex objects as overly broad, unduly burdensome, not reasonably

26   calculated to lead to the discovery of admissible evidence, and irrelevant to the extent that Ricoh seeks

27   information on products that are not Commercial ASICs.

28

HOWREY LLP

Case No.  C-03-2289 MJJ/C-03-4669 MJJ                    -4-
AEROFLEX INC.'S OBJECTIONS TO RICOH'S  MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US:8244563_*1

1    Subject to and without waiving the foregoing general and specific objections, Aeroflex will

2    provide a witness(es) to testify regarding this topic.

3    **DEPOSITION TOPIC NO. 3**:

4    For each ASIC Product for the U.S. Government or a U.S. Government contractor, made,

5    designed, or developed, and/or produced by you or on your behalf since January 21, 1997, using a

6    logic synthesis tool:

7    A.    All agreements, including, but not limited to the agreements themselves and related

8    documents, including without limitation, drawings and specifications, regarding the design,

9    manufacture, or sale of ASIC Products.

10    B.    The U.S. Government's or a U.S. Government contractor's alleged authorization and

11    consent to use a specific logic synthesis tool in connection with the design, development, or production

12    of ASIC Products.

13    C.    All negotiations and discussions (regardless of whether prior to or after entering such

14    agreements), regarding the design, development, and production of ASIC Products.

15    D.    Any and all requests, instructions, directions, suggestions, or preferences by the U.S.

16    Government or a U.S. Government contractor relating to the use of logic synthesis tools (including

17    identification of the tool itself, software version, and variation) to be used in the design or development

18    of ASIC Products.

19    E.    Any and all knowledge of the U.S. Government or a U.S. Government contractor of the

20    use of logic synthesis tools (including identification of the synthesis tool, software version, or other

21    variation) in the design of development of ASIC Products.

22    F.    Any specifications, written provisions, instructions, directions, suggestions, or other

23    communications provided by the U.S. Government or a U.S. Government contractor to ASIC

24    Defendant showing or tending to show that the methods used for the design or development of ASIC

25    Products necessarily resulted from compliance with said specifications, written provisions,

26    instructions, directions, suggestions, or other communications provided by the U.S. Government or a

27    U.S. Government contractor.

28

HOWREY LLP

Case No.  C-03-2289 MJJ/C-03-4669 MJJ                                    -5-
AEROFLEX INC.'S OBJECTIONS TO RICOH'S  MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244562.v1

1    G.    Any requirements, including, but not limited to agreements, drawings, and

2  specifications, regarding the design, development, and production of ASIC Products.

3    H.    Any instruction, direction, or suggestion by the U.S. Government or a U.S. Government

4  contractor relating to the development of inputs to the logic synthesis tool, including but not limited to

5  inputs written by third parties, in connection with the design or development of ASIC Products.

6    I.    Any knowledge of the U.S. Government or a U.S. Government contractor of the use of

7  inputs to the logic synthesis tool, including, but not limited to inputs written by third parties, in

8  connection with the design or manufacture of ASIC Products.

9    J.    Any instruction, direction, or suggestion by the U.S. Government or a U.S. Government

10  contractor relating to design or development of scripts, including, but not limited to scripts written by

11  third parties, in connection with the design or manufacture of ASIC Products.

12    K.    Any knowledge of the U.S. Government or a U.S. Government contractor of the use of

13  scripts, including, but not limited to scripts written by third parties, in connection with the design or

14  manufacture of ASIC Products.

15  **RESPONSE TO DEPOSITION TOPIC NO. 3**:

16    Aeroflex incorporates by reference its General and Specific Objections to the following

17  subtopics. Aeroflex also objects to these subtopics to the extent that Ricoh seeks information protected

18  by the attorney-client privilege or the work product doctrine. In addition, Aeroflex objects to "U.S.

19  Government," "U.S. Government contractor," "made," "designed," "developed," "produced," and

20  "logic synthesis tool" as vague and ambiguous. Furthermore, Aeroflex objects to these subtopics as

21  overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible

22  evidence, and irrelevant to the extent that Ricoh seeks information on products that are not

23  Commercial ASICs or products that are not products-in-suit. In addition, Aeroflex objects to each

24  subtopic accordingly:

25    A.    Aeroflex objects to "agreements," "related documents," "drawings," "specifications,"

26  "design," "manufacture," "sale," and "ASIC Products" as vague and ambiguous, overly broad, unduly

27  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Aeroflex

28  also objects to the extent that Ricoh seeks discovery on anything other than Commercial ASICs.

HOWREY LLP

Case No. C-03-2289 MJJ/C-03-4669 MJJ                               -6-
AEROFLEX INC.'S OBJECTIONS TO RICOH'S MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244562.v1

1  Furthermore, Aeroflex objects to the extent that Ricoh characterizes design as part of the

2  manufacturing process.

3          Subject to and without waiving the foregoing general and specific objections, Aeroflex

4  will produce a witness(es) to testify on agreements related to authorization and consent of the

5  products-in-suit.

6      B.      Aeroflex objects to "use . . . in connection with," "design," "development," and

7  "production" as vague and ambiguous.  Furthermore, Aeroflex objects to the extent that Ricoh

8  characterizes design as part of the production process.

9          Subject to and without waiving the foregoing general and specific objections, Aeroflex

10  will produce a witness(es) to testify on agreements related to authorization and consent of the

11  products-in-suit.

12      C.      Aeroflex objects to "negotiations," "discussions," "such agreements," "entering such

13  agreements," "design," "development," and "production" as vague and ambiguous.  Aeroflex objects

14  to this deposition topic as overly broad, unduly burdensome, and not reasonably calculated to lead to

15  the discovery of admissible evidence to the extent that Ricoh seeks discovery on any products that are

16  not Commercial ASICs sold after 1997.  Furthermore, Aeroflex objects to the extent that Ricoh

17  characterizes design as part of the production process.

18          Subject to and without waiving the foregoing general and specific objections, Aeroflex

19  will produce a witness(es) to testify on agreements related to authorization and consent of the

20  products-in-suit.

21      D.      Aeroflex objects to "requests," "instructions," "directions," "suggestions," preferences,"

22  "use of logic synthesis tools," "software version," "variation," "design," and "development" as vague

23  and ambiguous.  Aeroflex objects to this topic as overly broad, unduly burdensome, not reasonably

24  calculated to lead to the discovery of admissible evidence, and irrelevant to any issue in the case.

25          Aeroflex will not produce any witnesses to testify on this topic.

26      E.      Aeroflex objects to "knowledge," "synthesis tool," "software version," "other

27  variation," "design," "development," and "design of development" as vague and ambiguous, overly

28  broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

Case No.  C-03-2289 MJJ/C-03-4669 MJJ                    -7-
AEROFLEX INC.'S OBJECTIONS TO RICOH'S  MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244562 v1

1  evidence. Aeroflex also objects on the grounds that Ricoh seeks discovery not on Aeroflex's

2  knowledge, but on the knowledge of another entity. Furthermore, Aeroflex objects to this topic as

3  overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible

4  evidence, and irrelevant to any issue in the case.

5          Aeroflex will not produce any witnesses to testify on this topic.

6       F.    Aeroflex objects to "specifications," "written provisions," "instructions," "directions,"

7  "suggestions," "other communications," "methods," "design," "development," "necessarily resulted

8  from," and "compliance with" as vague and ambiguous. Furthermore, Aeroflex objects to this topic as

9  overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible

10  evidence, and irrelevant to any issue in the case.

11          Aeroflex will not produce any witnesses to testify on this topic.

12       G.    Aeroflex objects to "requirements," "agreements," "drawings," "specifications,"

13  "design," "development," and "production" as vague and ambiguous, overly broad, unduly

14  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

15          Subject to and without waiving the foregoing general and specific objections, Aeroflex

16  will produce a witness(es) to testify on requirements related to authorization and consent of the

17  products-in-suit.

18       H.    Aeroflex objects to "instruction," "direction," "suggestion," "design," "development,"

19  and "development of inputs" as vague and ambiguous. Furthermore, Aeroflex objects to this topic as

20  overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible

21  evidence, and irrelevant to any issue in the case.

22          Subject to and without waiving the foregoing general and specific objections, Aeroflex

23  will produce a witness(es) to testify on the type of inputs used by the products-in-suit to the extent that

24  these products have not already been covered in prior depositions and/or Ricoh did not fail to question

25  about inputs at prior depositions.

26       I.    Aeroflex objects to "knowledge," "use of inputs," "written by third parties," "in

27  connection with," "design," "manufacture," and "in connection with the design or manufacture" as

28  vague and ambiguous. Aeroflex also objects on the grounds that Ricoh seeks discovery not on

HOWREY LLP

Case No. C-03-2289 MJJ/C-03-4669 MJJ
AEROFLEX INC.'S OBJECTIONS TO RICOH'S MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244562.1

-8-

1   Aeroflex's knowledge, but on the knowledge of another entity.  In addition, Aeroflex objects to this

2   topic as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of

3   admissible evidence, and irrelevant to any issue in the case.

4           Aeroflex will not produce any witnesses to testify on this topic.

5       J.      Aeroflex objects to "instruction," "direction," "suggestion," "design," development,"

6   "scripts," "written by third parties," "in connection with," and "manufacture" as vague and ambiguous.

7   Aeroflex also objects to this topic as overly broad, unduly burdensome, not reasonably calculated to

8   lead to the discovery of admissible evidence, and irrelevant to any issue in the case.

9           Aeroflex will not produce any witnesses to testify on this topic.

10      K.      Aeroflex objects to "knowledge," "scripts," "use of scripts," "written by third parties,"

11  "in connection with," "design," and "manufacture" as vague and ambiguous.  Aeroflex also objects on

12  the grounds that Ricoh seeks discovery not on Aeroflex's knowledge, but on the knowledge of another

13  entity.  In addition, Aeroflex objects to this topic as overly broad, unduly burdensome, not reasonably

14  calculated to lead to the discovery of admissible evidence, and irrelevant to any issue in the case.

15          Aeroflex will not produce any witnesses to testify on this topic.

16  **DEPOSITION TOPIC NO. 4**:

17          The basis for your Fifth Affirmative Defense (prosecution history estoppel) in your Amended

18  Answer and Counterclaims filed April 7, 2006.

19  **RESPONSE TO DEPOSITION TOPIC NO. 4**:

20          Aeroflex incorporates by reference its General and Specific Objections.  Aeroflex also objects

21  to "basis" as vague and ambiguous.  Furthermore, Aeroflex objects to the extent that Ricoh calls for a

22  legal conclusion or seeks discovery that is protected by attorney-client privilege or the work product

23  doctrine.

24          Subject to and without waiving the foregoing general and specific objections, Aeroflex will

25  provide a witness(es) to testify regarding this topic.

26

27

28

HOWREY LLP

Case No. C-03-2289 MJJ/C-03-4669 MJJ                                    -9-
AEROFLEX INC.'S OBJECTIONS TO RICOH'S  MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244562.v1

1  **DEPOSITION TOPIC NO. 5**:

2       The process steps in converting a netlist output of the Design Compiler System to the final data

3  file (e.g., in GDSII format) describing the physical layout of a designed ASIC circuit for tape-out to a

4  foundry for fabrication.

5  **RESPONSE TO DEPOSITION TOPIC NO. 5**:

6       Aeroflex incorporates by reference its General and Specific Objections.  Aeroflex also objects

7  to the extent Ricoh seeks information protected by attorney-client privilege or the work product

8  doctrine.  In addition, Aeroflex objects to this deposition topic as irrelevant to this case, overly broad,

9  unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

10  Aeroflex also objects on the basis that Ricoh seeks information outside of the knowledge of Aeroflex.

11       Subject to and without waiving the foregoing general and specific objections, Aeroflex will

12  provide a witness(es) to testify regarding this topic.

13  **DEPOSITION TOPIC NO. 6**:

14       The process steps in converting the tape-out data (e.g., in GDSII format) into mask data used to

15  produce an integrated circuit.

16  **RESPONSE TO DEPOSITION TOPIC NO. 6**:

17       Aeroflex incorporates by reference its General and Specific Objections.  Aeroflex also objects

18  to the extent Ricoh seeks information protected by attorney-client privilege or the work product

19  doctrine.  In addition, Aeroflex objects to this deposition topic as irrelevant to this case, overly broad,

20  unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

21  Aeroflex also objects on the basis that Ricoh seeks information outside of the knowledge of Aeroflex.

22       Subject to and without waiving the foregoing general and specific objections, Aeroflex will

23  provide a witness(es) to testify regarding this topic.

24

25

26

27

28

HOWREY LLP

Case No. C-03-2289 MJJ/C-03-4669 MJJ
AEROFLEX INC.'S OBJECTIONS TO RICOH'S MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244562.v1                                    -10-

1  Dated: May 15, 2006

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

By: _____
          Denise M. De Mory
Attorneys for Plaintiff
SYNOPSYS, INC. and for Defendants
AEROFLEX INCORPORATED,
AEROFLEX COLORADO SPRINGS,
INC., AMI SEMICONDUCTOR, INC.,
MATROX ELECTRONIC SYSTEMS,
LTD., MATROX GRAPHICS, INC.,
MATROX INTERNATIONAL CORP.,
and MATROX TECH, INC.

Case No. C-03-2289 MJJ/C-03-4669 MJJ
AEROFLEX INC.'S OBJECTIONS TO RICOH'S MAY 4, 2006
NOTICE OF DEPOSITION PURSUANT TO FRCP 30(b)(6)
DM_US\8244563.v1

-11-

1

**PROOF OF SERVICE**

2   STATE OF CALIFORNIA          )
                                 )  ss.:
3   COUNTY OF SAN FRANCISCO      )

4

5        I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 525 Market Street, Suite 3600, San Francisco, California 94105.

6

7        On May 15, 2006 I served on the interested parties in said action the within:

8   **AEROFLEX, INCORPORATED'S OBJECTIONS AND RESPONSES TO RICOH'S MAY 4, 2006 NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)**

9   by causing said document to be sent by Electronic Mail on May 15, 2006 to the email addresses indicated for the parties listed below and by placing a true copy thereof in a sealed envelope(s)

10  addressed as stated below and causing such envelope(s) to be delivered as follows:

11  Gary M. Hoffman, Esq.                    Jeffrey Demain, Esq.
    HoffmanG@dsmo.com                        jdemain@altshulerberzon.com
12  Dickstein Shapiro Morin & Oshinsky, LLP  Altshuler, Berzon, Nussbaum, Rubin & Demain
    2101 L Street, N.W.                      177 Post Street, Suite 300
13  Washington, DC 20037-1526                San Francisco, CA 94108

14  Facsimile No.: (202) 887-0689            Facsimile No.: (415) 362-8064

15  Edward A. Meilman, Esq.
    MeilmanE@dsmo.com
16  Dickstein Shapiro Morin & Oshinsky, LLP
    1177 Avenue of the Americas
17  New York, NY 10036-2714

18  Facsimile No.:  (212) 896-5471

19  [X]   (OVERNIGHT DELIVERY) on May 16, 2006 by depositing in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivering to a courier or driver

20        authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed

21        as stated above, with fees for overnight delivery paid or provided for and causing such envelope(s) to be delivered by said express service carrier on.

22

23        I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

24        Executed on May 15, 2006, at San Francisco, California.

25

26  _____        _____
        Peter L. Kasenenko
        (Type or print name)                        (Signature)

27

28

DM_US\8244562.v1

# EXHIBIT 8



**Careers in DC, VA, and MD**
A revolutionary online job service that gives you feedback right away.

**Nationwide Crime Cleanup**
24hr Biohazard Response, Training & Employment 888-246-9111

**Business Opportunity**
This Is Not For The Idle Curious Future Millionaires Only.

**New Business Opportunity**
Tired of 3-4% Physicians go to work and I get Paid. I like that!

Ads by Goooooogle                                             Advertise on this site

# B - Special Studies and Analyses - Not R&D

## SOLICITATIONS

- ADVANCED TECHNOLOGY SUPPORT PROGRAM II (ATSP2)

Today's CBD Index Page
*Created on December 27, 1998 by Loren Data Corp. -- info@ld.com*

**New Business Opportunity**
Tired of 3-4% Physicians go to work and I get Paid. I like that!

**Home Biz Opps**
Biz opps with high potential, low start-up costs and free leads!

**"Top" Work At Home Jobs**
Legitimate Business Opportunities Premier Home Internet Business

**MyDataJob.com**
$2100 a Week To Start. Easy Job. Clerical Type Work, Data Entry Job.

Ads by Goooooogle                                             Advertise on this site



Loren Data Corp.
© 1994-2000 All Rights Reserved

Did you know . . . .

**GSA Schedule Awards**
F ull Services, Cost Effective, Value Added
Services
www.govmark.net

**Defense Contracts**
Info on Defense Contract Management
software, tools, and solutions.
www.TheTechDictionary.com/defense

**Government Bids.com**
20,000 governments, One Location. Bids,
Advance Notices and Awards.
www.GovernmentBids.com

Ads by Goooooogle                                        Advertise on this site

COMMERCE BUSINESS DAILY ISSUE OF DECEMBER 29,1998 PSA#2251

Defense Microelectronics Activity(DMEA), Directorate of Contracting/MEOP, 4234 54th Street, Bldg 620, McClellan AFB, CA 95652-1521

B -- ADVANCED TECHNOLOGY SUPPORT PROGRAM II (ATSP2) SOL DMEA90-99-R-0001 DUE 032699 POC Larry Feldhaus (916) 231-1528 WEB: Defense Microelectronics Activity, http://www.dmea.osd.mil. E-MAIL: LARRY FELDHAUS, CONTRACTING OFFICER, feldhaus@dmea.osd.mil. The Defense Microelectronics Activity (DMEA) has a requirement for engineering services for the Advanced Technology Support Program II (ATSP2), which is a follow-on to the highly successful Advanced Technology Support Program (ATSP). A source selection will be conducted to identify an undetermined number of successful offerors for a multiple award, indefinite delivery, indefinite quantity contract with a 7 year ordering period. The total aggregate contract ceiling is $875 M. An informational Internet web page is located at www.dmea.osd.mil that contains downloadable files pertinent to the ATSP2 requirement. Select the ATSP hyperlink at the bottom of the screen. Request for proposal (RFP # DMEA90-99-R-0001) will be issued on or about January 25, 1999. Proposals shall be received 60 days after RFP issuance, on or about March 26, 1999. A current source list is available at the aforementioned web page. Potential offerors not already on the source list may request a solicitation via e-mail from the link at the web page (preferred) or by writing DMEA/MEOP, Attn: Larry Feldhaus, 4234 54th Street, Building 620, Room 128, McClellan AFB, CA 95652-1521. Phone (916) 231-1528, FAX 916-643-2992. Alternately, the RFP will be available, upon release at the web page location. The DMEA is not responsible for the integrity of electronic communication or the failure of delivery. See Numbered Note(s) 26. Posted 12/24/98 (W-SN283470). (0358)

Loren Data Corp. http://www.ld.com (SYN# 0001 19981229\B-0001.SOL)

B - Special Studies and Analyses - Not R&D Index Page

**Top 100 ERP Software**
Top 100 Enterprise Software
Systems Get Free RFI, RFP
Samples & Guide.

**Infrastructure Projects ?**
Road, Dam, Bridge, Building,
Tunnel Tap our Global Bidding
Network !

**Respond Faster to RFPs**
You only get 1 chance to make a
1st impression. Beat competitors
to it.

**Government Contracts**
Win Government contracts now.
Learn all the steps from A to Z!

Ads by Goooooogle                                        Advertise on this site

1  Gary M. Hoffman (*Pro Hac Vice*)
   Kenneth W. Brothers(*Pro Hac Vice*)
2  DICKSTEIN SHAPIRO LLP
   2101 L Street, NW
3  Washington, DC  20006-5403
   Phone (202) 420-2200
4  Fax (202) 420-2201

5  Edward A. Meilman (*Pro Hac Vice*)
   DICKSTEIN SHAPIRO LLP
6  1177 Avenue of the Americas
   New York, New York  10036-2714
7  Phone (212) 277-6500
   Fax (212) 277-6501
8
   Jeffrey B. Demain, State Bar No. 126715
9  Jonathan Weissglass, State Bar No. 185008
   ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
10 177 Post Street, Suite 300
   San Francisco, California  94108
11 Phone  (415) 421-7151
   Fax (415) 362-8064
12
   Attorneys for
13 RICOH COMPANY, LTD.

14
                      UNITED STATES DISTRICT COURT
15                    NORTHERN DISTRICT OF CALIFORNIA

16 _____
17 RICOH COMPANY, LTD.,                )
                                       )
18              Plaintiff,             )   **CASE NO. CV 03-4669 MJJ (EMC)**
                                       )   **CASE NO. CV 03-2289 MJJ (EMC)**
19       vs.                           )
                                       )
20 AEROFLEX ET AL,                     )   **MANUAL FILING NOTIFICATION**
                                       )
21              Defendants.            )
                                       )
22 _____)

23
24
25
26
27
28

1

2          Regarding: Exhibits 6-7 and 9-13 to the Declaration of Rebecca L. Barbisch in Support of

3   Ricoh's Motion for Summary Judgment on Aeroflex's Affirmative Defense of "Authorization and

4   Consent."

5          This filing is in paper or physical form only.  If you are a participant in this case, this filing will

6   be served shortly.  For information on retrieving this filing directly from the court, please see the court's

7   main web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

8   This filing was not e-filed for the following reason(s):

9   [_] Voluminous Document (PDF file size larger than the e-filing system allows)

10  [_] Unable to Scan Documents

11  [_] Physical Object (description): _____

12     _____

13  [_] Non-Graphic/Text Computer File (audio, video, etc.) on CD or other media

14  [X] Item Under Seal

15  [_] Conformance with the Judicial Conference Privacy Policy (General Order 53).

16  [_] Other (description): _____

17

18  Dated: August 18, 2006                    Respectfully submitted,

19                                            Kenneth W. Brothers
                                              Gary M. Hoffman
20                                            Dickstein Shapiro LLP

21                                            Jeffrey B. Demain
                                              Jonathan Weissglass
22                                            Altshuler, Berzon, Nussbaum, Rubin & Demain

23

24                                            By:_____/s/_____
                                                 Kenneth W. Brothers
25
                                              Attorneys for Ricoh Company, Ltd.
26

27

28

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| | ) |
| Plaintiff, | )    Case No. C-03-4669-MJJ (EMC) |
| | ) |
| v. | ) |
| | )    CERTIFICATE OF SERVICE |
| AEROFLEX ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

I am employed in Washington, District of Columbia.  I am over the age of eighteen (18) years and not a party to the within action; my business address is 1825 Eye Street, NW, Washington, DC, 20006.

On August 18, 2006, I served **CONFIDENTIAL EXHIBITS 6-7 AND 9-13 TO THE DECLARATION OF REBECCA L. BARBISCH IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"** on the parties, through their attorneys of record, by sending true copies thereof to the e-mail addresses listed below:

Terry Corbin, Esq.
CorbinT@Howrey.com

Jacky Fink, Esq.
FinkJ@Howrey.com

Denise De Mory, Esq.
DeMoryD@Howrey.com

I declare that I am employed in the office of a member *pro hac vice* of the Bar of this Court at whose direction this service was made.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Washington, D.C. on August 18, 2006.

_____/s/_____

Solomon Seyoum

2069126.01