United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC., | No. C-03-2289 MJJ (EMC) |
| Plaintiff, | No. C-03-4669 MJJ (EMC) |
| v. | **ORDER RE JOINT LETTER OF AUGUST 10, 2006** |
| RICOH CO., LTD., | |
| Defendant. _____/ | **(Docket No. 403 in C-03-2289, Docket No. 540 in C-03-4669)** |
| RICOH CO., LTD., | |
| Plaintiff, | |
| v. | |
| AEROFLEX, et al., | |
| Defendants. _____/ | |

On August 10, 2006, the parties filed a joint letter regarding documents related to Yoon-Pin Simon Foo. Synopsys and the Customer Defendants (collectively, "Defendants") have asserted that Dr. Foo is the inventor or co-inventor of some of the inventions claimed in the '432 patent. Accordingly, Dr. Foo is a fact witness in these cases. Counsel for Defendants represent Dr. Foo as a fact witness. However, Defendants have also retained Dr. Foo as a nontestifying expert. In the letter, Ricoh asks the Court to compel production of (1) documents listed on the privilege log of Dr. Foo; (2) "additional unlogged and unproduced Foo documents," which would include the consulting agreement and documents related to payment for his services; and (3) any other documents "between or among [Dr.] Foo, defendants' counsel, and defendants' experts." Joint letter of 8/10/06, at 9.

As a preliminary matter, Defendants argue that the Court should deny Ricoh's request on the basis that it is untimely. The Court agrees. Ricoh knew of Dr. Foo's dual role as fact witness and nontestifying expert well before the discovery motion cut-off date of June 7, 2006. There is nothing misleading about the privileges claimed (work product and attorney-client) in the Foo privilege log, *see* Ex. 3, nor is there anything misleading in the letter from defense counsel, dated May 23, 2006. *See* Ex. 5. While Ricoh points out that expert discovery is still ongoing and that one of Defendants' experts, Dr. Mitchell, relied on several conversations with Dr. Foo, Ricoh had sufficient knowledge to bring this motion earlier.

Moreover, permitting Ricoh leave to file this late motion is not justified by a substantial showing on the merits or undue prejudice. Neither exists here. With respect to the Foo privilege log, Defendants have established a prima facie case that the attorney-client and work product privileges are applicable to the documents identified. Regarding the attorney-client privilege, Defendants have represented that defense counsel is also counsel for Dr. Foo, and Ricoh does not contest otherwise. For every document to which the attorney-client privilege is claimed, the document is described as a confidential attorney-client communication regarding representation for responding to the Ricoh subpoena. There does not appear to be any disclosure of the documents to a third party which would constitute a waiver.[1]

Regarding the work product privilege, every document to which this privilege is claimed is described as reflecting the litigation strategy of the Howrey attorneys. Ricoh suggests that disclosure to a third party fact witness waives the privilege, but there is case law to the contrary. "Work product protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *See United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003); *see also In re McKesson HBOC, Inc. Secs. Litig.*, Nos. C-99-20743 RMW, C-00-20030 RMW, 2005 U.S. Dist. LEXIS 7098, at *30-31 (N.D. Cal. Mar. 31, 2005) ("Generally, waiver of the work product doctrine will be found only

---

[1] Ricoh's citation to *Petition of Bloomfield S.S. Co.*, 42 F.R.D. 348, 350 (S.D.N.Y. 1966) (refusing "[t]o expand the protection of privilege now afforded to attorney-client communications so as to embrace communications between an attorney and a fact witness"), is therefore inapt.

where the work product was voluntarily disclosed such that it may become readily accessible to an adversary. "Thus, disclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver of the protection of the rule.").[2] There is no indication that disclosure of Howrey litigation strategy to Dr. Foo -- who is aligned with Defendants -- would enable Ricoh to gain access to the information. Even if disclosure to a third party could be deemed a waiver of the privilege, Ricoh's argument begs the question; disclosure to Dr. Foo as a non-testifying expert would not constitute waiver.

Ricoh, of course, seeks production of documents other than those identified on the privilege log -- namely, production of "additional unlogged and unproduced Foo documents," which would include the consulting agreement and documents related to payment for his services, and any other documents "between or among [Dr.] Foo, defendants' counsel, and defendants' experts." Joint letter of 8/10/06, at 9. But Ricoh does not provide any real argument as to why it is entitled to such documents.

With respect to the first category, it is possible for a person to play a dual role in litigation, *i.e.*, serve as a fact witness and as a nontestifying expert. *See Atari*, 161 F.R.D. at 421 ("[A nontestifying] expert may be deposed concerning information acquired or opinions formed prior to his employment by a party."); *see also Sensormatic Elecs. Corp. v. WG Security Prods., Inc.*, No. 2:04-CV-167, 2006 U.S. Dist. LEXIS 30591, at * 6 ("'[O]ne may simultaneously be a litigation expert with Rule 26(b)(4) protection as to some matters and simply an unprotected actor or witness as to others . . . .' [¶] . . . While Frederick is a fact witness regarding his activities at Sensormatic and the invention of the '490 patent, he is a non-testifying expert regarding his opinions of the Defendants' source code because he gained such information and opinion after being employed as a consulting expert."). Ricoh has not adequately demonstrated that Defendants are withholding documents relating to any communications with Dr. Foo "in his role purely as a fact witness."

---

[2] In *Atari Corp. v. Sega of Am.*, 161 F.R.D. 417 (N.D. Cal. 1994), there was a waiver of the work product privilege precisely because disclosure had been made to the adverse party. *See id.* at 420 ("Any voluntary disclosure inconsistent with the confidential nature of the work product privilege waives the privilege. Disclosure to the adverse party is inherently inconsistent with the adversary system.") (internal quotation marks omitted).

3

*Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564 T-F, 2006 U.S. Dist. LEXIS 36796, at *12 (W.D.N.Y. Apr. 21, 2006). As for the consulting agreement and documents related to payment for Dr. Foo's services, Ricoh does not cite any authority to support its claim that those documents should be produced. In fact, there is at least one case to the contrary. *See id.*, 2006 U.S. Dist. LEXIS 36796, at *13-14 (stating that party had to produce information relating to an $8,000 payment made to a nontestifying expert who was also a fact witness because that payment had already been disclosed but stating that party did not have to produce "any further information relating to any other payments to Mr. Roberts for the times he was acting as a consultant"; adding, however, that party had to produce payments to nontestifying expert "that relate solely to his role as a fact witness" -- *e.g.*, "any payments compensating [him] for the deposition itself"). Furthermore, Ricoh will be able to impeach Dr. Foo at trial with the fact that he is a consultant for Defendants.

As for the second category, again, Ricoh has not adequately demonstrated that Defendants are withholding documents relating to any communications with Dr. Foo in his role purely as a fact witness. This request is exceedingly broad.

Finally, the Court notes that Ricoh has had full access to every other aspect of Dr. Foo's testimony as a fact witness. Ricoh does not dispute that it has obtained all available documents generated by Dr. Foo prior to his retention (nearly 20 years after the event in question) by Defendants herein. Ricoh has also had access to Dr. Foo's communications which were provided by Dr. Mitchell, the testifying expert. Nor does Ricoh dispute that it has been able to depose Dr. Foo about the events of the 1980's and his alleged role as inventor. Ricoh also will have the opportunity to depose Dr. Mitchell and inquire into all communications he has had with Dr. Foo on which he relied. Ricoh's request to breach communications which are imbued prima facie with attorney-client and work product privileges, at most, deprives Ricoh of possible inconsistencies in what Dr. Foo has said to counsel versus what he said to Dr. Mitchell. Ricoh fails to establish substantial need to breach the privilege. No showing of substantial prejudice has been made.

///

///

///

1  Accordingly, the Court finds that Ricoh's request for relief is untimely and that, in any event,
2  the arguments underlying the request for relief are without sufficient merit to warrant an exception.
3  This order disposes of Docket No. 403 in C-03-2289 and Docket No. 540 in C-03-4669.
4
5  IT IS SO ORDERED.
6
7  Dated: August 22, 2006
8                                                                    EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

Accordingly, the Court finds that Ricoh's request for relief is untimely and that, in any event, the arguments underlying the request for relief are without sufficient merit to warrant an exception.

This order disposes of Docket No. 403 in C-03-2289 and Docket No. 540 in C-03-4669.

IT IS SO ORDERED.

Dated: August 22, 2006

EDWARD M. CHEN
United States Magistrate Judge