Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Telephone: (212) 227-6500
Facsimile: (212) 227-6501

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for
RICOH COMPANY, LTD.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| Plaintiff, | ) **CASE NO. C-03-4669-MJJ (EMC)** |
| | ) **RICOH'S OPPOSITION TO DEFENDANTS'** |
| | ) **MOTION FOR SUMMARY JUDGMENT OF** |
| vs. | ) **LACHES DEFENSE (MOTION NO. 8)** |
| | ) **REDACTED PUBLIC VERSION** |
| AEROFLEX INCORPORATED, et al., | ) Date: September 26, 2006 |
| | ) Time: 9:30 a.m. |
| Defendants | ) Courtroom: 11, 19th Floor |
| | ) Judge: Martin J. Jenkins |
| | ) |

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................................................ 1

II.     RICOH'S COUNTERSTATEMENT OF FACTS ....................................................... 3

III.    ARGUMENT ...................................................................................................... 7

        A.      The Legal Requirements For Summary Judgment ................................. 7

        B.      Legal Standards Applicable To Laches ................................................ 8

        C.      Defendants Cannot Assert Facts Outside The Scope Of Their
                Pleadings .......................................................................................... 10

        D.      Defendants Cannot Assert A Laches Defense Personal To
                Synopsys ........................................................................................... 13

        E.      The Evidence Presented By Defendants Is Insufficient To Show
                Laches And Represent Substantial Issues Of Material Fact ................ 14

IV.     CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) ....................................................................................................................9, 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................................8

*Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264 (Fed. Cir. 1991) ......8, 15

*Cooper v. Ford Motor Co.*, 748 F.2d 677, 679-80 (Fed. Cir. 1984)....................................8

*DH Technology, Inc. v. Synergystex International, Inc.*, 1994 U.S.Dist. LEXIS 5301, *3-4 (N.D. Cal. 1994) ...........................................................................................17

*Hall v. Aqua Queen Manufacturing Co.*, 93 F.3d 1548 (Fed. Cir. 1996) ..........................17

*Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986) .....................................8

*Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n.7 (9th Cir. 1980) ..........................................................................................................................11

*Nationwide Life Insurance Co. v. Bankers Leasing Association*, 182 F.3d 157, 160 (2d Cir. 1999).........................................................................................................8, 15

*Odetics Inc. v. Storage Tech Corp.*, 919 F.Supp. 911, 92-26 (E.D.VA. 1996) .................14

*Pierce v. American Communications Co., Inc.*, 111 F.Supp. 181, 190 (D. Mass. 1953) ...............................................................................................................................14

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999)...........8

*Robbers v. Heim*, 1991 U.S.Dist. LEXIS 19377 at *2 (N.D. CA 1991)............................11

*Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1466 (Fed. Cir. 1998)...............................17, 18

## FEDERAL STATUTES

Fed. R. Civ. P. 56...............................................................................................................8

1  **I.    INTRODUCTION**

2       This summary judgment motion is based solely on application of the presumption of laches

3  which arises from a delay of filing suit for more than six years.  Despite the inclusion of non-party

4  Synopsys in the title to this motion, this motion was filed only in CV-03-4669, and, is made only by the

5  Aeroflex Defendants ("Defendants").  Laches may only be based on defenses personal to the named

6  parties.  Defendants' arguments attempt to blur the line between Ricoh's infringement action against the

7  companies which are accused of actually infringing the '432 patent, and a separate declaratory judgment

8  action (*Synopsys v. Ricoh*, Case No. C-03-02289 MJJ), commenced by the supplier of a tool that

9  Defendants use in the course of their infringing conduct, despite the fact that their supplier Synopsys has

10  never been accused of infringement.[1]

11       The only laches defense that is relevant a justicable is that which was pled by the ASIC

12  Defendants in this action on April 2004.[2]  That pleading concerns only the actions of a non-party,

13  KBS[3], which at one time co-owned the '432 patent, in connection with another non-party Synopsys.

14  Those pleadings also aver that "On information and belief, Ricoh and KBS coordinated all activities

15  related to the '432 patent."  That assertion is neither repeated in the pending motion nor is any

16  information and evidence in support of it presented.  Therefore, all factual allegations must be limited to

17  the activities of KBS.  On this basis alone, the motion should be denied.

18       Even if it were proper for Defendants to rely on a right of non-party Synopsys, and it is not

19  because laches is a personal defense, Synopsys lacks a viable laches defense.  Laches may be able to

20  limit damages prior to the filing of a lawsuit on an asserted infringement claim, but Synopsys has never

21  been charged with infringement, much less sued for infringement, and therefore has no such defense

22

23

24  ———————————

25  [1] While Synopsys supplies a tool that is used, Ricoh's infringement in issue are directed to a process of
   designing ASICs which are part of and related to the manufacturing of the ASICs.  Synopsys does not
26  design, fabricate or sell ASICs.

27  [2] The defense pled by each of the Defendants is, other than their individual name, identical.

28  [3] Sometimes referred to as KBSC.

1    available to it.  Even if it were possible to transfer a non-existent defense from Synopsys to Defendants,

2    it would still leave Defendants with a non-existent defense.

3        Even if the new evidence contained in this motion, some of it never previously produced, were

4    admissible to support Defendants' laches allegations against Ricoh, and they are not because such

5    assertions are outside the laches pled by Defendants, that new evidence does not create a prima facie

6    case of laches for Defendant.  Defendants fail to show Ricoh knew or had reason to know that

7    Defendants were infringing the '432 patent more that six years prior to suit.  On their face, the assertions

8    advanced by Defendants, at the very best, provide some basis for arguing to the trier of fact that there

9    was an awareness that Defendants had a capability of infringing.  But the mere capability of infringing at

10   some unknown time in the future does not start the running of the laches clock.  Indeed, Defendants

11   themselves have said they were using the very same tool in a different manner which was non-infringing

12   – if a non-infringing use of the Synopsys tools is possible, it follows that Defendants cannot rely on a

13   showing that Ricoh merely knew of the Synopsys tools' existence; they must show that Ricoh knew that

14   Defendants were using the tools *in an infringing manner*.  Defendants have not made such a showing.

15   For this additional reason, summary judgment is improper.

16       Moreover, the foregoing is based on taking all of Defendants' assertions in their motion brief as

17   true, even though many of these assertions are advanced without citing any factual basis (and therefore

18   are legally a nullity) and other assertions are actually interpretations of fact made through rose-colored

19   glasses.  Summary judgment must be based on undisputed material facts without reliance on disputed

20   interpretations.  Here, this means that the motion must be based either on an admission by Ricoh, a fact

21   to which Ricoh agrees, or undisputable evidence.  There are no such admissions and there are factual

22   disputes.  To avoid the necessity of responding to each and every bald assertion for which no citation of

23   authority is given in order to avoid any assertion of admission by silence, Ricoh hereby globally

24   traverses the validity of Defendants' unsupported assertions.

25       Finally, even if the facts supported by Defendants cited inadmissible evidence were true and

26   undisputed, Ricoh is still entitled as the non-moving party, to the benefit of any inference drawn from

27   these facts.  The remaining facts to which Ricoh may agree combined with other relevant evidence

28

1  simply do not indisputably establish the material facts needed to grant this motion, namely that Ricoh

2  knew for more than six years prior to filing the Complaint that the ASIC Defendants were infringing or

3  had reason to know they were.

## II.    RICOH'S COUNTERSTATEMENT OF FACTS

4

5          Even ignoring Defendants' complete failure to properly restrict this laches defense to their

6  pleadings, their statement of facts is woefully deficient.  Although the ASIC Defendants never assert

7  that any of their alleged facts are undisputed (a requirement for summary judgment), Ricoh will

8
9  demonstrate that a sufficient quantum of their "facts", even assuming they are admissible to support

10  their defense, represent disputed substantial issues of material fact, and in some cases are completely

11  misleading and inaccurate, requiring that summary judgment be denied.

12          First, Defendants base their motion on the "fact" that Ricoh's infringement contentions "allege

13  that software licensed from Synopsys and used by Customer Defendants performs all the steps of the

14  asserted claims except the describing step."  Ricoh's infringement contentions were submitted after the

15  filing date of this case, and therefore are irrelevant to the laches inquiry.  Ricoh's Rule 30(b)(6) witness

16  testified that Ricoh had information sufficient to form a belief "that software of Synopsys was an issue

17  with regard to practicing the '432 patent by third parties" in

18



19

20

21

22  (Brothers Dec. Ex. 16, Ishijima 4/19/2006 Tr. at 92).[4]  Mr. Ishijima specifically distinguished between

23  Ricoh's awareness of the tools' mere existence from Ricoh's belief that the tool could be used so as to

24  infringe.  (Brothers Dec. Ex. 17, Ishijima 5/12/2006 Tr. at 116-7).  While Defendants argue that Ricoh

25  had or should have known of the infringement going back to the early 1990s, this is a disputed issue of

26  _____

27

28  [4] Ricoh's exhibits to all of their oppositions to the numerous motions for summary judgment are attached
    to the September 1, 2006 declaration of Kenneth W. Brothers

material fact. The date on which Ricoh had reasonable basis to believe that the Synopsys tool could, when combined with other activity, infringe the '432 patent is therefore a disputed issue of material fact. Most importantly, the date on which Ricoh had reasonable basis to believe that *Defendants* were infringing the '432 patent using the Synopsys tool, which could not have been any earlier than ███ ████████████████ that the Synopsys tool was capable of being used to infringe, is a disputed issue of material fact. (Brothers Dec. Ex. 16, Ishijima 4/19/2006 Tr. at 92).

This "fact" regarding Ricoh's infringement contentions is also disputed to the extent that it grossly simplifies and distorts those contentions, which cites to and relies heavily on evidence confidential to Synopsys and Defendants and not available to Ricoh. *See* Def. Ex. 4. Indeed, these contentions were filed under seal and are clearly marked "Confidential Pursuant to Protective Order." Defendants make no allegation that this information regarding Defendants' infringement was available to Ricoh prior to the commencement of this action, let alone prior to 1997. *Id.* Defendants solely focus on inputs into Design Compiler and the fact that Design Compiler performs logic synthesis, as if that alone were enough to infringe the patent.[5] But at the same time that they argue that any use of Design Compiler necessarily infringes (and that this is apparent to the end user without any investigation), Defendants, who admit to performing logic synthesis using Design Compiler, also deny their activity constitutes infringement, thereby creating an issue of fact based on their own contentions. Mr. Ishijima has testified that Ricoh did not have information sufficient to determine that the inner workings of Design Compiler was capable of infringing until the time period of ████████. (Brothers Dec. Ex. 16, Ishijima 4/19/2006 Tr. at 92).

Defendants contend that "Ricoh and ICC have known since as early as 1989 that Design Compiler accepts Verilog HDL inputs," the input satisfying the claimed "describing" step, citing a 1989 guest editorial by Dr. Kobayashi as evidence. The editorial, which concerned commercial material available to potential users in Japan, also indicates the tool accepts three other inputs (Def. Ex. 66 at

---

[5] If the only thing required to show infringement was to show that Defendants use the Synopsys tools and do logic synthesis, then the issue of infringement should not even be in dispute between the parties; Defendants should readily admit infringement instead of filing three non-infringement motions for summary judgment.

KBSC001114).  Even if the knowledge of this article could be properly attributed to Ricoh, it discloses nothing more than the Design Compiler tool's ability to accept HDL (Verilog) inputs.  This at most may amount to knowledge that if someone performed the "describing step" in the claims of the '432 patent, the Design Compiler tool was capable of accepting that description, and nothing more.  To the extent that this assertion was meant to impute that Ricoh knew or should have known that *Defendants* were actually combining the description with the abilities of the tool and that the tool when used with such input would operate in a manner to carry out each of the parts of the process set out in the claims in issue and thereby infringing the '432 patent, it is disputed.

Defendants aver that Ricoh had *full* knowledge of how Design Compiler works in 1989 based on a single reference to the software in an article, yet at the same time, they are arguing in their companion summary judgment motions for non-infringement (summary judgment motions #2, #6, et al.) that Ricoh does not, even now, understand how Design Compiler works.  *See, e.g.*, discussion of cell selection rules at motion page 15 of Summary Judgment Motion #2, and of expert knowledge at pages 11-13 of Summary Judgment Motion #6.  Thus, their own inconsistent assertions about what Ricoh knew or had reason to know make the extent to which Ricoh had knowledge of how Design Compiler works a disputed issue of fact.  Ricoh did not form its good faith belief that Design Compiler may be capable of being used to infringe the process claims of the '432 patent until ███████████████.  (Brothers Dec. Ex. 16, Ishijima 4/19/2006 Tr. at 92).

Defendants also allege that "on October 22, 1990, Ricoh licensed the Design Compiler and HDL Compiler for Verilog from Synopsys," that KBSC, a non-party, licensed Design Compiler in 1993 and that both "Ricoh and KBSC received product manuals as well as other Synopsys resources."  Of these, however, only one of these assertions, the averment that KBSC licensed Design Compiler, can be found in Defendants' laches pleadings, and none of these averments appear in any of Defendants' expert reports.

1    While Ricoh had a license[6] to Design Compiler, this fact is irrelevant to the pleadings, which

2    relate only to acts by KBS.  In any event, Ricoh had no knowledge of the inner workings of Design

3    Compiler, ███████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████████████████████

5    ██████████.[7] *See, e.g.*, Brothers Dec. Ex. 91 at 2SP 0708480 (prohibiting Ricoh to "decompile,

6    disassemble, reverse engineer or attempt to reconstruct, identify or discover any source code, underlying

7    ideas, underlying ideas, underlying user interface techniques or algorhythms of the Licensed Product by

8    any means whatever")[8].  Defendants make no allegation that Ricoh violated the terms of its license.

9    Again, these "facts" indicate, at most, that the Design Compiler tool was capable of being used in a

10   certain way and nothing more.  If the assertion was meant to assert Ricoh knew or should have known

11   that the ASIC Defendants were actually using the patented process to design and manufacture ASICs for

12   sales in the United States, it is disputed, as Mr. Ishijima has testified to the contrary.

13   Defendants allege that "widespread use of Synopsys' HDL Compiler was known to the general

14   public" and that "Customer Defendants' personal use of the Synopsys Design Compiler was open and

15   notorious."  These allegations (which are outside their affirmative defense pleadings) and supporting

16   evidence appear nowhere in their expert reports, and much of their supporting evidence, e.g. a 1991

17   Synopsys book (Def. Ex. 21) and Defendants' press releases (Def. Ex. 76), were not produced until after

18   the close of discovery, and fail to provide any factual basis from which it can be concluded Ricoh knew

19   or should have know about them.  Def. Ex. 74 at best concerns Matrox activity in Canada; Def. Ex. 75 is

20   a 1991 report that AMI was trying to develop a product without any forecast about when, if ever, it

21   would be used; Def. Ex. 77 indicates AMI did not actually enter the marketplace until 1996 and does not

---

23   6 ███████████████████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████

26   7 The argument of the ASIC defendants is predicated on an assertion that Ricoh could have and should

27   have violated its license agreement with Synopsys and reverse engineered the software.

28   8 This license is one of the over 40 contracts alluded to in Defendants motion at 2, and listed in Def. Ex.
     68.

1    contain any indication that AMI's entry at that time had any relationship to Design Compiler; and Def.

2    Ex. 76 has no indication that Aeroflex was using the relevant software tool.  Even if admissible, none of

3    this evidence supports Defendants' allegation that Ricoh had sufficient knowledge of the inner workings

4    of Design Compiler to conclude it was capable of being used in the course of infringing the '432 patent

5    prior to ███. More importantly, this "evidence" does not establish that Ricoh knew or should have

6    known what Defendants were doing in the United States, and if proffered to show that the only possible

7    interpretation is that Ricoh should have known of their infringement, it is disputed.

8        Defendants have said they used Design Compiler in a non-infringing mode, and Defendant's

9    expert asserts that Design Compiler is capable of non-infringing use.  *See, e.g.*, Brothers Dec. Ex. 11,

10   Wagner Report at 6, fn. 17 █████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ███████████████████  As a result of these admissions, any evidence proffered for the proposition that the

15   only possible interpretation of the record is that Ricoh should have known that the ASIC Defendants

16   were infringing the '432 patent in the United States more than six years pre-suit is a disputed issue of

17   fact.

18       Finally, Defendants completely ignore the limitations of their pleadings.  The ASIC Defendants

19   have pled very specific bases for their laches claim, as set forth in their April 2004 Amended Answers

20   and Counterclaims.  After the filing deadline for amendments, they sought to amend their Amended

21   Answers to broaden their laches defense.  This Court denied their motion to amend and explicitly

22   precluded them from broadening their laches defense.  D.I. 352.  Accordingly, all facts inconsistent with

23   their limited laches pleading as set forth in their April 2004 Amended Answer, must be stricken.

## III.   ARGUMENT

### A.   The Legal Requirements for Summary Judgment

26       As set forth in greater detail in Ricoh's other opposition briefs, any motion for summary

27   judgment requires the moving party to demonstrate that there is "no genuine issue as to any material fact

1   and …the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Because

2   summary judgment is considered a drastic remedy and deprives a party of the right to a jury trial, courts

3   apply a strict standard of review.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The moving

4   party bears a "heavy burden" of proving the absence of any material issues of fact.  *Nationwide Life Ins.*

5   *Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).  In particular, there is a high standard

6   for summary judgments in patent cases.  *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298,

7   1304 (Fed. Cir. 1999).  The purpose of the summary judgment process is to avoid a clearly unnecessary

8   trial; it is not designed to substitute lawyer advocacy for evidence, or affidavits for examination before

9   the fact finder, when there is a genuine issue for trial.  *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948

10   F.2d 1264 (Fed. Cir. 1991).  In particular, expert testimony is important when each side puts forth

11   reasonable alternative arguments based on admissible evidence.  *Cooper v. Ford Motor Co.*, 748 F.2d

12   677, 679-80 (Fed. Cir. 1984) ("Expert testimony is not always necessary to explain the prior art, but here

13   reasonable alternative arguments were put forth as to its interpretation. Ford relied on argument to

14   support its view of the reference teachings. From our reading of the references, we cannot say that Ford's

15   explanation is the only possible interpretation. Thus, the requirement of rule 56 that there be no genuine

16   issue of any material fact was not met.").  Summary judgment is not proper when there is a conflict

17   between expert opinions presented by affidavits as a trial with the refining fire of cross-examination is a

18   more effective means of arriving at a legal conclusion than perusal of ex parte affidavits and declarations

19   of partisan experts.  *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986).

20   **B.    Legal Standards Applicable to Laches**

21       The Federal Circuit explained in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020,

22   1037-38 (Fed. Cir. 1992), that laches is a

> presumption [which] is not merely rebuttable but completely vanishes upon the
> introduction of evidence sufficient to support a  finding of the nonexistence of the
> presumed fact….The presumption compels the production of [a] minimum quantum
> of evidence from the party against whom it operates, nothing more….In sum, a
> presumption is not evidence. If the patentee presents a sufficiency of  evidence which,
> if believed, would preclude a directed finding in favor of the infringer, the

presumption evaporates and the accused infringer is left to its proof. That is, the accused infringer would then have to satisfy its burden of persuasion with actual evidence. *See Del Vecchio,* 296 U.S. at 286 (presumption of accidental death "falls out of case" with proffer of testimony sufficient to justify a finding of suicide). 10 *Moore's, supra,* Section 301.04.

As an initial response to the defendant's evidence of at least a six-year delay, a patentee may offer proof that the delay has not in fact been six years -- that is, that the time it first learned or should have known of the infringement after the patent issued was within six years. If a patentee is successful on this factual issue, no presumption arises. *Cf. Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1571 (Fed. Cir. 1988).

Once a presumption of laches arises, the patentee may offer proof directed to rebutting the laches factors. Such evidence may be directed to showing either that the patentee's delay was reasonable or that the defendant suffered no prejudice or both. *See TWM Mfg.,* 592 F.2d at 349, (6th Cir. 1979); *Maloney-Crawford Tank,* 494 F.2d at 404. By raising a genuine issue respecting either factual element of a laches defense, the presumption of laches is overcome. *See Watkins v. Northwestern Ohio Tractor Pullers,* 630 F.2d 1155, 1159 (6th Cir. 1980).

Thus, the presumption of laches may be eliminated by offering evidence to show an excuse for the delay or that the delay was reasonable, even if such evidence may ultimately be rejected as not persuasive. *See TWM Mfg.,* 592 F.2d at 349; *American Home Prods.,* 483 F.2d at 1122-24. Such evidence need only be sufficient to raise a genuine issue respecting the reasonableness of the delay to overcome the presumption....The patentee bears the burden only of coming forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of its conduct once the defendant shows delay in excess of six years.

Laches and estoppel are distinct and separate defenses. Estoppel requires a heightened showing by the party asserting the defense, and the remedies are more sweeping, precluding even post-filing recovery of damages. *A.C. Aukerman,* 960 F.2d at 1042:

[The equitable estoppel] element, reliance, is not a requirement of laches but is essential to equitable estoppel. *Heckler v. Community Health Svcs.,* 467 U.S. 51, 59, 81 L. Ed. 2d 42, 104 S. Ct. 2218 (1984). The accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action.

Another significant difference from laches is that no presumption adheres to an equitable estoppel defense. Despite a six-year delay in suit being filed, a defendant must prove all of the factual elements of estoppel on which the discretionary power of the court rests. The reasons for this are two-fold. First, the presumed laches factors, that is, unreasonable and inexcusable delay and prejudice resulting there from are not elements of estoppel. Second, the relief granted in estoppel is broader than in laches. Because the whole suit may be barred, we conclude that the defendant should carry a burden to establish the

1    defense based on proof, not a presumption.

2    *Id.* at 1042 (emphasis added).

3    **C.    Defendants Cannot Assert Facts Outside the Scope of Their Pleadings**

4    Because laches is an affirmative defense, Defendants must stay within the parameters of their

5    pleadings. They fully understood that their allegations were limited to KBS acts, and not to Ricoh, when

6    they attempted in November 2005 to broaden their laches defense by way of a new Amended Answer

7    and Counterclaims, only to be rebuffed by this Court on December 12, 2005:

8
9       Defendants also seek to amend the language of their existing invalidity and laches
        defenses. Defendants characterize their changes as clarifying language. The Court
10      disagrees with that characterization. Defendants' proposed language changes are
        substantive and *could serve to enlarge the scope* of Defendants' claimed defenses.
11      Additionally, Defendants have not submitted any explanation as to why they did not
        include these revisions prior to the scheduling order deadline. The facts that form the
12      basis for Defendants' proposed changes were known to Defendants prior to the deadline.
        As Defendants have *failed to demonstrate diligence or good cause*, the Court DENIES
13      Defendants' request for leave to amend the invalidity and laches defenses.

14   (Brothers Dec. Ex. 18, D.I. 352, December 12, 2005, Order at 5 (emphasis added). In the instant

15   motion, Defendants disregard this Court's ruling and seek to sneak in through the back door what they

16   could not push through the front: The very premise of this motion (that *Ricoh*, not KBSC, had

17   knowledge of infringing activity by Synopsys, not *Defendants*, in *1989*, not 1991, and Defendants can

18   rely on that knowledge) substantively alters and enlarges the scope of their limited laches defense

19   actually pled, in defiance of this Court's explicit rejection of their attempt to bring such premise within

20   the scope of this defense.

21   The operative pleading is thus the April 2004 Amended Answer and Counterclaim by each of

22   Defendants, in which there is no allegation of laches based on any knowledge or activity of Ricoh.

23   Therefore, most of the allegations now being advanced by Defendants in this motion concerning what

24   Ricoh knew or should have known are not relevant to limited pleadings about what KBS knew or should

25   have known, and accordingly cannot support summary judgment. All of the "facts" asserted to prove

26   the impermissible expansion of their laches pleading are inadmissible and therefore cannot be

27
28   considered in connection with or support summary judgment. *Robbers v. Heim*, 1991 U.S. Dist. LEXIS

1   19377 at *2 (N.D. CA 1991)(only admissible evidence may properly be considered by a trial court in

2   granting a summary judgment motion), citing *Hollingsworth Solderless Terminal Co. v. Turley*, 622

3   F.2d 1324, 1335 n.7 (9th Cir. 1980).

4        The laches pleadings for all of Defendants, which remain in effect, are the April 2004

5   Amended Answer and Counterclaims of Defendants, reproduced below in full:

6        THIRD AFFIRMATIVE DEFENSE: LACHES

7
8        61.    Between 1991 and 2001 Plaintiff Ricoh and Knowledge Based Silicon
         Corporation ("KBS") were co-assignees of the '432 patent. Pursuant to agreement, Ricoh
9        paid the maintenance fees for the '432 patent. On information and belief, Ricoh and KBS
         coordinated all activities related to the '432 patent.

10
11       62.    In or about 1991, KBS unsuccessfully tried to persuade Synopsys, Inc.
         ("Synopsys"), to license the '432 Patent. KBS subsequently abandoned those efforts, and
         instead developed and marketed products that were interoperable with Synopsys' Design
12       Compiler product. Towards this end, KBS acquired a license to Design Compiler and
         received assistance from Synopsys to make its products interoperable with the Design
13       Compiler software. At no point during these cooperative efforts did KBS make any
         allegation that Synopsys' Design Compiler software, or any other Synopsys product, was
14       infringing the '432 Patent.

15
16       63.    [Defendant] purchased the Design Compiler software from Synopsys.

17       64.    Plaintiff is barred from recovery of damages by reason of laches.

18  *See, e.g.*, (Brothers Dec. Ex. 19, D.I. 177, April 26, 2004, Answer and Counterclaims of Defendant AMI

19  Semiconductor, Inc. at 8).[9] Thus, the current laches allegations expressly are limited to allegations

20  regarding the actions of KBS between 1991 and January 12, 1997 (6 years prior to suit), which

21  paragraph 61 avers was coordinated with Ricoh. The time constraints pled alone eliminate much of

22  Defendants' own cited evidence, including the 1989 article by Dr. Kobayashi (Def. Ex. 66) and the 1990

23  license between Ricoh and Synopsys (Def. Ex. 67).

24       The language of the pleadings alone is enough to limit Defendants' laches defense, but the

25  Court's December 2005 Order goes even further and expressly precludes Defendants from moving

26  _____

27
28  [9] ASIC Defendants' laches pleadings are identical except for the name of the respective Defendant in
    paragraph 63. (D.I. 175-181) (Defendants' April 26, 2004, Amended Answers and Counterclaims).

1  beyond the four corners of their April 2004 Amended Answers.  (Brothers Dec. Ex. 18, D.I. 352,

2  December 12, 2005, Order Granting in Part and Denying in Part Defendants' Motion for Leave to

3  Amend Their Answers and Counterclaims at 5).  On November 8, 2005, Defendants moved for leave to

4  file amended answers and counterclaims, nearly 16 months after the July 19, 2004, deadline for

5  amending the pleadings had passed, seeking to broaden the scope of their laches defense, and also

6  seeking to add a new affirmative estoppel defense.  *Id.* at 2; (Brothers Dec. Ex. 20, D.I. 341 at 3).  The

7  text of the amended defenses, had it been permitted would have read, in full:

8       THIRD AFFIRMATIVE DEFENSE:  LACHES

9       61.    Ricoh's claims for relief are barred by the defense of laches.

10       FOURTH AFFIRMATIVE DEFENSE:  ESTOPPEL

11       62.    Ricoh's claims for relief are barred by the defense of estoppel.

12  *See, e.g.*, Brothers Dec. Ex. 20, D.I. 341 at 14.  This Court correctly ruled that Defendants proposed

13  amendments would "enlarge[] the scope of Defendants' defenses beyond that which is in the current

14  [April 4, 2004] answer" and denied both leave to amend the laches defense and also leave to add the

15  estoppel defense.[10]  (Brothers Dec. Ex. 18, D.I. 352 at 5).  Therefore, Defendants are barred from

16  relying on any evidence not predicated by their laches defense as pled in their April 2004 Amended

17  Answer.

18       Nothing in the above-quoted April 2004 pleading asserts that Ricoh knew or should have known

19  of Defendants infringing activity more than 6 years pre-suit.  Therefore, any attempt to prove the same

20  as an undisputed material fact is not permitted under this Court's December 12, 2005 ruling, quoted

21  above.  (Brothers Dec. Ex. 18, D.I. 352 at 5).

---

[10] Portions of Defendants' motion appear to confuse the two defenses, but while a limited laches pleading (barring pre-suit damages) is present in the April 2004 Amended Answers, Defendants have *never* been granted leave to plead an estoppel defense (barring even post-suit damages).  Defendants' reliance on an estoppel defense in any way is unpled and is barred in its entirety.

Nothing in the summary judgment motion asserts there was KBS/Ricoh coordination as an undisputed fact. Indeed, such coordination is not even mentioned in the present motion, even in passing. As that coordination is the only basis pled for holding Ricoh guilty of laches, an essential material fact has not been established as undisputed. Accordingly, there is a complete failure to allege, much less show to be undisputed, any fact that can give rise to laches against Ricoh. On this basis alone, summary judgment must be denied[11].

## D.    Defendants Cannot Assert A Laches Defense Personal to Synopsys

"The application of the *defense* of laches is … *personal to the particular party.*" *A.C. Aukerman,* 960 F.2d at 1032. Nevertheless, Defendants are trying to assert a defense as if they were Synopsys, which they are not, and moreover, the laches defense trying to be advanced is one which Synopsys could even not raise. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Because Synopsys is not being accused on infringement, it could not properly plead the affirmative defense of laches.

Defendants cannot rely on the Synopsys pleading or otherwise stand in the shoes of Synopsys with this motion. *See Pierce v. American Communications Co., Inc.,* 111 F.Supp. 181, 190 (D. Mass. 1953) ("Defendant lessee of infringing equipment cannot assert laches as to its lessor, the manufacturer of equipment (if indeed the plaintiff is guilty of laches), as a defense to its own violation of plaintiff's rights"; it was "not necessary here to determine whether [the lessor] would have a good defense of laches; since [lessor] is not a party to this action."); *cf. Odetics Inc. v. Storage Tech Corp.* 919 F.Supp.

---

[11] Indeed, if the current allegations are the best support that the ASIC Defendants' have for laches, they cannot establish this defense and the Court could choose to enter summary judgment *against* them on this issue.

1  911, 92-26 (E.D.VA. 1996)(co-defendant customers of an infringing manufacturer were permitted to

2  benefit from the manufacturer's laches defense only because the manufacturer was a co-defendant and

3  had been able to raise and establish the defense for itself.).  In fact, the *Odetics* court specifically

4  distinguished over *Pierce* because "[i]n *Pierce*, a patentee sued the lessee of an allegedly infringing

5  product, *but not the lessor* who had manufactured and sold the product."  919 F.Supp. 926 (emphasis

6  added).  Here, Synopsys cannot raise the defense of laches because it is not being sued,[12] and

7  Defendants are therefore limited to their deficient April 2004 Amended Answers.  Accordingly,

8  Defendants must advance a laches defense personal to them.

9

10  ### E.    The Evidence Presented by Defendants is Insufficient to Show Laches and Represent Substantial Issues of Material Fact

11        The April 2004 laches pleading asserts (a) KBS unsuccessfully tried to persuade Synopsys to

12  license the '432 Patent, subsequently abandoned those efforts, and instead developed and marketed

13  products that were interoperable with Synopsys' Design Compiler product, (b) KBS acquired a license

14  to Design Compiler and received assistance from Synopsys to make its products interoperable with the

15  Design Compiler software without making any allegation that Synopsys' Design Compiler software

16  infringed and that (c) Defendants purchased Design Compiler.  Assertion (a) is not advanced in this

17  motion.  As to assertion (b), the motion itself also make it clear that the describing step of the patented

18  process is something which must be added to the use of Design Compiler in order to infringe.

19

20

21  _____

22  [12] Defendants may also argue, as they did in a joint letter to the Court filed March 29, 2006 (D.I. 411),
that Synopsys' potential indemnification allows the Synopsys to plead laches as if it were a defendant in

23  the *Ricoh v. Aeroflex* action, but such a position is contrary to the express language of the Synopsys and
Ricoh's covenant not to sue, and *Odetics* only allowed indemnitee customers to receive the benefits of

24  the indemnitor manufacturer's laches defense because *both the manufacturer and its customers were
parties* to the same action and the court had already explicitly determined  that the manufacturer had a

25  viable laches doctrine.  This factual predicate is not present here.  In addition, the Court has expressly
held that "the scope of Synopsis' indemnification agreements with the ASIC Defendants" was not

26  "relevant to the 'claim or defense of any party.'"  Brothers Dec. Ex. 22 (February 28, 2006, Order Re

27  Joint Letter of February 9, 2006), at 1.  Because Synopsys and Defendants refused to provide *any*
discovery on the scope of their indemnification agreements based on the Court's order, they may not

28  now, in a motion for summary judgment, suddenly announce that they are relevant after all.

1   Accordingly, in order to succeed in this motion within the parameters defined by their pleadings, in

2   addition to establishing coordination as an undisputed fact (which they do not do), it must be shown that

3   Ricoh/KBS had knowledge or a reason to know that Defendants were not only adding a describing step

4   to the use of Design Compiler but were also using the combination in the United States.[13] The motion

5   does not attempt to show actual knowledge. To the extent that the motion seeks to draw inferences from

6   facts, the burden is on Defendants to show that these inferences are the only ones which are valid. If

7   more than one conclusion can be drawn from the same evidence, the court must consider the inference

8   most favorable to Ricoh. *Nationwide Life Ins* 182 F.3d at 160; *Cont'l Can Co. USA*, 948 F.2d 1264.

9

10  The sole evidence cited concerning Matrox is an article that states that Matrox was using a

11  combination of "Verilog HDL and Synopsys synthesis tool." (Def. Ex. 74). This motion therefore asks

12  this Court to assume that Ricoh (or KBS) knew or had reason to know that "Synopsys synthesis tool"

13  would have been recognized at the time of the article to mean Design Compiler. Since no factual basis

14  is advanced on which this assumption can be based, and Ricoh has traversed all assertions made without

15  proof, Defendants have failed to establish Ricoh had a basis for bring suit prior to January 12, 1997 as

16  an undisputed material fact. Moreover, Def. Ex. 74 identifies Matrox as being in Canada. Accordingly,

17  there is no evidence that Ricoh knew or had reason to know Matrox was doing anything in the United

18  States prior to January 12, 1997, a necessary predicate to Defendants' laches allegation, to meet their

19  burden of showing an undisputed material fact.

20

21  With respect to AMI, Defendants proffer Def. Ex. 74, which consisting of a 1991 report that

22  AMI was trying to develop a product without any forecast about when, if ever, it would be capable of

23  use. While Def. Ex. 77 has no date, its text (…in 1996. Since then…") clearly indicates it is sometime

24  after 1996. Taken at face value, Def. Ex. 77 reveals that AMI did not actually enter the marketplace

25  until 1996, at the earliest, and even then, does not indicate that the entry had any relationship to Design

26  _____

27  [13] Any attempt to show Synopsys was known to be infringing is irrelevant since laches is a personal

28  defense and Defendants cannot rely on a defense personal to Synopsys.

Compiler. Because the court must draw the inference most favorable to Ricoh in considering this motion, it must be considered that market entry was unrelated to Design Compiler. Def. Ex. 78, which is also undated, states that AMI's products "support EDA tools from vendors such as Synopsys", but does not even say that AMI was actually using Synopsys tools (or which of the Synopsys tools) alone or in combination with its own products. This evidence proffered simply does not support the proposition that Ricoh knew or had reason to know AMI was doing anything related to infringement of the '432 patent in the United States prior to January 12, 1997, as required to meet the ASIC Defendants' burden of showing an undisputed material fact.

As to Aeroflex, the only evidence proffered is Def. Ex. 76, which says that "Design Kits will be available" in 1996 and, even then, makes no mention of Synopsys or any tool from Synopsys. Again, because the court must draw the inference most favorable to Ricoh, the exhibit does not concern any Synopsys tools for the purposes of this motion. The additional assertion at brief page 7 that Aeroflex made some announcement in November 1996 does not identify any exhibit; the Court has no basis for even verifying its content, let alone guessing whether Ricoh should have known about it or whether the wording was sufficient to conclude that Aeroflex was practicing an infringing process. This "evidence" does not establish as an undisputed material fact that Ricoh knew or had reason to know that Aeroflex was infringing the patent in the United States prior to January 12, 1997.

Defendants also assert (at p. 7) that the Synopsys website sometime in 1997[14] listed Aeroflex and AMI as companies which offered libraries for use with Synopsys products. Not only is this too late in time to trigger a presumption of laches, it does not even provide a basis for speculating, much less

_____

[14] It is not even clear whether the 1997 Synopsys website cited by Defendants was even in existence before January 12, 1997, 6 years prior to the filing of this suit, and it is improper to assume that it was as a matter of law. *See DH Technology, Inc. v. Synergystex Intl., Inc.*, 1994 U.S. Dist. LEXIS 5301, *3-4 (N.D. Cal. 1994) ("the June 1989 notation on the manual's cover does not identify the date in June 1989 on which the manual was published, or if the manual was actually published in June 1989. The court cannot make a finding that the RPX manual was published more than a year before the June 21, 1990 application was filed.")

having reason to know, whether either company was using any Synopsys product in the U.S. so as to infringe the patent in suit.

Finally, Defendants attempt to impute constructive knowledge on Ricoh with their claim that Defendants' infringement was "open and notorious," but the case law they cite in support, *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1466 (Fed. Cir. 1998); *Hall v. Aqua Queen Mfg. Co.*, 93 F.3d 1548 (Fed. Cir. 1996), belies this attempt. The patent at issue in *Hall* related to waterbeds, a technology so simple and easily understood that the Federal Circuit could explicitly distinguish that factual setting two years later in *Wanlass*, by observing that "infringement [in *Hall*] was apparent from just looking at the accused device: no dismantling and testing were necessary. Hence, in *Hall*, the patentee should have known about the alleged infringing activity more than six years prior to filing suit." *Wanlass*, 145 F.3d at 1467. The patent in the case before this Court hardly relates to simple and easily understood technology. Defendants also utterly ignore the fact that *Wanlass* reversed a grant of summary judgment of laches because there were genuine issues of material fact, including "evidence, virtually uncontradicted, that infringement could not be determined without purchasing the accused air conditioner, dismantling it, and testing the motor inside, and hence the allegedly infringing activity was not open and notorious as in *Hall*." *Id.* at 1467. In the case before this Court, S

*See, e.g.*, Brothers Dec. Ex. 91.

Even taking the allegations advanced in support of this motion as true and undisputed, which they are not, and assuming these allegations are admissible in support of the laches defense as pled, which they are not, summary judgment must still be denied because the motion ignores date considerations. Thus if we assume for the sake of argument that Ricoh knew that Defendants were using the describing step of the patented process in conjunction with Design Compiler, laches depends on the date when Ricoh knew or should have known Design Compiler involved *all* other steps in the patented

1    process. The only evidence that might be relevant to that date and which predates the filing of the

2    Complaint in this action is the allegation that Ricoh and KBSC received product manuals. When those

3    manuals were received is not revealed by Defendants; further, Synopsys has marked its manual provided

4    to its licensees as Confidential and restricted the use of the manuals. Therefore, the Court is being

5    asked, *sub silencio*, to assume (1) they contained sufficient disclosure to make it reasonable to conclude

6    that Ricoh knew or should have known Design Compiler involved those other steps of the patented

7    process[15] and (2) that they were received by Ricoh more than six years before the filing of this action.

8    Defendants as the moving parties have the burden of establishing the existence of any undisputed fact

9    and they have not even tried to do so. On the face of this motion, Defendants have established only that

10   Ricoh knew or had reason to know Defendants were infringing on the date that Ricoh filed its Complaint

11   in this action. Since laches is necessarily based on pre-suit activity, that means on this basis alone,

12   summary judgment should be denied.

13

14   **IV.    CONCLUSION**

15        Defendants are limited to the allegations contained in their April 2004 Amended Answer and

16   Counterclaims because this Court explicitly denied Defendants leave to amend those Amended

17   Answers. The only allegation in those Amended Answers concerning Ricoh, namely that Ricoh

18   coordinated all activity concerning the '432 patent with KBSC, is not even raised in this motion and

19   therefore cannot be a basis for summary judgment. Even if all the allegations of the April 2004

20   Amended Answers are taken as true and undisputed, there is not even a prima facie showing of laches

21   by Ricoh against any Defendant.

22        Even if Defendants could rely on the claims and defenses of non-party Synopsys by virtue of its

23   status as a declaratory action plaintiff, which they cannot, a laches defense is not available to Synopsys

24   either, because Synopsys is not accused of infringement in this or any other action.

25

26   _____

27   [15] None of the three technical experts engaged by defendants have provided any report in support of this
     allegation. Hence, this statement should be ignored.

28

1    Even if the new evidence contained in this motion, some of it never previously produced, were

2  admissible to support Defendants' laches allegations, there is no prima facie case of laches by Ricoh

3  against any Defendant.  At most, the proffered evidence (which is inadmissible in any event),

4  demonstrates that Ricoh was aware of the existence of Synopsys tools which could accept HDL input

5  and which could be used for logic synthesis.  There is no threshold showing that Ricoh knew or should

6  have known that the Synopsys tools were capable of practicing the claimed process more than six years

7  before the filing of this action.  There has especially been no showing that Ricoh knew or should have

8  known that Defendants were using the Synopsys tools to infringe the '432 patent more than six year pre-

9  suit.

10    Even if Defendants could properly rely on their alleged facts, which they cannot, with or without

11  their inadmissible cited evidence, their cited "facts" are disputed by Ricoh.  Ricoh may have been

12  generally "aware in any way, shape, or form" of "Synopsys tools for logic synthesis" earlier, but Ricoh

13  did not become aware of these tools "in the context of this litigation", i.e., being used in such a way to

14  practice the claimed process invention, ███████████████████████████████.

15    Even if the facts supported by the inadmissible evidence which Defendants has cited were true

16  and undisputed, Ricoh is still entitled, as the non-moving party, to the benefit of any inference drawn

17  from these facts.  Defendants have made no attempt to draw any inferences in Ricoh's favor, however,

18  and instead spin and distort the evidence in an attempt to impute knowledge to Ricoh that did not exist.

19  These disputed facts and inferences must be decided by a jury.

20    Accordingly, Defendants' motion for summary judgment of laches defense should  be denied.

21

22

23

24

25

26

27

28

1 | Dated: September 1, 2006

RICOH COMPANY, LTD.

By: /s/ Gary M. Hoffman

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-1526
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for
RICOH COMPANY, LTD.