1  Teresa M. Corbin (SBN 132360)
   Denise M. De Mory (SBN 168076)
2  Jaclyn C. Fink (SBN 217913)
   HOWREY LLP
3  525 Market Street, Suite 3600
   San Francisco, California 94105
4  Telephone: (415) 848-4900
   Facsimile:  (415) 848-4999
5
   Attorneys for Plaintiff SYNOPSYS, INC.
6  and for Defendants AEROFLEX INCORPORATED,
   AMI SEMICONDUCTOR, INC., MATROX
7  ELECTRONIC SYSTEMS, LTD., MATROX
   GRAPHICS, INC., MATROX INTERNATIONAL
8  CORP., MATROX TECH, INC. and AEROFLEX COLORADO SPRINGS, INC.

9                           UNITED STATES DISTRICT COURT

10                         NORTHERN DISTRICT OF CALIFORNIA

11                              SAN FRANCISCO DIVISION

12

13 RICOH COMPANY, LTD.,

14            Plaintiff,                    Case No. C03-04669 MJJ (EMC)

15     vs.                                  Case No. C03-2289 MJJ (EMC)

16 AEROFLEX INCORPORATED, et al.,           **REPLY MEMORANDUM IN SUPPORT OF CUSTOMER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF LACHES DEFENSE**

17            Defendants.

18                                          Date:      September 26, 2006
                                            Time:      9:30 a.m.
19                                          Courtroom: 11, 19th Floor
                                            Judge:     Martin J. Jenkins
20

21

22

23

24

25

26

27

28

HOWREY LLP  Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
            DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
            LACHES (SUMMARY JUDGMENT MOTION NO. 8)

            DM_US\8385470.v1

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................... 0

II. ARGUMENT ........................................................................................................................... 1

    A. This motion is not barred by the Court's prior denial of Defendants' motion to amend. ..................................................................................... 1

        1. Defendants rely upon KBSC's actions between 1991 and 1997, and have provided evidence to support its allegations. ............................. 1

        2. Defendants are not limited to the facts or legal theories of laches contained in their pleadings. ................................................................ 2

    B. The Customer Defendants Assert Their Own Personal Laches Defenses, Not That of Synopsys. ........................................................................ 4

    C. The Customer Defendants Have Adequately Demonstrated That The Presumption Of Laches Applies. .................................................................. 4

    D. Ricoh Cannot Rebut The Presumption Of Laches With Its Argument That It Knew Of Defendants' Allegedly Infringing Activities Only After 2000. ..................................................................................... 8

III. CONCLUSION ...................................................................................................................... 12

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -i-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ..................................................................................4, 8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1985) ...........................................................................................................5

*Conley v. Gibson*,
    355 U.S. 41 (1957) .............................................................................................................2

*Goodrich Corp. v. Emhart Indus.*,
    2005 U.S. Dist. LEXIS 25160 (C.D. Cal. 2005) ...............................................................7

*Hall v. Aqua Queen Mfg.*,
    93 F.3d 1548 (Fed. Cir. 1996) .................................................................................8, 11, 12

*MGA, Inc. v. Centri-Spray Corp.*,
    639 F. Supp. 1238 (E.D. Mich. 1986) ................................................................................2

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) .............................................................................................2

*Rivera v. Anaya*,
    726 F.2d 564 (9th Cir. 1984) .............................................................................................2

*Robbers v. Heim*,
    1991 U.S. Dist. LEXIS 19377 (N.D. Cal. 1991) ...............................................................2

*Valutron, N.V. v. NCR Corp.*,
    33 U.S.P.Q.2D (BNA) 1986 (S.D. Ohio 1992) ..................................................................2

*Wanlass v. General Electric Co.*,
    148 F.3d 1334 (Fed. Cir. 1998) .....................................................................................5, 11

**OTHER AUTHORITIES**

SCHWARZER, TASHIMA & WAGSTAFFE, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE
    TRIAL ¶ 8:237 (The Rutter Group 2006) ..........................................................................2

**HOWREY LLP**

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -ii-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1

## I. INTRODUCTION

As with all of the other pending summary judgment motions, Ricoh refuses to confront head on the (indisputable) facts demonstrating that laches bars Ricoh's claims against the Defendants: the patent issued in 1990; Ricoh and its assignor (and prior co-owner) KBSC both had purchased or otherwise obtained licenses to the Synopsys Design Compiler by the early 1990's, and they therefore understood its inputs, outputs, and capabilities; each of the Defendants' use of Design Compiler prior to 1997 was public knowledge; and the suit was filed in 2003. Under undisputed law, the at least six-year delay in filing suit after Ricoh (or its co-owner/assignee) *should have known* that it had an infringement case (even if it did not actually know) leads to a presumption of laches, one which Ricoh has left completely unrebutted.

Ricoh employs several tactics in its attempt to misdirect the Court into overlooking the uncontroverted evidence presented by the motion. For example, Ricoh attempts to bypass the evidence by erroneously claiming that this Court's prior decision denying Defendants' leave to amend their answers to allege a more general laches defense precludes the Court from considering this motion. This is incorrect on two levels — not only does this motion fall squarely within the bounds of the present pleadings, but the Ninth Circuit allows affirmative defenses to be raised for the first time in summary judgment motions, so long as no prejudice is found. In addition, Ricoh erroneously claims that the Customer Defendants are impermissibly asserting a laches defense that is personal to Synopsys. This simply is not the case — the defenses pleaded here are based upon facts tied directly to each Defendant.

As a result of Ricoh's arguments, it has left the critical pieces of evidence cited in the motion uncontroverted. Ricoh claims that there are disputed questions of fact, but it has not provided any evidence of these disputes. Its *sole* piece of evidence in opposition to this motion is the testimony of its own 30(b)(6) deposition witness — testimony that does not address the crucial question of when Ricoh (or KBSC) *should have known* of the alleged infringing conduct. This evidence does nothing to rebut the presumption of laches that attaches based on Ricoh's long delay in filing this case. This single piece of self-serving testimony fails to meet Ricoh's burden of coming forward with evidence

sufficient to survive a motion for summary judgment, and thus judgment should be entered for Defendants on their laches defense.

## II. ARGUMENT

### A. This motion is not barred by the Court's prior denial of Defendants' motion to amend.

Laches is a defense which has been pleaded by each customer — each of the Defendants' April 7, 2006 Amended Answer and Counterclaims includes a laches affirmative defense. *See, e.g.,* Supplemental De Mory Decl., Ex. 96 at 8 [Aeroflex Inc.'s Amended Answer and Counterclaims]. Ricoh, however, asserts that this motion is an end-run around the Court's December 12, 2005 order (Dkt. No. 352) denying Defendants' motion to amend their laches defenses. This ignores both the submitted evidence and controlling case law.

#### 1. Defendants rely upon KBSC's actions between 1991 and 1997, and have provided evidence to support its allegations.

In their Motion to Amend, the Defendants sought to substitute a generic laches defense for the laches defense contained in their original Amended Complaints which specifically relied upon KBSC's dilatory conduct. The Court denied the Motion to Amend on the ground that the amendment might enlarge the scope of the laches defense at a time when discovery was set to close at the end of January. Brothers Decl., Ex. 18 (Dkt. No. 352) at 5:4-5. Ricoh agrees that Defendants can reply upon "the actions of KBSC between 1991 and January 12, 1997," (Opp. at 11:19-20), but claims that there is no such evidence in the motion. Ricoh has turned a blind eye to the evidence.

In the moving papers, Defendants noted that "[t]he co-owner of the asserted patent, KBSC, also took a license from Synopsys in July of 1993, and renewed that license in 1995 because of an expressed intention to work on interoperability so that its flow chart behavioral input programs could work as a front end to Synopsys' RTL tools." Motion at 2:24-3:3. They introduced Exhibit 69, which consists of the license agreements between Synopsys and KBSC. They further noted that, as a licensee, KBSC received license manuals from Synopsys, similar to that contained in Exhibit 70. This evidence, combined with the evidence that Defendants' use of Design Compiler was publicly known prior to 1997, is sufficient to demonstrate laches against KBSC, for the reasons discussed in the

**HOWREY LLP**  Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -1-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1

moving papers and reiterated below.  Thus, even within the narrow confines under which Ricoh agrees Defendants can raise a laches defense (i.e., actions of KBSC between 1991 and January 12, 1997), Defendants have properly supported their laches claim in this motion.[1]

### 2. Defendants are not limited to the facts or legal theories of laches contained in their pleadings.

Even though Defendants have relied upon KBSC's actions to the narrow extent Ricoh agrees is proper, Defendants' proof of laches is not confined to such a narrow reading of their pleadings.[2] "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim.'" *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957).  The same rules governing pleading complaints generally apply to pleading affirmative defenses in the answer: i.e. a "short and plain statement" of the defense is sufficient.  SCHWARZER, TASHIMA & WAGSTAFFE, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL ¶ 8:237 (The Rutter Group 2006).

Moreover, and with all due respect to the Court's prior ruling, there is Ninth Circuit case law supporting Defendants' entitlement to move on this issue, provided there is not prejudice to Ricoh.  In *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984), the Ninth Circuit held that "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time. . . ".  S*ee also Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001) ("A

---

[1] Ricoh, as a former co-owner with and current successor-in-interest to KBSC, is charged with KBSC's dilatory conduct. *See, e.g.*, *Valutron, N.V. v. NCR Corp.*, 33 U.S.P.Q.2D (BNA) 1986, 1993 (S.D. Ohio 1992) ("[S]uccessors in interest are charged with the knowledge and dilatory conduct of their predecessors"); *MGA, Inc. v. Centri-Spray Corp.*, 639 F. Supp. 1238, 1242 (E.D. Mich. 1986) ("As successors in interest to Simplex, Gagne and the plaintiff are charged with the consequences of Simplex's knowledge and dilatory conduct."); *see also* \*\*\**Jones v. Merrill*, 13 F. Cas. 991, 993 (C.C.N.D.N.Y 1875) (No. 7,481) ("[C]omplainants, as to these defendants, are justly open to the imputation of laches. One of the assignors of the complainants visited defendants' manufactory in 1868, and saw their process, which, as then practiced, in the most adverse view to defendants, was not less an infringement than that now used by them. The complainants are chargeable with the knowledge of their co-owners of these facts, and from the time he became owner until the present, they have permitted these defendants to continue manufacturing.").

[2] The sole case Ricoh cites for the proposition that evidence is constrained by the pleadings, *Robbers v. Heim*, 1991 U.S. Dist. LEXIS, 19377 (N.D. Cal. 1991), is inapposite.  This case addresses evidentiary standards for admissible evidence, such as hearsay issues.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -2-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1

defendant may thus raise an affirmative defense for the first time in a motion for judgment on the pleadings, but only if the delay does not prejudice the plaintiff.") (internal quotation marks omitted).

There is no prejudice to Ricoh from having to respond to the laches issue at this late date. Ricoh has been on notice of Defendants' intention to assert the laches defense since at least April 26, 2004, when they filed their Answer and Counterclaim. Additionally, the Defendants informed Ricoh of their continued intention to rely on the laches defense as well as to move for summary judgment on this issue long prior to the close of discovery.

For instance, Ricoh's notice of Defendants' intention to rely on a laches defense specific to Ricoh is abundantly clear through discovery requests. Defendants' March 2, 2006 Rule 30(b)(6) deposition notice included Topic 22 ("Ricoh's first awareness of products that Ricoh contends satisfy the limitations of the Patent.") and Topic 23 ("Ricoh's knowledge, including but not limited to first knowledge, of defendants' alleged infringement of the Patent and all efforts by Ricoh to learn of or investigate the alleged infringement. Ex. 97 at 3. Each of these topics clearly invokes the issue of laches. Another example is Defendants' April 17, 2006 First Set of Requests For Admissions, where Defendants asked Ricoh to admit 15 facts directly related to laches. Ex. 98 at Nos. 1-15. These numerous examples clearly demonstrate that Ricoh has had sufficient notice of Defendants' intention to assert the laches defense against Ricoh directly — since early this year, and well before the discovery cutoff of May 2006.

In view of these multiple examples, it is clear that Ricoh suffers no prejudice from an assertion of a laches defense against Ricoh directly because it had abundant notice. More significantly, what prejudice can Ricoh actually allege? The facts needed to respond to this Motion are within Ricoh's control, or in the public record. Indeed, the Court has already ruled that Ricoh has control of KBSC's documents for purposes of this litigation, it certainly is aware of what it knew or should have known, and what is in the public record is in the public record. Thus, the Defendants are entitled to their laches affirmative defense and are entitled to rely on all evidence in their Rule 56 summary judgment motion, even those that deal specifically with Ricoh's conduct.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)    -3-

DM_US\8385470.v1

### B. The Customer Defendants Assert Their Own Personal Laches Defenses, Not That of Synopsys.

Ricoh contends that the Defendants' laches defense improperly relies on the right of Synopsys, apparently because Defendants cite Synopsys-related facts in their motion. This assertion ignores the realities of the alleged infringement. Ricoh's patent infringement allegations against the Defendants are directly based upon the Defendants' use of the Synopsys products in suit. The very nature of Ricoh's infringement claims necessitates that some facts will relate to Synopsys. The fact that the Defendants cite to Synopsys-related facts in support of their motion does not lead to the conclusion that the Defendants are asserting a laches defense that accrued to Synopsys personally or are asserting it on behalf of Synopsys. The Defendants are asserting their own personal laches defenses based on KBSC's and Ricoh's improper delay in filing suit after they knew or should have known that the Defendants were allegedly infringing the '432 patent based on Defendants' use of Design Compiler. Given that Design Compiler is an essential part of the infringement allegations, Synopsys-related facts are necessarily addressed on these laches defenses.

### C. The Customer Defendants Have Adequately Demonstrated That The Presumption Of Laches Applies.

Whether Defendants' laches motion can only address KBSC's conduct or can also encompass Ricoh's, there is sufficient evidence to demonstrate that both KBSC and Ricoh should have been aware of the Customer Defendants' allegedly infringing activity prior to 1997. This evidence is not controverted by Ricoh. Instead, Ricoh's opposition seeks to obscure the applicable legal standards in an attempt to survive summary judgment.

First, Ricoh repeatedly states that the evidence offered by the Defendants fails to show that Ricoh knew of the alleged infringement prior to the critical laches date. But, the legal standard is not actual knowledge. Rather, the Customer Defendants must show that Ricoh knew or should have known of the alleged infringement. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). Courts impose a duty on patentees to police their rights. *See Wanlass v.*

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)
-4-

DM_US\8385470.v1

*General Electric Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998). Ricoh is charged with such knowledge that it might have obtained from a reasonable diligent inquiry.[3] *Id.*

Second, Ricoh argues that as the non-movant it is entitled to all inferences that can possibly be drawn, no matter how unreasonable. Ricoh's argument fails because the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). Ricoh has presented no evidence from which inferences in its favor can be drawn. To the contrary, the only reasonable inference—especially in light of the cumulative evidence establishing actual or constructive knowledge—is that Ricoh was on notice of any possible infringement of the '432 Patent and did nothing to enforce its rights for eleven years while it waited for damages to accumulate.

Ricoh is not entitled to the unreasonable inferences it asks this Court to draw. Ricoh does not dispute that KBSC acquired a license to Design Complier and received assistance from Synopsys to make its product interoperable with the Design Complier software. Nor does Ricoh dispute that by 1997, it had entered into over 40 contract agreements with Synopsys for the licensing and support of the very products it now brings suit against, or that in 1993 KBSC had licensed the same products for further development. But Ricoh argues that it is entitled to an inference that neither Ricoh norKBSC did not know that Defendants were adding a describing step and were selling in the United States. Ricoh's inference is unreasonable. As licensees, Ricoh and KBSC received product manuals and other Synopsys resources describing how customers could use the Synopsys Verilog HDL Complier tool to design integrated circuits. HDL Compiler accepted VHDL and Verilog inputs since the time of its introduction in 1988; Ricoh has not argued otherwise. Certainly, both Ricoh and KBSC knew (or should have known) that users of Design Compiler would need to "describe" in order to use Design Compiler, and that VHDL and Verilog could be used to "describe."

---

[3] Ricoh entirely ignores its obligations to seek out infringement in arguing that it did not have actual knowledge that Matrox was using a combination of Verilog HDL and Synopsys synthesis tool or that it was selling in the United States. Ricoh's claims of willful ignorance with respect to AMI and Aeroflex fail for the same reason.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -5-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1

1    Ricoh does not dispute that it and KBSC received product manuals showing the use of HDL in
2 describing system architectures.[4]  Ricoh merely argues that Defendants have not revealed when those
3 manuals were received, and that because the manuals have been marked as confidential, Ricoh is
4 entitled to all inferences regarding the content.  (Ricoh's Opp. at 18.)  Ricoh's arguments are meritless.
5 Ricoh, as a licensee, had access to the manuals.  Ricoh has basically said nothing to dispute Customer
6 Defendants' claims about the product manuals, nor has Ricoh presented any contrary evidence.
7 Moreover, countless documents in this case have been marked confidential, meaning only that those
8 documents were not available to the general public.

9    Moreover, it strains credibility to suggest that Ricoh could not have known that Design
10 Complier was being used in the United States.  Ricoh does not dispute the fact that Synopsys' HDL
11 Compiler product won *Electronic Products* magazine's 14th Annual product of the year award in 1990
12 and was considered the "de facto standard" for ASIC designers.  Ex. 71.  Ricoh does not dispute that
13 Design Compiler had over 80% share of the logic synthesis market in 1997.  Ex. 99.  Nothing in the
14 Federal Rules of Civil Procedure requires this Court to deny a motion for summary judgment based on
15 such far-fetched inferences.

16    With respect to the Defendants' websites, the Defendants in their Motion identified several pre-
17 1997 websites from the Defendants and Synopsys that reveal the Defendants' use of Synopsys
18 products.  Ricoh attempts to create ambiguity about the date of the AMI websites by pointing to the
19 absence of dates in the text of the web page.  But regardless of whether the web pages themselves
20 include the date, the fact remains that these are 1996 web pages and were available to Ricoh in 1996.[5]
21 These Customer Defendant websites clearly demonstrate the relationship between Defendants and
22 Synopsys and should have put Ricoh on notice of the Defendants' alleged infringement with the
23 Synopsys products-in-suit.

---

[4] Mr. Ishijima even testified that Ricoh reviewed Synopsys product manuals in coming to the conclusion that Customer Defendants' infringed the '432 patent.  Ricoh Ex. 16 at p. 94, l. 7 – pg. 95, l. 2.

[5] The web pages in Exhibits 77-79 were all retrieved from Internet Archive at www.archive.org.  Internet Archive is a well-known searchable library of archived web pages.  All the web pages included in Exhibits 77-79 are pre-1997 web pages that Customer Defendants' counsel retrieved from Internet Archive.  Supplemental De Mory Decl. at ¶ 2.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)        -6-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)
DM_US\8385470.v1

Ricoh also does not substantively address the press releases contained in Ex. 76. Instead, Ricoh offers a single sentence in its Opposition stating that these documents were produced after the close of discovery and "fail to provide any factual basis from which it can be concluded Ricoh knew or should know about them."[6] (Ricoh's Opp'n at 6.) First, these documents were not produced late. They were produced on May 26, 2006, before the May 30, 2006 fact discovery deadline.[7] Ex. 100.[8] More importantly, Ricoh's cursory conclusion does nothing to rebut the evidence in these press releases that the Customer Defendants' use of Synopsys products was open and notorious, and that Ricoh should have known about the Customer Defendants' alleged infringement. Because Ricoh fails to even substantively address these press releases, the Court should find that this evidence supports Customer Defendants' Motion and creates a presumption of laches.

Ricoh dismisses the 1991 article from *Electronic News* (Ex. 75) as a "report that AMI was trying to develop a product without any forecast about when, if ever, it would be capable of use." (Ricoh's Opp'n at 15.) But the article explicitly discusses AMI's development of cell libraries for Synopsys' Design Compiler. *See* Ex. 75 ("Gould AMI is developing gate array and standard cell libraries for use with Synopsys' Design Compiler software.") Ricoh's opposition does nothing to undermine the evidence of a clear relationship between AMI and Synopsys or that Ricoh should have reasonably known of AMI's use of Design Compiler to allegedly infringe the '432 patent. Also, the fact that the article did not state a clear date for a final product is totally irrelevant to the issue of whether Ricoh should have known of AMI's allegedly infringing activities. Regardless of when the final product would be completed, Ricoh should have known that AMI was potentially infringing the '432 patent from the mere fact that the article states that AMI was developing libraries for use with Synopsys' Design Compiler.

---

[6] Ricoh also cites to Exhibit 76 on page 16 of its Opposition. However, it is clear from the context of the sentence that Ricoh mistakenly cites to Exhibit 76 and was, in fact, referring to Exhibit 79.

[7] Delivery confirmation also reveals that Ricoh actually received these documents on May 30, 2006.

[8] Even if Ricoh had not received these press releases, case law is clear that publicly available documents need not be produced. *Goodrich Corp. v. Emhart Indus.*, 2005 U.S. Dist. LEXIS 25160, *16 (C.D. Cal. 2005) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties.")

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -7-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1

1    Ricoh similarly attempts to dismiss the 1990 *Electronic Engineering Times* article (Ex. 74) by
saying that Ricoh could not have known that the mention of Matrox using a "Synopsys synthesis tool"
meant the Design Compiler software. This argument is patently absurd. As already stated, Design
Compiler dominated the logic synthesis market and is the only tool sold by Synopsys for logic
synthesis. For example, if an article mentioned "Microsoft's word processing tool," surely a software
company in the same field should know that this would implicate the Microsoft Word application. No
reasonable person could accept Ricoh's argument that this raises a genuine issue of fact, and this Court
should not so infer.[9]

The Customer Defendants provided ample evidence supporting their motion for summary
judgment of laches. To survive summary judgment Ricoh was required to come forth with more than a
scintilla of evidence establishing a material issue of genuine fact. This Ricoh did not do, and no
amount of reliance on the principal that inferences are to be drawn in the non-movants' favor can
create a genuine issue where none exists.

### D.  Ricoh Cannot Rebut The Presumption Of Laches With Its Argument That It Knew Of Defendants' Allegedly Infringing Activities Only After 2000.

Ricoh argues extensively in its Opposition that it did not know of the Defendants' alleged
infringement until after 2000, when its witness testified that Ricoh actually learned that Synopsys'
products could be used by others to infringe. This response is utterly insufficient to rebut the
presumption of laches. As Ricoh itself quoted in its Opposition at page 9, in response to a defendant's
evidence of a six-year delay, a patentee may offer proof that "the time it first learned or ***should have
known*** of the infringement after the patent issued was within six years." *A.C. Aukerman Co. v. R. L.
Chaides Constr. Co.*, 960 F.2d 1020, 1038 (Fed. Cir. 1992); *see also Hall v. Aqua Queen Mfg.*, 93 F.3d
1548, 1552-53 (Fed. Cir. 1996) (upholding a district court's finding of laches on summary judgment

---

[9] Ricoh also asserts that because the article cited Matrox as a Montreal-based corporation, it could not have reasonably known that Matrox performed any allegedly infringing activity in the U.S. This argument is likewise absurd. Matrox was an international corporation doing business across the globe, and the fact that it is based in Canada does not raise a genuine issue as to whether Ricoh should have known about Matrox's alleged infringement, especially since Ricoh was part of the ASIC industry. In sum, no reasonable person could conclude that Ricoh should not have known that Matrox was using Design Compiler or that Ricoh should not have known that Matrox's allegedly infringing activities occurred in in the U.S.

1  because the patentee knew or should have known of infringers' activities for six or more years before
2  filing suit).  Even if Ricoh raises a genuine issue of material fact with regard to when it became
3  actually aware of the alleged infringement (which the Customer Defendants do not concede), Ricoh
4  presents no evidence to counter Customer Defendants' evidence that Ricoh *should have known* of the
5  alleged infringement before 1997.  Further, Ricoh presents no evidence to dispute the same evidence's
6  effect on KBSC — that KBSC *should have known* of the alleged infringement before 1997.[10]  Indeed,
7  as evidenced by the following attachment to one of the KBSC agreements with Synopsys, KBSC was
8  actually developing software that would convert a behavioral description into HDL input to the Design
9  Compiler system:

**Exhibit A**

A. Interoperability Plan. High-level design capture products from Knowledge Based Silicon Corporation, *flowHDL* and *blockHDL*, provide an easy means of capturing and verifying high-level design descriptions prior to automatically generating either VHDL or Verilog. The VHDL or Verilog HDL code generated from these products is targeted for input to Design Compiler synthesis tool family or VSS simulation. In addition, we plan to support integration of models created with our design capture products with DesignWare model libraries.

---

[10] Indeed, KBSC may have *actually* known before 1997, given that it was developing software for use with Design Compiler.  De Mory Decl., Ex. 69.



The interoperability between KBS and Synopsys tools is supported today in KBS's products, for both the logic synthesis and VHDL simulation product families.

Several customers have requested integration of flowHDL behavioral descriptions attached to SGE schematic descriptions. KBS will examine how to put this together, in addition to using SGE as part of verifying compatibility and complete interoperability of KBS-generated design data in the Synopsys environment.

Therefore, there is no disputed issue of fact that both Ricoh and KBSC should have known of the Customer Defendants' alleged infringement of the '432 patent before 1997, and the presumption of laches has not been rebutted.

Additionally, Ricoh's assertion that it had no actual knowledge of the Customer Defendants' alleged infringement until after 2000, based on Mr. Ishijima's testimony, protests too much. While Ricoh claims that it did not know enough about the inner workings of Design Compiler until 2000 to have knowledge of the Defendants' alleged infringement, there is no simply no evidence of previously-

unavailable information that became available to Ricoh in 2000 that would have given it a better or different understanding of Design Compiler in 2000 than it had prior to 1997. The products-in-suit were, for infringement purposes based on Ricoh's contentions, essentially identical in 2000 as they were before 1997. Because the same license provisions that prevented Ricoh from reverse engineering the software in 1997 were in effect in 2000, Ricoh was just as limited in its knowledge of the inner workings of Design Compiler in 2000 as it was in 1997 (unless, of course, Ricoh is now admitting to violating its license agreements in 2000 or failing to have a Rule 11 basis for bringing this case).

Not only are Ricoh's assertions groundless, they actually support the Customer Defendants' motion: If Ricoh knew enough about the Synopsys products shortly after 2000 to suspect the Customer Defendants of infringing the '432 patent, and if this knowledge was based on information and circumstances that had not changed for over six years before the filing of the lawsuit[11], then Ricoh should have known about the Defendants' alleged infringement prior to 1997. Ricoh (or more particularly, its counsel)[12] went out looking for defendants who used Design Compiler based on its belief that users of Design Compiler infringed the '432 patent. Ricoh (or KBSC) should have known of the alleged infringement by any user of Design Compiler as early as 1990 or 1993, and there is nothing at all that would have prevented Ricoh from searching for the identify of such users – and finding these defendants – much earlier based on publicly available information. Ricoh simply failed to rebut the presumption of laches regard to its actual knowledge of Customer Defendants' potential infringement.[13]

---

[11] E.g., KBSC's and Ricoh's licenses with Synopsys, Synopsys' product manuals, Synopsys' dominant market share of the logic synthesis market, public articles and web pages regarding the Defendants' use of Synopsys products. Mr. Ishijima also testified that Ricoh used Synopsys manuals, public articles, and information available on the internet in coming to the conclusion that the Customer Defendants were allegedly infringing the '432 patent. Ricoh Ex. 16 at p. 94, l. 7 – p. 95, l. 2.

[12] Mr. Ishijima testified that Ricoh's counsel informed Ricoh of the identity of the alleged infringers and that Ricoh did not have any independent basis outside of information from its counsel in selecting the defendants in this case. *See* Ricoh Ex. 17 at p. 123, ll. 19-25.

[13] Ricoh also attempts, at page 17 of its Opposition, to distinguish the facts of this case from *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548 (Fed. Cir. 1996), where the court upheld a grant of summary judgment of laches. While Ricoh asserts that the complicated nature of Synopsys' software distinguishes this case from *Hall*, its failure to demonstrate that it knew any more information after 2000 than it did before 1997 makes this a moot point. Ricoh has not demonstrated, or even asserted, that it learned anything new about Design Compiler between 1997 and 2000.

Additionally, the complicated nature of the invention was only one of several factors the *Wanlass* court (relied on by Ricoh) considered when it held that the defendant's infringing activity was not open and notorious. The court also considered the

(Continued...)

**HOWREY LLP**   Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)   -11-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1

## III.  CONCLUSION

The Defendants have raised several pieces of undisputed evidence sufficient to create the presumption that Ricoh either knew or should have known before 1997 that the Defendants were allegedly infringing the '432 patent. The Defendants have pointed to KBSC's and Ricoh's numerous license agreements with Synopsys, KBSC's and Ricoh's receipt of Synopsys product manuals pursuant to these licenses, Design Compiler's 81% market share of the logic synthesis software industry, and pre-1997 websites of AMI and Aeroflex announcing their involvement with Synopsys, and several press releases of the Defendants' use of Synopsys products. All this evidence creates a presumption of laches, which Ricoh has failed to rebut in its opposition. For the foregoing reasons, this Court should grant Defendants' Motion for Summary Judgment of Laches.

Dated: September 8, 2006

Respectfully submitted,

HOWREY LLP

By: /s/
Denise M. De Mory
Attorneys for Defendants

---

(...Continued)

facts that the plaintiff was not active in the industry, did not attend trade shows, did not receive trade journals or other industry-related periodicals, and the existence of conflicting evidence about whether the plaintiff slept on his rights. Ricoh, on the other hand, had attempted to enter the ASIC design software industry (through its business dealings with KBSC, which was in the industry) and was aware of the products in suit and their allegedly infringing capabilities for 13 years before filing suit. The more than 40 license agreements Ricoh entered into with Synopsys, and the agreements KBSC had with Synopsys, are alone sufficient to destroy Ricoh's attempted distinction from *Hall* for both Ricoh and KBSC.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)         -12-
DEFENDANTS' REPLY TO ITS MOTION FOR SUMMARY JUDGMENT OF
LACHES (SUMMARY JUDGMENT MOTION NO. 8)

DM_US\8385470.v1