Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Telephone: (212) 227-6500
Facsimile: (212) 227-6501

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
Phone (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AEROFLEX INCORPORATED, et al., <br><br> Defendants | **CASE NO. C-03-4669-MJJ (EMC)** <br><br> **RICOH'S REPLY IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"** <br><br> **REDACTED PUBLIC VERSION** <br><br> Date: September 26, 2006 <br> Time: 9:30 a.m. <br> Courtroom: 11, 19th Floor <br> Judge: Martin J. Jenkins |

RICOH'S REPLY IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)

2140709.01

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ........................................................................................................................1

II. ARGUMENT ..............................................................................................................................2

   A. Aeroflex Has No Evidence Of Express Authorization And Consent Under The Standard FAR Clause ...........................................................................................................2

   B. Aeroflex Has No Evidence Of Implied Authorization And Consent Under The Standard FAR Clause ...........................................................................................................2

      1. Aeroflex Is Estopped From Asserting Implied Authorization And Consent ...................2

      2. Aeroflex Has No Admissible Evidence To Support An Implied A&C Defense ..............3

      3. Aeroflex's ASICs are Commercial Items Under the FAR ...............................................9

      4. Aeroflex Improperly Attempts to Reverse The Burden of Proof (ASICs #12, DK24A; ##15-23, KD31A-KD39A) ...............................................................................10

   C. Aeroflex Has No Admissible Evidence Of Express Authorization And Consent Under The Broad Research And Development Clause .......................................................11

      1. The Documents Identified by Aeroflex to Ricoh During Discovery Do Not Support This Defense ....................................................................................................11

      2. The ▮▮▮▮▮ Contract (ASICs # 4, KD15A; #5, KB11A) ..........................................12

      3. The ▮▮▮ Documents (ASICs #13, KD26A; #14, KD28A) .......................................14

III. CONCLUSION ........................................................................................................................15

RICOH'S REPLY IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)  Page ii

2140709.01

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page No.(s)**

*Carrier Corp. v. United States*, 534 F.2d 244 (Ct. Cl. 1976) ..............................................6

*Donato v. Metropolitan Life Insurance Co.*, 230 B.R. 418 (N.D.Cal. 1999) ......................3

*G.L. Christian & Associates v. United States*, 312 F.2d 418 (Ct. Cl. 1963)......................13

*Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197 (1993) ...................................6, 7, 9

*Larson v. United States*, 26 Cl. Ct. 365, 369-370 (1992) .........................................5, 6, 7, 9

*Madey v. Duke University*, 413 F. Supp. 2d 601 (M.D.N.C. 2006)............................5, 6, 7

*Madey v. Duke University*, 307 F.3d 1351 (Fed. Cir. 2002)................................................14

*Metabolife International, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001)..........................11

*Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703 (9th Cir. 1990)............3

*NABCO, Inc.*, B-293,027, 2004 CPD ¶ 15, 2004 WL 187279 ...........................................10

*O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139 (9th Cir. 2002) ......................11

*Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) ........................................1

*Pfingston v. Ronan Engineering Co.*, 284 F.3d 999 (9th Cir. 2002) ..................................11

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) ...............3, 4

*S.J. Amoroso Const. Co., Inc. v. United States*, 12 F.3d 1072 (Fed. Cir. 1993)..........13, 14

*TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986)............................................6, 7

## FEDERAL STATUTES

48 C.F.R. § 2.101 .................................................................................................................10

48 C.F.R. § 27.201-2..............................................................................................................1

48 C.F.R. § 44.403 ..............................................................................................................10

28 U.S.C. § 1498............................................................................................................1, 2, 3

RICOH'S REPLY IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page iii

2140709.01

Fed. R. Civ. P. 56(e) ..................................................................................................1

Fed. R. Civ. P. 56(f) ................................................................................................11

RICOH'S REPLY IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC)   Page iv

2140709.01

## I. INTRODUCTION

The September 1, 2006 Aeroflex Opposition ("Opp.") to Plaintiff Ricoh's Motion ("Ricoh Mot.") and accompanying exhibits demonstrate the following:

1. Aeroflex has presented some evidence that nine of the thirty ASICs that Ricoh has accused of infringement were produced or sold in connection with a federal Government contract.

2. Aeroflex has presented *no evidence* that Aeroflex's use of the infringing process was *expressly* required by any federal Government contract.

3. Aeroflex has presented *no evidence* that Aeroflex's use of the infringing process was *impliedly* required or necessary to perform any federal Government contract.

4. Aeroflex has presented *insufficient evidence* that the research and development form of the "authorization and consent" clause applied to sales of any of the accused ASICs.

In addition, the evidence that does exist demonstrates that, as a matter of law, authorization and consent ("A&C") does not apply. Although Aeroflex tries to blame Ricoh for Aeroflex's own evidentiary failings, Aeroflex does not dispute that it bears the burden of proof on its affirmative defense pursuant to 28 U.S.C § 1498. Aeroflex also does not dispute that it bears the burden to present evidence sufficient to rebut Ricoh's Motion. Because Aeroflex has not met its burden to support all of the required elements of its defense by admissible evidence,[1] Ricoh's motion should be granted.

Aeroflex previously told this Court that the late addition of this affirmative defense should be permitted because its sales of the accused ASICs received *express* A&C through Government contract clauses governed by 48 C.F.R. § 27.201-2 and § 52.227-1 of the Federal Acquisition Regulation (FAR). (D.I. 430 at 4). Aeroflex promised that it would *not* rely on any form of *implied* A&C. (*Id.*) In reliance on that promise, and because Aeroflex refused and prevented discovery on implied A&C, Ricoh limited its discovery to the factual basis for the express defense. Now Aeroflex attempts a bait-and-switch, contradicting itself and arguing that it has received *implied* A&C. Aeroflex is estopped from now making this assertion. But even if it was permitted to do so, it still lacks admissible evidence sufficient to support the required elements of its defense, and summary judgment is appropriate.

---

[1] A "trial court can only consider admissible evidence in ruling on a motion for summary judgment" under Fed. R. Civ. P. 56(e). *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

## II. ARGUMENT

### A. Aeroflex Has No Evidence of Express Authorization and Consent Under the Standard FAR Clause

Aeroflex has not produced a single prime U.S. Government contract that expressly requires or even mentions the use of processes taught by the '432 Patent or Synopsys Design Compiler. Aeroflex does not argue otherwise, and while changing its argument from express to implied A&C, Aeroflex does *not* argue in its Opposition that express A&C has been granted to Aeroflex under the standard FAR clause. Aeroflex instead argues that its specifications in contracts with other companies – not with the U.S. Government – contain provisions specifying, expressly or impliedly, the use of Aeroflex's infringing process, including its use of Design Compiler. It is unsurprising that some Aeroflex quotations and purchase transactions may specify an Aeroflex process. But as Ricoh has already demonstrated in its opening brief (at pp. 10-15), such provisions in contracts with entities *other* than the U.S. Government do not establish express (or implied) A&C under the standard FAR clause, because the scope of A&C is determined only by the Government. As Aeroflex has no evidence to the contrary, Ricoh is entitled to summary judgment as to the express A&C defense under the standard FAR clause.

### B. Aeroflex Has No Evidence of Implied Authorization and Consent Under the Standard FAR Clause

#### 1. Aeroflex Is Estopped From Asserting Implied Authorization And Consent

Aeroflex has repeatedly asserted it would assert only express authorization and consent. On November 8, 2005, Defendants filed a Motion to Amend/Correct Their Answers and Counterclaims (D.I. 341), misleadingly stating that "if the sales were to the United States Government, the sales are immune from damages. No discovery will change the basic facts." (D.I. 341 at 4). Ricoh opposed the motion, pointing out that extensive discovery would be needed on an implied defense. (D.I. 346, at 5-7). In their November 29, 2005 Reply, the Defendants stated:

> Ricoh attempts to create the illusion that 28 U.S.C. section 1498 is an intensely factual issue, subject to extensive discovery, because "authorization and consent" can be either express, or implied. While that may be true . . . that is of little or no concern here. [T]he authorization and consent provisions at issue here are *express provisions*. . . . Thus, Ricoh will need to conduct little, if any discovery[.] [D.I. 348 at 5, emphasis added].

Relying upon this statement, this Court partially granted the motion to amend.

On April 12, 2006, after Defendants failed to timely file the defense, Defendants specifically stated that they would not rely on any implied A&C: "[H]ere we have express and unlimited 'authorization and consent' clauses. . . . It is Aeroflex's position that *because it is not relying on implied 'authorization and consent,'* there is no additional discovery that needs to occur." (D.I. 430 at 3-4, emphasis added). "There is little danger of prejudice to Ricoh because little, or possibly, no additional discovery needs to occur." (*Id.* at 5). Thus, Aeroflex's defense was limited to "express" A&C.[2] In fact, Aeroflex thereafter specifically refused to respond to discovery requests related to implied A&C, because it insisted that it was not relying upon an implied A&C defense.[3]

Now, however, after refusing to provide written discovery responses or provide a Rule 30(b)(6) witness on implied consent, Aeroflex asserts there is "ample evidence of *implied* consent." Opp. at 3 (emphasis added). Aeroflex asserts that "at a minimum, there are disputed questions of fact as to *implied* consent" in relation to fifteen ASICs for which no implied A&C defense has been previously asserted. Opp. at 5-6 (emphasis added). Because Aeroflex previously stated that it was not asserting an implied A&C defense, affirmatively misled Ricoh and the Court by declaring implied A&C was *not* at issue, and refused to provide any discovery on implied consent, Aeroflex is now estopped from relying on this defense.[4]

### 2. Aeroflex Has No Admissible Evidence To Support An Implied A&C Defense

#### a. Aeroflex Provides No Evidence For Eleven ASICs In The De Mory Key

In Ricoh's opening brief (at pp. 4-5), we explained the origin of the "De Mory Key" – an April

---

[2] On May 31, 2006, Ricoh provided Aeroflex with a summary of the case law on implied A&C, in an effort to persuade Aeroflex to allow full discovery. See Brothers Decl. Ex. 1. Aeroflex's counsel responded by again insisting that it was relying solely upon express A&C. Brothers Dec. ¶ 2.

[3] Aeroflex objected to Ricoh's Interrogatories on implied A&C, and refused to answer them. D.I. 560 Ex. 5 at 6-9 (refusing to respond to Interrogatories 39-41). Aeroflex also refused to provide a witness on topics related to implied A&C. D.I. 560 Ex. 5 at 7-9 (refusing deposition topics D-F, I-K). Ricoh did not move to compel because Aeroflex and its counsel repeatedly stated that it was not relying upon an implied A&C defense. Brothers Dec. ¶ 2.

[4] The Ninth Circuit "has recognized that the doctrine of judicial estoppel precludes parties from taking inconsistent positions in the same litigation[.]" *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703 (9th Cir. 1990). Judicial estoppel, "'sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position,' either in the same action or in different actions." *Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418 (N.D.Cal. 1999), citing *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600, 605 (9th Cir. 1996) "Judicial estoppel enables a court to protect itself from manipulation." *Id.* at 603.

13, 2006, declaration from Aeroflex's counsel that provided "a key that links particular Government contracts to particular Aeroflex part numbers and particular purchase orders" in an effort "[t]o simplify any discovery that Ricoh may need to take on the § 1498 defense." (D.I. 434 at 1.) The De Mory Key identified 12 ASICs. (*Id.*) Ricoh relied upon the De Mory Key to shape its discovery on this defense. Now, however, Aeroflex asserts A&C in regard to 19 ASICs. (Opp. at 5-6.)[5] But Aeroflex presents evidence for only one ASIC that was listed in the De Mory Key.[6] As to ten other ASICs in the Key, Aeroflex merely refers (at pp. 5-6) to bates numbers without explanation and provides no evidence.[7] This failure of proof by itself shows why summary judgment is appropriate.

### b. Aeroflex Misstates The Law Of Implied Authorization And Consent

Aeroflex significantly misstates the law of implied A&C, arguing (at p. 12) that "where written specifications or quotations for use of Synopsys tools existed between Government contractors, the Government implicitly granted its [A&C] by awarding the contract, and the § 1498 defense is applicable." This is legally incorrect. Subcontractors and prime contractors cannot grant their own A&C merely by including their own specifications in subcontract purchase orders *after* the prime contract is awarded. Aeroflex argues (at p. 10) that "instructions between subcontractors can create implicit consent." As shown below, however, subcontractors cannot *create* their own A&C. Only the Government can "create" a statutory waiver of immunity.

By "choosing the scope of its consent in its selection of the contract language, the Government may control the extent of patent infringement it chooses to authorize, and the corresponding liability it

---

[5] On eleven ASICs (#1 (UTCAM-Engine/UT100CE 02 JAA), #2 (JW01), #3 (KD08A), #10 (KD11A), #24 (JF01A/B), #25 (KC01), #26 (YA04/YA13), #27 (YB01), #28 (DA01), #29 (DA02), and #30 (JW02)), Aeroflex made no argument in their Opposition regarding these ASICs. See D.I. 560 Ex. 1, Aeroflex Product Declaration. Summary Judgment is also warranted in regard to ASICs ## 12 (KD24A) and 15-23 (KD31A-KD39A), because while Aeroflex makes arguments in regard to these ASICs, it presents no evidence whatsoever in support, but rather alludes to documents it has not put before the Court. Aeroflex misleadingly argues (at p. 4) that during Mr. Milliken's deposition, Ricoh's counsel asked only about twelve ASICs. Many of Ricoh's questions were broadly based, while others focused on the 12 ASICs identified by Aeroflex in the De Mory Key. Summary judgment is also appropriate as to any ASIC not mentioned in the De Mory Key, which has not been supplemented, despite Aeroflex's statement that it would supplement the Key if additional contracts were located, D.I. 434 at ¶ 2, and Ricoh's request for that supplement, D.I. 560 Ex. 3.

[6] ASIC #13 (KD26A), was in the De Mory Key. In its opposition brief, Aeroflex claims there is evidence for A&C for nine ASICs (Nos. 4-9, 11, and 13-14: KD15A, KB11A, KD12A, KB10A, KB07A, KM01A, JD05A, KD26A, KD28A), but all except #13 were not in the Key.

[7] *See* n.5. Aeroflex abandons its contentions regarding the twelfth ASIC in the Key, the KC01A, a commercial product.

RICOH'S REPLY IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC) Page 4

chooses to accept." *Madey v. Duke*, 413 F. Supp. 2d 601, 608-10 (M.D.N.C. 2006). Where the standard clause is used, "that limited consent operates as a limited waiver of sovereign immunity and should be narrowly construed." *Id.* This waiver of immunity "must be" narrowly construed. *Larson v. United States*, 26 Cl. Ct. 365, 369-370 (1992). There must be evidence of "explicit acts or extrinsic evidence sufficient to prove the *Government's intention* to accept liability for a specific act of infringement." *Id.* (emphasis added). Under the standard clause, it is impossible for the Government to *intend* to accept liability for a subcontractor transaction that occurs *after* the prime contract has been executed. In sharp contrast to Aeroflex's arguments, the case law is clear that the Government does not accept liability when the subcontractor later chooses its own specifications.[8]

Aeroflex's interpretation would broaden and expand the waiver of sovereign immunity to the point where the Government has no control over its A&C. According to Aeroflex's argument, a prime contractor could choose the scope of A&C through its complete discretion on what specifications to include in a subcontract, over which the Government may have no control or knowledge whatsoever. Subcontractors could also establish their own A&C by including their own specifications in their proposals to prime contractors, over which the Government again may have no control or knowledge. A&C would be in the hands of contractors and subcontractors, not the Government. There is no law that supports this notion, and Aeroflex provides none. Aeroflex's interpretation flies in the face of, and is refuted by, the entire body of case law on implied A&C, which is summarized in Ricoh's Motion.[9]

The first of two cases cited by Aeroflex in support of its argument concerns a set of facts that is

---

[8] Aeroflex argues that "[b]ecause § 52.227-1 covers subcontracts at any tier, specifications or written provisions in those contracts are subject to § 52.227-1 (2)(i)." Opp. at 10. This is also not correct. Paragraph (2)(i) provides that A&C is provided where use of methods necessarily results from compliance with "specifications or written provisions forming a part of this contract[.]" "This" contract is the *prime* contract, not a subcontract. The FAR clause applies to subcontracts, but provides A&C only where the use of methods necessarily results from the *prime* contract. The prime contract may include a proposal that is incorporated by reference, but does not include subcontracts, which are by definition separate contracts between separate parties. Subcontractors are not in privity with the Government. Although the FAR clause requires its inclusion in subcontracts, the clause is to be "suitably modified to identify the parties." § 52.227-1(b). ▮ purchase order attachment ▮ states that ▮ Opp. Ex. 15 at 5.

[9] Unapproved and unnecessary infringement does not receive A&C under the standard FAR clause. *Carrier Corp. v. United States*, 534 F.2d 244, 247 (Ct. Cl. 1976). Mere inclusion of the clause coupled with a contractor's use of infringing equipment is insufficient evidence. *Id.* at 248. Implied authorization and consent "has been found only where particular *government* specifications required a particular patent infringement." *Larson v. United States*, 26 Cl. Ct. 365, 370 (1992) (emphasis added). Implied authorization and consent "will also be found where the *government requires* the private contractor to use or manufacture the allegedly infringing device." *Madey*, 413 F. Supp. 2d at 609, citing *Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197, 223 (1993) (emphasis added).

simply not applicable to this case. *TVI Energy Corp. v. Blane*, 806 F.2d 1057 (Fed. Cir. 1986), concerned a Government requirement for bidding, to which a prime contractor responded as required, and to which no FAR clause applied.[10] Aeroflex has presented no evidence of any proposal or bid to the Government, and alleges its subcontracts are subject to the FAR clauses. The next case cited by Aeroflex, *Madey v. Duke*, supports Ricoh's argument where the standard FAR clause is at issue:

> However, where the Government limits its consent, as contemplated by use of language providing a narrower or "limited" authorization and consent, that limited consent operates as a limited waiver of sovereign immunity and should be narrowly construed so as not to find consent and impose potential liability on the Government where the terms of the consent clause are not fully met.[11]

The subcontractor instructions do not, as Aeroflex argues (at p. 10), "create disputed questions of fact relating to implied consent." To the contrary, Aeroflex's arguments (at p. 11) based on its own subcontractor specifications are irrelevant to the legal issue of implied A&C, and afford the Court the opportunity to rule on a legal issue at the summary judgment stage. Aeroflex argues that in the *Madey* case, the court found Duke's research proposal under a government grant was subject to the standard clause because the proposal was incorporated into the contract. *Id.* But the fact that Duke's proposal was incorporated into the U.S Government's contract merely reflects the fact that Duke was the prime contractor, not a subcontractor like Aeroflex. Subcontractor proposals are not incorporated into Government contract awards unless they are included in the prime contractor's proposal, because the Government by definition contracts only with prime contractor. Aeroflex has not presented *any* evidence that *any* prime contractor specified the use of the infringing process, including Synopsys Design Compiler, in any proposal to the Government. Rather, Aeroflex relies on its own specifications sent to the prime contractors or subcontractors, always *after* the prime contract has been awarded. But

---

[10] "The significant point is that [defendant] was *required* to demonstrate the allegedly infringing targets as part of the Government's bidding procedure." *TVI Energy*, 806 F.2d 1057 at 1060 (emphasis in original). Because no express contract was formed at the bidding stage, no FAR clause applied, and the statute was broadly construed. Where the standard FAR clause is present, *TVI Energy* is not applicable.

[11] *Madey*, 413 F.Supp.2d at 609. "In other circumstances, the Government might not expressly consent to use of the patented inventions, in either the 'broad' or 'narrow' sense discussed above [via the FAR clauses], but may nevertheless be found to have provided implied consent." *Id.* at 609, citing *TVI Energy*, 806 F.2d at 1061. Aeroflex also points out that *Madey* considered three contracts without any express clauses. Opp. at 11. But that is irrelevant, because Aeroflex has limited its arguments to contracts that do contain the FAR clauses.

RICOH'S REPLY IN SUPPORT OF RICOH'S MOTION FOR SUMMARY JUDGMENT ON
AEROFLEX'S AFFIRMATIVE DEFENSE OF "AUTHORIZATION AND CONSENT"
CASE NO. CV-03-4669-MJJ (EMC) Page 6

such evidence is irrelevant. To defeat this motion; Aeroflex needs (but does not have) admissible evidence that the Government had approved Aeroflex's use of infringing methods, including Design Compiler:

> [A] Government agency's approval of a research proposal, standing alone, is insufficient to show implied authorization and consent, unless there is a clear indication that the Government agency was specifically aware of and approved of the infringement in its specifications, directions, or other communications with the contractor.[12]

### c. Aeroflex's Evidence Does Not Support The Implied Defense

The Court should not be misled by Aeroflex's attempt to create a factual dispute on facts that are irrelevant to the legal question at hand. Ricoh acknowledges that the documents presented by Aeroflex (Opp. 11-12) in support of implied A&C contain ███████████████████████████████ ███████████████████████. But Aeroflex's subcontracts with other contractors are irrelevant to the issue of whether the U.S. Government prime contract expressly or impliedly necessitated use of the infringing process. Aeroflex has presented no evidence that the Government directed or necessitated *any* method of synthesis for the accused ASICs.[13] Because Aeroflex has no evidence of such contracts, and in fact has not even argued that these prime contracts necessitated use of the infringing process, Aeroflex has not created any relevant issue of disputed fact.

#### (1) The ███████████ Subcontract (ASIC #8, KB07A)

Aeroflex presents a ███████ subcontract between ████████████████████ ████████ (Opp. Ex. 16), under (and after[14]) ███████████████████████████ ████████ (Opp. Ex. 18), but Aeroflex does not argue, or present evidence, that the ████████ contains or requires any Aeroflex specifications.[15] Aeroflex only provides selected pages of the

---

[12] *Madey*, 413 F.Supp.2d 601 at 620 (citing *Larson*, 26 Cl.Ct. at 370; *Hughes Aircraft Co.*, 29 Fed. Cl. at 223).

[13] According to information on the Aeroflex webpage, while Aeroflex "supports" the Design Compiler tool, *see* Brothers Ex. 4 at 6, it is not described by Aeroflex to its customers as necessary for creation of an ASIC. *Id.* (This publicly available document was produced by Aeroflex and stamped "confidential.")

[14] "The contract specifies that █████████████████████████████████████████████████ ████████████████████████" Opp. at 11. The mere mention of ████████ is insufficient to prove necessity of the infringing process including the use of Design Compiler, and what ████████ were specified by the purchase order is irrelevant to the issue of what was required by the earlier prime contract that governs the purchase order.

[15] The provision quoted in abbreviated form from the ████████████ subcontract referring to ██████ is irrelevant, but is followed by ████████████████████████████████████ which means that this document is not evidence that Synopsys Design Compiler or the infringing process was required for actual synthesis of the accused ASIC.

1  ▬ contract containing FAR clauses (but is in possession of the entire contract, Fink Decl. ¶ 22).
2  Aeroflex presents no evidence whatsoever that would support the elements of its affirmative defense.
3              (2)    ▬ (ASIC #6, KD12A; #7, KB10A; #9, KM01A; #11, JD05A)
4
5      Aeroflex presents subcontracts with ▬. (Opp. Exs. 19-20 ▬
6  ▬), under an earlier ▬ prime contract ▬ (Opp.
7  Ex. 21), but Aeroflex does not argue, or present evidence, that the ▬ prime contract contains or
8  requires ▬. Aeroflex presents an Aeroflex letter to ▬
9  ▬ (Opp. Ex. 26), which listed ▬
10 ▬."[16] However, Aeroflex presents no evidence to any contract between
11 ▬. Contracts were executed between ▬. Opp. Exs. 19-20, 25. There
12 is no indication of any ▬ approval of Aeroflex's ▬.[17]
13     Aeroflex also presents three ▬ (Opp. Exs. 22-23 dated April 23 and Aug. 7,
14 2002; Opp. Ex. 24, undated) that ▬s. These
15 specifications list ▬ and
16 ▬
17 Opp. Ex. 22-24 at 3.[18] These documents identify ▬
18 ▬.[19]
19 ▬
20 ▬
21 ▬.
22      Thus, the foregoing documents do not evidence express A&C by the Government, because

---

[16] Documents provided during discovery indicate Design Compiler was not necessary to the "standard HDL design flow" as argued in Opp. at 12. Rather, concerning the "Aeroflex UTMC HDL Design Flow," "The Aeroflex UTMC HDL Design System gives you the freedom to use tools from Synopsys, Mentor Graphics, Cadence, Viewlogic, and other vendors to help you synthesize and verify a design." Brothers Ex. 4 at 5 (a document on the Aeroflex website also produced in discovery).

[17] The letter (Opp. Ex. 26) is addressed to ▬ whom is identified in Opp. Ex. 25 as ▬ ▬.

[18] These specifications were not identified in the De Mory Key, and the letter (Opp. Ex. 26) also was not in the Key.

[19] The "process" number, UT0.6μCRH, refers to a large family of commercial ASICs, as explained in Section C below.

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Aeroflex cannot argue implied A&C, because of its previous representations. But even if it could, these documents are not evidence of implied A&C, because they do not indicate that the Government (1) required or necessitated the use of the infringing process, or (2) had knowledge of patent infringement.[20] Under the legal standards for implied A&C, these facts do not suffice for such a finding, because the Government did not necessitate or require Aeroflex's infringement, and had no knowledge of that infringement. *See* Ricoh Mot. at 15 (summarizing ). Implied A&C will be found only where the Government had knowledge of the infringement, *Larson*, 26 Cl. Ct. at 370, or where the Government requires it, *Hughes Aircraft Co.*, 29 Fed. Cl. at 223. Neither has been shown here.

### 3. Aeroflex's ASICs are Commercial Items Under the FAR

Authorization and consent is not granted to commercial items.[21] Under the FAR, a "commercial item" is defined to include items offered for sale to the public for non-government purposes, but also items outside that definition, that would satisfy it "but for . . . modifications of a type customarily available in the commercial marketplace." 48 C.F.R. § 2.101.[22] All of the Aeroflex ASICs at issue are within the "0.6um process" and are variants from an Aeroflex commercial "gate array family" that allows for custom or "semicustom products" using the same commercial processes as an ASIC built for any other customer.[23] Aeroflex documents repeatedly refer to its 0.6 micron ASIC family of ASICs as

---

[20] To the contrary, the documents indicate that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[21] *See* Ricoh Mot. at 17-18; 19 Nash & Cibinic Rep. No. 12 ¶ 59 (Dec. 2005) ("it appears that the Government has adopted a policy of placing the risk of patent infringement on contractors selling commercial items to the Government with commensurate risk to the Government that such sales might be enjoined under normal patent law litigation procedures. . . . This would appear to indicate that the Government has chosen to stand aside and let contractors fight out any claim of patent infringement while ensuring that the Government is not ultimately liable for infringement if it uses a commercial product that infringes a patent.").

[22] A commercial item is defined in the FAR § 2.101 as any item of a type "customarily used by the general public or by non-governmental entities for purposes other than governmental purposes," and has been offered for sale, lease or license to the general public. Paragraph (3)(i) of this definition allows Government modifications if "customarily available." Where a "product line" is commercial, "upon which the proposed [item] is based" but modified for the Government, the modified item may constitute a commercial item. *NABCO, Inc.*, B-293,027, Jan. 15, 2004, 2004 CPD ¶ 15, 2004 WL 187279 at *2.

[23] All of the ASICs at issue in the Aeroflex Opposition are within the "0.6um process." *See* Aeroflex Product Declaration, D.I. 560 Ex. 1. Aeroflex's ASICs are variants from a "gate array family" that allows for "semicustom products." *See* Brothers Ex. 4 at 1.

manufactured using "commercial" processes.[24]  Thus, Aeroflex's ASICs sold to the Government qualify as "commercial items" under the FAR.  Under FAR § 44.403, contracting officers must include § 52.244-6, "Subcontracts for Commercial Items," in all contracts for non-commercial items.  Section 52.244-6 and its predecessors obviate the requirement for a Government contractor to include most FAR flow-downs in commercial subcontracts.  These FAR clauses, including A&C, flow down to commercial subcontracts only when specifically included.[25]  No such showing has been made here.

The specifications shared between ▮▮▮ (Opp. Exs. 22-24, 26) refer to ▮▮▮.[26]  The variants sold to ▮▮▮ are therefore "commercial items" under the FAR.  No FAR flow-downs appear in the ▮▮▮ contracts for these items.  Opp. Exs. 19-20, 25.  Therefore, A&C does not apply.  The lack of FAR clauses is indication that the parties viewed the transaction as commercial.[27]

### 4. Aeroflex Improperly Attempts to Reverse The Burden of Proof (ASICs #12, DK24A; ##15-23, KD31A-KD39A)

As to 10 ASICs, Aeroflex argues (at pp. 3-4, 12-13) that information exists that would prove its affirmative defense, but does not put evidence before the Court, instead Aeroflex argues that Ricoh should provide it.  This argument attempts to reverse the burden of proof, which for an affirmative defense falls on the party asserting it.  Where a plaintiff seeks summary judgment, the defendant must provide evidence supporting the elements of its defense.  *See* Ricoh Mot. at 9.  The non-movant must designate specific facts showing that there is a genuine issue for trial.  Aeroflex cannot do so here by arguing Ricoh has failed to obtain evidence needed by Aeroflex.[28]  Ricoh had no obligation to obtain

---

[24] An ASIC built for the Government uses the same commercial processes as an ASIC built for any other customer.  Aeroflex's most recent press release (quoting Peter Milliken, Aeroflex's 30(b)(6) designee) concerning the 0.6 micron ASIC family states that the UT0.6μCRH family, as well as a newer generation UT0.6μSRH, were manufactured using various "commercial" processes.  Brothers Ex. 3.  According to Milliken, "Customers have incorporated the UT0.6μCRH Commercial . . . gate arrays into their products." *Id*. at 2.

[25] *See* § 52.244-6.  Section 52.244-6 is authorized by FAR § 12.502, which under § 12.102(c) takes priority over any other FAR policies outside FAR Part 12 on commercial items.

[26] *See* Aeroflex's webpage for "Aeroflex UT0.6um ASICs," http://www.ams.aeroflex.com/ProductPages/RH_06.cfm (visited September 5, 2006), referring to the "UT0.6umCRH ASIC Family." *See* note 23 above.

[27] By contrast, the ▮▮▮ subcontract refers to ▮▮▮, but those have not been provided by Aeroflex.  Opp. Ex. 16.

[28] The Fink Declaration implies Aeroflex is still seeking discovery, but Aeroflex has made no motion under

evidence that would enable Aeroflex to prove its affirmative defense. In fact, because Aeroflex specifically pledged that implied A&C was not at issue, and refused discovery on implied consent, Ricoh limited its discovery to showing that there was no express A&C. Aeroflex now argues that Ricoh could have obtained relevant documents through subpoenas to ▓ and ▓, but the Aeroflex exhibits (Opp. Exs. 28, 29) illustrate that Ricoh narrowed the scope of its requests because those companies refused to respond to the broader requests, and because Ricoh was relying upon Aeroflex's statement that only express A&C was at issue.[29]

### C. Aeroflex Has No Admissible Evidence of Express Authorization and Consent Under the Broad Research and Development Clause

Summary judgment is warranted as to the standard FAR clause § 52.227-1 in order to narrow the issues for trial. Even if the Court were to find disputed facts concerning the "broad" clause, Alternate I, summary judgment must be granted as to the standard FAR clause, because Aeroflex does not argue express A&C, and cannot support the essential elements of implied A&C.

#### 1. The Documents Identified by Aeroflex to Ricoh During Discovery Do Not Support This Defense

Within the documents Aeroflex identified as responsive to Ricoh Interrogatory No. 38 ("identify all documents for which Aeroflex bases its Sixth Affirmative Defense"), and within the documents identified in the De Mory Key, Ricoh identified four instances of FAR 52.227-1 Alternate

---

Fed.R. Civ. P.56(f), which allows further discovery "where the non-moving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). Where a party "fail[s] to offer *evidence* from which a reasonable trier of fact could conclude that they had met their burden . . . Absent a motion under Rule 56(f) . . . that failure of proof cannot be excused." *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139, 1158 (9th Cir. 2002). And the "failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion." *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

[29] Aeroflex alleges (at p. 3) that Ricoh narrowed the scope of its subpoenas when ▓ and ▓ said they had the requested information. To the contrary, Ricoh narrowed the scope of its subpoenas in response to objections of both ▓ and ▓, which stated the subpoenas were too broad and they could not respond within the necessary time frame, a time frame necessitated by Aeroflex's last-minute addition of its affirmative defense. *See* Opp. Ex. 29; Brothers Dec. Ex. 2. ▓ also stated that "▓ has attempted to obtain from Aeroflex the ▓ part numbers for these Aeroflex ASICs, but they have not yet been provided." Opp. Ex. 29 at 2. Aeroflex now blames Ricoh for *Aeroflex's* own refusal to cooperate. Aeroflex also ignores the substance of ▓ response: no ▓ subcontracts contained Government ASIC specifications. Opp. Ex. 28. Furthermore, Ricoh narrowed the scope of its subpoenas in response to the Aeroflex representation that they would not assert implied A&C. Aeroflex always had the burden to support its own defense, so it cannot blame Ricoh for its lack of evidence.

1  I.[30] Ricoh's Motion demonstrated that the mere existence of these clauses was insufficient to prove A&C and that Aeroflex did not provide sufficient admissible evidence that the clause applied to any sales of any accused ASICs. Ricoh's Motion also illustrated why discovery is necessary even as to the broad, express Alternate I form of the clause. Conceding the point, in its Opposition Aeroflex has abandoned its contentions in regards to each of these documents except the ▇▇▇ Document, while raising new allegations concerning a ▇▇▇ contract not previously identified by Aeroflex. But Aeroflex still has insufficient evidence to support its defense.

### 2. The ▇▇▇ Contract (ASICs # 4, KD15A; #5, KB11A)

Aeroflex's Opposition relies upon a contract that it never identified to Ricoh in discovery[31] In its opposition brief, Aeroflex identifies (at pp. 8-9) for the first time a prime contract held by ▇▇▇,[32] and asserts that sales of Aeroflex ASICs occurred under this contract through subcontractor ▇▇▇. Aeroflex is not entitled to rely on this evidence at trial or in opposition to Ricoh's motion, because Ricoh has been deprived of the opportunity to conduct discovery on it. Aeroflex did not identify this contract in response to Ricoh Interrogatory 38 or in the De Mory Key, and Aeroflex did not identify the ASICs at issue, KB11A and KD15A, in the De Mory Key. Without discovery, it is impossible for Ricoh or the Court to determine whether the purchase orders identified (Opp. Ex. 2) are properly related to the prime contract at issue (Opp. Ex. 3).[33]

---

[30] These were ▇▇▇ The only prime contract in the De Mory Key that validly incorporated FAR 52.227-1 Alternate I was document (3), ▇▇▇ The De Mory Key associated this prime contract with the KC01A, a commercial product sold to many customers. *See* D.I. 560 Ex. 2, Milliken Dep. at 49. The ▇▇▇ (D.I. 560 Ex. 10 at 45). Aeroflex did not identify any purchase orders under the ▇▇▇ that included the FAR A&C clause. Therefore, the clause did not apply.

[31] In Ricoh's opening brief (at n.14), we noted Aeroflex's discovery failures: "Ricoh has located two contracts produced by Aeroflex including Alternate I but not identified by Aeroflex in response to discovery requests," including "a ▇▇▇[.] Aeroflex has not asserted that these contracts are related to any of its ASIC sales and therefore, they cannot support Aeroflex's allegations."

[32] ▇▇▇ Opp. Ex. 3.

[33] Although the purchase orders ▇▇▇, they do not mention ▇▇▇. Rather ▇▇▇, Opp. Ex. 2, AF 283628, but are not provided by Aeroflex to the Court. Thus, even if the Court elects to reference this contract, Aeroflex has failed in its burden of proof.

1    Had Aeroflex identified this document to Ricoh during discovery, further evidence is still needed
2 to establish the factual and legal basis for Aeroflex's defense. Aeroflex has provided no evidence that
3 the prime contract is a federal Research & Development contract. ▮
4 ▮,[34] which is usually not used for R&D contracts. *See* FAR 35.006(c).
5 Aeroflex has not provided the full ▮ prime contract, so it is impossible for Ricoh or the
6 Court to determine whether it is a federal R&D contract. Absent all of the contract terms, Aeroflex has
7 not provided sufficient admissible evidence to carry its burden.
8    Under the "Christian Doctrine" of Government Contracts, it is the Court's responsibility to apply
9 the legally required FAR clause if an incorrect clause has been included in the contract in error.[35] Even
10 where R&D work is called for by the contract, if the contract also calls for supplies and services, the
11 contracting officer may be required to use the standard clause.[36] Because Aeroflex has not provided the
12 full ▮ prime contract, and without any information about that prime contract, the Court
13 has no way of knowing what FAR clause properly applied to it.[37] Aeroflex's failure to produce the
14 entire contract precludes it from being used to oppose Ricoh's Motion.
15    At any rate, even if the contract contained the R&D clause, the A&C defense does not apply to
16 Aeroflex's *commercial* items, which are ASICs that were made by Aeroflex using the infringing process
17 including the commercial Design Compiler product. The ▮ contract included ▮
18 ▮ Opp. Ex.
19 3 at p.40, AF 285678. That clause states, ▮

---

[34] The Defense Department announcement of this contract also indicated that work would be complete by March 31, 2001. *See* http://www.defenselink.mil/contracts/1999/c08231999_ct390-99.html (DoD announcement of award for the advanced Extremely High Frequency (EHF) communication satellite program). All of Aeroflex's ▮ are dated ▮ ▮ after that completion date.

[35] *G.L. Christian & Associates v. United States*, 312 F.2d 418 (Ct. Cl. 1963). The Doctrine holds that "a mandatory contract clause that expresses a significant or deeply ingrained strand of public procurement policy is considered to be included in a contract by operation of law." *S.J. Amoroso Const. Co., Inc. v. United States*, 12 F.3d 1072, 1075 (Fed. Cir. 1993).

[36] FAR 27.201-2(a) requires use of the standard A&C clause in virtually all prime contracts. FAR 27.201-2(b) requires use of the Alternate I "in all R&D solicitations and contracts," and those contracts which involve "both R&D work and supplies or services, and the R&D work is the primary purpose of the contract[.]" However, in "all other proposed contracts involving both R&D work and supplies or services, the contracting officer shall use the basic clause." *Id.*

[37] "Although a research grant may not meet the requirements of § 1498(a), from the limited record presented by the parties, it cannot be determined whether the [research] grant may authorize the necessary predicates for § 1498(a)." *Madey v. Duke University*, 307 F.3d 1351, 1360 (Fed. Cir. 2002).

1 ███████████████████████████████████████████████████████████████
2 ███████████████. The A&C clause does not appear in the ██████ purchase orders,
3 indicating that they were viewed as commercial transactions. Opp. Ex. 2. Therefore, A&C does not
4 apply to these purchase orders, as a matter of fact and law.

      3.    The ████████████ (ASICs #13, KD26A; #14, KD28A)

Aeroflex is correct that ███████████████████████████████████████████ Opp. Exs. 10, 11. But Aeroflex wrongly claims Alternate I was incorporated into a purchase order for KD26A (Opp. Ex. 8); that purchase order ████████████████████████████████. (D.I. 560 Ex. 9, AF 284318). As stated in Ricoh's Motion, both clauses cannot simultaneously apply, because they are used in the "Alternate." And as explained in Ricoh's Motion, "[i]n the absence of evidence that the underlying prime contract was a federal [R&D] contract, the court must conclude that, as a matter of law, in accordance with the FAR, the standard clause in ██████████████████████ does not." Ricoh Mot. at 20. That is the Court's duty under the Christian Doctrine. Aeroflex does not respond to this argument, but rather simply repeats the assertions refuted in Ricoh's Motion.

Aeroflex has produced no evidence concerning the underlying contract, which is apparently related to the ████████████████ Compare Opp. Exs. 7, 8 at 1. Information on the prime contract is necessary because the prime contract may not necessarily incorporate Alternate I. The ████ ████████████████, also discussed in the Opposition at 9, is subject to the ██████ ██████████████████. See Opp. Ex. 9.[38] No information is provided by Aeroflex about the ████████████████████████████████████████████████████████. Without this information, Aeroflex has insufficient evidence to prove its allegation.[39] ████ cannot provide authorization and consent to Aeroflex if the Government has not so granted it to ████.

Aeroflex identifies for the first time a purchase order for KD28A, Opp. Ex. 13, which ████████████████████████████. Neither the purchase order nor the KD28A was previously identified

---

[38] Aeroflex does not explain the relevance of the ████████████ in any event, it does not support its defense and does not appear related to the KD26A or KD28A.

[39] The KD26A is the *only* ASIC in the De Mory Key for which Aeroflex presents any evidence in its Opposition.

in the De Mory Key. This purchase order is associated with the ▓▓▓ program. Opp. Ex. 13 at 1. Although Ricoh has not been afforded the opportunity for discovery on this purchase order, the evidence that Aeroflex has provided is still insufficient to meet its burden of proof. Aeroflex provides no information about the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Without this information, Aeroflex has insufficient evidence to show that the U.S. Government either expressly or impliedly gave its A&C. ▓▓▓ certainly cannot provide A&C if the Government never did.

### III. CONCLUSION

Aeroflex has provided no evidence that, under the standard FAR authorization and consent clause, use of the accused infringing process was (1) expressly required by any U.S. Government prime contract, or (2) impliedly required or necessary for performance of any U.S. Government prime contract. Aeroflex also has provided insufficient evidence that the broad form of the FAR A&C clause legally applied to any of its ASIC sales. Accordingly, Ricoh respectfully requests that the Court grant Ricoh summary judgment in its entirety on Aeroflex's Sixth Affirmative Defense.

Respectfully submitted,

Dated: September 8, 2006

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

RICOH COMPANY, LTD.
By: /s/ Kenneth W. Brothers
Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-1526
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
Attorneys for
RICOH COMPANY, LTD.

DSMDB-#2138005v5