Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC.
and for Defendants AEROFLEX INCORPORATED,
AMI SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS, INC., MATROX INTERNATIONAL
CORP., MATROX TECH, INC., and
AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.,<br><br>Defendants. | Case No. C03-4669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**SYNOPSYS AND THE CUSTOMER DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER ELEMENTS)**<br><br>**[SUMMARY JUDGMENT MOTION NO. 6]**<br><br>Date:        September 26, 2006<br>Time:        9:30 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:       Hon. Martin J. Jenkins |
| SYNOPSYS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RICOH COMPANY, LTD.,<br><br>Defendant. | **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |

**REDACTED PUBLIC VERSION**

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)

DM_US\8385748.v1

## **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................. 1

II. ARGUMENT ....................................................................................... 1

A.  Ricoh's Argument That There Is No "Entire ASIC" Requirement
    in Claim 13 Is Based On Flawed Logic. ......................................... 1

B.  Ricoh Fails to Show a Genuine Issue of Material Fact as to
    Whether the Design Compiler System Stores a "Library of
    Definitions" of Actions and Conditions. ....................................... 4

    1.  Ricoh's Definition of "Definitions" Is Unsupported. ................ 4

    2.  Ricoh Fails to Present Any Evidence that the So-Called
        "Generic Operators" Are Stored in a "Library." ...................... 5

C. ....................................................................................................... 8

D.  The Language of Claim 13 Logically Requires a Specific Ordering
    of Steps. ....................................................................................... 9

E. ....................................................................................................... 10

F. ....................................................................................................... 11

G.  Element E Does Require Specifying One (And Only One)
    Definition for Each Architecture Independent Action and
    Condition. ................................................................................... 12

H.  The '432 Specification Supports Defendants' Position that the
    Claim 13 Netlist Output Must Be Used Directly to Produce an
    ASIC. ........................................................................................... 14

I.  Ricoh Still Fails to Identify Any Specific Data Path or Control
    Path Rules. .................................................................................. 15

III. CONCLUSION ................................................................................... 16

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)                                              -i-

HOWREY LLP

DM_US\8385748.v1

1              **TABLE OF AUTHORITIES**

2                                                              **Page(s)**

3 **CASES**

4 *Aguilera v. Pirelli Armstrong Tire Corp.*,
     223 F.3d 1010 (9th Cir. 2000) ...........................................................................15

5

6 *Altiris, Inc. v. Symantec Corp.*,
     318 F.3d 1363 (Fed. Cir. 2003) ......................................................................8, 9

7 *Beyene v. Coleman Sec. Servs., Inc.*,
     854 F.2d 1179 (9th Cir. 1988) .........................................................................11

8

9 *Celotex Corp. v. Catrett*,
     477 U.S. 317 (1986) ........................................................................................15

10 *Helfand v. Gerson*,
     105 F.3d 530 (9th Cir. 1997) .............................................................................6

11

12 *Insituform Techs., Inc. v. Cat Contracting, Inc.*,
     99 F.3d 1098, 40 U.S.P.Q.2D (BNA) 1602 (Fed. Cir. 1996) ...........................12

13 *Interactive Gift Express, Inc. v. Compuserve, Inc.*,
     256 F.3d 1323  (Fed. Cir. 2001) ........................................................................9

14

15 *Johnson v. Kurth*,
     2002 WL 31855266 (D. Kan. Dec. 13, 2002) ...................................................11

16 *Loral Fairchild Corp. v. Sony Corp.*,
     181 F.3d 1313 (Fed. Cir. 1999) .........................................................................9

17

18 *Merck & Co. v. Teva Pharms. USA, Inc.*,
     347 F.3d 1367 (Fed. Cir. 2003) .......................................................................14

19 *Miles Labs., Inc. v. Shandon, Inc.*,
     997 F.2d 870 (Fed. Cir. 1993) ...........................................................................6

20

21 *Odetics, Inc. v. Storage Technology Corp.*,
     1997 WL 357598 (Fed. Cir. 1997) ....................................................................7

22 *On-Line Technologies, Inc. v. Bodenseewerk Perkin-Elmer GMBH*,
     386 F.3d 1133 (Fed. Cir. 2004) .........................................................6, 10, 11, 15

23

24 *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996) ...............................6

25 *Taltech Ltd. v. Esquel Enterprises Ltd.*,
     410 F. Supp. 2d 977, 998-99 (W.D.Wash. 2006) ..............................................9

26 *United States v. Various Slot Machines on Guam*,
     658 F.2d 697 (9th Cir. 1981) .....................................................................10, 11

27

28 *WMS Gaming, Inc. v. International Game Tech.*,
     184 F.3d 1339 (Fed. Cir. 1999) .......................................................................12

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS)  (MOTION NO.6)

-ii-

DM_US\8385748.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*York Prods., Inc. v. Central Tractor Farm & Family Ctr.,*
99 F.3d 1568, 40 U.S.P.Q.2D (BNA) 1619 (Fed. Cir. 1996) .......................................................12

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)

HOWREY LLP

DM_US\8385748.v1

1    **I.    INTRODUCTION**

2         Ricoh's opposition to Defendants'[1] Summary Judgment Motion No. 6 does not raise any

3    genuine issue of material fact.  Ricoh fails to show that Defendants' interpretation of the requirements

4    of the '432 claims is faulty.  Contrary to Ricoh's arguments, Defendants' interpretation of the language

5    in the '432 claims is consistent with both the '432 specification and the law on claim construction.

6         Ricoh also continues to make the mistake of relying on conclusory opinions from its

7    infringement expert, Dr. Soderman,[2] to support its various arguments.  But conclusory opinions from

8    the non-moving party's expert witnesses, unsupported by any factual foundation, are insufficient to

9    defeat a motion for summary judgment.

10        Ricoh's opposition suffers from another critical flaw: Ricoh cites repeatedly to its Final

11   Infringement Contentions as the evidentiary support for its arguments.  But Ricoh's Final Infringement

12   Contentions do not constitute "evidence" except as party admissions of Ricoh, and therefore cannot

13   serve as the factual basis for avoiding summary judgment.

14   **II.    ARGUMENT**

15       **A.    Ricoh's Argument That There Is No "Entire ASIC" Requirement in Claim 13 Is**

16           **Based On Flawed Logic.**

17        Ricoh asserts two main arguments for why there is no "entire ASIC" requirement in '432 claim

18   13.  First, Ricoh argues that because dependent claims 15 and 17 add the steps of data and control path

19   generation, claim 13 cannot possibly require an "entire ASIC."  Opp. at 5-7.[3]  Second, Ricoh argues

20   that the Court's definition of "architecture independent actions and conditions" as "the different

21   functional or behavioral aspects of a portion of a circuit (or circuit segment) that does not imply a set

22   architecture . . ." shows that claim 13 does not require an "entire ASIC."  Opp. at 6-7.  Each of these

23

---

24   [1] As used herein, "Defendants" refers collectively to Synopsys and the Customer Defendants.

25   [2] Dr. Soderman's declaration submitted with Ricoh's opposition papers contains many opinions that Defendants believe are
     objectionable for various other reasons.  These objections will be set forth in a separately filed set of evidentiary objections
26   and/or a motion to strike..  For purposes of this reply brief, however, Defendants assume that the Court will be considering
     all opinions set forth in Dr. Soderman's declaration.

27   [3] References herein to Ricoh's Opposition to Defendants' Summary Judgment Motion of Non-Infringement (Other
     Elements) (Motion No. 6) are referred to as "Opp."

28

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM_US\8385748.v1

1  arguments is logically (and legally) flawed.

2      First, Defendants' contention is that the netlist output from claim 13 must contain a complete

3  description of all of the **hardware cells** that are necessary for the complete ASIC, so claims 15 and 17,

4  which deal solely with data paths and control paths, shed no light on whether or not all hardware cells

5  for the entire ASIC must be present in the netlist output of claim 13. Mot. at 7:15-19.[4] Moreover, as

6  explained further in Summary Judgment Motion No. 4 (and its reply brief), claims 15 and 17 are

7  redundant, and therefore do not explain anything about what is contained in the netlist of claim 13.

8      Second, contrary to Ricoh's assertion, the Court's definition of "architecture independent

9  actions and conditions" does not conflict with Defendants' argument that claim 13 requires a netlist

10  output that describes all of the hardware cells necessary for the entire ASIC. Defendants agree that

11  applying the Court's construction of "architecture independent actions and conditions" to element A

12  results in the following construction of that element:

13      a library of definitions of **the different** functional or behavioral aspects of a portion of a circuit

14      (or circuit segment) . . . that can be selected for use in the desired ASIC.

15  Ex. 8 at 12-13 (emphasis added);[5] *see* Opp. at 7:4-7. Ricoh focuses on the language in this

16  construction of "a portion of a circuit (or circuit segment)," but ignores the language that the required

17  library must contain "the different" – i.e., **all** of the different – functional or behavioral aspects that can

18  be selected for use in the desired ASIC. This language is entirely consistent with Defendants'

19  argument that the netlist output of claim 13 must contain all hardware cells necessary for the entire

20  ASIC. Such a comprehensive netlist of all the hardware cells in the ASIC can only be generated if the

21  system has a library containing "the different functional or behavioral aspects" that can be selected for

22  use in the desired ASIC.

23      Defendants are not attempting to artificially import a limitation into the preamble of claim 13,

24

25  [4] References herein to Defendants' Motion for Summary Judgment of Non-Infringement (Other Elements) are referred to as "Mot."

26  [5] Unless otherwise noted, all exhibits referenced in this motion are attached to the Declaration of Denise M. De Mory in

27  Support of Synopsys' and Customer Defendants' Summary Judgment Motions filed on August 18, 2006 (Exs. 1-91) or, for exhibits numbered 92 and higher, the Supplemental Declaration of Denise M. De Mory in Support of Synopsys' and Customer Defendants' Summary Judgment Motions filed concurrently herewith.

28

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -2-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1   as Ricoh contends.  Rather, as pointed out in Defendants' opening brief, various limitations throughout

2   claims 13 and 14, in combination with the preamble, all point to a requirement that the claim 13

3   process be used to produce a netlist for an entire ASIC.  Mot. at 6:25-7:14.  The preamble recites a

4   process "for designing an application specific integrated circuit;" element D recites describing a series

5   of architecture independent actions and conditions "for a proposed application specific integrated

6   circuit";[6] element F recites "generating . . . a netlist defining the hardware cells which are needed to

7   perform the desired function of the integrated circuit"; and claim 14 recites using the netlist from claim

8   13 to generate mask data for manufacturing an ASIC.

9         Moreover, as Ricoh frequently touts, the stated benefit of the '432 patent is that "the present

10  invention, for the first time, opens the possibility for the design and production of ASICs by designers,

11  engineers and technicians who may not possess the specialized expert knowledge of a highly skilled

12  VLSI design engineer."  Ex. 1 at 2:20.

13

14                                            .  All of this language is consistent with

15  Defendants' view that claim 13 is directed towards producing a netlist of hardware cells for an entire

16  ASIC, and not simply a small section of one.

17        Ricoh still has presented no evidence that, for any of the over 350 accused ASIC designs, the

18  netlist output from the Design Compiler system constituted a complete description of all of the

19  hardware cells necessary for the complete ASIC.  Instead, Ricoh merely argues that no such "entire

20  ASIC" requirement is present in claim 13.  Because Ricoh fails on this argument, summary judgment

21  of non-infringement should be granted.

22

23  _____

    [6] The describing step is another example of how Ricoh has utterly failed to meet its burden of proof.  This step clearly
24  requires describing a series of architecture independent actions and conditions for a proposed ASIC. In many designs at
    issue, besides not being the design for an ASIC, the designs are not described as a series of alleged "architecture
25  independent actions and conditions" because the designs contain instantiated structure.  *See* Brothers Decl., Ex. 32
    (Soderman Tr. at 102:6-24; 106:23-107:9).  Thus, for the designs, the inputs are most definitely described in a series of
26  architecture dependent actions and conditions because structure is specified.  Indeed, Dr. Papaefthymiou made no effort to
    determine whether for all – or even most – of the designs the inputs were described by such a series of actions and
27  conditions.  Instead, he simply confirmed that there were, for example, a reasonable number of "+"'s in some designs.  This
    was enough for him to opine that all the designs practiced the method.  Brothers Decl., Ex 40 (Papaefthymiou Tr. at 75:16-
28  79:16; 110:12-24).

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)        -3-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

**B.    Ricoh Fails to Show a Genuine Issue of Material Fact as to Whether the Design Compiler System Stores a "Library of Definitions" of Actions and Conditions.**

Ricoh's opposition brief contains a lengthy and convoluted discussion of how there are genuine issues of material fact regarding whether the "library of definitions of the different architecture independent actions and conditions" required in element A of claim 13 can exist in more than one location or at different points in time. Opp. at 11-17. Defendants note that the Court need not consider any of these arguments if it decides as a preliminary matter that Ricoh's definition of "definitions" is incorrect. Put another way, if Ricoh cannot show that there are any "**definitions** of the different architecture independent actions and conditions" stored in the Design Compiler system, then Ricoh certainly cannot establish that there is a "library" of such definitions stored in the Design Compiler system. Thus, the Court should first consider whether Ricoh can point to any evidence of the storage of any "definitions of architecture independent actions and conditions" anywhere in the Design Compiler system.

**1.    Ricoh's Definition of "Definitions" Is Unsupported.**

Ricoh bases its theory that the Design Compiler system stores a "library of definitions of the different architecture independent actions and conditions that can be selected for use in the desired ASIC," as required in element A, entirely on the assumption that the "definitions" of the architecture independent actions and conditions in the Design Compiler system are the names of the "generic operators" (synthetic operators, MUX_OP, SELECT_OP, DP_OP, SEQGEN, FFGEN, and LOGDB). Opp. at 17:3-11; Ex. 13 (Soderman) at 156:2-157:3; 158:24-160:6; 165:17-24; 255:15-19. Ricoh's position is completely untenable.

First, Ricoh incorrectly states that Defendants admitted in their motion that synthetic operators, MUX_OP, SELECT_OP, DP_OP, SEQGEN, FFGEN, and LOGDB are "definitions." This is not true. Instead, Defendants were merely rebutting Ricoh's assertion on the storing step because what it claims are the definitions are not created until the analyze and elaborate phase of the design process. This is not the same as agreeing that the names of the synthetic operators constitute definitions. Mot. At 11:5-7.

Second, contrary to Ricoh's assertion, the '432 specification does not support Ricoh's position

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)        -4-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1   that the names of "generic operators" constitute their definitions.  Ricoh argues that Table 1 in the

2   specification, which lists names and descriptions of functions like "ADD" and "MULT," supports

3   Ricoh's argument that the names of the "generic operators" are sufficient to define those operators.

4   Opp. at 17:8-11.  What Table 1 actually shows, however, is that the "ADD" and "MULT" functions

5   have corresponding "descriptions" of their functions.  Ex. 1 at 7:30-50.  Specifically, the description of

6   the "ADD(A, B, C)" function is "C = A + B," while the description of the "MULT(A, B, C)" function

7   is "C = A * B."  *Id.*  Thus, Table 1 only confirms Defendants' position that more than just the name of

8   an operator is necessary to define that operator.

9            Perhaps most importantly, however, Ricoh's counsel agreed during the parties' claim

10  construction hearing that the term "definitions" should be accorded its ordinary meaning.  Ex. 103 at

11  41:11-15 [12/15/04 claim construction hearing transcript] ("Mr. Hoffman [Ricoh's counsel]: . . . But

12  what the definitions are, the set of definitions – and we have stayed with the word 'definitions' instead

13  of switching it.  Of course, quite candidly, I think definitions is an everyday term and it seemed clear

14  on its ordinary meaning and not needing a separate interpretation.").  Since Ricoh believes that the

15  term "definitions" is clearly understood based on its ordinary meaning, the Court should look to the

16  dictionary meaning of "definition" to understand that term.  Webster's Ninth New Collegiate

17  Dictionary (1988) defines "definition" as "a statement expressing the essential nature of something (as

18  by differentiation within a class)."  Ex. 104.  Under this ordinary dictionary definition of "definition,"

19  the name of an object alone is not a "definition" of that object.  Indeed, under Ricoh's definition of

20  "definition," dictionaries would become a thing of the past – a word or a name and its definition would

21  be the same thing.  In light of this critical flaw in Ricoh's infringement theory, summary judgment of

22  non-infringement is appropriate.

23                    **2.      Ricoh Fails to Present Any Evidence that the So-Called "Generic**

24                            **Operators" Are Stored in a "Library."**

25            Even if the Court agrees with Ricoh that the names of the "generic operators" alone can

26  constitute their "definitions," Ricoh fails to show that these "generic operators" are stored in any single

27  "library."  Indeed, rather than making any serious attempt to prove this point, Ricoh instead focuses its

28  efforts primarily on the argument that a library does not necessarily have to be located in one single

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)        -5-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM_US\8385748.v1

1  geographic location. Opp. at 12-14.

2         All of Ricoh's arguments asserted in support of this proposition are flawed. First, Ricoh's

3  invocation of the general claim construction principle that "a" usually means "one or more" is

4  inapposite here. Element A requires storing "a library of definitions of **the different** architecture

5  independent actions and conditions that can be selected for use in the desired ASIC." Ex. 8 at 13

6  (emphasis added). This language shows that the "library" must contain definitions for **all** of the

7  different actions and conditions that can be selected for use in the ASIC. Thus, the fact that "a library"

8  might mean "more than one library" is irrelevant, for even under that interpretation each separate

9  library would still need to contain definitions for all the different actions and conditions.

10        Second, Ricoh relies on the conclusory opinion asserted in Dr. Soderman's declaration that a

11  library need not be located in a single location. Soderman Decl. ¶ 37. Like many of the opinions

12  asserted in his expert report, Dr. Soderman provides no explanation of the factual basis for this

13  opinion. Such conclusory expert opinions are insufficient to avoid summary judgment. *On-Line*

14  *Technologies, Inc. v. Bodenseewerk Perkin-Elmer GMBH*, 386 F.3d 1133, 1144 (Fed. Cir. 2004).

15  Moreover, Ricoh's reliance on expert testimony to support its interpretation of the term "library" is in

16  conflict with its vociferous argument during claim construction that the Court should not consider

17  expert testimony in interpreting the claims of the '432 patent. *See* Ex. 5 at 2:5-17, 8:12-20. Having

18  taken the position previously that expert testimony is irrelevant to claim interpretation, Ricoh cannot

19  now argue that the Court should rely on the testimony of its expert regarding the proper interpretation

20  of the term "library." *See Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) ("Judicial estoppel,

21  sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from

22  gaining an advantage by taking one position, and then seeking a second advantage by taking an

23  incompatible position.") (quoting *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600

24  (9th Cir.1996)).

25        Moreover, there is no contemplation in the specification of multiple libraries of definitions of

26  actions and conditions – there is just one "macro" library. *See, e.g.*, Ex. 1 at 4:61-63; 5:22-25; 7:27-28;

27  FIG. 3. In *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870 (Fed. Cir. 1993), the Federal Circuit

28  considered a very similar issue and held that "a cabinet" was properly interpreted as a single cabinet,

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)          -6-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1  and found that something that consists of three modules could not literally infringe. In particular, the

2  *Miles* Court found as follows:

> The district court properly construed the term "cabinet" to mean a single enclosure for the various parts of the apparatus. The claims, specification, and drawings disclose a single cabinet enclosing the tissue processing apparatus. The embodiment illustrated in the patent specification disclosed a single cabinet comprised of a number of sections, including numerous reagent bottles, a processing chamber, paraffin containers, and a control module. Moreover, Webster's defines "cabinet" as "**1** a case or cupboard with drawers or shelves for holding or storing things . . . **2** a boxlike enclosure." *Webster's New World Dictionary*, 193 (3d col. ed. 1988).
>
> The HYPERCENTERs, however, consist of three modules as opposed to one. "Module" is defined as "any of a set of units, as cabinets, designed to be arranged or joined in a variety of ways." Webster's at 872. Because three does not equal one, the district court clearly erred in finding that the HYPERCENTERs (consisting of three cabinets) literally infringed the single cabinet limitation of the '073 patent.

11  *Id.* at 876. Applying this law here, Ricoh loses as a matter of law on all of its convoluted library

12  theories.[7]

13      Ricoh also improperly cites an unpublished Federal Circuit opinion, *Odetics, Inc. v. Storage*

14  *Technology Corp.*, 1997 WL 357598 at *3-4 (Fed. Cir. 1997) (unpublished), in support of its argument

15  that a "library" need not exist in a single location. Opp. at 12:16-20. Under Federal Circuit Rule

16  47.6(b) and N.D. Cal. Civil L.R. 3-4(e), the *Odetics* opinion may not be cited as precedent. Moreover,

17  even if the Court were to consider *Odetics*, the language in that opinion actually undercuts Ricoh's

18  arguments. Specifically, in *Odetics* the Federal Circuit found that the defendant's analogy to "real-

19  world" libraries did not aid in the interpretation of the term "library" in the asserted claims. *Odetics*,

20  1997 WL 357598 at *4. Like the defendant in *Odetics*, Ricoh attempts to make an analogy to real-

21  world libraries that is inapposite. *See* Opp. at 12:19-13:2. That the Library of Congress has three

22  buildings does not shed any light on how the term "library" should be interpreted in the '432 patent.

23

24

25

26

---

27  [7] As in *Miles*, the dictionary definition of "library" supports Defendants' position. Webster's Ninth New Collegiate Dictionary (1988) defines "library" as, *inter alia*, "**a place** in which literary, musical, artistic, or reference materials . . . are kept for use but not for sale" or "**a collection** resembling or suggesting a library." Ex. 105 (emphasis added).

28

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -7-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1

2

3

4

5          Finally, Ricoh's argument that the Design Compiler source code itself can constitute a library

6   remains unsupported. Opp. at 15:11-20. Although Ricoh argues that one of Synopsys' own patents

7   describes the use of a "source code library," this is a serious mischaracterization of that document.

8   The Synopsys patent cited by Ricoh discusses using a library to **store** source code, not using source

9   code as a library. Brothers Decl., Ex. 97 at col. 5:40-44. Ricoh's only other "evidence" that source

10  code can constitute a library is Dr. Soderman's conclusory opinion to that effect, which as discussed

11  above is insufficient to avoid summary judgment.

12

13

14

15

16

17

18

19

20

21

22

23  **D.      The Language of Claim 13 Logically Requires a Specific Ordering of Steps.**

24          Ricoh incorrectly argues that no specific ordering of steps is required in claim 13. In *Altiris,*

25  *Inc. v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003), the Federal Circuit stated a two-part test for

26  determining whether an ordering of steps is required in a process claim. "First, we look to the claim

27  language to determine if, as a matter of logic or grammar, they must be performed in the order written .

28  . . . If not, we next look to the rest of the specification to determine whether it directly or implicitly

HOWREY LLP

1 | requires such a narrow construction." *Id.* at 1370 (citations and quotations omitted).[8]  With respect to

2 | the first part of this test, the court in *Taltech Ltd. v. Esquel Enterprises Ltd.*, 410 F. Supp. 2d 977, 998-

3 | 99 (W.D.Wash. 2006), noted that "[f]or example, if the second step requires the presence of a structure

4 | that is formed in the first step, then the claim language itself shows that the steps must be performed in

5 | a particular order . . . . A particular order might also be required if each subsequent step referenced

6 | something logically indicating that the prior step had been performed" (citations omitted).

7 |      Claim 13 easily meets the first part of the *Altiris* test, as Defendants described in detail in their

8 | opening brief. Mot. at 3:23-4:9.[9]  As a matter of both logic and grammar, the language in element E,

9 | by referring to the use of "each described action and condition" from element D and "said stored

10 | definitions" from element A, shows that elements A and D must be performed before element E.

11 | Similarly, the language in element F referencing selecting a cell "from said stored data" (element B) by

12 | applying rules from "said expert system knowledge base" (element C) to "each of the specified

13 | definitions" (element E) logically shows that elements A through E must all be performed prior to

14 | element F.

15 |      In addition, contrary to Ricoh's assertion, Defendants do not argue that different claim

16 | elements cannot occur during the same phase of the Design Compiler system's processes. Rather,

17 | Defendants argue that because claim 13 requires a specific ordering of steps, Ricoh cannot assert an

18 | infringement theory that violates that order. Ricoh's infringement theory commits such violations, as

19 | described in detail in Defendants' opening brief. Mot. at 10-11.

20

21

22

23

---

24 | [8] Ricoh incorrectly relies on *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323  (Fed. Cir. 2001), for the proposition that no ordering of steps in a process claim is required "unless the steps of a method actually recite an order."

25 | Opp. at 17 n.24.  Ricoh takes the court's language in *Interactive Gift Express* out of context.  What the court in *Interactive Gift Express* actually held is that "[u]nless the steps of a method actually recite an order, the steps are not ordinarily

26 | construed to require one . . . . ***However***, such a result can ensue when the method steps ***implicitly require*** that they be performed in the order written. *Interactive Gift Express*, 256 F.3d at 1342 (emphasis added). *See also Loral Fairchild*

27 | *Corp. v. Sony Corp.*, 181 F.3d 1313, 1321-22 (Fed. Cir. 1999).

28 | [9] Consequently, consideration of the second part of the *Altiris* test is unnecessary.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)          -9-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM  US\8385748.v1

1

2

3

4          As discussed in Defendants' opening brief, conclusory assertions from an expert witness

5   are insufficient to avoid summary judgment. *On-Line Technologies, Inc. v. Bodenseewerk Perkin-*

6   *Elmer GMBH*, 386 F.3d 1133, 1144 (Fed. Cir. 2004); *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,

7   216 F.3d 1042, 1046 (Fed. Cir. 2000); *United States v. Various Slot Machines on Guam*, 658 F.2d 697,

8   700 (9th Cir. 1981).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)          -10-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM  US\8385748.v1

As discussed in Defendants' motion, conclusory assertions from an expert witness are insufficient to avoid summary judgment. *On-Line Technologies*, 386 F.3d at 1144; *Arthur A. Collins*, 216 F.3d at 1046; *United States v. Various Slot Machines on Guam*, 658 F.2d at 700.

Second, Ricoh's reliance on its Final Infringement Contentions is improper, as a party's disclosure of its infringement contentions is not "evidence" that may be relied on for purposes of opposing a summary judgment motion. *See, e.g., Johnson v. Kurth*, No. 01-3353-KHV, 2002 WL 31855266, at *4 n.9 (D. Kan. Dec. 13, 2002) ("Plaintiff's complaint and opposition brief are unsworn and the factual assertions therein do not constitute admissible evidence for purposes of defendants' motion for summary judgment.").[10]

The Court, however, may consider only admissible evidence in ruling on a summary judgment motion. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

Defendants make no such admission in their motion papers. Mot. at 13:2-14:2.

## G.     Element E Does Require Specifying One (And Only One) Definition for Each Architecture Independent Action and Condition.

Ricoh argues that claim 13 does not require a one-to-one correspondence of the definitions of actions and conditions specified in element E and the actions and conditions described in element D.

_____

[10] Indeed, even Ricoh states in its Final Infringement Contentions that "[t]he fact that documents have been identified below and/or produced with these Contentions shall not be deemed an admission that such documents are admissible . . . ." Ex. 2 at 1:25-27. Defendants' objections to Ricoh's use of its Final Infringement Contentions as "evidence" are discussed more fully in Defendants' separately filed evidentiary objections to Ricoh's opposition submissions.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)          -11-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1    Opp. at 7:20-8:13.  The language of element E, even if Ricoh is correct that "a" can mean one or more

2    in a "comprising" claim, is that "for each" action or condition "one" definition is specified.  Thus,

3    there is no ambiguity in this claim, and Ricoh cites no case law to the contrary.

4         Ricoh does not cite any law on this point because the law is clearly contrary to Ricoh's

5    position.  Specifically, *WMS Gaming, Inc. v. International Game Tech.*, 184 F.3d 1339 (Fed. Cir.

6    1999), is directly contrary.  In *WMS Gaming*, the Federal Circuit considered the proper construction of

7    "randomly selecting one of the numbers," and held, based on its plain and ordinary meaning, that the

8    proper interpretation was selecting "a single number" as follows:

9         As just seen, the functions of the three disputed limitations of claim 1 are: 1) assigning a
          plurality of numbers to stop positions, where the plurality of numbers exceeds the
10        number of stop positions and at least one stop position is represented by more than one
          number; 2) randomly selecting one of the numbers assigned to stop positions; and 3)
11        stopping the reel at the stop position that corresponds to the selected number.  Referring
          to the means for selecting and means for stopping limitations, WMS argues that selecting
12        "one" number and stopping the reel at the stop position represented by "said selected
          number" indicates that claim 1 is limited to assigning and selecting single numbers rather
13        than combinations of numbers.  The district court concluded, however, that: "there is
          nothing in the claim that limits the generated numbers to be a single number."  *WMS
14        Gaming*, slip op. at 26.  We agree with WMS on this point.  The plain meaning of
          "selecting one of said . . . numbers" is selecting a single number, not a combination of
15        numbers.  *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1105, 40
          U.S.P.Q.2D (BNA) 1602, 1607 (Fed. Cir. 1996) (determining that the claim term "a cup"
16        suggests the use of only one cup).  In addition, the last limitation of the claim refers to
          "said selected number."  This reference to "number" in the singular sense bolsters the
17        interpretation that "selecting one of said . . . numbers" is limited to selecting a single
          number.  Nothing in the written description, drawings, or prosecution history indicates
18        that the phrases "one of said . . . numbers" or "said selected number" should be given
          anything other than their ordinary meaning.  *See York Prods., Inc. v. Central Tractor
19        Farm & Family Ctr.*, 99 F.3d 1568, 1572, 40 U.S.P.Q.2D (BNA) 1619, 1622 (Fed. Cir.
          1996) ("Without an express intent to impart a novel meaning to claim terms, an inventor's
20        claim terms take on their ordinary meaning.").  Therefore, the term "number(s)," as used
          in claim 1, refers to single numbers, as opposed to combinations of numbers, and the
21        recited function of claim 1 is limited to assigning and selecting single numbers.

22
23

24   *Id.* at 1349-50.  Thus, it is clear that specifying "one of said stored definitions" "for each described

25   action and condition" means specifying a single definition for each action or condition.[11]

26   _____

27   [11] Ricoh also argues such a one-to-one correspondence requirement, as advocated by Defendants, is inconsistent with the
     '432 specification, which discloses merging two macros. Opp. at 7-8.  Merging of macros must, by definition, occur after
28   they have been specified, so this is a complete red herring with regard to this step.  The one-to-one correspondence thus
                                                                                    (Continued...)

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)          -12-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1    It is undisputed that Ricoh has done nothing to meet its burden of showing that this element is

2  met. On this basis alone, this case should end, and summary judgment of non-infringement should be

3  entered. This is true even if the element was not limited to a one to one correspondence. Ricoh has

4  done nothing other than make generalized allegations about how Design Compiler works. Ricoh has

5  not, in any manner, analyzed the designs at issue in this case to determine whether there are zero, one,

6  two, or six definitions assigned for any or all input actions and conditions. It is axiomatic that Ricoh

7  must show that each and every step of the asserted method is practiced by the accused method. Ricoh

8  has completely failed to do so.

9    Moreover, there is undisputed evidence in the record that in many cases, an alleged architecture

10 independent action or condition, such as a "+" results in NO specified definition. Casavant Decl. ¶ 51;

11 Brothers Decl., Ex. 27 (Casavant Report at 39-41). Even if "one" meant "one or more," which it does

12 not, it clearly does not mean "none." Ricoh has done nothing to rebut this evidence.

13 **H.    The '432 Specification Supports Defendants' Position that the Claim 13 Netlist**

14 **Output Must Be Used Directly to Produce an ASIC.**

15    Ricoh incorrectly argues that there is no requirement in claim 14 that mask data be generated

16 from the netlist output of claim 13. Opp. at 21:21-22:25. Contrary to Ricoh's assertion, in the

17 "Summary of the Invention" for the '432 patent, the specification contemplated direct use:

18        From the flowchart (or other functional specifications), the system and method of the
         present invention translates the functional architecture independent specifications into
19       structural [sic] an architecture specific level definition of an integrated circuit, *which can
         be used directly to produce the ASIC*. The structural level definition includes a list of
20       the integrated circuit hardware cells needed to achieve the functional specifications.

21
22    Ex. 1 at 2:27-36 (emphasis added). Thus, the specification clearly contemplates that the netlist

23 output of the claimed invention can be used directly to manufacture an ASIC, without any further

24 modification. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003)

25 ("claims must be construed so as to be consistent with the specification, of which they are a part.").

26
   (...Continued)
27 does not read out the preferred embodiment.

28

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)    -13-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1     Moreover, Ricoh's assertion that techniques were known at the time of the '432 patent for

2   converting netlists to intermediate formats prior to generation of mask data is irrelevant. *See* Opp. at

3   21:23-22:2.  The fact that netlists could be converted to intermediate formats at the time of the '432

4   patent does not show that such conversions are required in the '432 patent claims – particularly where

5   the language of the claims fail to mention any such conversion steps.

6

7

8

9

10

11

12

13

14

15

16    **I.       Ricoh Still Fails to Identify Any Specific Data Path or Control Path Rules.**

17

18

19

20

21

22

23

24

25

26               *See* Exs. 2-4, 11 (Ricoh's Final Infringement Contentions

27   and Dr. Soderman's expert report).  Moreover, as discussed above, Ricoh's Final Infringement

28   Contentions do not constitute evidence for summary judgment purposes.

HOWREY LLP

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)        -14-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1

1

2

3          *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (once the moving party

4    makes its initial showing, burden shifts to the non-moving party to "designate specific facts showing

5    that there is a genuine issue for trial"); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1019

6    (9th Cir. 2000) ("On a motion for summary judgment, the non-moving party cannot simply rest on its

7    allegations without any significant probative evidence tending to support the complaint") (citation

8    omitted); *On-Line Technologies,* 386 F.3d at 1144 ("conclusory assertions by expert witnesses are not

9    sufficient to avoid summary judgment").

10   **III.    CONCLUSION**

11         Ricoh has failed to set forth sufficient facts to support its infringement allegations, and

12   continues to rely on the conclusory opinions of its expert witnesses.  Consequently, no reasonable jury

13   could find that every element of the asserted claims is practiced literally by the Customer Defendants.

14   The Court should therefore grant Defendants' motion for summary judgment of non-infringement..

15   Dated:  September 8, 2006                    HOWREY LLP

16

17                                               By:      */s/Denise M. De Mory*
                                                          Denise M. De Mory
18                                               Attorney for Defendants
                                                 AEROFLEX INCORPORATED, AMI
19                                               SEMICONDUCTOR, INC., MATROX
                                                 ELECTRONIC SYSTEMS, LTD.,
20                                               MATROX GRAPHICS INC., MATROX
                                                 INTERNATIONAL CORP., MATROX
21                                               TECH, INC., and AEROFLEX
                                                 COLORADO SPRINGS, INC.
22

23

24

25

26

27

28

**HOWREY LLP**

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)          -15-
MOT FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (OTHER
ELEMENTS) (MOTION NO.6)
DM US\8385748.v1