Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
Phone (202) 420-2200
Fax (202) 420-2201

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 277-6500
Fax (212) 277-6501

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| AEROFLEX ET AL, | ) CASE NO. CV 03-4669 MJJ (EMC) |
| | ) |
| Defendants. | ) CASE NO. CV 03-2289 MJJ (EMC) |
| | ) |
| | ) |
| SYNOPSYS, INC., | ) **DECLARATION OF DEANNA ALLEN IN** |
| | ) **SUPPORT OF RICOH'S OPPOSITION TO** |
| Plaintiff, | ) **DEFENDANTS' MOTION FOR RULE 11** |
| | ) **SANCTIONS** |
| vs. | ) |
| | ) |
| RICOH COMPANY, LTD., | ) |
| | ) |
| Defendant. | ) |
| | ) |

DeAnna Allen declares as follows:

1.    My name is DeAnna Allen, an attorney with the law firm of Dickstein Shapiro LLP, counsel for Ricoh Company Limited.  I am over the age of 21 and am competent to make this declaration.  This declaration is submitted in support of Ricoh's Opposition to Defendants' Motion for Rule 11 Sanctions.  Based on my personal knowledge and information except as stated upon information and belief, I hereby declare to all the facts in this declaration.

2.    Attached as Exhibit 1 is a true and correct copy of the Subpoena served on the University of Michigan by Defendants on August 14, 2006.

3.    Attached as Exhibit 2 is a true and correct copy of the Subpoena served on Yale University by Defendants on August 14, 2006..

4.    Attached as Exhibit 3 is a true and correct copy of the Subpoena served on the Massachusetts Institute of Technology by Defendants on August 14, 2006..

5.    Exhibit 4 is a true and correct copy of the transcript of the September 12, 2005, meet and confer (Tapes 1-4) between counsel for Ricoh and Defendants.

6.    Exhibit 5 is a true and correct copy of the transcript of the September 14, 2005, meet and confer (Tapes 5-6) between counsel for Ricoh and Defendants.

7.    Exhibit 6 is a true and correct copy of the Transcript of the Deposition of Russell Segal, dated December 20, 2005, who was deposed by Ricoh as a Rule 30(b)(6) witness on behalf of Synopsys.

8.    Attached as Exhibit 7 is a true and correct copy of U.S. Patent No. 6,226,776 issued May 1, 2001.

9.    Exhibit 8 is a true and correct copy of the Transcript of the Deposition of Robert Smith, dated February 9, 2006, who was deposed by Ricoh as a Rule 30(b)(6) witness on behalf of AMI Semiconductor.

10.    Exhibit 9 is a true and correct copy of the Transcript of the Deposition of Robert Smith, dated February 10, 2006, who was deposed by Ricoh as a Rule 30(b)(6) witness on behalf of AMI Semiconductor.

Signed at Washington, D.C. on September 26, 2006.

September 26, 2006                                      /s/ DeAnna Allen
                                                       DeAnna Allen

EXHIBIT 1

1  Teresa M. Corbin (SBN 132360)
   Denise M. De Mory (SBN 168076)
2  Ethan B. Andelman (SBN 209101)
   Jaclyn C. Fink (SBN 217913)
3  HOWREY LLP
   525 Market Street, Suite 3600
4  San Francisco, California 94105
   Telephone:  (415) 848-4900
5  Facsimile:   (415) 848-4999

6  Attorneys for Plaintiff SYNOPSYS, INC.
   and for Defendants AEROFLEX INCORPORATED,
7  AMI SEMICONDUCTOR, INC., MATROX
   ELECTRONIC SYSTEMS, LTD., MATROX
8  GRAPHICS, INC., MATROX INTERNATIONAL
   CORP., MATROX TECH, INC., and
9  AEROFLEX COLORADO SPRINGS, INC.

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13 RICOH COMPANY, LTD.,            Case No. C03-04669 MJJ (EMC)

14           Plaintiff,            Case No. C03-02289 MJJ (EMC)

15      vs.                        **NOTICE OF SUBPOENA TO THE
                                   UNIVERSITY OF MICHIGAN**
16 AEROFLEX INCORPORATED, AMI
   SEMICONDUCTOR, INC., MATROX
17 ELECTRONIC SYSTEMS LTD., MATROX
   GRAPHICS INC., MATROX INTERNATIONAL
18 CORP., MATROX TECH, INC., AND
   AEROFLEX COLORADO SPRINGS, INC.

19           Defendants.

20 SYNOPSYS, INC.,

21           Plaintiff,

22      vs.

23 RICOH COMPANY, LTD.,

24           Defendant.

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    YOU ARE HEREBY NOTIFIED that pursuant to Federal Rule of Civil Procedure 45, Plaintiff

3    Synopsys, Inc. has served the University of Michigan c/o Donica Thomas Varner, Assistant General

4    Counsel, the attached subpoena for production of documents.

5    The University is required to produce documents in its custody, possession or control specified in

6    Attachment A to the subpoena by 10:00 a.m. CST on Friday, August 18, 2006 at American Reprographics

7    Systems, 660 Woodward Avenue, Suite 610, Detroit, Michigan, 48226, Telephone: (313) 965-5090.

8    Dated:  August 14, 2006                     HOWREY LLP

9

10                                               By: _____
                                                       Matthew F. Greinert
11                                                 Attorneys for Plaintiff SYNOPSYS
                                                   Defendants AEROFLEX
12                                                 INCORPORATED, AMI
                                                   SEMICONDUCTOR, INC., MATROX
13                                                 ELECTRONIC SYSTEMS, LTD.,
                                                   MATROX GRAPHICS, INC., MATROX
14                                                 INTERNATIONAL CORP., MATROX
                                                   TECH, INC., and  AEROFLEX
15                                                 COLORADO SPRINGS, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case Nos. C03-2289MJJ (EMC)/C03.4469 MJJ (EMC)
NOTICE OF SUBPOENA TO THE UNIVERSITY OF
MICHIGAN

DM_US\8376635.v1

1          **PROOF OF SERVICE**

2   STATE OF CALIFORNIA              )
                                     )    ss.:
3   COUNTY OF SAN FRANCISCO          )

4

5          I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 525 Market Street, Suite 3600, San Francisco, California 94105.

6          On August 14, 2006 I served on the interested parties in said action the within:

7   **NOTICE OF SUBPOENA TO THE UNIVERSITY OF MICHIGAN**

8   by causing said document to be sent by Electronic Mail on August 14, 2006 to the email addresses indicated for the parties listed below and by placing a true copy thereof in a sealed envelope(s) addressed as

9   stated below and causing such envelope(s) to be delivered as follows:

10  Gary M. Hoffman, Esq.                          Jeffrey Demain, Esq.
    HoffmanG@dsmo.com                              jdemain@altshulerberzon.com
11  Dickstein Shapiro Morin & Oshinsky, LLP        Altshuler, Berzon, Nussbaum, Rubin & Demain
    2101 L Street, N.W.                            177 Post Street, Suite 300
12  Washington, DC 20037-1526                      San Francisco, CA 94108

13  Facsimile No.: (202) 887-0689                  Facsimile No.: (415) 362-8064

14  Edward A. Meilman, Esq.
    MeilmanE@dsmo.com
15  Dickstein Shapiro Morin & Oshinsky, LLP
    1177 Avenue of the Americas
    New York, NY 10036-2714
16

17  Facsimile No.:  (212) 896-5471

18  [X]    (OVERNIGHT DELIVERY) on August 14, 2006 by depositing in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivering to a courier or driver

19         authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as

20         stated above, with fees for overnight delivery paid or provided for and causing such envelope(s) to be delivered by said express service carrier on.

21         I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

22

23         Executed on August 14, 2006, at San Francisco, California.

24  _____            _____
            James M. James                          (Signature)
25        (Type or print name)

26

27

28

Issued by the

# UNITED STATES DISTRICT COURT

EASTERN  DISTRICT OF  MICHIGAN

RICOH COMPANY, LTD

V.

AEROFLEX, INCORPORATED, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number: [1] C03-04669 MJJ (EMC)
(Pending in the US District Court for
the Northern District of California)

TO: DONICA THOMAS VARNER, Esq., Assitant General Counsel,
on behalf of UNIVERSITY OF MICHIGAN
4010 Fleming Building
503 Thompson Street, Ann Arbor, MI 48109

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

SEE ATTACHMENT A

| PLACE   American Reprographics Systems, attn: Jim Higgins | DATE AND TIME |
|---|---|
| 660 Woodward Avenue, Suite 610, Detroit, Michigan 48226, (313) 965-5090 | August 18, 2006, 10:00 am CST |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant        *[signature]* | August 14, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Matthew F. Greinert, HOWREY LLP, 525 Market Street, Suite 3600, San Francisco, CA 94105; Telephone:  (415) 848-4900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

## PROOF OF SERVICE

| | |
|---|---|
| DATE | PLACE |
| SERVED: | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## ATTACHMENT A

Pursuant to Federal Rule of Civil Procedure 45 and as directed in the subpoena attached hereto, you are to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control. A Protective Order has been entered in this case by the United States District Court for the Northern District of California and is attached as Attachment B. Included in the Protective Order are provisions for the protection of confidential information produced by a third party. With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

## DEFINITIONS

1.     The terms "you," and "your," mean, without limitation, the University of Michigan, including without limitation all of its subsidiaries, parents, departments and affiliates, and all past or present directors, officers, agents, representatives, employees, students, consultants, attorneys, entities acting in joint-venture or partnership relationships with the University of Michigan and others acting on behalf of the University of Michigan.

2.     As used herein, the word "document" means the original and each non-identical copy of any written, printed, typed, recorded, computerized, electronic, taped, graphic, or other matter, in whatever form, whether in final or draft, including but not limited to all materials that constitute "writings," "recordings," "photographs," "source code" or "executable code" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 34 of the Federal Rules of Civil Procedure. The word "document" includes, without limitation, printed matter, electronic mail, materials stored on computer hard drives, diskettes, tapes, any other computer media, and any other information stored magnetically, optically or in any electronic medium and/or form.

3.     As used herein, "person" means any individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

4.     As used herein, "communication" includes, without limitation, communications by whatever means transmitted (i.e., whether oral, written, electronic or other methods used), as well as any note, memorandum or other record thereof.

5.     The terms "regarding, referring or relating to" and "concerning" mean reflecting, concerning, containing, pertaining, referring, relating to, indicating, showing, describing, evidencing, discussing, mentioning, embodying or computing.

6.     Whenever the singular is used, it shall also be taken to include the plural, and vice versa.  Whenever the conjunctive is used, it shall also be taken to include the disjunctive, and vice versa.

## INSTRUCTIONS

The following instructions apply to each of the requests for documents set forth herein:

1.     Please produce entire documents, including, but not limited to, attachments, enclosures, cover letters, memoranda, and appendices.

2.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for documents shall be deemed continuous up to and following the trial of this proceeding such that any documents or things requested herein which is either discovered by you or comes within your possession, custody or control subsequent to your initial responses hereto but prior to the final conclusion of this case should be produced in a supplemental response to these Document Requests immediately upon its discovery or receipt by you or your counsel.

3.     If any document is withheld under a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, please provide a privilege log identifying each document withheld, including

      a.     The type of document;

      b.     The approximate date, and manner of recording, creating or otherwise preparing the document;

      c.     The subject matter of the document;

DM_US\8326684.v1

    d.      The name and organizational position of the person(s) who produced the document,

    e.      The name and organizational position of the person(s) who received a copy of the document, or to whom the document was disclosed; and

    f.      The claimed grounds on which the document is being withheld and facts sufficient to show the basis for each claim of privilege.

4.      If you object to any part of a request for documents and refuse to produce documents responsive to that part, state your objection and respond to the remaining portion of that request. If you object to the scope or time period of a request for documents, state your objection and respond to the request for documents for the scope or time period you believe is appropriate.

5.      Please produce all documents in the order in which they are kept in the ordinary course of business, and in their original file folders, binders, covers or containers, or facsimile thereof.

6.      Any document bearing any changes, including, but not limited to, markings, handwritten notation, or other differences, that are not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of responding to the following document requests. English translations of partial translations of foreign language documents should also be considered separate documents.

7.      If a requested document is in a language other than English, please produce both the original and any existing English translation thereof.

8.      If any of the following requests for documents cannot be responded to in full after exercising due diligence to secure the requested documents, please so state and respond to the extent possible, specifying your inability to respond to the remainder and stating whatever information you have regarding, referring or relating to the unanswered portions. If your response is qualified in any particular manner, set forth the details of such qualification.

9.     Please produce hard copies of electronic records or produce computerized information in an intelligible format with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

## DOCUMENT REQUESTS

**Request No.1:**

All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of a course titled "Introduction to Computer Organization" (EECS 370) in the Electrical Engineering and Computer Science Department at the University of Michigan, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for the course.

**Request No. 2:**

All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of a course titled "Logic Circuit Synthesis and Optimization" (EECS 478) in the Electrical Engineering and Computer Science Department at the University of Michigan, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for the course.

**Request No. 3:**

All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of a course titled "Computer-Aided Design of Embedded Systems" in the Electrical Engineering and Computer Science Department at the University of Michigan, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for the course.

**Request No. 4:**

All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of any course within the Electrical Engineering and Computer Science Department, or any other Department, at the University of Michigan, including but not limited to, course syllabi, handouts,

outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for any such course.

**Request No. 5:**

All documents regarding, referring or relating to any invention disclosures submitted to the University of Michigan Technology Transfer Office by Dr. Marios Papaefthymiou while being employed by the University of Michigan, including but not limited to, Invention Disclosure Nos. 1496, 1759, 2270, 2299, 2300, and 2452.

ATTACHMENT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SYNOPSYS, INC.,

              Plaintiff,

    vs.

RICOH COMPANY, LTD.,

           Defendant.

)
)
)
)
)
)
)
)
)
)

CASE NO. C03-02289-MJJ (EMC)

STIPULATED PROTECTIVE ORDER

1.  All Confidential Information produced or exchanged in the course of this litigation shall be used solely for the purpose of preparation and trial of this litigation and for no other purpose whatsoever, and shall not be disclosed to any person except in accordance with the terms hereof.

2.  "Confidential Information," as used herein, means any information of any type, kind or character that is designated as "Confidential" by any of the supplying or receiving parties, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer or otherwise. In designating information as "Confidential," a party will make such designation only as to that information that it in good faith believes contains "Confidential Information."

3.  (a) "Confidential Information" includes, but is not limited to, (i) proprietary technical

1

information and specifications, (ii) trade secrets (iii) confidential know-how, and (iv) proprietary business and financial information and any other non-public information, the disclosure of which is likely to have the effect of causing significant competitive harm to the disclosing party or party from which the information was obtained.  Nothing in this paragraph shall be construed to limit the description of "Confidential Information" set forth in paragraph 2.

(b) Nothing shall be regarded as "Confidential Information" if it is information that:

(i) is in the public domain at the time of disclosure, as evidenced by a written document;

(ii) becomes part of the public domain through no fault of the other party, as evidenced by a written document;

(iii) was in the receiving party's rightful and lawful possession at the time of disclosure, as evidenced by a written document; or

(iv) is lawfully received by the receiving party from a third party at a later date without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

4.    "Qualified Persons," as used herein means:

(a) To the Court and its officers and staff, including court reporters;

(b) Outside attorneys of record for the parties in this litigation and employees of such attorneys to whom it is necessary that the material be shown for purposes of this litigation;

(c) Outside experts, consultants, advisors or investigators (collectively referred to hereafter as "experts") who have signed an undertaking pursuant to paragraph 5 but only after compliance with the provisions of paragraph 5 below;

(d) To non-party support services including, but not limited to, court reporters, outside copy services, document imaging and database services, design services who have signed confidentiality agreements, jury consultants who have signed confidentiality agreements, mock jurors who have signed confidentiality agreements, and language translators who have signed confidentiality agreements

2

1

2

(including support staff) as may be reasonably necessary in connection with the preparation or conduct

3

of this action;

4

      (e) Anyone to whom the parties consent in writing; and

5

      (f) If this Court so elects, any other person may be designated as a Qualified Person by

6

order of this Court, after notice and opportunity to be heard to all parties.

7

8   5.  Prior to the disclosure of any "Confidential Information" to any expert under Paragraph

4(c), counsel for the Party seeking to make the disclosure shall: (i) deliver a copy of this Protective

Order as entered to such person, explain its terms to such person, and secure the signature of such

10

person on a written undertaking in the form attached hereto as Exhibit A, and (ii) transmit by facsimile

11

and mail to counsel for the other Parties a copy of the signed Exhibit A, accompanied by a curriculum

12

vitae, at least ten (10) calendar days before any "Confidential Information" designated under this

13

Protective Order is to be disclosed to the signator. The curriculum vitae should identify the general

14

area(s) of expertise of the expert, provide a brief job history, specify all employment, expert or

15

consulting engagements by the expert within the past five (5) years, and state all present or prior

16

relationships between the expert and any entity directly or indirectly involved in this litigation or

17

providing an indemnity to any such entity, its subsidiaries or its affiliates. Any Party may object to the

18

proposed disclosure to an expert within the ten (10) calendar day period following the transmittal of

19

Exhibit A and the curriculum vitae, by stating specifically in writing the reasons why the Party believes

20

such expert should not receive designated "Confidential Information." If during that ten (10) calendar

21

day period a Party makes such a written objection, there shall be no disclosure of "Confidential

22

Information" to the expert absent mutual agreement of the Parties, waiver of the objection as stated

23

below, or further order of the Court. After a Party objects to the proposed disclosure to an expert, the

24

objecting Party shall move, by noticed motion or by ex parte application, for an order that disclosure not

25

be made to such expert within five (5) business days following the date that the objection is made, or the

26

Party's objection shall be deemed waived and disclosure may be made to the expert. The burden shall

27

28

3

1

2
be on the objecting Party to establish why the disclosure should not be made.  Each Party shall maintain

3
a file of all such signed copies of Exhibit A.  However, it shall not be necessary for administrative,

4
secretarial or clerical personnel working for such Qualified Person to sign a written undertaking.

5
6.   (a) Documents produced in this action may be designated by any party or parties as

6
"Confidential" by marking each page of the document(s) with the designation "Confidential."

7
(b) In lieu of marking the original of a document, if the original is not produced, the

8
designating party may mark the copies that are produced or exchanged.  Originals shall be preserved for

9
inspection.

10
(c) If the document is not in paper form, the producing person or entity shall use other

11
such reasonable means as necessary to identify clearly the document or information as "Confidential."

12

13
7.   Discovery responses or other litigation materials may be designated by any party or

14
parties as "Confidential" by marking each page of the response with the designation "Confidential."

15
8.   The designation of information disclosed during a deposition as "Confidential" shall be

16
made either by a statement on the record at the deposition or within twenty (20) calendar days after

17
receipt by counsel of a copy of the deposition transcript.  Such designation will be applied to only those

18
portions of the deposition transcript that include a specific question and response or series of questions

19
and responses containing "Confidential Information."  The deposition transcript shall be printed in

20
consecutive pages (whether or not some pages are designated as "Confidential") with a marking on the

21
cover of the deposition transcript indicating the "Confidential" designation contained therein.  Unless

22
previously designated otherwise, all deposition transcripts shall be treated as "Confidential" in their

23
entirety prior to the end of the twenty (20) calendar day period following receipt by counsel of a copy of

24
the deposition transcript.

25

26
9.   "Confidential Information" shall not be disclosed or made available by the receiving

27
party to persons other than Qualified Persons except that nothing herein is intended to prevent

28
individuals who are in-house counsel or a member of the professional legal department of the Parties

4

1

2

from having access to pleadings, briefs and exhibits or declarations filed with the Court and expert

3

reports, including exhibits that are designated as "Confidential."

4

5    10. (a) Documents to be inspected shall be treated as "Confidential" although such

documents need not be marked as "Confidential" prior to inspection.  At the time of copying for the

6

receiving parties, any documents containing "Confidential Information" shall be stamped prominently

7

"Confidential" by the producing party.

8

9    (b) Nothing herein shall prevent disclosure beyond the terms of this Order if each party

10

designating the information as "Confidential" consents to such disclosure or if the Court, after notice to

all effected parties, orders such disclosures.  Nothing herein shall prevent any counsel of record from

11

utilizing "Confidential Information" in the examination or cross- examination of any person who is

12

indicated on the document as being an author, source or recipient of the "Confidential Information,"

13

irrespective of which party produced such information.  Nothing herein shall prevent any counsel of

14

record from utilizing "Confidential Information" in the examination or cross-examination of any person

15

who is a current or former officer, director or employee of the party so designating the information as

16

"Confidential" or of the party that produced the information or of a related entity.

17

18

19    11. If a party inadvertently discloses any document or thing containing information that it

deems confidential without designating it as "Confidential," the disclosing party shall promptly upon

20

discovery of such inadvertent disclosure inform the receiving party in writing, and the receiving party

21

and all Qualified Persons possessing such information shall thereafter treat the information as

22

"Confidential" under this Order.  To the extent such information may have been disclosed to persons

23

other than Qualified Persons described in this document, the receiving party shall make every

24

reasonable effort to retrieve the information promptly from such persons and to avoid any further

25

disclosure to and by such persons.

26

27    12. A party shall not be obligated to challenge the propriety of a designation as

28

"Confidential" at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.

5

1

2

Nor will the failure to object be construed as an admission that any particular "Confidential

3

Information" contains or reflects currently valuable trade secrets or confidential commercial

4

information. In the event that any party to this litigation disagrees at any stage of these proceedings

5

with the designation by the designating party of any information as "Confidential," or the designation of

6

any person as a Qualified Person, the parties shall first try to resolve such dispute in good faith on an

7

informal basis, such as production of redacted copies. If the parties are unsuccessful in informally

8

resolving any disputes regarding the designation of any document or information as "Confidential," the

9

Court shall resolve all such disputes. It shall be the burden of the party making any designation to

10

establish that the information so designated is "Confidential" within the meaning of this Protective

11

Order. The "Confidential Information" that is the subject of the dispute shall be treated as originally

12

designated pending resolution of the dispute.

13

14        13. The parties may, by written stipulation filed and approved by the Court, amend this

15

Order, and any party may seek an order of this Court modifying this Protective Order. The parties agree

16

to meet and confer prior to seeking to modify this Protective Order. In addition, the Court may modify

17

this Protective Order in the interest of justice or otherwise at the Court's discretion.

18        14. In the event a party wishes to use any "Confidential Information" in any affidavits,

19

briefs, memoranda of law, or other papers filed with the Court in this litigation, such "Confidential

20

Information" used therein shall be filed under seal with the Court. In addition to placing documents in a

21

sealed envelope with instructions that the document is filed pursuant to the Stipulated Protective Order

22

and that the envelope is not to be opened absent further order of the Court, the envelope should be

23

labeled to identify the title of the case, the case number, and the title of the document.

24        15. The Clerk of this Court is directed to maintain under seal all documents and transcripts of

25

deposition testimony and answers to interrogatories, admissions and other pleadings filed under seal

26

with the Court in this litigation that have been designated, in whole or in part, as "Confidential" by a

27

party to this action.

28

6

1

2

16. If a Party intends to offer into evidence or otherwise disclose in open court any

3

"Confidential Information" designated by another person or entity, counsel for such Party shall notify

4

the designating person or entity that the Party intends to disclose "Confidential Information" in open

court prior to the disclosure, so that the designating person or entity may confer with the Court

concerning appropriate procedures for protecting its "Confidential Information."

8     17. In the event any person or party that has possession, custody, or control of any

information designated as "Confidential" pursuant to the terms of this Protective Order receives a

10

subpoena or other process or order to produce such information, such person or party shall notify by

11

mail within five (5) business days of the Party's receipt of the request, the counsel for the party or

12

persons claiming confidential treatment of the documents sought by such subpoenas or other process or

13

order, shall furnish such counsel with a copy of said subpoena or other process or order, and shall

14

cooperate with respect to any procedure sought to be pursued by the party whose interests may be

15

affected. The party asserting the "Confidential" treatment shall have the burden of defending against

16

such subpoena, process or order.  The person or party receiving the subpoena or process or order shall

17

be entitled to comply with it except: (a) to the extent the party asserting the "Confidential" treatment is

18

successful in obtaining an order modifying or quashing it; and (b) in complying with the process or

19

order shall, at a minimum, seek to obtain "Confidential" treatment of the "Confidential Information"

before producing it in the other proceeding or action.

22     18. If the discovery process calls for the production of information that a Party or Non-Party

23

does not wish to produce because the Party or Non-Party believes its disclosure would breach an

24

agreement with another person or entity to maintain such information in confidence, the disclosing Party

25

or Non-Party promptly shall give written notice to the other person or entity that its information is

26

subject to discovery in this litigation, and shall provide such person or entity with a copy of this

27

Protective Order. When such written notice is given to the person or entity, the disclosing Party or Non-

28

Party will advise the potential receiving Party that such notice has been given.  The person or entity

7

whose information may be subject to discovery shall have ten (10) business days from receipt of the written notice in which to seek relief from the Court, if the person or entity so desires. If the ten (10) business days elapse without the person or entity seeking relief from the Court, the requested information shall be produced in accordance with the terms of this Protective Order.

19. In the event that additional persons or entities become Parties, none of such Parties' counsel, experts or consultants retained to assist said counsel, shall have access to "Confidential Information" produced by or obtained from any other producing person or entity until said Party has executed and filed with the Court its agreement to be fully bound by this Protective Order.

20. This Protective Order shall apply to the parties and any non-party from whom discovery may be sought and who desires protection for the discovery sought. Thus, any non- party requested or required to produce or disclose information in this proceeding, through subpoena or otherwise, may designate such information pursuant to the terms of this Protective Order.

21. (a) Nothing herein requires disclosure of information, documents or things which the disclosing entity contends is protected from disclosure by the attorney-client privilege or the work-product exception. Nothing herein shall preclude any party from moving this Court for an order directing the disclosure of such information, documents or things.

(b) In the event that any privileged attorney-client or work product documents or things are inadvertently produced for inspection and/or provided, the disclosing party shall identify such documents or things within five (5) days of when it discovers that the privileged materials were inadvertently produced for inspection and/or provided, and either (1) copies shall not be provided, or (2) if copies have already been provided, all copies in the receiving party's possession shall be promptly returned (and not relied upon) by the receiving party. Nothing in this paragraph shall prevent the receiving party from contending that the identified materials are not privileged, that the material was not inadvertently produced, or that privilege was waived for reasons other than mere inadvertent production of the material.

8

22. Within ninety (90) days after conclusion of this litigation and any and all appeals thereof, any document and all reproductions of "Confidential" documents produced by a party that are in the possession of any Qualified Person shall be returned to the producing party or, with the consent of the producing party, destroyed. If destroyed, counsel for the receiving party shall certify to counsel for the producing party compliance with this paragraph within fourteen (14) calendar days of such destruction. Outside counsel for each party may maintain in its files one copy of all material produced as well as all materials filed with or otherwise presented to the Court, deposition and trial transcripts, and work product (regardless of whether such materials contain or refer to "Confidential" materials). If counsel retains such materials, the materials which contain Confidential Information shall be accessible only by Qualified Persons defined in paragraph 4(b) above. As far as the provisions of any protective orders entered in this action restrict the communication and use of the documents produced thereunder, such orders shall continue to be binding after the conclusion of this litigation including any subsequent appeals or later proceedings, except that (a) there shall be no restriction on documents that are used as exhibits in Court unless such exhibits were filed under seal, and (b) a party may seek the written permission of the producing party or order of the Court with respect to dissolution or modification of such protective orders. The Court shall retain jurisdiction to enforce the performance of said obligations.

23. (a) At the election of the Producing Party, a Receiving Party's access to a Producing Party's discoverable source code may be limited to inspection of the code at a secured facility provided by the Producing Party. Such inspection may be conducted only by persons identified in advance by the Receiving Party on a list of "Qualified Inspecting Personnel" which may include:

(1) the Receiving Party's Outside Counsel of record in this action; and

(2) up to three Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order (Exhibit A) and who have been approved pursuant to the "Procedures for Approving Disclosure of 'CONFIDENTIAL' information

9

1

2

of Items to 'Experts'" as set forth in paragraph 5.

3        (b)    The following provisions relate to Synopsys' provision of access to the Source Code for versions of its commercial products:

4

5        (1)    Synopsys will make available a closed room at its facility in Bethesda,

6    Maryland for use by Ricoh's Qualified Inspecting Personnel. The room will be set aside

7    for the exclusive use of Ricoh's Qualified Inspecting Personnel and will not be used by

8    Synopsys or any other party when Ricoh's Qualified Inspecting Personnel are not present.

9    The room will be available for a minimum of twelve weeks. After twelve weeks, and

10   after consultation with Ricoh, Synopsys may close the facility pursuant to the procedures

11   described in paragraph 4 below. If the facility is closed, Synopsys agrees to make the

12   source code available for inspection under similar procedures at another date prior to the

13   close of expert discovery.

14        (2)    Synopsys will equip the closed room with a private phone if a phone jack is already available in the room, a stand-alone, non-networked, computer and high-speed printer. The computer will be loaded with copies of the source code to be produced and utilities required to review the code. The source code shall include the code which is used by Synopsys and no notes, comments, or any segments shall be removed before being made available. The computer will be equipped with the text editors available in a standard Unix distribution, suitable for use in editing the source code. Synopsys will assist Ricoh in loading software that Ricoh may require for analysis of the source code. The computer shall also be loaded with a complete distribution of the Synopsys software that is fully operable and executable.

15

16

17

18

19        (3)    Ricoh may print copies of a reasonable subset of the source code for the

20   Synopsys products at issue. Any printing done at the secure facility will be done

21   exclusively on paper supplied by Synopsys. Synopsys may elect to place preprinted

22   confidential designations on the margins of the paper. Ricoh's Qualified Inspecting

23   Personnel are not to bring blank paper into the closed room except for the purpose of

24   making handwritten notes. Synopsys will initially supply Ricoh with 5,000 pages of

25   paper for use with the printer. This figure is based on the estimate that 5,000 pages

26   should be sufficient to print approximately 5% of the source code for Design Compiler. If

27   at any time, Ricoh believes that additional printing and paper is required, Ricoh may

28   submit additional requests for paper to Synopsys with a general statement of the basis of

     the request.  Synopsys will respond within one week to any such request. If the parties

10

are unable to come to agreement after conferral, the matter may be presented to the Court. In evaluating requests for paper, the relevant standard to be applied is that Ricoh should be allowed to print hardcopies of a reasonable subset of the Synopsys source code and that what is reasonable shall be evaluated in light of relevance of the code to Ricoh's allegations and Synopsys' interest in preventing release in hardcopy of more than a fraction of its source code.

(4)    Ricoh will be permitted to send individuals from the list of Qualified Inspecting Personnel to participate in and/or witness the closing of the secured facility. Before closing of the facility, Ricoh's representatives may provide a list of procedures that they wish to perform to ensure that any electronic record of their use of the machine has been erased.

(c)    The Receiving Party will provide the Producing Party with a copy of its list of "Qualified Inspecting Personnel" no later than 5 business days before any person on the list attempts to access the secured facility. The Receiving Party may revise the list to add or remove individuals, provided that no more than a total of three Experts are ever provided with access to the source code during the entire course of the litigation absent an agreement by the parties or a Court Order to expand this number.

(d)    Any notes taken or any other information created by Outside Counsel or the experts of the Receiving Party at or based on any inspection of the source code shall be treated as "CONFIDENTIAL" under this Protective Order.

24. This Order shall not bar any attorney herein in the course of rendering advice to his client with respect to this litigation from conveying to any party client his evaluation in a general way of "Confidential Information" produced or exchanged herein; provided, however, that in rendering such advice and otherwise communicating with his client, the attorney shall not disclose the specific contents of any "Confidential Information" produced by another party herein, which disclosure would be contrary to the terms of this Protective Order.

25. The Court shall retain jurisdiction to enforce the terms of this order for six (6) months after the final termination of this action.

Dated: March 23, 2004                    HOWREY SIMON ARNOLD & WHITE, LLP


                                         /s/ Christopher L. Kelley
                                         Teresa M. Corbin, Esq.

1

2                                    Christopher Kelley, Esq.
3                                    Erik K. Moller, Esq.
                                     Attorneys for Plaintiff SYNOPSYS, INC.
4                                    301 Ravenswood Avenue
                                     Menlo Park, CA 94025
5                                    Telephone: (650) 463-8100
                                     Facsimile: (650) 463-8400
6

7
Dated:  March 23, 2004               DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
8
                                     /s/   Kenneth W. Brothers
9                                    Kenneth W. Brothers, Esq. (pro hac vice)
                                     Attorneys for Defendant  RICOH COMPANY, LTD.
10                                   2101 L Street NW
                                     Washington, DC  20037
11                                   Telephone:  (202) 785-9700
                                     Facsimile:  (202) 887-0689
12

13

14                                        **ORDER**

15      **SO ORDERED** this 24th day of March, 2004.

16

17                                        _____/s/_____

18                                   Magistrate Judge Edward M. Chen

19

20

21

22

23

24

25

26

27

28

[PROPOSED] STIPULATED PROTECTIVE ORDER
CASE NO. C03-2289 MJJ (EMC)

EXHIBIT 2



Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
Ethan B. Andelman (SBN 209101)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile:  (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC.
and for Defendants AEROFLEX INCORPORATED,
AMI SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS, INC., MATROX INTERNATIONAL
CORP., MATROX TECH, INC., and
AEROFLEX COLORADO SPRINGS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC. <br><br> Defendants. | Case No. C03-04669 MJJ (EMC) <br><br> Case No. C03-02289 MJJ (EMC) <br><br> **NOTICE OF SUBPOENA TO YALE UNIVERSITY** |
| SYNOPSYS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RICOH COMPANY, LTD., <br><br> Defendant. | |

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        YOU ARE HEREBY NOTIFIED that pursuant to Federal Rule of Civil Procedure 45, Plaintiff

3    Synopsys, Inc. has served Yale University c/o Dorothy K. Robinson, Vice President and General Counsel,

4    the attached subpoena for production of documents.

5        The University is required to produce documents in its custody, possession or control specified in

6    Attachment A to the subpoena by 10:00 a.m. EST on Friday, August 18, 2006 at Legal Impressions, 205

7    Church Street, New Haven Connecticut, Telephone:  (203) 907-4557.

8    Dated:  August 14, 2006                          HOWREY LLP

9

10                                        By:  _____

11                                                Matthew F. Greinert
                                                Attorneys for Plaintiff SYNOPSYS
12                                              Defendants AEROFLEX
                                                INCORPORATED, AMI
13                                              SEMICONDUCTOR, INC., MATROX
                                                ELECTRONIC SYSTEMS, LTD.,
14                                              MATROX GRAPHICS, INC., MATROX
                                                INTERNATIONAL CORP., MATROX
15                                              TECH, INC., and  AEROFLEX
                                                COLORADO SPRINGS, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) ss.: |
| COUNTY OF SAN FRANCISCO | ) |

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 525 Market Street, Suite 3600, San Francisco, California 94105.

On August 14, 2006 I served on the interested parties in said action the within:

**NOTICE OF SUBPOENA TO YALE UNIVERSITY**

by causing said document to be sent by Electronic Mail on August 14, 2006 to the email addresses indicated for the parties listed below and by placing a true copy thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be delivered as follows:

Gary M. Hoffman, Esq.
HoffmanG@dsmo.com
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, DC 20037-1526

Facsimile No.: (202) 887-0689

Edward A. Meilman, Esq.
MeilmanE@dsmo.com
Dickstein Shapiro Morin & Oshinsky, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Facsimile No.: (212) 896-5471

Jeffrey Demain, Esq.
jdemain@altshulerberzon.com
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108

Facsimile No.: (415) 362-8064

[X]    (OVERNIGHT DELIVERY) on August 14, 2006 by depositing in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivering to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for and causing such envelope(s) to be delivered by said express service carrier on.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on August 14, 2006, at San Francisco, California.

_____
James M. James
(Type or print name)

_____
(Signature)

HOWREY LLP

Case Nos. C03-2289MJJ (EMC)/C03.4469 MJJ (EMC)
NOTICE OF SUBPOENA TO YALE UNIVERSITY

DM_US\8376656.v1

Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF  CONNECTICUT

RICOH COMPANY, LTD

V.

AEROFLEX, INCORPORATED, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  C03-04669 MJJ (EMC)
(Pending in the US District Court for
the Northern District of California)

TO: DOROTHY K. ROBINSON, Esq., Vice President & General Counsel,
on behalf of YALE UNIVERSITY
2 Whitney Avenue, 6th Floor
New Haven, Connecticut 06510

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT A

| PLACE   Legal Impressions, attention Michael Ferreira<br>205 Church St, New Haven, Connecticut, 203-907-4557 | DATE AND TIME<br>August 18, 2006, 10:00 a.m. EST |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant | DATE<br>August 14, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Matthew F. Greinert, HOWREY LLP, 525 Market Street, Suite 3600, San Francisco, CA 94105; Telephone:  (415) 848-4900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

## PROOF OF SERVICE

| | | |
|---|---|---|
| DATE | | PLACE |
| **SERVED:** | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## ATTACHMENT A

Pursuant to Federal Rule of Civil Procedure 45 and as directed in the subpoena attached hereto, you are to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control.  A Protective Order has been entered in this case by the United States District Court for the Northern District of California and is attached as Attachment B.  Included in the Protective Order are provisions for the protection of confidential information produced by a third party.  With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

## DEFINITIONS

1.      The terms "you," and "your," mean, without limitation, Yale University, including without limitation all of its subsidiaries, parents, departments and affiliates, and all past or present directors, officers, agents, representatives, employees, students, consultants, attorneys, entities acting in joint-venture or partnership relationships with Yale University and others acting on behalf of Yale University.

2.      As used herein, the word "document" means the original and each nonidentical copy of any written, printed, typed, recorded, computerized, electronic, taped, graphic, or other matter, in whatever form, whether in final or draft, including but not limited to all materials that constitute "writings," "recordings," "photographs," "source code" or "executable code" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 34 of the Federal Rules of Civil Procedure.  The word "document" includes, without limitation, printed matter, electronic mail, materials stored on computer hard drives, diskettes, tapes, any other computer media, and any other information stored magnetically, optically or in any electronic medium and/or form.

3.      As used herein, "person" means any individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

4.      As used herein, "communication" includes, without limitation, communications by whatever means transmitted (i.e., whether oral, written, electronic or other methods used), as well as any note, memorandum or other record thereof.

5.      The terms "regarding, referring or relating to" and "concerning" mean reflecting, concerning, containing, pertaining, referring, relating to, indicating, showing, describing, evidencing, discussing, mentioning, embodying or computing.

6.      Whenever the singular is used, it shall also be taken to include the plural, and vice versa.  Whenever the conjunctive is used, it shall also be taken to include the disjunctive, and vice versa.

## INSTRUCTIONS

The following instructions apply to each of the requests for documents set forth herein:

1.      Please produce entire documents, including, but not limited to, attachments, enclosures, cover letters, memoranda, and appendices.

2.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for documents shall be deemed continuous up to and following the trial of this proceeding such that any documents or things requested herein which is either discovered by you or comes within your possession, custody or control subsequent to your initial responses hereto but prior to the final conclusion of this case should be produced in a supplemental response to these Document Requests immediately upon its discovery or receipt by you or your counsel.

3.      If any document is withheld under a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, please provide a privilege log identifying each document withheld, including

      a.      The type of document;

      b.      The approximate date, and manner of recording, creating or otherwise preparing the document;

      c.      The subject matter of the document;

      d.      The name and organizational position of the person(s) who produced the document,

     e.     The name and organizational position of the person(s) who received a copy of the document, or to whom the document was disclosed; and

     f.     The claimed grounds on which the document is being withheld and facts sufficient to show the basis for each claim of privilege.

4.     If you object to any part of a request for documents and refuse to produce documents responsive to that part, state your objection and respond to the remaining portion of that request. If you object to the scope or time period of a request for documents, state your objection and respond to the request for documents for the scope or time period you believe is appropriate.

5.     Please produce all documents in the order in which they are kept in the ordinary course of business, and in their original file folders, binders, covers or containers, or facsimile thereof.

6.     Any document bearing any changes, including, but not limited to, markings, handwritten notation, or other differences, that are not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of responding to the following document requests. English translations of partial translations of foreign language documents should also be considered separate documents.

7.     If a requested document is in a language other than English, please produce both the original and any existing English translation thereof.

8.     If any of the following requests for documents cannot be responded to in full after exercising due diligence to secure the requested documents, please so state and respond to the extent possible, specifying your inability to respond to the remainder and stating whatever information you have regarding, referring or relating to the unanswered portions. If your response is qualified in any particular manner, set forth the details of such qualification.

9.     Please produce hard copies of electronic records or produce computerized information in an intelligible format with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

# DOCUMENT REQUESTS

**Request No.1:**

     All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of a course titled "Computer Systems" in the Electrical Engineering and Computer Science Department at Yale University, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, an instructional RISC microprocessor implemented in Verilog, and any other demonstrative software and hardware created for the course.

**Request No. 2:**

     All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of a course titled "Computer-Aided Design of Integrated Circuits" in the Electrical Engineering and Computer Science Department at Yale University, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for the course.

**Request No. 3:**

     All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of any course within the Electrical Engineering and Computer Science Department, or any other Department, at Yale University, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for any such course.

ATTACHMENT B



1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          NORTHERN DISTRICT OF CALIFORNIA
10             SAN FRANCISCO DIVISION
11

12
SYNOPSYS, INC.,                              )     CASE NO. C03-02289-MJJ (EMC)
13                                           )
                           Plaintiff,        )     STIPULATED PROTECTIVE ORDER
14                                           )
        vs.                                  )
15                                           )
RICOH COMPANY, LTD.,                         )
16                                           )
                           Defendant.        )
17

18
19         1.   All Confidential Information produced or exchanged in the course of this litigation shall

be used solely for the purpose of preparation and trial of this litigation and for no other purpose
20
whatsoever, and shall not be disclosed to any person except in accordance with the terms hereof.
21
22         2.   "Confidential Information," as used herein, means any information of any type, kind or

character that is designated as "Confidential" by any of the supplying or receiving parties, whether it be
23
a document, information contained in a document, information revealed during a deposition,
24
information revealed in an interrogatory answer or otherwise. In designating information as
25
"Confidential," a party will make such designation only as to that information that it in good faith
26
believes contains "Confidential Information."
27
28         3.   (a) "Confidential Information" includes, but is not limited to, (i) proprietary technical

1

information and specifications, (ii) trade secrets (iii) confidential know-how, and (iv) proprietary business and financial information and any other non-public information, the disclosure of which is likely to have the effect of causing significant competitive harm to the disclosing party or party from which the information was obtained.  Nothing in this paragraph shall be construed to limit the description of "Confidential Information" set forth in paragraph 2.

(b) Nothing shall be regarded as "Confidential Information" if it is information that:

(i) is in the public domain at the time of disclosure, as evidenced by a written document;

(ii) becomes part of the public domain through no fault of the other party, as evidenced by a written document;

(iii) was in the receiving party's rightful and lawful possession at the time of disclosure, as evidenced by a written document; or

(iv) is lawfully received by the receiving party from a third party at a later date without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

4. "Qualified Persons," as used herein means:

(a) To the Court and its officers and staff, including court reporters;

(b) Outside attorneys of record for the parties in this litigation and employees of such attorneys to whom it is necessary that the material be shown for purposes of this litigation;

(c) Outside experts, consultants, advisors or investigators (collectively referred to hereafter as "experts") who have signed an undertaking pursuant to paragraph 5 but only after compliance with the provisions of paragraph 5 below;

(d) To non-party support services including, but not limited to, court reporters, outside copy services, document imaging and database services, design services who have signed confidentiality agreements, jury consultants who have signed confidentiality agreements, mock jurors who have signed confidentiality agreements, and language translators who have signed confidentiality agreements

2

1

2
(including support staff) as may be reasonably necessary in connection with the preparation or conduct

3
of this action;

4

5
    (e) Anyone to whom the parties consent in writing; and

6
    (f) If this Court so elects, any other person may be designated as a Qualified Person by

7
order of this Court, after notice and opportunity to be heard to all parties.

8
    5.  Prior to the disclosure of any "Confidential Information" to any expert under Paragraph

9
4(c), counsel for the Party seeking to make the disclosure shall: (i) deliver a copy of this Protective

10
Order as entered to such person, explain its terms to such person, and secure the signature of such

11
person on a written undertaking in the form attached hereto as Exhibit A, and (ii) transmit by facsimile

12
and mail to counsel for the other Parties a copy of the signed Exhibit A, accompanied by a curriculum

13
vitae, at least ten (10) calendar days before any "Confidential Information" designated under this

14
Protective Order is to be disclosed to the signator. The curriculum vitae should identify the general

15
area(s) of expertise of the expert, provide a brief job history, specify all employment, expert or

16
consulting engagements by the expert within the past five (5) years, and state all present or prior

17
relationships between the expert and any entity directly or indirectly involved in this litigation or

18
providing an indemnity to any such entity, its subsidiaries or its affiliates. Any Party may object to the

19
proposed disclosure to an expert within the ten (10) calendar day period following the transmittal of

20
Exhibit A and the curriculum vitae, by stating specifically in writing the reasons why the Party believes

21
such expert should not receive designated "Confidential Information." If during that ten (10) calendar

22
day period a Party makes such a written objection, there shall be no disclosure of "Confidential

23
Information" to the expert absent mutual agreement of the Parties, waiver of the objection as stated

24
below, or further order of the Court. After a Party objects to the proposed disclosure to an expert, the

25
objecting Party shall move, by noticed motion or by ex parte application, for an order that disclosure not

26
be made to such expert within five (5) business days following the date that the objection is made, or the

27
Party's objection shall be deemed waived and disclosure may be made to the expert. The burden shall

28

[PROPOSED] STIPULATED PROTECTIVE ORDER
CASE NO. C03-2289 MJJ (EMC)

be on the objecting Party to establish why the disclosure should not be made.  Each Party shall maintain a file of all such signed copies of Exhibit A.  However, it shall not be necessary for administrative, secretarial or clerical personnel working for such Qualified Person to sign a written undertaking.

6.  (a) Documents produced in this action may be designated by any party or parties as "Confidential" by marking each page of the document(s) with the designation "Confidential."

(b) In lieu of marking the original of a document, if the original is not produced, the designating party may mark the copies that are produced or exchanged.  Originals shall be preserved for inspection.

(c) If the document is not in paper form, the producing person or entity shall use other such reasonable means as necessary to identify clearly the document or information as "Confidential."

7.  Discovery responses or other litigation materials may be designated by any party or parties as "Confidential" by marking each page of the response with the designation "Confidential."

8.  The designation of information disclosed during a deposition as "Confidential" shall be made either by a statement on the record at the deposition or within twenty (20) calendar days after receipt by counsel of a copy of the deposition transcript.  Such designation will be applied to only those portions of the deposition transcript that include a specific question and response or series of questions and responses containing "Confidential Information."  The deposition transcript shall be printed in consecutive pages (whether or not some pages are designated as "Confidential") with a marking on the cover of the deposition transcript indicating the "Confidential" designation contained therein.  Unless previously designated otherwise, all deposition transcripts shall be treated as "Confidential" in their entirety prior to the end of the twenty (20) calendar day period following receipt by counsel of a copy of the deposition transcript.

9.  "Confidential Information" shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except that nothing herein is intended to prevent individuals who are in-house counsel or a member of the professional legal department of the Parties

4

1

2

from having access to pleadings, briefs and exhibits or declarations filed with the Court and expert

3

reports, including exhibits that are designated as "Confidential."

4

5      10. (a) Documents to be inspected shall be treated as "Confidential" although such

documents need not be marked as "Confidential" prior to inspection.  At the time of copying for the

receiving parties, any documents containing "Confidential Information" shall be stamped prominently

"Confidential" by the producing party.

8

9      (b) Nothing herein shall prevent disclosure beyond the terms of this Order if each party

10

designating the information as "Confidential" consents to such disclosure or if the Court, after notice to

11

all effected parties, orders such disclosures.  Nothing herein shall prevent any counsel of record from

12

utilizing "Confidential Information" in the examination or cross- examination of any person who is

13

indicated on the document as being an author, source or recipient of the "Confidential Information,"

14

irrespective of which party produced such information.  Nothing herein shall prevent any counsel of

15

record from utilizing "Confidential Information" in the examination or cross-examination of any person

16

who is a current or former officer, director or employee of the party so designating the information as

17

"Confidential" or of the party that produced the information or of a related entity.

18

19      11. If a party inadvertently discloses any document or thing containing information that it

deems confidential without designating it as "Confidential," the disclosing party shall promptly upon

21

discovery of such inadvertent disclosure inform the receiving party in writing, and the receiving party

and all Qualified Persons possessing such information shall thereafter treat the information as

23

"Confidential" under this Order.  To the extent such information may have been disclosed to persons

24

other than Qualified Persons described in this document, the receiving party shall make every

25

reasonable effort to retrieve the information promptly from such persons and to avoid any further

26

disclosure to and by such persons.

27

28      12. A party shall not be obligated to challenge the propriety of a designation as

"Confidential" at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.

5

1

2
Nor will the failure to object be construed as an admission that any particular "Confidential

3
Information" contains or reflects currently valuable trade secrets or confidential commercial

4
information. In the event that any party to this litigation disagrees at any stage of these proceedings

5
with the designation by the designating party of any information as "Confidential," or the designation of

6
any person as a Qualified Person, the parties shall first try to resolve such dispute in good faith on an

7
informal basis, such as production of redacted copies. If the parties are unsuccessful in informally

8
resolving any disputes regarding the designation of any document or information as "Confidential," the

9
Court shall resolve all such disputes. It shall be the burden of the party making any designation to

10
establish that the information so designated is "Confidential" within the meaning of this Protective

11
Order. The "Confidential Information" that is the subject of the dispute shall be treated as originally

12
designated pending resolution of the dispute.

13

14
       13. The parties may, by written stipulation filed and approved by the Court, amend this

15
Order, and any party may seek an order of this Court modifying this Protective Order. The parties agree

16
to meet and confer prior to seeking to modify this Protective Order. In addition, the Court may modify

17
this Protective Order in the interest of justice or otherwise at the Court's discretion.

18
       14. In the event a party wishes to use any "Confidential Information" in any affidavits,

19
briefs, memoranda of law, or other papers filed with the Court in this litigation, such "Confidential

20
Information" used therein shall be filed under seal with the Court. In addition to placing documents in a

21
sealed envelope with instructions that the document is filed pursuant to the Stipulated Protective Order

22
and that the envelope is not to be opened absent further order of the Court, the envelope should be

23
labeled to identify the title of the case, the case number, and the title of the document.

24
       15. The Clerk of this Court is directed to maintain under seal all documents and transcripts of

25
deposition testimony and answers to interrogatories, admissions and other pleadings filed under seal

26
with the Court in this litigation that have been designated, in whole or in part, as "Confidential" by a

27
party to this action.

28

6

[PROPOSED] STIPULATED PROTECTIVE ORDER
CASE NO. C03-2289 MJJ (EMC)

16. If a Party intends to offer into evidence or otherwise disclose in open court any "Confidential Information" designated by another person or entity, counsel for such Party shall notify the designating person or entity that the Party intends to disclose "Confidential Information" in open court prior to the disclosure, so that the designating person or entity may confer with the Court concerning appropriate procedures for protecting its "Confidential Information."

17. In the event any person or party that has possession, custody, or control of any information designated as "Confidential" pursuant to the terms of this Protective Order receives a subpoena or other process or order to produce such information, such person or party shall notify by mail within five (5) business days of the Party's receipt of the request, the counsel for the party or persons claiming confidential treatment of the documents sought by such subpoenas or other process or order, shall furnish such counsel with a copy of said subpoena or other process or order, and shall cooperate with respect to any procedure sought to be pursued by the party whose interests may be affected. The party asserting the "Confidential" treatment shall have the burden of defending against such subpoena, process or order.  The person or party receiving the subpoena or process or order shall be entitled to comply with it except: (a) to the extent the party asserting the "Confidential" treatment is successful in obtaining an order modifying or quashing it; and (b) in complying with the process or order shall, at a minimum, seek to obtain "Confidential" treatment of the "Confidential Information" before producing it in the other proceeding or action.

18. If the discovery process calls for the production of information that a Party or Non-Party does not wish to produce because the Party or Non-Party believes its disclosure would breach an agreement with another person or entity to maintain such information in confidence, the disclosing Party or Non-Party promptly shall give written notice to the other person or entity that its information is subject to discovery in this litigation, and shall provide such person or entity with a copy of this Protective Order. When such written notice is given to the person or entity, the disclosing Party or Non-Party will advise the potential receiving Party that such notice has been given.  The person or entity

7

whose information may be subject to discovery shall have ten (10) business days from receipt of the

written notice in which to seek relief from the Court, if the person or entity so desires. If the ten (10)

business days elapse without the person or entity seeking relief from the Court, the requested

information shall be produced in accordance with the terms of this Protective Order.

19. In the event that additional persons or entities become Parties, none of such Parties'

counsel, experts or consultants retained to assist said counsel, shall have access to "Confidential

Information" produced by or obtained from any other producing person or entity until said Party has

executed and filed with the Court its agreement to be fully bound by this Protective Order.

20. This Protective Order shall apply to the parties and any non-party from whom discovery

may be sought and who desires protection for the discovery sought. Thus, any non- party requested or

required to produce or disclose information in this proceeding, through subpoena or otherwise, may

designate such information pursuant to the terms of this Protective Order.

21. (a) Nothing herein requires disclosure of information, documents or things which the

disclosing entity contends is protected from disclosure by the attorney-client privilege or the work-

product exception. Nothing herein shall preclude any party from moving this Court for an order

directing the disclosure of such information, documents or things.

(b) In the event that any privileged attorney-client or work product documents or things

are inadvertently produced for inspection and/or provided, the disclosing party shall identify such

documents or things within five (5) days of when it discovers that the privileged materials were

inadvertently produced for inspection and/or provided, and either (1) copies shall not be provided, or (2)

if copies have already been provided, all copies in the receiving party's possession shall be promptly

returned (and not relied upon) by the receiving party. Nothing in this paragraph shall prevent the

receiving party from contending that the identified materials are not privileged, that the material was not

inadvertently produced, or that privilege was waived for reasons other than mere inadvertent production

of the material.

8

1

2

3    22. Within ninety (90) days after conclusion of this litigation and any and all appeals thereof,

4    any document and all reproductions of "Confidential" documents produced by a party that are in the

5    possession of any Qualified Person shall be returned to the producing party or, with the consent of the

6    producing party, destroyed.  If destroyed, counsel for the receiving party shall certify to counsel for the

7    producing party compliance with this paragraph within fourteen (14) calendar days of such destruction.

8    Outside counsel for each party may maintain in its files one copy of all material produced as well as all

9    materials filed with or otherwise presented to the Court, deposition and trial transcripts, and work

10   product (regardless of whether such materials contain or refer to "Confidential" materials).  If counsel

11   retains such materials, the materials which contain Confidential Information shall be accessible only by

12   Qualified Persons defined in paragraph 4(b) above.  As far as the provisions of any protective orders

13   entered in this action restrict the communication and use of the documents produced thereunder, such

14   orders shall continue to be binding after the conclusion of this litigation including any subsequent

15   appeals or later proceedings, except that (a) there shall be no restriction on documents that are used as

16   exhibits in Court unless such exhibits were filed under seal, and (b) a party may seek the written

17   permission of the producing party or order of the Court with respect to dissolution or modification of

18   such protective orders. The Court shall retain jurisdiction to enforce the performance of said obligations.

19

20

21   23.    (a)    At the election of the Producing Party, a Receiving Party's access to a Producing

22   Party's discoverable source code may be limited to inspection of the code at a secured facility provided

23   by the Producing Party. Such inspection may be conducted only by persons identified in advance by the

24   Receiving Party on a list of "Qualified Inspecting Personnel" which may include:

25           (1)    the Receiving Party's Outside Counsel of record in this action; and

26           (2)    up to three Experts (as defined in this Order) of the Receiving Party to

27   whom disclosure is reasonably necessary for this litigation and who have signed the

28   "Agreement to Be Bound by Protective Order (Exhibit A) and who have been approved
     pursuant to the "Procedures for Approving Disclosure of 'CONFIDENTIAL' information

9

of Items to 'Experts'" as set forth in paragraph 5.

(b)    The following provisions relate to Synopsys' provision of access to the Source Code for versions of its commercial products:

(1)    Synopsys will make available a closed room at its facility in Bethesda, Maryland for use by Ricoh's Qualified Inspecting Personnel. The room will be set aside for the exclusive use of Ricoh's Qualified Inspecting Personnel and will not be used by Synopsys or any other party when Ricoh's Qualified Inspecting Personnel are not present. The room will be available for a minimum of twelve weeks. After twelve weeks, and after consultation with Ricoh, Synopsys may close the facility pursuant to the procedures described in paragraph 4 below. If the facility is closed, Synopsys agrees to make the source code available for inspection under similar procedures at another date prior to the close of expert discovery.

(2)    Synopsys will equip the closed room with a private phone if a phone jack is already available in the room, a stand-alone, non-networked, computer and high-speed printer. The computer will be loaded with copies of the source code to be produced and utilities required to review the code. The source code shall include the code which is used by Synopsys and no notes, comments, or any segments shall be removed before being made available. The computer will be equipped with the text editors available in a standard Unix distribution, suitable for use in editing the source code. Synopsys will assist Ricoh in loading software that Ricoh may require for analysis of the source code. The computer shall also be loaded with a complete distribution of the Synopsys software that is fully operable and executable.

(3)    Ricoh may print copies of a reasonable subset of the source code for the Synopsys products at issue. Any printing done at the secure facility will be done exclusively on paper supplied by Synopsys. Synopsys may elect to place preprinted confidential designations on the margins of the paper. Ricoh's Qualified Inspecting Personnel are not to bring blank paper into the closed room except for the purpose of making handwritten notes. Synopsys will initially supply Ricoh with 5,000 pages of paper for use with the printer. This figure is based on the estimate that 5,000 pages should be sufficient to print approximately 5% of the source code for Design Compiler. If at any time, Ricoh believes that additional printing and paper is required, Ricoh may submit additional requests for paper to Synopsys with a general statement of the basis of the request. Synopsys will respond within one week to any such request. If the parties

10

are unable to come to agreement after conferral, the matter may be presented to the Court. In evaluating requests for paper, the relevant standard to be applied is that Ricoh should be allowed to print hardcopies of a reasonable subset of the Synopsys source code and that what is reasonable shall be evaluated in light of relevance of the code to Ricoh's allegations and Synopsys' interest in preventing release in hardcopy of more than a fraction of its source code.

        (4)    Ricoh will be permitted to send individuals from the list of Qualified Inspecting Personnel to participate in and/or witness the closing of the secured facility. Before closing of the facility, Ricoh's representatives may provide a list of procedures that they wish to perform to ensure that any electronic record of their use of the machine has been erased.

        (c)    The Receiving Party will provide the Producing Party with a copy of its list of "Qualified Inspecting Personnel" no later than 5 business days before any person on the list attempts to access the secured facility. The Receiving Party may revise the list to add or remove individuals, provided that no more than a total of three Experts are ever provided with access to the source code during the entire course of the litigation absent an agreement by the parties or a Court Order to expand this number.

        (d)    Any notes taken or any other information created by Outside Counsel or the experts of the Receiving Party at or based on any inspection of the source code shall be treated as "CONFIDENTIAL" under this Protective Order.

24. This Order shall not bar any attorney herein in the course of rendering advice to his client with respect to this litigation from conveying to any party client his evaluation in a general way of "Confidential Information" produced or exchanged herein; provided, however, that in rendering such advice and otherwise communicating with his client, the attorney shall not disclose the specific contents of any "Confidential Information" produced by another party herein, which disclosure would be contrary to the terms of this Protective Order.

25. The Court shall retain jurisdiction to enforce the terms of this order for six (6) months after the final termination of this action.

Dated: March 23, 2004

HOWREY SIMON ARNOLD & WHITE, LLP

/s/ Christopher L. Kelley
Teresa M. Corbin, Esq.

EXHIBIT 3



1  Teresa M. Corbin (SBN 132360)
   Denise M. De Mory (SBN 168076)
2  Ethan B. Andelman (SBN 209101)
   Jaclyn C. Fink (SBN 217913)
3  HOWREY LLP
   525 Market Street, Suite 3600
4  San Francisco, California 94105
   Telephone: (415) 848-4900
5  Facsimile: (415) 848-4999

6  Attorneys for Plaintiff SYNOPSYS, INC.
   and for Defendants AEROFLEX INCORPORATED,
7  AMI SEMICONDUCTOR, INC., MATROX
   ELECTRONIC SYSTEMS, LTD., MATROX
8  GRAPHICS, INC., MATROX INTERNATIONAL
   CORP., MATROX TECH, INC., and
9  AEROFLEX COLORADO SPRINGS, INC.

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13 RICOH COMPANY, LTD.,                    Case No. C03-04669 MJJ (EMC)

14              Plaintiff,                 Case No. C03-02289 MJJ (EMC)

15        vs.                             **NOTICE OF SUBPOENA TO THE**
                                          **MASSACHUSETTS INSTITUTE OF**
16 AEROFLEX INCORPORATED, AMI             **TECHNOLOGY**
   SEMICONDUCTOR, INC., MATROX
17 ELECTRONIC SYSTEMS LTD., MATROX
   GRAPHICS INC., MATROX INTERNATIONAL
18 CORP., MATROX TECH, INC., AND
   AEROFLEX COLORADO SPRINGS, INC.

19              Defendants.

20 SYNOPSYS, INC.,

21              Plaintiff,

22        vs.

23 RICOH COMPANY, LTD.,

24              Defendant.

25

26

27

28

1     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         YOU ARE HEREBY NOTIFIED that pursuant to Federal Rule of Civil Procedure 45, Plaintiff

3     Synopsys, Inc. has served Massachusetts Institute of Technology c/o Jamie Lewis Keith, Senior Counsel,

4     the attached subpoena for production of documents.

5         The Massachusetts Institute of Technology is required to produce documents in its custody,

6     possession or control specified in Attachment A to the subpoena by 10:00 a.m. EST on Friday, August 18,

7     2006 at WarRoom Document Solutions, 274 Summer Street, 2nd Floor, Boston, Massachusetts 02210,

8     Telephone:  (617) 426-6463.

9     Dated:  August 14, 2006                          HOWREY LLP

10

11                                                     By:  _____

12                                                          Matthew F. Greinert
                                                          Attorneys for Plaintiff SYNOPSYS
13                                                        Defendants AEROFLEX
                                                          INCORPORATED, AMI
14                                                        SEMICONDUCTOR, INC., MATROX
                                                          ELECTRONIC SYSTEMS, LTD.,
15                                                        MATROX GRAPHICS, INC., MATROX
                                                          INTERNATIONAL CORP., MATROX
16                                                        TECH, INC., and  AEROFLEX
                                                          COLORADO SPRINGS, INC.

17

18

19

20

21

22

23

24

25

26

27

28

**HOWREY LLP**

Case Nos. C03-2289MJJ (EMC)/C03.4469 MJJ (EMC)
NOTICE OF SUBPOENA TO THE MASSACHUSETTS                    DM_US\8376615.v1
INSTITUTE OF TECHNOLOGY

1

## PROOF OF SERVICE

2   STATE OF CALIFORNIA          )
                                 )   ss.:
3   COUNTY OF SAN FRANCISCO      )

4

5          I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 525 Market Street, Suite 3600, San Francisco, California 94105.

6          On August 14, 2006 I served on the interested parties in said action the within:

7   **NOTICE OF SUBPOENA TO THE MASSACHUSETTS INSTITUTE OF TECHNOLOGY**

8

9   by causing said document to be sent by Electronic Mail on August 14, 2006 to the email addresses indicated for the parties listed below and by placing a true copy thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be delivered as follows:

10

11  Gary M. Hoffman, Esq.                        Jeffrey Demain, Esq.
    HoffmanG@dsmo.com                            jdemain@altshulerberzon.com
    Dickstein Shapiro Morin & Oshinsky, LLP      Altshuler, Berzon, Nussbaum, Rubin & Demain
12  2101 L Street, N.W.                          177 Post Street, Suite 300
    Washington, DC 20037-1526                    San Francisco, CA 94108

13  Facsimile No.: (202) 887-0689                Facsimile No.: (415) 362-8064

14  Edward A. Meilman, Esq.
    MeilmanE@dsmo.com
15  Dickstein Shapiro Morin & Oshinsky, LLP
    1177 Avenue of the Americas
16  New York, NY 10036-2714

17  Facsimile No.:  (212) 896-5471

18  [X]     (OVERNIGHT DELIVERY) on August 14, 2006 by depositing in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivering to a courier or driver
19          authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as
20          stated above, with fees for overnight delivery paid or provided for and causing such envelope(s) to be delivered by said express service carrier on.

21          I declare under penalty of perjury that I am employed in the office of a member of the bar of this
22  Court at whose direction the service was made and that the foregoing is true and correct.

23          Executed on August 14, 2006, at San Francisco, California.

24
    _____            _____
25          James M. James                                  (Signature)
            (Type or print name)

26

27

28

HOWREY LLP

Case Nos. C03-2289MJJ (EMC)/C03.4469 MJJ (EMC)          -2-
NOTICE OF SUBPOENA TO THE MASSACHUSETTS                                        DM_US\8376615.v1
INSTITUTE OF TECHNOLOGY

Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF  MASSACHUSETTS

RICOH COMPANY, LTD

V.

AEROFLEX, INCORPORATED, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] C03-04669 MJJ (EMC)
(Pending in the US District Court for
the Northern District of California)

TO: JAMIE LEWIS KEITH, Esq., Senior Counsel on behalf of
Massachusetts Institute of Technology
Office of the Senior Counsel, Room 7-206 & Room 12-090
77 Massachusetts Avenue, Cambridge, Massachusetts 02139

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

SEE ATTACHMENT A

| PLACE   WarRoom Document Solutions, attn: Errol Chin 274 Summer Street, 2nd Floor, Boston, Massachusetts 02210, (617) 426-6463 | DATE AND TIME August 18, 2006, 10:00 a.m. EST |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Defendant | DATE August 14, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Matthew F. Greinert, HOWREY LLP, 525 Market Street, Suite 3600, San Francisco, CA 94105; Telephone:  (415) 848-4900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| SERVED: | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------|-------|

| SERVED BY (PRINT NAME) | TITLE |
|------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

# ATTACHMENT A

Pursuant to Federal Rule of Civil Procedure 45 and as directed in the subpoena attached hereto, you are to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control. A Protective Order has been entered in this case by the United States District Court for the Northern District of California and is attached as Attachment B. Included in the Protective Order are provisions for the protection of confidential information produced by a third party. With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

## DEFINITIONS

1.     The terms "you," and "your," mean, without limitation, Massachusetts Institute of Technology, including without limitation all of its subsidiaries, parents, departments and affiliates, and all past or present directors, officers, agents, representatives, employees, students, consultants, attorneys, entities acting in joint-venture or partnership relationships with Massachusetts Institute of Technology and others acting on behalf of Massachusetts Institute of Technology.

2.     As used herein, the word "document" means the original and each nonidentical copy of any written, printed, typed, recorded, computerized, electronic, taped, graphic, or other matter, in whatever form, whether in final or draft, including but not limited to all materials that constitute "writings," "recordings," "photographs," "source code" or "executable code" within the broadest meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the broadest meaning of Rule 34 of the Federal Rules of Civil Procedure. The word "document" includes, without limitation, printed matter, electronic mail, materials stored on computer hard drives, diskettes, tapes, any other computer media, and any other information stored magnetically, optically or in any electronic medium and/or form.

3.      As used herein, "person" means any individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

4.      As used herein, "communication" includes, without limitation, communications by whatever means transmitted (i.e., whether oral, written, electronic or other methods used), as well as any note, memorandum or other record thereof.

5.      The terms "regarding, referring or relating to" and "concerning" mean reflecting, concerning, containing, pertaining, referring, relating to, indicating, showing, describing, evidencing, discussing, mentioning, embodying or computing.

6.      Whenever the singular is used, it shall also be taken to include the plural, and vice versa. Whenever the conjunctive is used, it shall also be taken to include the disjunctive, and vice versa.

## INSTRUCTIONS

The following instructions apply to each of the requests for documents set forth herein:

1.      Please produce entire documents, including, but not limited to, attachments, enclosures, cover letters, memoranda, and appendices.

2.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests for documents shall be deemed continuous up to and following the trial of this proceeding such that any documents or things requested herein which is either discovered by you or comes within your possession, custody or control subsequent to your initial responses hereto but prior to the final conclusion of this case should be produced in a supplemental response to these Document Requests immediately upon its discovery or receipt by you or your counsel.

3.      If any document is withheld under a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, please provide a privilege log identifying each document withheld, including

      a.      The type of document;

      b.      The approximate date, and manner of recording, creating or otherwise preparing the document;

      c.      The subject matter of the document;

d.    The name and organizational position of the person(s) who produced the document,

e.    The name and organizational position of the person(s) who received a copy of the document, or to whom the document was disclosed; and

f.    The claimed grounds on which the document is being withheld and facts sufficient to show the basis for each claim of privilege.

4.    If you object to any part of a request for documents and refuse to produce documents responsive to that part, state your objection and respond to the remaining portion of that request.  If you object to the scope or time period of a request for documents, state your objection and respond to the request for documents for the scope or time period you believe is appropriate.

5.    Please produce all documents in the order in which they are kept in the ordinary course of business, and in their original file folders, binders, covers or containers, or facsimile thereof.

6.    Any document bearing any changes, including, but not limited to, markings, handwritten notation, or other differences, that are not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of responding to the following document requests.  English translations of partial translations of foreign language documents should also be considered separate documents.

7.    If a requested document is in a language other than English, please produce both the original and any existing English translation thereof.

8.    If any of the following requests for documents cannot be responded to in full after exercising due diligence to secure the requested documents, please so state and respond to the extent possible, specifying your inability to respond to the remainder and stating whatever information you have regarding, referring or relating to the unanswered portions.  If your response is qualified in any particular manner, set forth the details of such qualification.

9.      Please produce hard copies of electronic records or produce computerized information in an intelligible format with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

## DOCUMENT REQUESTS

**Request No.1:**

All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of a course titled "Parallel Algorithms and Architectures" in the Electrical Engineering and Computer Science Department at Massachusetts Institute of Technology, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for the course.

**Request No. 2:**

All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of a course titled "Advanced Algorithms" in the Electrical Engineering and Computer Science Department at Massachusetts Institute of Technology, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for the course.

**Request No. 3:**

All documents regarding, referring or relating to Dr. Marios Papaefthymiou's teaching of any course within the Electrical Engineering and Computer Science Department, or any other Department, at Massachusetts Institute of Technology, including but not limited to, course syllabi, handouts, outlines, digests, lecture notes, presentations, computer code, and demonstrative software and hardware created for any such course.

**Request No. 4:**

All documents regarding, referring or relating to theses authored by Dr. Marios Papefthymiou, including but not limited to, MIT Laboratory for Computer Science Technical Reports TR-605 and TR-486, and any other technical bulletins or reports authored by Dr. Papaefthymious while he was a student at Massachusetts Institute of Technology.

ATTACHMENT B

1
2
3
4
5
6
7
8    UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA

10    SAN FRANCISCO DIVISION

11

12

| | |
|---|---|
| SYNOPSYS, INC., | ) CASE NO. C03-02289-MJJ (EMC) |
| Plaintiff, | ) |
| | ) STIPULATED PROTECTIVE ORDER |
| vs. | ) |
| | ) |
| RICOH COMPANY, LTD., | ) |
| | ) |
| Defendant. | ) |

13
14
15
16
17
18
19    1.    All Confidential Information produced or exchanged in the course of this litigation shall

20    be used solely for the purpose of preparation and trial of this litigation and for no other purpose

21    whatsoever, and shall not be disclosed to any person except in accordance with the terms hereof.

22    2.    "Confidential Information," as used herein, means any information of any type, kind or

23    character that is designated as "Confidential" by any of the supplying or receiving parties, whether it be

24    a document, information contained in a document, information revealed during a deposition,

25    information revealed in an interrogatory answer or otherwise. In designating information as

26    "Confidential," a party will make such designation only as to that information that it in good faith

27    believes contains "Confidential Information."

28    3.    (a) "Confidential Information" includes, but is not limited to, (i) proprietary technical

1

1

2

information and specifications, (ii) trade secrets (iii) confidential know-how, and (iv) proprietary

3

business and financial information and any other non-public information, the disclosure of which is

4

likely to have the effect of causing significant competitive harm to the disclosing party or party from

5

which the information was obtained.  Nothing in this paragraph shall be construed to limit the

6

description of "Confidential Information" set forth in paragraph 2.

8    (b) Nothing shall be regarded as "Confidential Information" if it is information that:

9    (i) is in the public domain at the time of disclosure, as evidenced by a written document;

10    (ii) becomes part of the public domain through no fault of the other party, as evidenced

11

by a written document;

12    (iii) was in the receiving party's rightful and lawful possession at the time of disclosure,

13

as evidenced by a written document; or

14    (iv) is lawfully received by the receiving party from a third party at a later date without

15

restriction as to disclosure, provided such third party has the right to make the disclosure to the

16

receiving party.

17

18    4.  "Qualified Persons," as used herein means:

19    (a) To the Court and its officers and staff, including court reporters;

20    (b) Outside attorneys of record for the parties in this litigation and employees of such

21

attorneys to whom it is necessary that the material be shown for purposes of this litigation;

22    (c) Outside experts, consultants, advisors or investigators (collectively referred to

23

hereafter as "experts") who have signed an undertaking pursuant to paragraph 5 but only after

24

compliance with the provisions of paragraph 5 below;

25    (d) To non-party support services including, but not limited to, court reporters, outside

26

copy services, document imaging and database services, design services who have signed confidentiality

27

agreements, jury consultants who have signed confidentiality agreements, mock jurors who have signed

28

confidentiality agreements, and language translators who have signed confidentiality agreements

2

(including support staff) as may be reasonably necessary in connection with the preparation or conduct of this action;

(e) Anyone to whom the parties consent in writing; and

(f) If this Court so elects, any other person may be designated as a Qualified Person by order of this Court, after notice and opportunity to be heard to all parties.

5.    Prior to the disclosure of any "Confidential Information" to any expert under Paragraph 4(c), counsel for the Party seeking to make the disclosure shall: (i) deliver a copy of this Protective Order as entered to such person, explain its terms to such person, and secure the signature of such person on a written undertaking in the form attached hereto as Exhibit A, and (ii) transmit by facsimile and mail to counsel for the other Parties a copy of the signed Exhibit A, accompanied by a curriculum vitae, at least ten (10) calendar days before any "Confidential Information" designated under this Protective Order is to be disclosed to the signator. The curriculum vitae should identify the general area(s) of expertise of the expert, provide a brief job history, specify all employment, expert or consulting engagements by the expert within the past five (5) years, and state all present or prior relationships between the expert and any entity directly or indirectly involved in this litigation or providing an indemnity to any such entity, its subsidiaries or its affiliates.  Any Party may object to the proposed disclosure to an expert within the ten (10) calendar day period following the transmittal of Exhibit A and the curriculum vitae, by stating specifically in writing the reasons why the Party believes such expert should not receive designated "Confidential Information."  If during that ten (10) calendar day period a Party makes such a written objection, there shall be no disclosure of "Confidential Information" to the expert absent mutual agreement of the Parties, waiver of the objection as stated below, or further order of the Court.  After a Party objects to the proposed disclosure to an expert, the objecting Party shall move, by noticed motion or by ex parte application, for an order that disclosure not be made to such expert within five (5) business days following the date that the objection is made, or the Party's objection shall be deemed waived and disclosure may be made to the expert.  The burden shall

3

be on the objecting Party to establish why the disclosure should not be made. Each Party shall maintain a file of all such signed copies of Exhibit A. However, it shall not be necessary for administrative, secretarial or clerical personnel working for such Qualified Person to sign a written undertaking.

6. (a) Documents produced in this action may be designated by any party or parties as "Confidential" by marking each page of the document(s) with the designation "Confidential."

(b) In lieu of marking the original of a document, if the original is not produced, the designating party may mark the copies that are produced or exchanged. Originals shall be preserved for inspection.

(c) If the document is not in paper form, the producing person or entity shall use other such reasonable means as necessary to identify clearly the document or information as "Confidential."

7. Discovery responses or other litigation materials may be designated by any party or parties as "Confidential" by marking each page of the response with the designation "Confidential."

8. The designation of information disclosed during a deposition as "Confidential" shall be made either by a statement on the record at the deposition or within twenty (20) calendar days after receipt by counsel of a copy of the deposition transcript. Such designation will be applied to only those portions of the deposition transcript that include a specific question and response or series of questions and responses containing "Confidential Information." The deposition transcript shall be printed in consecutive pages (whether or not some pages are designated as "Confidential") with a marking on the cover of the deposition transcript indicating the "Confidential" designation contained therein. Unless previously designated otherwise, all deposition transcripts shall be treated as "Confidential" in their entirety prior to the end of the twenty (20) calendar day period following receipt by counsel of a copy of the deposition transcript.

9. "Confidential Information" shall not be disclosed or made available by the receiving party to persons other than Qualified Persons except that nothing herein is intended to prevent individuals who are in-house counsel or a member of the professional legal department of the Parties

4

1

2

from having access to pleadings, briefs and exhibits or declarations filed with the Court and expert

3

reports, including exhibits that are designated as "Confidential."

4

5      10. (a) Documents to be inspected shall be treated as "Confidential" although such

documents need not be marked as "Confidential" prior to inspection.  At the time of copying for the

6

receiving parties, any documents containing "Confidential Information" shall be stamped prominently

7

"Confidential" by the producing party.

8

9      (b) Nothing herein shall prevent disclosure beyond the terms of this Order if each party

designating the information as "Confidential" consents to such disclosure or if the Court, after notice to

10

all effected parties, orders such disclosures.  Nothing herein shall prevent any counsel of record from

11

utilizing "Confidential Information" in the examination or cross- examination of any person who is

12

indicated on the document as being an author, source or recipient of the "Confidential Information,"

13

irrespective of which party produced such information.  Nothing herein shall prevent any counsel of

14

record from utilizing "Confidential Information" in the examination or cross-examination of any person

15

who is a current or former officer, director or employee of the party so designating the information as

16

"Confidential" or of the party that produced the information or of a related entity.

17

18

19      11. If a party inadvertently discloses any document or thing containing information that it

deems confidential without designating it as "Confidential," the disclosing party shall promptly upon

20

discovery of such inadvertent disclosure inform the receiving party in writing, and the receiving party

21

and all Qualified Persons possessing such information shall thereafter treat the information as

22

"Confidential" under this Order.  To the extent such information may have been disclosed to persons

23

other than Qualified Persons described in this document, the receiving party shall make every

24

reasonable effort to retrieve the information promptly from such persons and to avoid any further

25

disclosure to and by such persons.

26

27      12. A party shall not be obligated to challenge the propriety of a designation as

28

"Confidential" at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.

5

1

2

Nor will the failure to object be construed as an admission that any particular "Confidential

3

Information" contains or reflects currently valuable trade secrets or confidential commercial

4

information. In the event that any party to this litigation disagrees at any stage of these proceedings

5

with the designation by the designating party of any information as "Confidential," or the designation of

6

any person as a Qualified Person, the parties shall first try to resolve such dispute in good faith on an

7

informal basis, such as production of redacted copies. If the parties are unsuccessful in informally

8

resolving any disputes regarding the designation of any document or information as "Confidential," the

9

Court shall resolve all such disputes. It shall be the burden of the party making any designation to

10

establish that the information so designated is "Confidential" within the meaning of this Protective

11

Order. The "Confidential Information" that is the subject of the dispute shall be treated as originally

12

designated pending resolution of the dispute.

13

14

    13. The parties may, by written stipulation filed and approved by the Court, amend this

15

Order, and any party may seek an order of this Court modifying this Protective Order. The parties agree

16

to meet and confer prior to seeking to modify this Protective Order. In addition, the Court may modify

17

this Protective Order in the interest of justice or otherwise at the Court's discretion.

18

19

    14. In the event a party wishes to use any "Confidential Information" in any affidavits,

20

briefs, memoranda of law, or other papers filed with the Court in this litigation, such "Confidential

21

Information" used therein shall be filed under seal with the Court. In addition to placing documents in a

22

sealed envelope with instructions that the document is filed pursuant to the Stipulated Protective Order

23

and that the envelope is not to be opened absent further order of the Court, the envelope should be

24

labeled to identify the title of the case, the case number, and the title of the document.

25

    15. The Clerk of this Court is directed to maintain under seal all documents and transcripts of

26

deposition testimony and answers to interrogatories, admissions and other pleadings filed under seal

27

with the Court in this litigation that have been designated, in whole or in part, as "Confidential" by a

28

party to this action.

6

16. If a Party intends to offer into evidence or otherwise disclose in open court any "Confidential Information" designated by another person or entity, counsel for such Party shall notify the designating person or entity that the Party intends to disclose "Confidential Information" in open court prior to the disclosure, so that the designating person or entity may confer with the Court concerning appropriate procedures for protecting its "Confidential Information."

17. In the event any person or party that has possession, custody, or control of any information designated as "Confidential" pursuant to the terms of this Protective Order receives a subpoena or other process or order to produce such information, such person or party shall notify by mail within five (5) business days of the Party's receipt of the request, the counsel for the party or persons claiming confidential treatment of the documents sought by such subpoenas or other process or order, shall furnish such counsel with a copy of said subpoena or other process or order, and shall cooperate with respect to any procedure sought to be pursued by the party whose interests may be affected. The party asserting the "Confidential" treatment shall have the burden of defending against such subpoena, process or order. The person or party receiving the subpoena or process or order shall be entitled to comply with it except: (a) to the extent the party asserting the "Confidential" treatment is successful in obtaining an order modifying or quashing it; and (b) in complying with the process or order shall, at a minimum, seek to obtain "Confidential" treatment of the "Confidential Information" before producing it in the other proceeding or action.

18. If the discovery process calls for the production of information that a Party or Non-Party does not wish to produce because the Party or Non-Party believes its disclosure would breach an agreement with another person or entity to maintain such information in confidence, the disclosing Party or Non-Party promptly shall give written notice to the other person or entity that its information is subject to discovery in this litigation, and shall provide such person or entity with a copy of this Protective Order. When such written notice is given to the person or entity, the disclosing Party or Non-Party will advise the potential receiving Party that such notice has been given.  The person or entity

7

1

2

whose information may be subject to discovery shall have ten (10) business days from receipt of the

3

written notice in which to seek relief from the Court, if the person or entity so desires. If the ten (10)

4

business days elapse without the person or entity seeking relief from the Court, the requested

5

information shall be produced in accordance with the terms of this Protective Order.

7      19. In the event that additional persons or entities become Parties, none of such Parties'

8

counsel, experts or consultants retained to assist said counsel, shall have access to "Confidential

9

Information" produced by or obtained from any other producing person or entity until said Party has

10

executed and filed with the Court its agreement to be fully bound by this Protective Order.

11      20. This Protective Order shall apply to the parties and any non-party from whom discovery

12

may be sought and who desires protection for the discovery sought. Thus, any non- party requested or

13

required to produce or disclose information in this proceeding, through subpoena or otherwise, may

14

designate such information pursuant to the terms of this Protective Order.

15      21. (a) Nothing herein requires disclosure of information, documents or things which the

16

disclosing entity contends is protected from disclosure by the attorney-client privilege or the work-

17

product exception. Nothing herein shall preclude any party from moving this Court for an order

18

directing the disclosure of such information, documents or things.

19

20      (b) In the event that any privileged attorney-client or work product documents or things

21

are inadvertently produced for inspection and/or provided, the disclosing party shall identify such

22

documents or things within five (5) days of when it discovers that the privileged materials were

23

inadvertently produced for inspection and/or provided, and either (1) copies shall not be provided, or (2)

24

if copies have already been provided, all copies in the receiving party's possession shall be promptly

25

returned (and not relied upon) by the receiving party. Nothing in this paragraph shall prevent the

26

receiving party from contending that the identified materials are not privileged, that the material was not

27

inadvertently produced, or that privilege was waived for reasons other than mere inadvertent production

28

of the material.

8

1

2

3

22. Within ninety (90) days after conclusion of this litigation and any and all appeals thereof,

4

any document and all reproductions of "Confidential" documents produced by a party that are in the

possession of any Qualified Person shall be returned to the producing party or, with the consent of the

producing party, destroyed.  If destroyed, counsel for the receiving party shall certify to counsel for the

producing party compliance with this paragraph within fourteen (14) calendar days of such destruction.

8
Outside counsel for each party may maintain in its files one copy of all material produced as well as all

9
materials filed with or otherwise presented to the Court, deposition and trial transcripts, and work

10
product (regardless of whether such materials contain or refer to "Confidential" materials).  If counsel

11
retains such materials, the materials which contain Confidential Information shall be accessible only by

12
Qualified Persons defined in paragraph 4(b) above.  As far as the provisions of any protective orders

13
entered in this action restrict the communication and use of the documents produced thereunder, such

14
orders shall continue to be binding after the conclusion of this litigation including any subsequent

15
appeals or later proceedings, except that (a) there shall be no restriction on documents that are used as

16
exhibits in Court unless such exhibits were filed under seal, and (b) a party may seek the written

17
permission of the producing party or order of the Court with respect to dissolution or modification of

18
such protective orders. The Court shall retain jurisdiction to enforce the performance of said obligations.

19

20

21
23.    (a)    At the election of the Producing Party, a Receiving Party's access to a Producing

22
Party's discoverable source code may be limited to inspection of the code at a secured facility provided

23
by the Producing Party. Such inspection may be conducted only by persons identified in advance by the

24
Receiving Party on a list of "Qualified Inspecting Personnel" which may include:

25        (1)    the Receiving Party's Outside Counsel of record in this action; and

26        (2)    up to three Experts (as defined in this Order) of the Receiving Party to

27    whom disclosure is reasonably necessary for this litigation and who have signed the

28    "Agreement to Be Bound by Protective Order (Exhibit A) and who have been approved

pursuant to the "Procedures for Approving Disclosure of 'CONFIDENTIAL' information

9

of Items to 'Experts'" as set forth in paragraph 5.

(b)    The following provisions relate to Synopsys' provision of access to the Source Code for versions of its commercial products:

(1)    Synopsys will make available a closed room at its facility in Bethesda, Maryland for use by Ricoh's Qualified Inspecting Personnel. The room will be set aside for the exclusive use of Ricoh's Qualified Inspecting Personnel and will not be used by Synopsys or any other party when Ricoh's Qualified Inspecting Personnel are not present. The room will be available for a minimum of twelve weeks. After twelve weeks, and after consultation with Ricoh, Synopsys may close the facility pursuant to the procedures described in paragraph 4 below. If the facility is closed, Synopsys agrees to make the source code available for inspection under similar procedures at another date prior to the close of expert discovery.

(2)    Synopsys will equip the closed room with a private phone if a phone jack is already available in the room, a stand-alone, non-networked, computer and high-speed printer. The computer will be loaded with copies of the source code to be produced and utilities required to review the code. The source code shall include the code which is used by Synopsys and no notes, comments, or any segments shall be removed before being made available. The computer will be equipped with the text editors available in a standard Unix distribution, suitable for use in editing the source code. Synopsys will assist Ricoh in loading software that Ricoh may require for analysis of the source code. The computer shall also be loaded with a complete distribution of the Synopsys software that is fully operable and executable.

(3)    Ricoh may print copies of a reasonable subset of the source code for the Synopsys products at issue. Any printing done at the secure facility will be done exclusively on paper supplied by Synopsys. Synopsys may elect to place preprinted confidential designations on the margins of the paper. Ricoh's Qualified Inspecting Personnel are not to bring blank paper into the closed room except for the purpose of making handwritten notes. Synopsys will initially supply Ricoh with 5,000 pages of paper for use with the printer. This figure is based on the estimate that 5,000 pages should be sufficient to print approximately 5% of the source code for Design Compiler. If at any time, Ricoh believes that additional printing and paper is required, Ricoh may submit additional requests for paper to Synopsys with a general statement of the basis of the request. Synopsys will respond within one week to any such request. If the parties

10

are unable to come to agreement after conferral, the matter may be presented to the Court. In evaluating requests for paper, the relevant standard to be applied is that Ricoh should be allowed to print hardcopies of a reasonable subset of the Synopsys source code and that what is reasonable shall be evaluated in light of relevance of the code to Ricoh's allegations and Synopsys' interest in preventing release in hardcopy of more than a fraction of its source code.

(4)    Ricoh will be permitted to send individuals from the list of Qualified Inspecting Personnel to participate in and/or witness the closing of the secured facility. Before closing of the facility, Ricoh's representatives may provide a list of procedures that they wish to perform to ensure that any electronic record of their use of the machine has been erased.

(c)    The Receiving Party will provide the Producing Party with a copy of its list of "Qualified Inspecting Personnel" no later than 5 business days before any person on the list attempts to access the secured facility. The Receiving Party may revise the list to add or remove individuals, provided that no more than a total of three Experts are ever provided with access to the source code during the entire course of the litigation absent an agreement by the parties or a Court Order to expand this number.

(d)    Any notes taken or any other information created by Outside Counsel or the experts of the Receiving Party at or based on any inspection of the source code shall be treated as "CONFIDENTIAL" under this Protective Order.

24. This Order shall not bar any attorney herein in the course of rendering advice to his client with respect to this litigation from conveying to any party client his evaluation in a general way of "Confidential Information" produced or exchanged herein; provided, however, that in rendering such advice and otherwise communicating with his client, the attorney shall not disclose the specific contents of any "Confidential Information" produced by another party herein, which disclosure would be contrary to the terms of this Protective Order.

25. The Court shall retain jurisdiction to enforce the terms of this order for six (6) months after the final termination of this action.

Dated:  March 23, 2004                     HOWREY SIMON ARNOLD & WHITE, LLP


                                           /s/  Christopher L. Kelley
                                           Teresa M. Corbin, Esq.

1

2

3         Christopher Kelley, Esq.
          Erik K. Moller, Esq.
          Attorneys for Plaintiff SYNOPSYS, INC.
4         301 Ravenswood Avenue
          Menlo Park, CA 94025
5         Telephone: (650) 463-8100
          Facsimile: (650) 463-8400
6

7
Dated: March 23, 2004        DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
8
          /s/  Kenneth W. Brothers
9         Kenneth W. Brothers, Esq. (pro hac vice)
          Attorneys for Defendant  RICOH COMPANY, LTD.
10        2101 L Street NW
          Washington, DC  20037
11        Telephone:  (202) 785-9700
          Facsimile:  (202) 887-0689
12

13

14                     **ORDER**

15
    **SO ORDERED** this 24th day of March, 2004.
16

17                     _____/s/_____

18        Magistrate Judge Edward M. Chen

19

20

21

22

23

24

25

26

27

28

[PROPOSED] STIPULATED PROTECTIVE ORDER
CASE NO. C03-2289 MJJ (EMC)

**EXHIBIT 7**

US006226776B1

(12) **United States Patent**
Panchul et al.

(10) Patent No.: **US 6,226,776 B1**
(45) Date of Patent: **May 1, 2001**

(54) **SYSTEM FOR CONVERTING HARDWARE DESIGNS IN HIGH-LEVEL PROGRAMMING LANGUAGE TO HARDWARE IMPLEMENTATIONS**

(75) Inventors: **Yuri V. Panchul**, Milpitas; **Donald A. Soderman**, Saratoga; **Denis R. Coleman**, Atherton, all of CA (US)

(73) Assignee: **Synetry Corporation**, Milpitas, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **08/931,148**

(22) Filed: **Sep. 16, 1997**

(51) Int. Cl.[7] ................................................ G06F 17/50
(52) U.S. Cl. ................................................ 716/3; 716/18
(58) Field of Search ........................ 395/500.04, 500.19; 716/3, 18

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,197,016 | * | 3/1993 | Sugimoto et al. | 395/500.19 |
| 5,437,037 | * | 7/1995 | Furuichi | 395/700 |
| 5,493,507 | * | 2/1996 | Shinde et al. | 395/489 |
| 5,530,843 | * | 6/1996 | Koyama | 395/500.04 |
| 5,603,043 | * | 2/1997 | Taylor et al. | 395/800 |
| 5,748,488 | * | 5/1998 | Gregory et al. | 395/500.19 |

5,953,519 * 9/1999 Fura ................................ 395/500.19

* cited by examiner

Primary Examiner—Matthew Smith
Assistant Examiner—Leigh Marie Garbowski
(74) Attorney, Agent, or Firm—Russo & Hale LLP; William C. Milks, III

(57) **ABSTRACT**

A computer aided hardware design system for enabling design of an actual hardware implementation for a digital circuit using a high-level algorithmic programming language. The system converts an algorithmic representation for a hardware design initially created in the high-level programming language, such as ANSI C, to a hardware design implementation, such as an FPGA or other programmable logic or an ASIC. The C-type program representative of the hardware design is compiled into a register transfer level (RTL) hardware description language (HDL) that can be synthesized into a gate-level hardware representation. The system additionally enables simulation of the HDL design to verify design functionality. Finally, various physical design tools can be utilized to produce an actual hardware implementation. The system also permits the use of other non-C-type high-level programming languages by first translating to a C-type program. In contrast to previous hardware design tools, the system compiles all C-type programming language features, including pointers and structures, into synthesizable HDL.

**54 Claims, 90 Drawing Sheets**

Microfiche Appendix Included
(2 Microfiche, 176 Pages)





DEPOSITION EXHIBIT
9

EA 8-14-06

PENGAD 800-631-6989



FIG._1



*FIG._2*

```
int func1 (unsigned a, unsigned b, unsigned c)
{
   return a + b ^ c << 3;
}

int func2 (int a, int b, int c)
{
   return (a ^ b) & c;
}
```

*FIG._3A*

```
module func1(result_func1, result_func2, param_func1_a, param_func1_b,
   param_func1_c, param_func2_a, param_func2_b, param_func2_c);

   output [15:0]   result_func1, result_func2;
   input  [15:0]   param_func1_a, param_func1_b, param_func1_c;
   input  [15:0]   param_func2_a, param_func2_b, param_func2_c;

   wire   [15:0]   result_func1 =
                   ((param_func1_a + param_func1_b) ^ (param_func1_c << 16'd3));
   wire   [15:0]   result_func2 =
                   ((param_func2_a ^ param_func2_b) & param_func2_c);

endmodule
```

*FIG._3B*

```
int func1 (unsigned a, unsigned b, unsigned c)
{
   return a + (b == 1) ^ c << 3;
}

int func2 (int a, int b, int c)
{
   if (a < b)
      c -= b;

   return (a ^ b) & c;
}

int func3 (unsigned a, unsigned b, int c)
{
   unsigned d = 0;
   unsigned e;

   b++;

   if (a < b)
   {
      int c = e = a - b;

      if (a != 0)
      {
         c -= a & b;
         d = c++ ^ b;
      }
      else
      {
         d++;
         e = c + d ? c : 1;
      }
   }
   d = 1;
   return a < b && (a + b ^ c != 3 || a - b == 0);
}
```

## FIG._4A

```
module funcx (clock,result_func1,result_func2,result_func3,param_func1_a,
        param_func1_b,param_func1_c, param_func2_a,param_func2_b,
        param_func2_c,param_func3_a,param_func3_b,param_func3_c);
    input       clock;
    input  [15:0] param_func1_a, param_func1_b, param_func1_c, param_func2_a, param_func2_b,
                param_func2_c, param_func3_a, param_func3_b, param_func3_c;
    output [15:0] result_func1, result_func2, result_func3;
    reg         _5_1;
    reg    [15:0] result_func1, result_func2, result_func3,
                _func2_c, _func3_b, _6_func3_d, _6_func3_e,
                _7_func3_c, _1_16, _4_16, _6_16, _7_16;
    reg    [16:0] _2_17, _3_17;
always @(posedge clock)
    begin
        _1_16 = (param_func1_b == 16'd1);
        result_func1 = ((param_func1_a + _1_16) ^ (param_func1_c << 16'd3));
        _func2_c = param_func2_c;
        _2_17 = { ~ param_func2_a [15], param_func2_a };
        _3_17 = { ~ param_func2_b [15], param_func2_b };
        if ((_2_17 < _3_17))
            _func2_c = (_func2_c - param_func2_b);
        result_func2 = ((param_func2_a ^ param_func2_b) & _func2_c);
        _func3_b = param_func3_b;
        _6_func3_d = 16'd0;
        _func3_b = (_func3_b + 16'd1);
        if ((param_func3_a < _func3_b))
            begin
                _6_func3_e = (param_func3_a - _func3_b);
                _7_func3_c = _6_func3_e;
                if ((param_func3_a != 16'd0))
                    begin
                        _7_func3_c = (_7_func3_c - (param_func3_a & _func3_b));
                        _4_16 = _7_func3_c;
                        _7_func3_c = (_4_16 + 16'd1);
                        _6_func3_d = (_4_16 ^ _func3_b);
                    end
                    else
                    begin
                        _6_func3_d = (_6_func3_d + 16'd1);
                        _6_func3_e = ((_7_func3_c + _6_func3_d) ? _7_func3_c : 16'd1);
                    end
            end
        _6_func3_d = 16'd1;
        _6_16 = (param_func3_c != 16'd3);
        _5_1 = (param_func3_a < _func3_b) && (((param_func3_a + _func3_b) ^ _6_16)
                || ((param_func3_a - _func3_b) == 16'd0));
        _7_16 = _5_1;
        result_func3 = _7_16;
    end
endmodule
```

**FIG._4B**

U.S. Patent          May 1, 2001          Sheet 6 of 90          US 6,226,776 B1

```
int sum1 (int n)
{
    int i, sum = 0;
    for (i = 0; i < n; i ++)
        sum += i;
    return sum;
}

int sum2 (int array [], int size)
{
    int i, sum = 0;
    for (i = 0; i < size; i ++)
        sum += array [i];
    return sum;
}

int main ()
{
    int i;
    int array [10];
    int size = sizeof (array) / sizeof (*array);
    for (i = 0; i < size; i++)
        array [i] = i * 2;
    return sum1 (size) + sum2 (array, size);
}
```

## FIG._5A

```
`define _5_main_array 4'h1

module RAM32X1 (O, D, WE, A4, A3, A2, A1, A0);
  /* synthesis black_box xc_alias="RAM" */
    input       D, WE, A4, A3, A2, A1, A0;
    output      O;
    reg [31:0]  d;
    wire [4:0]  A = { A4, A3, A2, A1, A0 };
    assign      O = d [A];
    always @(A or D or WE)
      if (WE)
         d [A] = D;
endmodule

module RAM32x1 (a, d, o, we);
    input [4:0]  a;
    input        d, we;
    output       o;
    RAM32X1 RAM32X1 (o, d, we, a [4], a [3], a [2], a [1], a [0]);
endmodule

module RAM32x16 (a, d, o, we);
    input        we;
    input  [ 4:0] a;
    input  [15:0] d;
    output [15:0] o;
    RAM32x1 U0  (a, d [ 0], o [ 0], we);
    RAM32x1 U1  (a, d [ 1], o [ 1], we);
    RAM32x1 U2  (a, d [ 2], o [ 2], we);
    RAM32x1 U3  (a, d [ 3], o [ 3], we);
    RAM32x1 U4  (a, d [ 4], o [ 4], we);
    RAM32x1 U5  (a, d [ 5], o [ 5], we);
    RAM32x1 U6  (a, d [ 6], o [ 6], we);
    RAM32x1 U7  (a, d [ 7], o [ 7], we);
    RAM32x1 U8  (a, d [ 8], o [ 8], we);
    RAM32x1 U9  (a, d [ 9], o [ 9], we);
    RAM32x1 U10 (a, d [10], o [10], we);
    RAM32x1 U11 (a, d [11], o [11], we);
    RAM32x1 U12 (a, d [12], o [12], we);
    RAM32x1 U13 (a, d [13], o [13], we);
    RAM32x1 U14 (a, d [14], o [14], we);
    RAM32x1 U15 (a, d [15], o [15], we);
endmodule

module RAM11x16 (a, d, o, we);
    input        we;
    input  [ 3:0] a;
    input  [15:0] d;
    output [15:0] o;
    RAM32x16 U ({ 1'b0, a }, d, o, we);
endmodule
```

**FIG._5B1**

```
module for1 (clock, reset, result_sum1, result_sum2, result_main,
        param_sum1_n, param_sum2_array, param_sum2_size, run_sum1,
        ready_sum1, run_sum2, ready_sum2, run_main, ready_main);

input          clock, reset, run_sum1, run_sum2, run_main;
input   [15:0] param_sum1_n, param_sum2_array, param_sum2_size;
output         ready_sum1, ready_sum2, ready_main;
output [15:0]  result_sum1, result_sum2, result_main;
reg    [15:0]  result_sum1, result_sum2, result_main;
reg            ready_sum1, ready_sum2, ready_main, we;
wire   [15:0]  o, d;
reg    [ 3:0]  state, a, return_state_sum1, return_state_sum2;
reg    [15:0]  _sum1_n, _2_sum1_i, _2_sum1_sum, _sum2_array, _sum2_size;
reg    [15:0]  _4_sum2_i, _4_sum2_sum, _5_main_i, _5_main_size, _5_16, _8_16;
reg    [16:0]  _1_17, _2_17, _3_17, _4_17, _6_17, _7_17;

RAM11x16 m (a, d, o, we);
parameter _sum1 = 1, _sum2 = 5;

always @(posedge clock)
begin
  if (reset)
  begin
    we = 0;
    state = 0;
  end
  else
  begin
    case (state)
    0: begin
      if (run_sum1)
      begin
        ready_sum1 = 0;
        return_state_sum1 = 0;
        _sum1_n = param_sum1_n;
        state = _sum1;
      end
      else if (run_sum2)
      begin
        ready_sum2 = 0;
        return_state_sum2 = 0;
        _sum2_array = param_sum2_array;
        _sum2_size = param_sum2_size;
        state = _sum2;
      end
      else if (run_main)
      begin
        ready_main = 0;
        _5_main_size = 16'd10;
        _5_main_i = 16'd0;
        state = 9;
      end
    end
```

*FIG._5B2*

```
_sum1: begin
    _2_sum1_sum = 16'd0;
    _2_sum1_i = 16'd0;
    state = 2;
  end
2: begin
    _1_17 = { ~ _2_sum1_i [15], _2_sum1_i };
    _2_17 = { ~ _sum1_n [15], _sum1_n };
    state = (_1_17 < _2_17) ? 3 : 4;
  end
3: begin
    _2_sum1_sum = (_2_sum1_sum + _2_sum1_i);
    _2_sum1_i = (_2_sum1_i + 16'd1);
    state = 2;
  end
4: begin
    result_sum1 = _2_sum1_sum;
    ready_sum1 = 1;
    state = return_state_sum1;
  end
sum2: begin
    _4_sum2_sum = 16'd0;
    _4_sum2_i = 16'd0;
    state = 6;
  end
6: begin
    _3_17 = { ~ _4_sum2_i [15], _4_sum2_i };
    _4_17 = { ~ _sum2_size [15], _sum2_size };
    state = (_3_17 < _4_17) ? 7 : 8;
  end
7: begin
    a = (_sum2_array + _4_sum2_i);
    state = 12;
  end
12: begin
    _5_16 = o;
    _4_sum2_sum = (_4_sum2_sum + _5_16);
    _4_sum2_i = (_4_sum2_i + 16'd1);
    state = 6;
  end
8: begin
    result_sum2 = _4_sum2_sum;
    ready_sum2 = 1;
    state = return_state_sum2;
  end
9: begin
    _6_17 = { ~ _5_main_i [15], _5_main_i };
    _7_17 = { ~ _5_main_size [15], _5_main_size };
    state = (_6_17 < _7_17) ? 10 : 11;
  end
```

*FIG._5B3*

```
10: begin
    _8_16 = (_5_main_i << 1'd1);
    a = (_5_main_array + _5_main_i);
    d = _8_16;
    we = 1;
    state = 13;
  end
13: begin
    we = 0;
    _5_main_i = (_5_main_i + 16'd1);
    state = 9;
  end
11: begin
    _sum1_n = _5_main_size;
    return_state_sum1 = 14;
    state = _sum1;
  end
14: begin
    _sum2_array = `_5_main_array;
    _sum2_size = _5_main_size;
    return_state_sum2 = 15;
    state = _sum2;
  end
15: begin
    result_main = (result_sum1 + result_sum2);
    ready_main = 1;
    state = 0;
  end
default: ;
  endcase
  end
end
endmodule
```

## FIG._5B4

```
#include <stdio.h>

void main ()
{
    int a, b;
    scanf ("%d %d", & a, & b);
    printf ("a + b = %d\n", a + b);
}
```

## FIG._6A

```
module Printf (clock, scanf_0_1_line_19_a, scanf_0_2_line_19_b, printf_1_1_line_20, run_main);
    input          clock, run_main;
    input  [15:0]  scanf_0_1_line_19_a, scanf_0_2_line_19_b;
    output [15:0]  printf_1_1_line_20;
    reg    [15:0]  printf_1_1_line_20, _3_main_a, _3_main_b;

    always @ (posedge clock)
      begin
        if (run_main)
        begin
          _3_main_a = scanf_0_1_line_19_a;
          _3_main_b = scanf_0_2_line_19_b;
          printf_1_1_line_20 = (_3_main_a + _3_main_b);

          // User Verilog code
          $write ("a + b = %d\n", printf_1_1_line_20);
          // End of user Verilog code
        end
      end
endmodule
```

## FIG._6B

```
int func (a, b, c, d)
{
  return (a / b + c / d);
}
```

**FIG._7A**

```
module udivmod16 (a, b, div, mod);
    input  [15:0]  a, b;
    output [15:0]  div, mod;
    reg    [15:0]  div, mod, pa0, pa1, pa2, pa3, pa4, pa5, pa6, pa7, pa8, pa9, pa10, pa11, pa12,
                   pa13, pa14, pa15, pa16, shb0;
    reg    [16:0]  shb1;
    reg    [17:0]  shb2;
    reg    [18:0]  shb3;
    reg    [19:0]  shb4;
    reg    [20:0]  shb5;
    reg    [21:0]  shb6;
    reg    [22:0]  shb7;
    reg    [23:0]  shb8;
    reg    [24:0]  shb9;
    reg    [25:0]  shb10;
    reg    [26:0]  shb11;
    reg    [27:0]  shb12;
    reg    [28:0]  shb13;
    reg    [29:0]  shb14;
    reg    [30:0]  shb15;

    always @(a or b)
    begin
       pa0 = a;

       shb15   = b << 15;
       div [15] = pa0 >= shb15;
       pa1     = div [15] ? pa0 - shb15 : pa0;

       shb14   = b << 14;
       div [14] = pa1 >= shb14;
       pa2     = div [14] ? pa1 - shb14 : pa1;

       shb13   = b << 13;
       div [13] = pa2 >= shb13;
       pa3     = div [13] ? pa2 - shb13 : pa2;
```

**FIG._7B1**

```
        shb12    = b << 12;
        div [12] = pa3 >= shb12;
        pa4      = div [12] ? pa3 - shb12 : pa3;

        shb11    = b << 11;
        div [11] = pa4 >= shb11;
        pa5      = div [11] ? pa4 - shb11 : pa4;

        shb10    = b << 10;
        div [10] = pa5 >= shb10;
        pa6      = div [10] ? pa5 - shb10 : pa5;

        shb9     = b << 9;
        div [ 9] = pa6 >= shb9;
        pa7      = div [9] ? pa6 - shb9 : pa6;

        shb8     = b << 8;
        div [ 8] = pa7 >= shb8;
        pa8      = div [8] ? pa7 - shb8 : pa7;

        shb7     = b << 7;
        div [ 7] = pa8 >= shb7;
        pa9      = div [7] ? pa8 - shb7 : pa8;

        shb6     = b << 6;
        div [ 6] = pa9 >= shb6;
        pa10     = div [6] ? pa9 - shb6 : pa9;

        shb5     = b << 5;
        div [ 5] = pa10 >= shb5;
        pa11     = div [5] ? pa10 - shb5 : pa10;

        shb4     = b << 4;
        div [ 4] = pa11 >= shb4;
        pa12     = div [4] ? pa11 - shb4 : pa11;

        shb3     = b << 3;
        div [ 3] = pa12 >= shb3;
        pa13     = div [3] ? pa12 - shb3 : pa12;

        shb2     = b << 2;
        div [ 2] = pa13 >= shb2;
        pa14     = div [2] ? pa13 - shb2 : pa13;

        shb1     = b << 1;
        div [ 1] = pa14 >= shb1;
        pa15     = div [1] ? pa14 - shb1 : pa14;

        shb0     = b << 0;
        div [ 0] = pa15 >= shb0;
        pa16     = div [0] ? pa15 - shb0 : pa15;

        mod = pa16;
    end
endmodule
```

**FIG._7B2**

```
module sdivmod16 (a, b, div, mod);

    input  [15:0]  a, b;
    output [15:0]  div, mod;

    wire  [15:0]  ua = a [15] ? - a : a;
    wire  [15:0]  ub = b [15] ? - b : b;
    wire  [15:0]  udiv, umod;

    udivmod16 udivmod (ua, ub, udiv, umod);

    wire  [15:0]  div = (a [15] != b [15]) ? - udiv : udiv;
    wire  [15:0]  mod = a [15] ? - umod : umod;

endmodule



module DivEx (clock,reset,result_func,param_func_a,param_func_b,
              param_func_c,param_func_d,run_func,ready_func);

    input          clock, reset, run_func;
    input  [15:0]  param_func_a, param_func_b, param_func_c, param_func_d;
    output         ready_func;
    output [15:0]  result_func;

    reg    [15:0]  result_func, divmod_a, divmod_b, _1_16, _2_16;
    reg            ready_func;
    reg    [ 1:0]  state;
    wire   [15:0]  div_result;

    sdivmod16 sdivmod (divmod_a, divmod_b, div_result, );

    always @(posedge clock)
    begin
      if (reset)
        state = 0;
      else
      begin
        case (state)

          0: begin
            if (run_func)
            begin
              ready_func = 0;
              divmod_a = param_func_a;
              divmod_b = param_func_b;
              state = 1;
            end
          end
```

*FIG._7B3*

```
1: begin
    _1_16 = div_result;
   divmod_a = param_func_c;
   divmod_b = param_func_d;
    state = 2;
 end

2: begin
    _2_16 = div_result;
   result_func = (_1_16 + _2_16);
   ready_func = 1;
    state = 0;
 end

 default:  ;

 endcase
end
end

endmodule
```

## FIG._7B4

```
int data_in;
int out1;
int out2;
int data_out;

void pipeline_stage_1 ()
{
   out1 = data_in + 1;
}

void pipeline_stage_2 ()
{
   out2 = out1 + out1;
}

void pipeline_stage_3 ()
{
   data_out = out2 ^ 1234;
}

#ifndef __SYNETRY__
#include <stdio.h>

void main ()
{
   for (;;)
   {
     scanf ("%d", & data_in);

     pipeline_stage_1 ();
     pipeline_stage_2 ();
     pipeline_stage_3 ();

     printf ("%d", data_out);
   }
}
#endif
```

*FIG._8A*

```
module Pipeline (clock, _data_in, _data_out, run_pipeline_stage_1, run_pipeline_stage_2,
run_pipeline_stage_3);
    input        clock, run_pipeline_stage_1, run_pipeline_stage_2, run_pipeline_stage_3;
    input   [15:0]  _data_in;
    output [15:0]  _data_out;
    reg     [15:0]  _data_out, _out1, _out2;

    always @(posedge clock)
    begin
        if (run_pipeline_stage_1)
            _out1 = (_data_in + 16'd1);
    end

    always @(posedge clock)
    begin
        if (run_pipeline_stage_2)
            _out2 = (_out1 + _out1);
    end

    always @(posedge clock)
    begin
        if (run_pipeline_stage_3)
            _data_out = (_out2 ^ 16'd1234);
    end
endmodule
```

**FIG._8B**



**FIG._8C**

```
int func (float a, double b, long double c, int i)
{
    return - a + b * c - 16.5 / c;
}
```

### FIG._9A

```
module Float (clock,reset,zero_substractor_float_operand,
        zero_substractor_float_run,zero_substractor_float_ready,zero_substractor_float_result,
        convertor_from_float_to_long_double_operand,convertor_from_float_to_long_double_run,
        convertor_from_float_to_long_double_ready,convertor_from_float_to_long_double_result,
        convertor_from_double_to_long_double_operand,convertor_from_double_to_long_double_run,
        convertor_from_double_to_long_double_ready,convertor_from_double_to_long_double_result,
        multiplier_long_double_a,multiplier_long_double_b,multiplier_long_double_run,
        multiplier_long_double_ready,multiplier_long_double_result,adder_long_double_a,
        adder_long_double_b,adder_long_double_run, adder_long_double_ready,adder_long_double_result,
        divider_long_double_a,divider_long_double_b,divider_long_double_run,
        divider_long_double_ready,divider_long_double_result,substractor_long_double_a,
        substractor_long_double_b,substractor_long_double_run,substractor_long_double_ready,
        substractor_long_double_result,convertor_from_long_double_to_signed_16_operand,
        convertor_from_long_double_to_signed_16_run,convertor_from_long_double_to_signed_16_ready,con
        vertor_from_long_double_to_signed_16_result, result_func,param_func_a,param_func_b,
        param_func_c,param_func_i,run_func,ready_func);

    input       clock, reset, zero_substractor_float_ready, convertor_from_float_to_long_double_ready,
                convertor_from_double_to_long_double_ready, multiplier_long_double_ready,
                adder_long_double_ready, divider_long_double_ready, substractor_long_double_ready,
                convertor_from_long_double_to_signed_16_ready, run_func;
    input [15:0] convertor_from_long_double_to_signed_16_result, param_func_i;
    input [31:0] zero_substractor_float_result, param_func_a;
    input [63:0] param_func_b;
    input [79:0] convertor_from_float_to_long_double_result, param_func_c,
                convertor_from_double_to_long_double_result, multiplier_long_double_ready,
                adder_long_double_result, divider_long_double_result, substractor_long_double_result;
    output      zero_substractor_float_run, convertor_from_float_to_long_double_run,
                convertor_from_double_to_long_double_run, multiplier_long_double_run,
                adder_long_double_run, divider_long_double_run, substractor_long_double_run,
                convertor_from_long_double_to_signed_16_run, ready_func;
    output [15:0] result_func;
    output [31:0] zero_substractor_float_operand, convertor_from_float_to_long_double_operand;
    output [63:0] convertor_from_double_to_long_double_operand;
    output [79:0] multiplier_long_double_a, multiplier_long_double_b, adder_long_double_a,
                adder_long_double_b, divider_long_double_a, divider_long_double_b,
                substractor_long_double_a, substractor_long_double_b,
                convertor_from_long_double_to_signed_16_operand;
```

### FIG._9B1

```
reg              zero_substractor_float_run, convertor_from_float_to_long_double_run,
                 convertor_from_double_to_long_double_run, multiplier_long_double_run,
                 adder_long_double_run, divider_long_double_run, substractor_long_double_run,
                 convertor_from_long_double_to_signed_16_run, ready_func;
reg    [ 4:0]    state;
reg    [15:0]    result_func, _8_16;
reg    [31:0]    zero_substractor_float_operand, convertor_from_float_to_long_double_operand, _1_32;
reg    [63:0]    convertor_from_double_to_long_double_operand;
reg    [79:0]    multiplier_long_double_a, multiplier_long_double_b, adder_long_double_a,
                 adder_long_double_b, divider_long_double_a, divider_long_double_b,
                 substractor_long_double_a, substractor_long_double_b,
                 convertor_from_long_double_to_signed_16_operand, 2_80, _3_80, _4_80, _5_80,
                 _6_80, _7_80;
always @ (posedge clock)
  begin
    if (reset)
      state = 0;
    else
    begin
      case (state)

        0: begin
          if (run_func)
          begin
            ready_func = 0;
            zero_substractor_float_operand = param_func_a;
            zero_substractor_float_run = 1;
            state = 1;
          end
        end

        1: begin
          zero_substractor_float_run = 0;
          _1_32 = zero_substractor_float_result;
          if (zero_substractor_float_ready)
            state = 2;
          end

        2: begin
          convertor_from_float_to_long_double_operand = _1_32;
          convertor_from_float_to_long_double_run = 1;
          state = 3;
        end

        3: begin
          convertor_from_float_to_long_double_run = 0;
          _2_80 = convertor_from_float_to_long_double_result;
          if (convertor_from_float_to_long_double_ready)
            state = 4;
        end
```

*FIG._9B2*

```
4: begin
  convertor_from_double_to_long_double_operand = param_func_b;
  convertor_from_double_to_long_double_run = 1;
   state = 5;
end
5: begin
  convertor_from_double_to_long_double_run = 0;
   _3_80 = convertor_from_double_to_long_double_result;
   if (convertor_from_double_to_long_double_ready)
     state = 6;
end

6: begin
   multiplier_long_double_a = _3_80;
   multiplier_long_double_b = param_func_c;
   multiplier_long_double_run = 1;
    state = 7;
end

7: begin
   multiplier_long_double_run = 0;
   _4_80 = multiplier_long_double_result;
   if (multiplier_long_double_ready)
     state = 8;
end

8: begin
   adder_long_double_a = _2_80;
   adder_long_double_b = _4_80;
   adder_long_double_run = 1;
    state = 9;
end

9: begin
   adder_long_double_run = 0;
   _5_80 = adder_long_double_result;
   if (adder_long_double_ready)
     state = 10;
end

10: begin
   divider_long_double_a = 80'h0000000000803040;
   divider_long_double_b = param_func_c;
   divider_long_double_run = 1;
    state = 11;
end

11: begin
   divider_long_double_run = 0;
   _6_80 = divider_long_double_result;
   if (divider_long_double_ready)
     state = 12;
end
```

*FIG._9B3*

```
12: begin
    substractor_long_double_a = _5_80;
    substractor_long_double_b = _6_80;
    substractor_long_double_run = 1;
    state = 13;
  end
13: begin
    substractor_long_double_run = 0;
    _7_80 = substractor_long_double_result;
    if (substractor_long_double_ready)
      state = 14;
  end

14: begin
    convertor_from_long_double_to_signed_16_operand = _7_80;
    convertor_from_long_double_to_signed_16_run = 1;
    state = 15;
  end

15: begin
    convertor_from_long_double_to_signed_16_run = 0;
    _8_16 = convertor_from_long_double_to_signed_16_result;
    if (convertor_from_long_double_to_signed_16_ready)
    state = 16;
  end

16: begin
    result_func = _8_16;
    ready_func = 1;
    state = 0;
  end

  default: ;

  endcase
end
end

endmodule
```

## FIG._9B4

```
typedef struct
{
    int real;
    int image;
}
Complex;

Complex add (Complex a, Complex b)
{
    Complex c;
    c.real  = a.real  + b.real;
    c.image = a.image + b.image;
    return c;
}

Complex x = { 1, 2 }, y = { 3, 4 }, z;

void main ()
{
    z = add (x, add (x, y));
}
```

## FIG._10A

```
`define _add_a   4'h1
`define _add_b   4'h3
`define _3_add_c 4'h5
`define _x       4'h7
`define _y       4'h9
`define _z       4'hB

module Complex (clock, reset, a, d, o, we, result_add, param_add_a,
                param_add_b, run_add, ready_add, run_main, ready_main);

    input         clock, reset, run_add, run_main;
    input  [15:0] o;
    input  [31:0] param_add_a, param_add_b;

    output        we, ready_add, ready_main;
    output [ 3:0] a;
    output [15:0] d;
    output [31:0] result_add;

    reg           we, ready_add, ready_main;
    reg    [ 3:0] a;
    reg    [ 4:0] state, return_state_add;
    reg    [15:0] d, _1_16, _2_16, _3_16, _4_16, _5_16, _6_16;
    reg    [31:0] result_add, _7_32, _8_32, _9_32, _10_32;

    parameter _add = 1;

    always @(posedge clock)
    begin
      if (reset)
      begin
        we = 0;
        state = 0;
      end
      else
      begin
        case (state)
        0: begin
            if (run_add)
            begin
              ready_add = 0;
              return_state_add = 0;
              a = `_add_a;
              d = param_add_a [31:16];
              we = 1;
              state = 2;
            end
            else if (run_main)
            begin
              ready_main = 0;
              a = `_x;
              state = 14;
            end
          end
```

**FIG._10B1**

```
2: begin
      we = 0;
      a = `_add_a + 4'd1;
      d = param_add_a [15:0];
      we = 1;
      state = 3;
   end

3: begin
      we = 0;
      a = `_add_b;
      d = param_add_b [31:16];
      we = 1;
      state = 4;
   end

4: begin
      we = 0;
      a = `_add_b + 4'd1;
      d = param_add_b [15:0];
      we = 1;
      state = 5;
   end

5: begin
      we = 0;
      state = _add;
   end

_add: begin
      a = `_add_a;
      state = 6;
   end

6: begin
      _1_16 = o;
      a = `_add_b;
      state = 7;
   end

7: begin
      _2_16 = o;
      _3_16 = (_1_16 + _2_16);
      a = `_3_add_c;
      d = _3_16;
      we = 1;
      state = 8;
   end

8: begin
      we = 0;
      a = (`_add_a + 16'd1);
      state = 9;
   end
```

**FIG._10B2**

```
9: begin
     _4_16 = o;
     a = (`_add_b + 16'd1);
     state = 10;
   end

10: begin
      _5_16 = o;
      _6_16 = (_4_16 + _5_16);
      a = (`_3_add_c + 16'd1);
      d = _6_16;
      we = 1;
      state = 11;
    end

11: begin
      we = 0;
      a = `_3_add_c;
      state = 12;
    end

12: begin
      _7_32 [31:16] = o;
      a = `_3_add_c + 4'd1;
      state = 13;
    end

13: begin
      _7_32 [15:0] = o;
      result_add = _7_32;
      ready_add = 1;
      state = return_state_add;
    end

14: begin
      _8_32 [31:16] = o;
      a = `_x + 4'd1;
      state = 15;
    end

15: begin
      _8_32 [15:0] = o;
      a = `_add_a;
      d = _8_32 [31:16];
      we = 1;
      state = 16;
    end

16: begin
      we = 0;
      a = `_add_a + 4'd1;
      d = _8_32 [15:0];
      we = 1;
      state = 17;
    end
```

**FIG._10B3**

```
17: begin
      we = 0;
      a = `_x;
      state = 18;
    end

18: begin
      _9_32 [31:16] = o;
      a = `_x + 4'd1;
      state = 19;
    end

19: begin
      _9_32 [15:0] = o;
      a = `_add_a;
      d = _9_32 [31:16];
      we = 1;
      state = 20;
    end

20: begin
      we = 0;
      a = `_add_a + 4'd1;
      d = _9_32 [15:0];
      we = 1;
      state = 21;
    end

21: begin
      we = 0;
      a = `_y;
      state = 22;
    end

22: begin
      _10_32 [31:16] = o;
      a = `_y + 4'd1;
      state = 23;
    end

23: begin
      _10_32 [15:0] = o;
      a = `_add_b;
      d = _10_32 [31:16];
      we = 1;
      state = 24;
    end

24: begin
      we = 0;
      a = `_add_b + 4'd1;
      d = _10_32 [15:0];
      we = 1;
      state = 25;
    end
```

*FIG._10B4*

```
25: begin
      we = 0;
      return_state_add = 26;
      state = _add;
    end
26: begin
      a = `_add_b;
      d = result_add [31:16];
      we = 1;
      state = 27;
    end
27: begin
      we = 0;
      a = `_add_b + 4'd1;
      d = result_add [15:0];
      we = 1;
      state = 28;
    end
28: begin
      we = 0;
      return_state_add = 29;
      state = _add;
    end
29: begin
      a = `_z;
      d = result_add [31:16];
      we = 1;
      state = 30;
    end
30: begin
      we = 0;
      a = `_z + 4'd1;
      d = result_add [15:0];
      we = 1;
      state = 31;
    end
31: begin
      we = 0;
      ready_main = 1;
      state = 0;
    end
default: ;
    endcase
  end
end
endmodule
```

*FIG._10B5*

```
#ifndef __SYNETRY__
#include <assert.h>
#include <stdio.h>
#include <stdlib.h>
#else
#define NULL ((NODE *) 0)
#define assert(a)
#endif
#define MAX_NODES 10
struct _Node
{   struct _Node * pLeft;
    struct _Node * pRight;
    int       nKey;
    int       nValue;
};
typedef struct _Node NODE;
static NODE Nodes [MAX_NODES];
static int nNodes;
NODE * pTree;
void Initialize (void)
{   nNodes = 0;
    pTree  = NULL;
}
static NODE * NewNode (int nKey, int nValue)
{   assert (nNodes >= 0 && nNodes <= MAX_NODES);
    if (nNodes == MAX_NODES)
        return NULL;
    Nodes [nNodes].pLeft  = NULL;
    Nodes [nNodes].pRight = NULL;
    Nodes [nNodes].nKey   = nKey;
    Nodes [nNodes].nValue = nValue;
    return & Nodes [nNodes++];
}

NODE * FindNode (int nKey)
{   NODE * p;
    p = pTree;
    while (p != NULL)
    {
        if (p -> nKey < nKey)
            p = p -> pLeft;
        else if (p -> nKey > nKey)
            p = p -> pRight;
        else
            return p;
    }
    return NULL;
}
int FindValue (int nKey)
{   NODE * p;
    return (p = FindNode (nKey)) == NULL ? -1 : p -> nValue;
}
```

*FIG._11A1*

```
NODE * FindOrAddNode (nKey, nValue)
int nKey;
int nValue;
{  NODE * * p;
   p = & pTree;
   while (*p != NULL)
   {     if ((*p) -> nKey < nKey)
            p = & (*p) -> pLeft;
       else if ((*p) -> nKey > nKey)
            p = & (*p) -> pRight;
       else
            return (*p);
   }
   return *p = NewNode (nKey, nValue);
}
int FindOrAddValue (nKey, nValue)
int nKey;
int nValue;
{  NODE * p = FindOrAddNode (nKey, nValue);
   return p == NULL ? -1 : p -> nValue;
}
#ifndef __SYNETRY__
void PrintTree (int nLevel, NODE * p)
{  if (p == NULL)
       return;
   PrintTree (nLevel + 1, p -> pLeft);
   printf ("%*s%d [%d]\n", nLevel * 4, "", p -> nKey, p -> nValue);
   PrintTree (nLevel + 1, p -> pRight);
}

void main ()
{  int anKeys [20]
       = { 12,  4, 7, 2, 18, 24, 0,  5, 14, 1, 43, 6, 19, 21, 26, 11, 37, 8, 4, 9};
   int i;

   Initialize ();
   for (i = 0; i < 20; i++)
      FindOrAddValue (anKeys [i], i);
   for (i = 0; i < 20; i++)
      printf ("%d: %d\n", i, FindValue (i));
   printf ("\nTree:\n");
   PrintTree (0, pTree);
}
#endif
```

## FIG._11A2

```
`define _Nodes 6'h1
`define _pTree 6'h29

module Tree ( clock, reset, a, d, o, we, result_FindNode, result_FindValue, result_FindOrAddNode,
                result_FindOrAddValue, param_FindNode_nKey, param_FindValue_nKey,
                param_FindOrAddNode_nKey, param_FindOrAddNode_nValue,
                param_FindOrAddValue_nKey, param_FindOrAddValue_nValue,
                run_Initialize, ready_Initialize, run_FindNode, ready_FindNode,
                run_FindValue, ready_FindValue, run_FindOrAddNode,
                ready_FindOrAddNode, run_FindOrAddValue, ready_FindOrAddValue );
      input          clock, reset, run_Initialize, run_FindNode, run_FindValue, run_FindOrAddNode,
                     run_FindOrAddValue;
      input  [15:0]  o, param_FindNode_nKey, param_FindValue_nKey, param_FindOrAddNode_nKey,
                     param_FindOrAddNode_nValue, param_FindOrAddValue_nKey,
                     param_FindOrAddValue_nValue;
      output         we, ready_Initialize, ready_FindNode, ready_FindValue, ready_FindOrAddNode,
                     ready_FindOrAddValue;
      output [ 5:0]  a, result_FindNode, result_FindOrAddNode, d, result_FindValue, result_FindOrAddValue;
      reg            we, ready_Initialize, ready_FindNode, ready_FindValue, ready_FindOrAddNode,
                     ready_FindOrAddValue;
      reg    [ 5:0]  a, result_FindNode, result_FindOrAddNode, d, result_FindValue, result_FindOrAddValue,
                     state, result_NewNode, _7_FindNode_p, _10_FindValue_p, _13_FindOrAddNode_p,
                     _17_FindOrAddValue_p, return_state_NewNode, return_state_FindNode,
                     return_state_FindOrAddNode, _1_6, _2_6, _3_6, _4_6, _5_6, _6_6, _7_6, _8_6, _9_6,
                     _10_6, _12_6, _13_6, _14_6, _18_6, _22_6, _23_6, _24_6, _27_6, _28_6, _29_6,
                     _33_6, _34_6, _38_6, _39_6, _40_6;
      reg    [15:0]  _nNodes, _NewNode_nKey, _NewNode_nValue, _FindNode_nKey,
                     _FindOrAddNode_nKey, _FindOrAddNode_nValue, _30_16, _35_16, _11_16, _15_16,
                     _19_16, _25_16, _26_16, _41_16, _42_16;
      reg    [16:0]  _16_17, _17_17, _20_17, _21_17, _31_17, _32_17, _36_17, _37_17;

      parameter      _NewNode       = 1,
                     _FindNode      = 5,
                     _FindOrAddNode = 14;

      always @(posedge clock)
       begin
         if (reset)
         begin
            we = 0;
            state = 0;
         end
```

*FIG._11B1*

```
else
begin
  case (state)
    0: begin
      if (run_Initialize)
      begin
        ready_Initialize = 0;
        _nNodes = 16'd0;
        _1_6 = 16'd0;
        a = `_pTree;
        d [15:10] = _1_6;
        we = 1;
        state = 23;
      end
      else if (run_FindNode)
      begin
        ready_FindNode = 0;
        return_state_FindNode = 0;
        _FindNode_nKey = param_FindNode_nKey;
        state = _FindNode;
      end
      else if (run_FindValue)
      begin
        ready_FindValue = 0;
        _FindNode_nKey = param_FindValue_nKey;
        return_state_FindNode = 33;
        state = _FindNode;
      end
      else if (run_FindOrAddNode)
      begin
        ready_FindOrAddNode = 0;
        return_state_FindOrAddNode = 0;
        _FindOrAddNode_nKey = param_FindOrAddNode_nKey;
        _FindOrAddNode_nValue = param_FindOrAddNode_nValue;
        state = _FindOrAddNode;
      end
      else if (run_FindOrAddValue)
      begin
        ready_FindOrAddValue = 0;
        _FindOrAddNode_nKey = param_FindOrAddValue_nKey;
        _FindOrAddNode_nValue = param_FindOrAddValue_nValue;
        return_state_FindOrAddNode = 48;
        state = _FindOrAddNode;
      end
    end

    23: begin
      we = 0;
      ready_Initialize = 1;
      state = 0;
    end

  _NewNode:  state = (_nNodes == 16'd10) ? 2 : 3;
```

## FIG._11B2

```
2: begin
   _2_6 = 16'd0;
   result_NewNode = _2_6;
   state = 4;
end

3: begin
   _3_6 = 16'd0;
   _4_6 = (_nNodes << 2'd2);
   _5_6 = _3_6;
   a = (_Nodes + _4_6);
   d [15:10] = _5_6;
   we = 1;
   state = 24;
end

24: begin
   we = 0;
   _6_6 = 16'd0;
   _7_6 = (_nNodes << 2'd2);
   _8_6 = _6_6;
   a = ((_Nodes + _7_6) + 6'd1);
   d [15:10] = _8_6;
   we = 1;
   state = 25;
end

25: begin
   we = 0;
   _9_6 = (_nNodes << 2'd2);
   a = ((_Nodes + _9_6) + 6'd2);
   d = _NewNode_nKey;
   we = 1;
   state = 26;
end

26: begin
   we = 0;
   _10_6 = (_nNodes << 2'd2);
   a = ((_Nodes + _10_6) + 6'd3);
   d = _NewNode_nValue;
   we = 1;
   state = 27;
end

27: begin
   we = 0;
   _11_16 = _nNodes;
   _nNodes = (_11_16 + 16'd1);
   _12_6 = (_11_16 << 2'd2);
   result_NewNode = (_Nodes + _12_6);
   state = 4;
end
```

**FIG._11B3**

```
    4: state = return_state_NewNode;
FindNode: begin
       a = `_pTree;
       state = 28;
    end

    28: begin
       _13_6 = o [15:10];
       _7_FindNode_p = _13_6;
       state = 6;
    end

    6: begin
       _14_6 = 16'd0;
       state = (_7_FindNode_p != _14_6) ? 7 : 12;
    end

    7: begin
       a = (_7_FindNode_p + 6'd2);
       state = 29;
    end

    29: begin
       _15_16 = o;
       _16_17 = { ~ _15_16 [15], _15_16 };
       _17_17 = { ~ _FindNode_nKey [15], _FindNode_nKey };
       state = (_16_17 < _17_17) ? 8 : 9;
    end

    8: begin
       a = _7_FindNode_p;
       state = 30;
    end

    30: begin
       _18_6 = o [15:10];
       _7_FindNode_p = _18_6;
       state = 6;
    end

    9: begin
       a = (_7_FindNode_p + 6'd2);
       state = 31;
    end

    31: begin
       _19_16 = o;
       _20_17 = { ~ _19_16 [15], _19_16 };
       _21_17 = { ~ _FindNode_nKey [15], _FindNode_nKey };
       state = (_20_17 > _21_17) ? 10 : 11;
    end

    10: begin
       a = (_7_FindNode_p + 6'd1);
       state = 32;
    end
```

*FIG._11B4*

```
32: begin
    _22_6 = o [15:10];
    _7_FindNode_p = _22_6;
    state = 6;
end

11: begin
    result_FindNode = _7_FindNode_p;
    state = 13;
end

12: begin
    _23_6 = 16'd0;
    result_FindNode = _23_6;
    state = 13;
end

13: begin
    ready_FindNode = 1;
    state = return_state_FindNode;
end

33: begin
    _10_FindValue_p = result_FindNode;
    _24_6 = 16'd0;
    state = (result_FindNode == _24_6) ? 34 : 35;
end

34: begin
    _25_16 = -16'd1;
    state = 36;
end

35: begin
    a = (_10_FindValue_p + 6'd3);
    state = 37;
end

37: begin
    _26_16 = o;
    _25_16 = _26_16;
    state = 36;
end

36: begin
    result_FindValue = _25_16;
    ready_FindValue = 1;
    state = 0;
end
```

FIG._11B5

```
_FindOrAddNode: begin
       _13_FindOrAddNode_p = `_pTree;
       state = 15;
   end

   15: begin
     a = _13_FindOrAddNode_p;
       state = 38;
   end

   38: begin
       _27_6 = o [15:10];
       _28_6 = 16'd0;
       state = (_27_6 != _28_6) ? 16 : 21;
   end

   16: begin
     a = _13_FindOrAddNode_p;
       state = 39;
   end

   39: begin
       _29_6 = o [15:10];
       a = (_29_6 + 6'd2);
       state = 40;
   end

   40: begin
       _30_16 = o;
       _31_17 = { ~ _30_16 [15], _30_16 };
       _32_17 = { ~ _FindOrAddNode_nKey [15], _FindOrAddNode_nKey };
       state = (_31_17 < _32_17) ? 17 : 18;
   end

   17: begin
     a = _13_FindOrAddNode_p;
       state = 41;
   end

   41: begin
       _33_6 = o [15:10];
       _13_FindOrAddNode_p = _33_6;
       state = 15;
   end

   18: begin
     a = _13_FindOrAddNode_p;
       state = 42;
   end

   42: begin
       _34_6 = o [15:10];
       a = (_34_6 + 6'd2);
       state = 43;
   end
```

**FIG._11B6**

```
43: begin
    _35_16 = 0;
    _36_17 = { ~ _35_16 [15], _35_16 };
    _37_17 = { ~ _FindOrAddNode_nKey [15], _FindOrAddNode_nKey };
    state = (_36_17 > _37_17) ? 19 : 20;
end

19: begin
   a = _13_FindOrAddNode_p;
    state = 44;
end

44: begin
    _38_6 = 0 [15:10];
    _13_FindOrAddNode_p = (_38_6 + 6'd1);
    state = 15;
end

20: begin
   a = _13_FindOrAddNode_p;
    state = 45;
end

45: begin
    _39_6 = 0 [15:10];
   result_FindOrAddNode = _39_6;
    state = 22;
end

21: begin
  _NewNode_nKey = _FindOrAddNode_nKey;
  _NewNode_nValue = _FindOrAddNode_nValue;
   return_state_NewNode = 46;
    state = _NewNode;
end

46: begin
   a = _13_FindOrAddNode_p;
   d [15:10] = result_NewNode;
    we = 1;
    state = 47;
end

47: begin
    we = 0;
   result_FindOrAddNode = result_NewNode;
    state = 22;
end
```

**FIG._11B7**

```
22: begin
  ready_FindOrAddNode = 1;
  state = return_state_FindOrAddNode;
end

48: begin
  _17_FindOrAddValue_p = result_FindOrAddNode;
    _40_6 = 16'd0;
   state = (_17_FindOrAddValue_p == _40_6) ? 49 : 50;
end

49: begin
    _41_16 = -16'd1;
    state = 51;
end

50: begin
  a = (_17_FindOrAddValue_p + 6'd3);
    state = 52;
end

52: begin
    _42_16 = o;
    _41_16 = _42_16;
    state = 51;
end

51: begin
   result_FindOrAddValue = _41_16;
   ready_FindOrAddValue = 1;
    state = 0;
end

default:  ;
endcase
end
end

endmodule
```

*FIG._11B8*

```
#include <stdio.h>
int event_occured = 0;
#pragma synchronous on_event

void on_event ()
{
    event_occured = 1;
}

void main ()
{
    int a, b, c;
    scanf ("%d %d", & a, & b);
    c = event_occured ? a + b : a - b;
    printf ("%d\n", c);
}
```

**FIG._12A**

```
module Event_sy (clock,reset,scanf_0_1_line_16_a,scanf_0_2_line_16_b,printf_1_1_line_20_c,
                 run_on_event,run_main);
    input          clock, reset, run_on_event, run_main;
    input   [15:0] scanf_0_1_line_16_a, scanf_0_2_line_16_b;
    output [15:0] printf_1_1_line_20_c;
    reg     [15:0] printf_1_1_line_20_c, _event_occured, _108_main_a, _108_main_b, _108_main_c;

    always @(posedge clock)
    begin
        if (run_on_event)
            _event_occured = 16'd1;
        if (reset)
            _event_occured = 16'd0;
    end

    always @(posedge clock)
    begin
        if (run_main)
        begin
            _108_main_a = scanf_0_1_line_16_a;
            _108_main_b = scanf_0_2_line_16_b;
            _108_main_c = (_event_occured ? (_108_main_a + _108_main_b) :
                                (_108_main_a - _108_main_b));
            printf_1_1_line_20_c = _108_main_c;
        end
    end

endmodule
```

**FIG._12B**

```
#include <stdio.h>

int event_occured = 0;
#pragma asynchronous on_event
void on_event ()
{
   event_occured = 1;
}

void main ()
{
   int a, b, c;
   scanf ("%d %d", & a, & b);
   c = event_occured ? a + b : a - b;
   printf ("%d\n", c);
}
```

*FIG._13A*

```
module Event_as(clock,reset,scanf_0_1_line_16_a,scanf_0_2_line_16_b,printf_1_1_line_20_c,
                    run_on_event,run_main);
   input        clock, reset, run_on_event, run_main;
   input  [15:0] scanf_0_1_line_16_a, scanf_0_2_line_16_b;
   output [15:0] printf_1_1_line_20_c;
   reg    [15:0] printf_1_1_line_20_c, _event_occured, _108_main_a, _108_main_b, _108_main_c;

   always @(posedge run_on_event)
   begin
     if (reset)
        _event_occured = 16'd0;
     else
        _event_occured = 16'd1;
   end

   always @(posedge clock)
   begin
     if (run_main)
     begin
        _108_main_a = scanf_0_1_line_16_a;
        _108_main_b = scanf_0_2_line_16_b;
        _108_main_c = (_event_occured ? (_108_main_a + _108_main_b) :
                             (_108_main_a - _108_main_b));
        printf_1_1_line_20_c = _108_main_c;
     end
   end

endmodule
```

*FIG._13B*

```
int func1 (unsigned n)
{
    unsigned i, result = 0;

    for (i = 0; i <= n; i++)
        result += i;

    return result;
}

int func2 (unsigned n)
{
    unsigned i, result = 0;

    for (i = 0; i <= n; i++)
        result += i;

    return result;
}
```

*FIG._14A*

```
module Sum (clock, reset, result__func1, param__func1__n, run__func1, ready__func1, result__func2,
            param__func2__n, run__func2, ready__func2 );
    input        clock, reset, run__func1, run__func2;
    input  [15:0] param__func1__n, param__func2__n;
    output       ready__func1, ready__func2;
    output [15:0] result__func1, result__func2;
    reg          ready__func1, ready__func2;
    reg    [1:0]  state1, state2;
    reg    [15:0] result__func1, result__func2, s_2_func1_i, s_2_func1_result, s_2_func2_i,
                  s_2_func2_result;;
    always @(posedge clock)
        begin
            if (reset)
                state1 = 0;
            else
            begin
                case (state1)
                    0: begin
                        if (run__func1)
                        begin
                            ready__func1 = 0;
                            s_2_func1_result = 16'd0;
                            s_2_func1_i = 16'd0;
                            state1 = 1;
                        end
                    end
```

*FIG._14B1*

```
1: state1 = (s_2_func1_i <= param__func1__n) ? 2 : 3;

2: begin
     s_2_func1_result = (s_2_func1_result + s_2_func1_i);
     s_2_func1_i = (s_2_func1_i + 16'd1);
      state1 = 1;
   end

 3: begin
     result__func1 = s_2_func1_result;
     ready__func1 = 1;
      state1 = 0;
   end
   endcase
 end
end

always @(posedge clock)
    begin
      if (reset)
         state2 = 0;
      else
      begin
        case (state2)
        0: begin
          if (run__func2)
           begin
             ready__func2 = 0;
             s_2_func2_result = 16'd0;
             s_2_func2_i = 16'd0;
              state2 = 1;
           end
         end

        1: state2 = (s_2_func2_i <= param__func2__n) ? 2 : 3;

        2: begin
            s_2_func2_result = (s_2_func2_result + s_2_func2_i);
            s_2_func2_i = (s_2_func2_i + 16'd1);
             state2 = 1;
          end

         3: begin
            result__func2 = s_2_func2_result;
            ready__func2 = 1;
             state2 = 0;
           end
           endcase
         end
      end

    endmodule
```

**FIG._14B2**

```
#include <stdio.h>
#include <stdarg.h>
/* Returns the average of a variable list of integers. */

static int average (int first, ...)
{
   int count = 0, sum = 0, i = first;
   va_list marker;

   va_start (marker, first);     /* Initialize variable arguments. */

   while (i != -1)
   {
      sum += i;
      count++;
      i = va_arg (marker, int);
   }

   va_end (marker);              /* Reset variable arguments.      */

   return sum ? (sum / count) : 0;
}

void main ()
{
   /* Call with 3 integers (-1 is used as terminator). */
   printf ("Average is: %d\n", average (2, 3, 4, -1));

   /* Call with 4 integers. */
   printf ("Average is: %d\n", average (5, 7, 9, 11, -1));

   /* Call with just -1 terminator. */
   printf ("Average is: %d\n", average (-1));
}
```

*FIG._15A*

```
`define _average_first  5'h1

module udivmod16 (a, b, div, mod);
    input  [15:0]  a, b;
    output [15:0]  div, mod;
    reg    [15:0]  div, mod, pa0, pa1, pa2, pa3, pa4, pa5, pa6, pa7, pa8, pa9, pa10,
                   pa11, pa12, pa13, pa14, pa15, pa16, shb0;
    reg    [16:0]  shb1;
    reg    [17:0]  shb2;
    reg    [18:0]  shb3;
    reg    [19:0]  shb4;
    reg    [20:0]  shb5;
    reg    [21:0]  shb6;
    reg    [22:0]  shb7;
    reg    [23:0]  shb8;
    reg    [24:0]  shb9;
    reg    [25:0]  shb10;
    reg    [26:0]  shb11;
    reg    [27:0]  shb12;
    reg    [28:0]  shb13;
    reg    [29:0]  shb14;
    reg    [30:0]  shb15;

    always @(a or b)
      begin
        pa0 = a;

        shb15   = b << 15;
        div [15] = pa0 >= shb15;
        pa1     = div [15] ? pa0 - shb15 : pa0;

        shb14   = b << 14;
        div [14] = pa1 >= shb14;
        pa2     = div [14] ? pa1 - shb14 : pa1;

        shb13   = b << 13;
        div [13] = pa2 >= shb13;
        pa3     = div [13] ? pa2 - shb13 : pa2;

        shb12   = b << 12;
        div [12] = pa3 >= shb12;
        pa4     = div [12] ? pa3 - shb12 : pa3;

        shb11   = b << 11;
        div [11] = pa4 >= shb11;
        pa5     = div [11] ? pa4 - shb11 : pa4;

        shb10   = b << 10;
        div [10] = pa5 >= shb10;
        pa6     = div [10] ? pa5 - shb10 : pa5;

        shb9    = b << 9;
        div [ 9] = pa6 >= shb9;
        pa7     = div [9] ? pa6 - shb9 : pa6;
```

*FIG._15B1*

```
      shb8     = b << 8;
      div [ 8] = pa7 >= shb8;
      pa8      = div [8] ? pa7 - shb8 : pa7;

      shb7     = b << 7;
      div [ 7] = pa8 >= shb7;
      pa9      = div [7] ? pa8 - shb7 : pa8;

      shb6     = b << 6;
      div [ 6] = pa9 >= shb6;
      pa10     = div [6] ? pa9 - shb6 : pa9;

      shb5     = b << 5;
      div [ 5] = pa10 >= shb5;
      pa11     = div [5] ? pa10 - shb5 : pa10;

      shb4     = b << 4;
      div [ 4] = pa11 >= shb4;
      pa12     = div [4] ? pa11 - shb4 : pa11;

      shb3     = b << 3;
      div [ 3] = pa12 >= shb3;
      pa13     = div [3] ? pa12 - shb3 : pa12;

      shb2     = b << 2;
      div [ 2] = pa13 >= shb2;
      pa14     = div [2] ? pa13 - shb2 : pa13;

      shb1     = b << 1;
      div [ 1] = pa14 >= shb1;
      pa15     = div [1] ? pa14 - shb1 : pa14;

      shb0     = b << 0;
      div [ 0] = pa15 >= shb0;
      pa16     = div [0] ? pa15 - shb0 : pa15;

      mod = pa16;
   end
endmodule

module sdivmod16 (a, b, div, mod);
   input  [15:0]  a, b;
   output [15:0]  div, mod;
   wire   [15:0]  ua = a [15] ? - a : a;
   wire   [15:0]  ub = b [15] ? - b : b;
   wire   [15:0]  udiv, umod;
   udivmod16 udivmod (ua, ub, udiv, umod);
   wire   [15:0]  div = (a [15] != b [15]) ? - udiv : udiv;
   wire   [15:0]  mod = a [15]  ? - umod : umod;
endmodule
```

*FIG._15B2*

```
module RAM32X1 (O, D, WE, A4, A3, A2, A1, A0)
  /* synthesis black_box xc_alias="RAM" */ ;
  output       O;
  input        D, WE, A4, A3, A2, A1, A0;
  reg [31:0]   d;
  wire [4:0]   A = { A4, A3, A2, A1, A0 };
  assign O = d [A];
  always @(A or D or WE)
     if (WE)
        d [A] = D;
endmodule

module RAM32x1 (a, d, o, we);
  input            d, we;
  input [4:0]    a;
  output         o;
  RAM32X1 RAM32X1 (o, d, we, a [4], a [3], a [2], a [1], a [0]);
endmodule

module RAM32x16 (a, d, o, we);
  input          we;
  input  [ 4:0]  a;
  input  [15:0]  d;
  output [15:0]  o;
  RAM32x1 U0  (a, d [ 0], o [ 0], we);
  RAM32x1 U1  (a, d [ 1], o [ 1], we);
  RAM32x1 U2  (a, d [ 2], o [ 2], we);
  RAM32x1 U3  (a, d [ 3], o [ 3], we);
  RAM32x1 U4  (a, d [ 4], o [ 4], we);
  RAM32x1 U5  (a, d [ 5], o [ 5], we);
  RAM32x1 U6  (a, d [ 6], o [ 6], we);
  RAM32x1 U7  (a, d [ 7], o [ 7], we);
  RAM32x1 U8  (a, d [ 8], o [ 8], we);
  RAM32x1 U9  (a, d [ 9], o [ 9], we);
  RAM32x1 U10 (a, d [10], o [10], we);
  RAM32x1 U11 (a, d [11], o [11], we);
  RAM32x1 U12 (a, d [12], o [12], we);
  RAM32x1 U13 (a, d [13], o [13], we);
  RAM32x1 U14 (a, d [14], o [14], we);
  RAM32x1 U15 (a, d [15], o [15], we);
endmodule

module RAM18x16 (a, d, o, we);
  input          we;
  input  [ 4:0]  a;
  input  [15:0]  d;
  output [15:0]  o;
  RAM32x16 U (a, d, o, we);
endmodule
```

**FIG._15B3**

```
module StdArg (clock, reset, printf_1_1_line_42, printf_2_1_line_45, printf_3_1_line_48,
               run_main, ready_main );
    input      clock, reset, run_main;
    output     ready_main;
    output  [15:0]  printf_1_1_line_42, printf_2_1_line_45, printf_3_1_line_48
    reg        ready_main, we;
    reg     [ 4:0]  state, a, return_state_average;
    reg     [15:0]  printf_1_1_line_42, printf_2_1_line_45, printf_3_1_line_48, divmod_a, divmod_b,
                    d, result_average, _108_average_count, _108_average_sum, _108_average_i,
                    _108_average_marker, _1_16, _2_16, _3_16, _4_16, _5_16, _6_16, _7_16, _8_16,
                    _9_16, _10_16, _11_16, _12_16, _13_16, _14_16;
    wire    [15:0]  div_result, o;
    sdivmod16 sdivmod (divmod_a, divmod_b, div_result, );

    RAM18x16 m (a, d, o, we);
    parameter _average = 1;

    always @(posedge clock)
    begin
      if (reset)
      begin
        we = 0;
        state = 0;
      end
      else
      begin
        case (state)

          0: begin
            if (run_main)
            begin
              ready_main = 0;
              _5_16 = 16'd2;
              a = `_average_first;
              d = _5_16;
              we = 1;
              state = 11;
            end
          end

          _average: begin
            _108_average_count = 16'd0;
            _108_average_sum = 16'd0;
            a = `_average_first;
            state = 5;
          end

          5: begin
            _1_16 = o;
            _108_average_i = _1_16;
            _108_average_marker = (`_average_first + 16'd1);
            state = 2;
          end

          2: state = (_108_average_i != -16'd1) ? 3 : 4;
```

*FIG. _15B4*

```
3: begin
   _108_average_sum = (_108_average_sum + _108_average_i);
   _108_average_count = (_108_average_count + 16'd1);
   _108_average_marker = (_108_average_marker + 16'd1);
   a = (_108_average_marker - 16'd1);
     state = 6;
end

6: begin
   _2_16 = o;
   _108_average_i = _2_16;
     state = 2;
end

4: begin
   _108_average_marker = 16'd0;
     state = _108_average_sum ? 7 : 8;
end

7: begin
   divmod_a = _108_average_sum;
   divmod_b = _108_average_count;
     state = 10;
end

10: begin
    _4_16 = div_result;
    _3_16 = _4_16;
     state = 9;
end

8: begin
    _3_16 = 16'd0;
     state = 9;
end

9: begin
   result_average = _3_16;
     state = return_state_average;
end

11: begin
   we = 0;
    _6_16 = 16'd3;
   a = (_average_first + 16'd1);
   d = _6_16;
   we = 1;
     state = 12;
end
```

**FIG._15B5**

```
12: begin
    we = 0;
    _7_16 = 16'd4;
    a = (`_average_first + 16'd2);
    d = _7_16;
    we = 1;
    state = 13;
 end

13: begin
    we = 0;
    _8_16 = -16'd1;
    a = (`_average_first + 16'd3);
    d = _8_16;
    we = 1;
    state = 14;
end

14: begin
    we = 0;
    return_state_average = 15;
    state = _average;
end

15: begin
    printf_1_1_line_42 = result_average;
    // User Verilog code
    $write ("Average is: %d\n", printf_1_1_line_42);
    // End of user Verilog code
    _9_16 = 16'd5;
    a = `_average_first;
    d = _9_16;
    we = 1;
    state = 16;
end

16: begin
    we = 0;
    _10_16 = 16'd7;
    a = (`_average_first + 16'd1);
    d = _10_16;
    we = 1;
    state = 17;
end

17: begin
    we = 0;
    _11_16 = 16'd9;
    a = (`_average_first + 16'd2);
    d = _11_16;
    we = 1;
    state = 18;
end
```

*FIG._15B6*

```
18: begin
    we = 0;
    _12_16 = 16'd11;
    a = (`_average_first + 16'd3);
    d = _12_16;
    we = 1;
    state = 19;
  end

19: begin
    we = 0;
    _13_16 = -16'd1;
    a = (`_average_first + 16'd4);
    d = _13_16;
    we = 1;
    state = 20;
  end

 20: begin
    we = 0;
    return_state_average = 21;
    state = _average;
  end

 21: begin
    printf_2_1_line_45 = result_average;
    // User Verilog code
    $write ("Average is: %d\n", printf_2_1_line_45);
    // End of user Verilog code
    _14_16 = -16'd1;
    a = `_average_first;
    d = _14_16;
    we = 1;
    state = 22;
  end

 22: begin
    we = 0;
    return_state_average = 23;
    state = _average;
  end

 23: begin
    printf_3_1_line_48 = result_average;
    // User Verilog code
    $write ("Average is: %d\n", printf_3_1_line_48);
    // End of user Verilog code
    ready_main = 1;
    state = 0;
  end

 default:  ;
endcase
end
end
endmodule
```

**FIG._15B7**

```
#include <stdio.h>

static void MoveRing (int nRings, int Tower1, int Tower2, int Tower3)
{
   if (nRings == 0)
      return;

   MoveRing (nRings - 1, Tower1, Tower3, Tower2);

   printf ("%d -> %d\n", Tower1, Tower2);

   MoveRing (nRings - 1, Tower3, Tower2, Tower1);
}

void Hanoi (int nRings)
{
   MoveRing (nRings, 1, 2, 3);
}

#ifndef __SYNETRY__
void main (void)
{
   printf ("Five rings Hanoi Towers\n");
   Hanoi (5);
}
#endif
```

## FIG._16A

```
`define recursion_stack 8'h1
module Hanoi (clock, reset, a, d, o, we, printf_1_1_line_22_Tower1, printf_1_2_line_22_Tower2,
              param_Hanoi_nRings, run_Hanoi, ready_Hanoi );
    input        clock, reset, run_Hanoi;
    input  [ 7:0]  o, param_Hanoi_nRings;
    output       we, ready_Hanoi;
    output [ 7:0]  a, d, printf_1_1_line_22_Tower1, printf_1_2_line_22_Tower2;
    reg          we, ready_Hanoi;
    reg    [ 4:0]  state, return_state_MoveRing;
    reg    [ 7:0]  a, d, printf_1_1_line_22_Tower1, printf_1_2_line_22_Tower2, recursion_stack_pointer,
                  _MoveRing_nRings, _MoveRing_Tower1, _MoveRing_Tower2, _MoveRing_Tower3,
                  _1_8, _2_8, _3_8, _4_8, _5_8, _6_8, _7_8, _8_8, _9_8, _10_8, _11_8, _12_8;
    parameter _MoveRing = 1;

    always @(posedge clock)
    begin
      if (reset)
      begin
        we = 0;
        recursion_stack_pointer = `recursion_stack;
        state = 0;
      end
      else
      begin
        case (state)
          0: begin
            if (run_Hanoi)
            begin
              ready_Hanoi = 0;
              _MoveRing_nRings = param_Hanoi_nRings;
              _MoveRing_Tower1 = 8'd1;
              _MoveRing_Tower2 = 8'd2;
              _MoveRing_Tower3 = 8'd3;
              return_state_MoveRing = 26;
              state = _MoveRing;
            end
          end

          _MoveRing: state = (_MoveRing_nRings == 8'd0) ? 3 : 2;

          2: begin
            _1_8 = (_MoveRing_nRings - 8'd1);
            _2_8 = _MoveRing_Tower1;
            _3_8 = _MoveRing_Tower3;
            _4_8 = _MoveRing_Tower2;
            a = recursion_stack_pointer;
            d = _MoveRing_nRings;
            we = 1;
            state = 4;
          end
```

**FIG._16B1**

```
4: begin
    we = 0;
    a = recursion_stack_pointer + 1;
    d = _MoveRing_Tower1;
    we = 1;
    state = 5;
end

5: begin
    we = 0;
    a = recursion_stack_pointer + 2;
    d = _MoveRing_Tower2;
    we = 1;
    state = 6;
end

6: begin
    we = 0;
    a = recursion_stack_pointer + 3;
    d = _MoveRing_Tower3;
    we = 1;
    state = 7;
end

7: begin
    we = 0;
    _9_8 = return_state_MoveRing;
    a = recursion_stack_pointer + 4;
    d = _9_8;
    we = 1;
    state = 8;
end

8: begin
    we = 0;
    recursion_stack_pointer = recursion_stack_pointer + 5;
    _MoveRing_nRings = _1_8;
    _MoveRing_Tower1 = _2_8;
    _MoveRing_Tower2 = _3_8;
    _MoveRing_Tower3 = _4_8;
    return_state_MoveRing = 9;
    state = _MoveRing;
end

9: begin
    recursion_stack_pointer = recursion_stack_pointer - 5;
    a = recursion_stack_pointer;
    state = 10;
end

10: begin
    _MoveRing_nRings = o;
    a = recursion_stack_pointer + 1;
    state = 11;
end
```

**FIG._16B2**

```
11: begin
     _MoveRing_Tower1 = o;
     a = recursion_stack_pointer + 2;
     state = 12;
   end

12: begin
     _MoveRing_Tower2 = o;
     a = recursion_stack_pointer + 3;
     state = 13;
   end

13: begin
     _MoveRing_Tower3 = o;
     a = recursion_stack_pointer + 4;
     state = 14;
   end

14: begin
     _10_8 = o;
     return_state_MoveRing = _10_8;
     printf_1_1_line_22_Tower1 = _MoveRing_Tower1;
     printf_1_2_line_22_Tower2 = _MoveRing_Tower2;
     // User Verilog code
     $write ("%d -> %d\n", printf_1_1_line_22_Tower1, printf_1_2_line_22_Tower2);
     // End of user Verilog code
     _5_8 = (_MoveRing_nRings - 8'd1);
     _6_8 = _MoveRing_Tower3;
     _7_8 = _MoveRing_Tower2;
     _8_8 = _MoveRing_Tower1;
     a = recursion_stack_pointer;
     d = _MoveRing_nRings;
     we = 1;
     state = 15;
   end

15: begin
     we = 0;
     a = recursion_stack_pointer + 1;
     d = _MoveRing_Tower1;
     we = 1;
     state = 16;
   end

16: begin
     we = 0;
     a = recursion_stack_pointer + 2;
     d = _MoveRing_Tower2;
     we = 1;
     state = 17;
   end
```

**FIG._16B3**

```
17: begin
     we = 0;
     a = recursion_stack_pointer + 3;
     d = _MoveRing_Tower3;
     we = 1;
     state = 18;
   end

18: begin
     we = 0;
     _11_8 = return_state_MoveRing;
     a = recursion_stack_pointer + 4;
     d = _11_8;
     we = 1;
     state = 19;
   end

19: begin
     we = 0;
     recursion_stack_pointer = recursion_stack_pointer + 5;
     _MoveRing_nRings = _5_8;
     _MoveRing_Tower1 = _6_8;
     _MoveRing_Tower2 = _7_8;
     _MoveRing_Tower3 = _8_8;
     return_state_MoveRing = 20;
     state = _MoveRing;
   end

20: begin
     recursion_stack_pointer = recursion_stack_pointer - 5;
     a = recursion_stack_pointer;
     state = 21;
   end

21: begin
     _MoveRing_nRings = o;
     a = recursion_stack_pointer + 1;
     state = 22;
   end

22: begin
     _MoveRing_Tower1 = o;
     a = recursion_stack_pointer + 2;
     state = 23;
   end

23: begin
     _MoveRing_Tower2 = o;
     a = recursion_stack_pointer + 3;
     state = 24;
   end
```

## FIG._16B4

```
24: begin
    _MoveRing_Tower3 = o;
    a = recursion_stack_pointer + 4;
    state = 25;
end

25: begin
    _12_8 = o;
    return_state_MoveRing = _12_8;
    state = 3;
end

3: state = return_state_MoveRing;

26: begin
    ready_Hanoi = 1;
    state = 0;
end

default: ;
endcase
end
end
endmodule
```

## FIG._16B5

```
#include <stdio.h>

void f1 ()
{
    printf ("%d\n", 1);
}

void f2 ()
{
    printf ("%d\n", 2);
}

void main (n)
{
    void (* f) ();

    f = n == 1 ? f1 : f2;
    f ();
}
```

*FIG._17A*

```
module PtrFtn (clock, reset, printf_1_1_line_19, printf_2_1_line_24, param_main_n, run_f1, ready_f1,
               run_f2, ready_f2, run_main, ready_main);
    input       clock, reset, run_f1, run_f2, run_main;
    input  [15:0] param_main_n;
    output      ready_f1, ready_f2, ready_main;
    output [15:0] printf_1_1_line_19, printf_2_1_line_24;
    reg         ready_f1, ready_f2, ready_main;
    reg    [ 1:0] state, return_state_f1, return_state_f2;
    reg    [15:0] printf_1_1_line_19, printf_2_1_line_24, _110_main_f;
    parameter _f1 = 1, _f2 = 2;

    always @(posedge clock)
    begin
        if (reset)
        begin
            printf_1_1_line_19 = 0;
            printf_2_1_line_24 = 0;
            _110_main_f      = 0;
            ready_f1         = 0;
            return_state_f1  = 0;
            ready_f2         = 0;
            return_state_f2  = 0;
            ready_main       = 0;
            state = 0;
        end
```

*FIG._17B1*

```
          else
          begin
            case (state)
              0: begin
                if (run_f1)
                begin
                  ready_f1 = 0;
                  return_state_f1 = 0;
                  state = _f1;
                end
                else if (run_f2)
                begin
                  ready_f2 = 0;
                  return_state_f2 = 0;
                  state = _f2;
                end
                else if (run_main)
                begin
                  ready_main = 0;
                  _110_main_f = ((param_main_n == 16'd1) ? _f1 : _f2);
                  state = _110_main_f;
                end
              end
              _f1: begin
                printf_1_1_line_19 = 16'd1;
                // User Verilog code
                $write ("%d\n", printf_1_1_line_19);
                // End of user Verilog code
                ready_f1 = 1;
                state = return_state_f1;
              end
              _f2: begin
                printf_2_1_line_24 = 16'd2;
                // User Verilog code
                $write ("%d\n", printf_2_1_line_24);
                // End of user Verilog code
                ready_f2 = 1;
                state = return_state_f2;
              end
              3: begin
                ready_main = 1;
                state = 0;
              end
              default: ;
            endcase
          end
        end
      endmodule
```

**FIG._17B2**

```
int sum (int array [], int size)
{
    int i, sum = 0;

    for (i = 0; i < size; i ++)
        sum += array [i];

    return sum;
}

int main ()
{
    int i;
    int array [10];
    int size = sizeof (array) / sizeof (*array);

    array [0] = 1;
    array [1] = 2;
    array [2] = 3;

    for (i = 3; i < size; i++)
        array [i] = i * 2;

    return sum (array, size);
}
```

## FIG._18A

```
// Global macro definitions
`define UNIT_MAIN        16'h5000
`define UNIT_SIZE        16
`define ADDRESS_SIZE     16
`define DATA_SIZE        32

// Local macro definitions
`define STATE_SIZE       5
`define WORD_SIZE        32
`define WORD_MEMORY_SIZE 15
`define MEMORY_SIZE      480

// External functions defined in the translated C file
`define _sum                    32'h50000001
`define offset__sum             1
`define var__sum                memory [1]
`define state__sum              5'd1
`define _sum__array             32'h50000002
`define offset__sum__array      2
`define var__sum__array         memory [2]
`define _sum__size              32'h50000003
`define offset__sum__size       3
`define var__sum__size          memory [3]
`define _main                   32'h50000004
`define offset__main            4
`define var__main               memory [4]
`define state__main             5'd2

// Static, auto and register variables located in module's internal memory
`define main_3_main_array       32'h50000005
`define offset_main_3_main_array  5

module main (reset, clock, master, in_unit, in_address, in_data, in_read, in_call, out_unit,
                        out_address, out_data, out_read, out_call );
    input       reset, clock, in_call, in_read;
    output      master, out_read, out_call;
    reg         master, out_read, out_call;

    input  [`UNIT_SIZE    - 1 : 0] in_unit;
    input  [`ADDRESS_SIZE - 1 : 0] in_address;
    input  [`DATA_SIZE    - 1 : 0] in_data;

    output [`UNIT_SIZE    - 1 : 0] out_unit;
    output [`ADDRESS_SIZE - 1 : 0] out_address;
    output [`DATA_SIZE    - 1 : 0] out_data;

    reg    [`UNIT_SIZE    - 1 : 0] out_unit;
    reg    [`ADDRESS_SIZE - 1 : 0] out_address;
    reg    [`DATA_SIZE    - 1 : 0] out_data;

// Module data
    reg    [`STATE_SIZE - 1 : 0] state;
    reg    [`STATE_SIZE - 1 : 0] return_state;
    reg    [`WORD_SIZE  - 1 : 0] memory [0 : `WORD_MEMORY_SIZE - 1];
```

**FIG._18B1**

```
// Predefined states parameter [4:0]
    init       = 5'd0,
    idle       = 5'd20,
    read       = 5'd21,
    write      = 5'd22,
    intercall  = 5'd23,
    intercall2 = 5'd24,
    intercall3 = 5'd25,
    answer     = 5'd26,
    answer2    = 5'd27;
// Function result registers
    reg [31:0] result__sum, result__main;
// Static, auto and register variables located on registers
    reg [31:0] main_2_sum_i, main_2_sum_sum, main_3_main_i, main_3_main_size;
// Temporary registers
    reg [31 : 0]  _6_32, _8_32, _9_32, _11_32;     reg [ 0 : 0]  _7_1, _10_1;
always @(posedge reset or posedge clock) // Clock cycle
begin
        if (reset)
        begin
            master = 0;
            state  = idle;
        end
        else
        begin
            case (state)
            idle: begin
              if (in_unit == `UNIT_MAIN)
                begin
                    if (in_call)
                    begin
                      out_unit = in_unit;
                      out_address = in_address;
                      out_data = answer;
                      return_state = in_address;
                      state = write;
                    end
                    else
                    begin
                      out_unit  = in_unit;
                      out_address = in_address;
                      return_state  = answer;
                      if (in_read)
                          state = read;
                      else
                      begin
                        out_data  = in_data;
                        state = write;
                      end
                    end
                end
              end
            end
```

**FIG._18B2**

```
init: begin
    master = 1;
    state = answer;
end

`state__sum: begin
    main_2_sum_sum = 32'd0;
    main_2_sum_i = 32'd0;
    state = `STATE_SIZE'd11;
end

`STATE_SIZE'd11: begin
    _6_32 = (main_2_sum_i - `var__sum__size);
    _7_1 = _6_32 [31] == 1'b1;
    state = _7_1 ? `STATE_SIZE'd12 : `STATE_SIZE'd13;
end

`STATE_SIZE'd12: begin
    { out_unit, out_address } = (`var__sum__array + main_2_sum_i);
    return_state = `STATE_SIZE'd17;
    state = read;
end

`STATE_SIZE'd17: begin
    _8_32 = out_data;
    main_2_sum_sum = (main_2_sum_sum + _8_32);
    main_2_sum_i = (main_2_sum_i + 32'd1);
    state = `STATE_SIZE'd11;
end

`STATE_SIZE'd13: begin
    result__sum = main_2_sum_sum;
    { out_unit, out_address } = `_sum;
    out_data = result__sum;
    master = 1;
    state = `var__sum;
end

`state__main: begin
    main_3_main_size = 32'd10;
    memory [`main_3_main_array - (`UNIT_MAIN << `ADDRESS_SIZE)] = 32'd1;
    memory [(`main_3_main_array + 32'd1) - (`UNIT_MAIN << `ADDRESS_SIZE)] = 32'd2;
    memory [(`main_3_main_array + 32'd2) - (`UNIT_MAIN << `ADDRESS_SIZE)] = 32'd3;
    main_3_main_i = 32'd3;
    state = `STATE_SIZE'd14;
end

`STATE_SIZE'd14: begin
    _9_32 = (main_3_main_i - main_3_main_size);
    _10_1 = _9_32 [31] == 1'b1;
    state = _10_1 ? `STATE_SIZE'd15 : `STATE_SIZE'd16;
end
```

*FIG._18B3*

```
`STATE_SIZE'd15: begin
    _11_32 = (main_3_main_i << 1'd1);
    { out_unit, out_address } = (`main_3_main_array + main_3_main_i);
    out_data = _11_32;
    return_state = `STATE_SIZE'd18;
    state = write;
end

`STATE_SIZE'd18: begin
    main_3_main_i = (main_3_main_i + 32'd1);
    state = `STATE_SIZE'd14;
end

`STATE_SIZE'd16: begin
    `var__sum__array = `main_3_main_array;
    `var__sum__size = main_3_main_size;
    `var__sum = `STATE_SIZE'd19;
    state = `state__sum;
end

`STATE_SIZE'd19: begin
    result__main = result__sum;
    { out_unit, out_address } = `_main;
    out_data = result__main;
    master = 1;
    state = `var__main;
end

read: begin
    if (out_unit != `UNIT_MAIN)
     begin
        out_read = 1;
        out_call = 0;
        master  = 1;
        state` = intercall;
     end
     else
     begin
        out_data = memory [out_address];
        if (return_state == answer)
            master = 1;
        state = return_state;
     end
   end.
```

### FIG._18B4

```
write: begin
  if (out_unit != `UNIT_MAIN)
   begin
     out_read = 0;
     out_call = 0;
     master  = 1;
     state = intercall;
   end
   else
   begin
     memory [out_address] = out_data;
     if (return_state == answer)
         master = 1;
     state = return_state;
   end
 end

intercall: begin
   state = intercall2;
 end

intercall2: begin
   master = 0;
   state  = intercall3;
 end

intercall3: begin
   if ({ in_unit, in_address } == { out_unit, out_address })
    begin
      out_data  = in_data;
      state = return_state;
    end
 end

answer: begin
   state = answer2;
 end

answer2: begin
   master = 0;
   state  = idle;
 end

default:
   state = idle;
 endcase
end
end
endmodule
```

*FIG._18B5*

```
int data_in;
int out1;
int out2;
int data_out;

void pipeline_stage_1 ()
{
    while (data_in != 0)
        out1 = data_in + 1;

    if (data_in == 1)
        while (data_in == 1)
            out1 = 2;
}

void pipeline_stage_2 ()
{
    while (out1 == 0)
        out2 = 0;

    while (out1 != 0)
        out2 = out1 + 1;
}

void pipeline_stage_3 ()
{
    if (out2 == 1)
        while (out2 == 1)
            data_out = 2;

    while (out2 != 0)
        data_out = out2 + 1;
}

#ifndef __SYNETRY__

#include <stdio.h>

void main ()
{
    for (;;)
    {
        scanf ("%d", & data_in);
        pipeline_stage_1 ();
        pipeline_stage_2 ();
        pipeline_stage_3 ();
        printf ("%d", data_out);
    }
}

#endif
```

**FIG._19A**

```
module Pipeline(clock,reset,_data_in,_data_out,run_pipeline_stage_1,ready_pipeline_stage_1,
        run_pipeline_stage_2,ready_pipeline_stage_2,run_pipeline_stage_3,ready_pipeline_stage_3);
    input        clock, reset, run_pipeline_stage_1, run_pipeline_stage_2, run_pipeline_stage_3;
    input  [15:0]  _data_in;
    output         ready_pipeline_stage_1, ready_pipeline_stage_2, ready_pipeline_stage_3;
    output [15:0]  _data_out;
    reg            ready_pipeline_stage_1, ready_pipeline_stage_2, ready_pipeline_stage_3;
    reg    [ 2:0]  state1, state2, state3;
    reg    [15:0]  _data_out, _out1, _out2;

    always @(posedge clock)
    begin
      if (reset)
        state1 = 0;
      else
      begin
        case (state1)

          0: begin
            if (run_pipeline_stage_1)
             begin
               ready_pipeline_stage_1 = 0;
                 state1 = 1;
             end
          end

          1: state1 = (_data_in != 16'd0) ? 2 : 3;

          2: begin
             _out1 = (_data_in + 16'd1);
              state1 = 1;
          end

          3: state1 = (_data_in == 16'd1) ? 4 : 6;

          4: state1 = (_data_in == 16'd1) ? 5 : 6;

          5: begin
             _out1 = 16'd2;
              state1 = 4;
          end

          6: begin
             ready_pipeline_stage_1 = 1;
              state1 = 0;
          end

          default:  ;

        endcase
      end
    end
```

*FIG._19B1*

```
always @(posedge clock)
begin
  if (reset)
     state2 = 0;
  else
  begin
    case (state2)

      0: begin
         if (run_pipeline_stage_2)
         begin
            ready_pipeline_stage_2 = 0;
             state2 = 1;
         end
      end

      1: state2 = (_out1 == 16'd0) ? 2 : 3;

      2: begin
         _out2 = 16'd0;
         state2 = 1;
      end

      3: state2 = (_out1 != 16'd0) ? 4 : 5;

      4: begin
         _out2 = (_out1 + 16'd1);
         state2 = 3;
      end

      5: begin
         ready_pipeline_stage_2 = 1;
          state2 = 0;
      end

      default:  ;

    endcase
  end
end
```

**FIG._19B2**

```
always @(posedge clock)
begin
  if (reset)
     state3 = 0;
  else
  begin
    case (state3)

      0: begin
         if (run_pipeline_stage_3)
         begin
           ready_pipeline_stage_3 = 0;
           state3 = (_out2 == 16'd1) ? 1 : 3;
         end
      end

      1: state3 = (_out2 == 16'd1) ? 2 : 3;

      2: begin
         _data_out = 16'd2;
         state3 = 1;
      end

      3: state3 = (_out2 != 16'd0) ? 4 : 5;

      4: begin
         _data_out = (_out2 + 16'd1);
         state3 = 3;
      end

      5: begin
         ready_pipeline_stage_3 = 1;
         state3 = 0;
      end

      default:  ;

    endcase
  end
end

endmodule
```

**FIG._19B3**



**FIG._19C**

```c
#include <stdio.h>

typedef enum { true = 1, false = 0 } bool;

void main ()
{
    bool bLightIsOn = true;

    printf ("Light.c - C program working on APS-X84 FPGA test card\n");

    for (;;)
    {
        int counter;

        printf
        (
            "Enter the number of clock ticks"
            " to wait before the light change: "
        );

        scanf ("%d", & counter);

        if (counter < 0)
            counter = 0;

        while (counter -- != 0)
            printf ("Waiting...\n");

        bLightIsOn = ! bLightIsOn;

        printf ("Light is: %d\n", bLightIsOn);
    }
}
```

*FIG._20A*

```
module Light (clock, reset, scanf_0_1_line_33_counter, printf_4_1_line_43_bLightIsOn,
              run_main, ready_main );
    input          clock, reset, run_main;
    input  [ 7:0]  scanf_0_1_line_33_counter;

    output         ready_main;
    output [ 1:0]  printf_4_1_line_43_bLightIsOn;
    reg            ready_main, _1_1;
    reg    [ 1:0]  printf_4_1_line_43_bLightIsOn, _3_main_bLightIsOn, 3_2;
    reg    [ 2:0]  state;
    reg    [ 7:0]  _4_main_counter, _2_8;

    always @(posedge clock)
    begin
       if (reset)
          state = 0;
       else
       begin
          case (state)

          0: begin
             if (run_main)
             begin
                ready_main = 0;
                _3_main_bLightIsOn = 2'd1;
                // User Verilog code
                $write ("Light.c - C program working on APS-X84 FPGA test card\n");
                // End of user Verilog code
                state = 1;
             end
          end

          1: begin
             // User Verilog code
             $write ("Enter the number of clock ticks to wait before the light change: ");
             // End of user Verilog code
             _4_main_counter = scanf_0_1_line_33_counter;
             _1_1 = _4_main_counter [7] == 1'b1;
             if (_1_1)
                _4_main_counter = 8'd0;
             state = 2;
          end

          2: begin
             _2_8 = _4_main_counter;
             _4_main_counter = (_2_8 - 8'd1);
             state = (_2_8 != 8'd0) ? 3 : 4;
          end
```

*FIG._20B1*

```
      3: begin
        // User Verilog code
        $write ("Waiting...\n");
        // End of user Verilog code
         state = 2;
      end

      4: begin
         _3_2 = (! _3_main_bLightIsOn);
         _3_main_bLightIsOn = _3_2;
         printf_4_1_line_43_bLightIsOn = _3_main_bLightIsOn;
         // User Verilog code
         $write ("Light is: %d\n", printf_4_1_line_43_bLightIsOn);
         // End of user Verilog code
          state = 1;
      end

      default: ;

      endcase
    end
  end

endmodule

//    APSX84.v - Verilog wrapper module which instantiates module Light.v.
//           This design is intended to run on APS-X84 board.
//

module APSX84 ( clock, clock_enable, reset, data, LCD);

    input       clock      /* synthesis xc_loc=P24  */ ;
    input       clock_enable /* synthesis xc_loc=P3   */ ;
    input       reset      /* synthesis xc_loc=P4   */ ;
    input [5:0] data        /* synthesis xc_loc="P10,P9,P8,P7,P6,P5" */ ;
    output      LCD         /* synthesis xc_loc=P35  */ ;

    wire        internal_clock = clock & clock_enable;
    wire [7:0]  data8  = { data, 2'b0 };
    wire [1:0]  LCD2;
    wire        LCD = LCD2 [0];
    wire        run_main  = 1;

    Light Light ( internal_clock, reset, data8, LCD2, run_main,);

endmodule
```

FIG._20B2

```
int sum (int n)
{
    int i, sum = 0;
    for (i = 0; i != n; i++)
        sum += i;
    return sum;
}
```

*FIG._21A*

```
module Sum (clock, reset, result__sum, param__sum__n, run__sum, ready__sum );
    input          clock, reset, run__sum;
    input  [15:0]  param__sum__n;
    output         ready__sum;
    output [15:0]  result__sum;
    reg            ready__sum;
    reg    [ 1:0]  state;
    reg    [15:0]  result__sum, s_2_sum_i, s_2_sum_sum;

    always @(posedge clock)
    begin
        if (reset)
            state = 0;
        else
        begin
            case (state)

                0: begin
                    if (run__sum)
                    begin
                        ready__sum = 0;
                        s_2_sum_sum = 16'd0;
                        s_2_sum_i = 16'd0;
                        state = 1;
                    end
                end

                1: state = (s_2_sum_i != param__sum__n) ? 2 : 3;

                2: begin
                    s_2_sum_sum = (s_2_sum_sum + s_2_sum_i);
                    s_2_sum_i = (s_2_sum_i + 16'd1);
                    state = 1;
                end

                3: begin
                    result__sum = s_2_sum_sum;
                    ready__sum = 1;
                    state = 0;
                end

                default:  ;

            endcase
        end
    end
endmodule
```

*FIG._21B*

```
library IEEE;
use IEEE.STD_Logic_1164.all;
use IEEE.Numeric_Std.all;

entity synetry_sum is
port( clock        : in  std_logic;
      reset        : in  boolean;
      run_sum      : in  boolean;
      param_sum_n : in  integer range 0 to 65535;
      result_sum : out integer range 0 to 65535;
      ready_sum  : out boolean  );
end entity synetry_sum;

architecture RTL of synetry_sum is
begin
   process_synetry_sum : process
      variable state       : integer range 0 to 3;
      variable s_2_sum_i   : integer range 0 to 65535;
      variable s_2_sum_sum : integer range 0 to 65535;
   begin
      wait until clock'event and clock = '1';
      if (reset) then
         state := 0;
      else
         case (state)is
            when 0 =>
               if (run_sum)then
                  ready_sum <= false;
                  s_2_sum_sum := 0;
                  s_2_sum_i := 0;
                  state := 1;
               end if;
            when 1 =>
               if (s_2_sum_i /= param_sum_n) then
                  state := 2;
               else
                  state := 3;
               end if;
            when 2 =>
               s_2_sum_sum := s_2_sum_sum + s_2_sum_i;
               s_2_sum_i := s_2_sum_i + 1;
               state := 1;
            when 3 =>
               result_sum <= s_2_sum_sum;
               ready_sum <= true;
               state := 0;
         end case;
      end if;
      wait;
   end process process_synetry_sum;
end architecture RTL;
```

**FIG._21C**

```
int read (int * p)
{
  return * p;
}
```

## FIG._22A

```
module Read(clock,reset,a,d,o,we,result_read,param_read_p,run_read,ready_read);
    input         clock, reset, run_read;
    input   [ 3:0]  o, param_read_p;
    output        we, ready_read;
    output  [ 3:0]  a, d, result_read;
    reg           we, ready_read, state;
    reg     [ 3:0]  a, d, result_read;

    always @(posedge clock)
    begin
      if (reset)
      begin
        we = 0;
        state = 0;
      end
      else
      begin
        case (state)

        0:begin
          if (run_read)
          begin
            ready_read = 0;
            a = param_read_p;
            state = 1;
          end
        end

        1:begin
          _1_4 = o;
          result_read = _1_4;
          ready_read = 1;
          state = 0;
        end

        default:  ;
        endcase
      end
    end
endmodule
```

## FIG._22B



*FIG.–22C-1*



FIG._22C-2

FIG._22C

FIG._22C-1
FIG._22C-2

```
void write (int * p, int d)
{
   * p = d;
}
```

FIG._23A

```
module Write(clock,reset,a,d,o,we,param_write_p,param_write_d,run_write,ready_write);
   input         clock, reset, run_write;
   input   [ 3:0] o, param_write_p, param_write_d;
   output        we, ready_write;
   output  [ 3:0] a, d;
   reg           we, ready_write, state;
   reg     [ 3:0] a, d;

   always @(posedge clock)
   begin
      if (reset)
      begin
         we = 0;
         state = 0;
      end
      else
      begin
         case (state)

         0:begin
            if (run_write)
            begin
               ready_write = 0;
               a = param_write_p;
               d = param_write_d;
               we = 1;
               state = 1;
            end
         end

         1:begin
            we = 0;
            ready_write = 1;
            state = 0;
         end

         default:   ;

         endcase
      end
   end

endmodule
```

FIG._23B



FIG._23C-1



FIG._23C-2

FIG._23C-1
FIG._23C-2

FIG._23C

```
typedef struct
{
        int a;
        int b;
} STRUCTURE;

int read_member_b (STRUCTURE *p)
{
   return p -> b;
}
```

*FIG._24A*

```
module Struct1 (clock,reset,a,d,o,we,result_read_member_b,param_read_member_b_p,
                run_read_member_b,ready_read_member_b);
   input        clock, reset, run_read_member_b;
   input  [3:0] o, param_read_member_b_p;
   output       we, ready_read_member_b;
   output [3:0] a, d, result_read_member_b;
   reg          we, ready_read_member_b, state;
   reg    [3:0] a, d, result_read_member_b, _1_4;

   always @(posedge clock)
   begin
     if (reset)
     begin
       we = 0;
       state = 0;
     end
     else
     begin
       case (state)

         0:begin
           if (run_read_member_b)
             begin
               ready_read_member_b = 0;
               a = (param_read_member_b_p + 4'd1);
               state = 1;
             end
         end

         1:begin
           _1_4 = o;
           result_read_member_b = _1_4;
           ready_read_member_b = 1;
           state = 0;
         end

         default: ;

       endcase
     end
   end
endmodule
```

*FIG._24B*



*FIG._24C-1*



FIG._24C-2

FIG._24C

```
typedef struct
{
        int a;
        int b;
} STRUCTURE;

void write_member_b (STRUCTURE *p, int n)

{
  p -> b = n;
}
```

*FIG._25A*

```
module Struct2(clock,reset,a,d,o,we,param_write_member_b_p,param_write_member_b_n,
                  run_write_member_b,ready_write_member_b);
    input           clock, reset, run_write_member_b;
    input   [ 3:0]  o, param_write_member_b_p, param_write_member_b_n;
    output          we, ready_write_member_b;
    output  [ 3:0]  a, d;
    reg             we, ready_write_member_b, ready_write_member_b, state;
    reg     [ 3:0]  a, d;
    always @(posedge clock)
    begin
      if (reset)
      begin
        we = 0;
        state = 0;
      end
      else
      begin
        case (state)

        0:begin
          if (run_write_member_b)
            begin
              ready_write_member_b = 0;
              a = (param_write_member_b_p + 4'd1);
              d = param_write_member_b_n;
              we = 1;
              state = 1;
            end
          end

          1:begin
            we = 0;
            ready_write_member_b = 1;
            state = 0;
          end

          default:  ;

        endcase
      end
    end
endmodule
```

*FIG._25B*



FIG._25C-1



FIG._25C-2

FIG._25C

FIG._25C-1

FIG._25C-2

```
typedef struct
{
        int a;
        int b;
} STRUCTURE;

STRUCTURE s;

int read_member_b (void)

{
  return s.b;
}
```

*FIG._26A*

```
`define _s 2'h1
module Struct4(clock,reset,a,d,o,we,result_read_member_b,run_read_member_b,ready_read_member_b);
    input         clock, reset, run_read_member_b;
    input   [ 3:0]  o;
    output        we, ready_read_member_b;
    output  [ 1:0]  a, d, result_read_member_b;
    reg           we, ready_read_member_b, state;
    reg     [ 1:0]  a, d, result_read_member_b;
    reg     [ 3:0]  _1_4 ;
    always @(posedge clock)
    begin
      if (reset)
      begin
        we = 0;
        state = 0;
      end
      else
      begin
        case (state)

        0: begin
          if (run_read_member_b)
          begin
            ready_read_member_b = 0;
            a = (`_s + 4'd1);
            state = 1;
          end
        end

        1: begin
          _1_4 = o;
          result_read_member_b = _1_4;
          ready_read_member_b = 1;
          state = 0;
        end

        default:  ;
        endcase
      end
    end
    endmodule
```

*FIG._26B*



FIG._26C-1



*FIG._26C-2*

*FIG._26C*

```
typedef struct
{
        int a;
        int b;
} STRUCTURE;

STRUCTURE s;

void write_member_b (int n)

{
  s.b = n;
}
```

### FIG._27A

```
`define _s  2'h1
module Struct5(clock,reset,a,d,o,we,param_write_member_b_n,run_write_member_b,ready_write_member_b);
    input        clock, reset, run_write_member_b;
    input  [ 3:0]  param_write_member_b_n, o;
    output       we, ready_write_member_b;
    output [ 1:0]  a;
    output [ 3:0]  d;
    reg          we, ready_write_member_b, state;
    reg    [ 1:0]  a;
    reg    [ 3:0]  d;
    always @(posedge clock)
    begin
      if (reset)
      begin
        we = 0;
        state = 0;
      end
      else
      begin
        case (state)
        0: begin
           if (run_write_member_b)
           begin
             ready_write_member_b = 0;
             a = (`_s + 4'd1);
             d = param_write_member_b_n;
             we = 1;
             state = 1;
           end
         end
        1: begin
           we = 0;
           ready_write_member_b = 1;
           state = 0;
         end
        default:  ;
      endcase
      end
    end
  endmodule
```

### FIG._27B



FIG._27C-1



*FIG._27C-2*

*FIG._27C*

US 6,226,776 B1

1

# SYSTEM FOR CONVERTING HARDWARE DESIGNS IN HIGH-LEVEL PROGRAMMING LANGUAGE TO HARDWARE IMPLEMENTATIONS

## CROSS-REFERENCE TO MICROFICHE APPENDIX

Appendix A, which is a part of the present disclosure, is a microfiche appendix consisting of two sheets of microfiche having a total of 176 frames. Microfiche Appendix A is a source code listing of a portion of the code comprising one embodiment of a system for converting hardware designs in a highlevel programming language (ANSI C) into a register transfer level hardware description language (Verilog), which is described in more detail below.

A portion of the disclosure of this patent document contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure, as they appear in the U.S. Patent and Trademark Office patent files or records, but otherwise reserves all copyright rights whatsoever.

## FIELD OF THE INVENTION

This invention relates to configuring digital circuits, especially computationally intensive digital circuitry, such as field programmable gate arrays (FPGAs) and other programmable logic hardware and application specific integrated circuits (ASICs), and, more particularly, to computer aided design of such computationally intensive digital circuitry. Specifically, one embodiment of the invention provides a system for converting a hardware design rendered in a high-level programming language, such as ANSI C, into an actual hardware implementation, for example, as an FPGA.

Various persons have previously attempted to address the long-felt need for an easy approach to designing computationally intensive digital circuits, such as FPGAs. The prior art evidences two divergent approaches for designing actual implementations for digital hardware.

One prior art approach has been to create a specific hardware description language (HDL) for designing hardware. Various commercially available HDLs have been developed, such as Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM. After a hardware design is rendered in an HDL, the HDL design is processed into a gate-level hardware representation using one of various hardware- or manufacturer-specific synthesis programs to interpret the HDL design. Then, the gate-level representation is reduced to an actual hardware implementation using conventional physical design tools.

HDLs are specific computer aided design tools for hardware designers and require a level of expertise in the use of the particular HDL being employed to render a hardware design and are difficult to learn and use. See, for example, Tuck, B., "Raise Your Sights to the System Level," Computer Design, June, 1997, pp. 53, 69. Therefore, only persons who frequently design hardware typically use HDLs. If a circuit application arises in which design and implementation of an FPGA is economically justified, the vast majority of persons must retain an expert or confront the difficult task of learning an HDL. Furthermore, these HDLs are not typically universal for the design of FPGAs, since many HDLs are supported by only a single or a limited number of hardware manufacturers. Consequently, even experienced users of an HDL, such as fill-time hardware designers, may not be sufficiently familiar with other HDLs to be able to

2

render a design which can be implemented in a variety of hardware systems from a number of different hardware manufacturers. There is therefore a need for an easy-to-use, universal computer aided hardware design tool by both experts and occasional hardware designers as well.

A second prior art approach recognizes that the development of computationally intensive hardware would be available to a wider population of persons if hardware designs could be rendered in a standard high-level programming language which is more universally known, easier to use, and more frequently employed than HDLs. One such high-level programming language is ANSI C. Others, many of which have several extensions, are: APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, Python, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

Unfortunately, prior art attempts to base computer aided hardware design tools on high-level programming languages have been incomplete. Consequently, these attempts to realize the goal of providing an effective tool for designing hardware using a high-level programming language have not achieved widespread use. All the prior art attempts have each suffered three or more of the following shortcomings:

1. Prior art computer aided hardware design tools generate so many unhandled exceptions and language restrictions when presented with typical high-level language programs (e.g., a C program) that it renders such tools virtually useless for practical hardware design. Therefore, persons using such tools are required to read manuals and attempt to create work-arounds for portions of the high-level programming language, which are not implemented.

2. Hardware generated using prior art computer aided hardware design tools is typically based on simple line-by-line, table-driven translation and as such does not contain the necessary widely scoped optimizations that produce practical and useful hardware designs for most applications.

3. Design output of the prior art computer aided hardware design tool can be in so-called "behavioral HDL" for modeling hardware but in many cases cannot be synthesized by existing synthesis programs into a gate-level representation of the hardware.

4. Prior art computer aided hardware design tools attempt to generate designs which only apply to a single manufacturer hardware family, such as the creation of an XNF file for the Xilinx XC4000 FPGA family.

5. The language employed by prior art computer aided hardware design tools has added and limited so many constructs that it is difficult to consider the employed language as the high-level programming language purportedly being emulated. That is, the result language is more like a new specialized HDL.

Considered in more detail, one prior art computer aided hardware design tool which purports to enable persons to render hardware designs in a high-level programming language is Transmogrifier (TMCC), a tool developed in 1994–1995 at the University of Toronto, Canada. A comprehensive compiler typically requires at least ten times the 4,900 lines of code which comprise TMCC. TMCC does not support such common C-type programming language features as "do" loops, "for" loops, local or global arrays (i.e., the [ ] emulator), the operators ->, unary &, unary *, etc.

Another prior art computer aided hardware design tool is NLC developed at Ecole Polytechnique Federale de

US 6,226,776 B1

3

Lausanne, Switzerland in 1994–1995. The code for NLC is based on the public domain compiler known as GNU. Like Transmogrifier, NLC supports a severely restricted subset of C-type programming language, for example, "for" loop bounds must be known at compile time, and functions cannot return values. The NLC library generates hardware designs only in XNF format for the Xilinx XC4000 FPGA family.

A prior art computer aided design tool for hardware which purports to be a high-level programming language is Handel-C, originally developed at the Computing Laboratory of Oxford University, England in 1995–1996 and presently supported by Embedded Solutions Limited in Berkshire, England. Although Handel-C has been described by its developers as a subset of ANSI C with some Occam-like extensions, the vast majority of ANSI C programs cannot be processed by Handel-C. For example, functions in Handel-C must be declared in main, have no return values, and have no parameters. There are no structs, unions, enums, struct bit fields, character constants, externs, pointers, etc. The output of Handel-C is in XNF format for the Xilinx XC4000 FPGA family. Since the language is so unlike a high-level programming language, Handel-C is better classified as an HDL for the xilinx XC4000 FPGA family.

A further prior art computer aided hardware design tool is XC. XC was developed at Giga Operations Corporation in Berkeley, Calif. XC appears to be generally disclosed in Taylor, U.S. Pat. No. 5,535,342 issued on Jul. 9, 1996 and in Taylor et al., U.S. Pat. No. 5,603,043 issued on Feb. 11, 1997, both assigned to Giga Operations. There is little resemblance to C-type programming language. XC does not appear to implement structures, pointers, multidimensional arrays, unary &, unary *, etc., as evidenced by various examples published by Giga Operations at its web site. The output of XC is targeted only at the XC4000 board manufactured by Giga Operations that incorporates the Xilinx XC4000 FPGA family.

Finally, an analysis of the prior art would be incomplete without mention of the JRS ANSI C to VHDL Translator (JRS) developed at JRS Research Laboratories, Inc., Orange, Calif. in 1996. JRS appears to handle a wider range of high-level programming language features than other known prior art attempts but still lacks such standard features as multidimensional arrays, abstract declarators, automatic type conversions, pointers to arrays, pointers to functions, functions returning pointers, variable-length argument lists, and "goto" statements. An even more significant deficiency of JRS is that the output of JRS is in general not synthesizable VHDL. JRS utilizes constructs in VHDL considered "behavioral VHDL," that are useful to describe hardware for simulation, but in general cannot be implemented into gate-level hardware representations by existing synthesis tools. As such, JRS is appropriately classified as a language translator, not a compiler that outputs realizable hardware designs. JRS does not address register transfer level (RTL) HDL problems of translating a high-level language to a hardware design.

Consequently, there is a long-felt but unsolved need for a system in which a hardware design can be rendered in a high-level programming language in a way to enable the full power of that language to be employed as a computer aided design tool for hardware. There is also a concomitant need for a computer aided design tool for hardware which is familiar and therefore easier to use than HDLs and which is nevertheless universal in that the resulting hardware designs can be implemented by a broad range of hardware manufacturers.

4

SUMMARY OF THE INVENTION

The present invention provides a solution to the problem of facilitating the design of an actual hardware implementation for digital circuits using a high-level programming language by providing in one embodiment a system for converting a C-type language program to a hardware design implementation, such as an FPGA or other programmable logic or an ASIC. A method in accordance with one embodiment of the invention comprises the steps of creating an algorithmic representation for a preliminary hardware design in a given C-type programming language and compiling the C-type programming language description into a register transfer level (RTL) hardware description language (HDL) design which can be synthesized. Preferably, the method of the invention additionally comprises the step of synthesizing the HDL design into a gate-level hardware representation using a conventional synthesis program to interpret the HDL design.

In order to produce an actual hardware implementation, the method in accordance with the invention preferably further comprises the step of using conventional physical design tools to implement the gate-level hardware representation as an actual hardware implementation. These design tools include a place and route program. In the case of an FPGA, the physical design tools also include a hardware configuration system which processes the file produced by the place and route program and creates a bit stream to personalize the FPGA. In the case of an ASIC, the physical design tools include a place and route program for creating a file for patterning an integrated circuit mask for use in fabricating the ASIC.

The C-type programming language used to render an algorithmic representation for the preliminary hardware design may be any standard C-type programming language including ANSI C, B, C++, Java, Kernighan & Ritchie C, and Objective C. The method of the invention is robust in that the method converts any typical hardware design rendered with the C-type programming language into a standard HDL. The standard HDLs include Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM. The method in accordance with the invention first converts the preliminary hardware design to a register transfer level HDL, which enables the HDL design to be synthesized into a gate-level hardware representation using a standard synthesis program and then implemented as an actual hardware implementation using conventional physical design tools. In accordance with the invention, an embodiment of apparatus comprising a personal computer or workstation and executable code that implements the method of the inventing is also provided.

The method in accordance with the invention can further comprise simulating the HDL synthesizable design prior to synthesizing the HDL design. Any conventional simulation program used to simulate a standard HDL design can be employed for simulating the hardware design converted from a rendition in C-type programming language to HDL. This enables the design originally rendered in a C-type programming language to be simulated and the design to be modified before the hardware is actually synthesized and implemented using conventional physical design tools. Consequently, hardware designs rendered in the C-type programming language can be optimized before the hardware implementation phase. Unlike the prior art, the method of the invention enables a hardware design originally rendered in a C-type programming language to be both simulated and implemented in an actual hardware implementation. The apparatus in accordance with the invention can

US 6,226,776 B1

5

also be utilized to simulate the HDL synthesizable design following compilation to HDL using code that executes the standard simulation program.

In a preferred embodiment of the method in accordance with the invention, compilation of the C-type programming language into HDL comprises mapping predetermined C-type programming language expressions to functionally equivalent HDL program language expressions, assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design, and configuring in the HDL synthesizable design an interface for the gate-level hardware representation. This is sufficient for basic hardware designs rendered in the C-type programming language.

Additionally, efficient conversion of basic hardware designs from the C-type programming language to HDL preferably entails compilation of a plurality of selected C-type functions that can execute simultaneously into a plurality of executable HDL program language expressions that operate in parallel. Efficient conversion further entails compilation of a plurality of interdependent C-type functions into a plurality of executable HDL program language expressions that operate either simultaneously or sequentially in a data processing pipeline. Preferably, in order to effect efficient conversion, a callable C-type function is also compiled into an executable HDL program language expression that is executed either synchronously or a synchronously on the occurrence of an external event.

In the preferred embodiment of the method in accordance with the invention, compilation can comprise compiling a C-type program control flow into an HDL state machine. The method further comprises assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design and configuring in the HDL synthesizable design an interface for the gate-level hardware representation.

Also, the C-type program is preferably analyzed for determining the presence of any C-type pointers in the C-type program and compiling any C-type pointers and pointer indirection into an HDL state-machine-based memory access protocol. Therefore, unlike prior art computer aided hardware design tools, the method in accordance with the invention supports the use of memory structures and pointers typically employed in C-type programming language during the original rendering of the hardware design.

Additionally, the C-type program is preferably analyzed for determining the presence of any non-addressable variables in the C-type program and mapping any non-addressable variables onto hardware registers formed in HDL. Similarly, the C-type program is also analyzed for determining the presence of any addressable variables in the C-type program and mapping any addressable variables onto addressable hardware memory and/or an addressable array of hardware registers formed in HDL.

Finally, the C-type program is preferably analyzed for determining the presence of any complicated C-type mathematical operations in the C-type program and compiling multiple occurrences of any complicated C-type mathematical operation into a given HDL functional block that implements such an operation invoked on each occurrence by different states driven by the state machine. The complicated C-type mathematical operations include integer operations, such as signed and unsigned multiplication, signed and unsigned division, signed and unsigned remainder operation, variable-shift left shift, variable-shift right shift with or without sign extension, etc., and floating point

6

operations, such as addition, subtraction, subtraction from zero (unary−), multiplication, division, and conversions involving floating point types. The given HDL functional block is effectively re-used to provide resource-sharing for conversion to an efficient HDL synthesizable design.

Preferably, compilation in accordance with the method of the invention employs state machines for efficient conversion from the C-type programming language to the HDL program language. More particularly, a plurality of selected C-type functions that can execute simultaneously are compiled into a plurality of HDL state machines that operate in parallel. A plurality of selected C-type functions that can execute simultaneously are further preferably compiled into a plurality of HDL state machines that operate in parallel. Also, a plurality of interdependent C-type functions are compiled into a plurality of executable HDL program language expressions that operate either simultaneously or sequentially in a data processing pipeline. A callable C-type function is also preferably compiled into at least one executable HDL state machine which is executed either synchronously or a synchronously on the occurrence of an external event.

Also in accordance with the present invention, a solution is provided to the problem of facilitating the design of an actual hardware implementation using any high-level programming language by providing in one embodiment a system for initially translating from an algorithmic representation for a hardware design in any given standard high-level programming language to an algorithmic representation for the hardware design in a C-type programming language program and then converting the C-type language program to a hardware design implementation, such as an FPGA or other programmable logic or an ASIC. Standard high-level programming languages that can be translated to a C-type programming language utilizing conventional compilers include APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, Python, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

Accordingly, the invention also provides in one embodiment a method which comprises the steps of creating an algorithmic representation for a preliminary hardware design in a given high-level programming language, translating the high-level programming language preliminary hardware design into an algorithmic representation for the preliminary hardware design in a C-type programming language, and compiling the C-type programming language description into a register transfer level HDL design which can be synthesized. Preferably, the method of the invention additionally comprises the step of synthesizing the HDL design into a gate-level hardware representation using a conventional synthesis program to interpret the HDL design. In order to produce an actual hardware implementation, the method in accordance with the invention preferably further comprises the step of using conventional physical design tools to implement the gate-level hardware representation as an actual hardware implementation.

The steps of compiling the C-type programming language description for the preliminary hardware design into an HDL synthesizable design and synthesizing the HDL design using a conventional synthesis program are identical to the steps performed if the hardware design were initially rendered in the C-type programming language. Also, the step of then implementing the gate-level representation resulting from

7                                                  8

synthesizing the HDL design as an actual hardware implementation using conventional physical design tools is identical to the step performed after synthesis in the case where the algorithmic representation for the hardware design was initially rendered in the C-type programming language. This enables hardware designs rendered in virtually any standard high-level programming language to be implemented in hardware. Also, the method can further comprise simulating the HDL synthesizable design prior to synthesizing the HDL design. In accordance with the invention, an embodiment of apparatus comprising a personal computer or workstation and executable code that implements the method of the invention is also provided.

The system in accordance with the invention has significant advantages compared to the purported high-level language computer aided hardware design tools known in the prior art. The system of the invention is the only ANSI C compiler. The system in accordance with the invention supports C-type programming language pointers and pointer arithmetic, variable argument functions, pointers to functions, recursion, structure assignment, and floating point arithmetic. The system of the invention also supports C-type programming language structures, unions, enums, and typedefs, as well as the complete set of C-type programming language control flow operators, including "for", "while", and "do" loops, "if", "switch", "break", "continue", "goto", and "return". The system in accordance with the invention also supports C char type, including strings literals, character constants, character arrays, and character pointers. All basic C integer types and type conversions are supported by the system of the invention, and the system follows ANSI C rules for integer promotion in operations. The system in accordance with the invention converts an ANSI C algorithmic representation for a hardware design to a synthesizable hardware design in HDL, such as Verilog, and, therefore, is compliant with multiple hardware technologies, whereas the known prior art computer aided hardware design tools generate hardware- and/or manufacturer-specific files, such as an XNF file for the Xilinx XC4000 FPGA family. Unlike prior art computer aided hardware design tools that generate "behavioral VHDL" models that can only be simulated, the system of the invention enables both simulation and synthesis that leads to an actual hardware implementation.

BRIEF DESCRIPTION OF THE DRAWINGS

The above and other objectives and features and the concomitant advantages of the present invention will be better understood and appreciated by those skilled in the art in view of the description of the preferred embodiments given below in conjunction with the accompanying drawings. In the drawings:

FIG. 1 illustrates one embodiment of the computer aided hardware design tool for compiling C-type programming language into hardware description language (HDL) to enable conversion from a hardware design in a high-level programming language to a synthesizable HDL hardware design in accordance with the invention;

FIG. 2 is a flowchart of one embodiment of the method in accordance with the invention for compiling high-level programming language, such as C-type programming language, into HDL to enable conversion from a hardware design in a high-level programming language to a synthesizable HDL hardware design;

The remainder of the figures illustrates various examples of compilation of C-type programming language into a register transfer level (RTL) HDL to enable conversion from

a hardware design in a high-level programming language to a synthesizable HDL hardware design by the computer aided hardware design tool in accordance with the invention shown in FIG. 1, specifically:

FIG. 3A shows an initial C-language description having simple expression functions ("func1" and "func2");

FIG. 3B shows HDL created by compiling the C-type program shown in FIG. 3A, illustrating simple expression functions ("func1" and "func2") which do not require state machines implemented in RTL Verilog;

FIG. 4A shows an initial C-language description having "non-simple" expression functions ("func1", "func2", and "func3") using data conversions and "if-then-else" statements;

FIG. 4B shows HDL created by compiling "non-simple" expression functions ("func1", "func2", and "func3") of the C-type program shown in FIG. 4A, which do not require state machines implemented in RTL Verilog;

FIG. 5A shows an initial C-language description using "for" loop expressions and non-addressable variables;

FIG. 5B, comprising FIGS. 5B1–5B4, shows HDL created by compiling the C-type program shown in FIG. 5A, including a "for" loop and non-addressable variables mapped into registers using a state machine implemented in RTL Verilog;

FIG. 6A shows an initial C-language description with input/output (I/O) function calls;

FIG. 6B shows HDL created by compiling ANSI C printf and scanf arguments of the C-type program shown in FIG. 6A into wire assignments in RTL Verilog;

FIG. 7A shows an initial C-language description with multiple occurrences of complicated mathematical operations;

FIG. 7B, comprising FIGS. 7B1–7B4, shows HDL created by compiling the C-type program shown in FIG. 7A into functional blocks in RTL Verilog for complicated mathematical operations invoked on each occurrence by different states of the generated state machine;

FIG. 8A shows an initial C-language description having interdependent C-type functions;

FIG. 8B shows HDL created by compiling the C-type program shown in FIG. 8A into a simple data processing pipeline implemented in RTL Verilog;

FIG. 8C is a block diagram of the data processing pipeline implemented in the RTL Verilog shown in FIG. 8B;

FIG. 9A shows an initial C-language description having floating point arithmetic;

FIG. 9B, comprising FIGS. 9B1–9B4, shows HDL created by compiling the C-type program shown in FIG. 9A, illustrating subtraction from zero (unary–), addition, multiplication, subtraction, division, and conversion operations involving floating point arithmetic in RTL Verilog;

FIG. 10A shows an initial C-language description of two complex number addition with structures, including structure assignments, structure function parameters, and structure function return values;

FIG. 10B, comprising FIGS. 10B1–10B5, shows HDL created by compiling the C-type program shown in FIG. 10A, illustrating structure function parameters and structure return values implemented in hardware registers in RTL Verilog;

FIG. 11A, comprising FIGS. 11A1–11A2, shows an initial C-language description having pointers and pointer indirection;

9

FIG. 11B, comprising FIGS. 11B1–11B8, shows HDL created by compiling the C-type program shown in FIG. 11A, illustrating a non-addressable variable "p" implemented in a hardware register, addressable variables "pTree" and "Nodes" implemented in memory locations identified by addresses of "'_pTree" and "'_Nodes" in externally addressable hardware memory, and "while" loops, "if-then-else" statements, "return" statements, and function calls in RTL Verilog;

FIG. 12A shows an initial C-language description with a callable function;

FIG. 12B shows HDL created by compiling the C-type program shown in FIG. 12A, illustrating detection of the event "event_occurred" on the occurrence of the positive edge of a clock signal using "always" statements;

FIG. 13A shows an initial C-language description having a callable function and a pragma which directs compilation for asynchronous event detection;

FIG. 13B shows HDL created by compiling the C-type program shown in FIG. 13A illustrating detection of the event "event_occured" when the signal "run_on_event" transitions from false to true, which occurs a synchronously with the positive edge of a clock signal;

FIG. 14A shows an initial C-language description with parallel processing of two complex functions ("func1" and "func2") which do not interfere with each other;

FIG. 14B, comprising FIGS. 14B1–14B2, shows HDL created by compiling the C-type program shown in FIG. 14A, illustrating parallel processing of two complex non-interfering functions with two state machines implemented in RTL Verilog running simultaneously;

FIG. 15A shows an initial C-language description having variable argument function calls;

FIG. 15B, comprising FIGS. 15B1–15B7, shows HDL created by compiling the C-type program shown in FIG. 15A, illustrating variable argument function calls using a temporary parameter storage location in addressable memory implemented in RTL Verilog and using on-chip Xilinx RAM macros;

FIG. 16A shows an initial C-language description having a recursive function and recursive function call;

FIG. 16B, comprising FIGS. 16B1–16B5, shows HDL created by compiling the C-type program shown in FIG. 16A, illustrating a recursive function call to "MoveRing" utilizing addressable memory and a "stack_pointer" hardware register implemented in RTL Verilog;

FIG. 17A shows an initial C-language description having a function-call-by-pointer;

FIG. 17B, comprising FIGS. 17B1–17B2, shows HDL created by compiling the C-type program shown in FIG. 17A, illustrating the C-language pointer function implemented using a hardware register "state" assignment value corresponding to a first state of function "_main_f" in RTL Verilog;

FIG. 18A shows an initial C-language description having addressable variables;

FIG. 18B, comprising FIGS. 18B1–18B5, shows HDL created by compiling the C-type program shown in FIG. 18A, illustrating addressable memory implemented utilizing a hardware register file in RTL Verilog;

FIG. 19A shows an initial C-language description having multiple interdependent C-type functions;

FIG. 19B, comprising FIGS. 19B1–19B3, shows HDL created by compiling the C-type program shown in FIG.

10

19A, comprising multiple state machines implemented in RTL Verilog that operate in a data processing pipeline;

FIG. 19C is a block diagram of the data processing pipeline implemented by the RTL Verilog shown in FIG. 19B;

FIG. 20A shows an initial C-language description for a blinking light counter hardware design implemented utilizing a Xilinx FPGA on an APS-X84 hardware board;

FIG. 20B, comprising FIGS. 20B1–20B2, shows HDL created by compiling the C-type program shown in FIG. 20A for a blinking light counter hardware design implemented utilizing a Xilinx FPGA on an APS-X84 hardware board;

FIG. 21A shows an initial C-language description for a callable function;

FIG. 21B shows HDL created by compiling the C-type program shown in FIG. 21A illustrating the use of a state machine to implement a cumulative adder function in RTL Verilog;

FIG. 21C shows HDL created by compiling the C-type program shown in FIG. 21A, illustrating the use of a state machine to implement the cumulative adder function in VHDL;

FIG. 22A shows an initial C-language description for reading a memory word located at the memory address referenced by the variable parameter "p" which has an ANSI C "pointer" type;

FIG. 22B shows HDL created by compiling the C-type program shown in FIG. 22A, illustrating reading a memory word located at the memory address referenced by the variable parameter "p", which has an ANSI C "pointer" type, in RTL Verilog;

FIG. 22C shows a gate-level schematic comprised of clock enabled flip-flop hardware registers and control logic for reading 4-bit data located in external addressable memory at the location pointed by the 4-bit address, illustrating the compilation of the C-type program shown in FIG. 22A to a gate-level description;

FIG. 23A shows an initial C-language description for writing the content of the parameter variable "d" into a memory word located at the memory address referenced by the variable parameter "p" which has an ANSI C "pointer" type;

FIG. 23B shows HDL created by compiling the C-type program shown in FIG. 23A, which writes the content of the parameter variable "d" into a memory word located at the memory address referenced by the variable parameter "p", which has an ANSI C "pointer" type, in RTL Verilog;

FIG. 23C shows a gate-level schematic comprised of clock enabled flip-flop hardware registers and control logic for writing 4-bit data into the external addressable memory at the addressable memory location pointed by the 4-bit address, illustrating the compilation of the C-type program shown in FIG. 23A to a gate-level description;

FIG. 24A shows an initial C-language description for reading a structure member by using pointer to structure;

FIG. 24B shows HDL created by compiling the C-type program shown in FIG. 24A for reading a structure member by using pointer to structure in RTL Verilog;

FIG. 24C shows a gate-level schematic comprised of clock enabled flip-flop hardware registers, control logic, and an adder for providing a constant offset to a given address for reading 4-bit data from the external addressable memory at the addressable memory location pointed by the 4-bit address plus offset, illustrating the compilation of the C-type program shown in FIG. 24A to a gate-level description;

US 6,226,776 B1

11

12

FIG. 25A shows an initial C-language description for writing into a structure member using pointer to structure;

FIG. 25B shows HDL created by compiling the C-type program shown in FIG. 25A for writing into a structure member using pointer to structure in RTL Verilog;

FIG. 25C shows a gate-level schematic comprised of clock enabled flip-flop hardware registers, control logic, and an adder for providing a constant offset to a given address for writing 4-bit data into the external addressable memory at the addressable memory location pointed by the 4-bit address plus offset, illustrating the compilation of the C-type program shown in FIG. 25A to a gate-level description;

FIG. 26A shows an initial C-language description for reading a structure member from memory using a dot (".") operation;

FIG. 26B shows HDL created by compiling the C-type program shown in FIG. 26A for reading a structure member from memory using a dot (".") operation in RTL Verilog;

FIG. 26C shows a gate-level schematic comprised of clock enabled flip-flop hardware registers and control logic for reading 4-bit data from the external addressable memory at an address fixed at compile time on output wires "A0–1", illustrating the compilation of the C-type program shown in FIG. 26A to a gate-level description;

FIG. 27A shows an initial C-language description for writing to a structure member located in memory;

FIG. 27B shows HDL created by compiling the C-type program shown in FIG. 27A for writing to a structure member located in memory in RTL Verilog; and

FIG. 27C shows a gate-level schematic comprised of clock enabled flip-flop hardware registers and control logic for writing 4-bit data into the external addressable memory at an address fixed at compile time on output wires "A0–1", illustrating the compilation of the C-type program shown in FIG. 27A to a gate-level description.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The computer aided hardware design tool in accordance with the various embodiments of the invention is executed on a computer 12, as shown in FIG. 1. The computer aided hardware design tool in accordance with one embodiment of the invention is preferably a 32-bit electronic computer aided design (ECAD) application compatible with a Microsoft Windows 95 or Microsoft NT 3.51 or later operating system available from Microsoft Corporation located in Redmond, Wash. The computer 12 comprises a minimum of 16 MB of random access memory (RAM) and preferably include 32 MB of RAM. The computer 12 also comprises a hard disk drive having 40 MB of free storage space available.

In an alternative embodiment, the computer aided hardware design tool can be available by connecting to the web site of the supplier of the computer aided hardware design tool. The computer 12 is provided with an Internet connection, such as a modem, for connection to the web site of the supplier of the computer aided hardware design tool. The computer aided hardware design tool can be ported to the web and executed on a web server. Therefore, the requirements for computer 12 would be reduced.

As shown in FIG. 1, means for displaying information preferably in the form of a monitor 14 connected to computer 12 is also provided. The monitor 14 can be a 640×480, 8-bit (256 colors) VGA monitor and is preferably an 800× 600, 24-bit (16 million colors) SVGA monitor. The com-

puter 12 is also preferably connected to a CD-ROM drive 16. As shown in FIG. 1, a keyboard 18 and a mouse 20 are provided for entry of an algorithmic representation for a hardware design in a high-level programming language, such as ANSI C, as well as mouse-driven navigation between menus displayed by the computer aided hardware design tool. The mouse 20 also enables persons utilizing the computer aided hardware design tool (referred to hereafter as "users") to select simulation of a hardware design prior to implementation of a hardware design.

The computer aided hardware design tool in accordance with the invention enables a user to design hardware utilizing a high-level programming language, such as ANSI C. The fundamentals of ANSI C programming language are described, for example, in Kernighan, B. W., and Ritchie, D. M., *The C Programming Language*, Prentice Hall: New Jersey, 2d Ed., 1988. The computer aided hardware design tool of the invention then compiles the high-level program for the hardware design into a register transfer level (RTL) hardware description language (HDL) design which can be synthesized. The HDL may be, for example, Verilog, the fundamentals of which are described in Palnitkar, S., *Verilog HDL: A Guide to Digital Design and Synthesis*, SunSoft Press, Prentice Hall, 1996. For general information regarding compilers, see, for example, Aho, A. V., and Ullman, J. D., *Principles of Compiler Design*, Addison-Wesley Publishing Company, 2d Printing, March, 1978, and Hunter, R., *The Design and Construction of Compilers*, John Wiley & Sons, 1981.

The method in accordance with the invention for rendering a hardware design in a standard high-level programming language and converting that design into an actual hardware implementation will now be described. In accordance with one embodiment of the method of the invention, a user initially renders a preliminary hardware design as an algorithmic representation in a given standard high-level programming language. If the high-level programming language is not a C-type programming language, the high-level programming language preliminary hardware design is next translated from a preliminary hardware design rendered in the high-level programming language to a preliminary hardware design in a C-type programming language. Then, the C-type programming language preliminary hardware design is converted to a gate-level hardware representation which can be reduced to an actual hardware implementation, such as an FPGA or other programmable logic or an ASIC, using conventional physical design tools. This enables hardware designs rendered in virtually any standard high-level programming language to be implemented in hardware.

Considered in more detail, one embodiment of the method in accordance with the invention is shown in FIG. 2. A user can initially create an algorithmic representation corresponding to a preliminary hardware design using a given standard high-level programming language, as indicated by the step 30. Preferably, the high-level programming language is a programming language that can be translated into a C-type programming language, such as ANSI C, utilizing a conventional compilation program. Standard high-level programming languages that can be compiled to a C-type programming language utilizing conventional compilers include APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, Python, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

US 6,226,776 B1

13

As indicated by the step **32** shown in FIG. 2, the high-level programming language algorithmic representation corresponding to the preliminary hardware design produced at step **30** is next translated into a C-type programming language preliminary hardware design. Translation results in a C-type programming language preliminary hardware design file, as indicated by the numeral **34** shown in FIG. 2. Preferably, the C-type programming language into which the high-level programming language preliminary hardware design is translated is ANSI C, such that an ANSI C preliminary hardware design file is produced at step **34**.

Alternatively, the user can initially create the algorithmic representation corresponding to the preliminary hardware design in a C-type programming language, as indicated by the step **36** shown in FIG. 2. Preferably, the C-type programming language is ANSI C, such that an ANSI C preliminary hardware design file is produced at step **34**. Therefore, the method in accordance with the invention enables a user to directly design hardware in a C-type programming language, preferably ANSI C programming language This avoids the need at step **32** to translate from a different high-level programming language to a C-type programming language, for example, ANSI C.

As shown in FIG. 2, the C-type programming language preliminary hardware design file **34** can be run through a C compiler, as indicated by the step **38** shown in FIG. 2. This enables the user to verify or debug the C-type programming language preliminary hardware design.

Whether an algorithmic representation of a preliminary hardware design is initially created in a given standard high-level programming language translatable to a C-type programming language or created directly in the C-type programming language, such as ANSI C, the preliminary hardware design is compiled into a hardware description language (HDL) synthesizable design, as indicated by the step **40** shown in FIG. 2. For example, the C-type programming language preliminary hardware design can be compiled into a Verilog synthesizable design to produce an RTL hardware design file **42**, as shown in FIG. 2. The compilation of the C-type programming language preliminary hardware design into a synthesizable HDL design will be described in more detail below.

After the HDL design is produced, the method in accordance with the invention preferably comprises the step of simulating the HDL synthesizable design prior to synthesizing the HDL design, as indicated by the step **44** shown in FIG. 2. If the user desires to modify the preliminary hardware design in view of the simulation, the user renders a modified hardware design using either the given standard high-level programming language at step **30** or the C-type programming language, such as ANSI C at step **36**.

After an acceptable HDL design is obtained, the RTL hardware design file **42** representative of the HDL design is synthesized into a gate-level hardware representation using a conventional synthesis program to interpret the HDL design, as indicated by the step **46** shown in FIG. 2. This typically requires preselection of a particular hardware technology, such as an FPGA or ASIC, prior to the execution of the synthesis program. Synthesis programs are commercially available and do not constitute the invention per se. Therefore, the synthesis programs will not be described in detail.

In order to produce an actual hardware implementation, the method in accordance with the invention preferably further comprises the step of using conventional physical design tools to implement the gate-level hardware representation as an actual hardware implementation. These physical design tools include a place and route program. In the case of an FPGA, the physical design tools also include a hardware configuration system which processes the file produced by the place and route program and creates a bit stream to personalize the FPGA, as indicated by the step **48** shown in FIG. 2. In the case of an ASIC, the physical design tools include a place and route program for creating a file for patterning an integrated circuit mask for use in fabricating the ASIC, as indicated by the step **50** shown in FIG. 2. Physical design tools utilized to produce actual hardware implementations are commercially available and do not constitute the invention per se. Therefore, the physical design tools will not be described in detail. As shown in FIG. 2, an actual hardware implementation is produced, as indicated by the numeral **52**.

A detailed description of the steps required for compiling a C-type programming language algorithmic representation for a preliminary hardware design into an HDL synthesizable design will now be provided by way of example. In the example, the C-type programming language is ANSI C and the HDL is preferably Verilog. However, it will be understood by persons skilled in the art that the principles of compiling a C-type programming language algorithmic representation for a preliminary hardware design into an HDL synthesizable design apply to other C-type programming languages besides ANSI C. For example, the C-type programming language may alternatively be any standard C-type programming language including ANSI C, B, C++, Java, Kernighan & Ritchie C, and Objective C. Moreover, the HDL synthesizable design into which the C-type programming language algorithmic representation for the preliminary hardware design is translated may be other than Verilog. For example, the HDL may alternatively be any standard HDL including VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

The following describes compilation of the operations and functions that comprise ANSI C high-level programming language needed for hardware design into an exemplary HDL, namely, Verilog. As will be described later, the HDL may also be a different HDL, such as VHDL.

The method in accordance with the invention comprises mapping predetermined C-type programming language expressions to functionally equivalent HDL program language expressions. FIG. 3A illustrates a simple expression function in ANSI C programming language, and FIG. 3B represents the function shown in FIG. 3A compiled into RTL Verilog HDL.

In this regard, statements in ANSI C high-level programming language used to render hardware designs vary. For example, various ANSI C functions can be classified "simple expression functions," such as "func1" and "func2" shown in FIG. 3A. These functions have no side effects, do not require static memory access in HDL, and do not require a state machine in HDL to run. The determination of whether or not "simple expression functions" are present is performed by the code that appears in microfiche Appendix A in file OSYMBOLS.CPP at lines **5052–5232**. Consequently, these functions can be compiled into simple RTL Verilog continuous assignments "result_func1" and "result_func2," as shown in FIG. 3B. Compilation of the ANSI C expressions to functionally equivalent HDL expressions is performed by the code shown in the source code listing which appears in microfiche Appendix A in file GCO-DE.CPP at lines **5889–5990**.

Furthermore, FIG. 3A illustrates C-type programming language expressions "a+b~c<<3" and "(a~b) & c". In these

US 6,226,776 B1

15
16

expressions, "a", "b", and "c" are integer variables. FIG. 3B illustrates that these expressions are mapped into RTL Verilog expressions "((param_func1_a+param_func1_b) ^(param_func1_c <<16'd3))" and "((param_func2_a^param_func2_b) & param_func2_c)", respectively. Also, integer variables "a", "b", and "c" in FIG. 3A are mapped onto wires "param_func1_a", "param_func1_b", and "param_func1_c" for ANSI C function "func1" and wires "param_func2_a", "param_func2_b", and "param_func2_c" for ANSI C function "func2", respectively. This is because the ANSI C functions "func1" and "func2" are simple C-type functions which do not require implementation in RTL Verilog as state machines. The same mapping would occur if variables "a", "b", and "c" were defined as ANSI C floating point, pointer, enum, or union variables.

Additionally, FIGS. 3A and 3B illustrate assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design. The determination of whether or not C-type variables are to be mapped onto input/output wires of the generated RTL Verilog module is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYM-BOLS.CPP at lines 4802–5001. For example, parameters "a", "b", and "c" of the function "func1" shown in FIG. 3A are assigned to input wires, namely, "param_func1_a", "param_func1_b", and "param_func1_c", respectively, of the module generated in RTL Verilog, as shown in FIG. 3B. Also, the result of the function "func1" (FIG. 3A) is assigned to an output wire "result_func1" in RTL Verilog (FIG. 3B).

FIGS. 3A and 3B also illustrate a plurality of selected C-type functions that can execute simultaneously, which are compiled into a plurality of executable HDL program language expressions that operate in parallel. The determination of whether or not a plurality of simultaneously executable C-type functions is present is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYMBOLS.CPP at lines 5052–5232. Compilation of the plurality of simultaneously executable C-type functions to a plurality of HDL expressions that operate in parallel is performed by the code shown in the source code listing which appears in microfiche Appendix A in file GCODE.CPP at lines 5889–5990.

FIGS. 4A and 4B also illustrate mapping predetermined C-type programming language expressions to functionally equivalent HDL program language expressions. FIGS. 4A and 4B show compilation from ANSI C (FIG. 4A) into RTL Verilog HDL (FIG. 4B) where no HDL state machine is required to implement the conversion of ANSI C functions. These ANSI C functions have no side effects, do not require static memory access in HDL, and do not require a state machine in HDL to run. The advantage of utilizing state machines only when they are needed is that the compiled HDL design runs faster in hardware.

However, in contrast to the ANSI C functions shown in FIG. 3A, the ANSI C functions shown in FIG. 4A cannot be classified as "simple expression functions," because they have data conversions or comprise at least one "if-then-else" statement. For example, "func1" shown in FIG. 4A contains a comparison operator that has different semantics in ANSI C than in RTL Verilog (i.e., utilizes temporary registers in Verilog). Therefore, "func1" cannot be classified as a "simple expression function," but it can be classified as a "function outside the HDL state machine." These functions, such as "func1", cannot be converted into one continuous assignment in HDL but must instead be converted into multiple HDL statements within an "always" block. Note

that FIGS. 4A and 4B also illustrate assigning input/output as defined in the C-type design to specific wires in the HDL synthesizable design, as described earlier in connection with FIGS. 3A and 3B.

FIGS. 5A and 5B illustrate compiling a C-type program control flow into an HDL state machine. FIG. 5A shows a simple "for" loop in ANSI C, and FIG. 5B shows compilation of the "for" loop into RTL Verilog HDL. The determination of whether or not a C-type program control flow that is to be converted to an HDL state machine is present is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYM-BOLS.CPP at lines 3735–4271.

As shown in FIG. 5B, the "for" loop is implemented in RTL Verilog using a state machine. A state machine is utilized to implement the ANSI C program control flow, because the state machine provides the mechanism to execute the ANSI C operators in the required sequence. Compilation of the C-type program control flow into the HDL state machine is performed by the code shown in the source code listing which appears in microfiche Appendix A in file GCODE.CPP at lines 5930–6250.

FIGS. 5A and 5B also illustrate mapping non-addressable variables onto hardware registers formed in HDL as a result of compilation. The compilation is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYMBOLS.CPP at lines 4802–5001. The non-addressable variables "n", "i", and "sum" employed in the ANSI C program shown in FIG. 5A are mapped onto hardware registers "_sum1_n", "_2_sum_i", and "_2_sum1_sum", respectively, shown in FIG. 5B.

Additionally, FIGS. 5A and 5B illustrate mapping addressable variables onto addressable on-chip static memory formed in HDL as a result of compilation. The compilation is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYM-BOLS.CPP at lines 4802–5001. FIG. 5A shows that the ANSI C program includes an array "array" which is mapped onto addressable on-chip static memory having a starting memory address "'_5_main_array", as shown in FIG. 5B.

FIGS. 5A and 5B also illustrate assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design. The determination of whether or not C-type variables are to be mapped onto input/output wires of the generated RTL Verilog module is performed by the code which appears in microfiche Appendix A in file OSYM-BOLS.CPP at lines 4802–5001. For example, parameter "n" of the function "sum1" shown in FIG. 5A is assigned to an input wire, namely, "param_sum1_n", of the module generated in RTL Verilog, as shown in FIG. 5B. Also, the result of the function "sum1" (FIG. 5A) is assigned to an output wire "result_sum1" in RTL Verilog (FIG. 5B).

FIGS. 6A and 6B illustrate compilation of standard ANSI C input/output (I/O) function calls into RTL Verilog HDL. The I/O function arguments (namely, "scanf" and "printf" arguments) defined in the ANSI C program shown in FIG. 6A are assigned to specific wires in RTL Verilog, as shown in FIG. 6B.

The input function call "scanf" for reading data into ANSI C variables "a" and "b" shown in FIG. 6A is compiled into RTL Verilog for reading data from input wires, namely, "scanf_0_1_line_19_a" and "scanf_0_2_line_19_b", into registers "_3_main_a" and "_3_main_b", respectively, as shown FIG. 6B. Accordingly, variables "a" and "b" in the ANSI C program (FIG. 6A) are mapped into registers "_3_main_a" and "_3_main_b" in RTL Verilog

US 6,226,776 B1

17

(FIG. 6B). The output function call "printf" for writing the result of the ANSI C expression "a+b" shown in FIG. 6A is compiled into writing the result of the HDL expression "_3_main_a+_3_main_b" to an output wire, namely, "printf_1_1_line_20" in RTL Verilog, as shown FIG. 6B.

As also shown in FIG. 6B, a Verilog statement "$write ("a+b=% d\n", printf_1_1_line_20);" is preferably generated for the purpose of debugging the generated Verilog code. This statement is not used in connection with synthesis of the HDL design.

FIGS. 7A and 7B illustrate compiling multiple occurrences of a complicated C-type mathematical operation into a given HDL functional block that implements such an operation. The functional block is invoked on each occurrence by different states driven by the state machine.

FIG. 7A shows a C-type programming language expression "a/b+c/d". This expression includes two divisions, namely, "a/b" and "c/d". These divisions share the same divider unit implemented in RTL Verilog HDL. The divider unit is implemented in RTL Verilog, as follows. First, a divider module is defined, namely, "sdivmod16". Second, the divider module "sdivmod16" is instantiated in the module "DivEx" comprising the state machine implemented in RTL Verilog. Third, the shared divider unit is driven employing the different states of the state machine, as shown in FIG. 7B. Since a single divider module is preferably utilized to reduce required hardware resources, the state machine is needed to sequentially multiplex arithmetic parameters to the inputs of the shared divider module in synchronization with the hardware clock. Compilation of the complicated C-type mathematical operation for division into a given HDL functional block for division that is invoked on the occurrence of different states of the state machine is performed by the code shown in the source code listing which appears in microfiche Appendix A in files GDIVMOD.CPP at lines 8487–9243, GEXPR.CPP at lines 7324–7646, and GFLOAT.CPP at lines 9244–9738. Based on the compilation of a division operation disclosed in FIGS. 7A and 7B, it should be apparent to persons skilled in the art how to handle other complicated arithmetic and logic operations, such as signed and unsigned integer multiplication, signed and unsigned integer remainder, variable-shift left shift, variable-shift right shift with or without sign extension, etc.

ANSI C variables "a", "b", "c", and "d" shown in FIG. 7A are defined as integer variables. These variables are mapped onto wires "param_func_a", "param_func_b", "param_func_c", and "param_func_d" of the RTL Verilog module, respectively. The same mapping would occur if variables "a", "b", "c", and "d" were defined as ANSI C floating point, pointer, enum, or union variables.

ANSI C does not support the concept of "pipelining". However, it has been determined that ANSI C constructs can be utilized to define a hardware data processing pipeline.

As shown in FIGS. 8A and 8B, the method in accordance with the invention may also comprise compiling a plurality of interdependent C-type functions into a plurality of executable HDL program language expressions that operate either simultaneously or sequentially in a data processing pipeline. C-type functions are interdependent when the input of one of the functions is dependent upon the output of another function. FIGS. 8A and 8B illustrate compilation of three simple ANSI C functions (FIG. 8A) into a data processing pipeline implemented in RTL Verilog HDL (FIG. 8B).

As shown in FIG. 8C, the data processing pipeline consists of three stages. The first stage of the pipeline corresponds to the ANSI C function "pipeline_stage_1". This

18

first stage is an adder which adds the value "1" to the value from the input wire "_data_in", which corresponds to the ANSI C variable "data_in", and writes the sum into the hardware register "_out1", which corresponds to the ANSI C variable "out1". The second stage of the pipeline corresponds to the ANSI C function "pipeline_stage_2" which uses the output "_out1" and adds that value to itself and writes the sum into the hardware register "_out2" which corresponds to the ANSI C variable "out2". The third stage of the pipeline corresponds to the ANSI C function "pipeline_stage_3" which uses the output "_out2" of the second stage and performs an "XOR" logic function with the value "1234" and writes the result onto the output wire "_data_out" which corresponds to the ANSI C variable "data_out". FIG. 8B illustrates that the three stages of the data processing pipeline are implemented by three "always" blocks in RTL Verilog, which operate simultaneously. Alternatively, the stages of the data processing pipeline implemented in RTL Verilog may be operated sequentially depending upon usage of input signals "run_pipeline_1", "run_pipeline_2", and "run_pipeline_3". The compilation is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYMBOLS.CPP at lines 4896–4950.

Variable "data_in" shown in the ANSI C program (FIG. 8A) has "external scope," as defined in the ANSI C standard. The address of "data_in" is not used by any C-type function or for C-type initialization of any variable. Furthermore, "data_in" is never used as an 1-value. That is, "data_in" is used in the ANSI C program as a readable variable, but it is not used as a writable variable. Also, "data_in" is not initialized in the ANSI C program.

Because "data_in" has these attributes, it is mapped onto an input wire "_data_in" of an HDL module, as shown in FIG. 8B. The input wire is utilized as an input wire of a hardware pipeline stage implemented in RTL Verilog (FIG. 8B).

Variable "data_out" shown in the ANSI C program (FIG. 8A) also has "external scope". The address of "data_out" is not used by any C-type function or for C-type initialization of any variable. Furthermore, "data_out" is used only as an 1-value. That is, "data_out" is used in the ANSI C program as a writable variable, but it is not used as a readable variable. Also, "data_out" is not initialized in the ANSI C program.

Since "data_out" has the above attributes, it is mapped onto an output wire "_data_out" of the HDL module, as shown in FIG. 8B. The output wire is utilized as an output wire of the hardware pipeline stage implemented in RTL Verilog (FIG. 8B).

FIGS. 8A and 8B illustrate a simple pipeline. That is, the ANSI C program shown in FIG. 8A is compiled into RTL Verilog without the need for an HDL state machine.

FIGS. 9A and 9B illustrate floating point arithmetic and double precision floating point arithmetic in ANSI C (FIG. 9A) and compilation into RTL Verilog HDL (FIG. 9B). This demonstrates that the method in accordance with the invention can convert floating point operations into a state-machine-based protocol of transactions to an external floating point arithmetic unit (FPU) preferably implemented in adjunct hardware. Since FPUs are commercially available, definition of an FPU in the RTL Verilog generated during compilation of the ANSI C arithmetic operations is not required. Instead, all that is needed is the assignment of output and input wires to such an FPU, which defines an interface between the RTL Verilog generated design and the FPU.

US 6,226,776 B1

19

20

As shown in FIGS. 9A and 9B, each of the ANSI C arithmetic operations is compiled into a sequence of states of the state machine in RTL Verilog. During a first state, the parameters needed for the floating point operations are written to output wires assigned in RTL Verilog, which are read by the external floating point arithmetic unit. During a second state, the state machine awaits completion of performance of the arithmetic operations by the arithmetic unit. During a third state, the results of the floating point arithmetic operations are written by the arithmetic unit onto the input wires defined in RTL Verilog and read.

FIGS. 9A and 9B show compilation from ANSI C into RTL Verilog for subtraction from zero (unary−), addition, multiplication, subtraction, division, and conversion operations, which involve floating point arithmetic. Therefore, in view of the methodology shown in FIGS. 7A, 7B, 9A, and 9B, it will be apparent to persons skilled in the art that all complicated integer and floating point operations can be compiled into RTL Verilog.

FIGS. 10A and 10B illustrate compilation of descriptions with structures, including structure assignment, structure function parameters, and structure function return values, which are commonly employed to implement algorithms, in ANSI C (FIG. 10A) and following compilation into RTL Verilog HDL (FIG. 10B). FIG. 10A shows the addition of two complex numbers implemented as ANSI C structures. The expression "z=add (x, add (x,y))" contains the structure assignment to structure "z", and structures "x" and "y" are employed as structure function parameters of the function "add". Function "add" returns a structure return value which is equal to structure "c". FIG. 10A also illustrates structure members "real" and "image", which are employed both as 1-value (value on the left-hand side of the assignment operation) and r-value (value on the right-hand side of the assignment operation). FIG. 10B illustrates that structure function parameters and structure function return values are implemented utilizing wide (i.e., 32-bit) hardware registers which can store the entire structure, including structure members "real" and "image"). Temporary wide (i.e., 32-bit) hardware registers are also utilized for the structure assignment translation to read the r-value structure from external memory and to write the 1-value structure to the external memory. Compilation of structure assignment and structure return values and assignment of structure function parameters is performed by the code shown in the source code listing which appears in microfiche Appendix A in file GEXPR.CPP at lines 8101–8255. It will be understood by persons skilled in the art that the same compilation process can be applied to C-type programming language structure assignment, structure function parameters, and structure function return values in C-type programs which do not require implementation of a state machine in RTL Verilog.

FIGS. 11A and 11B illustrate compiling C-type pointers and pointer indirection into an HDL state-machine-based memory access protocol. FIG. 11A shows C-type pointers, such as local variable "p", return value of function "FindNode", global variable "pTree", and structure members "pLeft" and "pRight". On the one hand, local variable "p" is not addressable, that is, its address is never read. Therefore, this non-addressable variable is mapped onto a hardware register formed in RTL Verilog HDL, namely, "_7_FindNode_p", as shown in FIG. 11B. On the other hand, variable "pTree" is addressable, that is, its address is read in the expression "p=& pTree;", as shown in FIG. 11A. Therefore, this addressable variable is mapped onto a memory location identified by the address "'_pTree" in external addressable hardware memory, as shown in FIG.

11B. Compilation of C-type pointers and pointer indirection into an HDL state-machine-based memory access protocol is performed by the code shown in the source code listing which appears in microfiche Appendix A in files GRW.CPP at lines **10040–10438** and GEXPR.CPP at lines **6724–6750, 7252–7282**, and **8101–8255**.

Also, "Nodes" is an addressable variable because it is a C-type programming language array. Therefore, this addressable variable is mapped onto a memory location identified by the address "'_Nodes" in external addressable hardware memory, as shown in FIG. 11B.

FIG. 11A also illustrates a "while" loop, "if-then-else" statement, "return", and function call (i.e., "FindNode" is called by the function "FindValue") in ANSI C programming language, and FIG. 11B illustrates implementation of these as a state machine in RTL Verilog. FIGS. 11A and 11B also provide another illustration of the handling of C-type programming language structures, including translation of the operation "->" (i.e., structure member dereferencing by pointer).

The method of the invention may also comprise compiling a callable C-type function into a functionally equivalent HDL program language expression that is executed synchronously on the occurrence of an external event. FIGS. 12A and 12B illustrate a simple case of synchronous event detection in the case where the HDL expression does not require a state machine. The C-type function "on_event" represents any executable C-type function, which is called for execution by another C-type function, for example, "main." This call is converted into RTL Verilog HDL that is executable on the occurrence of an external event, such as assertion of a signal on an input wire. The determination of whether or not a callable C-type function is present is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYM-BOLS.CPP at lines **5052–5232**. Thus, the C-type function "on_event" (FIG. 12A) is compiled into RTL Verilog that is executed when signal "run_on_event" is asserted true (FIG. 12B). Compilation of the callable C-type function into a functionally equivalent HDL program language expression which is executed synchronously on the occurrence of an external event is performed by the code shown in the source code listing which appears in microfiche Appendix A in file GCODE.CPP at lines **5889–5990**. Event detection in this implementation is synchronous, that is, the event is detected only on a positive edge of a clock signal. It will be understood by persons skilled in the art that the same compilation process can be applied to a callable C-type function which requires implementation of a state machine in RTL Verilog in the case in which the state machine is executed synchronously on the occurrence of an external event. The following example will illustrate asynchronous event detection.

FIGS. 13A and 13B illustrate compiling a callable C-type function into a functionally equivalent HDL program language expression that is executed a synchronously after the occurrence of an external event. FIGS. 13A and 13B illustrate a simple case of asynchronous event detection in the case where the HDL expression does not require a state machine. The determination of whether or not a callable C-type function is present is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYMBOLS.CPP at lines 5052–5232.

As in the case of FIG. 12A, the C-type function "on_event" shown in FIG. 13A again represents any executable C-type function which is called for execution by another

**21**

C-type function, for example, "main." However, as shown in FIG. **13B**, this call is converted into RTL Verilog HDL that is executable following occurrence of an external event, such as transition of a signal on an input wire. That is, the pragma causes the C-type function "on__event" (FIG. **13A**) to be compiled into RTL Verilog which is executed when signal "run__on__event" transitions from false to true (FIG. **13B**). This occurs a synchronously relative to the occurrence of the positive edge of a clock signal ("posedge clock"). Compilation of the callable C-type function into a function-ally equivalent HDL program language expression which is executed a synchronously on the occurrence of an external event is performed by the code shown in the source code listing which appears in microfiche Appendix A in file GCODE.CPP at lines **5889–5990**. Note that asynchronous event processing must handle timing constraints that do not occur in the synchronous event implementation shown in FIGS. **12A** and **12B**.

It will be understood by persons skilled in the art that a similar compilation process can be applied to a callable C-type function that requires implementation of a state machine in RTL Verilog HDL. In the case in which the state machine is executed a synchronously with respect to the occurrence of an external event, instantiation of a flip-flop is required in RTL Verilog to store the occurrence of the event. If this flip-flop is set, the state machine runs on the next-occurring positive edge of a clock signal.

FIGS. **14A** and **14B** illustrate parallel processing of two complex C-type functions and two state machines running simultaneously. These functions ("func1" and "func2") do not interfere with each other, which means they: 1) do not call each other; 2) do not share external or on-chip static memory; 3) do not share an HDL functional block that performs a complicated mathematical operation; and 4) do not write into the same hardware register. Because of this fact, these functions can be performed simultaneously. External logic can safely assert signals "run__func1" and "run__func2" at any time independently of each other, as shown in FIG. **14B**. Compilation of the complex C-type functions that can execute simultaneously into a plurality of HDL state machines that operate in parallel is performed by the code shown in the source code listing which appears in microfiche Appendix A in file GCODE.CPP at lines **5615–6251**. Since these functions require state machines to implement them, their execution is synchronous with the positive edge of a clock signal.

FIGS. **15A** and **15B** illustrate compilation of ANSI C variable argument functions and variable argument function calls into RTL Verilog HDL. As shown in FIG. **15A**, the ANSI C variable argument function "average" is called from another ANSI C function "main". In order to convert the variable argument function call "average" to RTL Verilog, a temporary parameter storage location in addressable memory is utilized. This temporary storage location resides immediately after the location of the last fixed parameter, namely, "'__average__first", of the variable argument func-tion "average", as shown in FIG. **15B**. When function "main" calls function "average", function "main" sets the parameters for function "average" by writing values for those parameters into the addressable memory at the tem-porary parameter storage location.

The method in accordance with the invention also sup-ports the use of ANSI C recursive function calls. The C-type program is parsed to determine whether or not a direct or indirect recursive function call is present. That is, a global analysis of the C-type program is performed to determine which functions are recursive. Any identifiable direct or

**22**

indirect recursive function call is compiled into an HDL state machine which has an interface to a stack implemented utilizing either external or internal memory or, alternatively, an array of hardware registers. The generated RTL Verilog module has a stack pointer implemented utilizing a hardware register employed to store and restore local variables of the recursive function and other recursive function information.

FIGS. **16A** and **16B** illustrate compilation of an ANSI C recursive function and recursive function call into RTL Verilog HDL. As shown in FIG. **16A**, the ANSI C recursive function "MoveRing" is called from itself and from another ANSI C function "Hanoi". In order to translate the recursive function call to "MoveRing" into RTL Verilog:

1. A designated region of addressable memory at the location "'recursion__stack" is established in RTL Verilog, as shown in FIG. **16B**.

2. A designated hardware register, namely "stack__pointer" is defined in RTL Verilog, as also shown in FIG. **16B**.

3. Before the recursive function "MoveRing" calls itself (i.e., the recursive function "MoveRing"), recursive function "MoveRing" saves its local context into the established stack which consists of the designated region of the addres-sable memory at the location "'recursion__stack" and the designated hardware register, namely, "stack__pointer". The recursive function "MoveRing" local context contains recur-sive function "MoveRing" local variable and parameter registers, namely, "__MoveRing__nRings", "__MoveRing__Tower1", "__MoveRing__Tower2", "__MoveRing__Tower3", and the recursive function "MoveRing" return state register, namely, "return__state__MoveRing".

4. After the recursive function "MoveRing" call, the recursive function "MoveRing" restores its local context, as shown in FIG. **16B**.

By storing and restoring its local context before and after the recursive call, respectively, the recursive function "MoveR-ing" avoids losing its local context. Before the recursive function calls itself, it saves the local context on the memory stack (an addressable memory). After executing the function, the recursive function restores its local context.

FIGS. **17A** and **17B** illustrate compilation of an ANSI C function-call-by-pointer into RTL Verilog HDL. As shown in FIG. **17A**, the ANSI C functions "f1" and "f2" are called from the ANSI C function "main" using a pointer variable "f". Depending upon the value of parameter "n" of the ANSI C function "main", either pointer-to-function "f1" or pointer-to-function "f2" is assigned to the pointer variable "f". Then, the ANSI C function "main" calls one of "f1" or "f2" using the pointer variable "f". This ANSI C function-call-by-pointer is translated into RTL Verilog by assigning the hardware register "state" a value corresponding to the first state of the function, namely, "__main__f", as shown in FIG. **17B**. The assigned value becomes the current state of the generated state machine. Depending upon the value of the "__main__n" hardware register in RTL Verilog, the pointer-to-function hardware register "__main__f" is assigned to either state "__f1" or to state "__f2" in RTL Verilog, which correspond to ANSI C functions "f1" and "f2", respectively.

FIGS. **18A** and **18B** illustrate mapping addressable vari-ables defined in C-type programming language onto an addressable array of hardware registers formed in HDL. Specifically, "array" is an addressable variable, because it is a C-type programming language array, as shown in FIG. **18A**. Therefore, this ANSI C array is mapped onto addres-sable memory implemented as an addressable array of

US 6,226,776 B1

23                                                                    24

hardware registers, namely, "memory" in RTL Verilog HDL, as shown in FIG. 18B. The compilation is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYMBOLS.CPP at lines 4802–5001. The starting address of the ANSI C "array" in the "memory" array in RTL Verilog shown in FIG. 18B is "'offset__main__3__main__array".

The method in accordance with the invention may comprise compiling a plurality of interdependent C-type functions into a plurality of HDL state machines that operate in a data processing pipeline. FIGS. 19A and 19B illustrate compilation of three ANSI C functions (FIG. 19A) into a data processing pipeline implemented in RTl Verilog HDL (FIG. 19B). In contrast to the three-stage data processing pipeline shown in FIG. 8C, the three-stage data processing pipeline shown in FIG. 19C comprises a separate state machine to implement each of the three stages of the data processing pipeline in RTL Verilog. Otherwise, the configuration of the data processing pipeline shown in FIG. 19C is similar to the configuration of the data processing pipeline shown in FIG. 8C. Although the implementation of the data processing pipeline in RTL Verilog shown in FIG. 19B includes a state machine for each stage, other ANSI C functions do not require the implementation of state machines, as in the case of the data processing pipeline shown in FIG. 8B. Alternatively, the data processing pipeline may comprise a combination of simple HDL functional blocks and state machines. The compilation is performed by the code shown in the source code listing which appears in microfiche Appendix A in file OSYMBOLS.CPP at lines 4896–4950.

FIGS. 20A and 20B illustrate that a hardware design originally rendered in ANSI C programming language may be implemented in actual hardware. The target hardware was a xilinx FPGA on an APS-X84 hardware board. The board was installed in a slot in a computer. The result was to implement a counter whose operation is evidenced by a blinking LCD on the board. The frequency of blinking is determined by the on-board clock rate and the user-specified terminal count. FIG. 20A illustrates the hardware design rendered in ANSI C programming language, and FIG. 20B shows the Verilog code after compilation.

FIG. 20B also shows configuration of an interface in the HDL synthesizable design for the gate-level hardware representation. That is, an additional interface Verilog module with wire assignments is needed to map the hardware I/O pins of the target hardware (APS-X84 FPGA) to the computer bus. This is shown in FIG. 20B after the comment "// APSX84.v—Verilog wrapper module which instantiates module Light.v.".

The HDL design may be simulated prior to and/or after the wire assignments are mapped to the I/O pins. For example, one of various simulation programs commercially available from Wellspring Solutions, Cadence Design Systems, Mentor Graphics Corporation, Synopsis, View-logic Systems, or Veri Best, Inc. may be used for simulation of the HDL design.

The hardware implementation may be performed using physical design tools to implement the gate-level representation produced by synthesizing the Verilog code using one of various synthesis programs commercially available from Synplicity, Synopsys, or Exemplar Logic. In this example, the physical design tool that was used is commercially available from Xilinx.

The foregoing describes compilation of a hardware design rendered in ANSI C high-level programming language into an HDL synthesizable design in RTL Verilog HDL. The following example illustrates the compilation of a hardware design rendered in ANSI C into an HDL synthesizable design in both Verilog and VHDL. Therefore, the computer aided hardware design tool in accordance with the invention can provide compilation of a hardware design rendered in ANSI C high-level programming language into any of various HDLs.

FIGS. 21A–21C illustrate compilation of a hardware design from a high-level programming language to several HDLs commonly employed for hardware design. FIG. 21A shows a hardware design for a callable function rendered in ANSI C high-level programming language. FIG. 21A comprises the ANSI C text for the hardware design. FIG. 21B shows the same hardware design compiled into RTL Verilog HDL. FIG. 21B comprises the Verilog text for the hardware design. FIG. 21C shows the same hardware design compiled into another commercially available HDL, namely, VHDL. FIG. 21C comprises the VHDL text for the hardware design.

In accordance with one aspect of the invention, ANSI C pointer and structure operations are translated into transactions to external or on-chip static memory in a gate-level hardware representation. The known prior art does not process ANSI C pointers or structures and therefore disallows the use of pointers and structures in rendering a hardware design.

In accordance with a preferred embodiment of the invention, the ANSI C pointer operations are compiled into HDL that is synthesized to a gate-level hardware representation. FIG. 22A illustrates an ANSI C programming language description for reading a memory word located at the memory address referenced by the variable parameter "p" which has an ANSI C "pointer" type. FIG. 22B illustrates compilation of the ANSI C pointer operation "*" into RTL Verilog HDL that can be synthesized into a gate-level hardware design file, or netlist. FIG. 22C is a gate-level schematic diagram created from the netlist. FIG. 22C shows clock-enabled flip-flop hardware registers and control logic for reading 4-bit data located in external addressable memory at the location pointed by a 4-bit address on wires "PARAM__READ__P0–3", which illustrates the compilation of the C-type program to a gate-level hardware description. The external on or on-chip memory is addressed by the address stored on wires "A0–3" at the Q outputs of the flip-flops shown in the lower portion of FIG. 22C. The memory returns the addressed data on wires "D0–3". The addressed data are clocked to the Q outputs of the flip-flops shown in the top portion of FIG. 22C onto wires "RESULT__READ0–3". Although FIGS. 22A–22C show a 4-bit-wide variable, the variable may have any desired width, such as a 16- or 32-bit width.

FIG. 23A illustrates an ANSI C programming language description for writing the content of the parameter variable "d" into a memory word located at the memory address referenced by the variable parameter "p" which has an ANSI C "pointer" type. FIG. 23B illustrates compilation of the ANSI C 4-bit-wide variable "d" into RTL Verilog HDL that can be synthesized into a netlist. FIG. 23C is a gate-level schematic diagram created from the netlist. FIG. 23C shows clock-enabled flip-flop hardware registers and control logic for writing 4-bit data to external addressable memory at the location pointed by a 4-bit address on wires "PARAM__WRITE__P0–3". The external memory is addressed by the values stored on wires "A0–3" at the Q outputs of the flip-flops shown in the top portion of FIG. 23C. The data to be stored are clocked from the wires "PARAM__WRITE__D0–3" to the D inputs of the flip-flops shown in the lower portion of FIG. 23C onto wires "D0–3". Although FIGS.

25

23A–23C show a 4-bit-wide variable, the variable may have any desired width, such as a 16- or 32-bit width.

Also in accordance with a preferred embodiment of the invention, ANSI C structure operations are compiled into HDL that is synthesized to a gate-level hardware representation. FIG. 24A illustrates an ANSI C programming language description for reading a memory word located at the memory address referenced by the variable parameter "p" which has an ANSI C "pointer-to-structure" type and a fixed offset corresponding to the structure member "b". FIG. 24B illustrates compilation of the ANSI C structure operation "->" into RTL Verilog HDL that can be synthesized into a gate-level hardware design file, or netlist. FIG. 24C is a gate-level schematic diagram created from the netlist. FIG. 24C shows clock-enabled flip-flop hardware registers, control logic, and an adder for providing a constant offset to a given address for reading 4-bit data located in external addressable memory at the location pointed by a 4-bit address on wires "PARAM_READ_MEMBER_B_P0–3" plus the offset provided by the adder, which illustrates the compilation of the C-type program to a gate-level hardware description. The external or on-chip memory is addressed by the address stored on wires "A0–3" at the Q outputs of the flip-flops shown in the upper portion of FIG. 24C. The memory returns the addressed data on wires "D0–3". The addressed data are clocked to the Q outputs of the flip-flops shown in the lower portion of FIG. 24C onto wires "RESULT_READ_MEMBER_B0–3". Although FIGS. 24A–24C show a 4-bit-wide variable, the variable may have any desired width, such as a 16- or 32-bit width.

FIG. 25A illustrates an ANSI C programming language description for writing the content of the parameter variable "n" into a memory word located at the memory address referenced by the variable parameter "p" which has an ANSI C "pointer-to-structure" type and a fixed offset corresponding to the structure member "b". FIG. 25B illustrates compilation of the ANSI C structure operation "->" into RTL Verilog HDL that can be synthesized into a netlist. FIG. 25C is a gate-level schematic diagram created from the netlist. FIG. 25C shows clock-enabled flip-flop hardware registers, control logic, and an adder for providing a constant offset to a given address for writing 4-bit data to external addressable memory at the location pointed by a 4-bit address on wires "PARAM_WRITE_MEMBER_B_P0–3" plus the offset provided by the adder. The external memory is addressed by the values stored on wires "A0–3" at the Q outputs of the flip-flops shown in the top portion of FIG. 25C. The data to be stored are clocked from the wires "PARAM_WRITE_MEMBER_B_N0–3" to the D inputs of the flip-flops shown in the lower portion of FIG. 25C onto wires "D0–3". Although FIGS. 25A–25C show a 4-bit-wide variable, the variable may have any desired width, such as a 16- or 32-bit width.

FIG. 26A illustrates an ANSI C programming language description for reading a memory word located at the memory address referenced by the fixed address determined at compile time of the "b" member of structure "s". FIG. 26B illustrates compilation of the ANSI C structure operation "." into RTL Verilog HDL that can be synthesized into a gate-level hardware design file, or netlist. FIG. 26C is a gate-level schematic diagram created from the netlist. FIG. 26C shows clock-enabled flip-flop hardware registers and control logic for reading 4-bit data located in external addressable memory at the location pointed by a fixed address "2", which illustrates the compilation of the C-type program to a gate-level hardware description. The external or on-chip memory is addressed by the address stored on

26

wires "A0–1" at the Q outputs of the flip-flops shown in the middle portion of FIG. 26C. The memory returns the addressed data on wires "D0–3". The addressed data are clocked to the Q outputs of the flip-flops shown in the lower portion of FIG. 26C onto wires "RESULT_READ_MEMBER_B0–3". Although FIGS. 26A–26C show a 4-bit-wide variable, the variable may have any desired width, such as a 16- or 32-bit width.

FIG. 27A illustrates an ANSI C programming language description for writing the content of the parameter variable "n" into a memory word located at the memory address referenced by the fixed address determined at compile time of the "b" member of structure "s". FIG. 27B illustrates compilation of the ANSI C structure operation "." into RTL Verilog HDL that can be synthesized into a netlist. FIG. 27C is a gate-level schematic diagram created from the netlist. FIG. 27C shows clock-enabled flip-flop hardware registers and control logic for writing 4-bit data to external addressable memory at the location pointed by a fixed address "2". The external memory is addressed by the values stored on wires "A0–1" at the Q outputs of the flip-flops shown in the middle portion of FIG. 27C. The data to be stored are clocked from the wires "PARAM_WRITE_MEMBER_B_N0–3" to the D inputs of the flip-flops shown in the lower portion of FIG. 27C onto wires "D0–3". Although FIGS. 27A–27C show a 4-bit-wide variable, the variable may have any desired width, such as a 16- or 32-bit width.

According to one modification, ANSI C pointer and structure operations for a read operation may be directly implemented in a gate-level hardware description by configuring a series of flip-flops in hardware corresponding to the number of bits of memory address and another series of flip-flops corresponding in number to the number of bits of data to be read, and by providing control logic that enables data to be read from addressable external or on-chip hardware memory to output wires. ANSI C pointer and structure operations for a write operation may also be directly implemented in a gate-level hardware description by configuring a series of flip-flops in hardware corresponding to the number of bits of memory address and another series of flip-flops corresponding in number to the number of bits of data to be written, and by providing control logic that enables data to be written from addressable external or on-chip hardware memory to input wires. For example, a generalized circuit configuration may be defined in a library, and the number m of bits of data and the number n of bits of address would be directly derived from the ANSI C pointer to define the schematic for the circuit. Therefore, ANSI C pointer and structure operations may be automatically converted by a parameterizable library look-up using values for m and n to gate-level hardware descriptions similar to the schematics shown in FIGS. 22C and 23C for pointer operations and in FIGS. 24C, 25C, 26C, and 27C for structure operations, respectively.

In summary, prior art computer aided hardware design tools generate so many unhandled exceptions and language restrictions when presented with typical high-level language programs (e.g., a C-type program) that it renders such tools virtually useless for practical hardware design. Therefore, persons using such tools are required to read manuals and attempt to create work-arounds for portions of the high-level programming language that are not implemented. In contrast, a salient feature of the system in accordance with the invention is that almost any ANSI C (or high-level programming language translatable to a C-type programming language) can be compiled, thereby obviating the need for the user to read manuals and attempt to create work-

US 6,226,776 B1

27

28

arounds for portions of the high-level programming language that are not implemented. Existing programs in a high-level programming language can typically be fed directly into the system in accordance with the invention without any error messages being generated.

Hardware generated using prior art computer aided hardware design tools is typically based on simple line-by-line, table-driven translation and as such does not contain the necessary widely scoped optimizations that produce practical and useful hardware designs for most applications. The system in accordance with the invention supports all functions of the high-level programming language in which the hardware design is rendered at compile time and re-uses HDL functional blocks for hardware design efficiency.

Design output of the prior art computer aided hardware design tool can be in so-called "behavioral HDL," which in many cases cannot be synthesized by existing synthesis programs into a gate-level representation of the hardware. The system in accordance with the invention generates register transfer level HDL that can always be synthesized.

Prior art computer aided hardware design tools attempt to generate designs that only apply to a single manufacturer hardware family, such as the creation of an XNF file for the Xilinx XC4000 FPGA family. In contrast, the system of the invention converts to a synthesizable HDL which can be synthesized by standard synthesis programs for implementation on hardware platforms of any one of a number of manufacturers, including Altera, Xilinx, Actel, Texas Instruments, LSI Logic, VLSI Technology, Lucent Technologies, NEC, Hitachi, Toshiba, Fujitsu, and others.

Finally, the language employed by prior computer aided hardware design tools has added and limited so many constructs that it is difficult to consider the employed language as the high-level language it purports to be. That is, the resultant language is more like a new specialized HDL. In contrast, the system in accordance with the invention enables the user to truly use a highlevel programming language, such as ANSI C, to design hardware.

The table below summarizes which prior art attempts described earlier have which shortcomings and shows the advantageous features of the system in accordance with the invention. The table clearly evidences that the system of the invention is a unique contribution to the state-of-the-art.

ating system platform, such as a UNIX operating system platform. These contemplated alternative embodiments and other modifications, changes, and adaptations are intended to be comprehended within the meaning and range of equivalents of the appended claims.

What is claimed is:

1. A method for converting a C-type language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given C-type programming language corresponding to a preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any C-type pointers in the C-type program; and

compiling any C-type pointers and pointer indirection into an HDL state-machine-based memory access protocol.

2. The method of claim 1, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

3. The method of claim 2, further comprising the step of using physical design tools to implement the gate-level representation as an actual hardware implementation.

4. The method of claim 1 wherein the C-type programming language is selected from among the group of C-type programming languages consisting of ANSI C, B, C++, Java, Kernighan & Ritchie C, and Objective C.

5. The method of claim 1 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

6. A method for converting a C-type language program to a hardware design, comprising the steps of:

| Feature | Invention | TMCC | JRS | NLC | Handel-C | XC |
|---|---|---|---|---|---|---|
| 1. Substantially full ANSI C | Yes | No | No | No | No | No |
| 2. Logic design optimized | Yes | No | No | No | Yes | Yes |
| 3. Design synthesizable | Yes | Yes | No | Yes | Yes | Yes |
| 4. Targets general HDL | Yes | No | Yes | No | No | No |
| 5. Is high-level programming language (not specialized new HDL) | Yes | Yes | Yes | Yes | No | No |

It will be understood and appreciated that the embodiments of the present invention described above are susceptible to various modifications, changes, and adaptations. For example, the computer aided hardware design tool in accordance with the invention can also convert other high-level programming languages than those that are specifically identified to a synthesizable hardware description language. Also, although the preferred embodiments have been described for a personal computer (PC) operating system platform, it will be appreciated that the computer aided design tool in accordance with the invention can alternatively be adapted for execution on any other type of oper-

creating an algorithmic representation in a given C-type programming language corresponding to a preliminary hardware design;

compiling the C-type programming lanauage preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

US 6,226,776 B1

29

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any non-addressable variables in the C-type program; and

mapping any non-addressable variables onto hardware registers formed in HDL.

7. The method of claim 6 wherein the C-type programming language variables include at least one of integer, floating point, pointer, enum, struct, and union variables.

8. The method of claim 6, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

9. The method of claim 8, further comprising the step of using physical design tools to implement the gate-level representation as an actual hardware implementation.

10. The method of claim 6 wherein the C-type programming language is selected from among the group of C-type programming languages consisting of ANSI C, B, C++, Java, Kernighan & Ritchie C, and Objective C.

11. The method of claim 6 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

12. A method for converting a C-type language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given C-type programming language corresponding to a preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any addressable variables in the C-type program; and

mapping any addressable variables onto at least one of addressable hardware memory and an addressable array of hardware registers formed in HDL.

13. The method of claim 12 wherein the C-type programming language variables include at least one of integer, floating point, pointer, enum, struct, and union variables.

14. The method of claim 12, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

15. The method of claim 14, further comprising the step of using physical design tools to implement the gate-level representation as an actual hardware implementation.

16. The method of claim 12 wherein the C-type programming language is selected from among the group of C-type programming languages consisting of ANSI C, B, C++, Java, Kernighan & Ritchie C, and Objective C.

17. The method of claim 12 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

18. A method for converting a C-type language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given C-type programming language corresponding to a preliminary hardware design;

30

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any complicated C-type mathematical operations in the C-type program; and

compiling multiple occurrences of any complicated C-type mathematical operation into a given HDL functional block that implements such an operation invoked on each occurrence by different states driven by the state machine.

19. The method of claim 18, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

20. The method of claim 19, further comprising the step of using physical design tools to implement the gate-level representation as an actual hardware implementation.

21. The method of claim 18 wherein the C-type programming language is selected from among the group of C-type programming languages consisting of ANSI C, B, C++, Java, Kernighan & Ritchie C, and Objective C.

22. The method of claim 18 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

23. A method for converting a C-type language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given C-type programming language corresponding to a preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation; and

determining the presence of any recursion in the C-type program, and wherein at least one of an identifiable direct and indirect recursive function call is compiled into an HDL state machine which has an interface to a stack implemented utilizing one of external and internal memory and an array of hardware registers, wherein the state machine has a stack pointer implemented utilizing a hardware register employed to store and restore local variables of the recursive function and other recursive function information in the stack.

24. The method of claim 23, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

25. The method of claim 24, further comprising the step of using physical design tools to implement the gate-level representation as an actual hardware implementation.

26. The method of claim 23 wherein the C-type programming language is selected from among the group of C-type

31

programming languages consisting of ANSI C, B, C++, Java, Kernighan & Ritchie C, and Objective C.

27. The method of claim 23 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

28. A method for converting a high-level language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given high-level programming language corresponding to a pre-liminary hardware design;

translating the high-level programming language preliminary hardware design into a C-type programming language preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any C-type pointers in the C-type program; and

compiling any C-type pointers and pointer indirection into an HDL state-machine-based memory access protocol.

29. The method of claim 28, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

30. The method of claim 29, further comprising the step of using physical design tools to implement the gate-level hardware representation as an actual hardware implementation.

31. The method of claim 28 wherein the high-level programming language is selected from among the group of C-type programming languages consisting of APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, Python, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

32. The method of claim 28 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

33. A method for converting a high-level language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given high-level programming language corresponding to a pre-liminary hardware design;

translating the high-level programming language preliminary hardware design into a C-type programming language preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

32

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any non-addressable variables in the C-type program; and

mapping any non-addressable variables onto hardware registers formed in HDL.

34. The method of claim 33 wherein the C-type programming language variables include at least one of integer, floating point, pointer, enum, struct, and union variables.

35. The method of claim 33, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

36. The method of claim 35, further comprising the step of using physical design tools to implement the gate-level hardware representation as an actual hardware implementation.

37. The method of claim 33 wherein the high-level programming language is selected from among the group of C-type programming languages consisting of APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, Python, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

38. The method of claim 33 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

39. A method for converting a high-level language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given high-level programming language corresponding to a pre-liminary hardware design;

translating the high-level programming language preliminary hardware design into a C-type programming language preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any addressable variables in the C-type program; and

mapping any addressable variables onto at least one of addressable hardware memory and an addressable array of hardware registers formed in HDL.

40. The method of claim 39 wherein the C-type programming language variables include at least one of integer, floating point, pointer, enum, struct, and union variables.

41. The method of claim 39, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

42. The method of claim 41, further comprising the step of using physical design tools to implement the gate-level hardware representation as an actual hardware implementation.

43. The method of claim 39, wherein the high-level programming language is selected from among the group of

33

C-type programming languages consisting of APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

44. The method of claim 39 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

45. A method for converting a high-level language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given high-level programming language corresponding to a preliminary hardware design;

translating the high-level programming language preliminary hardware design into a C-type programming language preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation;

determining the presence of any complicated C-type mathematical operations in the C-type program; and

compiling multiple occurrences of any complicated C-type mathematical operation into a given HDL functional block that implements such an operation invoked on each occurrence by different states driven by the state machine.

46. The method of claim 45, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

47. The method of claim 46, further comprising the step of using physical design tools to implement the gate-level hardware representation as an actual hardware implementation.

48. The method of claim 45 wherein the high-level programming language is selected from among the group of C-type programming languages consisting of APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, Python, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

49. The method of claim 45 wherein the hardware description language is selected from among the group of

34

hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

50. A method for converting a high-level language program to a hardware design, comprising the steps of:

creating an algorithmic representation in a given high-level programming language corresponding to a preliminary hardware design;

translating the high-level programming language preliminary hardware design into a C-type programming language preliminary hardware design;

compiling the C-type programming language preliminary hardware design into a hardware description language (HDL) synthesizable design, wherein the step of compiling comprises the steps of:

compiling a C-type program control flow into an HDL state machine; and

assigning input/output as defined in the C-type program to specific wires in the HDL synthesizable design;

configuring in the HDL synthesizable design an interface for a gate-level hardware representation; and

determining the presence of any recursion in the C-type program, and wherein at least one of an identifiable direct and indirect recursive function call is compiled into an HDL state machine which has an interface to a stack implemented utilizing one of external and internal memory and an array of hardware registers, wherein the state machine has a stack pointer implemented utilizing a hardware register employed to store and restore local variables of the recursive function and other recursive function information in the stack.

51. The method of claim 50, further comprising the step of synthesizing the HDL design into the gate-level hardware representation using a synthesis program to interpret the HDL design.

52. The method of claim 51, further comprising the step of using physical design tools to implement the gate-level hardware representation as an actual hardware implementation.

53. The method of claim 50 wherein the high-level programming language is selected from among the group of C-type programming languages consisting of APL, Ada, Algol, B, Basic, Kernighan & Ritchie C, C++, CLOS, COBOL, Clu, Common Lisp, Coral, Dylan, Eiffel, Emacs Lisp, Forth, Fortran, IDL, Icon, Java, Jovial, Lisp, LOGO, ML, Modula, Oberon, Objective C, PL/I, PL/M, Pascal, Postscript, Prolog, Python, RTL, Rexx, SETL, Simula, Sather, Scheme, Smalltalk, Standard ML, TCL, and TRAC.

54. The method of claim 50 wherein the hardware description language is selected from among the group of hardware description languages consisting of Verilog, VHDL, ABEL, CUPL, AHDL, MACHX, and PALASM.

*    *    *    *    *