Gary M. Hoffman (*Pro Hac Vice*)
Kenneth W. Brothers(*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
Phone (202) 420-2200
Fax (202) 420-2201

Edward A. Meilman (*Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York  10036-2714
Phone (212) 277-6500
Fax (212) 277-6501

Jeffrey B. Demain, State Bar No. 126715
Jonathan Weissglass, State Bar No. 185008
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California  94108
Phone  (415) 421-7151
Fax (415) 362-8064

Attorneys for Ricoh Company, Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

_____
                                                              )
RICOH COMPANY, LTD.,                         )
                                                              )
                              Plaintiff,              )
                                                              )
               vs.                                        )
                                                              )
AEROFLEX ET AL,                                  )     CASE NO. CV 03-4669 MJJ (EMC)
                                                              )
                              Defendants.            )     CASE NO. CV 03-2289 MJJ (EMC)
                                                              )
_____  )
                                                              )     **DECLARATION OF KENNETH BROTHERS**
SYNOPSYS, INC.,                                    )     **IN SUPPORT OF RICOH'S MOTION TO**
                                                              )     **FILE A SURREPLY IN OPPOSITION TO**
                              Plaintiff,              )     **DEFENDANTS' MOTION FOR RULE 11**
                                                              )     **SANCTIONS AND OF RICOH'S**
               vs.                                        )     **[PROPOSED] SURREPLY**
                                                              )
RICOH COMPANY, LTD.,                         )
                                                              )
                              Defendant.            )
_____  )

Kenneth Brothers declares as follows:

1.    My name is Kenneth Brothers, an attorney with the law firm of Dickstein Shapiro LLP, counsel for Ricoh Company Limited.  I am over the age of 21 and am competent to make this declaration.  This declaration is submitted in support of Ricoh's Motion for Leave to File a Surreply in Opposition to Defendants' Motion for Rule 11 Sanctions and in support of Ricoh's [Proposed] Surreply. Based on my personal knowledge and information except as stated upon information and belief, I hereby declare to all the facts in this declaration.

2.    Attached as Exhibit 1 is a true and correct copy of Ricoh's [Proposed] Surreply in Opposition to Defendants' Motion for Rule 11 Sanctions.

3.    Attached as Exhibit 2 is a true and correct copy of the April 24, 2005, letter from Erik Oliver to Kenji Takiguchi.

4.    Attached as Exhibit 3 is a true and correct copy of the May 2, 2005, letter from Kenji Takiguchi to Rex Jackson.

5.    Attached as Exhibit 4 is a true and correct copy of D.I. 326, the August 30, 2005, letter from the parties to Judge Chen.

6.    Attached as Exhibit 5 is a true and correct copy of D.I. 334, the September 16, 2005, letter from the parties to Judge Chen.

7.    Attached as Exhibit 6 is a true and correct copy of the Transcript of the Deposition of Russell Segal, dated December 20, 2005, who was deposed by Ricoh as a Rule 30(b)(6) witness on behalf of Synopsys.

Signed at Washington, D.C. on October 10, 2006.

October 10, 2006                                    /s/ Kenneth Brothers
                                                   Kenneth Brothers

**EXHIBIT 4**

August 30, 2005

**VIA ELECTRONIC FILING**

Honorable Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA  94102

      Re:    Ricoh v. Aeroflex, et al., Case No. CV-03-4669 MJJ (EMC)
              Synopsys v. Ricoh, Case No. CV-03-2289 MJJ (EMC)

Dear Judge Chen:

      Pursuant to the Court's Order of August 16, 2005, the parties submit the following report on discovery disputes. For simplicity, "defendants" refers to all of the Aeroflex et al. defendants as well as Synopsys.

      The parties have met and conferred regarding the discovery disputes set forth in Ricoh's letter of July 27, 2005 (D.I. 315, Ex. 5).[1]  The meet and confers regarding the Ricoh issues took place on August 22 and 24, 2005, with the participation of Gary Hoffman, Ken Brothers and DeAnna Allen for Ricoh, and Terry Corbin and Jacky Fink for defendants.  The meet and confer was by telephone; the August 22 conference lasted approximately 90 minutes, and the August 24 conference lasted approximately 25 minutes.

      I.     **INTRODUCTION**

      1.  Ricoh's Position.  Ricoh had hoped that, after a long discovery stay, the issuance of a claim construction, two case management conferences before Judge Jenkins in July 2005, and the near-total revamping of defendants' legal team, the parties could avoid the scorched-earth, fight-every-issue defense strategy that marked this litigation in late 2003 and early 2004.[2]  Unfortunately, this does not appear to be the

---

[1] All Docket Index citations are to Ricoh v. Aeroflex, et al., Case No. CV-03-4669.  A list of all exhibits to this joint letter follows the signature page.

[2] In a meeting in Japan in August 2003 attended by Gary Hoffman, Synopsys' general counsel, Rex Jackson, told Ricoh that if Ricoh did not dismiss its case, Synopsys and its ASIC defendant indemnities would not produce documents unless ordered by the Court, and would make this litigation extremely expensive.  This statement has been brought to the Court's attention on prior occasions.  See, e.g., Ricoh's April 23, 2004 Discovery Plan, at p. 1, lines 22-27 (attached as Exh. 1 to D.I. 315).  Until now, defendants have never disputed it.

Honorable Edward M. Chen
August 30, 2005
Page 2

case. Defendants repeatedly have stalled on virtually every discovery issue.[3] Even in this joint letter, Defendants have insisted on separate statements on all issues – even the issues that Ricoh understood had been resolved – as well the addition of separate introductions.[4]

Defendants' have insisted that their introduction include a statement of what they believe was "resolved" during the July Case Management Conferences. Defendants' statement is both incomplete (since many additional issues were addressed and resolved), and, with respect to the five issues that defendants identify, inaccurate. For example, the products at issue are *not* Synopsys products, but are the ASIC chips designed and manufactured by the ASIC defendants. The ASIC defendants (but not Synopsys) are being accused of infringing the '432 patent by using the process disclosed in claims 13-17, then the output from this process is used to manufacture the chips.[5] Thus, defendants' repeated characterization of certain Synopsys software as the "products in suit" is simply incorrect.

Following are some of the matters that were discussed and resolved at the CMC:

1. The processes at issue in this litigation are certain processes used by the ASIC manufacturers for designing the ASICs to be manufactured. The particular Synopsys tools that are used in carrying out these processes are Design Compiler, HDL Compiler for Verilog, VHDL Compiler, DesignWare Foundation Library, Module Compiler, and Physical Compiler and other software products listed on Page 28 of the Joint CMC report.

---

[3] While many documents have been produced by the defendants, the majority have been alleged prior art documents.

[4] Upon receipt of this Court's August 16 Order , Ricoh requested that the meet and confer occur the same week. Defendants declined to meet until August 22, and when the meet and confer took place, defendants' counsel stated a need to consult with her client on several issues, causing the meet and confer to be continued to August 24. As ordered by the Court, Ricoh's counsel had full authority to address all matters on the agenda set by Ricoh's July 27 letter.

[5] Defendants Aeroflex and AMI Semiconductor perform this infringement in the United States, so Ricoh's claims against them are based upon §271(a). There is a disputed factual issue of where the Matrox entities have performed their infringing activities; to the extent it is all outside of the U.S., Ricoh's claims against them are based upon §271(g), and at trial Ricoh will be required to show that the infringing process is proximately related to the finished ASIC product. Throughout this joint letter, defendants inappropriately attempt to bootstrap this §271(g) obligation on to all of Ricoh's claims in an attempt limit Ricoh's discovery.

Honorable Edward M. Chen
August 30, 2005
Page 3

2. The only ASIC products that Ricoh is accusing of infringement are
commercial ASICs manufactured by the ASIC defendants that were
using one or more of the software tools listed on Page 28 of the CMC,
and not ASICs designed using logic synthesis tools from other
companies. Since the ASIC manufacturers have refused to disclose to
Ricoh what if any logic synthesis tools from other companies they
utilize, Ricoh has made no allegations about such any use of such tools
in this litigation.

3. The libraries that are relevant to this suit are target technology,
synthetic, symbol, link, design, and GTECH libraries for the ASICs
products designed using Design Compiler. Pursuant to Judge Jenkins'
Order at the July 13 CMC, on July 21 and August 15 and 16, the ASIC
defendants submitted declarations that, according to their counsel,
include a full and complete list of all such ASICs, and libraries, from
1997 through the present.

4. During the CMC, Judge Jenkins proposed to the ASIC defendants that
they wait to refile their motion for partial summary judgment under
Section 271(g) after the close of discovery when any other motions are
filed. When the ASIC defendants insisted on filing it earlier, the Court
granted them permission to refile their motion for partial summary
judgment under § 271(g) but only after the deposition of the two
declarants submitting affidavits in support were taken.

5. During the CMC on July 13, the ASIC defendants and Synopsys told
the Court that 4 months was a sufficient time for all fact discovery.
Ricoh informed the Court that 4 months was not feasible but that it
believed that it was possible to complete fact discovery in 6 months if
the defendants and Synopsys provided their documents and
supplement interrogatory responses quickly and that they had
promised to do so by the end of August at the latest. The Court then
set a 6 months time period for fact discovery.

2. Customer Defendants' Position. Synopsys and the Customer Defendants
believe it will be helpful for the Magistrate Judge to have a copy of the latest Joint Case
Management Conference Statement, and attach it hereto as Exhibit 1. During the Case
Management Conferences, the following issues were resolved:

1. The Synopsys products at issue in this case are Design Compiler, HDL
Compiler for Verilog, VHDL Compiler, DesignWare Foundation
Library, Module Compiler, and Physical Compiler (hereinafter
"products-in-suit").

2. Only designs of ASICs that actually went into commercial production
will be the subject of discovery in this suit.

Honorable Edward M. Chen
August 30, 2005
Page 4

       3.   The only commercial designs/ASICs that are relevant are those whose front-end design/synthesis (input to netlist) was created using the products-in-suit. Therefore, any designs or chips that were designed using Synopsys' competitors' products are not at issue in this case.

       4.   The libraries that are relevant to this suit are target technology, synthetic, symbol, link, design, and GTECH libraries for the products listed on the Product Declarations.

       5.   The Customer Defendants were granted permission to refile their summary judgment motion re: § 271(g) as soon as the deposition of their two declarants were taken. The Court made it clear that the only discovery necessary or allowed in order to hear that motion were these two depositions.

      Synopsys and the Customer Defendants respectfully request a hearing on the issues addressed herein. Ricoh provided Synopsys and the Customer Defendants with their portion of this letter on Thursday at 9:42 A.M. PST and Synopsys and the Customer Defendants provided their responses in less than 36 hours at 8:25 P.M. PST. Ricoh provided another version of the letter with substantial changes, additions and new case law at 10:33 a.m. on Monday. Synopsys and the Customer Defendants provided their revised section in response approximately 5 hours later at 3:56 p.m. Ricoh complains that counsel for the Customer Defendants were not available to meet and confer from August 17-19, 2005. The reason counsel was unavailable on those days was because they were visiting customer sites to collect documents. The meet and confer took place the following Monday upon counsel's return. Synopsys and the Customer Defendants disagree with many of the mischaracterizations in Ricoh's new additions to this letter but cannot address each and every one and file this letter today. Synopsys especially takes issue with the false representation regarding alleged statements by Synopsys' General Counsel found at footnote 2 herein. No such statements were made by Synopsys' General Counsel to Ricoh at any time. While Synopsys and the Customer Defendants have refused to produce certain categories of documents that they believe are irrelevant and not likely to lead to the discovery of admissible evidence and Ricoh's unwillingness to withdraw or narrow such discovery has caused the parties to seek guidance from the Court regarding the proper scope of discovery, Defendants have not "stalled on virtually every discovery issue" as stated by Ricoh. Synopsys and the Customer Defendants have met their discovery obligations and even produced documents during the stay when they had no obligation to do so. To date, approximately 200,000 pages of documents have been produced and two versions of the source code for the products-in-suit has been made available to Ricoh for well over one year, all throughout the stay period.

## II.    <u>RESOLVED DISCOVERY DISPUTES</u>

      The parties reached agreement on several discovery disputes. Those agreements are as follows:

Honorable Edward M. Chen
August 30, 2005
Page 5

## A. Identification of design libraries created during synthesis.

1. Ricoh's Position. In response to an order by Judge Jenkins during the CMC on July 13, on July 21, defendants served declarations that they represented identified certain information, including full identification of the design libraries for all of its commercial ASICs designed using Design Compiler.[6] Based upon the representations of defendants' counsel on August 22 that the declarations, which as required by Judge Jenkins were submitted under penalty of perjury, accurately describe all of the relevant design libraries, and that defendants will produce all of their existing design libraries (although the timing of that production remains in dispute), at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants.[7]

---

[6] On July 18, 2005, Ricoh's identified for the defendants the types of libraries it was seeking and cited to documents of the defendants for support for these terms. (Exh 36.) That definition, in turn, references a March 16, 2005 Synopsys document that Ricoh located deep within Synopsys' web site, entitled "DesignWare Building Block IP User Guide," which defines a design library as follows: *"The design library contains the actual circuit implementations that perform the functions you call for when you include DesignWare Building Block IP in your design. The DesignWare Building Block IP concepts of synthetic module and implementation closely correspond to the VHDL concepts of entity and architecture. An implementation can be viewed as an architectural realization of a synthetic module. An implementation can be anything from a technology-specific netlist to a synthesizable RTL-level design description"* (Exh. 37.) Based upon this definition, a design library is an necessary portion of the infringing logic synthesis process. All ASIC designs using Design Compiler and DesignWare use such design libraries (which defendants have called synthetic_library implementations). Ricoh requested, and had understood defendants were going to produce, the design libraries described in the DesignWare documentation, including any alterations, modifications, substitutions for, or additions thereto. Defendants' response to Ricoh's July 18, 2005 letter indicated that the defendants use other kinds of files that they call design libraries. For example, Defendants' July 21, 2005 declarations described these files as an intermediate data format that some of the defendants temporarily save. Defendants repeatedly have referred to such design libraries in submissions to the Court, correspondence between the parties and during the meet and confer conferences. In short, Ricoh seeks production of all such design libraries; if defendants are not producing them, they should explain why.

[7] In their draft received Monday night, August 29, defendants for the first time took issue with the definition of design libraries that had formed the basis of more than a month of negotiations. Until the evening of August 29, Ricoh had understood that defendants had agreed to produce all existing design libraries, including: the design libraries described in DesignWare documentation, including in any alterations, modifications, substitutions for, or additions thereto (what the defendants describe as synthetic_library implementations) (*see supra* note 6); and the design libraries that are generated during synthesis and saved by at least some defendants. (*id.*). Now, however, it appears that defendants unilaterally are attempting to narrow the

Honorable Edward M. Chen
August 30, 2005
Page 6

Defendants' statement of their "position" on what Ricoh had understood was an agreed-upon issue is both an effort to spin certain issues (e.g., characterizing logic synthesis as "front-end design" and laying the groundwork for attempting to justify their failure to collect documents in June and July), and to inappropriately attempt to argue an issue that remains in dispute – defendants' failure to retain relevant files. See Disputed Issues, Topic G.

2. Customer Defendants' Position. Between the July 13 and July 22 Case Management Conferences ("CMC"), the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis (i.e., front-end design) performed using the products-in-suit, and provided separate Input and Library Declarations on July 21, 2005. Attached as Exhibits 2-11. The Library Declaration included information about design libraries.

During the July 22, 2005 teleconference hearing, the Customer Defendants agreed to provide a list of commercial products for which Design Compiler was used by the named Customer Defendants for logic synthesis, a description of each of these products, and the target technology libraries used. After a significant effort to collect this information, the Product Declarations were provided on August 15 and 16. Attached as Exhibits 12-17.

Synopsys and the Customer Defendants dispute footnotes 6 and 7 in their entirety. Counsel for the parties have wasted substantial time conferring about production of design libraries. From Ricoh's recent revisions to the letter, received today, it is apparent that counsel have been miscommunicating as a result of Ricoh's continued practice of using varied technology to refer to the same items and the use of different terminology from Synopsys. At the CMC, the Court and the parties discussed this issue at length and attempted to reach a common understanding to avoid miscommunications in the future. Synopsys' counsel provided a letter dated July 18, 2005 (Ex. 38) setting forth the terminology used by it and an explanation of the meaning of each term. As can be seen by the letter, Ricoh had used the term design library to refer to at least nine different items, two of which are generally termed "design libraries." Synopsys and the Customer Defendants have already committed to producing the items listed in the chart, with the exception of the "design libraries created during synthesis" (see third row of the chart on page 3) as further delineated below.

With respect to synthetic library implementations addressed by Ricoh in footnote 6, evidence has already been supplied in this case that the Customer Defendants only use Synopsys synthetic libraries and that they do not alter or add to them. As indicated in the July 18, 2005 letter, Synopsys produced the source code for the synthetic libraries—and their respective synthetic library implementation--long ago.

---

definition, perhaps to protect themselves, because they have failed to retain design libraries (Disputed Issue, Topic G, below).

Honorable Edward M. Chen
August 30, 2005
Page 7

The only remaining issue regarding library data, as far as counsel for Synopsys and the Customer Defendants understands it, relates to intermediate storage formats that are caused to be created by the use of specific commands that not all customers use. Customers do not usually retain such intermediate files on an ongoing basis such as in archived versions of products (because they can be regenerated later when needed from the original inputs). Further, in many cases, the cache directories containing these intermediate files are periodically purged to ensure smooth functioning of the systems. This is analogous to the way that the Internet Explorer browser cache is periodically trimmed in size to prevent it from consuming endless disk space.

The Library Declarations make clear that the only Customer Defendants that use these intermediate files are Matrox Graphics and Matrox Tech (while other Customer Defendants may create them, they do not use them), and only for particularly large chips. While we informed the Customer Defendants of the requirement to retain documents and files relevant to the litigation, we did not believe it was appropriate to require them to modify their design process flow to add the creation (to the extent not used by the customers) or retention of these intermediate files to their scripts. We also do not believe that it is appropriate to require them to create documents that they do not ordinarily create which would grind the ordinary use of their systems to a halt going forward. Any of these intermediate electronic files that exist for the products listed in the Product Declarations will be provided. In addition, since the Customer Defendants will be providing their available inputs and other libraries in electronic format, Ricoh can **create** the exact same files by running the logic synthesis process and, if desired, adding the necessary commands to create and/or save these files. See topic G under Remaining Discovery Disputes.

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, and GTECH libraries for the products listed on the Product Declarations.

**B.  A list of the ASIC Defendants' ASIC products and identification of the technology libraries used.**

1. Ricoh's Position. Based upon defendants' representations on August 22 that the declarations they provided on August 15 and 16, which were submitted under penalty of perjury as required by Judge Jenkins, contained a complete and accurate list of all commercial ASICs synthesized using Design Compiler by defendants from February 1997 to the present, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants.

2. Customer Defendants' Position. The Product Declarations provided on August 15 and 16 included information about the target technology libraries or library families used for the logic synthesis of the products listed.

Honorable Edward M. Chen
August 30, 2005
Page 8

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, and GTECH libraries for the products listed on the Product Declarations.

### C. Production of release notes regarding Synopsys tools at issue.

1. Ricoh's Position.  Based upon defendants' representation on August 22 that all such release notes have been produced, at this time Ricoh is not pursuing this matter.  The issue of which versions of Design Compiler were used to produce each of the infringing ASICs is unresolved and is one of the focal points of Ricoh's discovery. Some discovery of the earlier versions of Design Complier will likely be required; however, this issue can be addressed at a later time.

2. Customer Defendants' Position.  There have been many different versions of the products-at-issue since February 1997.  Synopsys has provided two different versions of source code, version 2.0 and V-2003.12-SP1, to Ricoh.  Since 1997, on average there have been at least two major releases of the products-in-suit per year and several more minor releases.  At a minimum, there were at least 18 major releases of the products-in-suit during the potential damage period.

It takes approximately 30 days on the part of a full time equivalent engineer to provide each buildable version of the software.  It is not practical or reasonable to expect that Synopsys will produce source code for every release of the product from 1997 to the present.  It is also unimaginable how long the trial would take or the verdict forms would have to be if Ricoh is required to prove infringement of every release of the products-in-suit.

In the interest of facilitating a stipulation on a representative version of the source code in order to streamline discovery, after Ricoh's request at a June 13, 2005 meet and confer, during the stay Synopsys provided all of the release notes that were located after a reasonable search.

### D. Production of DesignVision and DesignAnalyzer user manuals.

1. Ricoh's Position.  DesignVision and DesignAnalyzer are Synopsys tools that the ASIC defendants use to visualize the design of ASICs, and thus are relevant to Ricoh's claims.  Synopsys has committed to produce the user manuals for these products.  Ricoh is deferring for now other questions regarding the scope of Synopsys' document production regarding the Design Compiler family of products until after it reviews such manuals.

2. Customer Defendants' Position.  During the July 13, 2005 Case Management Conference, Ricoh represented that the only products-at-issue in this case were those listed in the table on page 28 of the Joint Case Management Conference Statement.  DesignVision and DesignAnalyzer are not listed as products-at-issue in this case.  Nonetheless, Synopsys had previously provided the executables for these products and agreed, during an August 24, 2005 meet and confer session, to provide the

Honorable Edward M. Chen
August 30, 2005
Page 9

user manuals. Synopsys and the Customer Defendants do not intend to provide any other documents or information regarding these products, as they irrelevant to the issues in this case.

### E. Production of synthetic library documents.

1. Ricoh's Position. Based upon defendants' representations on August 22 that they will produce all relevant synthetic library documents for all of their commercial ASIC products from February 1, 1997 to the present, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after examining further documents of the defendants. Defendants' statement again attempts to justify their failure to collect documents until now, claiming it took "significant time and effort" to collect relevant information. Counsel for Synopsys and the defendants have a large number of attorneys and staff involved in this litigation and also several of the companies have in-house legal staff. There is no reason that this information could not have been collected earlier, and no excuse for failing to collect documents at the same time.

2. Customer Defendants' Position. Between the July 13 and July 22 Case Management Conferences ("CMC"), the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis performed by the named Customer Defendants using the products-in-suit, and provided separate Input and Library Declarations on July 21, 2005. The Library Declaration included information about synthetic libraries.

In terms of libraries to be produced, the Customer Defendants will provide available target technology, synthetic, symbol, link, design, and GTECH libraries for the products listed on the Product Declarations.

### F. Production of all source code and license keys.

1. Ricoh's Position. Based upon Synopsys' representations that, pursuant to Ricoh's discovery requests and the representations to this Court in early 2004, it has produced all source code and license keys for one version of Design Compiler, at this time Ricoh is not pursuing this matter, although it reserves the right to do so after it determines which version of Design Complier was used in the design of the ASIC products at issue and has obtained certain other discovery.

2. Customer Defendants' Position. Even though not obligated to do so, Synopsys produced the object code, source code and license keys for version V2003.12-SP1 of the products-in-suit, as well as for a number of additional products that are not products-in-suit, during the discovery stay period. Additionally, source code to the 2.0 version of Design Compiler was produced.

Prior to Ricoh's recommencing its source code review on July 11, 2005, two new items were loaded onto the computer, (1) an updated FlexLM license key and (2) a

Honorable Edward M. Chen
August 30, 2005
Page 10

Physical Compiler customer education module which was available when V-2003.12 of Physical Compiler was released. *See* June 27, 2005 letter from Jaclyn Fink to DeAnna Allen, attached hereto as Exhibit 27.

**G. Details on the 10% of inputs that were unaccounted for in the July 21, 2005 declaration from AMIS regarding inputs.**

1. Ricoh's Position. Based upon defendants' representation in their letter of August 12 that this input was VHDL, this issue is resolved.

2. Customer Defendants' Position. In AMI's July 21, 2005 Input Declaration, they indicated that 90% or more of the source inputs for the digital portions of the commercial ASICs designed by them which utilized Design Compiler for logic synthesis were provided as textual Verilog. At Ricoh's request, AMI verified that any other source inputs for the digital portions of the commercial ASICs designed by them which utilized Design Compiler for logic synthesis were provided as VHDL.

**H. Agreement that defendants will properly identify the source of documents.**

1. Ricoh's Position. Defendants have committed to identify the source of all documents by Bates Numbers corresponding to the producing party, a request Ricoh had first made more than two years ago. For previously produced documents, defendants have agreed to provide a letter that identifies the producing party and corresponding Bates ranges for all documents with Bates prefix "DEF". Defendants also have agreed to not use a "DEF" prefix for future productions, but instead use a Bates prefix that makes evident the specific producing party (e.g., "Aeroflex," "AMI," separate designations for each of the Matrox entities, "Synopsys," etc.).

2. Customer Defendants' Position. Since Ricoh has indicated that it wanted separate identification of documents for the different Customer Defendants, we have made such identification in the document production letters. To the extent that such identification has not yet been made for any documents and is available, we will provide it. Going forward, we will provide a separate Bates prefix for each Customer Defendant.

**I. Agreement regarding electronic service and communications.**

1. Ricoh's Position. The parties have agreed that communications between counsel (including letters and service of documents not filed with the court) will be electronically transmitted via PDF to the other side as instructed in writing. Each party has identified the counsel to be so served and has the right to add to or modify the list in the future. Such service shall be considered via U.S. Mail under the Federal Rules.

2. Customer Defendants' Position. At Ricoh's request, we will send communications between counsel that are not unduly large via PDF to Gary Hoffman, Ken Brothers, Ed Meilman, Eric Oliver, Michael Weinstein, and DeAnna Allen. Ricoh

Honorable Edward M. Chen
August 30, 2005
Page 11

agreed to send such communications via PDF to Terry Corbin and Jacky Fink. Going
forward, Synopsys and the Customer Defendants request that all such communications
from Ricoh be electronically submitted via PDF to Terry Corbin, Jacky Fink, Bob
Laurenson, Elizabeth Fontaine, Tom Crunk, Peter Kasenenko, and Jason Hancock.
Since this service will be considered as via U.S. Mail under the Federal Rules, there will
be the three days added to the hand service deadlines.

### III.    <u>REMAINING DISCOVERY DISPUTES</u>

The parties were not able to reach agreement on the remaining discovery
disputes. Those remaining discovery disputes and the parties' respective positions are
provided below.

#### A.  Timing of defendants' production of documents.

1. Ricoh's Position. In April 2004, defendants had committed to produce all
of their relevant responsive documents. (D.I. 315, Ex. 1 & 2.) Defendants failed to meet
that deadline; their claim that they complied is wrong since, for example, they simply
refused to produce documents relating to their infringement, or marketing, sales and
damages. On May 4, 2004, Judge Jenkins stayed merits discovery until after he issued
his Markman ruling. After the Court issued its April 7, 2005 claim construction ruling,
Ricoh urged defendants to produce all of their documents by June 30, 2005. (D.I. 301.)
Defendants' counsel stated in response that she would not be able complete the
production of all of her clients' documents until "the end of August." After Judge
Jenkins lifted the discovery stay and ordered the immediate commencement of all
merits discovery on July 22, 2005, Ricoh reminded defendants of their commitment to
produce all documents by the end of August. (D.I. 315, Ex. 5.) Now, however,
defendants are refusing to commit to produce all of the documents to which they have
not made objections until October 7, 2005 and then only to "try" to meet this October
date. (D.I. 318, Ex. 1).[8] Defendants claim (in footnote 14) that they need 6 weeks from
the date the stay was actually lifted on July 22, but 6 weeks from July 22 is September 2.
During the meet and confers on August 22 and 24, defendants' counsel refused to
budge from the October 7 date. These documents should have been collected and ready
for production in 2004 with defendants now only needing to update the collection
process. Even if the documents were not ready in 2004, defendants should have started

---

[8] While the defendants now complain that various client representatives are on
vacation, the scheduling issue is one of their own creation. If the defendants had begun
the process in 2004 when they originally committed to do so or even in June 2005 when
they again promised to do so then they would not have any scheduling issue at this
time. If a problem existed then they should have brought the matter to the Court's
attention during the CMC; they were urging the Court to allot only four months for
discovery, and knew that Ricoh was relying on defendants' representation that all
documents and supplemental interrogatory responses would be provided by the end of
August. Based upon defendants' representations, Ricoh urged and the Court scheduled
a six month period for fact discovery.

Honorable Edward M. Chen
August 30, 2005
Page 12

this process in April (after the claim construction ruling was issued) or at the latest by the end of May 2005, when Ricoh conferred with counsel for the defendants and discussed the issue again with them. Any delays in this collection process are the result of defendants' own decisions to delay the process.

The timing of production of documents relates to a large number of the issues set forth in Ricoh's letter of July 27 (D.I. 315 Ex. 5), including Issues 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16. Rather than reiterate each of those individual issues herein, Ricoh seeks an order compelling defendants to produce all documents by no later than September 2, 2005.

The timing of the production of defendants' documents has a cascading effect upon the rest of the discovery schedule. When Judge Jenkins issued the pretrial schedule on July 22, 2005 (D.I. 309), the Court specifically provided that, after receiving the August 15 and 16 declarations (Exhibits 12-17), Ricoh would have at least 60 days of discovery prior to serving its final infringement contentions on October 17, 2005.[9] The Court expressly rejected defendants' request for a discovery stay until after Ricoh served its final infringement contentions. By refusing to produce their documents until a week before the final infringement contentions are due, defendants have essentially granted themselves the discovery stay that Judge Jenkins rejected. Ricoh should receive the benefit of the 60 days of discovery contemplated by the pretrial schedule, and asks that the dates be adjusted accordingly. Defendants had urged Judge Jenkins to set a period of only 4 months for discovery and if they were doing so in good faith they must have been prepared to quickly produce their documents. Believing that a longer period was necessary and that the defendants would honor their prior commitment to produce all documents by the end of August, Ricoh requested 6 months for fact discovery, which is what the Court set.

Defendants' statement below contains several factual errors, perhaps because (with the exception of Ms. Corbin and possibly Ms. Fink), none of the Howrey attorneys who were involved in this case in 2004 and 2005 are still involved in the case. With respect to the source code, it was only recently that Synopsys acknowledged that what it had made available to Ricoh's experts was incomplete. Synopsys also omits to state that it offered and Ricoh accepted a witness for deposition on the source code, then Synopsys revoked the offer and has attempted to block that deposition ever since. Defendants still are refusing to produce a witness in lieu of written responses to Ricoh's questions (e.g., a Rule 31 deposition), which is inconsistent with the Federal Rules and is unacceptable. This same argument to avoid a traditional deposition on the topics was made by the defendants during the CMC on July 13 and rejected by Judge Jenkins.

---

[9] Ricoh requested that the defendants agree to a postponement of the due date for Ricoh's Final Infringement Contentions by 60 days so that the due date would be after the defendants have produced all of the documents. However, the defendants were unwilling to agree to anything more than 28 day postponement.

Honorable Edward M. Chen
August 30, 2005
Page 13

Defendants also apparently made no effort to collect any emails, and have not
disclosed whether they have been retaining their emails or the process by which they
intend to search for and produce them.[10] Defendants also launch an irrelevant and
erroneous attack regarding Ricoh's preliminary infringement contentions which are not
relevant to the issues here; other than noting its disagreement, no response is required.

During the CMC, defendants argued that Ricoh's preliminary infringement
contentions were inadequate[11] and that all discovery should be stayed until Ricoh
submitted its final infringement contentions. Ricoh explained that discovery was
needed before providing the final infringement contentions; Ricoh explained that this
discovery included the production of documents and interrogatory responses that the
defendants had committed to provide by no later than the end of August and also the
deposition of Synopsys under Rule 30(b)(6) on the source code. Defendants' request for
a stay of discovery was rejected by Judge Jenkins during the CMC on July 13.

2. Customer Defendants' Position. Contrary to Ricoh's assertions, Synopsys
and the Customer Defendants have been diligent toward their discovery obligations.[12]
Ricoh's infringement allegations center around Synopsys' logic synthesis products, and
Synopsys made the source code for the accused products available on May 10, 2004,
first in Maryland and subsequently at its SURF facility in Mountain View, California,
and throughout the stay period. Ricoh made very little use of these facilities during the
15 month stay.

Synopsys also provided the documentation for these products during the
discovery stay. Though there was no obligation to do so, millions of lines of source
code and more than 50,000 pages of documents were produced during the discovery
stay, including prior art, Synopsys release notes, and Synopsys product documents.
Synopsys also repeatedly offered to respond to written questions under oath regarding
the source code, as it believes that given the size of the code (millions of line of code per
version of the code) detailed information would be difficult to get by way of deposition
testimony. Ricoh declined to take Synopsys up on this offer.

---

[10] During the August 24 meet and confer, defendants obliquely said that they may wish
to discuss how they will search for emails, but have proposed nothing substantive.
During the August 24 meet and confer, at defendants' request Ricoh's counsel provided
some suggestions with respect to the search for emails and other electronic documents.
Ricoh expects defendants to timely produce their emails and other electronic documents
as required by the Federal Rules pursuant to the dates established by this Court.

[11] While Ricoh disagrees with this attack by the defendants, it is irrelevant to the issues
here just as is Ricoh's challenges to the adequacies of the defendants' preliminary
invalidity charts and their failure to comply with a prior order of this Court.

[12] Ricoh is blatantly misrepresenting the discovery obligations in effect during the stay.
These sorts of misrepresentations and other disputes demonstrate why a court reporter
should be allowed at all meet and confer sessions and hearings. See topic H under
Remaining Discovery Disputes, below.

Honorable Edward M. Chen
August 30, 2005
Page 14

In addition, the Customer Defendants substantially complied with the April 2004 deadline for production of documents other than e-mail, subject to their objections to the document requests, including the objections related to the § 271(g) matter. A final set of documents was received from AMI after the discovery stay, and was produced on July 6, 2005. There is an outstanding issue related to e-mail collection, which the parties are still discussing.

The May 5, 2004 discovery stay was put into place precisely to minimize unnecessary discovery. The Customer Defendants were in no way obligated to collect documents during this stay. After the claim construction ruling issued, counsel for the parties confirmed with each other that the stay of discovery would remain in effect until lifted by the Court after the Case Management Conference. During a June 13, 2005 meet and confer session, the Customer Defendants **tentatively** agreed to produce documents by the end of August, based upon the assumption that the discovery stay would be lifted at the scheduled June 14 Case Management Conference ("CMC"), which was postponed until July 13, 2005. This offer was based on the fact that counsel believed that it would take six weeks to collect and process documents once the stay was lifted.

During the July 13 and July 22 CMCs, the proper scope of discovery was identified, and the discovery stay was lifted on July 22, 2005. Between these two CMCs, the Customer Defendants expended significant time and effort to collect information related to the inputs and libraries used for the commercial ASICs that had logic synthesis performed, and provided separate Input and Library Declarations on July 21, 2005. Based upon guidance at the July 22 CMC, the Customer Defendants provided Product Declarations on August 15 and 16, which identify the products for which documents will be collected and produced. The first document collection trip then occurred on August 17 and 18 – immediately after the lists of relevant products had been compiled.

The current document collection effort involves traveling to approximately a dozen locations and collecting documents from more than seventy people. This document collection effort is already underway, with trips to two customer locations already completed, and the remainder of the trips scheduled between now and the end of September.[13] This effort involves the collection, review, and production of four main categories of documents.

The first category of documents is supplementation based upon the passage of time. The last document collection occurred shortly before the discovery stay. A supplemental document collection is occurring for documents generated since that time.

---

[13] At Matrox, approximately 50 individuals have been identified as possibly having responsive documents. Many of these individuals had scheduled vacations in late August and early September and were unavailable prior to September 12. Thus, counsel will be collecting documents from the other Customer Defendants in early September and proceed with the Matrox document collection thereafter.

Honorable Edward M. Chen
August 30, 2005
Page 15

The second category includes logic synthesis-related documents (including inputs, scripts, designs, specifications, target technology libraries, symbol libraries, synthetic libraries, link libraries, design libraries, GTECH libraries, netlists, outputs, and relevant e-mail and memos) for the commercial products designed by the named Customer Defendants using Design Compiler, as listed in the Customer Defendant Product Declarations.

The third category of documents includes Aeroflex Colorado Springs documents. Aeroflex Colorado Springs was added to the case on April 12, 2004, shortly before the May 5 discovery stay. While we believe that the documents provided by Aeroflex Incorporated were actually Aeroflex Colorado Springs documents, we are confirming that there are no other responsive documents from Aeroflex Colorado Springs that were not produced by Aeroflex Incorporated.

The forth category includes documents from the three Canadian Matrox companies. Due to a dispute as to the appropriate scope of discovery from these Canadian companies, who either do no design work at all (in the case of Matrox International), or do their design work in Canada (in the case of Matrox Electronic Systems and Matrox Graphics), documents were not previously collected from these entities. Although we still dispute whether the inclusion of these companies in this suit is appropriate, as addressed in part by our § 271(g) motion, we are going forward with collecting documents from them.

The volume of documents collected for review is likely to be at least several hundred thousand pages. We are making our best efforts to complete the collection and production of these documents by October 7, 2005,[14] and will produce documents on a rolling basis as they are processed. This is hardly a discovery stay, as alleged by Ricoh.

During an August 22, 2005 meet and confer, Ricoh requested an additional **sixty days** to complete their Final Infringement Contentions after the documents are produced, even though the Local Rules only provide for 30 days from the claim construction order, and Ricoh has had access to the Synopsys code since May 10, 2004. In order to ensure that the contentions contain the requisite specificity for each of the Customer Defendant products,[15] we offered on August 24 to extend the deadline for the

---

[14] Using the same six week interval of time (from the lifting of the stay to the production of documents) that was the basis of the tentative end of August date (which was based on the assumption that the stay would be lifted on June 14, 2005), Synopsys' counsel represented it would use best efforts to produce documents by October 7, 2005.

[15] Ricoh's Preliminary Infringement Contentions were utterly inadequate. Defendants were forced to file a motion to seek more detailed infringement contentions. At two separate hearings on May 27 and June 16, 2004, and by order dated June 17, 2004, this Court made clear that the amended preliminary infringement contentions were to include as much information as Ricoh currently knew about its infringement contentions, that they needed to provide information specific to each defendant on a product by product basis, and that there needed to be an identification of where in each

Honorable Edward M. Chen
August 30, 2005
Page 16

Final Infringement Contentions from October 17, 2005 to November 14, 2005 (with a related extension for the Final Invalidity Contentions from November 7, 2005 to December 14, 2005). We made this offer despite the fact that it is our belief that Judge Jenkins set the date for Final Infringement Contentions based on source code access and not Customer Defendant discovery.

In summary, Synopsys and the Customer Defendants are making their best efforts to collect and process voluminous documents from a significant number of locations and people as quickly as possible – we simply cannot produce documents that we have not yet collected, making Ricoh's request for an order to compel by September 2, 2005 unrealistic. We agree that a four week extension to the Final Infringement Contentions deadline (with a related extension for the Final Invalidity Contentions deadline) is reasonable, in order to ensure the completeness of the Final Infringement Contentions, but believe that any further extension is overreaching, and will impact the rest of the case schedule.

**B. Timing of defendants' supplementation of their initial disclosures or their responses to Ricoh's interrogatories and requests for admission.**

1. Ricoh's Position. Similar to the timing issue for the production of documents, defendants refuse to supplement their initial disclosures or their responses to Ricoh's written discovery requests prior to October 7, 2005. Defendants' delay effectively prevents Ricoh from timely obtaining discovery as contemplated by Judge Jenkins. Ricoh seeks an order compelling defendants to supplement all written discovery responses by no later than September 2, 2005. In addition, on August 11, 2005, Ricoh served a third set of discovery requests upon all defendants, the responses to which are due on September 13. Defendants claim that it is "outrageous and unreasonable" to be required to produce documents thirty days after receipt of a document request. Because defendants have refused (and continue to refuse) to produce large categories of relevant and responsive documents[16] absent an explicit Court Order (e.g., their promised production is "subject to their objections"),

---

accused product they found each element of the asserted claims. Ricoh's last amended Preliminary Infringement Contentions did not provide that information. For example, Ricoh's Amended Preliminary Infringement Contentions did not specify what in the accused products constitutes the "expert system knowledge base," the "set of rules for selecting," or "architecture independent actions and conditions." Rather, Ricoh stated identical contentions for each defendant stating "[defendant] infringes claim 13 by performing a process . . . in which [it] describes input specifications (using User Interfaces) and synthesizes such specifications using the combination of Design Compiler, HDL Compiler, and the Synthesis Libraries." Synopsys thus finds itself, after more than two years of litigation, and more than 46 weeks of access to the source code by Ricoh, still completely in the dark with respect to how Ricoh reads any of the elements of the claims-at-issue on the products-in-suit.

[16] The vast majority of the documents produced to date by the defendants are documents that they allege constitute prior art.

Honorable Edward M. Chen
August 30, 2005
Page 17

defendants should be instructed that their responses are to be substantive, and all
responsive documents should be produced simultaneously.

      With respect to defendants' initial disclosures, there are many individuals
and third parties that have not been properly identified and that Ricoh is unable to
locate or contact. Defendants' counsel agreed to timely supplement when information
came to the attention of their *clients*; however defendants' counsel refuses to
supplement when relevant and responsive information is obtained by *counsel* and not
the client. Although defendants claim that "Ricoh's counsel is fully capable of
conducting its own investigation," it ignores the fact that Ricoh has already tried, and
been unable to contact a large number of persons or entities listed in defendants' initial
disclosure. If defendants do not disclose anything more than a name of an individual
(with no address or other information) or the name of a company, then the entire
purpose of the disclosures is defeated. The Court should compel defendants to
supplement their initial disclosures with all relevant and responsive information
pursuant to Rule 26(e) by September 2.

      Attached as Exhibits 28-30 are defendants' responses to Ricoh's
interrogatories, many of which need to be supplemented. With respect to many of these
interrogatories, the defendants had objected since at the time in 2004 there had not yet
been a Markman decision; the Markman claim construction decision however was
rendered in April of this year and Ricoh is still waiting for the supplemental responses
now that there is a ruling on claim construction.[17] Rather than argue each interrogatory
individually (as defendants have done in their response), Ricoh lists below the
individual interrogatories and, to the extent discussion is needed, will be prepared to
address them at the hearing.[18] For each interrogatory relying on Fed. R. Civ. P. 33(d),
Ricoh requests production of all documents that the 33(d) response relies on.

- Aeroflex's responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7,
  8, 10.

- AMIS' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 7, 8, 10.

---

[17] During none of the meet and confer conferences in June, July, August 22 or August 24
did the defendants raise the objections they now discuss below (other than as to a few
specified topics where they refuse to provide any discovery). The issue discussed here
is one of timing so that Ricoh at least quickly gets the responses and the documents that
the defendants state they are willing to provide and Ricoh can follow up later as
necessary on other issues.

[18] By purporting that "deadlines for supplementation" are "reciprocal to all parties,"
Defendants apparently are attempting to raise for the first time Ricoh's discovery
responses. Defendants have not identified any shortcomings with Ricoh's discovery
responses, and there has been no meet and confer on the matter nor even any request by
the defendants for a meet and confer conference to be held.

Honorable Edward M. Chen
August 30, 2005
Page 18

- The Matrox entities' responses to Ricoh's First Set of Interrogatories Nos. 2-5, 10.

- Matrox Tech had represented in its responses to Ricoh's Requests for Production of Documents that it has no documents, yet its responses to interrogatories rely heavily on Rule 33(d). Matrox Tech must (i) supplement its responses to Ricoh's requests for documents (and produce all responsive documents) and/or (ii) supplement its responses to interrogatories to remove the 33(d) references and provide full substantive responses.

With respect to Ricoh's request for admissions, defendants' responses should be supplemented to remove objections based on purported ambiguity since they are based on scope of phrases including claim terms have now been construed by the Court, as well as terms that the parties previously agreed to use. See Exh. 31 hereto, 4/29/04 letter between counsel reciting agreements re discovery terms.

The following responses to document requests need to be supplemented

- Aeroflex's responses to Ricoh's First Set of Document Requests Nos. 9, 12, 14-20, 28, 30, 35.

- AMIS' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28, 29, 30, 33, 35, 37.

- Matrox Entities' responses to Ricoh's First Set of Document Requests Nos. 3-5, 8-13, 14-20, 28-30, 33, 35, 3).

- Synopsys' responses to Ricoh first set of Document Requests Nos. 2, 14-15, 16-23 and 32.

2. Customer Defendants' Position. This topic includes four separate subtopics that we will address in order. All deadlines for supplementation of initial disclosures, document requests, interrogatories, and requests for admission are understood by Synopsys and the Customer Defendants to be reciprocal to all parties. Synopsys and the Customer Defendants have not received any supplementation by Ricoh, nor any responses to Synopsys' Second Set of Requests for Production, dated July 16, 2004.

Subtopic 1 – Initial disclosures

As we have indicated in several meet and confer sessions to date, we have provided all of the contact information possessed by the Customer Defendants or Synopsys for all individuals and companies referenced in the Initial Disclosures. We have committed to provide contact information for the individuals listed promptly, if Synopsys or the Customer Defendants should come into possession of it. In terms of the companies listed, these were simply an identification of companies that were

Honorable Edward M. Chen
August 30, 2005
Page 19

involved in the logic synthesis business in the relevant timeframe that might have prior art. We did not have particular contacts at these companies, or particular individuals in mind. We believe that providing contact information for people whom may be identified at these companies through counsel's prior art searches or other work product exceeds the Initial Disclosure obligations. Ricoh's counsel is fully capable of conducting its own investigation.

Subtopic 2 – Interrogatories

The Customer Defendants will supplement their responses to Ricoh's interrogatories as appropriate. In general, many of these responses are related to information that is the subject of the ongoing document collections. We are making best efforts to complete document collection by October 7, 2005, and to supplement the responses at that time, and provide the relevant documents pursuant to Rule 33(d).

Interrogatory numbers 2 through 5, and 8 all deal with product information. The Customer Defendants will provide product information consistent with their Product Declarations. Information relevant to these interrogatories is being collected during current document collection, and the responses will be supplemented after the document collection is complete.

Interrogatory number 7 deals with the response to the complaint. By requiring the Customer Defendants to state all factual bases and identify all individuals or documents concerning the allegations made in 50 separate paragraphs, Ricoh has essentially served 100 separate interrogatories and far exceeded the 50 interrogatory limit. Identifying "all persons" having knowledge of the facts set out in Defendant's response to the Complaint is unreasonable and unduly burdensome. In addition, much of the information requested is protected from discovery by the attorney-client privilege and/or the attorney work product doctrine, or is more properly the target of expert discovery. To the extent that this is a contention interrogatory, our investigation and analyses are ongoing, and we reserve the right to supplement at a later date. In addition, to the extent that this interrogatory calls for noninfringement or invalidity contentions, it is entirely premature since Ricoh has yet to produce any meaningful infringement contentions whatsoever,[19] let alone their Final Infringement Contentions., and the Final Infringement Contentions are not yet due  Subject to the above objections, to the extent that additional non-privileged information exists, the response will be supplemented.

Interrogatory number 10 deals with the responses to Ricoh's 20 requests for admission. This interrogatory therefore contains impermissible subparts, and by requiring the Customer Defendants to state forth in detail each and every reason of the detail, and the identity of the documents upon which such denial is based, Ricoh has essentially served forty more interrogatories after already exceeding the 50

---

[19] The Amended Preliminary Infringement Contentions Ricoh provided are in violation of this Court's June 17, 2005 order.

Honorable Edward M. Chen
August 30, 2005
Page 20

interrogatory limit through the subparts of interrogatory 7. Subject to the above
objections, to the extent that additional non-privileged information exists, the response
will be supplemented.

To the extent that Matrox Tech does not have documents responsive to the
interrogatories for which it specified it would provide documents pursuant to Rule
33(d), interrogatory numbers 1 through 5, 8, and 9, it will supplement its response.

Subtopic 3 – Document requests

New document requests

Ricoh's request to have documents responsive to their third set of document
requests (served on August 11, 2005) ordered to be produced on the same day as the
related objections and responses are due is outrageous and unreasonable.

Previous document requests

Synopsys and the Customer Defendants will supplement their responses to
Ricoh's document requests served prior to the discovery stay as appropriate. In
general, many of these responses are related to information that is the subject of the
ongoing document collections. We are making best efforts to complete document
collection by October 7, 2005, and to supplement the responses at that time.

Customer Defendant document request numbers 2 through 5 all deal with
product information. The Customer Defendants will provide inputs, scripts, designs,
specifications, libraries (target technology, synthetic, symbol, link, design, and GTECH),
and netlists for the digital portions of the commercially sold products listed in the
Product Declarations, as well as other documents related to logic synthesis of these
products. Subject to the above objections, this response will be supplemented as
appropriate.

Customer Defendant document request 8 asks for documents concerning any
Synopsys product. This request is overbroad to the extent it purports to require the
Customer Defendants to provide documents regarding anything except the products-
in-suit, as identified at the recent Case Management Conferences. Subject to the above
objections, this response will be supplemented as appropriate.

Similarly, Customer Defendant document request 11 asks for documents
concerning a list of third party synthesis tools. This request is overbroad to the extent it
purports to require the Customer Defendants to provide documents regarding anything
except the products-in-suit, as identified at the recent Case Management Conferences.
Therefore, we will not produce documents for this request.

Customer Defendant document request 10 asks for all documents concerning
Synopsys. This request is overbroad to the extent it purports to require the Customer
Defendants to provide documents regarding anything except the products-in-suit, as

Honorable Edward M. Chen
August 30, 2005
Page 21

identified at the recent Case Management Conferences. Subject to the above objections, this response will be supplemented as appropriate.

Similarly, Customer Defendant document request 13 asks for documents concerning Cadence Design Systems. This request is overbroad to the extent it purports to require the Customer Defendants to provide documents regarding anything except the products-in-suit. Therefore, we will not produce documents for this request.

Customer Defendant document request 33 asks for documents concerning all proprietary or third party hardware or software used by, or on behalf or, or at the direction of the Customer Defendant in the practice of an ASIC method. This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit. Subject to this objection, we will supplement our response, as appropriate.

Customer Defendant document request 9 asks for documents concerning cost savings as a consequence of licensing or using any Synopsys product. This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit. Subject to this objection, we will supplement this response as appropriate.

Similarly, Customer Defendant document request 12 asks for documents concerning cost savings as a consequence of using any of a number of third party products. This request is overbroad to the extent it purports to require information related to anything other than the products-in-suit. Therefore, we will not produce documents for this request.

Customer Defendant document request numbers 14, 15, and 17 through 19 all ask for marketing, sales, and profit information related to the Customer Defendants' ASICs. The information on ASICs is irrelevant to this case, as the result of the method in the relevant claims is design data (either a netlist, in the case of claims 13, and 15-17, or mask data, in the case of claim 14), which is not used directly in the manufacture of an ASIC. Therefore, we will not produce documents for this request, or supplement our responses. See discussion of sales and marketing data under topic C below.

Similarly, Customer Defendant document request number 16 asks for manufacturing information related to the Customer Defendants' ASICs. This information is also irrelevant, for the same reasons specified in the previous paragraph. Therefore, we will not produce documents for this request, or supplement our responses. This issue was discussed extensively at the Case Management Conference and was address in the Joint Case Management Conference Statement. The Court agreed to hear the Customer Defendants' § 271(g) summary judgment motion early in part to avoid this discovery. The claims-at-issue are not related to manufacturing. See discussion of manufacturing related discovery and § 271(g) discovery below under topic C.

Honorable Edward M. Chen
August 30, 2005
Page 22

Customer Defendant document request number 28 asks for all pending patent applications concerning any ASIC method. This request is overbroad to the extent it purports to require information outside front-end logic synthesis. In addition, pending patent applications from Synopsys and the Customer Defendants are subject to a heightened relevancy requirement that Ricoh has not met. Therefore, we will not produce documents for this request. See topic D below.

Customer Defendant document request number 29 asks for information related to examinations, tests, or studies with respect to any ASIC method. This request is overbroad to the extent it purports to require information outside front-end logic synthesis, as well as vague and ambiguous. In addition, this request is overbroad to the extent that it calls for data related to logic synthesis designs that were never commercialized, as agreed during the Case Management Conference. We are not sure what data Ricoh seeks, so we are unable to supplement at this time.

Customer Defendant document request number 30 asks for information related to analysis of the patent-in-suit, or of infringement or invalidity thereof. This document requests calls for the production of information covered by the attorney-client privilege or work product doctrine. In addition, to the extent that the Customer Defendants decide to rely upon an opinion of counsel as a defense to an allegation of willful infringement, it will disclose the content of that opinion in accordance with the schedule set by the Court. Therefore, we will not produce documents for this request.

Customer Defendant document request number 35 asks for information related to indemnification with respect to the patent-in-suit. We object to the extent this request calls for the production of documents and information protected by the attorney-client privilege and work product doctrine, and calls for a legal conclusion. The licenses containing the indemnity provisions have already been produced. We are not aware of any other non-privileged documents related to this subject.

Customer Defendant document request number 37 asks for all documents relied upon or referred to in preparing the response to the Complaint. This request calls for the production of documents and information protected by the attorney-client privilege and work product doctrine. Therefore, we will not produce documents for this request.

Synopsys document request number 2 asks for document retention policies from the issue date of the patent on May 1, 1990. Synopsys has already provided responsive documents, and will produce any other non-privileged responsive documents located after a reasonable search.

Synopsys document request numbers 14 through 16 ask for documents related to relationships or agreements between Synopsys and the Customer Defendants. This request is overbroad to the extent that it calls for information about anything outside the products-in-suit. Subject to this objection, Synopsys has already provided responsive documents, and will produce any other non-privileged responsive documents located after a reasonable search.

Honorable Edward M. Chen
August 30, 2005
Page 23

Synopsys document request numbers 17 through 22 ask for documents related to the design, capabilities, features, functions, operation, use, programming, implementation, documentation, and training of a list of many Synopsys products. This request is overbroad to the extent that it calls for information about anything outside the products-in-suit. Subject to this objection, Synopsys has already provided responsive documents including source code, product manuals, and release notes regarding the products-in-suit, and will produce any other non-privileged responsive documents located after a reasonable search.

Similarly, Synopsys document request 23 asks for documents related to the capabilities, features, functions, operation, and use of the output of Synopsys' ASIC Design Systems. The term "ASIC Design Systems" is vague and ambiguous. In addition, this request is overbroad to the extent that it calls for information about anything outside the products-in-suit. It is also overbroad to the extent it calls for anything other than the netlists, which are the output of claims 13, and 15 through 17, and which we have already agreed to produce. With respect to the output of claim 14 (mask data), we have agreed to provide a stipulation for each product identified in the Product Declarations, as to whether the named Customer Defendants produced mask data. This stipulation is being offered in lieu of any mask data production, since there are no claim elements to be analyzed for infringement. Claim 14 merely requires that, using the netlist resulting from the process described in claim 13, you produce mask data. To the extent Ricoh believes this topic is relevant to the Customer Defendants' § 271(g) motion, see topic C, subtopic 2, discussion below.

Synopsys document request 32 asks for documents concerning semiconductor product royalty rates. This request is not reasonably related to lead to the discovery of admissible evidence. We will not produce documents for this request. See discussion of Customer Defendants' ASIC marketing and sales discovery below under topic C, subtopic 3.

In summary, Synopsys and the Customer Defendants will supplement their discovery responses as appropriate, once the document collection is complete.

## C. Defendants' refusal to produce relevant and responsive documents.

1. Ricoh's Position. Defendants have taken the position that there should be no merits discovery whatsoever on a wide range of issues relating to Ricoh's infringement claims until Judge Jenkins rules on a pending motion for partial summary judgment. Judge Jenkins had proposed to the defendants that this motion should be held until after the end of all discovery, but the defendants insisted in filing it earlier; the hearing on this motion is set for November 1. Defendants are refusing to produce documents relating to the proximate relationship between the ASIC defendants' design of ASICs and the manufacture of those ASICs, or any documents regarding marketing and sales of the ASIC chips. On July 13, 2005, Judge Jenkins rejected defendants' request for such a stay of discovery on these topics, and ordered merits discovery on all issues to proceed immediately. For this reason, defendants' current attempt to repeat

Honorable Edward M. Chen
August 30, 2005
Page 24

this request should be denied and they should be ordered to produce all relevant and responsive documents immediately.

Even if the Court was willing to again consider the basis for defendants' refusal to produce documents, however, it makes no sense. Defendants apparently contend that the resolution of their motion for partial summary judgment may narrow the scope of discovery, because if the motion is granted Ricoh's claims would be limited to §271(a). But §271(a) is the broadest infringement claim, and implicates all of defendants' infringing conduct. All of the defendants have substantial operations in the U.S. Thus, even if the motion was granted, Ricoh would still be entitled to widespread discovery regarding all of the defendants' design, manufacture and sale of ASICs. Under §271(a) and §284, Ricoh is entitled to at least "a reasonable royalty for the use made of the inventions *by the infringer*" – in other words, a royalty on the sales of ASICs received by the ASIC defendants as a result of their use of the patented process.[20] Thus, even if the motion was granted, Ricoh would still be entitled to damages discovery regarding all of the defendants' design, manufacture and sale of ASICs, and the scope of discovery would not be narrowed. This discovery should be produced immediately.[21]

---

[20] *Tec Air v. Denso*, 192 F.3d 1353, 1362 (Fed. Circ. 1999) (holding that when an infringer uses a patented process to create a product, "The entire market value rule is appropriate where both the patented and unpatented components together are 'analogous to components of a single assembly,' 'parts of a complete machine,' or constitute a functional unit' but not where the unpatented components 'have essentially no functional relationship to the patented invention and...may have been sold with the infringing device as a matter of convenience or business advantage.'" quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995); *see also Schaefer Fan Co., v. J & D Manf.*, 265 F.3d 1282,1290 (Fed. Cir. 2001) (court can assess damages based on the entire functional unit, not just a patented portion); *King Instruments Corp. v. Perego*, 65 F.3d 941,950 (Fed. Cir. 1995) ("As long as the patentee receives a proper economic return of its investment in the acquisition of the patent, the Act does not require that return to come form the sale of the patented products"); *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983) (upholding use of the sales price of a finished unpatented product as the basis for computing damages for infringement of a process for making the product); *Wallace Business Forms, Inc. v. Uarco Inc.*, 1988 U.S. Dist. LEXIS 11191, at *28-29 (N.D. Ill. 1988) (determining a reasonable royalty to be 6% of the revenue the infringer received for sale of products made by a patented process); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 1988 U.S. Dist. LEXIS 15910, at *27 (E.D. Tenn. 1988) ("Where a process or method patent is involved, the damage award may be based upon sales of products, made by the infringing process."), *aff'd in relevant part and vacated in part*, 883 F.2d 1573 (Fed. Cir. 1989), *aff'd*, 948 F.2d 1573 (Fed. Cir. 1991).

[21] During the August 22 meet and confer, defendants argued that Ricoh's measure of damages should be no greater than the ASIC defendants' cost of the Synopsys licenses. Defendants' counsel has confused Synopsys' indemnity obligations to the ASIC defendants with Ricoh's recoverable damages under 35 U.S.C. §284. Defendants have not cited any case saying the reasonable royalty should be based on a cost paid by the infringer to another party. Contrary to *Riles v. Shell Exploration and Production Co.*, 298

Honorable Edward M. Chen
August 30, 2005
Page 25

       Defendants also have refused to produce any documents relating to the relationship between the design and the ultimate production of the ASICs. If the motion under 271(g) is denied, then the issue of proximate relationship between design and production remains an issue for trial. Defendants erroneously argue that no additional discovery should be taken because Ricoh's counsel said that, if required, Ricoh could respond to the partial summary judgment motion without it. Ricoh has already responded to the motion (D.I. 320), but Ricoh's discovery requests are relevant to Ricoh's obligation to prove at trial the proximate relationship between design and manufacture. Ricoh asked defendants to agree that if their motion under Section 271(g) is denied then will they stipulate that there is a proximate relationship; the defendants refused and instead indicted that Ricoh must still address the issue at trial. There is no reason to allow the defendants to unilaterally impose a stay discovery on this subject, especially since Judge Jenkins refused to grant them that requested stay during the CMC conferences. Yet, the defendants refuse to provide discovery on the topic.

       In their statement of their position below, defendants are essentially seeking summary judgment precluding Ricoh from pursuing its damages theory, arguing that "Ricoh cannot collect damages on the sale of ASICs." While Ricoh of course sharply disputes this argument, defendants' argument at this stage is inappropriate; the discovery issue is whether Ricoh's discovery of the relationship between design an manufacturing, and sale and marketing, is reasonably calculated to lead to admissible evidence – and the answer is yes. It is noteworthy that, as reflected in the CMC (D.I. 315, Exh. 3), defendants argued strenuously for a discovery stay of these topics, and the Court rejected the request and ordered all discovery to proceed immediately.

       Likewise, defendants are refusing to produce emails and other internal documents relating to the ASIC Methods used by defendants, including their input specifications, netlists and mask data. One of the fact issues that exists in light of the

---

F.3d 1302 (Fed. Cir. 2002) cited by the defendants, there has been no dispute that here the ASICs that are alleged to be designed by the process of the claims in issue are the ones for which Ricoh seeks damages based on their sales. The *Riles* court did not hold, as defendants argue, that the cost of the finished platform is "completely irrelevant" to a damages determination, but instead held that the proposed royalty measure must not include costs of manufacture unrelated to the method. Indeed, later in the *Riles* opinion, the Federal Circuit explicitly recognized as proper the defendant's use of the difference in cost to manufacturer the product using infringing and non-infringing methods as a basis for calculating damages. *Id.* at 1313. (recognizing that the cost savings the Defendants would have realized by using a non-infringing method is relevant to the damages inquiry). Defendants cite to *Embrex Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1349-1350 (Fed. Cir. 2000). *Embrex* held: "Royalties for infringement are ordinarily computed based upon *the sales of a patented product or process.*" This decision actually supports Ricoh's position since it shows that reasonable royalties must be based on the sales by the infringer and the ASIC defendants are the only accused infringer in this litigation. The decision does not otherwise support defendants' arguments. Defendants continue to refuse to provide any discovery as to their costs and sales.

Honorable Edward M. Chen
August 30, 2005
Page 26

claim construction order is whether the nature of defendants' inputs use a form of RTL that is disclosed in the '432 patent, or whether it is a form of RTL that is described in the prior art Darringer patent. On August 22, defendants stated that they would only produce the inputs themselves, and none of the emails or other internal documents relating to those inputs. Likewise, they are refusing to produce any of the emails or other internal documents relating to the outputs, such as the documents showing the connection between design and manufacturing. These issues are hotly contested, but defendants are simply refusing to collect and produce all of the documents.[22]

    2. Customer Defendants' Position. This topic includes four separate subtopics that we will address in order.

Subtopic 1 – Discovery regarding manufacturing

    Many of the disputes between the parties center around the relevance of ASIC manufacturing to this case. With the exception of the § 271(g) issues that are addressed below in subtopic 2, manufacturing related documents and information are irrelevant to this case because the claims-at-issue deal with methods of **designing** an ASIC and do not address manufacturing in any way. In fact, in its claim construction ruling, the Court determined that the "computer-aided design process" described in claim 13 of the '432 patent "does not include a manufacturing process for ASICs." Claim Construction Order at 7-8.

    Despite the fact that this information is irrelevant to the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence, Ricoh has propounded numerous discovery requests on this topic. *See, e.g.*, Document Request No. 5 to all Customer Defendants ("Produce all documents concerning the conception, design, development, manufacture, or sale of each of defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.").

    Several of the Customer Defendants are foundries. Thus vast amounts of their documents will be related to manufacturing. The Customer Defendants should not be put through the overwhelming burden and expense of collecting and producing these documents given their complete lack of relevance to this case.

Subtopic 2 – § 271(g) motion

---

[22] Although defendants claim that they did not refuse to produce these documents, during the August 22 and 24 meet and confers, they flatly refused production, and a careful review of their portion of the joint letter reveals no commitment to produce them. They also claim that the parties are continuing to meet and confer regarding a potential stipulation, but at the August 24 meet and confer, they said that no stipulation would be forthcoming. And as noted above in Section A, defendants' obligation to produce emails has never been modified by any meet and confer.

Honorable Edward M. Chen
August 30, 2005
Page 27

During the July 13, 2005 Case Management Conference, Judge Jenkins asked Gary Hoffman if Ricoh needed any discovery other than the depositions of the declarants in order to oppose our § 271(g) motion. Mr. Hoffman indicated that Ricoh did not. The depositions of the declarants have already taken place, and Ricoh has, in fact, already filed its opposition.

Contrary to Ricoh's mischaracterizations, Judge Jenkins agreed to hear this *summary judgment motion early, prior to the May hearing date set for dispositive motions, precisely in order to limit the outrageously broad discovery* Ricoh seeks (particularly as it relates to the subjects of manufacturing and damages), and that we believe will be made irrelevant based upon our successful motion.[23] Several of the Matrox entities have either no design facilities at all or design facilities only in Canada, such that they may be eliminated from the suit, or at the very least the products that are designed entirely outside the United States may no longer be relevant.

One issue the Court must determine in ruling on the § 271(g) motion is the relationship between the claimed method, which is directed to one aspect of the design of ASICs, and the accused ASICS themselves. Specifically, the Court must decide whether the claimed process is used **directly** in the manufacture of ASICs. If not, the process claims cannot support a § 271(g) claim.

As articulated in our § 271(g) motion and its supporting declarations, the output of the patented processes is a netlist (claims 13 and 15-17) or mask data (claim 14). Neither a netlist nor mask data can be used to **directly** manufacture an ASIC. Instead, after many steps, the mask data created from the patented process of claim 14 can be used to generate photomasks. It is these photomask that are used in the manufacturing process, which also has many steps, to generate ASICs. Because the output of the patented process is **not** used directly in the manufacture of ASICs, it does **not** have the requisite proximity to the ASIC end product, and cannot support a § 271(g) claim.

In addition, if the § 271(g) motion is successful, discovery into the proximate relationship between the claimed design methods and the accused ASICs will be completely unnecessary. Therefore, any manufacturing discovery will also be

---

[23] In fact, Judge Jenkins had indicated that this motion could be put right back onto the motion practice calendar noticed for any date we wanted after the depositions were completed. No other related discovery was contemplated. In fact, Judge Jenkins made it clear he would not entertain an F.R.C.P. Rule 56(f) motion in connection with the motion. Ricoh again mischaracterizes the events by suggesting that a stay was denied. The Court and the Customer Defendants intended that this motion would be heard promptly precisely so that the Customer Defendants would not have to engage in irrelevant discovery. Unfortunately, when the Customer Defendants renoticed the motion for September 13, 2005, that date was unavailable, and the hearing date for the motion was postponed to November 1, 2005.

Honorable Edward M. Chen
August 30, 2005
Page 28

unnecessary. The Court should not require us to produce manufacturing discovery as it
relates to this issue unless the Court denies our § 271(g) motion.

Subtopic 3 – Customer Defendants' ASIC sales and marketing data

Ricoh's argument regarding its entitlement to documents related to the
Customer defendants' ASIC marketing and sales data is premised on the notion that it
ultimately will be entitled to recover a reasonable royalty on defendants' ASIC sales
pursuant to 35 U.S.C. §271(a). Defendant is wrong,[24] and on this basis alone,
Defendants' request for this burdensome and highly proprietary discovery should be
denied.

Ricoh has asserted only method claims. Damages for infringement of a
method or process can only be awarded based on the value of the use of the process.
35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant
damages adequate to compensate for the infringement, but in no event less than a
reasonable royalty for the *use made of the invention by the infringer*"); *see also Embrex Inc. v.
Service Engineering Corp.*, 216 F.3d 1343, 1349-1350 (Fed. Cir. 2000). "Royalties for
infringement are ordinarily computed based upon *the sales of a patented product or
process.*" *Id.* (reversing and remanding damages award for calculation of a reasonable
royalty tied to use of the infringing process).[25]

_____

[24] In support of its assertion, Ricoh ignores all recent Federal Circuit authority on this
issue, and instead cites a 1983 Federal Circuit case and two unreported and nonbinding
district court cases. This alone should raise great suspicion about Ricoh's argument.
Not surprisingly, Ricoh's cases are inapposite. *Central Soya* is a lost profits case. The
Court found that Hormel converted 80% of Central Soya's customers through its use of
the patented method and, thus, damages were awarded as a reasonable percentage of
the lost business – not as a reasonable royalty. This is not a lost profits case, which
would require as a prerequisite that Ricoh be in direct competition with Synopsys in the
logic synthesis software market, which it is not. Nor do any ASICs manufactured by
Ricoh compete directly with the Customer Defendants' ASICs designed with the
products-in-suit. *State Industries* and *Wallace Business Forms* are both cases in which the
claimed method directly resulted in the product on which royalties were awarded.
Here, an ASIC does not result from use of the claimed method.

[25] Synopsys and the Customer Defendants believe that the entire market value rule cited
in Plaintiff's section above has no applicability to this case. That rule applies where an
infringing product is a component of another product and the two together are
"analogous to components of a single assembly," are "parts of a complete machine," or
they "contribute a functional unit." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 at 1550.
Such is not the case here. The processes of the claims-in-suit result in design data, not a
physical product.

Honorable Edward M. Chen
August 30, 2005
Page 29

Indeed, the Federal Circuit recently has reversed a damages award based on the value of the product produced as a result of practicing a method as opposed to the value of the use of the method. In *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302 (Fed. Cir. 2002), the patent at issue was a method of offshore oil installation. A jury found the patent infringed, and awarded damages. The defendant appealed the damages award, and the Federal Circuit reversed the award because there was no evidentiary basis for the award that was linked to the **use** of the infringing method.

In *Riles*, the patentee argued that the award could be supported based on: (1) a reasonably royalty applied to the value of the platform built using the infringing method; (2) a reasonable royalty applied to the value of the petroleum producing using the platform built using the infringing method; and (3) a combination of both. The Federal Circuit rejected all attempts to support the award, finding instead that damages must be tied to the value of the use of the method. *Id.* at 1313 ("Under either theory of patent damages, the market would pay Riles only for his product - a method of anchoring offshore oil rigs without mud mats. Mr. Dry's model does not associate his proposed royalty with the value of the patented method at all, but with the unrelated cost of the entire Spirit platform, which includes much more than the cost of anchoring without mud mats."). The Court found that the Plaintiff's damage theory was based on the incorrect assumption it could collect a reasonable royalty based on the value of the platform built using the infringing method because it could successfully enjoin use of the platform. The Federal Circuit unequivocally rejected this theory, which applies with equal force here.

As discussed above in subtopic 2, the method at issue here is a method for producing a netlist or mask data – steps in the design process (not the manufacturing process) that is far removed from the ultimate production of the ASIC. The result of using Ricoh's patented method (claim 13) is essentially, a list of the cells to be used and their interconnections – like a blueprint. The netlist is not used to manufacture ASICs. Rather, through many steps, the netlist is used to create mask data. This mask data is used in the creation of photomasks, not ASICs. The photomasks are then used in the many other manufacturing steps for the production of ASICs. Notably, Ricoh does not – either here or in its opposition to Defendants § 271(g) motion – assert that practicing the patented method alone results in an ASIC.

In accordance with *Riles* and *Embrex*, Ricoh can accordingly only collect damages on the *value of the use of the patented method*. The patent at issue in *Riles* claimed a "method of anchoring offshore oil rigs without mud mats," the end result of which was an installed oil rig. Notwithstanding this, the Federal Circuit rejected damages theories based on the value of the rig or the production of the rig because the patentee would not be entitled to an injunction as use of the rig. As in *Riles*, Ricoh could not enjoin the use of ASICs, the sale of ASICs, or even the use of the masks. Therefore, Ricoh cannot collect damages on the sale of ASICs.

Because the discovery that Ricoh seeks is irrelevant as a matter of law, Ricoh's request for this discovery should be denied. To the extent that the Court is inclined to permit this discovery, the Customer Defendants request an opportunity to separately

Honorable Edward M. Chen
August 30, 2005
Page 30

brief this issue on a normal briefing schedule. The Customer Defendants have had less than 48 hours to provide their section of this letter which is addressed to a multitude of issues.

### Subtopic 4 – Documents related to ASIC Methods

Contrary to Ricoh's assertion, we did not indicate a blanket refusal to produce email and other documents related to "ASIC Methods" used by the Customer Defendants. Instead, we indicated that the term "ASIC Methods" was overly broad, and that the collection and production of documents would be limited to those that relate specifically to logic synthesis using the products-in-suit. Documents related to back-end design (after the netlist) are irrelevant, since the claims at issue do not require any specifics other than that mask data is generated. As stated above, we are meeting and conferring regarding appropriate stipulations regarding the same. Collecting documents related to Ricoh's broad definition of ASIC methods, including back-end design as well as manufacturing, would be an excessive burden for production of documents that are neither relevant nor likely to lead to discovery of admissible evidence.

We intend to produce relevant email. We are meeting and conferring with Ricoh's counsel regarding search terms that may be utilized in searching for responsive email.

### D. Defendants' refusal to produce or even to identify their patents and patent applications relating to ASICs and logic synthesis.

1. Ricoh's Position. Ricoh has requested that defendants produce their patents and patent applications worldwide relating to ASICs and logic synthesis. See Exh. 32, Ricoh's 5/30/03 document request to all ASIC defendants, nos. 7 and 28; Exh. 33, Ricoh's 10/23/03 document request to Synopsys, no. 3. These documents are reasonably calculated to lead to discovery of admissible evidence because those patents and patent applications are likely to contain useful statements distinguishing prior art (including the prior art that defendants have identified in their preliminary invalidity contentions); explaining how their ASICs are designed and manufactured; and describing the logic synthesis process that Ricoh contends is infringing. Defendants, however, refuse to produce either the patents or patent applications, or to produce even a list of those patents and applications, let alone an abstract of the patents and applications. Defendants argue that Ricoh should first demonstrate that the patents and applications are relevant; however, it is unduly burdensome (in the case of some of the patents) or impossible (in the case of other patents and most applications) for Ricoh to obtain a complete list of all of the U.S. and foreign patents and applications. Ricoh does not know even every country where the defendants filed for patents. The defendants insist that Ricoh should bear the burden of searching data bases throughout the world in hopes that the records are accurate and complete, that Ricoh picks the right countries, that the patents and applications show the name of the assignee and that the files are publicly available. Ricoh cannot search for patents where the assignment to the defendant is not apparent, and cannot search applications that have not been published.

Honorable Edward M. Chen
August 30, 2005
Page 31

However, all of these files are readily available in defendants' files, all they need to do is open up a file drawer, make a list and produce the copies; obviously the burden on the defendants is minimal at most. These documents are reasonably calculated to lead to discoverable evidence and should be promptly produced.[26] Defendants' concerns regarding confidentiality is satisfied by the stipulated protective order.

     2. Customer Defendants' Position.  Ricoh is not entitled to obtain the patents and patent applications of the Customer Defendants.  Ricoh has propounded an extraordinarily overbroad request for every patent and patent application Synopsys and each of the Customer Defendants has obtained or filed anywhere in the world which deals with ASICs and methods of designing ASICs.

     In the first instance, the subject matter of the request is excessively overbroad to the extent it relates to anything other than logic synthesis – the subject matter of the claims at issue.  Second, Ricoh is unable to articulate any specific need for this information — rather, it speculates that the documents are "likely to contain useful statements distinguishing prior art. . . ; explaining how their ASICs are designed and manufactured; and describing the logic synthesis process that Ricoh contends is infringing."  Given the broad nature of its request, the burden on the Customer Defendants to provide this information, the ability of Ricoh to search the public patent records, and the Congressional policy of protecting the confidentiality of nonpublished patent applications, Ricoh is not entitled to any of this information.

     In addition, Ricoh has the burden of obtaining for itself the publicly-available patents and patent applications it seeks.  As for publicly-available information, Ricoh claims that the Customer Defendants must provide the requested information because it is unduly burdensome "for Ricoh to obtain a complete list of all of the U.S. and foreign patents and applications [it has requested]."  This is simply untrue.

     Ricoh is perfectly able to search databases of every single issued patent and published patent application using free search engines provided by patent offices the world over.  *See, e.g.,* http://www.uspto.gov/patft/index.html (USPTO);

---

[26] In *Mushroom Associates et al. v. Monterey Mushrooms, Inc., et al.,* 1992 WL 442898, at *2 (N.D. Cal. 1992), the Court ordered production of patents and "all other patent application pertaining to mushroom processing....this court finds that the plaintiff's request satisfied the broad definition of relevance established by the federal rules." The court added that the patent applications are directly relevant to the plaintiff's case for willful infringement. *See also Paper Converting Machine Co. v. Magna-Graphics Corp.,* 207 U.S.P.Q. 1136, 1137 (E.D. Wis. 1980) (compelling discovery of a patent application and file history); *Bott v. Four Star Corp.,* 675 F. Supp. 1069, 1075 (E.D.Mich. 1987) (approving of interrogatory requiring identification of "all other patents and patent applications (worldwide) owned or controlled by the Plaintiff ... relating to the subject matter of the Patents").  Even defendants' cited cases agree that discovery of patents and patent applications are relevant; defendants' refusal to provide even a list and abstract of the patents and applications simply reflects their fight every issue mentality.

Honorable Edward M. Chen
August 30, 2005
Page 32

http://patents1.ic.gc.ca/intro-e.html (Canada); https://publications.european-patent-office.org/PublicationServer/search.jsp (Europe); http://www.wipo.int/ipdl/en/ (PCT applications). Moreover, for reasonable fees, Ricoh can pay a service to undertake this search for it. *See, e.g.*, http://www.faxpat.com/productinfoS.html.

Ricoh suggests that the burden on the Customer Defendants is "minimal at most" because "all they need to do is open up a file drawer, make a list, and produce the copies." This is not true. Because of the overbroad and vague nature of the request (all patents "relating to ASICs and logic synthesis") Ricoh wants the Customer Defendants to divine exactly what patents Ricoh seeks. Because Ricoh has multiple, minimally-burdensome ways to locate the exact patents it wishes to locate, it must do so rather than shift that burden of a worldwide search to the Customer Defendants. *See Allen v. Howmedica Leibinger, Inc.*, 190 F.R.D. 518, 525 (D. Tenn. 1999) (refusing to compel discovery where "information similar to that sought by Dr. Allen seems to be publicly available from sources that are more convenient, less burdensome, or less expensive, without subjecting Danek to undue burden. . . .").

Ricoh has not provided any basis for obtaining the confidential patent applications of the Customer Defendants. Ricoh also wishes to obtain non-public patent applications filed by the Customer Defendants and Synopsys which are maintained by the U.S. Patent and Trademark Office in confidence pursuant to 35 U.S.C. § 122. Although the statute is not binding on the courts, *Fischer Imaging Corp. v. Lorad Corp.*, 148 F.R.D. 273, 274 (D. Colo. 1993), courts further the Congressionally-mandated policy of confidentiality by requiring a showing beyond Rule 26 relevance before ordering the disclosure of confidential patent applications. *See, e.g., ICU Medical, Inc. v. B. Braun Medical, Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002) ("In determining whether or not to permit discovery of a pending patent application, the courts have uniformly recognized that a heightened relevancy standard must be applied to patent applications and materials related thereto."). "The Court must weigh the requesting party's interest in materials against the objector's legitimate interest in secrecy." *Id.*

Under this heightened relevancy standard, a confidential patent application is discoverable when: (i) the patent is within the family tree of a patent-in-suit, *see Central Sprinkler Co. v. Grinnell Corp.*, 897 F. Supp. 225, 229 (E.D. Pa. 1995) ("[M]any courts apparently routinely order disclosure of applications stemming from the patents in suit."); or (ii) there is a **specific** showing of **direct** relevance or particularized need, *see Fischer*, 148 F.R.D. at 275 (denying discovery of defendant's patent applications where "[n]o specific showing of direct relevance or particularized need has been made"). Because the Customer Defendants and Synopsys do not have any patents-in-suit, Ricoh must make a specific showing of direct relevance or particularized need in order to obtain the requested patent applications. It has not done so.

Ricoh's sole argument as to why the patent applications are relevant is that they are "likely to contain useful statements distinguishing prior art. . . ; explaining how their ASICs are designed and manufactured; and describing the logic synthesis process

Honorable Edward M. Chen
August 30, 2005
Page 33

that Ricoh contends is infringing." [27]  Courts have routinely found that such non-specific or speculative arguments are insufficient to satisfy the heightened relevancy standard for patent applications.  For instance, in *Ideal Toy Corp. v. Tyco Industries, Inc.*, 478 F. Supp. 1191 (D. Del. 1979), the defendant claimed that it "needs to search the file wrappers for admissions that could tend to invalidate the remaining patents in suit. . . ." *Id.* at 1195.  The court found that this was "not sufficient to pierce the secrecy inherent in patent proceedings [because] the probative value of such admissions generally does not outweigh the intrusion into matters generally kept secret."  *Id.*  The same result has been reached by other courts where the relevance of the patent applications sought was wholly speculative.[28]  *See, e.g., Fischer*, 148 F.R.D. at 275 (denying production when only presented with "generalized arguments that the patent applications contain information which may be probative on the questions of infringement and validity"); *ICU Medical*, 224 F.R.D. at 462 ("Defendant has not made a sufficient showing to overcome the protection afforded to Plaintiffs pending patent applications.")

Ricoh simply has not explained adequately why the broad range of patent applications it seeks is relevant.  It has therefore failed to overcome the heightened relevancy standard applicable to confidential patent applications.  *Cf. Central Sprinkler*, 897 F. Supp. at 229 (noting that the request the court granted was limited only to

---

[27] It bears noting that Ricoh can obtain a description of how ASICs are designed and manufactured and the logic synthesis process (to the extent it needs such information) more appropriately (and more directly) through deposition testimony or targeted interrogatories.  Claiming that confidential patent applications are required to obtain such information borders on the frivolous.

[28] The cases cited by Ricoh are not to the contrary.  In those cases, the party seeking discovery was either able to provide a specific showing of direct relevance of the requested patent applications (and these patent applications were specifically related to the subject matter of the patent-in-suit), or the requested applications were related to the patents-in-suit.  In *Mushroom Associates*, the plaintiff obtained, through other discovery, evidence that the patent-in-suit had been cited to the defendant during the prosecution of the '110 patent application.  25 U.S.P.Q.2d 1304, 1992 WL 442898 at *2.  The court therefore held that, due to the claim of willful infringement , "[t]he fact that one portion of the '110 prosecution history refers to the 1832 patent makes the '110 prosecution history relevant to this litigation."  *Id.*  In *Paper Converting*, the parties apparently agreed that the application at issue contained "a full description of the allegedly infringing machine. . . ."  207 U.S.P.Q. 1136, 1137.  Therefore, the court found that "the plaintiff has a right to discovery of the patent application because of its direct relevance to the matters at issue in this suit."  Finally, in *Bott*, the court, in the equitable estoppel phase of a patent case, merely noted that an interrogatory propounded in a prior phase of the case "would have disclosed a continuation in the chain of applications. . . ."  675 F. Supp. 1069, 1075.  Because Ricoh has made no specific showing of relevant information in the requested patent applications, unlike the requesting parties in *Mushroom Associates* and *Paper Converting*, nor could it show that it would obtain information on patents in the family tree of the patents-in-suit (as in *Bott*), these cases are inapposite to the present facts.

Honorable Edward M. Chen
August 30, 2005
Page 34

applications related to the patents-in-suit and did not cover "applications concerning sprinkler systems in general or any other broad category").

### E. Defendants' refusal to schedule depositions, or even commit to follow the process that they proposed in April 2004 for deposition discovery.

1. **Ricoh's Position.** Deposition discovery will be complex and fast-moving. In September 2003, Ricoh served each of the defendants with detailed Rule 30(b)(6) deposition notices. (Those notices are summarized at the end of Exh. 1 to D.I. 315.) On Aug. 17, 2005, Ricoh issued a supplemental Rule 30(b)(6) Notice to each of the ASIC defendants. Ricoh also has served Rule 30(b)(6) notices to Synopsys. In early 2004, defendants indicated that there may be more than 30 designees in response to those notices. In April 2004, the parties were close to an agreement on the process for scheduling those depositions – the parties' competing proposals are set forth in their respective discovery plans, attached as Exhibits 1 and 2 to D.I. 315. In brief, the parties agreed to schedule and take depositions on a rolling basis so that at any given time there would be between six and nine Rule 30(b)(6) depositions scheduled. The parties' differences centered on the number of depositions that would be scheduled at any given time (Ricoh, of course, wanted more, defendants less) and the amount of time between depositions (defendants wanted up to 40 days; Ricoh wanted them faster). At the August 22 and 24 meet and confers, however, defendants twice refused to even discuss the process for scheduling depositions, and refused to say when they would start offering witnesses for deposition. Only in today's letter have they addressed the scheduling on the merits[29] Ricoh requests that the Court order defendants to comply with the process proposed by Ricoh in the April 2004 discovery plan (D.I. 315, Exh. 1, at pp. 7-9). Since currently there is only 5 months of fact discovery remaining, defendants should begin producing witnesses by no later than September 19, 2005. Ricoh already has identified its preferred priority of witnesses. See Exh. 34 hereto, Brothers 8/24/05 letter to Corbin.

2. **Customer Defendants' Position.** Synopsys and the Customer Defendants have objected and responded to the 30(b)(6) deposition notices issued prior to the discovery stay, and are currently in the process of identifying witnesses for these topics, as well as determining the availability for these witnesses. Synopsys has provided objections and responses to Ricoh's most recent 30(b)(6) deposition notice on August 26, 2005, and is identifying witnesses and determining their availability for these topics. The Customer Defendants received additional 30(b)(6) deposition notices on August 17,

---

[29] In their responsive portion, defendants have finally adopted a position and say that they will follow their April 23, 2004 proposal. This is some progress; however, because defendants have identified as many as 70 potential witnesses, it does not work. Defendants' proposal, if applied, would forbid having more than six depositions scheduled at any time, and having a 40-day turnaround between depositions effectively guarantees that Ricoh will be only be able to depose, 18 witness at most, or barely two per defendant, and many important witnesses will be missed. For this reason, the Court should adopt Ricoh's proposal, as set forth in its April 23, 2004 discovery plan.

Honorable Edward M. Chen
August 30, 2005
Page 35

2005, and will provide their objections and responses on September 6. They will identify witnesses and determine their availability shortly.

Synopsys and the Customer Defendants agree to use best efforts to utilize the process for scheduling depositions set forth in their April 23, 2003 Discovery Plan, whereby they will designate witnesses and provide proposed dates for deposition on a rolling basis. At any given time, they will have set dates for 6 different witnesses. Within 10 days of completion of a deposition, Synopsys and the Customer Defendants will identify proposed dates for at least one subsequent witness. The dates offered will fall within 40 days of the date of the previously completed deposition.

Synopsys will provide the identity of 30(b)(6) witnesses, and their availability, beginning no later than September 15, 2005. The Customer Defendants will provide the identify of 30(b)(6) witnesses, and their availability, beginning no later than September 15, 2005 for topics 1 through 11 of the original 30(b)(6) notice, which are the topics that Ricoh identified as being highest priority, and that would not require the document collection to be complete. It is our understanding that Ricoh has agreed that no witness deposed prior to the completion of the document collection will be required to testify more than once on a single topic due to later produced documents, and we are providing witnesses on that basis. The Customer Defendants will provide 30(b)(6) witnesses on all other topics beginning after the completion of the document collection.

F. **Defendants' refusal to commit to produce documents in a manner that Ricoh's counsel can access.**

1. Ricoh's Position. Defendants have indicated that they are collecting and will produce a million pages of documents, including some in electronic format, but have refused to identify at this time the necessary hardware and software needed to access the electronic files. Ricoh is concerned that, given the shortened discovery schedule, it will be virtually impossible for Ricoh to timely access and interpret this data. (In early 2004, Aeroflex produced certain electronic files on CD, and it took more than a year for defendants disclose how some of those files could be accessed.) Defendants acknowledge that the files can be printed, and Ricoh is of course prepared to pay for its copy. Ricoh seeks an order instructing defendants to produce all documents in either hard copy, or in electronic format that is readily accessible using widely available programs such as Excel, Access, Adobe or text editors.

2. Customer Defendants' Position. Synopsys and the Customer Defendants are collecting and producing documents as they are kept in the ordinary course of business. The logic synthesis design information is kept electronically, in the format appropriate to the logic synthesis and consequent design tools. To the extent it is even possible to print such files, if Ricoh desires a paper copy of this electronic information, which we anticipate would be quite voluminous, it should bear the costs of printing it.

We believe that the majority of this information is contained in viewable text files, with the rest of the information being in files that are readable by the products-at-issue. Such files may have been created for or by versions of the products-at-issue other

Honorable Edward M. Chen
August 30, 2005
Page 36

than 2003.12, the version on the current source code review machine. Synopsys has
indicated that it believes that files from other versions should be able to be read by the
2003.12, perhaps with minor modifications.

### G. Defendants' failure to preserve relevant documents, and refusal to instruct their clients to preserve those documents going forward.

1. Ricoh's Position. A key issue is the logic synthesis process of the ASIC
chips. During logic synthesis, the Design Compiler software creates intermediate files
called design libraries (and stored as design.db files). Ricoh long has sought the
production of those design libraries. See Exh. 32, Ricoh's 5/30/03 document request to
all ASIC Defendants, definitions 16-18; requests nos. 4, 5 and 8. In the declarations
provided on August 15 and 16, 2005, defendants identified for the first time those
design libraries. During the meet and confer process, defendants' counsel disclosed for
the first time that most of the ASIC defendants had not been saving those design
libraries, but instead were routinely destroying those files. Defendants' counsel further
conceded that she had never instructed her clients to retain those files, and refused
Ricoh's request to instruct her clients to retain those files going forward. Ricoh seeks an
order compelling defendants to immediately cease the destruction of those design
libraries and an accounting of the destruction process and why such destruction did not
cease upon the filing of this litigation two and a half years ago.[30]

2. Customer Defendants' Position. Ricoh again mischaracterizes this issue to
suggest that the Customer Defendants are actively deleting relevant files. That is just
not true.

First, the intermediate files called design libraries are not stored as design .db
files. Design libraries in the sense referred to by Ricoh are intermediate storage formats
that are caused to be created by the use of specific commands that not all customers use.
Customers do not usually retain such intermediate files on an ongoing basis such as in
archived versions of products (because they can be regenerated later when needed from
the original inputs). Further, in many cases, the cache directories containing these
intermediate files are periodically purged to ensure smooth functioning of the systems.

---

[30] Defendants inconsistently respond that the files were not created, or that they were
created but not used, or that they were created and used but not retained, or that a few
files were created, used, retained and will be produced. Based upon Synopsys' own
documents (quoted in footnote 6), it is clear that all ASIC defendants create and use
design libraries, which are relevant discoverable electronic documents within the
meaning of the Federal Rules. Even if those files are analogous to cache files, they
should have been retained since this action was filed. There is no undue burden
associated with retaining these electronic documents – putting them on a CD would
have been fast and painless – and although defendants have claimed (without
explanation) that Ricoh can accurately recreate these files (an assertion Ricoh does not
agree with), defendants have not addressed the evidentiary problems, and cannot
justify their failure to comply with their discovery obligations under the rules.

Honorable Edward M. Chen
August 30, 2005
Page 37

This is analogous to the way that the Internet Explorer browser cache is periodically trimmed in size to prevent it from consuming endless disk space.

The Library Declarations make clear that the only Customer Defendants that use these intermediate files are Matrox Graphics and Matrox Tech (while other Customer Defendants may create them, they do not use them), and only for particularly large chips. While we informed the Customer Defendants of the requirement to retain documents and files relevant to the litigation, we did not believe it was appropriate to require them to modify their design process flow to add the creation (to the extent not used by the customers) or retention of these intermediate files to their scripts. We also do not believe that it is appropriate to require them to create documents that they do not ordinarily create or to grind their ordinary use of their systems to a halt going forward. Any of these intermediate electronic files that exist for the products listed in the Product Declarations will be provided. In addition, since the Customer Defendants will be providing their available inputs and other libraries in electronic format, Ricoh can **create** the exact same files by running the logic synthesis process and, if desired, adding the necessary commands to create and/or save these files. See topic G under Remaining Discovery Disputes.

Ricoh's footnote number 30 again reflects the confusion caused by Ricoh's inconsistent terminology usage. The synthetic library implementations referred to by Ricoh are provided to customers by Synopsys and the source code has already been produced. See discussion at II.A.2 above. Thus, contrary to Ricoh's mischaracterization, there has been no document destruction or spoliation of evidence. Moreover, to the extent Ricoh believes design library (in the sense discussed in Exhibit 38 at page 3, third row) files are relevant, Ricoh can recreate them.

**H. Different understandings as to agreements reached, and Ricoh's refusal to allow transcripts.**

1. Customer Defendants' Position. Unfortunately, the parties in this case have a history of different understandings of the agreements reached during meet and confers, as well as in hearings. These discrepancies began more than a year ago. In fact, in a June 22, 2004 letter from Ken Brothers to Tom Mavrakakis attached hereto as Exhibit 18, Mr. Brothers responded to Mr. Mavrakakis' suggestion that all future meet and confer sessions be transcribed by saying that it would be beneficial. This issue was also discussed in a June 24, 2004 letter from Tom Mavrakakis to Ken Brothers, attached hereto as Exhibit 19.

This pattern continues to this day. For instance, there was no court reporter at the July 13, 2005 Case Management Conference ("CMC"). The parties exchanged no less than **five** communications, attached hereto as Exhibits 20 – 24, in attempting to simply summarize the agreements from the CMC, and were still unable to agree.

Another example is related to the Customer Defendant Product Declarations. During the July 22, 2005 teleconference hearing, the Customer Defendants agreed to provide a list of commercial products for which Design Compiler was used by the

Honorable Edward M. Chen
August 30, 2005
Page 38

named Customer Defendants for logic synthesis, a description of the product, and the libraries used. After the Product Declarations were provided, Ricoh complained in an August 17, 2005 letter, attached hereto as Exhibit 25, that the Customer Defendants had agreed to produce additional information. The Customer Defendants reiterated the actual agreement in an August 19, 2005 letter, attached hereto as Exhibit 26.

As these examples demonstrate, the reality of the situation is that without a record the parties are reduced to inefficient "he said" and "she said" disputes. Having a court reporter transcribe the meet and confers (as well as the hearings) would alleviate this problem.

Synopsys and the Customer Defendants requested to have a court reporter transcribe the August 22, 2005 discovery meet and confer. Ricoh objected to this request. The parties have exchanged several emails addressing Ricoh's concerns, including the details of the speaker phones to be used, how parties will identify themselves verbally, going off and on the record for sidebars, and transcripts, on this issue.

2. Ricoh's Position. This issue is outside of the scope of the Court's August 16, 2005 Order. This item was never on the agenda for the meet and confers on August 22 or 24, but was raised by the defendants during the August 24 conference call; Ricoh explained to the defendants what its concerns were and requested certain information. Hence the issue is still under discussion, and on Friday, August 26, counsel for the defendants sent Ricoh's counsel an email specifically stating this issue would not be raised in this letter to the Court. (Exhibit 35.) At that time, the defendants provided information that Ricoh had requested and Ricoh is now reviewing the matter. Ricoh submits that the issue is premature and should not be heard by the Court.

Even if the Court was prepared to consider the issue, and aside from the unseemingly aspects of transcribing all communications between counsel, Ricoh has several concerns. First, contrary to the representations by the defendants, the speaker phones used by counsel do not permit a court reporter to hear when one party is speaking, then is interrupted by another. During the August 22 and 24 meet and confers, Ricoh's counsel experienced multiple occasions when their comments were not heard because opposing counsel had interrupted and talked over them. Because of this technological obstacle, a court reporter would be unable to make a complete record. Second, there is no agreement of when an ordinary telephone call rises to the level of a transcribed meet and confer. Ricoh's counsel does not want to be prevented from picking up the phone to clarify a point, then having the call refused because no reporter is present. Third, the whole matter is unseemingly. Judge Jenkins refused defendants' counsel's request for a reporter at the CMC hearings; Ricoh's counsel suggests that we ought to follow the Court's lead.

Honorable Edward M. Chen
August 30, 2005
Page 39


Sincerely,

/s/ Kenneth W. Brothers                    /s/ Teresa M. Corbin

Gary M. Hoffman                            Teresa M. Corbin
Kenneth W. Brothers                        HOWREY LLP
DICKSTEIN SHAPIRO MORIN                    525 Market Street
 & OSHINSKY, LLP                           Suite 3600
2101 L Street, NW                          San Francisco, CA  94105-2708
Washington, DC  20037-1526                 Phone: (415) 848-4944
Phone (202) 785-9700                       Fax: (415) 848-4999
Fax (202) 887-0689

                                           Attorneys for Defendants

Attorneys for Ricoh

Honorable Edward M. Chen
August 30, 2005
Page 40

## INDEX TO EXHIBITS TO JOINT LETTER

### Defendants' Exhibits

| Exh. # | Description |
| --- | --- |
| 1 | Joint Case Management Conference Statement, dated June 8, 2005. |
| 2 | Declaration of Robert B. Smith in Support of Defendants' Stipulation to Input Format. |
| 3 | Declaration of Robert B. Smith in Support of Defendants' Stipulation to Design Libraries. |
| 4 | Declaration of Brandon Coco in Support of Defendants' Stipulation to Design Libraries. |
| 5 | Declaration of Brandon Coco in Support of Defendants' Stipulation to Input Format. |
| 6 | Declaration of Eric Boisvert in Support of Defendants' Stipulation to Input Format. |
| 7 | Declaration of Eric Boisvert in Support of Defendants' Stipulation to Design Libraries. |
| 8 | Declaration of David Chiappini in Support of Defendants' Stipulation to Input Format. |
| 9 | Declaration of David Chiappini in Support of Defendants' Stipulation to Design Libraries. |
| 10 | Declaration of David Chiappini in Support of Defendants' Stipulation to Input Format. |
| 11 | Declaration of David Chiappini in Support of Defendants' Stipulation to Design Libraries. |
| 12 | Declaration of Robert B. Smith of AMI in Support of Defendants' Stipulation to Representative Products. |
| 13 | Declaration of Brandon Coco of Aeroflex in Support of Defendants' Stipulation to Representative Products. |
| 14 | Declaration of Eric Boisvert of Matrox Electronic Systems in Support of Defendants' Stipulation to Representative Products. |
| 15 | Declaration of David Chiappini of Matrox Graphics in Support of Defendants' Stipulation to Representative Products. |
| 16 | Declaration of Eric Boisvert for Matrox Tech in Support of Defendants' Stipulation to Representative Products. |
| 17 | Declaration of David Chiappini for Matrox Tech in Support of Defendants' Stipulation to Representative Products. |
| 18 | Letter from Kenneth W. Brothers to Tom Mavrakakis, dated June 22, 2004. |
| 19 | Letter from T. Mavrakakis to Kenneth W. Brothers, dated June 24, 2004. |
| 20 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated July 14, 2005. |
| 21 | E-mail from Gary Hoffman to Teresa M. Corbin, dated July 15, 2005. |
| 22 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated July 18, 2005. |
| 23 | Letter from DeAnna Allen to Jaclyn C. Fink, dated July 19, 2005. |
| 24 | Letter from Jaclyn C. Fink to DeAnna Allen, dated July 20, 2005. |
| 25 | Letter from Gary M. Hoffman to Teresa M. Corbin, dated August 17, 2005. |
| 26 | Letter from Jaclyn C. Fink to Gary M. Hoffman, dated August 19, 2005. |
| 27 | Letter from Jaclyn C. Fink to DeAnna Allen, dated June 27, 2005. |
| 38 | Letter from Jaclyn C. Fink to DeAnna Allen dated July 18, 2005 |

### Ricoh's Exhibits

| | |
| --- | --- |
| 28 | AMI Semiconductor, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 29 | Aeroflex Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 30 | Matrox Tech, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 31 | Letter from Edward A. Meilman to Katharine L. Alternus, dated April 29, 2004. |
| 32 | Ricoh's first set of document requests to all Defendants, dated May 30, 2003. |

Honorable Edward M. Chen
August 30, 2005
Page 41


33      Ricoh's first set of document requests to Synopsys, dated October 23, 2003.
34      Letter from Kenneth W. Brothers to Teresa M. Corbin, dated August 24, 2005.
35      E-mail from J. Fink to Gary Hoffman, dated August 25, 2005.
36      Letter from DeAnna Allen to Teresa M. Corbin, dated July 18, 2005
37      Excerpts from Synopsys document titled: "DesignWare Building Block IP User Guide," dated
        March 16, 2005, located at
        http://www.synopsys.com/products/designware/docs/doc/dwf/manuals/dwug.pdf


DSMO 1974803.3

**EXHIBIT 5**

September 16, 2005

**VIA ELECTRONIC FILING**

Honorable Edward M. Chen
United States Magistrate Judge
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Ricoh v. Aeroflex, et al., Case No. CV-03-4669 MJJ (EMC)
              Synopsys v. Ricoh, Case No. CV-03-2289 MJJ (EMC)

Dear Judge Chen:

      Pursuant to the Court's Order of September 8, 2005, the parties submit the following report on discovery disputes. For simplicity, "Defendants" refers to all of the Aeroflex et al. Defendants as well as Synopsys.

      On September 12, 2005, the parties met and conferred in Your Honor's courtroom, with the participation of Ken Brothers and DeAnna Allen for Ricoh, and Terry Corbin, Denise DeMory, Matthew Greinert and Synopsys in-house counsel Erik Oliver for Defendants. The meet and confer was in person, and lasted from 10:30 a.m. until after 7:00 p.m. Since then, counsel for the parties have had numerous follow-up meet and confers by letter, telephone and email. The parties have been able to resolve a large number of issues, and are still working on resolving two additional issues, which are not addressed in this letter. Once those issues are resolved, the parties intend to memorialize their agreements in writing.

      Following is a description of the remaining discovery disputes.

      **A. Defendants' refusal to produce documents relating to the design of the ASIC chips at issue.**

      1. Ricoh's Position. This issue was part of topic C of the August 30 joint letter. There, Ricoh explained that Defendants are refusing to produce emails and other internal documents relating to their use of ASIC Methods, including the input specifications. D.I. 326, at 25-26. In the September 8 Order, the Court instructed Defendants to produce these documents: "As to Ricoh's contentions that Defendants are not producing e-mails and other internal documents, the Court's expectation is that such documents should be produced unless they are not relevant." D.I. 333, at p. 7.

      In the August 30 joint letter, Ricoh explained that, one of the fact issues that exists in light of the claim construction order is whether the nature of Defendants' inputs use a form of RTL covered by claims 13-17 of the '432 patent, or whether it is a form of RTL that is described in the prior art Darringer patent. At the September 12

Honorable Edward M. Chen
September 16, 2005
Page 2

meet and confer, counsel for Defendants stated that their clients would only produce
the inputs themselves, and none of the emails or other internal documents relating to
those inputs.

      Documents relating to the design of the ASICs are relevant for many reasons.
They will show how the various ASIC Defendants identified the functions of the ASIC
that they were intending to design. The documents will reflect how each of the ASIC
Defendants evaluated the process by which they would design the chip, including a
decision of whether they would use the relevant Synopsys tools due to benefits of such
tools as compared to someone else's tools. The documents will reflect how the ASIC
design team set forth the functions of the chip, and whether they use "architecture
independent actions and conditions" as construed by Judge Jenkins. The documents
will reflect Defendants' internal view independent of litigation positions as to the
nature of the VHDL and Verilog inputs that they utilize. The documents will reflect
how design and manufacturing are inextricably intertwined, because very early in the
design process, the ASIC designer must identify the foundry where the chip will
actually be manufactured, then use the "target libraries" that will work with that
foundry's manufacturing process. Ricoh fully expects that the documents will include
information that will further cement this fact, such as the Defendants' communications
with the foundry; assessments or evaluations of the manufacturability of the ASICs
being designed; and assessments or evaluations of foundry or manufacturing
capabilities. The internal working documents will demonstrate the back-and-forth
relevant to how the infringing chips are designed and built. Although these issues are
hotly contested, Defendants are simply refusing to collect and produce these
documents.[1]

      These documents are required to be produced pursuant to the following
requests:

      Request No. 4:  Produce all documents concerning ASIC Methods performed
by, on behalf of, or otherwise under the direction of Defendant.

      Request No. 5: Produce all documents concerning the conception, design,
development, manufacture or sale of each of Defendant's ASIC Products,
including, but not limited to, design flow diagrams, specifications, data

---

[1] Although Defendants contend Ricoh did not argue to this Court (in the August 30, 2005 joint letter) that the
design-related documents discussed herein were relevant to damages, Ricoh explained its position in detail during
the parties' September 12, 2005 meet and confer. Defendants appear to link their contentions to their §271(g)
arguments, which the Court has already ruled do not provide a basis to avoid discovery. In their portion of this
letter, Defendants make the circular argument that the proximate relationship between design and manufacture is not
relevant; and this alleged lack of relevance is illustrated by Ricoh's supposed failure to cite in the §271(g) papers
evidence of Defendants' deliberative pre-functional specification process. But Ricoh cannot cite evidence that it
does not have, and Defendants have refused to produce any discovery on the deliberative pre-functional
specification process. Ricoh's §271(g) opposition included the evidence that was available to it to defeat the
motion; it did not state that there was no other relevant evidence on the issue.

Honorable Edward M. Chen
September 16, 2005
Page 3

sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings.

During the September 12 meet and confer, <u>Defendants conceded that these documents were relevant</u>, but argued that they were cumulative, since they would be producing the actual inputs. Defendants argue that the documents are cumulative even though they have not actually collected and reviewed those documents! Instead, Defendants insist that all they should be required to produce are the actual inputs themselves – the Verilog or VHDL inputs.

Defendants are mistaken. The documents that Ricoh seeks are not cumulative of the Verilog or VHDL inputs. These inputs are not "speaking" documents, but are computer code. The inputs cannot be readily understood by a jury. The inputs will not contain the types of admissions that jurors can understand. The inputs will not show how the ASIC Defendants evaluated different methods of ASIC logic synthesis, nor will they show the proximate relationship between design and manufacture. Documents relating to the design of the ASICs are as relevant as any design documents, whether they are a blueprint for a building or the preparation of a contract. A Defendant cannot evade the production of those related documents in discovery, since they often contain relevant evidence.

As the Court's law clerk reminded the parties during the September 12, 2005 meet and confer, the relevance threshold under the Federal Rules is low, and undue burden must be shown with particularity. This view is in accord with established case law. *Deloizer v. First Nat'l Bank of Gatlinburg*, 109 F.R.D. 161, 164 (E.D. Tenn. 1986)(extensive labor and expense in response to a relevant discovery request is insufficient to require the denial of the motion to compel as unduly burdensome); *Rhone-Poulenc Roper Inc., v. Etna Cas. & Sur. Co.*, 1991 WL 111040, *1-2 (E.D. Pa. June 17, 1991) (simply because a discovery request is costly or time consuming is not sufficient of a reason to excuse a party from compliance with discovery obligations). Defendants have made no showing of undue burden, even though the Court's law clerk specifically informed them that they would be obligated to do so by today.

In a tacit admission that the emails and other internal documents sought by Ricoh are relevant, Defendants argue that it would be an undue burden for them to provide such information. This misplaced argument is based solely on the number of employee interviews that Defendants would have to conduct. Defendants do not explain why or how interviewing their own employees is unduly burdensome. Nor do Defendants explain their failure to conduct such interviews during the more than two years in which the relevant discovery requests have been pending. Defendants' failure to collect responsive information – including their failure to properly interview their own employees in this regard – is the result of Defendants' conscious attempt to avoid discovery. Defendants should not be allowed to bootstrap their calculated refusal to gather responsive documents into an undue burden argument. *In re Verisign, Inc. Securities Litigation*, 2004 WL 2445243 (N.D. Cal. March 10, 2004) (affirming order to compel, noting that defendants cannot claim that their previous failure to comply with discovery requests creates an undue burden now).

Honorable Edward M. Chen
September 16, 2005
Page 4

With respect to email, Defendants' footnote in the present letter regarding email discovery efforts is misleading. Defendants *never* proposed any email search terms to Ricoh; and Ricoh never declined to agree to any such terms. To the contrary, Ricoh's counsel had repeatedly raised the issue of electronic searches, and on August 31, 2005, sent a detailed letter to Defendant's counsel addressing the issue. (Ex. 1, 8/31/05 K. Brothers letter to T. Corbin.) Defendants have *never* responded to that letter. During the parties' September 12 and 14, 2005 meet and confers, Ricoh repeatedly attempted to address the issue, especially within the context of Defendants' email systems, but Defendants stated they were not prepared to discuss details of the email search process.

2.  Customer Defendants' Position.  Ricoh's Section A makes a mockery of the meet and confer process. Ricoh's comments and, in particular, its heading are extremely inflammatory, inaccurate and bear no relationship to the substantial efforts made to compromise and reach agreement on the numerous discovery disputes between the parties, notwithstanding serious concerns on the part of Synopsys and the Customer Defendants as to the relevance of much of the requested information especially as compared to the burden to produce it. Other than the question of which interrogatories the Customer Defendants need to supplement, which is discussed in Section B below, the only remaining dispute, after several additional hours of conferences between counsel, relates to documents regarding the deliberative planning process ("conception" documents) that proceeds the formulation of an actual specification for any particular ASIC. Contrary to Ricoh's statements, the Customer Defendants have not refused to produce documents relating to the design of the ASIC chips at issue. In fact, they have already agreed to produce all of the actual inputs, outputs, and relevant libraries for each of the 85 ASICs at issue, as well as to search for relevant e-mails. The only issue that actually remains is whether the Customer Defendants will search for and produce electronic and hard copy documents and e-mails from each person identified in the deliberative process that goes into planning what ultimately became each of the 85 commercial ASICs that Ricoh now claims are at issue in this case. For example, Ricoh wants all documents relating to the deliberations of what kind of chip the defendant wants to make, what functionality the hypothetical ASIC might have, what target technology libraries might be used, etc. Since only the <u>actual</u> inputs, libraries and outputs of the chip produced can bear on the infringement question, the requested information is completely irrelevant.

Notably, Ricoh never discusses the actual claims at issue. The relevant asserted claims are 13 and 14. The first step in claim 13 is the step of "storing a set of definitions of architecture independent actions and conditions." The last step in "generating . . . a netlist defining the hardware cells which are needed to perform the desired function of the integrated circuit . . ." Claim 14 requires further manipulation of the output of Claim 13. The claims thus demonstrate that the deliberative process prior to actually storing a set of actions and conditions that specify the actual functional characteristics of the intended ASIC is completely irrelevant to infringement. For purposes of infringement – no matter what type of confusion Ricoh tries to create – what matters is what goes into the Synopsys products at issue, what the Synopsys

Honorable Edward M. Chen
September 16, 2005
Page 5

products do with those inputs, and what comes out. The Customer Defendants have already agreed to provide all inputs, and outputs, and the relevant libraries used by the Synopsys products during logic synthesis. Synopsys has already provided access to, and all documentation associated with the tools themselves, including the source code. Accordingly, Ricoh has what it needs to prove – or fail to prove – that the Synopsys products, as used by the Customer Defendants infringe the '432 patent. These documents that are the subject of this dispute are not relevant to infringement, period.

The only relevance argument Ricoh previously asserted, and reasserts now, is that "[o]ne of the fact issues that exists in light of the claim construction order is whether the nature of defendants' inputs use a form of RTL that is disclosed in the '432 patent, or whether it is a form of RTL that is described in the prior art Darringer patent." August 30, 2005 letter at 25-26. This is a red-herring. Ricoh is getting the inputs. It will directly be able to ascertain whether they are Darringer-like, or not.[2] This relevance argument is contrived, at best.

Even if the Court finds these documents tangentially relevant, it should deny Ricoh's request to compel on burden grounds. As mentioned above, the products at issue are 85 commercial ASICs that have been designed at some point since 1997, the start of the damages period. In terms of the Matrox defendants alone, over 40 employees have already been interviewed to collect all the relevant final input, output, and other requested information. It is estimated that at least this many employees would have to be interviewed again at the Matrox entities alone to begin to collect the additional information that is the subject of this dispute.[3] The situation will be the same for the other Customer Defendants. Accordingly, the burden clearly outweighs the relevance, and Ricoh's request to compel production should be denied.

Turning now to several of Ricoh's specific arguments, we note that all of the issues relating to Document Request 4 and all of the issues regarding Document Request 5– except the limited issue of documents relating to the deliberative process that goes into planning for an ASIC (the group discussions that precede actual design as discussed above) – were fully resolved by agreement and stipulation. Ricoh appears to be seeking a second bite at the apple at every turn. Notwithstanding its representations that it would forgo or limit certain discovery requests in exchange for agreements to

---

[2] Even if this was not a red herring, the meet and confer process has revealed that this is not what Ricoh is after. Indeed, the Customer Defendants are independently conducting an e-mail search. The customer defendants offered to include search terms – with Ricoh's agreement – that would capture such documents. Ricoh declined to agree to such terms, and instead chose to press as to all input related documents without any reasonable narrowing of its request.

[3] Given the short time available and the significant time that has been devoted to attempting to resolve outstanding disputes, there has been inadequate time to prepare and submit specific burden declarations. If the Court is inclined to grant Ricoh's request to compel, the Customer Defendants request a brief extension of time until Wednesday, September 21, 2005 to submit such declarations.

Honorable Edward M. Chen
September 16, 2005
Page 6

produce information to address its substantive concerns (such as the alleged linkage or
proximity between design and manufacturing), Ricoh now appears to be seeking an
order that would enable it to compel a broad production of documents that it already
agreed to forego. This is significant in that it will certainly derail the meet and confer
process going forward. Ricoh should not be allowed to go back on its express
agreements.

        With regard to Document Request No. 4, Ricoh agreed that all issues
regarding this request had been resolved. The dispute relating to Request 4 was the
overbroad definition of "ASIC Methods." The parties agreed that ASIC Methods, for
purposes of infringement, would be construed as "logic synthesis," i.e., the translation
of the input into a netlist. Because Ricoh had concerns about applying this definition to
requests that, in its view, did not relate to infringement, Ricoh agreed to identify
requests that included the term "ASIC Method" as to which the definition "logic
synthesis" might be too narrow. As part of the parties Wednesday continued meet and
confer, Ricoh included Request No. 4 in its list of requests as to which the definition
"logic synthesis" might be too narrow as follows:

>        For infringement purposes, the ASIC defendants have identified the
> relevant libraries and ASIC chips, and Ricoh has identified the relevant
> Synopsys tools. Because certain of Ricoh's document requests use "ASIC
> Method" as a defined term to refer to both those definitions, as well as
> certain non-infringement information such as invalidity, we agreed that
> Ricoh would identify those document requests so we could discuss scope
> issues at this afternoon's meet and confer. We believe that the only
> remaining document requests that may have any such unresolved issues
> regarding "ASIC Methods" are nos. 3, 4, 7, 16, 29, and 33 of Ricoh's first
> set of document requests to the ASIC defendants . . . We will be
> prepared during this afternoon's meet and confer to discuss a mutually
> agreeable definition of "ASIC Method" for those requests. Ex. 14 (9/14/05
> K. Brothers Letter to T. Corbin).

In a call discussing this letter, Ricoh agreed the parties had <u>fully resolved all issues
relating to Document Request No. 4</u> (as well as all the other requests described in the
preceding paragraph) provided that the Customer Defendants agree to provide
declarations describing the process from net lists to mask data and agree to produce any
prior art that might ultimately be covered by these requests if the Customer Defendants
chose to assert such prior art. (MS. CORBIN:    Alright, so we're construing this as
ASIC method/logic synthesis. MR. BROTHERS: Subject to our discussion with the –
MS. CORBIN:  With respect to prior art – MS. DE MORY:  And the stipulation – MR.
BROTHERS:  And subject to both our discussion with respect other prior and our
discussion with respect to the – MS. CORBIN: The declaration. MR. BROTHERS:
Yeah, netlist to declaration – or netlist to mask data. Now I'm getting tongue-tied.
Okay. That's our first paragraph [referring to quoted paragraph from Ex. 14].)  Thus,
all issues regarding Request 4 were resolved, and Ricoh's attempt to compel further
response should be denied.

Honorable Edward M. Chen
September 16, 2005
Page 7

       Likewise, the disputes relating to most of the categories of documents requested in Request No. 5 were fully resolved.  Request No. 5 seeks production of "all documents concerning the conception, design, development, manufacture or sale of each of Defendant's ASIC Products, including, but not limited to, design flow diagrams, specifications, data sheets, schematics, flowcharts, drawings, sketches, laboratory notebooks, diaries, notes and/or manufacturing drawings."  All disputes relating to topics ranging from the output of Synopsys design tools at issue through the ASIC manufacturing process have been resolved by virtue of the additional agreed to Customer Declarations.  The points to be addressed in the declaration were specifically expanded to include statements regarding the use of mask data to produce masks and the use of masks in ASIC manufacture, specifically to eliminate the need for the Customer Defendants to produce documents relating to manufacturing or the link or proximity between design and manufacture, as discussed more fully below.  In addition, the dispute regarding sales information has likewise been resolved; the Customer Defendants have agreed to produce certain summary ASIC sales data on a quarterly basis.  Thus, given the clear progression of topics set forth in Document Request No. 5 (from conception to sale), every category of documents requested in No. 5, except "conception," has been resolved.

       Even with regard to Ricoh's alleged relevance theories, significant concessions have already been made to address Ricoh's concerns.  For example, the Customer Defendants already agreed to produce internal documents relating to the Synopsys tools at issue, including documents that relate to cost savings as a result of using the Synopsys products in suit.  Thus, Ricoh's relevance argument that the documents it now requests will "reflect how each of the ASIC Defendants evaluated the process by which they would design the chip, including a decision of whether they would use the relevant Synopsys tools due to benefits of such tools as compared to someone else's tools" has been resolved.

       Similarly, the relevance theory relating to the link between design and manufacturing has already also been resolved.  The additional Customer Declarations mentioned above will include the following language "The netlist is used to produce GDSII files.  GDS II files are used to produce mask data.  Mask data are used to create photomasks.  Photomasks are used by a foundry for purposes of production of the ASIC."[4]  The Customer Defendants agreed to provide the declaration to avoid

---

[4] The Customer Defendants agreed to provide such a declaration only on the condition that it was in lieu of the production of documents relating to the multiple other design processes that are used to convert a netlist into mask data and any manufacturing documents.  In contravention of the agreement, Ricoh's section addressing this issue now states that it expects production of "communications with the foundry; assessments or evaluations of the manufacturability of the ASICs being designed; and assessments or evaluations of foundry or manufacturing capabilities."  These categories of documents were not even discussed but they certainly would be encompassed by the manufacturing documents that Ricoh agreed to forego in order to obtain the Customer Defendants' declaration as stated above.  Moreover, the Customer Defendants already

Honorable Edward M. Chen
September 16, 2005
Page 8

production of manufacturing related documents, which Ricoh had argued was relevant
to show the link between design and manufacture. Ricoh should not now be able to
seek additional document under the guise of needing to prove up something as to
which the parties have already agreed meets Ricoh's needs as to its alleged link theory.[5]

Accordingly, Ricoh's request to compel further responses to Document
Requests Nos. 4 and 5 should be denied because all issues – except the
"conception"/deliberative process issue – have been resolved, and the
conception/deliberative process documents are irrelevant.

### B. Defendants' refusal to supplement their interrogatories.

1. **Ricoh's Position.** Ricoh has asked Defendants to supplement 10 numbered
interrogatories. In light of the Court's comments regarding subparts, Ricoh narrowed
those interrogatories to comprise no more than 22 interrogatories, when including
subparts, to each ASIC Defendant.

Ricoh's infringement action was originally filed in Delaware. On May 30,
2003, Ricoh served Defendants with one set of 10 common interrogatories. (Ex. 2.)
Pursuant to Delaware Local Rule 26.1(b), that court allowed 50 interrogatories
(including subparts) per party. Defendants responded on June 30, 2003. (Ex. 3 - 8.)
Defendants Aeroflex, Inc., Matrox Tech, and AMIS supplemented on January 9, 2004.
(Ex. 9 - 11.) None of those responses contained specific objections that Ricoh has
exceeded the number of interrogatories and only recently have the Defendants decided
to raise a specific objection. To the extent that Defendants are now complaining that
there are too many interrogatories, this objection has been waived. *Herdlein
Technologies, Inc. v. Century Contractors, Inc.,* 147 F.R.D. 103, 104 (W.D. N.C. 1993)
(treating respondent's initial interrogatory responses as a waiver of the limit on
interrogatories, and finding that respondent should have presented its objections to the

---

provided declarations identifying which foundry's target library was used for each of
the commercial ASICs at issue.

[5] And, to the extent that Ricoh's is now attempting to expand its "direct link" relevance argument, the
substance of this relevance argument can summarily rejected as applied to the "deliberative process".
Ricoh never once points to deliberative pre-functional specification process, nor submits any evidence
regarding this deliberative process, in support of its opposition to the 271(g) motion, where the direct link
it its mantra. For example, Ricoh the declaration of Dr. Rhyne in support of its opposition. Like the
asserted claims, Dr. Rhyne starts his discussion with "A. Describing a series of functions" and moves to
"B. Performing Logic Synthesis." *See* 2/24/04 Declaration of Thomas V. Rhyne at ¶10 (resubmitted
8/23/05). Dr. Rhyne does not talk the deliberative process. Similarly, Dr. Ricoh submitted the declaration
of its employee, Mr. Yamada. Mr. Yamada says "[i]n my experience, a typical process used to
manufacture an ASIC begins with the creation of a written specification describing the desired functions
to be designed by the ASIC." *See* 2/6/04 Declaration of Takamitsu Yamada at ¶3 (resubmitted 8/23/05).
Mr. Yamada similarly does not mention the "deliberative process." If this information were relevant – it
is available to Ricoh, and Ricoh could have provided it in opposition to the 271(g) motion instead of
sending the Customer Defendants on a fishing expedition.

Honorable Edward M. Chen
September 16, 2005
Page 9

number of interrogatories to the Court before answering); *Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 166 (N.D. OH 1964) ("Whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands."); *cf. Federal Procedure* § 26:414 (L. Ed. 2005) ("A voluntary answer to an interrogatory constitutes a waiver of any objections to that interrogatory."). This is especially true because defendants voluntarily supplemented these interrogatories 20 months ago after the case was transferred. Because Defendants initially answered the interrogatories, they are under a duty to supplement pursuant to Rule 26(e).

Ricoh has requested that the Defendants supplement their interrogatory responses in view of the passage of time and Judge Jenkins' Claim Construction. Based upon the guidance provided this Court's September 8, Order, Ricoh narrowed its requests. Specifically, Ricoh: eliminated interrogatory 6; narrowed interrogatory 7 to drop requests relating to most of the paragraphs of the Amended Complaint; and narrowed interrogatory 10 to drop most of Ricoh's Requests for Admission. The interrogatories that Ricoh seeks supplementation are as follows:

- Interrogatory No. 1, which generally is directed to facts regarding Defendants' organizational structure.

- Interrogatory No. 2 is generally directed to facts regarding ASIC Products designed, manufactured, sold, offered for sale, imported, or distributed by or on behalf of Defendants.[6] Defendants argue that this interrogatory represents multiple interrogatories because it may require responses for multiple products. Ricoh disagrees. Although a given Defendant's response may include a substantial amount of information, Interrogatory No. 2 is a single interrogatory.

- Interrogatory No. 3 is generally directed to facts regarding the steps of Defendants' ASIC Method used to design the ASIC Products identified in response to interrogatory 2.

- Interrogatory No. 4 is generally directed to facts regarding individuals in research and development, design manufacturing, testing, sales or marketing of the ASIC Products identified in response to interrogatory 2.

- Interrogatory No. 5 is generally directed to facts regarding individuals who participated in performing an ASIC Method for the ASIC Products identified in response to interrogatory 2.

- Interrogatory No. 7 is generally directed to facts and documents regarding individuals having knowledge or information concerning Defendants' response to the Amended Complaint. In light of the Court's direction, Ricoh has

---

[6] Based on direction from Judge Jenkins, between August 15 and August 16, 2005, the ASIC Defendants provided Stipulations To Representative Products that list the ASIC products for which Design Compiler was used for logic synthesis. The products specified in these declarations (as may be supplemented) are the ASIC Products at issue.

Honorable Edward M. Chen
September 16, 2005
Page 10

narrowed the number of Amended Complaint paragraphs applicable to interrogatory 7 for each Defendant.  Ricoh seeks supplemental responses from Aeroflex to Amended Complaint paragraphs 17, 20 and 21; from AMIS to Amended Complaint paragraphs 23, 26 and 27; from Matrox Electronic Systems to Amended Complaint paragraphs 29, 32, and 33; from Matrox Graphics to Amended Complaint paragraphs 35, 38 and 39; from Matrox Int'l to Amended Complaint paragraphs 41, 44 and 45; from Matrox Tech to Amended Complaint paragraphs 47, 50 and 51, and from Aeroflex Colorado Springs to Amended Complaint paragraphs 53, 56, and 57.[7]  Ricoh expects the responses to correlate the identified individuals to the Amended Complaint paragraph for which the response is provided.  As directed by the Court, because Interrogatory No. 7 seeks both facts and documents, each interrogatory directed to each applicable paragraph constitutes two interrogatories; thus Interrogatory No. 7 represents a total of six interrogatories to each ASIC Defendant.

- Interrogatory No. 8 is generally directed to facts regarding individuals who can testify about Defendants' marketing activities for the ASIC Products identified in response to interrogatory 2.

- Interrogatory No. 9 is generally directed to facts and documents regarding Defendants' document handling (e.g., retention) procedures and policies.  Based on the Court's direction, because it seeks facts and documents, it constitutes two interrogatories.

- Interrogatory No. 10 is generally directed to documents regarding Defendants' denial of requests for admission.  In light of the Court's direction, Ricoh has narrowed the number of applicable requests for admission and no longer requests fact-related statements (i.e., Ricoh seeks only identification of documents).  Ricoh seeks responses from each ASIC Defendant identifying the associated documents (but not identifying the reason for the denial) for each of Request For Admission 9-16.  Ricoh expects the responses to correlate the identified documents (by Bates number) to the specific Request For Admission for which the response is provided.  Interrogatory No. 10 constitutes 8 interrogatories to each ASIC Defendant.

Defendants erroneously argue that if the number of interrogatories is exceeded, then they are entitled to answer only the first 25.  The *Burrows* case that Defendants rely on for this proposition, however, did not allow the respondent to start at the first interrogatory and then answer sequentially until it reached 25.  *Burrows* instead ordered the respondent to answer the interrogatories in non-sequential order. 187 F.R.D. at 613.  In fact, courts have rejected efforts by defendants to select which interrogatories they will answer.  In *Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D.

---

[7] Counsel for Defendants has stated that Defendants Aeroflex, Inc.  and Aeroflex Colorado Springs are to be treated as a single entity for discovery purposes and Aeroflex, Inc. will respond to the interrogatories on behalf of Aeroflex Colorado Springs.  (Ex. 12, 5/3/04 Kelley letter to Meilman.)

Honorable Edward M. Chen
September 16, 2005
Page 11

486, 492 (W.D. NC. 1998), the court held that, where defendant responded to five
additional interrogatories over the twenty interrogatory limit without moving for a
protective order, the defendant had waived any objection to the interrogatory limit.
"Just as the responding party is not entitled to randomly select which of the twenty
interrogatories it will answer, the propounding party is not now obligated to select
from which of the twenty interrogatories it will seek to compel answers." *Id.; see also
Herdlein*, 147 F.R.D. at 104-05 (treating an initial response to interrogatories as a waiver
to an objection on the number of interrogatories because to allow selective answering
gives the responding party the power to select which information to reveal)

       Although defendants complain that Ricoh has exceeded the permissible
number of interrogatories, they have recently said that Ricoh should serve *more*
interrogatories. For example, in Defendants' August 25, 2005 objections to Ricoh's
30(b)(6) notices, Defendants objected that information covered by various deposition
topics would be more appropriately sought by document request or interrogatory. *See,
e.g.*, Ex. 13, AMI Semiconductor Inc.'s Objections To Ricoh's Rule 30(b)(6) Notice of
Deposition, at responses to topics 1, 4, 5, and 19. If defendants truly believed that Ricoh
has exceeded the allowable number interrogatories in this case, it should not have made
this objection. Similarly, in the present letter Defendants have attempted to recast the
Court-ordered declarations as gratuitous[8] by arguing that Ricoh could have been forced
to obtain evidence identifying the ASIC Products at issue via deposition or
interrogatory -- but how could Ricoh do this if it had already reached the limit? The
simple fact is that the information sought by Ricoh's interrogatories is relevant and
discoverable, and Ricoh's interrogatories are the most reasonable and efficient way of
obtaining the information.[9]

       2. Customer Defendants' Position. An extensive meet and confer, now
extending over several weeks, has taken place regarding how Ricoh's interrogatories
should be counted. In response to the parties August 30, 2005 letter addressing this
issue, the Court's September 8, 2005 Order re Guidance and Meet and Confer provided
specific instructions to be applied to the counting issue. Notwithstanding this
guidance, the parties have been unable to agree on which interrogatories need to be
answered. Now, Ricoh raises new issues for the first time in this letter. Ricoh is wrong
as to the counting issue, and its new position, if reached, can be rejected because there is
contrary authority that has been cited approvingly by this Court.

       Before addressing the procedural issues, it is significant to note that in this
case the Customer Defendants have already voluntarily provided extensive declarations
identifying all commercial ASICs designed using the Synopsys products at issue, and

---

[8] Contrary to Defendants' argument that they voluntarily produced declarations identifying all commercial ASICs
designed using the Synopsys products at issue (i.e., identifying the ASIC Products at issue), the production of these
declarations was *ordered* by Judge Jenkins at the July 13, 2005 CMC.

[9] To the extent this Court finds that Ricoh may have exceeded the allowable number of interrogatories, Ricoh hereby
requests leave of Court for an additional number of interrogatories sufficient to allow responses to interrogatories 1-
5, and 7-10, as described above.

Honorable Edward M. Chen
September 16, 2005
Page 12

other extensive information regarding the input formats, tools and libraries used in the production of its commercial ASIC products. *See* August 30, 2005 Letter to Judge Chen, Exhibits 2-17. If Ricoh had been forced to serve interrogatories, or to take depositions, to gather the extensive information voluntarily provided in the Customer Defendant Declarations, it would have had to use well in excess of 25 interrogatories, and many hours of depositions, to gather the same information. In addition, Synopsys and the Customer Defendants have informally provided additional information regarding the operation of the Synopsys products in letters (see for example, July 18, 2005 letter from Terry Corbin to Ken Brothers). Synopsys and the Customer Defendants have been exceedingly cooperative, and it is against this backdrop that is Court must examine the procedural issues addressed below.

The three outstanding procedural issues are: (1) the number of interrogatories Ricoh can serve on each party; (2) how many subparts certain each interrogatory has; and (3) whether Ricoh can compel the Customer Defendants to answer the interrogatories it chooses, or instead, whether the Customer Defendants can simply answer the first 25 interrogatories.

With regard to the number of interrogatories available to Ricoh, the Customer Defendants assert that the presumptive limit set forth in the Federal Rule of Civil Procedure 33(a) applies, and that therefore, Ricoh is limited to 25 interrogatories, including subparts.   This applicable provision has not been modified by stipulation or order. Ricoh, however, asserts that because its interrogatories were initially served when the case was pending in Delaware, which apparently has a 50 interrogatory limit, it is entitled to 50 interrogatories. Ricoh has cited no authority for this proposition, and the Customer Defendants are aware of no such authority. Ricoh is only entitled to 25 interrogatories, including subparts.

Even assuming that Ricoh were entitled to 50 interrogatories, Ricoh exceeds that limit in its first several interrogatories.   Interrogatory No. 1 has two discrete subparts as it asks to describe facts and identify individuals. *See, e.g., Safeco of Am. V. Rawstrom,* 181 F.R.D. 441, 446 (C.D. Cal. 1998) (cited in Court's 9/8/05 Order Re Guidance And Meet and Confer). Interrogatory No. 2 requests at least two distinct pieces of information (2 subparts). In addition, Interrogatory No. 2, like others that follow it, asks the Customer Defendants to "separately identify" for each product sold, several pieces of information. Interrogatory No. 3 similarly asks the Customer Defendants to identify four distinct pieced of information (4 subparts) "[s]eparately for each product identified in answer to Interrogatory No. 2." Even if these interrogatories are limited to the ASICs that have been identified in the Customer declarations, each Customer Defendant has identified between 4 and 37, or more,[10] products, and therefore

---

[10] Aeroflex has identified 37 commercial ASICs; AMI has identified 25 commercial ASICs; Matrox Graphics has identified 13 commercial ASICS; Matrox Tech has identified 6 commercial ASICs; Matrox Electronics has identified 4, and Matrox International sells for all the Mattrox entities, and includes sells at least an aggregate number of all the Matrox entities ASICs.

Honorable Edward M. Chen
September 16, 2005
Page 13

each subpart to Interrogatories Nos. 2 and 3 must be multiplied by the number of
identified products. *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 474-
75 (N.D. Cal. 2004) (Judge Chen order denying motion to compel responses to
supernumerary interrogatories; rejecting argument that interrogatory that asked about
each of 26 accused products did not have 26 subparts). Accordingly, by the time you
reach Interrogatory No. 3, Ricoh has exceed the 25 interrogatory limit for each
defendant,[11] and has exceeded the 50 interrogatory limit for each defendant except
Matrox Tech and Matrox Electronics.[12]

    As to which interrogatories need to be answered, the Customer Defendants
are aware of no case that, having exceeded the interrogatories limit, allows Ricoh to
compel the Customer Defendants to answer selected interrogatories. To the contrary,
the cases certainly suggest strongly to the contrary – i.e., that the Customer Defendants
cannot be compelled to answer interrogatories beyond the number of available
interrogatories counting up from interrogatory number one. *See Collaboration Properties*,
224 F.R.D. at 475; *Burrows v. Redbud Community Hosp. Dist.*, 187 F.R.D. 606, 613 (N.D. Ca.
1998) (noting 25 interrogatory limit, and identifying interrogatories to be answered
within that limit starting at the first interrogatory).

    Finally, with regard to Ricoh's new waiver theory, Ricoh cites a District of
North Carolina case for the proposition that a party can waive its objections to the
number of interrogatories by answering without objecting to the Court. The case,
however, is silent as to whether the party asserted its excessive interrogatory objection
in its actual interrogatory responses. Here, however, the Customer Defendants had
general objections relating to the compound nature of the interrogatories as well as a
general objection based on Ricoh's attempt to exceed the scope of discovery permitted
in the Federal Rules of Civil Procedure and Local Rules (General Objections 14 and 15).
Each specific response was subject to the Customer Defendant's general objections, and
each of the Customer defendants interposed a specific subpart objection to
Interrogatory 7 relating to all the paragraphs of the answer. Notably, the Customer
Defendants answered subject to and consistent with their objections (they did not
respond paragraph by paragraph in response to Interrogatory 7, nor did they provide
the detailed information requested in other interrogatories on a per product basis).
Thus, the Customer Defendants did not waive their valid objections by answering
because all answers were subject to and consistent with their objections, which the
Customer Defendants are reasserting here.[13] *See Safeco*, 181 F.R.D. at 446-448 (motion to

---

[11] When the number of products at issue are multiplied by 2 subparts for Interrogatory
No. 2 and 4 subparts for Interrogatory No. 3, Ricoh exceeds 25 interrogatories for each
Customer Defendant.

[12] For these entities, the 50 interrogatory limit for Mattrox Tech is exceeded at
Interrogatory No. 4, and, for Matrox Electronics, after answering Interrogatory No. 7
with regard to the first few paragraphs of the answer.

[13] In addition, the Customer Defendants objected to all of Ricoh's "state all facts"
interrogatories as burdensome. Courts have routinely held that such requests are

Honorable Edward M. Chen
September 16, 2005
Page 14


compel denied; written interrogatory objections to excessive number of interrogatories
and undue burden sustained even though nonmovant also provided partial answers to
objected to interrogatories).

          Accordingly, the Customer Defendants request the Court deny Ricoh's
attempts to compel responses to more than the first 25 interrogatories.

Sincerely,


Gary M. Hoffman                         Teresa M. Corbin
Kenneth W. Brothers                     HOWREY LLP
DICKSTEIN SHAPIRO MORIN                 525 Market Street
   & OSHINSKY, LLP                      Suite 3600
2101 L Street, NW                       San Francisco, CA 94105-2708
Washington, DC 20037-1526               Phone: (415) 848-4944
Phone (202) 785-9700                    Fax: (415) 848-4999
Fax (202) 887-0689
                                        Attorneys for Defendants
Attorneys for Ricoh


---

unduly burdensome, *Safeco*, 181 F.R.D. at 447, and the Court should likewise sustain
this objection.

Honorable Edward M. Chen
September 16, 2005
Page 15

## INDEX TO EXHIBITS TO JOINT LETTER

### Ricoh's Exhibits

| Exh. # | Description |
|--------|-------------|
| 1 | Letter from Ken Brothers to Teresa Corbin, dated August 31, 2005. |
| 2 | Ricoh's first set of interrogatories to all Defendants, dated May 30, 2003. |
| 3 | Aeroflex Inc.'s responses to Ricoh's first set of interrogatories to all Defendants, dated June 30, 2003. |
| 4 | AMI Semiconductor, Inc.'s responses to Ricoh's first set of interrogatories, dated June 30, 2003. |
| 5 | Matrox Electronic Systems Ltd.'s responses to Ricoh's first set of interrogatories to all Defendants, dated June 30, 2003. |
| 6 | Matrox Graphics Inc.'s responses to Ricoh's first set of interrogatories to all Defendants, dated June 30, 2003. |
| 7 | Matrox International Corp.'s responses to Ricoh's first set of interrogatories to all Defendants, dated June 30, 2003. |
| 8 | Matrox Tech, Inc.'s responses to Ricoh's first set of interrogatories to all Defendants, dated June 30, 2003. |
| 9 | Aeroflex Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 10 | Matrox Tech, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 11 | AMI Semiconductor, Inc.'s supplemental responses to Ricoh's first set of interrogatories to all Defendants (Nos. 1-10), dated January 9, 2004. |
| 12 | Letter from Christopher L. Kelley to Edward Meilman, dated May 3, 2004. |
| 13 | AMI Semiconductor, Inc.'s objections to Ricoh's 30(b)(6) notice of deposition, dated August 25, 2005. |

### Defendants' Exhibits

| | |
|----|----|
| 14 | Letter from Ken Brothers to Teresa Corbin, dated September 14, 2005. |

DSMDB.1981678.1