Teresa M. Corbin (SBN 132360)
Denise M. De Mory (SBN 168076)
Jaclyn C. Fink (SBN 217913)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Plaintiff SYNOPSYS, INC.
and for Defendants AEROFLEX INCORPORATED,
AMI SEMICONDUCTOR, INC., MATROX
ELECTRONIC SYSTEMS, LTD., MATROX
GRAPHICS, INC., MATROX INTERNATIONAL
CORP., MATROX TECH, INC., and
AEROFLEX COLORADO SPRINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICOH COMPANY, LTD.,<br><br>    Plaintiff,<br><br>    vs.<br><br>AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., AND AEROFLEX COLORADO SPRINGS, INC.<br><br>    Defendants.<br><br>SYNOPSYS, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>RICOH COMPANY, LTD.,<br><br>    Defendant. | Case No. C03-4669 MJJ (EMC)<br><br>Case No. C03-2289 MJJ (EMC)<br><br>**SYNOPSYS AND CUSTOMER DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF RENEWED REQUEST FOR STAY** |

1   As the Court recognized at the telephonic conference on Friday, December 8, the issuance of
2   the PTO's initial Office Action, which rejects all of the claims of the '432 patent, changes the
3   determination of whether to stay this case.  In light of the Office Action, proceeding to trial in this case
4   is almost certain to result in a substantial waste of judicial and party resources.  This proceeding should
5   be stayed pending reexamination for the reasons set forth below.

### A.    A Decision In Ricoh's Favor Will Not Bind The PTO.

Ricoh selectively quotes from sections of the Manual of Patent Examining Procedure ("MPEP") to suggest that this Court's determination on validity, *regardless of the finding*, will be binding on the PTO.  Ricoh quotes from MPEP § 2259,[1] but omits most of the language of the section, including the introductory language, which states: "MPEP § 2242 and § 2286 relate to the Office policy controlling the determination on a request for reexamination and the subsequent examination phase of the reexamination where there has been a Federal Court decision on the merits as to the patent for which reexamination is requested."  In other words, § 2286 (dealing with the actual reexamination proceedings) sets forth the clear PTO policy on what happens when a court makes a final determination on a patent that is in reexamination:

> The issuance of a *final* Federal Court decision upholding validity during an *ex parte* reexamination also **will have no binding effect on the examination of the reexamination**. This is because the court states in *Ethicon v. Quigg*, 849 F.2d 1422, 1428, 7 USPQ2d 1152, 1157 (Fed. Cir. 1988) that the Office is *not* bound by a court's holding of patent *validity* and should continue the reexamination. . . . .[2]

MPEP § 2286 at § IV (bold/italic emphasis added).  The PTO's procedures, as set forth in § 2286, are in accord with *Ethicon v. Quigg*, in which the Federal Circuit noted that the statutory scheme and the different burdens of proof in court and the PTO meant that "[t]he two forums take different approaches

---

[1] All cited MPEP sections are attached hereto as Exhibit 1 for the convenience of the Court.

[2] Ricoh claims, misleadingly, that MPEP § 2286 goes on to indicate the PTO may only reject claims found not invalid by the Court if there is "evidence that would constitute a 'sufficient reason' for rejecting the factual findings" of the Court. However, the clear import of § 2286 is that "sufficient reasons" to reject claims in the PTO may result from the different standards applied in the two forums as dictated by *Ethicon*.  Moreover, as even Ricoh acknowledges, potential deference relates only to "underlying" factual findings that are have already been proven by clear and convincing evidence, not the ultimate conclusion on "validity," which as Ethicon points out is something that is never "found" by a Court (and in the case of obviousness, for example, is a question of law, not fact).  In this case the PTO has already found that the claims are invalid as anticipated and obvious under the preponderance of evidence standard based on multiple references.  Thus, there are already "sufficient reasons" here to not follow a subsequent final court finding of that the claims are not invalid, or defer to any underlying factual findings.

in determining invalidity and on the same evidence could quite correctly come to different conclusions." *Ethicon v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988).

Indeed, Ricoh's argument that under MPEP § 2259 collateral estoppel would require the PTO to grant deference to a court's findings of validity is foreclosed by *Ethicon*:

> The doctrine of collateral estoppel does not prevent the PTO from completing the reexamination in this situation [where a court finds a patent not invalid]. Courts do not find patents "valid," only that the patent challenger did not carry the burden of establishing invalidity in the *particular case* before the court under 35 U.S.C. § 282. Thereupon, the patent simply remains valid until another challenger carries the § 282 burden. Accordingly, a court's decision upholding a patent's validity is not ordinarily binding on another challenge to the patent's validity in either the courts or the PTO.

*Ethicon*, 849 F.2d at 1428 n.3 (citations omitted). Thus, neither the MPEP nor binding Federal Circuit precedent permit the PTO to simply adopt any final determination of the validity of the '432 patent ultimately made by this Court, meaning that the reexamination will proceed — unless, of course, the Court determines the patent to be ***invalid***. *See Ethicon*, 849 F.2d at 1429; MPEP § 2286 at § IV, VI. Thus, there is no basis for Ricoh's claim that the factual findings of this Court "are likely to be afforded deference by the PTO" unless the patent is found to be invalid.[3] (Opp. at 5:2-3.)

Moreover, these PTO provisions all apply to a final, i.e., post appeal, decision on the merits. *See* MPEP § 2259 (referring to decisions "after all appeals"); MPEP § 2286 § IV ("A *non-final* Federal Court decision concerning a patent under reexamination shall have no binding effect . . ."). Thus, in order for the trial of this case to have any effect on the reexamination, Ricoh is asking this Court to assume that (i) Ricoh will prevail on validity at trial; and (ii) any appeal of that validity finding will be fully affirmed. When compared with the simplicity of waiting for the reexamination to be completed, Ricoh's approach is wasteful and will almost certainly result in a procedural quagmire.[4]

**B.    It Is Likely That The Patent Will Not Survive Reexamination.**

Accepting Ricoh's statistics, there is, *at the outset of a reexamination*, a 10% chance of

---

[3] Indeed, in an *ex parte* reexamination, collateral estoppel could only be imposed against the patentee, since there is no other party to the proceeding. *See, e.g.*, *Syntex (U.S.A.), Inc. v. USPTO*, 882 F.2d 1570, 1576 (Fed. Cir. 1989) (holding that a third-party requestor cannot obtain review of a reexamination outcome despite alleged procedural shortcomings).

[4] Even if all asserted claims are affirmed, the prosecution history in the reexamination may still require additional proceedings in this Court. *See, e.g., Cole v. Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1997) (finding broader scope disclaimed based on arguments made by patentee to distinguish the prior art in two reexamination proceedings).

cancellation of all claims and a 26% chance of confirmation of all claims. 3.14.06 Hoffman Decl, Exh. 1. Ricoh would like the Court to believe this is the end of the story, i.e., that, in light of the first Office Action it remains more likely that the claims will survive than not. Opp. at 4:6-7. But this is not the case. 64% of the time patentees amend their claims to preserve some patent rights. Ricoh has represented to the Court that it will not amend the claims at issue here,[5] and thus, Ricoh will not be able to survive reexamination via the amendment route. Thus, there is a 74% or greater chance (64% of amendments plus 10% of outright rejection) that the claims at issue here will be cancelled.[6]

Ricoh claims that, because the initial Office Action fails to address any of Ricoh's arguments on the prior art cited against the '432 patent, this Court cannot take the PTO's preliminary rejection seriously. Yet, Ricoh fails to mention that the first Office Action was reviewed and endorsed by three examiners from the new central reexam unit.[7] Office Action at 56. It must also be noted that the *only* reason the PTO has not yet considered Ricoh's arguments is because Ricoh chose not to submit them to the PTO earlier. Ricoh was entitled to file a response to each order granting the request for reexamination. 37 C.F.R. § 1.530(b). Ricoh could have presented the PTO with its arguments over six months ago. *See* 2.28.06 Fink Decl., Exh. 2 at 3 (discussing Patent Owner's Statement). Ricoh opted not to do so. If Ricoh's yet-to-be-made arguments could have persuaded the PTO to not issue the rejection or to affirm the claims, as it now claims, Ricoh should have made those arguments sooner.

Regardless, a comparison of the Office Action with the requestor's petitions demonstrates that the PTO has done more than parrot the petitions for reexamination as Ricoh argues. The most clear example of this is that, while the petitions (and grants of reexamination) were based solely on Claims 13-17, the PTO has invalidated *all* of the claims of the '432 patent. Thus, the PTO has, at a minimum,

---

[5] Ricoh's decision not to amend is likely driven by its concern that amendment will reset the damages clock. Ricoh has thus chosen to opt for an all or nothing approach. Given that the chances of nothing are very high, the Court should not waste additional party or judicial resources pending the outcome of the reexamination.

[6] The 74% figure is conservative. The 26% of cases that survive reexamination untouched includes cases wherein the claims are affirmed in the first Office Action. Thus, it is certainly less than 26% of all cases where claims are affirmed after a first Office Action rejecting all claims.

[7] *See* 12.10.06 Hoffman Decl., Exh. 1 at 19 ("A Central Reexam Unit (CRU) became operational in July of 2005. The CRU has consolidated and reorganized staff for handling new requests for reexamination. This effort included the placement of twenty experienced Primary Examiners in the new CRU to concentrate solely on reexaminations.").

considered how the cited art applies to *fifteen* claims not even mentioned in the reexamination petitions. Moreover, contrary to Ricoh's assertions, the Office Action cites art note cited in the requests for reexamination, such as the Baitinger reference, which formed the basis for the rejection of claims 4, 5, and 9-12 (Office Action at 42-52), and fails to discuss Mitchell84 cited in the requests. Finally, the discussion of references is substantially different than what is contained in the original requests.[8] Contrary to Ricoh's argument, the PTO has done a thorough and independent job.

### C.   The Relative Burdens Weigh In Favor Of Granting The Stay

Ricoh makes two arguments regarding prejudice to it from a stay at this point — that the trial will be delayed, as will other infringement cases Ricoh plans on filing. Neither argument has merit.[9] First, "[t]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *Photoflex Prods. v. Circa 3 LLC,* 2006 U.S. Dist. LEXIS 37743 at *5 (N.D. Cal. May 24, 2006). Thus, Ricoh's protestations about a delay in trial simply are not recognizable harm in this situation. Ricoh suggests that its litigation strategy of "su[ing] selected ASIC manufacturers, obtain[ing] a verdict, then licens[ing] the '432 patent to the rest of the industry" (Opp. at 3:21-5:1) will be in jeopardy should there be a stay. But Ricoh could have chosen (and still could choose) a different litigation strategy. Ricoh's tactical decisions on how to enforce its patent should not prevent this Court from imposing a stay that will conserve significant resources.

As the Court noted in the status conference, trial is an incredibly burdensome process for the Court, the parties, and especially the citizens who will compose the jury. Should this case proceed to trial before the reexamination is complete, all of the effort poured into trial will be wasted, unless the patents are invalidated (a result which certainly would not help Ricoh). Ricoh is not claiming any damages other than reasonable royalty, thereby admitting that there is no ongoing business harm to its

---

[8] It is not surprising that the PTO has carefully and fully considered the art before it on reexamination — the regulations governing the PTO require such action on the part of an examiner reviewing a reexamination. 37 CFR § 1.104(a)(1); *see also id.* at § 1.104(b) ("The examiner's action will be complete as to all matters. . . ."). Moreover, the MPEP states: "It is intended that the examiner's first ex parte action on the merits be the primary action to establish the issues which exist between the examiner and the patent owner insofar as the patent is concerned." MPEP § 2260.

[9] For example, contrary to Ricoh's claims of great delay, Exhibit 1 to the Hoffman Declaration at 25 indicates that "The average pendency for decided patent appeals before the Board has been reduced to less than six months."

interests. Should the patent be confirmed by the PTO, reasonable royalty damages will continue to accrue, and Ricoh will be no worse off than it is today.

### D. Caselaw strongly supports a stay.

Synopsys and the Customer Defendants have been unable to find any case where a stay has not been imposed in the circumstances present here — i.e., when the initial Office Action in the reexamination has issued rejecting all claims asserted in the litigation. This may be because, if the case is not stayed, the Court and parties may find themselves in a procedural quagmire. Indeed, two cases decided after the initial request for stay pending reexamination was denied in this case rely on this very potential problem in ordering a stay, *even when discovery is closed and trial is imminent*. See *Everything for Love.com, Inc. v. Tender Loving Things, Inc.*, 2006 U.S. Dist. LEXIS 56033 at *13 (D. Ariz. July 21, 2006) ("If Plaintiff acquires a judgment against Defendant for infringement, and the '980 patent is subsequently held invalid by the PTO, there exists the possibility of irreparable harm to Defendant as noted above. The PTO is considered to have expertise in deciding issues of patentability and is in a better position to evaluate the validity of the '980 patent."); *Broadcast Innovation, L.L.C. v. Charter Communications, Inc.*, 2006 U.S. Dist. LEXIS 46623 at *33 (D. Colo. July 11, 2006) ("Indeed, the only possibility of irreparable harm to Broadcast and IO Research would exist if the Court chose *not* to stay the case"). (quotation marks and citations omitted).

None of the cases cited by Ricoh in footnote 2 of its opposition are particularly instructive for the present situation. In *Telemac*, four of the five petitions for reexamination had been refused by the PTO on procedural grounds, and the fifth petition had not yet been granted. *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006). Clearly, *Telemac* is very different from this situation. And in *Boston Scientific*, the court initially **granted** a stay due to the filing of a reexamination petition. *Boston Scientific Corp. v. Micrus Corp.*, 2006 U.S. Dist. LEXIS 16147 at *3 (N.D. Cal. Mar. 21, 2006). By the time the stay expired, the PTO had issued an Office Action ***confirming*** all claims of one patent and eleven claims of a second patent. *Id.* Thus, it was clear the case would need to proceed to trial at some point.

Here, proceeding to trial now is highly likely to waste significant judicial resources. Accordingly, Synopsys and the Customer Defendants respectfully request that a stay be granted.

| | | |
|---|---|---|
| 1 | Dated: December 11, 2006 | Respectfully submitted, |
| 2 | | HOWREY LLP |
| 3 | | |
| 4 | | By:    */s/Denise M. De Mory* |
| 5 | | Denise M. De Mory<br>Attorney for Defendants AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC., MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS INC., MATROX INTERNATIONAL CORP., MATROX TECH, INC., and AEROFLEX COLORADO SPRINGS, INC. |

Lines 6–28 blank.

**HOWREY LLP**

Case Nos. C03-4669 MJJ (EMC) and C03-2289 MJJ (EMC)
REPLY ISO RENEWED REQUEST FOR STAY
DM_US\8419385.v1

-6-

# Chapter 2200  Citation of Prior Art and Ex Parte Reexamination of Patents

| | | | |
|---|---|---|---|
| 2201 | Introduction | 2241 | Time for Deciding Request |
| 2202 | Citation of Prior Art | 2242 | Criteria for Deciding Request |
| 2203 | Persons Who May Cite Prior Art | 2243 | Claims Considered in Deciding Request |
| 2204 | Time for Filing Prior Art Citation | 2244 | Prior Art on Which the Determination Is Based |
| 2205 | Content of Prior Art Citation | 2245 | Processing of Decision |
| 2206 | Handling of Prior Art Citation | 2246 | Decision Ordering Reexamination |
| 2207 | Entry of Court Decision in Patent File | 2247 | Decision on Request for Reexamination, Request Denied |
| 2208 | Service of Citation on Patent Owner | | |
| 2209 | *Ex Parte* Reexamination | 2247.01 | Examples of Decisions on Request for Reexamination |
| 2210 | Request for *Ex Parte* Reexamination | | |
| 2211 | Time for Requesting *Ex Parte* Reexamination | 2248 | Petition From Denial of Request |
| 2212 | Persons Who May File a Request for *Ex Parte* Reexamination | 2249 | Patent Owner's Statement |
| | | 2250 | Amendment by Patent Owner |
| >2212.01 | Inquiries from Persons Other Than the Patent Owner< | 2250.01 | Correction of Patent Drawings |
| | | 2250.02 | Correction of Inventorship |
| | | 2250.03 | Fees for Adding Claims |
| 2213 | Representative of Requester | 2251 | Reply by Third Party Requester |
| 2214 | Content of Request for *Ex Parte* Reexamination | 2252 | Consideration of Statement and Reply |
| 2215 | Fee for Requesting *Ex Parte* Reexamination | 2253 | Consideration by Examiner |
| 2216 | Substantial New Question of Patentability | 2254 | Conduct of *Ex Parte* Reexamination Proceedings |
| 2217 | Statement in the Request Applying Prior Art | 2255 | Who Reexamines |
| 2218 | Copies of Prior Art | 2256 | Prior Art Patents and Printed Publications Reviewed by Examiner in Reexamination |
| 2219 | Copy of Printed Patent | | |
| 2220 | Certificate of Service | | |
| 2221 | Amendments Included in Request by Patent Owner | 2257 | Listing of Prior Art |
| | | 2258 | Scope of *Ex Parte* Reexamination |
| 2222 | Address of Patent Owner | 2258.01 | Use of Previously Cited/Considered Art in Rejections |
| 2223 | Withdrawal of Attorney or Agent | | |
| 2224 | Correspondence | 2259 | *Res Judicata* and Collateral Estoppel In Reexamination Proceedings |
| 2225 | Untimely Paper Filed Prior to Order | | |
| 2226 | Initial Processing of Request for *Ex Parte* Reexamination | 2260 | Office Actions |
| | | 2260.01 | Dependent Claims |
| 2227 | Incomplete Request for *Ex Parte* Reexamination | 2261 | Special Status For Action |
| | | 2262 | Form and Content of Office Action |
| ** | | 2263 | Time for Response |
| 2229 | Notice of Request for *Ex Parte* Reexamination in *Official Gazette* | 2264 | Mailing of Office Action |
| | | 2265 | Extension of Time |
| 2230 | Constructive Notice to Patent Owner | 2266 | Responses |
| 2231 | Processing of Request Corrections | 2266.01 | Submission Not Fully Responsive to Non-Final Office Action |
| 2232 | Public Access | | |
| 2232.01 | Determining if a Reexamination Was Filed for a Patent | 2266.02 | Examiner Issues Notice of Defective Paper in *Ex Parte* Reexamination |
| 2233 | Processing in >Central Reexamination Unit and< Technology Center | 2266.03 | Service of Papers |
| | | 2267 | Handling of Inappropriate or Untimely Filed Papers |
| 2234 | Entry of Amendments | | |
| 2235 | Record Systems | 2268 | Petition for Entry of Late Papers for Revival of Reexamination Proceeding |
| 2236 | Assignment of Reexamination | | |
| 2237 | Transfer Procedure | | |
| 2238 | Time Reporting | 2269 | Reconsideration |
| 2239 | Reexamination Ordered at the Director's Initiative | 2270 | Clerical Handling |
| | | 2271 | Final Action |
| 2240 | Decision on Request | 2271.01 | **>Panel Review< |

2201                    MANUAL OF PATENT EXAMINING PROCEDURE

| | |
|---|---|
| 2272 | After Final Practice |
| 2273 | Appeal in *Ex Parte* Reexamination |
| 2274 | Appeal Brief |
| 2275 | Examiner's Answer |
| 2276 | Oral Hearing |
| 2277 | Board of Patent Appeals and Interferences Decision |
| 2278 | Action Following Decision |
| 2279 | Appeal to Courts |
| 2280 | Information Material to Patentability in Reexamination Proceeding |
| 2281 | Interviews in *Ex Parte* Reexamination Proceedings |
| 2282 | Notification of Existence of Prior or Concurrent Proceedings and Decisions Thereon |
| 2283 | Multiple Copending *Ex Parte* Reexamination Proceedings |
| 2284 | Copending *Ex Parte* Reexamination and Interference Proceedings |
| 2285 | Copending *Ex Parte* Reexamination and Reissue Proceedings |
| 2286 | *Ex Parte* Reeexamination and Litigation Proceedings |
| 2287 | Conclusion of *Ex Parte* Reexamination Proceeding |
| 2288 | Issuance of *Ex Parte* Reexamination Certificate |
| 2289 | Reexamination Review |
| 2290 | Format of *Ex Parte* Reexamination Certificate |
| 2291 | Notice of *Ex Parte* Reexamination Certificate Issuance in *Official Gazette* |
| 2292 | Distribution of Certificate |
| 2293 | Intervening Rights |
| 2294 | Concluded Reexamination Proceedings |
| 2295 | Reexamination of a Reexamination |
| 2296 | USPTO Forms To Be Used in *Ex Parte* Reexamination |

## 2201    Introduction [R-5]

Statutory basis for citation of prior art patents or printed publications in patent files and reexamination of patents became available on July 1, 1981, as a result of new sections 301-307 of title 35 United States Code which were added by Public Law 96-517 enacted on December 12, 1980. The rules of practice in patent cases relating to reexamination were initially promulgated on April 30, 1981, at 46 FR 24179-24180 and on May 29, 1981, at 46 FR 29176-29187.

On November 29, 1999, Public Law 106-113 was enacted, and expanded reexamination by providing an "*inter partes*" option. Public Law 106-113 authorized the extension of reexamination proceedings via an optional *inter partes* reexamination procedure in addition to the present *ex parte* reexamination. 35 U.S.C. 311 - 318 are directed to the optional *inter partes* reexamination procedures. The final rules to implement the optional *inter partes* reexamination were published in the *Federal Register* on December 7, 2000 at 65 FR 76756 and in the *Official Gazette* on January 2, 2001 at 1242 OG 12.

See MPEP Chapter 2600 for guidance on the procedures for *inter partes* reexamination proceedings.

The reexamination statute was amended on November 2, 2002, by Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002) to expand the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based (see MPEP § 2242, POLICY IN SPECIFIC SITUATIONS, part A), and made technical corrections to the statute. See the 21st Century Department of Justice Appropriations Authorization Act, TITLE III-INTELLECTUAL PROPERTY, Subtitle A - Patent and Trademark Office, Section 13105, of the "Patent and Trademark Office Authorization Act of 2002" - Enacted as part of Public Law 107-273 on November 2, 2002.

This chapter is intended to be primarily a guide for U.S. Patent and Trademark Office (Office) personnel on the processing of prior art citations and *ex parte* reexamination requests, as well as handling *ex parte* reexamination proceedings. Secondarily, it is to also serve as a guide on the formal requirements for filing such documents in the Office.

The flowcharts show the general provisions of both the citation of prior art and *ex parte* reexamination proceedings, including reference to the pertinent rule sections.

When reexamination for the same patent has already been ordered based on an earlier request and that reexamination is pending, the examiner should immediately take up the new request for decision, i.e., there should be no delay of 6 weeks. See the last portion of MPEP § 2240 and also see MPEP § 2283 for multiple copending reexamination proceedings. A determination to reexamine may be made at any time during the period of enforceability of a patent.

## 2242  Criteria for Deciding Request [R-5]

### I. SUBSTANTIAL NEW QUESTION OF PATENTABILITY

The presence or absence of "a substantial new question of patentability" determines whether or not reexamination is ordered. The meaning and scope of the term "a substantial new question of patentability" is not defined in the statute and must be developed to some extent on a case-by-case basis, using the case law to provide guidance as will be discussed in this section.

If the prior art patents and printed publications raise a substantial question of patentability of at least one claim of the patent, then a substantial <u>new</u> question of patentability is present, unless the same question of patentability has already been decided by (A) a final holding of invalidity, after all appeals, or (B) by the Office in a previous examination or pending reexamination of the patent. A "previous examination" of the patent is: (A) the original examination of the application which matured into the patent; (B) the examination of the patent in a reissue application that has resulted in a reissue of the patent; or (C) the examination of the patent in an earlier >pending or< concluded reexamination. The answer to the question of whether a "substantial new question of patentability" exists, and therefore whether reexamination may be had, is decided by the Director of the USPTO, and, as 35 U.S.C. 303 provides, that determination is final, i.e., not subject to appeal on the merits of the decision. See *In re Etter*, 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985). But see *Heinl v. Godici*, 143 F.Supp.2d 593, 596-98 (E.D.Va. 2001) (35 U.S.C. 303 addresses only USPTO decisions to <u>deny</u> a request for reexamination and does not bar review of >*ultra vires*< USPTO decisions to <u>grant</u> reexamination requests. However, a decision to grant a reexamination request is not a final agency decision and is not ordinarily subject to judicial review.).

A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable. If the prior art patents and/or publications would be considered important, then the examiner should find "a substantial new question of patentability" unless the same question of patentability has already been decided as to the claim in a final holding of invalidity by the Federal court system or by the Office in a previous examination. For example, the same question of patentability may have already been decided by the Office where the examiner finds the additional (newly provided) prior art patents or printed publications are merely cumulative to similar prior art already fully considered by the Office in a previous examination of the claim.

For "a substantial new question of patentability" to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be <u>important</u> in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim. It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications. As to the importance of the difference between "a substantial new question of patentability" and a "*prima facie*" case of unpatentability see generally *In re Etter,* 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985).

Where a request for reexamination of a patent is made before the conclusion of an earlier filed reexam-

ination proceeding pending (ongoing) for that patent, the substantial new question of patentability may be raised with respect to any new or amended claim which has been proposed under 37 CFR 1.530(d) in the pending reexamination proceeding. The substantial new question may be directed to any proposed new or amended claim in the pending reexamination, to permit examination of the entire patent package. It would be a waste of resources to prevent addressing the proposed new or amended claims, by requiring parties to wait until the certificate issues for the proposed new or amended claims, and only then to file a new reexamination request challenging the claims as revised via the certificate. This also prevents a patent owner from simply amending all the claims in some nominal fashion to preclude a subsequent reexamination request during the pendency of the reexamination proceeding.

## II.    POLICY IN SPECIFIC SITUATIONS

In order to further clarify the meaning of "a substantial new question of patentability" certain situations are outlined below which, if present, should be considered when making a decision as to whether or not "a substantial new question of patentability" is present.

### A.    *Prior Favorable Decisions by the U.S. Patent and Trademark Office (Office) on the Same or Substantially Identical Prior Art in Relation to the Same Patent.*

A "substantial new question of patentability" is <u>not</u> raised by prior art presented in a reexamination request if the Office has previously considered (in an earlier examination of the patent) the same question of patentability as to a patent claim favorable to the patent owner based on the same prior art patents or printed publications. *In re Recreative Technologies*, 83 F.3d 1394, 38 USPQ2d 1776 (Fed. Cir. 1996).

In deciding whether to grant a request for reexamination of a patent, the examiner should check the patent's file history to ascertain whether any of the prior art now advanced by requester was previously cited/considered in an earlier * Office examination of the patent (e.g., in the examination of the application for the patent>, or in a concluded or pending reexamination proceeding<). For the sake of expediency, such art is referred to as "old art" throughout, since the term "old art" was coined by the Federal Circuit in its decision of *In re Hiniker*, 150 F.3d 1362,1365-66, 47 USPQ2d 1523, 1526 (Fed. Cir. 1998).

In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based. Determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request.

When it is determined that a SNQ based solely on old art is raised, form paragraph 22.01.01 should be included in the order for reexamination.
**>

¶ *22.01.01 Criteria for Applying "Old Art" as Sole Basis for Reexamination*

The above **[1]** is based solely on patents and/or printed publications already cited/considered in an earlier concluded examination of the patent being reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

> "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on **[2]**. A discussion of the specifics now follows:

    **[3]**

**Examiner Note:**

1.   In bracket 1, insert "substantial new question of patentability" if the present form paragraph is used in an order granting reexamination (or a TC Director's decision on petition of the

denial of reexamination). If this form paragraph is used in an Office action, insert "ground of rejection".

2.  In bracket 2, insert the old art that is being applied as the sole basis of the SNQ. For example, "the patent to Schor" or "the patent to Schor when taken with the Jones publication" or "the combination of the patent to Schor and the Smith publication" could be inserted. Where more than one SNQ is presented based solely on old art, the examiner would insert all such bases for SNQ.

3.  In bracket 3, for each basis identified in bracket 2, explain how and why that fact situation applies in the proceeding being acted on. The explanation could be for example that the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request. See *Ex parte Chicago Rawhide Mfg. Co.*, 223 USPQ 351 (Bd. Pat. App. & Inter. 1984).

4.  This form paragraph is only used the first time the "already cited/considered" art is applied, and is not repeated for the same art in subsequent Office actions.

<

See MPEP § 2258.01 for a discussion of the use of "old art" in the examination stage of an ordered reexamination (as a basis for rejecting the patent claims).

**B.  *Prior Adverse Decisions by the Office on the Same or Substantially Identical Prior Art in the Same Patent.***

A prior decision adverse to the patentability of a claim of a patent by the Office based upon prior art patents or printed publications would usually mean that "a substantially new question of patentability" is present. Such an adverse decision by the Office could, for example, arise from a reissue application which was abandoned after rejection of the claim and without disclaiming the patent claim.

**C.  *Prior Adverse Reissue Application Final Decision by the Director of the USPTO or the Board of Patent Appeals and Interferences Based Upon Grounds Other Than Patents or Printed Publications.***

Any prior adverse final decision by the Director of the USPTO or the Board of Patent Appeals and Interferences, on an application seeking to reissue the same patent on which reexamination is requested will be considered by the examiner when determining whether or not a "substantial new question of patentability" is present. To the extent that such prior adverse final decision was based upon grounds other than patents or printed publications, the prior adverse final decision will not be a basis for determining whether or not a "substantial new question of patentability" is present.

**D.  *Prior Favorable or Adverse Decisions on the Same or Substantially Identical Prior Art Patents or Printed Publications in Other Cases not Involving the Patent.***

While the Office would consider decisions involving substantially identical patents or printed publications in determining whether a "substantial new question of patentability" is raised, the weight to be given such decisions will depend upon the circumstances.

**III.  POLICY WHERE A FEDERAL COURT DECISION HAS BEEN ISSUED ON THE PATENT**

**A.  *Final Holding of Validity by the Courts.***

When the initial question as to whether the prior art raises a substantial new question of patentability as to a patent claim is under consideration, the existence of a final court decision of claim *validity* in view of the same or different prior art does not necessarily mean that no new question is present, because of the different standards of proof employed by the Federal District Courts and the Office. While the Office may accord deference to factual findings made by the district court, the determination of whether a substantial new question of patentability exists will be made independently of the court's decision on validity, because it is not controlling on the Office.

**B.  *Nonfinal Holding of Invalidity or Unenforceability by the Courts.***

A *nonfinal* holding of claim *invalidity* or unenforceability will not be controlling on the question of whether a substantial new question of patentability is present.

**C.  *Final Holding of Invalidity or Unenforceability by the Courts.***

A *final* holding of claim *invalidity* or unenforceability, after all appeals, is controlling on the Office. In such cases, a substantial new question of patent-

ability would *not* be present as to the claims finally held invalid or unenforceable.

As to *A. - C.* above, see *Ethicon v. Quigg*, 849 F.2d 1422, 7 USPQ2d 1152 (Fed. Cir. 1988).

Any situations requiring clarification should be brought to the attention of the Office of Patent Legal Administration.

## 2243 Claims Considered in Deciding Request [R-5]

The claims in effect at the time of the determination will be the basis for deciding whether "a substantial new question of patentability" is present. 37 CFR 1.515(a). *>The Office's determination in both the order for reexamination and the examination stage of the reexamination will generally be limited solely to a review of the claim(s) for which reexamination was requested. If the requester was interested in having all of the claims reexamined, requester had the opportunity to include them in its request for reexamination. However, if the requester chose not to do so, those claim(s) for which reexamination was not requested will generally not be reexamined by the Office. It is further noted that 35 U.S.C. 302 requires that "[t]he request must set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." If the requester fails to apply the art to certain claims, then the requester is not statutorily entitled to reexamination of such claims. If a request fails to set forth the pertinency and manner of applying the cited art to any claim for which reexamination is requested as required by 37 CFR 1.510(b), that claim will generally not be reexamined. The decision to reexamine any claim for which reexamination has not been requested lies within the sole discretion of the Office, to be exercised based on the individual facts and situation of each individual case. If the Office chooses to reexamine any claim for which reexamination has not been requested, it is permitted to do so. In addition, the Office may always initiate a reexamination on its own initiative of the non-requested claim (35 U.S.C. 303(a)). Thus, while< the examiner will ordinarily concentrate on those claims for which reexamination is requested, the finding of "a substantial new question of patentability" can be based upon a claim of the patent other than the ones for which reexamination is requested. For example, the request might seek reexamination of particular claims, but the examiner is not limited to those claims and can make a determination that "a substantial new question of patentability" is present as to other claims in the patent without necessarily finding "a substantial new question" with regard to the claims **>for which reexamination was requested.

The decision on the request for reexamination should discuss all of the patent claims requested for reexamination. The examiner should limit the discussion of those claims in the order for reexamination as to whether a substantial new question of patentability has been raised.

See MPEP § 2242 for a discussion of patent claims which have been the subject of a prior decision.

Amendments and/or new claims presented in any copending reexamination or reissue proceeding for the patent to be reexamined will generally (see MPEP § 2240, subsection II.) not be considered nor commented upon when deciding a request for reexamination. Where a request for reexamination is granted and reexamination is ordered, the first Office action and any subsequent reexamination prosecution should be on the basis of the claims as amended by any copending reexamination or reissue proceeding.<

## 2244 Prior Art on Which the Determination Is Based [R-2]

The determination whether or not "a substantial new question of patentability" is present can be based upon any prior art patents or printed publications. *>35 U.S.C.< 303(a) and 37 CFR 1.515(a) provide that the determination on a request will be made "with or without consideration of other patents or printed publications," i.e., other than those relied upon in the request. The examiner is not limited in making the determination **>based on< the patents and printed publications relied on in the request. The examiner can find "a substantial new question of patentability" based upon the prior art patents or printed publications relied on in the request, a combination of the prior art relied on in the request and other prior art found elsewhere, or based entirely on different patents or printed publications. The primary source of patents and printed publications used in making the determination are those relied on in the request. **>For reexamination ordered on or after November 2, 2002, see MPEP § 2242, subsection II.A. for a discussion of "old art." The examiner can also consider< any pat-

## 2259 >*Res Judicata* and< Collateral Estoppel in Reexamination Proceedings [R-2]

MPEP § 2242 and § 2286 relate to the Office policy controlling the determination on a request for reexamination and the subsequent examination phase of the reexamination where there has been a Federal Court decision on the merits as to the patent for which reexamination is requested.

Since claims finally held invalid by a Federal Court>, after all appeals,< will be withdrawn from consideration and not reexamined during a reexamination proceeding, **>a **rejection** on the grounds of *res judicata* will not be appropriate in reexamination. In situations, where the issue decided in Court did not invalidate claims, but applies in one or more respects to the claims being reexamined, the doctrine of collateral estoppel may be applied in reexamination to resolve the issue.<

## 2260 Office Actions [R-5]

*37 CFR 1.104. Nature of examination.*

(a) *Examiner's action*.

(1) On taking up an application for examination or a patent in a reexamination proceeding, the examiner shall make a thorough study thereof and shall make a thorough investigation of the available prior art relating to the subject matter of the claimed invention. The examination shall be complete with respect both to compliance of the application or patent under reexamination with the applicable statutes and rules and to the patentability of the invention as claimed, as well as with respect to matters of form, unless otherwise indicated.

(2) The applicant, or in the case of a reexamination proceeding, both the patent owner and the requester, will be notified of the examiner's action. The reasons for any adverse action or any objection or requirement will be stated in an Office action and such information or references will be given as may be useful in aiding the applicant, or in the case of a reexamination proceeding the patent owner, to judge the propriety of continuing the prosecution.

(3) An international-type search will be made in all national applications filed on and after June 1, 1978.

(4) Any national application may also have an international-type search report prepared thereon at the time of the national examination on the merits, upon specific written request therefor and payment of the international-type search report fee set forth in § 1.21(e). The Patent and Trademark Office does not require that a formal report of an international-type search be prepared in order to obtain a search fee refund in a later filed international application.

(b) *Completeness of examiner's action*. The examiner's action will be complete as to all matters, except that in appropriate circumstances, such as misjoinder of invention, fundamental defects in the application, and the like, the action of the examiner may be limited to such matters before further action is made. However, matters of form need not be raised by the examiner until a claim is found allowable.

(c) *Rejection of claims*.

(1) If the invention is not considered patentable, or not considered patentable as claimed, the claims, or those considered unpatentable will be rejected.

(2) In rejecting claims for want of novelty or for obviousness, the examiner must cite the best references at his or her command. When a reference is complex or shows or describes inventions other than that claimed by the applicant, the particular part relied on must be designated as nearly as practicable. The pertinence of each reference, if not apparent, must be clearly explained and each rejected claim specified.

(3) In rejecting claims the examiner may rely upon admissions by the applicant, or the patent owner in a reexamination proceeding, as to any matter affecting patentability and, insofar as rejections in applications are concerned, may also rely upon facts within his or her knowledge pursuant to paragraph (d)(2) of this section.

(4) **>Subject matter which is developed by another person which qualifies as prior art only under 35 U.S.C. 102(e), (f) or (g) may be used as prior art under 35 U.S.C. 103 against a claimed invention unless the entire rights to the subject matter and the claimed invention were commonly owned by the same person or subject to an obligation of assignment to the same person at the time the claimed invention was made.<

(5) The claims in any original application naming an inventor will be rejected as being precluded by a waiver in a published statutory invention registration naming that inventor if the same subject matter is claimed in the application and the statutory invention registration. The claims in any reissue application naming an inventor will be rejected as being precluded by a waiver in a published statutory invention registration naming that inventor if the reissue application seeks to claim subject matter:

(i) Which was not covered by claims issued in the patent prior to the date of publication of the statutory invention registration; and

(ii) Which was the same subject matter waived in the statutory invention registration.

(d) *Citation of references*.

(1) If domestic patents are cited by the examiner, their numbers and dates, and the names of the patentees will be stated. If domestic patent application publications are cited by the examiner, their publication number, publication date, and the names of the applicants will be stated. If foreign published applications or patents are cited, their nationality or country, numbers and dates, and the names of the patentees will be stated, and such other data will be furnished as may be necessary to enable the applicant, or in the case of a reexamination proceeding, the patent owner, to identify the published applications or patents cited. In citing foreign published applications or patents, in case only a part of the document is involved, the particular pages and sheets containing the parts relied upon will be identified. If printed publications are

nation (37 CFR 1.515) and order to reexamine (37 CFR 1.525), it will not be considered, but will be returned to the party submitting the same by the >CRU or< TC Director, regardless of whether the petition is filed in the reexamination proceeding, the reissue application, or both. This is necessary to prevent premature papers relating to the reexamination proceeding from being filed. The decision returning such a premature petition will be made of record in both the reexamination file and the reissue application file, but no copy of the petition will be retained by the Office. See MPEP § 2267.

The patent owner may file a petition under 37 CFR 1.182 to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, at the time the patent owner's statement under 37 CFR 1.530 is filed or subsequent thereto in the event the Office has not acted prior to that date to merge or stay. If the requester of the reexamination is not the patent owner, that party may petition to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, as a part of a reply pursuant to 37 CFR 1.535, in the event the Office has not acted prior to that date to merge or stay. A petition to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, which is filed by a party other than the patent owner or the requester of the reexamination will not be considered, but will be returned to that party by the >CRU or< TC Director as being improper under 37 CFR 1.550(g).

All decisions on the merits of petitions to merge the reissue application examination and the reexamination proceeding, or to stay one of them because of the other, will be made in the OPLA. Such petitions to merge the reissue application and the reexamination proceeding, or stay one of them because of the other, which are filed by the patent owner or the requester after the order for reexamination will be referred to the OPLA for decision.

### VI.  FEES IN MERGED PROCEEDINGS

Where the proceedings have been merged and a paper is filed which requires payment of a fee (e.g., excess claim fee, extension of time fee, petition fee, appeal fee, brief fee, oral hearing fee), only a single fee need be paid. For example, only one fee need be paid for an appeal brief even though the brief relates to merged multiple proceedings and copies must be filed for each file in the merged proceeding. As to excess claim fees, reissue practice will control.

## 2286    *Ex Parte* Reeexamination and Litigation Proceedings [R-5]

*37 CFR 1.565. Concurrent office proceedings which include an ex parte reexamination proceeding.*

*****

(b) If a patent in the process of *ex parte* reexamination is or becomes involved in litigation, the Director shall determine whether or not to suspend the reexamination. See § 1.987 for *inter partes* reexamination proceedings.

*****

35 U.S.C. 302 permits a request for *ex parte* reexamination to be filed "at any time." Requests for *ex parte* reexamination are frequently filed where the patent for which reexamination is requested is involved in concurrent litigation. The guidelines set forth below will generally govern Office handling of *ex parte* reexamination requests where there is concurrent litigation in the Federal courts.

### I.  COURT-SANCTIONED REEXAMINATION PROCEEDING*>,< LITIGATION STAYED FOR REEXAMINATION>, OR EXTENDED PENDENCY OF REEXAMINATION PROCEEDING CONCURRENT WITH LITIGATION<

Any request for *ex parte* reexamination which indicates (A) that it is filed as a result of an agreement by parties to litigation which agreement is sanctioned by a court, or (B) that litigation is stayed for the filing of a reexamination request will be taken up by the examiner for decision 6 weeks after the request was filed. See MPEP § 2241. If reexamination is ordered, the examination following the statement by the patent owner under 37 CFR 1.530 and the reply by the requester under 37 CFR 1.535 will be expedited to the extent possible. Office actions in these reexamination proceedings will normally set a 1-month shortened statutory period for response rather than the 2 months usually set in reexamination proceedings. See MPEP § 2263. This 1-month period may be extended only upon a showing of sufficient cause. See MPEP § 2265. See generally *In re Vamco Machine and Tool, Inc*., 752 F.2d 1564, 224 USPQ 617 (Fed.

Cir. 1985); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 217 USPQ 985 (Fed. Cir. 1983); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 USPQ 886 (W.D. Okla. 1985); *The Toro Co. v. L.R. Nelson Corp.*, 223 USPQ 636 (C.D. Ill. 1984); *Digital Magnetic Systems, Inc. v. Ansley*, 213 USPQ 290 (W.D. Okla. 1982); *Raytek, Inc. v. Solfan Systems Inc.*, 211 USPQ 405 (N.D. Cal. 1981); and *Dresser Industries, Inc. v. Ford Motor Co.*, 211 USPQ 1114 (N.D. Texas 1981).

>In addition, if (A) there is litigation concurrent with an *ex parte* reexamination proceeding and (B) the reexamination proceeding has been pending for more than one year, the Director or Deputy Director of the Office of Patent Legal Administration (OPLA), Director of the Central Reexamination Unit (CRU), Director of the Technology Center (TC) in which the reexamination is being conducted, or a Senior Legal Advisor of the OPLA, may approve Office actions in such reexamination proceeding setting a one-month or thirty days, whichever is longer, shortened statutory period for response rather than the two months usually set in reexamination proceedings. A statement at the end of the Office action – "One month or thirty days, whichever is longer, shortened statutory period approved," followed by the signature of one of these officials, will designate such approval. It is to be noted that the statutory requirement for "special dispatch" in reexamination often becomes important, and sometimes critical, in coordinating the concurrent litigation and reexamination proceedings.<

## II. FEDERAL COURT DECISION KNOWN TO EXAMINER AT THE TIME THE DETERMINATION ON THE REQUEST FOR REEXAMINATION IS MADE

If a Federal Court decision *on the merits* of a patent is known to the examiner at the time the determination on the request for *ex parte* reexamination is made, the following guidelines will be followed by the examiner, whether or not the person who filed the request was a party to the litigation. When the initial question as to whether the prior art raises a substantial new question of patentability as to a patent claim is under consideration, the existence of a final court decision of claim *validity* in view of the same or different prior art does not necessarily mean that no new question is present. This is true because of the different standards of proof and claim interpretation employed by the District Courts and the Office. See for example *In re Zletz*, 893 F.2d 319, 322, 13 USPQ2d 1320, 1322 (Fed. Cir. 1989) (manner of claim interpretation that is used by courts in litigation is not the manner of claim interpretation that is applicable during prosecution of a pending application before the PTO) and *In re Etter*, 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985) (the 35 U.S.C. 282 presumption of patent validity has no application in reexamination proceedings). Thus, while the Office may accord deference to factual findings made by the court, the determination of whether a substantial new question of patentability exists will be made independently of the court's decision on validity as it is not controlling on the Office. A *non-final* holding of claim *invalidity* or unenforceability will not be controlling on the question of whether a substantial new question of patentability is present. A final holding of claim invalidity or unenforceability (after all appeals), however, is controlling on the Office. In such cases, a substantial new question of patentability would *not* be present as to the claims held invalid or unenforceable. See *Ethicon v. Quigg*, 849 F.2d 1422, 7 USPQ2d 1152 (Fed. Cir. 1988).

Any determination on a request for reexamination which the examiner makes after a Federal Court decision must be reviewed by the >Central Reexamination Unit (CRU) or< Technology Center (TC) Special Program Examiner (SPRE) to ensure that it conforms to the current Office litigation policy and guidelines. See MPEP § 2240.

For a discussion of the policy in specific situations where a Federal Court decision has been issued, see MPEP § 2242.

## III. REEXAMINATION WITH CONCURRENT LITIGATION BUT ORDERED PRIOR TO FEDERAL COURT DECISION

In view of the statutory mandate to make the determination on the request within 3 months, the determination on the request based on the record before the examiner will be made without awaiting a decision by the Federal Court. It is not realistic to attempt to determine what issues will be treated by the Federal Court prior to the court decision. Accordingly, the determination on the request will be made without considering the issues allegedly before the court. If an *ex parte*

reexamination is ordered, the reexamination will continue until the Office becomes aware that a court decision has issued. At such time, the request will be reviewed in accordance with the guidelines set forth below. The patent owner is required by 37 CFR 1.565(a) to call the attention of the Office to any prior or concurrent proceeding in which the patent is involved or was involved. Thus, the patent owner has an obligation to promptly notify the Office that a decision has been issued in the Federal Court.

## IV. FEDERAL COURT DECISION ISSUES AFTER *EX PARTE* REEXAMINATION ORDERED

Pursuant to 37 CFR 1.565(a), the patent owner in an *ex parte* reexamination proceeding must promptly notify the Office of any Federal court decision involving the patent. Where the reexamination proceeding is currently pending and the court decision issues, or the Office becomes aware of a court decision relating to a pending reexamination proceeding, the order to reexamine is reviewed to see if a substantial new question of patentability is still present. If no substantial new question of patentability is still present, the order to reexamine is vacated by the >CRU or< TC Director and reexamination is concluded.

A *non-final* Federal Court decision concerning a patent under reexamination shall have no binding effect on a reexamination proceeding.

The issuance of a *final* Federal Court decision upholding validity during an *ex parte* reexamination also will have no binding effect on the examination of the reexamination. This is because the court states in *Ethicon v. Quigg*, 849 F.2d 1422, 1428, 7 USPQ2d 1152, 1157 (Fed. Cir. 1988) that the Office is *not* bound by a court's holding of patent *validity* and should continue the reexamination. The court notes that district courts and the Office use different standards of proof in determining invalidity, and thus, on the same evidence, could quite correctly come to different conclusions. Specifically, invalidity in a district court must be shown by "clear and convincing" evidence, whereas in the Office, it is sufficient to show nonpatentability by a "preponderance of evidence." Since the "clear and convincing" standard is harder to satisfy than the "preponderance" standard, deference will ordinarily be accorded to the factual findings of the court where the evidence before the Office and the court is the same. If sufficient reasons are present, claims held valid by the court may be rejected in reexamination.

On the other hand, a *final* Federal Court holding of invalidity or unenforceability (after all appeals), is binding on the Office. Upon the issuance of a final holding of invalidity or unenforceability, the claims >being examined which are< held invalid or unenforceable will be withdrawn from consideration in the reexamination. The reexamination will continue as to any remaining claims >being examined<. Thus, the reexamination will continue if any original, new, or amended claim >being examined that< was not found invalid or unenforceable by the Court. If <u>all</u> of the <u>claims >being examined< in the reexamination proceeding</u> are <u>finally</u> held <u>invalid or unenforceable</u>, the reexamination will be <u>vacated</u> by the >CRU or< TC Director as no longer containing a substantial new question of patentability and the reexamination will be concluded. If not all claims **>being examined< were held invalid (or unenforceable), a substantial new question of patentability may still exist as to the remaining claims. In such a situation, the remaining claims would be examined; and, as to the claims held invalid/unenforceable, form paragraph 22.20 should be used at the beginning of the Office action.

¶ *22.20 Claims Held Invalid By Court, No Longer Being Reexamined*

Claims **[1]** of the **[2]** patent are not being reexamined in view of the final decision of **[3]**. Claim(s) **[1]** was/were held invalid/unenforceable by the **[4]**.

**Examiner Note:**

1. In bracket 1, insert the claim(s) held invalid.

2. In bracket 2, insert the patentee (e.g., Rosenthal, Schor et al).

3. In bracket 3, insert the decision (e.g., *ABC Corp. v. Smith*, 888 F. 3d 88, 999 USPQ2d 99 (Fed. Cir. 1999) or *XYZ Corp. v. Jones*, 888 F. Supp. 2d 88, 999 USPQ2d 1024 (N.D. Cal. 1999)).

4. In bracket 4, insert the name of the court (e.g., the Court of Appeals for the Federal Circuit, or the Federal District Court).

## V. LITIGATION REVIEW AND ** SPRE APPROVAL

In order to ensure that the Office is aware of prior or concurrent litigation, the examiner is responsible for conducting a reasonable investigation for evidence as to whether the patent for which *ex parte* reexamination is requested has been or is involved in litigation. The investigation will include a review of the

reexamination file, the patent file, and the results of the litigation computer search by the STIC.

If the examiner discovers, *at any time* during the reexamination proceeding, that there is litigation or that there has been a federal court decision on the patent, the fact will be brought to the attention of the >CRU or< TC SPRE prior to any further action by the examiner. The >CRU or< TC SPRE must review any action taken by the examiner in such circumstances to ensure current Office litigation policy is being followed.

### VI. FEDERAL COURT DECISION CONTROLLING IN REEXAMINATION PROCEEDING

Once a federal court has ruled upon the merits of a patent and an *ex parte* reexamination is still appropriate under the guidelines set forth above, the federal court decision will be considered controlling and will be followed as to claims finally held to be invalid by the court.

## 2287  Conclusion of *Ex Parte* Reexamination Proceeding  [R-5]

Upon conclusion of the *ex parte* reexamination proceeding, the examiner must prepare a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate" (NIRC) by completing form PTOL-469.  If appropriate, an examiner's amendment will also be prepared. Where claims are found patentable, reasons must be given for each claim found patentable.  See the discussion as to preparation of an examiner's amendment and reasons for allowance at the end of this section. In addition, the examiner must prepare the reexamination file so that the Office of Publications can prepare and issue a certificate in accordance with 35 U.S.C. 307 and 37 CFR 1.570 setting forth the results of the reexamination proceeding and the content of the patent following the proceeding.  See MPEP § 2288.

If it is the intent of the examiner to find any claim(s) patentable (confirmed or allowed) in concluding the reexamination proceeding, the examiner will so inform his/her **>Special Program Examiner (SPRE)<. The *>SPRE< will convene a *>panel< review conference (see MPEP § 2271.01), and the conference members will review the patentability of the claim(s). If the conference confirms the patentability of the claim(s), a NIRC shall be issued and signed by the examiner, with the two other conferees initialing the NIRC (as "conferee") to indicate their participation in the conference. Both conferees will initial, even though one of them may have dissented from the 3-party conference decision on the patentability of the claim(s). If the conference does not confirm the patentability of the claim(s), ** the examiner will >reevaluate and< issue an appropriate Office action rejecting the claim(s), not confirmed as patentable.

A *>panel< review conference is not to be held as to any claim that was in the case (proceeding) at the time the case was reviewed by the Board of Patent Appeals and Interferences (Board) or a federal court. The following example will serve to illustrate this point. In a reexamination proceeding, claims 5-10 are allowed by the examiner, and claims 1-4 are rejected. The rejection of claims 1-4 is then appealed to the Board. The Board reverses the rejection of claims 1-4 and imposes a new ground of rejection of claims 1-4 under 37 CFR 41.50(b). The patent owner then elects further prosecution before the examiner pursuant to 37 CFR 41.50(b)(1) and submits an amended set of claims 1-4. The examiner finds amended claims 1-4 to be allowable and wishes to "allow" the entire case by issuing a NIRC. A *>panel< review conference must be held at this stage of the proceeding. The conferees will review the allowance of amended claims 1-4. The conferees will not, however, review the allowance of claims 5-10, because claims 5-10 were in the case, and before the Board at the time the Board decided the appeal.

A *>panel< review conference is not to be held where the proceeding is to be concluded by the cancellation of all claims. >No panel review conference is needed in this instance, as the issuance of the NIRC is essentially ministerial.<

Thus, a *>panel< review conference **must** be held in each instance where a NIRC is about to be issued, unless the NIRC is being issued: (A) following and consistent with a decision by the Board of Patent Appeals and Interferences (or court) on the merits of the proceeding; or (B) as a consequence of the patent owner's failure to respond or take other action where such a response or action is necessary to maintain pendency of the proceeding and, as a result of which failure to respond, all of the claims will be canceled.